# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

Cornell D.M. Judge Cornish, Esq.　　　　　)
Suite 301　　　　　　　　　　　　　　　　)
1101 New Hampshire Ave., NW　　　　　　)
Washington, DC 20037-1502　　　　　　　)
(202) 429-9705　　　　　　　　　　　　　)
DC Bar Number 366240　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Plaintiff *Pro Se*　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
JON DUDAS, in his Official　　　　　　　)
Capacity as Under-Secretary of Commerce for　)
Intellectual Property and Director of the　　)
United States Patent and Trademark Office　)
And the UNITED STATES PATENT AND　)
TRADEMARK OFFICE　　　　　　　　)
P.O Box 1450　　　　　　　　　　　　　)
Alexandria, VA 22313-1450　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Harry I. Moatz, in his Official Capacity as　)
Director　　　　　　　　　　　　　　　)
Office of Enrollment and Discipline　　　)
U.S. Patent and Trademark Office　　　　)
P.O. Box 1450　　　　　　　　　　　　　)
Alexandria, VA 22313-1450　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
William J. Griffin, in his Official Capacity as　)
Staff Attorney　　　　　　　　　　　　)
Office of Enrollment and Discipline　　　)
U.S. Patent and Trademark Office　　　　)
P.O. Box 1450　　　　　　　　　　　　　)
Alexandria, VA 22313-1450　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
Defendants　　　　　　　　　　　　　)
_____)

**RECEIVED**

OCT 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CASE　07-CV-01719 (RWR)
Assigned to: Roberts, Richard W.
Assign. Date: 9/26/2007
Description: Pro Se Gen. Civil

## ANSWER AND REPLY BRIEF TO DEFENDANTS' OPPOSITIN AND

## MEMORANDUM IN SUUPORT OF THEIR OPPOSITION

1

This is Plaintiff's Reply Brief and Answer to Defendants' Opposition and Exhibits filed on October 11, 2007.

Plaintiff also responds to the Court's Order of October 12, 2007, "sealing the proceedings, provided that if Plaintiff shall file a motion to continue or modify the seal before the passage of 10 days, the seal shall remain in place until resolution of the motion filed by Plaintiff."

Plaintiff files herewith his Motion to Continue the Order of October 12, 2007 sealing the entire record herein until resolution of the Motion by Plaintiff to Continue Seal of the entire record by the Court's Order.

### Plaintiff's Legal Claim Has Merit

Plaintiff Answers Defendants' Opposition filed October 11, 2007, and files this Reply Brief in opposition to Defendants' filing in toto.

Defendants Opposition is incomplete and non-responsive to Plaintiff's Summons and Complaint, except in length. Where it is non-responsive, or lacks response to the allegations and legal claims of Plaintiff , those allegations and legal claims of Plaintiff are admitted.

Defendants' Opposition is incomplete and unresponsive to Plaintiff's legal claims in his Summons and Complaint. To this end, for example, Defendants have not responded to Plaintiff's legal claims, which have been repeated herein for a third time.

They were repeated for a second time in Plaintiff's Motion for a Certification of his challenge to the constitutionality of federal statutes, namely 35 U.S.C. 2 (b)(2)(D), 6 and 32.

CLERK
MAYER-WHITTINGTON
NANCY M.

2007 OCT 22 PM 4: 19

DISTRICT OF COLUMBIA
U.S. DISTRICT COURT
RECEIVED

The crux of Defendants defense is that "patent practitioner enrollment issues are bit relevant and material to Plaintiff's general legal claims. See Note 1 of Defendants Opposition. That argument fails, and so all the other arguments of the Defendant likewise fail. That is why Plaintiff traverses the Defendants Opposition in toto.

Note 1 of Defendants Opposition only mentions 35 U.S.C. 6 in passing, It alleges that the Board of Appeals and Interferences (BPA) is *not* involved in patent practitioner *enrollment* issues" [Emphasis added]. But, of course that is not true, and, besides, it is misleading.

Plaintiff is currently *prosecuting* active patent and trademark applications. Accordingly, Plaintiff is a *Patent Practitioner* whose application claims *are* subject to rejection and appeal to the Board of Appeals and the Trademark Trial and Appeal Board (TTAB). Thus, the Board of Appeals and Interferences is involved in this litigation.

Objections to the applications are for formal matters, and they are subject to a Petition For Review by the Defendants. The burden of proof on them is the same as the burden of proof on the Board of Appeals. Both have to show by clear and convincing evidence on an appeal to this Court that the rejections of the claims are confirmable by this Court or the Court of Appeals For The Federal Circuit. Likewise, the Objections to formal matters are subject to the same burden of proof on Petitions for Review and their appeals o this Court on grounds, *inter alia*, that the Defendants have failed to make a Decision on Plaintiff's Petitions For Review, which is the case in this litigation.

Consequently, both the Defendants and the Board of Appeals are involved in this case, and the Decisions of both are subject to appeal to this Court.

3

The Board of Appeals and the Defendants deal with the same applications, and consequently the patent practitioner *enrollment* and *prosecution* issues involved are related and dependent. Since the Plaintiff as a patent practitioner deals with the Defendants and the Board of Appeals in connection with rejections and objections on the same applications, they must all deal with the same practitioner, who is involved with the same applications.

Thus, the constitutionality of the Board of Appeals and its actions and authorization , although it deals only with rejections, and the constitutionality of Defendants actions and authorization, although they deal only with the objections, are relevant and material issues to Plaintiff's general and specific complaints because the rejections and objections are involved in the same patent and trademark practitioner.

The patent practitioner *enrollment* issues are not separate and distinct from the patent practitioner *prosecution* issues.   Since they are both related to the same Patent Practitioner and the same patent and trademark applications, they are both closely related to the same *prosecution* and *enrollment* issues.  They both are involved with the same patent and trademark applications and the same *Practitioner*.

The Plaintiff presently has pending in the PTO as a patent and trademark practitioner, *prosecution* and *enrollment* issues, and since they are related to the same patent and trademark applications and the same patent practitioner, they are both closely related and dependent on each other and the currently active applications, as well as the general and specific legal claims of the Plaintiff, particularly as to the constitutionality of both the actions and rules under which the Board of Appeals and the Defendants operate.

4

The unauthorized "Officials" involved in *appeals* and *petitions* are the same unauthorized "Officials" involved all in all *enrollment* and *prosecution* issues, and they are both closely related in structure and function to the general and specific legal claims of the Plaintiff in this case.

Proceedings before the Board of Appeals and Trademark Trial and Appeal Board (TTAB), as well as Defendants in the Office of Enrollment and Discipline (OED), are governed by the Federal Rules of Civil Procedure (Fed R. Civ. P.) "Wherever applicable and appropriate." See, for example, 37 C.F.R. 2.116 (a); 120(a); 122(a); Young v. AGB Corp., 152 F3e 1377 (Fed. Cir.1998) and citations, including 37 C.F.R. 101.01, from which it is clear that the same Federal Rules of Evidence and burdens of proof provisions generally apply to all TTAB, Board of Appeals and OED proceedings because they all involve "Officials" and administrative judges who must be authorized by Congress under Art. II, Sec. 2, cl.2.

They are all like the Magistrate Judges in this Court and all other judges in the States where Plaintiff is admitted. They are "Official" that must have authority under the Constitution, either from Congress under Art. II, or under Art. III. This includes the Defendants, who are "Officials" involved in disciplining attorneys and the review of their Petitions For Review of formal matters in patent and trademark applications. They are under the same burdens of proof as Magistrate Judges under Local Rules LCrR 57.17 et seq.

The Defendants have the burden of showing by clear and convincing evidence that the Plaintiff practitioner does not have the legal claim of right to publish his name as an attorney in a patent and trademark under the shield of the First Amendment.

