UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

**RECEIVED**
NOV - 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| Cornell D.M. Judge Cornish, Esq. ) <br> Suite 301 ) <br> 1101 New Hampshire Ave., NW ) <br> Washington, DC 20037-1502 ) <br> (202) 429-9705 ) <br> DC Bar Number 366240 ) <br> ) <br> Plaintiff *Pro Se* ) <br> ) <br> v. ) <br> ) <br> JON DUDAS, in his Official ) <br> Capacity as Under-Secretary of Commerce for ) <br> Intellectual Property and Director of the ) <br> United States Patent and Trademark Office ) <br> And the UNITED STATES PATENT AND ) <br> TRADEMARK OFFICE ) <br> P.O Box 1450 ) <br> Alexandria, VA 22313-1450 ) <br> ) <br> Harry I. Moatz, in his Official Capacity as ) <br> Director ) <br> Office of Enrollment and Discipline ) <br> U.S. Patent and Trademark Office ) <br> P.O. Box 1450 ) <br> Alexandria, VA 22313-1450 ) <br> ) <br> William J. Griffin, in his Official Capacity as ) <br> Staff Attorney ) <br> Office of Enrollment and Discipline ) <br> U.S. Patent and Trademark Office ) <br> P.O. Box 1450 ) <br> Alexandria, VA 22313-1450 ) <br> ) <br> Defendants ) <br> _____) | CASE  07-CV-01719 (RWR) <br> Assigned to: Roberts, Richard W. <br> Assign. Date: 9/26/2007 <br> Description: Pro Se Gen. Civil |

**PLAINTIFF'S MOTION, AND MEMORANDUM IN SUPPORT, UNDER RULE**

**12, TO DEFER DETMINATION OF ALL HEREINAFTER FILED DISPOSITIVE**

**MOTIONS UNTIL TRIAL EXCEPT PLAINTIFF'S MOTION FOR A**

**PRELIMINARY INJUNCTION, *INTER ALIA*, PREVENTING DEFENDANTS**

1

## **FROM OPPOSING AN ORDER TO SHOW CAUSE, AND A MEMORANDUM IN SUPPORT THEREOF, AND IN SUPPORT OF PLAINTIFF'S MOTION FOR A WRIT OF POSSESSION IN REPLIVIN UNDER RULE 64**

This is Plaintiff's Motion To Defer Hereinafter Filed Motions (AS UNRIPE BECAUSE OF SEAL ORDER) Until Trial, Defendants' Dispositive Motions, but not including deferral of Plaintiff's Motion For Limited, Temporary, Preliminary Injunction. This includes Dispositive Motions and Cross-Motions Under Rules 50, 52, 54, 55 and 56 and 64, but excepting Plaintiff's Motion For An Order of Preliminary Injunction preventing Defendants from Opposing an Order "To Show Cause as to why Defendants should not be held accountable in an Action at Law in Replevin under Rule 64, or in a Show Cause Order, under Rule 64, or under Plaintiff's Motion in Equity for by a Partial, Limited, Preliminary Injunction preventing Defendants from Opposing a Motion for a *Writ of Possession* by an Order to Show Cause as to why the Court should not grant Plaintiff a *Writ of* Possession for the return of possession of his personal property and possession of his Certificate of Registration No. 19,240 identifying and describing his property, and why a corrected copy thereof suitable for framing for the fee of $20 in the form of Letters Patent or otherwise by a Certificate of Registration, should not be granted by a *Writ of Mandamus* directing Defendants to recognize and confirm Plaintiff's clear and valid title thereto, by providing to Plaintiff the signed, original Imprimatur of the Defendant Dudas, and the original formal seal of the United States of America, on a copy of the Certificate of Registration No. 19,240, that was issued to Plaintiff on November 5, 1958, with the seal of the United States of America, like the one used in all Letters Patent, and signed by Acting Commissioner of Patents, Arthur W. Crocker, to identify

the Letters Patent granted to Plaintiff on that day to publically Certify that C. Daniel Connish, who is the Plaintiff herein now known by the name Cornell D.M. Judge Cornish, then of Pittsburgh, Pennsylvania, was that day registered to practice before the United States Patent Office as an ATTORNEY, Registration No. 19,240, In Testimony Whereof, said Acting Commissioner formally certified that he had thereto set his hand and caused the seal of the United States Patent Office to be thereunto affixed, at the City of Washington the fifth day of November, in the year of Our Lord nineteen hundred and fifty-eight and of the independence of the United States of America the one hundred and eighty-third.

