**RECEIVED**

NOV - **6** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Cornell D.M. Judge Cornish, Esq. | ) |
| Suite 301 | ) |
| 1101 New Hampshire Ave., NW | ) |
| Washington, DC 20037-1502 | ) |
| (202) 429-9705 | ) |
| DC Bar Number 366240 | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| | ) |
| v. | ) |
| | ) |
| JON DUDAS, in his Official | ) |
| Capacity as Under-Secretary of Commerce for | ) |
| Intellectual Property and Director of the | ) |
| United States Patent and Trademark Office | ) |
| And the UNITED STATES PATENT AND | ) |
| TRADEMARK OFFICE | ) |
| P.O Box 1450 | ) |
| Alexandria, VA 22313-1450 | ) |
| | ) |
| Harry I. Moatz, in his Official Capacity as | ) |
| Director | ) CASE  07-CV-01719 (RWR) |
| Office of Enrollment and Discipline | ) Assigned to: Roberts, Richard W. |
| U.S. Patent and Trademark Office | ) Assign. Date: 9/26/2007 |
| P.O. Box 1450 | ) Description: Pro Se Gen. Civil |
| Alexandria, VA 22313-1450 | ) |
| | ) |
| William J. Griffin, in his Official Capacity as | ) |
| Staff Attorney | ) |
| Office of Enrollment and Discipline | ) |
| U.S. Patent and Trademark Office | ) |
| P.O. Box 1450 | ) |
| Alexandria, VA 22313-1450 | ) |
| | ) |
| Defendants | ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR ENLARGEMENT OF TIME, AND**

**MEMORANDUM IN SUPPORT THEREOF, AND  IN SUPPORT OF**

1

## PLAINTIFF'S MOTION HEREWITH UNDER RULES 12 TO DEFER

## DETERMINATION OF DEFENDANTS' MOTIONS AND CROSS-MOTIONS

This Unopposed Motion for Enlargement of Time, and Memorandum in Support

thereof, is also in Support of Plaintiff's Motion Under Rule 12 To Defer Issues that are

not yet ripe for determination. Additionally, Plaintiff supports a Request For Preliminary

Injunction and a civil action in Replevin, as follows: 1) the retroactive nature of

Defendants applications of new rules to already pending applications exceeds

Defendants' authority; 2) Attorney Defendant Griffin himself admits the inconsistency of

his argument against a fair process, because he maintains his own registration of his

practice since 1984, despite *inactivity* both as an agent and attorney since 1989, as sworn

to in paragraph 3 of Exhibit 32. Also, In Re Matter of: David A. Teicher, Commissioner

of Patents and Trademarks, September 7, 1989, supports a fair process for the

reinstatement of attorneys such as Plaintiff. It is a Decision reversing a decision on a

Petition Under 37 C.F.R. 10.2 ( c ), for refusal to grant reinstatement after a long

"*Inactivity.*"

This Motion, includes a request to Continue Suppressing these proceedings under

Seal, and to note the need to compel the testimony of Defendant Moatz by subpoena in a

Show Cause Hearing. The attached Unopposed Motion to enlarge the time for filing this

25 page Reply (2), and to grant his Unopposed Motions to file this Reply (2), is

unopposed for enlargement of the time set for this 25 page Reply (2) with or without

substitution for his 35 page Reply (1). Many of the facts set forth in this Reply (2) were

previously identified in Plaintiff's Reply (1) in support of his 9/26/07 Request For

Preliminary Injunction, which the Order of 10/12/07 placed under seal. Thus, the file and

docket are unavailable to Plaintiff electronically. This Memorandum also tracks the
Memorandum filed to "dispose" of the defenses of Defendants in the Appended
Memorandum of Points and Authorities in Support of Plaintiff's Answer, Brief and
Opposition to Defendants 10/11/07 Memorandum of Points And Authorities In
Opposition To Plaintiff's Motion For Preliminary Injunction.

    Plaintiff's Unopposed Motions are intuitive, because Plaintiff's Reply (2) and Reply
(1) are based upon substantially the same facts in support of Plaintiff's 9/26/07 request
for a Preliminary Injunction, and in support of Plaintiff's Motions for a Limited,
Preliminary Injunction and the return of his Certificate of Registration No. 19,240 in law,
i.e., in Replevin, or equity within the 60-day period for service.

    All of Plaintiff's Motions, Replies and Memoranda are good faith efforts to
acquire a waiver of service within the period allowed for the 60 day summons dated
9/26/07. Plaintiff's October 11, 2007 Reply (1), this Reply (2), and his unopposed
Summons served on October 11, 2007 in accordance with Fed. R. Civ. P. 4 ( c )(2), are
consistent with the 60 day summons, whose date expires 11/26/07.

