UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,   )
                               )
          Plaintiff,   )
                               )
      v.              )  Civil Action No. 07-1719 RWR
                               )
JON DUDAS, et al.,         )
                               )
          Defendants.  )
_____)

NOTICE OF FILING

Pursuant to the Court's Order, filed December 10, 2007, Defendants hereby notify the Court and Plaintiff of the filing of the accompanying Defendants' Motion To Dismiss, Or In The Alternative, For Summary Judgment, supporting memorandum, statement of material facts and redacted version of exhibits.[1]

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                    /s/
_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

_____

[1]  Counsel identified no information in the motion, memorandum, or statement of material facts warranting redactions under Local Civ. R. 5.4.  Certain exhibits, however, required redactions.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of the foregoing Defendants'

Notice Of Filing and accompanying documents has been made by

mailing copies thereof to:

CORNELL D.M. JUDGE CORNISH, ESQ.
Suite 301
1101 New Hampshire Ave., N.W.
Washington, DC  20037-1502

on this 20th day of December, 2007.

_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Civil Division
Washington, DC  20530
(202) 514-7230
fax: (202) 514-8780

POL-59

ADDRESS ONLY
THE COMMISSIONER OF PATENTS
WASHINGTON 25, D. C.

**U. S. DEPARTMENT OF COMMERCE**
PATENT OFFICE
WASHINGTON

July 8, 1958

Mr. C. Daniel Cornish
4305 Center Avenue
Pittsburgh, Pa.

My dear Mr. Cornish:

I am pleased to inform you that you attained a passing grade in the examination of April 28, 1958, for registration to practice before the Patent Office.

You will be advised later of the final action taken on your application for registration.

Very truly yours,

Chairman
Committee on Enrollment

Exhibit 1

POL-60

ADDRESS ONLY
THE COMMISSIONER OF PATENTS
WASHINGTON 25, D. C.

 

## U. S. DEPARTMENT OF COMMERCE
### UNITED STATES PATENT OFFICE
#### WASHINGTON

October 21, 1957

Mr. C. Daniel Cornish
4614 Fifth Avenue
Pittsburgh 13, Pennsylvania

My dear Mr. Cornish:

I regret to inform you that you did
not attain a passing grade in the examination
of August 6, 1957, for registration to practice
before the Patent Office.

Very truly yours,

Arthur W. Crocker

Chairman
Committee on Enrollment

Exhibit 2

██████████ complaint against Cornish    Page 1
November 3, 1995                    Patent attorney: Cornell Cornish
                                   1101 New Hampshire Ave.
                                   Suite 301
                                   Washington, D.C.   20037
                                   tel: 202-429-9705

██████████
██████████

Office of Enrollment and Discipline
Attorney Discipline Section
Box O.E.D.
Washington, D.C. 20231

Dear OED,

I wanted to give you a bit of chronology concerning my case.

Back in January of 1995 I asked Mr. Cornell Cornish, a patent
attorney, to submit a utility  patent continuation in part of
my design patent.  I had written up an outline and asked him
to have the pictures drawn and do as much work on it as my budget
would allow.  I even told him that if he must have his money
now then just submit the patent application as I wrote it with
the appropriate drawings attached and labeled.  He assured me
as he had always done that I did not have to worry about the
money and that he was going to "take care of me" and I could
pay him later.  He insisted on writing the utility patent
application.  I paid him $900 at this point.

April 1995.   I requested that Mr. Cornish send me a copy of
the application.  He told me the pictures had not been drawn.
Also it was not finished being written.

May 1995.  I made the same request and got the same answer.

June 1995.  I made the same request and got the same answer.

End of June.   I requested he fax me a copy of any pictures
that had been drawn and anything he had written.  He said that
it was too lengthy and he would mail it.  It never came.  All
the while, beginning in about April or May, Cornish was saying
he was going to put his name as coinventor on the patent.  He
said he made an adjustment for prior art (though he never told
me what it was) that was "minor" but he felt he should be named
as coinventor.  When I asked him what it was he was very vague
and never really said what it was.  When Mr. Cornish first
mentioned to me that he wanted to be named as coinventor I told
him that I thought that this would give him rights to my
invention and I wanted him to have absolutely no rights to this
invention.  He told me that he would have no rights and he wanted
no rights as the coinventor.  I asked him plainly several times
if a coinventor would have any rights to a patent or idea to
which he told me: "absolutely not".  (Until the written questions
he answered - which I sent you a copy - in which he answered

Exhibit 3

██████████ complaint against Cornish    Page 2
"very difficult to say").

You must remember that up until this happened I had considered
Mr. Cornish as a trusted and beloved friend and confidant.
Someone who was working to protect me and my ideas.  Instead
he was trying to ruin me and steal my ideas.

July 22.  I called Mr. Cornish on Saturday.  I asked him to
put in writing that he wanted no rights and would have no rights
to the video aquarium concept.  I asked him to just write that
one sentence and fax it to me.  He told me that his oral
affirmation was enough.  No writing was necessary.  When I told
him that I must have that in writing he became extremely hostile
and wanted to send me a bill for his services which he did.
A greatly bloated one I might add.

It was at this point I realized that I was probably dealing
with a con man.

The next week I called another patent attorney for his opinion
concerning my situation.  It was his opinion that this was
unethical and illegal and I was being robbed.

I also called my regular attorney, explained my situation, he
let out a sigh of disgust and told me to call the attorney
grievance committee immediately.

At this point I knew I was dealing with a thief.

And remember, up until this time, he still had sent me no
writings or drawings pertaining to my invention.  At the end
of July he did send a couple drawings but no writings.

During our phone conversation of July 22, 1995 Cornish told
me that he was not done with the patent application and that
there was "plenty of time" to file the continuation in part
because I still did have several months to go.  I told him the
time was growing short and I must have it for review.  He made
what I believe to be a slip of the tongue at this point and
said that this put him in a "strong negotiating position".
The rest of the conversation, after a hostile burst from Cornish
because of my apparent lack of trust, he spent assuring me
that he wanted no rights to this concept and would have no
rights.  He told me he did not want to put his name as coinventor
on the patent application but it would be "easier to file this
way".  He ended by saying just to relax and trust him as my
patent attorney and he would take care of me.

The point I want to make to you is this:  On July 22 he is no
hurry whatsoever to file this application because we had months
to go before our deadline to be eligible for the same filing
date.  Sixteen days later he is in such a hurry he can not wait
for my review or approval or even my signature on the patent

application. In fact, he is in such a hurry he does not even inform me that he is doing it!

July 28. I wrote Cornish a letter stating that I had gotten legal advice that he should not be named as coinventor and I notified him that I absolutely refused to allow him to place his name as such on my patent application because of the advice I received that he would have rights to the patent.

After he received this letter we talked by phone on about August 2 or 3. I asked him if he would like to accept the contract I offered him with the letter. He told me that he did not want any contract like that. He said he was only interested in getting my idea protected for me. He said he didn't want any money, all he wanted was to make sure my rights were protected regarding this idea. At this point he actually told me that he was going to file this patent application "with me or without me" because he wanted to be sure "I" was protected. At this time he said that the patent application was ready. I then asked him to send me a copy.

August 3. He mailed it on August 3 or 4 and I received it within two days in the mail. This is the first time that I had seen any portion of the written document which was about forty pages in length. My next communication with him was a letter on August 7, informing him that I had gone to the AGC to rule on this dispute we were having. He called me up and said that it was not necessary for us to go to the Attorney Grievance Commission to solve this matter. He wanted me to come to Washington D.C. and go with him to a mediator. He said that this could all be solved there. I told him that I wanted the AGC to handle the matter because there were matters of legal and ethical conduct that had to be decided rather than mediated.

August 7, 1995. He filed the provisional patent application without my knowledge, consent, approval, or review. He filed it without my signature. He had said that he had that "right" as the co-inventor. Can you imagine my surprise? My patent attorney telling me that he has the right to file my patent with his name on it whether I want him to or not! Can you imagine your attorney threatening to file "your" patent application "with you or without you"? Can you imagine your patent attorney stealing the rights to your invention?

September 18, 1995. Cornish mailed me a letter for the first time telling me that he had filed the patent. Can you imagine my patent attorney did not even inform me that he had filed the patent application until a letter that was sent on September 18, 1995 - 7 weeks after he had filed it!

After his attempt to use a mediator failed, (This is in the August 10 to 20 area) Cornish sent me a check for $2,400 stating that it was a mistaken billing in the past and that further

adjustments would be coming my way. Along with the letter
containing the check he also had filled out a questionnaire
I had sent him stating he was going to put his name on my patent.
This after I told him not to. I was so angry I sent him the
letter with which I fired him as my patent attorney. This letter
was dated August 28. I believe I sent you a copy.

Enclosed is a copy of the letter that I had sent Mr. Cornish
on July 28, 1995. You can plainly see that I had told him on
the advice of others that I was refusing his idea which he was
pushing on me that he was to be named as coinventor. I believe
it was this letter which prompted this thief to act.

I have since been told that any patent attorney who tells a
client that a person named as coinventor on a patent application
would have no rights to that invention would be lying. HE IS
A LIAR.

I have since been told that any patent attorney who tries to
take advantage of his client and name himself as coinventor
without assigning the rights to his client's invention is trying
to cheat his client. HE IS A CHEAT.

I have since been told that any patent attorney who files his
client's patent without his client's knowledge, approval, review,
and signature, and this application has the patent attorney
named as coinventor that a theft is taking place. HE IS A THIEF.

Cornish is a very clever devil who is also a pathological liar.
He will use his superior knowledge of patent law to try to gain
rights to his client's ideas. He must be eliminated from
practicing law anywhere in this world. I do hope you have the
power to accomplish this. Also, any patents he has filed in
the last three years should be investigated to see if Cornish
has stolen any of my other concepts or used my confidential
information to gain any patent rights for himself. I would
appreciate it if you would ask this man under oath for a list
of any documents that he has filed with any government patent
office during the last three years that have him listed as either
the inventor or coinventor.

Enclosed is a list of questions I would like you to submit to
Cornish and have him answer them in writing. These will aid
you in your investigation.

██████████ complaint against Cornish    Page 5

Recap

1. Please have Cornish answer the questions on the ~~sheet~~.

*7 pages. PLEASE SEND HIM A COPY*

2. After engaging the Attorney Grievance Commission, Cornish sent me a letter stating that he had since assigned all rights to me. Could you please check this out for me at the patent office to see if he has filed such an assignment?

3. If Cornish were named as co-inventor on my patent application would this in any way give him rights to file further extensions or variations for the concept on his own? Would he be allowed to use the confidential concepts that I brought to him for protection for filing related patents on his own?

4. Cornish filed this provisional patent application as a continuation in part of my original patent application. Is there a way that I could eliminate the "Continuation in part" portion and just leave this application a separate application?

5. I would also like to request that you subpoena all my papers and documents and any papers or documents that are related to me and take them from his possession and return them to me. I would like them all back as soon as possible.

In his most recent letter Cornish said he was quitting the Maryland Bar. My understanding is that this would make the AGC impotent in this matter. He is an elderly man who may be retiring anyway.

In the event of my death or disability please do not fail to completely prosecute this case and punish Cornish to the maximum. Cornish is a thief, a liar and a devil and he should not be allowed to wreak the damage and legal nightmare on anyone else that he has done to me.

Sincerely,

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) AND 1.27(b)-Independent Inventor

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9 (c) for purposes of paying reduced fees under Section 41(a) and (b) of Title 35, United States Code, to the Patent and Trademark Office with regard to the invention entitled _Video Aquarium_       described in

[x] the specification filed herewith

[ ] application serial no. _____, filed _____

I have not assigned, granted, conveyed or licensed and am under no obligation under contract or law to assign, grant convey or license, any rights in the invention to any person who could not be classified as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.(e).

Each person, concern, or organization to which I have assigned, granted, conveyed, or licensed or am under an obligation under contract or law to assign, grant, convey, or license any right in the invention is listed below:

[x] no such person, concern, or organization

[ ] persons, concerns, or organizations listed below*

*Note: Separate verified statements are required from each named person, concern, or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

FULL NAME_Cornell D.M. Judge Cornish_____

ADDRESS_Suite 301, 1101 New Hampshire_       [x]Individual     [ ]Small business

Ave., N.W., Washington, D.C. 20037            [ ]nonprofit organization

Design Patent Information                              Page-28

EVIDENCE  FOR  OED

QUESTIONS FOR Cornell Cornish   8/14/95 from ██████████

Does a person named as co-inventor on a patent have any rights

to that patent?    Yes or No.  *Very difficult to say*

If yes, what are those rights? _____

_____


Is it proper for a patent attorney to put his name as co-inventor
on a client's patent application because he made some adjustment
for prior art?

Yes or No   *No*


Are you going to put your name as co-inventor on a video
aquarium patent application?

Yes or No    *Yes*


Will you have any rights whatsoever in the video aquarium concept
in the event it is granted any type of patent protection?

Yes or No    *No*


I have answered all the above questions in writing so that James
Cassidy may have a written verification on these questions
pertaining to his relationship with his patent attorney.

*Cornell D. M. Judge Cornish*_____    Date  *8/26/95*
Cornell Cornish  patent attorney


*EVIDENCE FOR OED*

OED INVESTIGATION
COPY

COPY TO CORNISH

Page 1 of 4

Questions for Cornell Cornish.

Please use additional sheets of paper if necessary in answering
any of the following questions.  If any of these statements
are false or need further explanation please explain fully and
use additional sheets of paper if required.

Questions for Cornell Cornish    9/18/95

1. Mr. ▓▓▓▓ is afraid that you are trying to steal rights
to his video aquarium concept.  Are you trying, or have you
tried, or will you try in the future to engage in any conduct
which may allow you to have any rights to any type of simulated
aquarium product that uses a video display?  If yes, please
explain fully.

No_____ Yes_____

_____

_____

2. Mr. ▓▓▓▓ has said that he does not wish you to have any
rights to this invention or any extensions or variations thereof.
He has said that he did not approach you with this intention
but revealed his confidential idea to you because you advertised
yourself as a patent attorney which he believed to be a person
who would do everything their power to protect his idea for
himself.  He believes that you are trying to deceive him and
in some way gain rights to the video aquarium concept that he
does not wish you to have.  Are you trying to gain any rights
for yourself or any others beside ▓▓▓▓▓▓▓ pertaining to
this concept?

_____

_____

_____

_____

3. Has Mr. ▓▓▓▓ told you that he does not want you as a
coinventor?
                Yes _____    No _____

4.  Have you ever threatened to file, or filed, or will file
in the future any document pertaining to any type of video
aquarium concept with any patent office without Mr. ▓▓▓▓'s
signature and written approval?  If yes, please explain fully.

_____

OED    INVESTIGATION ·                    COPY TO CORNISH

Page 2 of 4

_____

_____

5. Have you ever filed or will you ever file any document with
any government office that would have any possibility of giving
you any rights to a video aquarium concept or any concept which
may be a similar or competitive concept?  If yes, explain fully
and completely.  Use additional paper if required.

No_____Yes_____

_____

_____

6. Do you think that Mr. ████████ brought his new idea to you
for the purpose of gaining any type of patent rights for Mr.
Cornell Cornish or any other party than himself?

            Yes_____  No_____

7. You have told Mr. ████████ that you did not wish to place
your name as co-inventor on any form of patent application that
you may have written concerning a video aquarium concept.  Is
this true?

True_____False_____

8. You have told Mr. ████████ that you wanted no rights whatsoever
to any video aquarium concept and would seek none.  Is that
true?

True_____False_____

_____

9. You are not going to have your name either as coinventor
or inventor on any patent application or document that you may
have written concerning a video aquarium concept.  Is that true?

True_____False_____

_____

_____

_____

D E D   C O P y                                          C L  Y   T O   C O R N I S H

10. You are not going to have any rights or seek any rights
to any type of video aquarium concept or any variations or
extensions thereof in any way.  Is that true?

True_____False_____

_____

_____

11. Are you in any way associated with or do you know of any
other person or entity that is seeking any rights to a video
aquarium concept or any variations or extensions thereof?  If
yes, please identify all such persons and/or entities, also
your relationship with each.

No_____Yes_____

_____

_____

12. Are you in any way assisting, have you assisted,  or are
you going to assist in the future any other person or entity
in obtaining any type of rights to any video aquarium concept
or any variations or extensions thereof?  If yes, please identify
fully.

No_____Yes_____

13. Whose idea was it that you place your name on Mr. ██████'s
patent application as coinventor?

14. Why did you file Mr. ██████'s provisional patent application
without his knowledge, approval, review, or signature?

_____

15. Why did you not inform Mr. ██████ that you had filed this
provisional patent application until September 18 - 7 weeks
after you had filed it?

_____

16. Why do you deep referring to problems with heart disease
when referring to the way you have handled Mr. ██████'s
intellectual property when it is strictly a matter of honesty
and integrity?  Mr. ██████'s complaint is that you are a thief.

_____

*OED Copy*

*Copy To Cornish*

Page 4 of 4

_____

_____

17. Why did you refuse to send or fax any of the work you had done in writing this provisional patent application to Mr. ████████ until August 3 despite his repeated requests for information?

_____

_____

18. Mr. ████████ believes that you would try to use your superior knowledge of the law to try to gain rights to his video aquarium concept and/or extensions or variations thereof? Would you ever try to do this?

_____

_____

19. Did you tell Mr. ████████ that you wanted no rights to his concept?

20. Why did you file the patent application with yourself named as co-inventor along with a document stating that you did not assign your rights to anyone?

Why is there no document at the patent office on file stating that you have assigned all rights to ████████████?

I do hereby swear or affirm that I have answered these questions truthfully. Place your signature and date below.

_____    _____
Signature    Cornell Cornish            Date

Please return this questionnaire immediately to:

OED COPY

Part 2          Cornish Questions    Page 1 of 3
Additional Questions for Cornell Cornish  9/20/95    Please use
additional paper if required to answer these questions fully
and completely.

1. You filed an extension to ████████'s original patent with
your name on it over his objections.  Is this true?  Please
explain why you would do exactly what your client did not want
you to do.

_____

_____

_____

2. You filed this provisional utility patent application without
Mr. ████████'s signature.  Is this true?  Please explain why
you did this?

_____

_____

3. Did Mr. ████████ engage you as a patent attorney to protect
his invention and any rights to it and/or any extensions or
variations thereof for himself?

_____

_____

4. Did he give you any of his confidential ideas so that you
might take them and gain patent rights for yourself on either
the original idea or any variations or extensions thereof?
Was this his purpose in coming to you?  Please explain fully.

_____

_____

5. By naming yourself as coinventor on Mr. ████████'s patent
application do you believe that this gives you communal rights
to his idea and the general concept concerning the video
aquarium?  Explain fully.

No_____  Yes _____

_____

6. Do you believe that you have the right to file for patents

O.E.D   COPY

in your name relating to other variations or extensions of the
simulated aquarium concept brought to you by Mr. ██████? If
yes, please explain fully.

No_____ Yes_____

_____

7. Have you filed or will you file any further patents relating
to the simulated aquarium concept either in this country or
in any foreign country with your name either as inventor or
coinventor? If yes please list and explain fully.

No_____ Yes _____

_____

_____

_____

8. Do you feel you have the right to file patents relating to
Mr. ██████'s general concept of simulated aquarium products
which he revealed to you in the confidence of an attorney client
relationship?

No_____ Yes_____

_____

9. Did you inform Mr. ██████ when he first came to you as a
client that you would name yourself as coinventor to any patent
application you may write on his behalf whether he wanted you
to or not? Please expalain.

No_____ Yes _____

_____

_____

10. How many of your other clients in the past have you taken
their idea, written their patent, and then put your name on
their patent as coinventor over their objections? Please name
them all.

OED COPY

Part 2                 Cornish Questions   Page 3 of 3

_____

_____

_____

_____

11. Did you inform Mr. ▇▇▇▇▇ when he first approached you
as a client to that you would take the confidential material
and ideas presented to you concerning simulated aquariums and
seek to gain patent rights for yourself concerning this idea
or variations thereof that may conflict with, dilute, or ruin
his ability to profit from this concept?

_____

_____

12. Do you believe that he approached you with the purpose of
gaining any rights for his patent attorney to his concepts?


I hereby swear or affirm that I have answered these questions
truthfully.   Place your signature and date below.


_____
Cornell Cornish                        Date

Return these questions to:_____

FILED

ATTORNEY GRIEVANCE COMMISSION *    IN THE        NOV 28 1995
  OF MARYLAND               *    COURT OF APPEALS
100 Community Place         *    OF MARYLAND    Alexander L. Cummings, Clerk
Suite 3301                 *               Court of Appeals
Crownsville, Maryland 21032  *    Misc.Docket (Sandwitz le BV)
                           *    No. 39
    Petitioner           *    September Term, 1995
                           *
   v.                      *
                           *
CORNELL D. CORNISH         *
1101 New Hampshire Avenue   *
 N.W., Suite 301         *
Washington, D.C. 20037     *

## CONSENT TO INACTIVE STATUS

Comes now the Petitioner, the Attorney Grievance Commission of Maryland, and the Respondent, Cornell D. Cornish, and jointly petition this Court to permit the Respondent to be placed on inactive status.

1.    Respondent was admitted to the Maryland bar on November 9, 1956.

2.    A complaint is pending against Respondent concerning the handling of a patent application and Respondent has taken steps to resolve that matter.

3.    During the course of our investigation Respondent has advised that he does not actively engage in practice, occasionally takes some "pro bono" work, but that he suffers lasting affects from open heart surgery in 1982 and he goes to rehabilitation every day and, rests for some time thereafter.   In addition he participates in Al Anon attending three (3) or four (4) meetings a week as well as meeting with a sponsor.

4.    Respondent is 66 years of age and currently draws Social Security and a pension from his employment with the

Exhibit4

federal government.

5.    Respondent admits that at the present time he is unable and has no desire to cope with the demands of the practice of law and agrees that it is in his best interest to be placed on inactive status.

WHEREFORE, Petitioner and Respondent pray:

A.    That Respondent be placed on inactive status by this Court.

B.    This Court take such other and further relief as to the Court shall seem just and proper in the cause.

Cornell D. Cornish, Esq.
1101 New Hampshire Ave.,
N.W., Suite 301
Washington, D.C. 20037

Melvin Hirshman
Bar Counsel
Attorney Grievance Commission
of Maryland
100 Community Place
Suite 3301
Crownsville, Maryland 21032

11/21/95
Date



# Court of Appeals
## of Maryland
### Courts of Appeal Building
### Annapolis, Md. 21401-1699

ROBERT C. FRANKE
CHIEF DEPUTY

BESSIE M. DECKER
FRAN M. WOOTTON
JACQUELINE L. HUGHES
JOANNE T. DREWRY

ALEXANDER L. CUMMINGS
CLERK

974-3341
WASHINGTON AREA 261-2999

## NOTICE

December 4, 1995



RECEIVED
DEC 5 1995
ATTORNEY GRIEVANCE COMMISSION

I, Alexander L. Cummings, Clerk of the Court of Appeals of Maryland, do hereby certify that by an Order of this Court dated December 4, 1995,

**CORNELL D. CORNISH**

1101 New Hampshire Avenue, N.W.
Suite 301
Washington, D.C.  20037

has been placed on inactive status by consent from the practice of law in this State and his name as an attorney at law has been stricken from the register of attorneys in this Court (Maryland Rule BV13) until further Order of this Court.

IN TESTIMONY WHEREOF, I have hereunto set my hand as Clerk and affixed the seal of the Court of Appeals of Maryland this fourth day of December, 1995.

Clerk
Court of Appeals of Maryland

Exhibit 5

TTY FOR DEAF: 410-974-5422

ATTORNEY GRIEVANCE COMMISSION      *     IN THE
    OF MARYLAND                             *      
100 Community Place                  *     COURT OF APPEALS
Suite 3301                                *      
Crownsville, Maryland 21032        *     OF MARYLAND
                                         *      
        Petitioner                     *     Misc. Docket (Subtitle BV)
                                         *      
v.                                         *     No. 39
                                         *      
CORNELL D. CORNISH                 *     September Term, 1995
1101 New Hampshire Ave., N.W.      *
Suite 301                                 *
Washington, D.C. 20037            *



        Respondent               *

DEC 5 1995

# ORDER

ATTORNEY GRIEVANCE COMMISSION

     This matter came before the Court on a Petition filed jointly by the Attorney Grievance Commission and the respondent, Cornell D. Cornish, for the respondent to be placed on inactive status. The Court having considered the Petition, it is this <u>4th</u> day of <u>December        </u>, 1995,

     ORDERED, by the Court of Appeals of Maryland, that the Petition for Inactive Status be and it is hereby GRANTED, and the respondent shall be placed on inactive status from the practice of law, and it is further

     ORDERED, that the Clerk of this Court shall remove the name of Cornell D. Cornish from the register of attorneys in this Court and certify that fact to the Trustees of the Clients' Security Trust Fund and the clerks of all judicial tribunals in this State in accordance with Rule BV13.

                                       <u>/s/ ROBERT C. MURPHY</u>
                                           CHIEF JUDGE

# ATTORNEY GRIEVANCE COMMISSION
## OF MARYLAND

BAR COUNSEL
**MELVIN HIRSHMAN**

100 COMMUNITY PLACE
SUITE 3301
CROWNSVILLE, MD 21032-2027
(410) 514-7061
TOLL FREE 800-492-1660

INVESTIGATORS
**JOHN W. REBURN**
**MARC O. FIEDLER**
**STERLING H. FLETCHER**
**JANET C. MOSS**
**MICHAEL H. PEREGOY**

ASSISTANT BAR COUNSEL
**KENDALL R. CALHOUN**
**GLENN M. GROSSMAN**
**ROBERT P. CONRAD**
**JOHN C. BRODERICK**
**JAMES P. BOTLUK**
**RAYMOND A. HEIN**
**DOLORES O. RIDGELL**

OFFICE MANAGER
**DEBRA ZACHRY**

December 6, 1995

Office of the General Counsel
Patent and Trademark Office
2121 Crystal Drive
Suite 0100
Washington, D.C.  20231

RE:  Cornell D. Cornish

Dear Sir:

19,240

Enclosed is a copy of an Order of the Court of Appeals
of Maryland placing Cornish D. Cornish on inactive status.

Mr. Cornish is a member of your court/jurisdiction.
This information is provided to you for any action you wish to
take concerning his ability to practice.

Yours very sincerely,

Melvin Hirshman
Bar Counsel

MH/sg
Enclosure

Exhibit 6

Cornell D.M. Judge Cornish
Suite 301
1101 New Hampshire Ave., N.W.
Washington, D.C. 20037

February 8, 1996

Commissioner of Patents and Trademarks
BOX OED
Washington, D.C. 20231
ATTENTION: RASHEED

Dear Sir:

This is to notify you that I have voluntarily changed my status from active to inactive in Maryland by affidavit dated 12/9/95.

However, an admittedly incorrect Order dated 12/4/95 was issued in a name I expressly abandoned on September 13, 1990, and my timely request to have the Order dissolved or amended to the correct name was denied on February 7, 1996.

I am, therefore, ceasing the practice before the U.S. Patent and Trademark Office until the Order becomes final or is dissolved or amended to make the Order correct.

If I can be of any further help in connection with any of the above, please let me know by calling me at (202) 429-9705.

If any fees are due, please charge deposit account number ▓▓▓▓▓▓

Very truly yours,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
Registration No. 19,240

Exhibit 7



**UNITED STATES DEPARTMENT O. COMMERCE**
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

March 4, 1996

Mr. Cornell D. M. Judge Cornish                    4550
Suite 301
1101 New Hampshire Ave., N.W.
Washington, DC  20037

*[handwritten note:] Pat. pls. remove the Mr. Cornish from the roster. Thank you KBovard 8-28-96*

PERSONAL AND CONFIDENTIAL
Re:  File No. C96-017

Dear Mr. Cornish:

This Office is in receipt of your letter dated February 8, 1996, indicating that you are ceasing practice before the U.S. Patent and Trademark Office.  Accordingly, we are treating your statement as a request to have your name removed from the register.

We would also apprise you that we are in receipt of a letter of complaint from a Mr. ███████, as well as a letter from the Attorney Grievance Commission of Maryland enclosing a copy of an Order of the Court of Appeals of Maryland granting your Petition for Inactive Status from the practice of law.

It is our intent to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well as any change of status action based upon the Maryland Court Order, unless you inform us in writing within thirty (30) days from the date of this letter that it is not your intent to have your name removed from the register.

If your name is removed from the register, you may be reinstated subject to satisfying the requirements for registration set forth in 37 CFR § 10.7 and payment of the fee set forth in 37 CFR § 1.21(a)(3).

Very truly yours,

*[signature]*

Karen L. Bovard, Director
Office of Enrollment and Discipline

*[handwritten:] 19,240*

Exhibit 8

| |
|---|
| **Matter of Cornish; Grievance Committee Tenth Judicial** |
| Motion No: 1997-11662 |
| Slip Opinion No: 2006 NYSlipOp 62613(U) |
| Decided on February 2, 2006 |
| Appellate Division, Second Department, Motion Decision |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| This motion is uncorrected and is not subject to publication in the Official Reports. |

Supreme Court of the State of New York

Appellate Division: Second Judicial Department

M35480

K/nal

ANITA R. FLORIO, J.P.

HOWARD MILLER

ROBERT W. SCHMIDT

THOMAS A. ADAMS

DANIEL F. LUCIANO, JJ.

  1997-11662

  In the Matter of Cornell D.M.J. Cornish,                    DECISION & ORDER ON
                                                              APPLICATION
  admitted as Cornell D. Cornish,                          FOR REINSTATEMENT

  a suspended attorney.
                                                                           Exhibit 9
  (Attorney Registration No. 1868975)

Application by the respondent, Cornell D.M.J. Cornish, for reinstatement as an attorney and counselor-at-law. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 23, 1982, under the name Cornell D. Cornish. By order of

the Maryland Court of Appeals dated December 4, 1995, the respondent was placed on inactive status and his name was stricken from the register of attorneys in the State of Maryland. By subsequent order of the same court dated February 7, 1996, the respondent's application for dissolution or amendment of his inactive status was denied. By decision and order of this court dated March 16, 1998, the Grievance Committee's motion to impose reciprocal discipline upon the respondent based upon the disciplinary action taken against him by the Maryland Court of Appeals was held in abeyance pending a hearing at the respondent's request. By opinion of the District of Columbia Court of Appeals dated March 27, 1997, the respondent was suspended indefinitely from the practice of law in the District of Columbia based on the action of the Maryland court, with his reinstatement conditioned upon a showing of fitness. By order of the United States District Court for the Southern District of New York dated April 3, 1996, the respondent was suspended from the practice of law in that court pending his reinstatement in Maryland. By opinion and order of this court dated August 17, 1998, the respondent was suspended from the practice of law in the State of New York for a period of five years, with his reinstatement to the New York Bar conditioned upon his reinstatement to the Maryland Bar. In a decision and order appended to that opinion, the respondent's motion, inter alia, for summary judgment or a new trial was denied. By decision and order of this court dated November 20, 1998, the respondent's motion, inter alia, for leave to appeal this court's decision and order dated August 17, 1998 to the Court of Appeals was denied. By order dated November 16, 2000, the District of Columbia Court of Appeals reinstated the respondent to the District of Columbia Bar. By order of the Maryland Court of Appeals dated October 3, 2003, the respondent was reinstated to the practice of law in Maryland. By decision and order of this court dated November 1, 2004, the respondent's application for reinstatement as an attorney and counselor-at-law was held in abeyance and the matter referred to the Committee on Character and Fitness to investigate and report on the respondent's current fitness to be an attorney, including but not limited to the respondent's admission to the Maryland Court of Appeals that he was "unable and has no desire to cope with the demands of the practice of law," and the position of the New York Lawyer's Fund for Client Protection with respect to the respondent's application for reinstatement.

Upon the report of the Committee on Character and Fitness, it is

ORDERED that the application is granted; and it is further,

ORDERED that, effective immediately, the respondent is reinstated as an attorney and counselor-at-law and the Clerk of the court is directed to restore the name of Cornell D.M.J. Cornish, admitted as Cornell D. Cornish, to the roll of attorneys and counselors-at-law.

FLORIO, J.P., H. MILLER, SCHMIDT, ADAMS and LUCIANO, JJ., concur.

ENTER:

James Edward Pelzer

Clerk of the Court

Source: All Sources : / . . . / : Combined State Case Law and Ethics Opinions
Terms: cornish and cornell (Edit Search)

*691 A.2d 156, *; 1997 D.C. App. LEXIS 52, ***

In re **Cornell** D.M. Judge **Cornish**, Respondent. A Member of the Bar of the District of Columbia Court of Appeals

No. 95-BG-1830

DISTRICT OF COLUMBIA COURT OF APPEALS

691 A.2d 156; 1997 D.C. App. LEXIS 52

February 25, 1997, Argued
March 27, 1997, Decided

**SUBSEQUENT HISTORY:** [**1]

Certiorari Denied October 6, 1997, Reported at: 1997 U.S. LEXIS 5424.

**DISPOSITION:** Respondent is hereby suspended indefinitely from the practice of law in the District of Columbia nunc pro tunc to July 29, 1996. Reinstatement shall be governed by the terms of D.C. Bar R. XI, § 13(g).

**CORE TERMS:** reinstatement, inactive status, practice of law, recommendation, suspended, Maryland Rule, petition filed, court order, respondent filed, oral argument, time period, modification, recommended, reciprocal, suspension, interval, one-year

**COUNSEL:** Cornell D.M. Judge **Cornish**, pro se.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner, the Office of Bar Counsel.

**JUDGES:** Before Ferren, Steadman and Schwelb, Associate Judges.

**OPINION:** [*157] On Report and Recommendation of the Board on Professional Responsibility

Per Curiam: On December 4, 1995, the Court of Appeals of Maryland ordered that respondent n1 be placed on inactive status from the practice of law. *Attorney Griev. Comm'n v. Cornish*, 340 Md. 688, 667 A.2d 916 (Md. 1995). The Maryland court acted in response to a petition filed jointly by the Attorney Grievance Commission and the respondent. The petition stated, *inter alia*, that at the time, "a complaint was pending against [**2] Respondent concerning the handling of a patent application" n2 and that "Respondent admits that at the present time he is unable and has no desire to cope with the demands of the practice of law."

------------------Footnotes------------------

n1 All prior proceedings both in Maryland and here have identified respondent as **Cornell** D. **Cornish**. Respondent has submitted to us an order of the Superior Court filed September 13, 1990, formally granting respondent's petition to change his name from **Cornell** D. **Cornish to Cornell** D.M. Judge **Cornish**. Without objection by Bar Counsel, we have changed the formal caption of this case accordingly. In light of this opinion, all other pending motions, both pre-argument or post-argument, are dismissed as moot.

n2 The petition further stated that "Respondent has taken steps to resolve that matter."

------------------End Footnotes------------------

On April 15, 1996, pursuant to D.C. Bar R. XI, § 11(d), this court temporarily suspended respondent from the practice of law in the District of Columbia pending a recommendation from the Board on Professional Responsibility. [**3] We now have before us the recommendation of the Board that this court impose reciprocal discipline of indefinite suspension with reinstatement conditioned upon a showing of fitness, pursuant to D.C. Bar R. XI, § 13(g).

Exhibit 10

We have consistently taken this course of action in reciprocal proceedings involving the imposition of inactive status by court order in Maryland pursuant to a joint petition as in this case. *In re Dick*, 683 A.2d 159 (D.C. 1996); *In re Clancy*, 675 A.2d 493 (D.C. 1996); *In re O'Brien*, 665 A.2d 662 (D.C. 1995); *In re Samuels*, 648 A.2d 943 (D.C. 1994).

It is true that in *In re Samuels*, the order placing that attorney on inactive status contained an explicit provision conditioning reinstatement upon a showing "that he has been restored to good health and is capable of engaging in the competent practice of law." *Attorney Griev. Comm'n v. Samuels*, 328 Md. 739, 616 A.2d 903 (Md. 1992). The Maryland order before us placing respondent on inactive status does not include any such explicit condition, *Attorney Griev. Comm'n y. Cornish*, 340 Md. 688, 667 A.2d 916 (Md. 1995). We note, however, that the orders involved in *Attorney Griev. Comm'n v. Dick*, 340 Md. 28, 664 A.2d 1263 (Md. [**4] 1995), *Attorney Griev. Comm'n v. Clancy*, 336 Md. 516, 649 A.2d 356 (Md. 1994), and *Attorney Griev. Comm'n v. O'Brien*, 632 A.2d 767 (Md. 1993), each of which formed the basis for the reciprocal action here, contained no explicit conditions upon reinstatement. In all of those cases, as in respondent's, the Maryland Court of Appeals simply ordered inactive status in accordance with Maryland Rule 16-713 (then BV13). It appears that under Maryland Rule 16-714, such an order may be modified or terminated only by a petition filed in the Court of Appeals which must "set forth facts showing that the petitioner is rehabilitated and is otherwise entitled to the relief sought."

Accordingly, in each of our cases cited above, we provided that reinstatement should be governed by the terms of D.C. Bar R. XI, § 13(g). Consistent with these precedents, [*158] the Board has recommended that respondent's reinstatement in the District of Columbia be likewise governed by the terms of D.C. Bar R. XI, § 13(g). Under that subsection, an attorney suspended for disability may apply for reinstatement "once a year or at such shorter intervals as the Court may direct in its order of suspension or any modification thereof." [**5] The Board recommended that the one-year period run from the date respondent filed an affidavit pursuant to D.C. Bar R. XI, § 14(g).

We were advised by Bar Counsel at oral argument that respondent had filed such an affidavit on July 29, 1996. With respect to the time within which respondent may apply for reinstatement, we note that the Maryland rules appear to impose no minimum period within which reinstatement may be sought by one placed on inactive status by court order. We were advised at oral argument that respondent may soon seek reinstatement in Maryland. Should such reinstatement occur prior to the expiration of the one-year period here, respondent may move for a modification of the time period for reinstatement here as provided in § 13(g). n3

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 Although our rules are not entirely clear, in our prior orders cited above dealing with the effect here of Maryland inactive status impositions, we appear to have interpreted § 13(g) as making an attorney eligible for reinstatement only after a year has passed, absent court order shortening that interval, and to measure that period dependent upon the filing of the affidavit required by § 14(g). We follow that practice here without further examination of the issues, since as indicated reinstatement here will presumably be dependent in the first instance upon action in Maryland and the time period here could be correspondingly shortened in that eventuality. Although following the entry of the Maryland order respondent filed an affidavit pursuant to *Matter of Goldberg*, 460 A.2d 982 (D.C. 1983), following his subsequent suspension here he did not timely file a § 14(g) affidavit, a precondition to *Goldberg* retroactivity. See § 16(c); *In re Slosberg*, 650 A.2d 1329 (D.C. 1994).

- - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [**6]

Accordingly, it is ORDERED that respondent is hereby suspended indefinitely from the practice of law in the District of Columbia *nunc pro tunc* to July 29, 1996. Reinstatement shall be governed by the terms of D.C. Bar R. XI, § 13(g).

Source: All Sources : / . . . / : Combined State Case Law and Ethics Opinions
Terms: cornish and cornell (Edit Search)
View: Full
Date/Time: Thursday, June 15, 2000 - 4:26 PM EDT

About LEXIS-NEXIS | Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group.  All rights reserved.

Source: All Sources : / . . . / : Combined State Case Law and Ethics Opinions
Terms: **cornish and cornell** (Edit Search)

*247 A.D.2d 46, *; 676 N.Y.S.2d 502, **;*
*1998 N.Y. App. Div. LEXIS 8917, ****

In the Matter of **Cornell D.M.J. Cornish** (Admitted as **Cornell D. Cornish**), an Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

97-11662

SUPREME COURT OF NEW YORK, APPELLATE DIVISION, SECOND DEPARTMENT

247 A.D.2d 46; 676 N.Y.S.2d 502; 1998 N.Y. App. Div. LEXIS 8917

August 17, 1998, Decided

**PRIOR HISTORY:** [***1]

Motion by the Grievance Committee for the Tenth Judicial District pursuant to 22 NYCRR 691.3 to impose discipline upon the respondent based upon disciplinary action taken against him by the Court of Appeals of Maryland. Respondent was admitted to the Bar on June 23, 1982, at a term of the Appellate Division of the Supreme Court in the Second Judicial Department, under the name **Cornell D. Cornish.**

**DISPOSITION:** ORDERED that the petitioner's motions are granted; and it is further, ORDERED that the respondent's cross motion is denied; and it is further, ORDERED that pursuant to 22 NYCRR 691.3, the respondent, **Cornell D.M.J. Cornish,** is suspended from the practice of law in New York for a period of five years, commencing September 17, 1998, and continuing until further order of this court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years, upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended [***2] and resigned attorneys (22 NYCRR 691.10), (c) that he has otherwise properly conducted himself, and (d) that he has been reinstated to the practice of law in Maryland; and it is further, ORDERED that the respondent shall promptly comply with this court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further, ORDERED that pursuant to Judiciary Law § 90, during the period of suspension, the respondent, **Cornell D.M.J. Cornish,** is commanded to desist and refrain from (l) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

**CORE TERMS:** practice of law, suspended, reinstatement, reciprocal, discipline, counselor-at-law, summary judgment, inactive status, rules governing, good standing, cross motion, new trial, authorization, certificate, disbarred, disaffirm, register, resigned, marriages, village

◆ Show Headnotes

**COUNSEL:**

*Frank A. Finnerty, Jr.,* Syosset (*Ruthann E. Geary* of counsel), for petitioner.

**Cornell D.M.J. Cornish,** Washington, D.C., respondent *pro se.*

**JUDGES:** Mangano, P. J., Bracken, Rosenblatt, Miller and Pizzuto, JJ., concur.

**OPINION:** [*46]  [***3]  [**502]

Exhibit 11

PER CURIAM.

By order of the Court of Appeals of Maryland dated December  [*47]  4, 1995, the respondent was placed on

Search - 3 Results - cornish and cornell    http://www.lexis.com/research/retri   ...WS&_md5=b5514aaa00420f3a478afd9336c1ed2e

inactive status and his name was removed from the register of attorneys in that court.

The respondent was served with notice pursuant to 22 NYCRR 691.3, informing him of his right to interpose certain enumerated defenses to the imposition of reciprocal discipline in New York. The respondent requested a hearing and raised the three defenses to the imposition of reciprocal discipline found in 22 NYCRR 691.3. By decision and order on motion of this Court dated March 16, 1998, the Grievance Committee's motion was held in abeyance and the matter was referred to the Honorable Moses M. Weinstein, as Special Referee, for a hearing. The hearing was held on April 23, 1998.

The Special Referee found that the respondent failed to establish any of the defenses to the imposition of reciprocal discipline found in 22 NYCRR 691.3. The Grievance Committee now moves to confirm the Special Referee's report. The respondent cross-moves to disaffirm the Special Referee's report, to dismiss the disciplinary proceeding against him, for summary judgment, and for a [***4] new trial.

Based on the evidence adduced at the hearing, we conclude that the Special Referee's determination was proper.

Under the circumstances of this case, the respondent is suspended from the practice of law for a period of five years, and his reinstatement to the New York State Bar is conditioned on his reinstatement to the practice of law in Maryland.

[**503] Mangano, P. J., Bracken, Rosenblatt, Miller and Pizzuto, JJ., concur.

Ordered that the petitioner's motions are granted; and it is further,

Ordered that the respondent's cross motion is denied; and it is further,

Ordered that pursuant to 22 NYCRR 691.3, the respondent, **Cornell D.M.J. Cornish,** is suspended from the practice of law in New York for a period of five years, commencing September 17, 1998, and continuing until further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of five years, upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written [***5] rules governing the conduct of disbarred, suspended and resigned attorneys (22 [*48] NYCRR 691.10), (c) that he has otherwise properly conducted himself, and (d) that he has been reinstated to the practice of law in Maryland; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, the respondent, **Cornell D.M.J. Cornish,** is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

Motion by the respondent (1) for summary judgment or a new trial, (2) to strike the petitioner's affirmation in opposition to his cross motion, *inter alia,* to disaffirm the Special Referee's [***6] report, and (3) to correct and amend the minutes of the hearing before the Special Referee. By letter to the Office of Court Administration dated May 29, 1998, which was forwarded to this Court, the respondent requests (1) a certificate of good standing and (2) authorization to perform marriages in the Village of Belle Terre as a retired Justice of the Unified Court System. By opinion and order of this Court decided herewith, the respondent was suspended from the practice of law for a period of five years.

Upon the papers submitted in support of the motion, and no papers having been submitted in opposition or response thereto, it is

Ordered that the motion is denied in its entirety; and it is further,

Ordered that the respondent's request for a certificate of good standing is denied; and it is further,

Ordered that the respondent is directed to reapply directly to the Office of Court Administration with respect to his

application for authorization to perform marriages in the Village of Belle Terre.

Source: <u>All Sources</u> : **/ . . . /** : **Combined State Case Law and Ethics Opinions**
Terms: **cornish and cornell** (<u>Edit Search</u>)
View: Full
Date/Time: Thursday, June 15, 2000 - 4:26 PM EDT

<u>About LEXIS-NEXIS</u> | <u>Terms and Conditions</u>

<u>Copyright</u> © 2000 LEXIS-NEXIS Group.  All rights reserved.

FORM PTO – 107A
(REV July 29, 2004)

OMB No. 0651-0012 Approval Expires 9/30/06

UNITED STATES PATENT AND TRADEMARK OFFICE

## DATA SHEET - REGISTER OF PATENT ATTORNEYS AND AGENTS

You must provide a correspondence / business name, address and telephone number given in the block below. Government employees must provide the name and address of the department or government agency in the correspondence/business name, address and telephone number. This will be published in the Government publication **Attorneys and Agents Registered to Practice Before the United States Patent and Trademark Office.** Also provide your home address and telephone number. Only one correspondence address and telephone number will be published. **COMPLETE ALL LINES**

| LEGAL NAME  Last Name  First Name  Middle Name | REGISTRATION NUMBER |
|---|---|
| Mr. ☑  Cornish    Cornell    D. M. Judge    Ms. | 19,240 |

CORRESPONDENCE / BUSINESS NAME (employer, corporation, law firm, or U.S. Government agency, etc.)

Cornell D. M. Judge Cornish

CORRESPONDENCE / BUSINESS ADDRESS (street, building, suite, etc.)

1101 New Hampshire Ave., NW, Suite 301

| CITY  Washington | STATE  DC | ZIP CODE  20037 | CORRESPONDENCE / BUSINESS PHONE AND AREA CODE  (202) 429-9705 |
|---|---|---|---|

HOME ADDRESS

1101 New Hampshire Ave, N.W, Suite 301

| CITY  Washington | STATE  DC | ZIP CODE  20037 | HOME PHONE AND AREA CODE  (202) 429-9705 |
|---|---|---|---|

1. ☑ YES ☐ NO  Do you wish to remain on the register?    *(If NO, do not complete Items 2 through 7.*

2. Registration Status: ☑ ATTORNEY ☐ AGENT    *Sign, date and return this Data Sheet.)*

**RECEIVED**

3. If you are an attorney, please list all States of the United States in which you are a member in good standing of the bar of the highest court of the State: *Maryland, District of Columbia*  MAY 25 2005

OFFICE OF ENROLLMENT AND DISCIPLINE

4. ☑ YES ☐ NO  In the last five (5) years, have you been suspended or disbarred from practice on ethical grounds by any duly constituted authority of a State of the United States, or in the case of a practitioner who resides in a foreign country or is registered under 37 CFR § 11.6(c) by any duly constituted authority of the country in which the practitioner resides? If YES, please attach a statement explaining when, where and the grounds for the disbarment or suspension. *Reciprocal Suspension in NY - Have applied for NY reinstatement with permission of Appellate Division based on* ↙

5. ☐ YES ☑ NO  In the last five (5) years, have you been convicted of a felony or misdemeanor (other than a traffic violation) by any federal, State or other law enforcement authority? If YES, please attach a statement giving the date, charge, and place of the offense and an explanation of the facts and circumstances leading to the conviction.

6. ☐ YES ☑ NO  Are you an employee of the United States Government? *PLEASE NOTE: U.S. Government employees are not available to accept private clients or to represent clients other than their agency before the United States Patent and Trademark Office. 18 U.S.C. § 205; 37 CFR § 11.10(d) and (e).*

7. ☐ YES ☑ NO  Are you a former patent examiner of the United States Patent and Trademark Office?

| FOR UNITED STATES PATENT AND TRADEMARK OFFICE USE ONLY  AGENT: _____  ATTORNEY: _____ | I certify that each and every statement or representation in this Data Sheet is true and accurate (a willfully false certification is a criminal offense and is punishable by law [18 U.S.C. § 1001]).  Cornell D. M. Judge Cornish  Signature of Practitioner | 1/25/05  Date |
|---|---|---|

(See reverse side of form for Privacy Act Statement)

\* reinstatement from "inactive status" in Md

Exhibit 12



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

January 25, 2005

Cornell D.M. Cornish
1101 New Hampshire Ave., N.W., Suite 301
Washington, DC 20037

Dear Mr. Cornish:

Receipt is acknowledged of your request for Reinstatement. It has been over five (5) years since you were registered to practice before the United States Patent and Trademark Office (USPTO). There have been significant changes in the patent laws and in USPTO practice and procedure since 1996. You must take the registration examination **unless** you submit a showing to the satisfaction of the Director of Enrollment and Discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. 37 CFR §11.7.

Your showing must be mailed to Mail Stop OED, United States Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450, Attn: Shirley A. Martin.

If you wish an acknowledgement of the receipt of your response, include a stamped post card identifying the paper in accordance with instruction in MPEP 503, item "Return Postcard". This Office will stamp the receipt date on the card and place it in the outgoing mail.

Very truly yours,


Shirley A. Martin
Enrollment Program Specialist
Office of Enrollment & Discipline
571-272-6068

Exhibit 13

1064 OG 12 **OFFICIAL GAZETTE** MARCH 11, 1986

et al., Owner of Record: *Eaton Corp. Cleveland, Ohio,* Attorney or Agent: Watts, Hoffman, et al., Ex. Gp.: 330, Requester: Owner

**3,910,296,** Reexam. No. 90/000,947, Requested: Feb. 3, 1986, Cl. 134/2, METHOD FOR REMOVING PROTEINACEOUS DEPOSITS FROM CONTACT LENSES, Hampar L. Karageozian, Owner of Record: *Allergan Cribbean, Hormigueros, Puerto Rico,* Attorney or Agent: Martin A. Voet, Ex. Gp.: 130, Requester: Seidel, Gonds, et al., Philadelphia, Pa.

**3,958,888,** Reexam. No. 90/000,932, Requested: Jan. 6, 1986, Cl. 273/177R, CLAMPING ASSEMBLY, Ralph Mullenberg, Owner of Record: *Patentee, Hulchrath, Dex.,* Attorney or Agent: Bacon & Thomas, Ex. Gp.: 330, Requester: Michael J. Striker, New York, N.Y.

**4,048,306,** Reexam. No. 90/000,949, Requested: Feb. 4, 1986, Cl. 514/29, ALDEHYDE-ERYTHROMY-CYLAMINE CONDENSATION PRODUCTS, Roland Maier, et al., Owner of Record: *Boehringer Ingelheim Intl. GMBH, Ingelheim AM Rhein, Dex.,* Attorney or Agent: Hammond & Littell, Ex. Gp.: 120, Requester: Owner

**4,124,899,** Reexam. No. 90/000,934, Requested: Jan. 9, 1986, Cl. 364/716, PROGRAMMABLE ARRAY LOGIC CIRCUIT, John M. Birkner, et al., Owner of Record: *Monolithic Memories, Inc., Sunnyvale, Calif.,* Attorney or Agent: Skjerven, Morrill, et al., Ex. Gp.: 230, Requester: Altera Corp., Santa Clara, Calif.

**4,157,728,** Reexam. No. 90/000,936, Requested: Jan. 13, 1986, Cl. 164/452, PROCESS FOR DIRECT CHILL CASTING OF METALS, Ryota Mitamura, et al., Owner of Record: *Showa Aluminum Industries K.K., Tokyo, Japan,* Attorney or Agent: Armstrong, Nikaido, et al., Ex. Gp.: 320, Requester: Christopher Duffy, Seattle, Wash.

**4,175,774,** Reexam. No. 90/000,938, Requested: Jan. 14, 1986, Cl. 283/6, NON-COPYING PRINTED DOCUMENT AND METHOD OF PRINTING SAME, Gerald A. Tonges, et al., Owner of Record: *Bedinghaus Business Forms, Inc., Cincinnati, Ohio,* Attorney or Agent: Wood, Herron, et al., Ex. Gp.: 320, Requester: Owner

**4,246,142,** Reexam. No. 90/000,939, Requested: Jan. 17, 1986, Cl. 252/511, VULCANIZABLE SEMI-CONDUCTIVE COMPOSITIONS, Lucio Ongchin, Owner of Record: *Union Carbide Corp., New York, N.Y.,* Attorney or Agent: None, Ex. Gp.: 220, Requester: Robbins & Laramie, Washington, D.C.

**4,275,974,** Reexam. No. 90/000,942, Requested: Jan. 23, 1986, Cl. 405/225, INFLATION AND GROUT SYSTEM, Lloyd C. Knox, et al., Owner of Record: *Halliburton Co., Duncan, Okla.,* Attorney or Agent: James R. Duzan, Ex. Gp.: 350, Requester: LTV Energy Products Co., Arlington, Tex.

**4,286,425,** Reexam. No. 90/000,933, Requested: Jan. 6, 1986, Cl. 56/307, CUTTER FINGER FOR CUTTER BAR MOWERS, Gustav Schumacher, et al., Owner of Record: *Patentee, Eichelhardt, Dex.,* Attorney or Agent: Steinberg & Raskin, Ex. Gp.: 330, Requester: Michael J. Striker, New York, N.Y.

**4,329,624,** Reexam. No. 90/000,937, Requested: Jan. 13, 1986, Cl. 357/151, COMPUTER TYPE ELECTRONIC PHOTOFLASH, Akio Kamon, et al., Owner of Record: *Kabushika Kaisha Sunpack, Tokyo, Japan,* Attorney or Agent: Neuman, Williams, et al., Ex. Gp.: 260, Requester: Vivitar Corp., Santa Monica, Calif.

**4,366,093,** Reexam. No. 90/000,940, Requested: Jan. 17, 1986, Cl. 502/439, CYLINDRICAL MOLDED CATALYST, Ken Shiozaki, et al., Owner of Record: *Kanegafuchi Kagaku Kogyo K.K., Osaka, Japan,* Attorney

or Agent: Armstrong, Nikaido, et al., Ex. Gp.: 110, Requester: Owner

**4,454,267,** Reexam. No. 90/000,946, Requested: Jan. 30, 1986, Cl. 524/43, LIGHTWEIGHT JOINT COMPOUND, Terrance L. Williams, Owner of Record: *U.S. Gypsum Co., Chicago, Ill.,* Attorney or Agent: Samuel Kurlandsky, Ex. Gp.: 150, Requester: Owner

**4,457,490,** Reexam. No. 90/000,948, Requested: Feb. 4, 1986, Cl. 251/174, HIGH TEMPERATURE VALVES AND SEAT THEREOF, William B. Scobie, Owner of Record: *Keystone International, Inc., Houston, Tex.,* Attorney or Agent: C. James Bushman, Ex. Gp.: 340, Requester: Owner

### Reinstatement of Patent Attorneys and Agents to Practice Before the U.S. Patent and Trademark Office

Any person whose name has been removed from the register of attorneys and agents pursuant to 37 CFR 10.11(b), or its predecessor, 37 CFR 1.347; or whose name has been endorsed as inactive on the register pursuant to 37 CFR 10.6(d), or its predecessor, 37 CFR 1.341(f), may request reinstatement on the register. However, where the person seeks reinstatement to the register five (5) or more years after his or her name was either removed pursuant to 37 CFR 10.11(b), or its predecessor; or endorsed as inactive pursuant to 37 CFR 10.6(d), or its predecessor; or where other circumstances indicate that the person whose name was removed from or endorsed as inactive on the register may no longer be qualified for registration, that person will be required to again meet the requirements of 37 CFR 10.7 [formerly 37 CFR 1.341(c)], including taking and passing the examination under §10.7(b) before reinstatement is granted.

Those persons who show that they continue to possess the legal qualifications necessary to render applicants for patent valuable service despite the lapse of five or more years will not be required to take the examination. The legal qualifications include knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, and familiarity with current patent practice as well as patent statutes and regulations. In appropriate circumstances, any person whose name was removed from or endorsed as inactive on the register may be required to establish to the satisfaction of the Director of Enrollment and Discipline that he or she is of good moral character and repute pursuant to §10.7 regardless of the period his or her name was removed from or endorsed inactive on the register.

CAMERON K. WEIFFENBACH,
*Office of Enrollment*
*and Discipline.*

### John Shaunfield
### Service by Publication

In accordance with 37 C.F.R. 1.47(a) (Rules of Practice in Patent Cases), notice is hereby given of the filing on June 1, 1982 of an application for patent entitled Monitoring Torque In Tubular Goods on behalf of John Shaunfield, whose last known address is 842 Glenville Dr., Richardson, Tex. 75081. The application was made in compliance with 37 C.F.R. 1.47(a) and 35 U.S.C. 116 by Darrell L. Vincent without execution by the said John Shaunfield. Notice of the filing directed to the above noted address has been returned undelivered.

Any action to be taken by the said John Shaunfield in connection with the said application must be taken within thirty (30) days of the publication of this notice.

RENE D. TEGTMEYER,
*Assistant Commissioner*
*for Patents.*

Certificates of Correct

| | |
|---|---|
| D. 281,100 | 4,521,3 |
| 4,197,602 | 4,521,9 |
| 4,215,119 | 4,522,1 |
| 4,325,067 | 4,522,4 |
| 4,373,452 | 4,523,5 |
| 4,401,526 | 4,523,8 |
| 4,404,115 | 4,524,0 |
| 4,421,015 | 4,526,3 |
| 4,421,310 | 4,526,4 |
| 4,440,907 | 4,528,4 |
| 4,448,966 | 4,528,4 |
| 4,459,290 | 4,532,9 |
| 4,463,269 | 4,535,3 |
| 4,467,694 | 4,535,4 |
| 4,472,778 | 4,536,1 |
| 4,477,964 | 4,537,7 |
| 4,482,531 | 4,537,7 |
| 4,485,546 | 4,537,7 |
| 4,488,911 | 4,538,0 |
| 4,492,371 | 4,538,0 |
| 4,492,664 | 4,538,1 |
| 4,492,966 | 4,538,4 |
| 4,492,982 | 4,538,6 |
| 4,494,726 | 4,538,9 |
| 4,501,498 | 4,539,3 |
| 4,511,830 | 4,539,8 |
| 4,512,655 | 4,541,3 |
| 4,513,297 | 4,541,4 |
| 4,514,061 | 4,541,8 |
| 4,515,478 | 4,542,3 |
| 4,517,195 | 4,542,4 |
| 4,519,755 | 4,542,9 |
| 4,521,097 | 4,543,0 |

D

3,512,603—*Peter R. Cr* Yeovil, Somerset, E Patent dated May 1 1986, by the assignee.

Exhibit 14

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502

JAN 2 7 2005

ENROLLMEN

January 26, 2005

Shirley A. Martin
Enrollment Program Specialist
Office of Enrollment & Discipline
U.S. Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

     Re:   Reinstatement of Attorney

Dear Ms. Martin:

    Thank your for your letter of January 25, 2005, in which you give me the option of showing to the satisfaction of the Director of Enrollment and Discipline that I continue to possess the legal qualifications necessary to render applicants valuable patent law service under 37 CFR Sec. 11.7.

    Being duly sworn, this is to depose and say on information and belief as follows:

        1.   Since 1995 I have continued to take continuing education courses approved by the USPTO to upgrade my legal qualifications to give valuable service based upon the patent laws as they then existed and including all significant changes.

        2.   Since 1995, and for at least twenty years theretofore, I have continually been a member of, and regularly attended without fail, every AIPLA annual meeting in Washington, and these meetings provided me with a complete yearly inventory of **all** the significant changes in the patent laws on a yearly basis, thus continually upgrading my legal skills to conform to the yearly effort of the Congress and the Rule Making Authority of the USPTO.

        3.   Since 1995, and for at least twenty years theretofore, I have continually been a member of, and regularly subscribed to, **all** the AIPLA and Pittsburgh Intellectual Property Law Association publications, which have been a good source of the most recent actual and proposed changes in the U.S. and foreign patent law.

        4.   Since 1995, I have been a regular user of the USPQ weekly publications to maintain the value of my legal qualification relative to **all** the significant changes in the patent laws in this country.

Exhibit 15

5.    Since 1995, I have regularly been involved in legal research of the significant changes in the patent laws of this country and abroad, including professional work for a prominent law firm in the District of Columbia.

6.    For at least the last two years I have been doing valuable pro bono work for clients in the field of intellectual property law.

7.    To this end, at least 50 hours annually is the minimum aspiration of the Maryland Bar where I am admitted and in good standing.

8.    Since 1995, I have also attended continuing legal education course in the District of Columbia, where I am admitted and in good standing, so as to upgrade, improve and maintain my legal qualifications to render valuable patent law service.

9.    Since 1995, and for more than forty years theretofore, I have worked in the field of intellectual property law on a professional basis for private industry, prominent law firms or as a sole practitioner in every jurisdiction where I was admitted at the time (albeit, I am now admitted in two states and at least four federal jurisdictions).

10.    Since 1995, and for more than forty years theretofore, I have provided valuable service to applicants and litigants in the field of intellectual property law in every jurisdiction were I was admitted at the time.

11.    I have had the experience of filing an amicus brief in the U.S. Supreme Court concerning the fundamental and significant changes in the patent laws that have occurred concerning 35 USC 101.

12.    I have frequently attended important patent law cases in the U.S. Court of Appeals of the Federal Circuit, and have reviewed the holdings on a daily basis of all the significant patent law cases of this and other jurisdictions as reported on the internet.

13.    Without Reinstatement I am severely handicapped in providing valuable intellectual property law services in the fields of both patents and trademarks

14.    Patents and Trademarks are part of the federal overlap that allows lawyers like me to ethically offer valuable legal services in various federal jurisdictions and venues where they are admitted, whereby I, like all lawyers, are allegedly able to practice before the U.S. Patent and Trademark Office without passing an examination.

15.    Since 1995, and for more than twenty years before, I have been admitted and in good standing in the Supreme Court of the U.S., the Court of Appeals for the Federal Circuit, where I have been able to provide valuable legal services concerning all the significant changes in the patent laws.

16.    Since 1995, and for more than thirty years theretofore, I have continually upgraded my legal and ethical skills and legal qualifications to assure the Committee on Enrollment and Discipline that I can and will provide valuable and ethical service to a wide range of clients on a paying and pro bono basis.

If there is anything else I can do to provide you with the information the desire or need for the evaluation of my request for reinstatement without an examination, please let me know at once.

Thank you for your help or comments.    A post card response is requested for acknowledgement of my request for Reinstatement without examination.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
(202) 429-9705
cornishj@serols.com

City of Washington)
                 ) ss
District of Columbia)

Signed and sworn to before me this 26th day of January 2005, by Cornell D.M. Judge Cornish, who personally appeared and was known by me to be the person signing the above.

*Barbara Phillips*

Notary Public

Barbara Phillips
Notary Public, District of Columbia
My Commission Expires 3-31-2006



### UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

January 31, 2005

Cornell D.M Judge Cornish
1101 New Hampshire Ave., N.W., Suite 301
Washington, DC 20037-1502

      Re: Reinstatement

Dear Mr. Cornish:

The Office of Enrollment and Discipline (OED) is in receipt of your Request for Reinstatement.

You will receive a response in due course.

Very truly yours,


Shirley A. Martin
Office of Enrollment & Discipline
571-272-4097


Exhibit 16

Mail Stop OED, P.O. Box 1450, Alexandria, Virginia 22313-1450 – www.uspto.gov



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

March 22, 2005

Mr. Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW
Suite 301
Washington, DC  20037-1502

<u>PERSONAL AND CONFIDENTIAL</u>

Dear Mr. Cornish:

The Office of Enrollment and Discipline has carefully reviewed your request for reinstatement to the roster of agents and attorneys authorized to represent patent applicants before the United States Patent and Trademark Office.  As will be discussed below in greater detail, OED has concluded that you have not established that reinstatement would be appropriate.  In particular, you have not established to the satisfaction of the Director of Enrollment and Discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service.  Thus, your request for reinstatement without retaking the registration examination is denied.

By statute, the Commissioner of Patents and Trademarks may require a patent practitioner to show that he or she "possessed of the necessary qualifications to render applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office." *35 U.S.C. § 2(b)(2)(d)*.  The primary responsibility for protection of the public from unqualified practitioners before the Patent and Trademark Office ("PTO") rests with the Director of the USPTO. *Leeds v. Mosbacher*, 732 F. Supp. 198, 200 (D.D.C. 1990); *Gager v. Ladd*, 212 F. Supp. 671, 673 (D.D.C. 1963); *see also Premysler v. Lehman*, 71 F.3d 387, 389 (Fed. Cir. 1995) ("Title 35 vests the [USPTO Director] ... with the responsibility to protect PTO proceedings from unqualified practitioners.").

Pursuant to your request, you were removed from the roster of registered patent attorneys and agents in April 1996, after you were placed on disability inactive status with the Maryland State bar.  The District of Columbia and New York State bars subsequently took reciprocal action against your licenses in those respective jurisdictions.  There was a pending disciplinary complaint against you at the time you were removed from the USPTO roster.  Your request to be removed from the USPTO roster was granted with an

Exhibit 17

Cornell D.M. Judge Cornish                                                                 Page 2

explanation "you may be reinstated subject to satisfying the requirements for registration set forth in 37 CFR § 10.7 and payment of the fee set forth in 37 CFR § 1.21(a)(3)."

Under USPTO policy, if more than five years has elapsed from the time an individual is removed from the register, or where other circumstances indicate that the individual may no longer be qualified for registration, it is necessary for the individual to again meet the requirements under 37 CFR §10.7. *1064 O.G. 12* (March 11, 1986) (copy enclosed). The provisions of 37 CFR § 10.7 have now been superceded by 37 CFR § 11.7. The provisions of 37 CFR §10.7 and 11.7 each provide that, with limited exceptions, an individual must take and pass the registration examination. However, former practitioners who otherwise show that they continue to possess the legal qualifications necessary to render applicants for patent valuable service despite the lapse of five or more years will not be required to take the examination. *1064 O.G. 12*. The legal qualifications include knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, and familiarity with current patent practice as well as patent statutes and regulations. *Id.*

On January 25, 2005, OED informed you that since it had been over five years since you were registered to practice, to be reinstated it would be necessary for you to either retake the registration examination or otherwise show to the satisfaction of the Director of Enrollment and Discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. You subsequently filed an application for reinstatement along with a supporting affidavit indicating, *inter alia*, that since 1995 you have continued to take continuing education classes, attended annual conferences of intellectual property associations, subscribed to publications of intellectual property associations, regularly reviewed USPQ weekly advance sheets, regularly been involved in intellectual property legal research, and a number of other activities. The statement in the affidavit, however, are conclusory statements made without the support of any objective evidence, and therefore are entitled to little weight.

For the foregoing reasons, based on the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service. Therefore, your request for reinstatement is denied. However, you may demonstrate possession of necessary legal qualifications by taking and passing the registration examination. Moreover, this denial is without prejudice against supplementation of the present record.

Cornell D.M. Judge Cornish                                           Page 3

The present request for reinstatement provides no details concerning the actions taken in
Maryland, the District of Columbia, and New York concerning your law licenses in those
respective states.  In any further request for reinstatement to the USPTO roster, you
should fully detail the current status of your license in each of those states and provide
copies of associated documentation, such as any request for reinstatement filed with those
jurisdictions.

Very truly yours,

William J. Griffin, Staff Attorney
Office of Enrollment and Discipline

OMB No. 0651-0012 Approval Expires 09/30/06

| FORM PTO-158 (Rev. Feb 2005) | United States Patent and Trademark Office | THIS SPACE FOR UNITED STATES PATENT AND TRADEMARK OFFICE USE ONLY |
|---|---|---|

**APPLICATION FOR REGISTRATION TO PRACTICE**
**BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE**

RECEIVED

APR 0 4 2005

OFFICE OF ENROLLMENT AND DISCIPLINE

19 240

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. This collection of information is required by 37 CFR Sections 10.11 through 10.19 and 11.5 through 11.10. This information is used by the public to register to practice before the United States Patent and Trademark Office (USPTO) and by the USPTO to determine the eligibility of the applicant to register to practice before the USPTO. The information on this form will be treated confidentially to the extent allowed under the Privacy Act and the Freedom of Information Act (FOIA). Response to this information collection is voluntary; however, if you do not provide the requested information, the USPTO may not admit you to the registration examination or register you to practice before the USPTO. This form is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the information on the application to the USPTO. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, United States Patent and Trademark Office. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.
SEND TO: Mail Stop OED, United States Patent and Trademark Office, PO Box 1450, Alexandria, VA 22313-1450

| 1a) Legal Name | First Name | Middle Name | Last Name | | ✓ | Reasonable Accommodations Request Attached |
|---|---|---|---|---|---|---|
| | Cornell | D.M. Judge | Cornish | | | |

**1b) Name shown on valid Government ID** Cornell Cornish

**1c) ADDRESS:** Employer, corporation, law firm, U. S. Government agency. Indicate if student or unemployed.
Self-Employed

**1c) ADDRESS** (street, building, suite, etc.) 1101 New Hampshire Ave., NW, Suite 301

| 1d) CITY | 1e) STATE | 1f) ZIP CODE | 1g) DAYTIME Area Code & Phone Number |
|---|---|---|---|
| Washington | DC | 20037-1502 | (202) 429-9705 |

| 2. CITIZENSHIP (country) | 3. DATE OF BIRTH (month, day, year) | 4. PLACE OF BIRTH (City, State, Country) |
|---|---|---|
| USA | ▓▓▓▓▓▓▓ | Bryn Mawr, PA, Montgomery |

| FOR ALIENS ONLY | 5. VISA CLASSIFICATION | 6. PERMANENT RESIDENT OF THE UNITED STATES ☐ YES  Attach copy of both sides of documentation of permanent residence ☐ NO | 7. ALIEN REGISTRATION NUMBER |
|---|---|---|---|

You are required to update the foregoing information promptly upon any change. Select and check all the following that apply. Applicants should carefully review the General Requirements Bulletin for detailed instructions on completing this application.

**8a.** **Application Fee: (Please refer to the General Requirements Bulletin and 37 CFR § 11.7)**
☑ Enclosed is the non-refundable $40.00 application fee set forth in 37 CFR § 1.21(a)(1)(i).
OR
☐ Enclosed is the $1,600.00 fee set forth in 37 CFR § 1.21(a)(10).

**8b.** **Registration Examination Fee:**
☐ I will utilize a commercial test administration service. Enclosed is the Government registration examination fee of $200.00 for test administration by a commercial entity. [37 CFR § 1.21 (a)(1)(ii)(A)]
☑ I request USPTO test administration. Enclosed is the Government registration examination fee of $450.00 for test administration by the USPTO. [37 CFR § 1.21(a)(1)(ii)(B)]

**9.** **Waiver of Examination:** I am a former USPTO employee and satisfy the requirements of:
☐ 37 CFR 11.7(d)(1). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)
☐ 37 CFR 11.7(d)(2). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)
☐ 37 CFR 11.7(d)(3). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)

**10.** ☐ **Passed Examination:** I passed an examination on 1958 . Enclosed is the required registration fee of $100.00 [37 CFR § 1.21(a)(2)] and a completed data sheet.

**11.** ☑ **Reinstatement:** I am applying for reinstatement, or as a former government employee for a change from inactive to active status. Enclosed is any required fee under 37 CFR § 1.21.

**12.** ☑ I previously applied for admission to the registration examination or requested the Office of Enrollment and Discipline to evaluate my scientific and technical qualifications.
Date of Previous Application: 1958   Name on Application, if different: Cornell Daniel Cornish

**13.** ☐ I was previously registered to practice in patent cases before the United States Patent and Trademark Office as an attorney or agent. If "YES", my Registration No. is 19,240

**14.** ☑ **BAR MEMBERSHIP.** I am a member in good standing of the bar of the highest court of a State or Territory of the United States. A list of all said courts and corresponding bar membership number(s) follows: MD D41560A; DC 366240

Exhibit 18

FORM PTO-158 (Rev. Feb 2005)                    Page 2

BACKGROUND INFORMATION: Ca     and truthfulness are significant elements c     less relevant to practice before the United States Patent and Trademark Office. You should, therefore, provide the Office of Enrollment and Discipline with all available information, however unfavorable, even if its relevance is in doubt, with regard to the questions asked below. For each question answered "YES," provide a detailed statement setting forth all relevant facts and dates along with verified copies of relevant documents. Your responses must be updated as necessary, prior to your registration. Any documents, evidence or proofs previously filed in a prior application need not be resubmitted unless your response to a question must be changed. Failure to disclose the requested information may result in denial of registration or in disciplinary proceedings under 37 CFR § 10.22 should you become registered.

☐ YES  ☑ NO  **15.** Have any charges ever been preferred against you in connection with your practice before any Federal or State court, or municipal bureau, commission, office or agency of any kind or character?

☐ YES  ☑ NO  **16.** Have you ever been arrested, charged, or held by Federal, State or other law enforcement authorities for any violation of any Federal or State law, or any county or municipal law, regulation or ordinance?  (Do not include any misdemeanor before your 16th birthday or traffic violations for which the fine was $100 or less.)

☐ YES  ☑ NO  **17.** Have you ever been disciplined, reprimanded, suspended, expelled or asked to resign or withdraw from any educational institution, or have you resigned or withdrawn from any such institution in time to avoid discipline, reprimand, suspension, expulsion or request to resign for conduct involving dishonesty, fraud, misrepresentation, or deceit?

☐ YES  ☑ NO  **18.** Have you ever been disciplined, reprimanded, or suspended in any job for conduct involving dishonesty, fraud, misrepresentation, deceit, or any violation of Federal or State laws or regulations?

☐ YES  ☑ NO  **19.** Have you ever been fired or discharged from any job, or have been asked to resign or quit for conduct involving dishonesty, fraud, misrepresentation, deceit, or any violation of Federal or  State laws or regulations?

☐ YES  ☑ NO  **20.** Have you ever resigned or quit a job when you were under investigation or inquiry for conduct which could have been considered as involving dishonesty, fraud, misrepresentation, deceit, or violation of Federal or State laws or regulations, or after receiving notice or been advised of possible investigation, inquiry, or disciplinary action for such conduct?

☐ YES  ☑ NO  **21.** Have you ever been discharged from military service under conditions "other than honorable," or by reason of the sentence of a Court Martial or being dropped from the rolls?

☐ YES  ☑ NO  **22.** Are you delinquent on any State or Federal debt? (Include delinquencies arising from Federal or State taxes, loans, overpayment of benefits, and other debts to the U.S. Government and defaults on Federally guaranteed or insured loans such as student and home mortgage loans.)

**23.** EDUCATION: List **all degrees** conferred in the blocks below. Attach to this application any required documentation to complete your application for registration. Refer to the General Requirements Bulletin. If you applied previously for an exam, please see the General Requirements Bulletin section titled "REAPPLYING TO TAKE THE EXAMINATION " for what you must submit.

| Degree Received as indicated on Transcript | College | Date Received | Major Subject as indicated on Transcript |
|---|---|---|---|
| MS | SUNY Stony Brook U. | 1978 | Electrical Engineering |
| LLB (JD) | U. of Maryland | 1956 | Law |
| BA | Johns Hopkins U. | 1950 | History |

Upon the basis of the foregoing information and any attached documents, I hereby apply for registration to practice in patent cases before the United States Patent and Trademark Office. I certify that each and every statement or representation in this application is true and correct. (A willfully false statement or certification is a criminal offense and is punishable by law [18 U.S.C. § 1001].)

| 24. *Cornell D. M. Judge Cornish* | Date *3/26/05* |
|---|---|
| Signature of Applicant | |

OMB No. 0651-0012 Approval Expires 09/30/06

| FORM PTO-158 (Rev. Feb 2005) | United States Patent and Trade : Office | THIS SPACE FOR UNITED STATES PATENT AND TRADEMARK OFFICE USE ONLY |
|---|---|---|

**APPLICATION FOR REGISTRATION TO PRACTICE BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. This collection of information is required by 37 CFR Sections 10.11 through 10.19 and 11.5 through 11.10. This information is used by the public to register to practice before the United States Patent and Trademark Office (USPTO) and by the USPTO to determine the eligibility of the applicant to register to practice before the USPTO. The information on this form will be treated confidentially to the extent allowed under the Privacy Act and the Freedom of Information Act (FOIA). Response to this information collection is voluntary; however, if you do not provide the requested information, the USPTO may not admit you to the registration examination or register you to practice before the USPTO. This form is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the information on the application to the USPTO. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, United States Patent and Trademark Office. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.
SEND TO: Mail Stop OED, United States Patent and Trademark Office, PO Box 1450, Alexandria, VA 22313-1450

**RECEIVED**

APR 0 4 2005

OFFICE OF ENROLLMENT AND DISCIPLINE

19 240

| 1a) Legal Name | First Name: Cornell | Middle Name: D.M. Judge | Last Name: Cornish | ✓ | Reasonable Accommodations Request Attached |
|---|---|---|---|---|---|

| 1b) Name shown on valid Government ID | Cornell Cornish |
|---|---|

| 1c) ADDRESS: | Employer, corporation, law firm, U.S. Government agency.  Indicate if student or unemployed. Self-Employed |
|---|---|

*Registration # not ID #*

| 1c) ADDRESS (street, building, suite, etc.) | 1101 New Hampshire Ave., NW, Suite 301 |
|---|---|

| 1d) CITY: Washington | 1e) STATE: DC | 1f) ZIP CODE: 20037-1502 | 1g) (202) 429-9705 |
|---|---|---|---|

| 2. CITIZENSHIP (country): USA | 3. DATE OF BIRTH (month, day, year): ▮▮▮▮ | 4. PLACE OF BIRTH (City, State, Country): Bryn Mawr, PA, Montgomery |
|---|---|---|

| FOR ALIENS ONLY → | 5. VISA CLASSIFICATION | 6. PERMANENT RESIDENT OF THE UNITED STATES ☐ YES ☐ NO  Attach copy of both sides of documentation of permanent residence | 7. ALIEN REGISTRATION NUMBER |
|---|---|---|---|

You are required to update the foregoing information promptly upon any change. Select and check all the following that apply. Applicants should carefully review the General Requirements Bulletin for detailed instructions on completing this application.

**8a.** Application Fee: (Please refer to the General Requirements Bulletin)
☑ Enclosed is the non-refundable $40.00 application
OR
☐ Enclosed is the $1,600.00 fee set forth in 37 CFR

**8b.** Registration Examination Fee:
☐ I will utilize a commercial test administration $200.00 for test administration by a commercial
☑ I request USPTO test administration. Enclosed administration by the USPTO. [37 CFR § 1.

**9.** Waiver of Examination: I am a former USPTO
☐ 37 CFR 11.7(d)(1). Enclosed is the application
☐ 37 CFR 11.7(d)(2). Enclosed is the application
☐ 37 CFR 11.7(d)(3). Enclosed is the application

**10.** ☐ Passed Examination: I passed an exami $100.00 [37 CFR § 1.21(a)(2)] and a comp

**11.** ☑ Reinstatement: I am applying for reinstate active status. Enclosed is any required f

**12.** ☑ I previously applied for admission to the regis evaluate my scientific and technical qualifications.
Date of Previous Application: 1958    Name on Application, if different: Cornell Daniel Cornish

*ID # 9000.19.240*

*Reg # 19,240*

*retaking Registration Exam*

**13.** ☐ I was previously registered to practice in patent cases before the United States Patent and Trademark Office as an attorney or agent. If "YES", my Registration No. is 19,240

**14.** ☑ BAR MEMBERSHIP. I am a member in good standing of the bar of the highest court of a State or Territory of the United States. A list of all said courts and corresponding bar membership number(s) follows: MD D41560A; DC 366240



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

April 21, 2005

Reg #: 19240
Name on valid government issued ID:
**Cornell Cornish**

Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW, Suite 301
Washington, DC 20037-1502

### NOTICE OF ADMISSION TO EXAMINATION

Your application to take the examination for registration to practice before the Patent and Trademark Office has been approved.

The date of the USPTO-administered examination to which you are admitted is **Monday, July 11, 2005.**

The location of the USPTO administered exam is

Madison West Building
Auditorium on the Concourse Level
600 Dulany Street
Alexandria, VA 22314

PLEASE RETAIN THIS NOTICE. To be admitted to the exam, you must present a valid (unexpired) Government photo identification. The name on the valid Government-photo ID must **exactly match** the name you provided on your application form in Block "1b". A valid state drivers license or passport are examples of Government-photo identification.

You must plan to be admitted into and be seated in the auditorium by 8:30 A.M. The examination will begin promptly at the conclusion of instruction to candidates. It is expected that the exam will begin about 9:00 AM. Candidates arriving later than 8:30 A.M. will **not** be admitted to the examination. Accordingly, plan ahead and provide yourself with sufficient time to travel to the examination site and get to the examination room before the doors close.

The examination is an OPEN book examination. A Manual of Patent Examining Procedure (MPEP) and scratch paper will be provided for you.

Cornell D.M. Judge Cornis..                    Reg #: 19240                                    2

You **may not** bring the MPEP, any notes, or any books or material into the auditorium. You also may not bring into the auditorium any electronic device, including but not limited to a computer, telephone, camera, electronic recording device, personal digital assistance or CD player. Lockers are not provided for storing materials or electronic devices. Please plan to come to the auditorium without the foregoing items.

You **must bring** several No. 2 or softer lead pencils to record your responses to the questions on an answer form.

The examination will be administered in two sessions. The morning session begins about 9:00 AM and concludes three hours after commencement. The afternoon session also is three hours in length. At the conclusion of the morning session, an announcement will be made setting the time when you must report back for the afternoon session.

One hour is allowed for lunch. The Round House Restaurant is located close to the examination site. Other restaurants are available, but further away.

You will not need a building pass to enter the Madison West building or walk down a stairway to the auditorium on the Concourse Level of the building to enter the test site.

NOTE: Directions to the test site and parking information are provided as a separate enclosure to this letter. It is suggested that you consider using the Metro to come to the test site.

If you wish to receive acknowledgement of the receipt of any communication, please include a self-addressed, stamped post card to be used for such purpose. The card should identify each type of paper filed. OED will stamp the receipt date on the card and place it in the outgoing mail. However, the card is not verification that all of those items you identified were present.

Stephen K. Hanson, Program Analyst
Office of Enrollment and Discipline
571-272-6067 / FAX: 571-273-6067

Enclosures



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

August 15, 2005

**USPTO ID #: 900019240**

Cornell D M Judge Cornish
1101 New Hampshire Ave NW Ste 301
Washington, DC 20037

### NOTICE OF RESULTS OF July 11, 2005 REGISTRATION EXAMINATION

I regret to inform you that you did not attain a passing grade on the examination for registration to practice before the U.S. Patent and Trademark Office given on July 11, 2005. Your examination score is: 46 percent.

To pass the examination, you needed a minimum score of 70 percent.

Your score is the percentage of scored questions you correctly answered. See the notice at http://www.uspto.gov/web/offices/dcom/gcounsel/09jun2005.htm.

Within sixty (60) days of the mailing date of this letter, you are entitled to inspect, but not copy, the questions and answers you answered incorrectly. 37 CFR § 11.7(e). All reviews will take place at the Office of Enrollment and Discipline, 600 Dulany Street, Madison West, 8th Floor, Alexandria, VA 22313. Please contact the Office of Enrollment and Discipline to schedule a time for your review.

You may reapply immediately to take the examination. You must wait at least 30 days after the date you last took the exam before retaking the examination. To apply to take the examination again, you must file an application form, along with any updated information, and the $40.00 application fee and the $200.00 examination fee. See the instructions in the section titled, "Reapplying for the Exam" in the General Requirements Bulletin (GRB). The GRB may be found at the Office of Enrollment and Discipline (OED) home page at the following web address: http://www.uspto.gov/web/offices/dcom/gcounsel/oed.htm. The GRB may be downloaded at no cost, or you may purchase a single copy at a prepaid fee of $15.00 per copy. For a printed copy, submit a written request with the appropriate fee to: Mail Stop OED, United States Patent and Trademark Office, P. O. Box 1450, Alexandria, Virginia 22313-1450.

If you wish to receive acknowledgement of the receipt of any communication, please include a self-addressed, stamped post card to be used for such purpose. The card should identify each type of paper filed. OED will stamp the receipt date on the card and place it in the outgoing mail. However, the card is not verification that all of those items you identified were present.

Harry I. Moatz, Director
Office of Enrollment and Discipline

Exhibit 20

OMB No. 0651-0012 Approval Expires 09/30/06

| FORM PTO-158 (Rev. Feb 2005) | United States Patent and Trademark Office | THIS SPACE FOR UNITED STATES PATEN AND TRADEMARK OFFICE USE ONLY |

**APPLICATION FOR REGISTRATION TO PRACTICE BEFORE THE UNITED STATES PATENT AND TRADEMARK OFFICE**

**RECEIVED**

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. This collection of information is required by 37 CFR Sections 10.11 through 10.19 and 11.5 through 11.10. This information is used by the public to register to practice before the United States Patent and Trademark Office (USPTO) and by the USPTO to determine the eligibility of the applicant to register to practice before the USPTO. The information on this form will be treated confidentially to the extent allowed under the Privacy Act and the Freedom of Information Act (FOIA). Response to this information collection is voluntary; however, if you do not provide the requested information, the USPTO may not admit you to the registration examination or register you to practice before the USPTO. This form is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the information on the application to the USPTO. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, United States Patent and Trademark Office. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.
**SEND TO: Mail Stop OED, United States Patent and Trademark Office, PO Box 1450, Alexandria, VA 22313-1450**

**MAR 2 8 2006**

**OFFICE OF ENROLLMENT AND DISCIPLINE**

*19240*

| 1a) Legal Name | First Name | Middle Name | Last Name | * * * · X | Reasonable Accommodations Request Attached |
| | Cornell D.M. Judge | | Cornish | | |

| 1b) Name shown on valid Government ID | Cornell D.M. Judge Cornish | See Attached *** |

| 1c) ADDRESS: | Employer, corporation, law firm, U. S. Government agency. Indicate if student or unemployed. |

| 1c) ADDRESS (street, building, suite, etc.) | 1101 New Hampshire Ave., NW, Suite 301 |

| 1d) CITY | 1e) STATE | 1f) ZIP CODE | 1g) DAYTIME Area Code & Phone Number |
| Washington | DC | 20037-1502 | (202) 429-9705 |

| 2. CITIZENSHIP (country) | 3. DATE OF BIRTH (month, day, year) | 4. PLACE OF BIRTH (City, State, Country) |
| USA | ▇▇▇▇▇▇ | Bryn Mawr, PA |

| FOR ALIENS ONLY ➤ | 5. VISA CLASSIFICATION | 6. PERMANENT RESIDENT OF THE UNITED STATES ☐ YES  Attach copy of both sides of documentation of permanent ☐ NO  residence | 7. ALIEN REGISTRATION NUMBER |

You are required to update the foregoing information promptly upon any change. Select and check all the following that apply
Applicants should carefully review the General Requirements Bulletin for detailed instructions on completing this application.

**8a.** Application Fee: (Please refer to the General Requirements Bulletin and 37 CFR § 11.7)
☐ Enclosed is the non-refundable $40.00 application fee set forth in 37 CFR § 1.21(a)(1)(i).
OR
☐ Enclosed is the $1,600.00 fee set forth in 37 CFR § 1.21(a)(10).

**8b.** Registration Examination Fee:
☐ I will utilize a commercial test administration service. Enclosed is the Government registration examination fee of $200.00 for test administration by a commercial entity. [37 CFR § 1.21 (a)(1)(ii)(A)]
☑ I request USPTO test administration. Enclosed is the Government registration examination fee of $450.00 for test administration by the USPTO. [37 CFR § 1.21(a)(1)(ii)(B)]  or Credit Card PTO - 2038 attached

**9.** Waiver of Examination: I am a former USPTO employee and satisfy the requirements of:
☐ 37 CFR 11.7(d)(1). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)
☐ 37 CFR 11.7(d)(2). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)
☐ 37 CFR 11.7(d)(3). Enclosed is the applicable fee under either 37 CFR § 1.21(a)(1)(i) OR 37 CFR § 1.21(a)(10)

**10.** ☐ Passed Examination: I passed an examination on _____. Enclosed is the required registration fee of $100.00 [37 CFR § 1.21(a)(2)] and a completed data sheet.

**11.** ☐ Reinstatement: I am applying for reinstatement, or as a former government employee, for a change from inactive to active status. Enclosed is any required fee under 37 CFR § 1.21.

**12.** ☐ I previously applied for admission to the registration examination or requested the Office of Enrollment and Discipline to evaluate my scientific and technical qualifications.
Date of Previous Application: _____ Name on Application, if different: _____

**13.** ☐ I was previously registered to practice in patent cases before the United States Patent and Trademark Office as an attorney or agent. If "YES", my Registration No. is  19,240

**14.** ☑ BAR MEMBERSHIP. I am a member in good standing of the bar of the highest court of a State or Territory of the United States. A list of all said courts and corresponding bar membership number(s) follows:  MD, DC 366240, NY
1868975. * see over

Exhibit 21

FORM PTO-158 (Rev. Feb 2005)                         Page 2

BACKGROUND INFORMATION: Candor and truthfulness are significant elements of fitness relevant to practice before the United States Patent and Trademark Office. You should, therefore, provide the Office of Enrollment and Discipline with all available information, however unfavorable, even if its relevance is in doubt, with regard to the questions asked below. For each question answered "YES," provide a detailed statement setting forth all relevant facts and dates along with verified copies of relevant documents. **Your responses must be updated as necessary, prior to your registration.** Any documents, evidence or proofs previously filed in a prior application need not be resubmitted unless your response to a question must be changed. **Failure to disclose the requested information may result in denial of registration or in disciplinary proceedings under 37 CFR § 10.22 should you become registered.**

☐ YES ☒ NO  **15.** Have any charges ever been preferred against you in connection with your practice before any Federal or State court, or municipal bureau, commission, office or agency of any kind or character?
see over

☒ YES ☐ NO  **16.** Have you ever been arrested, charged, or held by Federal, State or other law enforcement authorities for any violation of any Federal or State law, or any county or municipal law, regulation or ordinance?  (Do not include any misdemeanor before your 16th birthday or traffic violations for which the fine was $100 or less.)
see over

☐ YES ☒ NO  **17.** Have you ever been disciplined, reprimanded, suspended, expelled or asked to resign or withdraw from any educational institution, or have you resigned or withdrawn from any such institution in time to avoid discipline, reprimand, suspension, expulsion or request to resign for conduct involving dishonesty, fraud, misrepresentation, or deceit?

☐ YES ☒ NO  **18.** Have you ever been disciplined, reprimanded, or suspended in any job for conduct involving dishonesty, fraud, misrepresentation, deceit, or any violation of Federal or State laws or regulations?

☐ YES ☒ NO  **19.** Have you ever been fired or discharged from any job, or have been asked to resign or quit for conduct involving dishonesty, fraud, misrepresentation, deceit, or any violation of Federal or State laws or regulations?

☐ YES ☒ NO  **20.** Have you ever resigned or quit a job when you were under investigation or inquiry for conduct which could have been considered as involving dishonesty, fraud, misrepresentation, deceit, or violation of Federal or State laws or regulations, or after receiving notice or been advised of possible investigation, inquiry, or disciplinary action for such conduct?

☐ YES ☒ NO  **21.** Have you ever been discharged from military service under conditions "other than honorable," or by reason of the sentence of a Court Martial or being dropped from the rolls?

☐ YES ☒ NO  **22.** Are you delinquent on any State or Federal debt? (Include delinquencies arising from Federal or State taxes, loans, overpayment of benefits, and other debts to the U.S. Government and defaults on Federally guaranteed or insured loans such as student and home mortgage loans.)

**23.** EDUCATION: List <u>all degrees</u> conferred in the blocks below.  Attach to this application any required documentation to complete your application for registration.  Refer to the General Requirements Bulletin.  If you applied previously for an exam, please see the General Requirements Bulletin section titled "REAPPLYING TO TAKE THE EXAMINATION " for what you must submit.

| Degree Received as indicated on Transcript | College | Date Received | Major Subject as indicated on Transcript |
|---|---|---|---|
| BA | Johns Hopkins U. | 1950 | Arts & Sciences |
| JD | U. of MD | 1956 | Law |
| MS | SUNY Stony Brook | 1978 | Electrical Engineering |

Upon the basis of the foregoing information and any attached documents, I hereby apply for registration to practice in patent cases before the United States Patent and Trademark Office. I certify that each and every statement or representation in this application is true and correct. *(A willfully false statement or certification is a criminal offense and is punishable by law [18 U.S.C. § 1001].)*

**24.** *[signature]*
Signature of Applicant                                   Date  3/21 -

* 14.  Also: USDCSDNY, USDCEDNY, US Tax Court, USCAFC, SCUS

RECEIVED

MAR 2 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

15. No criminal charges.

16 and 17: Inactive in MD*

        Reciprocal Suspension DC April 3, 1996

        Reciprocal Suspension NY August 17, 1998**

        Reciprocal Suspension DCSDNY April 3, 1996*

        Reinstated MD 10/3/03

        Reinstated DC 11/16/00

        Reinstated DCSNY 8/16/04

        Reinstated NY 2/2/06

* Temporary, Provisional, Inactivity without requirement of fitness for Reinstatement; see material previously submitted.

** Pending Reinstatement in MD

RECEIVED

MAR 2 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

March 21, 2006                                    <u>Confidential and Personal</u>

Office of Enrollment and Discipline              **RECEIVED**
General Mailing Address
Mail Stop OED                                    MAR 2 8 2006
U.S. Patent and Trademark Office
PO Box 1450                                      OFFICE OF ENROLLMENT
Alexandria, VA 22313-1450                             AND DISCIPLINE

     Re:    Request for USPTO Test Administration

Dear Sirs:

     Thank you for an interview concerning the requirement for a doctor's certificate of the need for, and the reason for the need of, a reasonable accommodation for USPTO Test Administration that is submitted herewith.

     This is a timely request and petition for cause for an extension of time to ask for reconsideration of the limitation to an existing, one-fits all type font and size for the written examination, and for a one-fits all July 13th examination date.

     This is also a timely request for permission and time to file a reply brief to a written refusal, and for a later non-one-fits-all date selection than is apparently available without a timely request, which is timely submitted herewith to advance this matter to issue, to reduce the issues petitioned, and to satisfy the OED and the Commissioner's requirements.

     Apparently, an enhanced, large print examination, such as requested herein, has been found to be reasonable heretofore as an alternative to the expense, risk and complications of immediate surgery, and such printing has been provided heretofore for previous examinations, so precedents have been set for the reasonableness of this request.

     In review, therefore, this is a timely request for an appointment to sit for the forthcoming, written, Government registration examination at the PTO with the reasonable accommodation of a large print examination at the PTO sitting due this July, and as part of the reasonable accommodation requested hereby, hopefully, it would be provided not on Wednesday, and not on July 12th, 13th or 26th but rather on July 14th or 27th, 2006, and preferably the 27th.

Exhibit 22

It is understood for purposes of this request that such exceptions for special printing and/or date selection have been allowed or allowable heretofore with payment of no more than the standard $450.00 examination fee, which is hereby timely authorized to be made by the Commissioner from my credit card or my deposit account, Customer No. 000059083, Registration No. 19,240 (NY Registration No. 1868975, DC Registration No. 366240) – preferably my credit card.

Thank you for returning my enclosed post card acknowledging receipt of my application with the required doctor's certificate for reasonable accommodation, comprising a selectively ENHANCED LARGE PRINT written examination, selectively specified date, and authorization for payment using my credit card authorization for the payment of $450.00.

Please note that I am asking for reasonable accommodation for a printed examination with LARGE PRINT due to the lack of sufficient light levels in the testing room, and insufficiently large print on the examinations used heretofore, since obviously those deficiencies have presented reduced light levels that are already unacceptable, unavoidable, unintended, or unacceptable, thus, to present natural or artificial disabilities in some or all cases.

In any event, I would assume that PRINT SELECTIVELY ENHANCED FOR READABILITY IN TYPE FACE, SIZE, SPACING, BACKGROUND, CONTRAST, and/or by the use of INCREASED LIGHT LEVELS than used, at least on some occasions heretofore, would help all applicants, be without objection by all test takers, whether or not they have, or have NOT had reduced vision from any of a wide variety of natural or artificial DISABILITIES.

It is submitted that all will agree that the REASONABLE ACCOMODATIONS requested herein *are selectively reasonable* in view of the certificate submitted herewith, and because they are prima facie with a suggestion of success within the reasonable standards usually applied to such requests, whether or not the underlying disability or disabilities are correctable or not, which of course, they have been in many but not all cases heretofore.

And such selectivity can be easily provided according to well established, long lasting procedures available heretofore for reducing or alleviating such disabilities. These include surgery, or, to some extent, adjusting the light levels, contrast, background, typeface, spacing, background, contrast and/or print size used, as is necessary, either by computer or non-computer provided means and/or processes. The print size especially is easily enhanced in the printed version.

2

Thank you for your consideration of the above-mentioned requests, and a reply or your comments, which are earnestly solicited as soon as possible.   If any further information or material is necessary, please let me know as soon as possible.

The information and certificate contained herein or herewith are CONFIDENTIAL, PRIVATE, PERSONAL and PRIVILEGED on the same basis as those provided in writing or orally under law between an attorney and client.  Such privilege may be waived in writing only by me in advance under state and federal law upon due notice.   No right or privilege is waived or bargained away hereby.   Such information and material are not subject to release under the Freedom of Information Act, nor can they be used or communicated except to authorized OED persons for the limited purpose of establishing my need for reasonable accommodation for a PTO Examination in July of 2006, only until the time that that issue of "reasonable accommodation" has been finally determined, and no later than July 2006.

That confidential, private, personal, and privileged information and this communication are provided in good faith to EOD and the Commissioner of Patents and Trademarks for their eyes only, and, since they are to be used in trust only for the limited and special use specified, they cannot be used otherwise, including any other disciplinary or non-disciplinary action, except with my prior written consent.   Adequate safeguards must be provided to protect the confidentiality, privacy and personal nature of the privileged material submitted in this connection herewith or at any other time prior to or after the date of this letter.

In this connection, it would appear to be a reasonable accommodation not to require me to sit for the examination with all those other test takers on July 12th that are not disabled, as that might expose me to ridicule, or coerce me unwillingly to reveal confidential, difficult or private explanations concerning my certification or my medical history. Such coercion could make the effects of the disability worse, at least during the examination itself.

Rather it would be consistent with reason and the confidential nature of this matter to allow me to sit privately, with others who have like disabilities, or perhaps with those who are allowed increased time to take the examination, perhaps on July 14th or 27th, the 27th being most desirable and reasonable for such purposes from my point of view. Increased time even on the 13th would somewhat tend to lessen the coercion suffered, although that wouldn't satisfy the need for larger print and more light.

3

The Petitioner has already passed the examination once in 1958, his registration number being 19,240, and he has successfully practiced before the PTO for over thirty years since November 5, 1958. Now, his desire is to take the examination to keep current and to maintain his skills commensurate with his experience and age, which will be 77 in July 2006. Also, he has been completely restored to his pre-1995 active status as a lawyer in MD, DC and NY (also the US DCSDNY), and supplied a doctor's certificate herewith, it is time to make reasonable accommodation for large print, an extended period for the exam, e.g., time and one-half over two days, and to suspend the rules under 37 CFR 10.170 by treating this request as a Petition for reinstatement to active status in the PTO under that rule. It is realized that OED is under a heavy administrative burden, but this is an extraordinary situation that could not have been avoided, and there is no other meaningful alternative. There has been no mere oversight that could have been prevented with ordinary care and diligence. See 37 CFR 10.170, and 39 USPQ 1778 (D.DC 1994).

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

RECEIVED

MAR 2 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

4

**Dr. Richard S. Simon**
**Dr. Nancy C. Ross**
*Optometrists*

2021 L Street N.W.
Washington, D.C. 20036
(202) 659-5575

**RECEIVED**

MAR 2 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

E Y E G L A S S

Name: Cornell Cornish

exam Date: 7/5/05

| | SPHERE | CYLINDER | AXIS | PRISM | BASE | P.D. | |
|---|---|---|---|---|---|---|---|
| | | | | | | DIST. | NEAR |
| R | | | | | | | |
| L | | | | | | | |
| ADD POWER | | | | | | | |
| R | | | | | | | |
| L | Expires: ___ / ___ / ___ | | | | | | |

**Rx**

- ☐ Sports
- ☐ Computer
- ☐ Occupational/Safety
- ☐ Ok for Colored Contact Lens Trial
- ☐ Scratch Resistant
- ☐ Sunglass
- ☐ High Index
- ☐ UV Protection
- ☐ Other

- ☐ Near Vision
- ☐ Distance Vision
- ☐ Contact Lens Alternative

- ☐ Duralite
- ☐ Progressive
- ☐ Clearvue
- ☐ Polarized

Comments: Due to cataracts in both eyes, this patient would benefit from larger print material when reading

Dr. _____

Lic. No. *569*
Lic. No. 563

**Dr. Richard S. Simon**
**Dr. Nancy C. Ross**
*Optometrists*

2021 L Street N.W.
Washington, D.C. 20036
(202) 659-5575

**RECEIVED**

MAR 2 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

| E Y E G L A S S ℞ | | SPHERE | CYLINDER | AXIS | PRISM | BASE | P.D. DIST. | NEAR |
|---|---|---|---|---|---|---|---|---|
| | Name: Cornell Cornish | | | | | exam Date: 7/5/05 | | |
| | R. | | | | | | | |
| | L. | | | | | | | |
| | ADD POWER | | | | | | | |
| | R. | | | | | | | |
| | L. | Expires: ___ / ___ / ___ | | | | | | |

☐ Sports                    ☐ **Near Vision**
☐ **Computer**              ☐ **Distance Vision**
☐ **Occupational/Safety**   ☐ **Contact Lens Alternative**
☐ **Ok for Colored Contact Lens Trial**
☐ **Scratch Resistant**     ☐ **Duralite**
☐ **Sunglass**              ☐ **Progressive**
☐ **High Index**            ☐ **Clearvue**
☐ **UV Protection**         ☐ **Polarized**
☐ **Other**
**Comments:** Due to cataracts in both eyes, this patient would benefit from larger print material when reading

Dr. RCSimm              Lic. No. **569**
                        Lic. No. **563**



March 31, 2006                          <u>Confidential and Personal</u>

Office of Enrollment and Discipline
*General Mailing Address*
Mail Stop OED                                    **RECEIVED**
U.S. Patent and Trademark Office
PO Box 1450                                      APR 0 3 2006
Alexandria, VA 22313-1450
                                            OFFICE OF ENROLLMENT
                                               AND DISCIPLINE

        Re:    Supplemental Amendment To

               Petition Under 37 CFR 10.170

               Requesting:

               Suspension of Rules

               Reinstatement and

               Reasonable Accommodation For

               Test Administered By PTO

Sir:

        Being duly sworn, Cornell D.M. Judge Cornish, Registration No.
19,240, deposes and says as follows:

        Please refer to your letter of March 22, 2005, in which you stated not
only that: (1) I may show that I continue to possess the legal qualifications
necessary to render applicants for patents (and presumably trademarks)
"valuable service despite the lapse of five or more years," such that I
would "not be required to take the examination;" but also, (2) that I "have
not presented insufficient objective evidence to show that you [I]
continue to possess legal qualifications necessary to render applicants for
patent valuable service."

        This is a timely affidavit and supplemental amendment to the
applicant's March 28, 2006, petition for suspension of the rules under 37
CFR 10.170, to continue to offer relevant evidence and facts to show that
I continue to possess the legal qualifications necessary to render
applicants for patents and trademark valuable service (and otherwise to
meet your requirements); to show that reinstatement is warranted; and to
further inform my application to sit for the PTO examination in July with
reasonable accommodation, based in part on a submission of a
confidential doctor's certificate of the need for, and the reason for, a

                                                        *Exhibit 22 a*

reasonable accommodation to sit for the next USPTO Administered test in July 2006, not just as an academic exercise, but for the extraordinary situation involved in the pro bono representation of underserved small inventors, which is a situation not otherwise prohibited by statute, and which is necessary to relieve the PTO of burdensome administrative costs and concerns in the public service.

This affidavit and other evidence of mitigating circumstances are submitted herewith in support of the petition.   This evidence is not believed to involve new matter, but if the OED decides otherwise, an extension of time to reply, or for a new timely date of submission is requested.

This is a timely request and petition for cause for an extension of time to ask for reconsideration of the subjects of this affidavit, including, for example, the limitation to an existing, one-fits all type font and size for the written examination, and for a one-fits all July 13th examination date, which it is now understood to be de rigueur in many cases.

This is also a timely request for permission and time to file a reply brief to a written refusal, to request an oral hearing, and for a later non-one-fits-all date selection than is apparently available without a timely request, which, however, is timely submitted herewith to advance this matter to issue, to reduce the issues petitioned, and to satisfy the OED and the Commissioner's requirements.

Apparently, an enhanced, large print examination, such as requested herein, has been found to be reasonable heretofore as an alternative to the expense, risk and complications of immediate surgery, and such printing has been provided heretofore for previous examinations, so precedents have been set for the reasonableness of this request.

In review, therefore, this is a timely request for an appointment to sit for the forthcoming, written, PTO administered examination with the reasonable accommodation of a large print examination at the PTO sitting due this July, and as part of the reasonable accommodation requested hereby, hopefully, it would be provided not on Wednesday, and not on July 12th, 13th or 26th but, preferably, rather on July 14th and 27th, 20006.

It is understood for purposes of this request that such exceptions for special printing and/or date selection have been allowed or allowable heretofore with payment of no more than the standard $450.00 examination fee, which is hereby timely authorized to be made by the Commissioner from my credit card or my deposit account number 033331,

2

Customer No. 000059083, Registration No. 19,240 (NY Registration No. 1868975, DC Registration No. 366240) – preferably my credit card.

Thank you for returning my enclosed post card acknowledging receipt of this supplemental information and evidence in the form of an affidavit for suspension of the rules, reinstatement, and reasonable accommodation, comprising a selectively ENHANCED LARGE PRINT written examination, selectively specified date, and authorization for payment using my credit card authorization for the payment of $450.00, or alternately my deposit account. The credit card is preferred, but otherwise, in case an alternate is required, my deposit account number 033331.

Please note that I am asking for reasonable accommodation for a printed examination with LARGE PRINT due to the lack of sufficient light levels in the testing room, and insufficiently large print on the examinations used heretofore, since obviously those deficiencies have presented reduced light levels that are already unacceptable, unavoidable, unintended, or unacceptable, thus, to present natural or artificial disabilities in some or all cases.

In any event, I would assume that PRINT SELECTIVELY ENHANCED FOR READABILITY IN TYPE FACE, SIZE, SPACING, BACKGROUND, CONTRAST, and/or by the use of INCREASED LIGHT LEVELS than used, at least on some occasions heretofore, would help all applicants, be without objection by all test takers, whether or not they have, or have NOT had reduced vision from any of a wide variety of natural or artificial DISABILITIES.

It is submitted that all will agree that the REASONABLE ACCOMODATIONS requested herein are selectively reasonable in view of the certificate submitted herewith, and because they are prima facie with a suggestion of success within the reasonable standards usually applied to such requests, whether or not the underlying disability or disabilities are correctable or not, which of course, they may have been in some cases, but not predictably so in all cases heretofore.

And such selectivity can be easily provided according to well established, long lasting procedures available heretofore for reducing or alleviating such disabilities. These include surgery, or, to some extent, adjusting the light levels, contrast, background, typeface, spacing, background, contrast and/or print size used, as is necessary, either by computer or non-computer provided means and/or processes. The print size especially is easily enhanced in the printed version, e.g., by "Ctrl+] on a standard Microsoft Computer program.

Thank you for your consideration of the above-mentioned requests, and a reply or your comments, which are earnestly solicited as soon as

possible.  If any further information or material is necessary, please let me know as soon as possible.

The information and certificate contained herein or herewith are CONFIDENTIAL, PRIVATE, PERSONAL and PRIVILEGED on the same basis as those provided in writing or orally under law between an attorney and client.  Such privilege may be waived in writing only by me in advance under state and federal law upon due notice.  No right or privilege is waived or bargained away hereby.  Such information and material are not subject to release under the Freedom of Information Act, nor can they be used or communicated except to authorized OED persons for the limited purpose of establishing my need for reasonable accommodation for a PTO Examination in July of 2006, only until the time that that issue of "reasonable accommodation" has been finally determined, and no later than July 2006.

That confidential, private, personal, and privileged information and this communication are provided in good faith to EOD and the Commissioner of Patents and Trademarks for their eyes only, and, since they are to be used in trust only for the limited and special use specified, they cannot be used otherwise, including any other disciplinary or non-disciplinary action, except with my prior written consent.  Adequate safeguards must be provided to protect the confidentiality, privacy and personal nature of the privileged material submitted in this connection herewith or at any other time prior to or after the date of this letter.

In this connection, it would appear to be a reasonable accommodation not to require me to sit for the examination with all those other test takers on July 12th that are not disabled, as that might expose me to ridicule, or coerce me unwillingly to reveal confidential, difficult or private explanations concerning my certification or my medical history. Such coercion could make the effects of the disability worse, at least during the examination itself.

Rather it would be consistent with reason and the confidential nature of this matter to allow me to sit privately, with others who have like disabilities, or perhaps with those who are allowed increased time to take the examination, perhaps on July 14th or 27th, the 27th being most desirable and reasonable for such purposes from my point of view. Increased time even on the 13th would somewhat tend to lessen the coercion suffered, although that wouldn't satisfy the need for larger print and more light.

4

The Petitioner has already passed the examination once in 1958, his registration number being 19,240. As far as is known, the PTO Rules do not require passing the examination more than once. Also, he has successfully practiced before the PTO for over thirty years, since November 5, 1958.

He does not desire to take the examination as a mere academic exercise. He desires to take it due to vast changes in the requirements of the bar for CLE credit. The rationale is that taking the examination will help keep him current with unavoidable, hard and fast CLE requirements in New York State designed to maintain lawyer skills commensurate with experience and age. He will be 77 on May 4, 2006. And he has successfully practiced for over thirty years, such that he can now give back to the bar some of what he has been privileged to receive. Also, he has been completely restored to his pre-1995 active status as a lawyer in MD, DC and NY as of 2006, NY being one state that requires 32 CLE credit hours per biannual registration period (also reinstated in the US DCSDNY). He has also supplied a doctor's certificate to support a reasonable accommodation and suspension of the rules. It is time to make reasonable accommodation and to reinstate him so that he can continue serving pro bono clients, and gaining CLE credit to maintain his registration in NY.

In New York State he is able to accumulate CLE credits by means of his pro bono activities, as shown by the attached information from the New York State Pro Bono and Attorney Registration regulations. To this end he is an experienced trademark attorney who has practiced before the U.S. Trademark Office since 1958, including as clients the Village of Belle Terre, NY, for whom he prosecuted the Village "Belle Terre" trademark before the USPTO. As the renewals occur at widely spaced 10 and 20 year intervals, and Section 8 affidavits occur within the sixth year following registration, with a 6 months extension possible, the Village of Belle Terre can be anticipated to employ the services of the applicant herein if he is available and registered before the USPTO at infrequent, widespread intervals, particularly since he owns a house there and is authorized to perform marriages in the entire state of NY. All of these activities would also enable petitioner to acquire pro bono CLE credits in NY where it is unavoidable that he is required to acquire 32 credits every two years.

The MD and DC regulations also provide for pro bono activities as an important part of the services that registered lawyers can and should provide to the public. And the petitioner is actively engaged in pro bono services applicable to practice in the USPTO. See attached copy of an

affidavit and letter of May 19, 2004, submitted for NY State by Deneice Fields. To this end, he is actively engaged in pro bono work with AARP, which is an approved pro bono legal services provider in those jurisdictions. His well-established and long lasting connections for trademark practice in the USPTO, and pro bono services in NY go back at least twenty years, and it would be injudicious and inappropriate to disregard or not analyze any such admissible evidence in this proceeding. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530. 218 USPQ 871 (Fed. Cir. 1983)

AS discussed in the attached article by Peter Cuttis, 15 states and the District of Columbia have modified their regulations with emeritus rules, which according to Edelstein, "allow retirees who are not active members of the bars of those states to practice law, on condition that they only do pro bono work..." And, of course, they have active pro bono programs for active lawyers.  This has or will lead to free continuing legal education courses, and <u>waiver of bar dues</u> in a variety of states for registered attorneys practicing before the USPTO, all of which are mitigating circumstances in support of reinstatement in this case. 37CFR 10.158 (c) (1) (i) and (d) permit a suspended practitioner to aid another practitioner in work before the PTO, and applicant, affiant herein has not been suspended in Maryland (albeit his suspension in DC and NY was only reciprocal from MD, where he became temporarily, provisionally and volitionally inactive without any hearing, plea bargain, finding of misconduct or a requirement for a finding of fitness for reinstatement.  See 369 Md. 238. *AGC v. Ruffin* May 16, 2002; and *In re Chisholm*, No. 94-BG-818 (DC Mar. 7, 1995), Md. Misc. Docket (subtitle BV), No. 27, Sept. Term, 1993).

The affidavit submitted in this case also meets the requirements of 37 CFR 10.158 (d), since the applicant does pro bono searching or other pro bono services for AARP, as shown by the record, including an affidavit on information and belief to have been submitted heretofore, and because he is not suspended or excluded from practice in the PTO or anywhere else where he wants to maintain his registration as a lawyer and serve pro bono clients.

Still further, the facts of this case are mitigating circumstances in favor of large print, an extended period for the exam, e.g., time and one-half over two days, and to suspend the rules under 37 CFR 10.170 by treating this request as a Petition for reinstatement to active status in the PTO under that rule.  It is realized that OED is under a heavy administrative burden, but this is an extraordinary, unavoidable situation that could not have been avoided by intervention, and there is no other meaningful

6

alternative. There has been no mere oversight that could have been prevented with ordinary care and diligence. See 37 CFR 10.170, and 39 USPQ 1778 (D.DC 1994).

Additionally, he hopes to serve as a pro bono mediator before the CAFC in cases relating to USPTO law and practice, since they are in need of mediators who are willing to be pro bono mediators, but who do not practice law actively while still being registered to practice before the USPTO. Such pro bono activities are obviously relevant to this application and petition.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish

*Cornell D. M. Judge Cornish*

1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

Encl: As stated ( See below).

Enclosures:

Above-referenced Affidavit and Supplemental Amendment to Application for Suspension of the Rules, Reinstatement, Application for Examination, and Reasonable Accommodation (with return postcard);

Copy of Affidavit and letter of May 19, 2004 by Deneice Fields;

Letter from AARP Maryland, March 30, 2006;

Pro Bono Services Rules for Attorneys Registered In NY State;

Feature Article by Jason Howard Regarding Volunteer Lawyers Project.

District of Columbia:   )
                    Ss: )
City of Washington:    )


    Sworn to and subscribed before me this _____ day of _____ 2006.

_____
Notary Public

Chang Ho Choi
Notary Public District of Columbia
My Commission Expires 6/14/09


**RECEIVED**

APR 0 3 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

APPLICATION FOR ADMISSION TO PRACTICE
AS AN ATTORNEY AND COUNSELOR-AT-LAW IN THE
STATE OF NEW YORK

FORM AFFIDAVIT AS
TO APPLICANT'S LAW-RELATED
EMPLOYMENT AND/OR SOLO PRACTICE

RECEIVED

APR 0 3 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

NEW YORK STATE SUPREME COURT
APPELLATE DIVISION

In the Matter of the Application of

Cornell D. M. Judge Cornish
        (name of applicant)

for Admission to Practice as an
Attorney and Counselor-at-Law.

INSTRUCTIONS

        For each law-related employment or period of solo law practice
listed by applicant on the application for admission questionnaire
(see question number 7), applicant must submit this form affidavit.
For a period of solo practice, this affidavit must be completed by
an attorney. Unless otherwise not feasible, this affidavit should
not be completed by persons related to applicant by blood or
marriage. The person completing this form affidavit should return
it to the applicant who should submit it with and at the same time
as his or her application for admission questionnaire.

* * *

STATE (COUNTRY) OF District of Columbia
                                                    ) SS.:
COUNTY (CITY) OF    Washington    )

        I, Deniece L. Fields          (name of affiant), being duly
sworn, depose and say that the answers to the following questions
have been written by or under my direction; that the substance and
the language have been supplied by me and not by applicant or any
other person; and that both the questions and the answers have been
carefully read by me, and that the several answers are true to my
own knowledge, except those stated to have been made on information
and belief, or which express my opinion, and as to those answers,
I believe them to be true.

1.  My home and office addresses (full mailing addresses) are as
    follows:

2

Home address   13602 Gentry Court

City  Montpelier        State   Maryland        Zip 20708
Telephone  (301) 725-0570


Office address   AARP Legal Counsel for the Elderly
    601 E Street, N.W., 4th Floor
City Washington        State   D.C.        Zip 20049
Telephone  (202) 434-2120


Office e-mail address (if any)    dfields@aarp.org

2.   This question to be completed only by affiants who are
     attorneys.  I am currently admitted to practice and in good
     standing in the following jurisdiction(s) and was so admitted
     on the following dates:

     Jurisdiction  Pennsylvania    Date of Admission   11/1990
     Jurisdiction  District Columbia  Date of Admission _____
     Jurisdiction _____    Date of Admission _____

3.   This question to be completed only by attorneys confirming a
     period of solo practice of law by applicant.


     (a) The length and nature of my acquaintance with applicant is
     as follows:  Applicant is a volunteer attorney at  AARP
     Legal Counsel for the Elderly.  Applicant has been a
     volunteer from 12/11/2002 to current.  _____

3

(b) Applicant engaged in the solo practice of law at the
following address(es) during the following period(s) of time:

Address _____

_____

City _____ State _____ Zip _____
From _____ To _____

Address _____

_____

City _____ State _____ Zip _____
From _____ To _____

4. <u>This question to be completed by affiants confirming a law-
related employment by applicant (not solo practice)</u>.

(a) Applicant was employed by me individually in a law-related
capacity or was employed in a law-related capacity as follows:

(1) Name and address of ████████  Applicant is a Volunteer
    Name  AARP Legal Counsel for the Elderly
    Address  601 E Street, N.W., 4th Floor

    _____
    City Washington      State  D.C.         Zip  20049

(2) Beginning and ending dates of employment (or that it
    continues to date) (if terminated, affiant should
    state how and why): _____
    _ Volunteer dates are from December 12, 2002 to
    _ current.
    _____
    _____
    _____

4

(3) Position and nature and extent of legal services
   performed by applicant: Client interviews, case
   follow-up requiring Applicant to contact government
   and private agencies, negotating settlements with
   on behalf of low-income clients, writing letters,
   and researching various legal issues.

(b) My relationship with the employer and applicant during the
period of employment was as follows:

(1) My position with employer (for example, member of
   employing firm, head of law department of a
   corporation, managing attorney, etc.): _____
   Staff attorney.

(2) Nature and frequency of my contacts with and/or
   supervision, if any, of applicant (if affiant did
   not supervise applicant, affiant should provide
   name and position of supervisor): _____
   Once a week contact (every Wednesday). Exception
   is when either applicant or myself was absent from
   office due to vacation or conference schedule.

(c) Applicant's duties were satisfactorily performed: YES XXX
or NO ___; if not, applicant's performance was not
satisfactory in the following respects: _____

5

5.  I hereby provide any other facts within my knowledge, or of
    which I have information, which in my opinion have any bearing
    on applicant's qualifications and moral character or fitness
    to practice law, or which would be helpful to the Appellate
    Division or its Committees on Character and Fitness in
    determining applicant's character and fitness. _____
    Applicant is dedicated and an assertive advocate._____
    Applicant is committed to  and sensitive to the needs of
    seniors in the District of Columbia._____
    _____
    _____
    _____

                                    _____
                                    Signature of Affiant

                                    December 15, 2004
                                    _____
                                    Date

Subscribed and sworn to or affirmed before me this
15th day of December , 2004 .

_____
        Notary Public

Barbara Phillips
Notary Public, District of Columbia
My Commission Expires 3-31-2006

(Affix seal or stamp.)

(If affidavit is sworn to outside the United States, its
commonwealths, territories, or possessions, attach certificate of
attesting officer's authority.)

(If this affidavit is not in English, it must be accompanied by a
duly authenticated English translation.)

Revised 7/02

# Legal Counsel
# for the Elderly

May 19, 2004

To Whom It May Concern:

Judge Cornish has been a volunteer attorney at AARP's Legal Counsel for the Elderly (LCE) from December 11, 2002 to the present.  LCE provides free legal services to low income residents in the District of Columbia who are age 60 and older.  Judge Cornish volunteers one day per week and provides legal assistance to clients in areas such as real property taxes, landlord and tenant, debt collection (credit and student loan), contract warranties, and patent and trade mark.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Deniece L. Fields
Attorney at Law

601 E Street, NW ▌ Washington, DC 20049 ▌ 202-434-2120 ▌ 202-434-6464 fax ▌ 202-434-6562 TTY ▌ www.aarp.org/lce
Legal Counsel for the Elderly is affiliated with AARP.
Part of the Senior Service Network – Supported by the DC Office on Aging

 **Maryland**

March 30, 2006

**RECEIVED**

APR 0 3 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

Judge Cornish
1101 New Hampshire Avenue, NW
Washington, DC 20037

Dear Mr. Cornish:

AARP's commitment to volunteer service can be traced to the life and vision of our founder, Dr. Ethel Percy Andrus. From the beginning, her motto "to serve, not to be served" has shaped our volunteer efforts at the national, state, and local levels.

As an important leader in the for-profit and nonprofit fabric that weaves together our community, I want to give you advance notice that you will be receiving a very special invitation to be AARP's guest at our biennial AARP Andrus Awards dinner. The dinner will honor General and Mrs. Colin Powell, and will be held on May 1, here in Baltimore—the first time AARP's leaders and honored dignitaries have held the dinner outside of Washington, DC. The invitation will be forthcoming, and I do hope you will be able to join us.

Just as we are committed to volunteer service, so too are we committed to improving the experience of aging here in Maryland for all. Our efforts this year, which have been good and productive, are focused on the important priorities identified by Maryland members in a recent survey. Here's what they told us:

- Nine in ten members are concerned about the availability, cost, and quality of health care, and nearly as many, 86%, thought expanding health care insurance for the uninsured was important;

- Six in ten members want expanded funding for home modifications that will allow them to age in their home; and

- Eight in ten members vote, all or most of the time.

This year we worked to advance public policy and funding relative to Healthcare and Livable Communities, both in Annapolis and Washington, DC. I have enclosed a copy of the above mentioned survey, and hope you find this information useful.

-2-

Additionally, we've placed massive organizational effort and will continue on public outreach and education around the new Medicare Prescription Drug Benefit.  To date our outreach has directly touched over 4,000 fellow Marylanders, and our advertising and community partnership has had an even broader reach.

Thank you for all you do to make our community and Maryland a better place. Please feel free to call me on (410) 895-7601 if you have any questions or would like to discuss our work in Maryland.

Sincerely,

Joseph DeMattos, Jr.
AARP Maryland State Director

(v) a breakdown of the categories of credit, (vi) the date of the applicant's admission to the New York Bar, and (vii) an English translation of legal research-based writing not written in English. Each joint author seeking credit shall submit a separate application. Applicants not listed as authors shall submit with their application a letter from a listed author attesting to the applicant's contribution to the legal research-based writing and describing the nature and extent of the contribution.

c. **Calculation of Credit**

    i. One (1) CLE credit hour may be awarded for each 50 minutes of research and writing.

    ii. A maximum of 12 CLE publication credit hours may be earned during any one reporting cycle.

    iii. Credit, if awarded, shall be awarded as of the date of publication or the date of acceptance for publication.

d. **Notification**—The Board shall notify the applicant by first class mail of its decision to grant, deny or grant with modifications the request for CLE publication credit.

11. **Pro Bono Legal Services**—Credit may be earned for performing eligible pro bono legal services for clients unable to afford counsel pursuant to (i) assignment by a court or (ii) participation in a pro bono CLE program sponsored by an Approved Pro Bono CLE Provider. CLE credit shall not be awarded for pro bono legal services performed outside of New York State.

a. **Definitions**

    i. **Eligible pro bono legal services** are (1) legal services for which there is no compensation to the attorney performing the legal services or (2) legal services for which the compensation to the attorney performing the legal services is provided by someone other than the recipient of those services, and such compensation would be provided regardless of whether the attorney performed those services. Legal services provided by assigned counsel who receive compensation for those services from any source and/or legal services provided by legal services organization attorneys within the scope of their employment, are not eligible pro bono legal services.

ii. **A pro bono CLE program** is a program, activity or case that is sponsored by, and to which attorneys are assigned by an Approved Pro Bono CLE Provider, and in which all recipients of the legal services provided by the program have been screened for financial eligibility.

b. **Court Assignment**—Pro Bono CLE credit may be earned for the provision of eligible pro bono legal services to clients unable to afford counsel, pursuant to assignment by a court.

c. **Approved Pro Bono CLE Providers**

i. **Eligibility**—Eligibility for designation by the CLE Board as an Approved Pro Bono CLE Provider is limited to the following organizations:

(1) Legal services organizations, or subsidiaries or subdivisions thereof, that have as their primary purpose the furnishing of legal services to indigent persons and that have filed a statement with the Appellate Division in the Judicial Department in which their principal office is located, pursuant to New York Judiciary Law §496; or

(2) Subsidiaries or programs of bar associations that have as their primary purpose the furnishing of legal services to indigent persons.

ii. **Approval**—An eligible organization seeking to become an Approved Pro Bono CLE Provider must submit to the CLE Board a letter requesting approval. The letter shall include a description of the organization's pro bono CLE programs and the name of a pro bono CLE contact person at the organization. The organization requesting approval as an Approved Pro Bono CLE Provider shall be furnished with written notice of the CLE Board's determination to approve, conditionally approve or deny the request by first class mail at the address reflected on the letter requesting approval. Pro bono CLE programs sponsored by Approved Pro Bono CLE Providers are deemed approved for pro bono CLE credit for a period of three (3) years from the date of the CLE Board's approval of the Pro Bono CLE Provider.

d. **Calculation of Credit**—Credit for eligible pro bono legal services shall be awarded in the following ratio: one (1) CLE credit hour for every six (6) 50-minute hours (300 minutes) of eligible pro bono legal service. Credit shall be awarded in increments of no less than .5 CLE credit hour. Ethics and professionalism credit is not available for participation in pro bono CLE activities. A maximum of six (6) pro bono CLE credit hours may be earned during any one reporting cycle.

10

FEATURE

# They Just Can't Give Enough: Retired Attorneys Come Back For More

## Volunteer Lawyers Project provides an alternative to retirement

### by Jason Howard

Judge Edward M. Ginsburg could have traded his gavel for a golf club. After devoting his life to public service, he certainly deserved to spend his golden years clothed in Nantucket red chinos and a Polo shirt on the fairway to heaven. Instead, he chose a suit, tie and desk at the Volunteer Lawyers Project of the Boston Bar Association (VLP).

Following his retirement, Ginsburg, 73, a former associate justice of the Massachusetts Probate and Family Court, created Senior Partners for Justice (SPFJ) in October 2002. This project, funded by the VLP, seeks to recruit retired attorneys desiring an alternative retirement—representing people who would otherwise end up representing themselves as *pro se* litigants.

He is not alone. Increasingly, retired attorneys across the country are choosing alternative retirements as a way to continue to give back to their communities. While their options are seemingly endless, many decide to lend their years of experience and expertise to legal aid and pro bono work.

"When you become 70 in Massachusetts, you have to retire as a judge," explains Ginsburg. "Not to be presumptuous, but like former President [Jimmy] Carter, I believe you should make yourself useful even after you leave what has been your primary job."

"I wanted to do something important. I believe strongly that people should have lawyers. If you go into court without a lawyer, it's like going into the operating room of a hospital and saying you're going to operate on yourself."

Ginsburg credits his experience on the bench as his inspiration for SPFJ, saying that over 60 percent of litigants in family court are pro se, most of whom are also indigent. This lack of representation was a good fit, he says, with attorneys approaching a mandatory retirement age, but who were too young to simply take to the green.

"I thought I would try to rekindle in them the spirit that sent them to law school years before," he recalls. This passion led him to reach out to lawyers throughout the Greater Boston area. The response has been overwhelming.

"We were not prepared for the kind of success that the project has become," says VLP's Chief Counsel Lynn Girton. "He basically just started working the phones and calling friends and colleagues and other people that he had known as a judge. People don't say no to him. So, he started building our panel gradually."

The panel has since grown to include over 240 attorneys. "The beauty of the panel is not only the degree of enthusiasm they bring to our cases, but the degree of sophistication, because these are very experienced practitioners. In some cases, they are leaders of the bar and former judges which, of course, enters wonderfully to the benefit of our clients," she says.

Stringent state and local bar rules and regulations can sometimes pose a challenge to this high level of enthusiasm among prospective volunteer attorneys. Stephanie Edelstein, associate staff director of the American Bar Association Commission on Law and Aging, discovered this obstacle when she began studying and encouraging





volunteering among retired attorneys in the early 1990s.

"When I started looking at this a decade ago, those rules were just basically saying, 'If you're age 70 and older, or if you're retired from the practice of law, you don't have to pay the dues.' But there was no public service requirement; it was just you got your dues waived when you got to be a certain age. Over the last 10 years or so, more and more state bars are looking at emeritus rules as something a lot more substantive," she says.

In recent years, 15 states and the District of Columbia have modified their regulations with emeritus rules which, according to Edelstein, "allow retirees who are not active members of the bars of those states to practice law, on condition that they only do pro bono work, usually under the auspices of an approved legal services program." Now, she says, retired attorneys who volunteer for legal aid organizations can often have their bar dues drastically reduced or waived, and receive reduced or free continuing legal education courses. Some states, recognizing the mobility of retirees, even allow senior volunteer attorneys to practice in their state without a license.

After scaling these barriers and finding a legal services organization, volunteer lawyers are usually offered great flexibility in choosing their caseload. Some limit themselves to cases that fall within the familiarity of their practice area, others decide to branch out and explore new areas of the law. Attorneys at SPFJ typically handle family law cases such as divorce, child support, guardianships, adoptions, and trust and estates. Two paralegals refer the

cases to the attorneys, with much care and consideration given to finding the perfect attorney-case match. The lawyers are then on familiar ground, and they begin doing court filings, appearances in court, oral arguments and settlements.

"Our goal is to make the attorney feel terrific about the work that they do, so they want to pick up the phone and call me or Judge Ginsburg and say, 'That was great; let me do this again,'" says Girton.

Ginsburg also organizes monthly luncheons for the panel members with a speaker who addresses topics relevant to the project's work. These serve, he says, as an expression of gratitude to the panel, but also as a way to recruit other lawyers. "What he's doing is adding to our panel, but he's also building a sense of collegiality," notes Girton. "These things grow exponentially, because once you get a couple of people involved, they start talking to their friends. This clearly has a life of its own. There is some talk now about moving this into some other areas of legal practice. He's now bringing in tax lawyers who are a huge help to our practice."

For VLP, the initiative has afforded maximum returns with minimal investment. The program furnishes SPFJ with the basics; administrative staff and monthly lunches.

Most of the indirect costs for SPFJ are donated. A local law firm provides office space for Ginsburg. Other firms donate rooms for conferences. Massachusetts Continuing Legal Education provides space for the monthly

**ABOVE:** Donald Stocks, a retired attorney, has been volunteering with AARP Legal Counsel for the Elderly for four years.

Cornell D.M. Judge Cornish                                                    Page 2

explanation "you may be reinstated subject to satisfying the requirements for registration set forth in 37 CFR § 10.7 and payment of the fee set forth in 37 CFR § 1.21(a)(3)."

Under USPTO policy, if more than five years has elapsed from the time an individual is removed from the register, or where other circumstances indicate that the individual may no longer be qualified for registration, it is necessary for the individual to again meet the requirements under 37 CFR §10.7. *1064 O.G. 12* (March 11, 1986) (copy enclosed). The provisions of 37 CFR § 10.7 have now been superceded by 37 CFR § 11.7. The provisions of 37 CFR §10.7 and 11.7 each provide that, with limited exceptions, an individual must take and pass the registration examination. However, former practitioners who otherwise show that they continue to possess the legal qualifications necessary to render applicants for patent valuable service despite the lapse of five or more years will not be required to take the examination. *1064 O.G. 12.* The legal qualifications include knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, and familiarity with current patent practice as well as patent statutes and regulations. *Id.*

On January 25, 2005, OED informed you that since it had been over five years since you were registered to practice, to be reinstated it would be necessary for you to either retake the registration examination or otherwise show to the satisfaction of the Director of Enrollment and Discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. You subsequently filed an application for reinstatement along with a supporting affidavit indicating, *inter alia*, that since 1995 you have continued to take continuing education classes, attended annual conferences of intellectual property associations, subscribed to publications of intellectual property associations, regularly reviewed USPQ weekly advance sheets, regularly been involved in intellectual property legal research, and a number of other activities. The statement in the affidavit, however, are conclusory statements made without the support of any objective evidence, and therefore are entitled to little weight.

For the foregoing reasons, based on the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service. Therefore, your request for reinstatement is denied. However, you may demonstrate possession of necessary legal qualifications by taking and passing the registration examination. Moreover, this denial is without prejudice against supplementation of the present record.

9 0001924C

April 8, 2006

<u>Confidential and Personal</u>

Office of Enrollment and Discipline
*General Mailing Address*
Mail Stop OED
U.S. Patent and Trademark Office
PO Box 1450
Alexandria, VA 22313-1450

USPTO ID: #19240
*Attention: Stephen K. Hanson*

**RECEIVED**

APR 1 0 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

Re:    2d Supplemental Amendment To

Petition Under 37 CFR 10.170

Requesting:

Suspension of Rules

Reinstatement and

Reasonable Accommodation For

Test Administered By PTO

Sir:

Being duly sworn, Cornell D.M. Judge Cornish, Registration No.
19,240, deposes, certifies and says as follows:

This Amendment and Second Supplemental Amendment to my
Petition Under 37 CFR 10.170 (now also under Rule 11.3 by complying with
the requirement of the PTO, to remove formal objections, and to advance
the application to issue), to Suspend the Rules, for Reinstatement and
Reasonable Accommodation, is in response to your letter of April 5, 2006
granting an extension of time to file additional information (including the
$40.00 non-refundable application fee).

To this end, please find enclosed again, my Credit Card Payment
Form (PTO-2038 (02-2003), signed in permanent ink. It is my request, and
gives my permission to charge my credit card with the requested $40.00
Application Fee. Please note I have also granted permission to charge my
deposit account No. ███████ for any fees that are due or may become
due in these matters should the same be or become necessary, although,
once again, I request preferentially that charges be made to my credit
card account first.

*Exhibit 22 b*

```
        THANK YOU FOR
      MAKING A DEPOSIT

      08APR06  15:55
      BVTS 1 00 32175


   $    1.00 RECEIVED

  DEP TO: GEN SPEND

     ID          0001
                   86
     Deposit     1.00
     Balance     1.00
  LOW BAL - LOAD FUNDS
```

In this regard, it is noted that the $450.00 examination fee has already been successfully charged to my credit card account on 3/27/06, and I see no reason why the additional $40.00 examination fee should not be successfully charged to my credit card account by the PTO, especially since I have backed that access up with the appropriate access to my deposit account

Accordingly, please send me an up-to-date, currently dated "Notice Of Admission To Examination" for Reg. #: 19240 in the name of Cornell D.M. Judge Cornish, just as was done hitherto by your letter of April 21, 2005. An up-to-date, current Notice is requested in good faith, particularly since this letter meets all requirements made in your April 5th letter, the extension of time to June 5, 2006 set by that letter for the next PTO examination, and the un-extended April 10th deadline for the exam.

This response to the extended time period set to expire on June 5, 2006, also meets all other requirements, because it specifically incorporates by reference a Doctor's Certification and other evidence in support of the requested Suspension of the Rules, Reinstatement, Admission to the Examination and Reasonable Accommodation already submitted on 4/3/06, 3/28/06 and/or on 3/23/06, as well as the background material incorporated by judicial notice in 2005 and 2006.

Parenthetically, I do not believe that my letter of March 26, 2005, which was in reply to Mr. Griffin's letter of 3/22/05, was ever answered. And except for a request for an additional fee on 4/5/06, neither have my additional letters been answered, e.g., as to my Maryland inactivity.

As stated in my letter received by the PTO on 4/3/06, I have been completely restored to my pre-1995 active status as a lawyer in MD, DC and NY. See the attached copies of the relevant Orders and a computer print out from the Internet concerning my good standing in NY.

This is contrary to the letter of March 22, 2005, in which William J. Griffin, Staff Attorney, OED, stated that I have not provided any details concerning the actions taken in Maryland, the District of Columbia, and New York. Not only that, he completely limits is remarks to "patents, never stating anything about my reinstatement to work in the trademark office, and he states that: (1) I "have not presented insufficient objective evidence to show that you [I] continue to possess legal qualifications necessary to render applicants for patent valuable service."

Obviously, I have shown possession of the legal qualifications needed in trademarks; also patents; and so I add further evidence.

For example, I address what is confusing, inaccurate, or at least unsupported by objective evidence in Mr. Griffith's letter. In this regard, he stated that I was placed on disability inactive status with the Maryland

State bar. However, his naked allegation was a personal opinion without objective evidence, and it was otherwise insufficiently supported such that applicant is entitled to further explanation and objective evidence in support of his opinion.

His letter infers that no details concerning the actions taken in Maryland, the District of Columbia, and New York concerning my law licenses in those respective states is available by judicial notice, and/or is otherwise available, or has been presented with my request for reinstatement. However, admissible evidence is available by judicial notice, is otherwise available, and/or has been in fact presented, including evidence of my good standing in Maryland without any requirement for a showing of fitness for reinstatement from a disability inactive status. See the attached Maryland Order, which on its face refers to or relates to an "inactivity" that is prima facie without "discipline," "disability" "misconduct" and/or any requirement for a showing of fitness for reinstatement.

And likewise, relevant as evidence admissible by judicial notice, and/or as is otherwise admissible and/or available, or has been incorporated by reference or submitted concerning my reciprocal inactivity in the District of Columbia and New York State. See the attached copy of a New York State Attorney Directory – Search Detail (taken from the internet on 3/20/06).

The opinion expressed that I was placed on disability inactive status in Maryland would be a distortion, if not an outright nullification of my actual inactivity in Maryland, and it would subject me to double jeopardy.

Referring to the attached copy of my request to the Maryland Clients' Security Trust Fund, I submit, and I believe, that the enclosed Maryland Order of inactivity on its face was prima facie based upon a temporary, provisional and special category of voluntarily requested "retired/inactive" status that was without disability or discipline because of misconduct. See 369 Md. 238, AGC v. Ruffin, May16, 2002; and In re Chisholm, No. 94-BG-818 (DC Mar. 7, 1995), Md. Misc. Docket (subtitle BV), No. 27, Sept. Term, 1993).

Because Mr. Griffin's 3/22/05 opinion as to my disability was unsupported by any objective evidence, it was injudicious and inappropriate, and he is requested to support his opinion with regard for and analysis of the admissible evidence available by judicial notice, and otherwise available or submitted in connection with my request for reinstatement.

This is timely, admissible, objective evidence as an amendment to the applicant's March 28, 2006, petition for suspension of the rules under

CFR 10.170, to continue to offer relevant evidence and facts to show that I continue to possess the legal qualifications necessary to render applicants for patents and/or trademarks valuable service (and otherwise to meet PTO requirements); to show that reinstatement is warranted; and to further inform my application to sit for the PTO examination in July with reasonable accommodation, based in part on a submission of a confidential doctor's certificate of the need for, and the reason for, a reasonable accommodation to sit for the next USPTO Administered test in July 2006, not just as an academic exercise, but for the extraordinary situation involved in the pro bono representation of underserved small inventors, which is a situation not otherwise prohibited by statute, and which is necessary to relieve the PTO of burdensome administrative costs and concerns in the public service.

This affidavit and other evidence of mitigating circumstances are submitted herewith in support of the petition.   This evidence is not believed to involve new matter, but if the OED decides otherwise, an extension of time to reply, or for a new timely date of submission is requested.

This is a timely request and petition for cause for an extension of time to ask for reconsideration of the subjects of this affidavit, including, for example, the limitation to an existing, one-fits all type font and size for the written examination, and for a one-fits all July 13th examination date, which it is now understood to be de rigueur in many cases.

This is also a timely request for permission and time to file a reply brief to and appeal a written refusal, to request an oral hearing, and for a later non-one-fits-all date selection than is apparently available without a timely request, which, however, is timely submitted herewith to advance this matter to issue, to reduce the issues petitioned, and to satisfy the OED and the Commissioner's requirements.

Apparently, an enhanced, large print examination, such as requested herein, has been found to be reasonable heretofore as an alternative to the expense, risk and complications of immediate surgery, and such printing has been provided heretofore for previous examinations, so precedents have been set for the reasonableness of this request.

In review, therefore, this is a timely request for reinstatement, suspension of the rules, and an appointment to sit for the forthcoming, written, PTO administered examination with the reasonable accommodation of a large print examination at the PTO sitting due this July, and as part of the reasonable accommodation requested hereby, hopefully, it would be provided not on Wednesday, and not on July 12th, 13th or 26th but, preferably on two days, namely July 14th and 27th, 20006.

4

It is understood for purposes of this request that such exceptions for special printing, double time for the exam, and/or date selection have been allowed or allowable heretofore with payment of no more than the standard $450.00 examination fee (plus $40.00 for admission to the exam). Timely payment has already been made from my credit card once. Now, authorization of additional payment is made to the Commissioner from my credit card or my deposit account number 033331, Customer No. 000059083, Registration No. 19,240 (NY Registration No. 1868975, DC Registration No. 366240) – preferably my credit card.

Thank you for returning my enclosed post card acknowledging receipt of this supplemental information and evidence in the form of an affidavit for suspension of the rules, reinstatement, and reasonable accommodation, comprising a selectively ENHANCED LARGE PRINT written examination, selectively specified date, and authorization for payment using my credit card authorization for the payment of $450.00, or alternately my deposit account. The credit card is preferred, but otherwise, in case an alternate is required, my deposit account number 033331.

Please note that I am asking for reasonable accommodation for a printed examination with LARGE PRINT due to the lack of sufficient light levels in the testing room, and insufficiently large print on the examinations used heretofore, since obviously those deficiencies have presented reduced light levels that are already unacceptable, unavoidable, unintended, or unacceptable, thus, to present natural or artificial disabilities in some or all cases.

In any event, I would assume that PRINT SELECTIVELY ENHANCED FOR READABILITY IN TYPE FACE, SIZE, SPACING, BACKGROUND, CONTRAST, and/or by the use of INCREASED LIGHT LEVELS than used, at least on some occasions heretofore, would help all applicants, be without objection by all test takers, whether or not they have, or have NOT had reduced vision from any of a wide variety of natural or artificial DISABILITIES.

It is submitted that all will agree that the REASONABLE ACCOMODATIONS requested herein *are selectively reasonable* in view of the certificate submitted herewith, and because they are *prima facie* with a suggestion of success within the reasonable standards usually applied to such requests, whether or not the underlying disability or disabilities are correctable or not, which of course, they may have been in some cases, but not predictably so in all cases heretofore.

And such selectivity can be easily provided according to well established, long lasting procedures available heretofore for reducing or alleviating such disabilities.  These include surgery, or, to some extent, adjusting the light levels, contrast, background, typeface, spacing,

background, contrast and/or print size used, as is necessary, either by computer or non-computer provided means and/or processes. The print size especially is easily enhanced in the printed version, e.g., by "Ctrl+] on a standard Microsoft Computer program.

Thank you for your consideration of the above-mentioned requests, and a reply or your comments, which are earnestly solicited as soon as possible. If any further information or material is necessary, please let me know as soon as possible.

The information and certificate contained herein or herewith are CONFIDENTIAL, PRIVATE, PERSONAL and PRIVILEGED on the same basis as those provided in writing or orally under law between an attorney and client. Such privilege may be waived in writing only by me in advance under state and federal law upon due notice. No right or privilege is waived or bargained away hereby. Such information and material are not subject to release under the Freedom of Information Act, nor can they be used or communicated except to authorized OED persons for the limited purpose of establishing my need for reasonable accommodation for a PTO Examination in July of 2006, only until the time that that issue of "reasonable accommodation" has been finally determined, and no later than July 2006.

That confidential, private, personal, and privileged information and this communication are provided in good faith to EOD and the Commissioner of Patents and Trademarks for their eyes only, and, since they are to be used in trust only for the limited and special use specified, they cannot be used otherwise, including any other disciplinary or non-disciplinary action, except with my prior written consent. Adequate safeguards must be provided to protect the confidentiality, privacy and personal nature of the privileged material submitted in this connection herewith or at any other time prior to or after the date of this letter.

In this connection, it would appear to be a reasonable accommodation not to require me to sit for the examination with all those other test takers on July 12th that are not disabled, as that might expose me to ridicule, or coerce me unwillingly to reveal confidential, difficult or private explanations concerning my certification or my medical history. Such coercion could make the effects of the disability worse, at least during the examination itself.

Rather it would be consistent with reason and the confidential nature of this matter to allow me to sit privately, with others who have like disabilities, or perhaps with those who are allowed increased time to take the examination, perhaps on July 14th or 27th, the 27th being most desirable

and reasonable for such purposes from my point of view. Increased time even on the 13th would somewhat tend to lessen the coercion suffered, although that wouldn't satisfy the need for larger print and more light.

The Petitioner has already passed the examination once in 1958, his registration number being 19,240. As far as is known, the PTO Rules do not require passing the examination more than once. Also, he has successfully practiced before the PTO for over thirty years, since November 5, 1958.

He does not desire to take the examination as a mere academic exercise. He desires to take it due to vast changes in the requirements of the bar for CLE credit. The rationale is that taking the examination will help keep him current with unavoidable, hard and fast CLE requirements in New York State designed to maintain lawyer skills commensurate with experience and age. He will be 77 on May 4, 2006. And he has successfully practiced for over thirty years, such that he can now give back to the bar some of what he has been privileged to receive. Also, he has been completely restored to his pre-1995 active status as a lawyer in MD, DC and NY as of 2006, NY being one state that requires 32 CLE credit hours per biannual registration period (also reinstated in the US DCSDNY). He has also supplied a doctor's certificate to support a reasonable accommodation and suspension of the rules. It is time to make reasonable accommodation and to reinstate him so that he can continue serving pro bono clients, and gaining CLE credit to maintain his registration in NY.

In New York State he is able to accumulate CLE credits by means of his pro bono activities, as shown by the attached information from the New York State Pro Bono and Attorney Registration regulations. To this end he is an experienced trademark attorney who has practiced before the U.S. Trademark Office since 1958, including as clients the Village of Belle Terre, NY, for whom he prosecuted the Village "Belle Terre" trademark before the USPTO. As the renewals occur at widely spaced 10 and 20 year intervals, and Section 8 affidavits occur within the sixth year following registration, with a 6 months extension possible, the Village of Belle Terre can be anticipated to employ the services of the applicant herein if he is available and registered before the USPTO at infrequent, widespread intervals, particularly since he owns a house there and is authorized to perform marriages in the entire state of NY. All of these activities would also enable petitioner to acquire pro bono CLE credits in NY where it is unavoidable that he is required to acquire 32 credits every two years.

7

The MD and DC regulations also provide for pro bono activities as an important part of the services that registered lawyers can and should provide to the public. And the petitioner is actively engaged in pro bono services applicable to practice in the USPTO. See attached copy of an affidavit and letter of May 19, 2004, submitted for NY State by Deneice Fields. To this end, he is actively engaged in pro bono work with AARP, which is an approved pro bono legal services provider in those jurisdictions. His well-established and long lasting connections for trademark practice in the USPTO, and pro bono services in NY go back at least twenty years, and it would be injudicious and inappropriate to disregard or not analyze any such admissible evidence in this proceeding. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530. 218 USPQ 871 (Fed. Cir. 1983)

AS discussed in the attached article by Peter Cuttis, 15 states and the District of Columbia have modified their regulations with emeritus rules, which according to Edelstein, "allow retirees who are not active members of the bars of those states to practice law, on condition that they only do pro bono work..." And, of course, they have active pro bono programs for active lawyers. This has or will lead to free continuing legal education courses, and <u>waiver of bar dues</u> in a variety of states for registered attorneys practicing before the USPTO, all of which are mitigating circumstances in support of reinstatement in this case. 37CFR 10.158 (c) (1) (i) and (d) permit a suspended practitioner to aid another practitioner in work before the PTO, and applicant, affiant herein has not been suspended in Maryland (albeit his suspension in DC and NY was only reciprocal from MD, where he became temporarily, provisionally and volitionally inactive without any hearing, plea bargain, finding of misconduct or a requirement for a finding of fitness for reinstatement. See 369 Md. 238. *AGC v. Ruffin* May 16, 2002; and *In re Chisholm*, No. 94-BG-818 (DC Mar. 7, 1995), Md. Misc. Docket (subtitle BV), No. 27, Sept. Term, 1993).

The affidavit submitted in this case also meets the requirements of 37 CFR 10.158 (d), since the applicant does pro bono searching or other pro bono services for AARP, as shown by the record, including an affidavit on information and belief to have been submitted heretofore, and because he is not suspended or excluded from practice in the PTO or anywhere else where he wants to maintain his registration as a lawyer and serve pro bono clients.

Still further, the facts of this case are mitigating circumstances in favor of large print, an extended period for the exam, i.e., double time, or

two days, and to suspend the rules under 37 CFR 10.170 by treating this request as a Petition for reinstatement to active status in the PTO under that rule. It is realized that OED is under a heavy administrative burden, but this is an extraordinary, unavoidable situation that could not have been avoided by intervention, and there is no other meaningful alternative. There has been no mere oversight that could have been prevented with ordinary care and diligence. See 37 CFR 10.170, and 39 USPQ 1778 (D.DC 1994).

Additionally, he hopes to serve as a pro bono mediator before the CAFC in cases relating to USPTO law and practice, since they are in need of mediators who are willing to be pro bono mediators, but who do not practice law actively while still being registered to practice before the USPTO. Such pro bono activities are obviously relevant to this application and petition.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

Encl: As stated (See below).

Enclosures:
Post Card Listing Affidavit and Enclosures

Md. request for "retired/inactive" status"
Maryland Orders of 12/4/95 and 10/3/03;

DC Order of reinstatement 11/16/00;

NY State Attorney Directory printout from the Internet;

Credit Card Payment Form for $40.00 payment;

Copy of so far unanswered 3/26/05 letter requesting reconsideration of Griffin letter of 3/22/05 and enclosed application for reinstatement;

Enclosures made heretofore:

Above-referenced Affidavit and Supplemental Amendment to Application for Suspension of the Rules, Reinstatement, Application for Examination, and Reasonable Accommodation (with return postcard);

Copy of Affidavit and letter of May 19, 2004 by Deneice Fields;

Letter from AARP Maryland, March 30, 2006;

Pro Bono Services Rules for Attorneys Registered In NY State;

Feature Article by Jason Howard Regarding Volunteer Lawyers Project.

District of Columbia:   )
                    Ss: )
City of Washington:    )

  Sworn to and subscribed before me this _/o th_ day of _april_ 2006.

          _Chang ing Choi_
          Notary Public

Chang Ho Choi
Notary Public District of Columbia
My Commission Expires 6/14/09

10

PTO-2038 (02-2006)
Approved for use thru. . 02/28/2009. OMB 0651-0043
United States Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## United States Patent and Trademark Office
### Credit Card Payment Form
### Please Read Instructions before Completing this Form

### Credit Card Information

**Credit Card Type:**  [x] Visa  [ ] MasterCard  [ ] American Express  [ ] Discover

Credit Card Account #:

Credit Card Expiration Date:

Name as it Appears on Credit Card:  Cornell D. Cornfsh

Payment Amount: $ (US Dollars):  450.00   $ 40.00   4/8/06

Cardholder Signature: _Cornell D. M. Judge Cornish_   Date: 3/21/06

**Refund Policy:** The USPTO may refund a fee paid by mistake or in excess of that required. A change of purpose after the payment of a fee will not entitle a party to a refund of such fee. The USPTO will not refund amounts of $25.00 or less unless a refund is specifically requested and will not notify the payor of such amounts (37 CFR 1.26). Refund of a fee paid by credit card will be issued as a credit to the credit card account to which the fee was charged.
**Service Charge:** There is a $50.00 service charge for processing each payment refused (including a check returned "unpaid") or charged back by a financial institution (37 CFR 1.21 (m)) .

### Credit Card Billing Address

Street Address 1:  1101 New Hampshire Ave., NW, Suite 301

Street Address 2:

City:  Washington

State/Province:  DC          Zip/Postal Code:  20037-1502

Country:  USA

Daytime Phone #:  (202) 429-9705     Fax #:  (202) 429-9705

### Request and Payment Information

Description of Request and Payment Information:
Request LARGE PRINT printed copy of Examination  ***

| [ ] Patent Fee | [ ] Patent Maintenance Fee | [ ] Trademark Fee | [x] Other Fee |
|---|---|---|---|
| Application No. | Application No. | Application No. | IDON Customer No.  000059001 |
| Patent No. | Patent No. | Registration No. | |
| Attorney Docket No. | | Identify or Describe Mark | |

*If the cardholder includes a credit card number on any form or document other than the Credit Card Payment Form, the United States Patent and Trademark Office will not be liable in the event that the credit card number becomes public knowledge.*

**To the Trustees of the Clients' Security Trust Fund of the Bar of Maryland:**    (5) (

1. I have read your Regulation No. 14 (reproduced on the reverse side hereof), and I affirm my compliance therewith and my entitlement to your "inactive/retired" status for the following reasons (You must (√) every box):

☑ I am not listed on any letterhead either as an active, practicing lawyer or as "of counsel" or "Partner emeritus" or the like.

☑ I am not listed as a lawyer in any Maryland telephone directory.

☑ I am not listed as a lawyer in the "Maryland Section" of Martindale-Hubbell or any similar region or national directory of lawyers. ***Write to M-H at P.O. Box 1001, Summit, NJ 07902 and request that your name be completely removed from the Maryland section.***

☑ I do not have a Maryland office for law practice.

☑ I do not use a Maryland office address (either as a principal or alternate location) in connection with any law practice.

☑ I do not rely on my Maryland bar membership for any out-of-state law practice.

☑ I do not rely on my Maryland bar membership as a condition of my employment.

2. I understand that I must pay all outstanding assessments due Clients' Security Trust Fund and/o Attorney Grievance Commission before my account is approved for "inactive/retire t" status, and I he agree to do so.

My current address and telephone number and my social security number are shown below.

NAME  _Cornell D. M. Judge Cornish_    SOCIAL SECURITY NO  ▬▬▬▬▬▬

ADDRESS  _Suite 301    1101 New Hampshire Ave. N.W. Wash DC 2_

WORK PHONE  _(202)429 - 9705_    HOME PHONE _____

SIGNATURE _Cornell D. M. Judge Cornish_ DATE  _12/9/95_

SUBSCRIBED AND SWORN TO BEFORE ME THIS ~~8th~~ DAY OF _Dec._ , 19_95_

MY COMMISSION EXPIRES:  NOTARY PUBLIC DISTRICT OF COLUMBIA

NOTARY PUBLIC  _Richard P. Scott_    RICHARD P. SCOTT
My Commission Expires October 31, 1999

As an inactive member I would be entitled to become a voluntary contributor. As such, I would be billed only for th current fiscal year's CSTF assessment (and not the Attorney Grievance Commission assessment); of course, I may contribute whatever amount I deem reasonable. If approved for the inactive/retired status, I do ☐ do not ☐ desire t become a voluntary contributor.

ASSESSMENTS PAID THROUGH _____

APPROVED FOR INACTIVE/RETIRED STATUS EFFECTIVE _____    ADMINISTRATOR

CHAIRMAN

**FOR THIS AFFIDAVIT TO BE VALID FOR FY 1995/96**
CLIENTS' SECURITY TRUST FUND MUST RECEIVE IT BACK BEFORE JULY 31, 1995
1610 West Street  Suite 204  Annapolis MD 21401

214

GRIEVANCE v. YABLON
[77 Md. 234 (2003).]

832 A.2d 834

GRIEVANCE COMMISSION
RYLAND, Petitioner,

v.

, YABLON, Respondent.

No. 29, Sept. Term, 2003.

of Appeals of Maryland.

Sept. 25, 2003.

*ORDER*

have jointly petitioned this Court to
dent pursuant to Maryland Rule 16–77
said Joint Petition, and for reasons se
25th day of September, 2003,

he Respondent, Jeffrey S. Yablon,
rimanded for misconduct in violation of
ofessional Conduct 1.1, 1.3, 1.15(a)(b) and

---

ATTORNEY GRIEVANCE v. CORNISH     235
[377 Md. 235 (2003).]

833 A.2d 8

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Cornell D.M. Judge CORNISH.

Misc. Docket AG, No. 23, Sept. Term, 2003.

Court of Appeals of Maryland.

Oct. 3, 2003.

O R D E R

The Court having considered the Petition of Cornell D.M.
Judge Cornish for Reinstatement and the response filed there-
to by the Attorney Grievance Commission in the above cap-
tioned case, it is this 3rd day of October, 2003,

ORDERED, by the Court of Appeals of Maryland, that the
petition be, and it is hereby GRANTED, and the petitioner,
Cornell D.M. Judge Cornish, is reinstated to the practice of
law in this State, and it is further

ORDERED, that the Clerk of the Court shall replace the
name of Cornell D.M. Judge Cornish upon the register of
attorneys entitled to practice law in this State and certify that
fact to the Trustees os the Client Protection Fund and the
Clerks of all judicial tribunals in this State.

1a

## APPENDIX F

| | |
|---|---|
| ATTORNEY GRIEVANCE | * IN THE |
| COMMISSION OF | * COURT OF APPEALS |
| MARYLAND | * OF MARYLAND |
| 100 Community Place | * Misc. Docket (Subtitle BV) |
| Suite 3301 | * No. 39 |
| Crownsville, Maryland 21032 | * September Term, 1995 |
| Petitioner | * |
| v. | * |
| CORNELL D. CORNISH | * |

RECEIVED
Dec 5 1995
Attorney Grievance Commission

1101 New Hampshire
    Ave., N.W.
Suite 301
Washington, D.C. 20036
            Respondent

### ORDER

This matter came before the Court on a Petition filed jointly by the Attorney Grievance Commission and the respondent, Cornell D. Cornish, for the respondent to be placed on inactive status. The Court having considered the Petition, it is this 4th day of December, 1995,

ORDERED, by the Court of Appeals of Maryland, that the Petition for Inactive Status be and it is hereby GRANTED, and the respondent shall be placed on inactive status from the practice of law, and it is further

ORDERED, that the Clerk of this Court shall remove the name of Cornell D. Cornish from the register of attorneys in this Court and certify that fact to the Trustees of the Clients' Security Trust Fund and the clerks of all judicial tribunals in this State in accordance with Rule BV13.

/s/ ROBERT C. MURPHY
CHIEF JUDGE

EXH. G

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# District of Columbia Court of Appeals

No. 00-BG-836

IN RE CORNELL D. M. JUDGE CORNISH, RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals

On Report and Recommendation
of the Board on Professional Responsibility

(Submitted October 31, 2000   Decided November 16, 2000)

Before SCHWELB and RUIZ, *Associate Judges*, and NEWMAN, *Senior Judge*.

PER CURIAM: On April 15, 1996, this court ordered that Cornell D. M. Judge Cornish, then a member of our Bar, be suspended from practice, with reinstatement conditioned upon a showing of fitness. *See In re Cornish*, 691 A.2d 156, 157-58 (D.C. 1997) (per curiam). Cornish's suspension resulted from reciprocal proceedings by our Bar Counsel following proceedings in Maryland in which Cornish acknowledged that he was then unable to cope with the demands of the practice of law. *Id.* at 157.[1]

On August 18, 1998, Cornish filed a motion for reinstatement with our Board on Professional Responsibility. On June 30, 2000, the Board found, by clear and convincing evidence, that Cornish had demonstrated his fitness to resume the practice of law. The Board therefore recommended that Cornish be reinstated to the Bar of this court.

---

[1]    *See Attorney Grievance Comm'n v. Cornish*, 667 A.2d 916 (Md. 1995).

[3576]

2

Bar Counsel has advised the court that she does not except to the Board's recommendation. Under the circumstances, the substantial deference that we accord to the Board's findings and recommendations is even greater. *See In re Goldsborough,* 654 A.2d 1285, 1288 (D.C. 1995). Accordingly, Cornell D. M. Judge Cornish is hereby reinstated to the Bar of this court.

*So ordered.*

Clerk of the _____ Columbia Court
of Appeals

BY _____

DEPUTY CLERK

2

Bar Counsel has advised the court that she does not except to the Board's recommendation. Under the circumstances, the substantial deference that we accord to the Board's findings and recommendations is even greater. *See In re Goldsborough*, 654 A.2d 1285, 1288 (D.C. 1995). Accordingly, Cornell D. M. Judge Cornish is hereby reinstated to the Bar of this court.

*So ordered.*

Clerk of the _____ _____ Court
of Appeals

BY _____

DEPUTY CLERK

56

#350  April/May

Page 1 of 1

 # New York State Attorney Directory - Search Detail

**Search Results:**

First Name: **corn**

Last Name: **cornish**

**Total number of records found: 1**

| Search Again | Cancel |

| Attorney Name *(Click name for details)* | Registration Number | City | State | Year Admitted |
|---|---|---|---|---|
| CORNELL DANIEL MICHAEL JUDGE CORNISH | 1868975 | WASHINGTON | DC | 1982 |

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.

New York State Office of Court Administration

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705

March 26, 2005

William J. Griffin
Staff Attorney
Office of Enrollment and Discipline
P.O. Box 1450
Alexandria, VA 22313-1450

Re:    Request For Reinstatement

Dear Mr. Griffin:

Thank you for your letter of March 22, 2005, in which you state both that I "have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service" under 35 U.S.C. Sec. 2(b)(2)(d), (emphasis added); and that there is no "prejudice against supplementation of the present record."

In answer, I refer especially to the supplementation presented herein to satisfy you and the Director that I possess the legal qualifications necessary to render applicants valuable service. This satisfaction refers not only to the presentation of patent and trademark applications before the Office, but also parenthetically under the cited statute in Court as to applications before the Office; and not only as to the prosecution of patent and trademark applications before the Office, but parenthetically under the statute in a District Court, the CCPA, and the SC of the US, all of which have superior jurisdiction as to patent applications and prosecution.

Still further, I refer to satisfaction under the statute by referring to well established and long standing "other business" before the Office, including trademark applications.

Referring more particularly to my supplementation of the record, this affidavit, is objective evidence that I have: 1) passed the patent bar exam in 1958; 2) been assigned Registration No. 19,240; 3) been practicing successfully or being able to practice patent and trademark law without interruption under the federal overlap exception except from

8/17/1998 to 11/16/2000 in selective jurisdictions; 4) been continuously able to practice at least pro se from 1996 up unto the present time, especially in at least the District Court of the Eastern District of New York, the Court of Appeals of the Federal Circuit, and the Supreme Court of the United States, where I successfully filed an amicus brief in the case of *Parker vs. Chakabarty*, 447 US 303, which is perhaps one of the most important of the recent, as well as long standing and well established patent law cases of all time; 5) given useful service to a wide variety of persons by actively practicing intellectual property law; 6) likewise giving valuable service in the fields of patent, trademark and copyright law under the federal overlap exception, and under "other business" categories of the cited statute, or otherwise under state law as a trademark and intellectual property law attorney in Maryland and the District of Columbia; 7) I am currently seeking reinstatement in New York State based upon affidavits, copies of which are enclosed, the originals of which were filed in New York; 8) my application for reinstatement in New York has been approved for referral to the Committees on Character and Fitness for investigation and report; and 9) I have also been continuously registered without interruption since at least 1983 to give patent and trademark advice relating to patents and patent prosecution in the U.S. Tax Court.

Of course, in 1996 I could have requested status as an "agent" instead of becoming "inactive" in the USPTO, but, instead, I continued to be authorized intermittently to practice trademark law as an attorney before the Office in DC, for a while in New York, and more recently after a hiatus in Maryland and DC. As it was, I continuously retained my viability as a lawyer before the various government agencies and courts where I have continuously or intermittently remained active, starting at least in 1983, under the federal overlap exception, especially in the District Court of the Eastern District of New York, the Court of Appeals of the Federal Circuit, and the Supreme Court of the United States.

Because of these mitigating circumstance, I believe you will agree, that it was not necessary for me to have been on the register continuously in the USPTO since 1996 to remain actually or provisionally "active" in "other business" under the cited statute as a trademark attorney in the Office, whether I was actually practicing during the entire time simultaneously in Maryland, DC and New York State.

I reject and ask for reconsideration, amendment and withdrawal of your statement that before I became temporarily and provisionally "inactive" in the USPTO, I was "placed on disability inactive status with the Maryland State bar. There is nothing in the Order of "inactivity" in

Maryland in 1995 to indicate that I was placed on such a status because of a formal waiver under oath of my right to a hearing and a full trial after due notice and a right to respond. The Court of Appeals in Maryland did not in effect deem itself at the time as a "disciplining court" within the meaning of its Rules.

There was no finding of misconduct or disability by the Court. In fact it was stipulated that I had taken steps to resolve the pending complaint, just as I had done with the issue of disability. Moreover, in effect, I renounced, repudiated, rejected, revoked and removed any notion that I agreed to "inactivity" because of misconduct or because of a disability inactive status with the Maryland State bar. I continuously, consistently and forcefully traversed and objected to any disability status long before my "inactivity" became final, and to this end I immediately asked for reinstatement as soon as I found out my "inactive" status in Maryland had been announced irregularly without my consent by the incompetence of a lawyer who was unauthorized to agree to any "inactivity" due to disability, especially by an irregular document, irregularly filed without the original signature of bar counsel in the name of my son.

My reinstatement in Maryland and the District of Columbia after temporary provisional "inactive status" was based upon findings of fact, including findings of fitness, qualifications necessary to render valuable legal service in the field of patents and trademarks, etc., and a lack of disability. Those findings of fact were in accordance with standards at least as demanding, strict and difficult as those in the USPTO. This includes findings of fact as to the continuance of my current possession of the legal qualifications necessary to render applicants for patent valuable and competent service in the Office, as well as in courts that have superior jurisdiction to that of the USPTO. This is true with respect to the standards of legal fitness and competence to practice patent and trademark law in those states and the federal agencies and courts in addition to the USPTO.

Still further, those jurisdictions take the matter of reinstatement, and the requirements for legal qualifications just as seriously as does the USPTO. Their determinations of facts are thus entitled to weight, deference and full faith and credit. And according to Rule 201 of the Federal Rules of Procedure, and the Administrative Procedures Act, the USPTO can and must take judicial notice of their findings of fact. The judicial notice of the same is requested herein and is, therefore, mandatory.

This is conclusive and weighty objective evidence as to why I should be reinstated without an examination.

It is also conclusive and weighty objective evidence as to a faulty or irregular denial of my application without due process.   There are also mitigating circumstances against denial of reinstatement without an examination.

The weighty objective evidence, and mitigating circumstances, that the USPTO should give credence to, include its failure to find contrary facts, and its customary due deference and full faith and credit to the findings of fact of the numerous competent disciplinary courts involved as to my legal qualifications, including fitness, knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, both in courts of competent jurisdiction and otherwise, and to interpret and brief the relevant statutes and PTO Regulations.   Thus, they have found as a fact that I am competent with regard to current patent statutes, regulations and practice, as well as patent statutes and regulations sufficient to give valuable service under the cited statute in court as an attorney.

As the PTO has not met their burden of proof to show, nor has it formally and originally charged, that I am *not* now capable of meeting the PTO requirements for practice, I request that you reconsider, remove and discharge your denial of my application for reinstatement.

I request an opportunity to exhaust my administrative and legal remedies, including a hearing with adequate notice in order to face my accuser in a fair, full and open trial if you persist in denying my reinstatement.

To continue the denial of my application any further would be to unjustly quarantine my reinstatement with an unjustifiably harsh moratorium effectively taking my license irrationally without due process or adequate compensation in the interim and by shifting the burden of proof to me as to my lack of qualification.   If I take the examination, I submit that the same is without prejudice to my request for reconsideration of your denial and my subsequent reinstatement without passing the examination.

In this connection, on information and belief, I have made no waiver of the presumption of my fitness, qualification and capacity.   I have no present recollection of any record of notice of an alleged OED

4

notification, such as mentioned in your letter of March 11, 2005, and so I request a copy of the same.

In the interim, taking the patent bar exam between July 11th and 15th would be a voluntary, optional furtherance of my continuing legal education similar to what I have already accomplished and independent of your denial. Furthermore, it would be without prejudice to calling forth a Petition from me to the Director of Enrollment and Discipline for review of your denial of my application for reinstatement and fee of $40, so as to comply with the start of the running of the time requiring my original signature within 60 days of such a denial. I am accordingly herewith petitioning the Director for review and reversal of your denial.

This is to formally ask you to reconsider and withdraw your rejection and to approve my reinstatement without examination. Also, I request acceptance without prejudice of my supplementation of the present record in respect to my legal qualification to practice as an attorney in the USPTO, Maryland, and DC so that I will not have to take the patent bar exam such as will be given between July 11th - 15th or otherwise.

There are substantial reasons not to proceed with a continuing moratorium against my reinstatement. These include: (1) the favorable decisions of courts of competent jurisdiction, and courts superior to the USPTO; (2) they have carefully considered the evidence and concluded that I should continue in good standing in the practice of trademark and patent law; (3) their actions are based upon findings of fact as to my fitness to practice and the lack of any merit regarding any underlying complaint; (4) the fact that my original temporary, provisional, and summary "inactivity" in Maryland without a requirement for fitness for reinstatement was not predicated upon a finding of ethical misconduct or disability, but rather, was based solely on an irregular petition, not originally signed by bar counsel, submitted by an attorney not authorized to consent for me to a medical disability, (or in the name of my son); (5) it was immediately renounced, repudiated, revoked, rejected and removed before it became final; (6) the absence of any findings of misconduct before the USPTO; (7) My prior unblemished record before the USPTO; (8) the likely expenditure of significant resources on what will be, for the most part, an academic exercise given my credentials and long well established knowledge, capacity, expertise, and high standing in the profession; and (9) mitigating circumstances, including your statement that I have "not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service" and the fact that the statement is clearly inconsistent with your denial of my application for reinstatement.

Accordingly, your denial deserves to be reversed and withdrawn, the same being within the authority and discretion of the Director of OED.

As suggested, I include the "current status of" my "license in each of those states" mentioned by you. Copies of documents accompanying my requests for reinstatement filed with those or other jurisdictions are entitled to due deference by judicial notice as objective evidence to remove any concerns of a need for expensive and repetitive findings of fact as to my knowledge and proficiency in current patent law and Patent and Trademark Office procedure, ability to draft acceptable patent claims, and familiarity with current patent practice, patent statutes and patent regulations.

Very truly yours,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
cornishj@erols.com

4/1,/05

Encl: As stated.

District of Columbia:)
                    :} ss
City of Washington :)

Sworn to and subscribed before me this 1st day of April 20005.

/s/ Chang Ho Choi

Notary Public
expires 6/14/05

6



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

May 24, 2005

USPTO ID #: **19240**
Name on valid government issued ID:
**Cornell Cornish**

Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW, Suite 301
Washington, DC 20037-1502

Dear Mr. Cornish:

On April 10, 2006 the Office of Enrollment and Discipline received your 10-page letter.
In your letter you requested reasonable accommodations. In your letter you said:

> Please note that I am asking for reasonable accommodation for a
> printed examination with LARGE PRINT due to the lack of
> sufficient light levels in the testing room, and insufficiently large
> print on the examinations used heretofore, since obviously those
> deficiencies have presented reduced light levels that are already
> unacceptable, unavoidable, unintended or unacceptable, thus to
> present natural or artificial disabilities in some or all cases.

>           *           *           *

> In this connection, it would appear to be a reasonable
> accommodation not to require me to sit for the examination with
> all those other test takers on July 12th that are not disabled, as that
> might expose me to ridicule, or coerce me unwillingly to reveal
> confidential, difficult or private explanations concerning my
> certification or my medical history. Such coercion could make the
> effects of the disability worse, at least during the examination
> itself.

> Rather it would be consistent with reason and the confidential
> nature of this mater to allow me to sit privately, with others who
> have like disabilities, or perhaps with those who are allowed
> increased time to take the examination, perhaps on July 14th or
> 27th, being most desirable and reasonable for such purposes from
> my point of view. Increased time even on the 13th would
> somewhat tend to lessen the coercion suffered, although that
> couldn't satisfy the need for larger print and more light.

Exhibit 23

<u>Cornell Cornish</u>            <u>USPTO ID #: 19240</u>                    2

Your request for the examination to be printed in "large print" is granted.  Your examination will be printed in "14" font.

Your request for a separate room or taking the exam on a day other than July 12, 2006 is not granted at this time.    The Office of Enrollment and Discipline has not received "Supporting documentation, less than one year old, certifying the current severity of the disability and certifying that the accommodations requested are necessary for this disability must be sent by a licensed physician who has evaluated the condition." Please see the General Requirements Bulletin at page 16.

Please submit the supporting documentation from a licensed physician within 30 days, no later than **June 26, 2006.**

The response must be received in the USPTO by the due date.  The response must have an original signature personally signed in permanent ink.  37 CFR § 1.4(e).  Therefore, filing a response by email or facsimile will not be acceptable.  See pages 10, 11 and 15 of the General Requirements Bulletin and 37 CFR §§ 1.8 and 1.10 for mailing instructions. Please do not confuse the certificate of mailing provided for in 37 CFR § 1.8 with the certified mail service of the United States Postal Service.

Please caption your response as follows: "Response Re: USPTO ID # **19240**."

Christine Nucker, Enrollment Administrator
Office of Enrollment and Discipline
571-272-4097

*Harry approved*
*May 23, 2006*
*1:36 PM*

19240

ORIGINAL

Cornell D.M. Judge Cornish.
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037

June 6, 2006

CONFIDENTIAL/PRIVATE

Response Re:
USPTO ID #: 19240
Cornell Cornish

Christine Nucker, Enrollment Administrator
United States Patent and Trademark Office
Office of Enrollment and Discipline
Mail Stop OED
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Ms. Nucker:

Re:    Supplemental Amendment to May 24, 2006, Approval of Reasonable
       Accommodation, and Need For Supporting Documents For One Extra
       Day For Testing (Large Print Already Approved By Eye Doctor)

This is a timely reply to your letter of May 24, 2006, which was mistakenly dated May 24, 2005, and which set a period for response to expire on or before June 26, 2006.

Correction of your letter is requested without charge, since there was a minor, obvious, mistake on the part of the Patent Office, and it was unavoidable by the applicant.

In order to advance this case to issue, to correct formal matters, and to place this case in better form for appeal, the attached supporting documentation, including a doctor's originally signed letter and a copy of the applicant's birth certificate are submitted for your approval of a whole extra day to finish the examination on a second day.

As you are aware, my admittance has already been approved for the first day with a Reasonable Accommodation for large print in "14" font for the entire examination on that one day. However, it would obviously be a Reasonable Accommodation to supply the large print "14" font on two days should an extra day also be authorized as a Reasonable Accommodation, if that be possible, based upon the already existing approval of the large print "14" font.

**RECEIVED**

JUN 0 8 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

Exhibit 24

It would be a Reasonable Accommodation to allow a second or extra full day with large print to complete the examination based upon the attached supporting documentation.

I am now requesting Reasonable Accommodation for the second whole day with an extension of the Reasonable Accommodation of large print in "14" font that has already been granted.

The second whole day is necessary in view of the attached documentation from a licensed physician.  In view of the attached, it is obvious that an emergency heart attack possibility is real.

The danger of an emergency heart attack is real because of the family history of heart disease documented by this affidavit, and the history of surgery documented by the attached original letter from a licensed, cardiologist, medical doctor.  Lacking an extra whole day for the exam, an emergency, such as a heart attack in a large room filled with test takers, would require the test monitor, who is always required to be present, to be relied upon to quickly call for trained emergency personnel.

In a large room, filled with many test takers, the probability of missing the need for assistance, and/or the slowness of the response are likely and implicit in the conditions.  The large number of persons present and the large size of the room would exacerbate the danger of the emergency and make a proper response difficult if not impossible.  It is obvious that immediate, professional, trained emergency help is required in a small room without interruption of a large group.  The first few minutes of a heart attack, when the need for care are critical to survival, are enhanced in a small room vs. a large room filled with many persons.

The large number of test takers would undoubtedly suffer from the confusion of an emergency, and the one evacuated to a hospital would also suffer from being forced to take a test in a large room filled with many test takers.

All of this confusion would lead unwillingly to ridicule, embarrassment and the violation of confidence and privacy.  The effects of a large room, filled with many test-takers is dangerous, and, as such, would so distort the taking of the test that undoubtedly the test would have to be re-administered.

To this end, my medical history obviously puts the OED on notice as to the possible need for a monitor in such an emergency.  The OED is on notice that they must quickly recognize the symptoms of a heart attack.

In accordance with your stated need, and request for, Supporting Documents from a physician for the specific Reasonable Accommodation cited above in the above-identified "subject," the attached is timely submitted before June 26, 2006, in accordance with your instructions.

2

The enclosed is certification under oath that Dr. Bren is a medical doctor who is familiar with my medical history, and can attest to the same. His letter is based upon my medical records with which he is familiar, as he has been my treating cardiologist for many years.

The attached documents the case herein for ease of examination, provides reliable, relevant, weighty and persuasive factual material evidence concerning the need for the above-identified, subject, Reasonable Accommodation requested by Cornell D.M. Judge Cornish, who is currently a patient of Dr. Bren, and documents the fact that Dr Bren is familiar with the records of Mr. Cornish, who deposes and says under oath as follows:

1. He states that he is a 77-year-old patient with a family history of heart disease, that his father died of a heart attack at age 76, and that one brother died of heart disease at age 41. As a result of such risk factors, it was not unexpected that he would need, and he was operated on for progressive, potentially fatal, arterial sclerosis disease, including quadruple, cardiac, artery, by-pass surgery (CABG) in 1982. He states that he was operated on by Benjamin Aaron, M.D., since retired, who said to him that he saved both his and President Reagan's life.

2. Mr. Cornish further states that his heart surgery was at a time when such surgery required him to be on a heart-lung machine for approximately one hour, and whereby he was required to suffer the psychological, if not real, risk of a blood transfusion, as was typical in the early days of the development of such surgery. At that time the danger of contracting AIDS from a blood transfusion was a real possibility, as shown by the death of Arthur Ash, who had heart surgery at about the same time as Mr. Cornish did.

3. It was not unexpected, therefore, that recovery from such surgery would be, and was, generally problematical. Moreover, after the passage of over twenty years from that operation, the disease progressed to the point where he had a serious recurrence of the typical progressive symptoms of the disease, such as shortness of breath and angina. Thus, palpable, progressive, and detectable, underlying arterial sclerosis disease was found to be still present in the blood vessels supplying blood to his heart.

4. Accordingly, he was again diagnosed as requiring heart surgery, this time requiring the insertion of two, arterial shunts to relieve the symptoms and to improve his prognosis.

5. The progress of the disease and the safety of the shunts, presently does not guarantee a reprieve from, or a cure of, the disease, as monitored by the diagnosis that has been given by his physicians. Thus, he currently requires a regimen of medically approved physical examinations, daily exercise, dietary restrictions, control of stress and strain, and medication with strong medicines, including Altace, Topral, Playvex, Lipitor and Aspirin. These medicines require that he be closely monitored by medical examinations and blood tests to determine whether or not he has or is suffering from side-effects, and/or to determine whether he has suffered a still further recurrence of symptoms

3

requiring surgery, a change in medication, or a further change in his medically approved regimen.

6. It is my opinion that he qualifies for the above-cited, above-identified, Subject, Reasonable Accommodation requested by him, in addition to the already approved Reasonable Accommodation that he has received comprising, large print to enhance his ability to see the examination questions, as recommended by another physician.

7. By law, medical privacy is required in connection with this medical report.

8. By law, medical privacy is required in connection with the enclosures.

9. This law was enacted to give the applicant herein confidence that when he talks to his doctor, and asks him to supply a letter, such as the attached, that it will not be used against him.

10. Also, the attachments are abbreviated so as to avoid violation of that law.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
Reg. No. 19,240
Customer No. 59083 & 59001
(202) 429-9705 (voice and fax)
cornishj@erols.com

Affidavit

District of Columbia:    )
                         ) ss
City of Washington: . )

   Cornell D.M. Judge Cornish appeared and signed the above under oath before me this ___7th___ day of ___June___ 2006.

   Sworn to and subscribed before me this 7th day of ___June___ 2006.

Barbara J. Johnson
Notary Public, District of Columbia
My Commission Expires 4/30/2011

_Barbara Johnson_
Notary Public

4

ROY LEIBOFF, M.D. AND GEORGE BREN, M.D.

CARDIOVASCULAR MEDICINE

2440 M STREET. N.W.  •  SUITE 314  •  WASHINGTON, D.C. 20037
(202) 785-4966

June 7, 2006

RE: Cornell D. M. Judge Cornish
DOB: ▮▮▮▮▮▮

TO WHOM IT MAY CONCERN:

Mr. Cornell D. M. Judge Cornish is under my professional care for treatment of coronary heart disease. He had four-vessel coronary bypass surgery in 1982, and had a stent placed in one of his bypass grafts in 2003.

Sincerely,

George Bren, M.D.
GB/lak

COMMONWEALTH OF PENNSYLVANIA · DEPARTMENT OF HEALTH
VITAL RECORDS

**Certification of Birth**

0774220-1929

05-11-1929

MONTGOMERY                    01-25-2005

NAME                          SEX   MALE
    CORNELL DANIEL CORNISH

FATHERS NAME                  AGE   27
    ARTHUR JOHN CORNISH
BIRTHPLACE    LONDON ENGLAND

MOTHERS MAIDEN NAME           AGE   31
    GLADYS MARIE KEPNER
BIRTHPLACE    INDIANA

CHS                                          1276125



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

USPTO ID #: 19240

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20031

Dear Mr. Cornish:

The Office of Enrollment and Discipline received your response sent June 6, 2006. In this response you request correction of the letter of May 24, 2006 mistakenly dated May 24, 2005. This request is noted, and any confusion caused by the error is regretted. Your response to the letter was timely received in the response period set in the letter.

You request additional reasonable accommodations of taking the exam over two days. Although you no longer specifically request to take the exam in a separate room, you express a desire for privacy. You attached a statement from a licensed physician, Dr. George Bren.

Your letter and the attached statment have been carefully considered, but are not supportive of the additional accommodation requested. Dr. Bren's letter only states that you are under his "professional care for treatment of coronary heart disease." Nowhere does Dr. Bren state that your condition requires an accommodation of taking the exam over two days in privacy or limiting the number of hours you sit for the exam in a day. Therefore, there is no nexus between Dr. Bren's statement and the requested additional accommodation.

You state that the Office of Enrollment and Discipline (OED) is "on notice as to the possible need for a monitor" and OED "must quickly recognize the symptoms of a heart attack." The nature of the "monitor" is unclear. OED is not staffed with medical experts or equipment. An OED staff member will attempt to call 911 if you so request or the situation appears to warrant such action.

Exhibit 25

For this examination, you have been granted a reasonable accommodation of large print on the examination, *i.e.*, 14 point. Your examination will be given on July 12, 2006, as stated in your admission letter of April 25, 2006.

Sincerely,

Christine Nucker, Enrollment and Discipline Administrator
Office of Enrollment and Discipline



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

August 16, 2006

USPTO ID #: 900019240

Cornell D M Judge Cornish
1101 New Hampshire Ave NW Ste 301
Washington, DC 20037

### NOTICE OF RESULTS OF July 12, 2006 REGISTRATION EXAMINATION

I regret to inform you that you did not attain a passing grade on the examination for registration to practice before the U.S. Patent and Trademark Office given on July 12, 2006. Your examination score is: 52 percent.

To pass the examination, you needed a minimum score of 70 percent.

Your score is the percentage of scored questions you correctly answered. See the notice at http://www.uspto.gov/web/offices/dcom/olia/oed/unofres19aug05.htm.

Within sixty (60) days of the mailing date of this letter, you are entitled to inspect, but not copy, the questions and answers you answered incorrectly. 37 CFR § 11.7(e). All reviews will take place at the Office of Enrollment and Discipline, 600 Dulany Street, Madison West, 8th Floor, Alexandria, VA 22313. Please contact the Office of Enrollment and Discipline to schedule a time for your review.

You may reapply immediately to take the examination. You must wait at least 30 days after the date you last took the exam before retaking the examination. To apply to take the examination again, you must file an application form, along with any updated information, and the $40.00 application fee and the $200.00 examination fee. See the instructions in the section titled, "Reapplying for the Exam" in the General Requirements Bulletin (GRB). The GRB may be found at the Office of Enrollment and Discipline (OED) home page at the following web address: http://www.uspto.gov/web/offices/dcom/gcounsel/oed.htm. The GRB may be downloaded at no cost, or you may purchase a single copy at a prepaid fee of $15.00 per copy. For a printed copy, submit a written request with the appropriate fee to: Mail Stop OED, United States Patent and Trademark Office, P. O. Box 1450, Alexandria, Virginia 22313-1450.

If you wish to receive acknowledgement of the receipt of any communication, please include a self-addressed, stamped post card to be used for such purpose. The card should identify each type of paper filed. OED will stamp the receipt date on the card and place it in the outgoing mail. However, the card is not verification that all of those items you identified were present.

Harry I. Moatz, Director
Office of Enrollment and Discipline

Exhibit 26

OED) $

UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE COMMISSIONER OF PATENTS AND TRADEMARK
UNDER SECRETARY OF COMMERCE    RECEIVED
FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE  JUL 1 2 2006

OFFICE OF ENROLLMENT
AND DISCIPLINE

In Re: Petitioner by Cornell D.M. Judge Cornish    )
For Review and Reversal of Decision by OED  )    USPTO ID #: 19240
Denying Reasonable Accommodation, etc.     )
Inter alia, Under 37 C.F.R. Sec. 10.2 ( c )    )

Petition For Review

This is a timely Petition to the Commissioner by Petitioner, Cornell D.M. Judge
Cornish, inter alia, pursuant to 37 C.F.R. Sec. 10.2 ( c ), for Review and Reversal of the
law and/or rule based refusal, in an undated letter from OED, to Suspend the Rules and to
Register Petitioner without another examination (albeit he has already passed the
examination once and been registered from 1958 to 1995 under Registration No. 19,240),
and although the letter from OED dated March 22, 2005, stated that, "you have not
presented insufficient objective evidence to show that you continue to possess legal
qualifications necessary to render applicants for patent valuable service." Surprisingly,
that was the basis of the law based denial to allow him to continue practicing under his
Registration No. 19,240, and now that the Director has additionally refused, declined and
denied him registration, and has excluded him from practice, by declining to make a
reasonable accommodation by extra time and a separate space to take the examination for
purposes of continuing legal education.

Although he has passed the examination once, Petitioner is now effectively and
finally excluded by a rule and law based rejection from practice by the Director of the
Office of Enrollment and Discipline (OED), who has required him to pass an examination
without the requested reasonable accommodation of an extra day and a private room.

The Petitioner is not only, thus, excluded from practice without a hearing or any
charges being brought to bear against him, inter alia, because his age of 77 years alone, or
together with the conditions documented in a letter and a prescription from two
physicians, has failed to establish to the satisfaction of the Director of Enrollment and
Discipline that Petitioner should be reinstated without an examination.

The denial, thus, rejects the approval of further reasonable accommodation and the
passing of the Registration Examination without additional reasonable accommodation in
order to be reinstated, and to show that Petitioner continues to possess the legal
qualifications necessary to render applicants, including himself as an inventor, or with
others as a co-inventor, valuable service.

Exhibit 27

Still further, the Director has unilaterally without a hearing and the ability of the Petitioner to cross-examine, to call witnesses and to present still further evidence, prevented the Petitioner, and excluded him by prior restraint, as a practitioner, inventor, co-inventor and member of the public, from gaining pro bono publication, and/or access to the patent publication process as a practitioner, by prior restraint of publication as a practitioner and publisher of his publications. The Director has unilaterally acted in an Article III judicial capacity without proper statutory authority, and/or substantive and procedural due process in a gatekeeper role.

It is a well established and long recognized right for anyone except an employee of the PTO to publish his invention without prior restraint in a patent document, so long as he meets the statutory requirements of the First Amendment of the U.S. Constitution, 35 U.S.C. 101, 102, 103 and 112, and the appropriate procedural Rules, without a rule or law based rejection of his inventions and co-inventions, particularly as an applicant in the Patent Office. Any licensed attorney in good standing can publish his trademark and those of others without prior restraint in the Official Gazette, and without a qualifying registration, provided he meets the statutory and procedural requirements of the law for lack of confusing similarity and other well recognized public policy requirements.

Under 35 U.S.C. 101, the Petitioner and anyone in the world except employees of the USPTO may obtain publication and a patent by filing and prosecuting a proper application to issue in the USPTO. The right of an inventor to file and prosecute a patent application in the USPTO on his invention without prior restraint is a manifest right by rule and statue under the First Amendment to the U.S. Constitution, and it is a well recognized, long established right under statute since the first patent act of 1790.

The Petitioner is the absolute owner of his application and his right to file and prosecute his application for an invention and a trademark without prior restraint when he files, and has, or should have, complete rights to administer its filing and prosecution whether he is a sole inventor or a co-inventor. Under the Rules, in case of a hostile, missing or dead inventor, or as an administrator, he has been recognized, or should be recognized, as competent to control or prosecute an application, and/or it is submitted that he should be allowed to do so.

He has statutory rights to prosecute an application to publication without prior restraint for himself and his co-inventors, file a Statutory Invention Registration for himself and others, and also to file a Provisional Patent Application for himself and others in the USPTO, especially in a pro bono capacity. He has and should have rights without prior restraint, to protest, cite prior art, and to seek re-examination without exclusion, and/or being required to twice pass the registration examination, unless, or perhaps even if, disbarred for misconduct or incapacity. Likewise, he should not be excluded from practice after a long career as a practitioner because he has been unilaterally declared by the Director of OED without a hearing not to deserve the well documented, medically certified, age-related, reasonable accommodations that he has requested to keep him from being excluded from practice because of a lack of a well

2

documented reasonable accommodation, or even by lack of a second passing mark on the registration exam.

Despite statutory rights, Petitioner has been excluded from those rights shared by all others similarly situated, except perhaps employees of the PTO.

Accordingly, he also petitions for reversal of the Director's exclusion of Petitioner from practice before the Trademark Office where no examination is necessary (albeit the rational raised in part was "inactivity" for more than five years while stating on March 22, 2005, in reference to the Petitioner, that: "you have not (emphasis added) presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." As far as is known, there is no precedent for discriminating against the Petitioner here, in contrast to the right of similarly situated attorneys, to prosecute applications for others, especially in a pro bono capacity before the Trademark Office or the Patent Office.

It is, moreover, submitted that Petitioner has now shown that his age combined with other conditions, now identified and certified by three physicians (see attached letter and those of record), are sufficient to satisfy the Director's requirements for a nexus between his age and the inherent, progressive conditions produced thereby. These are well-established factual issues, involving inherent and well-recognized limitations. They are all inherent, well known and well established.

It is inherent and well recognized that an age of 77 years produces the need for the requested reasonable accommodation and registration without an examination, all of which are likewise known and well established. Accordingly, this Petition requests the remedy of review and reversal of the Director's denial of the Suspension of the Rules, Registration without taking the examination again, and reasonable accommodation to take the examination for either Continuing Legal Education in 2007, and/or registration with extra time and a private room at that time and other times (albeit the Director did grant the reasonable accommodation of a large print examination in 2006, for which Petitioner wishes to state his gratitude); It is submitted that the reasonable accommodation granted shows not only the vulnerability of the Director's partial denial, but also is proof of the mitigating circumstances in this case.

The fee of $130.00 is enclosed for this Petition, and if any additional fee is required for any purpose or to satisfy this Petition, e.g., to take the registration examination for purposes of Continuing Legal Education in 2006 and/or 2007, the Commissioner is authorized to make any additional payments necessary from Petitioner's Deposit Account No. ▮▮▮▮ so that he can properly qualify for his application for registration and/or to take the examinations in the PTO in 2007, with a reasonable accommodation to take that examination. It is believed that there has been set no time limit or deadline barring this Petition.

In this connection the OED letter of denial carried no date, and so it is impossible to deal with the date of the denials thereof, except by Petition to review and reverse the

denials. Not only did the most recent denial contain no date, but it corrected the date of an earlier partial denial from May 24, 2005 to May 24, 2006, stating that the error and any confusion caused by the error, which was substantial and substantive, was regretted.

It is submitted, and it is requested, that this request is not moot, and should not be made moot because of the close encounter or overlap with the July 2006 exam. There is no other way to make this petition timelier for the 2006 exam, or to take the 2007 exam for CLE purposes, or other purposes, short of a stay, which is requested if necessary to fulfill this request, because the latest denial of reasonable accommodation was undated. Thus, review of the undated denial cannot take place before the July 2006 exam, and can only appropriately take place in time for the 2007 exam.

This petition must necessarily be effective in the first instance, therefore, in connection with the 2007 exam, and only then will the full impact be felt of the denial, which will have a direct impact on the Petitioner's study for the 2006 or 2007 exam for purposes of CLE, as is his right, upon information and belief, in view of his right to qualify, and his success in repeatedly qualifying for the examination going back to 1958 and his long years of practice since then, as well as his contributions to the field of patent law.

Petitioner seeks review and reversal of the portion of the undated Decision of the Director of the Office of Enrollment and Discipline (OED), signed but not dated by Christine Nucker, Enrollment and Discipline Administrator, OED, which denied a requested Reasonable Accommodation for extra time and space to take the examination for registration, and confirming the portion of his request that was partially granted, of a reasonable accommodation for large print, i.e., 14 point, for the Patent Office Examination.

The request to take the examination over a period of two days, and in a separate room, was requested, inter alia, in Petitioner's request of April 8, 2006, which, although it was received in the Patent and Trademark OED Office on April 10, 2006, was not limited in any way to only the 2006 exam  The request was equally concerned with employing the 2007 exam as a vehicle for CLE in view of the prospect of a refusal to grant Suspension of the Rules, Reinstatement without an examination, and refusal to grant a reasonable accommodation to take the exam over two days in a private place. The April 8, 2006 reply followed a timely request of March 21, 2006, received by OED on March 28, 2006, and a timely request of March 31, 2006, received by OED on April 3, 2006.

The April 8th and March 21st submissions were based at least in part on a relevant earlier request of January 26, 2005, receipt of which was acknowledged by OED on January 31, 2005; and it was based also on the Personal and Confidential review by OED dated March 22, 2005, which stated that the Petitioner has "not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

That earlier letter caused substantial substantive and procedural law based confusion in the stated grounds for the denial of the Suspension of the Rules, and/or Reinstatement without an exam. For example, that letter apparently allowed supplementation of the record without a time limitation or deadline, because of a need to know the current active status of the Petitioner in Maryland, the District of Columbia and New York State (albeit, the Petitioner's appeal relating to his reinstatement in New York State was only concluded on June 6h, and only entered on June 15, 2006 because of the legal dimensions of his request for temporary, voluntary, provisional, and conditional inactivity in that jurisdiction, although there should be none in the U.S. Patent and Trademark Office.

It was noted in his return to active practice in Maryland, the District of Columbia and New York State, that he made his temporary, voluntary, provisional, and conditional inactivity contingent on the quid pro quo for his inactivity as an attorney, namely the legally extracted cost for giving up practice for profit in those jurisdictions. His inactivity in the U.S. Patent and Trademark Office was simply a way to show respect for his continuing rights in the PTO as a practitioner admitted to the bar, inventor and co-inventor, and, as well, as a member of the public. This included being freed from the requirement for the fees necessary for active practice in exchange for giving up the right to practice for a profit. The abatement of his right to practice for a profit during the time of his inactivity, clearly made him legally unable to cope with or desire to practice legally for a profit, and nothing to do with discipline or sanction.

To this end, he submitted an affidavit of inactivity, as is the usual practice, and a copy is enclosed herewith. As stated on the enclosure in answer to the question: What does decertification mean? The answer is that "Decertification" during inactivity, "means entry of an Order by the Court of Appeals of Maryland prohibiting you from the practice of law in Maryland (see Rule 16-811) for non-payment to CPF of your assessment and/or any related charges."

The cost for Petitioner's inactivity is characterized as a legally mandated inability to practice for profit, and a legally mandated inability and lack of desire to cope with the demands of the practice of law. These are important and prominent requirements and considerations, because they give up profit on the one hand, and, on the other, they exclude expensive payments of a yearly fee to the Clients Security Trust Fund, now Clients' Protection Fund (CPF) in Maryland; and also, there is a corresponding payment of a required $350.00 fee for registration as an active attorney in New York State, and there is a similar fee in the District of Columbia that is required for active practice,

In order to clarify the record, and to understand and clarify this Petition if the same is deemed necessary by OED, it is requested that the undated Decision of the Director of OED signed by Christine Nucker be given a date so that the time for a reply and application for the 2007 exam may be correctly determined, her letter appearing to be a Decision denying in part a timely filed request for Reasonable Accommodation that can be properly Reviewed and reversed in part in time for the 2007 exam.

It is also clearly advantageous to review the April 8, 2006, request, since it included a timely Second Supplemental Amendment to a timely filed Petition Under 37 C.F.R. 10.170 requesting Suspension Of The Rules and Reinstatement, which was never fully or satisfactorily answered, and so needs a properly dated response from OED, as well as a proper review of the portion of the request for Reasonable Accommodation For the July 12, 2006 examination that was denied, and which was requested while awaiting a reply to the request for Suspension Of The Rules and Restatement that was never sent by OED, or received by the Petitioner on information and belief.

In this connection, it is manifest that the cost of a temporary, voluntary, provisional and conditional inactivity of a lawyer from practice in one of the several states, and in the U.S. Patent and Trademark Office, requires the attorney to give up practice in the U.S. Trademark Office as an "attorney registrant." He was still qualified as an agent.

On the other hand, to the end of maintaining his "attorney registration" as he has done, it is well established, and a long standing custom supported by law and regulation that there is no restriction requiring the passing of an exam for a lawyer to practice in the U.S. Trademark and/or the U.S. Copyright Office, or any of a variety of federal agencies, including the U.S. Tax Court where the Petitioner has continuously maintained his certification in good standing since before 1995. He has likewise continued his active registration in good standing in the Supreme Court of the United States and the Court of Appeals for the Federal Circuit.

The Petitioner has still further continuously maintained his active certification as an attorney in good standing in the U.S. Tax Court without interruption since he was admitted to practice there. The same applies to his uninterrupted, continuous, active certification to practice in the U.S. District Court for the Eastern District of New York. He offers this as proof that he has paid the price for maintaining his registration No. 19,240 in the U.S. Patent and Trademark Office, and that he should be allowed to resume his active practice now that he is actively registered and in good standing in every other jurisdiction where he was ever admitted to practice and certified as an active lawyer in good standing, but also in the U.S. Patent Office, where he has already passed the Patent Office Examination once.

It is clear that many state jurisdictions, including New York State, require active attorneys, including the Petitioner, to take Continuing Legal Education (CLE) courses without examination or grading. As the record clearly shows, and he sees no objection in obtaining a reasonable accommodation to take CLE courses in the USPTO.

The Petitioner has continued to take the necessary courses, not only to meet the requirements of the State bars where he is admitted, but also to meet the requirements of the U.S. Patent and Trademark Office to the satisfaction of the Director of Enrollment and Discipline, so that he will continue to possess the legal qualifications necessary to render applicants, including himself as an inventor, and/or with his co-inventors, and/or as a pro bono attorney, whereby he is certified as a practitioner, valuable service.

6

To this end, he hereby again requests permission of the Director of the Office of Enrollment and Discipline for permission to practice before the U.S. Trademark Office for himself and others, and before the U.S. Patent Office for himself and co-inventors, as well as on behalf of other inventors, especially on a pro bono basis, without being required to take another registration examination, and by supplying to them valuable services, either with or without Suspension of the Rules, and/or without taking any further examinations.

In this connection, he would be treated just like all other active attorneys before the U.S. Patent and Trademark Office who are not required to take or retake any examinations except an initial examination for practice for others in the U.S. Patent Office. He would also be treated like all other inventors who can practice before the U.S. Patent and Trademark Office, and attorneys practicing in the Trademark Office, and/or both in the Trademark and Patent Offices. See, for example, U.S. Patent No's 5,256,367 and 3,433,705, as evidence of the imprimatur of the U.S. Patent and Trademark Office to the status of the Petition as an inventor who prosecuted patent applications for himself and/or on behalf of himself and at least one co-inventor.

OED's letter on March 22, 2005, has supplied no information or evidence as to when or how or by whom the Petitioner was "removed from the roster of registered patent attorneys and agents in April 1996," or how that would be relevant to the present denial of Petitioner's request for reinstatement with or without examination, suspension of the rules, and reasonable accommodations.

OED's remarks are believed to be at least equivocal and/or provisional as to Petitioner's practice before the Trademark Office and/or the Patent Office. Further, reconsideration is requested of OED's "denial" on March 22, 2005, since Petitioner could himself have, and in fact did, voluntarily, temporarily, provisionally and conditionally place himself on inactive status without the necessity of any disability. OED states equivocally that "after you were placed on disability inactive status with the Maryland State Bar," which is believed to lack jurisdiction in such a case, that the Petitioner became inactive, which begs the question of why and by whom the same was done except by a voluntary action and without discipline or sanction by holding in abeyance a profit motive.

The Patent Office Director is in no position to collaterally attack what the Petitioner did in Maryland and subsequently thereto on a reciprocal basis.

As we see in such cases as AGC v. Ruffin, 369 Md. 238, voluntary inactive status is well and long established. The attorney ceases to practice law for profit in exchange for not being legally required to pay the annual assessment required of active attorneys.

There is a price exacted for being placed on inactive status and thereby being relieved of the financial obligation inherent in the assessment – the attorney is temporarily, provisionally, and conditionally but substantially completely prohibited from

7

practicing law for a living (albeit, he is, therefore, legally unable to cope with or have a desire to practice, at least for the time being); his or her practice of law is limited to representation with compensation, except reasonable and necessary expenses, as a participant in a legal services or pro bono publico program. The pro bono or the legal services could be supported or sponsored by a local bar association, as defined in Maryland Rule 16-1701 ( b ), the Maryland State Bar, an affiliated foundation of that Association, or the Maryland Legal Services Corporation.

Petitioner is actively engaged in pro bono work. And this is one of the requirements of modern practice in many jurisdictions. It should be one of the requirements of modern practice in the U.S. Patent and Trademark Office.

This appears to have already been recognized by the USPTO. OED stated unequivocally on March 22, 2005, that the Petitioner has "not (emphasis added) presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

Petitioner has rebutted the basis for, and logic of, OED's denials with clear, convincing and credible substantive evidence, and narrated the details thereof exactly and in due order, so as to enable a Trier of facts, such as the Commissioner of the PTO in both an administrative and a judicial proceeding, to properly come to a clear conviction, without hesitancy, of the truth, reliability, strength and weight of his facts and logic. Still further, the OED denial and/or its *prima facie* showing, as well as its arguments, logic and reasoning, are without adequate support or foundation, and the burden shifts to OED because of the lack of a judicial proceeding, statutory authority, or the allowance so far of a proper judicial proceeding or appeal.

OED has knowledge by judicial or actual notice that the Petitioner is not incapacitated and is capable of providing valuable service and to practice, all of which supports and provides grounds for establishing his competence to be registered again by continuing his registration without exclusion.

Petitioner is inherently, and has been certified repeatedly, as able to render valuable service, advice, and assistance in the presentation or prosecution of inventions and trademarks before courts of law, and/or to present other business, by law and by virtue of his admission to practice and good standing in many states and federal jurisdictions; by virtue of his age, experience and study; by virtue of the medical evidence already submitted and enclosed; maintenance of his skills by required CLE courses; and by virtue of the imprimatur of the USPTO certifying him as an inventor who prosecuted his own applications and those of co-inventors to patents; by service of value to co-inventors in the prosecution of patent applications to issue; and by the inherent knowledge, or by incorporation by reference as to the fact that he has already passed the patent office registration examination and practiced for many years, since 1958, under Registration No. 19, 240. That should be sufficient for renewal of his registration without further examination, but if not, this request and petition should be sufficient

evidence that this request for Suspension of the Rules and Reinstatement without examination should be granted now and should not now be denied.

It would be against public policy to allow the Director of OED to collaterally attack Petitioner's voluntary affidavit of inactivity, or to plead that the Petitioner has incapacity, or lacks capacity and fitness to practice. It would be unconscionable to do so, or to treat him differently than similarly situated Petitioners. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1958) explaining equal protection under the Constitution, and/or other statutory authority. There is no rational basis for discriminating against Petitioner, such as would be applied under 5 U.S.C. sec. 500; 15 U.S.C. sec. 1123; and 35 U.S.C. sec's 6, 31 and 32. They do not allow the PTO to adopt rules that are without reason or logic, inconsistent with custom and practice, as well as statute, or otherwise inherently discriminatory or that excludes Petitioner without due process (albeit, Koden v. U.S. Dept. of Justice, 564 F.2d 228, 233 (7th Cir.), 374 (D.C. Cir. 1986, speaks to the underlying authority).

There are mitigating circumstances in this case relative to other cases, including age, length of experience and contributions to the patent system as a patent attorney. The latter include his patent prosecutions; his imprimatur as an inventor in cases which he prosecuted for himself and co-inventors; his pro bono work; his obviously and inherently limited economic condition; his consistent Continuing Education Activities; his pro bono activities; his supporting evidence of several documented medical conditions; including one for which a reasonable accommodation has already been granted; and his amicus brief in the Chakabarty case, 447 U.S. 303 (1980), which is the leading case on 35 U.S.C. 101, all lending weight, support and nexus to his request for reinstatement without an examination, and reasonable accommodation for extra time and a separate room if an examination is finally required or taken as an optional CLE activity.

. As to the mitigating circumstances of his documented age of 77, reference is made to the case of Moatz v. Kersey, Proceeding No. 00-07, and August 22, 2000. In that case, as in this one, the progress of at least one of several *progressive* "conditions" were inherently and well recognized as having nexus and being relevant. In this case, one condition has nexus and is relevant along with other progressive conditions that have been medically documented, because they are liable alone or together to have a more than ordinary effect on the ability of the Petitioner to take the registration test, to endure the stress of the swift-boat required to finish the high stress test; the tradition of giving the exam in the short time designed for it; and intentionally developed in successive beta versions to stress the mostly young people taking the test; the embarrassment of standing out as an old and different person; the risk and stress of having to call 911 during an exam in case of an emergency; the long time required to sit; the short time allowed, including the short time allowed for frequent bathroom calls of nature that are progressively part of the aging process; and the long time necessary to resume practice after studying for the examination and taking the same, which Petitioner can only do once a year in the Patent Office on a paper exam where the type can be easily enlarged. His hardship includes the hardship already suffered, and that which he is continuing to suffer because of his documented conditions, which are all *unavoidably* progressive.

As a further reason for why extra time and a separate room should be given as a reasonable accommodation, reference is made to prior cases in the PTO. In the case decided on Dec. 9, 1999, an applicant was given two days time, and/or time and half and a separate room for the morning and afternoon sessions by the OED letter dated August 21, 1998. Like that applicant, Petitioner here has provided letters from two physicians, and another is enclosed herewith that describe and "confirm" Petitioner's conditions, which together are aggregated to document the nexus and to show that the requested accommodations are reasonable. Those letters from physicians reveal the nexus between the "condition" and the reasonable accommodation requested.

The undated OED letter of denial did not even mention the substantive effect of age, and the inherent reasonable accommodation necessary because of age. Nevertheless, the extra time requested, as well as a separate room requested by the Petitioner here, were denied without even mentioning his age, which is a critical extra condition in addition to a single "condition," as mentioned in the cited case, and the other condition documented in this case. The extra "condition" in this case is a separate condition requiring enlarged print, but in the cited case extra time was given for one condition, whereas it has not been given in this case to Petitioner herein, where there are at least three documented "conditions" having an inherent nexus and relevance.

It should be recognized as an obvious mitigating circumstance that Petitioner is inherently able to render valuable service to himself as an inventor, and/or as a co-inventor on behalf of his co-inventors before the Patent Office, as well as for others because of pro bono and other rules, such as under 37 C.F.R. 10.158 ( c ) ( 1 ) and subparagraph, it being noted that Petitioner has never been formally <u>excluded</u> before now as an attorney and until now. Indeed, he can freely represent others in the Trademark Office without limit. No mention is made, and clarification is requested, of any denial or renewal of denial of registration. Requiring him to retake the exam is superfluous, redundant or unnecessary.

The nexus of his condition and need for reasonable accommodation are obvious and inherent, as is the valuable service that he can provide. They exist and are inherent because his conditions are progressive. His age and conditions are medically documented "conditions," and he can legally and logically render valuable service before the Patent Office to himself as an inventor and also co-inventors, as well as act an attorney for a trademark applicants or copyright applicants, either for profit or as a pro bono project, which is much in need and which he is actively pursuing. Nothing is mentioned with regard to practice before the Trademark Office or on behalf of himself as an applicant, or as a co-inventor in the Patent Office, and/or as a pro bono attorney, and clarification and permission to do the same are requested.

As mentioned in Ruffin, op cit, and mentioned herein, his voluntary inactive status in Maryland does not preclude pro bono practice, or other practice in other jurisdictions. His inactivity has nothing at all to do with discipline or sanctions. In Petitioner's case he can practice pro bono in state jurisdictions, and he has remained

certified to practice in many other jurisdictions beside in Maryland or elsewhere. Reciprocal action was redundant to his temporary, voluntarily, provisional, and conditional inactive status in Maryland and the Patent and Trademark Office.

It is believed, on information and belief, that the record lacks any evidence that he was removed from the roster of registered patent attorneys, other than by, or except in the usual manner without discipline or sanction by, his own voluntary request for temporary, provisional, and conditional inactive status, anything to the contrary notwithstanding.

The Petitioner denies OED statements to the contrary on March 22, 2005, on information and belief, and requests reconsideration and evidence in support, or clarification, if OED persists in its allegations, as well as amendment or an oral hearing. Petitioner lacks sufficient information or instructions as to how to answer further the OED's somewhat equivocal and illogical "denial," other than by what Petitioner has already supplied in answer to OED's comment concerning a "further request for reinstatement to the USPTO roster," and the fact that he believes that he has supplied all the affidavits of inactivity and other material that are required. See the attached copy of his affidavit.

As far as is known, there are no relevant disciplinary complaints presently active against the Petitioner, and any and all other investigations, should they exist and are required to be disclosed now, are dismissed, closed, or are long ago disclosed to the PTO or are without foundation or irrelevant. Moreover, if they exist, they are confidential and/or have been dismissed or have not been pursued on information and belief for lack of support. In any event, such an inquiry is not germane in this case now, on information and belief, according to the satisfaction of the present record, other than as background to the reciprocal actions that have been long ago made of record by the Petitioner for the convenience of the Director in his analysis and review, and to satisfy all other requirements of the rules.

In view of the above, this is an administrative appeal of the denials of the Director in order to exhaust Petitioner's administrative remedies, and a request by way of the Commissioner's supervisory authority for Suspension of the Rules and Reinstatement Without Taking the Examination. Furthermore, reversal is requested of the Director of OED's denial of reasonable accommodation. These are requested, and, if an examination is required and/or the Director's denial is approved or not approved, Reversal of the Denial of the Reasonable Accommodation for extended time and special space are requested, while the addition of large type, which is already allowed, is maintained.

Respectfully submitted.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705 (voice and fax)
cornishj@erols.com

Encl:   As stated.
        (Including, Check No.        for $130)
        (Affidavit)
        (Letter from physician)

Cc::    As directed –

        Harry L Moatz, Director OED


### Certificate of Mailing and Hand Delivery

        The undersigned certifies that one copy of this above Petition For Review, with
enclosed check for the filing fee of $130.00, is being hand delivered to the Commissioner
of Patents and Trademarks (USPTO), a copy is likewise being hand delivered to Harry I.
Moatz, Director of the Office of Enrollment and Discipline (OED), on July 12, 2006, or
designees of the same, and it is certified that a copy is being deposited in the U.S. Patent
and Trademark Office with the proper date, address and label, as shown, and a copy is
being deposited with the United States Postal Service with sufficient postage as first class
mail in an envelope addressed to:

                                Commissioner for Patents
                                P.O. Box 1450
                                Alexandria, VA 22313-1450

                                On July 11, 2006.

                    *Cornell D. M. Judge Cornish*

Dated: July 11, 2006

                                Cornell D.M. Judge Cornish
                                Registration No. 19, 240
                                Customer Number 59001
                                1101 New Hampshire Ave., NW
                                Suite 301
                                Washington, DC 20037-1502
                                (202) 429-9705 (voice & fax)
                                cornishj@erols.com

## THE CLIENT PROTECTION FUND OF THE BAR OF MARYLAND

### FREQUENTLY ASKED QUESTIONS

**What is the purpose of the assessments?**

The Attorney Grievance Commission (AGC) handles **complaints of neglect** against Maryland lawyers and all resulting **disciplinary cases.** Its budget is set by the Court of Appeals of Maryland who approved "**An increase of $35 for each attorney for Fiscal Year 2005, and an additional $5 per year for the next succeeding five (5) years commencing in the Fiscal Year 2006**".

The Client Protection Fund of the Bar of Maryland ("CPF" or Fund) handles and decides claims against Maryland lawyers alleging **theft** of client or fiduciary funds. Its assessment for the current fiscal year is $20 per lawyer as fixed by the Court of Appeals of Maryland and by statute.

**What is the Client Protection Fund fiscal year and what is the amount of the current year's assessments?**

Both AGC and CPF have a July 1 thru June 30 fiscal year. CPF sends a joint assessment invoice on or about July 1 of each year to each active status Maryland lawyer for $130 ($110 AGC and $20 CPF) for the following fiscal year commencing July 1.

If admitted in December you are assessed the full amount of $130 and invoiced again July 1 of the following fiscal year.

**Are there late fees and when are they charged?**

No late fee is imposed if CPF receives payment of $130 on or before August 31. A $25 late fee will be assessed against you, for a total charge of $155, if your payment is not **RECEIVED on or before August 31**.

Furthermore, if your $130 payment and $25 late fee is not **RECEIVED** in full by the Fund **on or before December 31**, an additional late fee of $50 will be assessed on any outstanding balance increasing the total due to $205.

For those admitted in December your assessment payment of $130 must be received no later than March 31, 2006 to avoid a late fee of $50 to be assessed on April 1, 2006.

**What happens if my check is returned by the bank?**

Any bad check to the Fund for any payment will cause an additional penalty (currently $50) to be assessed against you and may also result in decertification and loss of your privilege to practice law in Maryland.

**What type of excuses are accepted for late payment or non-payment of the assessments?**

The CPF Regulations permit no excuse for late payment or non-payment. All invoices are mailed by July 1. If you do not receive same it is your responsibility to contact us.

**What does decertification mean?**

"Decertification" means the entry of an Order by the Court of Appeals prohibiting you from the practice of law in Maryland (see Rule 16-811) for non-payment to CPF of your assessment and/or any related charges.

The decertification process commences on or about February 15. Thirty day notice is sent to all attorneys with any outstanding balance. Payment of all outstanding balances must be received by the specified date in the notice, to avoid decertification.

**What is my obligation for change of address and how do I accomplish this?**

Rule 16-811f.2. states, "It is your obligation to give written notice to the trustees of every change in the lawyer's residence address, business address, or telephone numbers within 30 days of the change. The

## AFFIDAVIT OF INACTIVE/RETIRED STATUS

**FOR THIS AFFIDAVIT TO BE APPROVED FOR FY 2006/07**
**THE ORIGINAL MUST BE RECEIVED NO LATER THAN August 31, 2006**

the Trustees of the Client Protection Fund of the Bar of Maryland:

1. I have read your Regulation i.5 and i.6 (reproduced on the reverse side hereof), and I affirm my compliance herewith and my entitlement to your "inactive/retired" status for the following reasons (every box **must be checked**):

[ ] I am not listed as a member of the Maryland Bar as practicing, or "of counsel", "partner emeritus" or the like on any letterhead.

[ ] I am not listed as a lawyer in any Maryland telephone directory. A request for removal in their upcoming edition is acceptable and the box may be checked.

[ ] I am not listed as a lawyer in the "Blue Pages" of the MSBA Maryland Lawyers Manual and/or the "Maryland Section" of Martindale-Hubbell or any similar regional or national directory of lawyers or other media including print or electronic publications. The respective agencies must be contacted if you are unsure of your current listing. A request for removal from their upcoming edition is acceptable and the box may be checked.

[ ] I do not have a Maryland office for law practice.

[ ] I do not use a Maryland office address (either as a principal or alternate location) in connection with any law practice.

[ ] I do not rely on my Maryland bar membership for any out-of-state law practice.

[ ] I do not rely on my Maryland bar membership as a condition of my employment.

2. **I understand that I need not pay the current fiscal year's assessment if the original affidavit is received and approved by your office no later than August 31, 2006.**

As an inactive member you are entitled to become a voluntary contributor. As such you would be billed only for the current fiscal year's Client Protection Fund assessment of $20 and **not** the Attorney Grievance Commission assessment.

[ ] I desire to become a voluntary contributor and enclose the $20 contribution.

My current address, telephone number and my social security number are shown below:

NAME _____ SOCIAL SECURITY NO. _____

STREET ADDRESS_____

CITY, STATE, ZIP CODE _____

WORK PHONE _____ HOME PHONE _____

SIGNATURE _____ DATE _____

NOTARY:
SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20___.
MY COMMISSION EXPIRES: _____
NOTARY PUBLIC: _____

Approved: _____    Effective: _____

**Mail Original Form to:**

CPF, 2011 Commerce Park Dr., Annapolis, MD 21401

## REGULATION i.5 and i.6 OF THE
## CLIENT PROTECTION FUND OF THE BAR OF MARYLAND

**Assessments.**

5.    The Fund shall maintain a status of "Inactive/Retired". An Affidavit of Inactive/Retired Status must be completed, notarized and received in compliance with date restrictions as indicated on the Affidavit form. Lawyers approved for this status shall not be charged assessments or late fees for any fiscal year once they are approved.

6.    A lawyer wishing to resume the active practice of law, may do so upon written notice to the Fund of their intent, along with payment of the current year's assessments.

All Regulations of the Fund can be viewed at our website: www.courts.state.md.us/cpf or mdcourts.gov

**Once approved you will receive written confirmation****

Client Protection Fund of the Bar of Maryland
2011 Commerce Park Dr.
Annapolis, MD 21401
410-260-3635

Revised 4/06

AFFIDAVIT OF INACTIVE/RETIRED

To the Trustees of the Clients' Security Trust Fund of the Bar of Maryland:                                    11

1.  I have read your Regulation No. 14 (reproduced on the reverse side hereof), and I affirm my compliance therewith and my entitlement to your "inactive/retired" status for the following reasons (You must (√) every box):

☑  I am not listed on any letterhead either as an active, practicing lawyer or as "of counsel" or "Partner emeritus" or the like.

☑  I am not listed as a lawyer in any Maryland telephone directory.

☑  I am not listed as a lawyer in the "Maryland Section" of Martindale-Hubbell or any similar regional or national directory of lawyers.  ***Write to M-H at P.O. Box 1001, Summit, NJ 07902 and request that your name be completely removed from the Maryland section.***

☑  I do not have a Maryland office for law practice.

☑  I do not use a Maryland office address (either as a principal or alternate location) in connection with any law practice.

☑  I do not rely on my Maryland bar membership for any out-of-state law practice.

☑  I do not rely on my Maryland bar membership as a condition of my employment.

2.  I understand that I must pay all outstanding assessments due Clients' Security Trust Fund and/or Attorney Grievance Commission before my account is approved for "inactive/retired" status, and I her agree to do so.

My current address and telephone number and my social security number are shown below.

NAME _Cornell D. M. Judge Cornish_    SOCIAL SECURITY NO ▮▮▮▮▮▮▮

ADDRESS _Suite 301_    _1101 New Hampshire Ave. N.W. Wash DC 2-_

WORK PHONE _(202)424-9705_    HOME PHONE _____

SIGNATURE _Cornell D. M. Judge Cornish_ DATE _12/9/95_

SUBSCRIBED AND SWORN TO BEFORE ME THIS _20th_ DAY OF _Dec._ 19_95_.

MY COMMISSION EXPIRES:  NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 31, 1999

NOTARY PUBLIC _Richard F. Scott_

As an inactive member I would be entitled to become a voluntary contributor.  As such, I would be billed only for th current fiscal year's CSTF assessment (and not the Attorney Grievance Commission assessment); of course, I may contribute whatever amount I deem reasonable.  If approved for the inactive/retired status, I do ☐ do not ☐ desire t become a voluntary contributor.

ASSESSMENTS PAID THROUGH _____

                                                    ADMINISTRATOR

APPROVED FOR INACTIVE/RETIRED STATUS EFFECTIVE _____

                                                    CHAIRMAN

FOR THIS AFFIDAVIT TO BE VALID FOR FY 1995/96
CLIENTS' SECURITY TRUST FUND MUST RECEIVE IT BACK BEFORE JULY 31, 1995
1610 West Street   Suite 204   Annapolis   MD   21401

214

# AFFIDAVIT OF INACTIVE/RETIRED STATUS

To the Trustees of the Clients' Security Trust Fund of the Bar of Maryland:

1.  I have read your Regulation No. 14 (reproduced on the reverse side hereof), and I affirm my compliance therewith and my entitlement to your "inactive/retired" status for the following reasons (You must (√) every box):

☑  I am not listed on any letterhead either as an active, practicing lawyer or as "of counsel" or "Partner emeritus" or the like.

☑  I am not listed as a lawyer in any Maryland telephone directory.

☑  I am not listed as a lawyer in the "Maryland Section" of Martindale-Hubbell or any similar regional or national directory of lawyers.   ***Write to M-H at P.O. Box 1001, Summit, NJ 07902 and request that your name be completely removed from the Maryland section.***

☑  I do not have a Maryland office for law practice.

☑  I do not use a Maryland office address (either as a principal or alternate location) in connection with any law practice.

☑  I do not rely on my Maryland bar membership for any out-of-state law practice.

☑  I do not rely on my Maryland bar membership as a condition of my employment.

2.  I understand that I must pay all outstanding assessments due Clients' Security Trust Fund and/or Attorney Grievance Commission before my account is approved for "inactive/retired" status, and I hereby agree to do so.

My current address and telephone number and my social security number are shown below.

NAME   Cornell D. M. Judge Cornish                SOCIAL SECURITY NO ▮▮▮▮▮▮
                    TYPE OR PRINT
ADDRESS  Suite 301,   1101 New Hampshire Ave. N.W. Wash DC 200_
                    TYPE OR PRINT
WORK PHONE  (202) 429 - 9705            HOME PHONE _____

# REGULATION 14 OF
## THE CLIENTS' SECURITY TRUST FUND OF THE BAR OF MARYLAND

14.    The Trustees have adopted the following policies concerning "mandatory" and "voluntary" contributions to the Trust Fund and concerning late charges:

A.    A lawyer who holds himself out as a Maryland practicing lawyer is subject to mandatory contribution to the Fund: holding out includes: listing on a law firm's letterhead as being "of counsel" or "partne emeritus", or the like; listing in the telephone directory; listing in Martindale-Hubbell. Such lawyer's connection with Maryland requiring such mandatory contribution applies when the lawyer: (1) has a Maryland address even though his practice is entirely out of state; or (2) has an out-of-state practice but relies on Maryland bar membership; or (3) relies on Maryland bar membership as a condition of employment.

i) A lawyer who is a full-time employee of a federal or state agency or government, or who is a full-time law clerk, is subject to mandatory contribution to the Fund even though prohibited from private practice if (1) membership in a state bar is a condition of his employment and (2) Maryland is his only bar membership, or is the state bar membership on which he relies.

ii) A lawyer who is admitted temporarily under Rule 19 is subject to mandatory contribution to the Fund.

B.    The following lawyers are not subject to mandatory contribution to the Fund but may contribute thereto and be coded as "voluntary" contributors:

i) One who is on maternity leave or family leave and is during that time not listed in any manner as an attorney or in any manner holding herself out as a Maryland practicing lawyer.

ii) One who is a full-time judge or who is performing quasi-judicial functions on a full-time basis and who is prohibited from private practice of law such as: Federal and Maryland Judges; Maryland Masters in Chancery; Maryland Juvenile Masters; Maryland Orphans' Court Judges; Administrative Agency Hearing fficers; District of Columbia Commissioners; and U.S. Magistrates.

C.    Rule 6 of the Rules of Court of Appeals of Maryland provides, in part: "No lawyer shall be required to make any such payment [annual assessment or contribution] with respect to any year during which he does not engage in such practice of law. The Trustees may prorate the payment due from any lawyer who is admitted to practice for part of a year." The Trustees find that orderly and consistent administration of the Fund (which operates on a June 30 fiscal year basis) requires the following supplementary regulations:

i) Lawyers admitted before December 31 of any fiscal year shall be charged the full fiscal year assessments, but shall not be charged any late charges if payment is made by March 31; lawyers admitted after January 1 of any fiscal year shall not be charged any part of the assessments for such fiscal year, but shall be billec full assessments for succeeding fiscal years.

ii) The Fund shall maintain a category of "Retired/Inactive" lawyers, who shall not be charged assessments or late charges for any fiscal year after they are approved for such category; after transfer to such category, any such lawyer may be reinstated to active practice upon written notice to the Fund of his intent to resume active practice and upon payment to the Fund of all assessments due for the then current fiscal year.

iii) A lawyer seeking to change from active practice to "Retired/Inactive" status with the Fund (a shall furnish to the Fund written evidence in form satisfactory to the Fund of his cessation of all active practice, directory listings, etc., (b) unless such written evidence is received by the Fund by July 31 of such fiscal year, such lawyer shall pay full assessments for the fiscal year in which such change occurs, and (c) shall pay in addition any and all sums due the Fund for prior assessments, late charges, etc.

iv) Any claim for refund of any amount paid to the Fund will not be honored retroactively, and the honoring of prospective claims for refund shall be at the complete discretion of the Chairman and Administrator.

D.    The Trustees, pursuant to Rule 1228g3, may fix in their discretion, from time to time, reasonable late charges or penalty for late payment of mandatory contributions to the Trust Fund; all disputes with contributors concerning such late charges or penalties shall be resolved by the Chairman and Administrator in their discretion.



WASHINGTON
INTERNAL
MEDICINE
GROUP

Lowell M. Weiss,
M.D., F.A.C.P.
*Cardiology*

Harold S. Mirsky, M.D.
*Internal Medicine/
Hematology and Oncology*

Theresa A. Stone, M.D.
*Internal Medicine*

Elizabeth P. Wheaton, M.D.
*Internal Medicine*

Robert S. Wilkinson, Jr.,
M.D., M.A.C.P.
*Internal Medicine*

Nickie O. Lepcha, M.D.
*Internal Medicine/
Geriatrics*

Jennifer L. Krichevsky,
CRNP
*Nurse Practitioner*

Daniel B. Pollock
*Practice Administrator*

June 28, 2006

RE:    Judge Cornell Cornish

To Whom It May Concern:

Judge Cornell Cornish was seen by me on May 19, 2006.
Subsequently, I retired on May 31, 2006.

He has asked me to write a letter in his behalf.  He will soon be
taking an examination.  He wanted me to inform the individuals
who supervise this examination that he is 77 years old and that he
would like to be permitted to have additional time allotted for the
completion of the examination in view of his age and health issues
related in part to his age.

Very sincerely yours,

*Robert Wilkinson*

Robert S. Wilkinson, Jr., M.D., M.A.C.P.
RSW/ros



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

November 30, 2006

Mr. Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW
Suite 301
Washington, DC  20037-1502

## PERSONAL AND CONFIDENTIAL

Dear Mr. Cornish:

The Office of Enrollment and Discipline ("OED") is carefully considering your Petition for Review submitted July 12, 2006.  A Decision on that Petition will issue in due course. However, as discussed below in greater detail, at this time OED is hereby offering to administer to you a paper-based examination without requiring you to pay additional application or examination fees.

### BACKGROUND

You applied for the paper-based registration examination on April 10, 2006, and a Notice of Admission was mailed by OED on April 25, 2006.  Your application was accompanied by a cover letter in which you requested:

1.  a "reasonable accommodation for a printed examination with LARGE PRINT due to lack of sufficient light levels in the room;"

2.  that you not be required "to sit for the examination with all the other test takers on July 12th that are not disabled, as that might expose [you] to ridicule, or coerce [you] unwillingly to reveal confidential, difficult or private explanations concerning [your] certification or [your] medical history;" and

3.  an unspecified amount of extra time on the basis that "[i]ncreased time would somewhat lessen the coercion suffered, although that couldn't satisfy the need for larger print and more light."

Your request for a large type font on the printed examination was approved by OED on May 24, 2006.  The request for a separate testing room and

Exhibit 28

Cornell D.M. Judge Cornish                                    Page 2

additional time were disapproved as being unsupported by medical documentation.

On June 8, 2006, you filed an additional request for a separate testing room and additional time.  In support of the request, you submitted a letter from George Bren, M.D. that stated:

> Mr. Cornell D. M. Judge Cornish is under my professional care for treatment of coronary heart disease.  He had four-vessel coronary bypass surgery in 1982, and had a stent placed in one of his bypass grafts in 2003.

An unofficial birth certificate showing your birth date was also submitted.  However, OED found this documentation to be insufficient to support the request for a separate room and additional time.

The registration examination was administered on July 12, 2006.  On that same day, you submitted your Petition for Review along with supporting exhibits.  As noted above, a Decision on the Petition for Review will be issued separately.  For the purposes of this letter, however, it is noted that the Petition for Review includes a June 28, 2006 letter from Dr. Bren that states:

> [Judge Cornell Cornish] has asked me to write a letter on his behalf.  He will soon be taking an examination.  He wanted me to inform the individuals who supervise the examination that he is 77 years old and that he would like to be permitted to have additional time allotted for the completion of the examination in view of his age and health issues related in part to his age.

Although your submission of this letter from Dr. Bren was too late for consideration in connection with the July 12 administration of the examination, the letter has been considered here.

Cornell D.M. Judge Cornish                                    Page 3

DISCUSSION

In reviewing your application file, OED noted that the accommodation approved in response to your request, *i.e.*, an examination with large print, was provided along with a desk lamp when you sat for the examination on July 12. It appears, however, that the answer sheet and the Manual of Patent Examination Procedure ("MPEP") provided at the July 12 examination used standard print size. Although it is unclear whether this had an adverse effect on the final examination score, OED has decided to offer you a one-time opportunity to sit for the registration examination without the payment of additional government fees.

Should you decide to accept this offer, OED will make arrangements for you to sit for the registration examination at USPTO facilities during regular business hours on a mutually convenient government business day on or before January 31, 2007. The examination and answer sheets will be presented in 14 point Arial font. OED also will provide several magnifiers that may be used by you in viewing the MPEP, and will permit you to bring your own magnifying device should you so choose. A desk lamp will be provided for supplemental light.

Your request for a separate room remains unsupported by proper documentation. However, the request for a separate room is effectively moot in that you will be the only test candidate present at this administration of the examination.

With regard to your request for an unspecified amount of additional time, this request remains unsupported by proper documentation. Dr. Bren's June 28 letter merely states that you indicated a desire to have additional time allotted for completion of the examination. The letter is not "[s]upporting documentation, less than one year old, certifying the current severity of the disability and certifying that the accommodations requested are necessary for this disability ... sent by a licensed physician who has evaluated the condition." Thus, the request for an unspecified amount of additional time remains disapproved.

Cornell D.M. Judge Cornish                                    Page 4

FURTHER STEPS

If you choose to accept the offer outlined above, please contact Ms.
Christine Nucker on 571-272-4097 as soon as possible so that appropriate
testing arrangements may be made.

Very truly yours,

William J. Griffin, Staff Attorney
Office of Enrolment and Discipline

# MEDICAL FACULTY ASSOCIATES

## THE GEORGE WASHINGTON UNIVERSITY

Department of Urology
2150 Pennsylvania Avenue, NW
Washington, DC  20037
(202) 741-3100

**Fernando Bianco, M.D.**                    DEA# _____

Name _____

Address _____ Date 12|12|6.

Rx

Mr Carrell Cornish
Has Benig Prostatic Hypertophy
& requires frecunt visits to
bathroom. Please accomodate
Accordingly.

Refill _____ Times ____ PRN ____ NR ____

TO DAW: Handwrite "BRAND MEDICALLY NECESSARY"
in the space below.

Exhibit 28 a



**UNITED STATES PATENT AND TRADEMARK OFFICE**

OFFICE OF ENROLLMENT AND DISCIPLINE

May 15, 2007

Mr. Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW
Suite 301
Washington, DC  20037-1502

Dear Mr. Cornish:

Pursuant to your telephone discussion with Ms. Christine Nucker, you have been scheduled to sit for USPTO administration of the registration examination on Monday, July 16 and Tuesday, July 17, 2007.  Furthermore, you will be refunded the application and examination fees submitted with your most recent application.

Based on your submissions, the following accommodations have been approved:

- Four hours per examination session, with the first session administered on Monday, July 16 and the second session administered Tuesday, July 17;
- Fourteen point print font on the examination booklet and answer sheet;
- Magnifiers provided to assist reading the Manual of Patent Examining Procedure;
- Additional lighting; and
- A testing room separate from the main testing room.

Your admission letter is attached.  Should you have any questions concerning administration of the examination, you may contact Ms. Nucker on 571-272-4097.

We also note that you have requested limited recognition to prosecute design patent application no. 29/273,235.  You are the named inventor on the application and therefore may prosecute the application *pro se* should you choose to do so.  Accordingly, your request for limited recognition to prosecute the application is denied as moot.

Very truly yours,

William J. Griffin, Staff Attorney
Office of Enrollment and Discipline

Exhibit 29



## UNITED STATES PATENT AND TRADEMARK OFFICE

OFFICE OF ENROLLMENT AND DISCIPLINE

August 22, 2007

**USPTO ID #: 41361**

Cornell D M Judge Cornish
1101 New Hampshire Ave NW Ste 301
Washington, DC 20037

## NOTICE OF RESULTS OF July 16, 2007 REGISTRATION EXAMINATION

I regret to inform you that you did not attain a passing grade on the examination for registration to practice before the U.S. Patent and Trademark Office given on July 16, 2007. Your examination score is: 48 percent.

To pass the examination, you needed a minimum score of 70 percent.

Your score is the percentage of scored questions you correctly answered. See the notice at http://www.uspto.gov/web/offices/dcom/olia/oed/unofres19aug05.htm.

Within sixty (60) days of the mailing date of this letter, you are entitled to inspect, but not copy, the questions and answers you answered incorrectly. 37 CFR § 11.7(e). All reviews will take place at the Office of Enrollment and Discipline, 600 Dulany Street, Madison West, 8th Floor, Alexandria, VA 22313. Please contact the Office of Enrollment and Discipline to schedule a time for your review.

You may reapply immediately to take the examination. You must wait at least 30 days after the date you last took the exam before retaking the examination. To apply to take the examination again, you must file an application form, along with any updated information, and the $40.00 application fee and the $200.00 examination fee. See the instructions in the section titled, "Reapplying for the Exam" in the General Requirements Bulletin (GRB). The GRB may be found at the Office of Enrollment and Discipline (OED) home page at the following web address: http://www.uspto.gov/web/offices/dcom/gcounsel/oed.htm. The GRB may be downloaded at no cost, or you may purchase a single copy at a prepaid fee of $15.00 per copy. For a printed copy, submit a written request with the appropriate fee to: Mail Stop OED, United States Patent and Trademark Office, P. O. Box 1450, Alexandria, Virginia 22313-1450.

If you wish to receive acknowledgement of the receipt of any communication, please include a self-addressed, stamped post card to be used for such purpose. The card should identify each type of paper filed. OED will stamp the receipt date on the card and place it in the outgoing mail. However, the card is not verification that all of those items you identified were present.

Harry I. Moatz, Director
Office of Enrollment and Discipline

Exhibit 30

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Cornell D.M. Judge Cornish        )
                                  )
    Plaintiff            )
                                  )
    v.                   )
                                  )        Case:  1:07-CV-0719
Jon Dudas, et alia                )                 RWR
                                  )
    Defendants            )
_____)

### Declaration of Christine M. Nucker

I, Christine M. Nucker, an employee of the United States Patent and Trademark Office ("USPTO"), make the following statement under penalty of perjury in connection with the above captioned litigation:

1.    I am over the age of 18 years.

2.    I am currently employed as an Enrollment and Discipline Administrator by the Office of Enrollment and Discipline (OED) at the USPTO, 600 Dulany Street, Alexandria, Virginia.

3.    I have been employed by OED since May 1998 and have been employed by the USPTO since July 1974 (as an Examiner from 1974 to 1981; as a Primary Examiner from 1981 to 1991; as a Supervisory Patent Examiner from 1991 to 1995; and as a Special Programs Examiner from 1995 to May 1998).

4.    In connection with my current position, I have the following knowledge concerning the change in the identification number for Cornell D.M. Judge Cornish:

    a.    In 1999, all practitioner records that were maintained on a mainframe database were imported into OED Information System (OEDIS). In order to import them, an identification (ID) number had to be created in addition to the registration number.  For those practitioners, the

1

Exhibit 31

original ID number created was 9000NNNNN, where NNNNN corresponded to their registration number.

b. In December 2006, all registered patent agents and attorneys who had been imported in 1999 were reassigned a new ID number for consistency with the ID numbers of all other entities in OEDIS. This was done by changing the 9000NNNNN number to a five-digit number. These numbers were assigned by the system in order to assure each was unique.

c. The purpose of this change was to prepare for a new feature of the OEDIS Customer Interface, which would allow practitioners to sign in on line and self manage their address and e-mail address information among other features. Because the sign in for this system was the practitioner's ID number, the use of the 9000NNNNN was a disadvantage in having both a longer number that might lead to error and the possibility of someone accessing someone else's record (because the publicly know registration number would be part of the sign in name).

d. The reassigned ID numbers assigned are unique numbers and communicated only to the individual practitioner assigned the number.

e. Cornell D.M. Judge Cornish former ID number was 900019420.

f. Cornell D.M. Judge Cornish's ID number was changed from 900019240 to 41361.

g. The change of Cornell D M Judge Cornish's ID number occurred on December 22, 2006 at about 7:30 a.m.

h. Mr. Cornish is the only person assigned to ID number 41361.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statement is true and accurate to the best of my knowledge and belief.

Christine M. Nucker
Office of Enrollment and Discipline
U.S. Patent and Trademark Office

10/10/2007
date

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Cornell D.M. Judge Cornish      )
                              )
    Plaintiff             )
                              )
     v.               )
                              )    Case: 1:07-CV-0719
Jon Dudas, et alia         )    RWR
                              )
    Defendants        )
                              )

### Declaration of William J. Griffin

     I, William J. Griffin, an employee of the United States Patent and Trademark Office ("USPTO") make the following statement under penalty of perjury in connection with the above captioned litigation:

     1.    I am over the age of 18 years.

     2.    I am currently employed as a Staff Attorney by the Office of Enrollment and Discipline (OED) at the USPTO, 600 Dulany Street, Alexandria, Virginia.

     3.    I have been registered to practice before the U.S. Patent and Trademark Office since 1984, and have been an active member of the Virginia State Bar since 1989.

     4.    I was engaged in the private practice of patent law from 1984 until I joined the USPTO in 1999 as an OED Staff Attorney. My registration to practice in patent cases currently is inactive due to my employment at the USPTO.

     5.    Although my job responsibilities as a Staff Attorney at OED have evolved over the years, they may be classified into a number of general subject areas:

          a.    With regard to registration of individuals to practice before the USPTO, the subject areas include: development and administration of the registration examination; evaluation of the technical and scientific qualifications of individuals seeking registration; moral character

1

Exhibit 32

investigations; consideration of requests for reinstatement of individuals following removal from the register; and consideration of other miscellaneous enrollment petitions.

b. Aside from my duties in connection with OED's enrollment function, I am also involved in the investigation of disciplinary complaints; the development of information technology systems utilized by OED; and assisting in various administrative functions at OED.

6. In connection with my current position, I have the following knowledge concerning the change in the identification number for Cornell D.M. Judge Cornish:

a. I received and reviewed Mr. Cornish's January 26, 2005, submission regarding his request for reinstatement to the USPTO register.

b. Based on my review of his submission, it was my good-faith determination that Mr. Cornish did not present sufficient objective evidence to show that he continued to possess the legal qualifications necessary to render patent applicants valuable service.

c. I sent the attached March 22, 2005, letter to Mr. Cornish.

d. The first sentence in the last paragraph on page two of my March 22, 2005, letter inadvertently contains a double negative: ". . . not . . . insufficient . . . ." That sentence should read, "For the foregoing reasons, based on the current record, you have not presented *sufficient* evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

e. Mr. Cornish submitted volumes of paperwork to OED. To the best of my knowledge and belief, Mr. Cornish did not submit additional, substantive information about his qualifications in response to my March 22, 2005, letter prior to applying for the July 2005 patent examination.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statement is true and accurate to the best of my knowledge and belief.

William J. Griffin, Attorney          10/9/2007
Office of Enrollment and Discipline      date
U.S. Patent and Trademark Office

2



**UNITED STATES PATENT AND TRADEMARK OFFICE**

OFFICE OF ENROLLMENT AND DISCIPLINE

March 22, 2005

Mr. Cornell D.M. Judge Cornish
1101 New Hampshire Avenue, NW
Suite 301
Washington, DC  20037-1502

PERSONAL AND CONFIDENTIAL

Dear Mr. Cornish:

The Office of Enrollment and Discipline has carefully reviewed your request for
reinstatement to the roster of agents and attorneys authorized to represent patent
applicants before the United States Patent and Trademark Office.  As will be discussed
below in greater detail, OED has concluded that you have not established that
reinstatement would be appropriate.  In particular, you have not established to the
satisfaction of the Director of Enrollment and Discipline that you continue to possess the
legal qualifications necessary to render applicants for patent valuable service.  Thus, your
request for reinstatement without retaking the registration examination is denied.

By statute, the Commissioner of Patents and Trademarks may require a patent practitioner
to show that he or she "possessed of the necessary qualifications to render applicants or
other persons valuable service, advice, and assistance in the presentation or prosecution
of their applications or other business before the Office." *35 U.S.C. § 2(b)(2)(d)*.  The
primary responsibility for protection of the public from unqualified practitioners before
the Patent and Trademark Office ("PTO") rests with the Director of the USPTO. *Leeds v.*
*Mosbacher*, 732 F. Supp. 198, 200 (D.D.C. 1990); *Gager v. Ladd*, 212 F. Supp. 671, 673
(D.D.C. 1963); *see also Premysler v. Lehman*, 71 F.3d 387, 389 (Fed. Cir. 1995) ("Title
35 vests the [USPTO Director] ... with the responsibility to protect PTO proceedings from
unqualified practitioners.").

Pursuant to your request, you were removed from the roster of registered patent attorneys
and agents in April 1996, after you were placed on disability inactive status with the
Maryland State bar.  The District of Columbia and New York State bars subsequently
took reciprocal action against your licenses in those respective jurisdictions.  There was a
pending disciplinary complaint against you at the time you were removed from the
USPTO roster.  Your request to be removed from the USPTO roster was granted with an

Cornell D.M. Judge Cornish                                                    Page 2

explanation "you may be reinstated subject to satisfying the requirements for registration set forth in 37 CFR § 10.7 and payment of the fee set forth in 37 CFR § 1.21(a)(3)."

Under USPTO policy, if more than five years has elapsed from the time an individual is removed from the register, or where other circumstances indicate that the individual may no longer be qualified for registration, it is necessary for the individual to again meet the requirements under 37 CFR §10.7. *1064 O.G. 12* (March 11, 1986) (copy enclosed). The provisions of 37 CFR § 10.7 have now been superceded by 37 CFR § 11.7. The provisions of 37 CFR §10.7 and 11.7 each provide that, with limited exceptions, an individual must take and pass the registration examination. However, former practitioners who otherwise show that they continue to possess the legal qualifications necessary to render applicants for patent valuable service despite the lapse of five or more years will not be required to take the examination. *1064 O.G. 12.* The legal qualifications include knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, and familiarity with current patent practice as well as patent statutes and regulations. *Id.*

On January 25, 2005, OED informed you that since it had been over five years since you were registered to practice, to be reinstated it would be necessary for you to either retake the registration examination or otherwise show to the satisfaction of the Director of Enrollment and Discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. You subsequently filed an application for reinstatement along with a supporting affidavit indicating, *inter alia*, that since 1995 you have continued to take continuing education classes, attended annual conferences of intellectual property associations, subscribed to publications of intellectual property associations, regularly reviewed USPQ weekly advance sheets, regularly been involved in intellectual property legal research, and a number of other activities. The statement in the affidavit, however, are conclusory statements made without the support of any objective evidence, and therefore are entitled to little weight.

For the foregoing reasons, based on the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service. Therefore, your request for reinstatement is denied. However, you may demonstrate possession of necessary legal qualifications by taking and passing the registration examination. Moreover, this denial is without prejudice against supplementation of the present record.

Cornell D.M. Judge Cornish                                                    Page 3

The present request for reinstatement provides no details concerning the actions taken in Maryland, the District of Columbia, and New York concerning your law licenses in those respective states.  In any further request for reinstatement to the USPTO roster, you should fully detail the current status of your license in each of those states and provide copies of associated documentation, such as any request for reinstatement filed with those jurisdictions.

Very truly yours,

William J. Griffin, Staff Attorney
Office of Enrollment and Discipline

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Cornell D.M. Judge Cornish     )
                              )
      Plaintiff             )
                              )
        v.                 )      Case:  1:07-CV-0719
                              )      RWR
Jon Dudas, et alia         )
                              )
      Defendants       )
                              )

### Declaration of Harry I. Moatz

I, Harry I. Moatz, an employee of the United States Patent and Trademark Office ("USPTO") make the following statement under penalty of perjury in connection with the above captioned litigation:

1.    I am over the age of 18 years.

2.    I am an active member in good standing of the bars of the Commonwealth of Virginia and the District of Columbia and am currently employed as the Director of the Office of Enrollment and Discipline (OED) at the United States Patent and Trademark Office (USPTO), 600 Dulany Street, Alexandria, Virginia.

3.    I have been employed by the USPTO since 1965, initially as a patent Examiner and Primary Patent Examiner (1965 to 1976), then as an Assistant Solicitor in the Office of the Solicitor (1976 to 1984), then as a Patent Attorney in the OED (1984 to 1999), and as OED Director (1999 to present).

4.    OED carries out the USPTO's role in protecting the public from unethical and incompetent patent practitioners:

Exhibit 33

    a.  OED oversees persons who practice or who seek to practice before the USPTO. In part, OED registers patent attorneys and agents; develops an examination that is administered each business day to determine if applicants for registration have the necessary knowledge of patent law and practice to assist applicants for patents; checks the technological training and moral character of potential patent practitioners; publishes the names of persons seeking registration before they are registered; maintains a public roster of attorneys and agents recognized to practice before the USPTO in patent cases; and investigates grievances alleging unethical conduct by registered patent attorneys and agents, as well as attorneys practicing before the USPTO in trademark cases.

    b.  OED will not register any individual to practice before the USPTO unless the individual has applied to the USPTO Director in writing and has established to the satisfaction of the OED Director that he or she: 1) possesses good moral character and reputation; 2) possesses the legal, scientific, and technical qualifications necessary for him or her to render applicants valuable service; and 3) is competent to advise and assist patent applicants in the presentation and prosecution of their applications before the USPTO.

5.    OED did not investigate the former client's charges against Mr. Cornish because Mr. Cornish informed OED that he was ceasing to practice before the USPTO and, thereafter, OED removed Mr. Cornish's name from the USPTO register. I so informed the former client of these facts by letter dated June 15, 2000. (See attached June 15, 2000, letter to former client, whose name and address had been redacted).

6.    It has been OED policy that a person will be required to meet the USPTO qualifications where such person seeks reinstatement to the USPTO register five or more years after his or her name was removed therefrom.

7.    Mr. Cornish did not pass the July 11, 2005, patent exam. His score was 46%. A passing grade was 70%.

8.    Mr. Cornish did not pass the July 12, 2006, patent exam. His score was 52%. A passing grade was 70%.

9.    Mr. Cornish did not pass the July 16 and 17, 2007, patent exam.  His score was 48%.  A passing grade was 70%.

10.    In connection with the July 2007 patent examination, I authorized the following accommodations for Mr. Cornish: a) the examination and answer sheets appeared in 14-point font, b) magnifiers for reading the MPEP, c) additional lighting, d) a testing room separate from the main testing room, e) four hours (instead of three hours) per examination session, f) the first session administered on July 16, 2007, and g) the second session administered on July 17, 2007.

11.    Although Plaintiff has not applied to take the patent examination again, I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him for the July 2007 examination.

12.    Exhibits 1 through 30, inclusive, accompanying Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, are true copies of documents prepared or obtained by OED in the performance of its day-to-day business operations.   The list of such exhibits is attached hereto.


Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statement is true and accurate to the best of my knowledge and belief.


Harry I. Moatz, Director
Office of Enrollment and Discipline
U.S. Patent and Trademark Office

October 9, 2007
date

## List of Exhibits

1. April 28, 1958, USPTO examination results
2. August 6, 1957, USPTO examination results
3. November 7, 2005, complaint against Plaintiff filed with OED
4. November 21, 1995, Consent Decree
5. December 4, 1995, Order of the Maryland Court of Appeals suspending Plaintiff
6. December 6, 1995, letter from the Attorney Grievance Commission of Maryland
7. February 8, 1996, letter from Plaintiff to USPTO
8. March 4, 1996, letter from OED Director Bovard to Plaintiff
9. February 2, 2006, Order and Decision of the New York Supreme Court noting the
   April 13, 1996, Order from the U.S. District Court for the Southern District of
   New York suspending Plaintiff
10. March 27, 1997, the District of Columbia Court of Appeals suspending Plaintiff
11. August 17, 1998, the Supreme Court of New York suspending Plaintiff
12. January 25, 2005, Data Sheet – Register of Patent Attorneys and Agents
13. January 25, 2005, from OED acknowledging receipt of Plaintiff's request
    for reinstatement
14. March 11, 1986, *Official Gazette* notice
15. January 26, 2005, submission by Plaintiff
16. January 31, 2005, letter from OED acknowledging receipt of Plaintiff's submission
17. March 22, 2005, OED determination letter
18. March 26, 2005, application for the July 2005 patent examination
19. April 21, 2005, official notice of admission to the July 11, 2005 examination
20. August 15, 2005, USPTO examination results
21. March 21, 2006, application for the July 2006 patent examination.
22. March 21, 2006, letter supporting request for reasonable accommodation
22A March 31, 2006, letter supporting request for reasonable accommodation
22B April 8, 2006, letter supporting request for reasonable accommodation
23. May 24, 2006, letter from OED granting, in part, request for accommodation
24. June 6, 2006, letter providing additional information supporting request for
    reasonable accommodation
25. Undated letter from OED denying Plaintiff's request for additional time and separate
    room
26. August 16, 2006, USPTO examination results
27. July 12, 2006, Petition
28. November 30, 2006, letter from OED to Plaintiff
28A. December 12, 2006, note from Dr. Bianco
29. May 15, 2007, letter granting accommodations to Plaintiff
30. August 22, 2007, USPTO examination results

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, DC 20231
www.uspto.gov

June 15, 2000

Dear Mr.

The record of your complaint against Cornell Cornish was only recently brought to my attention.

This letter is to inform you that in 1996, Mr. Cornish communicated to the Office of Enrollment and Discipline (OED) that he was ceasing to practice before the U.S. Patent and Trademark Office, and OED thereafter removed Mr. Cornish's name from the roster of attorneys and agents. Accordingly, OED could not further consideration of your complaint at the time. However, OED will consider the complaint if and when Mr. Cornish applies to be reinstated.

This office apologizes for not communicating with you sooner.

Sincerely,

Harry I. Moatz
Director of Enrollment and Discipline

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,  )
                             )
           Plaintiff,        )
                             )
      v.                     ) Civil Action No. 07-0719 RWR
                             )
JON DUDAS, et al.,           )
                             )
           Defendants.       )
_____  )

DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure, Defendants move to dismiss Plaintiff's

complaint, and answer the petition pursuant to Local Civil Rule

83.7.  In the alternative, Defendants move for summary judgment

in their favor, pursuant to Fed. R. Civ. P. 56(b).

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,      )
                                 )
            Plaintiff,           )
                                 )
    v.                           )  Civil Action No. 07-0719 RWR
                                 )
JON DUDAS, <u>et</u> <u>al</u>.,              )
                                 )
            Defendants.          )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Although Plaintiff's complaint is unclear, it appears that
he challenges the actions of the United States Patent and
Trademark Office ("USPTO"), Office of Enrollment and Discipline
("OED"), in connection with Plaintiff's request for reinstatement
to the USPTO register after a nearly nine-year hiatus.  Plaintiff
seeks legal redress for three alleged wrongdoings.  First, it
seems that Plaintiff is challenging OED's March 22, 2005,
determination that he did not demonstrate to the satisfaction of
OED Director that he still possessed the requisite qualifications
be to placed back on the USPTO's register of patent practitioners
without having to pass the USPTO patent examination (hereinafter
"the reinstatement claim").  Second, in connection with the
reinstatement claim, Plaintiff asserts that USPTO is preventing
him from holding himself out (<u>e.g.</u>, advertising) as a registered
patent attorney.  Third, it appears that Plaintiff is trying to

assert that OED did not grant him certain reasonable accommodations in connection with the USPTO patent examination in violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("the discrimination claim").

The Court should dismiss Plaintiff's reinstatement claim under Fed. R. Civ. P. 12(b)(1), because Plaintiff did not timely file his complaint and did not exhaust his administrative remedies prior to filing his complaint.  Likewise, the Court should also dismiss Plaintiff's discrimination claim under Fed. R. Civ. P. 12(b)(6), because Plaintiff has not pled any facts establishing that he is a disabled person for purposes of the Rehabilitation Act.  Alternatively, evidence regarding the discrimination claim shows that, as of the last time that Plaintiff took the Patent exam, OED had granted Plaintiff <u>all</u> of the accommodations that he requested.  Therefore, the Court should grant summary judgment pursuant to Fed. R. Civ. P. 56(b) in Defendants' favor on that claim.

## I. <u>Introduction</u>

In January 2005, Plaintiff submitted a request for reinstatement to OED.  In response, OED offered Plaintiff the option of submitting documentation to establish his fitness to practice patent law before the USPTO in lieu of taking and passing the patent examination.  Plaintiff submitted some

information, but, on March 22, 2005, OED determined that the submission was not sufficient to establish that Plaintiff still possessed the necessary qualifications to render valuable patent service, advice, and assistance to the public (i.e., clients). Notwithstanding its determination, OED informed Plaintiff that he could submit additional information regarding his fitness to practice patent law.

Plaintiff sat for the patent examination in July 2005, July 2006, and July 2007.  He did not come close to attaining a passing score on any of those occasions.  Plaintiff asked for accommodations for the regarding the 2006 and the 2007 examinations.  OED granted, in part, Plaintiff's requests for the 2006 examination because he did not provide sufficient medical documentation to support all of the requested accommodations.  OED, however, provided Plaintiff with all of the reasonable accommodations that he requested for the 2007 examination after Plaintiff submitted additional medical documentation.

## II. Background

The USPTO is responsible for issuing patents.  35 U.S.C. § 2(a)(1).  Applying for a patent requires a thorough understanding of the patent laws and the regulations which govern the procedures before the USPTO.  In light of the breath and complexity of the issues arising during the application process,

patent applicants frequently retain the services of a trained patent attorney or agent to prepare and prosecute the application on their behalf.

A. Statutory Scheme for Registration before the USPTO

Congress has authorized the USPTO to govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties having business before the USPTO. See 35 U.S.C. § 2(b)(2)(D).[1]  In order to protect the public from unethical and incompetent patent practitioners, Congress empowered the USPTO to require applicants seeking recognition to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render valuable service, advice, and assistance.  See id.; Bender v. Dudas, 490 F.3d, 1361, 1363 (Fed. Cir. 2007) ("The USPTO has recognized the

---

[1]  This section provides that the United States Patent and Trademark Office:

> may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation and are possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office

35 U.S.C. § 2(b)(2)(D).

- 4 -

need to regulate those who practice before it.  To this end, the USPTO has determined minimum levels of legal competence and has rigorously administered testing of those who seek to become registered patent agents and attorneys") (acronym amended for consistency).

B. <u>Regulatory Framework for Registration</u>

In accordance with this express authority, the USPTO promulgated regulations setting minimum standards concerning who may be registered as a patent attorney and  permitted to represent others before the USPTO in patent cases.[2]  <u>See</u> 37 C.F.R. § 11.10(a).  <u>See also</u> 35 U.S.C. § 33 ("Whoever, not being recognized to practice before the Patent and Trademark Office, holds himself out or permits himself to be held out as so recognized, or as being qualified to prepare or prosecute applications for patent, shall be fined not more than $1,000 for each offense").

The applicable Rule that provides for review in this Court is as follows:

> A person refused recognition to practice or suspended or excluded from practice before the Patent Office may

---

[2] The registration and testing requirements discussed in this brief do not apply to attorneys who represent others having *trademark* business before the USPTO.  This is relevant because, at times, it appears that Plaintiff confuses his ability to practice trademark law with his ability to practice patent law before the USPTO.

file a petition in this court against the Commissioner of Patents for review of such action within 30 days after the date of the order recording the Commissioner's action.  The Commissioner shall answer the petition within 20 days after receiving service of the summons.  Within 11 days after filing of the answer, the petitioner shall file a certified copy of the record and proceedings before the Patent Office, which shall constitute the sole basis for the court's review.

Local Civil Rule 83.7.

1. <u>Requirements for Registration</u>

Individuals seeking registration must establish that they:

a)  possess good moral character and reputation;

b)  possess the legal, scientific, and technical qualifications necessary to render applicants valuable service; and

c)  are competent to advise and assist patent applicants in the presentation and prosecution of their applications before the USPTO.

<u>See</u> Exhibit 33[3] (Affidavit of Harry I. Moatz, ¶ 4.b); 37 C.F.R. §

11.7(a).  Individuals must take and pass the registration

examination to prove they are competent.  37 C.F.R. §

11.7(b)(1)(ii).

2. <u>Requirements for Reinstatement</u>

An individual may request to have his or her name removed

from the USPTO register.  However, if an individual seeks

_____

[3]  The exhibits referred to herein are those previously provided to the Court under seal in response to Plaintiff's request for a preliminary injunction.

- 6 -

reinstatement more that five years after his or her name was removed, then the individual must again meet the requirements of 37 C.F.R. § 11.7, including the requirments to take and pass the registration examination.  1064 Official Gazette 12 (March 11, 1986) (attached hereto as Exhibit 14).  If these requirements are satisfied, then the individual will be reinstated.

   3. Requirements for Pro Se Patent
      and Trademark Applicants

An applicant for a patent or trademark does not have to hire a registered individual to prosecute his or her application. Rather, an applicant may represent himself or herself before the USPTO.  See, e.g., 37 C.F.R. § 1.31.[4]

C. Plaintiff's Registration History Before the USPTO

   1. Plaintiff's Initial Registration with the USPTO

Plaintiff applied for and passed the April 28, 1958, USPTO examination and was subsequently registered to practice before the USPTO.  See Exhibit 1.[5]  USPTO issued Plaintiff registration number 19,240.

   2. Client Grievance Against Plaintiff

On November 7, 2005, one of Plaintiff's former clients filed a grievance with OED against Plaintiff.  See Exhibit 3.  The former client alleged that he had paid Plaintiff to prepare and

_____

[4] It appears from the complaint that Plaintiff mistakenly believes he cannot prosecute his own patent and trademark cases.

[5] Plaintiff did not initially attain a passing grade on the USPTO examination administered on August 6, 1957.  See Exhibit 2.

- 7 -

file a utility patent "continuation in part" application but that
Plaintiff failed to write the application in a timely manner and
eventually filed a *provisional* patent application without
obtaining the client's consent or signature.  See Exhibit 3.
The former client also alleged that Plaintiff had named himself
as a co-inventor on the filed application and then lied to the
client by saying doing so would not bestow any rights to
Plaintiff.  See Exhibit 3.

### 3. Plaintiff's Voluntary Removal
from Maryland Bar Register

At or about the time the grievance was filed against
Plaintiff with OED, a complaint was filed against Plaintiff with
the Maryland State Bar.  The Maryland complaint also involved a
patent matter.  See Exhibit 4 (November 21, 1995, Consent Decree,
¶ 2).

As a result of the filing of the Maryland complaint,
Plaintiff and the Attorney Grievance Commission of Maryland
entered into a consent decree on November 21, 1995, permitting
Plaintiff to be placed in an "inactive status" of the Maryland
Bar.  See Exhibit 4.  In part, the consent decree notes
Plaintiff's admission that "he does not actively engage in
practice, occasionally does some 'pro bono' work, but that he
suffers lasting affects from open heart surgery in 1982 and he go
to rehabilitation every day and, rests for some time thereafter.
In addition he participates in Al Anon attending three (3) or

four (4) meetings a week as well as meeting with a sponsor." <u>See</u> Exhibit 4, ¶ 3.  The decree also notes that "at the present time, he is unable and no desire to cope with the demands of the practice of law and agrees that it is in his best interest to be placed on inactive status." <u>See</u> Exhibit 4, ¶ 5.

On December 4, 1995, the Maryland Court of Appeals ordered that Plaintiff be placed on inactive status and his name removed from its register of attorneys (<u>see</u> Exhibit 5), and, on December 6, 1995, the Attorney Grievance Commission of Maryland notified USPTO of Plaintiff's removal from Maryland's attorney register. <u>See</u> Exhibit 6.[6]

4. <u>Plaintiff's Voluntary Removal from USPTO Register</u>

On February 8, 1996, Plaintiff sent a letter to USPTO stating that he had voluntarily changed his status in Maryland from active to inactive and that he was "ceasing the practice before the United States Patent and Trademark Office". <u>See</u> Exhibit 7.  In response, former OED Director Karen L. Bovard sent a letter to Plaintiff on March 4, 1996, stating that the USPTO was "treating [his February 8 letter] as a request to have [his] name removed from the register." <u>See</u> Exhibit 8.  Director Bovard's March 4 letter also informed Plaintiff that OED had received a letter from the Maryland Attorney Grievance Committee containing a copy of its December 4, 1995 order as well as a

---

[6] On October 3, 2003, the Maryland Court of Appeals approved Plaintiff's petition for reinstatement to the Maryland Bar.

grievance from a former client.  The Director's letter explained to Plaintiff:

> *It is our intent to hold in abeyance any*
> *investigation with respect to [the former*
> *client's] complaint, as well as any change of*
> *status action based on the Maryland Court order,*
> *unless you inform us in writing within thirty (30)*
> *days from the date of this letter that it is not*
> *your intent to have your name removed from the*
> *register.*

Exhibit 8 (emphasis added).  Director Bovard's March 4, 1996 letter also informed Plaintiff as follows:

> *If your name is removed from the register, you may*
> *be reinstated subject to satisfying the*
> *requirements for registration set forth in 37*
> *C.F.R. § 10.7 and payment of the fee set forth in*
> *37 C.F.R. § 1.21(a)(3).*

Exhibit 8 (emphasis added).  After sending the letter and allowing Plaintiff sufficient time to respond, OED Director Bovard removed Plaintiff's name from the USPTO register.[7] Moreover, because Plaintiff acquiesced to the removal of his name from the register, OED did not investigate the former client's charges against him.  See Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 5).

    5. Plaintiff's Suspension from U.S. District Court

On April 13, 1996, the U.S. District Court for the Southern District of New York suspended Plaintiff based on the action against him in Maryland.  See Exhibit 9 (February

---

[7] Plaintiff's name was removed from USPTO's register on or about August 28, 1996.  See Exhibit 8.

2, 2006 Order and Decision of the New York Supreme Court describing the procedural history of Plaintiff's suspension).

### 6. Plaintiff's Suspension from the D.C. Bar

On April 15, 1996, the District of Columbia Court of Appeals temporarily suspended Plaintiff from the practice of law based on the Maryland action pending a recommendation from the D.C. Board of Professional Responsibility.  See Exhibit 10 (March 27, 1997, the District of Columbia Court of Appeals describing procedural history of Plaintiff's suspension).  The board subsequently recommended that Plaintiff be suspended indefinitely with his reinstatement being conditioned upon a showing of fitness, and, on March 27, 1997, the District of Columbia Court of Appeals suspended Plaintiff indefinitely from the practice of law in the District of Columbia *nunc pro tunc* to July 29, 1996.  See Exhibit 10.[8]

### 7. Plaintiff's Suspension from the New York Bar

On August 17, 1998, the Supreme Court of New York suspended Plaintiff for five years commencing on September 17, 1998, based on the actions of the Maryland Bar.  See Exhibit 11.  The court order granted Plaintiff leave to file for reinstatement upon furnishing satisfactory proof that he refrained from practicing or attempting to practice law, has

---

[8] On November 16, 2000, Plaintiff was reinstated to the D.C. Bar.

fully complied with the terms and conditions governing suspended attorneys, he has otherwise properly conducted himself, and that he has been reinstated to the practice of law in Maryland.  See Exhibit 11.[9]

The Supreme Court of New York also ordered that Plaintiff "desist and refrain from: 1) practicing law in any form, either as principal or agent, clerk or employee of another, 2) appearing as attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, 3) giving to another an opinion as to the law or its application or any advice in relation thereto, and 4) holding himself out in any way as an attorney and counselor-at law."  See Exhibit 11.

8.  The Request for Reinstatement
    to the USPTO Register

On or about January 25, 2005, Plaintiff sought reinstatement to the USPTO register by submitting a "Data Sheet B Register of Patent Attorneys and Agents" form. See Exhibit 12.  It has been long-standing USPTO policy that a practitioner will be required to meet the USPTO qualifications where such the practitioner seeks reinstatement to the register five or more years after his or her name was removed therefrom.  See Exhibit 13; Exhibit 14, Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 6).  Thus, by

_____

[9] On February 2, 2006, Plaintiff was reinstated to the New York State Bar.

- 12 -

letter dated January 25, 2005, OED acknowledged the request
for reinstatement and informed Plaintiff that, because it had
been over five years since he was registered, he must take
the patent registration examination or submit a showing to
the satisfaction of the OED Director that he continued to
possess the legal qualifications necessary to render valuable
service for applicants for patent.  See Exhibit 13.

By letter dated January 26, 2005, Plaintiff elected to
submit information regarding his legal qualifications.  See
Exhibit 15.  Plaintiff's letter described that, during the
prior eight year period, he continued to take continuing
legal education classes, attended annual conferences of
intellectual property associations, subscribed to
intellectual property publications, regularly reviewed U.S.
Patent Quarterly weekly advance sheets, and was involved in
intellectual property research and other activities.  See
Exhibit 15.  During most, if not all, of his hiatus,
Plaintiff did not engage in the practice of law because the
Supreme Court of New York had entered a "desist and refrain"
order preventing Plaintiff from practicing any form of law
before any type of forum for five years commencing in
September 1998.

OED Staff Attorney William J. Griffin reviewed
Plaintiff's submission.  See Exhibit 32 (Affidavit of William
J. Griffin, ¶ 6.a).  Based on his review of Plaintiff's

- 13 -

submission, Mr. Griffin made a good-faith determination that Plaintiff did not present sufficient objective evidence to show that he continued to possess the legal qualifications necessary to render patent applicants valuable service.  See Exhibit 32 (Affidavit of William J. Griffin, ¶ 6.b).

By letter dated March 22, 2005, Mr. Griffin informed Plaintiff that his submission was insufficient to establish that Plaintiff still possessed the requisite legal qualifications after his nearly nine-year gap in practicing before the PTO.  See Exhibit 17.[10]  Mr. Griffin's letter informed Plaintiff that the determination was "without prejudice" and invited Plaintiff to submit additional information to support his qualifications.  See Exhibit 17.

Plaintiff applied for the July 2005 patent examination prior to submitting additional, substantive information about his qualifications in response to Mr. Griffin's March 22, 2005, letter.  See Exhibit 32 (Affidavit of William J. Griffin, ¶ 4.e).

### 9. The July 2005 Patent Test

On March 26, 2005, Plaintiff submitted an application for the July 2005 patent examination, i.e., Form PTO-158. See Exhibit 18.  Plaintiff checked the box on the form

---

[10] The March 22, 2005, letter contains a proof-reading error, namely: that Plaintiff "has not presented insufficient evidence". See Exhibit 33, ¶ 4.d.

indicating "I am applying for reinstatement . . . for a change from inactive to active status." See Exhibit 18.

On April 21, 2005, OED sent Plaintiff notice of admission to the July 11, 2005 examination, see Exhibit 19, and, on July 11, 2005, Plaintiff sat for the patent examination.  On August 15, 2005, OED notified Plaintiff that he did not pass the examination.  Plaintiff received a score of 46%.  A score of 70% or higher is required to pass the examination.  See Exhibit 20; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 7).

### 10. Plaintiff's Request for Accommodations for July 2006 Patent Test

On March 21, 2006, Plaintiff submitted his application for the July 2006 patent examination. See Exhibit 21. Plaintiff's application packet also included a four-page request for a reasonable accommodation.  See Exhibit 22. Specifically, Plaintiff asked for the examination to be enlarged to 14-point font, for the test date to be changed, an examination room apart from the other test takers, and additional time to take the test.

In support of his request for larger print, Plaintiff provided OED a July 5, 2005, note from Plaintiff's optometrist, Dr. Richard S. Simon, explaining, "due to cataracts in both eyes, this patient would benefit from larger print material when reading."   See Exhibit 22.

Regarding his request for a separate examination room, Plaintiff argued that his taking the test with persons who are not disabled "might expose me to ridicule, or coerce me unwillingly to reveal confidential, difficult or private explanation concerning my certification or my medical history.  Such coercion would make the effect of the disability worse, or at least during the examination itself."  See Exhibit 22.  As for his request for additional time, Plaintiff only stated that such accommodations "would somewhat tend to lessen the coercion suffered."  See Exhibit 22.[11]

By letter dated May 24, 2006,[12] OED granted Plaintiff's request in part.  See Exhibit 23.  Based on the medical information provided, OED granted Plaintiff's request for 14-point font on the examination.  OED, however, denied his request for a different test date and a separate examination room because Plaintiff did not provide sufficient documentation supporting a disability entitling him to a

---

[11] On April 3, 2006, and April 10, 2006, OED received additional correspondence from Plaintiff repeating his request for reasonable accommodations.  See Exhibit 22A and Exhibit 22B.

[12] The letter was inadvertently dated "May 24, *2005*."  See Exhibit 25 (explaining erroneous year).

medical accommodation.[13]  OED's May 24 letter to Plaintiff explained its policy:

> *Supporting documentation, less than one year old, certifying the current severity of the disability and certifying that the accommodations requested are necessary for this disability must be sent by a licensed physician who has evaluated the condition.*

See Exhibit 23 (emphasis added).  OED provided Plaintiff the opportunity to submit such documentation by June 26, 2006. See Exhibit 23.

On June 6, 2006, Plaintiff submitted additional information in support of his request for separate examination room and additional time to take the test based on an alleged heart problem.  See Exhibit 24.  In his letter, Plaintiff argued that he should receive a second whole day to complete the examination and be permitted to take the exam in a private room because "it is obvious that an emergency heart attack possibility is real."  See Exhibit 24.  Plaintiff believed that he might suffer a heart attack during the examination and, absent such accommodations, "the large number of test takers would undoubtedly suffer from the confusion of an emergency, and the one evacuated to a hospital would also suffer from being forced to take a test in a large room filled with many test takers."  See Exhibit

---

[13] OED's May 24, 2006 letter did not expressly address Plaintiff's request for additional time.  It appears, however, that the implied denial was tied to the denial of the separate testing date.

- 17 -

24.  Plaintiff included a copy of his birth certificate and a
two-sentence letter dated from his cardiologist, Dr. George
Bren, stating, "Mr. Cornell D.M. Judge Cornish is under my
professional care for treatment of coronary heart disease."
See Exhibit 24.  "He had four-vessel coronary bypass surgery
in 1982, and had a stent placed in one of his bypass grafts
in 2003."  See Exhibit 24.

OED considered the information provided in Plaintiff's
June 6, 2006 letter, but denied his request for additional
time and a separate room on the basis that medical
documentation did not state that Plaintiff's medical
condition warranted the accommodations requested.  See
Exhibit 25.[14]

11. The July 12, 2006 Petition

On the same date Plaintiff sat for the July 12, 2006
patent examination, he filed a petition with USPTO
challenging: 1) OED's March 22, 2005, determination that
Plaintiff had not demonstrated that he still possessed the
requisite legal qualifications for practicing before the PTO
and 2) OED's denial of reasonable accommodations in
connection with the July 2005 patent examination.  See
Exhibit 27.  Plaintiff's petition included a June 28, 2006

---

[14]  Exhibit 25 is an *undated* letter from OED to Plaintiff, but it
appears to have been sent in June 2006, i.e., after Plaintiff's
June 6, 2006 letter and prior to the July 12, 2006 examination
date.

letter from Dr. Bren stating, "He wanted me to inform the individuals who supervise the examination that he is 77 years old and that he would like to be permitted to have additional time allotted for the completion of the examination in view of his age and health issues related in part to his age." See Exhibit 27.

12. The July 2006 Patent Test

Plaintiff took the patent examination on July 12, 2006, with the benefit of 14-point font printing on the examination.  By letter dated August 16, 2006, OED informed Plaintiff that he did not pass the examination.  Plaintiff's score was 52%.  See Exhibit 26; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 8)

13. OED's Response to Plaintiff's
       July 12, 2006, Petition and Related Materials

On or about September 13, 2006, Plaintiff submitted additional materials in connection with his July 12, 2006, petition including an application to sit for the next patent examination.  By letter dated November 30, 2006, OED offered the following accommodations to Plaintiff:

1) the examination and answer sheets will be appear in 14-point font;

2) several magnifiers for reading the Manual of Patent Examining Procedure (MPEP) will be provided;

3) a desk lamp for additional lighting will be provided;

4) permission for Plaintiff to bring his own
magnifying device; and

5) a mutually convenient date on or before January
31, 2007, to take the test.

Exhibit 28 at 3.

Regarding Plaintiff's request for a private examining
room, OED informed Plaintiff that, although his request for a
separate examination room was not supported, the issue was
moot because he would be the only person taking the
examination.  Id.  As to Plaintiff's request for additional
time, OED informed Plaintiff that the additional medical
documentation provided (i.e., the June 28, 2006, letter from
Dr. Bren) was not sufficient as it merely repeated
Plaintiff's desire to have additional time.  OED's November
30 letter, however, again identified the type of
documentation required to support a request for an
accommodation, i.e., "Supporting documentation, less than one
year old, certifying the current severity of the disability
and certifying that the accommodations requested are
necessary for this disability must be sent by a licensed
physician to who has evaluated the condition."  See Exhibit 28
at 3.  Plaintiff did not arrange to take the examination
prior to January 31, 2007.

### 14. Granting All of Plaintiff's Requests for the 2007 Patent Examination

On or about December 13, 2006, Plaintiff submitted additional medical information to support his request for accommodations, namely: a December 12, 2006, note from urologist, Dr. Fernando Bianco, M.D.  See Exhibit 28A.  Dr. Bianco's note explained that the Plaintiff had a prostate condition that required frequent visits to the restroom.  See Exhibit 28A.

Plaintiff purportedly required frequent bathroom breaks. Thus, OED provided him with extra time to take the examination, namely four hours per session instead of three, and the opportunity to take the examination over two days instead of one.  (Affidavit of Harry I. Moatz, ¶ 10).  Also, OED believed that Plaintiff might be disturbed when the regular, three-hour session ended for the other examinees. Thus, OED provided Plaintiff a room separate from the main examination room. (Affidavit of Harry I. Moatz, ¶ 10).

Thereafter, as mentioned, Plaintiff submitted an application for the July 2007 patent examination.[15]  In the end, the parties agreed that Plaintiff would sit for the 2007

---

[15] Given that USPTO had offered Plaintiff the opportunity to take the examination prior to January 31, 2007, without cost, it refunded Plaintiff's $490 examination and application fee that accompanied his 2007 application package.  See Exhibit 29.

without cost and be provided with the following

accommodations:

> 1) the examination and answer sheets will be appear
> in 14-point font;
>
> 2) magnifiers for reading the MPEP will be
> provided;
>
> 3) additional lighting;
>
> 4) a testing room separate from the main testing
> room; and
>
> 5) additional time to take the exam as follows:
>     a) four hours (instead of three hours)
>     per examination session;
>     b) the first session administered on July
>     16, 2007; and
>     c) the second session administered on
>     July 17, 2007.

See Exhibit 29.  In short, OED provided all of the

accommodations that Plaintiff requested in connection with

the July 2007 patent examination.  Id.

> 15. Change in Plaintiff's Identification Number[16]

In 1999, OED moved its database onto the OED Information

System (OEDIS).  To accomplish that switch, OED assigned new

identification numbers to practitioners who records were on

the old database.  The new identification number was "9000"

followed by the practitioner's registration number.  Thus, in

---

[16] It appears from the complaint that Plaintiff mistakenly
believes that OED did not provide him with *his* test score but,
rather, the test score of another applicant.  Presumably
Plaintiff's confusion is based on the change of his registration
number from 900019240 to 41361.  See Exhibit 31, ¶ 4.

- 22 -

1999, Plaintiff's identification number became 900019240.

See Exhibit 31 (Affidavit of Christine M. Nucker).

On December 22, 2006, OED issued new identification numbers to registered patent agents and attorney who had been imported to OEDIS in 1999.  The former "9000" prefaced identification number was changed to a five-digit number. Thus, on December 20, 1996, Plaintiff's identification number changed from 900019240 to 41361.  See Exhibit 31 (Affidavit of Christine M. Nucker).

### 16. OED August 22, 2007 Letter and Filing of Complaint

Plaintiff sat for the patent examination on July 16 and 17, 2007, with the aforementioned numerous accommodations. However, by letter dated August 22, 2007, which identified Plaintiff using his new identification number, OED informed Plaintiff that he did not pass the examination.  Plaintiff's score was 48%.  See Exhibit 30; Exhibit 31; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 9).

On September 26, 2007, Plaintiff filed the instant action and requested a preliminary injunction.

### III. Legal Standards

#### A. Legal Standards for Motion to Dismiss

##### 1. Lack of Subject Matter Jurisdiction

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the

plaintiff bears the burden of establishing that the court has subject-matter jurisdiction.  Freeman v. Fallin, 254 F.Supp.2d 52, 55-56 (D.D.C. 2003) (citing Tremel v. Bierman & Geesing, L.L.C., 2003 WL 721911, at 2 (D.D.C. 2003) and Rasul v. Bush, 215 F.Supp.2d 55, 61 (D.D.C. 2002)); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction").  The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  Natural Resources Defense Council v. Johnson, 422 F.Supp.2d 105, 109-110 (D.D.C. 2006) (citing Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); Hopkins v. Women's Division, 238 F.Supp.2d 174 (D.D.C. 2002); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13 (D.D.C. 2001)).

And, in spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.  Id. (citing  Am. Farm Bureau v. EPA, 121 F.Supp.2d 84, 90 (D.D.C. 2000); Pitney Bowes, Inc. v. United States Postal Serv., 27 F.Supp.2d 15, 18 (D.D.C. 1998)).

Moreover, the Court is not limited to the allegations contained in the complaint.  Id. (citing Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987)).  Instead, to determine whether it has jurisdiction over the claim, the Court may consider materials outside the pleadings.  Id. (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)). Hence, where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment. See Vanover v. Hantman, 77 F.Supp.2d 91, 98 (D.D.C. 1999), aff'd mem. No. 01-5032 (April 17, 2002).

    2. Failure to State a Claim upon which Relief Can be Granted

    In Bell Atlantic v. Twombly, ____ U.S. ____, 127 S.Ct. 1955 (2007), the Supreme Court recently refocused the analysis of when a plaintiff has alleged facts that can withstand a motion to dismiss and clarified the standards for evaluating whether a

complaint satisfies the general rules of pleadings pursuant to
Fed. R. Civ. P. 8.  In <u>Twombly</u>, the Court held that "plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will
not do," <u>id.</u> at 1964-65; that "[f]actual allegations must be
enough to raise a right to relief above the speculative level,, "
<u>id.</u>; and that a plaintiff must make "a 'showing,' rather than a
blanket assertion, of entitlement to relief," <u>id.</u> at 1965, n.3.
In so holding, the Court rejected a literal reading of the
Court's earlier statement in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46
(1957) that "a complaint should not be dismissed
. . . unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him
to relief."  The Court explained that this "phrase is best
forgotten as an incomplete, negative gloss on an accepted
pleading standard." <u>Id.</u> at 1969.  In addition, the Court
stressed that "[i]t is no answer to say that a claim just shy of
a plausible entitlement to relief can, if groundless, be weeded
out early in the discovery process through 'careful case
management.'" <u>Id.</u> at 1959.  Instead, the Court admonished, courts
should "tak[e] care to require allegations" that meet the Federal
Rules' threshold pleading requirements.  <u>Id.</u>

    On a motion to dismiss for failure to state a claim upon
which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6),

this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. See, e.g., Hopkins v. Women's Division, 238 F.Supp.2d at 178  (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. Id. (citing Kowal, 16 F.3d at 1276).  See also Mansfield v. Billington, 432 F.Supp.2d 64, 69 (D.D.C. 2006) ("While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations") (citing Warren v. Dist. of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004) and Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).  Nor is the court required to draw argumentative inferences in favor of the Plaintiff. See Yamaha Motor Corp. v. United States, 779 F.Supp. 610, 611 (D.D.C. 1991) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure, § 1350 at 218 (1990) and Norton v. Larney, 266 U.S. 511 (1925)).

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice,

and maters of public record.  Flynn v. Tiede Zoeller, 412

F.Supp.2d 46, 50 (D.D.C. 2006) (citing EEOC v. St. Francis Xavier

Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997) and Marshall

County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226, n.6.

(D.C. Cir. 1993)).  See also  Hopkins v. Women's Division, 238

F.Supp.2d at 178.

   B. Legal Standard for Motion for Summary Judgment

   When matters outside the pleadings are presented to and not

excluded by the court, and the court assures itself that such

treatment would be fair to both parties, a motion to dismiss may

be treated as one for summary judgment and disposed of as

provided in Fed. R. Civ. P. 56.  Id. (citing Americable Int'l

Inc. v. Dep't of the Navy, 129 F.3d 1271, 1274 n.5 (D.C. Cir.

1997) and Marshall County Health Care Auth., 988 F.2d at 1227)).

See also Judicial Watch, Inc. v. Clinton, 880 F.Supp. 1, 7

(D.D.C. 1995), aff'd 6 F.3d 1232 (D.C. Cir. 1996) (where court

considers evidence outside of the complaint, it is to treat a

motion to dismiss as one for summary judgment rather than a

motion to dismiss).

   Summary judgment is appropriate where there is no genuine

dispute as to any material fact and the moving party is entitled

to judgment as a matter of law.  See, e.g., Celotex Corp. v.

Catrett, 477 U.S. 317, 322-23 (1986).  Inferences drawn from the

facts must be viewed in the light most favorable to the party

opposing the motion.  See, e.g., Adickes v. S.H. Kress & Co., 398

U.S. 144, 157 (1970).

If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).  But if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," summary judgment may be granted.  Celotex, 477 U.S. at 322.  The existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant.  Powell v. National Bd. Of Medical Examiners, 364 F.3d 79, 84 (2d Cir. 2004) (citing Anderson, 477 U.S. at 252).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial."  Id. (citing Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).  If the nonmovant fails to meet this burden, summary judgment will be granted against it.  Id. (citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).

IV. <u>Legal Analyses</u>

A. <u>Reinstatement Claim</u>

1. <u>Dismissal of Reinstatement Claim</u>

Plaintiff has not shown that the facts warrant his reinstatement. First, Plaintiff failed to have the OED decision, which denied his request for reinstatement, reviewed by the USPTO Director. Second, even if the OED decision can be the subject of review, Plaintiff failed to file a timely petition. Finally, to the extent that the Court has jurisdiction, Mr. Moatz and Mr. Griffin should be dismissed as a party.

a. <u>Failure to Exhaust His Administrative Remedies</u>

Pursuant to 35 U.S.C. § 32, anyone refused recognition to practice before the USPTO by the USPTO Director may have that decision reviewed by the district court for the District of Columbia. Thus, before filing a petition with this Court, the USPTO Director must first issue a decision.

Challenges to OED decisions involve a two-step process. The first step is to petition to the OED Director; the second step is to seek review of the OED Director's decision from the head of the USPTO. Under the applicable regulations:

> Any petition from any action or requirement of the staff of OED reporting to the OED Director shall be taken to the OED Director. Any such petition not filed within sixty days from the mailing date of the action or notice from which relief is requested will be dismissed as untimely.

37 C.F.R. § 11.2(c). Similarly, under the regulations:

An individual dissatisfied with a final decision of the OED
Director, except for a decision dismissing a complaint or
closing an investigation, may seek review of the decision
upon petition to the USPTO Director accompanied by payment
of the fee set forth in Sec. 1.21(a)(5)(ii) of this
subchapter. A decision dismissing a complaint or closing an
investigation is not subject to review by petition. Any
petition not filed within sixty days from the mailing date
of the final decision of the OED Director will be dismissed
as untimely.

37 C.F.R. § 11.2(d).

Plaintiff did not satisfy these requirements.  On February

8, 1996, Plaintiff sent a letter to OED stating that he was

"ceasing the practice before the United States Patent and

Trademark Office."  Exhibit 7.  The OED Director informed

Plaintiff in a letter that it received a grievance from a former

client and that it would forgo any investigation concerning the

grievance "unless [Plaintiff] inform us in writing within thirty

(30) days from the date of this letter that it is not your intent

to have your name removed from the register."  Exhibit 8.  The

OED letter also informed Plaintiff that if his name was removed

from the register, he would have to satisfy the requirements for

registration in 37 C.F.R. § 11.7 before being reinstated.  Id.

On January 25, 2005, Plaintiff sought reinstatement to the

USPTO register.  On March 22, 2005, OED staff attorney, William

J. Griffin, informed Plaintiff that he would have to take and

pass the registration examination to be reinstated because

Plaintiff's name had been removed from the register for more than

five years, and Plaintiff failed to provide any credible evidence

showing that he was competent to advise clients of patent laws or
procedures.  After receiving Mr. Griffin's March 22, 2005,
letter, Plaintiff submitted his application on April 4, 2005, for
the July 2005 patent examination.  Over 2½-years later, Plaintiff
filed his petition with this Court.  The USPTO Director has not
issued a decision regarding Plaintiff's reinstatement request.
Because this Court does not have a final agency action from the
USPTO to review, i.e., a USPTO Director decision, it should
dismiss the claim under Fed. R. Civ. P. 12(b)(1).  See Natural
Resources Defense Council v. Johnson, 422 F.Supp.2d 105 (D.D.C.
2006)(defendant's motion to dismiss granted where court did not
have Court does have jurisdiction over matter because defendant
had not taken final agency decision); Ticor Title Ins. Co. v.
FTC, 814 F.2d 731, 746 n.2 (D.C. Cir. 1987) (noting that the
finality requirement applies to "agency action made reviewable by
statute").  See also Rann v. Chao, 346 F.3d 192, 194-95 (D.C.
Cir. 2003) (affirming the trial court's dismissal of the
plaintiff's ADEA claim for failure to exhaust administrative
remedies); Gillet v. King, 931 F.Supp. 9, 12-13 (D.D.C. 1996)
(dismissing the plaintiff's Title VII claim because he failed to
exhaust his administrative remedies).

     b. Plaintiff's Petition to this Court is Untimely
Even if Plaintiff's petition is somehow considered to be
sufficient to provide this Court with jurisdiction over this
case, this court should still dismiss Plaintiff's claim for

- 32 -

reinstatement pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff did not file the reinstatement claim in a timely manner.

Local Civil Rule 83.7 permits persons refused recognition to practice before the USPTO to file a petition with this Court. The local rule, however, sets a 30-day limitations period. Plaintiff's petition fails to meet this filing deadline. Plaintiff complains about OED's March 22, 2005 letter requiring him to take and pass the registration examination because he did not establish that he still possessed the requisite legal qualifications after his nearly nine-year gap in practicing before the PTO. Under Local Civil Rule 83.7, if Plaintiff wanted relief, he was required to file a petition in this Court within 30 days of March 22, 2005, in other words by April 22, 2005. Rather than file a timely petition, Plaintiff chose instead to take the registration examination over, and over, and over again. As explained below, Plaintiff retook the registration examination so many times because he never received a passing score.  It was only after Plaintiff failed the registration examination for the third time, and after over two years had passed since Mr. Griffin's March 22, 2005 letter that Plaintiff eventually decided to file a petition in this Court on September 26, 2007.  Because Plaintiff's petition is untimely, his reinstatement claim should be dismissed under Fed. R. Civ. P. 12(b)(1).  See O'Hair v. United States, 281 F.Supp. 815, 818 (D.D.C. 1968) (court granting

motion to dismiss after recognizing "[t]he first duty of the sole judge is to pass on the sufficiency of the complaint specifically as to whether or not a justiciable controversy is presented over which he has adjudicatory powers, and if he determines that the Court lacks jurisdiction, he must dismiss the suit"). Cf. <u>Yamaha Motor Corp. v. United States</u>, 779 F.Supp. 610 (D.D.C. 1991) (motion to dismiss granted pursuant to Fed. R. Civ. P. 12(b)(1) where court lacked jurisdiction over pre-enforcement tax assessments and collection process).

The same is true regarding all other reinstatement arguments Plaintiff may have that are based on USPTO actions arising prior to August 27, 2007, <u>i.e.</u>, 30 days before his September 26, 2007 filing. Thus, the limitations period under Local Civil Rule 83.7 denies the Court jurisdiction over Plaintiff's challenge to OED's August 22, 2007 letter notifying Plaintiff that he did not pass the July 2007 patent examination.

c. <u>Defendants Moatz and Griffin Should be Dismissed</u>

To the extent the Court determines that it has jurisdiction over Plaintiff's reinstatement claim under 35 U.S.C. § 32 and does not grant Defendants' motion to dismiss the reinstatement claim under Fed. R. Civ. P. 12(b)(1), then it is appropriate for the Court to dismiss the defendants, Harry I. Moatz and William J. Griffin. By its plain terms, section 32 of title 35 of the U.S. Code grants the Court has jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin. Cf. <u>Gager v. Ladd</u>, 212

F.Supp. 671 (D.D.C. 1963) (discussing authority under 35 U.S.C. § 32 to review of the "action of the Commissioner of Patents").

2. <u>Dismissal of Reinstatement Claim</u>

In accordance with its mission to protect the public from incompetent practitioners, OED did not automatically reinstate Plaintiff to its register when he requested reinstatement in January 2005, after his nearly nine-year hiatus from practicing patent law. There is no statutory or regulatory requirement for OED having to reinstate Plaintiff simply upon his request. Rather, the person seeking reinstatement is required to show to the satisfaction of the OED Director that her or she: 1) is of good moral character and reputation, 2) possesses the legal, scientific, and technical qualifications necessary for him or her to render applicants valuable service; and 3) is competent to advise and assist patent applicants in the presentation and prosecution of their applications before the Office. <u>See</u> 37 C.F.R. § 11.7(a).

It is not disputed that, while Plaintiff was inactive from the practice of patent law, there were numerous changes in the United States patent laws and regulations. For example, Congress amended 35 U.S.C. § 102 in 1999 and again in 2002, 35 U.S.C. § 103 in 1999 and 2004, and 35 U.S.C. § 154 in 1999 and 2002. Nor is it disputed that, in accordance with its policy, OED endeavored to ensure that Plaintiff still possessed the requisite qualifications to conduct patent business before the USPTO by

offering the Plaintiff the opportunity to establish his
qualification by submitting a statement or by taking and passing
the patent examination.  See 37 C.F.R. § 11.7(a).

Plaintiff has not articulated how OED's March 22, 2005
determination violated any law, rule or regulation pertaining to
USPTO's authority under 35 U.S.C. § 2(b)(2)(D) to govern the
recognition and conduct of agents, attorneys, or other persons
representing applicants or other parties having business before
the USPTO.  Neither his mere disagreement with OED' determination
regarding his request for reinstatement or his conclusory
allegation of purported arbitrary and capricious action by OED
adequately states a basis for relief.  See Twombly, supra;
Washington Bldg. Realty Corp. v. Peoples Drug Stores, Inc., 161
F.2d 879, 880 (D.C. Cir. 1947) (per curiam) (court granting
motion to dismiss cross claim where pleading does not state
actionable claim). Cf. Gager v. Ladd, 212 F.Supp. 671 (D.D.C.
1963) (dismissing action for mandatory injunction to compel USPTO
to allow plaintiff to sit for next patent examination where USPTO
did not abuse discretion in holding that plaintiff had failed to
show that he had met standards for examination).  Therefore, the
Court may grant Defendants' motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6).

B. Discrimination Claims

    1. Dismissal of Numerous Discrimination Claims

    Plaintiff alleges intermittently throughout his complaint that the USPTO violated named and unnamed federal anti-discrimination laws by not providing him reasonable accommodation when he sat for the USPTO patent examinations in 2006 and 2007.[17] Plaintiff's case, however, has nothing to do with any of the discrimination laws cited in his Complaint.

    Plaintiff has not alleged an existing or prospective employment relationship with the USPTO; therefore, he necessarily has failed to state a cause of action under: 1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, which prohibits employment discrimination on bases of race and color, as well as national origin, sex, and religion; 2) the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., which protects individuals who are 40 years of age or older from employment discrimination based on age; 3) the Equal Employment Opportunity Act of 1972 (Pub. L. 92-261), which amended the Civil

---

[17] See generally Complaint at 4 (allegation of age and medical history discrimination); id. at 5 (allegation of discrimination); id. at 18 (allegation of age discrimination and lack of reasonable accommodation); id. at 21-23 (reference to Age Discrimination in Employment Act of 1967); id. at 21(reference to Equal Employment Opportunity rights); id. at 23 (references to Title VII of the Civil Rights Act, Individuals with Disabilities Education Act Disability Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991 and the Equal Employment Opportunity Act of 1967 [sic]); id. at 27 (allegation of discriminatory testing in favor of young, healthy, white males).

Rights Act of 1964 to promote further equal employment opportunities for American workers; 4) the Older Workers Benefit Protection Act of 1990 (Pub. L. 101-433), which amended several sections of the ADEA to clarify the protections given to older workers such as in regard to employee benefit plans; 5) title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., which prohibits discrimination on the basis of disability in employment; or 6) section 115 of the Civil Rights Act of 1991 (Pub.L. 102-166), which amended section 7(e) of the ADEA (29 U.S.C. § 626(e)).  Likewise, Plaintiff's complaint against the Defendants does not concern public education; therefore, he has failed to state a claim under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq., which requires public schools to make available to all eligible children with disabilities a free appropriate public education in the least restrictive environment appropriate to their individual needs. Because none of those laws apply to Defendants in this case, the Court may properly dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6).

Nor do the other titles of the ADA apply to Plaintiff's allegations against the USPTO.  The ADA prohibits discrimination on the basis of disability in transportation (Title II); in the services, programs, or activities of all State and local governments (Title II); in public accommodations provided by private entities (Title III); and in telecommunications for hearing

and speech-impaired individuals (Title IV). Plaintiff has not pled any facts that state a claim under those sections of the ADA against Defendants; therefore, the Court may properly dismiss those claims pursuant to Fed. R. Civ. P. 12(b)(6) as well.

### 2. Dismissal of Rehabilitation Act Claim

It seems that a fair reading of the Complaint suggests that Plaintiff may be alleging a violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 prohibits discrimination in programs conducted by Federal agencies on the basis of disability, including a failure to grant a reasonable accommodation in order to have access to such programs. Assuming Plaintiff seeks relief under section 504 of the Rehabilitation Act, however, the Complaint is fatally defective because Plaintiff has failed to allege that he is a disabled person under that law. Section 504 states, "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Thus, to state a claim under section 504 of the Rehabilitation Act in this case, Plaintiff must prove: 1) he is a "qualified individual with a disability" and 2) that he was subject to discrimination under a program conducted by

the USPTO.  29 U.S.C. § 794(a).  Cf. Powell v. National Board of
Medical Examiners, 364 F.3d 79, 85 (2d Cir. 2004) (in order for
medical student who brought action against medical school and
national board of medical examiners to establish a prima facie
violation under 504 of the Rehabilitation Act and the Americans
with Disabilities Act, she must demonstrate: 1) she is a qualified
individual with a disability; 2) that the defendants are subject to
one of the acts; and 3) that she was "denied the opportunity to
participate in or benefit from defendants' services, programs, or
activities, or [was] otherwise discriminated against by defendants,
by reason of [her] disabilit[y].") (citing Henrietta D. v.
Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)).  In order to invoke
protection under section 504 of the Rehabilitation Act, Plaintiff
must initially show that he is disabled person within purview of
statute.  See Smaw v. Virginia Dep't of State Police, 862 F.Supp.
1469, 1472 (E.D. Va. 1994).  "Disability" under the Rehabilitation
Act means "a physical or mental impairment that substantially
limits one or more major life activities."  29 U.S.C. § 705(9)(B).
See also Smaw, 862 F.Supp at 1472.  "Major life activities" under
the Rehabilitation Act has been defined to mean "functions such as
caring for one's self, performing manual tasks, walking, seeing,
hearing, speaking, breathing, learning, and working." Roe v.
Housing Auth. of the City of Boulder, 909 F.Supp. 814, 820 (D.
Colo. 1995) (citing Jasany v. United States Postal Service, 755
F.2d 1244 (6th Cir. 1985)).

Plaintiff fails to state a cause of action under section 504 because he has not alleged that he is handicapped within the meaning of the Rehabilitation Act.  Specifically, Plaintiff has not pled that his eye and prostate health problems substantially limit a major life activity.  Because Plaintiff is not a qualified individual with a disability, the Court may properly dismiss this aspect of his complaint pursuant to Fed. R. Civ. P. 12(b)(6).  See, e.g., Smaw, 862 F.Supp at 1475 (even assuming the Plaintiff's obesity was a physical impairment, it is not the type of impairment which substantially limits her ability to pursue employment and, therefore, did not qualify for protection under the Rehabilitation Act); Torres v. U.S. Postal Service, 610 F.Supp. 593 (N.D. Texas 1985) (defendants are not liable under the Rehabilitation Act because plaintiff was not a "handicapped individual" by virtue of his left-handedness); Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir. 1993) (claims under Rehabilitation Act fail where plaintiffs failed to establish that they were handicapped and otherwise qualified, either with or without reasonable accommodation); McGuinness v. Univ. of New Mexico School of Medicine, 170 F.3d 974 (10th Cir. 1998) (court affirming granting of summary judgment under the Rehabilitation Act, 29 U.S.C. § 794, where Plaintiff was not a "qualified individual with a disability" because Plaintiff's anxiety disorder, which manifested itself when he took chemistry and mathematics tests, did not constitute a disability).

2. <u>Summary Judgment on the Rehabilitation Act Claim</u>

Even if one assumes that Plaintiff is a handicapped person for purposes of section 504 of the Rehabilitation Act, the undisputed facts establish that the USPTO did not discriminate against him.  USPTO is obligated to provide a *reasonable* accommodation under the Rehabilitation Act.  <u>See</u>, <u>e.g.</u>, <u>American Council of the Blind v. Paulson</u>, 463 F.Supp.2d 51, 58 (D.D.C. 2006) (Rehabilitation Act entitles plaintiff only to such accommodations as are "reasonable" not to perfect access or to remedies that are specially tailored to his or her circumstances) (citing <u>Alexander v. Choate</u>, 469 U.S. 287, 301 (1985)).

Following the July 2006 examination, OED and Plaintiff ultimately agreed to the following accommodations:

> 1) the examination and answer sheets will be appear in 14-point font;
>
> 2) magnifiers for reading the MPEP will be provided;
>
> 3) additional lighting;
>
> 4) a testing room separate from the main testing room; and
>
> 5) additional time to take the exam as follows:
>
>> a)  four hours (instead of three hours) per examination session;
>>
>> b)  the first session administered on July 16, 2007; and
>>
>> c)  the second session administered on July 17, 2007.

See Exhibit 29.   Thus, OED provided all of the accommodations
that Plaintiff requested in connection with the July 2007 patent
examination.   See Exhibit 29.  And, even though Plaintiff has not
applied to take the patent examination again, the USPTO would
continue to provide him with the same accommodations that it
provided for the July 2007 examination should he so request.
Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 11).

        In light of such undisputed evidence, the Court properly may
properly grant summary judgment in favor of Defendants.   Powell
v. National Bd. of Medical Examiners, 364 F.3d 79 (2d Cir. 2004)
(court granting summary judgment under section 504 of
Rehabilitation Act for defendant where defendant denied request
by Plaintiff, who had twice failed the licensing examination, for
an accommodation of more time to take the examination due to a
learning disability because the evidence was clear that defendant
followed its standard procedure when it determined that plaintiff
was not entitled to a test accommodation); Mershon v. St. Louis
University, 442 F.3d 1069, 1073-1074 (8th Cir. 2006) (summary
judgment proper under section 504 of Rehabilitation Act where
plaintiff fails to establish a factual dispute on an essential
element of the case) (citation omitted).  Cf. Nichols v. Harford
Cty. Bd. Of Education, 189 F.Supp.2d 325, 335-340 (D. Maryland
2002) (failure to accommodate claim under section 504 of
Rehabilitation Act in an employment context failed as *a matter of*

*law* where it was evident that defendant adequately accommodated Plaintiff's disability).

## V. <u>Conclusion</u>

For the reasons stated herein, Defendants respectfully request that their motion be granted.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

                                    /s/
_____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

OF COUNSEL:

Steve Walsh
Acting Solicitor

Ronald K. Jaicks
Sydney O. Johnson, Jr.
Associate Solicitors

United States Patent and Trademark Office
Madison West, 08C43
600 Dulany Street
Alexandria, Virginia 22314

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                               )
              Plaintiff,       )
                               )
         v.                    )  Civil Action No. 07-0719 RWR
                               )
JON DUDAS, et al.,             )
                               )
              Defendants.      )
_____)

STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE DISPUTE

Plaintiff's Initial Registration with the USPTO

1.  Plaintiff applied for and passed the April 28, 1958, USPTO examination and was subsequently registered to practice before the USPTO and issued Plaintiff registration number 19,240. See Exhibit 1.

Client Grievance Against Plaintiff

2.  On November 7, 2005, one of Plaintiff's former clients filed a grievance with OED against Plaintiff.  See Exhibit 3.

3.  The former client alleged that he had paid Plaintiff to prepare and file a utility patent "continuation in part" application but that Plaintiff failed to write the application in a timely manner and eventually filed a *provisional* patent application without obtaining the client's consent or signature. See Exhibit 3.

4.  The former client also alleged that Plaintiff had named himself as a co-inventor on the filed application and then lied

to the client by saying doing so would not bestow any rights to Plaintiff.  <u>See</u> Exhibit 3.

> Plaintiff's Voluntary Removal
> <u>from Maryland Bar Register</u>

5.   At or about the time the grievance was filed against Plaintiff with OED, a complaint was filed against Plaintiff with the Maryland State Bar involving a patent matter.  <u>See</u> Exhibit 4 (November 21, 1995, Consent Decree, ¶ 2).

6.   As a result of the filing of the Maryland complaint, Plaintiff and the Attorney Grievance Commission of Maryland entered into a consent decree on November 21, 1995, permitting Plaintiff to be placed in an "inactive status" of the Maryland Bar.  <u>See</u> Exhibit 4.

7.   In part, the consent decree notes Plaintiff's admission that "he does not actively engage in practice, occasionally does some 'pro bono' work, but that he suffers lasting affects from open heart surgery in 1982 and he go to rehabilitation every day and, rests for some time thereafter.  In addition he participates in Al Anon attending three (3) or four (4) meetings a week as well as meeting with a sponsor."  <u>See</u> Exhibit 4, ¶ 3.

8.   The decree also notes that "at the present time, he is unable and no desire to cope with the demands of the practice of law and agrees that it is in his best interest to be placed on inactive status."  <u>See</u> Exhibit 4, ¶ 5.

9.   On December 4, 1995, the Maryland Court of Appeals ordered that Plaintiff be placed on inactive status and his name removed from its register of attorneys (see Exhibit 5), and, on December 6, 1995, the Attorney Grievance Commission of Maryland notified USPTO of Plaintiff's removal from Maryland's attorney register. See Exhibit 6.

### Plaintiff's Voluntary Removal from USPTO Register

10.   On February 8, 1996, Plaintiff sent a letter to USPTO stating that he had voluntarily changed his status in Maryland from active to inactive and that he was "ceasing the practice before the United States Patent and Trademark Office". See Exhibit 7.

11.   In response, former OED Director Karen L. Bovard sent a letter to Plaintiff on March 4, 1996, stating that the USPTO was "treating [his February 8 letter] as a request to have [his] name removed from the register." See Exhibit 8.

12.   Director Bovard's March 4 letter also informed Plaintiff that OED had received a letter from the Maryland Attorney Grievance Committee containing a copy of its December 4, 1995 order as well as a grievance from a former client.

13.   The Director's letter explained to Plaintiff:

> *It is our intent to hold in abeyance any investigation with respect to [the former client's] complaint, as well as any change of status action based on the Maryland Court order, unless you inform us in writing within thirty (30) days from the date of this letter that it is not your intent to have your name removed from the register.*

- 3 -

Exhibit 8 (emphasis added).

13.  Director Bovard's March 4, 1996 letter also informed Plaintiff as follows:

> *If your name is removed from the register, you may be reinstated subject to satisfying the requirements for registration set forth in 37 C.F.R. § 10.7 and payment of the fee set forth in 37 C.F.R. § 1.21(a)(3).*

Exhibit 8 (emphasis added).

14.  After sending the March 4, 1996 letter and allowing Plaintiff sufficient time to respond, OED Director Bovard removed Plaintiff's name from the USPTO register on or about August 28, 1996.  <u>See</u> Exhibit 8.

15.  Because Plaintiff acquiesced to the removal of his name from the register, OED did not investigate the former client's charges against him.  <u>See</u> Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 5).

<u>Plaintiff's Suspension from U.S. District Court</u>

16.  On April 13, 1996, the U.S. District Court for the Southern District of New York suspended Plaintiff based on the action against him in Maryland.  <u>See</u> Exhibit 9 (February 2, 2006 Order and Decision of the New York Supreme Court describing the procedural history of Plaintiff's suspension).

<u>Plaintiff's Suspension from the D.C. Bar</u>

17.  On April 15, 1996, the District of Columbia Court of Appeals temporarily suspended Plaintiff from the practice of law based on the Maryland action pending a recommendation from the

- 4 -

D.C. Board of Professional Responsibility.  See Exhibit 10 (March 27, 1997, the District of Columbia Court of Appeals describing procedural history of Plaintiff's suspension).

18.  The D.C. Board of Professional Responsibility subsequently recommended that Plaintiff be suspended indefinitely with his reinstatement being conditioned upon a showing of fitness, and, on March 27, 1997, the District of Columbia Court of Appeals suspended Plaintiff indefinitely from the practice of law in the District of Columbia *nunc pro tunc* to July 29, 1996. See Exhibit 10.

19.  On November 16, 2000, Plaintiff was reinstated to the D.C. Bar.

Plaintiff's Suspension from the New York Bar

20.  On August 17, 1998, the Supreme Court of New York suspended Plaintiff for five years commencing on September 17, 1998, based on the actions of the Maryland Bar.  See Exhibit 11.

21.  The court order granted Plaintiff leave to file for reinstatement upon furnishing satisfactory proof that he refrained from practicing or attempting to practice law, has fully complied with the terms and conditions governing suspended attorneys, he has otherwise properly conducted himself, and that he has been reinstated to the practice of law in Maryland.  See Exhibit 11.

22.  The Supreme Court of New York also ordered that Plaintiff "desist and refrain from: 1) practicing law in any

- 5 -

form, either as principal or agent, clerk or employee of another,
2) appearing as attorney or counselor-at-law before any court,
Judge, Justice, board, commission or other public authority, 3)
giving to another an opinion as to the law or its application or
any advice in relation thereto, and 4) holding himself out in any
way as an attorney and counselor-at law." See Exhibit 11.

<u>The Request for Reinstatement
to the USPTO Register</u>

23. On or about January 25, 2005, Plaintiff sought
reinstatement to the USPTO register by submitting a "Data Sheet B
Register of Patent Attorneys and Agents" form.
See Exhibit 12.

24. It has been long-standing USPTO policy that a
practitioner will be required to meet the USPTO qualifications
where such the practitioner seeks reinstatement to the register
five or more years after his or her name was removed therefrom.
See Exhibit 13; Exhibit 14, Exhibit 33 (Affidavit of Harry I.
Moatz, ¶ 6).

25. Thus, by letter dated January 25, 2005, OED
acknowledged the request for reinstatement and informed Plaintiff
that, because it had been over five years since he was
registered, he must take the patent registration examination or
submit a showing to the satisfaction of the OED Director that he
continued to possess the legal qualifications necessary to render
valuable service for applicants for patent. See Exhibit 13.

26.  By letter dated January 26, 2005, Plaintiff elected to submit information regarding his legal qualifications.  <u>See</u> Exhibit 15.

27.  Plaintiff's letter described that, during the prior eight year period, he continued to take continuing legal education classes, attended annual conferences of intellectual property associations, subscribed to intellectual property publications, regularly reviewed U.S. Patent Quarterly weekly advance sheets, and was involved in intellectual property research and other activities.  <u>See</u> Exhibit 15.

28.  During most, if not all, of his hiatus, Plaintiff did not engage in the practice of law because the Supreme Court of New York had entered a "desist and refrain" order preventing Plaintiff from practicing any form of law before any type of forum for five years commencing in September 1998.

29.  OED Staff Attorney William J. Griffin reviewed Plaintiff's submission.  <u>See</u> Exhibit 32 (Affidavit of William J. Griffin, ¶ 6.a).

30.  Based on his review of Plaintiff's submission, Mr. Griffin made a good-faith determination that Plaintiff did not present sufficient objective evidence to show that he continued to possess the legal qualifications necessary to render patent applicants valuable service.  <u>See</u> Exhibit 32 (Affidavit of William J. Griffin, ¶ 6.b).

- 7 -

31.  By letter dated March 22, 2005, Mr. Griffin informed Plaintiff that his submission was insufficient to establish that Plaintiff still possessed the requisite legal qualifications after his nearly nine-year gap in practicing before the PTO.  <u>See</u> Exhibit 17.

32.  The March 22, 2005, letter contains a proof-reading error in the nature of a double negative, namely: that Plaintiff "has not presented insufficient evidence" when, in context the letter was intended to explain that Plaintiff had not presented sufficient evidence.  <u>See</u> Exhibit 32, ¶ 6; Exhibit 33, ¶ 4.d.

33.  Mr. Griffin's letter informed Plaintiff that the determination was "without prejudice" and invited Plaintiff to submit additional information to support his qualifications.  <u>See</u> Exhibit 17.

34.  Plaintiff applied for the July 2005 patent examination prior to submitting additional, substantive information about his qualifications in response to Mr. Griffin's March 22, 2005, letter.  <u>See</u> Exhibit 32 (Affidavit of William J. Griffin, ¶ 4.e).

<u>The July 2005 Patent Test</u>

35.  On March 26, 2005, Plaintiff submitted an application for the July 2005 patent examination, <u>i.e.</u>, Form PTO-158.  <u>See</u> Exhibit 18.

36.  Plaintiff checked the box on the form indicating "I am applying for reinstatement . . . for a change from inactive to active status."  <u>See</u> Exhibit 18.

- 8 -

37.  On April 21, 2005, OED sent Plaintiff notice of admission to the July 11, 2005 examination, see Exhibit 19, and, on July 11, 2005, Plaintiff sat for the patent examination.  See Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 7).

38.  On August 15, 2005, OED notified Plaintiff that he did not pass the examination; Plaintiff had received a score of 46%.  See Exhibit 20; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 7).

39.  A score of 70% or higher was required to pass the examination.  See Exhibit 20; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 7).

Plaintiff's Request for Accommodations<br>for July 2006 Patent Test

40.  On March 21, 2006, Plaintiff submitted his application for the July 2006 patent examination. See Exhibit 21.

41.  Plaintiff's application packet also included a four-page request for a reasonable accommodation.  See Exhibit 22. Specifically, Plaintiff asked for the examination to be enlarged to 14-point font, for the test date to be changed, an examination room apart from the other test takers, and additional time to take the test.  Id.

42.  In support of his request for larger print, Plaintiff provided OED a July 5, 2005, note from Plaintiff's optometrist, Dr. Richard S. Simon, explaining, "due to cataracts in both eyes, this patient would benefit from larger print material when reading."  See Exhibit 22.

43.  Regarding his request for a separate examination room, Plaintiff argued that his taking the test with persons who are not disabled "might expose me to ridicule, or coerce me unwillingly to reveal confidential, difficult or private explanation concerning my certification or my medical history. Such coercion would make the effect of the disability worse, or at least during the examination itself."  See Exhibit 22.

44.  As for his request for additional time, Plaintiff only stated that such accommodations "would somewhat tend to lessen the coercion suffered."  See Exhibit 22.

45.  On April 3, 2006, and April 10, 2006, OED received additional correspondence from Plaintiff repeating his request for reasonable accommodations.  See Exhibit 22A and Exhibit 22B.

46.  By letter of May 24, 2006, OED granted Plaintiff's request in part; however, the letter was inadvertently dated "May 24, 2005."  See Exhibit 23 and Exhibit 25 (explaining erroneous year).

47.  Based on the information provided, OED granted Plaintiff's request for 14-point font on the examination;  OED, however, denied his request for a different test date and a separate examination room because Plaintiff did not provide sufficient documentation supporting a disability entitling him to a medical accommodation.

48.  OED's May 24 letter to Plaintiff explained its policy:

- 10 -

> *Supporting documentation, less than one year old,*
> *certifying the current severity of the disability and*
> *certifying that the accommodations requested are*
> *necessary for this disability must be sent by a*
> *licensed physician who has evaluated the condition.*

See Exhibit 23 (emphasis added).

49.  OED provided Plaintiff the opportunity to submit such documentation by June 26, 2006. See Exhibit 23.

50.  On June 6, 2006, Plaintiff submitted additional information in support of his request for separate examination room and additional time to take the test based on an alleged heart problem.  See Exhibit 24.

51.  In his June 6, 2006 letter, Plaintiff argued that he should receive a second whole day to complete the examination and be permitted to take the exam in a private room because "it is obvious that an emergency heart attack possibility is real."  See Exhibit 24.

52.  Plaintiff believed that he might suffer a heart attack during the examination and, absent such accommodations, "the large number of test takers would undoubtedly suffer from the confusion of an emergency, and the one evacuated to a hospital would also suffer from being forced to take a test in a large room filled with many test takers."  See Exhibit 24.

53.  Plaintiff included a copy of his birth certificate and a two-sentence letter dated from his cardiologist, Dr. George Bren, stating, "Mr. Cornell D.M. Judge Cornish is under my professional care for treatment of coronary heart disease."  See

- 11 -

Exhibit 24. "He had four-vessel coronary bypass surgery in 1982, and had a stent placed in one of his bypass grafts in 2003." <u>See</u> Exhibit 24.

54. OED considered the information provided in Plaintiff's June 6, 2006 letter, but denied his request for additional time and a separate room on the basis that medical documentation did not state that Plaintiff's medical condition warranted the accommodations requested. <u>See</u> Exhibit 25.[1]

<u>The July 12, 2006 Petition</u>

55. On the same date Plaintiff sat for the July 12, 2006 patent examination, he filed a petition with USPTO challenging: 1) OED's March 22, 2005, determination that Plaintiff had not demonstrated that he still possessed the requisite legal qualifications for practicing before the PTO and 2) OED's denial of reasonable accommodations in connection with the July 2005 patent examination; but there is no dispute that, to date, the USPTO Director has not issued a decision regarding Plaintiff's reinstatement request. <u>See</u> Exhibit 27; Complaint.

56. Plaintiff's petition included a June 28, 2006 letter from Dr. Bren stating, "He wanted me to inform the individuals who supervise the examination that he is 77 years old and that he would like to be permitted to have additional time allotted for

---

[1] Exhibit 25 is an *undated* letter from OED to Plaintiff, but it appears to have been sent in June 2006, <u>i.e.</u>, after Plaintiff's June 6, 2006 letter and prior to the July 12, 2006 examination date.

the completion of the examination in view of his age and health issues related in part to his age." <u>See</u> Exhibit 27.

### The July 2006 Patent Test

57.  Plaintiff took the patent examination on July 12, 2006, with the benefit of 14-point font printing on the examination.

58.  By letter dated August 16, 2006, OED informed Plaintiff that he did not pass the examination.  Plaintiff's score was 52%. <u>See</u> Exhibit 26; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 8).

### OED's Response to Plaintiff's July 12, 2006, Petition and Related Materials

59.  On or about September 13, 2006, Plaintiff submitted additional materials in connection with his July 12, 2006, petition including an application to sit for the next patent examination; and by letter dated November 30, 2006, OED offered the following accommodations to Plaintiff:

> 1) the examination and answer sheets will be appear in 14-point font;

> 2) several magnifiers for reading the Manual of Patent Examining Procedure (MPEP) will be provided;

> 3) a desk lamp for additional lighting will be provided;

> 4) permission for Plaintiff to bring his own magnifying device; and

> 5) a mutually convenient date on or before January 31, 2007, to take the test.

Exhibit 28 at 3.

60.  Regarding Plaintiff's request for a private examining room, OED informed Plaintiff that, although his request for a

separate examination room was not supported, the issue was moot because he would be the only person taking the examination.  Id.

61.  As to Plaintiff's request for additional time, OED informed Plaintiff that the additional medical documentation provided (i.e., the June 28, 2006, letter from Dr. Bren) was not sufficient as it merely repeated Plaintiff's desire to have additional time.  Id.

62.  OED's November 30 letter, however, again identified the type of documentation required to support a request for an accommodation, i.e., "Supporting documentation, less than one year old, certifying the current severity of the disability and certifying that the accommodations requested are necessary for this disability must be sent by a licensed physician to who has evaluated the condition." See Exhibit 28 at 3.

63.  Plaintiff did not arrange to take the examination prior to January 31, 2007.

Granting All of Plaintiff's Requests
for the 2007 Patent Examination

64.  On or about December 13, 2006, Plaintiff submitted additional medical information to support his request for accommodations, namely: a December 12, 2006, note from urologist, Dr. Fernando Bianco, M.D.  See Exhibit 28A.

65.  Dr. Bianco's note explained that the Plaintiff had a prostate condition that required frequent visits to the restroom. See Exhibit 28A.

66. Plaintiff purportedly required frequent bathroom breaks; thus, OED provided him with extra time to take the examination, namely four hours per session instead of three, and the opportunity to take the examination over two days instead of one. Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 10).

67. Also, OED provided Plaintiff a room separate from the main examination room. Id. Thereafter, as mentioned, Plaintiff submitted an application for the July 2007 patent examination. See id.

68. Given that USPTO had offered Plaintiff the opportunity to take the examination prior to January 31, 2007, without cost, it refunded Plaintiff's $490 examination and application fee that accompanied his 2007 application package. See Exhibit 29.

69. In the end, the parties agreed that Plaintiff would sit for the 2007 without cost and be provided with the following accommodations:

1) the examination and answer sheets will be appear in 14-point font;

2) magnifiers for reading the MPEP will be provided;

3) additional lighting;

4) a testing room separate from the main testing room; and

5) additional time to take the exam as follows:
   a) four hours (instead of three hours) per examination session;
   b) the first session administered on July 16, 2007; and
   c) the second session administered on July 17, 2007.

- 15 -

<u>See</u> Exhibit 29.

70.   In short, OED provided <u>all</u> of the accommodations that Plaintiff requested in connection with the July 2007 patent examination.  <u>Id</u>.

### Change in Plaintiff's Identification Number

71.   In 1999, OED moved its database onto the OED Information System (OEDIS); and to accomplish that switch, OED assigned new identification numbers to practitioners who records were on the old database.  <u>See</u> Exhibit 31 (Affidavit of Christine M. Nucker).

72.   The new identification number was "9000" followed by the practitioner's registration number; thus, in 1999, Plaintiff's identification number became 900019240.  <u>Id</u>.

73.   On December 22, 2006, OED issued new identification numbers to registered patent agents and attorney who had been imported to OEDIS in 1999.   The former "9000" prefaced identification number was changed to a five-digit number.

74.   Thus, on December 20, 1996, Plaintiff's identification number changed from 900019240 to 41361.  <u>See</u> Exhibit 31 (Affidavit of Christine M. Nucker).

### OED August 22, 2007 Letter and Filing of Complaint

75.   Plaintiff sat for the patent examination on July 16 and 17, 2007, with the aforementioned numerous accommodations. <u>See</u>

Exhibit 30; Exhibit 31; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 9).

76.  By letter dated August 22, 2007, which identified Plaintiff using his new identification number, OED informed Plaintiff that he did not pass the examination.  <u>See</u> Exhibit 30; Exhibit 31; Exhibit 33 (Affidavit of Harry I. Moatz, ¶ 9)

77.  Plaintiff's score on the July 2007 exam was 48%, yet to pass the exam one must receive a score of 70% or better.  <u>See</u> Exhibit 30; Exhibit 31; Exhibit 33 (Affidavit of Harry I. Moatz, ¶¶ 7-9).

78.  On September 26, 2007, Plaintiff filed the instant action and requested a preliminary injunction.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

- 17 -

CERTIFICATE OF SERVICE

    I hereby certify that service of the foregoing Defendants'

Motion To Dismiss, Or In The Alternative, For Summary Judgment,

and a proposed Order has been made by mailing copies thereof to:

CORNELL D.M. JUDGE CORNISH, ESQ.
Suite 301
1101 New Hampshire Ave., N.W.
Washington, DC  20037-1502

on this 7th day of November, 2007.


                                      /s/
            W. MARK NEBEKER, DC Bar #396739
            Assistant United States Attorney
            555 4th Street, N.W.
            Civil Division
            Washington, DC  20530
            (202) 514-7230
            fax: (202) 514-8780

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,       )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )Civil Action No. 07-1719 RWR
                                  )
JON DUDAS, Under-Secretary of     )
  Commerce for Intellectual Property)
  and Director of the U.S. Patent )
  and Trademark Office, et al.,   )
                                  )
          Defendants.             )
_____)

ORDER

     UPON CONSIDERATION of  Defendants' Motion To Dismiss, Or In

The Alternative, For Summary Judgment, the grounds stated

therefor, and the entire record herein, it is this ___ day of

_____, 2007, hereby

     ORDERED that Defendants' motion should be and it hereby is

granted; and it is,

     FURTHER ORDERED that Plaintiff's claims in this action be

and hereby are dismissed.



                              _____
                              UNITED STATES DISTRICT JUDGE




W. MARK NEBEKER               CORNELL D.M. JUDGE CORNISH, ESQ.
Assistant U.S. Attorney       Suite 301
555 4th Street, N.W.          1101 New Hampshire Ave., N.W.
Civil Division                Washington, DC  20037-1502
Washington, DC  20530