**RECEIVED**

DEC 1 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

*RECEIVED*
NOV 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, ) | |
| ) | |
| Plaintiff *Pro Se* ) | |
| ) | |
| v. ) | |
| ) | |
| JON DUDAS, et al., ) | |
| ) | CASE  07-CV-01719 (RWR) |
| Defendants ) | |
| ) | |

## MOTION UNDER RULE 36 FOR ADMISSIONS  OR, ALTERNATELY FOR A LIMITED, PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM REFUSING TO APPEAR IN A SHOW CAUSE HEARING WITHIN THE SCOPE OF RULE 26(b), AND A MEMORANDUM IN SUPPORT WITH REQUEST TO FILE MOTION AND MEMORANDUM UNDER SEAL

Plaintiff hereby requests that the Court permit the filing under seal of this Motion

Under Rule 36, and the filing under seal of this Memorandum In Support, which

controverts and opposes the Defendants 10/707 Motion to file under seal only long

enough for the Court to consider Plaintiff's request that the seal be permanent.  The

Portions controverted are listed in Plaintiff's appended Appendix. This Motion or,

Alternatively, for A Limited Preliminary Injunction, also controverts and opposes

Defendants' 11/7/07 Memorandum in Support of a Motion To Dismiss Pursuant to Rules

12 (b) (1) and 12 (b), etc.

Incredible as it sounds, secret, unconstitutional civil asset forfeiture procedures

are well and thriving in the hands of the Defendants, and Plaintiff has been irreparably

injured by Defendants' unilateral, self-imposed, self-identified "Consent Decree" written

by Karen V. Bovard, based on hearsay, without Plaintiff agreement or acquiescence on

1

March 4, 1996, and without probable cause or an opportunity for a hearing, which enabled her to receive Plaintiff's stolen property, which she declared guilty as contraband, and thus, forfeited it to the government by a coerced dedication of Plaintiff's property in his Certificate of Registration to the public. See Exhibit 8, which records Ms. Bovard secret handwritten note, which well documents the secret actions of the Director of OED, Defendant Moatz' predecessor, in breaking and entering the Defendants records and computers to receive Plaintiff's stolen property and forfeiting it to the government by threats and coercion without a hearing or an opportunity of a hearing under 35 U.S.C. 32. Just as Karen L. Bovard in seizing Plaintiff's property, presumed it to be guilty as contraband, she enabled herself to forfeit Plaintiff's property on the basis of hearsay with knowledge of Plaintiff's protests and lack of acquiescence.

This presents a serious emergency in this case, whereby the seal Order in this case is not ripe for a Motion to Dismiss or to remove the seal when all requests for filing under seal are finally disposed of.  Plaintiff controverts the statement of facts provided in the 17 page Appendix to Defendants 44 Page Motion To Dismiss Pursuant to Rules 12 (b) (1) and 12 (b) (6) or, Alternately, For A Summary Judgment in their favor under Fed. R. Civ. P. 56 (b).

The Defendants rely on a Motion To Dismiss to preserve unconstitutional statutes, confusing, administrative cover-ups that suppress constitutional rights of the Plaintiff and others to obtain hearings and due process, and to cover-up Defendants' own dysfunctional behavior in administering what they view as their forfeiture mandate to infringe Plaintiff's freedom of speech and press rights.

This is a serious emergency because the Defendants are improperly governing the Plaintiff's conduct, and illegally administering the largest and most important printing press in the world. Their actions are in direct conflict of interest with their maintenance of the largest editing operation in the world. The problem is that Defendants administer their forfeiture mandate in such a way as to enable an odious, arbitrary, capricious and dysfunctional system not intended or authorized properly by Congress, and they administer the system substantially to avoid any oversight by the courts or otherwise. To the end, they disregard the competitive mandate of the Constitution and the balance of powers that has been so carefully drawn and pursued by the Courts. Analogously to the 9/11 attacks, the Defendants have allowed themselves to be accessories to the breakdown of the patent system and/or its compromise, which Plaintiff now brings to this Court for oversight.

On October 5th and 11th 2007, Defendants asked for and received on October 15th 2007, a seal order in this case. After the Court Ordered the proceedings sealed on October 15th 2007, Defendants threatened Plaintiff with the public disclosure of sensitive personal, private, confidential and otherwise embarrassing medical information in a draconian effort to unseal the proceedings by asking the Court on November 7th 2007, to Dismiss the Case without a hearing so that the seal order would automatically expire.

To avoid such a draconian result, Plaintiff requests that this Motion be filed under seal for Admissions under Rule 36 within the scope of Rule 26 (b). Plaintiff requests the Court to file this Motion under seal, which will automatically defer the expiration of the seal order in this case because the case is not ripe for dismissal or summary judgment in favor of the Defendants.

3

Defendants complain that in order to invoke protection under section 504 of 29 U.S.C. Section 794 of the Rehabilitation Act, that "Plaintiff must initially show that he is a disabled person within the purview of the statute." Moreover, he must show a "Disability" under the Rehabilitation Act meaning: " a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. Section 705 (9) (B), defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, and working."

