UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

**RECEIVED**

DEC 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CORNELL D.M. JUDGE CORNISH,        )
                                    )
            Plaintiff *Pro Se*      )
                                    )
v.                                  )
                                    )
JON DUDAS, et al.,                  )
                                    )    CASE  07-CV-01719 (RWR)
            Defendants              )
_____)

PLAINTIFF'S TIMELY SUPPLEMENTAL RESPONSE WITH APPROVAL
OF THE COURT FOR AN ENLARGEMENT OF TIME TO RESPOND TO
DEFENDANTS' MOTION TO DISMISS

Plaintiff hereby timely and further opposes Defendants' Motion to Dismiss or,

Summary Judgment counterclaim, in accordance with the Courts' Order of December 7,

2007, which allowed Plaintiff an enlarged time to Oppose, and which set a time for reply

to expire 11 days from the entry of the Order.  The Court's Order of enlargement is

greatly appreciated because such Orders are routinely delayed in reaching the Plaintiff by

mail, and so Plaintiff is attempting to obtain the Court's permission for electronic filing

with the Court's gracious permission.

Plaintiff has Acrobat, Adobe and Windows XP software for receiving and sending

PDF files, and to this end he is employed in responding to [redacted] patent applications

received by the [redacted], which are preserved in secrecy according to a confidentiality

agreement with the [redacted]..

Referring now more particularly to Plaintiff's Opposition to Defendants' Motion

to Dismiss, the Court's Order gives Plaintiff an opportunity to address the retroactivity

problem with the Defendant's "removal" of Plaintiff's right to practice in the PTO (albeit,

this is in both the Trademark and Patent Offices). The "removal" was made secretly and fraudulently sometime in April 1996, at an undetermined date, without notice to Plaintiff. To this end, the Court is directed to the Defendants Exhibit 8 in their initial Opposition on 10/16/07,  In the letter of March 4, 1996 in that Exhibit 8, the PTO intentionally misinterpreted Plaintiff's letter of 2/8/86 in order to coerce him into silence, and to create a fiendishly, malicious and coerced, involuntary  settlement of silence as a tactical mooting strategy to avoid adverse fees and costs that would be awarded against them for claiming a right to retroactively make Plaintiff cease from practicing in the entire PTO, i.e., against the *bargain* made with <u>all</u> attorneys in both the Trademark Office and the Patent Office to allow practice in the Trademark Office without passing the Patent Office test, as Plaintiff did. The bargain also made with *all* attorneys, allows them to advertise their names as an attorney in the Patent Office without *prior restraint* by passing the test.

However, the 3/4/96 letter revoked that bargain retroactively. It was a malicious, conspiracy and scheme intended to obstruct justice by depriving Plaintiff of his access to the Courts. It was a plan intended to secretly "remove" Plaintiff's name and ID from the register of attorneys without notice to Plaintiff, which apparently they schemed to do with their constitutionally insufficient notice on August 28, 1996 by a  handwritten note on Exhibit 8 asking an otherwise unidentified person named Pat to "pls. remove Cornish from the roster" without notice to Plaintiff or any apparent effort to publish the removal in the OG or anywhere else until June 15, 2000 in Defendants Exhibit 33.

On June 15, 2000, in Exhibit 33, in a letter dated January 15, 2000, which was based upon a slanderous hearsay by which it was necessary to redact the addressees'

2

name in accordance with the tactical mooting technique employed to avoid the prospect of adverse fees and costs. Defendant Moatz spoke of the removal of Cornish's name from the "roster" of attorneys and agents, not the register, this time referring only to a date sometime in 1996, which could mean any time in 1996..

That secret "removal" of Plaintiff's privileges and immunities, with irreparable injury to his "reputation," "occupation," "name" and "identity" without notice to Plaintiff, and by a retroactive *"prior restraint"* of his ability to advertise his name and *occupation* as an attorney in the entire PTO, both in the Patent Office and the Trademark Office, by secretly revoking the bargain reached beforehand with all attorneys. Defendants actions, thus had a profound irreparable and injurious effect that has damaged Plaintiff, and for which he expects to recover damages up to one million dollars for injury to the "reputation," "occupation," "name" and "identity."    The full effect of that profound retroactive damage has only been finally made known to Plaintiff by what Defendants claim is their counterclaim on October 16, 2007. Plaintiff has requested a Preliminary Injunction to enjoin such an effect and to stop the hemorrhage of monetary damages.

In Tafas v. Dudas et al, No. 1:07-cv-846-JCC-TRJ consolidated with SmithKline Beecham Corporation et al v. Dudas et al., ____F.Supp.2d ____, No. 1"07-cv-01008-JC-TRJ, 2007 WI, 3196683 (E.D. Va., October 31, 2007), the court granted a Preliminary Injunction against the PTO's effort to retroactively impair the bargain the PTO had made with all attorneys to surrender their trade secret rights when they seek patent protection.    Likewise, the Defendants have retroactively retracted and impaired their bargain to allow Plaintiff, like all attorneys, to practice in the Trademark Office

3

without being registered on the register of attorneys in the PTO by <u>retroactively</u> making it more difficult, more expensive and more complicated for him to practice in the Trademark Office, as well as the Patent Office by *prior restraint* of the use of his shingle as an attorney, i.e., by *prior restraint* of his *niche* advertisements of his name as an attorney in patents and trademarks.

It is noted that the Supreme Court has held that a regulation is retroactive only if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose duties with respect to transactions already completed." <u>Landgraf v. ISO Films Prod.</u>, 511 U.S. 244 (1994).

The Defendants in the subject case have not only <u>retroactively</u> made it more difficult and dangerous for Plaintiff to practice in the PTO, and particularly in the Trademark Office by *prior restraint*. They are attempting to deprive Plaintiff of access to this Court by their Motion to Dismiss, despite the fact, not only that there are many issues in dispute, but also because of Plaintiff's clear-cut success in showing (1) the likelihood of his success on the merits; (2) the irreparable harm to Plaintiff if the Preliminary Injunction he requested is denied; (3) the balance of hardships between the parties clearly shows no damage to the Defendants; and (4) the public interest is greatly satisfied and not injured by the injuinction.

The Court Order on December 7, 2007, was in response to Plaintiff's unopposed Motion [17] for an extension of time to respond to Defendants' Motion to Dismiss, not just by an "Amended" Motion, but by a Supplemental Response, perhaps in view of what may be an approval by a long standing, well established principle to construe Plaintiff's case as an analogue to "*habeas corpus*" in his civil case without displacing the usual rules

4

of finality, as mentioned in <u>Florida State Board of Dentistry v. Mack</u>, 401 U.S.960 (1971), citing <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

Or perhaps, the Court is conscious of the "Invisible Man," test in which the Defendants have by *prior restraint,* threats, intimidation, coercion, inequitable conduct, and particularly delay and refusal to give Plaintiff a hearing or access to the Courts, and/or even because of Defendants' possible fraud, have irreparably damaged his *reputation* and *occupational* <u>identity</u> to the point where he is forced to fight for <u>standing</u> in this Court and the defeat of Defendants' Motion to Dismiss. He is fighting for his life against the Defendants' intent to irreparably give him a civil disability that goes with their Motion to Dismiss, so as to have his *reputational* an *occupational* <u>identity</u> restored by adding his name to his patents and trademarks as an attorney.

In this case, Plaintiff claims that the *prior restraint* of his use of his name as an attorney in a patent and trademark is an Article III controversy "fit for review," and a concrete, personal, particularized and actual or imminent injury in fact that is ripe for review and not "moot," as Defendants allege (albeit, that is one of many genuine issues of fact in dispute in this case or Article III controversy). And Plaintiff meets the requirements specified by Defendants for a Preliminary Injunction and to defeat their Motion to Dismiss, i.e., "merit" and likelihood that Plaintiff will prevail on his remaining claims, irreparable damage to Plaintiff, lack of injury to the Defendants and the Public; and genuine issues of fact in dispute, so as to defeat Defendants' Motion to Dismiss.

