# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,          )
                                     )
            Plaintiff *Pro Se*          )
                                       )
v.                                   )          CASE  07-cv-01719 (RWR)
                                       )
JON DUDAS, et al.,                   )
                                       )
            Defendants              )
_____ )

## PLAINTIFF'S UNOPPOSED MOTION TO ENLARGE PERIOD FOR RESPONSE, TO OPPOSE DEFENDANTS' CURRENT, 12/20/97, OR SECOND [27], NEW MOTION TO DISMISS; AND TO DEFER ISSUES AND CONTROVERSIES NOT RIPE FOR DETERMINATION

Pursuant to Rules 12 (b) (1) and 12 (b) (6) of the Federal Rules of Civil Procedure,

Plaintiff hereby Moves in favor of Plaintiff to Deny Defendants' Motion to Dismiss Or,

Alternately to Deny Defendants' Motion For Summary Judgment pursuant to Fed. Civ. P. 56 (b).

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:  12/31/07

3

RECEIVED

DEC 3 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) | |
| | ) | |
| Plaintiff *Pro Se* | ) | |
| | ) | |
| v. | ) | CASE  07-cv-01719 (RWR) |
| | ) | |
| JON DUDAS, et al., | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

## ORDER

UPON CONSIDERATION of Plaintiff's Motion for a Preliminary Injunction, the grounds stated there for, in favor of Plaintiff, and the entire record herein, it is this _____ day of _____, 2007, hereby

ORDERED that Plaintiff's Motion should be and it hereby is Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For Summary Judgment, should be and it hereby is Denied.

_____
UNITED STATES DISTRICT JUDGE

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

4

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,                 )
                                            )
        Plaintiff *Pro Se*            )
                                            )
v.                                          )      CASE  07-cv-01719 (RWR)
                                            )
JON DUDAS, et al.,                          )
                                            )
        Defendants                   )
_____ )

## MEMORANDUM AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO OPPOSE AND TO DENY DEFENDANTS' MOTION [27] TO DISMISS OR, ATLERNATELY TO OPPOSE AND TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND FOR ENLARGEMENT OF TIME TO REPLY, OR ALTERNATELY TO DEFER ISSUES AND CONTROVERSIES NOT RIPE FOR DETERMINATION

The two respective versions [7] and [27] of Defendants' Motions to Dismiss, although they are widely different in content and legal effect, both acknowledge the *prior restraint* of the Defendants' suppression and censorship of the content of Plaintiff's expressive speech and freedom of the press. They both are based on Defendants' basic defense that admits what is true, namely, that Defendants are "limiting Plaintiff's ability to advertise that he is a lawyer" in his current and future patent and trademark applications. They also both go still further, which is a fact in dispute for resolution at trial on the merits, namely that Defendants intent has always been to obstruct justice by denying Plaintiff any judicial review, as is implicit in their two Motions to Dismiss. And it is agreed that the Courts have long intervened in overruling the PTO.

Page 28 of Defendants' 10/16/07 filing [7] in Opposition to Plaintiff's legal claim, acknowledges "Plaintiff's claims under the First Amendment and his claim that his Due Process rights have been violated, which includes a long history of judicial intervention in the PTO.

5

The Second, new, different and redacted version [27] of Defendants' Motion to Dismiss, is admittedly conflated. They admit that they are still "confused," possibly because of a lack of hands on experience in patent prosecution. They are now even more confused than in their un-redacted version. Neither is accurate or consistent except in their admissions of Plaintiff's First Amendment and Due Process claims, and their attempts to obstruct justice by suppressing or obstructing Plaintiff's right to a hearing and judicial review. And neither are ripe for determination because both reveal surprising *new evidence* and arguments not available heretofore in order to induce the parties to change their position. Therefore, Plaintiff herein seeks to ADVANCE the prosecution of this case to issue, and to preserve the *status quo* without any damage to Defendants or the public, by urging the Court to Deny Defendants' Motion to Dismiss, and to avoid any more confusion by deferring issues and controversies until they are ripe for determination. Plaintiff has asked for an extension of time for discovery, appointment of counsel, and is awaiting a reply to his interrogatories, and FOI and EEO requests

The Defendants' conflate Plaintiff's claims for relief in several ways, but one thing is certain. Defendants' *prior restraint* is meant to punish Plaintiff. Unhappily, Defendants' *prior restraint* of Plaintiff's advertisement is also irreparably injuring Plaintiff's reputation, profession, standing, privileges and immunities, property and Certificate of Registration No. 19,240, and his constitutional claims under the First, Fourth and Fifth Amendments (albeit, they are also relevant under Plaintiff's Article II claims that 35 U.S.C. 2 (b) (2( (D), 6 and 32, are unconstitutional and administered without Congressional authority in a clearly erroneous way. In all of these claims, however, Defendants actions lack constitutionally sufficient notice and a hearing to recognize the *status quo.* To this end, Defendants attempts to separate Plaintiff from his Certification of

6

Registration No. 19,240 *nunc pro tunc* to 1995 are void for lack of constitutionally sufficient notice and due process.

It is agreed from page 28 of Defendants' ORIGINAL sealed, non-redacted version [7] of their Opposition to Plaintiff's request for Preliminary Injunction, that the facts in his well-pleaded legal claims gave rise to Plaintiff's standing, the Court's jurisdiction, and a likelihood that Plaintiff will prevail on the merits. But there is a dispute as to the facts, because Defendants argue that the "extent" of the irreparable injury and the recoverable damages are in dispute. See page 28 of the sealed, original [7], un-redacted, Opposition by Defendants to Plaintiff's claim for Preliminary Injunction for their comments, which admit and acknowledge that there is damage, but Defendants dispute how much monetary relief is enough by saying it is "marginally relevant." And Defendants intentionally "marginalize" the Plaintiff's ability to seek judicial relief, by continuing to build up the retroactive, ex post facto and future irreparable injury to Plaintiff by clever but malicious "strategic mooting" of the issues in order to minimize their fees and costs, to delay advancing the case to issue, and to extend their censorship indefinitely, while denying Plaintiff any judicial review, as shown by the following correct version of what Plaintiff is claiming:

