RECEIVED

JAN 2 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff *Pro Se*　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　　)　　　CASE 07-cv-01719 (RWR)
　　　　　　　　　　　　　　　　　　)
JON DUDAS, et al.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants　　　　　　　)
_____)

Motion for Leave to File Memorandum of Points and Authorities In Support Of Plaintiff's
Answer and in Opposition To Defendants' 1/15/08 Filing Raising New Issues In Support of
Their Motion To Dismiss

This is a Motion for Leave to file the attached Memorandum of Points and Authorities In

Support of Plaintiff's Answer and Opposition to Defendants' 1/15/08 Filing because that filing

misconstrues Plaintiff's case, is a serious misconstruction of the interface between patent law and

the First Amendment, and it raises new issues and novel theories not based on fact to support

their Motion to Dismiss.

This Motion is timely filed with a request to supplement it until 2/7/08, which is the choke

point requested by Defendants for an enlargement of time for them to respond to filing by

Plaintiff.

This is also a request to file under seal, it being understood that that is a formal necessity to

comply with the Defendants Unopposed Motion [4] for Leave to Seal by the Defendants'

1

attorney, including the records of any and all pre- or post-removal hearings with redactions according to the Courts Rules laid down in this case; and denials, Petitions For Reconsideration and correspondence in relation thereto.

This Motion is necessary and has not been submitted earlier because of the new issues raised in Defendants' 1/15/08 filing. As pointed out in Plaintiff's attached Memorandum in Support of this Motion for leave to file a Response and Opposition to that 1/15/08 filing, this Motion is timely filed in response to the new issues raised by the Defendants.

The new issues raised can be categorized, as Defendants do on page 2 and in Notes 1 and 2, as follows:

1. The non-final March 22, 2005 letter in Exhibit 17 [7 and 24], which Defendants now for the first time use as the critical date for determining whether the Plaintiff has filed on time, as required by the non-jurisdictional and toll able choke point afforded by the Local Rules of the Court.

2. Defendants raise the March 22, 2005 as a non-final "determination" rather than a "final" "decision," as presumably the Local Rule requires.

3. Defendants have agreed and admitted that Plaintiff has met the choke point required by the PTO rules. *See* Note 15 on page 21 of Defendants' 10/16/07 filing [7], where they say that Plaintiff has "satisfied the 60-day time period under the USPTO regulations."

4. In view of the conflict between that admission and the new issue raised in Defendants' 1/15/08 filing, it appears that there is a real and current controversy in this case (albeit, there are many more, as pointed out by Plaintiff). For example, the complaint on page 14 of their 10/16/07 filing that Plaintiff has not met the requirements of "Article III, Section 2 of the Constitution," because this case is "moot," readily comes to mind. Also, the

2

incorrect, assertion in controversy on pages 15, 16, 25 and 27 that "<u>All</u>." <u>all</u>," "*all*," and "all" reasonable accommodations have been supplied comes to mind. That assertion was incorrect at least four times.

5.  And in their 10/16/08 filing they have changed the issue from what it was then on page 21 to what is now in their 1/15/08 filing. To this end, on 10/16/07, 0n page 14, Defendants said on March 22, 2005, that OED had determined after a careful review of the record, including sufficient material evidence in their hands, including the hands of the responsible investigator in this case, the whole record relevant to this case, and a deliberate intentional conclusion signed by the attorney who was the responsible attorney with apparent authority at the direction of Defendant Moatz,, as Defendant Griffin's letter said. He said that "based on the current record you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." That was what OED said on March 22, 2005.

6.  In their "determination" on 1/15/08, they didn't say it was "final"or a "final decision." They merely said it was a "determination." That didn't change in their 1/15/08 filing. What changed was that on 1/15/08, they said, "Plaintiff was required to file a petition in this court within 30 days of March 22, 2005."

7.  Moreover, the March 22, 2005 letter was correct when it said that "based on the current record you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

8.  The attempt to change the facts two years later, after Plaintiff filed this suit would not be believed a jury. A jury would be led to believe the overwhelming evidence in the record

supporting the fact that what was said was true, and that Plaintiff had the legal

qualifications necessary at the time. The jury would believe that the letter was correct on

March 22, 2005 in favor of Plaintiff, and he could rely and did justifiably rely on that

affirmation to the detriment of the change proposed on 1/15/08 as a "mistake." It wasn't

a mistake. It was not a mistake that could change the facts on 1/15/08. That is a bad faith

attempt to change the facts in the record as a mistake. *See* Maldague, 10 USPQ2d at

1478, which was cited in support of the answer given by OED to question 29 on their

April 12, 2000 examination in the morning session.

9. That case held that a different conclusion after reviewing the same facts a second time is
   not a mistake of fact.

10. The Defendants said on 1/15/08 that the facts were mistaken, but their legal analysis was
    mistaken. Defendant Griffin was mistaken on March 22, 2005, in his First Amendment
    analysis when he based his threat of prior restraint on a "disability" that had no basis in
    fact. Defendants couldn't change that fact on 1/15/08 or deny their actual *prior restraint*
    in Plaintiff's applications on 1/15/08, or the secret tampering with his records without a
    pre- or post-removal hearing or any notice to Plaintiff until 10/16/07, which is the critical
    date that should be used for calculating the choke point for filing this case.

11. Plaintiff had demonstrated that he is still possessed of the requisite legal qualifications
    practicing before the PTO. He is actually practicing in his present applications at the risk
    of prosecution if he advertises in the face of Defendants' *prior restraint.*

12. A case in controversy was raised by the Defendants under the First Amendment, at least
    as early as their threats on March 4, 1996, Exhibit 8 [7], and more fuel has been added to
    that First Amendment controversy by the threat of *prior restraint* each time, repeatedly,

4

they threatened him since then, for example, each time a secret or a non-secret communication and threat to prosecute Plaintiff under 35 U.S.C. 33 or otherwise came to light.

13. That First Amendment issue, along with Plaintiff's Due Process claim, was recognized on page 28 of their 10/16/07 filing. That was one instance of when they coupled the First Amendment to a threat of prosecution under 35 U.S.C. 33. To that end, they copied the statute as follows: "Whoever, not being recognized to practice before the Patent and Trademark Office, holds himself out or permits himself to be held out as so recognized…shall be fined not more than $1000 for each offense." But Plaintiff is well-recognized as a person who can practice as an attorney in the Trademark Office and *pro se* in the Patent Office. Note 2 on page 3 of their 10/16/07 filing admits this to be true in contradiction to what they said on page 28 above.

14. As far as Plaintiff has been able to find out, Defendants did no cite or copy the exact Rule for setting the choke point for the filing of Plaintiff case.

15. They rely on some authority but do not make clear to Plaintiff the basis of their legal analysis in their 1/15/08 filing.

16. Most of the authorities they cite relate to "disability" law under 29 U.S.C. 794, and the statute of limitations, which they admit applies to them, but mistakenly apply to Plaintiff in their mistaken legal analysis.

