UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) | |
| | ) | |
| Plaintiff *Pro Se* | ) | |
| | ) | |
| v. | ) | CASE  07-cv-01719 (RWR) |
| | ) | |
| JON DUDAS, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

Motion For Permission To Amend Complaint, Inter alia, Without Limitation, To Include
United States As A Defendant; To Vacate Court's Order Denying Plaintiff's Motion To
Subpoena Defendant Moatz For Discovery; And For Enlargement Of Time Until February 28,
2008 To Reply To Defendants' Filing of 1/15/08 Raising New Issues In Support of
Defendants' Motion To Dismiss Or, Alternately For Summary Judgment

This Motion is necessary and reasonable to allow Plaintiff to reply until February 28,

2008 to Defendants' Filing of 1/15/08, in which they Oppose Plaintiff's Motion for Enlargement

of Time by seemingly arguing that Plaintiff has exhausted his administrative remedies, whereby,

for the first time there is a magic bar date that the Court should focus on that comes from Local

Civil Rule LCvR 83.7.

Vexatiously, Defendants use a March 22, 2005 letter from Defendant Griffin as the key for

unlocking the door to the exhaustion of administrative remedies.  But the letter of March 22,

2005 is not from the Commissioner, as required by LCvR 83.7.  That is the first strike against

their theory.  It is not an Order, which is strike two.  And it is not recorded as a final Order

refusing to recognize Plaintiff for practice, or suspending or expelling him from practice after a

hearing or an opportunity for a hearing.  That's strike three against Defendants' theory.

**RECEIVED**

JAN 3 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Acccordingly, Plaintiff asks the Court by this Motion for an Order by which Plaintiff can seek, inter alia, without limitation, damages from the United States in a final hearing by Denial of Defendants' Motion to Dismiss and Amendment of the Complaint to include the United States as a Defendant; granting of a Motion to Vacate the Court's Order not to subpoena Defendant Moatz for discovery; enlargement of the time to respond; and more immediately, a Preliminary Injunction to enjoin the United States and the Defendants from failing to do their duty not to censor or discriminate against Plaintiff by *prior restraint* because of age-related disabilities and failure to provide reasonable accommodations that do not impact negatively on his ability to successfully practice in the PTO as he had done since 1958; from failing to treat him fairly and equally with all other attorneys and *pro se* practitioners without *prior restraint* in accordance with their duty to provide an opportunity for a hearing; from failing to refrain from their duty not to irreparably injure Plaintiff by negligent, unauthorized, and clearly erroneous *prior restraint* without a hearing by wrongful censoring of Plaintiff's current and future patent and trademark applications.

Respectfully submitted,

*Cornell D.M. Judge Cornish*

**Cornell D.M. Judge Cornish**
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 1/30/08

2

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| | ) |
| v. | )    CASE  07-cv-01719 (RWR) |
| | ) |
| JON DUDAS, et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

Memorandum of Points and Authorities In Support Of Plaintiff's Answer And In Opposition
To Defendants' 1/15/08 Filing Raising New Issues In Support of Their Motion To Dismiss

Defendants' Opposition of 1/15/08, dates back to an earlier version.  That version now

appears to have been a vexatious attempt to base their opposition and Motion to Dismiss on the

lack of a successful effort by Plaintiff to exhaust his administrative remedies.  To that end,

Plaintiff was told that he needed, but didn't have, a final, recorded, notice of a final action by the

Commissioner.  Specifically, Defendants required that Plaintiff would have to have a refusal to

recognize Plaintiff's practice or the Commissioner would have had to suspend or exclude him

from practice before he had anything on which to base his appeal to this Court.

Defendants' Opposition of 1/15/08 has now returned to their vexatious Motion to Dismiss,

but this time they Oppose Plaintiff's Motion for Enlargement of Time by saying that Plaintiff has

exhausted his administrative remedies.  To this end, they limit their Opposition strictly to only

the date from which to toll the applicable non-jurisdictional time-bar resulting from Plaintiff's

alleged failure to timely file an appeal from the Commissioner's Order that exhausted Plaintiff's

administrative remedies.  Defendants now specify for the first time that the magic bar date that

the Court should focus on comes from Local Civil Rule LCvR 83.7.

1

Vexatiously, this time, Defendants use a March 22, 2005 letter from Defendant Griffin as the key for unlocking the door to the exhaustion of administrative remedies. But the letter of March 22, 2005 is not from the Commissioner, as required by LCvR 83.7. That is the first strike against their theory. It is not an Order, which is strike two. And it is not recorded as a final Order refusing to recognize Plaintiff for practice, or suspending or expelling him from practice. That's strike three against Defendants' theory.

