RECEIVED

FEB - 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
                                )
          Plaintiff *Pro Se*    )
                                )
     v.                         )     CASE  07-cv-01719 (RWR)
                                )
JON DUDAS, et al.,              )
                                )
          Defendants            )
_____ )

## Motion To Deny Defendants' Motion For Protective Order And, For A Stay To Allow Plaintiff To Make An Interlocutory Appeal

This is a Motion to Deny Defendants' Motion For Protective Order, and if granted, For A Stay to allow Plaintiff to make an Interlocutory Appeal.

This Motion For A Stay of the Proceedings is to allow for an interlocutory appeal to give Plaintiff time to request a hearing for reconsideration and an appeal of denial of his Preliminary Amendment or other pending Motions, or for an appeal of the granting of the Protective Order or Defendants' Dispositive Motions, including their Summary Motion to Dismiss without a hearing.

As mentioned to the Court in connection with Defendants' request for an enlargement of time to reply, and generally speaking, Plaintiff has obliged Defendants' attorneys from the start of the case and controversy in this litigation, and offered to enter settlement talks. Plaintiff doesn't want special treatment, nor do Defendants want settlement talks. Plaintiff only seeks what is fair for all *pro se* litigants in the PTO, which is there to serve their needs fairly in accordance with Article I, Section 8, paragraph 8 and the First Amendment: "To promote the Progress of Science

1

and useful Arts, by securing for limited Times to Authors and Inventors the exclusive right to their respective Writings and Discoveries," and "Freedom of religion, speech and press. and the right to petition the Government for a redress of grievances."

To this end, Plaintiff has had to remain vigilant concerning Defendants' *prior restraint* of Plaintiff and their secret and insidious efforts to deny Plaintiff a hearing and access to full and effective judicial review. To this end, the Defendants have forced Plaintiff to endure an extraordinary and potentially endless burden of stress and humiliation, not to mention irreparable prejudice and obvious damage to his reputation, property and privileges amounting to the destruction of his profession by their suppression of his right to a hearing, and by their secret actions from March 4, 1996 until March 22, 2005 (Defendants Exhibit 17), and until October 4, 2007 (Defendants' Exhibit 31).

Defendants' take no prisoners approach, initiated by a "strategic mooting" of plaintiff's right to a hearing on March 4, 1996 (Defendants' Exhibit 8), and secret tampering with his ID has been tantamount to destruction and extinguishment of Plaintiff's practice, property and privilege, because of Defendants' underlying strict policy of censorship and undeniable *prior restraint* by the Defendants in the PTO without a right to a hearing, which has exacerbated the irreparable injury and damages claimed by Plaintiff due to injury to his reputation, privilege, profession and property, including his pending applications.

Plaintiff is claiming at least $1,000,000 in damages. His damages are a genuine material issue of fact in dispute and a controlling questions of law to be decided in this action. They are, moreover, important and controlling questions of law based upon exceptional circumstances of fact in dispute involving the most important and fundamental questions of the division of power and the foundations of our democracy. Those controlling questions are supported by the merits

2

of Plaintiffs claim for damages and irreparable injury, his probability for success, and the lack of damage to the Defendants and the public, which are reasons for the Court to deny Defendants' dispositive motions and to support the granting of Plaintiffs Motion for Preliminary Amendment. There is a genuine material issue of fact concerning the damages to the Plaintiff, but they are clearly extensive, retroactive and irreparable. His reputation alone has suffered irreparable damage, and his claim for damages has merit and likelihood of success.

The *prior restraint* directed against Plaintiff on March 4, 1996 (Defendants' Exhibit 8), embodied a clearly erroneous policy of withholding a hearing, and by coercion using strategic mooting'to still Plaintiffs voice, his ability to obtain an effective opportunity for hearing, and his ability to practice in *both* the Patent and Trademark Offices on March 4, 1996 (Exhibit 8), even though he was qualified to do so as an agent and as an attorney.

Defendants refer to the controlling question of law involved on page 2 of their 1/30/08 Motion For Protective Order. They characterize it as"unrelenting allegations that Defendants are preventing him from practicing trademark law before the USPTO." Defendants' words, however, should be translated to mean"unrelenting allegations that Defendants are preventing him from practicing trademark law before the USPTO under the requirement of *prior restraint* and coercion from <u>unrelenting</u> threats of criminal prosecution under 35 U.S.C 33 (page 7 of Defendants' 1/30/08 Memorandum), without a"closing letter"for an investigation that has been under consideration since at least March 4, 1996 (Defendants' Exhibit 8)."

That policy of unrelenting threats of criminal prosecution under 35 U.S.C. 33 without a "closing letter"is being actively pursued by still active secret tampering of Plaintiffs records in the "virtual world' of the PTO computer and on-line requirements without his permission, knowledge consent, or a"closing letter"(Defendants' Exhibit 31). It started with a secret handwritten note on

August 28, 1996 (Defendants' Exhibit 8). It was surreptitiously enhanced and continued secretly without a hearing or a "closing letter" until at least June 15, 2000 (Defendants' Exhibit 33). It continued secretly further without a "closing letter" or a hearing until December 22, 2006 (Defendants' Exhibit 31), and still further without a hearing or a "closing letter" or notice to Defendant until 10/16/07.

Plaintiff was and is being continually and relentlessly threatened with criminal prosecution under 35 U.S.C. 33, censorship by *prior restraint,* and the nailing of his casket to bury the consequent moribund body of his profession by criminal prosecution. Defendants have done so from the beginning because of an investigation on March 4, 1996 (Exhibit 8) that Plaintiff was unaware of until then. Since then Defendants have continued their harassment and discrimination because of Plaintiffs age and age related disabilities without ceasing by withholding a hearing and a "closing letter" for any and all investigations, disabilities, EEO and FOIA complaints and inquiries, whether or not under section 504 of the Rehabilitation Act. Page 9 of Defendants' 1/30/08 filing.

The Defendants were caught up at first in unrelenting *denials,* which turned out to be false, of any failure to properly allege any refusal by Defendants to supply "All," "all," "all," and "all" the reasonable accommodations requested by Plaintiff. Pages 16, 16, 25 and 27 of their 10/16/07 filing. But now they admit on page 9 of their 1/30/07 filing that they failed to supply an enlarged print MPEP, which is the most important and least costly of the reasonable accommodations requested. Without an MPEP no one can pass the examination, and not being able to properly see the MPEP is the same as not having it at all.

As James A. Toupin, General Counsel of the PTO described in his Order on July 12, 2006, in a Petition under 37 C.F.R. 11.2 (d), "that the Petitioner asserted that a computer malfunction made

4

it difficult for him to read the MPEP, which he wished to consult when answering the questions." The OED Director construed the petition as a request to waive the regulatory provisions requiring a passing score on the exam pursuant to 37 C.F.R. 11.3. The Petitioner alleged both that he lost time because he had to click the mouse many times to activate the MPEP's zoom function and that he was prevented from using the MPEP altogether.

Plaintiff, on the other hand was all-together denied the computer admitted to be readily available in the above-cited case. It was held to be a reasonable accommodation to that applicant, but not to Plaintiff in this case.

A computer having a zoom function to provide enlarged print was one of the alternatives to the regular print MPEP in combination with magnifiers, extra light and additional time in which to take the examination that that was suggested to Plaintiff by the PTO itself, but nevertheless, it was not supplied by them to Plaintiff.

Enlarging the print on over 3000 pages of the MPEP was only one of the alternatives suggested by the PTO but not supplied by them, so, once again, that was not the only reasonable accommodation that Defendants could make that would satisfy their legal obligations under section 504 of the Rehabilitation Act, but it was contrary to what they said on page 9 of their 1/30/08 filing.

That caused and is causing irreparable injury to Plaintiff by depriving him of any hearings to obtain the reasonable accommodations he needs to use the Patent Office test for CLE purposes. And, while he was granted only a two hour extension of time, that same applicant in the above-cited case was given a whole extra day, as requested by Plaintiff, to provide the reasonable accommodation required by section 504 to satisfy the requirements thereof. That was

5

still another reasonable accommodation that Defendants have denied that they failed to provide in this case, and that is obviously a genuine issue that is in dispute.

No specialized version was required by Plaintiff so the MPEP supplied was insufficient as a matter of law, and, therefore, sufficient to prevent the Court from considering this aspect of Defendants' Motion to Dismiss and denying their Motion For A Protective Order.

Further Genuine Material Issues In Dispute

There has been no "closing letter" for the investigation or investigations for disability that have been under way since at least March 4, 1996 has been supplied. *See* Defendant Griffin's letter of March 22, 2005 (Defendants' Exhibit 17), first page, last paragraph, accusing Plaintiff of requesting "disability inactive status."

Page 5 of Defendants' 1/30/08 Memorandum says that "Plaintiff's assertion is entirely incorrect" relating to his trademark practice. And yet, as General Counsel Topin stated in his July 12, 2006 Order, *Id.*, "the overriding concern must be the protection of applicants through the admission of only [emphasis added] those practitioners who have demonstrated that they have the knowledge and skills necessary to pass the examination," which is provided exclusively by the Defendants without the reasonable accommodations required by section 504 as a matter of law, and by using the score alone as the only and the exclusive means for determining whether to waive the requirements of the test, and to determine whether the applicant has met the requirements of good moral character and reputation and possession of the necessary qualifications to render to applicants or other persons valuable service advice, and assistance in the presentation or prosecution of their applications or other business before the Office," as provided for in 35 U.S.C. 2 (b)(2)(D) and 32.

6

Yet they say 'if Plaintiff is duly licensed to practice law in another jurisdiction (e.g., Maryland, New York, the District of Columbia–DC Bar #366240), (albeit they won't even admit by judicial notice and full faith and credit that Plaintiff is duly licensed to practice law in Maryland, New York, the District of Columbia, the Court of Appeals for the Federal Circuit, the District Courts for the Southern and Eastern Districts of New York, and the U.S. Tax Court. They say *if* Plaintiff is duly licensed to practice law. .then he may legally represent others in trademark and other non-patent cases before the USPTO,' but they refrain from saying that he can do so without threat of prosecution under 35 U.S.C 33, or even without a Preliminary Injunction. And in any event, they still impose *prior restraint* of his expressions protected under the First Amendment in both the Trademark Office and the Patent Office. That is clearly a substantive pre-enforcement issue under the APA, which is in addition to the damage claims of Plaintiff in this case.

