# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                                    )
            Plaintiff *Pro Se*     )
                                      )
v.                                 )    CASE 07-cv-01719 (RWR)
                                      )
JON DUDAS, et al.,            )
                                    )
            Defendants      )
_____)

## PLAINTIFF'S UNOPPOSED MOTION TO ENLARGE PERIOD FOR RESPONSE, TO OPPOSE DEFENDANTS' CURRENT, 12/20/97, OR SECOND [27], NEW MOTION TO DISMISS; AND TO DEFER ISSUES AND CONTROVERSIES NOT RIPE FOR DETERMINATION

Pursuant to Rules 12 (b) (1) and 12 (b) (6) of the Federal Rules of Civil Procedure,

Plaintiff hereby Moves in favor of Plaintiff to Deny Defendants' Motion to Dismiss Or,

Alternately to Deny Defendants' Motion For Summary Judgment pursuant to Fed. Civ. P. 56 (b).

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 1/4/08

3

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) | |
| | ) | |
| Plaintiff *Pro Se* | ) | |
| | ) | |
| v. | ) | CASE 07-cv-01719 (RWR) |
| | ) | |
| JON DUDAS, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**MEMORANDUM AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
TO CONTINUE TO DENY
DEFENDANTS' MOTION TO DISMISS OR, ALTERNATELY SUMMARY JUDGMENT**

Plaintiff takes no position for or against Defendants' Motion for an Enlargement of time

up to and including January 7, 2008. But Plaintiff continues to Move for a Preliminary and

Permanent Injunction against Defendants' *prior restraint* of Plaintiff' constitutional rights,

including particularly his right to publish the subject matter of the pure, unedited, expressive

content of his personal viewpoint of the *religious* calling of his name and trademark, which are

taken from the book of "Judges" in the Christian bible, and joined with his occupation as a

Catholic pastoral counselor of newly-weds, and to identity him as a living attorney in patent and

trademark applications, including his currently pending applications, which have been censored

by Defendants' *prior restraint.* See record for his authority to solemnize marriages in NY.

Not only are Defendants' using *prior restraint* of the expressive content of Plaintiff's

uniquely presented, novel and patentable method of expression, but also *prior restraint* or his

right to obtain a patent on his "process" by *prior restraint* of his constitutional right of the

speech, press and religion and the specific patentable subject matter for which he is seeking

protection and property rights under all three of those clauses of the First Amendment and 35

1

U.S.C. 101, as made manifest in such cited decisions as <u>Parker v. Chakrabarty,</u> 477 U.S. 303 (1980). Under 35 U.S.C. 101,"Whoever invents or discovers any new and useful process [meaning process, art, or method. . .under 35 U.S.C. 100] machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

And Plaintiff's First Amendment rights have also been violated under the Due Process Clause because of constitutionally insufficient notice by Defendant Moatz' predecessor and Defendant Moatz himself, as shown in Defendants' Exhibits 8 and 33. As shown in those Exhibits, which are new evidence not available to the Plaintiff before the filing of Defendants' Opposition [7] on 10/16/07, that evidence, which is un-rebutted, shows that they acted intentionally, fraudulently and secretly as biased, grand jurors, investigators, prosecutors, and adjudicators against their own ethical duties, and with an inherent conflict of interest with their own ethical duties, constraints and requirements, without authorization, and with untrammeled, unsupervised, overbroad discretion, not only based upon unconstitutional statutes, but also as officials and attorneys of record, but acting in their own arbitrary and capricious self-interest to save them from personal liability, damages, fees and expenses, by their own intentional, carefully reasoned, deliberate, clearly erroneous and biased interpretation of the record and those unconstitutional statutes after careful review of the record, and without any basis in fact, as described heretofore.

<u>In re Murchison,</u> 349 U.S. 133, 136 (1966), stands for the requirement for a "fair trial in a fair tribunal, as a basic requirement of due process." In that case, which is like this one, a showing has been made that raised serious questions under the federal Constitution. That is reason enough for denying Defendants' Motion to Dismiss. The Court found in <u>Murchison,</u> *Id.*,

2

that a procedure which "empowered a judge under [state] law to sit as a [secret] one-man grand jury," as Defendants mistakenly believe they are empowered to do by federal law, and as they have done in this case by their 10/16/07 Exhibits 8 and 33 [7], using secret testimony, and to try and convict the Plaintiff based upon that judge's own one-man or one-woman prejudice and selfish pre-judgment bias, without notice to the Plaintiff or testing by adequate cross-examination, "is a denial of due process," (albeit, testimony submitted in Exhibit 3, which was used in this case, was inadmissible, scurrilous and libelous hearsay barred by the statute of limitations. It did not qualify as a hearsay exception of a holding of someone in contempt of court).

As the author stated in his Wigmore On Evidence, 1904 edition, "It may be that in more than one sense [cross-examination] takes the place in our system which torture occupied in the medieval system of the civilians. Nevertheless, it is beyond any doubt the greatest legal engine ever invented for the discovery of truth. However, difficult it may be for the laymen, the scientist, or the foreign jurist to appreciate its wonderful power . . . cross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure." Washington Lawyer, Jacob A. Stein, p. 48, January 2008.

In Withrow v. Larkin, 421 U.S. 35 (1975), "a three-judge court declared that the statute empowering the Board temporarily to suspend a [professional] . . . license with formal proceedings was unconstitutional, and preliminarily enjoined the Board from enforcing it on the ground that it would be a denial of due process for the board to suspend expellee's license at its own contested hearing on charges evolving form its own investigation." And the statutes forbade the practice of the defendant's profession without a license based upon professional misconduct proscribing fee splitting, and illegally practicing under any name other than the name

3

under which his license had been issued if the public would be misled, such practice would
constitute unfair competition with another person, or other detriment to the profession would
result.

