UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,        )
                                   )
                Plaintiff *Pro Se*  )
        v.                         )
                                   )        CASE  07-cv-01719 (RWR)
                                   )
JON DUDAS, et al.                  )
                                   )
                Defendants         )
_____)

**Motion For A Pre-Enforcement Preliminary Injunction Under Local Rule LCvR 65.1
(c), And An Enlargement Of Time Until February 28, 2008, To Seek And Obtain Leave Of
The Court For An Oral Hearing And A Call By The Court For A Response By Defendants
To This Motion Before The Court Rules On Defendants' Dispositive Motions, And To Call
For A Response From Defendants To The Particular Motions Of Plaintiff Now Pending
And That Remain Un-Responded To By Defendant**

As Defendants admit on page 2 of their 1/30/2008 Motion for a Protective Order without

a request by Plaintiff, "It is axiomatic that no petitioner or person shall ever be denied his right to

the processes of the court." In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979).  This

includes access for a motion like this one for an oral hearing concerning bias, discrimination,

interference, infringement, tampering with ID's and secret removals of virtual records, failures to

provide a closing letter for investigations, negligence, damages, conflict of interest, failure to

provide reasonable accommodations, a certified record, answers to discovery requests, failures to

satisfy FOIA and EEO requests, *prior restraint,* and leave to call for a pre-enforcement

Preliminary Injunction to enjoin Defendants' *prior restraints* in their policies, limited or other

failures to grant recognitions or alternatives, prohibitions and the Order of August 21, 2007

imposing *prior restraint* on Plaintiff by their "533 rulemaking." That and other *prior restraints,*

*policies, limitations, prohibitions and Orders* by the Defendants are directed to enforcement of



1

*prior restraint* against expressions and claims by applicants in patents, patent applications and *Continuation Applications* for utility, plant and design patents. The *prior restraints* limit Plaintiff's expressions, publications, filings, records, recognitions, claims.

Specifically, Defendants' Order of August 21, 2007 limits by *prior restraint* the number of Continuation Applications to two voluntary divisional continuations, and restricts the number of claims by *prior restraint* to five independent and twenty-five dependent claims, whereas there were no prior such limits or *prior restraints.* 72 Fed. Reg. No. 161 on August 21, 2007, entitled "Changes to Practice for Continuing Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule (to be codified at 37 CFR Part 1 and sometimes collectively referred to as Revised Rules.

This is a Motion for a Preliminary and Permanent Injunction under the APA to enjoin Defendants from *prior restraint* of Plaintiff's expressions and claims in his patents, trademarks, and applications both original and *Continuation Applications* as provided for by Local Rule LCvR 65.1 (c) before a decision on Defendants' Motion to Dismiss, and by enlargement of time to reply, whereby all parties will be given a reasonable time under Rule 56 to present all material made pertinent to a motion for summary judgment by Defendants' Motion of a Protective Order.

This includes a request for leave to seek and obtain an oral hearing and a call upon the Defendants in an oral hearing for a reply to this Motion, and a more responsive pleading under Rule 12 to Plaintiff's 2/08/08 Motion and Memorandum To Deny Defendants' Motion For A Protective Order and for A Stay To Allow Plaintiff To Make An Interlocutory Appeal of the granting of such a Protective Order.

Plaintiff's Motion for Preliminary Injunction, is a *per se* call for leave to ask for a Response under Rule 12 to a pending unanswered Motion, including a response to Plaintiff's pre-

2

enforcement, legal claims for a Preliminary Injunction to enjoin Defendants as aforesaid under

the APA by incorporation by reference herein and by judicial notice with the duplicate Motion

for Preliminary Injunction granted to the plaintiffs' identical claim under the APA against the

same first named Defendants as in this case, referred to herein as the combined cases of

SmithKline Beecaham Corporation v. Dudas, No. 1:07cv1008; and Tafis v. Dudas, No.

1:07cv846 (JCC/TRJ) in the District Court of the Eastern District of Virginia (Alexandria

Division).

In the plaintiffs' combined claim in that case the requested Preliminary Injunction was

granted so it is a non-frivolous basis for a request for an oral hearing and Preliminary Injunction

in this case. This case in addition to the same Motion for a Preliminary Injunction as made in

that combined case in Virginia, makes a legal claim for harm to Plaintiff that will without doubt

be significant, incalculable and not susceptible to monetary compensation, and in addition

Plaintiff claims irreparable damages, fees, expenses, attorneys fees, and costs, as well as other

relief to which the court may find just in this case under the First, Second, Third, Fourth, Fifth

and Tenth Amendments, against the Defendants' for *prior restraint* of his expressions in patents,

trademarks, and applications, including especially continuation applications, continuation-in-part

applications, and claims in those applications, reissue applications and continuing prosecution

applications that Defendants intend to bar under their "553 rulemaking."

