UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,          )
                                     )
                   Plaintiff *Pro Se*          )
        v.                           )
                                     )        CASE  07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.                    )
                                     )
                   Defendants        )
_____     )

**Memorandum in Support of Plaintiff's Motion For The Court to Call For A Response
To Particular Motions Of Plaintiff And Defendant**

It is too plain and too well settled to be open to dispute that only Congress could suspend

the right to challenge an unlawful detention in court, and that Congress and the courts can protect

Plaintiff's pre-enforcement challenge of *prior restraint* of his right and the right of every citizen

and alien with global equality to be free of *prior restraint* of the their right to free speech, press,

religion and petition in patents and Continuations under the First Amendment and the APA.

The Defendants 1/30/08 dithyramb in support of their Motion for a pre-enforcement

Protective Order included a perfunctory request on Page 2 that the Court add to their requests for

an order of *prior restraint* to gag Plaintiff's access to the Court under the speech, press, religion

and petition provisions of the First Amendment.  They cited a gag order against alien citizens of

the Milky Way Galaxy as precedent for gagging Plaintiff, a *pro se* citizen of the United States

who Defendants want "to seek and obtain leave of Court *prior* to filing any additional motions in

this proceeding" (emphasis added).

The Defendants cite Urban v. United States, 768 F.2d 1497, 1500 (D.C. Cir. 1985) in which

the court reduced the unrestricted access to the courts by a self declared citizen of the Milky Way

RECEIVED

FEB 1 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Galaxy; but that seems to be an inapposite citation based upon its peculiar and extraordinary facts. *See* Boag v. MacDougall, 454 U.S. 364 (1982); Haines v. Kerner, 404 U.S. 519 (1972); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); In re Green, 669 F.2d at 786 (1962) and 369 U.S. 689 (1962); and In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979); and 28 U.S.C. 1654 in connection with global equality of access to the courts by citizens of this country.

The pre-enforcement gag order requested by Defendants is so unlimited it preempts the Constitution, and so Plaintiff asks for leave for an interlocutory appeal. Defendants' request would gag Constitutional rights in informative as well as dispositive motions, and all other proper and supplemental motions helping the Court to make decisions as a matter of law, such as those concerning arbitrary and capricious Revised Rules made by the Defendants with impunity and immunity relative to the requirements of the APA.

To this end, for example, the requested pre-enforcement gag order would suppress proper requests for hearings or authority from Congress by statute relating to binding, substantive, non-interpretive, retroactive, ex post facto, legislative *prior restraint* as to the eligibility of Plaintiff's expressions in his Continuing Applications effective November 1, 2007, and *prior restraint* of the eligibility of his expressions in his *pro se* applications until the Court rules on Defendants' dispositive motion, so as to permit the "Defendants to defer briefing on any motions by Plaintiff until the Court calls for a response to a particular motion."

Plaintiff has asked for an extension and enlargement of time to reply to Defendants' unusual, unnecessary and misplaced filing until February 28, 2008, and hereby renews that request by way of the attached Motion for leave of the court. To this end, since this requested extension for the attached Motion is in conformance with the intent of the Defendants to require leave of the court, it is assumed that it is without objection by the Defendants.

2

The underlying theme of Defendants pre-enforcement *prior restraint,* which is consistent with their pre-enforcement request for a gag order, is their drive to completely and permanently defeat Plaintiff's access to the courts and to an opportunity for any hearing by Plaintiff. To this end, the Defendants have sought immunity for their extraordinarily overbroad discretion in connection with their concerted conspiratorial efforts to subvert judicial review and access to the Courts, and their arbitrary and capricious *ultra vires prior restraint* without statutory authority to preempt binding, substantive and legislative state law and public policy without complying with the provisions of the Administrative Procedures Act (APA) 5 U.S.C. 533.

The history of this matter is complicated by <u>Sperry v. Florida,</u> 373 U.S. 379 (1963), which preempted state law, and <u>Saxe v. Bustos,</u> 419 U.S. 65, 74 (1974), which discriminated against aliens. But those cases do not defeat access to the courts under 28 U.S.C. 1654 or the global equality of all applicants to freely apply for a patent and a trademark and to publish their expressions without *prior restraint* of their pure speech. Those cases are not a basis for ignoring the APA in order to cover up Defendants' unauthorized, arbitrary and capricious, *ultra vires, prior restraint* and discrimination against the eligibility of vulnerable, insular and identifiable minorities, such as aliens and the Plaintiff, who is one of a discriminated minority of aged, male, white, *pro se* practitioners requiring reasonable accommodations for their age related disabilities to advertise expression of their names as attorneys, agents or firms under the protection of the First Amendment against *prior restraint* of their patents Continuations and trademarks.

Fortunately, the tendency of the PTO to ignore the APA to suppress speech has been thwarted by established law protecting practitioners like Plaintiff who have heretofore enjoyed an increase in their well established and long standing freedoms. They have been able to protect their <u>eligibility</u> to express their names as attorneys, and their <u>eligibility</u> to file and prosecute

continuation applications. Heretofore, the *status quo* has insured their right to be <u>eligible</u> and substantively allowed without *prior restraint* to be free of censorship and editing by the Defendants. And until now, the Courts have not been bashful in intervening to prevent the unauthorized and unconstitutional *prior restraint* of the substance of Plaintiff's expressions in his patents and continuation applications by the PTO rules and Patent Statutes. *See e.g.,* Plaintiff's *amicus* brief in [ Parker] <u>Diamond v. Chakrabarty,</u> 447 U.S. 303 (1980), which prohibits the Defendants from substantive *prior restraint* of the <u>eligibility</u> of a patentable expression for publication by refusing to allow the Defendants to set any arbitrary and capricious standards for the substantive <u>eligibility</u> of Plaintiff's expression in his patents and continuation applications, and/or his name as an attorney, agent or firm in patents and trademarks.

