## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,  )
                             )
           Plaintiff *Pro Se*  )
                             )
        v.             )    CASE 07-cv-01719 (RWR)
                             )
JON DUDAS, et al.,  )
                             )
          Defendants  )
—————————————————————— )

## TIMELY REPLY TO MEMORANDUM ORDER [46] OF FEBRUARY 25, 2008

Plaintiff appreciates the details provided by the Court's Memorandum Order of Monday, February 25, 2008 [46], which Plaintiff received by mail only on Monday March 3, 2008 with a copy of the Notice of Electronic Filing of the Court's corresponding Minute Order. The Court did not grant Defendants' Dispositive Motions. But it allows Defendants to continue the certain, unbearable tragedy of *age-limited,* test-adverse, and therefore, irreversible, permanent, and irreparable constitutional harm; also, irreversible censoring, embargo and suppression of Plaintiff's right of speech and political protest in his applications and Continuations under the Revised Rules, because of Defendants' 1996 "strategic mooting" of discipline in his favor, and the unbearable tragedy of the secret removal, tortuous interference and identify theft of his ID. These are coextensive with the consequent irreversible embargo against his practice in both the Trademark Office and the Patent Office, and the certainty and irreparable harm from the tragedy insured by the secret removal of Plaintiff's name, so that it was impossible for him to know when to begin calculating the five year choke-point for reinstatement, and, thus to be reinstated. Like all age-related discrimination, the only purpose of the punishment involved was to weed out and

**RECEIVED**

MAR 0 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

discriminate against age-limited, non-registered practitioners and test-adverse attorneys who are well controlled by state and federal ethical standards, not to protect the public from unscrupulous and deceitful practitioners.

All this was coupled to the manifestly unjust and unrelenting contempt and humiliation Plaintiff has had to suffer from the unending threats of prosecution under 35 U.S.C. 33 to enforce the complete embargo of Plaintiff's practice in August 28, 1996, after the "strategic mooting" on March 4, 1996 of an investigation in his favor made his age-limited recovery of his license impossible close to eleven years later.

The refusal to make reasonable accommodations for Continuing Legal education purposes for such unregistered attorneys, who are in good standing in many jurisdictions, including the Patent Office, makes it impossible for them to recover their license in the PTO, by the refusal to give them a "letter of closure." Plaintiff has been refused such a letter since March 4, 1996, which made it impossible for him to recover his license due to age-related, test-adverse disabilities for no good or rational reason. It is worthless for Plaintiff to be recognized and in good standing in thee states and the PTO because one of his age-related disabilities makes it impossible to transfer his proficiency to any field other than the patent and trademark fields.

The embargo against his practice in the Trademark Office is still in effect because of the failure to give him a "letter of closure" for the "strategic mooting" in his favor on March 4, 1996, and the secret removal of his name from the PTO register of attorneys on August 28, 1996.

This means that Defendants' have maintained their conspiratorial intent to irreparably harm, punish and discipline Plaintiff permanently by manifestly unjust means, and to defeat any judicial review of the *prior restraint* of his political expressions of protest in patents and trademarks, including Continuation applications under their Revised Rules, by *prior restraint* of

2

the use of his name as an unregistered attorney because of the lack of his recognition as an

attorney in the PTO without any way to repair or reverse the *per se* and facial, irreparable and

permanent constitutional harm and unbearable humiliation and punishment Plaintiff has had to

suffer without a hearing, except *perhaps* by the extremely risky and costly process of an appeal

because of failure of the Defendants and the Court to consider all legal claims of the Plaintiff

without a hearing, and where an oral hearing on an appeal is difficult to obtain.

　　　Plaintiff should not be forced to make an appeal and gamble further humiliation and even

mockery, derision and further punishment on failing to receive an oral hearing on appeal.  His

only hope for a hearing abides in this Court's jurisdiction to reject the Defendants' Dispositive

Motions to Dismiss or for Summary Judgment, which accordingly warrants this Court's

intervention and denial on the basis of genuine issues of fact that are in dispute, and based upon

Plaintiff's success in stating a well-pled cause of action with merit that is ripe for relief under the

jurisdiction of this Court, including his <u>Bivens</u> tort claim for damages and a pre-enforcement,

permanent injunction under the First Amendment,  Due Process Clause, and the APA, 5 U.S.C.

701 et seq., e.g., especially 703 and 706 (2) and 28 U.S.C. 1361, 1338, 1442, etc., which have

not been mentioned in detail or at all by the Court or the Defendants. They have been

foreshadowed by the Court's finding that Plaintiff's Motions are without merit, which Plaintiff

voices objection to and takes exception from.

　　　Plaintiff's <u>Bivens</u> tort claim and Constitutional complaints are also for relief under color

of state and federal law, as provided for in 28 U.S.C. 1291, 1338 (a) of Title 28, and not in the

Federal Circuit, and which is appealable under 1295 (a) (1), and under 28 U.S.C. 1983, or

otherwise, for costs, fees, expenses and attorneys fees, (<u>Goldstein v. Moatz,</u> No. 03-1257, on

appeal from CA-02-1734-A in the Distr. Ct. of the Eastern District of Virginia, Alexandria

3

Division, 4/14/04), wherein the Court on appeal reversed the motion of the defendants Moatz, Anderson and Toupin on the basis of absolute immunity. In assessing 1338, the Supreme Court has explained that:

1338 (a) jurisdiction...extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808-09 (1988).

