THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| v. | ) |
| | ) CASE 07-cv-01719 (RWR) |
| | ) |
| JON DUDAS, et al. | ) |
| | ) |
| Defendants | ) |

**Motion Not To Grant Defendants' Dispositive Motions Without Granting Plaintiff Equitable Relief And Damages To Ensure The Enforceability Of Defendants Voluntary Concessions; For Reconsideration of Plaintiff's Denied Motions, Which Have Been Revised;
<u>And For Amendment Or Vacation Of Defendants Excuse From Responding</u>**

**Background**

**Plaintiff is will aware of the Court's need for efficiency, particularly in view of its heavy work-load and its habit of not granting oral hearings, although in this case Plaintiff feels that an oral hearing would have saved much time and work-load on the part of all parties. The District Court of the Eastern District of New York granted Plaintiff a hearing and disposed of any lingering reciprocal matters in response to the 1995 Maryland Order at issue in this case that has given this Court and the Defendants so much annoyance, irritation, frustration, surprise, and perhaps puzzlement. Accordingly, Plaintiff's Motion is an attempt to put this matter in better perspective, particularly, since Plaintiff feels that the Court has misdirected its focus in response to that matter, and the Defendants have been like a dog with a bone in running the Maryland Order into the ground or off the tracks as far as the Plaintiff's legal claim is concerned.**

1

RECEIVED

MAR 1 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

To this end, Plaintiff's Revised Motions and request for reconsideration acknowledges that this Court is apparently four times as efficient as the Defendants in considering Plaintiff's Motions relating to the origins of this case in Maryland. Plaintiff's Motions were roughly twice as many as those of the Defendants in trying to put that matter into perspective. The Court simply allowed Defendants not to answer while disposing of Plaintiff's Motions as simply "without merit." Moreover, the Court fortunately did not censure Plaintiff, but simply disposed of pending matters by simply finding that Plaintiff's Denied Motions were "without merit."

Thus, Plaintiff is grateful for not having been cut off from making Motions, particularly this Motion, to straighten this matter out, and also for not being censored or edited in making Motions, as requested by the Defendants in connection with their mistakes originating in connection with the Maryland Order of 1995, and their attempts to obstruct justice by accusing Plaintiff of corrupting his registration, asking for an Order of Protection and a Motion to Dismiss.

On Pages 2 and 3 of the Court's Order of 2/25/08 [46], the Court states that "Cornish was removed from the register of attorneys in Maryland after a grievance was filed against him, but there is nothing in the record that Plaintiff could find to substantiate the apparent thrust of the Court's comment, which appeared to be that the "removal" was the result of that grievance, and, thus, a corruption of his registration on that Maryland register.

In fact, Maryland granted Plaintiff an unrestricted, temporary, Order of inactivity in his favor in 1995, at his request, without any sanction, any grievance, or any requirement for a showing of fitness for reinstatement because of any grievance or

2

disability. That Order was in favor of the Plaintiff without any findings of fact or reference to the grievance because that 1995 Maryland Order simply and temporarily removed a requirement for the payment of a yearly fee for active attorneys, as was recognized in the District of Columbia and New York State, who, as this Court points out in note 2 on page 3 in their Orders temporarily suspended Plaintiff until he was reinstated in Maryland. *See* also Attorney Grievance Commission of Maryland v. Ruffin, 369 Md. 238, 252, 798 A2d 1139, 1147 (2002); and Defendants' Exhibit 22 (B).

That is significant because, after a hearing was held, the District of Columbia reinstated Plaintiff as an active attorney on November 16, 2000, which was less than three years after he became an inactive attorney on August 17, 1998 in New York. This was long before Plaintiff could or would approach any five-year choke point for inactivity, which he could not and did not know about until October 17, 2007, when Defendants filed their Opposition in this case. This was because it was the secret corruption of his registration by the Defendants that intervened on August 28, 1996 without notice or expectation by the Plaintiff.

And without Constitutionally sufficient notice of the unjustified and illegal secret corruption of his registration by the Defendants on August 28, 1996, which is a genuine legal issue of dispute that is ripe for decision in this case, Plaintiff could confidently know, assert and, therefore, hold himself out, as he did with certainty, as qualified to be a patent agent during the interim from his inactivity in New York on August 28, 1996 until when he came to be qualified as an attorney in the District of Columbia and the Patent Trademark Office on November 16, 2000. Thus, as far as the PTO and the Plaintiff should have known or needed to know without the intervention, embargo, and illegal and secret acts of the

3

Defendants corruption of Plaintiff's registration on August 28, 1996, he and his registration were uncorrupted in the Trademark Office until August 17, 1998, which was less than two years. As far as Plaintiff could know, he remained qualified as a registered agent in the Patent Office from August 28, 1996 until November 16, 2000, when, as far as he knew with certainty, that he was qualified as an active registered patent and trademark attorney. And as far as he could know, he remained registered as an active registered patent and trademark attorney, and accordingly, he could hold himself out as an uncorrupted registered patent and trademark attorney ever since, at least until the Defendants informed him of their secret and illegal corruption of his registration on August 28, 1996. Except for their illegal and secret corruption of his registration on August 28, 1996, Plaintiff would not be in this Court today. He only found out the extent of the Defendants' illegal acts and corruption of his registration on October 17, 2007 by Defendants' filing in this case.

