UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

**RECEIVED**

APR **0 3** 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| v. | ) |
| | ) CASE  07-cv-01719 (RWR) |
| | ) |
| JON DUDAS, et al. | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

**Motion To Grant Plaintiff Permission For An Interlocutory Appeal Of The Denial Of All His Motions Pending On 3/24/08, Except His Motion Hereby And Herein To Hold In Abeyance And For A Temporary Stay Of Defendants' Dispositive Motions To Dismiss And For Summary Judgment**

Plaintiff appreciates the Court's indulgence *ex ante,* i.e., before the merits portion of the trial of his complaint, petitions and motions in this case.  Hopefully the Court will not override this most recent *pro se* Motion or exclude him from receiving a fair trial in this courtroom under the Sixth Amendment or under law by Dismissal in accordance with Defendants' dispositive motions, which implied that the case was becoming a farce, as in Illinois v. Allen, 37 Ill.2d 167, 226 NE2d 1 (1967); 397 U.S. 337 (1976). See their citation of Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985), where the plaintiff was deluded to claim to be a citizen of the universe who was running for president. *See* Defendants' 1/30/08 Motion for Protective Order, page 3, line 16.

Plaintiff's legal claim at issue overlaps the issue in United States Patent and Trademark Office's changes to the "rules governing the examination of patents." *See* Memorandum Order

1

of 4/1/08 in The United States District Court For the Eastern District Of Virginia, Alexandria Division, 1:07cv1008 (JCC), granting GSK's and Tafas's Motions For Summary Judgment.

An appropriate Order will issue paralleling to some extent Plaintiff's challenge in this case. To this end, Plaintiff challenges the "rules governing the examination of patents" as a Compelling Question of Law for trial in this case under the APA, the Declaratory Judgment Act, as in GSK and Tafas, *Id.,* and under the cited statutes for Attorney Fee Shifting, as a private attorney general, and for equitable relief under the APA and Declaratory Judgment Act. These include Injunctive and Declaratory Judgment relief, Bivens damages for interference with Plaintiff's Constitutional rights, costs and attorneys fees, by determining the Compelling question of law as to whether this Court can issue Plaintiff relief only and exclusively under 35 U.S.C. 33, or as Plaintiff requests in parallel with the cited 4/1/08 Order in GSK and Tafas, *Id.*

Defendants' unconstitutional attempt to change the "rules governing the examination of patents," began with their Letter of March 4, 1996. That letter was an unconstitutional attempt to blackmail Plaintiff by coercion that caused Plaintiff to accept an embargo of his patent and trademark practice in the Patent Office, and everywhere else, for at least 30 days in return for Defendants' holding in "abeyance" and not investigating the Plaintiff, i.e., in return for "holding in abeyance any investigation with respect to Mr. Cassidy's complaint, as well any change of status action based upon based upon the Maryland Court Order," as stated in the March 4, 1996 letter. *See* Defendants' Exhibit 8 and 1/15/08 Opposition.

There was a Maryland Court Order in Plaintiff's favor. On information and belief that Order, and complaints in Maryland, if they existed, and whether they existed or not, are not part of the Record in this case and cannot influence the decision in this case because the Court is limited in its decision to the Record in the PTO. On information and belief, the State of

2

Maryland could resolve complaints without due process by putting them on the stet docket, e.g., because a complainant refuses to accept an assignment of the subject matter of a provisional patent application, contrary to the implication of the Court on page 2 and 3 of its 2/25/08 Order, where the Court states without any basis in fact that: "In 1995, Cornish was removed from the register of attorneys in Maryland after a grievance was filed against him." On information and belief there is nothing in the Record of this case that supports that statement, and Plaintiff requests that the Court amend its Order to correct that mistake, and grant Plaintiff permission to appeal because of a substantial mistake of fact.

Page 7 of Defendants' 1/30/08 Response, states that, "Accordingly, the Court's review of Plaintiff's prior restraint argument is correctly limited to the issue of whether Plaintiff is permitted to advertise that he is a person entitled to represent others in patent cases before the USPTO." That must include "according to the rules governing the examination of patents."

The complaint that a Continuation-in-part was involved had no basis in fact, nor is there support for such a Continuation-in-part in the Record of this case. Even if there is a basis, it cannot be the basis of a decision in this case without at least opening up the record as requested by Plaintiff's Motion that was denied, and for which he requests permission to appeal.

Defendants' 11/7/07 Motion To Dismiss, page 8, line 1, admits the resolution of a "continuation in part" application by replacing it with a *provisional* patent application. Thus, Defendants admit the relevancy of the "rules governing the examination of patents," to the Compelling Questions of law, and genuine issues of fact in dispute in this case, independently of anything that took place in Maryland. And filing a *provisional* patent application to resolve a "continuation in part" is the subject of the claims and complaint in the cited GSK and Tafas

3

cases, *Id.,* which related to the examination of applications and not "reinstatement," as claimed by this Court and the Defendants.

This Court's 2/25/08 Memorandum Order denying Plaintiff's Motion for Preliminary Injunction, page 1 and 2 mistakenly states that "Cornish has filed a motion for a preliminary injunction which appears to request an order (1) enjoining the USPTO from requiring that he pass the patent examination before being *reinstated*" (emphasis added). *See* Defendants' 1/15/08 Opposition page 1: "Plaintiff's September 26, 2007 complaint challenges the actions of the United States Patent and Trademark Office ("USPTO"), Office of "Enrollment and Discipline ("OED") in connection with OED's denial of Plaintiff's January 2005 request for *reinstatement* to the USPTO register after a nearly nine-year hiatus" (emphasis added).

The Defendants' cited 1/15/08 Opposition, also admits in note 2 on page 2 Plaintiff's connection of this case with the "rules governing the examination of patents" claim by Plaintiff that overlaps the Summary Judgment claim of GSK and Tafas, *Id.,* i.e., Plaintiff's claim concerning invalid PTO "rules governing the examination of applications" that are unconstitutional *prior restraint* in both Plaintiff's currently pending patent application S.N. 29/273,235, filed 02/26/2007, and trademark application S.N. 77/247,319, filed 08/04/2007, and also in more than two Continuations or Continuations-in part of his patent application and otherwise. To this end, Defendants admit in note 2 on page 2 of their 1/15/08 Opposition that Plaintiff's complaint also alleges, *inter alia,* that: the "USPTO is preventing him from holding himself out (e.g., advertising) as a registered patent attorney." In fact, Plaintiff claim concerning his claim concerning the "rules governing the examination of applications," is a Constitutional challenge that Defendants' are banning him under the "rules governing the examination of applications, by completely banning him from holding himself out as an attorney, patent

4

patent and trademark attorney, both registered and unregistered, anywhere, *inter alia,* because of

blackmail and coercion in a letter on March 4, 1996 in Defendants' Exhibit 8. That blackmail

banned him completely by embargoing him from holding himself out as an attorney or practicing

anywhere as an attorney for any clients or himself *pro se* by coercion and threats to investigate

him. Not practicing and not holding himself out was in exchange for Defendants' holding a

pending investigation in abeyance during an information period that could last at least 30 days.

To enforce that embargo, Defendants secretly involuntarily removed his name from the

register of attorneys without notice, consent or a request by Plaintiff on or about August 28,

1996. Clearly the removal was without his knowledge, consent, or request by a handwritten note

on the Defendants' March 4, 1996 letter in Defendants' Exhibit 8. Plaintiff did not argue

disingenuously that he "knew that the USPTO had earlier granted his request to be voluntarily

removed from the rolls as plainly evidenced by a) his sua sponte February 1996 request to be

voluntarily removed from the USPTO register," as stated on page 10 of Defendants' 12/15/08

Opposition. That removal was made involuntarily and secretly without Plaintiff's written or oral

consent, knowledge or request, and whether he was registered or unregistered. It thus became an

irreparable, permanent and unchangeable ban on Plaintiff's practice or holding himself out as

attorney anywhere.

Defendants' secretly removed "Cornish's name from the register" without his knowledge,

permission, or request in his letter of February 8, 1996 or otherwise. That letter was in

conformance to the "withdrawal" requirements of the PTO. The resolution of the "withdrawal"

was accepted in the above-mentioned provisional application by the refusal to accept an

assignment. *See* also page 7 of Defendants' 1/30/08 Response, which states that, "Accordingly,

the Court's review of Plaintiff's prior restraint argument is correctly limited to the rules

governing the examination of patents because that involves the issue of whether Plaintiff is permitted to advertise according to those rules "that he is a person entitled to represent others in patent cases before the USPTO." Of course, Plaintiff is able to represent co-inventors who give him permission to act as their agent, inventors in foreign patent applications, and also to represent himself as an attorney *pro se,* except in more than two Continuations under the Defendants' Revised Rules.

Part of the scheme to bamboozle the Court and to hornswoggle Plaintiff by coercion and blackmail because of an embargo against his practice by changing the rules governing the examination of patents, was an admission and concession by Defendants to ingenuously and deceptively convince the Court that Exhibit 8 does not contain what it manifestly does contain, i.e., that a March 4, 1996 letter from the Director of OED in Exhibit 8 contains a meaningless and unnecessary handwritten note dated August 28 1996 in accordance with due process, the constitution and valid rules and laws governing the examination of patents, rather than an arbitrary, capricious action without authority of law and beyond the scope of Defendants' authority. On page 10, in Defendants' 1/15/08 Opposition, they refer to the handwritten note, and admit and concede that the Director made that note secretly without authority or in accordance with law (albeit no authority or law was cited). The blatantly state that the handwritten notation was the means by "which the USPTO effectuated Plaintiff's" [removal]. They say ingenuously that they did not do what they did in order to bamboozle the Court, that the removal was by a "request to be voluntarily removed from the USPTO register."

The letter of March 4, 1996 contains a hand-written notation dated August 28, 1996, that in no way signifies a "request" by Plaintiff, or that he was "voluntarily removed from the USPTO register."

6

The Defendants' say Plaintiff's "argument is seemingly disingenuous as Plaintiff knew that the USPTO had earlier granted his request to be voluntarily removed from the rolls as plainly evidenced by 1) "his sua sponte February 1996 request to be voluntarily removed from the USPTO register, which was undoubtedly motivated by his contemporaneous removal from the Maryland State Bar; his soon-to-follow suspension from the Federal District Court for the Southern District of New York, the District of Columbia Bar, and the New York State Bar; and the pending ethical complaint filed by a former client against him with the USPTO, b) his not prosecuting patent applications for clients for nearly nine years, and c) his sua sponte for "reinstatement" to the USPTO register in January 2005." There is no support in the record for any of those statements.

