*Leave to file granted.*

*RWRoberts, U.S.D.J.*

*4-14-08*

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) |
| | ) |
| Plaintiff *Pro Se* | ) |
| | ) |
| v. | ) |
| | ) CASE  07-cv-01719 (RWR) |
| | ) |
| JON DUDAS, et al. | ) |
| | ) |
| Defendants | ) |

**Motion For A Temporary, Preliminary, Restraining Order To Ensure The Enforceability Of Defendants' Concessions, Inter Alia, In Defendant Moatz's 10/9/07 Affidavit In Defendants' Exhibit 33 Against A Threat Of Prosecution Under 35 U.S.C. 33;  And For Favorable Consideration or Reconsideration of <u>Bevins</u> Claim For Damages, Fees, Costs, And Expenses, Including Reasonable Attorneys' Fees, Inter Alia, Under The Equal Access to Justice Act, 28 U.S.C. 2412;  the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976 90Stat. 2641 42 U.S.C. 1988**

By the rood, my liege, it is permissible for this Court to sustain a reasonable regulation of

speech, press and religious rights by the Defendants in the PTO, but not an outright ban by the

threat of prosecution under 35 U.S.C. 33, as in this case, dating back to a secret identity theft on

or about August 28, 1996, and an illegal cover up of the abolishment of any semblance of

safeguards for Plaintiff's civil rights, which only became apparent on October 17, 2007, upon the

filing of this case.  The court is thus, being asked hereby for a Temporary Order of Restraint

against such a threat under 35 U.S.C. 33, *inter alia,* by enjoining Defendant Moatz's from

refusing to grant the stipulations conceded in his 10/9/07 Affidavit in Defendants' Exhibit 33,

including the reasonable accommodations specified therein.

**RECEIVED**

MAR 2 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

An outright ban was achieved by Defendants' outright ban of more than two Continuation patent applications by publication of their Revised Rules in the Federal Register..

An outright ban was also achieved by Defendants' secret embargo of all Plaintiffs' rights of practice in the PTO on or about August 28, 1996 in the OED Director's secret handwritten note on or about August 28, 1996. The latter was a secret suspension of Plaintiff's registration without any Constitutional safeguards of Plaintiff's civil rights in the PTO.

The secret note on August 28, 1996 initiated an a secret identity theft and unconstitutional suspension of Plaintiff's "title" and right to practice in the PTO as a registered attorney. It was an outright theft of his identity as a patent attorney and an outright ban of all his rights of property, privilege and "title" in his copyrighted trademark to speak, and to publish or petition for redress of his grievances with due process as an registered attorney in a patent and a trademark, save for the safeguards of Congress's mandate to Plaintiff as a private attorney general for attorney's fee by the fee-shifting statutes Congress mandated to be enforceable in this Court.

In the District of Columbia, New York State, the District Court of the Southern District of New York, and the U.S. Tax Court, the Plaintiff was given a hearing as a safeguard of his civil rights, but not in the PTO, where his speech, press, religion and petition rights were totally banned by a secret cover-up of the suppression of the total ban of Plaintiff's speech, press, religion and petition rights in the PTO. The cover up was by the suppression of the publication of a secret handwritten note by the Director of OED on a letter dated March 4, 1996 from the Director, (albeit, it was only a secret handwritten note by the Director on that letter to an unidentified person named "Pat," as shown by Defendants' Exhibit 8 to "pls remove Mr. Cornish from the roster"). And that letter with the secret note on it was covered up for close to eleven

2

years as an obstruction of justice to deprive Plaintiff of his civil rights. It only became known on October 17, 2007 in Defendants' Opposition to Plaintiffs suit as a private attorney general for attorneys' fees, Bevins damages, and equitable relief for the Concessions made by the Defendants since this suit was filed to safeguard Plaintiff's civil rights according to the mandate from Congress in their many attorneys' fee shifting statutes.

Those attorneys' fees are justifiable, not only to safeguard Plaintiff's Constitutional rights by strict scrutiny standards, but also on a "rational basis" standard. And there is a significant change in the burden of proof without any reasonable safeguards in this case that reveals a serious moral hazard to the civil rights of all Plaintiffs if this Court refuses to abide by Congress' directions regarding fee-shifting of attorneys' fees to protect the Defendants' from irrational interference with his economic and civil liberties and his clients.    To that end, this case is also significant because of the consequences of Defendants unnecessary, illegal, arbitrary and capricious Constitutional interference and violations not according to law, and by their *prior restraint* of Plaintiff's expression and protests, which amounts to a *per se* outright ban of his expressions in connection with the practical and actual facts of this case. And the silence of the Defendants in this case under the protection of the Court shouts out loud in connection with Defendants' failures to address Plaintiff's FOIA and EEO requests and Motions in this case because the Court has chosen to allow their silence.

Speech and expressions of pure speech are not dangerous weapons, like concealed handguns, except perhaps when yelling "fire" in a crowded theatre. But this case relates to patents and trademarks, not shouts by the Plaintiff in a crowded theatre.   The words patent and trademark mean open to the public. And Plaintiff is not a felon who secretly possesses a dangerous weapon; his speech is copyrighted in the open in a patent and a trademark, which has

3

origins in the protection of Galileo's intellectual property in letters patent in Italy and Europe, and later by the widespread use of copyrights and trademarks, such as are protected by the common law, and the Copyright and Patent and Trademark statutes, and under Article I, Section 8, paragraph 8 of the Constitution. The public is not in need of a secret and serious obstruction of justice and cover up of the Defendants' obstruction of justice; not in need of arbitrary and capricious, nit-picking, or the overegged pudding of *prior restraint* and "strategic mooting." Not in accordance with law. Defendants' libelously and falsely published their cover-up of the PTO's absolute ban of Plaintiff's practice. They attempted to suppress and prevent judicial review by the obstruction of justice and threats under 35 U.S.C. 33 of deception, defrauding, misleading or threatening of the public by the justifiable use of Plaintiff's title, property, privilege, and the appearance thereof by publication in patents and trademarks.

Plaintiff is already regulated closely by three states, five federal courts, a warning in this Court, and an embargo, suspension and identity theft of his "title," privilege, property and copyrighted trademark as an attorney, aka as a patent and trademark attorney, in both the Patent and Trademark Offices by the OED Director's secret handwritten note on or about August 28, 1996, which lacked suitable safeguards to protect Plaintiff's civil rights as both a registered and a non-registered patent and trademark attorney dating back to March 4, 1996, which is a genuine issue of fact in dispute, and a facial legal question of law for this Court to decide. If the embargo, removal, suspension and identity theft of March 4, 1996 or August 28, 1996, and the illegal cover-up and obstruction of justice don't exist now, as the Defendants now seem on the verge of conceding, their illegal chickens have now come home to roost in accordance with Congress's mandate to Plaintiff as a private attorney general to safeguard his civil rights by fee shifting attorneys' fees in this case.

Plaintiff is entitled to equitable relief and attorneys' fees to enforce the controversial but expected concessions by Defendants. Those concessions have been so hard for the Defendants to make outright, and Plaintiff to gain by a "closing letter" because of the admittedly disastrous irreparable and permanent effects on Plaintiff due to Defendants intention to permanently weed him out by discrimination as a registered practitioner because of his age-related inability to become registered, which Defendants insist and concede is a genuine issue of fact in dispute. They insist that the meaning of his failures to pass the patent examination in 2005 – 2007, cancel out their recognition of his passage of the examination on November 5, 1958, so as to enable Defendants to permanently, irrevocably, and irreparably prevent Plaintiff from ever being registered again. Defendants concede only now, but still insist, that they require Plaintiff to repeatedly qualify to be reinstated to take the Patent examination without cost only with the reasonable accommodations accorded in 2007. They also concede only now to provide copies of the answers and respective exam questions taken by Plaintiff for CLE purposes, or other mere academic reasons, for $30 per exam.

As mentioned above, all the many jurisdictions having supervision and control over the Plaintiff's practice, except the PTO, are interlocked with each other to provide adequate safeguards of Plaintiff's civil rights. But the lack of adequate safeguards in the PTO insures the permanent protection and cover-up of Defendants' identity theft of Plaintiff's "title" and copyrighted name and trademark in all those jurisdictions unless this Court intervenes. Defendants have installed an outright ban against Plaintiff holding himself out any where in all trademarks and patents as an attorney, aka as a "patent attorney" or a "patent and trademark attorney." They have instituted an outright ban of his holding himself out as a patent attorney, not only in Continuations of his presently pending patent application, as if by some Nazi era law

5

to selectively prevent the use of his title, not only in the PTO, but everywhere. Their outright ban includes his present "title" and privileges as an attorney, but also his trademark, copyright, and trade secret properties, and constitutional rights everywhere, now and in the future. Existing intellectual property is taken without adequate compensation retroactively and ex post facto because the Defendants intend, threaten continuously, and preserve to this day their right and intention to prosecute Plaintiff under 35 U.S.C. 33, which includes the threat of criminal prosecution and a criminal investigation that has been secretly pending for eleven years without sufficient constitutionally sufficient notice or any suitable constitutional safeguards and no strict scrutiny or narrow tailoring to protect the well established public goods established by Congress and the Constitution.

The Defendants have refused to answer the Plaintiff by their Request for a Protective Order, which has been partially approved by the Court. They have asked that Plaintiff's complaint for damages and equitable relief be dismissed after unsuccessfully having it sealed by alleging that they really didn't want the record in this case to be sealed. And they have made vague and ambiguous concessions without any guarantee that they would be fulfilled. All of which cries out for this Court's legal and equitable enforcement of the Defendants concessions, quasi concessions, or promises of concessions by so far unenforceable inferences in order to help the Plaintiff achieve a classic example of what Congress wanted to achieve by attorney fee shifting. To this end, Plaintiff again asks that the Court not to allow the Defendants to escape both equitable and legal relief as civil and economic rights Defendants who dodge attorney's fees by refusing to answer and remaining silent in the face of Plaintiff's requests for both injunctive and legal relief under the APA, including Bivens damages, costs, fees, and legal expenses under the relevant attorneys' fees shifting statutes.

