UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,              )
                                         )
                     Plaintiff *Pro Se*  )
            v.                           )
                                         )    CASE  07-cv-01719 (RWR)
                                         )
JON DUDAS, et al.                        )
                                         )
                     Defendants          )
_____)

### Motion To Stay Proceedings Including Defendants' Dispositive Motions Pending An Interlocutory Appeal Of The Denial Of Plaintiff's Motions; and Memorandum in Support

Plaintiff Moves to stay the proceedings pending the outcome of his appeal, which has been accepted as enhancing the outcome of this case.

Plaintiff appreciates the Court's indulgence *ex ante*.  And in view of the acceptance of this case for an interlocutory appeal, Plaintiff would appreciate it, and it seems reasonable to request, that the District Court stay the proceedings in the District Court pending the outcome of the appeal, i.e., before the merits portion of the trial in the District Court by not overriding this most recent *pro se* Motion or by excluding Plaintiff from receiving a fair trial in this courtroom under the Sixth Amendment or under law, and/or by Dismissal in accordance with Defendants' dispositive motions, which implied that the case was becoming a farce, as in Illinois v. Allen, 37 Ill.2d 167, 226 NE2d 1 (1967); 397 U.S. 337 (1976). See Defendants' citation of Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985), where the plaintiff was deluded to claim to be a citizen of the universe who was running for president.

**RECEIVED**

APR 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Also, Defendants acknowledged In re Carl Clovis Green, 598 F.2d 1126, 1127 (8th Cir. 1979) which supported the proposition that, "It is axiomatic that no petitioner or person shall ever be denied his right to the processes of the court," they have exposed Plaintiff to embarrassment and ridicule by inferring on page 4 of their Motion for an Order of Protection that Plaintiff is incompetent because of his prolix and disorganized and "simply bizarre" filings, including his Motion for the aid of the well established and long recognized Lawyer Counseling Panel under Local Rule LCvR 83.21. *See* Dusky v. United States, 362 U.S. 402 (1960).

In view of the Court's apparent agreement with the Defendants by partially granting Defendants' Motion for an Order of Protection, and by denial of all Plaintiffs' Motions, it is critical to avoid irreparable harm to the Plaintiff to stay the proceedings. And staying the proceedings will cause no harm to the Defendants or the public. And also this is critical to his obtaining the help of outside counsel, which he is attempting to obtain.

Obviously, it is unfortunate that Plaintiff felt that he had to incur the expense and danger of asking the Court of Appeals to overrule this Court because of an abuse of discretion, or mistaken factual determinations as to Plaintiff's non-registered status, where there have been clear structural errors rather than merely harmless errors. Plaintiff has tried to point this out. *See* also Plaintiff's Memorandum on 3/24/08, page 3, line 7 et seq. and page 10, last three lines, et seq., and the Court's Memorandum Order of 2/25/08, page 2, last two lines, and page 3, through page 5, first two lines.

The merits of Plaintiff's case as an unregistered patent attorney seem clear. He was not, and has not, been formally charged with misconduct or the breaking of any rules of this Court or the USPTO. Nor does the record in this case cause concern in Maryland, the District of Columbia, New York State, the U.S. Tax Court, the District Courts of the Southern and Eastern

2

Districts of New York, the Court of Appeals, the Supreme Court of the United States or the Patent and Trademark Office.

There is no necessity or probable cause for further punishment of Plaintiff by *prior restraint* of his name once his name is illegally removed from the register of attorneys in the USPTO. His unregistered status is consistent with his withdrawal as an attorney from his joint invention, his notice of withdrawal on February 9, 1996 in Exhibit 7, and his obtaining permission for temporarily "ceasing practice" at the time to straighten out a mistaken Order in Maryland, was not a necessary condition for, or notice of a request for, removal of his name from the register of attorneys in the USPTO.

Temporarily "ceasing practice" until an Order in Maryland was corrected, is quite the opposite of a request to remove Plaintiff's name from the register. This is especially obvious and evident to even a casual observer. It is irrational to believe that Plaintiff's letter of February 9, 1996 could be treated as a "request to have your name removed from the register" rather than as part of his withdrawal from a case to prevent harm to a client.