The Defendants have the same burden of showing by clear and convincing evidence that Plaintiff's legal claims do not require narrow tailoring, strict constitutional scrutiny, and do not achieve a compelling public interest. That burden applies to the Rules and Statutes themselves that give power, duty and authority to the Defendants under 35 U.S.C. 1 and 2, and the Board of Appeals under 35 U.S.C. 6 in the PTO, and the way the Rules and the Statutes, namely 35 U.S.C 2 (b)(2)(D), 6 and 32 are applied.

The fact that different statutes are involved, does not cut one loose from the general and specific claims of the Plaintiff.

Both the Defendants and the Board of Appeals have the same burden of showing by clear and convincing evidence that the PTO Rules and Statutes are tailored constitutionally and according to strict scrutiny to achieve the compelling constitutional objectives involved.

The Plaintiff, on the other hand, has no burden to show by clear and convincing evidence that he has a Constitutional right to Due Process. He simply claims such a legal right and a legal claim to that right, as he has done in this case. Thereupon the Defendants have the burden of proving by clear and convincing evidence that the Rules and Statute have been narrowly tailored with strict scrutiny to achieve the compelling due process purpose of the Constitution, including affording the Plaintiff due process.

The Plaintiff has a legal constitutional right, which he claims, to the return of his Certificate of Registration and a show cause hearing in which the Defendants have the burden of proof to show by clear and convincing evidence why they shouldn't return it; why they did not illegally seize it as contraband and secretly hold it hostage for eleven years; and why they did not return it, but instead, kept it to intimidate and coerce Plaintiff

6

in a Hobbs choice to take the Patent Office Exam.   Intimidation, coercion, fraud, and invasion of privacy are a constant threat in prosecution and a predatory swindle when the Plaintiff has no other choice at all.

That "no other choice at all," without limitation at all, included no choice at all to take the Exam free for mere academic reasons, such as Continuing Legal Education (CLE), with reasonable accommodations for age and medical limitations, including, without limitation, those offered heretofore, as cited in Exhibit 33, but with additional and other accommodations not given heretofore but still reasonable; no choice at all to have a right to review all of his and others' past exams for CLE purposes; no right at all to the reasonable accommodation of an appeal of the test results or on a Decision on his petition for review in the PTO; no choice at all to the reasonable accommodation of any Decision on any of his petitions and appeals for review in the PTO; no choice at all to the appropriate reasonable accommodation of a reply to his petitions for a suspension of the rules; no choice at all to the reasonable accommodation of  reinstatement (albeit Plaintiff's Petitions for Review were squelched and not answered); no choice at all to the reasonable accommodation of advertising his name as an attorney, agent or firm in patents and trademarks (albeit firms are not "persons" who can use powers of attorney in the patent office); no reasonable accommodation to be free of a threat of fines and imprisonment for calling himself an attorney practitioner in the Trademark Office and his own patent and trademark applications; no choice at all to the reasonable accommodation of practice under constitutional Rules and Statutes;  no choice at all the to reasonable accommodation of legitimate constitutional application of those Rules and Statutes; no

choice at all to rely on a Board of Appeals with the proper Constitutional authority; no choice at all of proper constitutional application of the Patent Laws and Rules.

Defendants have the burden of proof to show by clear and convincing evidence that they have applied constitutional statutory requirements for notice of Plaintiff's legal claims to continuing enrollment after an opportunity for a hearing, which he has requested, but there has been no response or Decision on that request.

In Exhibit 8, which was incompletely redacted, a handwritten note evidences Defendants attempt to secretly swindle Plaintiff into thinking that his own action caused the abandonment of his name from the Register of attorneys in the PTO. The truth is, however, that he never gave his permission or acquiesced in the removal or abandonment, or the keeping of his name on the register, or voluntarily eliminated the burden of proof on the Defendants in the de-enrollment of his name by the imposition of an unjustified and illegal fitness requirement on Plaintiff that changed the burden of proof.

That change was instituted by Defendants when they illegally imposed the discipline of a fitness requirement, and a showing in which the burden of proof would be by clear and convincing evidence. It was a Hobbs choice to the terms imposed by the Director of OED, or no other choice at all. Those terms included coercing him into thinking that his only choice was the burden of showing proof of fitness by clear and convincing evidence without an opportunity for a hearing but with a fee for reinstatement.

The terms did not include a notice of a hearing, notice of what claims had been made against him, or an opportunity to show why his name should not be removed from

the register at an uncertain date, which was secretly decided upon to be on or about
8/26/96. The Hobbs choice was the horse closest to the door, namely no opportunity to
obtain a lawyer, or an opportunity of a hearing in which the practitioner had legal and
sufficient notice of the claims against him in writing in such full, clear, concise, and exact
terms as to enable the practitioner to understand the claim against him and to respond
thereto.

This also involved inadequate notice, and opportunity to be heard as a practitioner
on his claims for a patent or trademark for himself or others in the Board of Appeals or
the TTAB, and a clear and concise statement as to why the practitioner had not met his
statutory requirements under 35 U.S.C. 101, 102, 103 and 112.

The attempt was to swindle Plaintiff into thinking that he had no choice but the
choice of accepting the burden of proof, and, without a lawyer, and accepting the blame
and discipline of the alleged change in the burden of proof caused by the Plaintiff
himself.

That is only one of the legal claims made by the Plaintiff. Defendants' response
to that claim was unresponsive because they simply put aside that legal claim in a
footnote by saying it "is not involved in patent practitioner enrollment issues."

Defendants fail to mention the legal claim by Plaintiff that he has standing,
without limitation, under at least 28 U.S.C. 1331, 1332, 1338 and 1331, which are not
dependent on Defendants' conflicting *enrollment* and *disciplining* functions under 35
U.S.C. 1 and 2. And that jurisdiction, which is not an enrollment issue, involves
Plaintiff's legal claims in connection with his expired U.S. patent 3,433,705; unexpired

Patent No. 5.256,367; his pending patent application S.N. 29/273,235, filed 02/26/2007;
and his pending trademark application S.N. 77/247,319, filed 08/04/2007.

They are relevant to an appeal to the Board of Appeals, because Plaintiff has legal
claims of access to the Board of Appeals and the TTAB based on those patents and
applications, and a proper and corresponding right to challenge the constitutionality of
the authorization of the Board of Appeals under 35 U.S.C. 6.

That federal statute is unconstitutional because it fails to meet the requirements of
Art. II, Section 2, cl. 2 of the U.S. Constitution, as recognized by Congress in HR 1908.
Plaintiff's legal claim that 35 U.S.C. 6 is a federal statute that lacks a constitutional basis,
as described in Plaintiff's Summons and Complaint, was not recognized by Defendants.
Their Opposition was not responsive to that legal claim.

Moreover, all the allegations and defenses of the Defendants Opposition are
mistaken and/ or without legal basis and fail based on their denial of the _relevance_ and
_materiality_ of the Board of Appeals to Plaintiff's legal claims. Therefore, Plaintiff makes
exception in toto to Defendants Opposition in this Answer and Reply Brief.

The following deals now with Plaintiff's legal claim that the Defendants have not
obeyed the specific requirements of Art. I, Section 8, cl. 8 of the Constitution, which
gives Defendants specific directions to promote the public interest by promoting the
Progress of Science and useful Arts" by securing their Writings and Discoveries.

The Defendants have not met their directions to promote the public interest
because they have thwarted Plaintiff's patent and trademark _prosecutions_ as a
_practitioner_ although that profession and purpose are protected as constitutional rights,
not only in his applications and patents, but also in denying him under his right to

freedom of speech and press. Defendants have failed to redress Plaintiff's grievances in his general and specific claims under the First Amendment. They have also failed to respond to them.

To this end, Defendants have improperly applied the patent statutes, including not only 35 U.S.C. 6. That is only one of the patent statutes specifically named by Plaintiff as themselves being unconstitutional. The total package of legal claims by Plaintiff includes the claim that not only is 35 U.S.C. 6, but also 35 U.S.C. 2 (b)(2)(D), and 32, unconstitutional, and the latter two were not even mentioned by Defendants Opposition. Therefore, their Opposition was non-responsive to those legal claims.