It is manifestly unjust, and illegal as a matter of law under the First Amendment, for Defendants arbitrarily and capriciously to claim Plaintiff does not have a license to advertise is name as an attorney in his applications S.N. 29/273,235 (filed 2/26/07) and S.N. 77/247,319 (filed 08/04/07), which are currently pending in the PTO, or by not correcting existing U.S. Patent No. 5.256.367. Whether or not he has a license is not *moot*. There is a <u>controversy</u> as to whether Defendants can refuse to allow him to advertise by prior restraint, with a license, or without a license. To advertise, they can't make him take and pass an examination that he has shown he cannot pass without *all* the several reasonable accommodations that have been requested by Plaintiff. Those refused by the Defendants or denied by Defendants to exist, include, as an example, the most important accommodation of all, namely an enlarged print Manual of Patent Examining Procedure. And there is a continuing <u>controversy</u> as to whether Defendant has or has not supplied *all* the reasonable accommodations Plaintiff has requested in addition to those stipulated to be granted in future examinations, including, for example, enlarged print

examination questions and answer sheet. Others rejected, comprise, a right to inspect all past examinations, including the one he was notified he passed July 8, 1958, which led to his license under Registration No. 19,240, and those he took in 2005, 2006 and 2007, and those taken by others before then, and a right to challenge, change and appeal answers marked wrong; also, a right repeatedly without limitation to take the examination in July for Continuing Legal Education purposes, or other "mere academic reasons."

Plaintiff has also made serious challenges, so far unanswered by the Defendants, except by a trivial indirect and mistaken reference that 35 U.S.C. 6, is "not involved with patent practitioner and enrollment issues." Otherwise, Defendants Opposition and defenses are completely unresponsive to Plaintiff's legal claims to the unconstitutionality of federal statutes, comprising 35 U.S.C. 2 (b)(2)(D), and 32, which do relate to patent practitioner and enrollment issues and those involved under 35 U.S.C. 6. Plaintiff has also made serious freedom of speech, press, and other serious constitutional claims under Art. I, Sec. 8, cl. 8, Art. II, Section 2, cl. 2, Art. IV, and the First, Fourth, Fifth, Tenth and Fourteenth Amendments, to which Defendants' Answer, Defense and Opposition was unresponsive.

Still further, and as a result of serious issues raised by Defendants' motion to seal the proceedings, the Order of 10/14/07 to seal the proceedings, causes the case to remain sealed by Plaintiff's motion to continue the seal until modified or resolved.

Plaintiff submits that the serious nature of the seal order is reason enough to grant Plaintiff's Motion To Defer all Motions filed hereinafter until Trial. This includes Dispositive Motions and Cross-Motions Under Rules 50, 52, 54, 55 and 56 and 64, and including Plaintiff's Motion For An Order of Preliminary Injunction preventing

Defendants from Opposing an Order "To Show Cause as to why Defendants should not be held accountable in an Action at Law in Replevin under Rule 64, or in a Show Cause Order, under Rule 64, or under Plaintiff's Motion in Equity for by a Partial, Limited, Preliminary Injunction preventing Defendants from Opposing a Motion for a *Writ of Possession* by an Order to Show Cause as to why the Court should not grant Plaintiff a *Writ of* Possession for the return of possession of his personal property and possession of his Certificate of Registration No. 19,240 identifying and describing his property, and why a corrected copy thereof suitable for framing for the fee of $20 in the form of Letters Patent or otherwise by a Certificate of Registration, should not be granted by a *Writ of Mandamus* directing Defendants to recognize and confirm Plaintiff's clear and valid title thereto, by providing to Plaintiff the signed, original Imprimatur of the Defendant Dudas, and the original formal seal of the United States of America, on a copy of the Certificate of Registration No. 19,240, that was issued to Plaintiff on November 5, 1958, with the seal of the United States of America, like the one used in all Letters Patent, and signed by Acting Commissioner of Patents, Arthur W. Crocker, to identify the Letters Patent granted to Plaintiff on that day to publically Certify that C. Daniel Connish, who is the Plaintiff herein now known by the name Cornell D.M. Judge Cornish, then of Pittsburgh, Pennsylvania, was that day registered to practice before the United States Patent Office as an ATTORNEY, Registration No. 19,240, In Testimony Whereof, said Acting Commissioner formally certified that he had thereto set his hand and caused the seal of the United States Patent Office to be thereunto affixed, at the City of Washington the fifth day of November, in the year of Our Lord nineteen hundred and fifty-eight and of the independence of the United States of America the one hundred and eighty-third.