    Defendants are attempting to impose a non-existent unmet condition for
reinstatement, which is a retroactive application of a new rule or phantom condition
against pending applications and property rights, and which exceeds their authority. That
it is inconsistent with the cited Defendant Griffin's admissions, and the cited Teicher
case. Defendants' 10/10/07 Brief in Opposition, hereinafter referred to as Opposition (1),
does not support any such new rule, or the creation of unmet conditions for reinstatement;
and their Opposition (1) is unresponsive as a matter of law, because the Opposition (1)
incorrectly, or not at all, addresses Plaintiff's Dispositive requests for return of his

property in Replevin, and other requested initial *Limited* <u>Preliminary</u> equitable relief. To this end, for clarity, and to advance the prosecution of this case to issue, this Memorandum in Opposition, hereinafter Reply (2), supports Plaintiff's Dispositive Motion to grant Plaintiff's request for a Preliminary Injunction, and it relies on the authority of the October 31, 2007 Order of Preliminary Injunction in the U.S. District Court of the District of Virginia, in case 1:07cv846 (JCC), Triantafyllos Tafas et al, consolidated with Smithkline Beecham Corp. et al vs. the Defendant Jon W. Dudas et al, in this case, which are path making support for Plaintiff's request for a Preliminary Injunction asking this Court to grant the following:

1) Plaintiff's Motion for Preliminary Injunction to enjoin the retroactive application of new rules and conditions for the reinstatement of Plaintiff to prosecute his already pending applications as a registered and reinstated attorney, and to enjoin those actions and the use of those rules and conditions that exceed Defendants' authority and their duty to administer fair rules and conditions for reinstatement that do no exceed their authority.

2) Plaintiff's Motion for Preliminary Injunction to enjoin Defendants against the retroactive application of a new rule and condition for reinstatement that defeats re-establishing the *status* quo, and grants him a *Limited* <u>Preliminary</u> Injunction to enjoin Defendants from refusing to show cause why Plaintiff's property shouldn't be returned in an Action at Law For Replevin; and why Plaintiff shouldn't be reinstated in equity by *Writs of Possession and Re-possession*; in equity for refusing to answer his Petition for Review of their rejection to reinstate him by returning his property; enjoining Defendants from

4

prior restraint of his advertisements by calling "moot" Plaintiff's request for

limited recognition in the case of Plaintiff's patent application S.N.

29/273,235, filed 02/26/2007; and enjoining Defendants from denying or

interfering with Plaintiff's right to advertise his name as an attorney in an

action for a *Limited* Preliminary Declaratory Judgment and *Writs of*

*Possession* and *Repossession*, with a clear, unburdened title, to enjoy

possession of Plaintiff's personal property described and identified in the

records of the USPTO on registers and rosters in connection with the physical

existence of valid Letters Patent in the document itself; and by a Preliminary

*Writ of Mandamus* directing the Defendants to recognize his registration to

practice before the United States Patent Office as an attorney in existing,

future, or "Continuing," "Reissue," "Re-examined," or "Corrected"

Applications, whether "Provisional," "Non-provisional," "Design," "Utility,"

with or without Patent Term Extensions, Patent Term Adjustments, a

"Request for Continuing Examination," as a "Continuing Method," or

otherwise as a Method of Doing Business or of Advertising in Patent

Applications," or "Continuation-in-Part Applications," with or without a

Petition for Review to the Commissioner under 35 U.S.C. 112, or the BPAI

under 35 U.S.C. 101, 102, or 103, by issuing to him a copy of his Certificate

of Registration No. 19,240, originally granted to Plaintiff in the name of C.

Daniel Cornish on November 5, 1958, and signed and sealed by Arthur W.

Crocker, Acting Commissioner of Patents, which Plaintiff now seeks to gain

in a Show Cause Order for recognition and return in a civil action as patented

and copyrighted property in Replevin, as an original and/or as a copy of a corrected Certificate.

3)    Plaintiff's Preliminary Motion for a *Limited* <u>Preliminary Declaratory Judgment of validity, and</u> *Writs of Possession* and *Re-possession,* granted as described in 1), without bond.

4)    Plaintiff's Motion for Certification to the U.S. Attorney General of his legal claims and constitutional challenges of 35 U.S.C 2 (b)(2)(D), 6 and 32 for final determination on the merits in a final hearing for a Permanent Injunction.

5)    Plaintiff's Preliminary Motion to enjoin Defendants from demanding payment from Plaintiff of any charge of a $40 fee for application to take an examination or for reinstatement under 37 C.F.R. 1.21, or any other charge prescribed thereby for taking an examination, including a $1,600 fee for recognition or registration and/or enrollment on the register after removal, suspension or "inactivity" for other than ethical grounds in the PTO.

6)    Plaintiff's Preliminary Motion to enjoin Defendants from refusing to reinstate Plaintiff, and for a *Writ of Mandamus* directing the Defendants to reverse their disallowance of Plaintiff's reinstatement to the USPTO register.

7)    Plaintiff's Preliminary Motion to enjoin Defendants from prior restraint of or interference with Plaintiff's right to advertise his name as an attorney in his currently pending Patent and Trademark Applications S.N. 29/273,235, filed 02/26/2007, and S.N. 77/247,319, filed 08/04/2007.

6

8)    Plaintiff's Motion to permanently enjoin Defendants from acting

unconstitutionally or without authority under Art. II, Section 2, cl. 2, or

otherwise under unconstitutional Patent Statutes 35 U.S.C 2(b)(2)(D), 6 or 32

to govern the recognition and conduct or appeals by Plaintiff before the

USPTO.