Plaintiff has offered extensive medical evidence that is now justifiably under seal in this case at the request of the Defendants to show his age-related "impairment" by which the Defendants discriminate against Plaintiff to his irreparable injury. This showing includes reference to private conversations of Plaintiff with his physicians concerning his major life functions of "seeing, hearing, breathing, learning, working and excreting."

Defendants unjustifiably refer to Plaintiff's conversations with his physicians concerning his major life activity of "excreting." See page 16 of Defendants 10/16/07 Reply and Memorandum in Opposition, where they say: "Plaintiff "purportedly" needed to [word referring to life major life activity function of excreting deleted] frequently." At one point Defendants' attorney agreed that such a remark should be redacted if not kept under seal permanently because it is unacceptable for publication, and Plaintiff agrees with that analysis. Likewise, Exhibits 8 and 17 are labeled "PRIVATE AND CONFIDENTIAL," so obviously, those Exhibits should be permanently sealed, proving that this case is not ripe for publication by granting Summary Judgment in favor of Defendants, because that would automatically end the seal order.

In response to Defendants' draconian coercion of Plaintiff in filing their Motion to Dismiss, the Plaintiff will only acquiesce under pressure to postpone determination of a Summary Judgment Motion until after a hearing by agreeing to admissions by Defendants, such as in a "Consent Decree," that would recognize and permanently seal Plaintiff' and Defendants' pleadings now under seal.

To this end, Defendants defense relies in attacking Plaintiff's pleading. For example, their attack features Plaintiff's pleading of his "eye and prostrate health problems" that substantially limit his major life activities" of "seeing and excreting," for which he needs and deserves reasonable accommodations for taking the Patent Office test. He has requested and has been refused those accommodations, as documented in his pleadings (albeit, he has repeatedly and adequately plead, and there should be no controversy as to his pleadings). They are not "moot," as alleged by Defendants, so they should be inserted into an "admission under Rule 36," or placed in a "Consent Decree," for a Show Cause Order, as to whether Defendants must be Preliminarily, or Permanently enjoined from denying that Plaintiff has so plead and documented his age-related impairments that are not in dispute. Those comprise his "disabilities" that limit his "major life activities of seeing, hearing, breathing, learning, working and excreting".

Plaintiff has plead that his age-related major life activity disabilities are not moot, because, although they are not in dispute, they are in controversy for resolution by a hearing and a trial in order to obtain reasonable accommodations that Plaintiff has requested but has been denied.

Principle issues to be addressed in a Show Cause Hearing for a "Consent Decree," are the portions of the proceedings to be released from the present Seal Order by

redacting or a permanent seal Order, and those well documented and certified issues that are already agreed to, and that are not in dispute, including Plaintiff's well documented age related "physical or mental impairment that substantially limit one or more major life activities," including an admission for purposes of settlement that he is "impaired in the following major life functions: "seeing, hearing, breathing, learning, working, and excreting."

Defendants have enumerated major life function impairments that Plaintiff has plead in embarrassing detail, for example, on page 16 of their 10/16/07 Reply to Plaintiff's request for Preliminary Injunction on September 26, 2007. In preparation for their draconian approach to this case, Defendants agreed to stipulate what Defendants think should or should not be kept under seal. But apparently they have unilaterally renounced, revoked and withdrawn that offer, which would have been ripe for an admission or a "Consent Order," rather than an outright dismissal by Summary Judgment without a hearing to force dismissal of the seal order without any consideration in a hearing before the Court.

Obviously, there is a difference of opinion as to what should and what should not remain under seal based upon the Defendants' Motion to seal the proceeding in the first place, the Court's Order to Seal the proceedings, and then the Defendants' change of heart, by which they want the Court to reconsider their Motion to Seal despite Plaintiff's desire to maintain the seal at least until a final determination on the merits. That would include waiting until the various motions under seal can be considered with a view to a permanent seal at trial on the merits. Also, it is believed that the majority of motions made by Plaintiff are not under seal because Plaintiff has endeavored to minimize the

Court's need to consider his requests to file and maintain them under seal until a final resolution of this case.

Defendants' Motion to Dismiss should also be denied because of Defendants Admissions, comprising their admissions in Note 2 on page 3 of their 10/16/07 Reply in Opposition, and Note 2 on page 5 of Defendants' 11/7/07 Motion to Dismiss, that "registration and testing requirements discussed in this brief, do not apply to attorneys who represent others having *trademark* business before the USPTO." If that is so, which they admit, there is no reason for Defendants to deny, or not to agree by an admission or in a "Consent Decree" with Plaintiff's request for a Preliminary Injunction enjoining Defendants from denying Plaintiff unlimited recognition to practice before the Trademark Office for himself and others, and to use his name as an attorney in his practice for himself and others before the Trademark Office, and for himself *pro se* before the Patent Office.