A case now making its way through the courts can be cited for the proposition that at least one court seems to agree with the plaintiff in that case, and by construction the Plaintiff in this case. The plaintiff name was Dr. Czarnik in that cited case. His

5

"occupation" is "inventor." Plaintiff's occupation is "patent attorney," and has been for his entire career for nearly fifty years, since November 5, 1958. As for the plaintiff in both cases, having his name and "occupation" attached to a patent means the difference between a lucrative and rewarding career, and living a life of obscurity, toiling for others at low-paying jobs. In an order filed on July 13, 2006, a district judge found that Dr. Czarnikk's request to have his name and *occupation* restored together in a patent had merit. The judge referenced Chou v. University of Chicago, 254 Fed 1347, 1359 (Fed. Cir. 2001).

That is a case cited by Plaintiff for jurisdiction and standing to examine whether or not "reputational" and "occupational" injury (albeit, also property, and privileges and immunities" injury in this case), may be enough to satisfy standing requirements where an action is brought to change inventorship," i.e., to have his name listed with his *occupation* as an inventor on a patent (albeit, Plaintiff wants his name to be listed with his *niche occupation* as an attorney on his patents and trademarks).

This case is based upon the "reputational," "occupational," "privileges and immunities" and property injury to the Plaintiff, who is a lawyer. All were secretly seized by the Defendants. They wee taken along with Plaintiff's property in his Certificate of Registration No. 19,240, which were taken without constitutionally sufficient notice. And Defendants have prevented Plaintiff by *prior restraint* from advertising his name and *occupation* as an attorney on a patent and trademark ever since. As noted above, the suppression of his trademark practice has been secretly taken and retroactively applied from 1996 to the present, and infinitely into the future.

6

As realized, for example, in <u>Bates v. State Bar of Arizona</u>, 433 U.S. 350 (1977), "a code of professional ethics, an imbued sense of professional and public responsibility, a tradition of self-discipline, and duties as officers of the courts – would suffer if the restraints on advertising were significantly diluted." <u>All</u> of *all* attorneys' profession, *occupation* and <u>reputation</u> depends uniquely and profoundly on an ability to advertise his name and *occupation* together, e.g., to "hold himself out" as an attorney on a shingle or otherwise by other advertisements, such as by using their name as a common law trademark for their legal services. **See** <u>Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp. d/b/a Milbank Real Estate Services (D.D. Cal. 82 U.S.P.Q.2d 1583 (2007))</u>.

And the publics' right to benefit from those services and his "occupation" and "reputation," depends on his ability to advertise.  The Defendants *prior restraint* of Plaintiff causes a profound, personal, concrete, particularized, and actual or imminent, irredeemable, irreversible, and irreparable "reputational," financial and property damage to Plaintiff.

To this end, the Plaintiff wants the Court to construe his claim for equitable relief as a First Amendment case to enjoin Defendants/ *prior restraint* of Plaintiff's use of his "shingle," i.e., his advertisement of his name in his pending patent and trademark applications because of "reputational" injury, and an injury to his privileges and immunities, and his property without just compensation, and the "removal" of, and/or the manifestly unjust and secret tampering with, his name and "identity" to secretly separate him from his "occupation" on the register of attorneys, i.e., removal of his "identity" and

7

the secret tampering with his "shingle" in the PTO as a *niche* marketing tool, without constitutionally sufficient notice or due process.

Plaintiff's legal claim for equitable relief, therefore, includes a request for the Court to construe his legal claim as an *anti-prior restraint* claim*; anti*-due process claim, *anti*-forfeiture claim; *anti*-removal; and *anti*-seizure claim against constitutionally insufficient notice and secret seizure; and a constitutional challenge against specific Patent Statutes. i.e., 35 U.S.C. 2 (b)(2)(D), 6 and 32, as being vague, indefinite, and *overly broad* under the Constitutional standards cited by Plaintiff, and, in any event, unconstitutionally misapplied by a clearly erroneous interpretation of the Constitution and the statutes themselves. Under the correct construction, this Court would not be so lacking in standards that it could meaningfully use in evaluating Defendants' interpretation, and to deny Defendants' Motion to Dismiss as Plaintiff requests.

Plaintiff claims that Defendants interpretations of the cited Patent Statutes are clearly erroneous interpretations of those statutes because they use the Patent Office test exclusively as the only means of administering the above-cited Patent Statutes to de-register registered attorneys who are presumed to be constitutionally "competent" and "qualified" under the cited Patent Statues. Their interpretation is an inconsistent and irrational interpretation.

The Defendants' clearly erroneous interpretation of the cited Patent Statutes can be evaluated and determined by this Court by using the First, Fourth, Fifth and Tenth Amendments, and Articles I, II, and IV of the Constitution instead of the APA. Thus, this Court does not the lack standards that it could meaningfully use in evaluating the type of enrolling, disciplining and reinstating decisions that were made against Plaintiff,

8

the secret tampering with his "shingle" in the PTO as a *niche* marketing tool, without constitutionally sufficient notice or due process.

Plaintiff's legal claim for equitable relief, therefore, includes a request for the Court to construe his legal claim as an *anti-prior restraint* claim*; anti*-due process claim, *anti*-forfeiture claim; *anti*-removal; and *anti*-seizure claim against constitutionally insufficient notice and secret seizure; and a constitutional challenge against specific Patent Statutes. i.e., 35 U.S.C. 2 (b)(2)(D), 6 and 32, as being vague, indefinite, and *overly broad* under the Constitutional standards cited by Plaintiff, and, in any event, unconstitutionally misapplied by a clearly erroneous interpretation of the Constitution and the statutes themselves. Under the correct construction, this Court would not be so lacking in standards that it could meaningfully use in evaluating Defendants' interpretation, and to deny Defendants' Motion to Dismiss as Plaintiff requests.

Plaintiff claims that Defendants interpretations of the cited Patent Statutes are clearly erroneous interpretations of those statutes because they use the Patent Office test exclusively as the only means of administering the above-cited Patent Statutes to de-register registered attorneys who are presumed to be constitutionally "competent" and "qualified" under the cited Patent Statues. Their interpretation is an inconsistent and irrational interpretation.

The Defendants' clearly erroneous interpretation of the cited Patent Statutes can be evaluated and determined by this Court by using the First, Fourth, Fifth and Tenth Amendments, and Articles I, II, and IV of the Constitution instead of the APA. Thus, this Court does not the lack standards that it could meaningfully use in evaluating the type of enrolling, disciplining and reinstating decisions that were made against Plaintiff,

8

particularly since there is an inherent conflict of interest in combining all those functions in one small set of administrators without Authorization from Congress under Article II, Section 2, cl. 2. **See**   Civil Action No. 07-1224 (JR) in this Court, in which the court found that Congress has given only the broadest of instructions in 35 U.S.C. 3 (b) such that it is unreviewable under the APA.

**Compare**   Tafas v. Dudas et al, No. 1:07-cv-846-JCC-TRJ consolidated with SmithKline Beecham Corporation et al v. Dudas et al., ____F.Supp.2d ____, No. 1"07-cv-01008-JC-TRJ, 2007 WI, 3196683 (E.D. Va., Octover 31, 2007), in which the court granted a preliminary injunction against the PTO's effort to make it more difficult, more expensive and more complicated for customers to use the PTO.  Like, the Defendants in the subject case, the PTO is attempting to make it more expensive for its consumers and their attorneys to use the patent system.  The Defendants are continually trying  to require more sophisticated attorneys, to raise their attorneys' malpractice rates, and, thus, making costs prohibitive for customers to use the system, and, indeed, so that they won't use the patent system.   "Let's Run the PTO as a Business," Intellectual Property Today, December 2007, p. 26-28,

Plaintiff claims that the Defendants are likewise using a clearly erroneous interpretation of the statutes cited as unconstitutional by the Plaintiff to complicate and increase the cost of the system.    To this end, their interpretation is unconstitutionally vague, indefinite and overly broad, for which Plaintiff seeks a Preliminary injunction under an appropriate jurisdictional statute, e.g., 28 U.S.C. 1292, 1331, 1332, 1338, 1361, 1366, 1367 *et seq*., e.g.; 19 U.S.C. 1607, 1609, a forfeiture statute, such as 983; Rule 64; Art. I, Section 8, cl. 8; II, Section 2, cl. 2;  IV, Section 1 and 2; and Amendments I, IV, V

9

and X of the Constitution; all without displacing the usual rules of finality, as mentioned in Florida State Board of Dentistry v. Mack, 401 U.S.960 (1971), citing Younger v. Harris, 401 U.S. 37 (1971).