Claim For Preliminary Injunction In Favor of Plaintiff Patent Applicant To Enjoin *Prior Restraint* by Defendants of Plaintiff's Advertisement of his Name as an Attorney in His Currently Pending and Future Trademark Applications for Himself and Others

Plaintiff respectfully refers to Defendants' intentional distortion of this claim on page 1 of their second or 12/20/07 redacted version of their Motion to Dismiss. Defendants' version II of Plaintiff's above claim is as follows: "Although Plaintiff's complaint is unclear, it appears that he challenges the actions of the United States Patent and Trademark Office ("USPTO"),

Office of Enrollment and Discipline ("OED"), in connection with Plaintiff's request for reinstatement to the USPTO register after a nearly nine-year hiatus."

Obviously, Plaintiff's alleged hiatus can be no longer than from August 17, 1998 until November 16, 2000, since that was the time from when he was inactive in New York and DC until when he became active again in DC, a total of only two years and three months.

However, Defendant Griffin's Machiavellian, untrue but "strategically mooting" letter of March 22, 2005, in Exhibit 17, was written in order to save the Defendants from a long and costly expenditure resulting from Plaintiff's resistance and refusal to accept the Defendants' secret, overreaching, clearly erroneous, discretionary decision, beyond the scope of their authority, at a still uncertain date, based upon new evidence not available heretofore. He stated that, "Pursuant to your request, you were removed from the roster of registered patent attorneys and agents in April 1996, after you were placed on disability inactive status with the Maryland State bar." The "disability" that Defendant Griffin was vicariously referring to, was new evidence of a reversal of Defendants' "strategic mooting" efforts to obstruct justice. To this end, his March 22 2005 letter incorporated by reference a <u>finding of fact</u> in favor of Plaintiff, i.e., that he lacked "disability," and so he was a awarded "inactive status" to avoid the payment of a yearly fee for active practice for a living. He remained free to practice *pro bono* law. That was a finding of fact in favor of Plaintiff.

There was no finding of fact or holding by the Maryland bar that Plaintiff was "placed on disability inactive status" (albeit, while the Maryland Bar Association is not able to make such findings of fact, other state bar associations are authorized by law to make such findings of fact). Indeed, the alleged fact of Plaintiff's "disability" in 1995 had no basis in fact, as found in the Maryland Order of December 4, 1995. Article IV of the Constitution and 28 U.S.C. 1738,

8

require that Defendants to give the Maryland Order of "inactivity" the same effect as it had in Maryland. Accordingly, Defendant Griffin should make a correction in his letter of March 22, 2005 because belief, assumption, speculation and invented facts are no substitutes for evidence in a court. The Court must resist the temptation to gloss over error, admit spurious evidence and assume facts not adequately proved simply to side with the face of the government and against a patent applicant like Plaintiff.

New evidence has come to light by Defendants' filing on 10/16/07, which proves beyond a reasonable doubt that Defendant Griffin's letter of March 22, 2005 and his affidavit of 10/907 in Exhibit 32 are inconsistent, inequitable attempts to obstruct justice. A trial can sort out these matters further on the merits.

Plaintiff believes the evidence shows that Defendant Griffin's letter of March 22, 2005 was clearly erroneous in referring to Plaintiff as having a 1995 "disability inactive status." It was the clearly erroneous basis used fraudulently to take Plaintiff's license to practice away secretly and inequitably in a shocking and manifestly unjust manner without probable cause. This was a void, unauthorized, unconstitutionally invalid action. It was beyond the scope of authority of anyone in OED or the Patent Office. The action was without due process or adequate notice by Defendant Moatz' predecessor on August 28, 1996. This new evidence was presented to Plaintiff on 10/16/07 in the form of a handwritten note on the March 3, 1996 letter in Exhibit 8, where she secretly requested an otherwise unnamed person named "Pat," to "pls remove Mr. Cornish from the roster." The handwritten note was signed by "K. Bovard 8/28/96." She was then "Director, Office of Enrollment and Discipline."

This fraudulent taking was inconsistent with Defendant Griffin's letter of March 22, 2005, in which he said in conclusion, that: "For the foregoing reasons, based on the current

9

record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

The "disability inactive status" was an unsupported, hypothetical, purely artificial mental construct without basis in fact, that knowingly changed a Maryland Order in favor of Plaintiff into a fictitious action by the Maryland State bar, which is an amorphous group of people that only exists abstractly in theory. That was a knowingly untrue fact relating to a "disability" for purposes of a "strategic mooting" of the fees and costs that Defendants would have had to suffer, if the truth of their fabrication was not kept secret until 10/16/07. It was a fictitious fact falsely inflated by implication in the March 4, 1996 letter from Director Bovard to coerce Plaintiff into silence and to obstruct justice by threatening to prosecute him under 35 U.S.C. 33, and thus, to prevent him from practicing in the Trademark Office, or seeking judicial intervention.

Director Bovard's constitutionally insufficient notice of 3/4/96 in Exhibit 8, was used to trick Plaintiff into a corner where he was coerced into "ceasing to practice before the U.S. Patent and Trademark Office," anywhere, i.e., in both the Trademark Office and the Patent Office. It was a coercion because the 30 day notice was being held "in abeyance" for an "investigation."

The letter of March 4, 1996 in Exhibit 8, "strategically mooted" the threat of punishment under 35 U.S.C. 33. It was as an administrative threat to coerce Plaintiff into believing that he could immediately be prosecuted under 35 U.S.C.33. The coercing by the letter of March 4, 1996 in Exhibit 8, was a fraudulent, unauthorized, clearly erroneous over reaching, as a basis of a *prior restraint* without Congressional approval, and it was revealed as new evidence when it came to light in this case on October 16, 2007 in the Exhibits for Opposition [7].