17. Therefore, Plaintiff can only presume that Defendant wants Plaintiff to guess what may be involved in their 1/15/08 filing, so that Plaintiff can be burdened by responding to their inapposite citations or those that they fail to cite. Plaintiff is at a loss as to how he can advance this case to issue without more information, including a certified record of

5

the Administrative Record, and file histories of his applications, and an answer to his FOIA request, in order to reply to Defendants' 1/15/08 filing without more information, including a specific citation and copy of the relevant portions thereof. The choke point may be calculated from documents in the Record that are not before the Court now, but that should now be added, so according to Plaintiff's Motion to Reopen the Record, an Order has been requested and was made necessary for that purpose by Defendants raising of new issues.

18. It may be that Defendants filed on 1/15/08 in a hurry because they have pending motions dated 12/30/07 and 1/4/08 to enlarge the time for their replies and filings until 1/7/08 and 2/7/08 respectively. Thus, Plaintiff is willing to agree to that date as a choke point for them to file the necessary additional information, and the records relevant thereto to help sort this matter out in a way that will advance this case to issue.

19. Plaintiff did not make per se objections to the enlargement to 2/7/08, and anticipated that he would not have to reply until after that date until Defendants made their 1/15/08 filing. Since Plaintiff has not been approved for electronic filing and receiving of Defendants' filing, Plaintiff was delayed in receiving the 10/15/08 filing by the long time required for snail mail to get to him, so he has asked for leave to reply and time to do so, including time to make this timely reply herein and herewith with an extension to 2/7/08.

20. Plaintiff is still trying to obtain the appointment and advice of counsel, which are two of the factors resulting in the delay of his filing of this case as long as he did, and for which he has asked the court for tolling if necessary

21. The possibility of such tolling has been recognized and admitted by the Defendants.

6

In view of the above partial response to the Defendants' 1/15/08 filing, Plaintiff again asks for the Court for leave to file under seal, for leave to file his Memorandum in support of his filings, and the Reopening of the Record, and an Order for the Defendants to supply certified copies of the relevant and accessible record, which is primarily only in their control.

Plaintiff also asks for Denial of the Defendants Motion to Dismiss, and the granting of Plaintiff's Motion for a Provisional Injunction that enjoins Defendants' *prior restraint* of his ability to advertise his name and profession in his patent and trademark applications.

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

cornishj@erols.com

Date:   1/22/08

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of copies of the foregoing Plaintiff's Motion,

Memorandum in Support thereof and in support of an Order to Deny Defendants' Motion to

Dismiss or alternately, to Support Plaintiff's Motion to Defer Issues and Controversies that are

not ripe for determination until February 28, 2008, have been hand delivered to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780


on this 22nd day of January, 2008.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

cornishj@erols.com

Date: 1/22/08

8

(

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
                                )
          Plaintiff *Pro Se*     )
                                )
          v.                )     CASE 07-cv-01719 (RWR)
                                )
JON DUDAS, et al.,             )
                                )
          Defendants        )
_____)

**Memorandum of Points and Authorities In Support Of Plaintiff's Answer and in Opposition To Defendants' 1/15/08 Filing Raising New Issues In Support of Their Motion To Dismiss**

      This Response is in Opposition to Defendants' filing of 1/15/08, which seriously misconstrues Plaintiff's case, and is a serious misconstruction of the interface of patent law and the First Amendment. It raises new and novel theories for allowing PTO discrimination to trump Plaintiff's 1st Amendment claims and opposition to their Motion to Dismiss. Judge Rich was famous for convincing the PTO and the District Court judges that it was their duty to review and limit the Patent Office discretion culminating in Parker v. Chakrabarty, 447 U.S. 303 (1980).

Misconstructions By Defendants' Filing of 1/15/08

      The 1/15/08 filing is incorrect and a misconstruction of: 1) Plaintiff's claims, as well as 2) the Patent Law. "The restatement claim," raised by the Defendants on page 2 of their 1/15/08 filing, is a phantom "claim" invented by Defendants. That non-existent "reinstatement claim" is inaccurate and clearly erroneous. Clearly, Plaintiff did <u>not</u> ever, and is still <u>not</u> asking the USPTO to "remove" him from its register of practitioners, in contrast to what the Defendants say. Defendants have offered insufficient evidence that Plaintiff requested such a removal in his suo sponte 2/8/96 letter. Nor did that letter ask the USPTO, as alleged by Defendants' 1/15/08

**RECEIVED**

1

JAN 2 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

filing, "to remove him voluntarily from its register of practitioners after Plaintiff had consented to being removed from the Maryland Bar register and while ethical grievance against him was pending before the UPTO." Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7 [7 and 24]), is relevant, but it did not "ask to be "removed" because of any "investigation" or "complaint." It was a notice to preserve Plaintiff's First Amendment rights by resisting "removal" by any PTO "investigation" or "complaint." Plaintiff did not learn of an "investigation" in the PTO until March 4, 1996, when the Director of OED threatened *prior restraint* by a threat of an "investigation" if the Director's discretion to hold it in "abeyance" was challenged. "If your name is removed from the register, you may be reinstated..." (Defendants' Exhibit 8 [7 and 24]), was a threat of "removal" and *prior restraint* under the 1st Amendment.

The Director used the threat of "removal" and prosecution because of a complaint having no basis in fact by "strategic mooting" that requires a pre- or a post-removal hearing (Barry v. Barchi, 443 U.S. 55, No. 77-803 1971). The threat, however, included *prior restraint* of 1st Amendment rights while the "investigation" was forwarded to the PTO's Committee on Discipline (the "Committee")(27 C.F.R. 10.132), as required by the allegations mentioned in the letter of March 4, 1996 from the Director of OED. This was a threat to Plaintiff's 1st Amendment rights that forced Defendant Griffin's letter of March 22, 2005, to retroactively resurrect the threat, this time by an accusation of a "disability" that was barred by the 5-year statutory bar of the "investigation held in "abeyance." But in fact that ended the threat of a removal based on an "investigation" or a "disability. Both are barred by the Statute of Limitations under 28 U.S.C. 2462. Compare Moatz v. Kersey, Proceeding No. 00-07 in the PTO 6/14/02 and Goldstein v. Moatz, No. 05-1144 (CA 4th April 20, 2006), by which the critical 30-day for filing this case is the date of Defendants' Answer on 10/16/07, not 3/22/05 as alleged.

2

Barry v. Barchi; the PTO Regulations; Marinangeli v. Lehman, 32 F.Supp.2d 1, 5 (D.D.C. 1998); and Moatz v. Kersey, Proceeding No. 00-07 Before The Under Secretary of Commerce, USPTO, Oct. 23, 2002, all make the critical date 10/16/07, not 3/22/05.