They allege that Plaintiff has exhausted his administrative remedies by acquiring a final, recorded, notice of a non-final action by Defendant Griffin on March 22, 2005 in Defendants' Exhibit 17, but it is not a <u>final</u> action, Decision or Order by Defendant Griffin or the Commissioner. Defendant Griffin invites further response, since he is not the Commissioner, as required by LCvR 83.7. Moreover, Defendant Griffin didn't want or intend his invitation to be final. It was supportive of the facts that he knew to be present in support of Plaintiff's case, since he knew that it was his job as the responsible investigative attorney to make and be bound by a good faith conclusion based upon a deliberative, intentional evaluation of the facts in the record surrounding Plaintiff's exhaustion of his administrative remedies. To that end, he said to Plaintiff that, "based on the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." He said moreover, in denying that the record was insufficient to show what needed to be shown, that it was "without prejudice against supplementation of the present record."

That sounds like a non-final invitation to reply further but not to change his conclusion based on the facts already in the record. It doesn't sound like what is required by LCvR 83.7, which is what the Court requires as the only basis for a decision on Defendants' Motion to Dismiss.

2

LCvR 83.7 also requires that Defendants to certify the record of the proceedings before the Patent Office, as required by 35 U.S.C. 32. Thus, a certified copy of the hearing held to determine the facts of Defendants' "refusal" that "suspended or excluded" Plaintiff from practice is required, "which shall constitute the sole basis for the court's review." No such record exists, and cannot be supplied because it doesn't exist, so it cannot be the "sole basis for the court's review."

There has been no hearing and no opportunity for a hearing. There is no evidence that Plaintiff was refused recognition to practice or was suspended or excluded from practice after a hearing, and although Defendants have been requested to supply the same if it exists, they have not done so.

Having provided no evidence that Plaintiff has been refused recognition to practice or suspended or excluded from practice by an Order from the Commissioner after a hearing or any opportunity for a hearing, this is a radically new, unnecessary, time-consuming, labor-intensive, ineffectual and vexatious basis for their Motion to Dismiss. It is a request for pre-emption of the general First Amendment, Due Process and Discrimination Law by this Court via Local Civil Rule LCvR 83.7. *See* page 2, of Defendants' 1/15/08 filing.

Accordingly, this Memorandum is a second or supplemental but <u>timely</u> Memorandum to Respond in Opposition to Defendants' filing of 1/15/08. It Supplements it, and is also a Memorandum in support of a Motion to <u>vacate</u> the Court's Order refusing to subpoena Defendant Moatz, to Amend the Complaint by adding the United States with permission to file an Amended Complaint, and for enlargement of the time to oppose Defendants' filings because Defendants' 1/15/08 filing seriously misconstrues Plaintiff's case, and is a radical, novel, and serious misconstruction of the requirement for a hearing in the general law, including the law of

3

pre-emption by Local Civil Rule 83.7, with which they inappositely refer to newly cited case law relating to Local Civil Rule 83.7.

The newly cited references comprise a case against Defendants Dudas and Moatz, i.e., Kramer v. United States Patent and Trademark Office; Jon W. Dudas, Commissioner for Patents; Harry Moatz, Director, Office of Enrollment and Discipline; Robert J. Spar, Director, Office of Patent Legal Administration, (OPLA), *Id.*, Civil Action 05-01455 (HHK), WL 2320916, 4 (D.D.C. Aug. 9, 2006) (not reported in F.Supp.2d).

The Defendants have presented a radically new and completely novel defense not presented in this case heretofore, such that this Memorandum is in support of the enclosed Motion to Amend the Complaint and to vacate the denial of subpoena of Defendant Moatz, and to enlarge the time to reply to the 1/15/08 filing until 2/28/08.

The Defendants' 10/15/08 filing completely ignores the general law relating to the requirement for a hearing in connection with Defendants' *prior restraint* of Plaintiff's First Amendment, Due Process and Discrimination claims. *See,* for example, Barry v. Barchi, 443 U.S. 55 (1979). *See* also Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117 (1926), which like Kramer, *Id,* but unlike Plaintiff's case, asked for a writ of mandamus to compel the board to enroll the plaintiff before it. Also, the plaintiff Goldsmith was not a lawyer.

Like Local Civil Rule LCvR 83.7, the relevant Rules provided for discretion to deny or "refuse recognition to practice or suspend[ed] or exclude[d]," i.e., "disbar any person." "But," it was held in Goldsmith, *Id.*, that "this must be construed to mean the exercise of discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." Garfield v. United States, ex rel. Spalding, 32 App.

4

D.C. 153, 158; United States ex rel. <u>Wedderburn v. Bliss,</u> 12 App.D.C. 485; <u>Philips v. Ballinger,</u> 37 App. D.C. 46, 51.

See also <u>Bell v. Burson,</u> which was "but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege." And, "While the problem of additional expense must be kept in mind, it does not justify denying a hearing meeting the ordinary standards of due process. <u>Goldberg v. Kelly,</u> 397 U.S. at 261, quoting <u>Kelly v.Wyman,</u> 294 F.Supp. 893, 901 (SDNY 1968).