They refuse to grant Plaintiff the reasonable accommodation under section 504 or otherwise to admitting that Plaintiff is an attorney by judicial notice, and so bar his expression of that fact in all applications in the PTO by *prior restraint*. They also irrationally injure his applications by restricting the number of continuations he can file, and that is another issue for the Court to decide under the substantive provisions of the APA. All of which, are grounds for denial of Defendants' requests for a Protective Order and a Motion to Dismiss.

Indeed, they say on page 7 that Plaintiff is constrained from practice for others in the Patent Office. To this end, they 'limit' the controlling question of law involving a substantial ground for difference of opinion on the issue as to whether Plaintiff is permitted to advertise that he is an attorney. They want to 'limit' the controlling question of law by a policy of *prior restraint* to a person entitled to represent 'others,' whereas Plaintiff wants to limit the controlling question of

7

law to the "expression" he is permitted to make as a person entitled to use his name as an "Attorney, Agent or Firm." Defendants won't let him hold himself out anywhere as an attorney, not just in the PTO on the face of a patent and/or a trademark registration. That is his profession and he is licensed as an "Attorney, Agent or Firm," which is the format used on the front page of almost all Patents, whether they be design, plants or utility patents.

And, of course, Plaintiff does not want to limit the controlling question of law to exclude the attorney or agent practitioners for co-inventors. He can indeed represent co-inventors who are all *pro* se. Before March 4, 1996 back to November 5, 1998, Plaintiff has been successfully identified as an attorney without incident or *prior restraint*. He placed his name as an attorney on his U.S. Patent 5,256,367, but he has now been restrained from doing so by *prior restraint,* and is threatened with criminal prosecution under 35 U.S.C. 33 if he doesn't retroactively correct that patent by deleting the offending expression by retroactive censorship. Plaintiff seeks a Preliminary Injunction to prevent such absurd and irrational behavior by the Defendants by their sequential requests to seal the proceedings, to summarily dismiss the proceedings and to gag the Plaintiff by a Protective Order. All three efforts are unjustified and should now be corrected by the Court by denial of the Defendants Motions.

A Controlling Question of Law, which is answered by a "yes," includes whether Plaintiff is entitled to a Preliminary Injunction enjoining the Defendants from *prior restraint* of Plaintiff when he does <u>anything</u> that any other practitioner may do? That *prior restraint* occurs to restrain Plaintiff as an inventor or assignee when he signs a request for status of his application as an inventor or assignee; gives a power to inspect his application; acquiesces to express abandonment of his application; appoints his own legal representative; signs a terminal disclaimer; consents to the filing of a reissue application; consents to the correction of

8

inventorship; files an application under 37 C.F.R. 1.47 (b) or 37 C.F.R. 1.475; signs an Issue Fee

Transmittal (PTOL-85B); prepares and signs a response to an Office action; or appeals to the

Board of Appeals under 35 U.S.C. 6; signs the oath or declaration and files it or an application as

the assignee; signs a Certificate of Mailing under 37 C.F.R. 1.8; signs, files and prosecutes a

reexamination of his patent under 37 C.F.R. 1.510; or signs a small entity declaration under 37

C.F.R. 3.73 (b).  At times the inventors refuse to execute the application or cannot be found or

reached after diligent effort and the requirements under 37 C.F.R. 1.47 (b) can be met.  And

others may show sufficient proprietary interest in the matter, that justifies making the application

by the assignee or other inventor.  He, like Plaintiff, makes the application as the "agent" for all the

inventors without recognition on the registry.  37 C.F.R. 147 (b).

Even now the controlling question of law should include reference to the proposed

amendment to 35 U.S.C. 115 that admittedly would provide greater flexibility for applicants such

as Plaintiff.  In PCT countries assignees can prosecute, and so Plaintiff should not be restrained

by *prior restraint* from being recognized as a practitioner in the PTO before the U.S.

International Searching Authority and the U.S. International Preliminary Examining Authority

under 37 C.F.R. 11.9 (c). Once the inventors or an invention have been identified, and the

inventors have provided information that may be material to the examiner's decision of

patentability, and have assigned their rights in the invention to an assignee, then there is no need

to require the inventors to participate in the process by signing the oath or declaration or any

supplemental oath or declaration that may be required.  And there is no possibility of quackery,

abuse by invention promotion, or unauthorized representation as a practitioner under 35 U.S.C.

33 or 32 or Local Rule LCvR 83.7, as would be shown in the hearing that has been denied to

Plaintiff.

Indeed, none of those statues or the Local Rule distinguishes between practice and/or recognition before the trademark or patent offices. Defendants' policy limits the controlling question of law to the generic term Patent Office, as used in the cited statutes, which includes both the trademark and patent offices. The record of the proceedings before the *Patent Office* "shall constitute the sole basis for the court's review" of Defendants' *prior restraint* of Plaintiff, as stated in Local Civil Rule LCvR 83.7 (albeit, that Rule is not applicable in this case in determining a 30-day time bar or choke point to the filing of this case because Plaintiff was never refused recognition or suspended or excluded from practice).

When the Defendants and the Court limit the controlling question of law to the "record of the proceedings before the Patent Office," as they must in connection with the *prior restraint* practiced by the Defendants, they cannot do so by "impeding his ability to practice trademark or patent law before the USPTO by *prior restraint* of his advertisements to the public as an attorney who is entitled to practice such law before it. The PTO itself states that the drawing up of a patent license agreement by an attorney who holds himself out as a patent attorney (as well as assignments) is within the field of an attorney at law under State law, and the Defendants may not prevent Plaintiff from doing so by *prior restraint* of his advertisement under State law. http://www.uspto.gov/web/offices/pac/doc/general/assign.html.

The controlling question of law under Defendants regulatory scheme is not correctly limited to the question required by them. Their interpretation of what that question should be and their answer to the correct question is clearly erroneous. A Preliminary Injunction is within this Court's jurisdiction under 35 U.S.C. 283. Plaintiff may seek damages under 28 U.S.C. 284 for failure to correct Defendants' clearly erroneous interpretation in accordance with the principles of equity to

prevent the violation or any right secured by Plaintiff's U.S. Patents, on such terms as the court deems reasonable. He may seek attorney's fees under 35 U.S.C. 285.

An application by the Plaintiff for a reissue does not have to seek to enlarge the scope of the claims of the original patent (albeit, a statutory change has been proposed for 35 U.S.C. 115 that may be relevant). The "limitation" that the Defendants want to impose is unconstitutional, which leads Plaintiff to challenge the constitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32 as being vague, indefinite and unenforceable, and Defendants' interpretation of those statues as clearly erroneous.

Defendants, by saying Plaintiff's assertions are "again incorrectly" asserted, propose to the Court as the controlling question of law on page 16 of their 1/30/08 Memorandum, that their policy allows *prior restraint* of Plaintiff by "impeding his ability to practice before the USPTO and to advertise himself to the public as an attorney who is entitled to practice such law before it." That is unconstitutional and unauthorized by Congress.

Moreover, their policy allows them to do so without a hearing, by a Protective gag order and by a Motion to Dismiss.

It also allows them to prevent "limited recognition" of Plaintiff under 37 C.F.R. 11.9 without a hearing by discretion; and without a full judicial review because they "may bestow or withhold limited recognition to practice before the USPTO without a hearing in three situations" cited on pages 16 and 17 of Defendants' 1/30/08 filing. It doesn't seem to matter that no authorization by Congress for such actions without a hearing has been cited by the Defendants.

Under Defendants' policy of *prior restraint*, they can refuse Plaintiff "recognition" outright and always under 37 C.F.R. 11.9 without a hearing. That is their answer to the controlling question of law involving a substantial ground for difference of opinion, by unsupervised discretion

11

without a hearing or judicial review even in the case of prosecution as an attorney for co-inventors, as an assignee, or as a duly appointed executor of a deceased.

The irreparable harm that Plaintiff has suffered and is suffering is the continuing extinguishment of his profession by *prior restraint* of his rightful and truthful use of his name and profession as an *"Attorney, Agent or Firm"* in both trademarks and patents without a hearing and/or access to a Preliminary Injunction, without a full judicial review, and without a Protective Order, sealing, and a Motion to Dismiss.

And if 37 C.F.R. 11.9 allows "limited recognition" in only three situations, that makes 35 U.S.C. 2 (b)(2)(DE), 6 and 32 unconstitutional because of vagueness, indefiniteness and unenforceability. Also, it makes Defendants interpretation of those statues clearly erroneous.

Plaintiffs patent bears his shingle as follows: *"Attorney, Agent or Firm –* C.D.M.J. Cornish". Defendants show their prejudice unfairly by refusing to recognize Plaintiffs prosecution of his trademark application S.N. 77/247,319, as described in more detail hereafter because he is being coerced into silence by the threat of investigation and prosecution under 35 U.S.C. 33, both sealing and unsealing in this proceeding, a Motion to Dismiss and a Protective gag order.

The Justice Department is trying to still Plaintiffs voice for ever, by obtaining the ultimate *prior restraint* and censorship of Plaintiffs right to a hearing, his rights of speech, press and religion, and his day in court, by their sequential Motion for a Protective Order on top of their Motion to seal the proceedings, and dispositive Motions, which they want considered to the exclusion of all efforts by Plaintiff to stem the hemorrhage of damages and the extinguishment of his profession, even though, as pointed out by Defendants, "it is axiomatic that no petitioner or person shall ever be denied his right to the processes of the court." In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979).