To enforce those provisions, the Examining Board was empowered to warn and
reprimand, temporarily to suspend the defendant's license (albeit, only on notice and after a
hearing, such as was denied to Plaintiff in the subject case). It could "institute criminal action or
action to revoke license when it finds probable cause therefor under criminal or revocation
statute. . ." And in that case, adequate, constitutionally sufficient notice was given, and an
investigative proceeding before the Examining Board was commenced. A hearing satisfying due
process was held, whereas, in this case no constitutionally sufficient notice was given, and no
opportunity for a hearing was given.

As stated by Judge Joyce Hens Green in Marinangeli v. Lehman, 32 F.Supp.2d 1 (D.D.C.
1998), the Commissioner "may, after notice and opportunity for a hearing, suspend or exclude
from further practice before the [PTO] (albeit, this includes both the entire Trademark and the
Patent Office). Local Rule 213 states the "record and proceedings before the Patent Office . . .
shall constitute the sole basis for the Court's review." And such review is governed by the APA,
which permits reviewing courts to set aside agency decisions that are "arbitrary and capricious,"
as the one in this case is. But in this case the Defendants arbitrary and capricious decision was to
secretly "remove Mr. Cornish from the roster" by Director Bovard's handwritten note of August
28, 1996 in Exhibit 8 [7] without notice to the Plaintiff. And such new evidence was not
available to Plaintiff until Defendants filing on 10/16/07 [7].

In this case, the record was kept secret and suppressed in order to obstruct Plaintiff's
access to the Court, but that secret record, which is now the subject of this case and controversy,

4

was placed before the Court on 10/16/07[7], and is now before the Court for review. To this end, the Director of OED held a secret one woman grand jury hearing, and a simultaneous trial as judge and jury with a pre-judgment bias, without any investigation, witnesses, probable cause or any notice of any kind to Plaintiff. No notice of the unauthorized, constitutionally void, and, therefore, false, fraudulent and secret removal of his name from the OG was sent to Plaintiff. See the secret handwritten note dated August 28, 1996 in Defendants' Exhibit 8 [7], which asked for an otherwise unidentified person named "Pat" to "pls. Remove Mr. Cornish from the roster." And the letter of June 15, 2000 by Defendant Moatz published the libel without notice to Plaintiff in Exhibit 33 [7].

This was a secret continuation of what had been set in motion by Karen Bovard's letter of March 4, 1996 in Exhibit 8 [7], when she was director of OED. Her letter was in response to Plaintiff's letter of February 8, 1996 in Exhibit 7 [7]. Plaintiff's letter was an appropriate letter informing Defendants of his current mailing address for a notice of a hearing under 35 U.S.C. 32, before removal of his name from the register under 37 C.F.R. 10.7. His letter was an invitation to be investigated to clear his name and to prevent him from being "removed" from the register.

Director Bovard's letter, however, was a deliberate, well thought out, and intentional "technical mooting" as Director of OED, and as an attorney. She threatened and coerced Plaintiff by a "technical mooting" not to practice ever again in either the Trademark Office or the Patent Office, upon threat of a specific investigation under consideration and forthcoming prosecution under 35 U.S.C. 33, if he ever became active again by a change in status in Maryland, or merely asked for reinstatement subsequent to her promised action under 37 C.F.R. 10.7, "If your name is removed from the register." Thus, she refused Plaintiff's invitation to investigate him before removing his name from the roster of attorneys, and she instead chose to

5

hold the investigation in abeyance. Her letter was not a mistake, or a form letter asking for a response from Plaintiff to inform the Defendants that Plaintiff wanted to remain on the register of attorneys. It was a secret refusal to instigate an investigation in a way that satisfied Due Process, and thus could lead to a hearing under 35 U.S.C. 32 and penalties under 35 U.S.C. 33. And the terms of the "technical mooting," which were clearly erroneous, overreaching, and arbitrary and capricious.

That secret, August 28, 1996, arbitrary and capricious decision was repeated and published by Defendant Moatz in his letter of June 15, 2000, without notice to the Plaintiff. Neither, was Plaintiff informed of publication of his name in the Official Gazette as a person whose name has been removed from the register. These are factors that deprived Plaintiff of due process. Jones v. Flowers, 547 U.S. _____ (2006), "As for the Commissioner's inquiry notice argument, the common knowledge that property may become subject to government taking . . . does not excuse the government from complying with its constitutional obligation of notice before taking private property."

The secret retroactive taking in 1996, or thereafter at some still undetermined date, has now been made more widely public with the name of the addressee redacted in Exhibit 33 [7]. It is part of the new arbitrary and capricious evidence of Defendants retroactive, continuing, and future *prior restraint* that satisfies Rule 12 (b)(6), preventing dismissal for failure to state a claim upon which relief may be granted, Czarnik v. Illumina, Inc., 437 F.Supp2d 252 (D.Del. 2006); and Local Rule 213, based upon the newly acquired secret record permitting review by this Court to set aside the secret agency decision on August 28, 1996, which has only now been made widely public.