Additionally, Plaintiff in this case makes legal claims for relief for injury due to negligence,

discrimination, failures under the FOIA, EEO, Section 504 of the Rehabilitation Act, and failure

to provide reasonable accommodations for medically certified life function disabilities, which all

agree were not provided as requested, and as were even suggested by the Defendants in

connection with a zoom enlarged MPEP, and reconsideration and reversal of the Motions of

3

Plaintiff that were denied. Reconsideration of Plaintiff's Motion for the help of the Lawyer Counseling Panel under Local Rules LCvR 83.20 is requested on the basis of a request for an affidavit from the Defendants' lawyers in connection with their personal knowledge of this matter.

The final "553 rulemaking" of Defendants are hereinafter referred to in connection with the Revised Rules that were to be effective November 1, 2008. These Revised Rules were supposed to have been implemented on November 1, 2007 at 72 Fed. Reg. No. 161, at 46716-46843, published on August 21, 2007, and were entitled "Changes to Practice for Continuing Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and Examination of Claims in Patent Applications; Final Rule" (to be codified at 37 CFR Part 1 and sometimes collectively referred to as Revised Rules by "53 rulemaking" or otherwise under the APA).

It is too plain and too well settled to be open to dispute that Plaintiff has a right of appeal by permission under Rule 5.1; enlargement of time under Rule 6 and 30; a stay under Rule 8; reopening, composition, modification or correction of the Record under Rule 10; the review or enforcement of agency Orders under rule 15 (albeit, the case cited by Defendants is inapposite since it was decided under the Tax Injunction Act that deprives the federal district courts of jurisdiction over any action to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law" 28 U.S.C. 1341). Plaintiff also has a right to ask for discovery under Rule 26; for the accommodation of the pages and appendices in patent cases like this one, which may be informally renumbered if necessary under Rule 32; a right in all cases to ask for the appointment of counsel, for lawyer assistance, and for the assistance of the Court in seeking and obtaining a more full response under local rules; and to ask for oral argument or approval by a

4

three judge panel because the dispositive issue of a Motion to Dismiss has recently been authoritatively decided, and because the request is not, therefore, frivolous under Rule 34 and local rules LCvR 7, LCvR 65.1(c) and/or LCvR 78.1.

Only Congress can suspend the right to challenge an unlawful detention of applicants right to access in court by a gag order, and Congress and the courts can protect and grant Plaintiff's pre-enforcement challenge to Defendants' *prior restraint* of his right and the right of every citizen and alien with global equality to be free of *prior restraint* and to a right to enjoin the Defendants from infringing their right to free speech, press, religion and petition in patents and *Continuation Applications* and for a Preliminary and Permanent Injunction under the First Amendment and the APA in connection with Defendants' policies and "533 rulemaking" Orders, including the cited "Revised Rules."

Plaintiff's Motion for a pre-enforcement Preliminary Injunction to enjoin Defendants from *prior restraint* based upon there unauthorized rule-making.

A proper form of relief in this action includes, but is not limited to, the following:

a. Issuing preliminary and permanent injunctions under 5 U.S.C. 703;

b. Issuing declaratory relief under 5 U.S.C. 703 and 28 U.S.C. 2201-2202;

c. Holding unlawful and setting aside the PTO's action (i.e., issuing a vacatur remedy) under 5 U.S.C. 706 (2); and

d. Compelling the PTO to perform its duty under 28 U.S.C. 1361.

The theoretical difference between [rulemaking] and [non-rulemaking] is clear. [A rule-The Defendants 1/30/08 dithyramb in support of their Motion for a pre-enforcement Protective Order included a perfunctory request on Page 2 that the Court add to their requests for an order of *prior restraint* to gag Plaintiff's access to the Court under the speech, press, religion and petition

5

provisions of the First Amendment. They cited a gag order against alien citizens of the Milky

Way Galaxy as precedent for gagging Plaintiff, a *pro se* citizen of the United States who

Defendants want "to seek and obtain leave of Court *prior* to filing any additional motions in this

proceeding" (emphasis added).

There is no exception under 522 (b) in this case because of impracticability, necessity, or the

public interest, or because the rules are interpretive, non-binding on the public and relate only to

employees such as examiners.

Thus according to 533 (c) the burden is on Defendants to furnish a concise and general

statement of the basis and purpose of their *prior restraint* and proof in Court as to why the same

is not unconstitutional under the First Amendment and their Revised Rules, "533 rulemaking,"

and Orders denying Plaintiff limited recognition, reasonable alternatives, such as waiving their

rules under CFR 11.3, refusing to give him a "closing letter" of all investigations, refusing

reasonable accommodations, and failing to address Plaintiff's EEO, FOIA and 504

Rehabilitation Act requests without discrimination because of his medically certified, age

related, life function disabilities; or without treating him with due process and equal protection

with all other attorney practitioners and agents who were not refused registration or suspended or

expelled under the present, prior rules, or the *status quo,* whereby he had unlimited rights to his

expressions in patents, trademarks and claims, including such claims as holding himself out as an

attorney, agent or firm, and unlimited rights to file and prosecute patent applications, including

parent and continuations, continuations-in-part, reissues, requests for continuing examination,

and continued prosecution applications, whether they be utility, plant or design applications with

one or an unlimited number of claims.