Since 1958 Plaintiff has been eligible to use his name as an attorney and to file continuations without *prior restrain.* His removal from the register of attorneys without his knowledge or consent does not change that *status quo.* To this end, heretofore, he has been allowed by law with global equality to be <u>eligible</u> to express his claim of an invention in his continuations with his name and his profession in connection with any invention made by man that meets the statutory requirements for patentability. <u>Chakrabarty,</u> *Id.*

It has also been lawful for Plaintiff to enjoy global equality of access to the courts, and by extension *pro se* access to the press in a patent under the First Amendment, which extended the reach of the Judiciary Act of 1789 to trump the use of discretion to censor and edit expressions in patents under the first patent act of 1790. On this basis the Defendants cannot defeat access to the courts or to publications of expressions in a patent or a trademark by preempting Congress and the residual rights of the states, and Congress cannot preempt the First Amendment.

4

To implement the continuity of this well established, long lasting law, the APA was passed to guarantee access to the courts for protection against the *prior restraint* of the publication of the Plaintiff's pure speech in a patent and *Continuation Applications*. Plaintiff like all citizens of the world, including aliens, is guaranteed freedom of speech, press, religion and petition with global equality under the First Amendment to prevent agencies from arbitrary rulemaking and adjudication to defeat the reach of the First Amendment and universal eligibility. This prevents unconstitutional *prior restraint*. To this end, the APA was a response to the activist administrative state that began developing in the 1920's and was an attempt to standardize agency decision-making.

Now, generating rules consistent with the APA and the First Amendment through decisions by the courts seems to be the only acceptable alternative to 5 U.S.C. Sec. 553 for promulgating substantive rules of binding effect relevant to eligibility. *See, e.g.,* National Labor Relations Board v. Wyman-Gordon Co., 394 U.S. 759 (1969).

This Memorandum supports the attached Motion Asking for and Moving to "seek and obtain" leave of Court for a "call for a response" to at least this Particular Motion Of Plaintiff, if not all Plaintiff's unanswered Motions, including a Motion to open the record and expunge complaints therefrom; enlargement of discovery; enlargement of time to file motions without a gag order until at least February 28, 2008; leave for interlocutory appeals; and for reconsideration of motions that were denied. The Plaintiff seeks to obtain an Order from the Court for leave to "call for a response" from the Defendants and for leave for an interlocutory appeal before the Court rules on Defendants' dispositive motions.

Without limitation to other matters and Motions by Plaintiff not discussed in this Memorandum, it is submitted that, Defendants have a right because of their heavy workload and

5

their unhappiness with their working conditions not to answer the Plaintiff's or the Court's "call"

for a response. That is their prerogative, and the Court and the Plaintiff may simply take that to

mean that the Defendants "without objection" have agreed to the substance and allegations of the

Particular Motions and Memoranda in support thereof for which the Plaintiff and the Court have

"called for a response" from the Defendants relative to the failure of the Defendants to follow the

APA, or otherwise to have acted clearly erroneously or illegally and unconstitutionally.

It is only right and proper for the Plaintiff and the Court to call for a response from the

Defendants on important matters not addressed by Defendants heretofore, and wrong-headed

positions repeatedly taken in their filings.

For example, the Defendants have not in any way responded to Plaintiff's Motion For a Pre-

enforcement Review and Preliminary Injunction under the APA to enjoin the Defendants, the

United States Patent and Trademark Office ("USPTO"), an administrative agency that is part of

the United States and the United States Department of Commerce, and Jon W. Dudas, in his

official capacity as United States Under-Secretary of Commerce for Intellectual Property and

Director of the USPTO, collectively the "Defendants," along with and including their officers,

agents, servants, employees, and attorneys, and those persons in the United States in active

concert or participation with them who receive actual notice of the orders herein by personal

service or otherwise, for the pendency of this litigation in the herein above and below captioned

matters, and including Defendants Moatz and Griffin in their official capacity with an obvious

conflict of interest by combining their actions as Director and Enrollment, Investigation and

Disciplining Attorney in the USPTO Office of Enrollment and Discipline ("OED").

For all of the above, Plaintiff Moves for a pre-enforcement Preliminary Injunction to enjoin

Defendants from implementing their policy of *prior restraint* of Plaintiff's expressions in his

patents and trademarks, and to enjoin Defendants from implementing Sections 1.75 and 1.78 of

certain new federal regulations published by the USPTO at 72 Fed. Reg. No. 161 on August 21,

207 (with an effective date of November 1, 2007), entitled "Changes to Practice for Continuing

Examination Filings, Patent Applications Containing Patentably Indistinct Claims, and

Examination of Claims in Patent Applications; Final Rule" (to be codified at 37 CFR Part 1 and

sometimes collectively referred to herein as the "Revised Rules"); by Preliminary Injunction

which shall expire upon the entry of a final judgment in this matter, unless otherwise ordered by

this Court, pending further Order of this Court or any subsequent Court acquiring jurisdiction

over this matter, to enjoin the Defendants from implementing *prior restraint* of Plaintiff's

expressions in his Patents, Reissues, and his Continuation Applications by retroactive,

substantive and unauthorized legislative eligibility requirements under said Revised Rules.