Plaintiff claims a Bivens *Id.*, tortuous interference cause of action for Defendants non-judicial functions, including the sequential "strategic mooting" and embargo of Plaintiff's patent law and trademark practice by Defendants or their predecessors, agents, attorneys and/or employees under state and/or federal law, including the Director of OED in favor of Plaintiff on March 4, 1996 (Defendants' Exhibit 8), and their manifestly unjust secret removal and tortuous interference with his name and ID, and theft of or interference with his identity, and/or other property, including his copyrighted and published expressions in his patents and applications, including more than two Continuations under the Revised Rules of the Defendants, by Constitutionally deficient activities and lack of Constitutionally sufficient notice without probable cause, consent, arrest or due process, by the secret removal of his name from the register of attorneys without Constitutionally sufficient notice or any chance to respond on August 28, 1996 (Defendants' Exhibit 33), and their *prior restraint* of his expressions in his copyrightable patent and trademark applications, publications and expressions, and his pre-enforcement legal complaint for damages for their Unconstitutional *prior restraint* of his Continuations and other publications and records, are not absolutely immune from this *Bivens*

4

action for damages. <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,</u> 403

U.S. 388 (1971).

Stated another way, Plaintiff seeks redress for the Constitutionally unacceptable,

<u>permanent</u> and thus, irreparable harm, from Defendants' irreversible *prior restraint* of his

political, inventive, copyrightable and patentable property, trademarks, and patent expressions in

more than five claims and in more than two Continuation applications under Defendants Revised

Rules, published on August 21, 2007, that were to be effective November 1, 2007, and that are

currently under a *Preliminary* Injunction in the District of Virginia.  Civil Action No.

1:07cv1008, combined with 1:07cv846 (JCC).

Thus, Plaintiff requests reconsideration and reversal of the Court's refusal to grant

Plaintiff's motions by the Court's Order of 2/25/08 [46] for lack of merit, including his FOIA,

EEO, Disability Act claims, and Plaintiff's claims of controlling questions of law under

Plaintiff's 42 U.S.C. 1983 and 28 U.S.C. 1292 (b), 1338 and 2679 judiciary act claims relating to

qualified immunity and facially unconstitutional statutes, i.e., 35 U.S.C. 2 (b)(2), 6 and 32, where

the words or meaning of "non-patent law," "*pro se,*" "recognition," "other," "refused,"

"practice," and "applicant" are indefinite, ambiguous and effectively undefined and indefinable

because of the lack of pre-emption characteristic of international and *pro se* co-invention and

prosecution by attorneys as an agent for unavailable, hostile and dead co-inventors, which  legal

issues were not mentioned by the Court or the Defendants, and which Plaintiff asks the Court to

address before it is too late to rescue them from the <u>permanent</u> silencing of his political, religious

and personal voice of protest and recovery.

Indeed, Plaintiff has been subject to Constitutionally unequal discrimination and

treatment by selective refusal to give him a 'closing letter," in order to <u>permanently</u> weed him

out of the practice and privilege of patent law practice by an "embargo" against his practice in

both the Trademark and Patent Offices, and against his holding himself out as an unregistered

patent attorney, for which he is entitled to enjoy the benefits, in contrast to the thousands of age-

disabled, inactive attorneys who cannot pass the patent office exam but who have not been

removed from the rolls of registered attorneys without discipline or sanction by a mere

constitutionally deficient notice or a secret removal and a notice of "strategic mooting" in favor

of the attorney.   The purpose of unequal discrimination against age-disabled attorneys, who are

inactive because of an "embargo" of their right to practice without probable cause or a hearing, is

unfairly and manifestly unjustly to punish them by weeding them off the roster of attorneys in

order to decrease the work load of the PTO, rather than for the stated purpose of avoiding abuse

of applicants by an attorney under 35 U.S.C. 33 by making him pass a test in order to be

"recognized" to represent "others" or to "hold himself out," which is undefined, indefinable,

language, that is interpreted in clearly erroneous ways not authorized by Congress, and which is

unconstitutionally ambiguous, indefinite, uncertain and without legal meaning or effect.

Still further, Plaintiff's voice of political protest is ever-present in his well-drafted

complaint, which has ceaselessly challenged Defendants' consistent $40 tax without

representation for citizens of the District of Columbia in order to qualify to answer 100 questions

that take more than five minutes for young, healthy, white males to read, and which are

impossible to read, even with a readily available, enlarged format or zoom TV screen by age-

disabled seniors, to answer at a rate of between three to five additional minutes per question for

Continuing Legal Education or other mere academic reasons.   Moreover, Defendants charge an

unauthorized $450 fee to answer those 100 answers for Continuing Legal Education or other

merely academic reasons to answer the 100 questions every July.   Yet they refuse to make any

but minimal adjustments for review of the questions and answers for Continuing Legal
Education of age-disabled attorneys, including incomplete accommodations for Plaintiff's test-
adverse, age-related, life-function disabilities, as a matter of law under section 503 etc. of the
disability law, and section 115 of the Civil Rights Act of 1991 (P.L. 102-166, which amends 7
(e) of the ADEA (29 U.S.C. 621 et seq)., including without limitation, 626 (e).