The allegation of corruption, or the appearance thereof, was by the Defendants, not from any acts or failure to act by the Plaintiff. It was the Defendants who thrust the requirements of registration under 37 C.F.R. 10.7 before the Plaintiff on October 17, 2007. There was no such accusation of corruption or basis for any such accusation or expectation of any such future corruption on March 4, 1996 in the Director's letter holding an investigation in abeyance by Bar Counsel. That letter gave no indication that the Defendants could unilaterally and secretly corrupt Plaintiff's registration without constitutionally sufficient notice to the Plaintiff. And there was no constitutionally sufficient notice that they would corrupt Plaintiff's registration unilaterally and secretly if Plaintiff did not notify the Defendants that he was active in the Trademark Office and/or the Patent Office.

4

Since November 5, 1958 Plaintiff was qualified, and did and does justifiably hold himself out to be a patent and trademark attorney. It is his "title" and the description of his privilege and property right as part of his common law, and soon to be registered trademark and copyright. It is a fundamental and genuine issue of fact and question of law in dispute now in this case that is ripe for a decision by this Court, as to what the damages, fees, costs, expenses, and attorneys fees are in this case for the illegal, unilateral and secret corruption of his registration on August 28, 1996 by the Defendants without Constitutionally sufficient notice.

It is also a fundamental question and fact and question of law in dispute and ripe for a decision in this case, as to whether Plaintiff ever exceeded any five-year inactivity choke-point whereby he corrupted his registration or appears to corrupt his registration. Moreover, another genuine and fundamentally important issue of fact in dispute in this case is whether Plaintiff was required by the PTO regulations to ask for permission to withdraw from active participation as an attorney in the prosecution of patent applications in which he was involved in 1995 and 1996. Accordingly, it is a fundamental legal question in dispute that is ripe for a decision in this case based upon the record in this case yet to be developed by discovery, as to whether Plaintiff did so and was granted permission to withdraw in 1995 and 1996 by the Director's letter of March 4, 1996, and/or otherwise. Plaintiff is still waiting for an answer to an interrogatory in this matter. All of this is relevant in this case because there is a legal question at stake as to whether Plaintiff had to wait for notice of Defendants' corruption of his registration in the Official Gazette, and did the Defendants ever conform or follow their own regulations in that matter by publishing their corruption of Plaintiff's registration in the Official Gazette? Plaintiff alleges that no

5

such notice was ever published in the Official Gazette, as he has not been able to find, nor

has he observed any such publication of any such notice.

## CONCLUSION

In view of the above, the Court is requested to reconsider and review Plaintiff's Motions as
follows:

Motion Not To Grant Defendants' Dispositive Motions Without Granting Plaintiff

Equitable Relief And Damages To Ensure The Enforceability Of Defendants

Voluntary Concessions; For Reconsideration of Plaintiff's Denied Motions, Which

Have Been Revised;

And For Amendment Or Vacation Of Defendants Excuse From Responding

To the Plaintiff's request for: a decision as to whether the Plaintiff has a legal right, as a

matter of law, to use the following name, ID, "title" and privilege in his applications:

*"Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or *"Attorney, Agent or Firm* –
Cornell D.M. Judge Cornish TM SM "
Downpat [(c) 2008]

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 3/7/68

6

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 17th day of ~~February~~ *March*, 2008.

*Cornell D. M. Judge Cornish*

       Cornell D.M. Judge Cornish
       DC Bar #366240
       1101 New Hampshire Ave., NW, Suite 301
       **Washington, DC 20037-1502**
       **(202) 429-9705**
       **cornishj@erols.com**

Date: 3/17/08

THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                                     )
             Plaintiff *Pro Se*    )
        v.                     )
                                     )   CASE  07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.                )
                                     )
            Defendants      )
_____)

**Memorandum In Support of Review and Reconsideration of Plaintiff's Resubmitted and Revised Motions And Petition Under 5 U.S.C.706 For Relief, Or Under 705 For Damages and Relief Pending Review By Leave To Postpone Or Not To Grant Defendants' Dispositive Motions To Dismiss Or, Alternately For Summary Judgment Without Granting Plaintiff Injunctive Relief To Ensure The Enforceability Of Defendants Voluntary Concessions**
**<u>And For Amendment Or Vacation Of Defendants Excuse From Responding</u>**

### <u>Facts In Dispute</u>

On Pages 2 and 3 of the Court's Order of 2/25/08 [46], the Court states that "Cornish was removed from the register of attorneys in Maryland after a grievance was filed against him, but there is nothing in the record to substantiate that. In fact, Maryland granted him an unrestricted, temporary, Order of inactivity in his favor at his request without any requirement for a showing of fitness for reinstatement. That Order was in favor of the Plaintiff because it temporarily removed a requirement for the payment of a yearly fee for active attorneys, as was recognized in the District of Columbia and New York State, who, as the Court points out in note 2 on page 3 in their Orders temporarily suspended Plaintiff until he was reinstated in Maryland. Instead, after a hearing was held, the District of Columbia reinstated him long before Maryland did so without any requirement for a showing of fitness or objection by Bar Counsel.

1

Moreover, Plaintiff was required by the PTO regulations to ask for permission to withdraw from active participation as an attorney in the prosecution of patent applications in which he was involved in 1995. Accordingly, he did so and was granted permission to withdraw in 1995 and 1996. His 2/8/96 letter that was mentioned by this Court was not sent "As a result" of the Plaintiff's temporary inactivity in Maryland. It was in conformance with the requirements of the PTO for withdrawal. It reiterated the temporary nature of that withdrawal as an attorney, not as an agent, in order to conform to the requirements of the PTO for registered attorneys.

The director of the USPTO's Office of Enrollment Discipline ("OED") sent a March 4, 1996 letter to Cornish, not as stated by this Court in response to his letter, or with sufficient time for a response. That letter was fashioned as an optional Request For Information (RFI). Plaintiff had already obtained permission to withdraw from representation as an attorney in connection with the matters discussed. Because of that fact, there was no requirement for Plaintiff to reply.