"[S]see Defendants' Motion, Exhibits 12, 13 and 15," which clearly cite Plaintiff as being qualified to hold himself out as an attorney, patent attorney, patent and trademark attorney because of the federal overlap that allows Plaintiff and others to practice as attorneys before the Trademark Office and *pro se* before the Patent Office whether or not he is registered, qualified to apply for admission to reinstatement to take the patent examination in the two stage process for taking the examination for CLE purposes, or other mere academic purposes, and/or qualified to continue to submit evidence without prejudice, of course, unless coerced and blackmailed not to practice.

As pointed out by Plaintiff, he has a constitutional right to politically and religiously petition the government for redress of his grievance against Defendants' for coercing and blackmailing Plaintiff to give up his practice until he could no longer be registered by age-related disabilities. He has been subject to an outright ban of his right to express his religious and political protest by holding himself out as an attorney. Defendants' have done so by *prior*

7

*restraint,* and an outright ban of his expressions, ID, name, property, "title" as an attorney, and in

connection with his Christian names taken from the Judges and lawyers cited in the Christian

bible, according to his constitutionally protected privilege as an attorney, just as the "headscarf"

Muslim women use to cover their heads, is used to protest its banning in French schools and

some German state institutions, and in Turkey and the United States. According to John,

Chapter 3, verses 20 – 21, "For everyone who does wicked things hates the light and does not

come toward the light, so that his works might not be exposed. But whoever lives the truth

comes to the light, so that his works may be clearly seen as done in God." The Defendants

worked in secret wickedly and in the dark until Plaintiff filed this action.

There is nothing in the record that supports: 1) a sua sponte February 1996 request to be

*voluntarily removed* from the USPTO register. On the contrary, the letter on February 8, 1996,

evidences Plaintiff's protection of his clients by complying with the PTO requirements for the

"withdrawal" from patent applications of specific inventors. There is nothing in the record that

supports: 2) any undoubted *motivation* or *contemporaneous* removal from the Maryland State

Bar. The Maryland State Bar has no such power; and a Maryland Order of December 4, 1995

was in Plaintiff's favor to free him from payment of a yearly fee while he was inactive in

Maryland. The record makes clear that it was impossible to be motivated contemporaneously, as

alleged within the time period necessary for such contemporaneous motivation in any of the

jurisdictions mentioned according to the record in this case.

There is nothing in the record that shows that Plaintiff wanted to be removed, suspended

or to resign on February 8, 1996, the date of his letter such that he could be "motivated"

"contemporaneously" to request "removal," such as by Court actions other that this Court. The

Plaintiff submits that this Court must open the record for introductions into the Record by the

8

Defendants before it can refer to actions in the mentioned Courts. Plaintiff has asked that the Record be opened, but his Motion was denied.    Therefore, the Court must rely on the Record in this Court, which is the Record in the PTO, not the record in the mentioned other courts.

Plaintiff believes that there is nothing in the record that supports the fact that there was due process in any such courts, or alleged suspensions, or that this Court is bound by suspensions without due process. This Court is limited to, and bound by, actions in the PTO. In fact, the Plaintiff submits that sanction by the Federal District Court for the Southern District of New York lacks due process, especially by denying him a hearing. Also, if the Record shows it was a reciprocal case, due process requires that such a hearing must have been granted at "some" time before any suspension could be made final. In this case now, any suspensions are without effect in this Court without opening the record to consider an Order vacating an Order sanctioning Plaintiff in the Southern District because the sanctioning was clearly erroneous.

The District Court of the Eastern District of New York gave Plaintiff a hearing and a continuous uninterrupted clean bill of health for his good standing in that Court from his registration there before 1995 up until at least 2/27/02, and as Plaintiff submits on information and belief, up until the present time. This Court has denied Plaintiff's motion to open the record to include such information.

Likewise, the District of Columbia Bar gave him a hearing and gave him a clean bill of health to his good standing on November 16, 2000 (Defendants' Exhibit 22B). Opening the record and granting Plaintiff's Motion for the appointment of counsel could have added such factual evidence, but Motions by the Plaintiff to that effect were denied, and Plaintiff takes exception to the denials and asks for permission to appeal.

9

Plaintiff submits that the Record in this Court concerns only the Plaintiff's existing clean bill of health and continuous good standing in the PTO to hold himself out as an attorney in the PTO. He   has been continuously in good standing during the critical period for consideration in this case, as an attorney and a patent attorney in the District Court of the Eastern District Court of New York, the Supreme Court of the United States, the Court of Appeals of the Federal Circuit, and the U.S. Tax Court, where he was granted a hearing that maintained his uninterrupted active status from 1996  as an attorney, patent attorney, patent and trademark attorney, and as a patent and trademark attorney not registered in the Patent Office because of coercion and blackmail that embargoed his practice in the PTO illegally and unconstitutionally, and continuously during the time span of interest in this Court to this case.

Also, from before August 17, 1998 in New York, and after November 16, 2000 in the District of Columbia Plaintiff had a clean bill of health and good standing that enabled him to hold himself out as a non-registered patent and trademark attorney except for the total ban of his practice by the embargo of March 4, 1996, August 28, 1996 and June 15, 2000, by the Defendants.  Defendants' Exhibits 8 and 33.

Accordingly, Plaintiff could hold himself out as a non-registered attorney, patent attorney, and patent and trademark attorney during limited periods of time less than five years except for the outright and secret ban by the Defendants against the same by coercion and blackmail going back to the Director of OED's coercion and blackmail letter of March 4, 1996. That period, between August 17, 1998 and November 16, 2000, in which he was not registered or active in either the Trademark Office or the Patent Office, was for only a little over two years.

Neither before or during that period did he *request* to be *voluntarily* removed from the USPTO register; nor did he *know* that the USPTO had earlier granted his request to be

10

*voluntarily* removed  from the USPTO register; nor did his <u>sua</u> <u>sponte</u> February 1996 letter

<u>request</u> to be <u>voluntarily</u> <u>removed</u> from the USPTO register. And his inactivity was due only to

the unconstitutional *prior restraint* of the Plaintiff by the Defendants during that period, before

that period and after that period. *See* 1/15/08 Opposition, page 10, *Id.*

Plaintiff's inactivity was caused only by the Defendants' embargo on March 4, 1996, the

secret August 28, 1996 identity theft of his PTO ID, profession, reputation, name, registration,

property, privilege, copyrighted trademark, and registration. This included the coercion,

blackmail and libels in the Director of OED's letters of March 4, 1996 in Defendants' Exhibit 8,

and the Director of OED's letter of June 15, 2000, in Defendants' Exhibit 33 without notice to

Plaintiff.

The Defendant's Opposition of 1/15/08 alleges that "a pending ethical complaint filed by

a client" concerned a "utility patent Continuation-in-part application," as described on page 8 of

Defendants' 11/7/07 Motion To Dismiss (referred as a Dispositive Motion), but such a

Continuation-in-part has no basis in fact, is not present in the Record of this case, and cannot

have any influence on the proceedings in this case or be considered unless, and until, the record

in opened up to introduce it if it exists. The assignment sought was given but refused, which

successfully produced a resolution, finality, and a denouement in which the strands of the plot

were drawn together and          explained as well as resolved. The Director of OED resolved

the complaint in the PTO by his false explanation on June 15, 2000, that "OED could not further

consideration of your complaint at this time."   The complaint that a Continuation-in-part was

involved had no basis in fact, nor is there support for such a Continuation-in-part in the Record

of this case except, *inter alia,* in connection with Plaintiff's claims concerning the "rules

governing the examination of patents.[4] Whether or not there is a specific basis, it can only be the

basis of a decision in this case in connection with the Defendants' Revised Rules "governing the examination of patents." It is noted that Plaintiff's Motions relevant to Continuations were denied, and for which he requests permission to appeal.

Significantly, the USPTO resolved any complaints of possible interest by libelously barring at least one complainant from further pursing his complaint on June 15, 2000, but the Defendants did so without telling Plaintiff so that Defendants could continue to  b) illegally coerce, blackmail and prohibit Plaintiff by *prior restraint* " under the rules governing the examination of patents from prosecuting patent applications for clients upto the present time; and c) prohibiting "his sua sponte reinstatement to qualify to study the rules, questions and answers for governing the examination of patents for CLE purposes without the payment of $490 in July 2005 and 2006, 2008 and thereafter," which are genuine issues of fact in dispute in the Record of this case. The Court must decide those issues, along with the Compelling questions of law relating to Plaintiff's claim that the Court is not limited only and exclusively to a decision based upon 35 U.S.C. 32, which is clearly unconstitutional, along with 35 U.S.C. 2 (b)(2)(D) and 6.

Plaintiff claims, as in Rusk v. Cort, 369 U.S. 367 (1962), that Plaintiff can present, and the Court can decide, this case on the basis of the Administrative Procedure Act, the Declaratory Judgment Act, and the Congressional mandate to Plaintiff as a private attorney general to seek a declaratory judgment under the Declaratory Judgment Act, and other equitable relief under the APA, and for Bivens damages, costs and attorneys' fees under Attorneys' Fees Shifting statutes.

Despite Defendants acknowledgement in In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979) that, "It is axiomatic that no petitioner or person shall ever be denied his right to the processes of the court," the Defendants have exposed Plaintiff to embarrassment and ridicule

12

by inferring on page 4 of their Motion for an Order of Protection that Plaintiff is incompetent
because of his prolix, disorganized and "simply bizarre" filings, including his Motion for the aid
of the well established and long recognized Lawyer Counseling Panel under Local Rule LCvR
83.21. *See* Dusky v. United States, 362 U.S. 402 (1960).