6

Accordingly, this is a Motion for Constitutional intervention that doesn't merely ratify government caprices and lack of suitable safeguards. On the contrary, intervention by the Court is necessary to promote important governmental interests by preventing interference with Plaintiff's civil and economic rights that cannot be advanced through less restrictive means. To this end, Plaintiff requests **a Temporary, Preliminary, Restraining Order or Injunction To Ensure The Enforceability Of Defendants' Concessions,** *inter alia,* **Including** Those **In Defendant Moatz's 10/9/07 Affidavit In Defendants' Exhibit33,** and in Defendants offer to supply, and Plaintiff's requests, Petitions for review, via FOIA requests and otherwise, for a copy of the July 2007 paper patent examination questions and answers for $30.00, which requests are among those that Defendants have refused or neglected to answer.

Plaintiff's requests also include favorable consideration of his <u>Bevins</u> claim for damages, and for fees, costs and expenses, including, *inter alia,* **reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412; the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C 1988.** *See* **generally <u>Marek v. Chesny,</u> 473 U.S. 1, 43-51 (1985) (Appendix to opinion of Brennan, J. dissenting); and <u>Hensley v. Echerhart,</u> 461 U.S. 424 433, n.7 (1983).**

The Plaintiff thanks the Court for allowing him to make this Motion and to provide this Memorandum in support, knowing full well that the Court has warned him that the Court has the authority to force the Plaintiff to suffer the cost and hardship of an appeal if the Court's fails to intervene in his behalf here and now. Plaintiff's rationale is the well-established right established by Congress to protect Plaintiff's civil and economic rights by the shifting of attorneys' fees in Plaintiff's favor as a private attorney general in parallel with his right to

7

recover <u>Bivens</u> damages for Constitutional interferences, and to obtain the equitable relief Plaintiff has sought in this case to enforce the concessions made by the Defendants.

In the 30 plus years of Plaintiff's successful practice, the PTO has never warned, sanctioned or punished Plaintiff before this case arose in 1996.  Nor should they do so now by an outright, permanent and irreparable elimination and ban of his right to use his justifiably well-established, constitutionally protected privilege, "title," property and identity to hold himself out with his copyrighted trademark, or otherwise, as a patent and trademark attorney in Continuation applications of his currently pending patent and trademark applications, and *otherwise,* and *elsewhere.*

The Defendants rights to suppress by *prior restraint* are constitutionally and narrowly based by strict scrutiny, and not just on a "rational basis" standard to protect Plaintiff's Due Process rights, because Plaintiff lacks adequate safeguards for any of his rights in the PTO up and until his suit in this Court.  His rights of speech, press, religion and Petition for redress of his grievances go much deeper than merely a "rational basis" standard.  His rights as a private attorney general are congressionally mandated.

This Motion and the enclosed Memorandum in support of this Motion are not merely parallel, redundant or repetitive in comparison to Plaintiff's 3/17/08 Motion and Memorandum "In Support of Review and Reconsideration of Plaintiff's Resubmitted and Revised Motions and Petition" filed on March 17, 2008.  This Motion and supporting Memorandum modify pages which required the text thereof to be amended because of a minor, obvious and inadvertent need for editing to improve their readability.

Moreover, this Motion and Memorandum in support are necessary to ensure Defendants' concessions by granting a Temporary, Preliminary Restraining Order, or Injunction for specific

concessions by the Defendants not fully specified heretofore. To this end, Plaintiff requests a PRO to enforce Defendants' concession by stipulation on 10/9/07 in Defendant Moatz's affidavit in Defendants' Exhibit 33, that Defendants would grant Plaintiff a license to qualify to take and to take the July 2008 paper patent examination for CLE or other mere academic reasons without cost, that they would provide the same reasonable accommodations as were given for the July 2007 examination, and they would give Plaintiff a copy of that exam with answers for a $30 fee. They have not conceded that they will give Plaintiff a refund for the unauthorized fees charged to Plaintiff, but the Court is asked to enforce those refunds for the 2005 and 2006 examinations.

Defendants conceded by internet that Defendants would provide a paper copy with answers for $30.00, but have not done so pending resolution of this case in response to Plaintiff's request and order as a reasonable accommodation for his certified, age-related disabilities that are not in dispute. The Plaintiff requests the Court to enforce his requests for copies of the questions and answers for the 2005 and 2006 examinations according to the Defendants' internet concession.

Still further, Plintiff requests attorneys' fees for pursuit of his suit for _Bivens_ damages and attorney fees for Defendants' conceded secret "strategic mooting" on June 15, 2000 in Defendant Moatz's letter to [redacted in Defendants' Exhibit 33]. That was a libelously false publication and invasion of Plaintiff's privacy concerning "your complaint," in 1996, i.e., the complaint by the redacted addressee, that "OED could not further consideration of your complaint at that time." That was not true, and it was a libelous invasion of Plaintiff's privacy because OED _could_ have further considered the complaint at that time by not illegally suppressing Plaintiff's constitutional rights of due process and an opportunity for a hearing, or by supplying a "closing letter" of that complaint, but the Director "refused" to do so in her official

9

capacity in a written document to another person not employed by the government or with lawful access to the records in the PTO. Moreover, "strategic mooting" and secret identity theft, left Plaintiff in limbo by the libelous and false publication that, "OED will consider the complaint if and when Mr. Cornish applies to be reinstated." That was a libelously false statement and invasion of Plaintiff's privacy because Defendants never did consider the complaint again, and consideration is now barred by the statute of limitations. This was at a time, as the evidence shows, of Defendants Moatz's intention to permanently and secretly weed Plaintiff out as a registered attorney without ever attempting or intending to "consider the complaint." Not until this suit did Mr. Cornish know that he needed to be reinstated or that he was not registered or would not be registered because of over five years of inactivity. Under the circumstances it was impossible to know. Until the Director of OED provided Plaintiff with an affidavit, he was never told that his registration would be taken secretly or removed without just compensation or adequate safeguards by identity theft on August 28, 1996, as shown by the handwritten note on Defendants' Exhibit 8.

The OED letter of March 4, 1996 in Defendants' Exhibit 8 was made without any safeguards for Plaintiff's constitutional rights, such as an opportunity for a hearing. It expressed the Defendants "intent to hold in abeyance any investigation with respect to Mr. Cassidy's [not redacted] complaint" and in hindsight now, that is evidence of an intent to cover up the suppression of Plaintiff's due process rights, including a hearing or a right to receive a "closing letter" without a suit to preserve Plaintiff's civil rights, including his rights as a private attorney general in accordance with his mandate from Congress. By making that "abeyance" contingent on "any investigation, as well as any change in status based upon the Maryland Court Order," which was mentioned in the March 4 1996 letter, Defendants castrated any safeguards that

10

Plaintiff might otherwise have had, or expect to obtain without a suit as a private attorney general.

The possibility of a reply by Plaintiff was not mandatory, nor was it appropriate as Plaintiff's letter of February 8, 1996, and the OED Director's letter of March 4, 1996, satisfied a well-established requirement to ask for and to gain permission to withdraw from active practice in any applications being prosecuted for others at the time. The letter of March 4, 1996 on its face effectively satisfied the requirement to obtain such permission, and its import was limited to that subject and the notification of the "strategic mooting" of the investigation under consideration to coerce Plaintiff into a change of position by an embargo of his practice as an attorney.

As an incidental and gratuitous matter, the OED Director's letter of March 4, 1996, was intended to coerce Plaintiff not to reply by making a Hobson's choice of only the horse closest to the door. The reward was avoidance of the loss of Plaintiff's Constitutional right against self-incrimination by a reply, and the threat of an announced investigation that could precede a criminal prosecution or expensive civil rights suit as a private attorney general. That was the coercion employed by the Director to cover up her intentions. She implied that a reply would cause her to initiate a threatened prosecution "If your name is removed from the register" even without constitutionally sufficient notice. She did not reveal her intent to obstruct justice by a cover-up, or suppression of sufficient Constitutional safeguards, such as by identity theft or an illegal or unjustified charge made against him "if" he replied to her letter by refusing the choice coerced on him by the OED Director.

That coerced choice closest to the door induced a change of position to Plaintiff's ultimate detriment that was hidden by the Director at the time. Initially, it had the advantage of

11

preserving the *status quo*, such as it was, which included permission on March 4, 1996 to

withdraw from any case that Plaintiff was required to withdraw from to protect his client. But in

effect, it turned out to be an interference with his ability to continue to serve his clients by

secretly installing a permanent embargo and suspension of his rights as an agent and as an

attorney in the PTO.

Since the important purpose of seeking and gaining "withdrawal" was taken care of, the

*status quo* had a benign appearance. The *status quo* threatened only the remote possibility of

suffering a temporary and provisional embargo of his practice as an attorney, but only according

to law, because Plaintiff assumed that he would not lose any semblance of Constitutional

safeguards that are guaranteed by Congress'es mandate for Plaintiff to act as his own private

attorney general and to obtain attorneys' fees. Plaintiff needed to know that at the time but was

not given sufficient Constitutional notice to expect the variety of unexpected contingencies that

actually did occur, as known in advance by the Director of OED. These included his coerced

inactivity for more than five years by suppression of his Constitutional rights and a cover-up of

the same.

The most likely contingency was no inactive period of up to five years, which only

became relevant eleven years later. It didn't seem reasonable as a requirement for reinstatement,

or in any event to be required or relevant at the time any way. That was not a certainty anyway,

even in hindsight, because registration and practice as an attorney or agent in the PTO is

interchangeable and separable both in the Trademark Office and the Patent Office in accordance

with, or even without Plaintiff's continued activity and good standing as an attorney in New

York and the District of Columbia where he didn't expect a reciprocal suspension because of the

Order in his favor in Maryland without sanction, because of disability, or a requirement for a

showing of fitness for reinstatement. It is not based on a jurisdictional requirement. Defendant

Griffin has been inactive for much more than five years without being removed from the register.

There are perhaps thousands of inactive attorneys who have never been removed from the

register because of inactivity for more than five years. It appears that Plaintiff has been

selectively and wrongly punished without probable cause or suitable or sufficient Constitutional

notice or due process.