There was no necessity to resign. That was not possible at the time. And it was not possible by a secret removal on or about August 28, 1996 or thereafter in accordance with law. Lack of a hearing, due process and the requirements of 37 C.F.R. 10.40, 10.63, 10.64 or 10.65 would clearly make it irrational to treat Plaintiff's statement that he was temporarily "ceasing practice" and withdrawing from a case while making a correction in a Maryland Order as a request for removal from the register in the PTO, especially since inactivity in Maryland had no possible connection with temporary inactivity as an attorney in the Trademark Office, or as an attorney in the Patent Office, because he expected to maintain his practice as an attorney in the District of Columbia and New York State.

3

It would have been in violation of 10.78, which prohibits a practitioner from attempting to exonerate him or herself from, or limit his or her liability to, a client for his or her personal malpractice. And yet the Director of OED's letter of March 4, 1996 in Defendants' Exhibit 8 irrationally and incompetently stated that, "Accordingly, we are treating your statement as a request to have your name removed from the register." No one in his right mind would have answered such an letter within 30 days from someone who was illegally and incompetently trying to lay a trap.

Defendants' Memorandum of 11/30/07, page 3, does not state that Plaintiff "asked" or could legally have "asked" to have his name removed from the register during an investigation period as incorrectly stated in the Director of OED's letter of March 4, 1996 in Defendants' Exhibit 8. It is inconceivable that Plaintiff's letter of February 9, 1996 would or could be construed as a request to have his name removed "after a grievance was filed against him" as stated on pages 2 and 3 by the Court in its Memorandum Order of 2/25/08, especially since there were no unresolved grievances filed against Plaintiff in Maryland when the Maryland Order of December was made in his favor, and he knew of none before or after that in the PTO when he wrote to the Commissioner, or when the Director of OED wrote to him on March 4, 1996 or thereafter, even at late as Defendant Griffin's letter of March 22, 2005. Such a *request* was not made, nor would it have been legal if it had been made without seeing a copy of a complaint from the Defendants.

This case is proceeding on the basis of a question of law waiting to be decided on appeal. And it involves other questions of law raised in a complaint by an unregistered attorney who wishes to use his name, and copyrighted trademark as an attorney. That is relevant facts that are in dispute.

4

Reference is made to the Defendants' statement on page 3 of their 11/30/07 Memorandum relative to the secret "removal" of Plaintiff from the register of attorneys, "that: his removal was in lieu of OED commencing an investigation of the complaint that had been filed against him." That was false because not commencing an investigation of "Mr. Cassidy's complaint, i.e., holding it in "abeyance" was the act done by Defendants in lieu of OED commencing an investigation of the complaint, instead of as stated in the Director of OED's letter of March 4, 1996. "Removal" had nothing at all whatsoever to do with not commencing an investigation. She said then that, "It is our intent to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well as any change of status action based upon the Maryland Court Order…"    Admittedly, the removal was done secretly on or about August 28, 1996 without constitutionally sufficient notice to Plaintiff because his removal was not necessary after Plaintiff's practice was embargoed by the letter of March 4, 1996.

Plaintiff could obviously expect that he would not be removed from the register because his removal was a *non sequitor* to his letter of February 8, 1996, and the Director of OED's letter of March 4, 1996. It would have been irrational to believe that he should reply, or that failing to reply was a waiver of due process. The necessity of removal was removed by the holding in abeyance of an investigation. Her comments were an attempt to place on the shoulders of her successor anything she said before she resigned as Director of OED, or left the PTO in 1999 under protest, or because of incompetence, as the case may be.

As pointed out before, the Court was mistaken on page 1 of its 2/25/08 Memorandum Order in stating that "Cornish has filed a motion for a preliminary injunction which appears to request an order (1) enjoining the USPTO from requiring that he pass the patent examination before being reinstated." That was inconsistent with what the Court stated on page 2, namely

5

that "Cornish applied for and passed the patent examination in 1958, and became registered to practice before the USPTO." Plaintiff agrees that he "became registered" and so he sees no reason why he would want to enjoin the USPTO from requiring that he pass the patent examination before being registered or reinstated.