The Defendants have improperly applied the patent statutes because they have made a new, secret prophylactic rule, whereby they do not have the burden of proof by clear and convincing evidence to show that the Plaintiff has misbehaved before and after a notice and opportunity for a hearing both generally and in specific cases, both in his current applications and unexpired patent, but also otherwise, as required in 35 U.S.C. 32.

This is a misapplication of that rule. Not only that, but the rule itself is unconstitutional. A prophylactic application of the rule is not authorized by Congress under Art. II, Section 2, cl. 2.

A misapplication of 35 U.S.C. 32 has occurred by the misapplication of a new, unconstitutional application of a new unconstitutional, secret, prophylactic rule, which is selectively applied against a discrete and insular minority of patent attorneys and practitioners in both the patent and trademark offices. That minority comprises patent practitioners and attorneys who are over 40 and have medical limitations that are not in

11

dispute and need reasonable accommodations to promote the progress of Science and the useful arts, and from which they are deprived.

The statute itself is unconstitutional on its face, because it appears to be within specific directions and prohibitions of the Constitution, including four of the first 10 Amendments. There has to be a rational basis for the exception to the specific directions and prohibitions, and the exception must be narrowly tailored to achieve the public interest specified in Art. I, Section 8, cl.8, Art. II, Section 2, cl. 2 (authorization from Congress to "Officials" in the PTO), Art. III (judicial "Officials" such as magistrate judges appointed pursuant to 28 U.S.C. 631, and administrative judges in the PTO, including the Defendants and the Board of Appeal who have substantially the same functions, powers and *burden of proof* as magistrate judges under Local Rules LCrR 57.17 et seq., including LCvR 83.16 Complaints of Misconduct . . .).

That burden of proof, is missing and not narrowly tailored in the PTO, as required by Art. I, Section 8, cl. 8; Art. IV (Full faith and credit); or Amendment I (protection of commercial speech and press), Amendment IV, V and XIV (security against illegal seizure of property without due process and just compensation); or Amendment X (powers reserved to the States). These are not mere patent practitioner *enrollment* issues, as alleged on page 1, footnote 1 of Defendants Opposition.

To advance these constitutional claims and challenges by Plaintiff to issue, the Defendants must respond to Plaintiff's legal claims, which, it is clear, are clearly and intelligibly described and claimed by Plaintiff in his Summons and Complaint. By not answering them, they are admitted by Defendants, and serve as a basis of his request for a preliminary and permanent injunction, and relief by *Writs of Mandamus, Possession and*

*Repossesion* of the property in his Certificate of Registration, which has been secretly seized as contraband at some undeterminable date without an opportunity for a meaningful hearing, which was requested by Plaintiff, and refused to harass and coerce Plaintiff into taking the Patent Bar Exam over and over again without limit and reasonable accommodations.

Improper Behavior By Defendants

Defendants Exhibits 8, 31 and 33, as well as their fraudulent and secret changing of the ID of the July 2007 Exam from 19240, when Plaintiff took it to 41361 before he reviewed it, makes clear that the Defendants are using their new secret prophylactic rule unconstitutionally and fraudulently to rid themselves of the cumbersome burden of proof they are under, which requires them to show by clear and convincing evidence that Plaintiff does not measure up to practitioner disciplinary issues under 35 U.S.C. 2.

Defendants rely on a claim of irrelevancy of *enrollment* issues, rather than the practitioner *prosecution* issues, a stipulated and raised by Defendants in footnote 1 on page 1 of their Opposition. That footnote incredulously and unresponsively misdirects their defense from Plaintiff's legal claim to an alleged irrelevancy of the unconstitutionality of 35 U.S.C. 6, to the prosecution issues of 35 U.S.C 134. They completely avoid and do not respond to Plaintiff's legal claim to the unconstitutionality of 35 U.S.C. 2 (b)(2)(D) and 35 U.S.C. 32.

Instead, Defendants admit those legal claims by Plaintiff by limiting their defense to practitioner *enrollment* issues, where, incidentally, the burden of proof is still on the Defendants to show by clear and convincing evidence that Plaintiff's claims do not meet

13

the statutory prosecution requirements for claims and petition for redress of grievances and objections. These are prosecution issues under 35 U.S.C. 101, 102, 103, 112.

There are other disciplinary issues, however, involving statutory secrecy issues for protecting national security under 35 U.S.C. 181, the right to just compensation under the Fifth Amendment, foreign filing without a license, and penalties of $10,000 or imprisonment of up to two years.

Partly to insure adequate review of those security issues that might arise in this case due to Plaintiff's U.S. Patent 3,433,705 in the field of thermonuclear energy, and the inventions upon which he is diligently working to reduce to practice, and the review of the disciplinary coercion, harassment and discrimination issues in this case raised by the Defendants, Plaintiff has appealed to EEO for review, made a motion to continue the Order sealing the proceedings, and another motion to refer the Exhibits to the Lawyer Counseling under Local Rule LCrR 83.16. They can help the Court review the connection thereof with national security issues.

That latter review is much like the review in the PTO for security issues before the granting of a foreign filing license.

Defendant concludes in his defense that Plaintiff cannot make the requisite showing at the higher burden of proof applicable to his motion for mandatory injunction. However, Plaintiff has indeed met his burden of proof. The House of Representatives agrees with Plaintiff in that HR 1908 is designed to fix the unconstitutionality of the Patent Statutes themselves. The presumption of constitutionality of their own statute has been challenged by Congress itself.

14

The Defendants pretend to help the Court in its decision on Plaintiff's motion for Preliminary Injunction by reminding the Court of a confidential matter that is not admissible or relevant to the proceedings in this case. Instead of aiding the Court's decision, it is intended to inflame the Court by offering clearly inadmissible evidence that is only temporarily under seal, and for which Defendants have argued for the public to have access to. And so Plaintiff would remind the Court of the possibility of a warning from the Court due to the strong objection by Plaintiff that such actions are unacceptable to the Plaintiff and subject to review and appeal as to their admissibility despite the Pro Se status of Plaintiff. Plaintiff hereby strongly objects to the admission of such evidence.

The public interest is not furthered by the introduction of inadmissible evidence. It is hindered.

The ability to pass the Patent Office Exams is not relevant to the issue of Plaintiff's good moral character and reputation. Footnotes 3, 4, 6 and 7 are relevant to that issue, which is a most important criteria for determining whether a Preliminary Injunction will further the public interest.

The public interest is in no way harmed by the scores achieved by Plaintiff on the Patent Office Exams. The granting of a Preliminary Injunction in no way affected by such scores, and the public is in no way affected by any of those scores. Those scores, on the contrary, help the PTO, and, thus the public, in developing rational, reasonable and effective test materials for testing the ability of senior citizens to take the test with and without reasonable accommodations and in improving those tests so that they do not unfairly discriminate against senior citizens having medical limitations who want to take the test for CLE purposes. Plaintiff has appealed to the EEO to help OED make the

decision is has to make in this matter with the aid of this Court and Plaintiff's request for a hearing on the merits.

These tests are in no way critical to the determination by this Court as to whether the Plaintiff as a patent practitioner is capable, eligible or qualified to file and prosecute his own patent applications and/or trademarks applications for himself and others, as he is now able and qualified to do and does with the permission or without the permission of the Defendants. The grant of Plaintiff's Motion would not permit Plaintiff to hold himself out as being anything other than who is. Who he is a practitioner who wants to wants use his name as an attorney in the prosecution of his existing patent and trademark applications, and those he wishes to file in the future for himself.

Nevertheless, he has asked for their permission and they have failed to make a Decision. That is one of his grievances for which has requested redress. And that is one of the general and specific legal claims of the Plaintiff in this case.

The PTO has never disciplined the Plaintiff for any incapability or lack of qualifications. They have only threatened to do so because of a phantom disability without probable cause by invading Plaintiff's privacy and confidential material, part of which is reflected by the Exhibits in this case.