Still further, Plaintiff refers to the related Order of October 31, 2007, 1:07cv846 (JCC) in The United States District Court For The Eastern District of Virginia, Alexandria Division, in the case of Triantafyllos Tafas, Plaintiff v. Jon W. Dudas, et al, the Defendants in this case. That Order is relevant to the granting of Plaintiff's Motions herein, because the Order for a Preliminary Injunction follows similar issues in this case, comprising, for example, the striking of Exhibits, which was denied, but should be granted in this case because of the Seal Order of 10/11/07, the granting of a Motion for a Temporary Restraining Order and Preliminary Injunction, which preliminary enjoins Defendants from implementing the Rules proposed by the PTO, involving: "Changes to Practice for Continued Examination Failings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications," 72 Fed. Reg. 46716, 46716-46843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1).

All of those issues, are intimately related to and depend on identical controversies that are raging and awaiting trial in this case, comprising, *inter alia*, Plaintiff's constitutional and other challenges to 35 U.S.C. 2 (b)(2)(D), 6 and 32, are all temporary, and can only be decided at trial in this case.

The Seal and Orders on Motions in this case, including Plaintiff's recognized and existing Motion for Temporary Preliminary relief, are like the temporary relief granted in the cited Tafas case. They are all for Limited, Temporary and Preliminary relief in their effect in enjoining Defendants from implementing their new rules. In this case Defendants will be subject to Limited, Temporary, Preliminary injunction from being a "helicopter parent" and editor to Plaintiff's advertising efforts in his existing examinations which are effectively under seal at the present time. Like the proceedings

in this case and the Taflas case, the Defendants and the Public are not substantially injured, because the proceedings are maintained in secret until resolved according to the Patent Office Rules or Court Rules applicable thereto designed to maintain the *status quo*. Also, the Rules intended to be implemented by the Defendants in this case and the Taflas case are applied *retroactively*.

Still further, those new rules and rejections affect not only Plaintiff. They effect Plaintiff and others immediately and irreparably by *retroactively* restricting the failings of their Continuing Applications, Patent Applications Containing Patent ably Indistinct Claims, and the Examination and Appeals of Claims in their existing Patent Applications and Patents, as well as their Reissues, Re-examinations, and Corrections due to the fault of the Defendants, by changing the *status quo* of existing practice

The Limited, Temporary, Preliminary relief claimed in this case, as in the Taflas case, meets the four main criteria for a Preliminary Injunction, namely: 1) There is substantial likelihood that Plaintiff will succeed on the merits against the retroactive, immediate and irreparable injury to the Plaintiff from Defendants' refusal to address live controversies that the Defendants' allege are "only marginally affected with First Amendment concerns," which, are in fact, treated arbitrarily and capriciously by their refusal to let Plaintiff advertise his name as an attorney without a license, even though he is licensed as an attorney, and then refusing to grant him even a restricted license by making him take a test that he has repeatedly shown he cannot pass without reasonable accommodations that are denied to him by Defendants and have never been applied to him before as a condition for even his limited right to advertise, except as a way to discriminate against him in favor of young, healthy, white, males. The Defendants insist