9)    Plaintiff's Motion for Summary Preliminary Declaratory Judgment of validity

in his Registration Certificate No. 19,240.

Defendants' 10/10/07 Motion (1) and Memorandum (1) Of Points and

Authorities In Opposition To Plaintiff's 9/26/07 Motion For Preliminary Injunction, are

opposed and disposed of in toto, because they were not based upon a deep understanding

of Patent Law, especially in connection with Plaintiff's legal patent claims challenging

unconstitutional Patent Statutes, and unconstitutional actions by Defendants under the

First Amendment. The latter are the basis of Plaintiff's legal claims against Defendants'

prior restraint of recognition of Plaintiff's right to advertise his name as an attorney, and

for the validity and clear title of his personal property claimed in Letters Patent described

herein as his Certificate of Registration No. 19,240.  19,240 is merely listed or removed

as an ID in any of a number of patent office files to keep track of appeal able subject

matter claimed as patentable under 35 U.S.C. 101 but rejected by Defendants directly

because the Board of Appeals has no authority to reject Plaintiff's claims. The Court is

asked to grant an Order upholding Plaintiff's legal claims based on the First Amendment.

Such claims under 35 U.S.C. 101 were upheld in <u>Parker v.</u> Chakabarty, 477 U.S. 303

(1980), Plaintiff's Amicus Brief on appeal found support.  Additionally, the basis of

Plaintiff's First Amendment legal claims in this appeal rely on relevant legal claims and a

7

Preliminary Injunction based upon the rule changes and constitutional issues at stake in the Order in the U.S. District Court of the District of Virginia, in case 1:07cv846 (JCC), Triantafyllos Tafas et al, consolidated with Smithkline Beecham Corp. et al vs. the Defendant Jon W. Dudas et al, the Defendant in this case. This Motion and Memorandum in Support of Opposition, and a Reply (2) to Defendants' 10/10/07 Motion and Memorandum in Support in Opposition to Plaintiff's Motion For Preliminary Injunction, is enlightened here by Note 2 on page 2 of their 10/10/07 Opposition, which invokes 37 C.F.R. 10. 14; also relevant is the citation of C.F.R. 10.2 in the Order in In re Matter of: David A. Teicher, Decision on Petition Under 37 C.F.R. 10.2 (c ), Commissioner of Patents and Trademarks 9/7/89. See also Note 1 in Defendants' 10/10/07 Opposition, where Defendants argue that patent practitioner and enrollment issues are not involved in the composition of the Board of Appeals (BPAI). Plaintiff opposes that argument in toto.

Defendants allege as a defense on pages 18, 30 and 31 of their 10/11/07 Brief in Opposition (1) that, the *status quo*, and "The public interest will be greatly harmed by an order of the Court permitting Plaintiff to practice patent law before the USPTO." That is incorrect, prejudicial and inflammatory. The status quo and public interest requires the Plaintiff to practice patent law as an attorney in Patent Application S.N. 29/273,235, filed 02/26/2007 before the PTO. Also, his Trademark Applications. See the *pro se* provision in the Judiciary Act of 1789, which was codified at 28 U.S.C. 1654, and Jacob Winkelman, et al. v. Parma City School District, 550 U.S. _____ 2007. See also 37 C.F.R. 10.14 AND 10.11. The scope of that argument is clearly incorrect and inconsistent with Plaintiff's legal claims. Defendants' defense is also clearly inconsistent with page 3

of their 10/10/07 Opposition (1), 37 C.F.R. 11.1 and Note 1 on page 1 or Defendants'
10/10/07 Opposition.

Contrary to what Defendants allege, Plaintiff can currently practice patent law
before the USPTO, which Defendants claim as "moot." in Patent Application S.N.
29/273,235, filed 02/26/07. It is not against the Public Interest, nor does it injure the
Public or the PTO for him to practice as an attorney for himself in that case, or for others
in the Trademark Office; or to advertise his name as an attorney, or to practice *pro se* in
the PTO. It is admitted in Note 2 on page 3 or otherwise in their Brief in Opposition (1)
that he can practice in the PTO before the Trademark Office, and that his request to
practice pro se in the Patent Office is "moot," but only in his specific, above-cited patent
application, and not at all in his trademark applications. Thus, contrary to what
Defendants alleged on page 26, Plaintiff's claims are not "moot" and do not lack merit.
There is substantial likelihood that he will succeed on the merits, and that he will be
irreparably injured by refusal to recognize his name on the registers and rosters in the
PTO as being registered to practice in the Trademark Office, and to advertise his name as
an attorney in both his trademark and patent applications, contrary to their page 30
allegation. Nor will the USPTO be substantially injured, as alleged on page 31; and the
public interest will be furthered and not substantially injured, contrary to the allegation on
page 32. There is also substantial likelihood that Plaintiff will prevail on his claims of
discrimination and Defendants' failure to provide all the reasonable accommodations he
has requested, contrary to what Defendants allege on pp. 15, 16, 25 and 27. He has
requested and been refused accommodations for an enlarged print MPEP. That is
inconsistent with the granting of that reasonable accommodations for all the other

9

components of the test. He has also been refused reasonable accommodations to review all his examinations over extended periods of time and more than once, and to appeal the answers incorrectly marked wrong in his exams and others. Defendant Griffin refused those requests by discriminating against Plaintiff in favor of young, healthy, white, males who are without Plaintiff's medical and age limitations.