The problem is the controversy DOCUMENTED BY A HANDWRITTEN NOTE on a letter dated March 4, 1996 in Exhibit 8, over Defendants' secret seizure of Plaintiff's property in his Certificate of Registration as contraband on August 28, 1996 without probable cause, notice and an opportunity for a hearing under 35 U.S.C. 32. Of course, the controversy deepened when Defendants secretly broke into and entered the Defendants records and computer system without notice, probable cause or even a scintilla of evidence other than hearsay, to cover up the receipt of the stolen property belonging to Plaintiff. Defendants assumed that receipt of the stolen property belonging to Plaintiff and breaking and entering the Defendants record and computer system without Plaintiff's knowledge would perfect their self-initiated forfeiture to the

government, but Plaintiff never acquiesced, waived or forfeited his subjective and facial

rights to free speech, free press, and his right to advertise without prior restraint (albeit,

he did not forfeit, waive or acquiesce in the forfeiture of his other liberty and property

rights).

The *coup de gras* occurred when Defendants converted their self-initiated, self-

induced irreparable injury to Plaintiff by breaking and entry, receiving stolen property,

and forfeiting it the government, when they invaded the subjective and facial liberty and

property rights of Plaintiff by refusing to allow Plaintiff to *advertise* and promote his

name as an attorney under the First Amendment without prior restraint until he passes the

Patent Office test, which Plaintiff cannot do without the reasonable accommodations he

has requested but that have been refused, and without discrimination in favor of young,

healthy, white males because of his age related impairments.

Defendants have barred Plaintiff from advertising and promoting his name as an

attorney in both the Trademark Office and the Patent Office. Defendants have precluded

Plaintiff by prior restraint from advertising and promoting his common law trademark,

which is his name, and by prior restraint from advertising and promoting his name as an

attorney in both of his practices before the Trademark Office for himself and others,

where he is admittedly recognized to practice as an attorney, and also before the Patent

Office for himself *pro se,* where he is recognized to practice *pro se* for himself as an

attorney admitted to practice, licensed and recognized as an intellectual property attorney

in Maryland, DC and New York (albeit, he is also recognized as a patent and trademark

attorney by the Southern and Eastern Districts of New York, the Court of Appeals for the

Federal Circuit, and the Supreme Court of the United States to practice patent and

trademark law). But Defendants have not allowed Plaintiff to be recognized by the Defendants to practice as an attorney either for himself or others in the PTO, and that exclusion and suspension as an attorney <u>everywhere</u> in the PTO, i.e., <u>everywhere</u> in the PTO without an opportunity for the hearing that is required under 35 U.S.C. 32, and without the ability or accommodations to pass the Patent Office test that is *exclusively* used without reasonable accommodations, which Plaintiff has requested but which have been refused. Indeed *the Patent Office test* is the <u>only</u> means for determining Plaintiff's good moral character and reputation and qualifications to render applicants, including *himself,* as provided subjectively and facially by the plain meaning of 35 U.S.C. 2 (b)(2)(D), or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications, either trademark and/or patent applications according to the plain meaning of the statute, or other business without limitation before the PTO.

Defendants admit they allow other applicants to provide themselves valuable *pro se* service in their presentation or prosecution of their applications, both trademark and patent before the PTO, or other business before the PTO. Defendant Griffin swears under oath that he "has been registered to practice before the U.S. Patent and Trademark Office since 1984," but has "been an active member of the Virginia State Bar" only since 1989. Moreover, although his "registration to practice in patent cases currently is inactive" and has been since 1984, or about 23 years, he has not been forced to risk a forfeiture of his property right in that registration based upon "inactivity," hearsay, or a complaint with less than a scintilla of evidence or any basis in fact to base forfeiture on.

However, Defendants discriminate against Plaintiff in favor of young, healthy, white, males, because of his age related "impairments," which clearly identifies him as a

member of an odiously discriminated insular group, that is "impaired," "challenged," "ailing," and "disabled" by "physical or mental impairments that substantially limit their major life activities, defined as the functions of: "seeing, hearing, breathing, learning, working" for the PTO as a contractor under confidentiality agreements, and "excreting."

Defendants discriminate against Plaintiff by prior restraint of his publications, because he wants to advertise and promote his name as an attorney to advertise and promote his presentation or prosecution of his applications before the Patent Office both in the Trademark Office and the Patent Office.

### Broken Statutory Scheme Relied On By Defendants

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) requires the government to prove its case for forfeiture of Plaintiff's property in his Certificatre of Registration, and must return Plaintiff's Certificate of Registration to him pending trial because possession by the government would cause immediate, retroactive, and irreparable injury to Plaintiff's liberty and property rights. The Plaintiff no longer has to pay 10% cost bond just to contest the forfeiture in court. And Plaintiff has presented irrefutable evidence by reference to Exhibits 22 that prove his innocence of the hearsay upon which the Defendants rely. That evidence comprises Orders of three states that require full faith and credit, due deference and respect under 1738 of the Judicial Code as solid, material evidence of Plaintiff's good moral character and reputation, possession of the necessary qualifications to advertise and promote his name as an attorney, and less than a scintilla of evidence or, in fact, any basis in fact at all, of grounds for forfeiture of his property by the Defendants. Thus, Plaintiff contravenes the Defendants' Defense on page 4 of their 11/7/07 Motion To Dismiss Or, Alternately For Summary Judgment,

10

which relies on only one federal statute whose constitutionality in legally challenged by Plaintiff.