In Younger, as in this case and Dombrowski v. Pfister, 380 U.S. 479 (1965), there appears to be a substantially broadened availability of injunction without any showing of bad faith or harassment, whenever a statue is found "on its face" to be vague or overly broad in violation of the First Amendment, such as in this case with 35 U.S.C. 2 (b)(2)(D), 6 and 32. Such statements are unnecessary to that case, or this one, under long established principles, because that District Court issuing that injunction, and the injunction Plaintiff is asking this Court to issue in this case, has continuing power to lift it at any time and remit the Plaintiff to a final judgment on the merits. **See** Cameron v. Johnson, 390 U.S. 611 (1968); and 28 U.S.C. 1292.

To this end, Plaintiff seeks the *status quo* without any injury to the Defendants or the Public because the lack of an injunction will injure the public and the "reputational" standing of the Plaintiff by depriving the public of information they need to obtain the services they need and want at a reasonable cost. Plaintiff is forced by Defendants to not only operate *pro bono* in the PTO, but also outside the PTO where he has been able to practice continually and in the Trademark Office except between about August 17, 1998 and November 16, 2000, which is a fact in dispute because the Defendants claim that Plaintiff has not been able to practice in either the Trademark Office or the Patent Office for over 5 years, and still is not able to practice in the Trademark Office because an investigation is still being held in abeyance, although it is barred by the statute of limitations.

10

As will be seen below, this case can also be construed as having substantially broadened availability of injunction by a showing of bad faith and harassment because the statutes can be found to be overly broad on their face in violation of the First Amendment, either with or without construing this case as a *habeus corpus* analogue because of threats, coercion, mistakes, inequitable conduct, bad faith and harassment.

*In* Dombrowski, *Id.*, as in this case, "the threat to enforce the 35 U.S.C. 33, or 18 U.S.C. 1001 against appellant were not made with any expectation of securing valid convictions, but rather as a part of a plan to employ delay, failure to decide Petitions for Review, specifically those filed on 7/11/06 and 5/21/07, and failure to give Plaintiff a hearing or judicial review, and if that didn't work, threats of investigation and threats of prosecution or arrest under color of the vague and indefinite statues cited as unconstitutional, or 35 U..C.33 in this case, to harass Plaintiff with intent, and with bad faith, to discourage him, and his supporters if he has any, from asserting or attempting to assert or vindicate his constitutional rights and "reputation" as a citizen and a patent attorney, 380 U.S. at 482 (albeit, Plaintiff in this case is not a Negro, but is a member of an identifiable, insular, minority, namely elderly patent attorneys who have passed the Patent Office examination, and one who has practiced successfully for more than thirty years with what he believes to be a spotless record in the PTO, and whose life functions of seeing, hearing, breathing, circulating body fluids, and excreting, are impaired or compromised by age, and who is subjected to *prior restraint* and removal of his name, and identity from the roster of attorneys, and subjected to censorship of the presumptively valid content of his important, true, non-frivolous, non-deceptive, speech and press rights in his patents and trademarks; also, delay, harassment, bad faith, inequitable conduct,

11

prior secret seizure, arrest, condemnation, confiscation, interference, infringement, of forfeiture of his assets, property, identity, privilege and immunity of his profession, identity and "reputation" before the PTO and the public in connection with his patents and trademarks without constitutionally sufficient notice, or prompt judicial review of the Defendants' one-sided determination of the facts, and failure to provide reasonable accommodations, alternatives or substitutions for their needs, all of which are issues of fact that are in dispute.

To this end, Defendants require Plaintiff to pass the Patent Office examination for a second time to enforce their secret prior seizure of his Certificate of Registration without probable cause, sufficient notice, a hearing or prompt judicial review for their one-sided, determination of the facts behind their *prior restraint* of the content of his presumptively constitutional, true, speech expression of his name in his advertisement as an attorney in patents and trademarks, and currently in his applications.

The elements of Plaintiff's *anti-prior restraint, anti-*removal, *anti-*seizure standing and legal claim in this proceeding for equitable relief in this Court under 28 U.S.C. 1331 *et seq.,* are present in his original complaint, which the Court is asked to review in the context of this Response so as to include a request for permission to amend the complaint if necessary by this Motion and Memorandum in support of enlargement of time.

The complaint is legally sufficient, states a cause of action upon which relief can be granted, and for which the Plaintiff has standing in this Court, and the Court has jurisdiction.

12

Plaintiff seeks a voice in this Court to deny Defendants' attempt to silence Plaintiff's speech by their Motion to Dismiss or alternately, for a Summary Judgment

On page 28 of their 10/16/07 filing, Defendants admit that there is a genuine issue of fact in dispute, because they recognize "Plaintiff's claims under the First Amendment [but not his Due Process claim, which is a genuine issue of fact in dispute].

Plaintiff has stated a legal claim that is entitled to recovery by a Preliminary and Permanent Injunction to set aside Defendants' condemnation, confiscation, seizing and forfeiture of Plaintiff's right to enjoin Defendants' from prior restraint of his advertisements of his name as an attorney in his patent and trademark applications.

Plaintiff's rights have been irreparably injured. Defendants dispute the genuine issue of fact upon which Plaintiff's rights are based. To this end, Defendants recognize but dispute Plaintiff's "assertion that the government "has placed on him an improper prior restraint of his right to express himself by limiting his ability to advertise that he is a lawyer admitted to practice before the patent bar."

Plaintiff claims his "assertion" is true, (albeit, the expression is true and not deceitful because it is addressed to the "patent bar" for whom he seeks to be directed, but the Defendants have turned it into a genuine issue of fact by stating that it violates various statutes, including 35 U.S.C. 33 (as well as various agency regulations). Plaintiff is admitted to practice intellectual property law as a lawyer before three states and at least three federal courts, as well as well as numerous federal and state agencies. Thus, Plaintiff seeks denial of Defendants cited Motion without taking the Patent Office test under the authority of the Article II, Section 2 of the Constitution in this case, such as held in Supreme Court of Virginia et al. v. Friedman, 487 U.S. 59 (1988).

Also applicable here is the First Amendment presumption that applies heavily against the constitutional validity of prior restraints of expression under Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 P. 57 (1963). The burden of proof is on the censor to prove that the expression is unprotected by the Constitution. Proof is required in a prompt final judicial review limited to the preservation of the *status quo* for the shortest period compatible with sound judicial procedure. Freedman v. Maryland, 380 U.S. 51 (1965); and FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990).

Plaintiff's request to deny Defendants' Motion to Dismiss during the time allowed to oppose, parallels this Opposition to Defendants' 11/30/07 Opposition to Plaintiff's Motions filed on November 19, 2007, and to Oppose Defendants' 11/07/07 Motion to Dismiss Or, Alternately For Summary Judgment. The latter Motions are Alternative Motions on the basis of matters outside the pleadings, and they are presented unfairly in relation to matters that may be excluded by the court and/or that are now under seal.

Silencing Plaintiff's voice at this stage of the proceedings raises the profound and genuine issues of fact concerning the separation of powers and the role of the federal courts during peacetime and war, by silencing Plaintiff's search for remedies to the failure of Defendants to give Plaintiff any possibility of an independent judicial review of their misplaced, quixotic, impractical and unsupervised censorship of the content of Plaintiff's speech in his patent and trademark applications.