The March 4, 1996 letter was a deliberate, intentional course of action, after careful review of the public record, not as a mistake. It was a careful, deliberative, intentional course of

action by an attorney who was the official Director of OED.  It was a well thought out, effort to

obstruct justice in a written legal opinion by the attorney who was the Director of OED to deny

Plaintiff judicial review.  It is a well known, long established method of obstructing justice by

"strategic mooting" of Plaintiff's right to judicial intervention.

 The object of Defendants was to lay a mine for Plaintiff to step on with a retroactive, *ex

post facto* effect to sometime in 1996, by imposing a *prior restraint* without a hearing to prevent

Plaintiff from advertising his name as an attorney, practicing before the Trademark Office, or in

holding himself out as a trademark attorney anywhere, *nunc pro tunc* to an unidentified date in

1996, as is clear from Defendant Moatz' Exhibit 33.  In his letter of June 15, 2000, he states to

the addressee, whose name is redacted, that Mr. Cornish communicated to the OED in 1996, and

"OED thereafter removed Mr. Cornish's name from the roster of attorneys and agents."  Again,

this laid a mine for Plaintiff to step on if he ever sought "reinstatement."  It was made

surreptitiously without notice to Plaintiff, but this time it was made falsely, with knowledge of its

falsity, and inequitably and libelously made public to the addressee, whose name was redacted,

causing irreparable injury to the Plaintiff's reputation, privacy, privileges and immunities,

property and Certificate of Registration in an area where the Courts have long intervened.

 One dramatic effect was to cause Plaintiff to change his position to his detriment by

asking for "reinstatement" of his "qualification" to take three Patent Office examinations with

reasonable accommodations as an individual discriminated against for Continuing Legal

Education (CLE), and other merely academic reasons.  For convenience, and to cooperate with

the Defendants, Plaintiff applied for such "qualification" to be "reinstated as a "qualified" person

to take the examination with as many reasonable accommodations as possible.  These were not

disclosed as a "disability" to practice law, but they were disclosed to oppose the truth of

Defendant Griffin's assertion of a "disability inactive status" on March 22, 2005, as he asserted in Exhibit 17. Plaintiff also disclosed this current "disability" as a private, confidential disclosure for the specific purpose of 29 U.S.C. 794 (a) to "qualify" as an individual with a "disability" for which Plaintiff was subject to discrimination under a program for lawyers practicing in the PTO. See pages 39-40 of the new or second [27] Motion to Dismiss.

The private, confidential disclosure to "qualify" was made necessary to obtain reasonable accommodations due to normal, well known, and universally present, age-related "disabilities." Those "disabilities" are well known to be limited to specific "life function" "disabilities," including: "seeing, hearing, breathing, blood circulating, and excreting" disability functions. They do not limit any ability to competently practice law, but they do prevent passing the Patent Office exam without reasonable accommodations. The failure of the Defendants to allow him <u>all</u> the reasonable accommodations he requested is disputed by the Defendants. Nevertheless, they are well documented to be needed. Defendants' denial that they were requested by Plaintiff, is merely another example of he devious ways they coerced Plaintiff. It is another clearly erroneous, unauthorized way to coerce Plaintiff to change his position into silence rather than confronting the Defendants for depriving him of his right to judicial intervention.

But the Defendants also changed their position. The failure of Defendants to give him the reasonable accommodations he needed and that he requested was inconsistent with their earlier position on "disability" taken by Defendant Griffin in his letter of March 22, 2005. The Defendants newly acquired denial of Plaintiff's claims of "disability," is newly discovered evidence because it is age-related and could not be discovered heretofore. Thus, it only became discovered when Plaintiff supplied expert medical evidence from licensed physicians.

12

*A fortiorari,* it is instructive that Defendants have accepted the claim of Plaintiff for his present age-related *disabilities* for the limited purpose of a discrimination claim, by a stipulated promise from Defendant Moatz in his affidavit in Exhibit 33. To this end, he said that: "I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him for the July 2007 examination." That includes endlessly "qualifying" for "reinstatement" to take the Patent Office exam in July without paying the $40 cost for "qualifying" to be *reinstated* to take the exam, or paying the $450 cost of the exam itself. Meanwhile, however, Defendants intend to continue *prior restraint* of Plaintiff's advertisements of his name as an attorney anywhere in the Patent Office, both in the Trademark Office and the Patent Office, and/or in holding himself out as a trademark or patent attorney anywhere else on threat of punishment under 35U.S.C. 33.

In other words, to deflect the court's attention from Defendants' admitted unconstitutional *prior restraint,* Defendants have admitted that both Plaintiff and Defendants have pled and proved facts establishing that Plaintiff is a "disabled" person for the limited purposes of the "Rehabilitation Act." But this still leaves open for trial Defendants' admitted *prior restraint,* and whether Plaintiff can permanently practice as an attorney in the Trademark Office, or even outside of the Patent Office all together as a trademark attorney, even for sate trademarks because of the retroactive effect of the "removal" of Plaintiff's name from a roster in the PTO at a still undetermined date in 1996.

In Defendants' most recent iteration [27] of their Motion to Dismiss, they propose to unabashedly continue their *prior restraint,* which can be understood primarily as another attempt to obstruct justice by denying Plaintiff judicial review, and to this end, they ask for Dismissal by now inconsistently denying that either the Plaintiff or Defendants have made a "disability" discrimination claim under Fed. R. Civ. P. 12 (b) (6) "because Plaintiff has not pled any facts

13

establishing that he is a disabled person for purposes of the Rehabilitation Act." This is obviously a genuine fact in dispute in view of Plaintiff's extensive expert evidence now in the record.