The Defendants falsely allege, and seriously misconstrue Plaintiff's case and the facts by somehow depending on the non-final letter of March 22, 2005 from Defendant Griffin, which is an entirely new issue that never rose heretofore to the best of Plaintiff's belief. It was a non-final, threat of *prior restraint*, and it was not "final," or a "decision," nor was it a constitutionally sufficient notice to Plaintiff of a "final" decision. It was a shift of focus for *prior restraint* to "disability," which required a hearing. After careful review in writing signed by the responsible attorney in OED, it concluded that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." But it invited further response before referring the alleged phantom "disability" to the PTO Committee on Discipline.

It was clearly provisional in stating that Plaintiff was removed from the register, because it was impossible on March 22, 2005 to state an accurate date for *prior restraint* in a patent application. The Director's letter of March 4, 1996, used coercion by saying that, "If your name is removed from the register, you may [emphasis added] be reinstated subject to satisfying the requirements of registration..." Defendants' Exhibit 8 [7 and 34], describes a secret handwritten note on 8/28/96 from the Director of OED, asking someone named "Pat," to "pls. remove Mr. Cornish from the roster." In Exhibit 33 Defendant Moatz, did not mention the fact that Plaintiff was never told that his name was secretly removed without telling him. His 6/15/00 letter libelously invaded Plaintiff's privacy to an addressee (name now redacted). He was well aware on June 15, 2000 that Director Bovard, his predecessor as Director of OED, had made threats of

3

the *prior restraint* by "removal" of Plaintiff's name in her letter of March 4, 1996, and that fact was concealed by stating that "after" Mr. Cornish's letter in 1966, "OED thereafter removed Mr. Cornish's name from the roster of attorneys and agents."

The stealth was extended still further by Exhibit 31 [7 1nd 24], in which it was admitted on 10/10/07 under oath by Christine Nucker, an employee of OED, that Plaintiff's ID was changed without notification on December 22, 2006 at about 7:30 am from 19240 to 90001940, which is not the number on his July 16 – 17, 20007 examination. That meant that the number on his Examination, which was 19240, was his original protection against *prior restraint*. And that meant that Plaintiff was still in the PTO computer records, possibly on both the roster and register, that his ID was still being used, and that it had not been removed in April 1996, as alleged in Defendant Griffin's provisional non-final letter of March 22, 2005, which his affidavit corrected on 10/09/07. That affidavit was sent to Plaintiff on 10/16/07. Therefore, 3/22/05 is not the critical date for calculation of the 30 day period for Plaintiff's summons and complaint under the Court's Local tollable requirement, as alleged by Defendants.

Defendant Griffin's threat in his non-final letter of March 22, 2005, did not say that Plaintiff "asked" to be "removed." It merely said that "after you were placed on disability inactive status with the Maryland State bar" at an unstated date, "you were removed from the roster of registered patent attorneys and agents." Defendant Moatz stated on June 15, 2000, that "OED thereafter removed Mr. Cornish' name from the roster of attorneys and agents." Further, he stated that OED "will consider the complaint [of the addressee] if and when Mr. Cornish applies to be reinstated" Thus, Defendant Moatz on June 15, 2000, was clearly aware of his obligation and responsibility to initiate a post-removal investigation and convene the PTO's Committee on Discipline (the "Committee") 37 C.F.R. 10.132(a), composed of at least three

4

attorneys appointed by the Commissioner for Patents, *Id.*, 10.4(b). His discretion was not used to waive his obligation, but to confirm it. Goldstein v. Moatz, *Id.*, and No. 05-1399, Appeal from the District Court for the Eastern District of Virginia (CA-02-173-A April 20, 2006).

The letter of March 22, 2005, threatened 1st Amendment infringement based on an alleged "removal" after April 1996, because it incorrectly stated it was "after you were placed on disability inactive status with the Maryland bar." That was an obvious impossibility, and, thus, an invitation to treat it as "non-final," because that "bar" is an "association," which is not an authorized governmental agency. He renounced his letter as a final decision, when he said under oath that he and OED were not bound by it, or his affidavit of 10/9/07 in Exhibit 32 was false, because the conclusion of his letter of March 22, 2007 was renounced as a "final" decision. It said that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." That was renounced, repudiated, and collaterally denied as a "final decision."

Defendant Griffin's March 22, 2005 letter was obviously intended to be a provisional and non-final threat to infringe Plaintiff's 1st Amendment rights because of a "disability."

Under oath he said to Plaintiff for the first time two years later, that his letter was made in "good faith" but that he didn't intend on March 22, 2005 what he said he threatened in "good faith." His threat on March 22, 2005 was in "good faith "and "based upon the current record. He said, "[Y]ou have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

He also said on March 22, 2005, that you should fully detail the current status of your license in each of those states [mentioned as Maryland, the District of Columbia and New York] and provide copies of associated documentation, such as any request for reinstatement filed with

5

those jurisdictions." That was because Plaintiff and Defendant Griffin knew on both March 22, 2005 and on 10/16/07 that his letter was <u>non-final</u> on March 22, 2007, and that Plaintiff could, would and did comply successfully with those instructions to detail what Defendant Griffin knew to be the facts, i.e., that Plaintiff was in good standing, was of good moral character and reputation, and "competent" and "qualified" in all of those and other jurisdictions, which was conclusive proof of his "competence" and "qualification," and relevant to the required pre- or post-removal hearing. On March 22, 2007, he also knew, and said in "good faith," that, by asking for further information it was not a "final" decision, as required by law to be operable in this case as alleged, because it alleged in conclusion, and allegedly in "good faith," not as any mistake, but as a deliberate, intentional conclusion after serious and careful review in writing signed by the responsible attorney in OED, that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service."

Defendant Griffin knew on March 22, 2005, that Director Bovard had not any basis to waive an investigation. She was required to investigate, but now the investigation was barred by the Statute of Limitations, according to 28 U.S.C. 2462, which precludes the OED Director from penalizing a Respondent, including Plaintiff, for violations which occurred more than five years prior to his required filing of his referral of a complaint to the PTO Committee on Discipline (the "Committee") 37 C.F.R. 10132(a). <u>Moatz v. Kersey,</u> proceeding No. 00-07, Secretary of Commerce, USPTO, 6/14/02. He threatened infringement of 1st Amendment rights on the basis of a false allegation of "disability inactive status with the Maryland State bar" by directing Plaintiff to supply more information on March 22, 2005. He said he did so in "good faith," in his 10/09/07 affidavit in Exhibit 32 [7 and 24] that, "based upon the current record, you have not

6

his 10/09/07 affidavit in Exhibit 32 [7 and 24] that, "based upon the current record, you have not

presented insufficient objective evidence to show that you continue to possess legal

qualifications necessary to render applicants for patent valuable service." The intention was to

obstruct Plaintiff's access to this Court by delay, and by concealing information that was

withheld from Plaintiff until 10/16/07, the critical date for calculating the 30 day period for

filing, by making the March 22, 2005 letter non-final, which he did.