Plaintiff's legal claim is for a Preliminary Injunction to restrain the Defendants from denying Plaintiff the hearing that he keeps asking for but never gets, and will never get if Defendants' Motion to Dismiss is granted. Such a hearing was secretly denied to him on August 28, 1996 and June 15, 2000 in Exhibits 8 and 33. See, e.g., Petitions to the Commissioner, including Petition on August 16, 2007, by which Plaintiff asked for a hearing. See also Petition to the Commissioner on September 16, 2006 for reasonable accommodations, including an enlarged print MPEP in the record that Plaintiff has asked the Court for an Order to the Defendants to supply.

Defendants' defense, opposition and Motion to Dismiss, now depends only on Local Civil Rule LCvR 83.7. That is an incorrect application of the law. It is inapplicable to Plaintiff's legal claim. It is especially wrong to pre-empt Plaintiff's First Amendment claim under 28 U.S.C. 1331 Damages exceeding $10,000; 1332 Federal question; 1332 Diversity of citizenship; 1338 Patents, copyrights, designs, trademarks and unfair competition in connection with Plaintiff's U.S. Patent No's 3,433,705 and 3,433,705, and his Appln. S.N's 29/273,235 and 77/247,319; 1346 United States as defendant under Amended Complaint; 1357 Injuries under

5

federal law due to discrimination; 1361 Action to compel an officer of the United States to

perform his duty to refrain from depriving Plaintiff of a hearing, censoring his patent and

trademark applications by *prior restraint* without a hearing, and refrain from discriminating

against him because of his age related disabilities that do not interfere with his ability to practice

law. There also is a Conflict of Interest under 28 U.S.C. 530B et seq.; and 1366 Construction of

references to laws of the United States or Acts of Congress, which are facially unconstitutional,

i.e., 35 U.S.C. 2 (b)(2)(D), 6 and 32, because they are vague and indefinite, and they have been

applied unconstitutionally with a prohibited Conflict of Interest under Fed. R. Proc. 5.1. Plaintiff

also has claims herein under disability, and age-related laws; the FOIA; EEO; and the APA

under 5 U.S.C. 701, et. Seq., e.g., but not limited to, 5 U.S.C. 703, for preliminary and permanent

injunctions; holding unlawful and setting aside the PTO's action, i.e., issuing a vacatur remedy

under 5 U.S.C. 706(2); and compelling the PTO to perform its duty under 28 U.S.C. 1361,

The PTO may establish regulations, not inconsistent with First Amendment law, which

shall govern the conduct of proceedings in the Office. 35 U.S.C. 2 (b) (2006) (emphasis added).

Under this single statutory grant of rulemaking power, the PTO can only promulgate rules that

fall squarely within the bounds of established First Amendment law, and it and Congress

exceeded their authority, thereby not promulgating rules that fall squarely within the bounds of

established statutory patent law. That is a clearly erroneous lack of authority.

Plaintiff's legal claim relies on the general law, which is well developed in connection

with Plaintiff's claim of *prior restraint*. Under that general law, Plaintiff is entitled to a hearing.

*See* Sperry v. Florida, 373 U.S. 379 (1963); and Goldsmith v. United States Board of Tax

Appeals, 270 U.S. 117 (1926).

6

Disclosure that persons were falsely holding themselves out to be registered patent practitioners led in 1938 to enactment of legislation making such misrepresentation a criminal offense. Act of May 9, 1938, 52 Stat. 796, 35 U.S.C. 33, etc. This corrective legislation was under consideration for over a decade and originally contained several other provisions, including one which would have prohibited any person "duly registered to practice in the Patent Office…[from holding] himself out as a patent attorney, patent lawyer, patent solicitor, or patent counselor unless he is legally admitted to practice law in the State…or the District of Columbia, whereby Plaintiff could hold himself out as "so admitted," except for Defendants' policy of *prior restraint*, which they wish to enforce by their Motion to Dismiss to the irreparable injury of the Plaintiff.

This was the so-called "Crampton bill," H.R 699, 71st Cong., 2d Sess.; H.R. 5527, 70th Cong., Sess.; H.R. 5811, 69th Cong., 1st Sess. Time and again it was made clear that the above provision was not intended to restrict practice by <u>agents</u>, but was designed only to prevent them from labeling themselves "patent attorneys," as the Patent Office had theretofore permitted. Instead, separate registers for lawyers and for non-lawyer "agents," were established and have since prohibited <u>agents</u> so registered from representing themselves to be attorneys, solicitors or lawyers. However, Plaintiff, who is a lawyer, is prevented from doing so by the Defendants' *prior restraint*. 495 O.G. Pat. Off. 715; and 37 C.F.R. 1.341, 1.345. This emphasis only on non-lawyer "agents," and not patent lawyers, emphasizes the concern of 35 U.S.C. 32 with "advertising" by non-lawyer "agents," and not lawyers like Plaintiff, except, for example, when Plaintiff was qualified to be registered as an "agent" on the register for agents from August 17, 1998 until November 16, 2000 when he was reinstated as an attorney in the District of Columbia because he had been practicing before the cut-off date for such practice.