Plaintiff submits that such a protective Order is not reasonable nor constitutional, and it is manifestly unjust. It is an appealable deprivation of access to this Court by a request for a gag order intended to coerce Plaintiff into silence in his current patent and trademark applications, which have not been mentioned by Defendants. Defendants have suppressed mention thereof by their Motions to seal, to Dismiss and for a Protective Order until this case is dismissed. That is such an exceptional and extraordinary departure from the Court's independent control of its docket by the reasonable exercise of its discretion, as to be a "controlling question of law" in this case that should be decided and denied well ahead of any Motion to Dismiss and by interlocutory appeal. Permission to appeal is requested.

Plaintiff Opposes Defendants' Motion for a Protective Order and asks the Court to deny the Motion for a Protective Order, or grant Plaintiff a stay of the proceedings and permission to appeal. Plaintiff encloses a Motion for interlocutory permission to stay the proceedings to provide time for an appeal if the Defendants' Motion for a Protective Order is granted, and to stay the proceedings to provide time for an appeal if Defendants' Motion to Dismiss is granted.

Plaintiff is not in need of professional extermination by the quack busting efforts of the Justice Department, however important their functions might be against other respondents or by their machinations in this or other forums and contexts. As far as he is aware, Plaintiff has not ever been sanctioned or censored by the Defendants. He was unaware of his investigation or potential investigation by the Defendants until March 4, 1996 (Defendants Exhibit 8). That matter has been on the stet docket or in abeyance since 1996 without a closing letter or a hearing. He believes he has an unspotted record in the PTO, and has asked the Court to require Defendants to supply a certified copy of his record in the PTO so that they will cease threatening Plaintiff with criminal prosecution under 35 U.S.C 33, Local Civil Rule LCvR 83.7, or otherwise

without a "closing letter." See their most recent threat of criminal prosecution under 35 U.S.C. 33 on page 7, lines 9-10 of Defendants 1/30/08 Response.

If the Justice Department feels that the Court should appoint a monitor to protect the public against what they characterize as the "bizarre" behavior of Plaintiff, or possibly the alleged quackery of the Plaintiff, let them propose such a course of action in a hearing in Court. If the Justice Department feels that the Defendants should be allowed to delay the termination of their investigation of the Plaintiff, and to refuse to grant a "closing letter" to their investigation, let them ask the Court for a hearing as they are required to do in this and other First Amendment cases of *prior restraint.* Freedman v. Maryland, 380 U.S. 51 (1965).

The burden is on the Defendants to prove that Plaintiff's expression is unprotected by the First Amendment in his Appln. S.N's 29/273,235 and 77/247,319, so far unmentioned by Defendants, and there is a heavy presumption against the constitutional validity of their *prior restraint* of Plaintiff expression in those applications.

If the Justice Department wants to continue to threaten prosecution of a crime under 35 U.S.C. 33, as they do on page 7, lines 9-10 of their most recent Response, and as they have done throughout this case and controversy since March 4, 1996, let them send Plaintiff a letter that the "matter is under inquiry" so that Plaintiff can demand a hearing in this Court to protect his constitutional rights in this action. If they feel that they need to extend their investigation further by sending Plaintiff a letter informing him that he is under an "informal inquiry," let them do so by proceeding to Court as a Plaintiff. Or if they chose to initiate a "formal investigation" first, please let Plaintiff know that so that he can appeal again to the Court for reconsideration of what the Justice Department in their opinion is saying without any basis in fact, but instead apparently based only upon personal knowledge.

14

If they persist in their personal attacks on the basis of personal knowledge, by characterizing

Plaintiff as "bizarre," whether or not their knowledge is based on a connection with Plaintiff's

possible recourse to the "Lawyer's Counseling Panel" under the Rules of the Court, and/or in

Maryland and the District of Columbia, and they as attorneys know from their personal

knowledge. They should supply affidavits as to what their personal information is, just as the

Defendants have begun to do in Defendants' Exhibits.

Instead of addressing Plaintiff's current applications in the PTO, or even a certified copy of

the entire record, the Defendants have instead relied on affidavits selectively to display only

some of the personal information that they are relying on. Defendants are otherwise leaving out

proof of their allegations having no basis in fact, including their clearly erroneous opinion that

Defendants don't have the burden of proving that Plaintiff's expression is constitutionally invalid.

Freedman, *Id.* Plaintiff seeks an Order from the Court requiring a personal affidavit as to the

personal knowledge of the Defendants' attorneys about the matters in the record that they and the

Defendants have so far left unaddressed, including Plaintiff's currently pending applications and

the reasons why Defendants have not met the requirements of Freedman, *Id.*

See Note 1 on page 4 of Defendants' Motion For Protective Order, which is more than just a

humiliating personal insult based upon personal opinion and knowledge of the Justice

Department's lawyers. Such information is being used to coerce Plaintiff into silence, and to

dissuade him from appealing denial of his rights based upon threats of prosecution and personal

knowledge not in the public record. Such coercion is directly applicable to silencing Plaintiff

from appealing the current final rejection of his use of the terms "patent, trademark, copyright"

sent 11/29/07 by Attorney Examiner Jennifer Vasquez, Law Office 113, in his trademark

application S.N. 77/247,319, filed 08/04/2007 in accordance with the PTO policy of *prior*

15

*restraint. See* <u>Manual of Acceptable Identifications of Goods and Services</u> at

http//tess2.uspto.gov/netahtml/tidm.html, and 37 C.F.R. 2.71 (a); TMEP 1402.06, thus satisfying

the exhaustion of administrative remedies, and lack of a timely filing.

The Defendants seem to be insinuating that Plaintiff's 'bizarre' behavior may have some

reference to the abusers of drugs or alcohol mentioned in Note 1 of their 1/30/08 filing in

connection with the 'Lawyer's Counseling Panel." That is not bizarre behavior because that is what

the Lawyers Counseling Panel is supposed to deal with. They also deal with 'disabilities."

See Defendants' Defendant Griffin's letter of March 22, 2005 in Exhibit 17 [7 and 24]. In his

letter he states that, 'Pursuant to your request, you were removed from the roster of registered

patent attorneys and agents in April 1996, after you were placed on disability inactive status with

the Maryland State bar." Plaintiff asks the Court for an Order requiring Defendant Griffin to

disclose what his personal information is in connection with that matter before a decision is

made on Defendants' dispositive Motions.

Since the Justice Department prefers to use such personal information not in the public

record in their filings, Plaintiff asks the Court for an Order to Defendants' Attorneys to supply an

affidavit of their personal knowledge in these matters of grave concern to the Plaintiff before any

decision on the Defendants' Motion to Dismiss due to the extraordinarily damaging effects of

such a Motion and their highly inflammatory remarks about Plaintiff's alleged 'bizarre' behavior

and the sensitivity of Plaintiff and all others to such remarks and the invasion of their privacy

and private and confidential disclosures, especially including private and confidential medical

information.

Obviously, the Defendants have failed to terminate the investigation still pending in the

PTO starting in 1996, and failed to give Plaintiff a 'closing letter' although the investigation has

16

been pending since at least March 1996. That is obviously an extraordinary and exceptional question of controlling law being held in limbo over Plaintiff's head. It is a manifestly unjust burden for Plaintiff to bear, as it has caused irreparable harm to Plaintiff amounting effectively to the professional extermination of his reputation, income and property as a patent attorney and also his career without any substantial recourse to a full and fair judicial review under his well-recognized and long established First Amendment rights or otherwise.

Plaintiff's Motion for Preliminary Injunction is meant to curb such abuse by enjoining Defendants from refusing to give Plaintiff such a "closing letter" to keep them from arguing that the investigation is not barred by the Statute of Limitations as they have done in previous filings.

The Justice Department is well aware of the harm caused by the failure to send closing letters in agencies of the U.S. Government. The SEC is in the midst of a program to correct the well-recognized damage that they have caused by the failure to promptly send out "closing letters" in cases where such investigations are not justified. The Government has been under heavy pressure from the Government auditors themselves to improve on their failures in this matter, and their work load has not been held to excuse their delay in sending out "closing letters," nor should it do so in this case.

As far as the Plaintiff is concerned, the continual and unjustified ridicule of Plaintiff by the Justice Department in this case due to Plaintiff's requests should be stopped by the denial of the Defendants Motion to Dismiss, and the Court in its discretion can do so.

This Memorandum is necessary and reasonable to allow Plaintiff to reply until February 28, 2008 to Defendants' Filing of 1/30/08, in which they Oppose Plaintiff's Motion for Enlargement of Time by seemingly arguing for the first time that there is a magic bar date that the Court should focus on that comes from Local Civil Rule LCvR 83.7.

Defendants Motion For Protective Order asks the Court to require that Plaintiff shall first secure leave of Court to file any future motions in this action, and that, absent further order from the Court, Defendants' time to respond to any outstanding motions filed by Plaintiff shall be extended until a time after resolution of the pending dispositive motion or until the date the Court directs the Defendants to respond.

March 22, 2005 letter from Defendant Griffin as the key for unlocking the door to the exhaustion of administrative remedies. But the letter of March 22, 2005 is not from the Commissioner, as required by LCvR 83.7. That is the first strike against their theory. It is not an Order, which is strike two. And it is not recorded as a final Order refusing to recognize Plaintiff for practice, or suspending or expelling him from practice after a hearing or an opportunity for a hearing. That's strike three against Defendants' theory.

Accordingly, Plaintiff asks the Court by this Motion for an Order by which Plaintiff can seek, inter alia, without limitation, damages from the United States in a final hearing by Denial of Defendants' Motion to Dismiss and Amendment of the Complaint to include the United States as a Defendant; granting of a Motion to Vacate the Court's Order not to subpoena Defendant Moatz for discovery; enlargement of the time to respond; and more immediately, a Preliminary Injunction to enjoin the United States and the Defendants from failing to do their duty not to censor or discriminate against Plaintiff by *prior restraint* because of age-related disabilities and failure to provide reasonable accommodations that do not impact negatively on his ability to successfully practice in the PTO as he had done since 1958; from failing to treat him fairly and equally with all other attorneys and *pro se* practitioners without *prior restraint* in accordance with their duty to provide an opportunity for a hearing; from failing to refrain from their duty not to irreparably injure Plaintiff by negligent, unauthorized, and clearly erroneous *prior restraint*

18

without a hearing by wrongful censoring of Plaintiffs current and future patent and trademark applications.