Accordingly, Director Bovard's letter of March 4, 1996, "technically mooted" a need for Plaintiff to reply, save only "If your name is removed from the register." It didn't protect Defendants' duty to meet their constitutional requirement for due process by hiding behind an "inquiry notice argument." That argument was negated and preempted in fact by an irreversible *fait accompli,* as early as March 1996, but possibly as late as April 1996, as stated in Defendant Griffin's letter of March 22, 2005 in Exhibit 32, because Plaintiff was given only the option of replying to ask for reinstatement, in which case that was guaranteed to institute an "investigation" that was being held in "abeyance" until such an "inquiry notice" request was made by Plaintiff. This *fait accompli* was repeated in Defendant Moatz' letter of June 15, 2000, in Exhibit 3, indicating that the *fait accompli* was not made until sometime after Plaintiff's 1996 letter, which was actually dated February 8, 1996 in Exhibit 7.

Accordingly, Plaintiff's Motion for a Preliminary Injunction should be granted; and Defendants' Motion to Dismiss should be denied. And their Motion for Summary Judgment should also likewise be denied.

Defendants' Motion to Dismiss should be denied because Plaintiff will likely succeed on the merits, and that injunction will in no way injure the Defendants or the public. It will only continue the status quo. And it will enhance the public's right to know, which is what Defendants argue is behind their Motion to unseal their filings. The lack of a preliminary injunction has, is and will irreparably injure Plaintiff's reputation, identify, trademark, religious beliefs, professional standing, and will discriminate against him and infringe his religious privileges and immunities, and his liberty, privacy and property rights because of his age and religious beliefs and occupation, and in his calling and name.

7

Likewise, the Defendants' irrational, arbitrary and capricious *prior restraint* in and outside of the PTO, were officially initiated without proper authority by Director Karen Bovard. To this end, it was a secret, retroactive, *fait accompli* and "strategic mooting" that intentionally used threats, coercion taking and infringement without any request by Plaintiff for "removal" of his name from the "register." He was one of the more than 1500 attorneys and agents who had no obligation to respond to a request for "information" to update the mailing records of the PTO, because he had given timely notice on February 8, 1996 of his correct mailing address. Thus, Defendants did not ask for Plaintiff to respond. He was threatened with "removal" from the register based on an "investigation" that was held in abeyance to force him to admit that he was in need of reinstatement. They were interested in coercing Plaintiff into silence and obstructing his access to this Court by holding an "investigation" in abeyance.

Defendants did not need, want or suggest that Plaintiff reply with another communication from Plaintiff to update his mailing address. Also, his Certificate of Registration No. 19,240 dated back to 1958, which was long before the dates of registration that were being weeded out for selfish logistical reasons, including, for example, only those numbers between 33,211 and 29,4386. Plaintiff obviously was one of those who wanted to remain on the register, and one of those whom the Defendants were not interested in being removed from the register. That is why he was proceeding by temporary "inactivity" as an attorney in patents only to avoid fees for "actively" making a living as an attorney in Maryland.

To this end, he was proceeding to make corrections in a record that was admittedly incorrect and clearly erroneous. He was, thus, not one of the benighted attorneys obligated to acquiescence in "removal" by a notice and a threat to publish his name in the OG.

8

Defendants focused on Plaintiff's "inactivity" as an attorney, which excluded only the Trademark Office, since agents don't have to be attorneys while they practice before the PTO. Their practice is limited to only the Patent Office because "inactivity" as an attorney does not prejudice practice as an agent before the Patent Office. The latter was keyed to his status in his favor as an inactive attorney in Maryland, where he was to be reinstated without any requirement for a showing of fitness when Plaintiff became active again. ATGC v, Ruffin, 369 Md, 238, 252 (2002).

And possibly his "inactivity" would be gone in the short time it would take to make a correction or complete an appeal before forcing him to face a hearing under 35 U.S.C 32, which is a costly logistical effort the Defendants selfishly wanted to eliminate in their own self-interest by a "technical mooting" of Plaintiff's investigation. They were accordingly biased to hold any investigation in abeyance to avoid the conflict of interest involved in acting retroactively as a grand jury, and then secretly prosecuting and disciplining Plaintiff without investigation, which actions were all combined in Defendant Griffin under the direction of the prosecutor, judge and jury in the person of Directors Bovard and Defendant Moatz.

In any event, Defendants had an obligation to give Plaintiff more than a mere 30 day notice by mailing to him a threat of prosecution, "If your name is removed from the register" so as to lose your license, property and privilege. Jones v. Flowers, 547 U.S. _____ (2007).

Plaintiff cannot be charged with correcting a problem of Defendants' own creation and of which he was unaware due to the secret removal of his name from the register by a suppressed, secret, handwritten note by Director Bovard in Exhibit 8 on a letter dated March 4, 1996. The Defendants had an obligation to do more than threatening and coercing him into silence by a "strategic mooting" of an investigation to prevent Plaintiff from forfeiting his registration.

9

Plaintiff was only fully informed of the secret retroactive removal of his name from the register in the PTO on 10/16/07 by reference to Defendants' Exhibits 8, 31 and 33, and the review of his July 2007 exam on October 4, 2007. That was when the secret tampering of his Registration number on his examination paper was disclosed to him.

His secret "removal" from the register was without probable cause or any "investigation" and his name is still being held in "abeyance" under ID number 41,361, instead of his original ID number 19,240 date 11/5/98. Meanwhile, the investigation is still being held in abeyance since sometime unknown in 1996 or thereafter.

The misleading letter from Defendant Griffin on March 22, 2005 in Exhibit 17 only added to the fraudulent changing of positions for the actions by the Defendants in secretly suppressing exculpatory evidence of the removal Plaintiff's name from the register. On March 4, 1996 Defendants used the scurrilous and libelous hearsay of Exhibit 3 to coerce Plaintiff, "If his name is removed from the register." Then they used a fictitious "disability" without basis in fact in 1995. It was based on speculation and imagination, or was secretly manufactured, in Defendant Griffin's letter of March 22, 2005, in paragraph 3 of Exhibit 17. But he changed position in his affidavit of 10/9/07 in Exhibit 32.