6

The history of the APA clearly requires the Defendants to analyze and consider all relevant matter presented, including the facts submitted in <u>response</u> to Defendants Griffin's March 22, 2005 letter and other requests or submissions and <u>requests</u> for reconsideration by Plaintiff. The required statements must not only relate to the data so presented but with reasonable fullness explain the actual basis and objectives of the rules and orders. This includes information necessary for recourse to further administrative and judicial review in order to provide a more rational basis and justification for the Defendants' choices.

There is great importance for the Defendants to give constitutionally sufficient notice of a right to a hearing and not to deprive the Plaintiff of access to such a hearing and judicial review. The burden is on the Defendants to prove that their prior restraint in not unconstitutional. <u>Freedman v. Maryland,</u> 380 U.S. 51 (1965). "Any restraint prior to judicial review must be limited to preservation of the *status quo* and for the shortest period compatible with sound judicial procedure." Not for an interminable length of time by "strategic mooting." And the burden is on the Defendants to prove that their *prior restraint* is unprotected by the Constitution, because there is a heavy presumption against the constitutional validity of *prior restraints* of expression. <u>Bantam Books v. Sullivan,</u> 372 U.S. 58, 70. P. 70.

The Defendants cannot dodge their obligation to give the Plaintiff constitutionally sufficient notice of their intent to publish or to fail to publish their Orders, policies and "533 rulemaking." This allows notice and time to publish and to comment, to seek judicial review or to answer the Defendants' rationale as a Plaintiff in court under their burden to provide prompt judicial review. This is an essential due process element and "533 rulemaking" process under the APA.

Among the cases that support this requirement are <u>Tabor v. Joint Board for Enrollment of Actuaries,</u> 556 F.2d 705 (D.C. Cir. 1977). In that case the "533 rulemaking" Order was

7

remanded because the Board established by the Secretary of Labor in accordance with the direction of Congress to permit only competent actuaries to service private pension plans failed to comply with the Administrative Procedure Act (APA) in adopting their regulations. In this case, not only did Congress fail to authorize the Secretary of Commerce to establish the Board of Appeals under 35 U.S.C. 6, as pointed out in H.R. 1908, and failing to authorize the OED under 35 U.S.C. 2 and 32, which is also operating as a *per se* a conflict of interest by using the same small number of personnel for admission and discipline, and which are, therefore, unauthorized by Congress, illegally and unconstitutionally constituted and employed under unconstitutional laws, but also, the Defendants and OED failed to follow the "533 rulemaking" requirements for their Orders, policies and rulemaking to implement their *prior restraint* of expressions protected under the First Amendment, including expressions of attorneys holding themselves out as *pro se* attorney practitioners in both the Trademark Office and the Patent Office, and filing and prosecuting applications as agents for co-inventors who may or may not refuse to join in an application, continuations, continuations-in-part, reissues, requests for continued examination, or continued prosecution applications, as assignees, as court appointed administrators for dead and unavailable inventors, and as agents . Revised Rules

The court found in Tabor, *Id.* that the regulatory standards for experienced actuaries are substantially more rigorous than those set out in the statute. In fact, the regulatory requirements for experienced actuaries are substantially the same as those statutorily mandated for the new applicant group. They were also different and applied differently to licensed actuaries on an *ad hoc* basis, and that was legally and constitutionally defective. Likewise, in the PTO licensed and experienced patent attorneys are differently and unequally treated on an unacceptable *ad hoc* basis by denial of due process and an opportunity for a hearing, and by secret removal from the

8

register of licensed attorneys without constitutionally sufficient notice, due process, probable

cause, or an opportunity for a hearing or judicial review. And the unsupervised *ad hoc* discretion

used is administered without Congressional authorization by a small number of Defendants

whose enrollment and discipline functions are clearly illegal because of a lack of independence

and separation between the personnel involved and their functions, and due to the inherent

conflict of interest that is caused thereby.

The Defendants *prior restraint* is applied arbitrarily, capriciously, irrationally and unequally

on an *ad hoc* basis without due process and constitutionally sufficient notice, and with unequal

access to appeals, hearings and judicial review. Some experienced and licensed attorneys, rather

than all of them, are intermittently, randomly, arbitrarily, capriciously and selectively

discriminated against without Congressional authorization by requiring them to re-pass a patent

office examination as the only criteria used for Defendants' discretion, where the pass/fail rate

for first time test takers can vary by up to only between about 30% to 40% or less, and the

pass/fail rate is stuck close to zero for non-white women and in favor young, white, healthy

males without alternatives or reasonable accommodations for medically certified age related

disabilities that are legion, and most often their refusal is denied, as it was in this case.

*See* also <u>SEC v. Chenery,</u> 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1942) (Chenery I): 332

L.Ed 194. 67 S.Ct. 1575, 91 L.Ed. 1995 (1946) (Chenery II); and <u>Kiro v. FCC.</u> 178 U.S. App.

D.C. 126, 130. 545 F.2d 204 (1976). In <u>Rodway v. United States Dept. of Agriculture,</u> 168 U.S.