Naturally, any party or any person affected by the preliminary injunction will be able to

move for modification or dissolution of that injunction. However, until said Preliminary

Injunction has been vacated, lifted or otherwise modified, the Plaintiff asks the Court to enjoin

the Defendants from implementing any rules other than the prior rules in effect prior to the

enforcement of the Revised Rules, and to have the Revised Rules declared null and void and

without legal effect as being beyond the rule making power of the Defendants and inconsistent

with various federal statutes and the Constitution.

To this end, as in evident from previous filings in this case, this case in controversy is

patterned at least in part to duplicate by judicial notice and by incorporation by reference in this

case the relevant legal claims and support provided in the combined and consolidated cases in

the District Court of the Eastern District of Virginia (Alexandria Division) of SmithKline

Beecham Corporation v. Dudas, No. 1:07cv1008; and Tafas v. Dudas, 1:07cv846 (JCC/TRJ),

7

wherein the Plaintiffs have obtained a Preliminary Injunction to enjoin *prior restraint* of the identical first Defendants named in this suit from preventing the filing of more than two Continuation Applications by retroactive, substantive and unauthorized *(ultra vires) prior restraint* of Plaintiff's Continuation Applications by retroactive, substantive and unauthorized legislative changes in the prior rules and the taking of his Continuations without properly following the procedures of the APA.

In those cases Plaintiffs have been awarded a Pre-enforcement Preliminary Injunction under the Patent Act (35 U.S.C. 2 et seq.), the APA (5 U.S.C. 553 (c ) and706 (2), Article I, Section 8, Cl. 8, and the Fifth Amendment (taking clause), and Plaintiff requests leave of the Court to seek and obtain a like Pre-enforcement Preliminary Injunction, and to "call" for a reply from Defendants to this legal claim for a Pre-enforcement Preliminary Injunction on the same basis as was effectively and successfully used in those cases in favor of the Plaintiffs therein.

To this end, this case and the above-cited combined cases invoke those same Pre-enforcement substantive legal claims for a Preliminary Injunction against the same Defendants whose opposition by Motion to Dismiss was like the same Defendants' Motion to Dismiss in this case. The Motion to Dismiss by Defendants in that above-cited Virginia case has been denied in that case, and so likewise Plaintiff asks this Court to deny the Defendants Motion to Dismiss, and for leave to  incorporate by reference in this case the pleadings, arguments and Orders from that case in this case by reference and by judicial notice herein and by this request for leave of this Court to substantiate and approve with the Court's permission those provisions of law herein in support of the granting of a like Pre-enforcement Preliminary Injunction and Denial of the Defendants' Motion to Dismiss.

8

Also, in addition, the Plaintiff in this case invokes the following additional Constitutional Amendments: First (unconstitutional *prior restraint* of Speech, Press, Religion and Petition), Second (Lack of Congressional Authority to appoint administrative judges under 35 U.S.C. 6 and unconstitutionality of 35 U.S.C. 2 (b)(2)(D) and 32), Third (lack of Judicial Power of appointments of Defendant Dudas), Fourth (violation of Full Faith and Credit and Privileges and Immunities), Fifth (lack of Due Process and taking without just compensation), and Tenth (Powers not delegated to U.S. or preempted from the states).

Plaintiff is asking, seeking to obtain and making a Motion for a pre-enforcement Preliminary Injunction to enjoin the Defendants from *prior restraint* of any of Plaintiff's expressions of pure speech under the Revised Rules or otherwise by any policy or action, whether the *prior restraint* be in patents, trademarks, or applications, continuations, continuations-in-part, or reissues, for plants, designs or utility patents or trademarks; and also to enjoin the taking of the Plaintiff's right to file an unlimited number of Continuation Applications and the prior entrenched, long lasting, well established right to claim the benefit of the prior filing date in his currently pending U.S. Application No. 29/273,235, filed 02/26/07, and any subsequently filed continuation or reissue applications, the number of which is to be limited by the Revised Rules.

By his *pro se* Motion for a pre-enforcement review and Preliminary Injunction under the APA, Plaintiff seeks a Preliminary Injunction against the Defendants who have exceeded their authority under 5 U.S.C. 701 *et seq*,, in violation of the First, Second, Third, Fourth, Fifth and Tenth Amendments, as well as by Motion for FOIA relief under 5 U.S.C. 552, and its improvement, which was signed into law in the Open Government Act of 2007. Plaintiff is also seeking relief under the EEOA, section 504 of the Rehabilitation Act, and where Defendants don't have authority or lawful regulations or are mistaken in their interpretation of the law.

9

According to the Open Government Act, Plaintiff should have a "virtual" electronic tracking number for his FOIA request, which is like the "virtual" tracking number Plaintiff, has in the PTO, which has been illegally tampered with and infringed.  To this end, the Defendants face monetary penalties in addition to the damages that Plaintiff is seeking for at least $1,000,000 for negligent taking, abuse, interference, harassment, infringement and violations of Plaintiff's constitutional rights, property, patent, trademark, copyright, privacy, professional, reputational and privilege rights, all of which are grounds for Denying Defendants Dispositive Motions to Dismiss etc. under 5 U.S.C. 701 et seq., without limitation to other Acts, and the granting of Plaintiff's Motion for a pre-enforcement Preliminary Injunction to enjoin Defendants from *prior restraint* based upon there unauthorized rule-making.