     Defendants have ceaselessly challenged Plaintiff's Constitutional claims for a hearing
and damages and punished him for his attempt to be free of *prior restraint* of his expression in
Continuation applications under their Revised Rules, and, in fact, in all his patent and trademark
applications by *prior restraint* of his political opposition to Defendants' policy of suppressing his
patentable and other expressions in violation of the First Amendment, the due process clause and
the APA.

     There has been a showing that Defendants have not met their burden of proof that
Plaintiff's expressions are unprotected by the Constitution. There is an absence of adequate
safeguards against undue inhibition of protected expression that renders the statutory
requirement of *prior restraint* for censorship an invalid *previous restraint*. Freedman v.
Maryland, 380 U.S. 51 (1965).

     Plaintiff is not celebrating illegal drug use, nor is he a student that needs deterring by an
"important – indeed, perhaps compelling" interest. Morse v. Frederick, 439 F.3d 1114, 551 U.S.
____ (2007). His *pro se* practice or ability to hold himself out as an unregistered attorney
should be enabled by the Court. His good standing attests to his good conduct, good moral
standing and reputation, and lack of any intent in any manner to deceive, mislead, or threaten any
applicant or other person having immediate or prospective business before the Office. 35 U.S.C.
32. There is no overriding concern that must be the protection of applicants through the

admission of only those practitioners who have demonstrated that they have the knowledge and skills necessary to pass the patent office examination. He is un-registered attorney due to the manifestly unfair combination of "strategic mooting" in his favor on March 4, 1996 to embargo his practice in both the Trademark Office and the Patent Office, and its destruction and irreparably harmful exacerbation by the secret removal of his name and the identify theft of his ID on August 28, 1996, and he is seeking to protest that unfairness that prevented him from knowing when a five-year choke point for his inactivity would occur or did occur, and when the statute of limitations became effective to override the embargo that was placed on his practice on March 4, 1996. (Defendants' Exhibit 8) and that remains there to this day without a "closing letter."

He is not being enabled in any way to disrupt the *status quo* in the PTO or to bypass any PTO regulations or the intent of Congress. He is trying to obtain his Constitutional rights that are co-extensive with the rights of all attorneys to express and publish, and even advertise, their patentable, copyrightable, and trademark ideas, concepts, property and protests in applications, patent publications and patents, including Continuations with more that five claims and/or more than two Continuations and Reissues under 35 U.S.C. 101, or otherwise without the *prior restraint* by the Revised Rules, even while being permanently barred from registration by the manifestly unjust and clearly erroneous embargo on his practice from March 4, 1996 by "strategic mooting" and the unexpected secret removal of his name without probable cause, consent or notice. He is trying to obtain his Constitutional rights with the global equality that is available to all other human beings around the globe. Parker v. Chakrabarty, 447 U.S. 303 (1980).

8

The Defendants challenge to Plaintiff's Constitutional rights fails, as the Court's Memorandum Order also fails to acknowledge, *inter alia* because they fail to consider the APA.

The intent and procedures of the APA are inconsistent with pages 5 and 6 of Defendants' 12/30/07 Response [32]. On page 5 Defendants say that, "A duly licensed attorney may practice trademark and other non-patent law before the USPTO without being on the USPTO's register of patent practitioners. See 37 C.F.R. 10.14 (a).". But nevertheless, Plaintiff was subjected to an embargo of his practice by "strategic mooting" in his favor in both the Trademark Office and the Patent Office on March 4, 1996, and that embargo has not been removed by a "closing letter."

That "strategic mooting" was insidiously, permanently and humiliatingly transformed due to Plaintiff's age-related disabilities, by a manifestly unjust and secret "removal" of his name and by tampering with his ID by identity theft of his ID in the PTO without his knowledge, consent or Constitutionally sufficient notice in the Patent Office Official Gazette or otherwise, as required by the PTO rules and procedures.

Defendants on page 6, note 3, of their 1/30/08 Response [32], challenge Plaintiff's desire to be recognized to represent himself and others for "non-patent" law or to hold himself out to practice as a non-registered attorney.

Plaintiff is recognized as a duly licensed attorney in good standing in jurisdictions including Maryland, DC and New York, as pointed out by the Court on page 3, note 2 of their 2/25/08 Memorandum Order [46]. Accordingly, he is recognized to hold himself out as being in good standing to represent others in the PTO. For example, on page 5 Defendants insist, save for the embargo on Plaintiff's practice, that, "A duly licensed attorney may practice trademark and other non-patent law before the USPTO without being on USPTO's register of patent practitioners." And on page 6, Defendants retain and reaffirm their embargo against Plaintiff's

practice by refusing to recognize Plaintiff as an attorney in good standing by alleging "that it is the USPTO's position that, if Plaintiff is duly licensed to practice law…, then he may legally represent others in trademark and other non-patent matters."