The purpose of the Director's letter was clearly for the first time to "apprise you that we are in receipt of a letter of complaint from a Mr. [redacted], as well as a letter from the Attorney Grievance Commission of Maryland enclosing a copy of an Order of the Court of Appeals of Maryland granting your petition for Inactive Status from the practice of law." That was the 1995 Maryland Order in favor of the Plaintiff's temporary inactivity at his request without sanction or any requirement for a showing of fitness for reinstatement. It released him from a requirement to pay a yearly fee for active practice. That was the 1995 Order in Plaintiff's favor upon which Defendants chose on 8/4/96 to declare the matter "strategically mooted" in the PTO. That 1995 Order gave no probable cause or basis to punish Plaintiff, to corrupt his registration, or to accuse him of the appearance of corruption of his 11/5/58 registration as a patent attorney.

2

The Director was required by the PTO rules to investigate that "complaint" but never did so. On 8/28/96 the Director without any investigation, probable cause or rational basis in fact, secretly corrupted the Plaintiff's identity, title and record of his privilege as an attorney in the PTO without notice to the Plaintiff or opportunity for a hearing, as required by the PTO regulations, in order to prevent <u>his</u> alleged corruption or <u>his</u> appearance thereof. These actions irreparably damaged Plaintiff's professional career because he was not apprised of the secret corruption and theft of his name, identity and title until Defendants' 10/16/07 Memorandum in Opposition [7]. It was then that Defendants disclosed their intention of permanently making it impossible for Plaintiff to meet their unjustified requirements for recognition of his name, title and privilege and to punish him without probable cause, rational reason or basis in fact for <u>his</u> permanent corruption or the appearance thereof in the PTO and elsewhere as an unregistered patent attorney, not only in Continuations by their Revised Rules, but in all his activities, and especially in his political and religious complaints and protests. To this end, Defendants instituted a program of *prior restraint* of his expressions of his name, title and privilege as a non-registered patent attorney, and by continuing to thwart his attempts to obtain judicial intervention, and by obstruction of justice.

This is a Memorandum in support of Review and Reconsideration of Plaintiff's Resubmitted and Revised *pro se* Constitutional and <u>Bivens</u> tort Claims and Motions For Damages and Relief, *inter alia,* under the Constitution, to prevent *prior restraint* of <u>all</u> Plaintiff's expressions as an attorney under 5 U.S.C. 706, or alternately, *inter alia,* Pending Review under 5 U.S.C. 705, by finally denying Defendants' Dispositive Motions, or not granting them without granting Plaintiff an Injunction, Declaratory Relief and damages to ensure the enforceability of Defendants voluntary concessions.

3

Also, this is in support of Review and Reconsideration of Plaintiff's Resubmitted and Revised *pro se* Motions to hold a hearing or under 5 U.S.C. 702 and 704 for review and for return of "tariffs" required by Defendants to be paid by Plaintiff under 37 C.F.R. 1.21 (a) (1) (i) and (ii) (b) to prevent Plaintiff's alleged corruption or the appearance thereof; under U.S.C. 702 and 704 for review and reversal of the requirement to pay the "tariffs" required by the manifestly unjust forced secret "expiration" of Plaintiff's registration of his name, title and Constitutional privilege as an attorney without Constitutionally sufficient notice, publication in the Official Gazette, probable cause or excuse by "strategic mooting," "title abuse," interference with his title and identity by secret identity theft and removal of his name from the register of attorneys without probable cause, excuse or Constitutionally sufficient notice, which are all genuine issues of fact that are in dispute.

And Plaintiff's pre-enforcement claims seek an Order enjoining Defendants from the *prior restraint* of Plaintiff's political and religious protest for *prior restraint* of his use of his name, title and privilege, and from holding himself out as a non-registered attorney, and the *prior restraint* directed against his filing of more than five claims in more than two Continuation patent applications.

To this end, Plaintiff seeks reconsideration of his <u>Bivens</u> request for damages for the tort of interference with his name and ID, and for holding himself out as a non-registered patent attorney; reconsideration of his revised request for a Temporary Restraining Order to enjoin Defendants from threatening criminal prosecution for holding himself out as a non-registered patent attorney; reconsideration of Plaintiff's Motion for a Preliminary and Permanent Injunction to enjoin Defendants from enforcing said "tariffs" and prior restraint against his expressions as aforesaid in patents and trademarks and elsewhere; and also specifically for relief

4

under 5 U.S.C. 556, 557 and 558 (a), (b) and (c) for review and return of two "tariffs" paid under

37 C.F.R. 1.21 (a) (1) (i) [2 x $40 ea.] and (ii) (b) [2 x $450 ea.]; and review and reversal of

Commissioner's *prior restraint* by revision of the settled law of the *status quo* by enjoining

Defendants from requiring the payments of the "tariffs" by implementing the forced "expiration"

of Plaintiff's license dated November 5, 1958 by "strategic mooting" and secret removal of his

name from the register of attorneys.

These are genuine issues of material fact in dispute, and not mere colorable substantive

questions, as to whether Defendants are absolutely immune from suit for damages, whether

Plaintiff is "eligible" to be a non-registered *pro se* "practitioner" with limited recognition

without paying the "tariffs," and whether he is "eligible" under the First Amendment to express

his "title" as a non-registered attorney without "title abuse" or "identity theft" in a patent or

whether *prior restraint* is an <u>absolute *de facto* bar</u> as retribution and punishment for his

expressions of political and religious outrage against age-related disabilities without reasonable

accommodations that have been denied to him, or as solutions for the public good to counteract

his alleged corruption or appearance thereof.