In fact, the Court, in apparent agreement, has partially granted Defendants' Motion for an
Order of Protection, and denied Plaintiff "standby" counsel or counsel appointed by the Court in
accordance with Plaintiff's Motion, which has been denied. Perhaps this denial could be
influenced by the incentive for a trial judge to close this case on Defendants' Motion for
Summary Judgment by suppressing or ultimately denying self-representation on the merits in
view of the large workload of the Courts. But this could involve the expense and danger of
asking the Court of Appeals to overrule this Court because of an abuse of discretion, or on
mistaken factual determinations where there have been clear structural errors rather than merely
harmless errors, as Plaintiff has tried to point out, and which he is trying to do herein. *See* also
Plaintiff's Memorandum on 3/24/08, page 3, line 7 et seq. and page 10, last three lines, et seq.,
and the Court's Memorandum Order of 2/25/08, page 2, last two lines, and page 3, through page
5, first two lines, where the Court states that:

(1)    "In 1995, Cornish was removed from the register of attorneys in Maryland after a
grievance was filed against him." On information and belief, there is nothing in the record of
this case, which is all that the Court can use, that fully supports such a statement. The record
reveals that a jeremiad against Plaintiff was independently launched by his co-inventor against
an assignment of a joint invention and used by the Defendants during an informational period
that was concealed from Plaintiff without his knowledge or consent and used secretly to steal his
identity, to censor his expressions as a patent attorney under the rules governing the examination

13

of patents, and to ban description of his inventions in more than two Continuations of his currently pending patent application by *prior restraint*.

(2)    The jeremiad was resolved by a denouement in the PTO in accordance with a libelous letter from Defendant Moatz on June 15, 2000, in Defendants' Exhibit 33, without notice to Plaintiff in accordance with the Record in this case without releasing Plaintiff from the embargo of his practice with a "closing letter," and without any requirement for a showing of fitness for reinstatement.  See the Defendants' letter of March 22, 2005, falsely accusing Plaintiff of being removed from the roster of registered patent attorneys and agents in April 1996, after you were placed on disability inactive status by the Maryland State bar," which has no power to make such a placement or removal.  It is notice that this letter was not final because it asked for more information "without prejudice." *See* Defendants' Exhibit 17.

(3)    Independently, a letter from the Director of OED on March 4, 1996, in Defendants' Exhibit 8, opened an "informational" period in the PTO before Plaintiff was secretly removed from the register of attorneys by a secret handwritten note on the letter of March 4, 1996, or about August 28, 1996, without notice to Plaintiff, as shown by Defendants Exhibit 8.

That informational period placing Plaintiff's practice under the ban of an embargo, is still open without a "closing letter" and is still being used to threaten Plaintiff with *prior restraint,* and prosecution, sanction and jail, and the requirement of a *habeas corpus* proceeding to challenge the Defendants violation of Plaintiff's Constitutional rights, unless the Court enjoins the Defendants as requested by the Plaintiff.  *See* Rusk v. Cort, 369 U.S. 367, where the APA and the Declaratory Judgment Act, 48 Stat. 955, as amended, 28 U.S.C. 2201, were used to review and determine citizenship, and to reverse a forfeiture the Plaintiff's civil rights.

14

The Compelling question of law presented is whether the proceedings in this Court specified in 35 U.S.C. 33 concerning the rules governing the preparation, prosecution and examination of more than two Continuations of patents under 35 U.S.C. 101, 102, 103, 112, 131, 134, 181, are exclusive and provide the only method of reviewing the secret removal of Plaintiff's name from the register of attorneys on or about August 28, 1996.

Because this case in part involves the legality of the Final Rules of the Defendants, which changed the well established, long-lasting rules governing patent examinations by the USPTO including the practice of banning attorneys from even limited recognition and advertising of their names as unregistered attorneys for any of a variety of filings, including, e.g., continued examination filings under Revised Rules, which change the practice under 35 U.S.C. 120, 132 (b), 134, 141, 145; 37 C.F.R. 1.114 (2006); and 72 Fed. Reg. 46, 716-843 (Aug. 21, 20007), and involves these and other unlawful and unconstitutional agency actions under Section 706(2) of the APA, the Plaintiff asks that the Rules be declared null and void, and the Defendants be permanently enjoined by a pre-enforcement action from enacting and enforcing those Rules and all prior restraints of unregistered attorneys from holding themselves out as qualified to prepare, and prosecute the examination of *pro se* patent applications for themselves, or as authorized agents for co-inventors, or for others in convention applications in the USPTO.  Plaintiff also seeks equitable relief, <u>Bivens</u> damages, costs, and attorneys' fees under Congress's mandate to Plaintiff as a private attorney general, the APA, and the Declaratory Judgment Act for violations of Plaintiff's constitutional and civil rights.

Because the Plaintiff's claims are brought pursuant to the APA, the ordinary standard for summary judgment applies.  <u>Star Fruits S.N.C. v. United States,</u> 393 F.3d 1277, 1281 (Fed. Cir. 2005).  Summary Judgment is appropriate only if the record shows "there is no genuine issue as

15

to any material fact and that the moving party is entitled to a judgment as a matter of law. In cases involving judicial review of agency action under the APA, the focal point of summary judgment review is "the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). Obviously, there is a genuine issue as to a material fact, and the moving party is not entitled to a judgment as a matter of law in this case, any more than the Defendants were in the cited GSK and Tafas cases, Id.

Plaintiff, thus, should have his day in Court. A court having jurisdiction has found that the Defendants have exceeded the scope of the USPTO's rulemaking authority under 35 U.S.C. 2 (b) (2). Consequently, this Court should declare the Final Revised Rules void, "not in accordance with law" and in excess of statutory jurisdiction [and] authority." 5 U.S.C. 706 (2), and continue this case to final judgment on Plaintiff's claims for equitable relief, Bivens damages for Constitutional violations, costs and attorneys fees. Plaintiff's claims have merit, a strong chance of success, are without damage to the public or the Defendants, and he should be entitled to equitable relief, *Bivens* damages, costs, and attorneys' fees.

Section 2 (b) (2) of Title 35 empowers the USPTO to "establish regulations, not inconsistent with law." But they have established arbitrary and capricious regulations that are inconsistent with law and not within the scope of their authority by their Revised Rules, and their rules of *prior restraint* not only in Continuations, but also against non-registered and registered patent attorneys that comprise total outright bans and embargoes of attorneys who hold themselves out as attorneys, patent attorneys, patent and trademark attorneys, and attorneys having limited recognition, even *pro se* attorneys who are authorized agents of co-inventors and applicants in convention or foreign applications in the USPTO.

16

Under Federal Circuit precedent, however, Section 2 (b)(2) does not vest the USPTO with any general substantive rulemaking power. Merk & Co., Inc. v. Kessler, 80 F.3d 1543, 1550 (Fed. Cir. 1996). In accordance with well-established precedent, it was concluded that the USPTO's interpretation was not entitled to Chevron deference. The Federal Circuit found that the USPTO's broadest rulemaking power – Section 6 (a), the identical predecessor to Section 2 (b) (2) (A) – "authorizes the Commissioner to promulgate regulations directed only to 'the conduct of proceedings in the [USPTO]'; it does NOT grant the Commissioner the authority to issue substantive rules." Id. at 1549-50 (emphasis in original) (quoting Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 930 (Fed. Cir. 1991). Furthermore, "substantive declarations[s] with regard to the Commissioner's interpretation of the patent statues, whether it be section 101, 102, 103, 112 or other section," also fall outside the bounds of section 2 (b) (2)'s mandate to regulate the "conduct of proceedings" before the Office. Animal, Id.

In addition, 35 U.S.C. 2 (b) (2) (B) requires the USPTO to engage in notice and comment rulemaking in accordance with 5 U.S.C. 553, which does not empower the USPTO to promulgate substantive rules. Congress debated and refused to grant the USPTO substantive rulemaking authority. See H.R. 2795, 109th Cong. Sec. 8 (June 8, 2005). Accordingly, the Court in Virginia found that Section 2 (b)(2) does not permit the USPTO to promulgate substantive rules, and any rules that may be deemed substantive will be declared null and void. Furthermore, the District Court in Virginia found that Final Revised Rules were neither procedural rules relating to application processing that have substantive collateral consequences, but substantive rules that change existing law and alter the rights of applicants under the Patent Act. Shifting the examination burden onto the applicants constitutes a drastic departure from the terms of the Patent Act as they are presently understood. The total ban of attorneys from holding themselves

17

out as attorneys by *prior restraint,* coercion, threats of prosecution under 35 U.S.C. 33 and/or embargoes and bargaining the holding of investigations in abeyance for the right to hold oneself out as an attorney , and the involuntary secret removal of the names of attorneys from the register of attorneys without their knowledge, request or any safeguards for their constitutional rights, or rights of property, privilege, the  rights and confidences of their clients, and their identity by identity theft or otherwise are an even more drastic and draconian departures from the requirements of the constitution and law, and effects changes in the attorneys' existing rights and obligations.

There is a Constitutional right with global equality for all attorneys to freely enjoy freedom of speech, expression, press, religion and petition for redress of grievances and choice with suitable safeguards for protecting their Constitutional and other civil and property rights by selecting phraseology that truly points out and defines and identifies their title, name, privilege, property, copyrighted trademark, profession and ID.  These rights are part of the well-established, long-standing procedures and rules governing the examination of patents and should not be abridged by a total outright ban of the use of the term attorney by non-registered attorneys.  *See* In re Flint, 411 F.2d 1353, 1357 (C.C.P.A. 1969); Freedman v. Maryland, 380 U.S. 51 (1964); and Diamond [Parker] v. Chakrabarty, 447 U.S. 303 (1980), amicus brief by Plaintiff, in accordance with 35 U.S.C. 101.

Sections 102 and 103 of 35 U.S.C. provide that '[a] person shall be entitled to a patent unless" the claimed invention lacks novelty or is obvious in view of the prior art, and Section 131 states that the USPTO "shall cause an examination to be made of the applications," *Id.*  The Federal Circuit has read those provisions as placing the burden of examination and the burden of proof to make a *prima facie* case against publication in a patent on the USPTO.  In re Warner,

18

379 F.2d 1011, 1016 (C.C.P.A. 1967).  It is only after the Defendants make a demonstration that

the expression is Constitutionally unprotected that the burden shifts to the applicant to rebut that

showing.  In re Oetiker, 977 F.2d 1443, 1445 (Fed. Cir. 1992) ("[T]he examiner bears the initial

burden.")  He must show that the expression is unprotected by the Constitution to present a

*prima facie* case against the publication of the patent by the applicant.  ("If that burden is met,

the burden of coming forward with evidence or argument shifts to the applicant.")  But even

then, the Defendants must meet the compelling public purpose of not infringing Plaintiff's

constitutional rights by narrow tailoring, without *prior restraint* by adequate safeguards, and by

meeting their burden of proof that the expression is unprotected by the Constitution to prevent

censorship.  Freedman, *Id.*

　　　　Plaintiff has shown clearly that this case is an actual case in controversy and that it is ripe

for a decision.  It is not moot.  There is subject matter jurisdiction by this Court; also Plaintiff's

case has as much merit as the GSK and Tafas, cases *Id.,* that he has as much of a chance of

success as those plaintiff's do against the same Defendants as in this case, which was found to be

good if not overwhelming, and that the damage to the public and the Defendants is not great,

certainly not as great as it is and will be to the Plaintiff.