Indeed, the Maryland Order has been treated as a voluntary inactivity granted in favor of

Plaintiff by providing the benefit of avoiding the yearly fee for active practice as an attorney as

long as Plaintiff chose to remain inactive in Maryland, and it was only effective in Maryland. In

view of Plaintiff's voluntary inactivity in Maryland the U.S. Tax Court immediately granted a

hearing and refused to reciprocally suspend Plaintiff on the basis of the Maryland Order. That

reasonably reassured Plaintiff of the benign nature of the *status quo,* until finding out about the

lack of safeguards for Plaintiff's Constitutional and civil rights in the PTO, and the need for him

to pursue his rights as a private attorney general for attorneys' fees in accordance with the

mandate of Congress.

Another possibility that was clearly imminent, agreed to, admitted by Bar Counsel and

expected, which was ultimately made, was the correction of an uncontested mistake made in the

Maryland Order, which Plaintiff expected reasonably to be made by having the Court vacate

their order or amend it. The Defendants were put on notice that the Maryland Order was

temporary and subject to change  by a return to active practice. That feature of a temporary

provisional Maryland Order was recognized by the Director of OED, who said, "It is our

intention to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well

as any change of status action based upon the Maryland Court Order."

13

Also, the Maryland Order was provisional, temporary, without sanction, discipline or any requirement for a showing of fitness for reinstatement, so it was reasonable to expect that Plaintiff would be reinstated as soon as he requested it in Maryland and/or in the PTO without requesting it. To this end, he expected reasonably to effectively continue to remain active in the PTO after permission to withdrew from representation of his clients in 1996 was obtained and confirmed by the Director of OED, since no fee was or is required for active practice either in the Trademark or Patent Office, and no notice of active practice is required for "registration" or recognition for an attorney to practice in the Trademark Office.

Another expected contingency provided by the horse closest to the door, if not by the prsumably benign *status quo*, was the expectation of the receipt of a "closing letter" from the Defendants even if the "investigation" that they were intending to hold in abeyance was held in abeyance to preserve the status quo by "strategic mooting." That meant that it could reasonably be expected that such a "closing letter" would be forthcoming soon, because there was no probable cause for such a letter to be withheld, and that it would eliminate any possible threat of enforcement of an embargo, suspension, or identity theft against Plaintiff's practice as a patent attorney by the secret removal of his name from the roster of attorneys on or about August 28, 1996, or his subsequent *prior restraint* by a total ban of his expressions in more than two Continuations, or his inactivity for five years or more, or by failure to give him limited recognition, or otherwise, including elimination of any threat of prosecution without cause under 35 U.S.C. 33 or otherwise until the stipulation of concessions in Defendant Moatz's 10/9/07 Affidavit in Defendants' Exhibit 33.

Another seemingly imminent contingency was a change of status in Maryland and in the PTO from "inactive" to active without any requirement for a showing of fitness for reinstatement

14

to active practice was the expected respect for Plaintiff's constitutional and due process rights by the courts and in the PTO. After all, his conduct was actively and closely supervised and controlled by a plethora of Courts, agencies and jurisdictions.

The OED Director's letter of March 4, 1996 in Defendants' Exhibit 8, was a temporary embargo intended to prepare for a permanent but secret suspension and removal of Plaintiff's entire practice and to weed him out permanently by discrimination in both in the Trademark and Patent Offices by the use of Plaintiff's request for reinstatement to qualify to take the Patent examination without reasonable accommodations.

It is a genuine issue of fact in dispute as to whether Plaintiff is presently and currently under an embargo by an illegal threat against his practice, including *prior restraint* by a threat of prosecution under 35 U.S.C. 33, because of his "title," property, trademark, copyright, and ability to serve others as an attorney in either or both the Trademark or Patent Offices until he receives a "closing letter" to enforce his limited or unlimited recognition to practice as a non-registered attorney or agent for himself and others. Plaintiff believes the embargo exists.

Such an embargo and secret suspension and removal has now been applied such that Plaintiff needs a Temporary Restraining Order, Bivens damages and attorney's fees to enforce Plaintiff's emergency need for specific concessions by the Defendants, including a concession not to threaten criminal investigation or prosecution under 35 U.S.C. 33. Also, enforcement is needed of the concession of a license to qualify to take and to take without charge the 2008 July paper patent examination for CLE purposes, or other merely academic reasons, and to receive a paper copy of the 2007 examination with answers for a fee of $30.00, with an authorization to pay the fee by credit card or his deposit account. The matter is critical because of the short lead-

15

time and the fact that Defendants have not even acknowledged receipt of either application for the same by Plaintiff despite their implied concessions.

An emergency Temporary, Preliminary Restraining Order or injunction is thus, required to enforce their concessions, and the same is hereby requested to enforce Defendants' concession not to require Plaintiff to pay any fees for a license to take or qualify for reinstatement to take the July 2008 (as well as future July) paper patent examinations for CLE purposes or other merely academic reasons without any threat of prosecution under 35 U.S.C. 33, because the Defendants refunded both the $40 application fee to qualify for reinstatement to take the 2007 examination, and the $450 fee to actually take it with enlarged print questions and post-supplied answers in a later review session, an enlarged print answer sheet, and magnifiers for enlarging a non-enlarged print MPEP over a two consecutive days in separate five hour sessions respectively in a private, well-heated and lighted room. And Defendants have conceded by internet announcement to supply Plaintiff with a printed copy of the 2007 examination questions and answers without any threat of prosecution under 35 U.S.C. 33 for a fee of $30.00, which Plaintiff has offered to pay by credit card or deposit account payment.

Any and all non-registered attorneys and others are allowed to apply for reinstatement to qualify to take the July paper patent examination, and to obtain copies of the questions and answers for the Patent examinations without any threat of prosecution under 35 U.S.C. 33, and Plaintiff has done so, but Defendants have not acknowledged receipt of Plaintiff's applications, so the Court is asked for a Temporary Restraining Order to enforce those concessions.

An emergency, Temporary or Preliminary Restraining Order or injunction is required to enforce the Defendants' concessions not to threaten Plaintiff with prosecution under 35 U.S.C. 33, and to restrain Defendants from refusing to enforce their concession not to restrain Plaintiff

16

by *prior restraint* from qualifying to take and to take the July 2008 paper examination without cost as an attorney for CLE purposes with the accommodations given to him in July 2007. Also, a TRO is required to enforce the Defendants' concession to send Plaintiff a copy of the questions and answers for $30 without *prior restraint* of his practice in either or both the Trademark and the Patent Office, or a threat to do so by prosecution under 35 U.S.C. 33. That is independent of a TRO that is required to enforce Defendants concession to remove Defendants' outright ban by embargo or *prior restraint* against Plaintiff holding himself out as "qualified" as an attorney with recognition to practice in the Trademark Office as an "Attorney" for others as an "Attorney, agent or firm," or *pro se* in the Patent Office without being registered as an agent with a power of attorney for a co-inventor, or a dead, hostile or absent co-inventor, or as an executor or administrator; and for international applications.

It is not permissible for Defendants to enforce an outright ban on speech and press rights without adequate safeguards in patents and trademarks, where, for example, the Defendants have not met their burden of proof in showing the speech or expression is not useful, novel and unobvious under 35 U.S.C. 101, 102 and 103, or not in accordance with the description requirements of 35 U.S.C. 112, or not prohibited by statute under 35 U.S.C. 180.

They are forbidden by the First Amendment and the Due Process Clause from an outright, permanent ban or embargo without a hearing or any Constitutional safeguards, which is what they have done by their obstruction of justice and libelous falsehoods in this case, and by their identity theft and libelous invasion of privacy on August 28, 1996 and in Director Moatz's letter of June 15, 2000 contained in Defendants' Exhibits 8 and 33. *See,* for example, Defendants' Exhibits 8 and 33.

17

Plaintiff's complaint includes a complaint that Defendants Revised Rules effectively, out-rightly and permanently ban all Plaintiff expressions and all parts of Plaintiff's expressions from beginning to end without any limitation in more than five claims or more than two Continuation applications from Plaintiff's currently pending parent patent application, and they threaten to prosecute under 35 U.S.C. 33 or otherwise for doing so as an attorney. Those actions are unauthorized, arbitrary and capricious outright bans without adequate safeguards.

In effect, the Defendants have adopted a rule whereby they can without authority, for arbitrary, capricious and frivolous reasons not in accordance without their authority or law, and not within the scope of their authority, permanently bar Plaintiff and all other non-registered patent attorneys from expressing their inventions, and/or from holding themselves out as non-registered patent attorneys, non-registered patent and trademark attorneys, or patent attorneys in their patent and trademark applications, in their patents and trademarks, and/or elsewhere, even with or without limited recognition, which has been denied to Plaintiff under 37 C.F.R. 10.9. Plaintiff needs and requests equitable relief to enforce Defendants concession that he can file *pro se* applications, without *prior restraint* or threats of prosecution, which they haven't conceded.

The Defendants' 10/9/07 concessions need to be brought up to date and clarified by he award of attorneys fees, damages and an emergency injunction or declaratory relief to ensure that they will be enforceable because the Plaintiff has not received even a firm, direct acknowledgement of any request for a concession, including, for example, a request for a license to qualify for reinstatement to take the patent examination for any purpose, with or without a fee, or the use of Plaintiff's "title" as an "Attorney, agent or firm," as a "patent attorney," or as a "non-registered patent attorney," or without a threat of prosecution under 35 U.S.C. 33. Plaintiff has applied for a license to qualify to take the July 2008 patent examination as a non-registered

18

patent attorney without any fees or charges under 35 U.S.C. 33, *prior restraint* for CLE

purposes, or other merely academic reasons, and with a "closing letter" or a concession not to

criminally prosecute under 35 U.S.C. 33, but no such concession has been guaranteed by

Defendants in a "closing letter," settlement, a Consent Judgment, or otherwise.