The gravamen of Defendants' defense and Motion to Dismiss, and Plaintiff request for relief, are genuine issues of fact in dispute, and compelling questions of law for an interlocutory appeal on the basis of reasonable differences of opinion, and a significant mistake of fact by the Defendants and the Court.    It is obviously a mistake of fact to believe that the "gravamen of Plaintiff's reinstatement claim. That is a fiction that has no basis in fact, and so cannot be based on OED's March 22, 2005. The alleged "gravamen" is a fiction that has no basis in fact. The Court repeats this mistake by stating that, "Cornish has filed a motion for a preliminary injunction which appears to request an order (1) enjoining the USPTO that he pass the patent examination before being reinstated."

Plaintiff's request for <u>Bivens</u> damages for Constitutional violations, cost, attorneys' fees and equitable relief includes, *inter alia,* an Order enjoining Defendants' from threatening Plaintiff, as they have since March 4, 1996, with criminal prosecution under 35 U.S.C. 33 for violating an embargo, including, *inter alia,* by *prior restraint*, against his practice, expressions and holding of himself out as a patent attorney.    Plaintiff also seeks Bivens damages, costs, attorneys' fees and an injunction to enforce Defendants' concession to "hold in abeyance any investigation of Mr. Cassidy's complaint, as well as any change in status action based upon the Maryland Court Order" in lieu of Plaintiff's acquiescence in their concession for at least 30 days from March 4, 1996. *See* Defendants' Exhibits 8 and 33. To this end, Defendants have relied heavily on an unconstitutional, permanent and absolute ban of Plaintiff's expressions, including

6

his expressions relating to his practice, and his holding himself out in more his patents and trademarks, including more than two Continuation patent applications of his currently pending patent application, as an "Attorney, firm or agent," as an "Attorney," as a "Patent and trademark attorney," or from using similar expressions, or from using his copyrights, trademarks, "title," "property," privacy, clients' secrets, his trade secrets, or his privilege as an attorney under the Patent Laws or the Constitution, by *prior restraint* in accordance with their Revised Rules or otherwise.

Defendants have relied heavily on an Order in favor of Plaintiff in Maryland, which they and the Court have misconstrued. And they have relied on the resolution of a 1995 refusal of Plaintiff's hostile co-inventor to accept an assignment of Plaintiff's invention by refusing to investigate his jeremiad, which OED received on November 7, 1995. *See* Exhibit 3, which was kept secret and hidden from Plaintiff until after the statute of limitations, had passed.

Plaintiff never received a copy of that jeremiad from the Defendants until this case was filed. Defendant Griffin never explained to Plaintiff that the investigation being held in abeyance according to the Director's letter of March 4, 1996, was an investigation of that jeremiad, or that it had been resolved in the PTO secretly by the Defendants, and by the Director's letter to his co-inventor on June 15, 2000. *See* Defendants' Exhibits 3, 8, 17 and 33. Plaintiff was never told about that secret resolution until receiving the Defendants' Exhibits, particularly Exhibits 3, 8 and 33. And Plaintiff never received a formal complaint based on the investigation by the Defendants because no investigation was ever started, undertaken or completed before or after it was resolved on June 15, 2000. Thus, Plaintiff was left with not only genuine facts that are in dispute, but also facts that led him to believe he was under a threat of sanction during an eleven year informational stage. And since that time, he has been constantly

7

threatened with criminal prosecution despite the resolution of this investigation in 1995 and during which time that threat was deceptively used to enforce an embargo of Plaintiff's entire patent and trademark practice in both the Patent and Trademark Offices, and elsewhere as well.

Accordingly, Plaintiff was forced in this case to enter an unfamiliar, unstructured and stressful environment because of Defendants' Dispositive Motions, Motion to seal, and for an Order of Protection before trial by self-representation without the benefit of counsel appointed by the Court as he requested whereby he has been constantly challenged by the Defendants, the Court and the myriad of decisions that trial counsel have to make according to the mandate of Congress for him to act as his own attorney general to protect his civil and Constitutional rights. He has additionally felt harassed by the Court clerks who discouraged him from filing his papers in this case.