Plaintiff's request for a Preliminary and Permanent Injunction and Mandamus is to free him from illegal actions by the Defendants. The Court should obviously permit Plaintiff and all other applicants past and present for the Court's determination that their applications cannot be appealed to an illlegitimate Board of Appeals not authorized under Art. II.

<u>The Defendants' Opposition Should Be Found To Lack Merit, Or To Be</u>

<u>Irrelevant, Inaccurate, Misleading Or Non-Responsive</u>

A problem with Defendants analysis of Plaintiff's case is that Defendants have chosen *not* to answer or be responsive to Plaintiff's specific legal claims. Instead they have made clear that they will allege that guesswork is necessary, and that Plaintiff's general legal complaint is unintelligible by calling it "not relevant, as in footnote 1, or "mostly" unintelligible" in line 6 of page 1 without even mentioning *all* of Plaintiff's challenges to federal statutes.

Contrary to what Defendants alleged, Plaintiff has the right to challenge the constitutionality of any one or all of three federal statutes under 28 U.S.C., a well as under other rights and statutes without limitation, including any one of Art. I, Sec. 8, cl. 8, Art. II, Sec. 2, cl.2., Art. III, Art. IV, or the First, Fourth, Fifth, Tenth or Fourteenth Amendments.

None of those constitutional challenges are hard to understand, none of them require any guesses, and none of them are prolix, as alleged by the Defendants on page 1 of their Opposition.

Accordingly, Plaintiff has asked the Court to Certify Plaintiff's challenges of federal statutes to the U.S. Attorney General, the current nominee by the President who is Michael B. Mukassey, former chief judge of the [2nd] Circuit in New York. He is reported to have said in hearings before Congress that, "I will tell people specifically and I will tell them in action," [and that includes the Defendants in this case] "that I am receptive to and supportive of anyone who can disclose any impropriety, whether its' in the way rules are applied or in the rules themselves." <u>Washington Post,</u> pae A8, October 19, 2007.

<u>Plaintiff Will Be Irreparibly Injured If Injunction Is Not Greanted.</u>

The disciplinary Patent Office rules have been wrongly and illegally applied to the very great injury of the Plaintiff, estimated to amount to possibly over $1,000,000, and they include irreparable damage that cannot be denied. He is not free to advertise his name as either a practitioner or an attorney in patents and trademarks as long as Defendants fail to answer Plaintiff's challenges for review of his requests for reasonable accommodation, (albeit, Defendants admit not answering his July 12, 2006 and May 21, 2007 petitions – see their November 30, 2006 letter in their Exhibit 28.

In that latter letter in that Exhibit 28 they admit that they are still "carefully considering your Petition for Review submitted on July 12, 2006" and they go on to say that, "A Decision on that Petition will issue in due course," but it never did). How can Plaintiff ever appeal such a Decision to this Court if Defendants never answer their administrative and enrollment challenges, including at least two timely Petitions for Review? How can Plaintiff be said to be untimely, if the Defendants abandon and waive their right to make an administrative Decision by failing twice to make a timely Decision or answer a legitimate and timely administrative Petition for review. Plaintiff is irreparibly injured by this failure of Defendants to make the Decisions requested, and their duties, which they are sworn to perform. See, for example, 28 U.S.C. 1001 (Action to Compel an officer of the United States to perform his duty), and Federal Rule 5.1 (Constitutional challenge to a Statute)

Defendants are trying to mystify the new rule that they have tried to lay down in this case, namely fail to answer and make an administrative enrollment or "Official" *Decision* by clear and convincing evidence. Instead, simply, quietly and even secretly,

fraudulently or illegally without authority under Art. II, Section 2, cl. 2, judicially seize

Plaintiff's property in his Certificate of Registration as contraband at some indefinite,

undetermined time, without adequate notice, probable cause, any basis in fact or even an

investigation, due process, an opportunity for a hearing, or just compensation, by holding

Plaintiff endlessly as a hostage to an intent to coerce him by threats of judicial discipline

under 35 U.S.C. 32, fines under 35 U.S.C. 33, and imprisonment for up to 5 years under

18 U.S.C. 1001 if he uses his name as a practitioner or even advertises as an attorney,

agent or firm in a case filed for others under 35 C.F.R. 10.14  or 32; pro se under the

Judiciary Act of 1789 (albeit it was later codified at 28 U.S.C. 1654, providing that the

parties may conduct their own cases  by practicing pro se personally or by counsel), or if

he asks for reinstatement after Defendants fail to make any administrative *Decision* on at

least two requests for review, as stated by Defendants Opposition, and have thus, waived

their right to make an administrative decision, as stated publicly by Defendant Moatz on

June 15, 2000 in Exhibit 33.   That scenario was illegally initiated secretly without

adequate notice or an opportunity of a hearing, due process, or just compensation so that

the coercion could continue illegally from a secret, undetermined time to some

undetermined time., see the March 4, 1996 handwritten note of Karen L. Bovard,

Director of Office of Enrollment and Discipline (OED) in Exhibit 8, in which she

threatens to remove Plaintiff's name from the roster of attorneys without notice, an

opportunity for a hearing, due process an investigation or probable cause as a punishment

at an indefinite and undetermined time beginning in June 1986.

Still further, the threats and coercion continued secretly and illegally or

fraudulently as shown by Exhibit 31, which is a binding admission by the PTO in a

declaration. That Declaration admits that the Defendants didn't remove Plaintiff's

Registration No. 19,240 from their various registers until they allegedly did so on

December 22, 2006. But even then they fraudulently and secretly concealed the removal

by using Plaintiff's Registration No. 19,240 on the Patent Office Exam he took on July

16th and 17th 2007. That number was fraudulently and secretly changed to an ID number

of 41,361 on the face of the exam reviewed by Plaintiff on October 4, 2007, after Plaintiff

took the Exam.

Defendants continue to hold Plaintiff and his Certificate of Registration hostage

under 35 U.S.C. 32, without a notice an opportunity of a hearing (albeit, Plaintiff asked

for the reasonable accommodation of such a hearing and no administrative or judicial

Decision on that request, or any opportunity for Defendants to give Plaintiff a hearing

was made). Additionally, Plaintiff has been threatened with threats of fines and up to

five years in jail under 35 U.S.C. 33 and 18 U.S.C. 1001 by the failure to give him

reasonable accommodations, such as by a waiver or suspension of the Rules under 37

C.F.R. 10.158 or revisions. Defendants also failed to return Plaintiff's property in his

Certificate of Registration by a show cause hearing in Replevin or Detinue at any stage of

their administrative proceedings. And they did not give him an oral hearing or make an

"Official" judicial decision to refuse to do so because they lack authority to either

proceed on a Petition to the Defendant Dudas, or to refuse to grant him a patent on the

invention claimed in his application in the Board of Appeals under 35 U.S.C. 6.

They Attorney General Nominee Mukasey's reported statement that he would

follow the law or resign, are applicable to this case, because he said he is "receptive to

and supportive of anyone who can disclose any impropriety, whether it's in the way rules

are applied or in the rules themselves" (albeit the "anyone" he was referring to includes the Plaintiff in this case, and the "anyone" also refers to improprieties and fraud, or other misfeasance of the Defendants).

A problem of the Defendants' non-responsive Opposition is that appears to blemish the strength of their defense or their veracity in making a full disclosure, as they are required to do. The Court cannot ignore the Defendants improprieties either by their magistrate judges or their common requirements for proper grounds and procedures that do not ignore or hide the unconstitutionality of their improprieties in their actions as "Officials," whether it be under the authorization of Art. III or Art. II, Sec. 2, cl.2.

The Defendants seem to be inconsistent in their pleas of ignorance on page 1 of their Opposition and what Defendant Moatz said in his lecture to the IPO meeting in New York. Patent-O, 10/16/07. Or are they hiding their improprieties and duties to make reasonable disclosures and inquiries, as described by Defendant Moatz, e.g., in connection with 18 U.S.C. 1001, or Section 10.18(b)(2), 10.23 (b)(5). (c)(10). (c)(15_. 10.77 (b) and (c), and 10.85 and 10.85 (a)(1) and (2) of 37 C.F.R, etc..