7

on keeping the controversy alive, while claiming it is moot, and while claiming the that they are required to protect the public by their prior restraint, which is more like what a "helicopter parent" or editor would do, who hovers over Plaintiff, and selectively discriminates against him without probable cause, or due process to protect the public, which hey justify by maintaining him under surveillance from 1996 to 2007, and far into the future without imposing any claim that there is any unsatisfied condition for his reinstatement other than the exam without authority under any rule or statute, without any investigation for eleven years; without notice, and an opportunity for a hearing to reply to a complaint for discipline by the Defendants. Indeed, they allege a defect based on "inactivity" that is without the imposition of any unmet condition for reinstatement imposed in 1996 or later with notice and an opportunity for a hearing under 35 U.S.C. 32, which is thereby unconstitutionally misapplied, and constitutionally defective under the case of In Re Matter of: David A. Teicher, Sept. 7, 1989, in which reinstatement was granted because of an amendment to the rules governing practice before the Patent and Trademark Office took effect. Thus, Defendant Griffin has been registered to practice before the U.S. PTO since 1984, and has been an active member of the Virginia bar since 1989 while not practicing patent law before the PTO since 1989, or presumably any where, including before the Trademark Office where Plaintiff is allowed to practice for others, because he has been barred from doing so under the opinion of the U.S. Attorney General, 41 Op. Att. Gen 21, 1949 Dec. Comm'r Pat. 1 (1949). In that decision all patent practice before the PTO involves a direct substantial Government interest within the meaning of 18 U.S.C. 203 and 205.

8

In accordance with 37 C.F.R. 10.11, so-called "removal" from the register requires a MARCH-IN notice and an opportunity for a hearing under 35 U.S.C. 32. In some cases, the federal government may support research and development efforts in accordance with Plaintiff's First Amendment freedoms of speech and press, and the shield of the First Amendment, which limits the government right to censor his rights to advertise his name as an attorney, or to seize his vested property rights in his license without due process.  Likewise, the Patent System operates under Art. I, Section 8, cl. 8, or otherwise by supporting the Plaintiff under 35 U.S.C. 2 (b)(2)(E), by recognizing the public interest in continuing to safeguard broad access to the United States patent system through the reduced fee structure for small entities, such as Plaintiff (section 41 (h)(1). This compelling right, including his right to advertise under 37 C.F.R. 10.32, i.e., the right to advertise services through public media, including U.S. Patents and Trademark Registrations, by holding himself out as the owner of vested personal property rights certified by the PTO in his license to practice in the PTO.  That property right is certified by the Commissioner of Patents in the license granted to him and certified publically by his Certificate of Registration No 19,240 to practice patent law in the PTO under his name as an attorney.

In granting him patent rights and property rights by his license to practice patent law in the PTO, the PTO may, under some circumstances exercise **"MARCH-IN RIGHTS" by disciplining the Plaintiff under 37 C.F.R. 10.130 *et seq*. The 'MARCH-IN RIGHTS,"** if successfully exercised by the Defendants, imposes *conditions* for reinstatement. (Compare Mullins Mfg. Co. v. Booth, 125 F.2d 660, 664 (6th Cir. 1942).

9

Plaintiff has a constitutionally-protected interest in protecting his property against seizure as contraband without due process or just compensation. (See 35 U.S.C 183). The compelling public purpose is to protect hi substantive rights to free speech and press, including his right to advertise his name as an attorney in a patent and trademark That is substantive right and interest he has in his pending patent and trademark applications and issued patents in which the government has given their imprimatur to those rights. That is a "liberty" interest and a "property" interest that he derives from his license.

Under some circumstances, such as the circumstance of discipline, which the Defendants have threatened but never imposed on Plaintiff against the property rights he was granted by his license to practice patent law in the PTO, Plaintiff theoretically could have been forced to give up some or all his property rights under his license, whereby the government could but didn't seize his property as contraband.

Plaintiff's "inactivity" was not such an occasion for **"MARCH-IN RIGHTS" WITHOUT NOTICE AND AN OPPORTUNITY TO BE HEARD.** That theoretically might have been an occasion, although no such occasion occurred, when Plaintiff's rights might have been compromised, damaged, injured, reduced or by some other measure changed or conditioned. Without any such conditions being set forth according law, there could be no requirement for a showing of fitness for reinstatement as a matter of law, and without notice of a hearing and an opportunity for a hearing, the only unmet condition for reinstatement under C.F.R. 10.11 is a payment of the fee set forth in Sec. 1.21 (a)(3), which is $40.00. That is certainly the only condition required to be met for reinstatement of Plaintiff. He is not subject to meeting the *conditions* for reinstatement, by a showing of fitness under 37 C.F.R. 10.160.