Those issues are in controversy and are not moot, nor do they lack merit in connection with, or as to whether, Plaintiff can be registered to practice in the Trademark Office for others or otherwise be registered to practice in the PTO and his name kept track of as inactive or reinstated in the PTO, or registered or limited to *pro se* status.

And the controversy rages on as to whether Plaintiff is barred from practicing as an attorney before the PTO at all, whether he is barred from practicing as an attorney for others before the Trademark Office, and whether Defendants can by prior restraint defeat or prevent Plaintiff from advertising his name as an attorney in his cited patent application and/or his Trademark Application S.N. 77/247,319. filed 08/04/2007. Both Defendants and Plaintiff seek, as they always have, to do the public will, in the public interest in this connection, and it is manifestly unfair to allege otherwise as Defendants do on in items 3 and 4 on pages 31 and 32.

Defendants' defense rests on their view that they do not lack statutory authority to punish Plaintiff and irreparably injure him by holding his feet to the fire of the BPIA, indefinitely holding in abeyance a pending investigation by which they hope to selectively discriminate against and to prosecute Plaintiff, or to govern, or restrain his advertisements by prior restraint without constitutional or statutory authority to do so. Plaintiff's right to advertise is a controversy properly submitted to this Court for

oversight as a matter of law, not administratively. There is no showing of failure to show the timely meeting of any condition for reinstatement, only failure to timely lay down any conditions for reinstatement that are unmet.

Defendants can be compelled by this Court to perform their duties properly and constitutionally with the proper authority from Congress to "protect the public from unethical and incompetent patent practitioners," but not as they state their duty on page 3 of their 10/10/07 Opposition (1), which rests on their citation of both 35 U.S.C. 2(b)(2)(D) and 32, which Plaintiff claims are unconstitutional, and unconstitutionally misapplied, e.g., in charging Plaintiff a $40 fee for application to take an examination for a fee of $450 for taking the examination without reasonable accommodations (albeit, Defendants have returned Plaintiff's $40 application and $450 examination fees). Needless to say, Plaintiff claims unconstitutionality and lack of statutory authority for Defendants rejection of reinstatement under 37 C.F.R. 1.21 by way of a $1,600 fee for recognition or registration and enrollment on the register after removal there from, or for registration after disbarment or suspension in the PTO to keep Plaintiff from being registered to practice as an attorney before the PTO, or to advertise his name as an attorney in business before the PTO.

The Defendants allege on page 18 of their 10/11/07 Brief in Opposition (1) that Plaintiff "is asking the Court to change the *status quo.*" Plaintiff is seeking only to restore and continue the *status quo* by properly returning to the *status quo* as a matter of law.

As pointed out by John Duffy, in his commentary reported in Dennis Crouch's Patent-O, 10/27/07, prior to the Supreme Court's 2007 decision, now famous as the KSR v. Teleflex decision, the Federal Circuit had held that its teaching-suggestion-motivation

test presented an issue of fact for juries, or a judge, to determine. The practical effect was to <u>transform</u> the issue of patent validity into a multi-million dollar jury trial. However, the Supreme Court has repeatedly held that issue to be an issue of law, which allows the Plaintiff, including the Plaintiff in this action, to file a declaratory judgment action, and to seek an immediate summary judgment as a matter of law to the validity and clear title to his property in his Letters Patent identified as a Certificate of Registration No. 19,240. Plaintiff wants to return to the *status quo* that recognizes his property interest in his property and the Defendants recognition of that *status quo* as a matter of law.

Such an action, as a matter of law, is much like any declaratory judgment action to clear title to the personal property of a patent by declaring the patent valid and properly in the possession of the Plaintiff. This action is such an action, as a matter of law, to properly return and validate Plaintiff's personal property to the *status* quo by a declaratory judgment declaring clear and valid title to and in the possession in Plaintiff as his property, which is "merely" identified on the PTO registers and rosters under the PTO identification No. 19,240, corresponding to his Certificate of Registration Number.

A valid property interest is bindingly admitted indirectly on page 17 and in Note 14 of Defendants' 10/11/07 Brief in Opposition (1) and in Exhibit 31. In Christine M. Nucker's Affidavit in Exhibit 31, she reveals what she and Note 14 reveal for the first time, i.e., that Plaintiff's Registration No. 19,240 was secretly changed without notice to 41361," (albeit, Exhibit 31 pins the change, which was without notice to Plaintiff, down to "December 22, 2006 at about 7:30 a.m." Plaintiff's legal claim is clear and valid to the title in his personal property in that Registration itself, with whatever number the Court determines to be its present ID.