Contrary to Defendants' Defense, Plaintiff challenges the constitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32, whereas Defendants' Defense relies only on their defense of the constitutionality of 35 U.S.C. 2 (b)(2)(D). Page 4 of Defendants' 11/7/07 Motion to Dismiss Or, Alternately For Summary Judgment.

Defendants' principal concern is in covering up the breakdown of their application of the system for administering the inherent conflict of interest between the incompatible and inconsistent aspects of using the same personnel for "enrolling" and "disciplining" attorneys and agents, who must be separated from practicing in the Trademark Office and the Patent Office. As quoted in note 2 on page 5 of their 11/7/07 Memorandum, the Defendants rely mainly on the states to promulgate regulations setting minimum standards concerning who may be registered and permitted to practice in the PTO as an "attorney." Without conflict of interest, the states have set up *independent* and *separate* enrolling, registering and disciplining arms by the their statutory schemes, which the Defendants have failed to do.

The *enrolling* function is completely separate and distinct from the *disciplining* and *reinstatement* functions. The later requires an opportunity for a hearing. The former relies on the use of a test as only one means, namely *the test,* for determining the good moral character and reputation of applicants for enrollment, and reinstatement. And there is no problem of maintaining due process between two unlike groups of agents and attorneys in the states.

11

The Defendants, on the other hand, are clearly conflicted by a conflict of interest when they try to enroll and discipline "patent attorneys" and agents in the same organization with the same personnel, which are without authority under Art. II, Section 2, cl. 2, for two separate practices in the Trademark and Patent Offices. And they join all functions in one office where the Defendants act with inherent conflicts of interest between enrolling and disciplining and reinstating attorneys and agents. They call themselves the Office of Enrollment and Discipline, where the same Defendants who govern the recognition and conduct of agents also duplicate and interfere with the governing and discipline of attorneys under limitations of Art. IV, Section 1 and the Tenth Amendment of the Constitution and Section 1738 of the Judicial Code, as well as local rules of this and other District Courts. See, e.g., LCvR 83.7 – 83.11 for enrollment; and 83.12 83.17 for discipline; and 83.18 et. Seq., for reinstatement, etc.

The Defendants fail to recognize or abide by the limits and need to achieve the narrow tailoring and close scrutiny required to achieve the compelling governmental purposes of the freedom of speech and press clauses (albeit, they also fail to achieve or even recognize the importance, and/or the necessity, of abiding by the limits of other clauses, including Art. II, Section 2, cl. 2, and other liberty, due process and property clauses of the Constitution).

This case concerns not only Defendants' Defense of their receiving of stolen property belonging to Plaintiff and their secret forfeiture of the same based only on *hearsay*, namely, whereby the Defendants can emasculate the subjective and facial Constitutional limits that they are required to follow. They make the defense that by their actions they can not only arbitrarily, capriciously and illegally without oversight deny

12

Plaintiff a hearing in the PTO under 35 UI.S.C. 32, but also they can receive stolen property belonging to Plaintiff, and they can deny Plaintiff a hearing in this Court by their draconian Motion to Dismiss.

Defendants deny that Defendants' have denied <u>all</u> Plaintiff's requests for reasonable accommodation. See page 14 of their 11/7/07 Motion For Summary Judgment, and pages 15, 16, 25 and 27 or their 10/16/07 Reply. Yet they overlook the fact that Defendants have agreed to supply enlarged components of the Patent Office test, which they use *exclusively* as the <u>only</u> means for meeting the requirements of 35 U.S.C. 2 (b)(2)(D and 32 (also, 37 C.F.R. 10.7 and the fee requirements of 37 C.F.R. 121 (a) (3), etc).

Plaintiff is required to pass the Patent Office test, which is the sole and <u>only</u> measure used for registration or reinstatement. The State orders he was forced to obtain to prove his innocence were ignored. No investigation of the hearsay was made, and has still not been made for about eleven years. Plaintiff has been required to prove a negative, but the negative he proved is ignored by the *exclusive* use of the <u>test</u> alone for registration and restoration of his forfeited property.