The parties have no way of knowing whether the Court can assure itself of the fairness to both parties that is required for the granting of such Motions, particularly since the matters so presented are under seal. The matters may or may not be excluded by the

14

Court, and Plaintiff has no electronic access to the proceedings whereby he could promptly learn of such exclusions or lack thereof. Also, it normally takes a week to ten days for Plaintiff to receive the filings of the Defendant due to the security precautions applied to mail in the District of Columbia. This difficulty has been discussed with the Defendants attorney, and he assured Plaintiff that he would liberally agree to enlargement of times, such as agreed to by Plaintiff heretofore, whereby extensions of time have always been unopposed by both parties heretofore. Thus, it would be unfair not to allow Plaintiff within the time allowed to oppose both Defendants bifurcated but closely related 11/19/07 Dispository Motion, and the one filed 11/30/07 or the one filed 11/07/07 to Dismiss Or Alternately for Summary Judgment.

Defendants' 11/7/07 Motion to Dismiss cites the necessity of fairness to "both parties" because "a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56, citing Americable Int'l Inc. v. Dep't of the Navy, 129 F.3d 1271m 1274 b, 5 *D.C. Cir. 1997), and Marshall County Health Care Auth., 988 F.2d at 1227).

Referring both to the genuine issues of fact both inside and outside of the pleadings, Defendants have recognized the subject matter jurisdiction and standing of Plaintiff's legal claim for a preliminary injunction under the First Amendment. But Defendants argue that they are only *marginally* affected with First Amendment concerns as alleged on page 29 of Defendants' 10/16/07 Opposition to the pleadings.

Their cite of Ohraik v. Ohio State Bar Ass'n, 436 U.A. 447, 459 (1978), on page 29 or Defendants 10/16/07 filing, is misplaced, since that case required personal, in-person solicitation, whereas Plaintiff expressive content seeks to advertise his name as an

15

Court, and Plaintiff has no electronic access to the proceedings whereby he could promptly learn of such exclusions or lack thereof. Also, it normally takes a week to ten days for Plaintiff to receive the filings of the Defendant due to the security precautions applied to mail in the District of Columbia. This difficulty has been discussed with the Defendants attorney, and he assured Plaintiff that he would liberally agree to enlargement of times, such as agreed to by Plaintiff heretofore, whereby extensions of time have always been unopposed by both parties heretofore. Thus, it would be unfair not to allow Plaintiff within the time allowed to oppose both Defendants bifurcated but closely related 11/19/07 Dispository Motion, and the one filed 11/30/07 or the one filed 11/07/07 to Dismiss Or Alternately for Summary Judgment.

Defendants' 11/7/07 Motion to Dismiss cites the necessity of fairness to "both parties" because "a motion to dismiss may be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56, citing Americable Int'l Inc. v. Dep't of the Navy, 129 F.3d 1271m 1274 b, 5 *D.C. Cir. 1997), and Marshall County Health Care Auth., 988 F.2d at 1227).

Referring both to the genuine issues of fact both inside and outside of the pleadings, Defendants have recognized the subject matter jurisdiction and standing of Plaintiff's legal claim for a preliminary injunction under the First Amendment. But Defendants argue that they are only *marginally* affected with First Amendment concerns as alleged on page 29 of Defendants' 10/16/07 Opposition to the pleadings.

Their cite of Ohraik v. Ohio State Bar Ass'n, 436 U.A. 447, 459 (1978), on page 29 or Defendants 10/16/07 filing, is misplaced, since that case required personal, in-person solicitation, whereas Plaintiff expressive content seeks to advertise his name as an

15

attorney in a patent to the broad, undistinguishable public rather than by an in-person

solicitation, such as shown in the attached title page of U.S. Patent 5,256,367.

The Defendants' cite of Leis v. Flynt, 439 U.S. 438, 443-44 (1979), is also

misplaced, because that case requested a *pro hoc vice* criminal court appearance by an

out-of-state attorney, whereas, in this case Defendant is not an out-of-state attorney, and

Defendants admit that any attorney can practice *pro hoc vice* or otherwise in the PTO as

an attorney in the Trademark Office (albeit, they have rejected limited recognition of

Plaintiff's practice by *prior restraint* of his advertisement of his name as an attorney in

the Patent Office). Thus, by *prior restraint* they condemn and confiscate Plaintiff's

privileges and immunity to practice law, and silence his expression of an advertisement to

promote his practice as an attorney on the face of a patent, which they say is moot. But

nevertheless, they refuse to let him advertise his name as an attorney, as if he is public

enemy number one, and his advertisement to the broad public would injure the public in

the same way that an in person solicitation would. Of course, such a basis for that

rejection is a relevant and genuine material fact in controversy in this case.

Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 283 n 16 (1985), which

Defendants cite, involves a case in which the Supreme Court overruled an attempt to

silence a lawyer, and upheld an application for the attorney's voice to be heard.

That case led to the establishment of a new standard for implementing the

Privileges and Immunities Clause of Article IV, 2, of the Constitution. To this end, the

Supreme Court overruled an attempt to silence an attorney by *prior restraint*

independently of an examination for admission and/or registration in the case of Supreme

Court of Virginia v. Friedman, 487 U.S. 59 (1988). That case held that Article IV, 2, of

16

the Constitution provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." See also Article IV, Section 1, and 28 U.S.C. Section 1738 of the Judicial Code, which apply equally in support of Plaintiff's case in controversy, which of necessity involves genuine issues of fact.

And, as is applicable to this case, in Friedmann, *id.*, there was no evidence to support the appellant's claim that non-residents might be less likely to keep abreast of local rules and procedures, which covers Plaintiff's situation.

Plaintiff has already passed the Patent Office test once, and kept up with his Continuing Legal Education at all times. He not only attended courses run by the bar association, but he also paid the fee to take the Patent Office test for Continuing Legal Education purposes, and, otherwise, as a mere academic exercise as he is permitted endlessly to do, while pursuing his right to preserve the heavy presumption against the constitutional validity of prior restraints of expression, including the content or expression of Plaintiff's speech in advertising his name as an attorney and holding himself out as an attorney in his existing patent and trademark applications.

Bantum Books, Inc. v. Sullivan, 372 U.S. 56, 70, n. 10. P. 57 (1963), requires the censor to prove that constitutional protection is not required.

Defendants rejected any burden of proving Plaintiff's expression unprotected by the Constitution, and delayed any opportunity for a hearing, including delaying and ultimately removing any final judicial determination by their Motion to Dismiss, all of which are presumptively invalid objects under Freedman v. Maryland, 380 U.S. 51 (1965), citing Bantam Books, *id.*

17

Standing and jurisdiction are presumptively recognized because of the ". . .danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." See Defendants threats of fines under 35 U.S.C. 33 on page 5 of their 10/07/07 Motion.

Defendants delayed and then denied Plaintiff any decision that would maintain the status quo for the shortest period compatible with sound judicial procedure despite Plaintiff's Petition for Review on 5/21/07 (albeit, the fee of $450 plus a $40 application fee for the 2007 test has been returned to Plaintiff).

Defendants used the cover of delay and confiscation to threaten, coerced and finally to censor Plaintiff's pure expression of speech in his advertisements of his name as an attorney by prior restraint in his cited patent application. See their letter of May 15, 2007, which rejected Plaintiff's request for "limited recognition." Thus, the purpose of their rejection was not true. They said it was, "In order to protect the public from unethical and incompetent patent practitioners," as stated on page 4 or their 11/07/07 Motion to Dismiss. A jury could readily believe that the real reason was to coerce Plaintiff not to advertise his name as an attorney in *any* application in the PTO, or any other business before the PTO, including his Application S.N. 29/273,235, on 1/26/07.