### Claim For Preliminary Injunction In Favor Of A Patent And Trademark Applicant To Enjoin *Prior Restraint* by Defendants of Plaintiff's Advertisement of his Name as an Attorney in His Currently Pending and Future Trademark Applications for Himself and Others, Which is Independent of His Claim For:

### (a) PLAINTIFF'S REINSTATEMENT TO QUALIFY TO TAKE THE PATENT OFFICE EXAM

Defendants' most recent version of their Motion to Dismiss [27] is all about what they claim is as follows: "Although Plaintiff's complaint is unclear, it appears that he challenges the actions of the United States Patent and Trademark Office ("USPTO"), Office of Enrollment and Discipline ("OED"), in connection with Plaintiff's request for reinstatement to the USPTO register after a nearly nine-year hiatus." They say nothing about Plaintiff's *reinstatement* to practice before the Trademark Office, or to "qualify" to take the Patent Office Examination for CLE, or merely academic purposes.

The *reinstatement* Plaintiff claims is to *qualify* to take the exam. Thus, Plaintiff's claim is to *reinstatement* to take the Patent Office examination only in patent cases for CLE purposes, or other merely academic reasons, and to be *reinstated* to practice in the Trademark Office.

There is no limit on how many times a person may "qualify" to be *reinstated* to take the exam. And he can take it for mere academic reasons. But Defendants require proof of "qualifications" under 37 C.F.R. 10.7 to be *reinstated* to take the Examination for any reason, even for CLE while being barred by *prior restraint* in trademark cases under 37 C.F.R. 10.11 (albeit, Plaintiff was given insufficient notice of *prior restraint* in patent cases until 10/16/07).

14

Examiners are not required to "qualify" for *reinstatement* to take the exam. Defendant Griffin, neither has to "qualify" to take the exam, nor is he ever "removed" from registration by inactivity no matter how long his inactivity lasts. Like many other attorneys, for example, he has been inactive for much more than five years without being "removed." Something more than "inactivity" is required for such "removal" under 37 C.F.R. 10.11 or 35 U.S.C. 32, including a hearing.

Defendant Griffin, like many others, has been inactive because of ethical restraints since 1999. Those ethical considerations are held in abeyance until a letter is sent under 37 C.F.R. 10.11, or a hearing is set under 35 U.S.C. 32 to support the Defendants "removal" of his name from the register. Thus, there is no need for a "strategic mooting" of his case to avoid expenses.

Although he has been inactive for at least seven or eight years, he has not been "removed" from the register or roster of attorneys registered to practice before the PTO so as to coerce him with threats of prosecution under 35 U.S.C. 33 for practicing before the Trademark Office. Thus, even though he will presumably be "inactive" indefinitely, he can still practice before the Trademark Office, unless otherwise restrained by ethical rules or a letter under 37 C.F.R. 10.11.

Claim For Preliminary Injunction In Favor Of A Patent And Trademark Applicant To Enjoin *Prior Restraint* by Defendants of Plaintiff's Advertisement of his Name as an Attorney in His Currently Pending and Future Trademark Applications for Himself and Others; Including His:

### (b) CLAIM TO PRACTICE BEFORE THE TRADEMARK OFFICE WITHOUT PASSING THE EXAM

As far as his practice before the Trademark Office is concerned, Defendant Griffin's March 22, 2005 letter (Exhibit 17), additionally stated in the conclusion of his letter that, "For the foregoing reasons, based upon the current record, you have not presented insufficient

15

objective evidence to show that you continue to possess the legal qualifications necessary to render applicants for patent valuable service."

On that basis alone, it would seem reasonable for Plaintiff to assume that Defendants had abandoned the information in the letter of March 22, 2007, that a mine had been planted in 1996 for enforcing *prior restraint* of Plaintiff from practice in patent cases, while still retaining the 1996 mine for coercion by *prior restraint* and a "strategic mooting" from prosecuting trademarks under threat of prosecution under 35 U.S.C. 33 in the March 4, 1996 letter in Exhibit 8 from the Director of OED.

The letter of March 22, 2005 was a clear invitation for an application for *reinstatement* to "qualify" to take the Patent Office examination without a requirement for a showing of fitness as the only required step for actually resuming practice in patent cases, but not trademark cases. This would have been an exact analogue for the temporary, optional, provisional, inactivity in Maryland without discipline or disability, and without a requirement for a showing of fitness for reinstatement to active practice in Maryland. There was no requirement to actually pass the exam to resume advertising Plaintiff's name as an attorney in patent cases. As to trademark cases, that was not mentioned by Defendant Griffin in his letter of March 22, 2005. That was a separate matter delaying a final decision on holding in abeyance the broader investigation described in Director Bovard's letter of March 4, 1996, and Defendant Director Moatz' libelous letter of June 15, 2000, which stated that, "However, OED will consider the complaint if an when Mr. Cornish applies to be reinstated." This was a surreptitious plan to punish Plaintiff with irreparable injury already inflicted by holding in place the "strategic mooting" letter of March 4, 1996, to dissuade judicial review of what has now been learned to be a fraudulent scheme to deny Plaintiff judicial oversight. This included delaying any final decisions on his

16

Petitions for Review submitted on 7/11/06 and 5/21/07 for a fee of $130 each. To this end, each inquiry, appeal or petition was continually denied resolution and accompanied with the defense that Plaintiff lacked administrative "finality" for his endless, fruitless search for relief.

But still open was the existing *prior restraint,* and the continuing threat of *prior restraint* in the future to cower Plaintiff into silence, and to keep him from practicing before the Trademark Office by the Defendants continued and repeated threats under 35 U.S.C. 33.

Despite the "strategic mooting" of Plaintiff into silence by the coercion of the letter of March 4, 1996, Plaintiff still preserved the *status quo* in connection with his search for reasonable accommodations to actually take the Patent Office exam in the interim for CLE and other merely academic reasons.

But the Defendants nevertheless continued to deny the requested reasonable accommodations Plaintiff requested, and they disputed his claim that Defendants had denied him an enlarged print Manual of Patent Examining Procedure (MPEP), which is the most important of the agreed enlarged print components of the examination. Without an MPEP no one can pass the exam. And denying access to an enlarged print MPEP was throwing down the gauntlet, and inviting suit in Plaintiff's case that remained in serious controversy, retroactively to 1996.