And Defendants never pointed out any specific rational or equitable reason for their

admittedly false and inconsistent accusations other than the failure to waive the "investigation"

on March 4, 1996, and by "strategic mooting" continuing to hold the "investigation" in abeyance

since March 4, 1996, to save on expenses and fees, despite a bar by the Statute of Limitations,

and it is believed that they cannot do so because their allegations are so inconsistent, and

admittedly not true.   And Plaintiff has always maintained his legal and constitutional rights to be

a practitioner under the First Amendment since he was born on May 4, 1929. That is when he

qualified to file and prosecute applications as a *pro se* "practitioner" in the Patent and Trademark

Office under the First Amendment rights he was endowed with by his creator and the

Constitution, and to do so now as an "attorney," despite the bar of *prior restraint.*

Moreover, when he became an attorney in 1956, he was an attorney practitioner in the

Patent and Trademark Office under 35 U.S.C. 32 and 37 C.F.R. 10.14.  He was then licensed as

an *attorney* practitioner.  The Commissioner of Patents attested to it on November 5, 1958.  He

was inactive as an attorney from August 17, 1998 to November 16, 2000, but he was not

prevented by discipline in the PTO or by a Maryland Order of December 4, 1995, from

practicing *pro se* or *pro bono* for himself and others in the Trademark Office.  From December 4,

1995 he was "competent" to be an agent during the time when he was inactive for a living as a

7

lawyer in Md. He is currently a practitioner, and is currently practicing as an attorney in connection with his patent and trademark applications S.N. 29/273,235; and 77/247,319.

The latter application was filed on August 8, 2007. That alternately establishes a critical 30-day date for filing a summons and complaint in this action with tolling from that date to meet the 30 day choke point, instead of the March 22, 2005 date given by the Defendants. No option is given on page 2 of their 1/15/08 filing to the phantom, non-final, March 22, 2005 critical date for demonstrating Plaintiff's requisite qualifications to be reinstated to take the Patent Office examination for CLE purposes, or other mere academic reasons, as he did in 2005, 2006 and 2007. Such an option was clearly given by the March 22, 2005 letter itself. It said that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." Significantly, the 1/15/08 filing doesn't threaten a post-removal disability hearing.

Also, significantly, page 2 of Defendants' 1/15/08 filing acknowledges that no complaint by the PTO's Committee on Discipline under 37 C.F.R. 10.132(a), was or is pending before the USPTO. There was none after he gained an Order in his favor in Maryland to avoid yearly fees for active lawyers. That would be inconsistent with what the Defendants say in their 1/15/08 filing in connection with what Plaintiff characterizes as a new phantom "reinstatement claim." In fact, Plaintiff believes on information and belief that he has a spotless record before the PTO, and he has asked the Court to reopen the Record in this case, and to provide an Order requiring the Defendants to supply a notarized copy of Plaintiff's record before the PTO to confirm that fact to the Court.

Another of Defendants' newly presented and novel phantom defenses is Defendants' inaccurate allegations relative to Plaintiff's First Amendment claim. The burden of proof is on

8

Defendants to prove that their *prior restraint* is not unconstitutional.  Freedman v. Maryland, 380 U.S. 51 (1965).  "The Censor must have the burden of proving [that the subject matter of the *prior* restraint, i.e., Plaintiff's application now pending in the PTO] is expression unprotected by the Constitution."  The subject matter may be any of a variety of expressions. MPEP 2107.02; Diamond v. Chakrabarty, 447 U.S. 303 (1980); and the Areopagataica, John Milton 1644.  The *status quo* involved is the *status quo* determined by the limitations set in the Constitution by the First Amendment, and they are not trumped or limited only by the review of the Administrative Record in the Patent Office, including the overbroad, unsupervised discretion of the Defendants without a pre- or post-removal license hearing. Barry v. Barchi, *Id. See* Bantam Books v. Sullivan, 372 U.S. 58 (1963); and Freedman, *Id.*    That puts to rest the Defendants' previously stated misconception in connection with Plaintiff's Motion for a Preliminary Injunction that Plaintiff is trying to change the burden of proof by asking the Court to change the *status quo. See* page 18 of Defendants' 10/16/07 Answer, in which Defendants allege a higher standard is set when the *status quo* is changed. The *status quo* is their high burden set by the First Amendment.

Defendants also misconceive Plaintiff's September 26, 2007, complaint, which they mistakenly allege in Note 2 on page 2 of their 1/15/08 filing is "as a consequence of its March 22, 2005 determination" (emphasis added, since no 'determination' and no 'final' determination were made thereby). They assert Plaintiff's claim to be that the "USPTO is preventing him from holding himself out (e.g., advertising) as a registered patent attorney."  It is not rational to believe that the letter of 3/22/05 was "preventing" Plaintiff in any way in an application that didn't exist until 2/26/07 or 8/4/07.  It is irrational because it was only a threat on 3/22/05 of future *prior restraint* in his above-cited applications. That *prior restraint* of Plaintiff's August 04, 2007, application is rational now.  It will be rational in all future cases.

9

Censorship by *prior restraint* was not possible in that application on March 22, 2005, as alleged by Defendants. The *prior restraint* of concern was only possible in the "subject matter" of that application due to Defendants' continuation in force and effect of their clearly erroneous interpretation of their authorization from Congress under 35 U.S.C. 2 (b)(2)(D), 6 and 32, which is not legitimate under Art. II, Section 2, cl. 2 of the Constitution. The statutes themselves are unconstitutional. Defendants misconceive of the limitation on those statutes by the sword and shield of the First Amendment, which trumps their overbroad, irrational, unreasonable, unauthorized, and vaguely and ambiguously affected, but often repeated, threat to discipline Plaintiff and prosecute him under 35 U.S.C. 33 if he Court grants Plaintiff's Motion For Preliminary Injunction to enjoin Defendants from irreparably injuring Plaintiff by their *prior restraint. See,* e.g., page 3, last paragraph of Defendants' 10/16/07 Answer [7].

The *prior restraint* Plaintiff claims is the *prior restraint* applied by Defendants to all attorneys, to all subject matters, in all trademark applications (albeit, they also apply it to all attorneys in the Patent Office who are not registered, including all attorneys who prosecute their applications *pro se.* And they apply or threaten *prior restraint* retroactively under 35 U.S.C. 33.

Plaintiff's cause of action accrued in his above-cited trademark application when he was notified of its filing and the filing of a Preliminary Amendment on August 16, 2007 with the PTO and OED, and the irreparable injury caused to the Plaintiff by the Defendants' *prior restraint* in that amended application. There is evidence that that application, and Plaintiff, like all other like-situated attorneys, was not being treated with acceptable patent law practice, whereby Plaintiff and all like-situated attorneys are recognized to practice in trademark cases in the PTO for themselves and others. 37 C.F.R. 10.14 Individuals who may practice ...; 10.32 Advertising; and page 3, Note 2 of Defendants 10/16/07 Answer [7].