7

It is wrong to pre-empt the general law relating to discrimination against *pro se* practitioners by censoring them by *prior* restraint without a hearing. To this end, Defendants ask the Court to treat Plaintiff differently than other attorneys by pre-emption and denial of a hearing under Local Civil Rule LCvR 83.7. All such attorneys should be treated equally, because they must all meet the same requirements to achieve the same desired results, which they all desire equally, especially when they advertise their names and occupations as attorneys in an application and a patent or a trademark. *Pro se* practitioners shouldn't be deprived of their constitutional rights to freedom of speech, press and religion, and due process, by pre-emption without a hearing. They should all be treated fairly without discrimination by giving them a hearing.

Misconstructions By Defendants' Filing of 1/15/08

A misconstruction by Defendants' filing of 1/15/08, which was only briefly mentioned in Plaintiff's 1/22/08 filing, relates to the meaning of Local Civil Rule 83.7 and the inconsistency thereof with 37 C.F.R. 10.14, which in relevant part states as follows:

Individuals who may practice before the Office in trademark and other non-patent cases.
> (a)
>
> Attorneys. Any individual who is an attorney may represent others before the Office in trademark and other non-patent cases. An attorney is not required to apply for registration or recognition to practice before the Office in trademark and other non-patent cases.
>
> (d)
>
> Recognition of any individual under this section shall not be construed as sanctioning or authorizing the performance of any act regarded in the jurisdiction where performed as the unauthorized practice of law.

8

The Plain Meaning of both sections (a) and (d) of 37 C.F.R. 10.14 is clearly inconsistent with, and distinct and independent from the plain meaning of Local Civil Rule LCvR 83.7. LCvR 83.7 doesn't relate to Plaintiff's claim for a Preliminary Injunction, contrary to what Defendants say on page 5 of their 1/15/08 filing. LCvR 83.7 relates only to "A person refused recognition to practice or suspended or excluded from practice before the Patent Office…"

Contrary to the applicant in Kramer, *Id.*, Plaintiff was never refused recognition to practice or suspended or excluded from practice before the Trademark Officer, nor, therefore, from the PTO. See page 3 Note 2 of Defendants' 1/16/07 filing, which states that: "The registration and testing requirements discussed in this brief do not apply to attorneys who represent others having *trademark* business before the USPTO."

The Defendants' 10/16/07 filing goes on to state in the cited Note 2 on page 3, that: "This is relevant because at times, it appears that Plaintiff confuses his ability to practice trademark law with his ability to practice patent law before the USPTO." Obviously, the Defendants have radically shifted their position, objection, defense and their Motion to Dismiss to the point where they are now asking the Court to obstruct and deny Plaintiff's access to this Court, and his ability under the general First Amendment, Due Process and Discrimination law to advertise his name as an attorney in both the Trademark Office broadly, and more particularly in the Patent Office as a *pro se* practitioner without *prior restraint*.

In accordance with the plain meaning of 37 C.F.R. 10.14 and 11.1 Definitions, "Nothing in this part shall be construed to preempt the authority of each State to regulate the practice of law, except to the extent necessary for the United States Patent and Trademark Office to accomplish its Federal objectives." Granting Defendants' Motion to Dismiss would enable Defendants to endlessly by overbroad, unsupervised discretion alone, without a hearing or any

9

right of appeal or limitation by access to judicial restraint or oversight, allow the Defendants to supervise and govern Plaintiff's State regulated licenses.

"Attorney or lawyer means an individual who is a member in good standing of the highest court of any State, including an individual who is in good standing of the highest court of one State and under an order of any court or Federal agency suspending, enjoining, restraining, disbarring or otherwise restricting the attorney from practice before the bar of another State or Federal agency." 37 C.F.R. 11.1.

On March 22, 2005, Defendant Griffin knew that Plaintiff was entered on the PTO register of attorneys on November 5, 1959 and not placed on the PTO roster of agents until 1998 when he was suspended in New York. He knew that Plaintiff wasn't legitimately removed from the PTO register of attorneys and agents in 1996 after a hearing, reciprocally, or by the closing of an investigation in 1996, because he wasn't suspended in New York until August 17, 1998, which was long after 1996. Therefore, as understood from Defendant Griffin's non-final request for more information on March 22, 2005 in Defendants' Exhibit 17 [7 and 24], he must have needed more information because it was not clear to him how or why the Plaintiff was removed from the roster of attorneys and agents in Maryland by disability inactive status in Maryland in 1996, since the Maryland State bar has no such governmental authority.