Defendants characterize Plaintiffs Motion seeking the appointment of counsel a waste of time, but that is inconsistent with their complaint about the "bizarre" behavior of Plaintiff. Obviously, such a counsel would help the Plaintiff, the Court and the Defendants to advance this case in controversy to issue.

Defendants complain about Plaintiffs request that the Court certify its denial Defendants' dispositive motions for an interlocutory appeal. Their Motion for a Protective Order to gag Plaintiff until the Court grants its Motion to Dismiss is just the opposite of what they say it is. It is unconstitutional, vexatious, and based upon inapposite citations.

The cited case of Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985), involved a consolidated appeal filed by a *forma pauperis*, *pro se* litigator against a variety of clearly imaginary government defendants, including "World Government of World Citizens." In the PTO such an argument would have been rejected with a hearing and a right of appeal on the ground that it was scientifically impossible, like a perpetual motion machine, and/or in violation of the laws of nature. But it noted that the Plaintiff in this case was not given an effective opportunity for a hearing because of the secret tampering with his ID. The hearing that was granted in the cited case was denied to Plaintiff in this case in controversy.

Each of complaints in Urban, *Id.*, were summarily dismissed as frivolous pursuant to 28 U.S.C. 1915 (d) (1982), including a Motion for a change of venue. In only the first three months of 1985, Mr. Urban filed 28 separate appeals in the Court of Appeals, including an emergency stay of the second inauguration of President Reagan. Reversing himself at that time to be a self-proclaimed presidential candidate, Mr. Urban cited his residency in the Milky way Galaxy as a

jurisdictional basis for that action. The Court held under 28 U.S.C. 1915 (d), that"Dismissal of pro se suits under the frivolous standard [s].reserved for those cases in which there is indisputably absent any factual and legal basis for the asserted wrong." That standard has not been invoked by Defendants, so their complaint is without merit.

Furthermore, in Boag v. MacDougall, 454 U.S. 364 (1982), the Court held that the Court of Appeals' ground for dismissing the complaint was erroneous as a matter of law. Federal courts must construe inartful pleading liberally in pro se actions, Haines v. Kerner, 404 U.S.519, and so construed the complaint there as stating a cause of action. The Court said that Courts in this and other circuits have been required to respond to prolific pro se litigants with"determination and imagination" In re Green, 669 F.2d at 786. For in fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to"unduly impair [] [a litigant's] constitutional right of access to the courts." Id Such impairment of access underlies Plaintiff's complaint in this case because of Defendants sequential Motions to seal, to Dismiss and for a Protective gag Order without an effective hearing would effectively extinguish Plaintiff's life long profession and access to the courts for ever. Even the Court in Boag, Id., did not for ever destroy any chance of a profession, as Defendants are attempting to do in this case. That court simply imposed reasonable conditions such as any lawyer is accustomed to.

Moreover, the Court of Appeals in Boag, Id., did not endorse the District Court's mootness rationale, and rightfully so, since the transfer [cited] did not moot the damages claim (albeit, the Defendants have apparently abandoned their mootness defense in this case, at least in part, and without limitation thereto, because of Plaintiff's damages claim). Also, the dissent in Boag, Id., without success, tried to raise a distinction between the sufficiency of the grounds for dismissal of a cause of action under 28 U.S.C. 1915 (d) and a dismissal of a cause of action

under Rule 12 (b)(6) of the Federal Rules of Procedure, which Plaintiff has repeatedly satisfied by showing that he has been irreparably injured, that the Defendants and the public will not be injured by a Preliminary Injunction, that Plaintiffs case has merit, and that his case has a strong change of success at a final hearing.

Defendants grounds for a Protective Order and for dismissing the complaint are both clearly erroneous as a matter of law.   Those grounds are controlling questions of law suitable for interlocutory appeals because there is a substantial ground for difference of opinion on the matter, and a decision on such an interlocutory appeal will not only advance this case to issue, but are essential for the prompt and efficacious decision on the Plaintiffs cause of action which has been adequately, timely and  appropriately presented within the jurisdiction of the court by a well pled complaint after exhaustion of Plaintiffs administrative remedies.

The Defendants argue that the Court should not defer Defendants' dispositive motions until a final hearing, or for an interlocutory appeal, because they and Plaintiffs "unrelenting allegations" are creating a workload that the three seasoned professionals assigned to this case can't handle without a Protective Order.

They also argue that Plaintiff is not prevented from fully, freely, and effectively practicing trademark law before the USPTO because of vexatious threats of investigation and criminal prosecution under 33 U.S.C. 33, and by the lack of a "closing letter" and *prior restraint* without a hearing, which is true, contrary to what the Defendants allege.  If that requires a lengthy response from Defendants, a lengthy response is always adequately limited by the page limitations set by the Local Rules, as Defendants so forcefully argued to Plaintiff orally by telephone. That increased Plaintiffs workload as intended, so the Defendants have already

21

successfully addressed their issue of the length of the responses that they are required to make in this case.

On page 8 of Defendants' 1/30/8 filing, they claim that Defendants' Motion to Dismiss is based upon failure to exhaust administrative remedies; failure to make a timely filing under Local Civil Rule LCvR 83.7; and that Plaintiff failed to state an actionable claim under the Twombly standard [Docket No. 27 at 30-36] based upon a factual dispute that is not material to any issues upon which Defendants' Motion to Dismiss is based. Bell Atlantic Corp., et al. v. Twombly et al, which required only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the..daim is and the grounds upon which it rests. Conley v. Gibson, 355 U.S. 41, 47.

Plaintiff's claim is for a Preliminary Injunction to enjoin the Defendants from *prior restraint* of the Plaintiff's expression, based in part, without limitation, upon Plaintiff's well pled claim for damages of at least $1,000,000, which is in dispute because of the Defendants' policy of *prior restraint* and threats of *prior restraint* of Plaintiff's expression in his patents, trademarks, and applications, including S.N's 29/273,235 and 77/247,319, without a hearing or probable cause, which prohibition was threatened by criminal prosecution on March 4, 1996 but held in abeyance by "strategic mooting" while secretly tampering with Plaintiff's ID from August 28, 1996 until October 4, 2007, and by making the threat effective on the record as the Commissioner's final decision to censor Plaintiff's expression without a hearing on 10/16/07 in Defendants' 10/16/07 filing [7] in this case, including Defendants' Exhibits under oath. The expression censored comprises any expression holding out the Plaintiff as an attorney in states where he is admitted, and in the PTO, such as by use of the phrase or trademark as follows:

"*Attorney, Agent or Firm* –Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm*–

Cornell D.M. Judge Cornish ™ sm "

Downpat

Defendants allege that Plaintiff has exhausted his administrative remedies by acquiring a

final, recorded, notice of a non-final action by Defendant Griffin on March 22, 2005 in

Defendants' Exhibit 17, but it is not a <u>final</u> action, Decision or Order by Defendant Griffin or the

Commissioner. Defendant Griffin invites further response, since he is not the Commissioner, as

required by LCvR 83.7. Moreover, Defendant Griffin didn't want or intend his invitation to be

final. It was supportive of the facts that he knew to be present in support of Plaintiff's case, since

he knew that it was his job as the responsible investigative attorney to make and be bound by a

good faith conclusion based upon a deliberative, intentional evaluation of the facts in the record

surrounding Plaintiff's exhaustion of his administrative remedies. To that end, he said to Plaintiff

that, "based on the current record, you have not presented insufficient objective evidence to show

that you continue to possess legal qualifications necessary to render applicants for patent

valuable service." He said moreover, in denying that the record was insufficient to show what

needed to be shown, that is was "without prejudice against supplementation of the present record."

That sounds like a non-final invitation to reply further but not to change his conclusion based

on the facts already in the record. It doesn't sound like what is required by LCvR 83.7, which is

what the Court requires as the only basis for a decision on Defendants' Motion to Dismiss. LCvR

83.7 also requires that Defendants to certify the record of the proceedings before the Patent

Office, as required by 35 U.S.C. 32. Thus, a certified copy of the hearing held to determine the

facts of Defendants' "refusal" that "suspended or excluded" Plaintiff from practice is required, "which

23

shall constitute the sole basis for the court's review." No such record exists, and cannot be supplied because it doesn't exist, so it cannot be the "sole basis for the court's review."

There has been no hearing and no opportunity for a hearing. There is no evidence that Plaintiff was refused recognition to practice or was suspended or excluded from practice after a hearing, and although Defendants have been requested to supply the same if it exists, they have not done so.

"*Attorney, Agent or Firm* –Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm*– Cornell D.M. Judge Cornish TM SM "

Downpat

Respectfully submitted,

*Cornell D. M. Judge Cornish*

**Cornell D.M. Judge Cornish DC**
**DC Bar No. 366240**
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  2/8/08

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiffs Memorandum in support of his

Motion for Enlargement of Time, and in Support of Plaintiffs Motion to Defer Issues and

Controversies that are not ripe for determination until February 28, 2008, have been hand

delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this  08th day of February, 2008.

Cornell D.M. Judge Cornish

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
        )
        Plaintiff *Pro Se*    )
    v.    )
        )    CASE  07-cv-01719 (RWR)
        )
JON DUDAS, et al.    )
        )
        Defendants    )
        )

Memorandum In Response To Defendants' Filings on 1/30/08, i.e., In Response To
Defendants' Response To Plaintiff's December Filings and Defendants' Motion For Protective
Order; And In Support of Plaintiff's Motion For Denial Of Said Protective Order

The Defendants know Plaintiff is trying to achieve by his *pro se* Motion for a pre-

enforcement review and Preliminary Amendment under the APA, e.g., where Defendants have

exceeded their authority under 5 U.S.C. 701 et seq,, and the First, Fourth, Fifth and Tenth

Amendments in this case, as well as by Motion for FOIA relief under 5 U.S.C. 552, and its

improvement, which was signed into law in the Open Government Act of 2007. He is also

seeking relief under the EEOA, section 504 of the Rehabilitation Act, and where Defendants

don't have authority or lawful regulations or are mistaken in their interpretation of the law.