Thus, the Court should Deny Defendants' Motion to Dismiss.

Director Bovard suppressed her secret exculpatory intention by covering up her object of preventing and obstructing Plaintiff's right to judicial review. She concluded her letter of March 4, 1996 in Exhibit 8 by the phrase, "If your name is removed from the register." She meant to convey that, "If" Plaintiff's "name is removed from the register," became of her threat of the "strategic mooting" of the March 4, 1996, Plaintiff could only be made whole if the abeyance of the "investigation" in abeyance was reversed by a change of status action notice. A letter of

10

Plaintiff's "intent" would not have made any difference in gaining the hearing that he was requesting. A request not to have his name "removed" by itself would have been insufficient to insure the continuance of the "strategic mooting" of the "removal" of his name.

As posited by the OED Director in Defendants' Exhibit 8, without any doubt, Director Bovard unilaterally and maliciously intended to coerce Plaintiff into silence by obstruction of his right to a hearing and access to judicial review, all of which have caused him to change his position to his detriment. She coerced Plaintiff to surrender his right to practice in the Trademark Office to selfishly protect her from the payment of damages, fees and costs by concealing her fraudulent, retroactive and secret "removal" of Plaintiff from the "register" while pretending to delay Plaintiff's cause of action for administrative review until she left the PTO behind for Defendant Moatz to inherit her mistakes.

This has retroactively caused, is causing, and will cause irreparable injury to the Plaintiff in the future, as described heretofore  Therefore, the lack of a preliminary injunction will irreparably injure Plaintiff's privileges and immunities as a professional attorney and official who is authorized to institute marriages involving pastoral and religious counseling, and to earn a living as a professional in the state of New York, according to his religious beliefs and the participants' religious beliefs (albeit, he is also authorized and privileged to make his living in his profession, and to hold himself out as an attorney, a trademark attorney, a patent attorney and an intellectual property law attorney in Maryland and the District of Columbia, as well as the District Courts of the Eastern and Southern Districts of New York, the CAFC and the Supreme Court of the United States – also the U.S. Tax Court).

He is also authorized to earn his living as a contractor by examining PCT applications forwarded to him by a contract with the Defendants. Since the Defendants have ignored these

issues and the truth of the facts involved, the Court can assume that they are admitted by the Defendants as long as they remain unanswered by them. And for these reasons the Defendants' Motions to Dismiss and for Summary Judgment should be denied, and Plaintiff's Motion for a Preliminary Injunction should be granted.

Still further, Defendants have ignored Plaintiff's claim of vague and arbitrary statutes 35 U.S.C. 2 (b)(2)(D), 6 and 32, and have functionally conceded this argument by failing to respond. Hopkins v. Women's Div., General Bd. Of Global Ministries, 238 F. Supp. 2d 174m 178 (D.D.C, 2002) (citing FDIC V. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997).

This aspect of Plaintiff's case is relevant for purposes of a permanent injunction on the merits. To this end, Plaintiff claims the cited statutes are unconstitutional because of the vagueness and the impossibility of using them rationally to do what the Congress intended, or, in fact, to blend them consistently with the compelling public purposes of the First Amendment; The Patent and Copyright Clauses of Article I, Section 8, Cl. 8; and 35 U.S.C. 101. See Parker v. Chakrabarty, 477 U.S. 303 (1980).

Still further to this end, all three separate statutes individually and severally require the proper authorization of Congress under Art. II, Section 2, cl. 2, which is lacking, and also consistency with Articles I and IV, liberty, property and states rights under the First, Fourth, Fifth and Tenth Amendments; and intellectual property rights under 35 U.S.C. 101. Authorization under 35 U.S.C. 3 (b), is insufficient. See Aharonian v. Carlos Gutierrez, Civil Action No. 07-1224 (JR) under the APA.

This case can be distinguished form Weiss v. United States, 510 U.S. 163 (1994), since that was an Article II "lack of authority case" decided on the basis of the long tradition of military judges, and their special role in national defense, whereas, this case has no such

limitations. See <u>Morrison v. Olsen</u>, 487 U.S. 654, 670 (1988); <u>Buckley v. Valeo</u>, 424 U.S. 1, 132 (1976), and Art. II, Section 2. By referring to the Constitution itself, for purposes of appointment, it very clearly divides all its officers into two classes. <u>United States v. Germaine</u>, 99 U.S. 508, 509 (1879), and though Congress has broad power to create federal offices and assign duties to them, see <u>Myers v. United States</u>, 272 U.S. 52, 128-129 (1926), it *may not*, even with the President's assent, disregard the Constitutions' distinction between *principal* and *inferior* officers. It may not, in particular, dispense with the <u>precise</u> process of *appointment* required for *principal* officers, whether directly or "by indirection," <u>Springer v. Philippine Islands</u>, 272 U.S. 189, 202 (1928).

As stated in Justice Scalia's concurrence in the Court's holding and with Justice Souter's opinion in <u>Weiss</u>, *Id.,* the issues are complex and, "they should be resolved only after full briefing and argument." Plaintiff also believes that this issue should be decided on the merits at trial for a Permanent Injunction after the requested Preliminary Injunction has been granted and Defendants' Motion to Dismiss has been denied.