App. D.C. 387, 514 F.2d 809 1975), a panel of the Court refused to affirm regulations not

accompanied by a appropriate APA statement rejecting the agency's contention that explanations

of agency officials submitted in affidavit form during litigation were an inadequate substitute.

The panel found "no reason to depart from the well-settled rule that litigation affidavits are an

9

unacceptable basis for appellate review of agency decision-making." At 395, 514 F.2d at 817. The case was remanded to the district court "with instructions to return it to the Secretary for a new rulemaking proceeding." *Id.* At 402, 514 F.2d at 824.  It is noted in this case, however, that the Court can remand it to the Congress, since Plaintiff has asked the Court to amend the list of Defendants to include the United States, because the Secretary of Commerce is the officer who is authorized to appoint the Defendants but does not do so, as pointed out in HR 1908, and because the authorization of the Defendants is unconstitutional.

No bulletin exists, no bulletin has been published, and no statement has been effectively given with reasonable time or due process in response to the Defendants' policy of unequal *prior restraint* that sets forth the standards and criteria for licensed practitioners, including *pro se* practitioners, seeking to practice in the Patent and Trademark Offices.  As a result of the Defendants failure to publish a contemporaneous statement of the basis and purpose of its *prior restraint,* that makes it practically impossible to file an intelligent petition for reconsideration. As a result, appellants lost a method of challenge less expensive and time-consuming than judicial review, and the Board lost an early opportunity to be apprised of and to correct any errors it might have made.  See generally 5 U.S.C. 553 (e).  "Each agency shall give an interested person the right to petition for repeal of a rule."  Plaintiff had no such effective right of petition in this case.

The court in <u>American Mining Congress v. Mine Safety & Health Administration,</u> 995 F.2d 1106 described a standard for deciding whether a rule is interpretive or substantive.  The Court's decisions have hinged on whether promulgation has had the "force of law" in distinguishing whether a rule is interpretive or substantive.  Also, the term "binding effect" has been used.  But substantive rulemaking must have a notice and comment period, following the APA guidelines

10

for enacting statutes. *See* State of Alaska v. DOT, 868 F.2d at 445 (quoting Community Nutrition Institute v. Young, 818 F.2d 943, 945-46 (D.C. Cir. 1987).

The Court ordinarily cannot order findings to be made in the absence of a statute 401 U.S. at 417. Hence, although aware that taking testimony of agency officials in the district court is generally to be avoided, citing United States v. Morgan, 313 U.S. 409 (1941), and that *post hoc* rationalizations are generally regarded as an inadequate basis for review, citing Chenery, *Id.*, the Court concluded that such a course was the "only way there can be effective judicial review." *Id.*, at 420, 91 S.Ct. at 825. Here, effective judicial review can be accomplished by enforcing the APA and the "533 rulemaking" process which mandates formal findings.

As in this case, "There is no indication here that Congress sought to limit or prohibit judicial review." *See* Parker v. Chakrabarty, *Id.,* and Citizens of Overton Park v. Volpe, 401 U.S. 401, 419 (1971, in which the Courts had law to apply and they applied it to limit the administrative agencies discretion. In the latter case the Court found that the Secretary's action was subject to judicial review pursuant to 701 of the APA without a requirement for *de novo* review by the Court, and the exemption for action "committed to agency discretion" did not apply as the Secretary did have "law to apply," rather than wide-ranging discretion. That case was remanded to the District Court for plenary review of the Secretary's decision, and in view of the lack of formal findings, the court may require the administrative official who participated in the decision to give testimony explaining their action or require the Secretary to make formal findings.

If the Court decides in this case that the Defendants have misapplied the law or exceeded their authority, the Court can remand this case to the Secretary of Commerce to make formal findings. 401 U.S. at 419, n. 33, 91 S.Ct. at 825. Alternately, the Court can remand the record to

the Defendants for a fuller statement without vacating the rules. 140 U.S. App. D.C. at 235-236,
462 F.2d at 850-51.

But in this case, if the rules are not vacated, the Defendants have shown that without a
Preliminary Injunction they will deny alternatives because of an inherent and destructive conflict
of interest present in the Defendants, including the Defendants Moatz and Griffin in the Office of
Enrollment and Discipline. Those Defendants mix the enrollment and discipline functions and
perform both functions themselves without judicial supervision or access, such that the system is
illegal, irrational and biased by inevitable prejudices of the Defendants. Thus, a Preliminary
Injunction is required to stop the resulting irreparable injury to the Plaintiff.

Or the Court could require the equal testing of all licensed attorneys to allow them to remain
active, such as a minority of states might decide to do. Or the Court could allow the Defendants
to agree to let all practitioners who have passed the exam practice on an equal basis without
requiring them to pass the Patent Office Exam again by requiring them to take CLE courses, as
all, if not most of the states already do. Still further, the Defendants could agree to allow a
waiver of the rules, or the granting to Plaintiff of a reasonable opportunity to demonstrate
competence by not withholding reasonable accommodations for medically certified life function
disabilities, including seeing, hearing, breathing, learning, blood circulating and excreting under
stress in a time limited atmosphere devoid of proper heat and light and without enlarged printed
test materials.