A proper form of relief in this action includes, but is not limited to, the following:

a. Issuing preliminary and permanent injunctions under 5 U.S.C. 703;

b. Issuing declaratory relief under 5 U.S.C. 703 and 28 U.S.C. 2201-2202;

c. Holding unlawful and setting aside the PTO's action (i.e., issuing a vacatur remedy) under 5 U.S.C. 706 (2); and

d. Compelling the PTO to perform its duty under 28 U.S.C. 1361.

The theoretical difference between [rulemaking] and [non-rulemaking] is clear. [A rule-making statute] is essentially an administrative statute imposed according to law under the APA or by the Courts – in new law that completes an incomplete legislative design, e.g., to cover issues not contemplated when the statute was passed, and, thus, unauthorized by Congress.  The flexibility of the rules of statutory construction, including *stare decisis* that are applied by Courts to this issue is loosely reminiscent of the flexibility applied by the intervention of the Court in the settled law of the doctrine of equivalents in connection with patent enforcement and

10

infringement. The flexible standard applied by the Court via prosecution estoppels in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722 , 740 (2001) and Shoketsu Kinzoku Kogyo Kabushiki Co. v. Festo, 520 U.S. 1111 (1997), revises the flexible standard imposed theretofore. *See,* for example, Depuy Spine v. Medtronic, Fed. Cir. 2006); and Freedman Sealing v. American Sealing, (Fed. Cir. 2005). In Festo, *Id.*, the Court refused to adopt a bright line standard.

As to the large number of patents that were prosecuted under the prior law, with the understanding that a flexible bar rule would apply to the doctrine of equivalents, many applicants would have prosecuted their applications differently had they understood that a rigid bar precluding any application of the doctrine of equivalents as to an amended element were to be employed. For example, rather than amending a claim to narrow the claim, the applicant had the right to appeal the rejection. This, however, is complicated by the fact that 35 U.S.C. 6 is under repair for unconstitutionality by H.R. 1908.

Defendants' substantive rulemaking is without delegated lawmaking power, such that their policy of *prior restraint* of Plaintiff's expressions and continuation applications in this case are null and void. The substantive rulemaking in this case that Plaintiff seeks to enjoin prescribe, modify, or abolish involves duties, rights, exemptions and eligibilities present in the prior rules. In addition, Plaintiff seeks to enjoin discrimination and lack of reasonable accommodations and alternatives because of age related disabilities that do not interfere with Plaintiff's practice of law.

In contrast, non-legislative rules, such as those applied internally to examiners, do not exercise delegated lawmaking power and thus are not administrative statutes. Instead, they provide guidance to the public and to agency staff and decision makers. They are not legally

11

binding on members of the public. In the case of the rules applied to employees of the PTO, the rules are generally thought to be internal and not binding on the public, leading to the confusion and obvious conflicts of interest in the Office of Enrollment and Discipline, which uses the same personnel in the various rules of admission applied in enrolling and disciplining PTO examiners, the general public, and practitioners in the patent and trademark offices, including agents, and attorneys.

The confusion and obvious conflicts of interest imbued in the system by <u>Sperry v. Florida,</u> 373 U.S. 379 (1963), have been seized upon by the Defendants to excuse their failure to follow the requirements of the APA under which they are applying with impunity clearly erroneous policies of arbitrary and capricious, discretionary preemption without statutory authorization to invoke *prior restraint* of expressions and continuation applications by agents, attorneys and aliens alike. To this end, Defendants have illegally suppressed access to the courts, most recently by their Motion to seal these proceedings, Motion for summary dismissal, and a Motion for a gag Order in the form of an Order of Protection.

But they didn't stop there. Additionally, Defendants routinely withhold any opportunity for a hearing, due process, or sensitivity to the compelling public purposes and limitations of the First Amendment. They also ignore the provisions of the Administrative Procedures Act (APA) 5 U.S.C. 533, as well as the taking clause without just compensation, the full faith and credit clause of the Fourth Amendment, the Privileges and Immunities Clause, and the residual rights of the states under the Tenth Amendment, by their refusal to license aliens, agents and attorneys. *See* <u>Saxe v. Bustos,</u> 419 U.S. 65, 74 (1974).

Interpretive rules and policy statements serve distinct functions. An interpretive rule clarifies or explains the meaning of words used in a statute, a previous agency rule, or a judicial

or agency adjudicative decision. A policy statement, on the other hand, such as the Defendants'
policy of *prior restraint* of Plaintiff's expressions and continuation applications, indicates how
an agency hopes or intends to exercise its discretionary power. Defendants have misconceived
and misused this policy except minimally and incompletely in connection with continuation
applications prior to issuing their final version of the above-cited Revised Rules. To this end, in
the course of performing some other administrative function, Defendants might have indicated
what factors they would consider and what goals they would pursue when they conducted their
formal or informal adjudications and investigations or prosecutions in this case. Instead,
Defendants in this case held their 1996 investigation and adjudication in abeyance by "strategic
mooting" without a "closing letter," and without admitting the 5 year bar of the statute of
limitations. This is an extraordinary circumstance of manifest injustice.