On page 16 Defendants concede and affirm that Plaintiff can obtain limited recognition to prosecute international patent applications for others before the U.S. International a Preliminary Examining Authority, which is in the USPTO, under 37 C.F.R. 11.9 ( c). Also, Plaintiff can practice patent law in the USPTO on behalf of himself as an agent of his co-inventors, including without limitation those who are unavailable, hostile or dead. *See* U.S. Patent No. 5,256,367; MPEP 1.42; and Sperry v. Florida, 373 U.S. 379 (1963).

According to MPEP 1.42, "In case of the death of the inventor, the legal representative (executor, administrator, etc., of the deceased inventor may make the necessary oath or declaration, and apply for and obtain the patent." MPEP 402.01. That person may be the Plaintiff co-inventor who is a legal representative, executor or administrator. "An individual not registered under 11.6 may, upon a showing of circumstances which render it necessary or justifiable, and that the individual is of good moral character and reputation, be given limited recognition by the OED Director to prosecute as attorney or agent a specified patent application or specified patent applications." This includes unregistered *pro se* co-inventors, such as Plaintiff, who act as agents for their co-inventors, or their unavailable, hostile or dead co-inventors. *See* U.S. Patent No. 5,256,367.

In hearings in Congress it was stated in Sperry, *Id.*, that "Nothing herein shall be construed either to grant or to deny to any person who is not a lawyer the right to apply for or represent others before any agency or in any agency proceeding."

But on page 5 Defendants challenge the findings of fact by this Court under a policy of *prior restraint* to discipline and punish Plaintiff using the ambiguous and constitutionally indefinite word "non-patent" law, which he is allegedly free to prosecute because it is ambiguous, unclear, arbitrary and not defined. And there is otherwise no authorization to suppress and censor anyone's expression in a patent, as is clear to anyone reasonably and knowledgably informed as to the basis of unconstitutional *prior restraint* in patents according to "non-patent" law.

But even if he is not registered Plaintiff's complaint is submitted for the Court's review of the record, from which Plaintiff understands that the Court has not at this time yet decided the Defendants' Motion to Dismiss or Motion for Summary Judgment, which, therefore, with the Court's permission, will allow Plaintiff to timely reply herein to the Court's Memorandum Order [46] and to ask for reconsideration and reversal of the refusal to grant any of Plaintiff's Motions for lack of merit, because that refusal was based upon a mistaken phantom defense of the Defendants as to Plaintiff's request for a "Reinstatement Claim" on page 7 of Defendants' January 30, 2008 "Response To Plaintiff's December Filings" [32] that has no basis in fact.

Plaintiff would like to thank the Court for its effort in reviewing Plaintiff complaint and the record, which is incorporated by reference herein as a basis for consideration of what the Court mistakenly reported without final findings of fact as to what "appears" to be Plaintiff's request on page 1 of the Court's 2/25/08 Memorandum Order [46].

To this end, the Court mistakenly relied on what Plaintiff requests are, so for ease of explanation, Plaintiff has repeated what the Court says "appears" to be Plaintiff's requests, i.e., the Court's review reports that Plaintiff's request is for an order (1) enjoining the USPTO from requiring that Plaintiff pass the patent examination before being reinstated, (2) enjoining the

11

USPTO from preventing him from holding himself out to the public as a registered patent attorney, and (3) requiring the USPTO to provide reasonable accommodations when he sits for the patent examination.

In fact, Plaintiff would submit that his well-pled complaint and the record clearly by incorporation by reference herein and by judicial notice would require the Court to amend its understanding of what "appears" to be Plaintiff's request for an order as follows: it "appears' to be that Plaintiff's request is for an order:

Not for [(1) Enjoining the USPTO from requiring that Plaintiff pass the patent examination before being reinstated.], but:

(1) For damages under a Bivens claim against Defendants with qualified immunity, with and without waiver of personal service, and/or for tortuous interference, trespass and invasion of privacy and Freedom of speech and press under the First Amendment; also under the Fourth Amendment guarantee against unreasonable searches and seizures without probable cause, consent, warrant or arrest, and without cause or reason; and for lack of Due Process, and *inter alia,* under 28 U.S.C.1331, 1338, 1343, 1346, 1355 or color of office or on account of law or right, title or authority claimed under an Act of Congress, or for the collection of revenues under 1442 (appealable under 1291 or 1292), or without limitation under 48 U.S.C. 1983 or otherwise, and for Constitutional deprivations of Plaintiff by Defendants, with qualified immunity, including recovery for fees, expenses, costs, overcharges, charges without authority, lawyer's fees, fees for past services and for damages for "strategic mooting" of an investigation in favor of Plaintiff with intent to enforce the embargo of Plaintiff's practice by the secret removal of his name and ID under color of state and federal law, the secret removal of his name and ID from the