Plaintiff alleges that there has been a clear Constitutional error of judgment in these

matters beyond the scope of the Defendants' Constitutional authority by arbitrary and capricious

use of their discretion not in accordance with law.

The irreparable and Constitutional harm to Plaintiff is like that of a threat to chop down a

fifty-year old shade tree that is irreplaceable. Defendants threaten to punish and permanently to

prevent Plaintiff's alleged corruption or appearance thereof by using his justifiably accurate

"title" and privilege to hold himself out as a non-registered attorney by threatening to chop down

his political and religious protest without Constitutional right or probable cause and without fault

5

of his own by the secret removal of his name from the registry of attorneys in the PTO without Constitutionally sufficient notice in violation of his First Amendment and due process rights. The result is an emergency to prevent irreparable harm because the Defendants intend maliciously to use his age related disabilities to punish him and to make it impossible for him to restore his fifty-year career and reputation again by practicing without prior restraint according to the current patent office policies and requirements. His political and religious protest is precariously endangered by threats of criminal prosecution for practicing, or even holding himself out, as a non-registered patent attorney. His situation is like an excavation without suitable retaining walls to prevent a cave-in. In both cases of emergency, the harm is irreparable and possibly lethal to his career and reputation by the threat of a permanent cave-in without judicial intervention because there is no possibility of his recreating his "title" as it was on November 5, 1958 without help and immediate intervention by the judiciary, and this Court in particular.

The irreparable harm that Plaintiff is forced to face with no fault of his own, is like that faced by PhD's who use their title in Germany where Nazi era laws prevent anyone except those having a German PhD from using the title of "Doctor." Doing so causes one to face criminal prosecution in Germany according to the March 14, 2008 Washington Post, page A1 and A12. And Defendants threaten Plaintiff with criminal prosecution and a fine of $1000 for each use of the "title" non-registered patent attorney as a political and religious protest under 35 U.S.C. 33 for allegedly holding himself out corruptly and with the appearance of corruption as a non-registered patent attorney.

See page 7, of Defendants' 1/30/08 "Response To Plaintiff's December Filings." There Defendants state that, "...Plaintiff may not legally hold himself out, or permit himself to be held

6

out, as being recognized to practice patent law before the USPTO. See 35 U.S.C. 33." But he is legally, correctly and justifiably able to do so under current regulations governing the practice of patent law in the Patent Office as a non-registered patent attorney in his currently pending patent application S.N. 29/273,235, filed 2/26/07 because his title justifiably is, as it has been for over 30 years, "patent attorney." No one has legally taken that justifiably useful "title" or "identity" away from him for cause or under law because of misconduct or disability, or any other reason provided for by law since the Defendants granted that privilege to him on November 5, 1958, except they did so secretly with constitutionally insufficient notice on or about August 28, 1996 because of Plaintiff's alleged corruption or threat of corruption.

And it is justifiably within the present parameters of the Patent Laws and Regulations to use that title of his privilege as a political and religious protest without the *prior restraint* of the Defendants' Revised Rules in applications and Continuations of parent applications, by which the Defendants propose to take that constitutionally awarded title of his privilege away from him unjustifiably without proper procedures according to law under the APA because of alleged corruption or the threat thereof.

Still further, the current Patent Laws and Regulations allow him likewise to use that title of his constitutionally guaranteed privilege without *prior restraint, corruption or the threat of corruption*, for his co-inventors who give him a power of attorney to do so, or if they are unavailable, hostile or dead, and Plaintiff may do so as an executor or assignee without corruption or the threat of corruption.

As pointed out in "Plaintiff's Timely Response To Memorandum Order [46] of February 25, 2008," MPEP 1.42 states that, "In case of death of the inventor, the legal representative

7

(executor, administrator, etc., of the deceased inventor may make the necessary oath or declaration, and apply for and obtain the patent."

According to "MPEP 402.01 Exceptions as to Registration, 37 C.F.R. 10.9. Limited recognition in patent cases. (a) Any individual not registered under 10.6 may, upon a showing of circumstances which render it necessary or justifiable, be given limited recognition by the Director to prosecute as attorney or agent a specified application or specified applications, but limited recognition under this paragraph shall not extend further than the application or applications specified…Sometimes in a joint application one of the co-inventors gives to the other the power of attorney in the application. Such power will be recognized even though the one to whom it is given is not registered."

And Defendants admit on page 17 of "Defendants' Response To Plaintiff's December Filings" on 1/30/08 that he can justifiably prosecute an international patent applications without corruption or the threat thereof as a patent attorney "before the U.S. International Searching Authority and the U.S. International Preliminary Examining Authority, which is physically located in the USPTO, under 35 C.F.R. 11.9 (c)," but Defendants will not grant Plaintiff even limited recognition under 35 C.F.F. 11.9 to prosecute his currently pending patent application as a domestic or as an international application because they allege it is a corrupt intention or threatens corruption.

Neither will Defendants grant or recognize that Plaintiff is justifiably entitled to use his title as a non-registered patent and trademark attorney in his currently pending U.S. Trademark Application S.N. 77/247,319, filed 08/04/07, for which no conflicting marks have been found, and for which the Examiner voices no objection to registration. They rely on the fact that Defendants will not recognize Plaintiff as an attorney in the Trademark Office, even though the

8

Court does so on page 1 et seq. of their 2/25/08 Order [46] because they allege it will recognize corruption or the threat of corruption.