　　　　The letter of March 4, 1996 was used, and is continuing to be used, to coerce Plaintiff

with a promise to hold that investigation in abeyance to coerce Plaintiff into accepting an

embargo against his practice in the PTO.  The consideration for holding the investigation in

abeyance was the Plaintiff's acquiescence by not replying to the letter of March 4, 1996 within

30 days.  Defendants have continued to hold that investigation in abeyance, and to threaten

prosecution, sanction and jail for breaking that embargo.  By the exclusive use of 35 U.S.C. to

limit Plaintiff's right of action is to require him to rely only an action in *habeas corpus.*  That is

still being used to coerce Plaintiff and censor Plaintiff's expression by *prior restraint* and violation of his Constitutional rights of speech, press, religion and petition for redress of grievances; Due Process; Privilege; and Property, and the taking of his property by identity theft without adequate compensation. Plaintiff is still being threatened with prosecution, a trial, and jail under 35 U.S.C. 33 by any expression in which he      holds himself out as an attorney, patent and trademark attorney, patent attorney in a patent or trademark; Continuations of his currently pending patent application; or elsewhere; or as being registered or unregistered in the PTO as an expression of political and religious protest against violation of his Constitutional rights, *inter alia,* including, his civil, property, privilege and identity rights, or rights of privacy, freedom from interference of his clients, identity theft, and violation of his rights of equal protection, against discrimination against his age-related disabilities.

The Record does not support, and has not been supportive by probable cause of, a formal charge of Plaintiff with misconduct or the breaking of any rules of this Court, or Maryland, the District of Columbia, New York State, the U.S. Tax Court, the District Courts of the Southern and Eastern Districts of New York, the Court of Appeals, the Supreme Court of the United States or the Patent and Trademark Office. Plaintiff has a clean Record in this case. There was no reason or probable cause for removal of Plaintiff's name from the register of attorneys. Certainly withdrawal as an attorney from his joint invention, or his notice of withdrawal on February 9, 1996 and obtaining permission for temporarily "ceasing practice" at the time to straighten out a mistaken Order in Maryland, was no reason or notice of a request to remove his name from the register of attorneys.

Temporarily "ceasing practice" until an Order in Maryland was corrected, is quite the opposite of a *request* to remove or to give notice that Plaintiff wanted OED to treat his letter as a

20

"request" to *remove* his name from the register. This is especially obvious and evident to anyone who has successfully practiced patent law for over thirty years with a clean record in the PTO. It is irrational to believe that Plaintiff's letter of February 9, 1996 could be treated as a "request to have your name removed from the register." Obviously, this is a genuine issue of fact in dispute, and a Compelling question of law for this Court to decide.

A "request to remove" would be equivalent to resignation, which was not possible at that time. It was and is not possible by a secret removal on or about August 28, 1996 or thereafter in accordance with law. Lack of a hearing, due process under 35 U.S.C. 33, and the requirements of 37 C.F.R. 10.40, 10.63, 10.64 or 10.65 would clearly make it irrational to treat Plaintiff's statement that he was temporarily "ceasing practice" while making a correction in a Maryland Order as a request for removal from the register in the PTO, especially since inactivity in Maryland had no possible connection with temporary inactivity by Plaintiff as an attorney in the Trademark Office, or as an attorney in the Patent Office, because he expected to maintain his practice as an attorney in the District of Columbia and New York State, and as an attorney and agent in the PTO.

Resignation would have been in violation of 10.78, which prohibits a practitioner from attempting to exonerate him or herself from, or limit his or her liability to, a client for his or her personal malpractice. And yet the Director of OED's letter of March 4, 1996 in Defendants' Exhibit 8 irrationally and incompetently stated that, "Accordingly, we are treating your statement as a request to have your name removed from the register."

The Defendants' charge Plaintiff with being deluded, or out of his right mind. Arguably only a deluded person, or a foolish, eccentric old man would have answered the letter of March 4, 1996 within 30 days, without noticing that it was from someone who was not the addressee of

21

Plaintiff letter of February 8, 1996. That later letter was on an entirely different and unrelated subject from someone else who was in charge of discipline and punishment in the PTO. The letter of March 4, 1996, was from a person who appears to have additionally been illegally and incompetently trying to lay a trap that was about to be secretly sprung, and surreptitiously concealed for as much as eleven years.

Short of this law suit, that letter of March 4, 1996, could not have been prevented from setting a trap by the Director of OED, or in preventing her and her successor from secretly springing it, and surreptitiously concealing the springing the trap for almost 11 years. The Court seems to think that the secret handwritten note on August 28, 1996 on the March 4, 1996 letter in Exhibit 8, which sprung the trap to remove Plaintiff's name on or about August 28, 1996, and which was kept secret after the March 4, 1996 letter for eleven years, was "after sending the letter and allowing Cornish sufficient time to respond." It was not sufficient, except to respond in this law suit. *See* page 3, line 11 of the Court's 2/25/08 Memorandum Order.

Surely, the Plaintiff had no way of responding to the secret springing of the trap without this law suit, except by prosecution, conviction, jail and a *habeas corpus* proceeding, or this law suit. Nor could Plaintiff have sufficient time within 30 days to file this suit, or to be charged under law with not responding or not preventing coercion sufficient to change his position to his detriment, or from obtaining what turned out to be the bargained for embargo of his practice, and a coup, or sudden, violent and illegal seizure of Plaintiff's ID by identity theft, and a complete irreversible ban of Plaintiff's profession, "title," ID expressions, property, copyrighted trademark, and inventions in more than two Continuation applications.

Plaintiff claims that the Defendants' and the Court should not allow the use of that letter of March 4, 1996 to blame Plaintiff for his own self-immolation of his career and religious belief

22

in his calling to express his calling as a patent attorney, whether or not he is or was registered, before or after, as the Court said on page 3 of its 2/25/08 Memorandum Order, the "OED Director removed Cornish's name from the register in 1996." Indeed, Plaintiff practiced as a patent attorney in Maryland after he was admitted to the Maryland bar in 1956, and before he was registered in the PTO, as hundreds of attorneys have done and do in all fifty states. Plaintiff can represent land patent owners in Maryland and other states, and accordingly call himself a patent attorney. He is not preempted from doing so by 35 U.S.C. 33, which makes 35 U.S.C. 2 (b) (2) (D), 6 and 32 unconstitutional, and unconstitutionally enforced.

Defendants' Memorandum of 11/30/07, page 3, does not state that Plaintiff "asked" or could legally have "asked" to have his name removed from the register during an investigation period as incorrectly stated in the Director of OED's letter of March 4, 1996 in Defendants' Exhibit 8. It is inconceivable that Plaintiff's letter of February 9, 1996 would or could be construed as a "request" to have his name removed "after a grievance was filed against him" as stated on pages 2 and 3 by the Court in its Memorandum Order of 2/25/08, especially since there were no unresolved grievances filed against Plaintiff in Maryland when the Maryland Order of December was made in his favor, and he knew of none at the time in the PTO when he wrote to the Commissioner on February 8, 1996, or until the Director of OED wrote to him on March 4, 1996 and when Defendant Griffin's letter of March 22, 2005 falsely pin-pointed "removal" from the roster of patent attorneys by the Maryland State bar in April 1996. Defendants' Exhibit 17.

Defendants state on page 3 of their 11/30/07 Memorandum relative to the secret "removal" of Plaintiff from the register of attorneys, "that: his removal was in lieu of OED commencing an investigation of the complaint that had been filed against him." That was false because not commencing an investigation of "Mr. Cassidy's complaint, i.e., holding it in

23

"abeyance" was the act done by Defendants in lieu of OED commencing an investigation of the complaint. That was inconsistent with what was stated in the Director of OED's letter of March 4, 1996. "Removal" had nothing at all whatsoever to do with not commencing an investigation. She said then that, "It is our intent to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well as any change of status action based upon the Maryland Court Order..." Admittedly, the removal was done secretly on or about August 28, 1996 without notice to Plaintiff.

## CONCLUSION

**For the foregoing reasons, Plaintiff respectfully urges this Court** to grant Plaintiff permission for an interlocutory appeal of the denial of all his Motions except his Motion to Deny Defendants' pending Motions, which is renewed hereby by a Motion to hold in abeyance **and stay Defendants' Motion to Dismiss and any and all other dispositive Motions by Defendants so that the Court can ultimately grant Plaintiff's Motions,** *inter alia,* for appointment of counsel and for attorney's fees as a private attorney general; Bivens damages for Constitutional violations; and **a** Temporary Restraining Order, or **injunctive relief to assure that** Defendants' concessions are enforceable.

*"Attorney, Agent or Firm* **– Cornell D.M. Judge Cornish"** or *"Attorney, Agent or*
*Firm* **– Cornell D.M. Judge Cornish** TM SM "
**Downpat** (c) 2008

**Respectfully submitted,**

*Cornell D. M, Judge Cornish*
Cornell D.M. Judge Cornish DCBar#366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  4/3/08

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    3rd    day of April, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
**Washington, DC 20037-1502**
**(202) 429-9705**
cornishj@erols.com

Date:  4/3/08

UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,                )
                                           )
                        Plaintiff *Pro Se* )
        v.                                 )
                                           )    CASE  07-cv-01719 (RWR)
                                           )
JON DUDAS, et al.                          )
                                           )
                        Defendants         )
_____ )

**Memorandum In Support of Motion To Grant Plaintiff Permission For An
Interlocutory Appeal Of The Denial Of All His Motions Pending On 3/24/08, Except His
Motion Hereby And Herein To Hold In Abeyance And For A Temporary Stay Of
Defendants' Dispositive Motions To Dismiss And For Summary Judgment**

Plaintiff's Motion at issue overlaps the issue in United States Patent and Trademark

Office's changes to the "rules governing the examination of patents." *See* Memorandum Order

Plaintiff's Motion at issue overlaps the issue in United States Patent and Trademark

Office's changes to the "rules governing the examination of patents." *See* Memorandum Order

of 4/1/08 in the United States District Court For The Eastern District of Virginia, Alexandria

Division, 1:07cv1008 (JCC), granting GSK and Tafa's Motions for Summary Judgment.