An outright ban was imposed against Plaintiff holding himself out as a registered patent

attorney because of the constitutionally illegal tort of "identity theft." It was not according to

law. It interfered with his business, his clients and his property, copyrights, trademarks and

constitutional privilege in his name and "title" in his copyrighted patents, trademark and trade

secrets. Plaintiff has now applied for a license to qualify to be reinstated to take the July 2008

patent examination without charge, but has not received even an acknowledgement of his

application. His presently pending new application for July 2008, has not been acknowledged

because it is for a license to qualify to be reinstated to take the examination without charge as a

non-registered patent attorney and without *prior restraint* from receiving a guarantee of the

accommodations presented to him on a take it or leave it basis for the July 2007 examination to

prevent his corruption or the appearance thereof, and to threaten him with criminal punishment if

he held himself out as a patent attorney in his application to take the examination or otherwise,

and Plaintiff asked for a copy with answers with his Petition for redress of his grievances and

expression of protest for the "identity theft" of his "title" as an attorney.

In 2007 the Defendants did not charge Plaintiff either a $40 fee to qualify for a license to

qualify to be reinstated to take the examination, or a $450 fee to take the July 2007 examination

with enlarged print on the test questions and answer sheet and magnifiers for a non-enlarged

print MPEP, although an enlarged print MPEP was requested, during two days, or at least with

hours extended, not as requested with an extension for two days as granted to others heretofore,

19

but at least an extra two hour during each morning and/or afternoon sessions on each of two consecutive days respectively.

The Defendants charged Plaintiff both the $40 and $450 fees twice before in 2006 and 2005 respectively for the same CLE purposes, and the Plaintiff is seeking equitable relief, including a refund. Thus, Plaintiff needs equitable relief, including a Temporary, Preliminary injunction to ensure that he will not be charged the $490 worth of fees that he was charged in each of 2006 and 2005 respectively, and declaratory relief to obtain a refund of the fees paid and not returned in 2006 and 2005 and attorneys' fees.

Plaintiff will be irreparably injured if he is not granted attorneys' fees and a Temporary, Preliminary Restraining Order, or Injunction to restrain Defendants from an outright ban against filing more than two Continuation applications. Like a tree that is never allowed to be planted with the proper accommodations, it and the Plaintiff will never be allowed to be planted so that they will grow if they are always restrained by *prior restraint*, including an outright ban.

In connection with the selective *prior restraint* of Plaintiff, Defendants have threatened to install a permanent outright ban against filing more than two Continuations or five claims; from holding himself out with limited recognition as a patent attorney or Attorney, agent or firm;" or qualifying to take and to take and <u>copy</u> the patent exam and answers with the accommodations provided heretofore with a charge of no more than $30 in 2008 and in the future without limit for CLE or other academic purposes.

It is permissible for government to regulate speech but not by an arbitrary, capricious and outright ban that violates the First Amendment and Due Process Clause irrationally, not in accordance with law, and beyond the scope of their authority. The Defendants have raised an outright ban against Plaintiff filing more than two Continuations; against providing him with a

"closing letter" for an investigation that has been pending for eleven years; against holding himself out as a trademark attorney by an embargo dating back to March 4, 1996; against holding himself as a patent attorney; against qualifying to take and taking the patent examination without charge, except a charge of $30 for <u>copying</u> and reviewing the patent examination and answers without limit. As such he is forever, irreparably and selectively barred from ever practicing patent law in more than two Continuation applications as a patent attorney because the Defendants' Revised Rules have raised an impenetrable ban to filing the same, even by a last minute concession to practice as a *pro se* attorney and by inadequate accommodations to prevent discrimination of his age-related disabilities to weed him out and selectively bar him from practice of patent and trademark law by making it impossible for him to pass the Patent examination. One or more last minute concessions don't change matters. Without attorneys' fees, the concessions fly in the face of the Congressional desire for fee shifting of attorneys' fees.

A naturally limited bandwidth allows the FCC selectively to ration it licenses.

But nature does not justify rationing the right of speech, religion, press or right to petition the government for redress of wrongs, including a grievance as a private attorney general for attorneys fees and Constitutional restraints, safeguards and protection of civil rights by shifting attorneys fees. An outright ban is not allowed completely for ever to bar Plaintiff from more than two Continuations, or in order to weed him out as a patent attorney by discrimination that removes the possibility of success in favor of the Plaintiff in a final hearing, including discrimination against **equitable relief, along with damages, costs, and fees, including reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. 2412; the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of**

**1976, 90 Stat. 2641, 42 U.S.C 1988.** *See* **generally** <u>Marek v. Chesny,</u> **473 U.S. 1, 43-51 (1985)**

**(Appendix to opinion of Brennan, J. dissenting); and** <u>Hensley v. Echerhart,</u> **461 U.S. 424**

**433, n. 7 (1983). And** Injunctive or Declaratory relief is necessary to enforce at least the

stipulation made by the Defendants' 10/9/08 concession.

    This Motion and Memorandum in support of this Motion closely follow the

Memorandum filed on March 17, 2008, except that they contain non-duplicate, non-redundant,

revised corresponding pages filed March 17, 2008, as part of Plaintiff's 22 Page "Memorandum

In Support of Review and Reconsideration of Plaintiff's Resubmitted and Revise Motions." Two

copies of the present Motion and Memorandum are enclosed herewith for filing.

    The Memorandum filed with that Motion is timely filed with corrected and edited pages,

which is necessary because of several minor, inadvertent and obviously unintended mistakes,

including portions of the text of the previous filing to make it more easily readable. Plaintiff is

hopeful that the Court will agree that the filing of the enclosed corrected Memorandum is not

objectionable because of a new development, namely Plaintiff's request to enforce specific

concessions by the Defendants, including enforcement of Plaintiff's qualification to take and

copy the July 2008 examination and answers with reasonable accommodations granted

heretofore, which is now pending but remains unacknowledged.

    The pending Motion is a request generally: "To Not Grant Defendants' Dispositive

Motions without Granting Plaintiff Injunctive or Declaratory Relief And Attorneys; Fees To

Ensure The Enforceability Of Defendants Voluntary Concessions," as requested on 3/17/08.

This Motion is for attorneys fees, <u>Bivens</u> damages and enforcement of specific concessions as a

private attorney general in conformance with the mandate of Congress to protect Plaintiff's

Constitutional, civil and legal rights for <u>Bivens</u> damages and equitable relief independently of the granting of the Defendants' Dispositive Motions.

This Motion specifies concessions made by Defendant Moatz' in his Affidavit of October 9, 2007, in Defendants' Exhibit 33, that "Although Plaintiff has not applied to take the patent examination again, I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him on the July 2007."

Plaintiff has now applied to qualify to take, to take and to copy the patent examination with answers again in July 2008 with the reasonable accommodations granted heretofore, specifically by holding himself out as a non-registered patent attorney, and for damages, attorneys' fees, costs and equitable relief by a temporary, preliminary restraining order. Damages, costs, expenses and injunctive or declaratory relief are essential to ensure the enforceability of the stipulations and voluntary concessions by the Defendants with and without charges and with the reasonable accommodations given on the July 2007 examination.

To that end, Plaintiff has requested copies of the enlarged print examination questions and examination answer sheet with answers and an opportunity for review and copying of all the examination parts, along with magnifying means for the MPEP to make the small print therein at least as legible as the enlarged print on the questions and answer sheet. Plaintiff seeks an injunction from the requirement to pay the $40 fee for a license to qualify for reinstatement to take the examination, and $450 to take the examination.

This Motion requests incorporation by reference to the previous Motions that have been denied by asking for reconsideration or a stay if again refused, and leave to file an interlocutory appeal if the Court fails to include any grant of Plaintiff's request for <u>Bivens</u> tort damages, fees, costs, expenses and attorneys fees, **including reasonable attorney's fees under the Equal**

23

Access to Justice Act, 28 U.S.C. 2412;  the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C 1988. *See generally* Marek v. Chesny, 473 U.S. 1, 43-51 (1985) (Appendix to opinion of Brennan, J. dissenting); and Hensley v. Echerhart, 461 U.S. 424 433, n. 7 (1983).  The latter is quoted from page 21 of the above-cited 22 Page March 17, 2008 "Memorandum."  A **Motion for Amendment Or Vacation Of Defendants Excuse From Responding**, is believed to be still pending.

*"Attorney, Agent or Firm – Cornell D.M. Judge Cornish" or "Attorney, Agent or Firm –*
Cornell D.M. Judge Cornish TM SM "
Downpat (c) 2008

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  3/24/08

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this   24 th    day of March, 2008.

*Cornell D. M. Judge Cornish*

　　　Cornell D.M. Judge Cornish
　　　DC Bar #366240
　　　1101 New Hampshire Ave., NW, Suite 301
　　　**Washington, DC 20037-1502**
　　　**(202) 429-9705**
　　　 **cornishj@erols.com**

　Date:  3/24/08

UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) | |
| | ) | |
| Plaintiff *Pro Se* | ) | |
| v. | ) | |
| | ) | CASE  07-cv-01719 (RWR) |
| | ) | |
| JON DUDAS, et al. | ) | |
| | ) | |
| Defendants | ) | |

**Memorandum In Support Of Motion For A Temporary, Preliminary Restraining Order, Or Injunction To Ensure The Enforceability Of Defendants' Concessions, And Stipulations, Including, *Inter Alia,* In Defendant Moatz's 10/9/07 Affidavit In Defendants' Exhibit 33;  And For Favorable Consideration Of Claims For Bevins Damages, Fees, Costs, And Expenses, Including Reasonable Attorneys' Fees, Inter Alia, Under The Equal Access to Justice Act, 28 U.S.C. 2412;  the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. 12205; the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. 2000e5(k); and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S.C. 1988**

Plaintiff is **seeking redress for violation of his Constitutional civil rights, along with attorneys' fees, which Congress has authorized him to seek** as a private attorney general, *inter alia,* under fee shifting statutes mentioned above.  This redress in described in the attached Motion, which also seeks Bivens damages and equitable relief as described in that Motion.