The facts are in dispute as to who is to blame for what Plaintiff feels is irreparable harm. To this end, Defendants instigated all this stress and strain by stating deceptively and falsely what they were going to do after Plaintiff had completed his *sua sponte* withdrawal with the agreement of the PTO to protect his co-inventor by a temporary, non-jurisdictional inactivity that was merely informational, in accordance with the requirements of the Patent Office Rules. MPEP 1.36, 1.613, 402.05, 402.06, 2560, 2623 and 37 C.F.R. 1.36.

Plaintiff believes that Defendants' intention was to secretly remove Plaintiff's name from the register of attorney *ex ante* during an "informational period" without any Constitutional safeguards. That was revealed on the filing of this case by a handwritten note dated August 28, 1996 on the OED Director's letter of March 4, 1996 in Defendants' Exhibit 8, and another letter on June 15, 2000 in Defendants' Exhibit 33. Defendants' regulations required them to investigate, but to finesse that requirement of their own regulations they threatened Plaintiff

8

deceptively to coerce him to acquiesce in an embargo of his practice in both the Patent and

Trademark Offices for at least 30 days. Their real concern was how to obtain the permanent and

outright removal and ban of Plaintiff's ability to practice and/or to use his "title," ID, property,

trademark, and privilege in any expression as an attorney by *prior restraint* of his holding

himself out anywhere as a patent attorney.

Defendants knew that they could deceptively disguise their real intention behind the year-

long informational period expected for Plaintiff's withdrawal, inactivity and the filing of a

Continuation on his joint invention by his co-inventor made possible by the assignment of

Plaintiff's joint invention to his co-inventor, and the temporary status of Plaintiff's inactivity in

Maryland according to a temporary, provisional Order of inactivity in Maryland without

sanction, discipline or a requirement for a showing of fitness for reinstatement. To this end

Defendants coerced Plaintiff to accept or acquiesce in their embargo of Plaintiff's practice in

both the Patent and Trademark Offices for at least 30 days while they agreed to hold an

investigation in abeyance. Beyond that time, Plaintiff expected a closing letter whereby no

notice of resumption of active practice in the Trademark Office was required, and, accordingly,

Plaintiff could rely on continued registration as an attorney in the Patent Office during the

informational period in which Plaintiff was inactive in the PTO while the investigation was held

in abeyance.

The Controlling question of law, upon which there is a reasonable basis for a difference

of opinion, and the genuine issues of fact in dispute in this case, concerns the informational

period initiated by Defendants on March 4, 1996 by their letter in Defendants' Exhibit 8.

Before that informational period, the Plaintiff's letter *sua sponte* on February 9, 1995,

gave notice and confirmed approval of his withdrawal as an attorney in active patent

9

applications, including his joint application with his co-inventor Cassidy. That was consistent

with the temporary and provisional inactivity in the PTO along with his announcement of

inactivity in Maryland without discipline, sanction or a requirement for a showing of fitness for

reinstatement to active status in Maryland or the Patent Office. The inactivity might last for up

to the year. That was the time it might take for his co-inventor to either abandon or file a

Continuation on their provisional patent application that had been assigned to his co-inventor.

The informational period was otherwise benign because the inactivity in Maryland freed Plaintiff

from paying the yearly fee for practice for the year he might be inactive in Maryland.

The letters in Defendants' Exhibits 8 and 33 were *ex ante*, i.e., during the "informational"

period for investigation of Plaintiff's assignment of his invention to his co-inventor, the status of

the corresponding provisional patent application, or the holding of a trial on the refusal of his co-

inventor to accept Plaintiff's assignment during the time when the investigation of that refusal

was to be held in "abeyance." It was agreed that the investigation was to be held in "abeyance"

for at least 30 days, not as long as up to and until the time that Plaintiff asked for a return to

active status. Plaintiff was never informed of that length of time, or the time necessary for a

"closing letter" to be sent. These are all genuine issues of fact in dispute.