He cited the fact that Courts have held that Rule 11 "requires counsel to read and consider before litigating." Thorton v. Whal,, 787 F2d 1151, 1154 (7th Cir. 1986); U.S. Bank National Association N.D. v. Sullivan-Moore, 406 F3d 465 (7th Cir. 2005) – An attorney' plea of ignorance [of the contents of the filed paper] is unavailing.'" Chambers v. Am. Trans Air, Inc., 17 F3d 998 (7th Cir. 1994). Rule 11 establishes an objective test, and as we have repeatedly observed, an 'empty head but a pure heart is no defense." See, for example, Defendant Griffin's allegation of a pure heart by "good faith" declaration in paragraphs 6 b in Exhibit 32, and his mea culpa confession and reversal of his conclusion

on March 22, 2005, that, "based on the current record, you have not presented in sufficient evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

And that, of course applies to both the unchanged binding admission made originally, and it still applies by good faith to my admitted "continuing possession of the legal qualifications necessary to render applicants for patents" [and trademarks] "valuable service" in my own service as a practitioner in the Patent Office, and/or as a practitioner for others in the Trademark Office under 35 C.F.R. 10.14. Defendant Griffin's mea culpa confession differs from that.

That confession continues without limitation, and at the least, to the threat of injury to Plaintiff by harassment, interference with his profession and ability to advertise his name as an attorney without prior restraint, discipline, coercion, fines and imprisonment for legal activity without investigation, probable cause, any basis in fact as to a phantom disability, adequate notice, an opportunity of a hearing, due process, and/or just compensation for secretly seizing his Certificate of Registration at a still undetermined date subsequent to 8/28/96, and the failure to grant Plaintiff a hearing on his requests for reasonable accommodation.

Moreover, Defendant Griffin's mea culpa flies in the face of contradicting evidence in notes 4, 6 and 7, and three Orders in Exhibit 22 by competent judicial "Officers" who are legally authorized to raise an opposite presumption that is entitled to full faith and credit, as well as deference under Art. IV, and Section 1738 of the Judicial Code, in the face of judicial function not authorized under Art. II, Section, 2, cl. 2.

The key to the reception and support of Plaintiff's disclosure to this Court of Defendants' impropriety, in the application of the rules and in the rules themselves, as vouchsafed by Attorney General designate Mkasey, is disclosed by Plaintiff's disclosures in his summons and complaint. Similar information, as well as the binding admissions by the Defendants in their Exhibits, clearly shows the Court how weak and unpersuasive are the arguments of the Defendant, especially in the face of their own collateral but feeble attacks on their own binding admission, and inability to understand Plaintiff's simple and straight forward legal claims.

The impact and veracity of Plaintiff's disclosures and legal claims is strengthened by the credibility of his attempts to achieve administrative decisions without success. The Defendants have admittedly refused over many years to make the administrative decisions that they say are necessary but lacking in this case because of their own misconduct and delays.

One example is the improper delay and refusal of the Defendants to Decide whether to suspend the Rules, which is only one of the reasonable accommodations requested by Plaintiff that was never granted. A Decision was delayed so long that it was forgotten and never given. That was only one of many improper delays of a Decision, and failure to ever answer the requests and petitions for review by the Defendants.

Contrast that delay and refusal to grant a reasonable accommodation with the allegation of the Defendants on pages 15, 16, 25 and 27 that they have given Plaintiff *all* the reasonable accommodations requested by Plaintiff.

Defendant Moatz in his cited lecture in New York emphasized the importance of disclosing delay for improper purposes, such as the delays for improper purposes in this

case under 37 C.F.R. 10.23 (b)(4)) and (5), or Disciplinary Rule 10.85 (a)(1), which involves harassment or injury to another in reexamination situations, such as this case where the Defendants conduct is being reexamined for his own good and that of the public at large.

Defendants' improprieties are not excused by their failure to use their heads, as stated in the above-cited case recently cited by Defendant Moatz in his recent talks to the patent bar.

### Harm To The Public Interest

Defendants on page 32 of their Opposition state that the "public interest will be greatly harmed by an order of the Court permitting Plaintiff to practice patent law before the USPTO." But it is not in dispute that Plaintiff can and already does practice patent law before the PTO in his currently pending patent application.

Are Defendants seriously arguing that the Court will grant permit Plaintiff to do what he can is already doing? Are they seriously arguing that the Court will greatly injure the public interest by permitting Plaintiff to do what he is already doing? Everyone already agrees that the Plaintiff is not public enemy number 1, and that he has not, is not, and will not harm the public interest. Granting the preliminary injunction will in no way have any harmful effect on the public (albeit, the effect on the public interest will be a good effect)!

After all is said and done, this is a legal claim for *writs of mandamus*, and an action under 28 U.S.C. 1361, without limitation only to that statute in this legal claim, has not been addressed by Defendants. This is a legal claim by Plaintiff to compel an officer of the United States to perform his duty, in which the "district courts shall have original

jurisdiction of any action in the nature of mandamus to compel an officer or employee of
the United States or any agency thereof to perform a duty owned to the plaintiff." This is
not just an appeal of an administrative action based upon an administrative record in the
PTO, e.g., to reverse what the Defendants have done, but to compel them to perform
their duties, and to perform them constitutionally under constitutional statutes (albeit, the
Defendants have also made Decisions and have failed to make administrative Decisions
that are to be independently appealed to this Court).

It will be much better for the public interest to agree that what Plaintiff is seeking
to do is to help the public interest, rather than to attack what he is doing on page 32 of
their Opposition. Agreeing to help the public interest is the sworn duty of the
Defendants. It is not their sworn duty to thwart the public interest, and it is obviously in
the public interest to agree with Plaintiff's obvious, good faith attempt to help the public
interest, not only by compelling the Defendants to do their sworn duty, but also in a way
consistent with what the Congress in HR 1908 is trying to do to help the public interest.

Defendants' posting of Plaintiff's marks on the Patent Exam on page 32 of their
Opposition is irrelevant, in that those marks have no effect on the public interest except to
enhance it by giving the PTO information it needs to make the Exam better able to reflect
the needs of the Exam to help, especially for senior citizens with medical limitations who
need reasonable accommodations that are still lacking.

It is inadmissible and on page 32 of Defendants Opposition to post non-public
information that is not only private and privileged, but also incorrect in note 19. That
note should be, and it is requested that it be redacted. Note 19 is objected to for those
reasons. No evidence is supplied other than idle and incorrect speculation to support note

19, or the statement allegedly describing the circumstance or catalyst for Plaintiff's "desire" in 1995, or that it was an admission of his "desire" relating to his enrollment on the Maryland or PTO lists of "active" or "inactive" attorneys.

Exhibits 8, 31 and 33 gives some incite into the fact that Plaintiff's registration number was and is carried on at least one PTO register in at least one or two different forms. Those Exhibits are evidence that his ID was never "removed" from all those registers in all its forms, or the specific dates it was added or temporarily subtracted or moved. Evidence is still lacking and is required to be shown by the Defendants by clear and convincing evidence in the show cause hearing requested by Plaintiff's Motion for Preliminary Amendment, as to why Plaintiff's ID should by clear and convincing evidence be shown to be currently enrolled or de-enrolled permanently, temporarily or otherwise, or simply moved by intention or by mistake, and why his personal property in his Certificate of Registration and Exams should not be returned to him, at least for review without secretly or fraudulently changing it on its face. Those Exhibits are evidence that his number is still carried on at least one register in Maryland and the PTO in at least one form, and possibly two that may relate only to Plaintiff's active or inactive status. Defendants' letters of April 5, 2006, which was signed by Stephen K. Hanson, Program Analyst in OED, and May 24, 2005, signed by Ms. Christine Nucker, Enrollment Administrator, are clear evidence that Plaintiff's Registration Number 19240 was still being used and carried at least as late as those dates on at least one PTO registry of active or inactive attorneys.