The latter includes: a) meeting as a "condition" for reinstatement of an "<u>excluded</u>" practitioner, a showing of fitness for reinstatement, comprising meeting the "condition" *imposed when he was "<u>excluded</u>*," that his petition for reinstatement will be considered only after five years from the effective date of his "exclusion," b) the requirement as a "condition" for reinstatement *imposed when he "<u>resigned</u>*" under 37 C.F.R.10.133, or who has been <u>*suspended*</u> or <u>*excluded*</u> by the <u>*PTO*</u> [*imposed upon issuance* of a final decision reprimanding the practitioner or suspending or excluding him from practice before the PTO, and notice by the Director of a final decision . . . to the courts of the United States and appropriate States where the practitioner is known to be a member of the bar . . ]; in which case Defendant Dudas may *optionally* grant a petition for reinstatement when the individual practitioner makes a clear and convincing showing that *reinstatement is not contrary to the public interest, and that the individual will conduct himself or herself in accordance with the regulations of 10.15.* That includes: *as a specific <u>optional requirement</u> of Defendant Dudas, imposed at the time of resignation, suspension or exclusion by the PTO,* that he or she meet the requirements of C.F.R. 10.7 (1), by passing after being admitted to the PTO examination, and by paying a refundable fee of $40 and another fee of $450 to the PTO for the administration of an unlimited number of examinations over an unlimited period of time for merely academic purposes, including the raising of money to administer the operations of the PTO, including the expenses of Defendant Griffin in administering the examination for the first time enrollees who are mainly young, healthy, white males under 37 C.F.R. 10.7, and which by definition Plaintiff claims discriminates against practitioners, including Plaintiff, who are over 45, limited by physical ailments, and discriminated by denying them reasonable

accommodations, and is in a direct conflict of interest under 37 C.F.R. 10.2, as a matter of law under the APA, and relative to the unconstitutional and unauthorized conflict between the enrolling, governing, *judicial*, and disciplining functions of the Defendants under 35 U.S.C. 2, 6 and 32, and 37 C.F.R. 10.2, which are unauthorized under Art. II, Sec. 2, cl. 2 and unconstitutional under Art. I, Sec. 8, cl. 8 and the 1st, 4th, 5th, 10th and 14th Amendments; (2) paying all or a portion of the costs and expenses up to $1,500 that led to the disciplinary proceeding that led to suspension or exclusion by the PTO under 37 C.F.R. 10.156, 157 and 158.

Additional MARCH-IN requirements and conditions that must be met for suspension or exclusion under 37 C.F.R. 10.159 and 10.160 include maintaining records available to the public for inspection for every disciplinary proceeding where a practitioner is reprimanded, suspended, or excluded unless the Defendant orders that the proceedings be kept confidential. The seal order requested by Defendants in effect retroactively reprimands, suspends, excludes and disciplines Plaintiff retroactively and nunc pro tunc back to 1996. That is an irreparable injury. It should not be allowed to continue beyond the final resolution of this case, and the Court should not be prevented from imposing its oversight of these provisions from now to the final resolution of Plaintiff's Motion to continue the seal until final resolution now that it has been requested by Defendants under 37 C.F.R. 10.159 ( c ) or otherwise. That controversy has yet to be determined at trial.

So far, the request by Defendants for a seal in this case is additional to the notice that Plaintiff has had in notices in correspondence, including the letters in Exhibit 8 and 17, that the matters are <u>PERSONAL AND CONFIDENTIAL</u>. Thus, the matter of release

and publication of the proceedings and Exhibits in this case are not ripe, and will not be ripe until a final hearing, and it is premature to decide any Depository Motion. Thus, the present Seal should be continued. The proceedings should remain under seal until a specific order of Mandamus orders Defendant Dudas and the other Defendants to release the information in this case to the public, or for the Court to issue an order releasing the information in this case to the public..

No allegation has been made by Defendants that Plaintiff has any unmet conditions for reinstatement, or has not met any other conditions specified or imposed in 1996 as being necessary for his reinstatement under 37 C.F.R. 10.160. These matters are now in controversy. Thus, this Court should defer determination of any further motions in this case until a decision on the merits at trial because the Defendants have merely become "helicopter parents" and editors for unconstitutionally performing their enrolling, governing, judging, disciplining and secreting roles. They are trustees charged with the duty of preserving the privacy and confidentiality of the information in this case. Moreover, this makes clearly apparent that the Defendants are illegally conflicted by a conflict of interest, and their roles in enrolling, governing, judging, enforcing and disciplining are impossibly joined together in the same individuals without authority under Art. II, Sec. 2, cl. 2. Their actions are also unconstitutional, beyond the scope of their authority, arbitrary and capricious.