As a matter of law the valid personal property has to exist somewhere, and this is an action to determine that the valid title and possession of the property described in his Certificate of Registration resides in Plaintiff, as a patented property described by Letters Patent carrying the imprimatur of the Government assigning an ID number to that property. This action involves a legal claim to the property described by Letters Patent carrying the imprimatur of the Government on his Certificate of Registration. It is the same kind of action as any Preliminary Declaratory Judgment Action to declare a patent property valid in the inventor named in the Patent, as a matter of law. Here the owner of the property is identified and described in the Certificate of Registration. Like any patent, the title can conceivably be seized by an illegal taking and holding as contraband, e.g., as German Patents were seized in World War II, and even compromised by an illegal infringement, as a matter of law, such as by Defendants actions in this case, which again is as a matter of law.

Plaintiff claims that his property was secretly seized as contraband based on a phantom, non-existent disability. Accordingly, he has a legal claim as a matter of law to the return his property back to the *status quo* prior to the illegal seizure by returning him to the *status quo* prior to the government's illegal seizure via the oversight of Defendants' conduct by the Court.

The property was not seized as contraband and sold by the actions of the Defendants. Instead, by coercion, a Hobson Choice, and trick by deceit and inequitable conduct was attempted. Defendants tried to interfere and destroy the property and the *status* quo by not only secretly changing the ID of his property, but also by shifting the burden of proof necessary to reinstate Plaintiff to the *status quo*. Thus, Plaintiff was

13

irreparably injured, and this legal action is necessary to clear his title and reinstate his property to the *status quo* as a matter of law, no matter whether Plaintiff name was removed illegally from a register, roster or some other file, removed from all of them, or its number changed to interfere with the administration of justice, this Court's oversight, and/or as a cover-up to Defendants illegal actions.

The terms register and roster merely refer to the place where information can be stored in a numbered file, and from which the information can be stored, moved, removed, stolen, lost, misplaced, sold, assigned, seized as contraband and sold, dedicated to the public, or mistakenly destroyed independently of the property identified thereby.

The Defendants' defense is unconvincing, but even if accepted as true by a demurrer, their defense relies on the administrative manipulation of the ID number 19,240, including the fraudulent manipulation of the ID number 19240 of the Plaintiff's Examination papers on July 16 and 17, 2007. That, however, is related to the controversy as to his title and the validity and possession of the underlying property of his Certificate of Registration No. 19,240, or the ownership of the underlying property described by that number.

The administrative action in relation to Plaintiff's "inactivity" for five years or longer is an irrelevant speculation somehow regurgitated without any basis in fact from a random copy of a page from the OG in Exhibit 14, which is dated after the date of the letter in Exhibit 8 dated March 4, 1996. That Exhibit is not helpful.

Defendants have somehow created, or attempted to create a "Do Not Track" Registry, in which neither they or anyone else can figure out what it means, and no one outside the PTO can track the names or numbers held in the PTO registers or rosters.

14

Plaintiff has made an FOIA request, but it has not been answered, and according to published statistics recent FOIA requests are backed up a much as over 6 years in some government agencies. Washington Post, p. A4, 11/1/07. Moreover, Plaintiff's EEO complaint was dismissed within the time allowed for Plaintiff to file an appeal in this case, including his appeal to the Civil Rights division of the PTO, but he was informed on October 26, 2007 by Clint Janes, Assistant Director, Office of Civil Rights (OCR) Rm. MDE 7D11in the PTO, that he must write to W. Mark Nebeker, Assistant United States Attorney, Civil Division, 555 4th Street, NW, Washington, DC 20530, Telephone (202) 514-8780. in connection with all further contacts regarding this matter.

Self-regulation by the PTO is not sufficient. And, as a matter of law, the only "inactivity" referred to in the Maryland Order of 12/5/1955 in Exhibit 22, which Defendant must rely on and give full effect to under Section 1738 of the Judicial Code and Art. IV, Section 1, is Plaintiff's "inactivity" in making his living as an attorney in Maryland. That was the effect it had in Maryland. He still retained title to the property he possessed in his status as an attorney. He was not disbarred or sanctioned, nor did he resign under fire. His "inactivity" did not relate to his pro bono practice in Maryland or elsewhere, which was excepted by the Maryland Rules, nor to his practice for a living in other jurisdictions, included in his right to appear before federal agencies such as the Copyright Office or the PTO. Moreover, that "inactivity" in Maryland was immediately challenged because it was temporary and subject to immediate reinstatement, or even delayed reinstatement, and its effect was without any requirement for a showing of fitness for reinstatement in his correct name. The burden of proof remained on Maryland to show by clear and convincing evidence that the *status quo* of specific underlying property

15

in his Maryland Certificate of Registration No. 5611010006, including his First Amendment right to practice as a pro bono attorney, or hold himself out as a pro bono attorney to those in need of valuable, low cost legal service, advice or assistance was changed by imposing conditions for reinstatement. No conditions were made for reinstatement for trademark and copyright service, including fees that were also recoverable. Excepted also were even applications in the excruciatingly overpriced and costly field of patents, or other business before federal agencies, including the PTO, as to advertising his name as an attorney without censorship, interference, threats of fine, jail, or prior restraint, or because his number was somehow changed, reduced or destroyed.