The Defendants required Plaintiff to prove that his Registration Certificate was not involved in a crime warranting forfeiture as contraband based on hearsay by passing the Patent Office test as the *sole*, *only* and *exclusive* means for proving his innocence and right to be reinstated. But to pass the test, Plaintiff is forced to take a test that he cannot pass. To this end, it is undisputed that the most important "component" of the Patent Office test that has not been supplied with enlarged print, as agreed and requested but refused, is an enlarged print Manual of Patent Examining Procedure (MPEP). It is

beyond dispute that if Plaintiff has, as he has, and as he has alleged admittedly plead, an

undisputed and medically documented age related "seeing," "hearing," "breathing,"

"learning," working" and excreting," physical or mental impairment, as plead, and that

substantially limits one or more of his major life activities and functions, including

"seeing, hearing, breathing, learning, working and excreting," and which impairs and

disables him from working in his existing job as a contractor who is limited by a

confidentiality agreement with the Defendants in his existing and prospective

employment with the Defendants. Due to that confidentiality agreement with the

Defendants, the proceedings in this case must be permanently sealed.

Plaintiff is impaired, as he pleads, such that he cannot pass the Patent Office test

without an enlarged print MPEP because that impairment requires him to have an

enlarged print MPEP in order to pass the test, which is the *exclusive* and only means used

to determine whether he meets the requirements of 35 U.S.C. 2 (b)(2)(D), as well as 37

C.F.R. 10.7 and 121 (a) etc. Furthermore, refusing to grant enlarged print on all the

Patent Office test components discriminates against Plaintiff in his existing and

prospective employment relationship with the Defendants, as he has claimed and plead in

favor of young, healthy, white males. He works every day in an existing relationship and

prospective relationship with the Defendants that must remain permanently under seal in

view of his confidentiality agreement with the Defendants and the statutory requirements

appertaining thereto.

Still other reasonable accommodations that have been requested and refused,

leading to this claim of discrimination and violation of statutory provisions mentioned

extensively by Defendants and Plaintiff, comprise life disabling "seeing, hearing,

14

learning, working and excreting" impairments, as mentioned above that are aggravated by requests and refusals to supply adequate review conditions for past exams, including Plaintiff's own past and future exams, and those of others. There is no appeal of these refusals and or the correction of mistakes in marking, leading to the inescapable conclusion that the *exclusive* use of the exam as the <u>only</u> means for testing compliance with 35 U.S.C. 2 (b)(2)(D), is not only arbitrary and capricious, but illegal and unconstitutional, and not in conformance with subjective and facial statutory requirements, comprising, without limitation, 35 U.S.C. 6, and 32, which are themselves not constitutionally authorized by Art. II, Section 2, cl. 2, particularly in the means used for the appointment of the Board of Appeals, which any person has a right to have direct access to, not only *inter alia*, under 35 U.S.C.306, and not only under the provisions of 35 U.S.C. 134 or 313, but also for Plaintiff himself and others as an attorney generally, or as a patent attorney, via 28 U.S.C 1331 and 1338, and direct access to this Court under 35 U.S.C.306, etc.

Pursuant to <u>Rule 36</u> this is a Motion For Admissions, with a request to file under seal, accompanied by Plaintiff's Motion <u>Under Rule 64</u> to Seize Stolen Property of Plaintiff and other property in the possession, control or knowledge of the Defendants, who have received stolen property and are admittedly holding Plaintiff's property against his will for the purpose of covering up the <u>broken</u> "Statutory Scheme" that is the basis of their defense in this and other cases in which a Preliminary Injunction has been granted. See <u>Tafas et al.</u>, 1:07cv846 (JCC) United States District Court For the Eastern District of Virginia, Order dated October 31, 2007 Granting: "Plaintiff's Motion for Preliminary Injunction," James C. Cacheris, United States District Court Judge.

15

The principle break in the "Statutory Scheme" is the lack of Congressional Authorization for 35 U.S.C. 2 (b)(2)(D), 6 and 32, and its failure to provide authorized access to the Board of Appeals. Indeed, the whole system for denying hearings and appeals as a result of those hearing is fatal to Defendants defense in their Opposition to Plaintiff's Motion For Preliminary Judgment in this Court, his requests for a hearing and his right of an appeal on Petitions for Review or otherwise in the PTO, and their attempt to suppress his right to a hearing in this appeal by a Motion to Dismiss that automatically ends the seal order that all agree is required in this case..

As such Defendants Dudas, Moatz and Griffin are essential parties and cannot be removed as requested by Defendants. They are accessories and co-conspirators in the interference with the administration of justice by trying to suppress Plaintiff's right to a hearing in the PTO, in this Court, and in this appeal for the Court's oversight on the merits in a final hearing, which Defendants oppose by their Motion to Dismiss or, Alternately For Summary Judgment.

The Defendants have admittedly received property, including the stolen property belonging to the Plaintiff in his Certificate of Registration, which he was able to obtain by passing the Patent Office test, which is the *exclusive* and *only* means used by the PTO to allow ascent into the rarified realm of anointed, registered an recognized practitioners, as described in Exhibit 1 of Defendants' 10/16/07 Memorandum in Opposition. See Exhibits 1 and 2, and the letters of August 15, 2005, August 16, 2006 and August 22, 2007, as overwhelming, weighty, relevant, objective, material evidence that the exam is the *sole*, *only* and *exclusive* means to convert hearsay into proof of guilt, and to use that

16

"guilt" arbitrarily, capriciously and odiously into a filter to separate those who are registered from those who are not.