Defendants within only about three months of the Order in his favor in Maryland, erroneously used it as a "Consent Order" against him as a threat on March 22, 1996, to confiscate Plaintiff's Certificate of Registration. The fraud was to use a resolved investigation based upon a scurrilous and libelous hearsay while Plaintiff remained inactive in order to hold himself out for *pro bono* practice without any discipline or disability, and in order to avoid the fee required for "active" practice for a living, and

18

even after his return to active practice for a living without any requirement for a showing of fitness for reinstatement.

Plaintiff was set up for the taking of his Certificate and privileges by a secret confiscation of his Registration on or about August 28, 1996 by an internal administrative, handwritten note without Plaintiff's knowledge. He was threatened with fines of $1000 for each offense under 35 U.S.C. 33, although he is recognized to advertise and hold himself out as an attorney, as any attorney can do in practice before the Trademark Office. To that end, he was denied permission to hold himself out anywhere in any advertisement as an attorney without any judicial oversight, as indicated on page 5 of their 11/07/07 Motion to Dismiss. The intent was a civil disability by administratively confiscating his Certificate of Registration as contraband to prevent him from advertising his name as an attorney despite his demands for reasonable accommodations.

As in Bates Books, Inc., v. Sullivan, 372 U.S. 58 (1963), the Defendants here has used a system of *prior administrative restraint,* although the censor was not a judicial body, and its decisions make a particular publication objectionable without following judicial determinations authorized by Congress to be lawfully banned.

In Supreme Court of Virginia v. Friedman 487 U.S. 59 (1988), the lawyer's professional duty and interest in his reputation, and privileges and immunities, provided the same incentive to maintain high ethical standards as the incentive of lawyers who took the bar exam. All lawyers are concerned with their *reputation* in any niche community where they practice, regardless of what that niche might be. Most

practitioners in the PTO practice by mail in special niches in the PTO and keep up to date by Continuing Legal Education sponsored by the AIPLA or the Am. Bar Assoc.

In Piper, the assertion was made that out-of-state lawyers would be unavailable for proceedings. In the course of practice before the PTO before both examiners and the Board of Appeals in the Trademark Office, any lawyer except those barred by *prior restraint,* such as the Plaintiff, may appear in the Patent Office  hearings where various matters may be held on short notice. At times there is a need for a conference immediately with counsel. That is precisely why Plaintiff serves the compelling public need to champion the cause of free expression in the PTO for those most in need of help and assistance, because he is about one half hour away from the PTO by Metro, whereas most applicants and their lawyers are in distant states or foreign countries.

As held in Freedman v. Maryland, 380 U.S. 51 (1965); and FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990), there is a heavy presumption against the prior restraints of expression placed upon attorneys in hearings. This includes administrative hearings in connection with Plaintiff's patents, and his patent and trademark applications, including U.S. Patent 5,256,367; and Applications S.N. 29/273,235, filed 02/26/07; and S.N. 77/247,319, filed 08/04/07, in which Plaintiff seeks to advertise and promote his name as an attorney. See for example, the enclosed title page of his Patent 5,256,367.

The Defendants' Statement of Material Facts, particularly paragraphs 2-78, include reference to libelous or other hearsay under seal, and Exhibits under seal, and statements of law and fact that would ordinarily not require any response. Their Memorandum And Authorities In Opposition To Plaintiff's Motion To Defer Defendants' Motion to Dismiss appears beyond any doubt to have been answered by the fact that

20

Plaintiff can prove a genuine set of facts in issue that a jury could believe to support Plaintiff's legal claim of *prior restraint* and presumptively invalid *censorship* of the *content* of his pure expression via his *speech* by overbroad discretion without adequate safeguards, including the lack of any time limit or provision for judicial oversight under 35 U.S.C. 32, or otherwise.

Defendants have, thus, assigned Plaintiff to manifestly invalid suppression by prior restraint, and an unfair *retroactive* civil disability without reasonable accommodations or alternatives by administrative coercion, unjust eviction, foreclosure, forfeiture, and threats of ex post facto punishment, the proximate result of which is irreparable injury, such that Defendants actions are presumptively invalid They actually censor in the present case or controversy, and present the dangers of their censorship system for the indefinite future. See Freedman v. Maryland, 380 U.S. 51 (1965); and FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990).

This Opposition is accompanied by a separate concise Statement of Material Facts And Issues In Genuine Dispute, setting forth a wide selection of material facts as to which it is contended there exists a genuine issue necessary to be litigated, including references to the parts of the record relied on to support Plaintiff's Statement. This includes a recitation of the material facts in genuine dispute in paragraphs 2-77 of Defendants 11/7/07 Statement of Material Facts appended to their Motion to Dismiss.

But Defendants admit on page 28 of their 10/06/07 Opposition, and they agree, and/or do not otherwise disagree with, Plaintiff's subject matter jurisdiction and presumptively valid standing under the First Amendment, and Plaintiff's legal claim of *prior restraint*.

21

Having failed to support Defendants' presumptively invalid prior restraint and censorship of the expressive content of Plaintiff's speech, Defendants retreated to a case using the misplaced defense of the "rational basis test" of Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232. 239 (1957). The applicant there was excluded from taking the bar exam because of membership in the Communist Party. Plaintiff like Schware were fully qualified to take the exam in question, but both were set up for delay and censorship on the basis of confidential information that deprived them of due process. In this case and controversy, Plaintiff's privileges and immunities, "reputation," "identity," and property in his Certificate of Registration No. 19,240, was hijacked secretly and he was evicted unjustly without probable cause or due process while he was registered, by an administrative taking of his Certificate of Registration No. 19,240. The Defendants devised a plan to foreclose, forfeit and administratively take his Certificate without due process or any opportunity for a hearing or judicial oversight because of an old, discredited and libelous hearsay attack and what they call a "Consent Order" in Maryland against Plaintiff for a disability, but which in fact was a temporary Order of inactive practice for a living in his favor without discipline or disability to avoid the payment of fees for active practice, and for reinstatement without a showing of fitness.

The hearsay statement in this case is under seal and is inadmissible under Rule 803 because it is not an excluded hearsay, and it is barred by the statute of limitations.

As shown in Defendants' 10/16/07 Exhibit 8, the hearsay and Maryland Order were used as the basis of a secret exclusion of Plaintiff by an unknown person named "Pat" on an unknown date by an internal handwritten request to remove the name of an otherwise unidentified person named "Cornish" from an unidentified "roster," which is

presumptively invalid and inadmissible for lack of due process. The discredited libel

was based upon an eleven-year old hearsay statement that is inadmissible. See Charles

A. Wright & Kenneth A. Graham, Jr., Federal Pracatice and Procedure, Sec. 177 (1982)'

Ziegler v. City of South Pasadena, 86 Cal. Rptr. 2d (Cal. App. 1999) (plea of *nolo*

*contendere* to misconduct unavailable for use as an admission in a subsequent

administrative proceeding); and Harry Moatz v. David Duncan Reynolds, Proc. No. D99-

12, April 4, 2001; and Kramer v. USPTO, Civil Action 05-01455 (HHK) DC Cir. 8/9/06.

Plaintiff was excluded from passing the Patent Exam by excluding him from any

judicial oversight on the basis of both Plaintiff's due process rights and the presumptively

valid subject matter jurisdiction and standing in this Court of his First Amendment

challenge of Defendants' censorship of the expressive content of Plaintiff's speech in his

currently existing patent application S.N. 29/273,235, filed 02/26/07.

As described in the attached letter of May 15, 2007, Plaintiff's request for

"limited recognition" to prosecute his "design patent application 29/273,235, without

censorship of his pure expressive speech, as required to be submitted in his filing papers

for his application, including forms requiring a selection of a truthful advertisement to

promote his name as an attorney in the purely expressive process of prosecuting his

present and future patent applications, with the object of providing PTO interviews under

the supervision of out-of-town attorneys under the proposed new rules limiting

Continuations, but that request was "denied as moot" without adequate safeguards against

undue inhibition of his presumptively protected expression to prevent undue delay for

administrative hearings and censorship, including, for example, and the lack of a burden

on the Defendants to prove that Plaintiff's expression was unprotected by either an

23

administrative hearing under 35 U.S.C. 32 or a judicial determination to preserve the status quo for the shortest period compatible with sound judicial discretion, as required in Freedman v. Maryland, 380 U.S. 51 (1965).