Defendants' clearly erroneous and deceitful actions included *prior restraint,* threats and boasting that Plaintiff's legal claims would always remain "moot." As far as they were concerned, Plaintiff would never get a fair hearing or judicial review, because Defendants would never respond to his pleas, petitions or administrative requests no matter how or when they were lodged. By throwing down the gauntlet, they were challenging Plaintiff to a duel. Rather than protracting the dispute in the PTO, his EEO and FOI requests were delayed. There was nothing left as an option to Plaintiff on his First Amendment complaint short of litigation.

17

This was the fate of the attorney in <u>Marinangeli v. Lehman,</u> 32 F.Supp.2d 1 (D.D.C. 1998). In that case the attorney was barred from practice in the Trademark Office. The Court held on an appeal from an initial decision of the administrative law judge to the Commissioner, that the Defendants are not bound by the sanctions imposed on attorneys by states when determining whether to discipline an attorney admitted to practice before it. 37 C.F.R. 10.154 (b). The Court further held that the Due Process Clause does not require a hearing on disbarment from a federal court when the conduct complained of was the subject of a state disciplinary hearing as long as the state hearing <u>comported</u> <u>with</u> <u>due</u> <u>process</u>.

But there was no First Amendment claim in <u>Marinangeli,</u> *Id.,* as there is in this case. And this case was in favor of Plaintiff in the state. There was no discipline or requirement of a showing of fitness for reinstatement in Maryland. And there was no initial decision of an administrative law judge or the Commissioner in this case because such a decision was not allowed. It was denied by "strategic mooting." There was no waiver of rights in this case. But there was a waiver by the attorney in <u>Marinangeli,</u> *Id.,* at least in his right to call the investigator. And Plaintiff's request to subpoena a witness, including a subpoena of Defendant Moatz, has been denied in this case. Also, Plaintiff has a spotless record in the PTO, despite what the Defendants use their filings for in this case; namely, to coerce Plaintiff into silence.

Defendants' *retroactive,* and *ex post facto prior restraint* of <u>subject</u> <u>matter</u> whose content and expression are true, not harmful to others, and that merely states a point of view that defines Plaintiff's identity and profession is suspect. Such *prior restraint* used to coerce Plaintiff into silence is abhorred by the First Amendment. Intervention by the Courts is mandatory. That was the basis of Plaintiff's *amicus* brief in <u>Parker v. Chakabarty,</u> 477 U.S. 303 (1980).

18

Also, in <u>Goldstein v. Moatz et al,</u> No. 0501144 (4th Cir. Decided April 20, 2006); and <u>Super Tire Engineering Co. v. McCorkle,</u> 416 U.S. 115 (1974), delay by "strategic mooting" was recognized to be suspect. If delay is too short or too long, the review is granted. Administrative governmental policies that impact the First Amendment are not allowed to continue in force unabated and un-reviewed. The judiciary must not close the door to the resolution of the important questions such concrete disputes present. As in <u>SuperTire,</u> *Id.,* "this case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interest of the petitioning parties."

In <u>Medimmune, Inc. v. Genetech, Inc.,</u> 549 U.S. ____ (2007), the Court found that the Art. III limitation of federal courts' jurisdiction to "Cases" and "Controversies," reflected an "actual controversy." A cited treatise said that an "actual or threatened serious injury to business or employment" by a private party can be as coercive as other forms of coercion supporting restitution actions at common law; and that "[t]o imperil a man's livelihood, his business enterprises, or his solvency, [was] ordinarily quite as coercive" as, for example, "detaining his property." F. Woodward. <u>The Law of Quasi Contracts</u> 238 (1923).

In <u>Memphis Community Schl. Distr. V. Stachura,</u> 477 U.S. 299 (1986), it was repeatedly noted that 42 U.S.C. 1983, under which Plaintiff pleads, secures tort liability in favor of persons who are deprived of "rights, privileges, or immunities secured" to them.    Administratively violating those rights under the First Amendment is unauthorized by Congress, and violates the First Amendment.

<u>Legal Services Corporation v. Velazquez,</u> 164 F.3d 757 (1999); 531 U.S. ____ (2001) was a case where a "viewpoint" was protected by an informed, independent judiciary. An informed, independent judiciary does not sift out cases presenting constitutional challenges in

19

order to insulate the Government or the Government's laws from the judicial inquiry, especially where there are First Amendment concerns.

In FCC v. League of Women Voters of Cal., 468 U.S. 364 (1984), the Court forbade the Government from using the forum in an unconventional way to suppress speech inherent in the nature of the medium. The *prior restraint* of the viewpoint of Plaintiff's expressive speech and press rights, also suppresses his religious viewpoint that he truly has a "religious calling" to be an attorney, an inventor, and an originator and source of trademark and copyrightable material by the use of his name and profession. The media are inherent and essential in his use of those media to express his viewpoint. The subject matter is a "shingle" that is in dispute.

The Defendants, in effect ask this Court to permit Congress to allow the Defendants unbridled and overbroad discretion to define the scope of the subject matter that can be published by the PTO, or excluded by their administrative theories and ideas, rather than requiring them to be narrowly selective and limited by narrowly tailored directions, as it has done in 35 U.S.C.181, and by allowing just compensation for the removal of that subject matter under 35 U.S.C. 183.

As in FCC, *Id.,* the Court reasoned in its conclusion, that it could exercise its judicial discretion and prudential judgment to invalidate a fragment of a statute or a specific or clearly erroneous interpretation of a statute, if either or both were found contrary to the First Amendment. To this end, the Court can limit the requested Preliminary Injunction to only the Defendants' *prior restraint* in the Trademark Office, or only the Patent Office, or can grant the same in both Offices, or alternately merely Deny Defendants' Motion to Dismiss and send the case on to the trial of the merits, because it has the option of removing the Preliminary Injunction at any stage of the proceedings. Additionally, the Court must deal with a prosecutor making false statement of fact in legal opinions that are the result of a deliberative, intentional course of action

20

after careful review, and after reviewing the same facts a second time. <u>Lynne Kalina v. Fletcher,</u>

____ U.S. ____ (1997).

Plaintiff believes that he has been wrongfully punished and irreparably injured by a

prosecutor that deceived him by testimony that he only now admits is false and wrongfully and

erroneously made, and, as Plaintiff believes, was made in order to suppress exculpatory evidence

that only after suit was filed has been revealed to Plaintiff.