10

In both Plaintiff's cited patent and trademark applications, there is evidence of "carelessness, mistake, clearly erroneous errors in judgment, negligence, lack of proper skill, and other fault that readily became manifest in those applications. The wrong filing date was applied to the patent application, which is shown by the patent application file history. In addition, the Defendants' affirmative acts of inequitable concealment and deception, as described above, for example, coerced and threatened Plaintiff based on critical facts to set the statute of limitations running under 28 U.S.C. 2401 on 09/26/07, because it was on 09/26/07 that the Plaintiff had inquiry notice of the cause and nexus of his irreparable injury in those applications and as a result of those application having been filed on 08/04/2007 and 02/26/2007.

Reference is made to the newly cited references referred to on page 2 of the Defendants' 1/15/08 filing, including, e.g., Kubrick, 444 U.S. 111 at 120 (1979). That case held that a provision of "the Federal Tort Claims Act (FTCA) 111 28 U.S.C. 2401 (b) bars any tort claim against the United States unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues," as Plaintiff has done in this case. He presented his claim in writing on 09/26/07 within two years of the filing of those applications on 08/04/07 and 02/26/07, and he did so in connection with both applications. Even the filing on 2/26/07 was long after the March 22, 2005 date alleged by Defendants as the "critical" date from which to measure the 30-day filing or choke point of the Local Rule, which is not jurisdiction however.

The Defendants engaged in affirmative acts of fraudulent and inequitable concealment and deception on August 28, 1996 (Exhibit 17 [7 and 24]), June 15, 2000 (Exhibit 33 [7 and 24]), and between the period from July 16 to 17, 2007, and October 4, 2007 (Exhibit 31 [7 and 24], as explained by Plaintiff above, and otherwise in his filing in this case.

11

Plaintiff was not granted "voluntary" "removal" from the USPTO register effective August 1996 at <u>his request</u>, because he didn't request it. The letter of March 4, 1996, was sua sponte by the Director of OED, and set no date for any such "removal." It was a "strategic mooting" that was intended to avoid the fees and expenses of the judicial review that they would have had to face if they didn't conceal the "removal" of an "investigation" for lack of a finding of misconduct and the replacement of that "removal" by the secret "removal" of his ID. Nor is the date certain as to when the "removal" of his ID might have taken place. Defendant Griffin stated it took place at an uncertain date <u>after</u> April 1996, i.e., "after being placed on disability inactive status with the Maryland State bar," which was obviously at least as uncertain as the uncertain date given as "August 1996" in Defendants' 1/15/08 filing on page 2 in note 1. Exhibit 33 [7 and 24], inconsistently put the "removal" at an uncertain date, possibly after 1996. And Exhibit 31 [7 and 24], put the uncertain date as late as October 4, 2007, in view of the fact that the Statute of Limitations then barred the "removal" hearing threatened on 3/4/96 in Exhibit 8.

Plaintiff also objects to the Defendants' cavalier presentation of Plaintiff's "discrimination claim" on page 2 in Note 2 of their 1/15/08 filing. They simply recognize it without further comment, and thus, accept and admit to it as a valid claim under the Rehabilitation Act, 29 U.S.C. 794, which makes ineffective their misconception of the importance of the March 22, 2005 date, and the Plaintiff's requests for "reinstatement" to the Patent Office examinations in 2005, 2006 and 2007, for the purposes of Continuing Legal Education (CLE), and other mere academic purposes without adequate or reasonable accommodations or alternatives. The Defendant Moatz has stipulated that "he sees no reason why Mr. Cornish would not be granted the same accommodations provided to him for the July 2007 examination." That stipulation includes allowing him to request reinstatement to take the

12

examination endlessly in the future at no cost with the reasonable accommodations afforded

heretofore, but without the reasonable accommodations he needs to pass the examination and to

avoid discrimination due to his age related, life function, disabilities, comprising medically

certified, undisputed, and admitted age related disabilities that have not been reasonably

accommodated heretofore and don't prevent him from practicing law, i.e., "seeing, hearing,

breathing, blood circulating, excreting" under the Age Discrimination in Employment Act.

Defendants admit that Plaintiff's tolling assertion "is available to Plaintiff," as stated in

B. on page 6 of their 1/15/08 filing, but goes on to state that Plaintiff's "Enlargement" is objected

to because it was "unavoidable." Defendants' 1/15/08 filing then goes on to say that

enlargement is available "where a claimant received inadequate notice or where affirmative

misconduct by the defendant lulled the claimant into inaction," to which Plaintiff adds lack of a

right to appeal, and coercion as material evidence to prove that he was delayed in filing.

Plaintiff's arguments, which are not meritless, include the assertion in support of tolling

and the requested enlargement, that there was no "two year delay." To this end, the Defendants

use the wrong critical date, which Defendants misconceive as not being in dispute. Plaintiff

strongly asserts that the March 22, 2005 date was not the date of a "final decision," and not the

"critical" date from which to determine the 30-day choke point set by the non-jurisdictional rules

of the Court. March 22, 2005 was not the date of any "decision," and it was not the date of any

"final" decision. It was a "threat" of *prior restraint* by Defendant Griffin with deliberate,

intentional "good faith," not as a mistake, but as a result of a deliberative, intentional course of

action in order to induce Plaintiff dependence on that "threat" to his detriment. Defendant

Griffin clearly made his "threat" after careful review, and it was a review by the attorney

13

having the responsibility to make such a decision in writing. According to that "threat," it was his expert conclusion by one with apparent, if not actual authority at the direction of Defendant Moatz in concert conspiratorially, to make his "threat," based upon the "current record." It told Plaintiff that "you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service" because it was true and a pre- or post-removal hearing was barred by statute.

Likewise, the examination given on July 16 and 17, 2007, was a special examination to discriminate against Plaintiff without an appeal because of his age related, medically certified, undisputed disabilities. In that connection its function was different than the examination given on July 16 to applicants who had also qualified to take the examination on a different basis. They were primarily young, healthy, white males who were first time test takers for the Patent Office examination. Therefore, the parameters tested and appeals possible were both based on different standards and bases. Also, the identifying ID's on the two different examinations given respectively on the two different dates, i.e., July 16th or 16th to the 17th, were differently tampered with. In summary, Plaintiff's examination discriminated against Plaintiff by tampering with his 1st Amendment rights. This tampering including a secret changing of the ID numbers, which strongly indicated that the examination taken and reviewed were different examinations given to different persons on different dates. And the notices given to Plaintiff on August 13, 2007 and August 22, 2007, carried different ID numbers than on the examination given on July 2007. Only the latter had Plaintiff's correct ID 19240. This was a red flag that induced a need to delay the filing until an EEO complaint was made and rejected before this case was filed. The only option left after that rejection to "remove" the *prior restraint* of his applications without a pre- or post-removal hearing was the filing on 9/26/07. Accordingly, Plaintiff asked that a correction be

14

made in the date of that letter of August 22, 2007, and such a correction was made on October 4, 2007, when Plaintiff inspected an examination having an ID different than the ID on the examination he took. That October 4 date, therefore, was the date of the non-final notice made on August 22, 2007, and that alone justifies tolling of the choke point for this case.