Plaintiff was within the definition and plain meaning of C.F.R. 10.14 and 11.1, and not within the definition and plain meaning of Local Civil Rule LCvR 83.7. Plaintiff was in good standing in either Maryland, D.C. or New York from November 9, 1956, when he was admitted in Maryland, until August 17, 1998, when he was reciprocally suspended in NY, and then again from November 16, 2000, when he was reinstated in the District of Columbia. And since he was recognized to practice before the Office prior to January 1, 1957, he continued to be recognized

10

as an agent to continue practice before the Office even during the period from 1996 to August

16, 1998 and from August 16, 1998 until the present. *See* 37 C.F.R. 10.14 (b) Non-lawyers.

Plaintiff continued to qualify to be <u>recognized</u> *pro se,* or as an agent, he continued to

qualify to <u>practice</u> before the Office after January 1, 1957, like those others who were recognized

to practice before the Office in trademark cases prior to January 1, 1957. They like Plaintiff

continued to be <u>recognized</u> as agents to <u>practice</u> before the Office in trademark cases.

Consequently, there was no break in Plaintiff's continuing qualification to be recognized to

practice before the Office in trademark cases or patent cases because he has never been

suspended or excluded or refused recognition to practice under Local Civil Rule LCvR 83.7.

From November 9, 1956 onward, Plaintiff was never suspended or excluded, either

generally or in any particular case, from further <u>practice</u> before the Trademark Office, with or

without a hearing, nor, therefore, before the Patent and Trademark Office under the plain

meaning of 35 U.S.C. 32. Nor was Plaintiff from that date prior to January 1, 1957 onward ever

refused <u>recognition</u> or recognition to <u>practice</u> before the Trademark Office with notice and a

hearing or closing of an investigation, nor, therefore before the Patent and Trademark Office. If

he was, Defendants have not supplied any evidence thereof, or even alleged such application of

35 U.S.C. 32 to Plaintiff in this case, which was the vehicle mistakenly and inappositely applied

in this case by Defendants from the cited case of <u>Kramer v. United States Patent and Trademark</u>

<u>Office; Jon W. Dudas, Commissioner for Patents; Harry Moatz, Director, Office of Enrollment</u>

<u>and Discipline; Robert J. Spar, Director, Office of Patent Legal Administration,</u> (OPLA), *Id.*

Therefore, the 30-day choke point based upon the letter of March 22, 2005 under Local Civil

Rule LCvR 83.7, does not apply to deprive Plaintiff and the Court of jurisdiction in this case, as

alleged by Defendants.

11

The March 22, 2005 letter in Defendants' Exhibit 17 was a non-final request for more information. As to the dropping of an" investigation" by the Director of OED in 1996, and of a "disability in 2005," 37 C.F.R. 11.2 (d) states:

> An individual dissatisfied with a final decision of the OED Director, except for a decision dismissing a complaint or closing an investigation, may seek review of the decision upon petition to the USPTO Director accompanied by payment of the fee set forth in Section 1.21 (a)(5)(ii) of this subchapter. A decision dismissing a complaint or closing an investigation is not subject to review by petition.

Likewise, the Defendants new argument opposing Plaintiff's January 4, 2008 Motion for Enlargement of Time by tolling appears to be overcome because it is bereft of legal or factual support, such that Plaintiff's motion for enlargement of time should not be denied.

<u>Further Misconstructions By Defendants' Filing of 1/15/08</u>

Defendants' 1/15/08 filing is incorrect and a misconstruction of: 1) Plaintiff's claims for a Preliminary Injunction, as well as 2) the Patent Law interface with the general First Amendment, Due Process and Discrimination law.

"The restatement claim," raised by the Defendants on page 2 of their 1/15/08 filing, is a new and radical departure that obscures rather than resoles the dispute the court must first determine, i.e., the precise nature of the relief that Plaintiff seeks. <u>Kramer</u>, *Id.*

As pointed out in <u>Kramer</u>, *Id.*, the plaintiff there and in this case proceeded *pro se*, in which case the court is cognizant that *pro se* complaints are to be interpreted liberally, *see, e.g.,* <u>Boag v. MacDougall,</u> 454 U.S. 364, 365 (1982); and <u>Haines v. Kerner,</u> 404 U.S. 519, 520-21 (1972).