According to the Open Government Act, Plaintiff should have a "virtual" electronic tracking

number for his FOIA request, which is like the "virtual" tracking number Plaintiff, has in the PTO

that has been illegally tampered with and infringed.  Since the Defendants have exceeded the

20-day deadline for response (likewise since they have failed to timely defend their *prior*

*restraint* in court in which the burden of proof is on the Defendants), they will be denied the

right to charge Plaintiff for research or copying costs, including certified copies, and be subject

1

to damages. To this end, the Defendants face monetary penalties in addition to the damages that Plaintiff is seeking for at least $1,000,000 for violations of Plaintiff constitutional, property, privacy, professional, reputational and privilege rights, all of which are grounds for Denying Defendants Dispositive Motions to Dismiss etc. under 5 U.S.C. 701 et seq., without limitation to other Acts. Proper form of relief in this action include, but are not limited to, the following:

   a.  Issuing preliminary and permanent injunctions under 5 U.S.C. 703;

   b.  Issuing declaratory relief under 5 U.S.C. 703 and 28 U.S.C. 2201-2202;

   c.  Holding unlawful and setting aside the PTO's action (i.e., issuing a vacatur remedy) under 5 U.S.C. 706 (2); and

   d.  Compelling the PTO to perform its duty under 28 U.S.C. 1361.

Obviously, Plaintiff claims have merit on the basis of his statutory and constitutional rights; a likelihood of success, based upon those statutory and constitutional rights for costs, charges, fees damages and just compensation. The damages are for irreparable injuries to his statutory, constitutional, privacy, property, reputational, professional, and privilege rights by failure to do their duty, by clearly erroneous interpretations of their duty, harassment, fraud, malfeasance and negligence. Denial of Defendants dispositive motions and the granting of Plaintiff's Motion for Preliminary Injunction will otherwise cause little or damage to the public or the Defendants. There is no requirement that Defendants' Motion to Dismiss should take precedence over Plaintiff's Motion for Preliminary Injunction.

Additionally, of course, Plaintiff asks for denial of Defendants Motion to Dismiss; the granting of Plaintiff's Motion for Preliminary Injunction; and asks for the granting of his miscellaneous other Motions, including his Motion for assistance of counsel; to reopen the Record and grant him interlocutory rights to appeal and stay the proceedings for appeal under 28

2

U.S.C. 1292 (b). This includes the granting of an enlargement of time to reply to Defendants' unrelenting and mistaken allegations that Plaintiffs pleadings are so "bizarre," "confused," and otherwise improper as to justify their Motion for a Protective Order to protect the Court's jurisdiction from conduct, including a drive for sealing, summary dismissal and a gag Protective Order that impairs the Court's ability to carry out its functions under Article III, which, of course, are there to preserve the balance of powers against the Defendants crusade to obstruct justice by denying full, fair and open access to a hearing and judicial review, and the granting of Plaintiffs Motion for Preliminary Injunction. In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979) ("It is axiomatic that no petitioner or person shall ever be denied his right to he processes of the court.")

Of particular concern to the Plaintiff and the public welfare, are Defendants unrelenting efforts to tar Plaintiff with the mistaken brush of "misrepresenting to the Court that "Defendants have barred Plaintiff from advertising and promoting his name as an attorney in both the Trademark Office and the Patent Office." Defendants' prior restraint is not limited to the Patent Office, but is across the board in the PTO and elsewhere. Defendants say on page 7 of their 1/30/08 Response, "Plaintiff is not on USPTO's register of patent practitioners; therefore, regardless if he is entitled to practice trademark law before the USPTO, Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice patent law before the USPTO." That means he can't practice in either the Patent or Trademark Offices.

Plaintiff seeks a Preliminary Injunction to allow him to prosecute his presently pending patent application S.N. 29/273,235, filed 02/26/07, and so that he may do so without threat of prosecution under 35 U.S.C. 33 or otherwise, such as by "limited recognition" but by the statutory recognition to file and prosecute pro se with all the rights and privileges of all other applicants.

3

Without a Preliminary Injunction, Plaintiff is prejudiced and injured by *prior restraint,* the malfunction of the system, and Defendants' clearly erroneous interpretation of the statutes and Rules, which do not presently contemplate, nor did they ever in any way contemplate, the special and extraordinary circumstances of all *pro se* applicants like Plaintiff and other *pro se* joint inventors, whose entry into the rapidly expanding 'virtual world' of electronic access to the USPTO, and in the courts, is well recognized and respected.  Plaintiff and those others are often experienced, capable, qualified, competent, skilled, knowledgeable, exam-certified from November 5, 1958, hardware and software capable and legitimate innovator, practitioner, and attorney-inventors of good moral character and reputation, possessed of the necessary qualifications to render to applicants like themselves who are not only encouraged by the Constitution to be there on line, but NOW more than not, <u>required</u> by the PTO and the Courts, to be there on-line in that 'virtual world.'  Plaintiff should not be unduly restrained by unwarranted *prior restraint* of his on-line and off-line activities by scrutiny for links to terrorism, narcotics smuggling, child pornography or other criminal activity. A Preliminary Injunction is required to stop such unwarranted and illegal activity that caused and is causing irreparable injury without probable cause, a search warrant and a hearing.

The statutes and Rules do not now and never did contemplate the PRESENT capability of Plaintiff to legitimately render selectively on-line, electronically, in a never before known 'visual world' of the internet, in person to selected 'other' persons, valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office, including both the Trademark and Patent Offices.

Plaintiff, like those other *pro se* practitioners, are encouraged by the Constitution and the public welfare to be there, and by statute and rule <u>required</u> to be there in that 'virtual world'

4

electronically with global equality. They cannot be, nor should they ever be, excluded or restricted by *prior restraint.* The survival of the country depends on their impact on innovation and communications technology. Their business methods, computers, computer software, designs and organisms are patentable under the First Amendment. [Diamond] Parker v. Chakrabarty, 447 U.S. 303 (1980). They are not a security threat. They are not quacks or avatars with an alternate personality that socializes, explores and earns and spends money across the uncharted online landscape of the internet.

Plaintiff does not need additional monitoring or *prior restraint* for the protection of applicants, nor is he a security threat. He has been cleared by the government for top secret clearance and he has made a career, now virtually destroyed by the Defendants' *prior restraint* and irreparable injury to his profession and reputation, of handling inventions in which the government has had a property interest whereby they were held to be secret under 35 U.S.C. 181. The Defendants are already monitoring Plaintiff in the "virtual world" of PTO registers and rosters, and the Defendants have successfully done so since at least November 5, 1995.

Defendants' counter-avatar activities caused the Plaintiff to be unjustly deprived of his rights when he was forced to stop practicing on March 4, 1996 on the pretext of a false allegation that "you are ceasing practice before the United Patent and Trademark Office." (Defendants' Exhibit 8). And Defendant Griffin falsely alleged that, "Pursuant to your request, you were removed from the roster of registered patent attorneys and agents in April 1996." (Defendants' Exhibit 17).   Both Exhibits revealed the tip of the iceberg of the secret retroactive tampering with the "virtual world" and real world of Plaintiff's identity, property, profession, reputation, privilege and "virtual" persona in both the Trademark Office and the Patent Office without a hearing, probable cause or notice until 10/16/07, when the Defendants filed their Answer in this case.

5

Nor does Plaintiff present an "overriding concern that must be the protection of applicants through the admission of only those practitioners who have demonstrated that they have the knowledge and skills necessary to pass the examination," as stated by General Counsel Toupin on July 12, 2006, in his Order in a Petition under 37 C.F.R. 11.2 (d), which Defendant Moatz interpreted as a Petition pursuant to 37 C.F.R. 11.3. That order reveals the chaos caused by the failure of the Patent Statutes and Rules to contemplate the special circumstances and malfunctions, mistakes and clearly erroneous interpretations and implementations of the present system.

To this end, the system cannot fairly, or when justice requires, deal with Plaintiff's cause of action for pre-enforcement review of his *prior restraint* without a hearing in connection with his currently pending applications either on-line in the "virtual world" of the PTO, or off-line. *See* S.N. 29/273,235. Plaintiff was denied limited recognition by *prior restraint* without a hearing, and otherwise told that his "recognition" as a practitioner was "strategically moot." To this end, Plaintiff was told on March 4, 1996 (Exhibit 8), that his service before the PTO was ceasing by holding in abeyance any investigation without a hearing. Thus, he was told that he wouldn't be allowed to practice in the PTO, which includes the Trademark Office, "If your name is removed from the register..." on the basis of the investigation. This was independent of Plaintiff's letter of February 8, 1996. And this threat of "removal" from practice before the Trademark Office because of an investigation in abeyance has now been exacerbated by pre-enforcement *prior restraint* of his name and profession in both the Trademark and Patent Offices, "regardless if he is entitled to practice trademark law before the USPTO," which Defendants relentlessly reminds Plaintiff that he is "recognized" to do as a "practitioner" without violating Patent Rule 1.32.

That reminder is worthless, because he is now also relentlessly reminded of the threat of prosecution for any and all practice before the Trademark Office by pre-enforcement *prior restraint*, and the threat won't be removed without a Preliminary Injunction, because Defendants insist, as if he has been refused recognition or suspended or excluded, which he has not been, that "Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice before the USPTO," as stated on page 7 of Defendants 1/30/08 filing labeled "Defendants' Response."