The *Appointments* Clause requires each question to be answered in the negative. "The Constitution, for purposes of appointment, very clearly divides all its Patent and Trademark officers into two classes, <u>United States v. Germaine</u>, 99 U.S. 508, 509 (1879), and though Congress has broad power to create federal offices and assign duties to them under 35 U.S.C 3 (b), see <u>Myers v. United States</u>, 272 U.S. 52, 128-129 (1926), it may not, even with the President's assent, or the Commissioner of Commerce's assent, disregard the Constitution's distinction between principal and inferior officers in the Patent and Trademark Office. Any decision to dispense with presidential appointment and Senate confirmation is Congress's to make, not the President's, and Congress' authority is limited to assigning the appointing power

13

to the highly accountable President or heads of federal departments, e.g., the Secretary of Commerce, or where appropriate, to the courts of law. But any decision to dispense with presidential appointment and Senate confirmation is Congress's to make, not the President's. Thus, the President may not appoint Defendant Dudas without Congress's assent, and Defendant Dudas, not having the authority of his appointment from Congress but from an inferior officer appointed by the President, he may not appoint inferior officers because he is without authority to do so from Congress, at least since the 1999 patent reform measures.

BPIA judges under 35 U.S.C. 6 are appointed by Defendant Dudas. However, such administrative officers must be appointed by a cabinet level official. Buckley v. Valeo, 424 U.S. 1, 126 (1976); and Springer v. Philippine Islands, 277 U.S., at 128-129; and Schoemaker v. United States, 147 U.S. 282 (1893).

BPIA judges have "significant authority." In that they compare well with judges requiring appointment by a cabinet level officer, such as the Secretary of Commerce, rather than Defendant Dudas. Freytag v. Commissioner, 501 U.S. 868, 880, 878 (1991); and Morrison v. Olson, 487 U.S. 654M 671-73 (1988).

BPIA judges are not mere "aids" to Defendant Dudas or the Commissioner of Commerce. They are officers of "established law." They are not mere adjuncts or advisors to another set of adjudicators as in Freytag, Id., Rather they are full members of the Board. Their powers include the ability to run trials, take evidence, rule on admissibility and compel compliance with discovery orders. See C.F.R. 41.125 (Board's power on motions), 41.150 – 41.151 (Board's power to issue sanctions and order discovery), 41.152 (making applicable the Federal Rules of Evidence, with the powers of district courts being lodged in the Board).

14

A panel of three administrative patent judges may sit as the BPAI, see 35 U.S.C. 6 (b), and is authorized by law to render final decisions for the PTO. Indeed, in interference cases, the statute expressly states that any BPAI decision adverse to an applicant, such as Plaintiff in his pending applications, shall constitute the "final refusal" by the Patent ad Trademark Office as to the claims involved. 35 U.S.C. 135. The finality of the Board's decisions in *ex parte* and *inter parte* appeals, provides a right of appeal from any decision of the Board to the Article III courts. See, *e.g.,* 35 U.S.C. 141, 145, and "Publication of Opinions and binding Precedent." The Board's authority is an "independent grant" of statutory authority adjudicatory power. Animal Legal Defense Fund v. Quigg, 932F. 2d. 920, 929 (Fed. Cir.1991).

Defendant Dudas is not the President or a court of law, and he is not a "Head of Department," or the Secretary of Commerce, who is. A "Head of Department" for purposes of the Appointments Clause is confined "to executive divisions like the Cabinet-level departments." Defendant Dudas is an "*Under Secretary* of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. 35 U.S.C. 3(a). He is subject to the policy direction of the Secretary of Commerce. 35 U.S.C. 3 (a)(2)(A), and is subject to the oversight of the Secretary of Commerce. The Under Secretary of Commerce is, thus, not a constitutionally acceptable appointing authority for officers of the United States like administrative judges in the PTO. Indeed, until seven years ago, on March 29, 2000, when hasty legislation took effect establishing a new appointing process, the administrative judges appointed by Defendant Dudas were appointed by the Secretary of Commerce.

Rather than allowing Plaintiff access to judicial review, by allowing him to go through with the long appeal process to the Commissioner or the BPAI, Defendants began a continuing process of obstruction of justice and access to judicial review for Plaintiff's legal claim of *prior*

15

*restraint* under the Patent Laws mentioned above. To this end, Defendant Moatz' predecessor

Bovard, deliberately and intentionally after careful review, and acting as an attorney and Director

of OED, either alone or as directed by Defendant Moatz and/or Defendant Dudas because of the

lack of authority in the BPAI, chose to obstruct access to justice, by by-passing the applicable

patent laws, and by a clearly erroneous interpretation of the law and without authority. She

chose to secretly act as a grand jury, investigator, prosecutor, judge and jury to convict Plaintiff

without notice to Plaintiff. Plaintiff was deprived of a hearing or due process, by finding as a

fact that he was "disabled" by a disability having no basis in fact.

In fact, he did not have a disability, just as Defendants now inconsistently claim as a

disputed fact.    And Defendants failed to give full faith and credit to what the Maryland Court

held under Article IV, 1738 of the Judicial Code, the APA, or 28 U.S.C. 1983. The Court held,

by a judgment in Maryland in favor of the Plaintiff, and clearly established as a fact, that

Plaintiff was "inactive" in order to avoid fees for active practice for a living, while still retaining

the right for *pro bono* practice, with a right of reinstatement without any showing of fitness, as

shown by the Court's Order in Exhibit 22 B, 377 Md. 235 (2003).  See Ruffin, *Id.,* 369 Md. 238,

252; 798 A.2d 1139, 1147 (2002).