Plainly there is "law to apply" and thus the exemption for action "committed to agency
discretion" is inapplicable. But the existence of judicial review is only the start: the standard for
review must also be determined. For that we must look to 706 of the APA, 5 U.S.C. 706 (1964
ed. Supp. V), which provides that a "reviewing court shall...hold unlawful and set aside agency

12

action, findings, and conclusions found" not to meet six separate standards. In all cases agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. 706 (2), (A), (B), (C ), (D) (1964 ed. Supp. V). This is obviously the case here where the Defendants action has been "arbitrary, capricious, and an abuse of discretion, and not otherwise in accordance with law, because of violations of the First, Second, Third, Fourth, Fifth and Tenth Amendments, as has been pointed out in detail, and including the facial unconstitutionality of 35 U.S.C. 2 (b2)(D), 6 and 32.

In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by "substantial evidence," which is also obviously the case here.

Also, the reviewing Court is to engage in *de novo* review of the Defendants' action in certain narrow circumstances where there may be independent judicial fact-finding when issues that were not before the Defendants have been raised as in this proceeding that have occurred to enforce non-adjudicatory agency action in Plaintiff's applications S.N. 77/247,319, filed 08/04/2007 and S.N. 29/273,235, filed 02/26/2007.

In connection with Defendants' actions in this case that were clearly "533 rulemaking" actions to limit and censor by *prior restraint* Plaintiff's expressions, claims, and Continuations, including those in the cited applications and the Revised Rules, supporting "substantial-evidence" is lacking under 5 U.S.C. 553 (1964 ed. Sup. V), which was not in a public adjudicatory hearing, as no hearing of any kind has been given. *See* 5 U.S.C. 556, 557 (1964 ed. Supp. V). The proposed Revised Rules, for which pre-enforcement and/or post-enforcement review are both requested to be considered, retroactively changes the prior well-established, long-lasting *status quo,* and broad, constitutionally based freedom and "eligibility" with global

13

equality for Plaintiff's expressions, claims, and Continuations without *prior restraint. See*

Miltons's Areopagatica, 1644, where he warned against the dangers that "shall enjoin us to know

nothing but by statute!" and that shall be known only by "the narrow bridge of licensing." The

Court is bound to consider those dangers relative to the requirements of this case and in its

decisions on Defendants' Motion to dismiss and for a Protective Order.   And the burden is on

the Defendants to provide prompt judicial review and to prove that the pleadings, allegations,

expressions, claims and Continuations of Plaintiff are unprotected. Freedman v. Maryland, 380

U.S. 51 (1964), citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70. P. 57.

The Court is also asked to decide whether the Defendants, who have not been authorized by

Congress to censor Plaintiff by *prior restraint*, acted within the scope of their authority, which

they have not done. Schilling v. Rogers, 363 U.S. 666, 676 (1960). This determination naturally

begins with a delineation of the scope of their authority and discretion under the First

Amendment and the requirements of law requiring due process and notice of an opportunity for a

hearing.

Congress and the Constitution have specified only a small range of choices that the

Defendants can make. Also involved in this initial inquiry is a determination of whether on the

facts the Defendants' decisions can reasonably be said to be within that range. The Court must

consider whether the Defendants have properly construed their authority to disapprove of

Plaintiff's expressions, claims and Continuations where there are no feasible alternatives that

might be available or that have not been considered. It is rational to believe that Defendants did

not consider any alternatives, but it is not rational to believe that there are no alternatives

involving unique and difficult problems that can be considered, such as those mentioned above.

14

Defendants licensed Plaintiff to advertise his name as an attorney in the USPTO on November 5, 1958 and secretly and unconstitutionally revoked his license on or about August 28, 1996 without notice or any pr- or post-revocation hearing. Barry v. Barchi, 443 U.S. 55 (1979); Freedman v. Maryland, 380 U.S. 51 (1964); and Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988). Then threatened 1st Amendment rights on March 22, 2005 in Exhibit 17.

Defendants, or their predecessors, were not appointed with authority under Article II, Section 2, cl. 2, of the Constitution to preempt Article IV and the First, Fourth, Fifth and Tenth Amendments by *prior restraint* of the Plaintiff's advertisements, and his property, privilege and livelihood under his license as a attorney, by discretion alone without any pre- or post-revocation hearing. Indeed, Defendants act as speech police according to a speech code that has no statutory basis, pre-set basis for appeal or time-frame for judicial review, such as 35 U.S.C. 101, 102, 103,112, 2 (b)(2)(D), 32, 141, 142, 145, or the Patent Office Regulations. Instead, they use only their discretion and discrimination against clearly identified insular groups without any pre- or post-revocation hearings to irrationally require all attorneys not registered in the PTO to request reconsideration to take the Patent Office test without reasonable accommodations for their certified, life function, age related disabilities in order to advertise their name as an attorney in a trademark or patent application. That threatens and infringes 1st Amendment rights.