Plaintiff's situation involves the manifest injustice that can be considered under 37 C.F.R.
11.3 because of the "extraordinary" circumstances of this case that cry out for justice because of
the Defendants' arbitrary and capricious *prior restraint* of Plaintiff's expression and continuation
applications without compliance with the provisions of the APA and without any statutory
authorization, the lack of any opportunity for due process or a hearing, combined with the
extenuating circumstances of a life-long successful and spotless professional career in the PTO,
and because of the practitioner is advanced in age with life function disabilities that have been
well documented by licensed physicians as needing reasonable accommodations that were
denied to the Plaintiff. Defendants denied their denial, as all now agree.

It is not the case here that the "overriding concern must be the protection of applicants
through the admission of only those practitioners who have demonstrated that they have the
knowledge and skills necessary to pass the examination" as James A. Toupin, General Counsel

of the USPTO has said, because the patent applications and patents of concern here have been filed *pro se* by Plaintiff in the Patent Office and the Trademark Office, but equally he has a right to file and practice as a co-inventor, assignee, or where the co-inventor has refused to sign, is dead or otherwise unavailable, or for himself or others in the Trademark Office. *See* Petition under 37 CFR 11.2 (d), construed by the Director of OED as requiring a passing score on the exam pursuant to 37 CFR 11.3, July 12, 2006.

Of course, the Supreme Court has given deference to administrative informal rulemaking in the field of nuclear energy due to "extraordinary circumstances." Vermont Yankee Nuclear Power Corp. v. Natural Defenses Council, 435 U.S. 519 (1978). There is even statutory authorization for just compensation under 35 U.S.C. 181 *et seq.,* and for "extraordinary" considerations of national defense in the field of atomic energy.

Lincoln thought that the Southern rebellion posed an existential threat to the United States, and that he, as commander-in-chief, was authorized to take "extraordinary" measures under the "extraordinary circumstances" he found himself in to save the Union. These included suspension of habeas corpus without prior congressional approval, a blockade of Southern states by U.S. warships and the emancipation of slaves without compensation. Taney challenged the suspension of habeas corpus in the 1861 case of Ex parte Merryman, 17 Fed. Cas. 144 (1861), asserting that it was "too plain and too well settled to be open to dispute" that only Congress could suspend the right to challenge an unlawful detention in court.

But the law was cloudier than Chief Justice Taney acknowledged, and there is a clause in the Constitution that authorizes suspension of the privilege of the writ of habeas corpus, i.e., ninth section of Article I. And there was secessionist disorder raging in Washington, all of which were "extraordinary circumstances."

14

And fortunately Congress subsequently ratified Lincoln's decision on *habeas*. And by 1863,

three new Lincoln appointees were on the court, and they helped reject (by 5-4 vote) a series of

challenges to his blockade of the Confederacy. Likewise, the courts have recognized that the

right to compensation is well-established in this field of patents on atomic energy under 35

U.S.C. 183.

Since the formal rulemaking procedures in 5 U.S.C. 553 (formally 4 APA) are minimal, the

Defendants have used that as an excuse for ignoring the requirements of the APA. Under the

APA informal rulemaking is often simply referred to as "553 rulemaking." It is also known as

"notice and comment." Agencies like the USPTO oftentimes slip through the cracks of informal

rulemaking procedures because of the exceptions to the informal rulemaking process that require

almost no due process at all.

If so, as in this case, the procedures can be challenged in this Court, as Plaintiff has done in

this case, and as the plaintiffs have successfully done in the cited <u>Tafas</u> and <u>SmithKline Beecham</u>

cases *Id.*. And if the procedures of any of the exceptions are challenged in federal court, as the

Plaintiff does in this case and as was done in the cited <u>Tafas</u> and <u>SmithKline Beecham</u> *Id.* cases

in Virginia, the court will resolve the issue with a leniency in favor of the Plaintiffs because of

the "extraordinary circumstances" of their cases, the manifest injustice of granting a Motion to

Dismiss or the Motion for a Restraining Order, the merits of the Plaintiffs cases, the likelihood of

success of the their cases, the lack of damage or injury to the same Defendants, the restoration of

the *status quo,* and the well-documented irreparable injury to the Plaintiffs in all those cases

which the failure to grant the Preliminary Injunctions would cause. These factors are "too plain

and too well settled to be open to dispute." They have been without objection by the Defendants.

15

These factors include the obvious irreparable injury to Plaintiff's reputation, profession and income; the merit of his case and the likelihood of his success in view of the success of the cited Tafas et al cases in Virginia against the same Defendants on the basis of the same facts (also, the denial of the Defendants' Motion to dismiss); Plaintiff's multiple claims for damages; the temporary nature of a preliminary injunction he seeks; the genuine issues of material fact that have been identified by Plaintiff as being in dispute; the possibility of the removal of the Preliminary Injunction at any time; the lack of any injury to the Defendants or the public by sustaining the *status quo* of the rulemaking process; the First Amendment considerations under which the burden of proof is on the Defendants; and the preservation of the prior rules applicable to the lack of *prior restraint* of Plaintiff's expressions and his continuation applications .