PTO register and theft of his ID being without probable cause and without a "closing letter" for up to over eleven years;

 and Plaintiff seeks damages for constitutionally deficient *prior restraint* of Plaintiff's expressions in patents and trademarks and in more than two Continuation patent applications, and for actions not in accordance with law that were clearly erroneous and beyond the scope of authority of Defendants by denying reasonable accommodations while making written answers to a series of 100 questions in the USPTO on successive July's since 2005, and for damages for *prior restraint* and other actions that deprived Plaintiff under color of state and federal law of rights, privileges and immunities secured by the Constitution and laws without due process, and without limitation under the First, Fourth, Fifth and Tenth Amendment, and because of the lack of narrow tailoring contrary to the compelling needs of public policy, and by arbitrary and capricious actions and *prior restraint* beyond the scope of their authority;

and Plaintiff seeks an Order from this Court enjoining the [USPTO] Defendants with qualified immunity (albeit, the Defendants have not pled qualified immunity, and Plaintiff requests leave for an interlocutory appeal if qualified immunity is denied by Defendants), said Defendants admitting to the genuine issue of material fact in dispute that they, or their agents or predecessors, acted by "strategic mooting" on March 4, 1996 (albeit also secretly or without notice to Plaintiff on August 28, 1996 and on June 15, 2000) [Defendants' Exhibits 8 and 33] under color of state and federal law without sanction, discipline, exclusion, suspension, refusal to recognize Plaintiff, or a requirement for a reply because Plaintiff is not required to answer an RFI incriminating Plaintiff because of a change of status action and a letter of complaint from a Mr. [redacted], as well as a letter from the Attorney Grievance Commission of Maryland enclosing a copy of a Maryland Order of the Court of Appeals of Maryland requested by

Plaintiff's Petition and incorporated by reference herein from the record herein and by judicial notice, full faith and credit under the Constitution, and 28 U.S.C. 1738;

said requested Maryland Order granting Plaintiff's petition in his favor on the face of that Order without any discipline or disability or any requirement for a showing of fitness for reinstatement from Inactive Status and without paying any fee or fees for active practice during the period of Plaintiff's inactivity in Maryland, and based upon the requested Maryland Court Order and other state Court Orders under color of state and federal law, as provided *INTER ALIA* under 28 U.S.C. 1442, and/or 42 U.S.C. chapter 21, Section 1983 and the APA;

And Plaintiff seeks an Order from this Court enjoining Defendants from requiring that Plaintiff apply for and pay a tax or fee of $40.00 for reinstatement to qualify to answer 100 questions designed for Continuing Legal Education purposes with previously allowed reasonable accommodations in two days or less availability; and enjoining Defendants from withholding reasonable accommodations, including enlarged print questions, answer sheets and readily available enlarged print computer generated MPEP resources for medically documented age-related life function disabilities not in dispute for a fee of $450; and enjoining restriction to freely review his corrected and/or uncorrected answers over a period of two days or more and frequently or sequentially because declaratory relief or alternatives were unavailable [pass the patent examination before reinstated],

Not [(2) Enjoining the USPTO from preventing him from holding himself out to the public as a registered patent attorney,] but:

(2) enjoining the [USPTO] the Defendants from preventing [him] Plaintiff from holding himself out to the public as [a registered] an unregistered patent attorney (albeit, the Court is asked for an Order enjoining Defendants from preventing Plaintiff from holding himself out as

14

an attorney in the Trademark Office and elsewhere, and as an attorney who holds himself out as a non-registered *pro se* practitioner in the U.S. and foreign Patent Offices and the U.S. Courts;

And for  damages for, and an injunction from, irreparable damages for **permanently** and substantively preventing Plaintiff from eligibility for holding himself out, and for holding himself out as an unregistered patent attorney in patent applications and more than five claims and/or in more than two Continuation patent applications;

And for damages for, and an injunction from, interference, and for infringement of Plaintiff's right of free political, religious and commercial speech and publication, and suppression, tampering with, removal of his ID, identity theft and the taking of his property, privileges, and immunities, including his trademarks, copyrights, patents, continuations and patent claims by Defendants' Revised Rules without probable cause or just compensation; and for *prior restraint,* censoring and editing of  Plaintiff's expressions, including his trademarks, and copyrighted expressions and advertisements by *prior restraint* without a hearing or judicial review of Plaintiff's eligibility for political, religious and commercial expressions, including true expressions of his political and religious views and opinions as to his status as an unregistered attorney in the Patent Office and the Trademark Office in a closely tailored way that does not in any way materially disrupt the rules or orders of the USPTO or anyone else, nor deceive anyone by his eligibility for insertion and his insertion into his United States patents and trademarks, including his *pro se* patents and applications for publication, without limitation, including such expressions as - "unregistered attorney, agent or firm," or "attorney, agent or firm," or "C.D.M. Judge Cornish ₜₘ ₛₘ ©," more than five claims in more than two continuations, continuation-in-part applications, reissue applications, RCE applications, CPA applications, and records or business under the Defendants Revised Rules in the USPTO for himself or co-inventors who are

unavailable, hostile or dead,  e.g., as to his unregistered status as an attorney, agent or firm  [from requiring that Plaintiff pass the patent examination before being reinstated].

Not [(3) Requiring the USPTO to provide reasonable accommodations when he sits for the patent examination.] but:

(3) Requiring the USPTO to provide reasonable accommodations [when he sits for the patent examination].Enjoining Defendants from requiring Plaintiff to answer questions for Continuing Legal Education purposes without reasonable accommodations, and/or from paying fees and and/or fees that are overcharged, and/or that are not authorized and/or that are beyond the scope of Defendants' authority.