The Defendants state on page 6 of their 1/30/08 "Response to Plaintiff's December Filings, that "if Plaintiff is duly licensed to practice law in another jurisdiction (e.g., Maryland, New York, the District of Columbia), then he may legally represent others in trademark and other non-patent cases before the USPTO." That implies that Defendants are unwilling to concede this genuine issue of fact in dispute, because to do so would be to allow Plaintiff's alleged corruption or the appearance thereof.

But Defendants should not be allowed to strategically moot the question at this point in time after so much time and effort have been spent on this case already, including time spent in repeatedly attempting to engage defense counsel in settlement negotiations, to no avail. Thus, the Defendants should not now at this late date before the announcement of the close of discovery announce that they will voluntarily provide virtually all the relief requested by Plaintiff and revise their Motion to dismiss the case based on mootness.

Meanwhile, they will not recognize Plaintiff's justifiable right to file and prosecute his international trademark applications or domestic applications for others using his title as a patent and trademark attorney.

Therefore, Plaintiff persists in representing to the Court correctly that Defendants have irreparably harmed Plaintiff by punishing him without mercy or probable cause, and by *prior restraint* of his justifiable advertising and promotion of his name as an attorney in both the Trademark Office and the Patent Office,' see Docket No. 6 at 8 (emphasis added). Defendants state on 1/30/08 on page 6 in note 3 of "Defendants' Response To Plaintiff's December Filings" as follows: "Nor does USPTO challenge Plaintiff's entitlement to represent himself – but only

himself – in patent, trademark, or other pro se matters before the USPTO." Filing for others in the Trademark and Patent Offices using the title and privilege of an "attorney" is justifiable without *prior restraint* in many specific cases, as pointed out above, however.

On appeal, from the District Court for the Eastern District of Virginia CA-02-1734-A, the Court reversed the dismissal of the plaintiff in Goldstein v. Harry Moatz, et al, the same Defendant in this case. In the course of its opinion, the Court stated that "[t] he importance of denying absolute immunity to the Defendants in this proceeding is underscored by the utter lack of procedural safeguards protecting Goldstein's' rights and his clients' secrets." *Id.*, at 217. The Court further noted that "the denial of any avenue for challenge [of the RFIs], and the threats of charges for non-compliance, are indicative of a system lacking in procedural safeguards," *Id.*, and concluded that "[a] n attorney should not be compelled to subject himself to disciplinary charges, and the adverse consequences that may flow there from, in order to protect his client's confidences or to challenge unduly burdensome discovery." *Id.* At 218.

In this case, Plaintiff was denied unreasonably and without any reason in a manifestly unjust manner without any basis in fact from any procedural safeguards, and from any avenue for challenge of the Defendants' "tactical" or "strategic" mooting of the "complaint" by holding the required investigation in abeyance. As stated by the Director of OED, she intended to hold in "abeyance any investigation, as well as any change in status action, such as a complete future embargo against any practice in the Trademark and Patent Offices, based upon the Maryland Court Order." This intention of a future embargo "if your name is removed from the register," did not mention any present intention of such an embargo by the secret future removal of his name, identity, "title" and privileges.

The choice of a reward in favor of Plaintiff, or a complete embargo against his practice in both the Patent and Trademark Offices, was clearly made as the Hobson's choice to eliminate the possibility of a "strategic mooting" of an investigation in favor of Plaintiff, or to answer the Director's letter. The Hobson's choice was to immediately take the reward in favor of Plaintiff by not answering the letter, whereby the Director would hold in abeyance any possible safeguard against her as an official in her official capacity as a lawyer in writing after serious consideration. It was the opening salvo in her attempt to eliminate any possible safeguards in pursuit of her endless intent to punish Plaintiff's corruption or appearance thereof secretly by obstructing justice.

The reward of the choice in favor of Plaintiff, which she preferred, was mentioned for the first and only time in the Director's letter of March 4, 1996, because she never expected her letter to be published. It would never have been published without this law suit. In fact this secrecy from the public was the motivation for the Defendants' request for an Order to seal the proceedings in this case, and to insure their secrecy by a Motion to Dismiss or for Summary Judgment. She posed her Hobson's choice confidentially as being in favor of Plaintiff's change of position in reliance thereon so that he would not answer her letter. That deviously allowed her to hide her real intention, which was the secret intention to completely bar Plaintiff's practice as an agent and an attorney in both the Patent and Trademark Offices by a secret *coup d'etat*, namely the secret removal of his name, title and privilege from the PTO registry without notice or probable cause by identity theft to punish him for his corruption or the appearance thereof. *See* Defendants' Exhibit 8.

Now in the light of day, there is nothing in law or equity or the regulations of the PTO that required Answer to answer the Director's letter within any predetermined time period, or to

11

answer the underlying threat of charges, or any ultimate sanction or punishment for non-compliance of 37 C.F.R. 10.7 and payment of any fee set forth in 37 C.F.R. 1.21 (a) (3) within any predetermined time limit set by the Director's unauthorized letter without any basis in fact or law. And it is indicative of the utter lack of safeguards that there is nothing in law or equity or the PTO regulations protecting Plaintiff's Constitutional rights under such circumstances.

The Defendants' have grudgingly and involuntarily provided many of Plaintiff's requests for reasonable accommodations, but have withheld some, which is a genuine issue of fact in controversy.

And the Defendants have grudgingly admitted that they have withheld "limited recognition" of Plaintiff's expressions in his presently pending parent application and any future Continuations from that parent on the basis of mootness. The Defendants, as in the cited Goldstein, *Id.,* have expressly stated that they have acquiesced in allowing Plaintiff to prosecute his own case *pro se* on the basis of mootness.