Defendants' letter of March 4, 1996, in Defendants' Exhibit 8 was a letter that was

playing "for keeps."  It was a threat by coercion to start an investigation unless Plaintiff agreed

to an embargo of his career as a patent and trademark attorney in the Trademark and Patent

Offices. It urged a risky "strategic mooting" of an investigation.  It was the horse closest to the

1

door. It was the only choice available, and, thus, unwise to avoid because it promised the *status quo* without loss of Plaintiff's career. Accepting the *status quo,* which included Defendants holding an investigation in abeyance, the Defendants would embargo Plaintiff's practice by preventing him from holding himself out as a registered patent attorney, which a risky and unwise decision to the benefit of the Director of OED, because it would save her and OED the expense, time and effort of an investigation she was bound to continue in order to provide a finding of probable cause, but knew she would lose if she had to wait until she left the PTO in 1999. That was the down side for her, but it would be a way of punishing the PTO for her departure after she left, as was her deluded hope, by leaving the mess to her successor to take care of, which he did by his letter of June 15, 2000 in Defendants' Exhibit 33.

The up side for her successor was the prosecution of Plaintiff under 35 U.S.C. 33 on the basis of the secret removal of his name from the register without his knowledge, and the prosecution of Plaintiff, the levy of a fine, and possibly jail to deter Plaintiff and other attorneys from practicing without being registered. That was risky and illegal on March 4, 1996, as it would also be, as she knew. But in accordance with her desire for a vendetta against the PTO, she incompetently, illegally and wickedly planned to remove Plaintiff's name from the register on August 28, 1996 without telling Plaintiff. To this end, on March 4, 1996, she planned a secret handwritten note on her letter of March 4, 1996, in accordance with her devious plan, to effectuate a coup, by pretending that Plaintiff *voluntarily requested* the coup. As Defendants put it in their 1/15/08 Opposition in connection with their Exhibit 8. They falsely used the March 4, 1996 letter as their excuse for blaming the coup on Plaintiff. To this end, they falsely said the March 4, 1996 letter "contains a hand-written notation signifying the date on which the USPTO effectuated Plaintiff's request to be voluntarily removed from the USPTO register."

2

The Director of OED planned the end of Plaintiff's career in the PTO, which, of course, would parallel her anticipated disappearance from the PTO. That actually took until 1999 to occur. But it was after the secret removal of Plaintiff's name from the register of attorneys without notice o Plaintiff. Thus, although she would surely lose an administrative prosecution of Plaintiff in the PTO, the Plaintiff would surely lose a *habeas corpus* action to get his license back because of the lack of adequate safeguards for his civil and Constitutional rights in the PTO. That lack of safeguards would allow Plaintiff to be fined and possibly put him in jail for holding himself out as an attorney by violating 35 U.S.C. 33. But she didn't anticipate Congress'es mandate to Plaintiff as his own private attorney general under the multitude of attorney's fees shifting statutes.

All the while, the trap she set for Plaintiff was based on bamboozling her successor as Director of OED, the other Defendants in this suit, and by a hornswoggle of Plaintiff, coercing him to rely on his honesty, e.g., by considering 37 C.F.R. 10.78, which limits liability to a client during a proper "withdrawal" without exonerating himself. According to 37 C.F.R. 10.78, "A practitioner shall not attempt to exonerate himself or herself from, or limit his or her liability to, a client for his or her personal malpractice."

The investigation was not the worst of all possible scenarios, but it was cleverly and deceptively packaged to hide the real motive of the OED Director from Plaintiff as only a temporary embargo of Plaintiff's professional career as a patent attorney for 30 days from the date of the letter could. However, while her letter was a blackmail threat to start an investigation in 30 days if Plaintiff replied to her letter, she cleverly showed him the advantage of not replying. That would waive his Constitutional right against self-incrimination. And he could obviously expect that he would not be removed from the register because his removal was a *non*

3

*sequitor* to his letter of February 8, 1996, and the Director of OED's letter of March 4, 1996.   It

would have been irrational to believe that he could or would be removed without due process, or

because of anything he said to the Commissioner, or that she said to Plaintiff about removal or

anything else before she resigned as Director of OED, or left the PTO in 1999 under protest, or

because of incompetence, as the case may be.

The Court has been bamboozled by the Defendants into mistakenly believing on page 1

of its 2/25/08 Memorandum Order that "Cornish has filed a motion for a preliminary injunction

which appears to request an order (1) enjoining the USPTO from requiring that he pass the patent

examination before being reinstated." The Court states on page 2 that "Cornish applied for and

passed the patent examination in 1958, and became registered to practice before the USPTO."

Plaintiff agrees that he "became registered" and so he sees no reason why he should or would

want to be prosecuted, disciplined, jailed and by *habeas corpus* attack a requirement to pass the

patent examination, or then proceed by "enjoining the USPTO from requiring that he pass the

patent examination before being registered or reinstated."

The gravamen of Defendants' defense and Motion to Dismiss, and Plaintiff request for

relief, are genuine issues of fact in dispute, and compelling questions of law as to whether 35

U.S.C. 33 is the only means for Plaintiff to attack Defendants' illegal conduct by prosecution,

conviction, jail and *habeas corpus,* or in this case under the APA and the Declaratory Judgment

Act, and by proceeding, if necessary, by an interlocutory appeal on the basis of reasonable

differences of opinion, and a significant mistake of fact by the Defendants and the Court.

It is obviously a mistake of fact to believe that the "gravamen of Plaintiff's claim is a

reinstatement claim "enjoining the USPTO from requiring that he pass the patent examination

before being registered or reinstated "as stated by the Court, and Defendants, with whom the

4

Court apparently concurred. *See* Defendants' Defendants' Opposition on 1/15/08, page 3, where they stipulate that the "gravamen of Plaintiff's reinstatement claim is OED's March 22, 2005, determination, Plaintiff was required to file a petition in this Court within 30 days of March 22, 2005, i.e., by April 22, 2005."

That is a fiction that has no basis in fact. The gravamen cannot be based on OED's March 22, 2005 statement. The alleged "gravamen" is a fiction that has no basis in fact. The Court repeats this mistake by stating that, "Cornish has filed a motion for a preliminary injunction which appears to request an order (1) enjoining the USPTO that he pass the patent examination before being reinstated."

Plaintiff's request for Bivens damages for Constitutional violations, cost, attorneys' fees and equitable relief includes, *inter alia,* an Order enjoining Defendants' from threatening Plaintiff, as they have since March 4, 1996, with criminal prosecution under 35 U.S.C. 33 for violating an embargo, including, *inter alia,* by *prior restraint*, against his practice, expressions and holding of himself out as a patent attorney. Plaintiff's suit utilizes the procedures of the APA and the Declaratory Judgment Act under the Constitution to attack Defendants' *prior restraint* and total ban of Plaintiff's practice as an attorney, patent attorney, and patent and trademark attorney. That is a claim for violation of a substantive right. Defendants' characterize the Plaintiff's suit as merely procedural under 35 U.S.C. 32. *See*, for example, page 7 of Defendants' 1/15/08 Opposition.

But that is not the only and exclusive way of redressing the irreparable harm to Plaintiff by Defendants' permanent immolation of his career, and Defendants' illegal discrimination against him designed to prevent him from ever passing the examination, and by making it impossible for him to ever pass the Patent examination because of age-related disabilities. But he is not so

5

disabled as to be unable to practice patent law and trademark law as an attorney, or to be totally

banned and barred from doing business with the PTO in any way, or holding himself out as an

attorney, patent attorney, or patent and trademark attorney for himself or others, such co-

inventors who have authorized him to act as their agents, and to file foreign patent applications

in the USPTO, or to be totally banned from filing more than two Continuation applications under

the Defendants' Final Revised Rules. This is a pre-enforcement suit, *iner alia,* under the APA

for substantive violations.

    This is not a suit only attacking 35 U.S.C. 32, nor is it a suit attacking that law as a way

of gaining reinstatement. It is a suit attacking the facial Constitutionality of 35 U.S.C. 2

(B)(2)(d), 6 AND 32.

    Plaintiff's Bivens tort claim for damages, equitable relief, costs and attorneys fees under

the attorney's fees shifting statutes, is under the APA against substantive violations of his

Constitutional rights under the APA and the Declaratory Judgment Act. He seeks Bivens

damages, costs, attorneys' fees and an injunction to enforce Defendants' concession to "hold in

abeyance any investigation of Mr. Cassidy's complaint, as well as any change in status action

based upon the Maryland Court Order." They concede that they will "hold the investigation in

abeyance with respect to Mr. Cassidy's complaint, as well as any change of status action based

upon a Maryland Court Order" because Plaintiff did not reply within 30 days. Plaintiff

acquiesced in their concession for at least 30 days from March 4, 1996 to hold an investigation in

abeyance by not replying. *See* Defendants' Exhibits 8 and 33.

    To this end, Defendants have relied heavily on an unconstitutional, permanent and

absolute ban of Plaintiff's expressions by *prior restraint*, including *prior restraint* of his

expressions relating to and use by Plaintiff and Defendants of the rules governing the

6

examination of applications in the PTO, including particularly patent and trademark applications, and Continuation patent applicaions, and his holding himself out in more his patents and trademarks, including more than two Continuation patent applications of his currently pending patent application, as an "Attorney, firm or agent," as an "Attorney," as a "Patent and trademark attorney," or from using similar expressions, or from using his copyrights, trademarks, "title," "property," privacy, clients' secrets, his trade secrets, or his privilege as an attorney under the Patent Laws or the Constitution,  by *prior restraint* in accordance with their Revised Rules or otherwise.

Defendants have relied heavily on an Order in favor of Plaintiff in Maryland, which they and the Court have not only misconstrued, but which relies on a mistake of fact involving the Record in the PTO, which this Court is limited to reviewing.  They have relied on the resolution of a 1995 refusal of Plaintiff's hostile co-inventor to accept an assignment of Plaintiff's invention by refusing to investigate his jeremiad, which OED received on November 7, 1995.  However, Defendants have conceded that they will hold their investigation of that jeremiad in abeyance.  *See* Exhibit 3, which was kept secret and hidden from Plaintiff until after the statute of limitations, had passed.