Meanwhile, the Plaintiff and Defendants are trying to identify the Controlling Questions of Law that have reasonably been put in dispute by the Defendants, as to which there is a substantial ground for differences of opinion that could materially advance the ultimate termination of the litigation.  *See,* for example,  page 11 of Defendants' January

1

**30, 2008 Response to Plaintiff's December Filings, and Note 1 on page 2 of Defendants'**
**Opposition to Plaintiff's Enlargement Of Time dated January 15, 2008.**

Plaintiff claims and requests certification as a Controlling Issue of law in dispute for the

Court to decide, first of all the issue of attorneys' fees mandated by Congress and claimed by

Plaintiff, as stated and identified above in the "title" on the "title page." Plaintiff has cited as

precedent the case of <u>Goldstein v. Moatz,</u> CA-02-1734-A, decided April 20, 2006, on appeal

from the United States District Court for the Eastern District of Virginia, at Alexandria, Leonie

M. Brinkema, District Judge. The Court of Appeals vacated the District Court's ruling on

"absolute immunity as to defendants Moatz, Anderson and Toupin, and remanded for further

proceedings as may be appropriate." The Defendant Moatz is the same Defendant as in this case,

but he has failed to assert that he has either "absolute" or "qualified" immunity, or lacks

immunity all together. Thus, the Plaintiff asks for attorneys fees in accordance with the mandate

of Congress, and asks the Court to certify and decide this issue of fact and law.

Another Controlling Issue of law in dispute for the Court to decide is the factual and legal

question of damages by Defendants based upon only the record in this case. The Court is limited

in making its factual finding fact and determination of law based only on the Record in this

Court, which is limited to the administrative record in the PTO.

The relevant record upon which the Court must make its finding of fact and

determination of law, is contained in a letter from the Director of OED to Plaintiff on March 4,

1996, a handwritten note thereon on August 28, 1996 in Defendants' Exhibit 8, and a letter of

June 15, 2000 from Defendant Director Moatz to an addressee whose name is redacted in Exhibit

33. The Court stated that "In 1995 Cornish was removed from the register of attorneys in

Maryland after a grievance was filed against him" by citing only Defendants' Exhibit 5, but that

2

Exhibit, which was a copy of a letter from the clerk of the Court of Appeals of Maryland which made no mention of a grievance, sanction, or the fact that the Plaintiff's "inactivity" was without sanction, or any requirement for a showing of fitness for reinstatement. His inactivity was in fact a temporary, provisional inactivity in favor of the Plaintiff at his request because it released him from the payment of yearly fees until he resumed active practice again. There was no hearing, so there could be no removal "from the register of attorneys in Maryland after a grievance was filed against him" as the Court said on pages 2 and 3 of the Memorandum Order of February 25, 2008, by citing only Defendants' Exhibit 5. There is nothing in the record to support the Court's statement.

A Controlling question of law for the Court to decide is whether, as Defendants seem to imply, there was a resignation during the informational period before the investigation of the complaint mentioned in the Director's letter of March 4, 1996 in Defendants' Exhibit 8. But resignation is not allowed or appropriate in accordance with Due Process during that informational period.

Nothing was said about the fact that "inactivity" was independent of pro bono practice according to statute. "[H] his or her practice of law is limited to representation without compensation, except reasonable and necessary expenses, as a participant in a legal services or pro bono publico program." Maryland Rule 16-811.f.1. *See* Atty. Grievance Com. Md. v. Ruffin, 369 Md. 238, 252, 798 A.2d 1139, 1147 ( 2002). "Because the status is neither discipline nor a sanction, nor, for that matter, associated with either, reinstatement to active practice may be quickly obtained, with written notice of the attorney's intention to resume practice and the payment of the assessment due for the then current year. Regulation 6." Inactivity allowed him to retain his protected property interest in his license during the informational period of his

3

"inactive status" in Maryland, the Patent Office, and his reciprocal suspension in New York and the Southern District of New York. In re Rowe, 73 NY2d 942, 540 NYS2d 233 (1989), in accord with Miller v. Walker, 675 NYS2d 68 (1998).

This Record shows that Defendants tried to finesse Plaintiff's letter of February 8, 1996 into a "*request* to have my name removed from the register." (Emphasis added). There was nothing in Plaintiff's letter of February 8, 1996 that could even remotely be considered to be a "request" to have his name removed without an investigation, because "removal" requires the safeguard of the PTO regulations, which required the investigation and probable cause. The finesse was deceptive because it could become lethal to his registration by violation of his civil rights, such as by a secret removal on August 28, 1996 by Director Bovard of OED without notice to Plaintiff.  In that case, the removal was induced by coercion that caused a change in the Plaintiff's position by acquiescence, silence and failure to respond for at least 30 days  to the Defendants' offer to hold an investigation of Mr. Cassidy's complaint in "abeyance."   The finesse required slyly tricking Plaintiff, and coercing him at the same time to acquiesce in the holding of the investigation in "abeyance" by accepting a total embargo of practice in both the Patent and Trademark Offices as long as the investigation was held in "abeyance."

Falsely and deceptively treating Plaintiff's letter of February 8, 1996, like a "request" was a gratuitous attempt to make a criminal offer to obstruct justice, not a "request."  Such a "request," which was never made by Plaintiff, was a fictitious.  It was without any basis in fact. There is nothing in the record that could legally show, as the Court said on page 3 of its Memorandum Order of 2/25/08, that, "In response, the director of the USPTO's Office of Enrollment and Discipline ('OED") sent a letter stating that the USPTO was 'treating [Cornish's letter] as a request to have [his] name removed from the register."  That would have been an

4

illegal criminal enterprise to obstruct justice in violation of 5 U.S.C. 558, including, *inter alia,* 558 (c ), which required the Director's compliance by calling a meeting of the Committee on Discipline who were charged with determining as specified in 10.4 (b) whether a disciplinary proceeding shall be instituted under paragraph (b) of 37 C.F.R. 10.131. It also would require a copy of the complaint to have been sent to the Plaintiff. Otherwise, it was prohibited by law and the PTO regulations.

Plaintiff views the attempt by the Defendants to finesse his professional career into oblivion by the secret removal of his name from the register, as an irresponsible, irrational, sham, if not a transparent criminal invention from an incompetent Director of OED, without any basis in fact. It was a transparent bluff to coerce Plaintiff into believing that such a fiction could or would ever cause Plaintiff to respond to such an alleged letter of complaint. It was held in secret by OED and covered up to obstruct justice by suppressing Plaintiff's right to challenge the deprivation of his Constitutional rights as a private attorney general in accordance with the mandate of Congress.

The record shows that the "complaint" was from a person whose name was redacted in Defendant Moatz's letter of June 15, 2000 in Defendants' Exhibit 33. It is not possible to conceive that such a complaint could ever lead to the removal of Plaintiff's name from the register without ever having been sent to the Plaintiff by the Defendants. Without a copy of the complaint it was a phantom complaint. It was impossible for Plaintiff to respond without a copy of the complaint which, in accordance with the Director of OED's letter of March 4, 1996 said, "It is our intention to hold in abeyance any investigation of Mr. Cassidy's complaint." Plaintiff had no obligation to respond to that letter, or to request a copy even if it did exist.

5

That letter of March 4, 1996, tried to finesse Plaintiff deceptively into changing his position to his detriment by honoring a complete embargo of his practice in both the Patent and Trademark Offices as a result of a letter the Director of OED received "from the Attorney Grievance Commission of Maryland enclosing a copy of an Order of the Court of Appeals of Maryland granting your petition for inactivity from the practice of law." But as stated above, that Order was without sanction, discipline "because the status is neither discipline nor a sanction, nor, for that matter, associated with either." Ruffin, *Id.* and Rowe, *Id.*

The letter of March 4, 1996 did not say that an investigation of that Order was intended to be held in abeyance. It clearly was a threat to coerce Plaintiff into acquiescing in a complete embargo of his practice in both the Patent and Trademark Offices by assuring Plaintiff that Defendants would maintain the *status quo* by the "strategic mooting," of that investigation for at least 30 days, while he awaited the completion of the required investigation of his Order of inactivity in Maryland, a copy of which he had, because Plaintiff knew such an investigation could not and would not support a required probable cause finding under 37 C.F.R. 10.132 (c ) in a case contested under 10.138. Plaintiff was confident that all investigations, both real and imagined, were about to be aborted by a "closing letter."

Moreover, Plaintiff could rely on Congress's mandate in this Court for the shifting of attorneys fees as a private attorney general if a colossal battle of life and death to his professional career to protect his civil and constitutional rights was required by a claim for attorneys' fees, and a Bivens claim for damages and equitable relief, *inter alia* to enforce concessions made by the Defendants. Such a claim has been made also for costs, and attorneys fees, *inter alia* as it turned out under the Controlling questions of fact and law that must be determined and decided by this Court in this case, for the deceptive, fraudulent, and secret cover up, irreparable harm and

6

obstruction of justice by the removal of Plaintiff's name from the attorney roster by identity theft without substantive or procedural Due Process, and in violation of his Constitutional rights by arbitrary and capricious action beyond the scope of authority of the Defendants, and not in accordance with law, and without notice to Plaintiff, on or about August 28, 1996, as shown by the secret handwritten note on the March 4, 1996 letter from the Director in Defendants' Exhibit 8,

The secret removal of Plaintiff's name from the register was clearly intended to complete the deadly finesse of Plaintiff's change of position to his detriment initiated by the 30 day acquiescence of the embargo of his practice in both the Patent and Trademark Offices by a sly attempt to avoid blame for holding Mr. Cassidy's complaint in "abeyance" by coercion, deception and trick. The finesse could work or become fatal to Plaintiff's registration only by the secret removal of his name from the register, which was covered up until Defendants answer Plaintiff's complaint in this case. To that end, Defendants relied on keeping Plaintiff from filing, and/or in getting the Court to dismiss this suit as a private attorney general to protect his civil and Constitutional rights in accordance with the mandate of Congress and the APA.

Rather than investigating as required, Defendants held both the complaint and the Maryland Order in "abeyance" without investigation or a "closing letter," and then covered that up by not telling Plaintiff that his name had been removed.

A finding of probable cause is required for a finding of guilt as a proper safeguard for the requirement to prove guilt by a preponderance of the evidence. That is the burden of proof required by the Defendants to remove his name, and ID and registration or to interfere with them or Plaintiff's clients. And the burden of going forward with the evidence remains on the Defendants. The finesse was attempted as an obstruction of justice to avoid Congress's mandate

7

to Plaintiff as a private attorney general to protect his civil rights. Plaintiff was gratuitously and irrelevantly told that "If your name is removed from the register of attorneys, you may be reinstated by satisfying the requirements of 37 C.F.R. 10.7 and the payment of the fee set forth in 37 C.F.R. 1.21. (a) (3). That is a fact that is not relevant to the facts of this case as a Controlling question of law and fact.