Unfortunately, the time frame involved would be after his name was secretly removed

from the register of attorneys on or about August 28, 1996, as described by a secret handwritten

note on the OED Director's March 4, 1996 letter to Plaintiff in Defendants' Exhibit 8. The result

was the manifestly unjust, irreparable and permanent ban of Plaintiff against his professional

career as a patent attorney, as well as his property, ID, and privilege; and the permanent,

irreparable and complete ban of its recapture or restoration; all of which is now commensurate

with the permanent and complete ban of more than two Continuations of his currently pending

patent application under the existing Patent Laws by the publication of the Defendants' Revised Rules.

One irreparable result was the major revision of the Patent Laws, in that Plaintiff has been forced to wait for the promised *ex ante* investigation during an eleven year long informational period before this trial was begun in this case and the Defendants filed a Motions to Dismiss, for a sealing Order, and for an Order of Protection against the Plaintiff. Plaintiff had to wait for the investigation to be terminated after it was held in abeyance, and until Plaintiff asked for reinstatement, all of which are genuine issues of fact in dispute.

The investigation was never completed because of the running of the five year statute of limitations against completion of the investigation. Alternately Plaintiff had to wait to receive a "closing letter" or a "concession" in this trial enforced by an injunction, but those options could not be addressed until Plaintiff received notice of the status of the investigation by the Defendants in this trial. That factual issue needs to be addressed by this Court now as a genuine issue of fact in dispute, and as a Controlling question of law.

This Court must decide whether the investigation was ever started or stopped during the informational period, which lasted until this trial. This trial is to decide how to force the "concession" made by the Defendants to Plaintiff to hold the investigation in "abeyance" during the informational period. Is abeyance to be forced by an injunction or was it conceded by "strategic mooting" on March 4, 1996? Did Plaintiff change his position to conform to a complete but temporary embargo of this practice in both the Trademark and Patent Offices and from holding himself out as an attorney? Did he do so within 30 days by a threat to prosecute him if he opposed an outright embargo and ban of his practice in the Patent and Trademark Offices respectively, and everywhere else? That's what Plaintiff claims. Plaintiff's bargaining

11

position was essentially limited to the adequate consideration for their promise to hold the

investigation in "abeyance" for at least 30 days in favor of Plaintiff by Plaintiff's acceptance of

the "strategic mooting," which required him not to reply to he Director of OED's letter of March

4, 1996 for 30 days. As a practical matter, Plaintiff could not make Defendants give up their

threat of prosecution by a reply, so a reply was counterproductive. It would have been a waiver

of his Constitutional rights against self-incrimination. At the time, he reasonably relied on what

he believed were the adequate safeguards of the disciplinary system in the PTO, whether or not

the Defendants held the investigation in abeyance *ex ante* or not.

      As it turned out, the secret removal of his name from the register cancelled out any

safeguards that he might have had. Defendants' deception, fraud, and the obstruction of justice

were *ultra vires*, illegal and unconstitutional. They intended from the start to secretly,

permanently and completely ban Plaintiff's patent practice without constitutionally sufficient

notice to him. In fact, they never told him his name was removed until this case became ripe for

a decision in this Court, because their intention was to ban and prevent him by discrimination

because of his age-related disabilities from ever practicing patent law as a registered attorney

again, and to discriminate against him because of his age-related disabilities and vulnerabilities

by a secret handwritten note on their letter of March 4, 1996 without notice to Plaintiff. Again,

these are genuine issues of fact that are undoubtedly in dispute.

      The Court is requested to decide to enforce the Defendants' "concessions," including

their promise to hold the investigation in abeyance without any threat of prosecution under 35

U.S.C. 33 in exchange for Plaintiff's acquiescence in their embargo of his practice for at least 30

days. To this end, their promise needs to be enforced by equitable intervention of this Court in

this case upon the merits of Plaintiff's legal claim for <u>Bivens</u> damages, costs, attorneys' fees and equitable relief to enforce their concessions.