<u>No Injury to the Defendants</u>

26

The above-cited Exhibits 8, 31 and 33, contrary to what Defendants allege on page 32 of their Opposition, (and to which "allegation" Plaintiff hereby objects), are evidence that Plaintiff is not asking in his Motion, nor will granting that Motion permit Plaintiff, to hold himself out for something other than what he is (nor would it "reverse OED's determination," which, as admitted by Defendants, e.g., as stated above, has *not* been made because no Decision on Plaintiff's two Petitions for Review have been made).

Contrary to what Defendants allege on page 30 or their Opposition, Plaintiff will be irreparably injured if the injunction is not granted. Plaintiff will continue to be harassed by failure to clarify his status as "inactive" or "inactive" in one or both the Patent Office and/or the Trademark Office, where he is now barred and coerced from practicing at all by threats of fines and imprisonment of up to five years under 35 U.S.C. 33 and 18 U.S.C. 1001.

Contrary to what Defendants allege on page 31 of their Opposition, an injunction will not substantially or in any other way injure the USPTO. In order for the Defendants to do their sworn duties.

They are required to promote the Progress of Science and useful arts under Art. 1, Section 8, cl. 8. It is their sworn duty to recognize the compelling public interest by narrowly tailored means for effecting the non-disciplinary function of *recognizing* and *enrolling* agents, attorneys sand other persons (albeit that includes *practitioners* such as Plaintiff in his current applications but also others) representing applicants and other parties before the PTO (albeit, as mentioned, this includes applicants who are attorneys, such as Plaintiff), especially those of good moral character and reputation and possessed of the necessary qualifications to render to applicants or other persons valuable service,

advice, and assistance in the presentation of the prosecution of their applications or other business before the PTO. The Patent Office has the duty to use the Exam as only one of the ways used for measuring the wide range of *comparative advantages,* skills and experience of practitioners.

It is difficult if not impossible, and undesirable, to scientifically determine the level of skill of an attorney or agent, especially because applicants take the Exam for a variety of reasons, including strictly academic reasons. Also, the applicants to take the Exam are *limited* to only who those who are already *recognized* by the Defendants as capable of rendering to applicants or *other persons* valuable service, advice, and assistance in the presentation or prosecution of their applications or *other business* before the PTO by education and experience.

The sworn duty of the Defendants is to use narrowly tailored means to encourage the progress of Science and the useful arts by enrolling applicants having education or experience to become patent examiners, to be enrolled in foreign patent offices, or to have experience in scientific and engineering capacities. The persons allowed to take the Exam are already filtered to exclude persons without the qualifications to render to applicants or *other persons* valuable services, advice, and assistance in the presentation or prosecution of their applications or *other* business before the PTO. The narrow tailoring ensures that the *enrollees* are not limited to just those practitioner who *prosecute* for others, because may practitioners perform valuable services, advice and assistance in presentations or *other* business before the PTO.

To this end, the first sworn duty under 28 U.S.C. 1001 that they are sworn to do, and may be compelled to perform in the public interest, is to *recognize* and *enroll*

attorneys and other *practitioners,* not just to "govern" and/or to *discipline* under 35

U.S.C. 32, or just in appeals before a Board of Appeals authorized unconstitutionally

under 35 U.S.C. 6.

   The duties to "enroll" and "discipline" are separate and distinct from each other,

and from their sworn duty to *govern* the actions of *practitioners* or "others" in business

before the PTO. Those duties are clearly in conflict with each other when they are

combined in one office and performed by the same "Officials," especially when their

*disciplinary* functions are not properly "authorized" under Art. II, Section 2, cl. 2.

   The latter duty is strictly a *disciplinary* duty independent and distinct from

Defendants *enrolling* duty, and that *disciplinary* function must be narrowly tailored and

limited, just as any in other judging "Officers," in whom "the Congress may by Law vest

the Appointment of such inferior Officers, as they think proper, in the President alone, in

the Courts of Law, or in the Heads of Departments."

   The *disciplinary* duties of Defendants are governed by the Federal Rules of Civil

Practice, just as the duties of the Board of Appeals and the Magistrate Judges in this

Court are governed and limited. The have the same burden of proof. That *disciplinary*

duty is focused on "inferior Officers," as specified in the Constitution, and narrowly

tailored to meet the compelling interests of the public under the First, Fourth, Fifth, Tenth

and Fourteenth Amendments. It is not to secretly harass, coerce by prophylactic editing,

or to interfere with or invade Plaintiff's profession, or his private or privileged

professional papers or other information by prior restraint. The latter occurred in this

case as the editing of Plaintiff's advertisements of his name as an attorney in patents and

trademarks; and by the seizure of his personal property as contraband because of a

phantom disability. There was no "desire" by Plaintiff for "removal, as it was put in Note 19 on page 33 of Defendants Opposition. It was the Defendants illegally, secretly, and irrationally seized his certificate of registration and/or his ID in abeyance for consideration harass Plaintiff and to seek his punishment when Plaintiff sought *reinstatement*, as described in Defendants' June 15, 2000 letter in Exhibit 33, or *investigation* for the purpose of one of more unspecified reasons, as described in Exhibit 8.

<u>Plaintiff Is Likely To Prevail On His Remaining Claims</u>

Defendants mistakenly argue that Plaintiff has no rights to a Preliminary Injunction on Administrative issues, but they do admit that Plaintiff has other "remaining claims."

<u>Plaintiff Is Likely To Prevail On All Claims, Including Remaining Claims</u>

Defendants' Opposition alleges that "*all*" of Plaintiff's request for reasonable accommodations have been provided by Defendants.

As an example, page 15 of their Opposition states that, "All of the accommodations that Plaintiff requested in connection with his 2007 examination" have been provided by OED, " but that does not limit the requested accommodations for which Plaintiff has made a legal claim for relief to those provided for the 2007 examination, and does not include "*all*" the accommodations requested from the Defendants in their official and unofficial capacities, and/or from the Defendant U.S. Patent and Trademark Office. See pages 15, 16, 25 and 27 of their Opposition.

Defendant Moatz, admits in paragraph 11 of his Declaration in Exhibit 33, that "Although Plaintiff has not applied to take the patent examination again, I see no

foreseeable reason that Mr. Cornish would not be granted the same accommodations provided him for the 2007 examination."

This is a binding admission by Defendants that there is no foreseeable reason why Plaintiff will not have justifiable grounds for such accommodations in the future; that the need for such accommodations are well documented by fully accredited personnel and are not in dispute; that the accommodations provided are agreed on in advance and they are not in doubt; that the agreed upon accommodations need not be endlessly documented by repeated applications, requests and fresh documentation; that the examinations will be provided over and over again to the Plaintiff with out charge; and the accommodations provided in the future are not limited to those already given, but may added to by other accommodations, including accommodations similar and different from those provided heretofore, either in 2007, or at some other time.

Accordingly, it is only necessary to determine what accommodations have not been granted, what accommodations have not been refused and when they were refused, and what requests for accommodations not previously granted but which were requested for which Decisions were never communicated to the Plaintiff, so that the date on which the refusal was made cannot be determined. Likewise, similar and different accommodations made be directed to be made by mandamus in this action, especially where the underlying basis for the previously granted accommodations are similar. Accordingly, a legal claim on an appeal in this Court of the actions and inactions of the Defendant can be appealed in a Mandamus action in this Court, which can overcome a defense by the Defendants of being time-barred in this Court by Defendants' defense in their Opposition. As to the defense of a time-bar, an appeal to this Court cannot always

be a time-barred administrative Decisions, because the discretion of this Court is not a

jurisdiction defect and time-bars can be tolled by this Court.