There is much more than a substantial likelihood that Plaintiff will succeed in a limited preliminary order enjoining their illegal and inequitable actions, which have been at least tinged with fraudulent alteration in changing ID's without notice to Plaintiff. And

there is just as much, or more, probability that Plaintiff will successfully obtain a permanent injunction against Defendants illegal actions.

Obviously, Defendants' actions approximate the widely disdained paternalism of "helicopter parents," editors and micromanagers who by prior restraint suppress Plaintiff's advertising without narrow tailoring and strict scrutiny that ensures fulfillment of the compelling requirements of the public policy mandated by the free speech and press provisions of the Constitution, by falsely claiming that they and the public will be harmed. Plaintiff has not just a marginal likelihood of success. The Defendants have cried wolf once to often. That makes this suit an urgent possibility that meets criteria one of the four main criteria for a Preliminary Injunction.

A limited, temporary, preliminary injunction meets criteria two, in that Plaintiff is clearly irreparably injured if the injunction is not granted. The effect of their un-enjoined censorship by prior restraint is instant and retroactive against Plaintiff's existing patents and applications. It is an instant, retroactive, continuing and irreparable harm to Plaintiff and to the public under the Plaintiff's First Amendment rights. That is not just a marginal economic loss, as alleged wrongly by Defendants. It is not "moot." It is a real and concrete harm that is in controversy. Plaintiff is irreparably harmed by being inequitably held under a microscope by coercion, denial, and refusal to answer his Petitions for Review, to suspend the rules, or even admitting that there are significant reasonable accommodations for which requests have been made and refused. Those are concrete present controversies. They are like other existing controversies in this case, because Plaintiff has been without investigation, discipline or due process for 11 years. That is long beyond the statute of limitations for such activity.

A limited, temporary, preliminary injunction meets criteria three, in that restraining Defendants is clearly without any substantial injury to the Defendants or to the Public. Such restraint identifies the true injurious prior restraint of the Defendants against the Plaintiff, not against the Defendants. That injury is based on Plaintiff's legal claims that have substantial merit, substantial probability of success on the merits, and that further the public interest under the First Amendment or otherwise, as claimed. It restores the public interest to the *status quo*, as it should be restored, and, in fact furthers the free speech and press rights of the public under Art. I, Sec. 8, Cl. 8 and 35 U.S.C. 2 (B)(2)(E) and 37 C.F.R. 10.159, which reveals that Defendants made or imposed no condition for a showing of fitness upon Plaintiff under 37 C.F.R. 10.160 (e) or otherwise, by opening Plaintiff's petition for reinstatement to permit the public and Plaintiff a reasonable opportunity to comment or submit evidence with respect to the petition for reinstatement.

Instead, Defendants closed the proceedings in this case by their request for a seal order to prevent the disclosure of private and privileged information to the Court only upon the resolution of Plaintiff's motion's to continue the seal. Defendants have given a Hobson's choice to Plaintiff to take the horse closest to the door or none at all. In this case, his only choice is to continue the seal to protect his private, privileged and confidential material until a final determination on the merits at which time he can also sort the admissible from the inadmissible evidence, and seek to redact the information that should remain redacted with the Court's consent.

Furthering the public interest, as clearly is the case, meets criteria four. Just like the Order in the cited <u>Tafas</u> case, the limited, temporary, and preliminary order of injunction will expire upon entry of judgment, unless otherwise ordered by this Court.

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
Plaintiff, Pro Se
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502

Date:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum in Support has been made by hand delivering a copy thereof to:

W. MARK NEBEKER, DC Bar #396739, Assistant United States Attorney, Civil Division, 555 4th Street, N.W., Washington, DC 20530. (202) 514-7230,

On this 6th day of November, 2007.

*Cornell D.M. Judge Cornish* (signature)
Cornell D.M. Judge Cornish
Plaintiff, Pro Se
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502

Date: 10/6/07

17