His practice in Maryland specifically included pro bono work required by the Maryland Rules in order to exempt him from the yearly practicing fee. Maryland in no way limited his federal practice as an attorney for others under Plaintiff's pro bono activity in Maryland, or his licenses in New York and the District of Columbia, federal courts, where he remained admitted to practice patent, trademark and copyright law, or, indeed, any kind of federal law in the Court of Appeals for the Federal Circuit, the District Court of the Eastern District of New York, the United States Supreme Court, the U.S. Tax Court, the Copyright Office, or the Patent and Trademark Office. His property right in his practice before government agencies as an attorney, or his practice of patent and trademark law in domestic and foreign patent and trademark offices *pro se* under their rules and regulations in effect in Maryland, was not compromised. He was at the time recognized for practice in the Canadian Patent Office as an attorney for others.

And, just as in the case of Defendant Griffin's Registration Number on his Certificate of Registration, his ID was assigned by a Government imprimatur to the title

16

he has in the personal property he has to hold himself out as being "registered to practice

before the U.S. Patent and Trademark Office since 1984," as stated in paragraph 3 of his

10/9/2007 Affidavit in Exhibit 32. So too Plaintiff's ID number 19,240 in the PTO is the

Government Imprimatur assigned to identify him and his clear title to his property

described therein, represented thereby that enrolls him on the register and/or rosters for

filing such data in the PTO. Just as Defendant Griffin has and ID number in the PTO, he

has an ID number in Virginia independently of the underlying property right in his

license to practice without fine or imprisonment as an attorney. Likewise, Plaintiff has an

ID number in the PTO, Maryland, the District of Columbia, New York State and several

federal courts identifying his property right to practice and hold himself out an attorney.

The overlap of Plaintiff's suspension in the District of Columbia for the practice

of patent and trademark law for a living as an attorney, was limited to that jurisdiction

only, and lasted for only four years. And because of the overlap of his existing *pro bono*

requirement in Maryland, and the overlap in New York and the District of Columbia,

which only lasted three years, he does not have the burden of proof by clear and

convincing evidence requiring a showing of fitness for reinstatement to practice in the

PTO or the trademark Office, and or to hold himself out as an attorney in those three

years because he retained his license in Maryland, subject the restrictions necessary to

free him from the mandatory yearly license fee..

He was thus able to hold himself out as "registered to practice before the U.S.

Patent and Trademark Office since 1984," just like Defendant Griffin has done. He

states in paragraph 3 of his Affidavit in Exhibit 32 that he has done so. Neither he nor

Plaintiff has any duty to notify the PTO of such narrowly constrained registrations, with

17

or without a 30 day choke point, as proposed in Karen Bovard's letter of March 4, 1996, in Exhibit 8 that he is or is not "active" or "inactive" because the PTO does not have a yearly license fee, as do MD, DC and NY. In view of the rule- change that removed Sections 10.6 (d) and (e) from the PTO Rules in 37 C.F.R., and the current Rules and Patent Statutes allow Plaintiff to maintain or to restore the *status quo*. His admission, enrollment, or continuation of the *status quo* by reinstatement, re-enrollment, or change is a mere change in ID numbers for identifying specific names or statuses registered on rosters or register files in the PTO. Plaintiff's request for a clear and valid title to his property described by the ID number of his Certificate of Registration is similar to hundreds of other patent attorneys who are not required to pass the Patent Examination twice. Plaintiff was informed that he passed the Examination on August 6, 1957, as shown by Exhibit 2. It is not a condition of reinstatement for Plaintiff to pass the exam again, because that is not a condition of his return to the *status* quo before his reciprocal suspensions in NY and DC, not even for three years. It is far from clear as to whether or not Plaintiff had a duty to inform the Defendants that Plaintiff's intent was not to have his name removed from the register, because that meant merely the manipulation of his ID.

The 30-day choke point proposed in Karen L. Bovard's letter of March 4, 1996, in Exhibit 8, did not relate to Plaintiff's letter dated February 8, 1996, or any intent of his with regard to his reinstatement, or his temporary and "incorrect" Order of voluntary "inactive" status without any requirement for a showing of fitness for reinstatement, or change of status to maintain or return to the *status quo* of his Registration in the PTO. Instead, her proposed 30-day choke point related specifically to the threat of "removal" of Plaintiff's name if Plaintiff didn't reply to *her* holding of an "investigation" in *abeyance*

18

with respect to letters from both the Maryland Order of Plaintiff's "inactivity" and a letter from Mr. [            ], whose name had been redacted.  Presumably, the redacted name is the same as the individual whose name was not redacted in her letter.

Plaintiff was notified by Defendants' 10/10/07 Opposition, which Plaintiff received five days later by mail, of a secret internal handwritten note added to a copy of the letter of March 4, 1996 in Exhibit 8.  That note is evidence that Plaintiff's name had not been removed from "the roster" or "register," until at least the date of the note on August 28, 1996, or until some date after August 28, 1996.  That leads Plaintiff to assume that the number identifying his name on the "register" had not been changed, modified, or in any other way removed from the register until at least as late as August 28, 1996, which was over four months after the 30 day choke point proposed on March 4, 1996.