That conversion in this case was evidenced by the letter announcing the passing of the Patent Office test, which was used in 1958, as the *exclusive* and *only* basis for receiving, holding or controlling stolen property belonging to Plaintiff. Exhibit 1, is an admission that the test is the *exclusive* and *only* basis for recognizing Plaintiff's property in his Certificate of Registration No. 19,240, which was granted, issued, patented, enrolled, and registered with the Seal of the United States on November 5, 1958.

Exhibit 8 is evidence of the conspiracy to thwart the administration of justice by preventing Plaintiff from instituting an administrative appeal in the Defendant PTO and an appeal to this Court by secretly breaking and entering into the Defendants' records, and then receiving the stolen property of Plaintiff' without notice and an opportunity for a hearing concerning hearsay evidence held in abeyance under 35 U.S.C. 32. To this end, Defendant Moatz' predecessor as head of the Office of Enrollment and Discipline (OED), in her self-identified, unilateral, "Consent Decree" without Plaintiff's consent, mandated a new condition for the reexamination of Plaintiff's status, effectively only when and if Plaintiff requested reexamination as the *exclusive* and only means used to determine his good moral character and reputation and possession of the necessary qualifications to render to himself or other applicants before the Trademark Office and the Patent Office, valuable service, advice and assistance in the presentation or prosecution of their Trademark and Patent Applications or other business before the PTO.

Her self-identified, unilateral, self-imposed "Consent Decree" dated March 4, 1996, which could only be applied without an opportunity for the hearing required under

17

35 U.S.C. 32, said she was holding in abeyance hearsay based upon an investigation instituted and dropped in Maryland on November 28, 1995 according to Exhibit 4.

That letter of March 4, 1996, is also evidence of a conspiracy to interfere with the administration of justice that protects Plaintiff's right to a hearing and an appeal under 35 U.S.C. 32.

To this end, as a co-conspirator and an accessory to the interference of the administration of justice, including Plaintiff's appeal rights, she, and likewise the Defendants, entered into and continued the conspiracy to prevent Plaintiff from any notice and opportunity of a hearing, or any right of appeal, based on the new question of patentability raised by the letters of August 15, 2005, August 16, 2006, and August 22, 2007. Plaintiff's Petitions for review dated 7/11/06 and 5/21/07, were decided negatively by those letters. Consequently, Plaintiff timely appealed to this Court to overturn the Decisions made by Defendants in those letters, to receive stolen property, to break and enter the record system of the PTO, and to hold and forfeit that stolen property to the government, by the holding and refusal to return that property to the Plaintiff.

In good faith, Plaintiff asked for reexamination three times to reexamine the substantial new question of patentability and validity of his claim of patentability for a limited period of exclusivity and Regisratability of his new, novel unique and unobvious trademark, and name as an attorney.

Plaintiff's Certificate of Registration claims in open letters patent that he is the attorney named, based upon a new question of patentability. He denies Defendants' claim affecting his claim by forcing Plaintiff without any right of appeal to accept the

receiving of stolen property belonging to Plaintiff by the Defendants, as evidenced by his Certificate of Registration No. 19,240.

As the conspiracy progressed, Plaintiff was prevented from practicing before the Trademark Office by the threat of prosecution under 35 U.S.C. 32 and 33, despite what Defendants say in Note 2 on page 3 of their 10/16/07 Opposition, and Note 2 on page 5 of their 11/7/07 Motion to Dismiss.   To this end, for example, Defendants' 11/7/07 Motion to Dismiss or, For Summary Judgment, discusses Defendants' threat under 35 U.S.C. Section 33 on page 5, which as Plaintiff well knows, involves $1000 fines for each offense. Plaintiff takes to heart this threat of prosecution because it causes him irreparable injury without even a scintilla of evidence other than hearsay, or even any basis in fact, based on a cleverly disguised conspiracy with an intent to punish Plaintiff and keep him from enjoying a hearing and a right of appeal, and by depriving him of his liberty and privacy rights.

To this end, Karen L. Bovard, Defendant Moatz' predecessor, and Defendant Moatz as head of OED, did not notify Plaintiff of their self-identified, unilateral, self-imposed "Consent Decree," without Plaintiff's consent, prior notice or an opportunity for a hearing, that raised a retroactive condition for reexamination of his status by holding in abeyance an investigation of Plaintiff based upon hearsay for the purpose of prosecution of the Plaintiff [under 35 U.S.C. 32 and 33], which are the basis of their citation of 37 C.F.R. 10.7, by forcing him to accept against his will reexamination and return of his stolen property only by satisfying the requirements of 35 C.F.R. 10.7, as provided by both 35 U.S.C. 2 (b)(2)(D) and 32, which allow an appeal only after NOTICE AND AN OPPORTUNITY OF A HEARING as required by 35 U.S.C. 32, which was not given.