Plaintiff immediately filed a Petition For Review on May 31, 2007 with a fee of $130, but no response has been received in order to thwart Plaintiff's access to this Court.

The resulting censorship additionally resulted in failure to provide reasonable accommodations without due process, whereby Plaintiff was discriminated against because of his age and physical impairments, which is also a material fact in genuine dispute.

Plaintiff has met the subject matter and standing requirements of the First Amendment, and the "rational basis test" of the Due Process Clause of the Fourteenth Amendment, which are both material facts much in dispute in this case that is presently in obvious controversy. And, of course, these are material facts in dispute because Defendants' Motion to Dismiss is an obvious attempt to prevent judicial review of Defendants violations of free speech, press and due process, as well as his property, privileges and immunities, civil rights, privacy, identity, and liberty rights in his profession, "reputation" and occupation.

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 12/18/07

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Unopposed Motion for

Enlargement of Time, and Memorandum in Support, and in Support of Plaintiff's Motion

under Rule 12 To 'Defer Issues and Controversies that are not ripe for determination have

been hand delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 18th day of November, 2007.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  12/18/07

RECEIVED

DEC 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                               )
            Plaintiff *Pro Se*  )
                               )
v.                             )
                               )
JON DUDAS, et al.,             )
                               )
            Defendants          )    CASE  07-CV-01719 (RWR)
_____)

PLAINTIFF'S TIMELY SUPPLEMENTAL RESPONSE WITH APPROVAL
OF THE COURT FOR AN ENLARGEMENT OF TIME TO RESPOND TO
DEFENDANTS' 44 PAGE MOTION TO DISMISS [16], AND TO SUPPLY A
STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE OR
AS TO WHICH THERE IS A DISPUTE, IN OPPOSITION TO DEFENDANTS'17
PAGE STATEMENT OF FACTS [16]

The following first, second and third Statement of Material Facts, is in Opposition

to Defendants 17 page Statement of Material Facts, all of which meet the test for

defeating Defendants' substantially overlong 44 page Motion to Dismiss [7]. To this end,

the following <u>first</u> Statement of Genuine Material Facts as to which there is no dispute

precedes second and third Statements of Fact upon which Defendants Motion to Dismiss

must be denied as a matter of law:

<u>**First** Statement of Material Facts As To Much There Is No Dispute</u>

1) There is a substantial likelihood that Plaintiff will succeed on the merits;

2) Plaintiff will be irreparably injured if an injunction is not granted;

3) An injunction will not substantially injure the Defendants or the Public;

4) The public interest will be furthered;

5) There are genuine issues of fact in dispute;

6) There is a present controversy under Article III;

007) The controversy is not moot;

8) The secret removal of Plaintiff's name from the register of attorneys is *void*;.

9) The removal is *void* because of constitutionally insufficient notice;

10) The removal is constitutionally *void* because of lack of due process;

11) The date of the removal is unknown;

12) The removal was never communicated to Plaintiff;

13) No OG notice of the removal was ever communicated to Plaintiff;

14) The removal is *void* because of constitutionally insufficient notice;

15) The Plaintiff's request for reinstatement was a request for CLE credit;

16) The Plaintiff requested reinstatement to admittance to take the exam;

17) The Plaintiff's request was to qualify to take the test;

18) The secret, handwritten note on 8/28/96 (Exhibit 8) was insufficient notice;

19) The 8/28/96 note was never sent to or received by Plaintiff.

20) The 8/28/96 note tampered with Plaintiff's identity;

21) The 8/28/96 note requested a breaking and entry of the PTO roster

22) The selective letter of June 15, 2000 (Exhibit 33) was insufficient;

23) The addressee of the June 15, 2000 letter is redacted;

24) The letter of June 15, 2000 was not sent to or received by Plaintiff;

25) The letter of June 15, 2000 is evidence of a conspiracy to injure Plaintiff;

26) To injure Plaintiff irreparably;

27) The conspiracy between Defendants Moatz and Griffin;

28) The letter of June 15, 2000 is evidence of an obstruction of justice;

2

29) The letter of June 15, 2000 is evidence of bad faith and harassment;

30) The letter of June 15, 2000 is evidence of a clearly erroneous interpretation;

31) The interpretation of a statute;

32) The interpretation of 35 U.S.C. 2 (b)(2)(D), 6 and 32;

33) The interpretation of 35 U.S.C. 33;

34) The interpretation of unconstitutional statutes cited in 32)

35) An interpretation used with intent to threaten and coerce Plaintiff;

36) An interpretation to harass Plaintiff;

37) An interpretation to chill Plaintiff's First Amendment rights;

38) An interpretation to delay;

39) To delay a determination of Plaintiff's requests;

40) To delay Plaintiff's First Amendment and Due Process rights;

41) To infringe, seize, arrest, condemn, confiscate, and suppress Plaintiff's rights;

42) To suppress, forfeit, tamper and remove Plaintiff's identity and property;

43) To infringe and interfere with Plaintiff's privileges and immunities;

44) To infringe Plaintiff's trademark in his name;

45) For *prior restraint* of Plaintiff's First Amendment rights;

46) For censoring of Plaintiff's name and identity;

47) To edit the content of Plaintiff's pure speech expression;

48) To deny Plaintiff access to a hearing;

45) To deny Plaintiff access to a prompt judicial hearing;

46) To change the position of the Defendants'

47) To cover-up the mistakes made on March 4, 1996 by OED (Exhibit 8);

48) Mistakes including constitutionally insufficient notice;

49) Mistakes including Plaintiff's "ceasing practice before the USPTO";

50) Plaintiff did not cease practice before the USPTO;

51) Plaintiff's letter of 2/8/96 did not "indicate" ceasing for ever;

52) Plaintiff's letter was a temporary, conditional inactivity until a contingency;

53) A contingency of "inactivity" in Maryland;

54) A contingency of an Order;

55) The Order becoming final, dissolved or amended

56) Dissolved for correction;

57) Dissolved by change of status;

58) Dissolved by change to active status;

59) Dissolved by reinstatement without a requirement to show fitness;

60) Dissolved without discipline or disability;

61) Dissolved on appeal;

62) Dissolved by an Order finding Plaintiff "competent;"

63) Dissolved by an Order in Plaintiff's favor;

64) Dissolved by a finding of fact;

65) Fact of Plaintiff's good moral character;

66) Fact of Plaintiff's good reputation;

67) Fact of Plaintiff's "competency;"

68) Fact of "qualification;"

69) "Qualification" to render to applicants or other persons valuable service;

70) Advice;

71) Assistance in the presentation of their applications;

72) Assistance in other business before the PTO;

73) Assistance in the prosecution of their applications before the PTO;

74) Assistance in accordance with the Patent Laws;

75) Assistance as an attorney;

76) Assistance as a patent attorney;

77) Assistance as a trademark attorney;

78) Assistance as an IPL attorney;

79) Assistance in Court or before federal agencies;

80) Qualification to hold himself out as an attorney;

81) "Competence" as an attorney;

82) Registration as an attorney;

83) Certification as an attorney;

84) Recognition as an attorney;

85) Good standing as an attorney;

86) Inactivity without discipline or disability as an attorney;

87) Without *prior restraint* as an attorney:

88) Without *prior restraint* of the content of his speech;

89) Without *prior restraint* of the expression of his speech;

90) Without *prior restraint* of his freedom of the press;

91) Without *prior restraint* of his privilege and immunities;

92) Without *prior restraint* of his property;

93) Without *prior restraint* of his identity;

94) Without *prior restraint* or suppression of his practice or profession;

95) Without *prior restraint* of his advertisements of his name as an attorney;

96) Advertisement in patents and trademarks;

97) Plaintiff is still registered to practice because the attempt to remove him is *void ab initio* to 1996 because of constitutionally insufficient notice.