That is not a mere mistake or inadvertence, especially when the opinion is both public

and secretly held in order to obstruct access to the courts, and especially where those opinions

are made erroneously at the prosecutorial level without judicial oversight, authority or

constitutionally sufficient due process or notice and a hearing.

Plaintiff's request is for:" 1) A Preliminary Injunction to enjoin the Defendants from

*prior restraint* of expressive content and subject matter the Defendants agree they are currently

not allowing Plaintiff to express in an <u>advertisement</u> in his currently pending trademark

application that advertises his name as an "attorney" on a "shingle," whose content and subject

matter is placed in the application to hold himself out as a "live attorney." To this end, Plaintiff

seeks a Preliminary Injunction to enjoin Defendants from threatening to prosecute and/or to

punish him under 35 U.S.C. 33, or otherwise, for the "Disability" Defendant Griffin falsely

accused him of in his letter of March 22, 2005 (redacted Exhibit 17, paragraph 3).

The filings were well plead (including under 1983), for purposes of his Disability claim

on the basis of an admission under Fed. R. Civ. P. 12 (b) (6) until new exculpatory evidence was

given to Plaintiff that allowed him to recognize the extent of Defendants' falsity, and, therefore,

to add to the proof of his "disability." The new evidence changed the requirements for evidence.

21

However, that evidence could not be completely submitted earlier than 9/26/07 because it was modified on the basis of <u>new</u> suppressed <u>evidence</u> not available theretofore.

Also, it would be manifestly unjust to refuse to let Plaintiff use and/or rely on such new evidence as an emergency measure. To this end, Plaintiff requests that he be allowed to cooperate with Defendants in re-establishing the *status quo* by simply converting Defendants' blasé 2005 claim, which was used to discriminate against Plaintiff and coerce him into silence.

Plaintiff's current, up-to-date version of that claim, is now modified by necessity and unavoidability, and now is further based upon such new up-to-date, ever-changing evidence as he is forced by circumstances beyond his control to provide, and which he has already provided. That forces him to continue to accumulate and submit whatever he can concerning his named, age related <u>disabilities</u> of his life functions of "seeing, hearing, breathing, circulating his body fluids, and excreting." It would be helpful in this regard if the time for discovery was enlarged, and subpoenas became available. Also, of course, Plaintiff must ask that Defendants' Motions to Dismiss be denied, and Plaintiff's Motions for Preliminary Injunction be granted in his favor.

The 2005 claim of the Defendants, which is a fact in controversy and dispute, was really a false, discriminatory claim of an imaginary, unnamed "disability" in 1995, as was known. And it was distorted by suppression in 1996 to secretly and illegally "remove" Plaintiff's name from the "register" of attorneys without constitutionally sufficient notice or due process on an uncertain date sometime in 1996. That also involves newly discovered evidence that is the subject of currently pending interrogatories, and that is the basis for Defendants discrimination against Plaintiff, including Defendants' failure to provide reasonable accommodations, whereas Plaintiff's present claim is based upon his current physical disability in 2007 from 9/26/07 onward. That is another genuine issue of fact in dispute.

22

The so-called "reinstatement claim" is more maturely and accurately designated as a claim to "reinstate" Plaintiff as "qualified" to repeatedly *take* the Patent Office test in July free, without cost, as promised by Defendant Moatz in Exhibit 33, and with all the reasonable accommodations he has generously promised to give Plaintiff, including all those enlarged print examination components provided heretofore. That, however, does not include the most important one, namely an enlarged print Manual of Patent Examining Procedure (MPEP), again, based upon the newly discovered evidence that was not available heretofore and, so, was unavoidably lacking at some point in the past, but now even more urgently is needed because of the continuation of Plaintiff's age related disabilities that deteriorate over time, as is expected, such that they still urgently need accommodation for Continuing Legal Education (CLE), and other merely academic reasons, in accordance with the rules.

In this connection, it is noted that the "qualifications" necessary for being "reinstated" to "take" the exam, are entirely different from the "qualifications" necessary for "reinstatement" by taking and "passing" the exam, and the <u>former</u> are referred to and distinguished, although not eliminated, in this legal claim for a preliminary injunction.

<u>Claim For Preliminary Injunction In Favor Of A Patent And Trademark Applicant To Enjoin *Prior Restraint* by Defendants of Plaintiff's Advertisement of his Name as an Attorney in His Currently Pending and Future Trademark Applications for Himself and Other; Including his:</u>

    (c) <u>CLAIM TO PRACTICE PRO SE BEFORE THE PATENT OFFICE WITHOUT PASSING THE EXAM</u>

Plaintiff requests a Preliminary Injunction in this case because the Defendants have even refused to grant Plaintiff "limited" recognition for the purpose of *pro se* prosecution and practice as an attorney.