Defendants allege that "there is nothing sinister about that administrative change." But they admit that it did take place. It was far short of a simple administrative change because it involved a clear pattern of surreptitious tampering, that included conspiratorial *prior restraint* of Plaintiff's ID by removal of his examinations out his sight without notice, right of appeal, or any opportunity for a pre- or post-removal or tampering hearing of any kind. The change made to his examination was made because of Plaintiff's request. It was revealed after filing this suit, which would lead a jury to reasonably conclude that the change was made not as a mere inadvertent typographical error or mistake, but as a significant, deliberate, and intentional basis for *prior restraint* after a careful review at Plaintiff's request and without notice to him until after he made an investigation of the facts, and as a result of his law suit, which asked for judicial review of the lack of any means of appeal or pre- or post-tampering hearing. It caused serious injury and unavoidable delay in the filing of his law suit. Delay was required to gain and lose an EEO intervention. Filing this case was the only option left to promptly learn of the concealment and tampering that caused irreparable injury to his reputation, property and privilege, and *prior restraint* also. That filing turned up the lack of any pre- or post-removal hearing by coercion and the *prior restraint* that the Defendants were imposing on him by word and deed against any and all subject matters in all his patent and trademark applications. A pattern of *prior restraint,* concealments, secrecy, and tampering without notice to Plaintiff included threats of criminal fines and no appeal rights for "removal," by pre- or post-removal hearing, which all added to the

15

delay in his filing of his law suit. Answers to Plaintiff's Petitions for Review to the Commissioner on 7/11/05 and 5/21/07 ($130 each), were delayed to thwart and delay the filing of this law suit, and the latter Petition was not even acknowledged. Only the former was held to be moot. *See* Note 15 on page 21 of Defendants' 10/16/07 filing [7].

The handwritten note on Exhibit 8, as explained on page 10 of Defendants' 1/15/08 filing, was concealed from Plaintiff to unavoidably delay filing this suit because it caused a delay to seek legal help and the expense and fees to obtain it and the financing necessary to file this suit that Defendants had attempted to avoid by the "strategic mooting" of an investigation required by the Director of OED, and a hoped for reduction in the recoverable damages that Plaintiff can be expected to achieve because of the lack of any opportunity for a pre- or post-revoking hearing that is required by 37 C.F.R. 10.131 and 10.132. The strategy successfully delayed the filing of a complaint with the EEO Office, which denied Plaintiff's EEO complaint less than 30 days from the date of this filing. And the strategy delayed compliance with his FOIA request by Defendants. All of these actions required time, energy and cost that delayed filing of this suit. And the search for competent legal help took time and lacked success.

A delay to learn about the secrecy of his "removal" without pre- or post-removal hearings was because the notice of "inactivity" in Maryland included an Order in his favor that freed him from yearly fees for active practice for a living as an active attorney in Maryland. It didn't foreclose his *pro bono* practice in Maryland, his practice in the Trademark Office, or his *pro se* practice in the Patent Office, which required no yearly fees for active practice. The secret "removal" by the Director of OED's handwritten note on August 28, 1996 in Exhibit 8 [7 and 24], gave him a right to demand a pre- or post-removal hearing. He had an immediate right to practice without *prior restraint* as an agent until becoming inactive in New York on August 17,

16

1998. Had he learned about the letter to a redacted addressee on June 15, 2000 in Exhibit 33 [7 and 24], he had a right to demand a pre- or post-removal hearing to practice without *prior restraint* as an agent or an attorney because he was qualified to practice as an attorney when he was active in New York until August 17, 1998, and again as an attorney on November 16, 2000 when he became active as an attorney in DC, which is only a little over 2 years as an agent. Also, he had a right under the First Amendment to practice *pro se* as an attorney in the Patent Office starting in 2000. He always had a right to a pre- or post-removal hearing to practice *pro se* in the Trademark Office and the Patent Office as an attorney without *prior restraint* during the times he was licensed to practice in Maryland, DC or New York. The secrecy deprived Plaintiff of his license and livelihood as a practitioner and irreparably injured his property, reputation, privilege and income without probable cause or any finding of misconduct or disability. And he was coerced to delay filing this case on March 4, 1996, by the "strategic mooting" of an investigation that was backed up by a threat to prosecute criminally under 35 U.S.C. 33.

Defendants licensed Plaintiff to advertise his name as an attorney in the USPTO on November 5, 1958 and secretly and unconstitutionally revoked his license on or about August 28, 1996 without notice or any pr- or post-revocation hearing. Barry v. Barchi, 443 U.S. 55 (1979); Freedman v. Maryland, 380 U.S. 51 (1964); and Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988). Then there was a 1st Amendment threat on March 22, 2005 in Exhibit 17.

Defendants, or their predecessors, were not appointed with authority under Article II, Section 2, cl. 2, of the Constitution to preempt Article IV and the First, Fourth, Fifth and Tenth Amendments by *prior restraint* of the Plaintiff's advertisements, and his property, privilege and livelihood under his license as a attorney, by discretion alone without any pre- or post-revocation hearing. Indeed, Defendants act as speech police according to a speech code that has no

17

statutory basis, pre-set basis for appeal or time-frame for judicial review, such as 35 U.S.C. 101, 102, 103,112, 2 (b)(2)(D), 32, 141, 142, 145, or the Patent Office Regulations. Instead, they use only their discretion and discrimination against clearly identified insular groups without any pre- or post-revocation hearings to irrationally require all attorneys not registered in the PTO to request reconsideration to take the Patent Office test without reasonable accommodations for their certified, life function, age related disabilities in order to advertise their name as an attorney in a trademark or patent application. That threatens and infringes 1st Amendment rights.

Their use of pure discretion not based on any statutory standard is not entitled to deference by this Court. It does not require this Court to make a word by word review of the Defendants discretionary editing, or to give wide deference of the Court to threats of, and infringement of 1st Amendment rights. That does not involve this Court's review of the Administrative Record in the Patent Office to enjoin infringement and threats of infringement of 1st Amendment rights.

The Defendants' *prior restraint* by discretion alone, is an irrational, unconstitutional violation of Plaintiff's Constitutional rights, and a clearly erroneous, overbroad, vague and ambiguous, unauthorized use of their discretionary powers to threaten 1st Amendment rights.

Thus, Plaintiff challenges the constitutionality of the Regulations and the evidentiary presumptions under which the Defendants threatened to revoke and revoked his license to advertise, and continue their *prior restraint* to censor Plaintiff's advertisements without pre- or post-revocation hearings. The March 22, 2005 letter threatened to infringe the 1st Amendment.