In <u>Kramer</u>, *Id.*, the plaintiff sought a writ of mandamus, for "<u>practice</u> [emphasis added] as an agent," after a pre- or post-suspension or exclusion hearing under 32 U.S.C. 32, which relates to "Suspension or exclusion from <u>practice</u> [emphasis added] before the Trademark and Patent

12

Office[s]," whereas, Plaintiff, at least in part, is seeking a Preliminary Injunction against the Defendants under 37 C.F.R. 10.2 and 10.9 to enjoin the final decision of Defendants policy of *prior restraint* against all attorneys not registered. This includes an injunction against the policy of the "Director" and "Commissioner of the PTO," i.e., against his policy of *prior restraint* against even limited recognition in Plaintiff's applications, S.N's 29/273,235; and 77/247,319 to advertise his name as an attorney. There is no doubt that the Commissioner's *prior restraint* is meant to be finally effected as a final decision against Plaintiff's current applications by his Motion to Dismiss on 10/16/07 [7].

Defendant Griffin's letter of May 15, 2007, added fuel to the fire of *prior restraint* when he said that a "request for limited *recognition* [emphasis added] to prosecute [emphasis added] the application [S.N. 29/273,235] is denied as *moot.*" He was careful not to refuse Plaintiff the broad statutory recognition of practice in the words of Local Civil Rule LCvR 83.7, which uses the same words relating to "practice" broadly as 35 U.S.C. 32 does. He didn't "finally decide" to broadly refuse recognition to practice in both the Trademark Office and the Patent Office after a pre- or post-suspension or exclusion hearing, which, therefore, did not, encompass or relate to Plaintiff's Motion for Preliminary Injunction against *prior restraint* of his advertisement in his applications.

An OED Program Analyst, Nora L. Cordova's letter of August 16, 2007, and Defendants Moatz's letter of August 22, 2007, added fuel to the fire of Defendants policy of *prior restraint,* by dismissing or closing a complaint and dismissing or closing an investigation, which was not authorized under 37 C.F.R. 11.2 (c).

The *prior restraint* of Plaintiff by Defendants' discrimination against Plaintiff by withholding reasonable accommodations, however, was appealed to the Washington Field Office

of EEOC on September 10. 2007, at 1:03 pm, and then rejected just before Plaintiff filed his

complaint on September 26, 2007, which was less than 30 days after the rejection by EEOC and

within the time for appealing from the OED Director's policy. *See* page 30 of Defendants'

11/07/07 filing. 37 U.S.C. 11.2(c).

Plaintiff's Petition to the Director on July 12, 2006, to reconsider his threats of *prior*

*restraint* was acknowledged on November 30, 2006, but not formally and finally denied until

Defendants' Opposition on October 16, 2007. On 10/16/07, Plaintiff's August 16, 2007 Petition

for Reconsideration, was also denied without using the vague, indefinite and facially

unconstitutional language of 35 U.S.C. 2 (b)(2)(D), 6 or 32, or according to the plain meaning of

Local Civil Rule LCvR 83.7, which is limited to the formal exclusion and suspension of a

practitioner from both the Trademark and Patent Offices after a hearing by a final Order recorded

by the Commissioner.

*Defendants* Motiom to Dismiss is incorrectly made under 37 C.F.R. 10.7, 10.11 and 11.5,

and is mistakenly stated to involve a "reinstatement" under 35 U.S.C. 32.   They use <u>Kramer</u>, *Id.*,

to incorrectly characterize Plaintiff's claim for Preliminary Injunction to enjoin Defendants from

*prior restraint* of a hearing in connection with his advertisements in his applications as a request

for a writ of mandamus to direct the Defendants to <u>reinstate</u> Plaintiff <u>broadly</u> for "<u>practice</u>

[emphasis added] as an agent in both the Trademark and Patent Offices. after a pre- or post-

suspension or expulsion hearing under 32 U.S.C. 32.

The filing of the legal claim for a Preliminary injunction was delayed because of

Defendants unconstitutional policy of secret <u>tampering</u> with Plaintiff's ID on the two PTO

registers or rosters without a hearing, including such tampering of Plaintiff as an agent

retroactively to 1996 before both the Trademark and Patent Office[s]."

14

That tampering is not rational. Plaintiff, at least in part, is seeking a Preliminary Injunction against the Defendants' illegal policy of secret tampering with the ID's of attorneys and *pro se* practitioners. He is not seeking reinstatement from a final decision to broadly exclude Plaintiff from practice in both the Patent and Trademark Offices under 35 U.S.C. 32.

In contradiction to that claim, Plaintiff is rather seeking a Preliminary Injunction against Defendants' policy of *prior restraint* to limit Plaintiff's ability to advertise his name as an attorney in his applications in both the Trademark and Patents Offices of the PTO where Plaintiff is already currently recognized to practice. The Preliminary Injunction enjoins illegal *prior restraint* by the Defendants, rather than forcing them to "reinstate" to practice an applicant who is already recognized to "practice" as he is doing in his applications.

Defendants' claim that Plaintiff's claim for a Preliminary Injunction is for "reinstatement" is false. A "request for reinstatement" of Plaintiff under 37 C.F.R. 10.9, is a phantom "claim" invented by Defendants. That non-existent phantom "reinstatement claim" is inaccurate and clearly erroneous.