In fact, if Plaintiff so "holds himself out" in his own application before the Patent Office or the Trademark Office, Defendants threaten him with prosecution under 35 U.S.C. 33. Page 7 of Defendants' 1/30/08 Response. Yet Plaintiff is actually recognized, and he is currently recognized to practice patent and trademark law in his Appln. S.N's 29/273,235 and 77/247,319, while being restrained by coercion and *prior restraint* from holding himself out by the expression: "*Attorney, Agent or Firm*—Cornell D.M. Judge Cornish $_{TM\ SM}$"

Defendants are devoting unusually large resources to preserve and promulgate their policies of *prior restraint* and censorship against Plaintiff by first sealing these proceedings, asking for summary Dismissal and finally a Protective Order to suppress Plaintiff's right to a hearing and his day in Court by a gag Order.  The Dismissal and gag orders are permanent, and so should not take precedence over Plaintiff's interlocutory appeal or Preliminary Injunction, which can be removed at any time. *See* the immense amount of resources the Defendants allege they are expending on this case and virtually a duplicate APA case now pending in the Northern District of Virginia: SmithKlineBeecham v. Dudas, cited in the record initially, in which a Preliminary Injunction was granted against the Defendant Dudas and PTO in this action, because of the

7

controlling substantive and APA administrative questions of law with a low threshold for deference to the Defendants that were involved in that case and in this case.

Also, this case involves an extraordinary situation not contemplated by statute or the Rules applied heretofore to *pro se* cases where there have been multitudes of administrative and substantive errors, including clearly erroneous interpretations of the statutes, which are facially unconstitutional.

The Defendants, including the PTO, which is a federal governmental agency, and the other Defendants, obtain their power solely at the discretion and prerogative of Congress, which is embodied in 35 U.S.C. 2 (b)(2)(D), 6 and 32. Congress obtains its power in this area from the United States Constitution: "The Congress *shall have Power*...To promote the Progress of Science and the useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries..." U.S. Const. Art. I, Sec. 8, cl. 8 (emphasis added). Congress has utilized its powers and enacted laws, which do not grant the PTO the authority to restrict the *expression* of applicants, practitioners or inventors, *pro se* or otherwise, by *prior restraint* from access, identity, and recognition in and by the "virtual world" of electronic access to the computer data base of the PTO. Thus, by subjecting Plaintiff's expression to censorship without a hearing or probable cause according to their policies of *prior restraint,* the Defendants have engaged in *ultra vires* and unconstitutional rulemaking in areas not contemplated or allowed by Congress; they have engaged in illegal activities by clearly erroneous interpretations of their authority; and they have engaged in denial of reasonable accommodations due to age related disabilities or otherwise without authority,   Congress has never empowered the Defendants to promulgate or use such policies or activities.

8

Under the patent laws a *pro se* patent applicant is permitted to file with global equality with all other applicants, and to prosecute as with all other practitioners, an original, a continuing, and a reissue application, or request for continuing examination or a Continuing Prosecution Application in case of a Design Patent Application. A Controlling Question of Law includes whether Plaintiff has the right to a Preliminary Injunction enjoining the Defendants from *prior restraint* of Plaintiff when he does anything that any other practitioner may do? That *prior restraint* occurs to restrain Plaintiff as an inventor, co-inventor or assignee when he signs a request for status of his application as an inventor or assignee; gives a power to inspect his application; acquiesces to express abandonment of his application; appoints his own legal representative; signs a terminal disclaimer; consents to the filing of a reissue application; consents to the correction of inventors name; files an application under 37 C.F.R. 1.47 (b) or 37 C.F.R. 1.475; signs an Issue Fee Transmittal (PTOL-85B); prepares and signs a response to an Office action; appeals to the Board of Appeals under 35 U.S.C. 6; signs the oath or declaration and files it or an application as the assignee; signs a Certificate of Mailing under 37 C.F.R. 1.8; signs, files and prosecutes a reexamination of his patent under 37 C.F.R. 1.510; or signs a small entity declaration under 37 C.F.R. 3.73 (b).

At times the inventors refuse to execute the application or cannot be found or reached after diligent effort and the requirements under 37 C.F.R. 1.47 (b) can be met. And others may show sufficient proprietary interest in the matter, that justifies making the application by the assignee or other inventor. He, like Plaintiff, makes the application with recognition as the "agent" for all the inventors without recognition on the registry. 37 C.F.R. 147 (b).

Even now the controlling question of law includes reference to the proposed amendment to 35 U.S.C. 115 and 35 U.S.C. 6, (HR 1908) that admittedly would provide greater flexibility for

9

applicants such as Plaintiff. In PCT countries assignees can prosecute, and so Plaintiff should

not be restrained by *prior restraint* from being recognized as a practitioner in the PTO before the

U.S. International Searching Authority and the U.S. International Preliminary Examining

Authority under 37 C.F.R. 11.9 (c). Once the inventors or an invention have been identified, and

the inventors have provided information that may be material to the examiner's decision of

patentability, and have assigned their rights in the invention to an assignee, then there is no need

to require the inventors to participate in the process by signing the oath or declaration or any

supplemental oath or declaration that may be required. And there is no possibility of quackery,

abuse by invention promotion, or unauthorized representation as a practitioner under 35 U.S.C.

33 or 32 or Local Rule LCvR 83.7, as would be shown in the hearing that has been denied to

Plaintiff.

Indeed, none of those statues or the Local Rule distinguishes or contemplates the distinction

between practice and/or recognition before the Trademark or Patent offices. Defendants' policy

limits the controlling question of law in this case to, "Can a *pro se* litigant enjoin Defendants by

a Preliminary Injunction to protect the right of all *pro se* applicants to be free of present and

retroactive *prior restraint* without a hearing in their expressions for publication? That is a

substantive question, under the APA, not a procedural question as to how to preserve and protect

their right of access to a hearing and a day court to gain their right to due process and freedom of

speech, press, religion and petition for redress of grievances.

The policy of *prior restraint,* as well as Defendants' Final Rules titled "Changes To Practice

for Continued Examination Filings, Patent Applications Containing Patentably Indistinct Claims,

and Examination of Claims in Patent Applications," 72 Fed. Reg. 46716, 46716-46843 (Aug. 21

2007), published on August 21, 2007 the Dpt. Of Commerce, PTO, abrogate Plaintiff's abilities

10

to practice and be recognized in this case and to have filed this case within the time prescribed by

Defendants 30-day choke point. They abrogate the rights of Plaintiff and all those other

applicants, including every *pro se* applicant in this Court, just as they do in the PTO, both in the

Trademark office and the Patent office. It abrogates their rights to file continuing applications

and in this case with a 30-day choke point proposed by restricting an applicant to two such

applications before the applicant is required to file a petition in this Court, or one "showing that

the amendment, argument, claim or evidence sought to be entered and filed could not have been

submitted earlier, or during the prosecution of the prior-filed applications." 72 Fed. Reg. at

46839. The PTO intends to apply this limit and their policy of *prior restraint* retroactively – i.e.,

to applications that have already been filed before the effective date of the Final Rules. This

includes S.N's 29/273,235 and 77/247,319.

In explaining this new position for a filing in Plaintiff's pending applications, and a showing

requirement in response to comments (like the time requirements under Local Civil Rule LCvR

83.7), the PTO has made clear that the "could not have" evidentiary burden and the burden of a

30-day choke point for filing this case, in almost all cases precludes not just the grant of a

petition, but also the actual filing of a petition and this case itself. *See Id.*, at 46767-46799 and

Defendants' 12/20/07 filing.

The "could not have" filed and the mentioned *prior restraint* standards pose Hobson's

choices under the PTO's rules of professional conduct, especially 37 C.F.R. 10.85(a)(5), which

bars a *pro se* practitioner like Plaintiff from knowingly making a false statement of law or fact,

or in this case using his name as an "Attorney." Plaintiff is a practitioner, and recognized as a

practitioner, which he has to be in Appln. S.N's 29/273,235 and 77/247,319 and U.S. Patent No.

5,256,367 by full faith and credit and the general *pro se* provision in the Judiciary Act of 1789.

11

The latter was codified at 28 U.S.C. 1654, which provides with global equality that, "[i]n all courts of the United States *the parties* may plead and conduct their own cases personally or by counsel (Emphasis added); and 35 U.S.C. 101 provides with global equality that no one is excluded from *pro se* prosecution and practice, i.e., with global equality, "Whoever invents or discovers ...may obtain a patent there for, subject to the conditions and requirements of this title."

This conflict renders compliance with the PTO's new petition and *prior restraint* policies and requirements extremely difficult, if not impossible and irrational, because it is unclear how an applicant can satisfy the applicable ethical obligations, the proposed choke point, and the "could not have" and *prior restraint* standards. As a result, the Defendants' petition and showing, and choke point filing, as well as their *prior restraint* requirements, represent regulatory traps not contemplated by the statutes and the Rules, except in the case of a "formal complaint," or where the Defendants request data from the Plaintiff and the Plaintiff acquires data demonstrating unexpected results or innocence, and desires to submit the data to rebut a new PTO rejection, or complaint, which is a highly unlikely scenario.

And these final rules and policies require Plaintiff "either to expend non-recoverable resources in complying with a potentially invalid regulation or to risk subjection to costly enforcement process." Seegers v. Gonzales, 396 F.3d 1248, 1253 (D.C. Cir. 2005), and hence pose hardship and irreparable injury that permits preenforcement review in a hearing that Defendants refuse to provide except by a Preliminary Injunction and Order of Contempt.

On September 7, 2007, the House of Representatives passed H.R. 1908, which addresses the present unconstitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32. Section 14 of H.R. 1908 amends Title 35 to add Sec. 2(c)(6), which grants the PTO "authority to promulgate regulations to insure

12

the quality and timeliness of applications and their examination, including specifying

circumstances under which an application for patent may claim the benefit under Sections 120,

121 and 365 (c) of the filing date of prior filed application for patent." H.R. 1908 also recognizes

the lack of authority from Congress for Sec. 2 (b)(2)(D), 6 and 32, thus, recognizes that those

statutes are unconstitutional. The PTO cannot bypass the political process by promulgating rules

when Congress has not given that rulemaking authority to the PTO.