No investigation was made.  Exhibits 8 and 33 [7].  In accordance with PTO regulations,

Director Bovard, and Defendant Moatz were responsible for investigating allegations concerning

Plaintiff's alleged "disability," or any other allegation, whether or not those allegations were

true, or even if they had any basis in fact or not, as long as he was registered on the roster of

attorneys, held himself out as a patent attorney subject to punishment under 35 U.S.C 32 and 33,

or an investigation was held in abeyance, even though they were not authorized by Congress to

do so in compliance with Articles I, Sec. 8, cl. 8, IV and II, Section 2, Cl.2, and the 1st, 4th, 5th

and 20th Amendments, and 35 U.S.C. 101. See also 37 C.F.R. 10.131 (a). When Director

Bovard and Moatz were supposed to conduct their unauthorized prosecutorial and judicial

functions, accordingly to their clearly erroneous interpretation of the law, they were supposed to

rely on their investigation of Plaintiff. And to that end they were then and only then, and not

until then, supposed to require him to report back to them. That was mandatory, because until

then they were not supposed to search for unprivileged knowledge of rule violations or

disabilities. 37 C.F.R. 10.24 (a), 10.13 (b). But then, after the investigation was completed,

Directors Bovard and Moatz were obliged to convene the PTO's Committee on Discipline (the

"Committee") if they believed in good faith a rule violation had occurred. *Id.* 10.132 (a).

The Committee was supposed to be comprised of at least three PTO staff attorneys

appointed by Defendant Dudas, although he was not authorized by Congress to make such

appointments. *Id.*, 10.3 (a). It lacked authority from Congress to make probable cause findings

of fact upon which Defendant Dudas was supposed to initiate a formal disciplinary proceeding

by filing a complaint against Plaintiff, and by referring the matter to an administrative judge,

who also was without authority from Congress, and although the same was necessary, because

that judge was supposed to be a trial judge with "significant authority" to make a final

determination of guilt or innocence, *Id.*, 10.132 (b), and that was appealable to this Court.

The judge was supposed to have more than mere ministerial duties under 35 U.S.C. 6.

Indeed, he was supposed to have the necessary ability to run a trial, take evidence, rule on

admissibility, and compel compliance with discovery orders, just like any district court judge or

magistrate under Article III. See 37 C.F.R. 41.125 (Board' power to rule on motions); 41.150 –

151 (Board's power to issue sanctions and order discovery); 41.152 (making applicable he

Federal Rules of evidence, with the powers of district courts being lodged in the Board).

Obviously, the Defendants were tempted, ultimately succumbed to suppressing and obstructing Plaintiff's access to the Board and the Court's by delay. This selfish delay was clearly by an erroneous interpretation of the law; by overreaching, by unsupervised discretion; by arbitrary and capricious action without authority under Article II, Section 2, cl.2; and simply broke the law because Defendants felt unable to apply the applicable laws, which are vague and indefinite, including, 35 U.S.C. 2 (b)(2)(D), 6 and 32.

To that end, by *prior restraint* they deprived Plaintiff, *inter alia,* of his significant constitutional rights to free speech, press and religion; his due process and property rights; and his privileges and immunities, without limitation thereto. He also had significant civil rights that were invaded, and he was discriminated against under 28 U.S.C. 1983, the APA, disability law, etc., as described heretofore. In this connection also, Defendants refused to reply to Plaintiff's FOI and EEO requests, and refused to give him the reasonable accommodations that he needed and asked for to take the Patent Office examination for CLE or other mere academic purposes. To this end, for example, he asked for an enlarged print MPEP, and repeated access to his past exams and others he did not take, which request is still not fulfilled by their opening of only the October 2003 and October 2002 exam and answers to access on line. See attached OED on-line publication dated 1/3/2008 (last modified 05/11/2006). According to that notice, Plaintiff hereby asks for a copy of the July 2007 exam for a fee of $30, which he requests that the Defendants charge to applicant's deposit account number 033331(customer number 19001).

In In re Garner, Slip Op. 2007 – 1221 (Fed. Cir., Dec. 5, 2007, the BPAI judge declared an interference accompanied by an order to prove why the junior party should "prevail on priority" under 37 C.F.R. 41.202(d)(2). Under the rule, "[n]ew evidence in support of priority will not be admitted except on a showing of good cause." In that case the BPAI excluded

18

additional documents as "new evidence" that should have been submitted earlier.  But on appeal

the CAFC granted deference to the PTO in interpreting its own regulations, but still found the

PTO's interpretation erroneous.  The CAFC took issue with the evidentiary ruling – instead of

holding that under Rule 202(a)(5), the specifications are automatically part of the evidence to be

considered.

This Court, can likewise give deference to the PTO, but can still take issue with them,

and can overrule the Defendants, *inter alia*, for their refusal to give the Maryland Order in favor

of Plaintiff the effect that it had in Maryland by finding, *inter alia*, and without limitation

thereto, that the Defendants' interpretation of the applicable statutes, including, for example, the

full faith and credit law, e.g., under Article IV, and 1738 the judiciary law 28 U.S.C, were clearly

erroneous.

Likewise, the evidence submitted in Exhibit 3 [7] is new evidence not part of the record,

and Plaintiff objects to its introduction.  Plaintiff also moves to exclude it from the present record

as immaterial and irrelevant and not timely filed.

In view of the introduction of this untimely filed new evidence, it would be manifestly

unjust to Dismiss Plaintiff's request for Preliminary Injunction as untimely, as Defendants allege.