Their use of pure discretion not based on any statutory standard is not entitled to deference by this Court. It does not require this Court to make a word by word review of the Defendants discretionary editing, or to give wide deference of the Court to threats of, and infringement of 1st Amendment rights. That does not involve this Court's review of the Administrative Record in the Patent Office to enjoin infringement and threats of infringement of 1st Amendment rights.

15

The Defendants' *prior restraint* by discretion alone, is an irrational, unconstitutional violation of Plaintiff's Constitutional rights, and a clearly erroneous, overbroad, vague and ambiguous, unauthorized use of their discretionary powers to threaten 1st Amendment rights.

Thus, Plaintiff challenges the constitutionality of the Regulations and the evidentiary presumptions under which the Defendants threatened to revoke and revoked his license to advertise, and continue their *prior restraint* to censor Plaintiff's advertisements without pre- or post-revocation hearings. The March 22, 2005 letter threatened to infringe the 1st Amendment.

In addition to the irreparable injury to Plaintiff's reputation, the actual and potential loss of livelihood through revocation of his license to advertise as an attorney is aptly categorized as interference with a *property* right. Attorney Grievance Commission of Maryland v. Bear, Misc. Docket AG No. 32, Dec. 8, 2000 (CA Md), page14. Also, a threat to 1st Amendment rights.

In Barry v. Barchi, 433 U.S. 55 (1979), the Court held that the appellee had a protectable *property* interest in his license under state law sufficient to reverse revocation of his license by due process protections. That is sufficient to enjoin a threat to infringe the 1st Amendment.

In Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988), the Court held that there is a Constitutional right to protection from *prior restraint* to hold oneself out as an attorney under the Privileges and Immunities Clause of the United States Constitution, Art. IV, 2 cl. 2.

Defendant secretly revoked Plaintiff's license to advertise his name as an attorney in the USPTO by a secret, internal handwritten note by the Director of OED without any pre- or post revocation hearing on 8/28/96 without notice to the Plaintiff. Defendants' Exhibits 8 and 33 [7 and 24]. Defendants promised to protect Plaintiff's license without the limbo of *custodial legis* by a "strategic mooting" that didn't deprive him of a hearing. As a "consent decree" that would be in Plaintiff's favor, but it was a removal without a pre- or post-removal or notice to him.

16

As indicated by the OED Director's handwritten secret note on 8/28/96 in Exhibit 8 [7 and 24], revocation of Plaintiff's license was put into full force and effect by *prior restraint* without notice to Plaintiff. And Plaintiff didn't find out about that until 10/16/07 in Defendants' Answer [7].

The discrimination against Plaintiff irreparably injured Plaintiff's reputation and livelihood by *prior restraint* of his advertisements without authorization by Congress under Art. II, Sec. 2, cl. 2 or otherwise, e.g., under 35 U.S.C. 2 (b)(2)(D) or 32, and without probable cause or a pre- or post-revocation hearing under the PTO Regulations referred to herein. The injury became irreparable on February 26, 2007, when Plaintiff filed his patent application S.N. 29/273,235, not on March 22, 2005. The irreparable injury continued and is continuing in connection with that application and Plaintiff's trademark application S.N. 77/247.319, filed on 08/04/2007.

The basis of the discrimination was found in Defendants Griffin's letter of March 22, 2005 in Exhibit 17 [7 and 24], which stated on page 1, paragraph 3, Plaintiff was "removed from the roster of patent attorneys and agents in April 1996, after being placed on disability inactive status with the Maryland State bar." That was 9 years earlier and Plaintiff had not been informed of any such removal before that date. Moreover, the letter of March 4, 1996, was a waiver of any such removal to induce Plaintiff to change his position by a "strategic mooting" in his favor that waived an investigation of a complaint in 1996. Moreover, the Maryland State bar has no authority to place anyone on disability inactive status, so Defendant Griffin was asked to ratify or correct his letter because his letter did not acknowledge the waiver of any such removal on March 4, 1996 by the Director of OED in Exhibit 8, but he refused to do so until his affidavit was filed in this case on 10/16/07 and 12/20/07 [7 and 24].

17

Defendant Griffin's correction came 9 years in his Exhibit 32 [7 and 24], which was after the

March 4, 1996 waiver by OED Director Karen Bovard in favor of Plaintiff based upon a vague

and indefinite standard comprising only her overbroad, unsupervised discretion. She made a

deliberate, intentional "strategic mooting" of an investigation within her prosecutorial discretion

according to her apparent authority as the person in charge of OED in a signed, original letter in

writing to Plaintiff after careful review in her unsupervised prosecuting capacity without judicial

review or pre- or post-sanction hearings.

Defendant Griffin's March 22, 2005 letter in Exhibit 17 [7 and 24], was bound by his

conclusion, since his letter was not written by mistake, but after a careful review of the facts and

a deliberate, intentional course of action in "good faith" despite Defendant Griffin's clearly

erroneous statement concerning his speculations of the circumstances behind his unsupported

hearsay concerning an alleged "disability inactive status of Plaintiff with the Maryland State

bar." He intended to threaten Plaintiff with infringement of his First Amendment rights.