There is great importance in an agency like the PTO giving notice to affected persons of its intent to publish a rule or lack of its intention to publish as they should to provide an opportunity for the public to reply. Likewise, the same factors are at work and have been obstructed by the Defendants by refusing to grant Plaintiff a hearing in this case. As stated, it is an essential part of Due Process and the requirements of Section 553 of the APA. Yet insufficient notice to all affected persons was given as noted in this case and the cited Tafas et al cases in Virginia. An agency like the PTO, is required under the facts in this case and in the cited Tafas et al cases in Virginia, to give notice of its rules by publishing them in the Federal Register. This allows for notice to the public just like the hearings withheld from the Plaintiff in this case were supposed to have done.

Obviously, Plaintiff's claims, like those in the cited combined case in the District Court In Virginia, have merit on the basis of statutory and constitutional rights; and a likelihood of success, based upon those statutory and constitutional rights for costs, charges, fees damages and

16

just compensation. The damages are for irreparable injuries to the Plaintiff's statutory, constitutional, privacy, property, reputational, professional, and privilege rights by failure of Defendants to do their duty, by clearly erroneous interpretations of their duty, harassment, fraud, malfeasance and negligence. Denial of Defendants dispositive motions and the granting of Plaintiff's Motion for Preliminary Injunction will otherwise cause little or damage to the public or the Defendants. There is no requirement that Defendants' Motion to Dismiss should take precedence over Plaintiff's Motion for Preliminary Injunction of substantive rule making by the Defendants.

The APA demands an adequate statement of a regulation's "basis and purpose" as required by 553 (c )'s "concise and general statement" requirement that can and should be enforced by this Court. And the failure to enforce this requirement has harmed the public and the Plaintiffs in this case and in the cited Tafas case in Virginia. There is no rational "basis for the failure of the Defendants to have followed the requirements of the APA in this case.

Additionally, of course, Plaintiff asks for denial of Defendants Motion to Dismiss; the granting of Plaintiff's Motion for Preliminary Injunction; and asks for the granting of his miscellaneous other Motions, including his Motion for assistance of counsel; to reopen the Record; to enjoin the Defendants from preventing expunging the records of any complaints against the Plaintiff in the PTO and in this court, the enlargement and extension of time to make Motions, to grant Plaintiff interlocutory rights to appeal and to stay the proceedings for appeal under 28 U.S.C. 1292 (b), and enlargement of the time for discovery and for response at least to February 28, 2008.

Plaintiff also requests leave to seek and obtain the granting of an enlargement of time to reply to Defendants' unrelenting and mistaken allegations that Plaintiff's pleadings are so "bizarre,"

17

"confused," and otherwise improper as to justify their Motion for a Protective Order to protect the Court's jurisdiction from conduct, including a drive for sealing, summary dismissal and a gag Protective Order that impairs the Court's ability to carry out its functions under Article III, which, of course, are there to preserve the balance of powers against the Defendants crusade to obstruct justice by denying full, fair and open access to a hearing and judicial review, and the granting of Plaintiff's Motion for Preliminary Injunction. In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979) ("It is axiomatic that no petitioner or person shall ever be denied his right to he processes of the court.")

As stated above in this there is concern that, "Generating rules through decisions by this Court seems to be the only acceptable alternative to 5 U.S.C. Sec. 553 for promulgating substantive rules of binding effect." *See, e.g.,* National Labor Relations Board v. Wyman-Gordon Co., 394 U.S. 759 (1969).

As previously held in Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Commission, 874 F.2d 205, 207-08 (4th Cir. 1989), an exposition of PTO policies or interpretations is *de rigueur.*

Likewise, the General Requirements Bulletin for enrollment in the PTO, dated April 10, 2001, is of particular concern to the Plaintiff and the public welfare, as is Defendants unrelenting effort to tar Plaintiff with the mistaken brush of "misrepresenting to the Court" [despite his recognition by the Assistant Commissioner in 1958 to do so], "Defendants have barred Plaintiff from advertising and promoting his name as an attorney in both the Trademark Office and the Patent Office." Defendants' *prior restraint* is not limited to the Patent Office, but is across the board in the PTO and elsewhere. Defendants say on page 7 of their 1/30/08 Response, "Plaintiff is not on USPTO's register of patent practitioners; therefore, regardless if he is entitled to

18

practice trademark law before the USPTO, Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice patent law before the USPTO." That means he can't practice in either the Patent or Trademark Offices as a *pro se* practitioner.

Plaintiff seeks a Preliminary Injunction to allow him to prosecute his presently pending patent application S.N. 29/273,235, filed 02/26/07, and so that he may do so without threat of prosecution under 35 U.S.C. 33 or otherwise, such as by "limited recognition" but by the statutory recognition to file and prosecute *pro se* with all the rights and privileges of all other applicants.

Without a Preliminary Injunction, Plaintiff is prejudiced and injured by *prior restraint,* the malfunction of the system, and Defendants' clearly erroneous interpretation of the statutes and Rules, which do not presently contemplate, nor did they ever in any way contemplate, the special and extraordinary circumstances of all *pro se* applicants like Plaintiff and other *pro se* joint inventors, whose entry into the rapidly expanding "virtual world" of electronic access to the USPTO, and in the courts, is well recognized and respected. Plaintiff and those others are often experienced, capable, qualified, competent, skilled, knowledgeable, exam-certified from November 5, 1958, hardware and software capable and legitimate innovator, practitioner, and attorney-inventors of good moral character and reputation, possessed of the necessary qualifications to render to applicants like themselves who are not only encouraged by the Constitution to be there on line, but NOW more than not, required by the PTO and the Courts, to be there on-line in that "virtual world." Plaintiff should not be unduly restrained by unwarranted *prior restraint* of his on-line and off-line activities by scrutiny for links to terrorism, narcotics smuggling, child pornography or other criminal activity. A Preliminary Injunction is

19

required to stop such unwarranted and illegal activity that caused and is causing irreparable injury without probable cause, a search warrant and a hearing.