(4) Enjoining Defendants from refusing to provide reasonable accommodations for age-related life functions, including seeing, hearing, breathing, blood circulating and excreting, for which they stipulated that they "foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him[for the July 2007 examination"] in July 2007. (Defendants' Exhibit 33).

(5) Enjoining Defendants from discriminating against Plaintiff because of his age, race and gender, and/or under the Age Discrimination in Employment Act of 1967, and/or under section 504 of the Rehabilitation Act.

(6) Enjoining Defendants from refusing to provide a certified copy of the enrollment and discipline record of Plaintiff in the PTO.

(7) Enjoining Defendants from refusing to give Plaintiff a "closing letter."

 (8) Enjoining Defendants from relentless and unrelenting threats of prosecution under 35 U.S.C. 33.

(9) Enjoining Defendants from relentless and unrelenting insistence that Defendants are not preventing Plaintiff from practicing as a recognized attorney in the Trademark Office, and as an unregistered attorney who is recognized as an experienced practitioner to prosecute patent applications *pro se* in the Patent Office for himself, for relatives and other co-inventors, including ethically willing and well-informed co-inventors and/or co-inventors who are absent, hostile or dead, by failure to give Plaintiff a "closing letter," threats of prosecution under 35 U.S.C. 33, and threats of discipline, sanction, failing to recognize, or by exclusion or suspension under 35 U.S.C. 32.

(10) Enjoining Defendants under the APA from enforcing their Revised Rules without authorization and beyond the scope of their authority by arbitrary and capricious action to be effective August 1, 2007, by constitutionally deficient *prior restraint* to exclude and suppress Plaintiff's free speech, press and religious rights of pure expressions in more than five claims and/or more than two Continuations, and which are now under Preliminary Injunction in the District Court of Virginia, Alexandria Division under the APA, and for damages for *prior restraint* and other actions that when and if the Revised Rules are enforced would deprive Plaintiff without just compensation, a hearing or judicial review, under color of state law or otherwise, of rights, privileges and immunities secured by the Constitution and laws without due process, and under the First, Fourth, Fifth and Tenth Amendment, without limitation thereto, and without narrow tailoring contrary to the compelling needs of public policy, and by arbitrary and capricious actions beyond the scope of their authority;

(11) Enjoining Defendants from referring derogatorily to Plaintiff's request for the aid of Counsel, referral to a Lawyer Counseling Panel that deals with apparent abuse of alcohol or drugs under LCvR 83.20.

17

(12) Enjoining Defendants from denying that there are genuine material facts in dispute that are relevant and material to issues upon which Defendants' Motion to Dismiss is based.

(13) Enjoining Defendants failure to meet their burden of proof and requirement of proving that Plaintiff's expressions and substantive eligibility of Plaintiff's prohibited, restricted, suppressed and censored expressions in his applications for publication and Continuations are unprotected by the Constitution (Freedman v. Maryland, 380 U.S. 51 (1965)), and are not arbitrary and capricious.

(14) Enjoining Defendants from denying that a genuine material fact in dispute upon which Defendants Motion to Dismiss relies is the fact that Plaintiff's *pro se* expressions indicative of his desired and existing practice as an un-registered practitioner is permanently prohibited, restricted, suppressed and censored, whereby he and all other like situated unregistered, *pro se* attorneys are permanently barred from using their *pro se* expressions as unregistered attorneys, and they are permanently barred by Defendants' *prior restraint,* despite the fact in dispute that they are not being deceptive to the public, or disruptive or in violation of the PTO rules, policies and/or requirements, nor would their prohibited expressions advocate or promote illegal activity in violation of PTO policy, including the policy and overriding concern of the PTO General Counsel Toupin under 37 C.F.R. 11.2 (d) on July 12, 2006 in reviewing a petition for limited recognition but construed by Defendant Moatz to be for suspension of the rules under 37 C.F.R. 11.3 that it "must be the protection of applicants through the admission of only those practitioners who have demonstrated that they have the knowledge and skills necessary to pass the examination."

(15) Enjoining Defendants from misinforming the Court as to what Plaintiff's Docket No. 28 at 5 and 16 relate in connection with Plaintiff's "competence" and "qualifications" as an

unregistered *pro se* attorney in good standing, since both involve factual issues not admitted by the Defendants, but recognized by the Court on page 5 of their Memorandum Order of 2/25/08 [46], i.e., that "Cornish is free to earn a living by practicing non-patent law in the jurisdictions in which he is an attorney in good standing…" (albeit, the Defendants refuse to admit that Plaintiff is an attorney in good standing in the Trademark Office, which is a jurisdiction in which he is an attorney in good standing, or as an unregistered *pro se* practitioner for himself and co-inventors who are absent, hostile or dead in the Patent Office, which is a jurisdiction in which he is an attorney in good standing, all of which is material to the refusal to grant Defendants' Motion to Dismiss because those factual issues are in dispute and are material to Plaintiff's claim that he can prove without doubt that those facts are material and relevant to Dismissal of Defendants' Dispositive Motions (albeit, that "competence" and those "qualifications" can be used to prove that Plaintiff is a "competent" and "qualified" attorney in good standing in the Trademark Office, and an attorney in good standing in the Patent Office, as an unregistered *pro se* co-inventor of Continuations prohibited by the Revised Rules, or as he would have done in his U.S. Patent No. 5,256,367 if he were unregistered, whereby he can file *pro se* applications and Continuations prohibited by the Revised Rules as an unregistered attorney for himself and co-inventors who are unavailable, hostile or dead).