In response, as in the cited Goldstein, *Id.*, the Plaintiff requests that the Court not grant the Defendants' Motion to Dismiss or, alternately for Summary Judgment, without granting injunctive relief to the Plaintiff to ensure the enforceability of the Defendants' voluntary concessions.

In Goldstein, *Id.*, the district court granted the PTO's motion to dismiss, and denied Goldstein's request for declaratory or injunctive relief. The district court subsequently denied Goldstein's petition for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412.

12

But the Court of Appeals vacated the district court's ruling on absolute immunity as to

defendants Moaz, Anderson and Toupin; and remanded for such further proceedings as may be

appropriate.

### Argument

That case and this one provide a classic example of civil rights defendants who dodge

attorney's fees by an eleventh hour capitulation to the plaintiff's demands that moots the case

and deprives the plaintiff of judicially imposed relief. In contrast to cases, such as <u>Buckhannon

Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources</u>, 532

U.S. 598 (2001), where the state legislature rendered the case moot, the Plaintiff here and in

<u>Goldstein</u>, <u>Id.</u>, have only the Defendants' "assurances" that the unlawful conduct will not be

resumed.

I.     **TACTICAL MOOTING SUBVERTS THE WILL OF CONGRESS**

Congress passed fee-shifting statutes such as the Equal Access to Justice Act and the Civil

Rights Attorney's Fees Awards Act, 42 U.S.C. 1988, in order to encourage private litigants to

enforce important civil rights laws by bringing lawsuits. Congress recognized that these statutes

could not be fully enforced by the government alone, but rather depended on civil actions by

private individuals. "If [a plaintiff] obtains an injunction, he does so not for himself alone but

also as a 'private attorney general,' vindicating a policy that Congress considered of the highest

priority." <u>Newman v. Piggie Park Enterprises, Inc.</u>, 390 U.S. 400, 402 (1968). But, as Congress

understood, most victims of civil rights violations would not have the financial wherewithal to

bring these lawsuits [or to prosecute the underlying patent and trademark applications that are

involved in this case].

13

> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nations' fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.

S. Rep. 94-1001, 1976 U.S.C.A.A.N. 5908, 5910 (1976) (Senate Judiciary Report on Civil

Rights Attorney's Fees Awards Act. 42 U.S.C. 1998). Thus, "fee awards are essential if the

Federal statutes to which [1998] applies are to be fully enforced." *Id.*, at 5913. The Senate

Report concluded, "If the cost of private enforcement actions becomes too great, there will be no

private enforcement. If our civil rights laws are not to become mere hollow pronouncements

which the average citizen cannot enforce, we must maintain the traditionally effective remedy of

fee shifting in these cases." *Id.*

These Congressional purposes simply cannot be accomplished if Defendants are allowed

to avoid attorney's fees with the kind of "tactical" or "strategic mooting" at issue in this case.

Notably, the Defendants acquiescence did not serve to save the expense of litigating a "nuisance

suits"; much if not most of the expenses have already accrued, save for the necessity of an

appeal. One important reason for the Defendants' sudden agreement to give the plaintiff most of

what he asks for – after fighting these same requests for almost 11 years – is that Attorney's fees

statutes such as the EAJA should not be read to permit this kind of "tactical" or "strategic

mooting." And another reason and genuine issue of fact in dispute in this case is the necessity

for an appeal if the Defendants' Motion to Dismiss or, alternately their Motion for Summary

Judgment are granted without granting Plaintiff an injunction to ensure the enforceability of the

Defendants' voluntary concessions, which, however, have not been overly generous or in

accordance with the law.

14

Additionally, the Defendants' power to use tactical or strategic mooting to avoid paying fees, costs, expenses, and attorney's fees, if not all monetary awards for damages in this case, is at its strongest when only declaratory and injunctive relief is sought, or, in particular, whenever the Defendants' are allowed by the Court to be protected by sovereign immunity or qualified immunity, which this Court has yet to examine and review or determine, as requested by Plaintiff in this case. This is quite frequently the case in civil rights cases, which are often brought against governments or governmental officials, as in this case. It is especially true in groundbreaking cases, which Plaintiff is privileged to participate in, that lead to new principles of law, since some officials are entitled to qualified immunity when the Court finds that the law is not "clearly established," or at least not yet. Plaintiff was privileged to file an amicus brief in the groundbreaking case of Parker v. Chakrabarty, 477 U.S. 303 (1980). In this case he is privileged to participate indirectly in the groundbreaking analogue that has awarded the plaintiff's a Preliminary Injunction in the District of Court of the Eastern District of Virginia. In Tafis v. Dudas, Civil Action 1:07cv846 (JCC) and SmithKline Beecham et al v. Dudas,1:07cv1008 (JCC). In the District Court of the E. Distr. Of VA, (Alexandria Division), it was held that the plaintiff's were entitled to a temporary order of restraint based in part on the Defendants failures and violations of the APA and the Due Process rights of all applicants for patents, and the same principles apply in this case. *See* also Wilson v. Layne, 526 U.S. 603 (1999). Thus, the cases in which Defendants are best able to use tactical and strategic mooting are precisely those in which an attorney cannot use other means – specifically, a contingency fee agreement – to ensure that his fees are covered.