Plaintiff never received a copy of that jeremiad from the Defendants until this case was filed.  Defendant Griffin never explained to Plaintiff that the investigation being held in abeyance according to the Director's letter of March 4, 1996, was an investigation of that jeremiad, or that it had been resolved in the PTO, by the Defendants, and by the Director's letter to his co-inventor on June 15, 2000.  *See* Defendants' Exhibits 3, 8, 17 and 33.  Plaintiff was never told about that resolution until receiving the Defendants' Exhibits, particularly Exhibits 3, 8 and 33.  And Plaintiff never received a formal complaint based on the investigation by the

7

Defendants because no investigation was ever started, undertaken or completed before or after it was resolved on June 15, 2000. Thus, Plaintiff was left with a threat of sanction during an eleven year informational stage, in which he was constantly threatened with criminal prosecution despite the resolution of this investigation in 1995 and during which time that threat was deceptively used to enforce an embargo of Plaintiff's entire patent and trademark practice in both the Patent and Trademark Offices, and elsewhere as well.

Accordingly, Plaintiff was forced in this case to enter the unfamiliar, unstructured and stressful environment without the aid of trial counsel (albeit he did consult prior to filing this case initially). That delayed the filing of this case, and led to Defendants' Dispositive Motions, Motion to seal, and for an Order of Protection before trial by self-representation without the benefit of counsel appointed by the Court as he requested whereby he has been constantly challenged by the Defendants, the Court and the myriad of decisions that trial counsel have to make according to the mandate of Congress for him to act as his own attorney general to protect his civil and Constitutional rights. He has additionally been harassed by the Court clerks who gave him conflicting or confusing instructions on the filing of his papers.

Defendants instigated all this stress and strain by stating deceptively and falsely what they were going to do after Plaintiff had completed his *sua sponte* withdrawal with the agreement of the PTO to protect his co-inventor by a temporary, non-jurisdictional inactivity that was merely informational, and "withdrawal" in accordance with the requirements of the Patent Office Rules. MPEP 1.36, 1.613, 402.05, 402.06, 2560, 2623 and 37 C.F.R. 1.36, and 10.78.

Defendants' intention was to secretly remove Plaintiff's name from the register of attorney *ex ante* during an "informational period" without any Constitutional safeguards. That was revealed on the filing of this case by a handwritten note dated August 28, 1996 on the OED

8

Director's letter of March 4, 1996 in Defendants' Exhibit 8, and another letter on June 15, 2000 in Defendants' Exhibit 33. Defendants regulations required them to investigate, but to finesse that requirement of their own regulations, they threatened Plaintiff deceptively to coerce him to acquiesce in an embargo of his practice in both the Patent and Trademark Offices for at least 30 days. Their real concern was how to obtain the permanent and outright removal and ban of Plaintiff's ability to practice and/or to use his "title," ID, property, trademark, and privilege in any expression as an attorney by *prior restraint* of his holding himself out anywhere as a patent attorney.

Defendants knew that they could deceptively disguise their real intention behind the year-long informational period expected for Plaintiff's withdrawal, inactivity and the filing of a Continuation on his joint invention by his co-inventor made possible by the assignment of Plaintiff's joint invention to his co-inventor, and the temporary status of Plaintiff's inactivity in Maryland according to a temporary, provisional Order of inactivity in Maryland without sanction, discipline or a requirement for a showing of fitness for reinstatement. To this end Defendants coerced Plaintiff to accept or acquiesce in their embargo of Plaintiff's practice in both the Patent and Trademark Offices for at least 30 days while they held an investigation in abeyance. Beyond that time, Plaintiff expected a closing letter whereby no notice of resumption of active practice in the Trademark Office was required, and, accordingly, Plaintiff could rely on continued registration as an agent in the Patent Office during the informational period in which Plaintiff was inactive in the PTO while the investigation was held in abeyance.

The Controlling question of law, upon which there is a reasonable basis for a difference of opinion, and the genuine issue of fact in dispute in this case, relative to Plaintiff's APA action, *inter alia,* concerning the rules governing examination of applications in the PTO, the

9

substantive violations of those rules under the APA, and the informational period initiated by Defendants on March 4, 1996 by their letter in Defendants' Exhibit 8.

Before that informational period, the Plaintiff's letter *suo sponte* on February 9, 1995, gave notice and confirmed approval of his withdrawal as an attorney in active patent applications, including his joint application with his co-inventor Cassidy. That was consistent with the temporary and provisional inactivity in the PTO along with his announcement of inactivity in Maryland without discipline, sanction or a requirement for a showing of fitness for reinstatement to active status in Maryland or the Patent Office. The inactivity might last for up to the year. That was the time it might take for his co-inventor to either abandon or file a Continuation on their provisional patent application that had been assigned to his co-inventor. The informational period was otherwise benign because the inactivity in Maryland freed Plaintiff from paying the yearly fee for practice for the year he might be inactive in Maryland.

The letters in Defendants' Exhibits 8 and 33 were *ex ante*, i.e., during the "informational" period for investigation of Plaintiff's assignment of his invention to his co-inventor, the status of the corresponding provisional patent application, or the holding of a trial on the refusal of his co-inventor to accept Plaintiff's assignment during the time when the investigation of that refusal was to be held in "abeyance."   It was agreed that the investigation was to be held in "abeyance" for at least 30 days, not as long as up to and until the time that Plaintiff asked for a return to active status, as stipulated privately by Defendant Moatz's libelous letter of June 15, 2000 in Exhibit 33.  Plaintiff was never informed of that length of time, or the time necessary for a "closing letter" to be sent.  The letter of March 4, 1996, stipulated that an investigation was to be held in abeyance "for keeps," i.e., for ever.  Exhibit 8.  Unfortunately, that would be until after his name was secretly removed "for keeps" from the register of attorneys on or about August 28,

10

1996, as described by a handwritten note on the OED Director's March 4, 1996 letter to Plaintiff in Defendants' Exhibit 8.

The result was the manifestly unjust, irreparable and permanent ban of Plaintiff against his professional career as a patent attorney, as well as his property, ID, and privilege; and the permanent, irreparable and complete ban of its recapture or restoration by arbitrary and capricious action not within the scope of Defendants' authority, and not in accordance with law; all of which is now commensurate with the permanent and complete ban of more than two Continuations of his currently pending patent application under the existing Patent Laws by the publication of the Defendants' Revised Rules.

One result was this major revision of the Patent Laws, is that Plaintiff has been forced to wait for the promised *ex ante* investigation during an eleven year long informational period before this trial was begun in this case and the Defendants filed a Motions to Dismiss, for a sealing Order, and for an Order of Protection against the Plaintiff. Plaintiff had to wait for the investigation to be terminated after it was held in abeyance, and until Plaintiff asked for reinstatement, but he was not told it was terminated until he filed this case.

The investigation was never completed because of the running of the five year statute of limitations against completion of the investigation. Alternately Plaintiff had to wait to receive a "closing letter" or a "concession" in this trial enforced by an injunction, but those options could not be addressed until Plaintiff received notice of the status of the investigation by the Defendants in this trial. That factual issue needs to be addressed by this Court now as a genuine issue of fact in dispute, and as a Controlling question of law.

This Court must decide whether the investigation was ever started or stopped during the informational period, which lasted until this trial. This trial is to decide how to force the

11

"concession" made by the Defendants to Plaintiff to hold the investigation in "abeyance" during the informational period. Is abeyance to be forced by an injunction or was it conceded by "strategic mooting" on March 4, 1996? Did Plaintiff change his position to conform to a complete but temporary embargo of this practice in both the Trademark and Patent Offices and from holding himself out as an attorney ?

Did he do so within 30 days by a threat to prosecute him if he opposed an outright embargo and ban of his practice in the Patent and Trademark Offices respectively, and everywhere else? That's what Plaintiff claims. Plaintiff's bargaining position was essentially limited to the adequate consideration for their promise to hold the investigation in "abeyance" for at least 30 days in favor of Plaintiff by Plaintiff's acceptance of the "strategic mooting," which required him not to reply to he Director of OED's letter of March 4, 1996 for 30 days.

As a practical matter, Plaintiff could not make Defendants give up their threat of prosecution by a reply, so a reply was counterproductive. It would have been a waiver of his Constitutional rights against self-incrimination. At the time, he reasonably relied on what he believed were the adequate safeguards of the disciplinary system in the PTO, whether or not the Defendants held the investigation in abeyance *ex ante* or not.

As it turned out, the secret removal of his name from the register cancelled out any safeguards that he might have had. Defendants' deception, fraud, and the obstruction of justice were *ultra vires*, illegal and unconstitutional. They intended from the start to secretly, permanently and completely ban Plaintiff's patent practice without Constitutionally sufficient notice to him. In fact, they never told him his name was removed until this case became ripe for a decision in this Court, because their intention was to ban and prevent him by discrimination because of his age-related disabilities from ever practicing patent law as a registered attorney

12

again, and to discriminate against him because of his age-related disabilities and vulnerabilities to make it impossible for him to continue as a registered attorney.

The Court is requested to decide to enforce the Defendants' "concessions," including their promise to hold the investigation in abeyance without any threat of prosecution under 35 U.S.C. 33 in exchange for Plaintiff's acquiescence in their embargo of his practice for at least 30 days. To this end, their promise needs to be enforced by equitable intervention of this Court in this case upon the merits of Plaintiff's legal claim for <u>Bivens</u> damages, costs, attorneys' fees and equitable relief to enforce their concessions.

Plaintiff has been under an embargo of his practice without probable cause for eleven years, following a secret removal of his name without notice on or about August 28, 1996, as shown by the handwritten note on the March 4, 1996 letter in Defendants' Exhibit 8. A hearing and due process have been denied for eleven years to enforce the permanent, and irreparable total ban of Plaintiff's constitutional rights to practice in the Patent and Trademark Offices – which is way beyond the time that Defendants informed him that such an investigation could reasonably be expected to be held in "abeyance." They asked Plaintiff to acquiesce in an embargo of his practice in the PTO for at least 30 days. They inferred that they would give Plaintiff a copy of the jeremiad received by OED on November 7, 1995 (Exhibit 3), which their rules and due process required them to send to the Plaintiff, but they have not done so until forced to do so upon the filing of this case. To this end, the letter of June 15, 2000 from Defendant Moatz, the Director of OED, said that "OED will consider the complaint if and when Mr. Cornish applies to be reinstated," which was, therefore, a lie libelously published by the Defendants to resolve and close the case without notice to Plaintiff.

13

Defendants deceptively and illegally did not *consider* it or send it to him when Plaintiff requested the informational period to end by reinstatement according to the Director's letter of June 15, 2000, or at the end of the 30 day period starting on March 4, 1996. Also, the investigation is now barred by the statute of limitations, whereby it could not still cause a viable and enforceable investigation or result in the issuance of a formal complaint.