The Defendants are estopped by the Statute of Limitations to deny that the Plaintiff's registration has not been held in "abeyance" just as the Cassidy "complaint," if it existed in the PTO, because both the Cassidy "complaint" and the investigation of the Maryland Order have been so held by the Defendants up until the present time. The Defendants are estopped to deny Plaintiff's good standing in the PTO, and their holding of the Plaintiff's registration in "abeyance" until at least August 28, 1996 or June 15, 2000, and even until their Opposition to Plaintiff's complaint in October 2007. Defendants are estopped to deny their concessions and stipulations, Plaintiff's good standing in the PTO, the lack of a "closing letter," the present existence of Plaintiff' name and identity as an attorney and as a patent attorney based upon his registration, and his change of position and acquiescence in the holdings in "abeyance" for at least 30 days with good and valuable consideration for a binding contract for acquiescence of the Defendants' embargo for at least the first thirty days in both the Patent and Trademark Offices.

The consideration for Defendants' promises was the inactivity of Plaintiff in both the Trademark and Patent Offices and his acquiescence for at least thirty days. It was a formal Consent Decree by deception and trick to steal Plaintiff's profession and ID by identity theft. It was a firm and binding contract in writing for adequate consideration, namely the acceptance and acquiescence of a voluntary, temporary, provisional embargo on Plaintiff's practice in both the Trademark Office and the Patent Office for at least thirty days. This change of position to the

8

detriment of Plaintiff was for the promise to hold the investigation of Mr. Cassidy's' complaint, if it existed, and the investigation of the Maryland Order in "abeyance." The record shows proof of the agreement in the letters and notes by the Directors of OED on March 4, 1996, August 28, 1996, and June 15, 2000 in Defendants' Exhibits 8 and 33.

Plaintiff claims as a Controlling Issue of law are genuine issues of fact in dispute for the Court to decide their meaning and effect, including Plaintiff's good standing and other qualification to serve others in the PTO. The Directors' statements in their letters referred to a letter from Mr. Cornish but did not connect that letter up with any complaint other than by saying that "Mr. Cornish communicated to the Office of Enrollment and Discipline (OED) that he was ceasing to practice before the U.S. Patent and Trademark Office." He didn't say what the conditions or parameters of his practice were before or after his temporary, provisional, inactivity without discipline, sanction or a requirement for a showing of fitness for reinstatement, or for how long it would last, or in any way that it affected his practice that existed in New York and the District of Columbia, as it did and does. Obviously, Plaintiff could remain as an agent even while he was inactive as an attorney in Maryland. Inactivity as an attorney only affects his practice in the Trademark Office.

No other details were given concerning why Mr. Cornish had informed OED that he was "ceasing to practice," why he had so informed OED, how long his inactivity lasted, or whether he was still inactive or where. In fact, Mr. Cornish had not informed OED of why he had informed OED of his "ceasing to practice," except to say that he had so informed OED, which was a requirement for obtaining withdrawal from specific cases he was prosecuting for clients. He did not say how long his inactivity would last, or where or when he was inactive except in Maryland. However, he remained in good standing before and after his letter of February 8, 1996

9

in Maryland, the District of Columbia, New York and various federal courts because he simply

stated that he "voluntarily changed my status from active to inactive in Maryland by affidavit

dated 12/4/95."

He also pointed out, "However, an "admittedly incorrect [Maryland] Order dated 12/4/95

was issued in a name I expressly abandoned on September 13, 1990, and my timely request to

have the Order vacated or amended was denied on February 7, 1996." "I am, therefore, ceasing

practice before the U.S. Patent and Trademark Office until the Order becomes final or is

dissolved or amended to make the Order correct." Nothing was said about any investigation or

grievance, nor was there any need to, in contrast to what the Court said in its Memorandum

Order 2/25/08, whereby "Cornish was removed from the register of attorneys in Maryland after a

grievance was filed against him." And the Record shows a lack of due process in New York

despite what the Court stated in Note 2 on page 3 of its 2/25/08 Order, i.e., that "Both the District

of Columbia and New York State Bars temporarily suspended Cornish from the practice of law

based on the Maryland action." Plaintiff questioned and still questions the lack of Due Process

in those actions because the Maryland Order was not a disciplinary order "after a grievance was

filed against him" because that grievance lacked "probable cause exists to believe that a

practitioner has violated a Disciplinary Rule," in MD, DC, NY or the PTO under 37 C.F.R.

10.132.

There was also an uncontested mistake made in the Maryland Order, which is also a

consideration for this Court to consider in this case and it was addressed ultimately in Maryland.

Nor does the record in this case clearly show substantiating dates and circumstance

underlying the Court's statement that "Cornish were removed from the register of attorneys in

Maryland after a grievance was filed against him." Nor does the Record show that, "And as a

result, Cornish sent a letter in 1996 to the USPTO stating that he was "ceasing the practice before

the United States Patent and Trademark Office." These facts are particularly relevant, since at

the time the PTO had a requirement for the Plaintiff to give notice of withdrawal of

representation of a client, and at least some reason why withdrawal was required to protect the

interest of the client. Also, the Maryland Order, which was a non-disciplinary Order, was

requested by Plaintiff and it, was in his favor. It eliminated his need to pay a yearly fee for

active practice while he remained inactive. It did not state that it was a sanction, discipline or that

it was after a grievance. There wasn't any requirement for a showing of fitness for a change

back to active status, that it was correct, or that it was in accordance with the requirements of

Due Process. In no event is this Court bound by the Maryland, New York or District of

Columbia Orders, nor were they "disbarment orders. No such Orders are "conclusively binding

on the federal courts." Koden v. United States Dep't of Interior,144 F.3d 873, 876 (D.C.Cir.

1998). And state disciplinary actions, as in the PTO, require a hearing to comport with due

process, which was lacking in the Southern District of New York, and the New York State Court

in the cases mentioned in the Record of this case. The District Court of the Eastern District of

New York, which held a hearing, simply dismissed without any further action, and the District of

Columbia found that their reciprocal action was <u>without</u> probable cause to support any discipline

after a hearing was held there.

A hearing and appropriate safeguards are required in PTO disciplinary matters, such as in

connection with the investigation held in "abeyance" in this case. 37 C.F.R. 10.144 provides for

a hearing before the administrative law judge in the PTO. As a result, a hearing was required as

was held in Marinangeli v. Lehman, 32 F.Supp.2d 1 (D.C.Cir. 1998). And Due Process requires

that the safeguards, including the hearing, be meaningful. *See* Propert v. District of Columbia,

11

948 F.2d 1327. 1331 (D.C.Cir. 1991). The hearing must occur "at some meaningful time." Cleveland Bd. Of Educ. V. Loudermill, 470 U.S. 532 (1985). The Supreme Court has stated that "the demands of due process do not require a hearing at the initial stage or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div., 312 U.S. 126, 152-53 (1941). Evidence in the Record abounds that the Defendants have placed restrictions and attempted to place restrictions to prohibit testimony and evidence or obstructed justice by placing restrictions and *prior restraint* on Plaintiff and secreting and covering up important evidence. The PTO lacks adequate safeguards, as described by the court in Goldstein, *Id.*

Plaintiff's equal protection claim satisfies a comparison of equally situated non-registered attorneys, and others who are in good standing in the PTO. The Director said that "OED could not further consideration of your complaint at the time" whether he remained inactive or not on June 15, 2000. His letter lacked details about a connection between the complaint and Mr. Cornish. The Director did not state in his letter of March 4, 1996, that Plaintiff was under investigation. On the contrary, he said "It is our intent to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well as any change of status action based upon the Maryland Court Order, unless you inform us in writing within thirty (30) days from the date of this letter that is not your intention to have your name removed from the register."

Defendants' January 30 2008 Response disputes Plaintiff's claim, which is a controlling question at stake for a decision by the Court as to the facts and the law. Plaintiff claims not to have "asked the USPTO to remove him voluntarily from its register of practitioners after Plaintiff had consented to being removed from the Maryland Bar register and while an ethical

12

grievance against him was pending before the USPTO.  Neither was it"consent" in Maryland, nor did he ask or consent to "being removed."  It defies reason to assume that any of that is true. There is nothing in the record to support it.

**To this end, an oral hearing would have saved much time and work-load on the part of all parties.  The District Court of the Eastern District of New York, the U.S. Tax Court, and the Court of the Appeals of the District of** Columbia with the approval of Bar Counsel summarily **granted Plaintiff a hearing and disposed of any lingering reciprocal matters in response to the 1995 Maryland Order at issue in this case.** The Court of Appeals of New York refused to give Plaintiff a hearing or to consider the matter further.   Nevertheless, it was finally resolved in Plaintiff's favor in New York because the Maryland Order of inactivity was voluntary and without any discipline or sanction.  Thus, the corresponding reciprocal Order in New York was a temporary suspension without safeguarding Plaintiff's constitutional rights.  All the courts **that** considered **the matter resolved the matter in Plaintiff's** favor, some with and some without sufficient safeguards, which in any case have been sadly lacking in this case in the PTO, which may help explain the unnecessary **nature** of Defendants alleged **annoyance, irritation, frustration, surprise,** confusion **and puzzlement** that have plagued the Defendants.

**Accordingly, Plaintiff's 3/17/08 Motion,** and this Motion are **attempts to put these** matters **in better perspective, particularly, since Plaintiff feels that** this **Court has misdirected its focus in response to these matters, and the Defendants have been like a dog with a bone in running these matters into the ground or off the tracks as far as the Plaintiff's legal claim are concerned for attorneys' fees by fee-shifting, damages and equitable relief to enforce the concessions of the Defendants.**

This Motion more precisely addresses the enforcement of those concessions by asking the Court for a Temporary, Preliminary Restraining Order, or a Temporary, Preliminary Injunction; and/or damages, costs and attorneys fees.

This Court fortunately did not censure Plaintiff, but simply disposed of pending matters with a warning that found **that Plaintiff's Denied Motions were "without merit,"** by taking up on what was alleged by Defendants, with which Plaintiff takes exception and object to.