Plaintiff has been under an embargo of his practice without probable cause for eleven years, following a secret removal of his name without notice on or about August 28, 1996, as shown by the handwritten note on the March 4, 1996 letter in Defendants' Exhibit 8. A hearing and due process have been denied for eleven years to enforce the permanent, and irreparable total ban of Plaintiff's constitutional rights to practice in the Patent and Trademark Offices – which is way beyond the time that Defendants informed him that such an investigation could reasonably be expected to be held in "abeyance." They asked Plaintiff to acquiesce in an embargo of his practice in the PTO for at least 30 days. They inferred that they would give Plaintiff a copy of the jeremiad received by OED on November 7, 1995 (Exhibit 3), which their rules and due process required them to send to the Plaintiff, but they have not done so until forced to do so upon the filing of this case. To this end, the letter of June 15, 2000 from Defendant Moatz, the Director of OED, said that "OED will consider the complaint if and when Mr. Cornish applies to be reinstated," which was, therefore, a lie libelously published by the Defendants to resolve and close the case without notice to Plaintiff.

## CONCLUSION

**For the foregoing reasons, Plaintiff respectfully urges this Court** to grant Plaintiff's request to stay the proceedings pending the outcome of his interlocutory appeal as to the immunity of the Defendants, and as to the denial of all his Motions, including his Motion for an injunction of Defendants' Revised Rules, as these will enhance resolution of this case. Plaintiff's request seems reasonable because it is without harm or prejudice to the Defendants. Also, it will

13

enable Plaintiff to further or even finalize his attempt to obtain the help of outside *pro bono*

counsel. Plaintiff requests, therefore, that the Court stay all proceedings in the District Court by

holding in abeyance **and staying Defendants' Motion to Dismiss and any and all other**

**dispositive Motions by Defendants so that the Court can ultimately grant Plaintiff's**

**Motions,** *inter alia,* for appointment of counsel and for attorney's fees as a private attorney

general; Bivens damages for Constitutional violations; and **a** Temporary Restraining Order, or

**injunctive relief to assure** that Defendants' concessions are enforceable.

> *"Attorney, Agent or Firm* – **Cornell D.M. Judge Cornish"** or *"Attorney, Agent or*
> *Firm* – **Cornell D.M. Judge Cornish** TM SM "
> **Downpat** (c) 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*
*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    4/25/08

14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and**

**Memorandum in support have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this   25th    day of ~~March~~ *April*, 2008.

*Cornell D. M. Judge Cornish*
*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
**Washington, DC 20037-1502**
**(202) 429-9705**
**cornishj@erols.com**

Date:  4/25/08

15

UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,      )
                                 )
           Plaintiff *Pro Se*    )
      v.                         )
                                 )   CASE  07-cv-01719 (RWR)
                                 )
JON DUDAS, et al.                )
                                 )
           Defendants            )
_____)

## ORDER

UPON CONSIDERATION of Plaintiff's Motion to stay the proceedings in the district court pending the appeal of the District Court Orders of 3/3/08, 3/24/08 and 4/16/08 and permission to appeal the denial of all his previously pending Motions and requests for damages, costs and attorney's fees; and his request to Defendants for permission to be recognized as a non-registered patent attorney; and for a Temporary Order of Restraint or Injunction to ensure the enforceability of Defendants' concessions and stipulations; and

The Defendants concessions and stipulations, comprising, *inter alia ,*their not insubstantial but obscure concessions to supply a copy of the July 2007 Patent examination for $30; to refund the charges and fees for the July 2007 Patent examination; and Defendant Moatz's October 9, 2007 Affidavit that, "Although Plaintiff has not applied to take the patent examination again, I foresee no reason that Mr. Cornish would not be granted the same accommodations provided to him for the July 2008 Examination", and the entire record herein, it is this

_____ day of _____ 2008, hereby

1

ORDERED that Plaintiff's Motion should be and it is hereby Granted without a response from

Defendants; and it is

FURTHER ORDERED that Defendants not be directed to answer Plaintiff's pending Motion; or

alternately that Defendants' Motion to Dismiss or, Alternately For Summary Judgment be

Denied.

_____
**UNITED STATES DISTRICT JUDGE**

W. Mark Nebeker                             Cornell D.M. Judge Cornish
Assistant United States Attorney            1101 New Hampshire Ave., NW
Civil Division                              Washington, DC 20037-1502
555 4th Street, NW                          (202) 429-9705
Washington, DC 20530                        cornishj@erols.com
(202) 514-7230 (fax (2020) 514-8780

2