Obviously a decision as to whether a legal claim is moot is subject to a de novo

review and hearing in this Court on the merits, and is subject only to the proper discretion

of this Court as pointed out in Plaintiff's Summons and Complaint, his Motion for

Preliminary Injunction and his Memorandum in Support of his Motion for Preliminary

Injunction, and his other filings and Motions in this case.

Conclusion

In Conclusion, the Court should consider that the Defendants Opposition and

defenses to Plaintiff's legal claims are without merit, and should deny the defenses of that

filing by granting Plaintiff's Motions for Injunctive and Declarative Relief, including

*inter alia,* without limitation, Mandumus under 28 U.S.C. 1331, 1338, 1361 and Rule 5.1

of the Federal Rules of Civil Procedure, referral under Local Rule LCvR 83.20 of the

Defendants Exhibits under seal to the Lawyer Counseling Panel for Review, and should

grant Plaintiff's attached Motion to make said referral, and Motion To Continue the

Court's Seal Order of the entire contents of this case.

Respectfully submitted,

Cornell D. M. Judge Cornish

Cornell D.M. Judge Cornish
DC Bar No. 366240
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705 (voice and fax)
E-mail: cornishj@erols.com
Plaintiff *pro se*

Date:   10/22/07

**Certifiations**

Plaintiff declares on information and belief, as follows:

That on  2 2nd day of October , the undersigned Pro Se Plaintiff, Cornell

D.M. Judge Cornish, personally hand carried and left a copy of the above Answer and

Reply Brief To Defendants' Opposition And Memorandum in Support of Their

Oppositio, with the docket clerk designated by U.S. Attorney for the District of

Columbia, at 501 Third Street, NW, Washington, DC 20001, said Attorney having made

an appearance and personally appearing in this case for the Defendants, and he has

designated a docket clerk to receive filings for the Defendants, including the U.S. Patent

and Trademark Office, Madison West Building, 600 Dulany Street, Alexandria, VA

22314; and the undersigned included with the above service as an attachment, Lodging

Material, a copy of Plaintiff's Motion To Continue the Courts' Seal Order of October 12,

2007 in this case Until Modified or Resolved, and Plaintiff's Motion To Refer the

Exhibits in the file of this case submitted by the Defendants to the Lawyers Counseling

Under Local Rule LcRr 57.3.

The undersigned all hand carried and deposited one copy of all said documents by

hand so as to file them in the U.S. District Court For The District of Columbia on the

same date by dropping them into the public drop-box on Third Street for filing in the U.S.

District Court for the District of Columbia under Case No. 07-cv-01719.

Date:  10/22/07          *Cornell M. Judge Cornish*

<u>Lodging Material</u>

The undersigned Cornell D.M. Judge Cornish is 78 years old and an attorney with obvious physical limitations without reasonable accommodations about which there is no dispute, and he is prosecuting this case pro se without sufficient funds to hire a lawyer. Hiring a process servers at $65 per service would cause undue hardship, and Plaintiff will to the Court that it should appoint a pro bono lawyer in view of the complexity of this case and the help it would afford to the Court.

Moreover, this is a good faith effort to address in the most efficient manner the issues involved, which are of substantial importance to public interest.

<u>This Case Is Not Moot and Involves Irreparable Injury To Plaintiff</u>

This case involves current, important and real controversies between the Plaintiff and the Defendants, because Defendants have interfered with Plaintiff's

34

constitutional rights, inter alia and without limitation thereto, by coercing Plaintiff to illegally edit his current U.S. Patent and Trademark Applications, and by barring Plaintiff from advertising his name as an attorney in patents and trademarks even though he is an attorney who has been practicing Patent and Trademark Law specifically, and Intellectual Property Law generally under Registration No. 19,240, for over thirty years. Thus, have and currently are irreparably Injuring Plaintiff in his profession and reputation, and they have subjected Plaintiff to unnecessary expense, ridicule and embarrassment and unconstitutional discrimination.

Furthermore, the Defendants in their Official and Unofficial Capacities have failed to do their sworn duty on behalf of the public interest at great cost to Plaintiff and the public, and improperly applied the rules and laws applicable to the Defendants, including the Defendant U.S. Patent and Trademark Office. Those rules and laws include the Patent Laws, and Defendants have delayed and thwarted the curing of constitutional repair to those Rules and Laws that are required, and by impropriety in applying those Laws and Rules themselves, all to the great injury of the Plaintiff and the public.

Defendants by their letters, including their letter of August 22, 2007, and their Opposition to Plaintiff's Summons and Complaint, effectively restated a new prophylactic rule, first stated in Defendants' letter of May15, 2007, without due process, probable cause or a hearing in violation of Plaintiff's constitutional rights, causing him irreparable injury; namely that: the controversy over Plaintiff's injury due the Defendants violation of Plaintiff's constitutional rights of speech, press, petition, privilege, property, due process, privacy, confidentiality, just compensation for seizure of his property as contraband, his patent rights under: Article II, Section 2, cl. 2 and Article I, Section 8, cl.

8 of the Constitution of the United States; 35 U.S.C 2, 6 and 33; and Plaintiff's rights

under the Administrative Procedures Act, are "moot."

The "mootness" scenario, and the phantom presumption raised by Defendants

thereby, also effectively restated another new prophylactic rule, first stated in

Defendants' letter of November 30, 2006, without due process, probable cause, a hearing

or reasonable accommodations, namely that: Plaintiff's requests for reasonable

accommodations to take the Patent Office Exam in 2007 without reasonable

accommodations for merely academic purposes, such as Continuing Legal Education,

were also "moot."   One possible excuse was that Plaintiff was allowed to take the exam

without cost in 2007.   Another possible excuse was that Plaintiff had had passed the

Exam in 1958,  Still another possible excuse was that the Patent Office now allows

qualified applicants permission to take the exam endlessly for mere academic reasons,

such as for Continuing Legal Educations reasons.

But those excuses only masked the underlying existing controversy that is not

moot for further arbitration in this Court.

To this end, Defendants letter of March 22, 2005, revealed their intent to thwart

Plaintiff's attempts to exhaust his administrative remedies by a frivolous and capricious,

but nevertheless an unconstitutional abuse of discretion, which was thrust at Plaintiff like

a bolt of lightning, i.e., by placing Plaintiff on disability inactive status for an imaginary

disability, *nunc pro tunc* to in April 1996, to thwart his Petitions to the Commissioner,

and thereby refusing all efforts to recognize Plaintiff as an attorney, or to recognize

Plaintiff's Certificate of Registration, which Defendants seized as contraband without

probable cause, due process, just compensation or a hearing with the intention of refusing

to reinstate him under Registration No. 19,240, until he passed another Patent Office Exam at his own expense again without reasonable accommodations to accommodate his physical limitations, all of which have been documented by licensed physicians, and none of which are in doubt.

Defendants intended illegally and needlessly to create an endless controversy that irrevocably punishes and injures Plaintiff by keeping him from advertising his name as an attorney in a patent or a trademark without due process, a hearing or probable cause, by discriminating against him in favor of young, healthy, white men, and by exposing him to public ridicule, shame and embarrassment. This, moreover, includes exposing Plaintiff to fines of $1000 per day for continuing to use his name as an attorney without correction in his U.S. Patent No. 5,256,367; his Patent Application S.N. 29/273,235, filed 02/26/2007; and his U.S. Trademark Application S.N. 77/247,319, filed 08/04/2007, by requiring him to pass the Patent Office Exam in 2005, 2006 and 2007, even though he has passed it once in 1958, thereby qualifying him to regularly use his name as an attorney in a U.S. Patent or Trademark for over thirty years.

There is no yearly fee for maintaining Plaintiff's name on the roll of attorneys, and Plaintiff was told that he could take the Patent Office Exam without charge and without any showing of fitness for reinstatement, which he did for Continuing Legal Education purposes. He did so in 2007 because he was authorized to do so for merely academic reasons, such as Continuing Legal Education without reasonable accommodations.