The letter dated January 15, 2000 in Exhibit 33, and the Affidavit of Christine Nucker in Exhibit 31, lead Plaintiff to believe that Plaintiff's name or ID number had not been removed from the "register," but that the unique ID number 19,240 of his Registration Certificate remained unchanged on the "register" or "roster" of attorneys in the PTO until at least January 15, 2000, or December 22, 2006, the latter date specified in paragraph 4 g. of Exhibit 31.  Plaintiff's legal claim is that the *status quo* of Plaintiff's clear and valid title to his property identified by the Letters Patent corresponding to, represented by and described in his Certificate of Registration by the ID 19,240, was not "removed," modified, limited, reduced or in any way clouded even as late as December 22, 2006.  That was the date that the unique number 19,240 in the files in the PTO to identify Plaintiff's name was allegedly changed to 41,361 without notice to, or the permission of the Plaintiff by changing the ID from 19240 to 41361 without removing his

19

name from the register or in any way modifying, or limiting Plaintiff's valid and existing

title to his property described and identified by his Registration No. 19,240. Exhibit 31

does not state that the 19,240 ID number of Plaintiff's Certificate of Registration was not

removed but that in some way it was changed on either an unidentified register or roster.

As a matter of law Plaintiff's valid title to his personal property described and identified

by his Certificate of Registration or ID number, and the *status quo* thereof, remain the

same, so that Plaintiff's clear title and valid property described and identified by his ID

number in his Registration Certificate is still formally valid, recognized and identified on

the "register" or "rosters" in the PTO.

37 C.F.R. 10,11, states that: "The name of any individual so removed may be

reinstated on the register as may be appropriate and upon payment of the fee set forth in

Sec. 1.21 (a)(3)." That fee is now set at $40, and the fact that Plaintiff's payment of that

amount was refunded and returned to Plaintiff, is a binding admission that the *status quo*

of his valid title to his property, as indicated and identified by his Registration Certificate

ID number, remains the same as it has been since November 5, 1958.

Plaintiff's legal claim is that the Court should grant Plaintiff's Motion for a

Summary Declaratory Judgment of validity to a clear unclouded title in his personal

property described in and identified by his Certificate of Registration ID Number 19,240,

dated November 5, 1959, and that the Court should grant Plaintiff's Motion for a *Writ of

Possession* or *Repossession* in *Replevin,* and his Motion for an Order to Show Cause

why his property should not be returned to him by a *Writ of Mandamus* and Summary

Declaratory Judgment of validity to a clear unclouded title in his personal property,

which are subjects of Plaintiff's claim for *Limited* Preliminary equitable relief.

Plaintiff's name has not been "removed," nor should it have been removed from the "register" of attorneys "registered to practice before the U.S. Patent and Trademark Office," just as Defendant Griffin is registered, according to paragraph 4 or his Affidavit in Exhibit 32. It is undisputed that Defendant Griffin has been so "registered" since at least 1989, according to paragraph 3 of his 10/9/07 Affidavit in Exhibit 32. According to paragraph 4 of that Affidavit, he has been engaged in, and without dispute since 1984 has held himself out as being engaged in earning his living on the basis of his registration to practice before the U.S. Patent and Trademark Office despite the fact that his earning of a living by his practice in patent cases "currently is inactive," and without dispute has been "inactive" for over 23 years from 1984 to date. Stated another way, like Plaintiff, his property right in his clear, unburdened title to his personal property in his registration to practice before the PTO, is not affected by the fact that he "currently is inactive" in his private practice of patent law for a living under his law license in Virginia, where he was licensed to practice law in 1989, or in the PTO, where he started practice in 1984, and where he has continued to be registered at the same time even though he was "inactive" for at least 8 years under conflict of interest or a professional code under 37 C.F.R.10.10 (d). Without dispute, he has continued to hold himself out as actively registered to practice before the PTO without any claim in his Affidavit that he had to or did cease his private or government practice of patent law for a living or otherwise. Nevertheless, he has been registered to practice patent law, has been inactive since 1989, when he was employed as an OED staff attorney.

His duties have been in a clear conflict of interest by being involved in the development and administration of the registration examination that Plaintiff took in

21

2005, 2006 and 2997, while instituting no conditions for Plaintiff's reinstatement because his moral and scientific qualifications were unsatisfactory. This coerced Plaintiff into believing that he had no requirement for a showing of fitness for reinstatement by first telling Plaintiff in his letter of March 22, 2005 in Exhibit 17 that it was his conclusion that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." He reversed himself in responding to this suit.