The conspiracy continues to receive stolen property and hold it to make Plaintiff a hostage to the receipt of stolen property by the Defendants against his will, continued by interfering with the administration of justice in a conspiracy to defeat an appeal in this Court and in the PTO. Plaintiff made omnibus requests for his rights. While not limited thereby, his rights include Petitions For Review and Continuations or Continuations-in-part, Reexaminations and Corrections of his Certificate of Registration; U.S. Patent No. 5,256,367; applications S.N. 29/273,235, filed 02/26/2007 and S.N. 77/247,319, filed on 08/04/2007; his Petitions for Review on 7/11/2006 and 5/21/2007; and his appeal directly to this Court of the Defendants Decisions on August 15, 2005, August 16, 2006, and August 22, 2007. This appeal involves, e.g., Section 251 Reissue; 253 Disclaimer; 256 Correction; 302 Reexamination; and Reversal of decisions for Section 203 March-in-rights, or otherwise, for refusals to provide reasonable accommodations made in and by the PTO, including those made to discriminate against him and to coerce him not to practice any where in the PTO, including in his trademark applications for himself or others, or in the Patent Office for himself or others as an attorney, so long as the stolen property was being held by the Defendants.

This receipt of stolen property included the description of his property in his Certificate of Registration and U.S. Patent 5,256,367 in the name of Cornell D.M. Judge, et al, on the basis of the printed Certificate of Registration No. 19,240, which was believed to have a bearing on the inventorship and patentability of claims 1-13 by pointing out a substantial new question of patentability raised in the Consent Decree of March 4, 1996 (Exhibit 8), and the letters of August 15, 2005; August 16, 2006; and August 22, 2007.

Defendants made clear and unambiguous Decisions on Plaintiff's omnibus requests for reexamination on August 15, 2005; August 16, 2006; and August 22, 2007, which were, of course, not limited to his requests for reexamination of his status or claims of substantial new questions of patentability, which gave Plaintiff a right of appeal directly to the Board of Appeals under 35 U.S.C. 306, and to this Court, which Plaintiff timely perfected, contrary to what Defendants allege.   The August 2005, 2006 and 2007 Decisions, include Decisions on Plaintiff's Petitions for Review on 7/11/2006 and 5/21/07, for which he made payments of the required fees of $130 for each Petition. Those Decisions are subject to appeal in this Court because they were made within the required statutory period. See, e.g., Public Law 106-185, 106th Congress, 4/25/2000.

Like 35 U.S.C. 302 and that Act, "Any person at any time may file a request for reexamination…" or claim to "property" seized, and here identified as a Certificate of Registration No. 19,240. An investigation was held in abeyance as a threat since 1996, so the claim was non-frivolous and under oath as an attorney subject to perjury. His practice in the PTO was threatened with fines of $1000 for each occurrence due to applied conditions of the August 2005, 2006 and 2007 letters (Exhibits 8 and 33).

Indeed, the new conditions retroactively and uniquely applied to Plaintiff are not applied to Defendant Griffin under 35 U.S.C. 2 or otherwise, even if he remains inactive indefinitely while remaining registered to practice. See his affidavit in Exhibit 32. And under that Section *any one* can file and prosecute for himself in the Patent Office and the Trademark Office with or without a Certificate of Registration, and whether registered or not, because everyone has a constitutional right under the First Amendment and 35

U.S.C. 101 to disseminate and to dedicate his unedited work to the public. Indeed, he is motivated to do so rather than to suppress his advertisement or holding it secret.

The conspiracy of the Defendants threatened and punished Plaintiff, and interfered with the administration of justice. He is not required to take steps that he believed would likely subject him or others to physical danger by incarceration and $1000 fines. To this end, Plaintiff gave timely notice to protect his non-frivolous right to show by a preponderance of evidence in this Court now that he was an innocent owner when the forfeiture took place, and that he did all that could be reasonably be expected under the circumstances to get his property in his Certificate of Registration back, and to protect his due process rights, his property rights as an innocent owner, his liberty rights to advertise and promote his property rights, and his right to his emancipation by practicing his profession free from uncontrolled regulations, prior restraint, and content regulation. To this end, he has a common law property and liberty right of clear statement to publicity in the use his name as an attorney. Neither the patent statutes nor the Constitution supports the doctrine of election of recognition under the Patent and Copyright laws. In re Yardley, 493 F.2d 1389, 181 USPQ 331 (CCPA 1974); Patents, Donald Chisum, Sec. 1.04 (5), 1979, p. 1-157. The patent laws and trademark laws overlap in terms of subject matter and federal and state jurisdiction, just as the patent and copyright laws do, 1 Nimmer, Copyrights, Sec. 38 (1975). Obviously, this overlap is not complete. Mazer v. Stein, 347 U.S. 201, 100 USPQ 325 (1954). That is the reason for more than one statute. The requirements are different, e.g., in copyrights and reexamination under 35 U.S.C.302 et seq., or correction of patents under 35 U.S.C. 254, 255 and 256. The clear statement of the law is to provide for dual coverage in appropriate

cases, and different coverage simultaneously, save only if the tem is increased.
Korzybski v. Underwood & Underwood, Inc., 36 F.2d 727, 3USPQ 242 (2d Cir. 1929). .

Plaintiff has a possessory interest in his Certificate of Registration; he has sufficient ties to the community to assure that the property will be available at trial; the continued possession of his property by Defendants will cause irreparable harm to Plaintiff in preventing the functioning of his business and work before the PTO; and that hardship will likely continue as long as the government holds his seized, forfeited, or otherwise stolen property, which outweighs the risk that the property will be destroyed, damaged, lost, concealed, or transferred if returned to Plaintiff; as he has requested its return from the Defendants, who are the appropriate officials for that request. his possession will cause no harm to Defendants. also has a common law and constitutional right of clear statement to be free of prior restraint and/or content regulation of his thought and inquiry.  Edwards Cse, Mich. 6 Jacobil, 77 Eng. Rep. 1421 (KB 1609).  An attempt was made to limit this doctrine of "no prior restraint" in the *Patent Act of 1790*. It made the publications and Certificates of Registration in the PTO a matter of grace. However, the First Amendment defeated this Government attempt to deny patents and Certificates of Registrations by prior restraint, and/or by the requirement of the passage of the Patent Office test as the *exclusive* and only means used for determining good moral character and reputation and qualifications for rendering to applicants for patent and/or trademark applications or other persons valuable service, advice, and assistance in the presentation or prosecution of their trademark and/or patent applications or other business before the PTO.

As far as editing and prior restraint, it is arbitrary, capricious and beyond their authority for the Defendants to use the Patent Office test *exclusively* as the <u>only</u> means for determining the right to limit and control the advertisements and promotion of an attorney's name as an attorney in patents and trademarks by prior restraint of that use. The suspension and exclusion of an attorney without an opportunity for a hearing is not allowed for the use of his name as an attorney, and/or to limit Plaintiff's right to recognition at all based upon the *exclusive* use of the Patent Office test <u>only</u> to determine his moral character and reputation, as a necessary qualifications to render applicants for patents and trademarks or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications for trademarks and patents or other business before the PTO,

This is supported by the maxim *leges posteriors priores contgrarias abrogant,* 1 Bl. Comm. 59-62 (8th ed. 1778). The reference here is to the concept that the First Amendment in 1791, which came later than the first Patent Act of 1790, abrogated the earlier 1790 patent statute because the two are manifestly inconsistent and repugnant to each other

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 11/19/07

24

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

**Case: 07-cv-01719 (RWR)**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that service of the foregoing has been made by hand

delivering a copy thereof to:

W.Mark Nebeker, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230

on this 19th day of November, 2007.

*Cornell D. M. Judge Cornish*
_____
Cornell D.M. Judge Cornish, Pro Se
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202 429-9705

Date: 11/19/07

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
        )
        Plaintiff *Pro Se*     )
        )
v.        )
        )
JON DUDAS, et al.,        )
        )    CASE   07-CV-01719 (RWR)
        Defendants    )
_____)

### DECLARATION

The District of Columbia    :
          : ss
The City of Washington

        Sworn to and subscribed before me on this _____ day

of_____, 2007, in the above-identified action..

_____

        Notary Public

Date:

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                                   )
            Plaintiff *Pro Se*   )
                                   )
v.                                   )
                                   )
JON DUDAS, et al.,              )
                                 )   CASE  07-CV-01719 (RWR)
            Defendants     )
_____)

### ORDER

UPON CONSIDERATION of Plaintiff's Unopposed Motion For Leave To File

Under Seal, And Memorandum In Support Thereof, and the grounds stated therefore, and

the entire record herein, it is on this _____ day of _____, 2007.

Hereby

Ordered that Plaintiff's motion should be and it is hereby granted; and it is,

FURTHER ORDERED the Plaintiff's Motions Under Rule 36 and as requested in

His Summons and Complaint For Preliminary Injunctions are hereby granted.

_____

UNITED STATES DISTRICT JUDGE

W. MARK NEBEKER           Cornell D.M. Judge Cornish
Assistant U.S. Attorney       Suite 301
555 4ᵗʰ Streets, NW          1101 New Hampshire Ave., NW
Civil Division                Washington, DC 20037-1502
Washington, DC 20530

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff *Pro Se*⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JON DUDAS, et al.,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants⠀⠀⠀⠀⠀⠀)⠀⠀⠀CASE⠀⠀07-CV-01719 (RWR)
_____)

## DECLARATION

The District of Columbia⠀⠀⠀:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀: ss
The City of Washington

⠀⠀⠀⠀Sworn to and subscribed before me on this ___*19th*___ day

of ___*November*___, 2007, in the above-identified action..

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*Barbara J. Johnson*

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Notary Public

Date:⠀⠀*11/19/07*

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀**Barbara J. Johnson**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Notary Public, District of Columbia
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀My Commission Expires 4/30/2011