98) His Certificate of Registration No. 19,240, is still valid.

99) Plaintiff passed the USPTO examination and was registered to practice before the USPTO on November 5, 1998;

100) That Certificate is still valid, but has been secretly tampered with by inequitable conduct without sufficient prior notice to Plaintiff;

101) Plaintiff never received notice of any OG Notice of his removal from the register of attorneys.

102) Plaintiff's action on 9/26/07 is a valid, legal claim upon which the relief requested can be granted, comprising at least a Preliminary Injunction to enjoin the Defendants from *prior restraint* of his advertisements of his name as an attorney in patents and trademarks, and in other business before the PTO.

103) He has standing in this Court for his claim.

104) This Court has jurisdiction of his claim.

Plaintiff's Statement of Material Facts that are rebuttable, but As to Which the

6

## <u>Second</u> Statement of Material Facts As To Which The Burden To Rebut Rests On

## Defendant

Burden to rebut rests on the Defendants as a matter of law, and as to which Defendants have not met their burden of proof as a matter of law, are as follows:

1) Congress has not authorized the Defendants under Article II, Section 2, cl. 2,, under the Patent Statutes or otherwise, including the USPTO, and particularly 35 U.S.C. 2 (b)(2)(D), 6 and 32, which are facially unconstitutional, and the application of those statutes by the Defendants, and their interpretation of the Patent Statutes, is in any event clearly erroneous;

2) The Defendants have not rationally and constitutionally connected their actions or interpretations of the cited statutes under the rational reason test or due process, as they allege,

3) The reason they give, i.e., "In order to protect the public from unethical and incompetent patent practitioners" is false. Page 4 of their 11/7/07 Statement Attached to their Motion to Dismiss [16];

4) Their real motivation is to delay Plaintiff the prompt judicial review he is entitled to, and to deny the access to a hearing that he is due in this Court by their Motion to Dismiss.

5) To this end, their intent is to threaten, coerce, and harass Plaintiff with bad faith and inequitable conduct, in order to obstruct justice and/or to deny Plaintiff his constitutional rights under federal law, statute, and the Constitution, namely, the First Amendment, the Fourth, Fifth and Tenth

Amendments, and Articles I (freedom of speech and press), II, (authorization from Congress), III, (judicial authorization), and IV (privileges and immunities);

6) The cited statutes are facially so vague and indefinite as to be unconstitutional;

7) The Defendants interpret the Congressional intent irrationally and as is clearly erroneous;

8) To this end, the only fact they use to comply is the grade on a test;

9) To enforce this overbroad discretion they suppress Plaintiff by *prior restraint.*

10) They have irreparably injured Plaintiff by tampering with his ID;

11) They have censored the content of his expression by *prior retraint;*

12) *Prior restraint* in the Patent and Trademark Offices;

13) Defendants are not entitled to broad discretion in their interpretation;

14) Their interpretation is clearly erroneous;

15) Their clearly erroneous interpretation hurts the public;

16) It hurts all attorneys.

17) It misuses the Defendants' authority that Congress intended;

18) Defendants functionally conceded this argument by failing to respond;

19) Their failure to respond  justifies denial of their Motion to Dismiss;

20) Margaret Peterlin is "incompetent" without passing the PTO test;

21) She does not, therefore, qualify as Deputy Director of the PTO;

22) The statutory scheme for registration before the USPTO fails;

23) It is based on 35 U.S.C.3 (b) – **See** Civil Action 07-1224 (JR);

8

**Third** Statement Of Material Facts Upon Which There Is No Dispute

Facts on which there is no genuine issue of fact, and that require Denial of Defendants' Motion to Dismiss or Summary Judgment, and in favor of a Summary Judgment on behalf of Plaintiff as a matter of law:

1. The facial challenge to the constitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32 are readily susceptible to construction under the narrowing construction of the First Amendment.

2. Those statutes are unconstitutional for lack of authority under Article II, Section 2, cl. 2.

3. Those statutes are unconstitutional because they are vague and indefinite.

4. Those statutes are constitutionally overbroad.

5. Those statutes are constitutionally suspect under the First Amendment.

6. The facial challenge to the clearly erroneous interpretation of those statutes by the Defendants is readily susceptible to construction under the First Amendment.

7. The interpretation of those statutes by the Defendants is beyond the scope of their authority as against Plaintiff.

8. Their interpretation of those statutes is contrary to the limitations of the First, Fourth, Firth, and Tenth Amendments, and Articles I, II, III, and IV of the Constitution.

9. Their interpretation of those statutes is manifestly unjust.

10. Their interpretation is fraudulent and malicious with intent to deceive.

11. Their interpretation is intended to deprive Plaintiff of prompt judicial review.

12. Their interpretation is overly broad.

13. Their interpretation is outside the scope of their authority.

14. Their interpretation is not authorized by statute.

15. Their interpretation is clearly erroneous.

16. Their interpretation is intended to obstruct justice.

17. The intent of their interpretation is irrational.

18. The intent of their interpretation is beyond the scope of their authority.

19. That intent violates Plaintiff's right to be free of unreasonable seizures.

20. Their interpretation violates the Due Process Clause.

21. The Defendants are under a burden of proof to show that Plaintiff's speech Plaintiff is entitled to a Preliminary injunction enjoining Defendants *prior restraint* of the content of Plaintiff's expression of speech and of the press and it is unconstitutional.

22. The Defendants' *prior restraint* of Plaintiff's advertisements is unconstitutional.

23. The Defendants' *prior restraint* is overbroad.

24. The Plaintiff's speech is entitled to protection under the First Amendment.

25. The Defendants interpretation violates the requirement of due process.

26. The Defendants interpretation was without constitutionally valid notice.

27. The Defendants seizure of Plaintiff's property was with constitutionally insufficient notice.

10

28. The Defendants' seizure violated Plaintiff's privileges and immunities.

29. Their interpretation is absent of any explanation as to how the doctrine of acquiescence applies to this case.

30. The doctrine of acquiescence does not apply in this case.

31. The Defendants are not protected by the doctrine of absolute prosecutorial immunity.

32. The Defendants false statements of fact in an affidavit supporting a Motion to Dismiss are subject to damages.

33. Defendants Griffin's affidavit in Exhibit 32 dated 10/09/07 includes a false statement as to his "good faith".

34. Testifying about facts is the function of a witness not of a lawyer.

35. Defendants are liable for statutory damages under the Privacy Act, i.e., 5 U.S.C. 552 a.

36. There been has no decision not to pursue formal disciplinary action against the Plaintiff, and so this is an Article III case or controversy is not "moot."

37. The Plaintiff is entitled to an award of his attorneys' fees and costs under the EAJA, 28 U.S.C. 2412.

38. The Plaintiff is entitled to a Fee Order under the statutory exception to the "American Rule," because Plaintiff is a prevailing party in the state actions that are incorporated by reference into this case in support of Plaintiff's proof of "good moral character and reputation," and "competence."

39. The Plaintiff is entitled to a Fee Order under 38 U.S.C. 2412 for coercion and irreparable injury on the basis of a "tactical mooting" by the Defendants of a

11

prosecution of Plaintiff in order to avoid the prospect of an adverse fees and costs award, and on the basis of what Defendants call an enforceable court-ordered "consent decree" entered as an [approved] order of a Maryland court of competent jurisdiction. . . and subject to the oversight attendant to the court's authority to enforce its orders, characteristics not typical of settlement agreements on the merits in favor of Plaintiff, that was enforced by the Defendants against Plaintiff, and that was incorporated by reference into the facts of this case by the initiative of the Defendants to create the material alteration of the legal relationship of the parties. Buckhannon Board & Care Home v. W.V. Dep't of Health and Human Res., 532 U.S. 598, 602 (2001); Smyth ex rel. Smyth v. Rivero, 268, 274 (4th Cir. 2002).; Goldstein v. Moatz, 364 F.3d 205, 212 n. 11 (4th Cir. 2004).

40. So long as the Plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case. Even then, it is not clear how often courts will find a case mooted…

41. If a case is not found to be moot, and the Plaintiff later procures an enforceable judgment, the court may of course award attorney's fees.

42. Given this possibility, a defendant has a strong incentive to enter a settlement agreement, where it can negotiate attorney's fees and costs.

43. The Patent Statutes claimed to be unconstitutional in this case by Plaintiff are so vague as to violate the Fifth Amendment

44. The cited Patent Statutes are inconsistent with the Patent Office Rules, e;g. 37 C.F.R. 10.7 and 10.11, and Articles II, III, IV, V and X of the Constitution.

12

45. The many ambiguities concerning the scope of their coverage render them problematic for First Amendment purposes.

46. For instance, their use of the following terms provoke uncertainty among speakers about how the two standards relate to each other and just what they mean: "good moral character and reputation," "qualifications [beyond those to take the Patent Office examination] necessary to render to applicants or other persons valuable service," "advice," and "assistance," "in the preparation," or "prosecution," "of their applications," or "other business before the Office," "incompetent," "disreputable," "guilty of gross misconduct," "does not comply with regulations," "who by word," "circular," "letter," or "advertising," "with intent to defraud in any manner," deceive," "mislead," or "threaten," any applicant," or "prospective applicant," or "other person having immediate," or "prospective business," "before the Office."

47. The Patent Office examination is the sole and only test and means used to determine the above-stated terms of the cited Patent Statutes.

48. The test is used to discourage attorneys from applying.

49. The test is used to discourage prospective clients of the PTO.

50. The test is used to discriminate against the insular and well defined class of individuals who are 77 years old and burdened with physical ailments and impairments who have been subject to a documented history of discrimination because of their age in favor of young, healthy, white males.

51. The test is used to deny reasonable accommodations to those who need them without reasonable alternatives, options, or allowances.

13

52. The statutes have an obvious chilling effect on freedom of speech and the press

53. They statutes provide their own patently offensive and overbroad standard by requiring that the proscribed material be "specifically defined by the Patent Office test, which is irrationally applied always as the sole and only means of allowing all attorneys who are registered to practice or who apply for reinstatement to advertise their names as attorneys in patents and trademarks.

54. The vagueness of the statutes undermines the likelihood that they have been carefully tailored to the compelling congressional goal of protecting the public from unethical and incompetent practitioners in the Trademark Office and the Patent Office. Page 3 of Defendants' 10/16/07 counterclaim.

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    12/18/07

14

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

**Case:  07-cv-01719 (RWR)**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that service of the foregoing has been made by hand

delivering a copy thereof to:

W. Mark Nebeker, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230

on this 18 day of December, 2007.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish, Pro Se
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202 429-9705

Date:    12/18/07

25

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Cornell D.M. Judge Cornish, Esq. | ) |
| | ) |
|        Plaintiff *Pro Se* | ) |
| | ) |
| v. | ) |
| | ) |
| JON DUDAS, et al | ) |
| | ) |
| | ) |
|        Defendants | ) |

57-CIV-01719 (RWR)

**[PROPOSED]**

**ORDER GRANTING DENIAL OF DEFENDANTS' MOTION TO**
**DISMISS; AND FOR ENLARGEMENT OF TIME FOR DISCOVERY FOR**
**PRELIMINARY INJUNCTION, *MANDAMUS*, WRIT OF POSSESSION, ETC.**

Having considered the Motions for Preliminary Injunction, *Mandamus,* Writ of

Possession and Damages submitted by Plaintiff Cornell D.M. Judge Cornish, the

Memorandum in support thereof along with all exhibits thereto, all other submissions and

arguments concerning those Motions, and the entire record before the Court, and

**HAVING FOUND** that the Plaintiff Cornell D.M. Judge Cornish has and will

suffer irreparable harm during the pendency of this litigation due, *inter alia,* to: (1) the

manifest injustice of denying Plaintiff's Motion [14] to Defer Determination of

Defendants' Motion to Dismiss until after Determination of Plaintiff's Motion for

Preliminary Injunction for enjoining Defendants' *prior restraint* of Plaintiff's speech and

press rights, etc.; and (2) Denial of Plaintiff's requests: (a) to compel testimony of

Defendant Moatz by subpoena in a show cause hearing; and (b) a referral to the Lawyer

1

Counseling Panel; and due to (3) the Order requiring Defendants' to file a redacted version of their Motion To Dismiss on the public record on or before December 20, 2007 without prior approval by the Court.

**HAVING FURTHER FOUND** that it is manifestly unjust, based on the record before the Court, that such harm to Plaintiff would be irreparable in that it is likely to be significant, incalculable and not susceptible to full and final monetary compensation without the appointment of Counsel to help the Court.

**HAVING FURTHER FOUND** that the Defendants recognize Plaintiff's need for the appointment of counsel.

**HAVING FURTHER FOUND** that the Defendants recognize the public interest in continuing to safeguard broad access to the United States patent system through the reduced fee structure for small entities such as Plaintiff.

**HAVING FURTHER FOUND** that the Defendants recognize the strong prospects of a Summary Judgment in favor of Plaintiff; and Plaintiff's need for the appointment of counsel.

**HAVING FURTHER FOUND** that the Defendants recognize the public demonstrated inability to afford and retain counsel patent counsel, who are notoriously expensive and unavailable to *pro se* litigants like Plaintiff, and the degree to which the interests of justice will be served by appointment of counsel, including the obvious benefits the Court may derive from the assistance of the appointed patent counsel having First Amendment and patent law experience, it is this _____ day of _____, 2007,

**ORDERED** that the aforesaid Motions are granted.

2

**FURTHER ORDERED** that Defendant, Jon Dudas, Harry I. Moatz and William J. Griffin in their official capacity respectively and individually as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, United States Patent and Trademark Office; Director of OED; and Staff Attorney in OED; and the United States Patent and Trademark Office, and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice or the order by personal service or otherwise, Defendants in their official capacity as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, are for the pendency of the litigation of the above-captioned matter are:

> (1) Enjoined by Preliminary Injunction from *prior restraint* of Plaintiff's advertisements of his name as an attorney in his patents and trademark; and

> (2) ENJOINED FROM OPPOSING A MOTION BY PLAINTIFF FOR A *WRIT OF POSSESSION*

**FURTHER ORDERED** that the Clerk of the Court issue a Writ of Possession signed by the judge in this litigation recognizing that possession to Plaintiff's Certificate of Registration No. 19,240 rightfully belongs to Plaintiff; and it is

**FURTHER ORDERED** in a Writ of *Mandamus* that Defendants are ordered to comply individually and severally with the Orders and Motion granted by the Court, including the Court's Order to Defendants to return Plaintiff's Certificate of Registration No. 19,140 with Plaintiff's correct name Cornell D.M. Judge Cornish thereon; and it is

3

**FURTHER ORDERED** that the foregoing injunction shall remain in effect pending further Order of this Court or if any subsequent court acquires jurisdiction over this matter; and it is

**FURTHER ORDERED** that until the Order of injunction shall expire upon the entry of a final judgment in this matter, unless otherwise ordered by the Court, and it is

**FURTHER ORDERED** that any party or any person by the preliminary injunction ordered herein may move for modification or dissolution of that injunction; and

_____

United States District Court Judge

4

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

**Case: 07-cv-01719 (RWR)**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that service of the foregoing has been made by hand

delivering a copy thereof to:

W.Mark Nebeker, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230

on this 18th day of December, 2007.

_____
Cornell D.M. Judge Cornish, Pro Se
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202 429-9705

Date:

1