23

Defendants have recognized the subject matter jurisdiction and standing of Plaintiff's legal claim. But Defendants argue that the admitted and unopposed "effects" are only *marginally* affected with 1st Amendment concerns, as alleged on p. 29 of Defendants' 10/16/07 Opposition. The *extent* of the "*marginality*" or "non-marginality" of the admitted and unopposed basic *effect* is a fact in dispute. That dispute raises substantial constitutional doubts under the Constitution. Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988); and Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981). Plaintiff claims the expressive content of his First Amendment rights of speech and press are, have been, and for the foreseeable future will be, unconstitutionally censored by the well documented *prior restraint* of the Defendants, the basis of which is admitted and unopposed by the Defendants. And a jury could reasonably believe that the effect is well documented to directly cause well established, present and long lasting, irreparable, ex post facto, retroactive and prospective injury to, and interference and infringement of, Plaintiff's speech and press rights, reputation, privileges and immunities, professional standing, Certificate of Registration No. 19,240, and property in his "shingle." Likewise, absent some clear intent that Congress focused on prohibiting Plaintiff's "shingle," SEC v. Sloan, 436 U.S. 103, 130-121 (1978), there is no basis for reading into its actions an intent to modify the plain meaning of the words found in the applicable law. See TVA v. Hill, 437 U.S. at 194; United States v. Price, 361 U.S. 304, 313 (1960). And the applicable statutes fairly embrace publishing Plaintiff's "shingle" and trademark in his trademark and patent cases.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:  12/31/07

CASE  07-cv-01719 (RWR)


<u>CERTIFICATE OF SERVICE</u>


I HEREBY CERTIFY that service of a copy of the foregoing and Plaintiff's Unopposed

Motion for Enlargement of Time, and Memorandum in Support of Plaintiff's Motion to Deny

Defendants' Motion to Dismiss, or alternately, under Rule 12, To Defer Issues and Controversies

that are not ripe for determination, have been hand delivered to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780


on this 31st day of December, 2007.


Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:  12/31/07

25

STATEMENT OF REFERENCES

1.  *Americable Int'l Inc. v. Dep't of the Navy, 129 F.3d 1271, 1274 n. 5 (D.C. Cir. 1997);

2.  * United States v. Treasury Employees, 513 U.S. 454, n. 26 (1995);

3.  *Baird v. State Bar of Arizona, 401 U.S. 1 (1971);

4.  Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 P. 57 (1963);

5.  *Bates v. Little Rock, 361 U.S. 516 (1960);

6.  Bates v. State Bar of Arizona, 433 U.S. 350 (1977);

7.  Buckhannon Board & Care Home v. W.V. Dep't of Health and Human Res., 532 U.S. 598, 602 (2001);

8.  Cameron v. Johnson, 390 U.S. 611 (1968); and 28 U.S.C. 1292.

9.  Civil Action No. 07-1224 (JR) in this Court;

10. Chou v. University of Chicago, 254 Fed 1347, 1359 (Fed. Cir. 2001);

11. Cleveland Board of Education v. La Fleur, 414 U.S. 632 (1974);

12. *Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

13. Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N.Y., 447 U.S. 530, 536, 630 (1980);

14. Czarnik v. Illumina, Inc., 437 F.Supp.2d 252 (D.Del. 2006);

15. Dombrowski v. Pfister, 380 U.S. 479 (1965), there No. 1"07-cv-01008-JC-TRJ, 2007 WI, 3196683 (E.D. Va., October 31, 2007);

10

16. <u>Erznoznik V. Jacksonville,</u> 422 U.S. 205, 216 (1975);

17. <u>*Ex Parte Garland,</u> 4 Wall 333 (1866);

18. <u>Florida State Board of Dentistry v. Mack,</u> 401 U.S.960 (1971);

19. <u>Freedman v. Maryland,</u> 380 U.S. 51 (1965);

20. <u>FW/PBS, Inc. v. Dallas,</u> 493 U.S. 215 (1990);

21. <u>*Gibson v. Florida Legislataive Investigative Committee,</u> 372 U.S. 539 (1963);

22. <u>Goldstein v. Moatz,</u> 364 F.3d 205, 211-19, 212 n. 11 (4th Cir. 2004);

23. <u>In re Maldague,</u> 10 USPQ2d 1477, 1478 (Comm'r Pat. 1988), and 37 C.F.R. 1.138;

24. <u>In Re Matter of: David A.</u> Teicher, Commissioner of Patents and Trademarks, September 7, 1989;

25. <u>*In re United Mine Workers of Am. Employe Ben. Plans Litig.,</u> 854 F.Supp. 914, 915 (D.D.C. 1994);

26. <u>Jones v. Board of Com'rs Of Alabama State Bar,</u> 737 F.2d 996 (1984);

27. <u>*Keyishian v. Board of Regents,</u> 385 U.S. 589, 607 (1967);

28. <u>Kramer v. USPTO,</u> Civil Action 05-01455 (HHK) (DC Cir. 8/9/06);

29. <u>Landgraf v. ISO Films Prod.,</u> 511 U.S. 244 (1994);

30. <u>Latin American Agribusiness Development Corp.,</u> 711 F.2d 989, 995 (11th Cir. 1983);

31. <u>Leis v. Flynt,</u> 439 U.S. 438, 443-44 (1979);

32. <u>Marinangela v. Lehman,</u> 32 F.Supp.2d 1 (D.D.C. (1998);

33. <u>Marshall County Health Care Auth. v. Shalala,</u> 988 F.2d 1221, 1227 (DC Cir. 1993);

34. Milbank Tweed Hadley & McCloy LLP v. Milbank Holding Corp. d/b/a Milbank Real Estate Services (D.D. Cal. 82 U.S.P.Q.2d 1583 (2007));

35. Moatz, Harry v. Cavid Duncan Reynolds, Proc. No. D99-12, April 4, 2001;

36. *NACP v. Alabama, 357 U.S. 449 (1958);

37. *Parker v. Chakabarty, 477 U.S. 303 (1980);

38. Ohraik v. Ohio State Bar Ass'n, 436 U.S. 447, 459 (1978);

39. Peterlin, Margaret, 35 U.S.C.3 (b) – **See** Civil Action 07-1224 (JR) (D.C.D.C 2007); 29 U.S.C. 705 (9) (B);

40. Reno v. ACLU, 521 U.S. 844 (1997);

41. *Roe v. Housing Auth. Of the City of Boulder, 909 F. Supp. 814, 820 (D. Colo. 1995);

42. Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232. 239 (1957);

43. Smyth v. Rivero, 282 F.3d 268, 274 (4th Cir. 2002);

44. *Schneider v. Smith, 390 U.S. 17, 25 (1968);

45. *Schneider v. State, 308 U.S. 147, 160-161 (1939);

46. *Schuler v. United States, 617 F.2d 605, 608 (1979);

47. *Shelton v. Tucker, 364 U.S.479. 485-487 (1960);

48. Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 283 n 16 (1985),

49. Supreme Court of Virginia et al. v. Friedman, 487 U.S. 59 (1988);

50. Tafas v. Dudas et al, No. 1:07-cv-846-JCC-TRJ consolidated with SmithKline Beecham Corporation et al v. Dudas et al., ____F.Supp.2d ____, No. 1"07-cv-01008-JC-TRJ, 2007 WI, 3196683 (E.D. Va., October 31, 2007);

51. *Thomas v. Collins, 323 U.S. 516, 531 (1945);

52. *United States v. Robel, 389 U.S. 258 266 (1967);

53. *Virginia v. American Booksellers, 484 U.S. at 397 (1988);

54. *West Virginia Board of Education v. Barnette, 319 U.S. 624, 642 (1943);

55. *Wyner v. Struhs, 179 Fed. Appx. 566, 2006 WL 1071850 (C.A. 11(Fla.);

56. Younger v. Harris, 401 U.S. 37 (1971); Zeiegler v. City of South Pasadena, 86 Cal. Rptr.2d (Cal. App. 1999);

57. First, Fourth, Fifth, and Tenth Amendments, and Articles I, II, III, and IV of the Constitution;

58. 19 U.S.C. 2465; 19 U.S.C. 1607, 1609, a forfeiture statute, such as 983; Rule 64; Art. I, Section 8, cl. 8; II, Section 2, cl. 2;  IV, Section 1 and 2; and Amendments I,

59. 35 U.S.C. 2 (b)(2)(D), 6, 32;

60. 35 U.S.C. 33;

61. 35 U.S.C.3 (b) – **See** Civil Action 07-1224 (JR) (D.C.D.C. 2007);

62. 28 U.S.C. 1292, 1331, 1332, 1338, 1361, 1366, 1367, 1738, 2412, 2465, *et seq*.;

63. 19 U.S.C. 1607, 1609, a forfeiture statute, such as 983; Rule 64; Art. I, Section 8, cl. 8; II, Section 2, cl. 2;  IV, Section 1 and 2; and Amendments I, IV, V and X of the Constitution;

64. The cited Patent Statutes are inconsistent with the Patent Office Rules,. 37 C.F.R. 10.7 and 10.11, and Articles II, III, IV, V and X of the Constitution.

65. 37 C.F.R. 10.160; 37 C.F.R. 11.5;

66. presentation or prosecution of their patent and/or trademark applications

67. 37 C.F.R. 10.14, and revisions, including 11.7;

13

68. U.S. Patent 5,256,367, Application S.N. 29/273,235, filed 2/26/07; and S.N. 77/247,319, filed 08/04/2007;

69. Certificate of Registration formally issued under the Seal of the United States of America and the signature of the Acting Commissioner of Patents, Arthur W. Crocker on November 5, 1998, in which Plaintiff, the subject matter of the patent, was described personally, "as an ATTORNEY, Registration No. 19,240."

70. First, Fourth, Fifth, and Tenth Amendments, and Articles I, II, III, and IV of the Constitution.

71. Official Gazette (OG), (constitutionally insufficient notice on August 28, 1996);

72. Federal Practice & Procedure, Sec. 177 (1982);

73. "Let's Run the PTO as a Business," Intellectual Property Today, December 2007, p. 26-28,

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  12/31/07

14

## ADDITIONAL STATEMENT OF REFERENCES

In <u>FCC v. League of Women Voters of Cal.</u>, 468 U.S. 364 (1984);

In <u>Medimmune, Inc. v. Genetech, Inc.</u>, 549 U.S. ____ (2007);

<u>Goldstein v. Moatz et al</u>, No. 0501144 (4th Cir. Decided April 20, 2006);

<u>Legal Services Corporation v. Velazquez</u>, 164 F.3d 757 (1999); 531 U.S. ____ (2001);

<u>Lynne Kalina v. Fletcher</u>, ____ U.S. ____ (1997).

<u>Marinangeli v. Lehman</u>, 32 F.Supp.2d 1 (D.D.C.1998);

<u>Memphis Community Schl. Distr. V. Stachura</u>, 477 U.S. 299 (1986); <u>Supreme Court of</u>

<u>Metromedia c. v. City of San Diego</u>, 453 U.S. 490 (1981);

<u>SEC v. Sloan</u>, 436 U.S. 103, 130-121 (1978),.S. at 194;

<u>Super Tire Engineering Co. v. McCorkle</u>, 416 U.S. 115 (1974);, <u>In</u>

<u>Supreme Court of Virginia v. Friedman</u>, 487 U.S. 59 (1988);

<u>TVA v. Hill</u>, 437 U.S. at 194; <u>United</u>

<u>United States v. Price</u>, 361 U.S. 304, 313 (1960).  And the applicable statutes

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| | ) |
| v. | )    CASE  07-cv-01719 (RWR) |
| | ) |
| JON DUDAS, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

**ORDER**

UPON CONSIDERATION of Plaintiff's Motion for a Preliminary Injunction, the

grounds stated there for, in favor of Plaintiff, and the entire record herein, it is this _____ day of

_____, 2007, hereby

ORDERED that Plaintiff's Motion should be and it hereby is Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For

Summary Judgment, should be and it hereby is Denied.

 

_____

UNITED STATES DISTRICT JUDGE

W. Mark Nebeker                          Cornell D.M. Judge Cornish
Assistant United States Attorney    1101 New Hampshire Ave., #301
Civil Division                                  Washington, DC 20037-1502
555 4th Street, NW                         (202) 429-9705
Washington, DC 20530                   cornishj@erols.com
(202) 514-7230 fax (202) 514-8780