In addition to the irreparable injury to Plaintiff's reputation, the actual and potential loss of livelihood through revocation of his license to advertise as an attorney is aptly categorized as interference with a *property* right. Attorney Grievance Commission of Maryland v. Bear, Misc. Docket AG No. 32, Dec. 8, 2000 (CA Md), page14. Also, a threat to 1st Amendment rights.

18

In <u>Barry v. Barchi,</u> 433 U.S. 55 (1979), the Court held that the appellee had a protectable *property* interest in his license under state law sufficient to reverse revocation of his license by due process protections. That is sufficient to enjoin an actual 1st Amendment infringement.

In <u>Supreme Court of Virginia v. Friedman,</u> 487 U.S. 59 (1988), the Court held that there is a Constitutional right to protection from *prior restraint* to hold oneself out as an attorney under the Privileges and Immunities Clause of the United States Constitution, Art. IV, 2 cl. 2.

Defendant secretly revoked Plaintiff's license to advertise his name as an attorney in the USPTO by a secret, internal handwritten note by the Director of OED without any pre- or post revocation hearing on 8/28/96, without notice to the Plaintiff. Defendants' Exhibits 8 and 33 [7 and 24]. Defendants promised to protect Plaintiff's license without the limbo of *custodial legis* by a "strategic mooting" that delayed the required hearing. As a "consent decree" that would be in Plaintiff's favor. But on 8/28/96 it was a threat without a pre- or post-removal or notice.

As understood from the OED Director's handwritten secret note on 8/28/96 in Exhibit 8 [7 and 24], Plaintiff's license was secretly put into jeopardy without notice as an anticipation of *prior restraint* with notice. And Plaintiff didn't find out about that until 10/16/07 in Defendants' Answer [7]. That is the critical date for calculating the 30-day choke point for his applications.

Additionally, discrimination against Plaintiff irreparably injured Plaintiff's reputation and livelihood by *prior restraint* of advertisements without authorization by Congress under Art. II, Sec. 2, cl. 2 or otherwise, e.g., under 35 U.S.C. 2 (b)(2)(D) or 32, and without probable cause or a pre- or post-revocation hearing under the PTO Regulations referred to herein. The injury increased on August 4, 2007, when Plaintiff filed his trademark application S.N. 77/247,319. It didn't begin on March 22, 2005. The irreparable injury continued and is continuing in application S.N. 77/247,319, filed 08/04/07, and S.N. 29/273,235, filed 02/26/07.

The threat of *prior restraint* was found in Defendants Griffin's letter of March 22, 2005 in Exhibit 17 [7 and 24], which stated on page 1, paragraph 3, that Plaintiff was "removed from the roster of patent attorneys and agents in April 1996, after being placed on disability inactive status with the Maryland State bar." That "<u>disability</u>" as a basis for "removal" was time barred by statute. The "investigation" in 1996 was also time barred as a basis for "removal." But the letter of March 4, 1996, restarted the threats of *prior restraint*. Plaintiff was coerced not to challenge the threat by "strategic mooting" in his favor that delayed an investigation of a complaint to the PTO in 1996. The Maryland State bar has no authority to place anyone on "disability" inactive status, and Defendant Griffin had no basis to make his letter final. He had to correct his letter because his letter had to acknowledge the threat of *prior restraint* on March 4, 1996 by the Director of OED in Exhibit 8, but he refused to do so until his affidavit was filed in this case on 10/16/07 and 12/20/07 [7 and 24].

Defendant Griffin's correction came 2 years after his threat in 2005. Exhibit 32 [7 and 24]. That was 11 years after the March 4, 1996 threat by OED Director Karen Bovard, who "strategically mooted" it. Her threat of *prior restraint* was based upon a vague and indefinite standard comprising only her overbroad, unsupervised discretion. She made a deliberate, intentional "strategic mooting" because her case was weak. But she made it as the person in charge of OED in a signed, original letter in writing to Plaintiff after careful review in her unsupervised prosecuting capacity without judicial review or pre- or post-sanction hearings.

Defendant Griffin's March 22, 2005 letter in Exhibit 17 [7 and 24], was bound by her actions, since his letter was not written by mistake, but after a careful review of the facts and a deliberate, intentional course of action in "good faith." Defendant Griffin's "bad faith," led to an erroneous statement concerning the circumstances behind his unsupported hearsay concerning an

20

alleged "disability inactive status of Plaintiff with the Maryland State bar." He invented a disability to threaten Plaintiff with infringement of 1st Amendment rights without basis in fact.

Defendant Griffin didn't correct the discretionary threat of an investigation by the Director of OED in 1996. That was beyond his discretionary authority because of a lack of a finding of misconduct after careful review. Defendant Griffin knew the Court of Appeals of Maryland Order of December 4, 1995, had been disclosed to remove any basis of *prior restraint*. Exhibits 4 - 7 [7 and 24]. The Order was in favor of Plaintiff. That focused Defendant Griffin on his deliberate, intentional conclusion, which was not a mistake, after a careful review in writing signed by him. He stated that "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." That was not a mistake. His 3/22/05 letter was a non-final threat, like the March 4, 1996 threat of investigation by the Director of OED shown in Exhibit 8 [7 and 24], and neither threat had any basis in fact.

The final step in the discrimination of Plaintiff came on October 4, 2007, which was the date of the final constitutionally sufficient notice to Plaintiff of Defendants' correction of their incorrect, constitutionally insufficient notice on August 22, 2007 in Exhibit 30 [7 and 24]. October 4, 2007, therefore, was the corrected date to announce their *prior restraint* and Defendants' discrimination of Plaintiff because of his undisputed, medically-certified, age related life function disabilities, and their failure to make reasonable accommodations for them.

October 4, 2007 is the corrected date that Plaintiff was informed that he must re-apply for: 1) reinstatement to qualify to take the Patent Office exam without a pre- or post-revocation hearing or any appeal rights; 2) additional reasonable accommodations for his age-related life function disabilities; or 3) calculation of the 30-day choke point for this case. He can be refused

21

permission by discretion under 37 C.F.R. 10.7 or 10.11without any right of appeal, although that is not in line with accepted practice. Approval can be revoked without a hearing or any statutory time limit for an appeal or any judicial review now. In 1958, Plaintiff was pre-approved to be reinstated to take and pass the Patent Office examination before his license was revoked in 1996. From 1958 to 1996 he was presumed to comply with the regulations established under 35 C.F.R. 2 (b)(2)(D) and 32 with a spotless record, whereby he could advertise without *prior restraint* until his license was revoked. Now, Defendants by *prior restraint* refuse to let him advertise his profession in any application in the PTO, both trademark and patent, pro se or for another. He must by *prior restraint* apply for a license to qualify for reinstatement to qualify to take the examination without reasonable accommodations for CLE purposes, or any other mere academic purpose.

The license to qualify for reinstatement to qualify to take the examination irrationally holds up the examination as the sole and only means by which Plaintiff can advertise again without *prior restraint*.

That is the same filter irrationally used for all attorneys to determine their right to advertise as attorneys under Defendants' clearly erroneous interpretation of their Regulations. There are certainly other better and Constitutional ways, including a pre- or post-revocation hearing to rebut the presumption that advertisements by attorneys not registered in the PTO are constitutional without prior restraint.

Freedman v. Maryland, 380 U.S. 51 (1964), held that there is a heavy presumption against the constitutional validity of *prior restraints* of expression (Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70). The censor has the burden of proving that the expression is unprotected by the Constitution. Any restraint prior to judicial review must be limited to preservation of the status

22

quo and for the shortest period compatible with sound judicial procedure. The absence of procedures with adequate safeguards against undue inhibition of protected expression renders the statutory requirement of prior submission to censorship an invalid previous restraint. Likewise, the lack of any statutory or regulative standard even with a pre- or post-revocation hearing is presumed to be unconstitutional, which is the situation now in this case due to the Defendants' clearly erroneous interpretation of their Regulations and their authority to use their discretion *alone* to censor all Plaintiff's advertisements by *prior restraint*, and all those of all other attorneys not registered in the PTO or whose licenses have been revoked secretly without notice to the attorney or any opportunity for any pre- or post-removal hearings or judicial review.

To remove the *prior restraint* against Plaintiff's protected expression, the Plaintiff asks the Court to Deny Defendants' Motion to Dismiss because it asks the Court irrationally, unreasonably, in an arbitrary, capricious and fanciful manner, without authority and in accordance with Defendants' interpretation of the Patent Statutes that is clearly erroneous and a clear conflict of interest with their sworn duty under the Constitution and statutes preventing their conflict of interest, and also wholly unconventional, under statutes that are unconstitutionally vague and ambiguous, and unauthorized under Article II, Section 2, cl.2, to place the burden on Plaintiff to prove that he qualifies to apply for a license to take an examination without reasonable accommodations for CLE purposes, or other mere academic purposes, and for which he has already been licensed to take as the single and only means to prove his "good moral character and reputation" and "qualifications" under 35 U.S.C. 2 (b)(2)(D) and 32. The Defendant use their unbridled discretion to determine who is qualified to ask for reinstatement to take the Patent Office examination to censor 1st Amendment expression.

23

In Gager, v. Ladd, 212 F.Supp. 671, 673 (D.D.C 1963), the Court held it could disturb the Commissioner's Decisions by determining whether the Commissioner had abused his discretion. In that case an applicant who had graduated from the United States Merchant Marine Academy, had six years of experience in patent and trademark work, and had worked on the prosecution of five or more applications devoting the greater part of his time to patent searching, was denied permission to take the examination for failure to show that he was "qualified" to take the examination.   In Premysler v. Lehman, 71 Fed.2d 387 (1996) the Court also held that the Court had jurisdiction to determine whether the Commissioner abused his discretion in finding that the applicant for the Patent Office examination was unqualified to sit for the examination. Additionally, they investigated whether the PTO Regulations bind the public to new regulations that were not subject to notice and comment, such as were found in the cited Taflas v. Dudas, Case 1:07cv846 (JCC) (D.C. E.D.Va. 2007).

The Defendants put the burden on the applicants to prove that they can advertise by making them qualify to take the examination to show that they can "render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office."   The Defendants use their discretion to refuse applicants 1st Amendment expression by *prior restraint* to be licensed to be reinstated to take he exam without any  pre- or post-removal hearing to advertise for any purpose, including even " to promote and publish their  name as an attorney."

Their discretion was used to hold the taking and marking of the July examination completely under the control of the Defendants without any supervision. The passing the July Patent Office examination is the only consideration used to inform Defendants' overbroad discretion. The Defendants use their sole, unsupervised, and overbroad discretion to set the passing grade for the

24

examination without any means for any correction or appeals from that grade. The attorneys

grade on the exam is under the unsupervised control of only the Defendants. That grade and the

notices given are sometimes wrong, as in this case, because of mistakes and any appeal, judicial

review or any pre- or post-removal hearings. *See* <u>Klein v. Toupin and Moatz,</u> 2006-1486 (CAFC

Dec. 6, 2006), which also noted jurisdiction for review of the Commissioner's actions under 35

U.S.C. 32 and Local Rule 213, and that procedural due process is required in attorney discipline

cases, including a fair hearing, adequate notice of the charges and the right to confront adverse

witnesses, citing <u>In re Ruffalo,</u> 390 U.S. 544 (1968). The same is no less required under the 1st

Amendment.

But the discretionary requirements of the Defendants are the sole basis for *prior restraint* of

expression by Plaintiff and <u>all </u>other attorneys if they are not registered, even if they practice in

the Trademark Office and *pro se* in the Patent Office. In <u>Cupples v. Marzall,</u> 101 F.Supp. 579

(1952), the Court questioned the desirability of the provisions for judicial review of the

Commissioner's unrestricted actions. It was noted by the Court that appeals from the PTO are

used under the Local Rules of the Court to satisfy the mandate of Congress.

Defendants irrationally do not allow Plaintiff to promote himself by protected expressions in

his own patents and trademarks without *prior restraint* even though the regulations cannot pre-

empt the First Amendment. <u>Barry v. Barchi,</u> 433 U.S. 55 (1979).

Respectfully submitted,

*Cornell D. M. Judge Cornish*

**Cornell D.M. Judge Cornish**
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of copies of the foregoing Plaintiff's Motion,

Memorandum in Support thereof and in support of an Order to Deny Defendants' Motion to

Dismiss or alternately, to Support Plaintiff's Motion to Defer Issues and Controversies that are

not ripe for determination until February 28, 2008, have been hand delivered to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 22nd day of January, 2008.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705

cornishj@erols.com

Date: 1/22/08

8

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
                                     )
              Plaintiff *Pro Se*     )
                                     )
                v.             )     CASE 07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.,              )
                                     )
            Defendants       )
_____ )

### ORDER

UPON CONSIDERATION of Plaintiff's Motion for Leave to File Memorandum of Points

and Authorities In Support of Plaintiff's Answer and Opposition To Defendants' 1/15/08 Filing,

and the grounds stated therefore, and the entire record herein, it is on this _____ day of

_____, 2007, hereby

Ordered that Plaintiff's motion should be and it is hereby granted; and it is

FURTHER ORDERED that the Defendants' Motion to Dismiss is Denied.


_____
UNITED STATES DISTRICT JUDGE

W. MARK NEBEKER          Cornell D.M. Judge Cornish
Assistant U.S. Attorney       Suite 301
555 4th Street, NW           1101 New Hampshire Ave., NW
Civil Division                Washington, DC 20037-1502
                           Washington, DC 20530

1