Clearly, and contrary to what Defendants assert, Plaintiff did not ever, and is still not asking the USPTO to "remove" him from its register of practitioners, or by Preliminary Injunction to reinstate him to the register of practitioners. This is in contrast to what the Defendants say. Defendants have offered no information or evidence that such a "reinstatement claim" exists or ever existed.

Nor did Plaintiff ever ask the USPTO, as alleged by Defendants' 1/15/08 filing, "to remove him voluntarily from its register of practitioners after Plaintiff had consented to being removed from the Maryland Bar register and while ethical grievance against him was pending before the UPTO." Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7 [7 and 24]),is

15

relevant, but it did not "ask to be "removed" because of any "investigation" or "complaint." It was *sua sponte* without knowledge of any PTO "investigation" or "complaint." Plaintiff did not learn of an investigation or complaint in the PTO until March 4, 1996, when the Director of OED coerced him into silence on threat of "removal" and prosecution if the Director's discretion to hold an investigation in "abeyance" was challenged. "If your name is removed from the register, you may be reinstated…" (Defendants' Exhibit 8 [7 and 24]), was a threat of "removal" of an ID and a threat to forward an investigation to the PTO Committee on Discipline, but it was not a refusal to practice or a suspension or an expulsion under 35 U.S.C. 32 or LCvR 83.7.

Plaintiff was faced with a "strategic mooting" option, including a threat of <u>tampering</u> with his ID on the roster or attorneys and agents. Also, he was warned of the forwarding of an investigation having no basis in fact through channels for evaluation. As Plaintiff learned in DC and NY, the latter was an illegal Hobsons' choice to obey a sovereign for fear of punishment or fear of the state of nature.

To this end, the <u>tampering</u> scenario imparts a pre- or a post-removal hearing with permission to vacate the fitness requirement if necessary by summary reinstaement. In Plaintiff's case, however, no such Motion to vacate was necessary after a summary reinstatement because Plaintiff had no such fitness requirement in Maryland, and he was reinstated without objection from the Maryland Bar Counsel. That was the *fact* that Defendant Griffin knew was not a mistake in need of correction, when he correctly concluded in "good faith" in Exhibit 17 [7 and 24] that, "based on the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service. *See* (<u>Barry v. Barchi</u>, 443 U.S. 55, No. 77-803 1971).

16

There was also a threat to leave the "complaint" in "abeyance" by discretion rather than send it to the PTO's Committee on Discipline (the "Committee")(27 C.F.R. 10.132), after an "investigation" of the allegations of "complaint" mentioned in the letter of March 4, 1996 from the Director of OED, as was done in this case. Defendant Griffin's letter of March 22, 2005, was forced to attribute the now undeniable, tampering of Plaintiff's ID, whether because of "disability" or otherwise, to the discretion of the Director or on the basis of a "complaint," both of which were barred by the Statute of Limitations.  That gave the Director the option of giving up the threat of an "investigation" barred by the 5-year Statute of Limitations under 28 U.S.C. 2462, and restarting it on the basis of a "disability."  Compare Moatz v. Kersey, Proceeding No. 00-07 in the PTO 6/14/02 and Goldstein v. Moatz, No. 05-1144 (CA 4th April 20, 2006). That moved any hypothetical choke point because of a critical 30-day time requirement for filing this case to the date of Defendants' Answer on 10/16/07.

Barry v. Barchi; the PTO Regulations; Marinangeli v. Lehman, 32 F.Supp.2d 1, 5 (D.D.C. 1998); and Moatz v. Kersey, Proceeding No. 00-07 Before The Under Secretary of Commerce, USPTO, Oct. 23, 2002, all make threats and coercion viable by "strategic mooting."

The Defendants falsely allege, and seriously misconstrue Plaintiff's case and the facts, by attempting to somehow rest their case for a Motion to Dismiss on the non-final letter of March 22, 2005 from Defendant Griffin, which is an entirely new issue that never arose heretofore to the best of Plaintiff's belief.

It was a non-final, directive. It was not "final" or a required "decision," nor was it a constitutionally sufficient notice to Plaintiff of a "final" decision or Order by the Commissioner. Instead, it was a provisional letter inviting further response. After careful review in writing signed by the responsible attorney in OED, it concluded without prejudice against

17

supplementation of the record that, "based upon the current record, you have not presented insufficient objective evidence to show that you continue to possess legal qualifications necessary to render applicants for patent valuable service." And it invited further response for the Record.

Defendant Griffin's letter of March 22, 1005 was clearly and admittedly vague in stating that Plaintiff was removed from the register because it wasn't clear "who" or "what" was "removed," or whether it was a "removal" or a tampering with an ID. Additionally, the Director's letter of March 4, 1996, was threatening in a vaguely coercive way by saying that, "If your name is removed from the register, you may [emphasis added] be reinstated subject to satisfying the requirements of registration…" *See* Defendants' Exhibit 8 [7 and 34], which describes a secret handwritten note on 8/28/96 from the Director of OED without notice to Plaintiff, asking a not otherwise identified person named "Pat," to "pls. remove Mr. Cornish from the roster."

In Exhibit 33 Defendant Moatz, in a letter on June 15, 2000, did not mention the fact that Plaintiff was never told that his name was secretly removed without telling him. His letter was a libelous invasion of Plaintiff's privacy to an addressee whose name was redacted. He was well aware on June 15, 2000 that Director Bovard, his predecessor as Director of OED, had made threats to tamper with Plaintiff's name and ID. Mr. Moatz' letter of June 15, 2000 was duplicitous by stating that "after" Mr. Cornish's letter in 1966, "OED thereafter removed Mr. Cornish's name from the roster of attorneys and agents." Mr. Moatz' prededessor did so without telling Plaintiff, and stealthily waited to do so until at least August 28, 1996. And the secret tampering with Plaintiff's ID is still going on. See Exhibit 31 [7 and 24].

The tampering by stealth was undenied by Exhibit 31 [7 1nd 24], in which it was admitted on 10/10/07 under oath by Christine Nucker, an employee of OED, that Plaintiff's ID was changed without notification on December 22, 2006 at about 7:30 am from 19240 to 90001940, which was not the ID given to Plaintiff on his July 16 – 17, 20007 examination.  That meant that the number on his Examination, which was 19240, was his original ID going back to November 5, 1995.  That also meant that Plaintiff's name and ID were still in the PTO computer records, possibly on both the roster and register, that his ID was still being used, and that it had not been removed in April 1996, as alleged in Defendant Griffin's provisional non-final letter of March 22, 2005.  The more recent collateral denial of the facts by Defendant Griffin, is another reason for not using his letter as the critical date for calculation of a 30 day choke point for Plaintiff's summons and complaint under the Court's Local tollable requirement, as alleged by Defendants.

In Summary, Plaintiff ultimately seeks, inter alia, without limitation, damages from the United States in a final hearing by Denial of Defendants' Motion to Dismiss and Amendment of the Complaint to include the United States as a Defendant; granting of a Motion to Vacate the Court's Order not to subpoena Defendant Moatz for discovery; enlargement of the time to respond; and more immediately, a Preliminary Injunction to enjoin the United States and the Defendants from failing to do their duty not to censor or discriminate against Plaintiff by *prior restraint* because of age-related disabilities and failure to provide reasonable accommodations that do not impact negatively on his ability to successfully practice in the PTO as he had done since 1958; from failing to treat him fairly and equally with all other attorneys and *pro se* practitioners without *prior restraint* in accordance with their duty to provide an opportunity for a hearing; from failing to refrain from their duty not to irreparably injure Plaintiff by negligent,

19

unauthorized, and clearly erroneous *prior restraint* without a hearing by wrongful censoring of

Plaintiff's current and future patent and trademark applications.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

**Cornell D.M. Judge Cornish**

1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:   1/30/08

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Memorandum in support of his

Motion for Enlargement of Time, and in Support of Plaintiff's Motion to Defer Issues and

Controversies that are not ripe for determination until February 28, 2008, have been hand

delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 30th day of January, 2008.

Cornell D. M. Judge Cornish
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 1/30/08

21

UNITED STATES DISTRICT COURT FOR
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, ) | |
| ) | |
| Plaintiff *Pro Se* ) | |
| ) | |
| v. ) | CASE  07-cv-01719 (RWR) |
| ) | |
| JON DUDAS, et al., ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

ORDER

UPON CONSIDERATION of Plaintiff's Motion to Amend the Complaint to include the

United States as a Defendant; to vacate the Court's Order to Deny Plaintiff's request for a

subpoena of Defendant Moatz for discovery; for enlargement of time to reply until February 28,

2008; and for Preliminary Injunction to enjoin the Defendants from failing to do their duty not to

censor or discriminate against Plaintiff by *prior restraint* and failure to provide reasonable

accommodations because of his age-related disabilities that do not impact negatively on his

ability to successfully practice law; and to enlarge the time to reply to the Defendants 2008

filings until February 28, 2008, and for the requested Order for Discovery, and the entire record

herein, it is this _____ day of _____, 2008, hereby

ORDERED that Plaintiff's Motion should be and it hereby is Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For Summary

Judgment, should be and it hereby is Denied.

1

_____

**UNITED STATES DISTRICT JUDGE**

W. Mark Nebeker                          Cornell D.M. Judge Cornish

Assistant United States Attorney          1101 New Hampshire Ave., #301

Civil Division                            Washington, DC 20037-1502

555 4th Street, NW                        (202) 429-9705

Washington, DC 20530                      cornishj@erols.com

(202) 514-7230 fax (202) 514-8780

2