The final rules and *prior restraint* policy pose an unconstitutional arbitrary and capricious

regulatory taking without a hearing or opportunity for a hearing. They take Plaintiff's patent and

patent application property rights, which are universally well-recognized and long-standing

rights provided under 35 U.S.C. 261 (Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 96

(1876)("A patent for an invention is as much property as a patent for land, for which Plaintiff is

authorized to hold himself out as an attorney for others). That property, privilege, right of

expression and his ID in his Certificate of Registration No. 19,240 in the "virtual world" of the

PTO computer servers have been taken, tampered with, infringed and irreparably destroyed by

negligence and malfeasance to the obvious irreparable damage of Plaintiff without a hearing,

probable cause, due process or just compensation as required under the First, Fourth and Fifth

Amendments, and Defendants did so by enforcing their policy of *prior restraint* without a

hearing and the requirements of their burden of proof, which is unconstitutional under the First

Amendment. Freedman v. Maryland, 380 U.S. 51 (1965).

The Defendants, and Commissioner Dudas in particular, have acted finally but irrationally,

arbitrarily and capriciously in failing to adequately consider such issues in the rulemaking

process or provide Plaintiff or the public with a hearing on the public record, and they have

continued to obstruct Plaintiff's right to judicial review by their Motion to seal, Summary

13

Motion to Dismiss, and request for a gag Protective Order. And the rules and policy of *prior restraint* are so vague, indefinite and irrational as to be arbitrarily implemented and executed against Plaintiff.

This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1338 and 1361. Plaintiff has standing to bring this suit because he is specifically, personally and irreparably harmed by the Final Rules and the policy of *prior restraint,* which have been enforced against Plaintiffs patent and trademark applications by the Commissioner in his Answer and Opposition on 10/16/07 in this timely filed case. This is a pre-enforcement *prior restraint* and APA action, an action for damages, and an action after a final action by the Commissioner timely filed by Plaintiff after exhaustion of Plaintiffs administrative remedies, including rejected discrimination, Section 504, EEO and FOIA complaints, also facial constitutional challenges. The Plaintiffs well pled complaint has merit and likelihood of success, as shown by the Preliminary Injunction granted in the Tafas case on the same issues as present in this case. It was combined with SmithKline Beecham Corporation v. Dudas, No. 1:07cv1008 in the U.S. Distr. Ct. for the Eastern District of Virginia (Alexandria Division).

The Preliminary Injunction granted to SmithKline Beecham, and requested here will not be harmful to the Defendants or the public. The balancing required for Plaintiffs Preliminary Injunction and the Denial of Defendants Motion to Dismiss and for a Protective Order is overwhelmingly in favor of Plaintiff and *status quo*.

These matters are ripe. The issues presented for review meet the Abbott Laboratories fitness and hardship requirements. Plaintiff has at least one pending patent application that is affected by the Final Rules and the Defendants' policy and imposition of *prior* restraint. The irreparable damage to Plaintiffs reputation and income by the virtual destruction, taking, tampering,

14

interference and infringement of his property, privilege and ID in the "virtual world" of the PTO in irreparable. It was not and is not contemplated or addressed by the patent statutes, and/or the requirements of justice by the errors, malfunction, and irrational and clearly erroneous substantive interpretation of the Defendants who lack Constitutional authority, and the facial unconstitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32.

The Defendants Dudas and the PTO in the Tafas v. Dudas, et al, Civil Action No. 1:07cv846, as in SmithKline Beecham, Id., are the same Defendants in this case. In that case a Partial Motion to Dismiss based on a Memorandum in Support of Defendants' Partial Motion to Dismiss on October 4, 2007, was denied, as the corresponding Motion to Dismiss of the Defendants in this case should be denied.

The defense in that case ran afoul of the two-part test established in Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), which permits preenforcement review of agency regulations where the questions presented are fit for judicial review and would pose a hardship to regulated parties. Here, the PTO's authority to promulgate rules is both granted and limited by 35 U.S.C. 2. The PTO "may establish regulations, **not inconsistent with law,** which shall govern the conduct of proceedings in the Office" 35 U.S.C. 2 (b)(2006)(Emphasis added). Under this single statutory grant of rulemaking power, the PTO can only promulgate rules that fall squarely within the bounds of established statutory patent and Constitutional law. It has exceeded its authority in promulgating the Final Rules and policy of *prior restraint* posing a fit question for preenforcement review under Abbott Laboratories, Id.

The House of Representatives takes the position that the PTO should not promulgate such rules and policies until Congress has been given 60 days to consider and perhaps disapprove them, and Congress has not yet had time to consider and approve them. The Defendants should

15

be enjoined from implementing and executing the described Final rules and policy of "petition" and *prior restraint.*

Plaintiff with global equality is subject to reprimand, suspension or exclusion from practice before the PTO, both the Trademark and Patent Offices without the Preliminary Injunction he has requested in this case. *See* 37 C.F.R. 10.130 and 10.131. Plaintiff is at risk of violating 37 C.F.R. 10.85 by merely filing a petition, and filing this case without a request for a Preliminary Injunction for preexamination review.

This inevitably leads itself to a controlling question of law involving a substantial ground for a difference of opinion, namely: controlling <u>substantive</u> First Amendment, due process and <u>administrative</u> laws under the APA involving special circumstances not contemplated by the statutes and the rules, where deference to the PTO is low. As a matter of law, what are the burdens of proof on the parties? This involves non-procedural administrative law, i.e., *inter alia,* <u>substantive</u> general and administrative First Amendment law not contemplated by statute or Rules as to how to separate the functions of the Patent and Trademark Office and OED, and the lack of authority from Congress for making those demarcations and answering the controlling substantive questions arising in connection with practice in the PTO, e.g., in PTO vs. the trademark office and the patent office respectively?

In fact, the language used in making that demarcation does not contemplate the special circumstances of Defendants' clearly erroneous interpretations under the statutes and Rules, which are so vague and indefinite in 35 U.S.C. 2 (b) (2)(D), 6 and 32, as to be substantively and administratively irrational, without Congressional authority, otherwise impossible to implement and facially unconstitutional.

16

All these questions of <u>substantive</u> law involve exceptional circumstances mot contemplated by the statutes or Rules, in which there is substantial ground for difference of opinion, which is well understood by the Defendants in denying Plaintiff his day in court and a hearing.

Points of Agreement

To put these matters into perspective, Plaintiff points to the many areas of agreement between the Plaintiff and the Defendant, not just to the substantial grounds for differences in opinion, or the grounds for the controlling questions of law that involve genuine issues of material fact, which are robust, germane and successfully answered by this Memorandum.

For example, on page 16 of Defendants' 1/30/08 filing, it is said that, "Plaintiff is correct, however, that the USPTO denied him 'limited recognition' in patent matters pursuant to 37 C.F.R. 11.9." That is not a procedural question under the APA or otherwise, but a <u>substantive</u> question of interpretation of the statute authorizing "recognition" involving special circumstances not contemplated by the statutes or Rules. It is admitted that the Plaintiff has been and still is under investigation since March 4, 1996 (Defendants' Exhibits 8 and 33), because that "investigation" has been held in abeyance without a "closing letter" apparently since March 4, 1996 or August 28, 1996 to the present.

Plaintiff's instruction on March 4, 1996 by the Director of OED was to cease practice in the United States Patent and Trademark Office "If your name is removed from the register". And according to the final effective notice of the decision of the Commissioner, i.e., Defendant Dudas on 10/16/07 [7], Plaintiff was not only denied "limited recognition" in patent matters without a hearing, but there was a secret decision without a hearing on August 28, 1996 by the Director of OED (Defendants' Exhibit 8 [7 and 24]) in furtherance of the instruction of March 4, 1996 (Defendants' Exhibit 8 [7 and 24]), which became final and finally effective on 10/16/07 [7]

17

without a hearing for him to cease practice in the United States Patent and Trademark Office while still being *recognized* to practice *pro se* by "strategic mooting." That is a special situation not contemplated by the statutes or the Rules, flaws in the system, mistakes and irrational interpretations.

In no case has Plaintiff failed to be "recognized" after a hearing, nor has he ever been "suspended or excluded from practice before the Patent Office" after notice and opportunity for a hearing under 35 U.S.C. 32. However, the substantive effect of *prior restraint,* was that Defendants without authority from Congress had clearly constrained Plaintiff by *prior restraint* from using his name as an attorney anywhere or in any document or in any way, not only in the United States Patent and Trademark Office, but anywhere else in which he held himself out as an attorney by advertising as an attorney or otherwise, under 35 U.S.C. 32 or otherwise. If he did so, he was threatened with prosecution under 35 U.S.C. 33 and discipline without a hearing suspending or excluding him or refusing to recognize him. *See* page 7 of Defendants' 1/30/08 filing.

As further described by Defendants on page 7, "Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice patent law before the USPTO" (albeit, he is recognized to practice patent law in the Patent Office *pro se* under the constraints of *prior restraint* without a hearing). Defendants have limited their failure to "recognize" Plaintiff to their failure to "recognize" Plaintiff's "allegation" that he is an attorney under DC Bar #366240 or otherwise in NY and MD by evidence in the Record for which an Order of Production free under FOIA has been requested.

They say Plaintiff's allegation is blatantly untrue, because, "if Plaintiff is actually licensed to practice law somewhere, there is no genuine dispute about Plaintiff's entitlement to represent

18

others before the USPTO in trademark and non-patent cases."However, they have limited their

recognition to *pro se* patent matters, which they say are"moot,"by instructing him to cease

practicing in the United States Patent and Trademark Office on March 4, 1996 (Defendants'

Exhibit 8).

Defendants without probable cause don't allow Plaintiff to hold himself out as an attorney for

practice in the PTO, or give him a hearing as to why they constrain him from doing so by *prior*

*restraint*.  That is a substantive deprivation of substantive due process and an infringement of his

First amendment rights despite the fact that the *prior restraint* of Plaintiff's allegation that he is

an attorney by judicial notice is without authorization from Congress, nor can the Court defer to

the Defendants failure to take judicial notice for such *prior restraint* under Article IV, Section 1,

or 28 U.S.C. 1738.

Plaintiff's Motion for Preliminary Injunction answers Page 8 of Defendants' 1/30/08 filing,

which relates to the substantive question of law as to the authority from Congress for Defendants'

*prior restraint* of Plaintiff's holding himself out to practice patent law, *pro se* or otherwise, and

the deference that this Court should give to a PRE-ENFORCEMENT review of their clearly

erroneous answer to that question and failure to meet their burden of proof.   They allow that

"there is a genuine factual dispute as to his competency to practice patent law,"but they say that

"that dispute is not material to any issues upon which the Defendants' Motion to Dismiss is based."

That is a clearly erroneous assertion, and, in any event, it is material to their Motion to Dismiss

because it relates to Plaintiff's facial challenges of the constitutionality of the cited Patent

Statutes, to the controlling questions of law in this case, and to the grounds for and merits or

Plaintiff's Motion for Preliminary Injunction and for damages and fees, including the likelihood

of his success in that action, which is high; the irreparable injury that Defendant has caused to

Plaintiff, which is also large; and the obvious lack of any damage to the Defendants or the public by the granting of the requested Preliminary Injunction.

The Preliminary Injunction has merit and is bound to be successful because it will restore the *status quo* by returning Plaintiff's right to practice in the Trademark and the Patent Office without *prior restraint* of his expression and ability to hold himself out and to advertise, all of which are substantive questions of law before the Court under the APA and otherwise that the Court must decide.

According to the Director of OED's instruction on March 4, 1996, Plaintiff was held to have ceased practice before the United States Patent and Trademark Office, "If your name is removed from the register", which was made final and effective by exhaustion of administrative remedies on 10/16/07 by Defendant Dudas, whose Exhibits comprise certified copies of Records filed in Defendants' case, according to the Defendants' official final decision on notice to Plaintiff and recorded in the public record by Defendants' filings [7 and 24]. That Record was not made pursuant to authority from Congress for the dramatic, chaotic, substantive and irreparably injurious change in Plaintiff's status. Thus, it is revealing as to whether Plaintiff is or is not 'recognized' to 'practice' before the PTO in any way.

While the Defendants are sometimes given discretion and deference to implement their own rules, they are not given such discretion and deference when they lack authority from Congress there for, e.g., under 35 U.S.C. 2 (b)(2)(D), 6 and 32 (also Local Civil Rule LCvR 83.7), which authority is lacking in this case, because Congress has not given them authority to make the substantive First Amendment and administrative law decisions they have made in this case. The cited statutes and 37 C.F.R. 11.9 are inconsistent with each other, and so vague and indefinite as to be procedurally and substantively impossible to decipher as to their meaning and limitations

20

concerning "recognition," and "registration" to "practice" or "prosecute as an attorney or agent,"

especially, as in this case, where it is necessary to distinguish between First Amendment

"recognition, "registration," "practice" and "prosecution as an attorney in the Office, as

deciphered from the cited statutes. All applicants are "recognized" and when they are *pro se*,

they always "practice" and "prosecute" like any other practitioner. The burden of proof is on the

Defendants to show that the Plaintiff's expression is unprotected against *prior restraint* by the

Constitution. Freedman v. Maryland, 380 U.S. 51 (1965).

Certification of an issue for interlocutory appeal places the burden of proof on the

Defendants, who in this case have asked for a Protective Order involving substantial grounds for

a difference of opinion. This is a basic and controlling question raised by the Defendants in this

case. And according to the policy of this Court, it must allow a hearing and appellate review of

the controlling question of the *pro se* applicants' right to a hearing, the demands of due process

and his First Amendment rights to limit *prior restraint*.

The *pro se* applicants in the PTO have historically constituted most of the applicants in such

cases of controversy in the PTO. In 2004 alone there were 4000 design patent applicants without

assignees out of the total of 14000 filed. 4000 are assumed to have been by *pro se* applicants.

PatentlyO.com 2007 "Design Patents: Percentage of Design Patents Associated with an

Assignee."

In the majority of cases, and including this case in controversy, the *pro se* filing involves

only a simple drawing of an ornamental design, a fee, and a single claim to the design shown in

the drawing, i.e., "The design as shown." *See* 37 U.S.C. 1.153, 1.154 and 1.155. It is quite

uncomplicated.   The expression used in the specification is wide open to the ingenuity of the

applicant without *prior restraint* as to whether the applicant is "registered" to "practice" or

or *Agent* or a *Firm*. Any ornamental design under the sun that is made by man can be described by the applicants' expression in the specification without *prior restraint*. Parker v. Chakrabarty, 447 U.S. 303 (1980). That is the controlling question of substantive law involved. It is not subject to the discretion of the Defendants under 35 U.S.C. 101. Ordinarily, the Court will not defer to the interpretation of the substantive law by the Defendants. It is subject only to the general law of speech and press under the First Amendment. *Prior restraint* of any expression requires a hearing, due process and probable cause. The burden is on the Defendants to prove that the expression subject to *prior restraint* is unprotected by the Constitution. *Prior restraint* of the expression of any subject matter is a substantive question of law and subject to substantive and procedural due process. The policy of *prior restraint* is subject to the substantive provisions of the APA relating thereto. It is not determined by its procedural provisions, but it is subject to procedural due process. Any expression of any patentable design under the sun that is made by man is publishable in a patent without *prior restraint* unless shown to the unconstitutional by the Defendants.

All inventors of designs are *pro se* inventors. And *pro se* applicants are quite capable of filing and prosecuting their applications alone by using their own expressions and inventive creativity alone. In fact, the Patent Laws require that all inventors alone be *pro se* inventors alone or with a co-inventor. They alone are the originators and inventors of the novel and unobvious design described and shown in their application. They are required not to have the help or assistance of an attorney in making their creative discovery or reducing it to practice. No invention promotion company can advertise in a patent for the single simple reason that having the inventor's name and profession listed in a patent publication with the imprimatur of the government and without *prior restraint* is the single most important part of a patent, whether it

22

be a design, plant or utility patent. Assurance that the invention is going to be commercial is not necessary. The recognition of the *pro se* inventor by the Defendants, and his or her family, friends, associates and the public is enough. Recognition of the inventors name and his profession as an inventor or an attorney is made and given by the Defendants in every patent, and it cannot ever be taken away retroactively or ex post facto. If the patent is invalid it is so held to be invalid, but the name of the inventor-attorney and his recognition is never taken away. It is recognized by law as a property right. 35 U.S.C. 261. His expression is copyrightable.

The name and profession of the Plaintiff *pro se* inventor-applicant and practitioner in this case is simply: Cornell D.M. Judge Cornish, attorney, and he wishes to promote that name with his profession in a patent publication under the First Amendment rights of speech, press and religion without *prior restraint* by the Defendants by a Preliminary Injunction. *Prior restraint* requires that the Defendants must initiate a hearing in which the burden is on the Defendants to show that the proposed *prior restraint* does not violate the prohibition of the First Amendment. Freedman v. Maryland, 380 U.S. 51 (1965) (albeit, Plaintiffs *pro se* profession is also published as an"inventor"when the patent issues).

Plaintiffs *pro se* right to a hearing and due process (also, freedom of speech and press without *prior restraint*) was dealt with in Moatz v. S. Michael Bender, Proceeding No. D00-01, which cited Opp Cotton Mills v. Dep't Labor, 312 U.S. 126, 152-153 (1941), which cited Texas, 137 U.S. 15, 11 S.Ct. 9; American Surety Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 102; and United States v. Illinois Central R. Co., 291 U.S. 457, 463, 54 S. Ct. 471, 473. According to that Opp, *Id.*, "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." The absence of a hearing is a

23

controlling question of <u>substantive</u> law. Plaintiff was accorded no hearing in this case, and no opportunity for a hearing was given before the final but secret order instituting the policy of *prior restraint* without a hearing on June 28, 1996 (Defendants Exhibit 8). That final secret Order by the Director of OED on August 28, 1996 (Defendants' Exhibit 8 [7 and 24], became effective by notice to Plaintiff on October 16, 2007 in Defendants' Answer and Opposition [7].

The requirement for a hearing is in the nature of a *pro se* applicants' constitutional rights under the First, Fourth and Fifth Amendments. Gag orders, *prior restraint* and Protective Orders without any hearing at any stage of the proceedings are not constitutional and reviewable by an interlocutory appeal. That is a compelling and controlling question of law under the exceptional circumstances of a *pro* se practitioner under the First Amendment, without limitation by the Patent Laws, including 101, 102, 102, 112, 2 (b)(2)(D), 6 and 32, because the Commissioner's discretion is limited by limited and narrowly focused statutory authority and the nature of the due process, speech, press, religion and petition rights involved. The Defendants are due little deference under the substantive and pre-enforcement provisions of Section 701 et seq of 5 U.S.C. (the APA).

Plaintiff is working under just as heavy a work load as the Defendants, only they have three seasoned attorneys who are dealing with this case with electronic access, whereas Plaintiff is filing *pro se* without electronic access or the help of an attorney, which he sought for advice resulting in the delay in the date upon which he filed this case.

This is a case in controversy in which there is a dispute involving a substantial ground for a difference of opinion as to the significance of this case to the Plaintiff and the Defendants, including the PTO, the Justice Department, and to the FTC/State'Project Mousetrap' for addressing the snares of the Invention Promotion Industry, and to the Defendants in connection

with their *prior restraint*. There is a significant ground for a difference of opinion among the many controlling issues that they are following or are involved in, and that is demonstrable in this case as to the request for a gag Protective Order to keep Plaintiff from gaining counsel.

In this connection, a significant ground for a difference of opinion as to the Justice Department's hard ball actions is in their trying to obscure their actions by using their pleadings for an Order of Protection on top of their motion to seal the proceedings followed by their Motion to Dismiss, all of which are intended to prevent access to a hearing by the Plaintiff.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm*– Cornell D.M. Judge Cornish ᴛᴍ ꜱᴍ "

Downpat

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    2/8/08

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum in

support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 8th day of February, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:    2/08/08