In this connection, it was impossible to file this case sooner because the basis for Defendants

case so heavily relies on such new evidence that was not available to Plaintiff prior to 11/16/07

when Defendants filed their objections [7] with Exhibits 1-33.  It was impossible for Plaintiff to

know of such evidence until that date, including, e.g., without limitation, Exhibits 3, 8, 17, 31, 32

and 33, which significantly impact the irreparable harm to Plaintiff caused by the Defendants.

This evidence shows the long slogging progress of Defendants' obstruction of justice by

suppressing and maliciously delaying Plaintiff's access to this Court on the merits in a final

19

hearing, culminating in their Motion to Dismiss. The intent is to increase the irreparable harm

beyond the point where the reasonable accommodations approved will suffice to allow Plaintiff

to continue his career. His physical limitations and disabilities from age prevent him from

adequately taking the Patent Office exam for CLE or any other purpose, and in filing suit sooner.

Plaintiff was not allowed to file sooner because Defendants because made Plaintiff spend

increasing and never ending time and energy accumulating the ever increasing and never ending

requirements of Defendants for medical and/or other evidence, which requirements were

illegitimately made to delay and suppress Plaintiff's access to judicial review, and to increase the

time in which their censoring of Plaintiff's speech, press and religious expression persisted and

remained in effect. Those requirements effectively increased the irreparable damage to Plaintiff

from Defendants' cover-up and suppression of their incriminating evidence by the refusal to act

on his Petitions for Review on 7/11/06 and 5/21/07, and other actions, and it was impossible for

Plaintiff to file his case sooner because of the same. The lack of those accommodations were

placed in Plaintiff's path to resolving his significant First Amendment and other legal claims as

roadblocks that are impossible to overcome, since they are necessary to compensate for

Plaintiff's limitations and disabilities of his age-related life functions of seeing, hearing,

breathing, circulating blood and excreting, and their effect increases the kind, extent and duration

of the discrimination, embarrassment, and ridicule Plaintiff is forced to suffer against Plaintiff's

religion, speech, press, property and privileges and immunities because of his age and

Defendants discrimination against Plaintiff because of his age.

Significantly, Plaintiff's efforts to discover the suppressed incriminating evidence that

has only now been revealed were thwarted by Defendants' refusals and delay in supplying what

Plaintiff timely asked for, was entitled to find out under statute by his EEO and FOI requests,

which are still pending, but that were unanswered or rejected less than 30 days before Plaintiff

filed this case. Plaintiff is and will be irreparably and permanently injured by Defendants' *prior*

*restraint* unless Defendants' Motion to Dismiss is Denied, and Plaintiff's Motion for Preliminary

Injunction is granted. And his irreparable injuries will be exacerbated and Plaintiff's life will be

threatened if the injunctions he requests are not granted due to the discrimination, embarrassment

and ridicule he now faces and is being forced needlessly to suffer. Such injunctions will in no

way cause any damage to the Defendants or the public because the damage suffered is strictly

personal and unique to the Plaintiff, although all other attorneys in his age group will likewise

suffer irreparable injury without an injunction under comparable conditions of *prior restraint*.

Indeed, Defendants admit that Plaintiff's 10/26/07 complaint, includes timely complaints,

including those filed before, and/or on or, after August 27, 2007. And otherwise their allegations

of an untimely filing are very much in dispute because Plaintiff's review of his July 16th and 17th

2007 examination was not completed, nor did it become final until October 4, 2007, when

Plaintiff's review and requests for correction of Defendants' incorrect notice of August 22, 2007

was made final. Plaintiff's requests for evidence and for correction of the August 22, 2007

notice, and incorporated by reference in his 10/26/07 complaint from which the alleged critical

date of August 27, 2007 was derived, pointed out that the notice of August 22, 2007 was *not*

*correct* and not a final decision by Defendants on August 22, 2007. It is admitted, and it is

undisputed, as Plaintiff correctly pointed out to Defendants after August 27, 2007, that the notice

on August 22, 2007 was not a final decision, because it was not for the exam he took on July 16th

and 17th. The notice of August 22, 2007 was for an examination only on July 16, 2007, not July

16th and 17th which were the dates Plaintiff took his exam. Also, the notice of August 22, 2007

admittedly was misidentified with a number different from the ID on the exam Plaintiff took on

July 16th and 17th. That changed the *critical* 30 day period from Defendants' non-final decision on August 22, 2007 to the actual date of their final decision, which was between August 27, 2007 and the filing date of September 26, 2007 or thereafter.

To this end, Plaintiff's filing on September 26, 2007 was within the 30 day period before Plaintiff's filing on September 26, 2007. The date of the Defendants' final decision was admittedly changed from August 22, 2007, to a date subsequent to August 27, 2007, as shown by the affidavit in Exhibit 31 [7] in Defendants' filing of October 16, 2007. That affidavit admittedly moved the date of Defendants' "final decision" to a date after September 27, 2007, even if the critical date is calculated only from the date of Plaintiff's filing on September 26, 2007, because the Defendants' secret suppression of incriminating evidence and obstruction of justice only came fully to light in their filing of October 16,2007 in their Exhibits [7].

That incriminating evidence was kept secret, and thus showed the fraudulent and inequitable tampering of the ID and removal of Plaintiff from the register.

Indeed, the Exhibits that showed the secret retroactive removal of Plaintiff from the register at some still unidentified time in or after 1996, and the suppression and obstruction of justice connected with that removal. The incrementing new evidence that changed the critical date of Defendants' final decision began to be revealed on October 4, 2007, when Plaintiff reviewed his July 16th and 17th exam, and found how the tampering with his ID and his removal had been accomplished secretly without constitutionally sufficient notice to Plaintiff or due process, and how the constitutionally suspect and illegal *prior restraint* was initiated retroactively back to March 4, 1996 and was shown to be void in law and by the facts.

The October 4th revelation of new incriminating evidence was the first of much more new incriminating evidence that was revealed to Plaintiff after August 27, 2007. That new evidence

not available before August 27, 2007, moved the critical date of the Defendants' final decision
from August 22, 2007 to after August 27, 2007. It moved the critical date required in law and
fact to less than 30 days before Plaintiff's filing on September 26, 2007, because of the secret
removal and manipulation of Plaintiff's registration, identity and ID number, and the retroactive
*prior restraint* of his speech, press and religion, and the discrimination against him because of
his age going back to March 4, 1996. Also, Plaintiff's EEO and FOI requests were not timely
made in fact, or were rejected less than 30 days before Plaintiff's filing on September 26, 2007.

And even with or without the admission of Defendants on page 21 of their Opposition [7]
on October 16, 2007, that the Plaintiff's petition on July 12, 2007 was timely and within the
critical time period required by PTO regulations, jurisdiction under the Patent Laws, civil rights
law, disability law, constitutional law, or other forfeiture or statutory law, and with or without
the necessity of finding that the actions of Plaintiff were timely, the Court can toll its time
limitation and filing rules because they are not jurisdictional.

Moreover, the Court can independently find jurisdiction under the First Amendment to
grant Plaintiff a Preliminary Injunction for his significant First Amendment claims against the
Defendants' *prior restraint.* And it is obvious that Plaintiff is likely to earn the favor of the
Court for, and for which he is likely to prevail, when the merits are finally heard, due to the
balancing of the necessary factors for his Injunctions, and the significant merit of his case,
including the lack of injury to the Defendants and the public by the granting of the requested
injunctions, so as to persuade the Court to Deny Defendants' Motion to Dismiss, and to award
Plaintiff damages for his irreparable injuries that are and will be caused to Plaintiff if the
Injunctions are not granted.

23

Still further, Defendants never recognized the Plaintiff's legal claim under the precise process required by the *Appointments* clause. Therefore, their Motion to Dismiss should be denied on that basis. Also, it should be denied because they have never acknowledged Plaintiff's complaint as to the vague and arbitrary statutes that Defendants relied on to "remove" Plaintiff's privilege and immunity under Article IV without authority from Congress, but instead based upon their own biased self-interest and clearly erroneous interpretation of the relevant and appropriate statutes.

Defendants also failed to appreciate the fact that Defendants are confused by the Plaintiff's request to preserve the *status quo*. Plaintiff attributes this to the Defendants' attempt to conflate Plaintiff's Claims for relief based on Plaintiff's serious attempts to cooperate with the Defendants and their attorneys in achieving a return to the *status quo*, because this will not injure the Defendants or the Public. And the requested Preliminary Injunction would relieve Plaintiff's irreparable injuries. On the other hand, if the Preliminary Injunction is denied, Plaintiff's well pleaded legal claim has standing. Also, the Court has jurisdiction, and Plaintiff is likely to prevail on the merits, although the facts as to the "extent" of the irreparable injury and the recoverable damages are in dispute. See the original sealed Opposition by Defendants to Plaintiff's claim for Preliminary Injunction.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101NewHampshireAve.,NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    1/4/08

24

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
     )
        Plaintiff *Pro Se*     )
     )
v.     )
     )     CASE  07-cv-01719 (RWR)
JON DUDAS, et al.,     )
     )
        Defendants     )
_____ )

## ORDER

UPON CONSIDERATION of Plaintiff's Motion in favor of Plaintiff for the tolling of the critical timing date of his Complaint at least to October 16, 2007, the grounds stated there for, in favor of Plaintiff, and the entire record herein, it is this _____ day of _____, 2008, hereby

ORDERED that Plaintiff's Motion should be and it hereby is Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For Summary Judgment, should be and it hereby is Denied.

_____
UNITED STATES DISTRICT JUDGE

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

5

*Leave to file under seal, Denied.*
*WWRoberts, U.S.D.J. 2-22-08*

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

**RECEIVED**

JAN - 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

CORNELL D.M. JUDGE CORNISH,          )
                                     )
                Plaintiff *Pro Se*   )
                                     )
v.                                   )       CASE  07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.,                   )
                                     )
                Defendants           )
_____)

## NOTICE OF FILING

Plaintiff hereby notifies the Court and Defendants of the filing of the accompanying: 1)

Answer to Defendants' Motion for an Enlargement of Time and Memorandum In Support

Thereof; 2) Continuation of Plaintiff's Motion to Deny Defendants' Motion to Dismiss Or, in the

Alternative, Plaintiff's Motion to Deny Defendants' Motion For Summary Judgment; 2)

Supporting Memorandum; 3) Statement of Material Facts; and 4) Request to file all the

attachments under seal, noting that they are appropriately redacted for publication, or not in any

event warranting redacting under Local Civ. R. 5.4, should the Court wish to publish them, and

so, deem them published.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 1/4/08

1

CASE  07-cv-01719 (RWR)


CERTIFICATE OF SERVICE


I HEREBY CERTIFY that service of the foregoing Plaintiff's Unopposed Motion for

Enlargement of Time, and Memorandum in Support, and in Support of Plaintiff's Motion under

Rule 12 To 'Defer Issues and Controversies that are not ripe for determination have been hand

delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780


on this 4th day of January, 2008.

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 1/4/08

2