There was no correction of the discretionary threat of an investigation by the Director of

OED in 1996, because a waiver was beyond her discretionary authority despite a lack of a

finding of misconduct after careful review by her, Defendant Griffin and the Court of Appeals of

Maryland, whose Order of December 4, 1995, at the request of Plaintiff in Exhibits 4 and 5 [7

and 24], was in favor of Plaintiff. And Defendant Griffin  pointed to his deliberate, intentional

conclusion, which was not a mistake, after a careful review in writing signed by him, which

stated that "based upon the current record, you have not presented insufficient objective evidence

to show that you continue to possess legal qualifications necessary to render applicants for patent

valuable service." That was not a mistake because it was intended as a threat, like the March 4,

1996 threat of investigation by the Director of OED shown in Exhibit 8 [7 and 24].

18

The final step in the discrimination of Plaintiff came on October 4, 2007, which was the date of the final constitutionally sufficient notice to Plaintiff of Defendants' correction of their incorrect, constitutionally insufficient notice on August 22, 2007 in Exhibit 30 [7 and 24]. October 4, 2007, therefore, was the date of their final Decision of *prior restraint* and Defendants' discrimination of Plaintiff because of his undisputed, medically-certified, age related life function disabilities, and their failure to make reasonable accommodations for them.

October 4, 2007 is the date of their final Decision that Plaintiff must apply without a pre- or post-revocation hearing for re-examination to take the Patent Office examination without reasonable accommodations for his age-related life function disabilities. He can be refused permission under 37 C.F.R. 10.7 or 10.11 without a pre- or post-revocation hearing by discretion alone, and such permission can be revoked without a hearing or any statutory time limit for an appeal or any judicial review. Plaintiff was pre-approved to be reinstated to take and pass the Patent Office examination in 1958 before his license was revoked in 1996. From 1958 to 1996 he was presumed to comply with the regulations established under 35 C.F.R. 2 (b)(2)(D) and 32 with a spotless record, whereby he could advertise until his license was revoked. Thereupon passing the examination was irrationally held up as the sole and only means by which Plaintiff could advertise again without *prior restraint*.

That is the same filter irrationally used for all attorneys to determine their right to advertise as attorneys under Defendants' clearly erroneous interpretation of their Regulations. There are certainly other better and Constitutional ways, including a pre- or post-revocation hearing to rebut the presumption that advertisements by attorneys not registered in the PTO are constitutional without prior restraint.

19

Freedman v. Maryland, 380 U.S. 51 (1964), held that there is a heavy presumption against the constitutional validity of *prior restraints* of expression (Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70). The censor has the burden of proving that the expression is unprotected by the Constitution. Any restraint prior to judicial review must be limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure. The absence of procedures with adequate safeguards against undue inhibition of protected expression renders the statutory requirement of prior submission to censorship an invalid previous restraint. Likewise, the lack of any statutory or regulative standard even with a pre- or post-revocation hearing is presumed to be unconstitutional, which is the situation now in this case due to the Defendants' clearly erroneous interpretation of their Regulations and their authority to use their discretion *alone* to censor all Plaintiff's advertisements by *prior restraint*, and all those of all other attorneys not registered in the PTO or whose licenses have been revoked secretly without notice to the attorney or any opportunity for any pre- or post-removal hearings or judicial review.

To remove the *prior restraint* against Plaintiff, the Defendants irrationally, unreasonably, in an arbitrary, capricious and fanciful manner without authority that is clearly erroneous, place the burden on Plaintiff to pass an examination that he has already passed to prove his "good moral character and reputation" and "qualifications." The Defendant use their unbridled discretion to determine who is qualified to ask for reinstatement to take the Patent Office examination. In Gager, v. Ladd, 212 F.Supp. 671, 673 (D.D.C 1963), the Court held it could disturb the Commissioner's Decisions by determining whether the Commissioner had abused his discretion. In that case an applicant who had graduated from the United States Merchant Marine Academy, had six years of experience in patent and trademark work, and had worked on the prosecution of five or more applications devoting the greater part of his time to patent searching, was denied

permission to take the examination for failure to show that he was "qualified" to take the examination.  In Premysler v. Lehman, 71 Fed.2d 387 (1996) the Court also held that the Court had jurisdiction to determine whether the Commissioner abused his discretion in finding that the applicant for the Patent Office examination was unqualified to sit for the examination. Additionally, they investigated whether the PTO Regulations bind the public to new regulations that were not subject to notice and comment, such as were found in the cited Taflas v. Dudas, Case 1:07cv846 (JCC) (D.C. E.D.Va. 2007).

The Defendants put the burden on the applicants to be reinstated to take the examination to show that they could "render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office."  Still further, the Defendants used their discretion to refuse applicants to be reinstated to take the examination after having passed it once to deny them a pre- or post-removal hearing to t advertise for any purpose, including even " to promote and publish their  name as an attorney."

Their discretion was used to hold the taking and marking of the July examination completely under the control of the Defendants without any supervision. The passing the July Patent Office examination is the only consideration made to inform Defendants' overbroad discretion. The Defendants use their sole, unsupervised, and overbroad discretion to set the passing grade for the examination without any means for any correction or appeals from that grade. The attorneys grade on the exam is under the unsupervised control of only the Defendants. That grade and the notices given are sometimes wrong, as in this case, because of a waiver of an investigation in which no misconduct was found. *See* Klein v. Toupin and Moatz, 2006-1486 (CAFC Dec. 6, 2006), which also noted jurisdiction for review of the Commissioner's actions under 35 U.S.C. 32 and Local Rule 213, and that procedural due process is required in attorney discipline cases,

21

including a fair hearing, adequate notice of the charges and the right to confront adverse witnesses, citing In re Ruffalo, 390 U.S. 544 (1968).

But the grade on the examination is the sole and only evidence used, and it is the sole means used to meet the discretionary requirements of the Defendants that Plaintiff and all other attorneys must show to allow them to advertise if they are not registered, even if they practice in the Trademark Office and *pro se* in the Patent Office. In Cupples v. Marzall, 101 F.Supp. 579 (1952), the Court questioned he desirability of the provisions for judicial review of the Commissioner's unrestricted actions. It was noted by the Court that appeals from the PTO are used under the Local Rules of the Court to satisfy the mandate of Congress under 35 U.S.C.A. Section 11 to determine whether there was a fair hearing. In this case, there was no opportunity for a pre- or post-removal hearing, and no opportunity for a hearing of the Constitutionality of the Defendants actions to review for fairness, so it was impossible for there to have been a fair hearing.

Defendants irrationally do not allow Plaintiff to promote himself by advertisements in his own patents and trademarks without *prior restraint* or an examination even though the regulations cannot pre-empt the First Amendment. Still further, Defendants are not authorized to continue enforcing their *prior restraint* of Plaintiff's license to advertise under their Regulations because they have not been authorized by Congress to keep the revocation in full force and effect without pre- or post-revocation hearings and prompt judicial review. Art. II, Sec. 2, cl 2., and Barry v. Barchi, 433 U.S. 55 (1979).

Another inquiry, which was emphasized in the cited Tafas, et al, *Id.*, in the District Court of Virginia, is whether the Defendants' actions followed the necessary procedural requirements. Here, and in the cited Taflas, et al, *Id.*, the Defendants' action are shown to not have followed the

22

necessary procedures. Proper notice was not given. Proper hearings were not held. The final

and proceeding versions were widely different. A reasonable time was not given for the public

to respond. The statement required by the APA as to the basis and goal of the Revised Rules was

insufficient. The same is true of all the *prior restraints* required in all the Defendants' actions

requested for review in this action. The Defendants' action simply did not measure up in kind

and degree. No publication was given at all was given for the *prior restraint* Plaintiff's cited

applications currently pending in the PTO, and so far which have been unmentioned by the

Defendants in this action.

Moreover, the administration record has not been supplied to the Court in any of the matters

in dispute in this action although they have been requested under the FOIA and otherwise in this

action. Also, the Plaintiff's discovery requests have not been satisfied. And to this end, the

affidavits in this case are merely *ad hoc* rationalizations. While they have been helpful, they are

not adequate for the Court's purposes at this point in time. *See* Burlington Truck Lines v. United

States, 371 U.S. 156, 168-169 (1962); and Chenery, *Id.*,. Clearly the affidavits in the record now

do not constitute the "whole record" compiled by the Defendants.

The plenary review necessary on appeal is based upon the full administrative record that was

before the Defendants at the time their decisions were made. But since the bare record present

may not disclose the factors that ere considered or the construction given thereto, it is necessary

for the Court to call upon the Defendants to complete the record before the Court.

And to this end, the Court may require the Defendants who participated in the decision and

their employees to give testimony explaining their actions. Of course, such inquiry in to the

mental processes of the Defendants and the others is usually to be avoided. United States v.

Morgan, 313 U.S. 409, 422 (1941).

In view of the above, it appears that an oral hearing requested by this Motion and the

supporting Memorandum would allow the Court and help it to settle many of the issues  pending

in this case, particularly the Defendants allegation in their Motion for a Protective Order and

their Motion to Dismiss.  And it would go a long way toward satisfying the Defendants'

attorneys in their quest to satisfy their clients in view of their lack of success in the cited case of

Talas et al, *Id.*, in getting the court there to grant their Motion to Dismiss, and in the face of the

Court's granting of the Plaintiff's Motion for a Preliminary Injunction against the same

Defendants in this case, and upon identical facts, which are part of Plaintiff's claims in this case.

> Respectfully submitted,
>
> *Cornell D.M. Judge Cornish*
>
> **Cornell D.M. Judge Cornish**
> 1101 New Hampshire Ave., NW
> Suite 301
> Washington, DC 20037
> (202) 429-9705
> cornishj@erols.com

Date:    2/19/08

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum in

support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this  **11**[th] day of February, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:  2/19/08

26