The statutes and Rules do not now and never did contemplate the PRESENT capability of Plaintiff to legitimately render selectively on-line, electronically, in a never before known "virtual world" of the internet, in person communicate with co-inventors, and give them valuable service, advice, and assistance in the presentation or prosecution of their applications and continuations or other business before the Office, in both the Trademark and Patent Offices.

Plaintiff, like those other *pro se* practitioners, are encouraged by the Constitution and the public welfare to be there, and by statute and rule <u>required</u> to be there in that "virtual world" electronically with global equality. They cannot be, nor should they ever be, excluded or restricted by *prior restraint.* The survival of the country depends on their impact on innovation and communications technology. Their business methods, computers, computer software, designs and organisms are patentable under the First Amendment. [Diamond] <u>Parker v. Chakrabarty,</u> 447 U.S. 303 (1980). They are not a security threat. They are not quacks or avatars with an alternate personality that socializes, explores and earns and spends money across the uncharted online landscape of the internet.

Plaintiff does not need additional monitoring or *prior restraint* for the protection of applicants, nor is he a security threat. He has been cleared by the government for top secret clearance and he has made a career, now virtually destroyed by the Defendants' *prior restraint* and irreparable injury to his profession and reputation, of handling inventions in which the government has had a property interest whereby they were held to be secret under 35 U.S.C. 181. The Defendants are already monitoring Plaintiff in the "virtual world" of PTO registers and rosters, and the Defendants have successfully done so since at least November 5, 1995.

20

Defendants' counter-avatar activities caused the Plaintiff to be unjustly deprived of his rights when he was forced to stop practicing on March 4, 1996 on the pretext of a false allegation that "you are ceasing practice before the United Patent and Trademark Office." (Defendants' Exhibit 8). And Defendant Griffin falsely alleged that, "Pursuant to your request, you were removed from the roster of registered patent attorneys and agents in April 1996." (Defendants' Exhibit 17). Both Exhibits revealed the tip of the iceberg of the secret retroactive tampering with the "virtual world" and real world of Plaintiff's identity, property, profession, reputation, privilege and "virtual" persona in both the Trademark Office and the Patent Office without a hearing, probable cause or notice until 10/16/07, when the Defendants filed their Answer in this case.

Nor does Plaintiff present an "overriding concern that must be the protection of applicants through the admission of only those practitioners who have demonstrated that they have the knowledge and skills necessary to pass the examination," as stated by General Counsel Toupin on July 12, 2006, in his Order in a Petition under 37 C.F.R. 11.2 (d), which Defendant Moatz interpreted as a Petition pursuant to 37 C.F.R. 11.3. That order reveals the chaos caused by the failure of the Patent Statutes and Rules to contemplate the special circumstances and malfunctions, mistakes and clearly erroneous interpretations and implementations of the present system by *prior restraint* of expressions in patents and *Continuation applications*.

To this end, the Defendants have not fairly, or when justice requires, used the APA to recognize Plaintiff's cause of action for pre-enforcement review of his *prior restraint* without a hearing in connection with his currently pending applications either on-line in the "virtual world" of the PTO, or off-line. *See* S.N. 29/273,235. Plaintiff was denied limited recognition by *prior restraint* without a hearing, and otherwise told that his "recognition" as a practitioner was "strategically moot" without mention of the APA. To this end, Plaintiff was told on March 4,

21

1996 (Exhibit 8), that his service before the PTO was ceasing by holding in abeyance any investigation without a hearing.   Thus, he was told that he wouldn't be allowed to practice in the PTO, which includes the Trademark Office, "If your name is removed from the register..." on the basis of the investigation. This was independent of Plaintiff's letter of February 8, 1996.  And this threat of "removal" from practice before the Trademark Office because of an investigation in abeyance has now been exacerbated by pre-enforcement *prior restraint* of his name and profession in both the Trademark and Patent Offices, "regardless if he is entitled to practice trademark law before the USPTO," which Defendants relentlessly reminds Plaintiff that he is "recognized" to do as a "practitioner" without violating Patent Rule 1.32.

That reminder is worthless, because he is now also relentlessly reminded of the threat of prosecution for any and all practice before the Trademark Office by pre-enforcement *prior restraint*, and the threat won't be removed without a Preliminary Injunction, because Defendants insist, as if he has been refused recognition or suspended or excluded, which he has not been, that "Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice before the USPTO," as stated on page 7 of Defendants 1/30/08 filing labeled "Defendants' Response."

In fact, if Plaintiff so "holds himself out" in his own application before the Patent Office or the Trademark Office, Defendants threaten him with prosecution under 35 U.S.C. 33.  Page 7 of Defendants' 1/30/08 Response.  Yet Plaintiff is actually recognized, and he is currently recognized to practice patent and trademark law in his Appln. S.N's 29/273,235 and 77/247,319, while being restrained by coercion and *prior restraint* from holding himself out by the expression: "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish TM SM"

22

Defendants are devoting unusually large resources to avoid the proper use of the APA to preserve and promulgate their policies of *prior restraint* and censorship against Plaintiff by first sealing these proceedings, asking for summary Dismissal and finally a Protective Order to suppress Plaintiff's right to a hearing and his day in Court by a gag Order. The Dismissal and gag orders are permanent, and so should not take precedence over Plaintiff's interlocutory appeal or Preliminary Injunction, which can be removed at any time. *See* the immense amount of resources the Defendants allege they are expending on this case and virtually a duplicate APA case now pending in the Northern District of Virginia: SmithKlineBeecham v. Dudas, cited in the record initially, in which a Preliminary Injunction was granted against the Defendant Dudas and PTO in this action, because of the controlling substantive and APA administrative questions of law with a low threshold for deference to the Defendants that were involved in that case and in this case.

Also, this case involves an extraordinary situation not contemplated by statute or the Rules applied heretofore to *pro se* cases where there have been multitudes of administrative and substantive errors, including clearly erroneous interpretations of the statutes, which are facially unconstitutional.

The Defendants, including the PTO, which is a federal governmental agency, and the other Defendants, obtain their power solely at the discretion and prerogative of Congress, which is embodied in 35 U.S.C. 2 (b)(2)(D), 6 and 32. Congress obtains its power in this area from the United States Constitution: "The Congress *shall have Power*…To promote the Progress of Science and the useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries…" U.S. Const. Art. I, Sec. 8, cl. 8 (emphasis added). Congress has utilized its powers and enacted laws, which do not grant the

23

PTO the authority to restrict the *expression* of applicants, practitioners or inventors, *pro se* or otherwise, by *prior restraint* from access, identity, and recognition in and by the "virtual world" of electronic access to the computer data base of the PTO. Thus, by subjecting Plaintiff's expression to censorship without a hearing or probable cause according to their policies of *prior restraint,* the Defendants have engaged in *ultra vires* and unconstitutional rulemaking in areas not contemplated or allowed by Congress; they have engaged in illegal activities by clearly erroneous interpretations of their authority; and they have engaged in denial of reasonable accommodations due to age related disabilities or otherwise without authority, Congress has never empowered the Defendants to promulgate or use such policies or activities.

Under the patent laws a *pro se* patent applicant is permitted to file with global equality with all other applicants, and to prosecute as with all other practitioners, an original, a continuing, and a reissue application, or request for continuing examination or a Continuing Prosecution Application in case of a Design Patent Application. A Controlling Question of Law includes whether Plaintiff has the right to a Preliminary Injunction enjoining the Defendants from *prior restraint* of Plaintiff when he does anything that any other practitioner may do? Under the Revised Rules, that *prior restraint* restrains Plaintiff as an inventor, co-inventor or assignee when he files and prosecutes a *Continuation* Application, or signs a request for status of his application as an inventor or assignee; gives a power to inspect his application; acquiesces to express abandonment of his application; appoints his own legal representative; signs a terminal disclaimer; consents to the filing of a reissue application; consents to the correction of inventors name; files an application under 37 C.F.R. 1.47 (b) or 37 C.F.R. 1.475; signs an Issue Fee Transmittal (PTOL-85B); prepares and signs a response to an Office action; appeals to the Board of Appeals under 35 U.S.C. 6; signs the oath or declaration and files it or an application as the

24

assignee; signs a Certificate of Mailing under 37 C.F.R. 1.8; signs, files and prosecutes a

reexamination of his patent under 37 C.F.R. 1.510; or signs a small entity declaration under 37

C.F.R. 3.73 (b).

At times the inventors refuse to execute the application or cannot be found or reached after

diligent effort and the requirements under 37 C.F.R. 1.47 (b) can be met. And others may show

sufficient proprietary interest in the matter, that justifies making the application by the assignee

or other inventor. He, like Plaintiff, makes the application with recognition as the "agent" for all

the inventors without recognition on the registry. 37 C.F.R. 147 (b). *See* <u>Sperry v. Florida</u>, *Id.*

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* –

Cornell D.M. Judge Cornish TM SM "

Downpat ©2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  2/19/08

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this **19th** day of February, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:  2/19/08

26

<u>UNITED STATES DISTRICT COURT FOR</u>
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,          )
                                     )
              Plaintiff *Pro Se*     )
                                     )
          v.                         )     CASE  07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.,                   )
                                     )
              Defendants             )
_____ )

<u>ORDER</u>

UPON CONSIDERATION of Plaintiff's Motion for an oral hearing before deciding

Defendants' Motion for a Protective Order and Motion to Dismiss; enlargement of time to reply

until February 28, 2008; for a Preliminary Injunction to enjoin the Defendants from failing to do

their duty not to censor or discriminate against Plaintiff by *prior restraint* and failure to provide

reasonable accommodations because of his age-related disabilities that do not impact negatively

on his ability to successfully practice law; and for refusal to grant Defendants' Motion to

Dismiss and for a Protective Order, it is this _____ day of _____, 2008, hereby

ORDERED that Plaintiff's Motion should be and it hereby is Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For Summary

Judgment, and for a Protective Order should be and it hereby is Denied.


_____
**UNITED STATES DISTRICT JUDGE**


1

W. Mark Nebeker

Assistant United States Attorney

Civil Division

555 4th Street, NW

Washington, DC 20530

(202) 514-7230 fax (202) 514-8780

Cornell D.M. Judge Cornish

1101 New Hampshire Ave., #301

Washington, DC 20037-1502

(202) 429-9705

cornishj@erols.com