(16) Enjoining Defendants from relentlessly and endlessly denying the relevance and materiality when "Plaintiff argues that his "competence" and "qualification" to file *pro se* applications in jurisdiction in which he is in good standing are factual issues that prevent the Court from ruling on Defendants' Motion to Dismiss a "reinstatement claim," especially since the Defendants endlessly and relentlessly, and to Plaintiff mistakenly, argue a fact that does not exist, namely a phantom "reinstatement claim."

(16) Enjoining Defendants from denying that their *prior restraint* would <u>irreparably</u> harm Plaintiff by <u>permanently</u> preventing him from being eligible to publish or to exercise his constitutional rights and privileges, and by suffering the <u>permanent</u> taking and interference with his property by *prior restraint*, including expressions in his applications and trademarks of his patents, trademarks and copyrights  without just compensation of law.

<u>(16) Enjoining Defendants from denying that Plaintiff has an actionable claim for damages and constitutional deprivations, including permanent irreparable harm by *prior restraint* of more than two Continuations under their Revised Rules without a request for reinstatement.</u>

<u>(17) Enjoining Defendants  from denying that there is a genuine material fact in dispute as to Plaintiff's alleged failure in a timely manner to exhaust his administrative remedies for attacking Defendants *prior restraint* in this Court of Plaintiff's Continuations on Constitutional grounds under 42 U.S.C. 1893, including First Amendment and Due Process claims, and also under the APA (5 U.S.C. 703 *et. Seq.*) in reference to their Revised Rules that were to be effective November 1, 2007 (72 Fed, Reg. 46716, 46716046843 – Aug. 21, 2007), and other actions that when and if the Revised Rules are enforced would deprive Plaintiff without just compensation of a hearing or judicial review, under color of state law or otherwise, as to Plaintiff's rights, privileges and immunities secured by the Constitution and laws without due process, and under the First, Fourth, Fifth and Tenth Amendment, without limitation thereto, and without narrow tailoring contrary to the compelling needs of public policy, and by arbitrary and capricious actions beyond the scope of their authority;</u>

<u>(14) Enjoin Defendants from denying that Defendants' Dispositive Motions should not be dismissed for Plaintiff's failure to state a claim upon which relief can be granted if it appears</u>

beyond doubt that Plaintiff can prove a set of facts in support of his claim that would entitle him to relief. Latin American Agribusiness Development Corp., 711 F.2d 899, 995 (11th Cir. 1983).

(15) Enjoining Defendants from refusing or delaying further to reply to Plaintiff's FOIA and EEO requests.

Plaintiff Motion for tolling the time for filing of his complaint for Preliminary Injunction, was necessary to oppose Defendants' permanent irreparable *prior restraint* of Plaintiff's constitutional rights, including particularly his right to publish the subject matter of his pure, unedited, expression of the religious content of his personal viewpoint as a Eucharistic minister and acolyte of his religious Catholic calling, and to use his name and trademark in more than two Continuations.  His name was taken from the book of "Judges" in the bible, and joined with his occupation to identity him as a living, unregistered attorney in patent and trademark applications under the speech, press and religion clauses of the First Amendment, including his currently pending applications, which have been censored by Defendants' *prior restraint*.

The subject matter and expressive content of Defendants' *prior restraint* of the subject matter and expressive content of Plaintiff's uniquely presents his expression of his constitutional rights under the speech, press and religious clauses of the First Amendment, as made manifest in such cited decisions as Parker v. Chakrabarty, 477 U.S. 303 (1980).  Plaintiff's First Amendment rights have also been violated under the Due Process Clause because of the constitutionally insufficient notice of their final decision of *prior restraint* on August 22, 2007, but also because Defendant Griffin, Defendant Moatz's predecessor and Defendant Moatz himself have caused unavoidable and un-intentioned delay in filing of Plaintiff's Complaint.

As shown by Defendants' constitutionally insufficient Notice on August 22, 2007, and in Defendants' Exhibits 8 and 33, which were new evidence not available at the time to the Plaintiff

21

before the filing of Defendants' Opposition [7] on 10/16/07, that is evidence, which is un-rebutted, that shows that they acted intentionally, and secretly as biased, investigators, prosecutors, and not as adjudicators, but against their own ethical duties, and in a conflict of interest with those ethical duties, constraints and requirements, without authorization, by overreaching and clearly erroneous fault and by mistake with untrammeled, unsupervised, overbroad discretion, not based upon constitutional statutes.

In re Murchison, 349 U.S. 133, 136 (1966), stands for the requirement for a "fair trial in a fair tribunal, as a basic requirement of due process. In that case, which is like this one, a showing has been made that raised serious questions under the federal Constitution. That is reason enough for denying a Motion to Dismiss. The Court found that a procedure which "empowered a judge under [state] law to sit as a [secret] one-man grand jury," as Defendants mistakenly believe they are empowered to do by federal law, or as they have otherwise non-judicially done in this case by their 10/16/07 Exhibits 8 and 33 [7], using secret testimony, and to try and convict the Plaintiff based upon their own, non-judicial, one-man or one-woman prejudice and selfish pre-judgment bias, without notice to the Plaintiff or testing by adequate cross-examination, "is a denial of due process," (albeit, testimony submitted in Exhibit 3, which was used in this case, was inadmissible, scurrilous and libelous hearsay barred by the statute of limitations, and that allowed for  no exception by a holding of anyone in contempt of court).  As the author stated in his Wigmore On Evidence, 1904 edition, "It may be that in more than one sense [cross-examination] takes the place in our system which torture occupied in the medieval system of the civilians.  Nevertheless, it is beyond any doubt the greatest legal engine ever invented for the discovery of truth.  However, difficult it may be for the laymen, the scientist, or the foreign jurist to appreciate its wonderful power . . . cross-examination, not trial by jury, is the

22

great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure." <u>Washington Lawyer,</u> Jacob A. Stein, p. 48, January 2008.

In <u>Withrow v. Larkin,</u> 421 U.S. 35 (1975), "a three-judge court declared that the statute empowering the Board temporarily to suspend a physician's license with formal proceedings was unconstitutional and preliminarily enjoined the Board from enforcing it on the ground that it would be a denial of due process for the board to suspend expellee's license at its own contested hearing on charges evolving form its own investigation." And the statutes forbad the practice of the defendant's profession without a license based upon professional misconduct proscribing fee splitting, and illegally practicing under any name other than the name under which his license had been issued if the public would be misled, such practice would constitute unfair competition with another person, or other detriment to the profession would result.

To enforce those provisions, the Examining Board was empowered to warn and reprimand, temporarily to <u>suspend</u> the defendant's license, and "to institute criminal action or action to revoke license when it finds probable cause therefor under criminal or revocation statute. . ." And in that case, adequate, constitutionally sufficient notice was given, and an investigative proceeding before the Examining Board was commenced. Aslo, a <u>hearing</u> was held, whereas, in this case no constitutionally sufficient notice was given, and no opportunity for a hearing was given. The Director of OED held a secret one woman internal evaluation without a hearing, and a simultaneous pre-judgment bias, without any investigation, witnesses, probable cause or any notice of any kind to Plaintiff. No notice in the OG of the unauthorized, constitutionally void, and, therefore, false, fraudulent and secret removal of his name was sent to Plaintiff. See the secret handwritten note dated August 28, 1996 in Defendants' Exhibit 8 [7], which asked for an otherwise unidentified person named "Pat" to "pls. Remove Mr. Cornish

from the roster." And the letter of June 15, 2000 by Defendant Moatz published the libel without notice to Plaintiff in Exhibit 33 [7].

Accordingly, Plaintiff's Motion for tolling of the critical time for filing of his Complaint should be reconsidered and granted along with a Preliminary Injunction. And Defendants' Motion to Dismiss should be denied, along with their Motion for Summary Judgment.

Plaintiff's request for pre-enforcement Preliminary Injunction or Temporary Restraining Order of the Revised Rules, were apparently denied by the Court's Memorandum Order, although those Rules were not mentioned by the Court or the Defendants, so Plaintiff is compelled by justice to ask for reconsideration and a stay for appeal if reconsideration is denied on the basis that he has been irreparably harmed by the Revised Rules.

To this end, they intend to unconstitutionally and permanently censor by *prior restraint* more than five claims and/or more than two Continuation patent applications, and on that basis Plaintiff will likely succeed on the merits if his Preliminary Injunction is granted in his favor after reconsideration, and that will in no way injure the Defendants or the public. It will enhance the public's right to know and restore the *status quo*. The Revised Rules without an emergency preliminary injunction or a temporary restraining order on the basis of First Amendment *prior restraint* will irreparably silence Plaintiff's inventions in his Continuations on grounds not covered by the preliminary injunction in Virginia. And on those Constitutional grounds, and his claim for damages, which is lacking in the Virginia cases, he will be permanently silenced without an emergency injunction or restraining order in case the Virginia injunction is withdrawn. Plaintiff's inventive and politically motivated expressions will be permanently lost immediately in the lost claims and Continuations, along with lost property and privileges in his copyrightable expressions, trademarks, expressions of included religious and political complaints

and beliefs and religious and legal standing in his profession in support of the First Amendment.

The Revised Rules will permanently discriminate against him and infringe his religious and

property rights because of his age and religious beliefs in his calling and name if it is not granted.

Likewise, the Defendants' *prior restraint* in and outside of the PTO will irreparably injure

Plaintiff retroactively in the past and going forward indefinitely into the future unless the

requested tolling and Preliminary Injunction is granted.

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
DC Bar # 366240
1101NewHampshireAve.NW
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    03/05/08

P.S.    Past enlarged print test questions and answers available on-line have been requested for
$30.00 by credit card for review.

CASE  07-cv-01719 (RWR)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of one copy of the foregoing Plaintiff's Reply has been

hand delivered to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this ~~4th~~ 5th  day of March, 2008.

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
1101 New Hampshire Ave., #301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:    03/05/08