15

For these reasons, to allow the Defendants to avoid fees through strategic or tactical

mooting imposes a strong disincentive for attorneys to accept civil rights cases, such as this one,

even those with considerable merit, as in this case by reflected light from the cited Tafis, *Id.*

It is important to bear in mind that the primary loser in this scenario is not the attorney,

although he is suffering immeasurable, permanent and irreparable harm in this case. He cannot

find other clients at his age in view of his age-related disabilities, to pay him out of pocket,

contrary to what the Court might believe or has stated in this case on the basis of other unlike

cases. The victims of civil rights violations, not just the Plaintiff in this case, who cannot find

anyone to represent them, is the public. This Plaintiff, like most inventors and trademark and

copyright owners in this country and abroad in an increasingly globalized economy in general,

are poor and underrepresented. The result is precisely contrary to Congress's intention to

encourage enforcement of the civil rights statutes by "private attorneys general." Our national

economy depends on it in a globalized economy, as testified to by leading authorities, including

Bill Gates, the founder of Microsoft, in his recent testimony before Congress.

InternetNews.com, May 14, 2008; CNET News.com May 12, 2008.

## II.    BUCKHANNON DOES NOT PRECLUDE ATTORNEY'S FEES WHEN THE DEFENDANT STRATEGICALLY MOOTS A CASE

In Buckhannon Board and Care Home v. West Virginia Department of Health and

Human Resources, 532 U.S. 598 (2001), the Supreme Court rejected the "catalyst theory," under

which plaintiffs could recover attorney's fees if their lawsuit precipitated the defendant's

voluntary cessation of the unlawful conduct. However, the Buckhannon decision should not be

read to apply to circumstances like those at issue here, where the Defendants litigate almost to

16

final judgment, all the while driving up the plaintiff's fees and costs, then throw in the towel just enough to moot the case rather than lose it.

The Buckhannon, *Id.* Court declared itself "skeptical" of the possibility that defendants would "unilaterally moot [] an action before judgment in an effort to avoid an award of attorney's fees, noting that the "fear of mischievous defendants only materializes in claims for equitable relief, for so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." 532 U.S. at 608-09. But the present case is precisely the kind of case in which mischievous defendants can and do materialize, since only equitable relief was sought on the plaintiff's civil rights claims under the APA for *prior restraint* of Continuations of Plaintiff's present and future parent patent applications under the Defendants' Revised Rules, except for statutory damages under the Privacy Act. Moreover, the policy concerns involved in Buckhannon, *Id.*, i.e., rejection of the catalyst theory, have no role in a case like this one, where the deliberate mooting of the case in favor of Plaintiff was created by a Hobson's choice that materially altered the legal relationship of the parties. That choice determined the outcome of the relationship by the running of the statute of limitations. The change in their relationship did not take place because of the action of the relevant state legislature after the Defendant stayed judgment of a cease-and-desist order pending resolution of the case, as in Buckhannon, *Id.*

In this case, the deliberate "strategic" or "tactical mooting" that occurred on March 4, 1996 to save the cost of fees and an expensive litigation, became barred by the passage of time, namely the five years provided for by the statute of limitations, but Plaintiff had no way of knowing that the limitations had passed or when they began because the removal of his name, ID and "title" were concealed from the Plaintiff and without notice to him.

17

After the judgment in favor of the Plaintiff in Maryland, Defendants based their "strategic" or "tactical mooting" on an independent complaint by holding the investigation thereof in abeyance in order to limit Defendants' costs and expenses. Defendants were also motivated to perfect their intent of an illegal, obstruction of justice beginning with their secret removal of Plaintiff's name, ID, "title" and privilege by identity theft without Constitutionally sufficient notice, a hearing, probable cause or any suitable procedural safeguard; and also, in order to punish Plaintiff for corruption or a disability having no basis in fact, or the appearance thereof likewise without basis in fact.

To this end, Defendants instituted a policy of permanent *prior restraint* of Continuations of Plaintiff's pending parent patent application by their Revised Rules. Defendants also suppressed by *prior restraint* Plaintiff's expressions of his name, ID, identity and "title" as a non-registered patent attorney by identity theft, and the refusal to give him limited recognition as an attorney in both the Trademark Office and the Patent Office by enforcing an embargo against expression of his name, ID and "title," and/or holding himself out, as a non-registered patent attorney, and by identify theft on the basis of mootness about 11 years after the initial "strategic" or "tactical mooting" in 1996.

This deliberate "mooting" eleven years after the original mooting in 1996 is after discovery is nearly or effectively closed, and after fees and costs have been run up dramatically on both sides. For example, the Court indicated in Buckhannon, *Id.*, that the catalyst theory may pose a "disincentive" on "a defendant's decision to voluntarily change conduct, conduct that may not be illegal," due to fear of attorney's fees. 532 U.S. at 608. Certainly, there is some sense in providing incentives for a defendant to change it's behavior voluntarily early on, saving judicial resources and costs to both sides. However, when last minute tactical mooting is allowed in this

18

case, the incentives become oddly skewed. Then, it is not necessarily in Defendants' interest to settle early, but rather to settle whenever they determine that they are unlikely to win – which may be after months of expensive discovery, which has not been completed yet in this case, and on the eve of trial.

In his concurring opinion, Justice Scalia rejected the dissent's suggestion that the Court had "approve [d] the practice of denying attorney's fees to a plaintiff with a proven claim of discrimination simply because the very merit of his claim led the defendant to capitulate before judgment." 532 U.S. at 616 (emphasis original). Rather, he said, the Court simply rejected the dissent's "far less reasonable" call for:

> an award of attorney's fees when the merits of the plaintiff's case remain unresolved – when, for all one knows he defendant only abandoned the fray because he cost of litigation – either financial or in terms of public relations – would be too great....I doubt it was greater strength in financial resources, or superiority in media manipulation, rather than *superiority* in legal merits, that Congress intended to reward.

*Id.* at 217 (citation omitted and internal quotation marks omitted) (emphasis in original). In this case, the Defendants "abandoned the fray" in 2007 when they denied Plaintiff "limited recognition," not because of costs of litigation, but because of the Plaintiff's strength on the merits. The merits of Plaintiff's case are apparent because he is actually successfully prosecuting a possible precursor patent application to the possible child Continuation barred by the Revise Rules of the Defendants without "limited recognition," but as a *pro se* non-recognized patent attorney whose expression of his name, ID, "title" and privilege as such, were restrained by *prior restraint* because of Plaintiff's alleged corruption or the appearance thereof. Also, it is noteworthy that such possible Continuations of his currently pending patent application, in which Plaintiff's expression can be completely and permanently barred by *prior restraint,* has failed to

19

have been mentioned or recognized in the record of this case by either the Defendants or the Court.

If recognized, that application as a parent of a possible Continuing child that would be permanently barred from ever being published, obviously would be an additional genuine issue of fact in dispute. And otherwise, that fact is grounds for an appeal and for Plaintiff's request not to grant Defendants' requests for dispositive Motions without granting Plaintiff procedural safeguards, including an injunction to restrain Defendants from reneging on their stipulated reasonable accommodations.

The merits of Plaintiff's case are apparent because Defendants' didn't capitulate until after Plaintiff chose to enforce his rights under the statute of limitations after he found out about the secret identity theft of his name, ID, "title" and privilege after he filed this case and only by filing this case where there is an utter lack of procedural safeguards in not only the Defendants' use of RFIs, and their letter of March 4, 1996 to achieve their goal of obstruction of justice and the punishment of Plaintiff for corruption or the appearance of corruption, and even the possibility of corruption. *See* Goldstein v. Moatz, et al, 364 F.3d at 217.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges this Court not to grant Defendants' Motion to Dismiss or any other dispositive Motion by Defendants, and that the Court does not grant their Motions without granting Plaintiff injunctive relief to assure that Defendants' illegal conduct will not be resumed by enjoining Defendants from refusing to grant the Plaintiff the reasonable accommodations in the future that he has already received for the July 2007 test, and which have been stipulated to by Defendant Moatz (albeit, he stated in Defendants' Exhibit 33

that, "I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him for the July 2007 examination").

Plaintiff sees no reason why those and possibly other reasonable accommodations that have been illegally refused and are genuine issues of fact in dispute should not be guaranteed and assured by the Court by both declaratory and injunctive relief, along with damages, costs, and fees, including reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412; the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C 1988. *See* generally Marek v. Chesny, 473 U.S. 1, 43-51 (1985) (Appendix to opinion of Brennan, J. dissenting); and Hensley v. Echerhart, 461 U.S. 424 433, n. 7 (1983).

The challenged governmental activities in the present case are not contingent, have not evaporated or disappeared, and, by their continuing and brooding presence, cast what are substantial adverse effects on the Plaintiff and the public. *See* Super Tire Engineering Co. v. McCorkle, 416 U.S. 115 (1974).

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish TM SM "

Downpat (c) 2008

21

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:   3/17/68

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum

in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 17th day of ~~February~~ *March*, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 3/17/08

23

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,          )
                                     )
                  Plaintiff *Pro Se* )
                                     )
                  v.                 )          CASE  07-cv-01719 (RWR)
                                     )
JON DUDAS, et al.,                   )
                                     )
                  Defendants         )
_____ )

### ORDER

UPON CONSIDERATION of Plaintiff's Motions and Petition for costs, fees, damages, and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412; the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C 1988.

Plaintiff also requests that the Court dismiss and refuse to grant or delay a decision on Defendants' dispositive Motions, and if the Court refuses to deny Defendants' dispositive Motions that the Court not grant the Defendants' Motion to Dismiss or, alternately for Summary Judgment, without granting injunctive and declaratory relief to the Plaintiff to ensure the enforceability of the Defendants' voluntary concessions and stipulations concerning reasonable accommodations; and

Plaintiff also asks for Relief Under 5 U.S.C. 701 et seq., for damages for the tort of interference with his "title," property and privileges as an attorney by holding himself out in patent and trademark applications and patents and trademarks as an "Attorney, firm or agent – Cornell D.M. Cornish TM SM © 2008 not-registered in the PTO"; for an oral hearing; to Amend the

1

Complaint to include the United States as a Defendant; to amend or vacate the Court's Order 46

dated February 25, 2008 and minute Orders dated 2/27/08 and 3/03/08; for return of "tariffs," for

appointment of Counsel; for Temporary Order of Restraint or Preliminary Injunction to enjoin

the Defendants from threatening Plaintiff with criminal prosecution for holding himself out as a

non-registered patent attorney and censoring or discriminating against Plaintiff by *prior restraint*

in the Defendants' Revised Rules for claims and Continuations and otherwise in his business

before he USPTO; and failure to provide reasonable accommodations because of his age-related

disabilities that do not impact negatively on his ability to successfully practice law; and to

enlarge the time to reply to the Defendants 2008 filings until March 1, 2008, and the entire

record herein, it is this _____ day of _____, 2008, hereby

ORDERED that Plaintiff's Motions should be and it hereby are Granted, and it is,

FURTHER ORDERED that Defendants' Motion to Dismiss Or, Alternately For Summary

Judgment, and for Excuse From Responding should all be and are hereby Denied or vacated

respectively.


_____
**UNITED STATES DISTRICT JUDGE**


W. Mark Nebeker                          Cornell D.M. Judge Cornish
Assistant United States Attorney         1101 New Hampshire Ave., #301
Civil Division                           Washington, DC 20037-1502
555 4th Street, NW                       (202) 429-9705
Washington, DC 20530                     cornishj@erols.com
(202) 514-7230 fax (202) 514-8780


2