And Plaintiff has not been allowed to have any due process for eleven years. He has even been limited by the Court in his self-representation after he filed this case under the mandate of Congress as a private attorney general to protect his civil rights. And he has been denied the help of an interpreter on any level of analysis for declaring him incompetent to stand trial by allowing the Defendants' silence without any accommodation for a means of communication under a coherent expression test by the denial of access to an appointed counsel, or the Lawyer Counseling Panel under Rule LCvR 83.20.

Apparently, the Court is giving the Defendants protection, while giving only modest and temporary leeway to the Plaintiff to see if Plaintiff can pull off his attempt to represent himself without the help of Counsel, which he has requested the Court to provide according to a Motion by Plaintiff that has been denied. It' a matter of letting the Plaintiff sink or swim with his pre- and post-warning Motions to actually formulate and communicate to the Court a coherent Constitutional claim on the merits based upon a genuine issue of fact in dispute or a compelling question of law upon which there is a reasonable basis for a difference of opinion as to his claim for Bivens damages, costs, attorneys' fees and equitable relief based upon a Constitutional violation.

The Court "warned" that the court would require a high level of competency for self-representation in order to protect the Defendants from what they claim amounts to Plaintiff's

14

confusion, if not his gibberish amounting to an age-related expressive writing disorder and an age-related expressive language disorder; an age-related impaired working memory, as evidenced by his failures to pass the Patent examination; and an age-related delusional disorder "grandiose" type by citing a *pro se* case in which the litigant claimed to be a "citizen of the universe." To that end, the Court has refused to reconsider and grant Plaintiff's "pre- and post-warning" Motions because of redundancies or lack of merit. Depriving Plaintiff of a response from Defendants to his Motions, and depriving him of the assistance of trial counsel, or even standby counsel, including the aid of the Lawyer Counseling Panel, is tantamount to a waiver of a fair trial under the Sixth Amendment.

The Court has not a permitted a waiver, as in <u>Faretta v. California,</u> 422 U.S. 806 (1975). That case required the Court *ex ante* to risk an unfair trial with respect to ineffective-assistance-of-counsel by self-representation under Section 1789 of the Judiciary Act without the help of counsel at trial for a defendant who could communicate, but who may otherwise have done a poor job of representing himself by poor judgment. Nor does this case, as in <u>Dusky v. United States,</u> 362 U.S. 402 (1960), require that a defendant be able to consult with paid trial counsel instead of the Lawyer Counseling Panel, who is not paid.

A mitigating circumstance in favor of reversal of the dismissal of Plaintiff's Motion for the assistance of Counsel and the Lawyer Counseling Panel, both of which have merit but which were denied for lack of merit, is the inability because of Defendants' actions against Plaintiff to introduce or convey exculpatory evidence or theories to the Court because of the lack of safeguards *ex ante*, i.e., before a hearing on the merits in this case. To this end, Plaintiff's Motions to open up the record in the PTO, and to allow discovery have merit but have been denied as lacking merit. That record contains much factual evidence concerning the genuine

15

issues of fact that are in dispute relating to the investigation that Defendants said would be "further considered if and when Mr. Cornish applies to be reinstated." That investigation has been further considered for the first time in this Court. It has been in abeyance since a jeremiad was received in the Patent Office, as shown by the Defendants' Exhibit 3, which shows that it was received in the OED more than twelve years ago on November 7, 1995.

The Court has refused to hold such hearsay evidence inadmissible, irrelevant and barred by the statute of limitations, as requested by the Plaintiff, and he has taken exception to its admission for the record and for an appeal. It should have been denied admission but it wasn't. A permanent ban on the objection to the admission of such evidence taints these proceedings because it is relevant to the Plaintiff's age-related, life-function disabilities of memory, learning and ability to communicate. That is a mitigating circumstance that is relevant to the compelling questions of law and genuine issues of fact in dispute in this case.

The proceedings have also been tainted because Defendants have been shielded from answering Plaintiff defense to the jeremiad of Mr. Cassidy and its complete resolution on June 15, 2000. Defendants have been shielded from confrontation by Plaintiff and cross-examination in open court. This includes the admissibility, substance and lack of any basis in fact to support a probable cause finding, in accordance with the findings of the District of Columbia.

The full PTO record clearly shows that the Defendants have obstructed justice by covering up important secret evidence, and by misusing the system to castrate the constitutional safeguards that would otherwise be available, including the hallmark procedural protections afforded by the Due Process Clause. Permitting defendants who are competent but have age-related disabilities to represent themselves, while not providing the assistance of counsel

16

appointed by the Court, the lawyer counseling panel, or the full Patent Office record, is fundamentally unfair and threatens societal interests in safeguarding valid verdicts.

The guarantee of a fair trial "lie[s] at the base of all our civil and political institutions." Mulinski v. New York, 324 U.S. 401, 414 (1945). A fair trial is such that there is an "institutional interest in the rendition of just verdicts," Wheat v. United States, 486 U.S. 153, 160 (1988), and not just under 35 U.S.C. 33, which the Defendants have continually used to threaten Plaintiff. That institutional interest applies to both criminal and civil trials.

There is general agreement as to the fundamental components of a fair trial, beginning with the textual guarantees of the Fifth and Sixth Amendments: the right against self-incrimination; the right to a speedy trial; the right to an impartial judge or jury; the right to be tried locally; the right to notice of the accusation; the right to confront unfavorable witnesses (including through cross-examination); the right to compel favorable witnesses; and the right to assistance of counsel, not just theoretically or in criminal cases, all of which have been denied to Plaintiff. U.S. Const. Amend. V, VI.

In addition, several other rights and traditions have become fundamental to the overall fairness of the modern trial "as we know it." *See* Faretta, *Id.* These include telling one's side of the story through opening statements and closing arguments and objecting to the admissibility of the government's evidence. *See* Herring v. New York, 422 U.S. 853, 858 (1975). ("[I]t has universally been held that counsel for the defense has a right to make a closing summation to the judge or jury...."); California v. Green, 399 U.S. 149, 158 (1970) ("[C]ross-examination [is] the greatest legal engine ever invented for the discovery of truth ....") (internal quotation omitted); McNabb v. United States, 318 U.S. 332, 346 (1943). ("[W]here .... It appears that evidence has been obtained in violation of legal rights ... it is the duty of the trial court to entertain a motion

17

for the exclusion of such evidence ..." as Plaintiff has done in this case. ("[A} defendant has a

perfect right to object to testimony or evidence which he feels is inadmissible...."), which

Plaintiff has done in this case; United States v. Wilson, 488 F.2d 688, 691 (5th Cir. 1973); *See*

also Patterson v. Illinois, 487 U.S. 285, 300 n. 13 (1988). ("[A]t trial, counsel is required to help

even the most gifted layman adhere to the rules of procedure and evidence, comprehend the

subtleties of examination and cross-examination of witnesses effectively (including the accused),

object to improper questions, and much more.").

There is an institutional interest in these matters in civil actions.  Moreover, Plaintiff

believes the case has been tainted by Defendants' and the Court's harmful factual errors that

have put Plaintiff at risk for deprivation of his right to represent himself without his voluntary,

knowing and intelligent waiver with the aid of counsel conditioned by his doctors prescriptions

for reasonable accommodations, because of Plaintiff's age-related disabilities, not because of

Plaintiff's fault, for which an interlocutory appeal is necessary, which leaves intact Congress's

mandate to allow Plaintiff to protect his civil rights as a private attorney general for Bivens

damages, equitable relief, costs and attorneys fees for constitutional violations.

In any event, the Court's action in denying all Plaintiff's Motions in one quick combined

Order on 3/24/08, sets the period for appeal of the denial of all of them.  That period is not the

ordinary 30 day period, but the period ending 60 days after the Order of Denial because the

Defendants include a United States Government Agency and its employees who are not immune

from suit.  They have not alleged immunity from Plaintiff's suit for Bivens damages from

Constitutional violations, or from costs, equitable relief, and attorneys fees as a private attorney

general.  Permission to appeal within 60 days is requested from this Court so that it can then be

requested from the Court of Appeals within 60 days of the denial.

18

In order to perfect his appeal, Plaintiff knows full well that the language of this second post-warning Motion is presented by a writing designed for the comfort and convenience of the Court, and to this end Plaintiff is attempting to eliminate redundancies and other harmless errors for his appeal by only asking for acknowledgement and permission to appeal Plaintiff's specific request for interlocutory relief to enforce Defendants' uncontested concessions, stipulations, and Plaintiff's uncontested requests for Bivens damages, costs and attorney's fees as a private attorney under the mandate of Congress because of Constitutional violations.

It is understood that it is always difficult to "persuade" a Court politely with a claim having merit based on what a *pro se* Plaintiff believes to be, *inter alia,* at the heart of his legal claim according to the mandate of Congress to act as his own attorney general in protecting his civil and legal rights by seeking Bivens damages, fees, costs, attorneys' fees, and equitable relief.

To this end, this Motion is for acknowledgment of, and permission for, an orderly, well founded and articulated grounds for an appeal of the denial of Plaintiff's Motions, *inter alia,* for the appointment of counsel, use of the Lawyer Counseling Panel, etc., because the Court and the Defendants have made significant, harmful factual errors relevant to Defendants' Dispositive Motions to deny Plaintiff's claims for equitable relief, damages, costs and attorneys' fees to guarantee enforcement of the *unopposed* concessions by Defendants to vacate Defendants' total embargo of Plaintiff's right to obtain patents and trademarks under the Patent and Trademark Laws.

To this end, without enforcement of their concessions the Defendants will be allowed to continue to interfere and discriminate against and totally ban Plaintiff's right of speech, press, religion and protest by petition for *prior restraint*, for which Plaintiff is asking for redress of his grievances, including the violations of the several Constitutional rights claimed to be violated.

19

By failing to give him a "closing letter" or completing an investigation that has been published in the Record of this case after holding it in "abeyance" in the administrative record of this case in the PTO since March 4, 1996, the Defendants have infringed Plaintiff's Constitutional and civil rights by misuse of the Patent Laws, specified ones of which are facially unconstitutional. The Defendants have continued to irreparably invade and infringe his privacy, interfere with his clients, and his co-inventors secrets, and to subject Plaintiff to harassment, discrimination, interference with his co-inventors and their secrets, cause Plaintiff public opprobrium, scorn, embarrassment, disgrace, loss of employment and the possibility of criminal prosecution for his expressions and petitions in patent applications, patents and trademarks. Because of Defendants' failure to provide a "closing letter" the relevant investigation has been pending since the OED Director's letter of March 4, 1996, and the secret note to "remove Mr. Cornish's name from the roster" on August 28, 1996, (Defendants' Exhibit 8). Defendant Moatz's letter of June 15, 2000 in Defendants' Exhibit 33 in also relative to the resolution of the investigation without notice to Plaintiff, e.g., by the lack of a "closing letter," and failure to make any investigation even after Plaintiff asked for the same by applying for reinstatement to qualify to take the Patent examination in July 2005, 2006 and 2007.

A ripe Controlling issue of fact and law in dispute that merits a determination by this Court in this case of controversy is the fact alleged by Plaintiff that give rise to Constitutional violations, *inter alia,* under 35 U.S.C. 101, 102, 103, 112, 171, 311, 315, 361 and 181. That fact is the outright ban of Plaintiff's Constitutional rights of substantive and procedural due process, speech, expression, press, publication, religion and petition for redress of his grievances culminating under the Defendants' Revised Rules that bans more than two Continuations.

20

It all started with Defendants' letter of March 4, 1996 in Defendants' Exhibit 8, and by an obstruction of justice starting with the secret removal of his name, ID, title, property, and privilege without Constitutionally sufficient notice and ending with Defendants' outright ban and prohibition of his ability to practice law as a registered practitioner by the selective suppression and failure of equal protection, and by discrimination that makes it impossible for him to pass the Patent Office examination due to his age-related disabilities.

Plaintiff's name was removed from the register or roster in the PTO secretly without Constitutionally sufficient notice or lawful procedures except by arbitrary and capricious discretion beyond the scope of authority of the Defendants' to resolve Mr. Cassidy's jeremiad without notice to Plaintiff. It was also a removal and ban of Plaintiff's Constitutional rights of expression, press, religion and petition for redress of grievances in a patent under the Patent Laws by their Revised Rules to prevent Plaintiff from filing more than two Continuations and Continuation-in-part applications for himself, and as agent for his co-inventors and others as a registered or non-registered patent attorney in derogation of existing Patent Laws relative to his currently pending Patent Application S.N. 29/273,235, filed 02/26/2007.

A reasonable ground for Plaintiff's legal claims of Constitutional violations is his letter of February 8, 1996, which was not a "request to remove my name from the register," any more than letting the insurance company know that his house would be temporarily empty, or letting the police know that his house was temporarily empty would be a request to cancel his insurance, or to remove his name from the title to the house. Even worse would be the case where the government treated that letter as a "request" to condemn or sell his house or profession secretly without notice to the owner or due process. The government had knowledge that notice of condemnation and loss pursuant to the normal procedure was ineffective. It triggered an

21

obligation on the government's part to take additional steps to affect notice. Such knowledge was one of the "practicalities and peculiarities of the case," <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S.306, 313, 314 (1950). See also <u>Jones v. Flowers</u>, 547 U.S. _____ (2006). This is especially true when, as here, the subject matter of the letter of February 8, 1996 was an admittedly incorrect Order of 12/4/05. It did not concern a request to remove Plaintiff's name from the register, a grievance, a resolved complaint, or the important and irreversible prospect of ending Plaintiff's professional career by resignation from practice in the Patent and Trademark Offices. Such a casually and unilaterally initiated removal or resignation by the Defendants *sua sponte,* was obviously improper and inappropriate legally and technically. It is irrational to believe that Plaintiff request permission for resignation rather than withdrawal from a live case. It was an unethical and illegal obstruction of justice by the Defendants to abort and resolve an investigation in violation of their regulations without probable cause to hold it in "abeyance" to finesse Plaintiff out of his property without due process or to do so without notice to the Plaintiff.

In <u>Goldstein v. Moatz</u>, CA-02-1734-A, decided April 20, 2006, on appeal from the United States District Court for the Eastern District of Virginia, at Alexandria, Leonie M. Brinkema, District Judge, the Court of Appeals vacated the District Court's ruling on "absolute immunity" as to defendants Moatz, Anderson and Toupin, and remanded for further proceedings as may be appropriate." The Defendant Moatz is the same Defendant as in this case. In that case and <u>Hannah v. Larche</u>, 363 U.S. 420, 424 (1960), the plaintiff's complained, *inter alia,* about an investigation involving a use of RFIs and interrogatories sent to them by a government agency in the course of an investigation. In both cases the plaintiff's were granted due process and a hearing. But in this case there was no investigation, hearing or due process in accordance with the PTO requirements. Instead, the investigation secretly resolved. That resolution was secretly

22

used to finesse the Plaintiff's change of position to his detriment, namely his acceptance of an embargo of his entire practice in both the Trademark and Patent Offices for at least 30 days to await the filing or abandonment of a joint provisional patent application; and the resolution of investigations, including an investigation of a jeremiad concerning that application, and a Maryland Order.

It was agreed to hold the investigations in abeyance for at least 30 days. But they were not resolved until at least August 28, 1996 when the Director of OED secretly removed Plaintiff's name without notice to him. Thereafter, that secret removal was suppressed without notice to Plaintiff, who had no knowledge of that removal or the intentional obstruction of justice without due process or a hearing for about eleven years that that suppression involved.

That secret removal and suppression for about eleven years imposed in this context without the constitutional procedures and safeguards appropriate thereto made ripe for this Court the resolution of the genuine issues of fact in dispute and the Compelling questions of law involved.

The Defendants incompetently botched the investigation and stifled the agency the gathering of facts until they resolved the investigation without telling the Plaintiff on or about August 28, 1996.. The letter of February 8, 1996 in Defendants' Exhibit 7 satisfied the requirement for Plaintiff to protect his co-inventor's confidences by notice of "withdrawal" from an active patent prosecution of a co-invention and all right, title and interest to the invention described in the provisional patent application filed thereon upon notice to the PTO, as required by their regulations. *Cf.* Steffel v. Thompson, 415 U.S. 452, 459 (1974) (declaring that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to

23

challenge a statute that he claims deters the exercise of his constitutional rights"); <u>Hickory Fire Fighters Ass'n v. City of Hickory,</u> 656 F.2d 917, 922 (4th Cir. 1981).

Under the OED's current system, nothing but good conscience would prevent an OED investigator from requiring responses to an unlimited and burdensome array of questions by noon tomorrow and bringing charges against him for failing to comply while maintaining the investigation in abeyance for ever without a "closing letter." Unfortunately, the only available limitation in this system is a private lawsuit. Therefore, it is all the more important that the Defendants not be accorded absolutely immunity. This was the holding in <u>Goldstein,</u> *Id.,* in light of which the proceeding was remanded with leave to assess whether the Defendants are entitled to qualified immunity. On appeal, it was found that the qualified immunity issue was not fully litigated and decided by the court; therefore remand was appropriate, and why Plaintiff believes this Motion will be found to have been appropriate on appeal, particularly since Plaintiff has specifically alleged Constitutional violations.

## CONC LUSION

**For the foregoing reasons, Plaintiff respectfully urges this Court** to grant Plaintiff permission for an interlocutory appeal of the denial of all his Motions except his Motion to Deny Defendants' pending Motions, which is renewed hereby by a Motion to hold in abeyance **and stay Defendants' Motion to Dismiss and any and all other dispositive Motions by Defendants so that the Court can ultimately grant Plaintiff's Motions,** *inter alia,* for appointment of counsel and for attorney's fees as a private attorney general; <u>Bivens</u> damages for Constitutional violations; and **a** Temporary Restraining Order, or **injunctive relief to assure that** Defendants' concessions are enforceable.

24

*"Attorney, Agent or Firm – Cornell D.M. Judge Cornish"* or *"Attorney, Agent or Firm – Cornell D.M. Judge Cornish* TM SM "
Downpat [(c) 2008]

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    4/3/08

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    3rd    day of April, 2008.

*Cornell D. M. Judge Cornish*

    Cornell D.M. Judge Cornish
    DC Bar #366240
    1101 New Hampshire Ave., NW, Suite 301
    **Washington, DC 20037-1502**
    **(202) 429-9705**
    **cornishj@erols.com**

Date:    4/3/08

UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,            )
                                       )
            Plaintiff *Pro Se*         )
      v.                               )
                                       )   CASE  07-cv-01719 (RWR)
                                       )
JON DUDAS, et al.                      )
                                       )
            Defendants                 )
_____    )

## **ORDER**

UPON CONSIDERATION of Plaintiff's Motion for interlocutory permission to appeal

the denial of all his previously pending Motions *ex ante,* before the trial has begun, during the

informational period before an investigation has been resolved, while the investigation is in

abeyance and there is an embargo of the  Plaintiff's practice in the PTO, and while the Court is

considering the Defendants' Motion to Dismiss before addressing Plaintiff's requests for

damages, costs and attorney's fees; and his request to Defendants for permission to be

recognized as a non-registered patent attorney; and while the Court is considering Plaintiff's

Motion for a Temporary Order of Restraint or Injunction to ensure the enforceability of

Defendants' concessions and stipulations; and

The Defendants concessions and stipulations, comprising, *inter alia ,*their not

insubstantial but obscure concessions to supply a copy of the July 2007 Patent examination for

$30; to refund the charges and fees for the July 2007 Patent examination; and Defendant Moatz's

October 9, 2007 in his Affidavit that, "Although Plaintiff has not applied to take the patent

1

examination again, I foresee no reason that Mr. Cornish would not be granted the same

accommodations provided to him for the July 2008 Examination", and the entire record herein, it

is this _____ day of _____ 2008, hereby


ORDERED that Plaintiff's Motion for a Temporary Restraining Order should be and it is hereby

Granted but stayed pending a response from Defendants; and it is

FURTHER ORDERED that Defendants be directed to answer Plaintiff's pending Motion For a

Temporary Restraining Order; or alternately that Defendants' Motion to Dismiss or, Alternately

For Summary Judgment be Denied.


                                        _____

                                        **UNITED STATES DISTRICT JUDGE**


W. Mark Nebeker                          Cornell D.M. Judge Cornish
Assistant United States Attorney         1101 New Hampshire Ave., NW
Civil Division                           Washington, DC 20037-1502
555 4th Street, NW                       (202) 429-9705
Washington, DC 20530                     cornishj@erols.com
(202) 514-7230 (fax (2020) 514-8780