**Plaintiff is grateful for not having been cut off from making Motions, particularly** his post-warning **Motions, and also for not being censored or edited in making** his post-warning **Motions, as requested by the Defendants, which requests were exacerbated by their mistakes originating in connection with the Maryland Order of 1995, and their attempts to obstruct justice by accusing Plaintiff of misleading the Court, and by asking for an Order of Protection and a Motion to Dismiss.**

**The irreparable harm that Plaintiff is forced to face with no fault of his own, is like that faced by PhD's who use their title in Germany where Nazi era laws provide and <u>outright</u> <u>ban</u> by *prior restraint* to prevent anyone except those having a German PhD from using the title of "Doctor."   Doing so causes one to face criminal prosecution in Germany according to the March 14, 2008 Washington Post, page A1 and A12.** Likewise, **Defendants** have officially and unofficially instituted an <u>outright</u> <u>ban</u> by *prior restraint,* "strategic mooting" and an embargo that still exits to prevent Plaintiff and anyone else except those having a PTO certified registration from using the "title" attorney in the Patent Office or elsewhere, *or* in any patent applications, including, *inter alia,* those having more than five claims in more than two Continuation applications of a parent patent application, which are entirely banned by Defendants' Revised Rules.

14

Defendants have attempted to achieve impunity by deceit and cover up, as well as outright, total, permanent, and irreversible, secret removal of Plaintiff's name, "title" property and constitutionally guaranteed privileges and copyrighted trademark and property in his trade secrets, or otherwise, as an attorney, without sufficient safeguards by threats of prosecution under 35 U.S.C. 33, and by identity theft and unconstitutional *prior restraint,* and by irreparable harm to Plaintiff's Constitutional rights. The lack of adequate safeguards have enabled Defendants to irreparably harm Plaintiff by discrimination because of his age-related disabilities, and to obstruct justice because of the lack of any meaningful restraints on their arbitrary and capricious actions, and lack of authority, or in accordance with law or judicial review or restraint until Plaintiff filed this case for a shifting of attorneys fees, with claims for <u>Bevins</u> damages, and equitable relief.

They have endlessly repeated **threats under 35 U.S.C. 33 of criminal prosecution and a fine of $1000 for each use of the "title" non-registered patent attorney as a political and religious protest and** Petition for redress of his grievance that Defendants **allege** that Plaintiff **holds or held himself out corruptly and with the appearance of corruption as a registered patent attorney.** Only now they have made limited concessions by implication, but even those concessions remain unenforceable without equitable relief.

**See page 7, of Defendants' 1/30/08 "Response To Plaintiff's December Filings." There Defendants state that, "...Plaintiff may not legally hold himself out, or permit himself to be held out, as being recognized to practice patent law before the USPTO. See 35 U.S.C. 33." But he is legally, correctly and justifiably able to do so under current regulations governing the practice of patent law in the Patent Office as a non-registered attorney, agent or firm in his currently pending patent application S.N. 29/273,235, filed**

15

2/26/07 because his title justifiably is, as it has been for over 30 years, both "attorney" and "patent attorney." No one has legally taken those justifiably useful "titles" or "identities" away from him with Due Process for cause or under law because of misconduct or disability, or any other reason provided for by law since the Defendants granted that privilege to him on November 5, 1958, except they did secretly take his "title" and privilege by identify theft with constitutionally insufficient notice on or about August 28, 1996 because of Plaintiff's alleged corruption or threat of corruption of his "title" and privilege and to discriminate against him without equal protection because of his age-related disabilities.

And it is justifiably within the present parameters of the Patent Laws and Regulations to use that title of his privilege as a political and religious protest without the *prior restraint* of the Defendants' Revised Rules in applications and Continuations of parent applications, by which the Defendants propose to take that constitutionally awarded title of his privilege away from him unjustifiably without proper procedures according to law under the APA because of alleged corruption or the threat thereof. The real reason is to selectively weed out Plaintiff's practice to lessen their workload.

Still further, the current Patent Laws and Regulations allow Plaintiff likewise to use that title of his constitutionally guaranteed privilege without *prior restraint, corruption or the threat of corruption*, as agent for his co-inventors who give him a power of attorney to do so, or if they are unavailable, hostile or dead, and Plaintiff may do so as an executor or assignee without corruption or the threat of corruption. "…Sometimes in a joint application one of the co-inventors gives to the other the power of attorney in the

16

application." "Such power will be recognized even though the one to whom it is given is not registered." MPEP 402.01.

As pointed out in "Plaintiff's Timely Response to Memorandum Order [46] of February 25, 2008," 37 C.F.R. 1.42 states that, "In case of death of the inventor, the legal representative (executor, administrator, etc.) of the deceased inventor may make the necessary oath or declaration, and apply for and obtain the patent."

As pointed out in 37 C.F.R. 1.43, "In case an inventor is insane or otherwise legally incapacitated, the legal representative (guardian, conservator, etc.) of such inventor may make the necessary oath or declaration, and apply for and obtain the patent."

As pointed out in 37 C.F.R. 1.47 (a) "If a joint inventor refuses to join in an application for patent or cannot be found or reached after diligent effort, the application may be made by the other inventor on behalf of himself or herself and the omitted inventor...A patent may be granted to the inventor making the application, upon a showing satisfactory to the Commissioner, subject to the same rights which the omitted inventor would have had if he or she had been joined. "

As pointed out in 37 C.F.R. 1.47 (b) "Whenever an inventor refuses to execute an application for patent or cannot be found or reached after diligent effort a person to whom the inventor has assigned or agreed in writing to assign the invention or who otherwise shows sufficient proprietary interest in the matter justifying such action may make application for patent on behalf of and as agent for the inventor."

As pointed out in 37 C.F.R. 1.46, "In case the whole or a part interest in the invention or in the patent to be issued is assigned the application must still be made or authorized to be made, and an oath or declaration signed by the inventor or one of the persons mentioned in 1.42, 1.43,

17

or 1.47. However, the patent may be issued to the assignee or jointly to the inventor and the assignee as provided in 3.81."

According to **"MPEP 402.01 Exceptions as to Registration, 37 C.F.R. 10.9. Limited recognition in patent cases. (a) Any individual not registered under 10.6 may, upon a showing of circumstances which render it necessary or justifiable, be given limited recognition by the Director to prosecute as attorney or agent a specified application or specified applications, but limited recognition under this paragraph shall not extend further than the application or applications specified...Sometimes in a joint application one of the co-inventors gives to the other the power of attorney in the application. Such power will be recognized even though the one to whom it is given is not registered." Such limited recognition has been to Plaintiff by an outright ban thereof on the basis of a concession by "strategic mooting" to avoid the cost and fees of litigation.**

**And Defendants admit on page 17 of "Defendants' Response To Plaintiff's December Filings" on 1/30/08 that Plaintiff can justifiably prosecute an international patent applications without corruption or the threat thereof as a patent attorney "before the U.S. International Searching Authority and the U.S. International Preliminary Examining Authority, which is physically located in the USPTO, under 35 C.F.R. 11.9 (c)," but Defendants will not grant Plaintiff even limited recognition under 35 C.F.F. 11.9 to prosecute his currently pending patent application as a domestic or as an international application because they allege it is a corrupt intention or threatens corruption. There defense is a "strategic mooting" to avoid the cost and fees of litigation, too much workload, and the corruption of the patent system by too many patent applications, especially**

18

Continuations of parent applications like Plaintiff's pending patent application, which has not even been mentioned by the Court or the Defendants.

Neither will Defendants concede or recognize that Plaintiff is justifiably entitled to use his title as a non-registered patent and trademark attorney in his currently pending U.S. Trademark Application S.N. 77/247,319, filed 08/04/07, for which no conflicting marks have been found, and for which the Examiner voices no objection to registration. They rely on the fact that Defendants will not recognize or fully and finally concede in writing that Plaintiff is an attorney in good standing in the Trademark Office even by "strategic mooting," even though the Court does so on page 1 et seq. of their 2/25/08 Order [46]. Defendants allege it will recognize corruption or the threat of corruption, but the real reason is too much workload. There is no deceit or intent to defraud or mislead or threaten an applicant or prospective applicant. And anyway, Defendants main concern is that only attorneys who can pass the patent exam repeatedly should be able to practice patent law. If they cannot, the Defendants can make it impossible for them to repeatedly pass the examination so that they are totally and irrevocably banned and discriminated until they cannot pass the examination due to age-related disabilities. In any event, even passing the exam does not lift the outright ban against more than two Continuation patent applications under Defendants' Revised Rules.

The Defendants concede on page 6 of their 1/30/08 "Response to Plaintiff's December Filings, as follows: that "if Plaintiff is duly licensed to practice law in another jurisdiction (e.g., Maryland, New York, and the District of Columbia), then he may legally represent others in trademark and other non-patent cases before the USPTO." That "if" implies that Defendants are unwilling to concede the genuine issue of fact of his licenses,

19

which, therefore, are in dispute. It is noteworthy that the Court has accepted the facts as true as Plaintiff has alleged them. Defendants fail to concede those facts **because to do so** instead of to concede, **would be to allow Plaintiff's alleged corruption or the appearance thereof** to be admitted by them. Instead, Defendants have made miniscule inadequate and legally binding concessions to avoid failure of their defense, their request for a Seal Order, their request for Dismissal or for Summary Judgment, and for an Order of Protection in order to obstruct justice.

But **Defendants should not be allowed to strategically moot the** genuine issues of fact and **questions** if law in dispute **at this point in time** by their miniscule concessions **after so much time and effort has been spent on this case already, including time spent by** Plaintiff **in repeatedly attempting to engage defense counsel in settlement negotiations, to no avail. Thus, the Defendants should not now at this late date before the announcement of the close of discovery be free of restraint to announce that they will voluntarily provide virtually all the relief requested by Plaintiff and revise their Motion to dismiss the case based on moistness.**

Their concessions and "strategic mooting" do not include **a** narrowly drawn **recognition** by strict scrutiny that **Plaintiff** has a **justifiable right** to be free of an outright ban on holding himself out to file **and prosecute his international** patent and **trademark applications and domestic applications for others** even when he is not registered even when allowed by he Patent Office Regulations as mentioned above. He should not be banned entirely except for a miniscule unenforced and unenforceable concession from **using his title as** an **"Attorney, agent or firm," or "Patent and trademark attorney."** "...Sometimes in a joint application one of the co-inventors gives the other the power of attorney in the application." "Such power will be recognized even though the one to whom it is given is not registered." MPEP 402.01.

20

Therefore, Plaintiff persists in representing to the Court correctly that Defendants have irreparably harmed Plaintiff by punishing him without mercy or probable cause, and by *prior restraint* of his justifiable "advertising and promotion of his name as an attorney in both the Trademark Office and the Patent Office, see Docket No. 6 at 8" (emphasis added).

Defendants resisted any but the smallest concession on 1/30/08 on page 6 in note 3 of "Defendants' Response To Plaintiff's December Filings" as follows: "Nor does USPTO challenge Plaintiff's entitlement to represent himself – but only himself – in patent, trademark, or other pro se matters before the USPTO." But "…Sometimes in a joint application one of the co-inventors gives to the other the power of attorney in the application. Such power will be recognized even though the one to whom it is given is not registered." *See.*MPEP 402.01, and U.S. Patent No. 5,256,367, which on its face bears Plaintiff's trademark, name, privilege and title in which he has a copyrighted property right and Constitutional right of privilege as an "Attorney…" Filing for others in the Trademark and Patent Offices using his title and privilege as an "attorney" or "Attorney, agent or firm," is justifiable without *prior restraint* in many specific cases, as pointed out above.

On appeal, from the District Court for the Eastern District of Virginia CA-02-1734-A, the Court reversed the dismissal of the plaintiff in Goldstein v. Harry Moatz, et al, the same Defendant in this case. In the course of its opinion, the Court stated that "[t]he importance of denying absolute immunity to the Defendants in this proceeding is underscored by the utter lack of procedural safeguards protecting Goldstein's' rights and his clients' secrets." *Id.*, at 217. The Court further noted that "the denial of any avenue for challenge [of the RFIs], and the threats of charges for non-compliance, are indicative of a system lacking in procedural safeguards," *Id.*, and concluded that "[a]n attorney should

21

**not be compelled to subject himself to disciplinary charges, and the adverse consequences**

**that may flow there from, in order to protect his client's confidences or to challenge unduly**

**burdensome discovery."** *Id.* **At 218.**

In Marinangeli v. Lehman, 32 F.Supp.2d 1 (D.D.C. 1998), the Administrative Procedure

Act and Constitutional Claims, such as in this case, were reviewed based upon a state action.

That action was not conclusively binding on the federal courts in that case or this one. *See* In re

Ruffalo, 390 U.S. 544, 546, 88 S.Ct, 1222, 20 L.Ed,2d 117 (1968); and Koden v. United States

Dep't Justice, 564 F.2d 228, 232 (7th Cir. 1977),  In any event, the state action must comport

with Due Process. *See*  Selling v. Radford, 243 U.S. 46, 50-51, 37 S.Ct. 377, 61 L.Ed 585

(1917); and In re Thies, 662 F.2d 771, 772 (D.D.C. Cir. 1980).  And under 37 C.F.R. 10.144, a

hearing before an administrative law judge is required in the PTO regardless of the state action.

Due Process requires that the hearing be meaningful, but a meaningful hearing was denied to the

Plaintiff in this case. *See* Propert v. District of Columbia, 948 F.2d 1327, 1331 (D.C.Cir. 1991).

Due Process requires that a hearing occur "at some meaningful time." Cleveland Bd. Of Educ.

V. Loudermill, 470 U.S. 532 (1985).  The hearing must take place before the final order becomes

effective." Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div., 312 U.S. 126, 152-53

(1941).

And Plaintiff in this case was denied Equal Protection because he is a member of a

suspect class of seniors who have age-related disabilities, and by making it impossible for him to

pass the Patent examination and by suppressing his expressions by *prior restraint* to the extent of

an outright permanent ban, particularly in Continuation applications, Defendants have

discriminated against him selectively without equal protection by taking away and interfering

with his fundamental Constitutional rights of speech, press, and dignity  arbitrarily and

22

capriciously without authority or in accordance with law by an abuse of discretion beyond the scope of their authority. They have treated Plaintiff differently from similarly situated non-registered and registered patent attorney who have been inactive for more than five years, such as Defendant Griffin. *See* Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); and Brandon v. Dist. Of Columbia Bd. Of Parole, 823 F.2d 644m 650 (D.C.Cir. 1987). The attorneys Plaintiff must be compared to are formally non-sanctioned attorneys in good standing, such as Defendant Griffin, and the hundreds of other senior registered and un-registered, formally non-sanctioned attorneys with age-related disabilities who have been inactive for long periods and short periods of time.

Plaintiff is in a suspect class, and the selective, removal of his name, "title," property and constitutionally protected privilege by secret identity theft and *prior restraint* without a hearing, equal protection, freedom of expression or sufficient constitutional notice was not a formal sanction, nor was it in accordance with constitutional equal protection, due process or constitutional strict scrutiny and narrow tailoring under the First Amendment. The Defendants have not made it possible for Plaintiff to be restored nor will registration restore him from his irreparable injury. He doesn't have a right to be completely restored, but he has a right not to be totally and irreparably banned, punished and more unfairly treated than other similarly situated practitioners. It is manifestly unjust to do so without just consideration of his age and long exemplary record in the PTO.

The Defendants' belated attempt to endlessly continue Plaintiff's unjust punishment without reasonable accommodations or to enable his re-integration is not barred by the equitable doctrine of laches, acquiescence … and/or estoppel. It is available against a government agency so long as it is applied in a "rigid and sparing" manner. *See* ATC Petroleum v. Sanders, 860

23

F.2d 1104, 1111 (D.C.Cir. 1988). The proof of estoppel against the Defendants in this case is

compelling and includes proof of ...false representations, a purpose to invite action by the

Plaintiff to whom representations were made, ignorance of the true facts by that party...,

reliance..., a showing of injustice..., and lack of damage to the public interest. *Id.*

The Court said in Marinangeli, *Id.*, that this Court's review is governed by the APA,

which permits reviewing courts to set aside agency decisions that are "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706. "In applying [the

arbitrary and capricious] standard, the focal point for judicial review should be the administrative

record already in existence." Camp v. Pitts, 411 U.S. 411 U.S. 138, 141, 93 S.Ct. 1241, 36

L.Ed.2d 106 (1973)l see also Friedman v. Lehman, 1996 WL 652768, 1996 U.A. LEXIS 12723,

40 U.S.P.Q.2d 1206 (D.D.C. 1996) (stating that actions imposed by the Commissioner are

reviewed under an arbitrary and capricious standard based on an existing administrative record).

Thus, this Court must determine upon review of the entire administrative record whether the

Commissioner's adoption of the embargo and secret identity theft were arbitrary and capricious

or an abuse of discretion.

In Marinangeli, *Id.*, the attorney responded to a PTO inquiry that included a release to be

signed by the attorney authorizing OED to obtain relevant records and documentation from

"every agency of government, bar association, medical doctor, probation officer," etc., which the

attorney failed to sign and return. Like in Goldstein, *Id.*, and this case, there was a denial of any

avenue for challenge of RFIs or the implied threat for answering it without **protection for**

**Goldstein's' rights and his clients' secrets."** *Id.*, **at 217. The Court noted that "the denial of**

**any avenue for challenge [of the RFIs], and the threats of charges for non-compliance, are**

**indicative of a system lacking in procedural safeguards,"** *Id.*, **and concluded that "[a] n**

24

attorney should not be compelled to subject himself to disciplinary charges, and the

adverse consequences that may flow there from, in order to protect his client's confidences

or to challenge unduly burdensome discovery." *Id.* At 218 (albeit, in this case there was a

threat that response to OED's letter was unnecessary, and could subject Plaintiff to a burdensome

investigation that was widely found to be unnecessary because it lacked probable cause or even

any basis in fact). Although 37 C.F.R. 10.131 (b) requires a practitioner to report disciplinary

violations to the PTO, the Court pointed out that it does not state when such incidents should be

reported.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges this Court not to grant

Defendants' Motion to Dismiss or any other dispositive Motion by Defendants; and that the

Court grant Plaintiff's Motions attorney's fees as a private attorney general; Bivens damages;

and a Temporary Restraining Order, or injunctive relief to assure that Defendants' concessions

are enforceable.

*"Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or *"Attorney, Agent or Firm* – Cornell D.M. Judge Cornish TM SM "
Downpat (c) 2008

Respectfully submitted,

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 3/24/08

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    24th    day of March, 2008.

*Cornell D. M. Judge Cornish*

       Cornell D.M. Judge Cornish
       DC Bar #366240
       1101 New Hampshire Ave., NW, Suite 301
       **Washington, DC 20037-1502**
       **(202) 429-9705**
       cornishj@erols.com

Date:    3/24/08

26

UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,      )
                                       )

               Plaintiff *Pro Se*    )

     v.                            )

                                       )     CASE  07-cv-01719 (RWR)

                                     )

JON DUDAS, et al.                   )

                                     )

            Defendants      )

## ORDER

UPON CONSIDERATION of Plaintiff's Motion and Memorandum in support of his requests for damages, costs and attorney's fees; request to Defendants for permission to qualify for reinstatement to take and to take the July 2008 examination without charge of any fees; his request for a copy of the July 2007 examination and answers for $30; and for a Temporary Order of Restraint or Injunction to ensure the enforceability of Defendants' concessions and stipulations; and

The Defendants concessions and stipulations, comprising, *inter alia,* to supply a copy of the July 2007 Patent examination for $30; to refund the charges and fees for the July 2007 Patent examination; and Defendant Moatz's October 9, 2007 Affidavit that, "Although Plaintiff has not applied to take the patent examination again, I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him for the July 2008 Examination", and the entire record herein, it is this _____ day of _____ 2008, hereby

1

ORDERED that Plaintiff's Motion should be and it is hereby Granted but stayed pending a

response from Defendants; and it is

FURTHER ORDERED that Defendants be directed to answer Plaintiff's pending Motions; or

alternately that Defendants' Motion to Dismiss or, Alternately For Summary Judgment be

Denied.

_____

**UNITED STATES DISTRICT JUDGE**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 (fax (2020) 514-8780

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

2