Moreover, Plaintiff reasonably believed he was registered, or his registration could easily and automatically be restored without paying the $1500 fee required by 37

37

C.F.R. 10.159, or even if his registration had somehow lapsed because he had become inactive in response to inactivity in Maryland, where the lapsing of his registration kept him from paying the yearly fee. Such a fee is required in Maryland, DC and New York where Plaintiff is now active without any requirement for a showing of fitness for reinstatement, such as happens also regularly in this and other state and federal Courts once registration is achieved and the attorney becomes temporarily inactive.

Instead, however, Plaintiff was punished *nunc pro* tunc, back at least to April 1956 by the Defendants' manifestly unjust bolt of lightning on March 22, 2005, which was completely inconsistent with Defendants' express conclusion from the current record in this case, according to that letter, that Plaintiff had "not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

Stated another way, the record showed that there is no statutory requirement for passing the Patent Office Exam twice, and Plaintiff had met the statutory requirements for admission, registration and advertisement of his name as an attorney in patents and trademarks in 1958. Therefore, he could expect to be automatically reinstated under his Certificate of Registration No. 19,240.

Accordingly, the controversy continues as to whether Defendants actions are unconstitutional or otherwise illegal.

Thus, Plaintiff seeks a declaratory judgment and preliminary injunction in this Court approving his right to advertise his name as an attorney in his present and future patents and applications, and to reverse the new unconstitutional, Prophylactic Patent Office Rules and Presumptions that Defendants illegally imposed on him without due

process or a hearing by prior restraint of his rights of speech, press, petition, privilege, property, due process, privacy, confidentiality, and unreasonable seizure without due process, just compensation or access to this court heretofore. The Defendants actions also violate the Administrative Procedures Act (APA), the Patent Laws, and other laws and Rules of the PTO.

These unconstitutional and illegal infringements of Plaintiff's rights are in present controversy and are not moot.

Plaintiff is under threat of million dollar fines for not correcting his name as an attorney in patents and trademarks, and that involves retroactive removed. Under the new rules of "mootness," he would not be able to continue his registration and advertisements in patents and trademark without possible discipline and punishment of $1000/day, and immediate fines for failure to file and pay for a certificate of correction in his unexpired U.S. Patent No. 5,256,367, where he truthfully advertised his name as an attorney, agent or firm.

This is a surprising rule that operates on the presumption that Plaintiff has the burden of showing that his constitutional defenses to the disciplinary system put in place in the Patent and Trademark Office without due process or a hearing are not absent or moot. The controversy exists and is not moot. The controversy remains each time Defendants violate Plaintiff's rights, no matter how many times he asks for manifest justice, and now matter how many times they violate his rights by insisting that he retake the Patent Office Exam until he gets a passing grade again.

Plaintiff does not believe in good faith that the Defendants are free to endlessly and paternalistically govern his conduct with a prophylactic approach to his advertising,

even if it is geared to persons with specific legal problems, or merely to the publication of inventions in a patent by the Plaintiff for himself or by rendering others valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the PTO.

Serious paternalistic and prophylactic efforts to punish lawyers, govern their conduct, destroy them in their profession, and to limit them from publishing information to the public by prior restraint of their advertisements, were defeated in a long line of Supreme Court cases, including. <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court of</u> Ohio, 471 U.S. 626 (1985). That is just one case that requires narrow tailoring whose air is to provide a compelling governmental interest.

In that case, there was no compelling interest served by the application of rules governing lawyers conduct relating to the nature of practice geared to personas with specific legal interests.

The paternalistic or prophylactic effort made was not found to be compelling, despite the dissent of Justice O'Connor, who is not now on the bench. And, there is no cause for consternation. When a person believing in good faith and on the basis of accurate information regarding his legal rights, that he has suffered a legally cognizable injury, he can turn to the courts for a remedy. "We cannot accept the notion that it is always better for a person to suffer a wrong silently than to redress it by legal action." <u>Bates v. State Bar of Arizona,</u> 433 U.S. 376.

This Declaration and Memorandum in Support, requests Defendants to agree to a Prompt and Timely Appearance and Waiver of Service by the Defendants in their respective Official Capacities, as stated in the Title of this Case, by scheduling their

40

appearance at a meet-and-confer conference mandated by the requirements of 28 U.S.C. sec. 636 ( c ), Fed. R.Civ.P.73 and Local Rule 206 before this case is assigned to a Magistrate Judge for trial.

To advance this case to issue, and better enable the parties to determine the procedures to be agreed on in this case, including whether this case should be a jury or non-jury trial, and whether the parties agree that this case should be re-assigned to a Magistrate Judge from the already designated Judge Richard W. Roberts, the Defendants are requested to waive service to save time, to avoid delay and expense, to advance this case to issue promptly in a timely fashion, and to relieve all the parties of some of the heavy burdens involved in this important case.

To save time, to avoid delay and to make a proper record, the Defendants, in their Official Capacities, have set up public access and designated Officials for receiving hand delivery of papers and other filings as following locations:

The U.S. Patent and Trademark Office, and adjacent Offices of the Solicitor and the Office of Enrollment and Discipline, Madison West Building, 600 Dulany Street, Alexandria, VA, 22314; the U.S. Attorney General, 950 Pennsylvania Avenue, NW, Washington, DC 20530; and the U.S. Attorney for the District of Columbia, 501 Third Street, NW, Washington DC 20001.

Plaintiff, accordingly certifies that he did on October 2nd, 2007, hand deposite with Officials designated by Defendants to receive for them a Declaration And Memorandum in Support of Waiver of Service, and Meet-to-Confer Conference, along with a enclosed Summons and Complaint, Motion For Preliminary Injunction, and

Memorandum in Support of Preliminary Injunction at the above locations, according to the following schedule:

Plaintiff deposited this Declaration in Case: 07-cv-01719 by hand together with the Summons and Complaint, Motion For Preliminary Injunction, and Memorandum in Support on October $2^{rd}$, 2007, in the Office of the U.S. Attorney General at 950 Pennsylvania Ave., NW, Washington, DC 20530; deposited this Declaration in Case: 07-cv-1719 by hand together with a Summons and Complaint, Motion For Preliminary Injunction, Memorandum in Support on October 3rd, 2007, in the Office of the U.S. Attorney For the District of Columbia, 501 Third Street, NW, Washington, DC 20001; deposited this Declaration in Case: 07-cv-1719 by hand together with a Summons and Complaint, Motion For Preliminary Injunction, and Memorandum in Support on October $2^{rd}$, 2007, respectively, with the U.S. Patent and Trademark Office and its Officials, in the U.S. Patent and Trademark Offices designated by the Defendants to receive the large volume of hand filings made with them in their Official Capacities, thereby making a record of the same by and for the respective Defendants and the Plaintiff at the U.S. Patent and Trademark Office, comprising the U.S. Patent and Trademark Office, Madison West Building, 600 Dulany Street. Alexandria, VA 22314; and the other Offices of the respective Defendants, comprising: Jon Dudas, in his Official Capacity as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office; Harry I. Moatz, in his Official Capacity as Director of the Office of Enrollment and Discipline; and William J. Griffin, in his Official Capacity as Staff Attorney in the Office of Enrollment and Discipline.

Plaintiff also hand deposited a copy of this Declaration in the Court on October 2rd, 2007, stapled (or otherwise firmly attached) to the Declaration, the Summons and Complaint, Motion For Preliminary Injunction, and Memorandum in Support which were placed personally into the hands of Clerk Nancy Mayer-Whittington under (Docket) Case: 07-cv-01719 (RWR) on September 27, 2007 in order to give the parties as much time as possible in deciding these preliminary issues.

A prompt, timely reply is respectfully requested to the attached papers because the Clerk has given Plaintiff only 60 days to obtain service of the Defendants in order to move this case forward.

Respectively submitted,

Cornell D. M. Judge Cornish

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:

District of Columbia:
                    : ss
City of Washington:

Sworn to and subscribed before me this          day of          2007.

43