A fortiori, that reversal amounted to intent to deceive, coerce, discipline and punish, which only make the irreparable injury worse. His Affidavit in Exhibit 32 proved to be a mea culpa that included an immensely surprising and inadmissible collateral attack of the binding admission of his March 22, 2005 conclusion of what the current record showed. His mea culpa included a collateral attack on the admission made to Plaintiff 2 years before in his letter of March 22, 2005 in Exhibits 8 and 32. His collateral attack on Plaintiff's qualifications was without any *investigation* by him or any one else in the PTO. Indeed, Exhibit 8 shows that as late as March 4, 1996, there was an intent "to hold in abeyance any investigation" with respect to a complaint by an individual named in an inconsistently redacted document under seal, as well as a "change of status action based upon a Maryland Court Order," including the incorrect one Defendant Griffin said on March 22, 2005, placed "Plaintiff on disability inactive status." Indeed, the June 15, 2000 letter (Exhibit 33) inferred any investigation would only be made if and when Mr. Cornish applies to be reinstated." The admissions and the mea culpa are weighty and convincing evidence of the lack of any investigation as a basis in fact for the rejection of Plaintiff's reinstatement or statutory basis of a condition or other

requirement of an unmet condition for reinstatement. Defendant Griffin's allegedly "good faith determination" that collaterally attacked his own conclusion that Mr. Cornish did not present insufficient objective evidence to show that he continued to possess the legal qualifications necessary to render applicants for patent valuable service."

He has found himself to be, and has held himself out for at least the past 8 years as registered to practice before the PTO. He can practice in the trademark office, as Plaintiff has done for others in both the trademark. Plaintiff practiced in patent offices in this country and around the world in both secret restricted data and non-secret cases for over thirty years without any blotch on his record, other than the one attempted by the inadmissible and incorrectly redacted Exhibits under seal in this case.

Defendant Griffin's mea culpa without benefit of any investigation, is indisputably inconsistent with the incontestable objective material evidence acknowledged by Defendants in Exhibits22 B. Those Exhibits include unimpeachable material and admittedly admissible evidence entitled to full faith and credit, deference and the requirements of Section 1738 of the Judicial Code. Those are federal requirements to give acknowledged orders in Maryland, the DC, and both federal and state court orders in New York, the effect they have in those jurisdictions. And that effect is to give unimpeachable support to the legal conclusion after lengthy investigation in depth that it is a true fact held in no uncertain terms, that there is material and overwhelming evidence to support the restoration of the *status quo*. Of Plaintiff, it can be said, you need not, because others have shown, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." This includes

the holding out of Plaintiff's as recognized to practice patent law in this country and around the world.

That is unimpeachable material evidence justifying Plaintiff's Preliminary Injunction enjoining the refusal to restore the *status quo,* based on the mitigating circumstances of inequitable conduct, an arbitrary and capricious review of Plaintiff's case without investigation for 12 years, failure of Defendants to decide Petitions for Review, forgery of a test paper ID, all causing irreparable harm in addition to the uncertainty of the new rules and conditions and their retroactive application (albeit, there is an instant irreparable harm the instant the new rules were put into effect, and there is genuine merit in the claim that Plaintiff will not fail on the merits), no obvious harm to the Public or the Defendants from the Preliminary restoration of the *status quo,*  failure to show any unmet conditions for Plaintiff's reinstatement; failure to sustain authority for the retroactive application of the new rule or any unmet condition for reinstatement; and an undisputed record of Plaintiff's "continued possession of legal qualifications necessary to render applicants for patents valuable service."

Thus, Plaintiff has supplied overwhelming support for the four relevant factors for his Preliminary Injunction,, as well as two relevant factors from <u>Tafas v. Dudas,</u> comprising: 1) likelihood of Plaintiff's success on the merits, including clearing the title to his vested rights as a matter of law under his Existing Letters Patent to the property described in his Certificate of Registration No. 19,240, and thereby to hold himself out as registered and practicing patent law by filing his existing applications and others pro se and for others in the Trademark Office and to advertise his name as an attorney therein; 2) as a matter of law, the facial illegality and arbitrary and capricious effect of

retroactively limiting by prior restraint his vested right to file and advertise in his present

patent application, while maintaining the *status quo* and a stable and constitutional patent

and copyright system for that and other applications, including numerous continuation

and other applications filed pro se in the Patent Office without sufficient tailoring and

strict scrutiny to accomplish the compelling purposes of the Constitution, are contrary to

the substantive mandates of 35 U.S.C. 101 and 120, Art. I, Sec. 8, cl. 8, Art. II, Sec. 2, cl.

2, the First, Fourth, Fifth, Tenth, and Fourteenth Amendments, and the mandate of the

APA, all of which justifies a Preliminary Injunction under the First Amendment; 3)

irreparable harm to Plaintiff's settled rights to practice as an attorney as in, and in the

PTO pro se, and for himself and others in the Trademark Office without an injunction; 4)

a balance of hardships weighing in favor of an injunction; and 5) the public interest

supporting an injunction to restore the *status quo,* equals no harm to Public or

Defendants, since the *status quo* sought by Plaintiff is the *status quo* of a fair and

constitutional process for maintaining and reinstating the registration of all attorneys

without the retroactive application of new rules and conditions that lack proper authority,

and are contrary to the cited examples of Defendant Griffin and the cited case of Teicher,

Tafas v. Dudas, HR 1908, and other Points and Authorities.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  10/6/07

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Unopposed Motion for

Enlargement of Time, and Memorandum in Support, and in Support of Plaintiff's Motion

under Rule 12 To 'Defer Issues and Controversies that are not ripe for determination have

been hand delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    6 /4    day of November, 2007.    *Cornell D. M. Judge Cornish*

Cornell D.M. Judge
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com: