# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
    )
    Plaintiff *Pro Se*    )        Case 07-cv-01719 (RWR)
    v.    )
    )    Plaintiff's Motion For
    )    Review and Reconsideration
    )    5/8/08 Order [56]
    )    of the District Court
JON DUDAS, et al.    )    of the District of Columbia
    )
    Defendants/Appellees    )
    )
_____    )

## MOTION

Motion For Reconsideration of Order of 5/8/08 Denying Motion For Injunctive Relief And Refusing to Give An Opinion Under Section 1292 (b) That Such Order Involves A Controlling Question of Law And That An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation And Appeal No. 08-5089

### SUMMARY

This is a Motion for an interlocutory reconsideration of the Order of 5/8/08 by the

District Court denying an Injunctive Relief, including a Temporary Restraining Order,

Preliminary Injunction, Permanent Injunction, Declaratory Judgment and Mandamus.

Plaintiff has met his burden of showing that this is an emergency that meets the necessary

criteria, because he has shown clearly the material fact that he is just as worthy legally and

morally of the denied relief, if not more so than any other inventor and applicant.

1

RECEIVED

MAY 1 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## REMARKS

To this end, the relief requested is based upon substantially the same complaints of both Plaintiff/Appellant in this case and inventor Tafas, et al., i.e., his complaint and the grievance of Tafas et al., substantially track the same pre-enforcement challenges of the Final Revised Rules of the Respondent by two comparable inventors.  Those challenges brought to the Court's attention by inventors, are representative of the challenge brought by all non-registered lawyers and attorneys.  One is *pro se,* and one is represented by lawyers, but other non-registered attorneys have filed amicus briefs.  Almost all point out the dramatic changes in the present law, without authority, or procedural due process, and not under law under the APA.  To this end, both challenge the  Final Revised Rules identified in 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va. (*see* also substantive Rules 75 and 78 (72 Fed. Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective November 21, 2007) (*See* also 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c)).

It is well to note that this Court and the Court of Appeals are being requested to accept as true the allegations of the Plaintiff/Appellant's Complaint regarding the question of law required to be answered to materially advance the ultimate termination of the litigation in this case, including the question: is the Court prepared to dismiss the claim for a  determination of the genuine material dispute of the parties at issue, i.e.,  are the undisputed substantive changes made in the Final Revised Rules *substantive* changes in the law under the APA?  The Defendants/Appellees don't deny that the changes are *substantive,* but they claim the changes are procedural under the APA, and, therefore, allowed by the APA.

The Petitioner's complaint in this case alleges material, objective, non-conclusary facts raising controlling questions of law, namely: Do the Final Revised Rules make arbitrary and

capricious, <u>substantive</u> changes in the law? The Petitioner alleges that the changes are arbitrary and capricious, invalid, not in accordance with law, without authority, beyond the scope of authority of the Respondents/Defendants/Appellees. Further, they have been adopted without due process, and the proper procedures required by the APA have not been followed. For example, the record is incomplete.

And Petitioner claims that the Final Revised Rules impose unconstitutional *prior restraints* under the First Amendment. Those restraints are intended to bar Petitioner's expressions, thoughts, ideas, ID and shingle as an "attorney, agent or firm" that is unregistered. They cause interference, and invidious, immoral and well-established symbolic discrimination and harassment against an identifiable group of unregistered attorneys and inventors who have age related disabilities by barring them from filing unlimited Continuation applications and claims without reasonable accommodations, narrow tailoring, or compelling public policy purposes. The reduction of work-load is not a compelling public policy purpose.

The changes are directed against them with intent to cause *irreparable* and permanent harm by permanently barring and suppressing their inventions and publications without equal protections of the law as attorneys, agents and firms whether they are registered or not as a matter of law, in which case the APA authorizes an injunction.

Also, the Defendants/Appellees are not immune from Petitioner's million dollar <u>Bivens</u> tort claim for damages and attorneys fees as a matter of law, as argued by the petitioner. There is a dispute, as to the facts, because the Respondents allegations are consistent with the facts. On the other hand, the Respondents claim that the Final Revised Rules make <u>procedural</u> changes that do not trigger an injunction under the APA, although it is undisputed that the changes admittedly

3

are intended to cause irreparable harm with immunity from liability for damages under state and federal tort law?

Reconsideration and reversal of the Order of 5/8/08 are requested and mandated by law because the facts are undisputed that the controlling, unquestioned, black letter law recognizes that the harm is irreparable to the petitioner because he is diabolically harmed by unnecessary draconian censorship, that permanently *restrains* him from filing and publishing in a patent document unlimited numbers of Continuation and claims, which cannot be compensated by money damages, whether or not he is registered or reinstated.  Freedman v. Maryland, 380 U.S. 51 (1964). ("The censor must have the burden of proving ...the expression[is] unprotected by the Constitution." *Id.*, at P. 58)Thus, this Court must take judicial notice and by incorporation by reference herein of the court's subject-matter jurisdiction, and factual allegations cited in Tafas, case *Id.*, and the 4/1/08 Memorandum Opinion therein, which is of public record.  "Patent-O.com," and "Pacer" Case 1:07-cv-00846-JCC-TRJ Document 275 Filed 04/01/2008 Pages 1 to 26, which makes it appear without any doubt that Plaintiff/Appellant can meet, and has conclusively met and exceeded any burden required for a showing by a preponderance of the evidence that he has stated a claim upon which relief can be granted, and a set of facts in support of his claim that would entitle him to relief, such that it is beyond any doubt that he can prove a set of facts on the same issues, involving the same Defendants in support of his claim, and that he has done so by resolving any close scrutiny or the burden of proving the factual allegations required under Rule 12 (b) (1) and 12 (b) 6) to determine subject-matter jurisdiction, so as indisputably and undeniably to entitle him to the same relief obtained by the Plaintiffs in that case. All speculation and any further need for scrutiny of the facts are removed.

4

The claim is not just shy of a plausible entitlement to relief; it is obviously and unarguably not groundless or frivolous; there are no inferences or conclusory allegations that are unsupported by the facts set forth in the complaint by Plaintiff/Appellant, which are accepted as true for this appeal. The threshold has been met and exceeded. Indeed, the Plaintiff/Appellant must be granted the benefit of all inferences that can be derived from the alleged facts. *See* Hopkins v. Women's Division, 238 F.Supp.2d at 178 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Summary Judgment is not appropriate in this case because it is obvious that there are many genuine issues of fact in dispute as to material facts and controlling questions of law. Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion, i.e., the Plaintiff/Appellant. *See, e.g.,* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). And Plaintiff/Appellant has, like the cited Tafas case *Id.*, has established the essential elements to his case on which he will bear the burden of proof at trial. The existence of a mere scintilla of evidence in support of the non-movant's case is insufficient, but a jury, and a judge, could reasonably find for the Plaintiff/Appellant based upon the allegations claimed in this case, which are substantially the same as in the Tafas case, *Id.* To that end, the claims substantially overlap in all controlling particulars for purposes of this appeal.

In this connection, there is a dispute as to whether there is a "Reinstatement claim." The Plaintiff/Appellant claims the alleged "reinstatement claim" is a phantom claim that does not exist, or need not exist, and should not exist, because he does not need to meet the requirements of Local Rule LCvR 83.7. He is not "a person refused recognition to practice or suspended or excluded from practice before the Patent Office," or by "an order recording the Commissioner's action," as required by that Rule. Requiring him to pass the patent exam is not a refusal to

5

recognize him according to law. That is a phantom claim that was repeatedly alleged to have been the crux of the Defendants/Appellees defense of this case, but the Defendants/Appellees, and the District Court are mistaken. *See* "Legal Analysis" on page 30 of Defendants/Appellees 11/7/07 Dispositive Motions, and Exhibits.

Clarification was requested but never given in view of the typical scenario of denial of applications to take the examination for patent under 35 U.S.C. 31 (1988) for lack of sufficient technical qualifications. Premysler v. Lehman, Case No. 95-1219 CAFC December 1, 1995; Leeds v. Mosbacher, 732 F.Supp. 198, 200 (D.D.C.) aff'd 918 F.2d 185 (Fed. Cir. 1990); Sperry v. Florida, 373 U.S. 379, 137 USPQ 578 (1963).

A Request for Information (RFI) was made on March 4, 1996. There was only one intent, and only one possible response. It was a Hobson choice to select only the horse nearest the door, i.e., to hold an investigation in abeyance without invoking the authority of 37 C.F.R. 1.105; 10.7 or 1.21 (a) (3). There was no option for the Defendants/Appellees to assume that the Plaintiff/Appellant had "an intent to have your name removed from the register" without consulting an attorney within 30 days. No notice or option of an intention was given to "have your name removed from the register," or to interfere with Plaintiff/Appellant's privacy or that of his client, or in any other way to interfere with the status quo. There was a nefarious intent to obstruct justice and to deprive Plaintiff/Appellant of his constitutional rights, and those required by 35 U.S.C. 32.

The March 4, 1996 RFI in Defendants' Exhibit 8 was used to circumvent the standard discovery procedures in place to protect an attorney under investigation, to offer the attorney an opportunity to consult with an attorney, and to safeguard him against the absence of due process and the right of judicial review. An attorney cannot be compelled to subject himself to

6

disciplinary charges, and the adverse consequences that may flow there from, in order to protect his client's confidences or to challenge unduly burdensome discovery. *Cf.* Steffel v. Thompson, 415 U.S. 452, 459 (1974) (declaring that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of hi constitutional rights"; Hickory Fire Fighters Ass'n v. City of Hickory, 656 F.2d 917, 922 (4th Cir. 1981). Under the OED's current system, nothing but good conscience would prevent an OED Director from secretly removing Plaintiff/Appellant's name from the register without notice, a hearing, due process or the opportunity to confer with a lawyer. Nothing but good conscience would prevent USPTO and OED agents and investigators, like Defendant/Appellants Dudas, Moatz and Griffin from requiring responses to an unlimited and burdensome array of questions by noon tomorrow and bringing charges and invoking punishments like the secret removal of his name from the register against an attorney who fails to comply. Unfortunately, the *only* available limitation in this system is a private lawsuit; therefore, it is all the more important that the Defendants/Appellees not be accorded absolute[ly] immunity. Goldstein, *Id.*

The RFI on March 4, 1996, was also used to circumvent the Constitutional and Structural Issue that has regularly been decided, that is not disputed by the USPTO, necessitating the proper constitutional authorization of ALJs by Article II. The regulations governing disciplinary procedures provide for discovery *only* after initiation of disciplinary proceedings, and then *only* under the supervision of an ALJ, which of course would be without authorization under Article II, and thus, unconstitutional in this case under current USPTO practice. *See* Translogic Technology, Inc. v. Jon W. Dudas, Director, Patent and Trademark Office, on Petition for Writ

7

of Certiorari to the United States Court of Appeals for the Federal Circuit, April 2008, citing Art.

II, Section 2, cl. 2 (Appointments Clause (*passim)* and 35 U.S.C. 6.

As argued in that case and herein, the Appointments Clause challenge cannot be raised

before the Board renders its decision because the Board does not announce its panel members

prior to briefing and Petitioner cannot know their identity until oral argument. Moreover, federal

agencies do no ordinarily have jurisdiction to decide the constitutionality of any statutes, let

alone their own authorizing statute. Nebraska v. EPA, 331 F.3d 995, 997 (D.C.Cir. 2003) (citing

Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 214 (1994). "ot [i]s hardly open to…an

administrative agency…to entertain a claim that the statute which created it was in some respect

unconstitutional." Robertson v. Fed. Election Comm'm, 45 F.3d 486, 489 (D.C. Cir. 1995).

Petitioner's right to a hearing before a Court to address Appointments Clause violations

under both 35 U.S.C. 6 and the disciplinary statutes 35 U.S.C. 2 and 32 on their merits is

compelling because of the threat they pose to fundamental separation of powers principles. *See*

Freytag, 501 U.S. at 870; and Glidden, 370 U.S. at 356. *See* also Nguyen v. United States, 539

U.S. 69, 83 (2003), where it is clear that one member of the Board's panel that decided the

validity of a Petitioner's patent did so in violation of the Appointments Clause. In that case, the

case was remanded for a hearing before a properly-constituted panel.

In  Bilski and Warsaw, No. 2007-1130 (S.N. 08/883,892) (Fed. Cir. 2008) and here the

necessity for the proper appointment of an ALJ was eliminated and avoided by invoking that

penalty of a secret removal of Plaintiff/Appellant from the registry of attorneys without notice, a

hearing, or due process under 35 U.S.C. 32.

At the time of his secret removal he did not need to show facts that warranted his

registration under 35 U.S.C. 2 or 37 C.F.R. 10.7 9(a)(2)(e)(2002) to file more than a certain

number of Continuations and/or claims because he has failed to sustain a burden that is required to meet under the Final Revised Rules and 35 U.S.C 2 or 32. It is unconstitutional to require that he show that he is of good moral character and repute to practice in either the Trademark Office of the Patent Office without notice, a hearing and due process. 35 U.S.C. 32 is unconstitutional by requiring him to do so in order to file more than the quota of Continuations and claims set by the Revised Rules, and/or to lift the embargo placed on his practice, including an embargo against holding himself out as an attorney to file an unlimited number of Continuations and/or claims. He has been under an embargo since March 4, 1996 (Defendants/Appellees' Exhibit 8) and his practice is still under an embargo.

Defendants gave Plaintiff/Appellant a Request for Information (RFI) while an investigation was being held in abeyance, albeit the abeyance was stipulated to last at least 30 days to await a response, which was not enough time to consult with an attorney. The RFI was sent on March 4, 1996 stated merely that, "It is our intent to hold in abeyance any investigation with respect to Mr. Cassidy's complaint, as well as any change of status action based upon the Maryland Court Order," which was received "from the Attorney Grievance Commission of Maryland."

Separate options were made with respect to their Request for Information (RFI). This included a 30 day period for response concerning only the "intent" of the Plaintiff/Appellant. He was given only 30 days for a response, and no safeguards of his rights. The only offer made was the condition of a 30 day time period for response as a stipulation to hold any investigation in abeyance for at least 30 days. To this end, their proposal was that "It is our intent to hold in abeyance any investigation with respect" to any of the matters mentioned, but otherwise they left open what they would do if a response or no response was made to their RFI. They were

unwilling to say what the punishment would be if no response was received, or what they intended to do as a punishment no matter what Plaintiff/Appellant intended or what "he intended to have" done with respect to the register as a punishment, other than to hold their investigation in abeyance for at least 30 days.

This was a warning that they were placing an embargo on his practice for at least thirty days before starting to send a series of additional RFIs or continuing to hold any investigation in abeyance. That was a warning before sending out a series of Requirements for Information (RFIs) concerning these matters. Such RFIs were required in <u>Gager v. Ladd</u>, 212 F.Supp. 671 (D.D.C. 1963); and they were also required in <u>Goldstein v. Moatz</u>, No. 03-1257 (C.A. 4th April 14, 2004).

He can file any number of patent applications he chooses to file without passing a patent examination or showing that he is of good moral character and repute, not just more than a pre-set number of Continuations or claims as they do in the Final Revised Rules, although that is unconstitutional also. The Defendants/Appellees are restraining by *prior restraint*, not refusal to recognize for practice. They have not refused to recognize him. It would be unconstitutional not to recognize him for *pro se* practice. They simply say that question is "moot."

by *prior restraint* without refusing recognition to practice or suspending or excluding him from practice before the Patent Office" both in the Trademark and Patent Offices under an embargo placed against him on March 4, 1996 when he was registered after passing the examination in 1958. Specifically, he has not been requested to establish rehabilitation from previous criminal conduct because of a felony arrest, probation or disability by passing the examination, as required by the Defendants/Appellees in <u>Gager v. Ladd</u>, 212 F.Supp 671 (D.D.C. 1963), and cited at page 35 of their 11/7/07 Motion to Dismiss. although did so in 1958 and was

registered until his secret removal by a closely guarded internal handwritten note on a letter dated March 4, 1996. The note was secretly placed there surreptitiously to remove him without making him "A person refused recognition to practice or suspended or exluded from practice before the Patent Office," as required by the Rule. There was no notice, a hearing or due process as required under 35 U.S.C. 32, on August 28, 1996. Defendants'/Appellees' Exhbit 8.

As stated on page 34 of their 11/7/07 Dispositive Motions, "To the extent the Court determines that it has jurisdiction over Plaintiff's reinstatement claim under 35 U.S.C. 32 and does not grant Defendants' motion to dismiss the reinstatement claim under Fed. R.Civ. P. 12 (b) (1), then it is appropriate for the Court to dismiss the defendants, Harry I. Moatz and William J. Griffin." They go on to state on page 34 that, "By its plain terms, section 32 of title 35 of the U.S. Code grants the Court [has] jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin. Cf. Gager v. Ladd, 212 F.Supp. 671 (D.D.C. 1963) (discussing authority under 35 U.S.C. 32, to review [of] the "action of the Commissioner of Patents").

There has been no "order recording the Commissioner's action" refusing recognition to practice or suspending him or excluding him from practice before the Patent Office" as provided in that statute. And there has been no such final order against Plaintiff/Appellant under 35 U.S.C. 32, as required, from which he can petition to this Court for review.

And not passing the examination or being re-registered is not relevant to the genuine issue of fact in dispute, which is that he has repeatedly shown that he can successfully pass the qualification test required to be reinstated to "take" the patent office examination free, but he does not need to do so legally, morally or ethically. It is wrong to keep charging him and to keep making him qualify to be reinstated to "take" the examination for Continuing Legal Education purposes (CLE) for a fee. He has been inconsistently charged for doing so, and has been assured

11

by a stipulation of the Defendants/Appellees in item 11 of Defendant Moatz's 10/9/07 in

Defendants' Exhibit 33, that, "Although Plaintiff has not applied to *take* the patent examination

again, I forsee no reason why Mr. Cornish would not be granted the same accommodations

provided to him for the July 2007 examination" (emphasis added). In other words, the

Defendants/Appellees have an inconsistent and unauthorized policy that irreparably injures the

Plaintiff/Appellant in his legal profession and reputation by *prior restraint*, which keeps him

from automatically qualifying to "take" the exam without passing a qualifying examination to

take the examination and paying a fee which he has repeatedly passed and never failed.

There has never been a decision made that he is unqualified to "take" the examination for

CLE purposes, nor has he ever been suspended or excluded from doing so. And he has been

promised he will not have to pay. But he has independently, and by filing this case, made an

application to qualify to "take" the examination without fee. There is nothing in the Patent

Statutes that would authorize a fee to be demanded, or qualification to be repeatedly make to

qualify to take the examination endlessly for someone that has repeatedly been admitted to be

qualified to qualify to take the examination free with reasonable accommodations for age related

disabilities for Continuing Legal Education or other merely academic reasons, and to review and

copy the examination and the answers. It is *de rigueur* to allow him to take the examination free,

without requiring qualification to take and copy the examination and answers for CLE purposes.

Moreover, Plaintiff/Appellant is asking the Court to grant him an injunction against their

*substantive* policy making decisions to refuse an investigation required by law and to make the

investigation moot secretly by strategic mooting without telling Plaintiff/Appellant or publishing

the mooting in the OG. Those are duties that are required by statute, namely, investigating and

charging Plaintiff/Appellant, as required under 35 U.S.C. 32,    The Court should endorse

12

equitable enforcement of the investigation by a temporary injunction, or enforcement from

refusing to give Plaintiff/Appellant a closing letter. Plaintiff has repeatedly asked for Due

Process under 35 U.S.C. 32 and 2 (b) (2) (D), but the Defendants have refused to charge or grant

him closing letter and a full account of the records supporting their decision to hold the

investigation in abeyance whether or not Plaintiff responded to the OED Director's letter of

March 4, 1996, Defendants' Exhibit 8. And the District Court refused to open and complete the

record, as requested both in the pleadings and by FOIA requests that have been ignored. Exhibit

This is a critical fact in dispute because less than the full record might allow a party to withhold

evidence unfavorable to its case. And the APA requires review of the 'whole record,'" *Id.* at 792

(citing 5 U.S.C. 706), not only in the District Court but also in the Court of Appeals, whether it

be in the DC Court of Appeals on an interlocutory appeal, or the CAFC in cases relating to a

final appeal from the District Court in connection with issues of Patent Law.

In this case, there can be no doubt that the Defendants/Appellees relied on various parts

of the studies made for the Final Revised Rules in attempting to abolish the substantive-

procedural distinction under 35 U.S.C. 3 (a) (2) (A); 2 (b) (2); 2 (b) (2) (D), and various parts of

the letters, and inadmissible records from the Bar Counsel in Maryland and elsewhere that it

chose not to rely on in holding the investigation of Plaintiff/Appellant in abeyance since March

4, 1996. *See* 28 U.S.C. 2112 (b) ("The record to be filed in the court of appeals…shall consist of

the order sought to be reviewed or enforced, the findings or *report upon which it is based*, and

the pleadings, evidence, and proceedings before the agency…concerned.") (emphasis added))

FED. R. APP. P. 16. Judge Tatel stated that,"Nor is there any doubt that, as our case law makes

clear, the APA means exactly what it says: an agency must make the "*whole* record" available,

especially where, as here, the undisclosed portions might very well undercut the agency's

13

ultimate decision, *see* Maj. Op. at 14-16." <u>Vermont Yankee Nuclear Power Corp. v. National Res. Def. Council, Inc.</u>, 435 U.S. 519, 524 (1978), may have put to rest the notion that the courts have a continuing 'common-law' authority to impose procedures not required by the Constitution in the areas covered by the APA, but not in this case because this case clearly relates to compelling public purposes demanding strict scrutiny and narrow tailoring under the First Amendment. This Court unlike the legislature must act when it should, whereas a legislature can choose to refrain from acting when it should.

Plaintiff/Appellant is asking the Court to grant him access to the whole administrative record upon which the Final Revised Rules. The same applies to the substantive policy and Rulemaking that secretly removed his name from the register of attorneys, and held the investigation that was never done, while holding it in abeyance for eleven years because there was a lack of substantial or conclusive evidence supporting all three *substantive* Rule and policy changes that was made in those cases. Secretly removing the Plaintiff/Appellant's name, and holding an investigation in abeyance for eleven years was contrary to law because there was a substantial lack of evidence to support the *substantive* Rulemaking involved.

Adopting the Final Revised Rules without adequate Constitutional safeguards or substantial evidence; secretly removing the Plaintiff/Appellant from the roll of attorneys without sufficient Constitutional notice or safeguards or substantial evidence; not investigation and holding the investigation in abeyance for eleven years without Constitutional safeguards or substantial evidence; and allowing the redacting of the record below without supervision or adequate safeguards was contrary to law and not based upon substantial substantive evidence. None of these policy or Rulemaking actions was in accordance with law or based upon substantial evidence.

14

The Final Revised Rules have never been allowed to be enforced. The investigation was never made. The abeyance was only made from March 4th to August 28th 1996. Never making them was not based upon substantial evidence or law. That was contrary to law. There was a lack of substantial evidence to hold the investigation in abeyance because it was required in this case under 35 U.S.C. 32. Judge Tatel emphasized that the whole record was necessary in American Radio Relay League, Inc. v. FCC, 06-1343 (Originating Case No. FCC-71/FR49376 CA DC April 25, 2008). He described the APA's "whole record" requirement in Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788 (D.C. Cir. 1984). There, because "the Department of Health and Human Services had improperly failed to supply the court – and the plaintiffs – with the whole administrative record, we remanded the case to he district court. Id. at 790, 793" he said. Following the standard set forth in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) ("Review is based on the full administrative record that was before the Secretary at the time he made his decision." (emphasis added), we explained that for the court "to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." Boswell Mem'l, 749 F.2d at 792.

That is a material issue in dispute, because Plaintiff has claimed that the statutes under which the PTO operates, i.e., 35 U.S.C. 2, 6 and 32 are unconstitutional facially, but so far the Defendants/Appellees have completely refused to acknowledge that Plaintiff/Appellant has made any such claims because they are unconstitutional as lacking authority under Article II, Section II, and because they can on their face by plain language and substantial substantive procedural obligations be interpreted, and are illegally being interpreted arbitrarily, capriciously and selectively, instead of mandatorily.  They ignore the requirements of Article II, the requirement

15

to make an investigation under the circumstances of this case, and the provisions that prohibit them from substantive rules making or authorizing the same.

They also refuse to acknowledge his application to be reinstated to qualify to "take" the examination in July 2008 with reasonable accommodations accorded heretofore without any fee for CLE purposes, as they admit that they are required by law to do. They have made a new substantive policies and Rules without substantial evidence or proper procedures or in accordance with law, making it impossible to acknowledge that they can or will qualify him endlessly to be reinstated to take the July 2008 examination without charge for CLE purposes with reasonable accommodations for age related disabilities, and to review and make copies of the July or any other examination and answers. In appropriate cases, like this case or controversy, the courts must be vigilant in ensuring that agencies adhere to the plain text of statutes imposing substantive and procedural obligations, particularly in cases like this one lacking adequate safeguards of Constitutional rights.

As Judge Cacheris held in Tafas, Id., 35 U.S.C. 2 (b) (2)'s authority is limited to rules governing the "conduct of proceedings" before the Office, and the USPTO does not have the authority to issue substantive rules, and does not have the authority to make substantive declarations interpreting the Patent Act. See 5 U.S.C. 553, which does not empower the USPTO to promulagate substantive rules, even with notice and comment rulemaking when an agency intends to promulgate substantive rules.

To advance this case to issue, although not inclusive or in order of their importance herein, there are many genuine material issues of fact in dispute that must be decided in this interlocutory appeal to advance this case to issue, and which prevent this case from being dismissed, including, e.g., the controlling questions of law as to whether: 1) the

16

Defendants/Appellees are immune from this <u>Bivens</u> suit for damages and attorneys fees, as

claimed in this case; 2) whether they can decide whether they are absolutely immune; 3) whether

their Final Revised Rules are invalid and void, as decided by Judge Cacheris; 4) whether this

timely filed case under the APA is to be determined under Local Rules LCv 83.7, as argued by

the Defendants/Appellees, but which is contested strongly by the Plaintiff/Appellant, since he

has not been suspended or excluded from practice or refused recognition to practice *pro se*, but

he has been refused "limited recognition" by *prior restraint* to use his name, title, ID, shingle, or

the like by holding himself out as an "attorney" or "attorney, agent or firm" or patent attorney

anywhere by an embargo and the holding of an investigation in abeyance since March 4, 1996;

5) whether the USPTO should be subject a Temporary Restraining Order, Preliminary

Injunction, or some other equitable relief; 6) whether the Defendants/Appellees should be subject

to damages and attorney's fees; 7) whether 35 U.S.C. 2, 6 and 32 are unconstitutionally facially;

4) whether they can make substantive rule changes under the APA, 8) whether their authorizing

statutes are constitutional; 9) whether there is no statutory or regulatory authority to secretly

remove an attorney from the roster of attorneys without notice, due process or a hearing (albeit,

they say there is no statutory or regulatory requirement for OED having to reinstate him); 10)

whether Plaintiff/Appellant has been inactive from the practice of law for more than five years or

could have active without knowing that he was secretly removed; and 11) whether OED

endeavored to ensure that Plaintiff still possessed the requisite qualifications to qualify to take

the patent office examination by offering Plaintiff the opportunity of establishing what he has

already established <u>or</u> taking and passing the examination (albeit, there is a dispute as to whether

OED ever did give him that option and whether they can by a policy of *prior restraint* of his

practice as an attorney, attorney, agent or firm in the Trademark Office and/or the Patent Office

17

make him take the exam practice as an unregistered patent attorney, or hold himself out as an attorney, agent or firm. *See* page 36 of the Defendants/Appellees 11/7/2007 Dispositive Motion, Exhibit .

Plaintiff/Appellant incorrectly blame Plaintiff/Appellant for his removal upon his request. But even without his request he can practice in the Trademark Office and *pro se* in the Patent Office. But he needs to know that they have released him from an embargo of his practice in both the Trademark and Patent Office by giving him a closing letter of an investigation that has been in abeyance since March 4, 1996. If he is secretly removed without his knowledge or consent or any publication of his removal in the OG while he is under an investigation that is being held in abeyance for over 11 years, as alleged by the Plaintiff/Appellant, he can't know when he should or needs to ask for reinstatement to qualify to take the patent office examination. *See* page 35 of the Defendants/Appellees' 11/7/07 Dispositive Motions, Exhibit .

The Dispositive Motions, including the Motion for Summary Judgment must be denied, because the Defendants/Appellees have categorically admitted that there is at least one genuine issue of material fact upon which there is a dispute, and that it is a controlling material question of law that is applicable to the issues in this case. That is the same issue of fact concerning the *prior restraint* of the Plaintiff/Appellant, as well as <u>Tafas</u>, *Id.* That is the genuine issue of fact involving the requirements of the APA, and upon which the experts have heretofore disagreed but that has been now definitely settled. To this end, the Defendants/Appellees argue that there is a genuine issue of material fact under the APA with which the Plaintiff/Appellant and Judge Cacheris cannot legally disagree, although they can and do, namely, that "even if the substantive/procedural distinction matters, the USPTO says it has the authority to promulgate their Final Rules because they are clearly procedural." Page 18, of the 4/1/08 Memorandum

18

Opinion by Judge Cacheris, in Pacer Case 1:07-cv-00846-JCC-TRJ Document 275 Filed 04/01/2008 Pages 1-16.

## ANALYSIS

concerns *prior restraint of* his expressions.  This includes the both *prior restraint* of: 1) his personal expressions, name, trademark, service mark, ID, or shingle, as an unregistered "attorney" or "attorney, agent or firm" in patent and trademark applications that contain allowable claims in condition for allowance or registration, in accordance with law, or their publication as required by statute, e.g., under an 18 months mandate or choke point, or for opposition of a registration; 2) holding himself out as an unregistered "attorney, agent or firm;" 3) *prior restraint* of his "voluntary divisional or other continuation applications, continuation-in-part applications, requests for continued examination (RCE) practice, Continuing Prosecution Applications (CPA), Reissue applications, *inter parte* or *ex parte* Reexaminations, Corrections, Citations, or other business in the PTO or such applications under the present Rules," by which Plaintiff/Appellant was and will be injured irreparably, and by which he has standing to bring this action.  Memorandum Of Law In Support Of Motion For Preliminary Injunction. *Id.*, page 14.

As pointed out on page 1 of Defendants/Appellees 11/7/07 Memorandum and Authorities In Support Of Defendants' Dispositive Motions To Dismiss Or, In The Alternative, For Summary Judgment. Exhibit     , states that, "in connection with the reinstatement claim, Plaintiff asserts that USPTO is preventing him from holding himself out (e.g., advertising)" (albeit, Plaintiff and the District Court are mistaken about a "claim for reinstatement, and, so they also mistakenly contend that he "did not demonstrate to the satisfaction of the OED Director

19

that he still possessed the requisite qualifications to be [to] placed back on the USPTO's register of patent practitioners," or indeed even qualified for "limited recognition" under 37 C.F.R. 10.9.

Thus, they are illegally restraining him in conflict with state law by an embargo against his practice as an unregistered "attorney" or "patent attorney," or attorney, agent or firm" anywhere, and preventing him by *prior restraint* from holding himself out <u>anywhere</u> and expressing or sharing his thought, religious belief and knowledge by publication as a gift to the world that he is an <u>unregistered</u> attorney, thus, they require him, although it is unnecessary, for him to sit for the patent examination even if he desires not to do so. Thus, they threaten mandamus or criminal prosecution under 35 U.S.C. 33 or otherwise by a substantive policy not friendly to attorneys and inventors, as well as agents under <u>Sperry v. Florida</u>, 373 U.S. 379 (1963), although it is merely a voluntary, private academic matter for an attorney to voluntarily qualify to take the examination without any fee for Continuing Legal Education (CLE)], and for a determination of invalidity of the their "Final Revised Rules," which is substantially the same issue in the timely filed complaints on August 22, 2007 and October 9, 2007, and which were decided respectively in <u>Tafas (Troatafyllos Tafas)</u>, 1:07cv846 (JCC), and <u>GSK (Smitkline Beecham Corporation) v. Jon W. Dudas, et al</u>, 1:07cv1008 (JCC), by a Memorandum Order dated 4/1/08 in The District Court for the Eastern District of Virginia, Alexandria Division.

As in those cases and in this case, the Plaintiffs timely brought their well-pled lawsuits under the Fed. R. Civ. P. 12 (b) (1) and 12 (b) (6) pursuant to the Administrative Procedure Act (APA) to permanently enjoin the Defendants Jon W. Dudas and the United States Patent and Trademark Office (collectively, the USPTO) from the enforcing and enacting substantive rules and policies of *prior restraint* in violation of statutory and constitutional rights established by the facts that were pled. As in <u>Tafas/GSK</u>, *Id.*, the Plaintiff/Appellant can prove sets of facts that

20

would support his claims and would entitle him to the same relief as in <u>Tafas GSK</u> *Id.* (albeit, in

<u>Tafas GSK</u>, *Id.*, the Court there has already held that the plaintiffs there did already prove facts

supporting their claims, which are substantially the same as in this case).  As in <u>Smith v. Sydnor</u>,

184 F.3d 356, 361 (4th Cir. 1999), this Court must accept all of the complaint's well-pleaded

allegations and view them in a light most favorable to the Plaintiff/Appellant.


On 9/26/07 Plaintiff/Apellant made a legal claim On 11/7/07 and 1/30/08 the

Defendants/Appellees made Dispositive Motions to Dismiss or For Summary Judgment and For

A Protective Order (partially granted on 2/25/08); and Plaintiff/Appellant made Motions on

11/07/07, 11/9/07, 12/05/07, 12/06/07, 12/17/07, 12/18/07, 12/31/07, 1/4/08, 1/22/08 for

Preliminary Injunction, for limited Admissions, Electronic Filing, Opening the Record for

Discovery, Appointment of Counsel, an Oral  Hearing, Extensions of Time To Reply and To

Oppose, Objecting to Evidence,  and to Delay, Defer, Deny or Not To Grant the Dispositive

Motions, and for Reconsideration of Denials by the District Court Orders of 3/3/08 and 3/24/08,

which were appealed on 4/14/08.  *See* attached Exhibits:

Under Fed. R. Civ. P. 12 (b) (6).  Plaintiff/Appellant's complaint should not be dismissed

"unless it appears certain that [plaintiff] can prove no set of facts that would support his claim

and would entitle him no relief."  <u>Smith v. Sydnor</u>, 184 F.3d 356, 361 (4th Cir. 1999).  He has

proved a set of facts that would support his claim and that would entitle him to relief.

The Court must accept all of his complaint's allegations because they are well pleaded,

and must view them in a light most favorable to the plaintiff, *Id.*  To this end, substantially the

same allegations against substantially the same Defendants, which are incorporated by reference

herein and by judicial notice, have been made and accepted in the District Court of Virginia,

Alexandria Division, and so do not have to be made herein any further.  Those allegations

already resulted in a judicial decision in favor of the plaintiff by judicial order, respectively in

Tafas (Troatafyllos Tafas) v. Jon W. Dudas, et al, Defendants/Appellants herein, 1:07cv846

(JCC), and GSK (Smitkline Beecham Corporation) v. Jon W. Dudas, et al, 1:07cv1008 (JCC),

effective herein by judicial notice, and incorporation by reference from a Memorandum Order

dated 4/1/08 in The District Court for the Eastern District of Virginia, Alexandria Division.

## BACKGROUND

The allegations made have been completely ignored because of mistakes of fact and

failure of the District Court to Grant or reconsider the Denial of Plaintiff/Appellant's Motions to

Dismiss, Deny, or Delay or not to grant Defendants/Appellees dispositive Motions, all of which

could have been clarified in an oral hearing, which was denied.   They failed to believe that he is

not here asking merely for reinstatement to the register of attorneys in the USPTO.

Plaintiff/Appellant is not in this Court making a claim for reinstatement to that Register or Roster

here and now, as alleged, but instead is making a claim, like that in Tafas, Id., for protection

under the First Amendment, Due Process Clause, and under the APA for an injunction against

their Final Revised Rules of November 21, 2007.

Incidentally, Plaintiff/Appellant is also making a claim below for Bivens damages in tort

against Defendants/Appellees, which requires this court to rule on their lack of immunity for his

secret removal from the register of attorneys, and *prior restraint* of his expressions as an

unregistered attorney who is not suspended, excluded or refused recognition to practice in the

Trademark Office (albeit, he has been under an embargo since March 4, 1996 because of an

investigation without a closing letter).   His claim below for liability without immunity is in

connection with his *pro se* practice as an unregistered attorney, where no registration is required.

Likewise, his limited practice is otherwise allowable in his patent applications and Continuations having claims in condition for allowance derived with priority back to the date of the filing of his presently pending patent application under the Defendants/Appellees Final Revised Rules of August 21, 2007! To this end, he claims that the Defendants/Appellees have made concessions that should be guaranteed by equitable relief, regarding his qualification to qualify to *take* the Patent Office examination without cost for Continuing Legal Education purposes, not as a requirement to practice as an unregistered *pro se* attorney without passing the examination, and to practice in the Trademark Office without taking or passing that examination.

Accordingly, it is necessary on that basis for him to make this appeal of the District Court's denial of his Motions to Dismiss, Deny, Delay or not to grant their Dispositive Motions, or to reconsider the denial of his Motions to Dismiss, Deny Delay or not to grant the Defendants/Appellees Dispositive Motions to Dismiss, etc. *See* page 1 of the Defendants/Appellees' 11/7/07 Answer.

In this regard, their Answer states that, "Although Plaintiff's complaint is unclear, it appears that he challenges the actions of the United States Patent and Trademark Office ("USPTO"), Office of Enrollment and Discipline ("OED"), in connection with Plaintiff's request for reinstatement to the USPTO register after a nearly nine-year hiatus. Nothing is said about the Plaintiff/Appellants failure to allege facts that prove his allegations about *prior restraint* by the cited Final Revised Rules or the allegations of Plaintiff/Appellant concerning those cited Final Revised Rules that are substantially the same against substantially the same Defendants, as in Tafas, *Id.*

With all due respect to the renowned expertise of the Court below and the Defendants/Appellees, Plaintiff/Appellants provides quotations that show that even very great

experts can err egregiously by making substantive changes in the law that are not authorized, and

not in accordance with law.  In fact, they are clearly erroneous and clearly arbitrary and

capricious.

First of all, mistrust is always in order when the Final Revised Rules make it necessary to

toss out into the dustbin of history the existing well established, long lasting law and procedure

for protecting the unconditional right of all applicants with global equality to make and publish

in a patent as many clearly allowable claims in accordance with law that are undisputedly in

condition for allowance, in as many Continuation patent applications as desired without *prior*

*restraint*.  The Defendants/Appellees' quoted mistakes and errors are compounded by a quoted

mistake of fact that the Court makes on Pages 1 and 2 of the District Court's Memorandum

Order of 2/25/08.  That Order repeats the Defendants/Appellees mistakes and errors by tainting

the record, and by not mentioning the Final Revised Rules.  He alleges only that he is an

unregistered attorney who is not required to pass the patent examination to for his undisputed

limited practice *pro se* as an attorney for himself and for co-inventors who have given him a

power of attorney, in contrast to Sperry v. Florida, 373 U.S. 379 (1963), or in foreign

applications.  He is he not seeking reinstatement, other than to qualify without cost or fee for

recognition as qualified for reinstatement to take the patent office examination free for

Continuing Leal Education purposes, or other merely academic reasons, not in this case to pass

the examination.

## CONCLUSION

It is hard to imagine a case less amendable to administrative discretion, and more suitable

for a court of general jurisdiction under the APA, than one crafting the substantive rules as a

matter of law for translating the generalities of the First Amendment and the Constitutionality of

24

the core agency statutes into a workable system for determining the parameters of the *prior restraint* of Plaintiff/Appellants pure expressions of his name and profession as an un-registered attorney in Continuations of patent, copyright and trademark publications both in condition for allowance, and slated for publication as a right within 18 months without *prior restraint* in view of the conflict between state and federal law and the balance of powers under the cited Final Revised Rules, and Articles I, II and III.  "The PTO does not dispute that one of the three PTO patent judges who rejected Petitioner's patent was appointed in violation of the Appointments Clause of the Constitution. <u>Translogic</u>,"page 6, *Id.* Petition For Certiorari to the USSC (April 2008).

 *"Attorney, Agent or Firm* – **Cornell D.M. Judge Cornish"** or *"Attorney, Agent or Firm* – **Cornell D.M. Judge Cornish** Down Pat TM SM (c) 2008

          **Respectfully submitted,**

          *Cornell D. M. Judge Cornish*
          Cornell D.M. Judge Cornish DC Bar #366240
          1101 New Hampshire Ave., NW, Suite 301
          Washington, DC 20037
          (202) 429-9705
Date: 5/12/08       cornishj@erols.com

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff/Appellant's Motion and Memorandum in support of his request for reconsideration of the Order of 5/8/08 for purposes of interlocutory appeal have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker and R. Craig Lawrence
[LD NTC GVT ATTY USAO/AUSA]
Assistant United States Attorneys
(USA) Civil and Appellate
555 4TH Street
Washington, DC 20530
(202) 514-7i59 fax (202) 514-8780

on this    *12th*    day of May, 2008.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
**Washington, DC 20037-1502**
**(202) 429-9705**
**cornishj@erols.com**

Date:  *5/12/08*

26

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CORNELL D.M. JUDGE CORNISH, | ) | |
| | ) | |
| Plaintiff *Pro Se* | ) | Case 07-cv-01719 (RWR) |
| v. | ) | |
| | ) | Plaintiff's Motion For |
| | ) | Review and Reconsideration |
| | ) | 5/8/08 Order [56] |
| | ) | of the District Court |
| JON DUDAS, et al. | ) | of the District of Columbia |
| | ) | |
| Defendants/Appellees | ) | |
| | ) | |
| | ) | |

Motion And Memorandum in Support of Interlocutory Review and Reconsideration of Order of 5/8/08 Denying Motion For Injunctive Relief And Refusing to Give An Opinion Under Section 1292 (b) That Such Order Involves A Controlling Question of Law And That An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation And Appeal No. 08-5089

## MOTION AND MEMORANDUM IN SUPPORT OF INTERLOCUTORY REVIEW AND RECONSIDERATION OF ORDER OF 5/8/08

Cornell D. M. Judge Cornish, *Pro Se*
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

R. Craig Lawrence and Mark Nebeker
[LD NTC GVT ATTYUSAO/AUSA]
Assistant United States Attorneys
(USA) Civil And Appellate
555 4th Street
Washington, DC 20530
(202) 514-7159 fax (202) 514-8780

1

U.S. DISTRICT COURT
NANCY MAYER WHITTINGTON, CLERK
MAY 1 2 2008
RECEIVED

## SUMMARY OF ARGUMENT

For purposes of this Motion and Memorandum in Support for an interlocutory appeal of the Order of ⸍8/08 by the District Court denying an Injunctive Relief, including a Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory Judgment and Mandamus.

Plaintiff has met his burden of showing that this is an emergency that meets the necessary criteria, because he has shown clearly the material fact that he just as worthy legally and morally of the denied relief, if not more so. To this end, the relief requested is based upon substantially the same complaints of both Plaintiff/Appellant in this case and <u>Tafas,et al.</u>, i.e., his complaint and the grievance of <u>Tafas et al.</u>, substantially track the same pre-enforcement challenges of the Final Revised Rules of the Respondent. Those challenges brought to the Courtr's attention the dramatic changes in the present law, without authority, or procedural due process, and not under law under the APA. To this end, both challenge the Final Revised Rules identified in 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va. (*see also* substantive Rules 75 and 78 (72 Fed. Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective November 21, 2007) (*See also* 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c)).

It is well to note that this Court and the Court of Appeals are being requested to accept as true the allegations of the Plaintiff/Appellant's Complaint regarding the question of law required to be answered to materially advance the ultimate termination of the litigation in this case, including the question: is the Court prepared to dismiss the claim for a determination of the genuine material dispute of the parties at issue, i.e., are the undisputed <u>substantive</u> changes made in the Final Revised Rules *substantive* changes in the law under the APA? The

2

Defendants/Appellees don't deny that the changes are *substantive,* but they claim the changes are procedural under the APA, and, therefore, allowed by the APA.

The Petitioner's complaint in this case alleges material, objective, non-conclusary facts raising controlling questions of law, namely: 1) Do the Final Revised Rules make arbitrary and capricious, substantive changes in the law? The Petitioner alleges that the changes are arbitrary and capricious, invalid, not in accordance with law, without authority, beyond the scope of authority of the Respondents/Defendants/Appellees. Further, they have been adopted without due process, and the proper procedures required by the APA have not been followed. For example, the record is incomplete.

And Petitioner claims that the Final Revised Rules impose unconstitutional *prior restraints* under the First Amendment. Those restraints are intended to bar Petitioner's expressions, thoughts, ideas, ID and shingle as an "attorney, agent or firm" that is unregistered. They cause interference, and invidious, immoral and well-established symbolic discrimination and harassment against an identifiable group of unregistered attorneys and inventors who have age related disabilities by barring them from filing unlimited Continuation applications and claims without reasonable accommodations, narrow tailoring, or compelling public policy purposes. The reduction of work-load is not a compelling public policy purpose.

The changes are directed against them with intent to cause *irreparable* and permanent harm by permanently barring and suppressing their inventions and publications without equal protections of the law as attorneys, agents and firms whether they are registered or not as a matter of law, in which case the APA authorizes an injunction.

Also, the Defendants/Appellees are not immune from Petitioner's million dollar Bivens tort claim for damages and attorneys fees as a matter of law, as argued by the petitioner. There is

3

a dispute, as to the facts, because the Respondents allegations are consistent with the facts. On the other hand, the Respondents claim that the Final Revised Rules make procedural changes that do not trigger an injunction under the APA, although it is undisputed that the changes admittedly are intended to cause irreparable harm with immunity from liability for damages under state and federal tort law?

Reconsideration and reversal of the Order of 5/8/08 is requested and mandated by law because the facts are undisputed that the controlling, unquestioned, black letter law recognizes that the harm is irreparable to the petitioner because he is diabolically harmed by unnecessary draconian censorship, that permanently *restrains* him from filing and publishing in a patent document unlimited numbers of Continuation and claims, which cannot be compensated by money damages, whether or not he is registered or reinstated. Freedman v. Maryland, 380 U.S. 51 (1964). ("The censor must have the burden of proving ...the expression[is] unprotected by the Constitution." *Id.*, at P. 58).

The harm would the same in both cases, whether he is reinstated or not, and cannot be compensated by money damages because his right of speech, press and religion in his thoughts, ideas, and expressions in more than two Continuations is removed, limited and permanently barred by *prior restraint*. The facts are undisputed, as is alleged by the Petitioner. Reinstatement would not, therefore, be a sufficient legal remedy, contrary to the argument used on page 8 of the Order of 5/8/08 or 2/25/08 to deny the Petitioner's request for an Order of Protection, a Preliminary Injunction or a Permanent Injunction.

The burden of proof is on the Respondents to prove that the expressions are unprotected by the Constitution, and that the Final Revised Rules are narrowly tailored with a compelling public policy purpose, all of which are lacking so as to make obvious the compelling questions

4

of law and the disputes between the parties concerning the irreparable harm and lack of

immunity, as claimed by the Petitioner on one side, versus immunity of the parties on the other

side. The Court is required to determine the questions of law raised and clearly made by

evaluating the application of the APA to the Final Revised Rules, which are referred to by

incorporation by reference and judicial notice. See the Exhibits. *See* also <u>Spriggs v. Diamond

Auto</u> Glass, 156 F.3d 1015, 1016 n.1 (CA 4th Cir. 1999); and <u>Goldstein v. Moatz</u>, a Defendant in

this case, No. 03-1257, Note 2 (CA 4th April 14, 2004), on appeal from the E.D.Va. CA-02-

1734-A.

This appeal under 28 U.S.C. 1292 (a) (1) and 1292 (b) from the 5/8/08 Order [56]

denying injunctive relief prior to ruling on the Defendant/Appellees Motion to dismiss, is

requested to be added by amendment to the appeal of the similar prior Memorandum Order of

2/25/08, for which reconsideration was requested and denied, because the Orders all "involve[ ] a

controlling question of law as to which there is substantial ground for difference of opinion[.]"

and an interlocutory appeal of those orders will obviously "materially advance the ultimate

termination of the litigation[.] The same is true of the Minute Orders of 4/16/08 and 3/24/08

which were appealed on 4/14/08.

Reconsideration and reversal of the 5/8/08 Order is requested because Petitioner has

shown that the Petitioner in this case can prove beyond any doubt a set of facts relating to a

million dollar Bivens tort and Constitutional claims, and other claims made of public record in

support of his claims for irreparable harm upon which a jury could find in his favor. The jury

could find for Petitioner as to genuine issues of material fact relating to lack of immunity under

his <u>Bivens</u> damage claims for irreparable and other damages, and the substantive changes in the

5

Final Revised Rules published in the Federal Register that have been shown to be in dispute on compelling questions of law.

His claims are meritorious without conclusory allegations. They are supported by the facts that entitle him to relief in connection with the controlling questions of law as to which there is substantial ground for difference of opinion.

Those questions have been recognized and successfully raised in the complaint of both the Plaintiff/Appellant Petitioner in this case, as required to advance the case to issue and the ultimate termination of the litigation, and also raised by the inventor patent applicant Tafas et al, in his case that has been cited by Petitioner, both of whom have met their burden of showing the four necessary factors, namely:

1) likelihood of success on the merits (albeit, they have both shown facts meeting their burden of showing that both will or have won on the merits of the same claims of interference and harassment by regulations judicially found to be extraordinary and drastic remedies not supported by substantial evidence under the APA and against the public interest by balancing four factors on a sliding scale and accounting for the inevitable disputes and differences between the parties, based upon the same undisputed facts);

2) that they will be irreparably harmed based on those same facts by unnecessary, unbearable, draconian changes in the law that permanently violate their Constitutional rights with irreparable injuries that cannot be compensated by money damages because they bar speech and expressions of inventors and attorneys in Continuations and claims under the Final Revised Rules, and by the loss of Due Process that will not be compensated as damages under the APA for Continuations and claims beyond a pre-set numerical threshold of Continuations and claims, whether or not inventors and appliants Tafas and/or the Petitioner are placed on the register,

whether or not they are reinstated, and whether or not they pass the patent examination – most

patent applicants are not registered, and about 31 attorneys, some of them inventors who

advertise in patents as inventors or attorneys, and some who do not, have joined in the cause of

inventor Tafas; and his case has been appealed to the Court of Appeals of the Federal Circuit by

the losing side, i.e., the Government, including the same Defendants as in this case;

    3)  an injunction will not and has not substantially injured other interested parties,

including the Government because the Final Revised Rules have not been put into effect, and

because they have been declared invalid and void; further, the Government's has not disputed the

Petitioner's answer to the compelling questions raised and shown under the required burden of

proof by the Petitioner and/or Tafas, and they have  not met their burden under the required

balance of the four factors; they have simply argued that the APA may support their cause on

appeal, (albeit, it is claimed that Petitioner has not stated a cause of action under Fed. R. Civ. P.

12 (b) (6)  on page 24 of the 11/7/07 Motions to Dismiss, which is obviously incorrect based

upon the facts presented in Petitioner's complaint, because these are the same facts presented in

Tafas's complaint, as shown by incorporation by reference and judicial notice); they also allege

that the Petitioner in this case has not met his burden of showing jurisdiction under Rule 12 (b)

(1) in their 11/7/07 Motion to Dismiss, page 34, but obviously they didn't claim lack of

jurisdiction in the Tafas, *Id.*; and the Court in Va., their Court of Appeals, this Court, and the DC

Court of Appeals have all assumed jurisdiction under Fed. Rule 12 (b) (1), under substantially

the same facts in Goldstein v. Harry I. Moatz, et al., No. 03-1257, CA 4th (CA-02-1734-A,

E.D.Va.), and also under 28 U.S.C. 1291 and 2679(d)(1) and Fed. Rule 12 (b)(6),  including

jurisdiction against the defendants as in this case and a similarly situated investigator, and this

Court in fact has said in its Order of 5/8/08 that this Petitioner does not need to seek permission

to file an appeal under 28 U.S.C. 1292 (a) (1), not that he lacks strong support for his cause of

action (albeit, there has been a lack of objections from those who have not favored the Final

Revised Rules and the Petitioner's complaint and grievance in this case, as shown by publically

tracking these cases on Pacer to follow the challenges of the Final Revised Rules in 1:07cv846

(JCC) and 1:07cv1008 (JCC) in the E.Distr. Va. (*see* also substantive Rules 75 and 78 (72 Fed.

Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective

November 21, 2007) (*See* also 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c));

4) the public interest, is substantially the same in this case as in the challenge made in

Tafas, et al, *Id.*, against substantially the same Defendants for substantially the same relief,

except that in this case there have been additional FOIA requests with claims for Bivens

damages and attorney's fees against the request for dismissal against defendants Moatz and

Griffin, and the defense of "immunity" under DC tort law in this case against the Defendants,

inlcuding Harry I. Moatz and his investigator Griffin.  Immunity was similarly denied in

Goldstein, *Id.  See* also Page 34 of Defendants/Appellees 11/7/07 Motion To Dismiss.

## ANALYSIS

The Government at its inception 1776, based on the experience of its predecessor in

England, made it mandatory that the Register of Copyrights, the Respondents

Defendants/Appellees Dudas, the Commissioner of Patents and Trademarks, the U.S. Patent and

Trademark Office, the Heads of OED and their named investigator, deliberately continue to

follow the well-established, long-lasting bargain with the Plaintiff/Appellant, namely:

I.      That the Petitioner in this case gave up his right to secrecy in his patent

publications and unlimited numbers of Continuations and claims before

8

publications and after publication that are in condition for allowance under law in his patent applications, including his presently pending patent application; and

II.    The Defendants/Appellant in a quid pro quo, and by Constitutional mandate, assumed and undertook a sacred, binding, compelling and invariable duty to make no law respecting the establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances, thereby to promote the Progress of Science and useful arts by securing for limited Times to Authors and Inventors the …right to their respective Writings and Discoveries by publication of their applications under the First Amendment and Article I, Section 8, paragraph 8. Now, however, all of this is retroactively reversed, abolished and violated by the Final Revised Rules.

The success of the patent and copyright systems is based upon the Constitutional mandate to the Government to publish ideas, thoughts, expressions writings and inventions in patent and copyrighted patent publications at the expense of the *applicants* for adequate consideration with the imprimatur of the government for payment of the fees for a required examination for publication before or after publication. It is the bargain to exchange the Constitutional right of secrecy for the publication with the Government's imprimatur of examination, independently of a flexible provision for a specific term in which to exclude others from making or using the invention or copying the writing.  The mandate to publish is not flexible, or optional.  The time of publication may be changed from its current 18 months from filing, but the fact of publication cannot be changed or barred by the Final Revised Rules.  Publication or unlimited filing of applications and claims cannot be barred by *prior restraint* without narrow tailoring and a

9

compelling public purpose allowed by the First Amendment. Publication of applications in condition for allowance is mandatory upon the payment of the required fee. The burden is on the Respondents to show by a preponderance of the evidence that the expression in the application is unprotected by the Constitution. Freedman, P 58, *Id.*

A noncriminal process requiring prior submission of a patent application to a censor avoids constitutional invalidity only with procedural safeguards designed to eliminate dangers of censorship. Freedman, Pp 58-60, *Id.* And there are no procedural safeguards that are properly and narrowly designed for any compelling public purpose disclosed by the Respondents. The bar is absolute and permanent with irreparable damages that cannot be compensated by money damages. Any restraint prior to judicial review must be limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure, as a matter of law. Freedman, P. 59, *Id.*

As discussed in Goldstein, *Id.*, "Under the OED's current system, nothing but good conscience would prevent the OED investigator from requiring responses to an unlimited and burdensome array of questions by noon tomorrow and supporting charges against an attorney who fails to comply" (albeit, the investigators in this case of the Responds). Likewise, an examiner can equally act as the censor to whom submission prior to publication is required. "Unfortunately, the only available limitation in this system is a private lawsuit" in which, as in this case, the unregistered attorney under the mandate of Congress under the attorney fee-shifting statutes, may seek Bivens damages and attorneys fees. *See* Goldstein, *Id.*

('[T]herefore, it is all the more important that the Defendants not be accorded absolute[ly] immunity." Goldstein, *Id.* And it is all the more important that this case not be dismissed, that the Respondents' Motion to dismiss and their other Dispository Motion be

10

denied, that Petitioner's Motion for reconsideration and reversal of the Order of 5/8/08 be granted, and that Petitioner's Motion for equitable relief be granted.

The publication is the key provision that is the most important part of the bargain, as attested to by the change of the term for publishing of copyright and patent applications by practical considerations. A right of publication is mandated in Statutory Invention Disclosures, and by 18-month pre-patent publications. Publication is also mandated in applications in condition for allowance. The terms of both the publication and the exclusive right to exclude others from making, using or copying, can be advanced, as it was in the case of copyrights, or reduced by Congress as it has been from time to time, e.g. when the term of patents was shortened to a 20-year term from filing rather than a flat 17 years.

Shortening or lengthening the term of the patent or the time of the publication of the application from 18 months is an alternate way under the APA procedures that could be addressed but was not narrowly and properly addressed by the Patent Office's desire to avoid the non-compelling problems of workload that the Defendants/Appellees complain about as the reason for their Final Revised Rules. But this and other alternatives were never investigated under the procedures required by the APA, and this case should be remanded, and the 5/8/08 Order should be vacated with a demand for those procedures to be completed, and substantial evidence, so far lacking, to be obtained for any changes that are proposed by publication to be made. Those mandated APA procedures and conditions are not optional.

The Order of 5/8/08 must be reconsidered and reversed in view of the arbitrary and capricious lack of procedural due process and substantial evidence in support of the Final Revised Rules. That deficit is fatal to the Defendants/Appellees Motion to Dismiss in this case, particularly in view of the District Court's <u>denial</u> of the Petitioner's Motions to open up and

11

complete the record and discovery, for the appointment of counsel, and for approval of electronic filing, all of which had merit, but which were denied for lack of merit.

The District Court and the Court of Appeals must have the entire and full record in order to properly decide the controlling questions of law and to advance this case to issue for an award of damages and attorneys fees in regard to these due process and APA considerations. The District Court must certify in this case the "controlling question of law... to materially advance the ultimate termination of the litigation" under 28 U.S.C. 1292 (b).

The text of 5 APA 553 requires that an agency provide public notice and a comment period before the agency issues the "Final Revised Rules," APA, *Id.* The notice must include "the terms or substance of the proposed rule or a description of the subjects and issues involved." The controlling questions of the "rights to the bargain struck" and the "alternative solutions" provided by changing the terms of the publication and exclusive right to exclude of copy, respectively, were not made or provided and there was a lack of substantial evidence in support of the options chosen. After issuing a notice and allowing time for interested persons to comment, the agency must issue a "concise general statement" of the rule's "basis and purpose" along with the final rule. Section 553 (c ).

Beginning with the case of Portland Cement Ass'n v. Ruckelshus, 486 F.2d 375, 392-93 (D.C.Cir. 1973), several relevant procedural requirements were recognized – which this circuit has required agencies to disclose, in time to allow for meaningful comment, technical data or studies on which they relied in formulating proposed rules. *See* also Chamber of Commerce v. SEC, 443 F.3d 890, 899 (D.C.Cir. 2006); Connecticut Light & Power Co. v. Nuclear Regulatory Comm'm, 673 F.2d 525, 530-31 & n. 6 (D.C.Cir. 1982); and American Radio Relay League,

12

Incorporated v. Federal Communications Commission And the United States Of America, No 06-1343 (CA DC April 25, 2008).

This is hardly a novel conclusion. In previous informal rulemaking cases, the court ordered additional agency disclosures to facilitate meaningful arbitrary and capricious review of agency action. In Kent County Delaware Levy Court v. EPA, 963 F.2d 391 (D.C.Cir. 1992), the court directed the agency to supplement the administrative record with internal agency documents that "relate[d] to the position of the agency's own experts on [a] question central to the[e] case" *Id.,* at 396. It was explained that, 'To deny their relevance, would be inconsistent with rational decision-making by an administrative agency." *Id.* Indeed, in *Kent County* the Court ordered the agency to supplement the administrative record even though there was no indication "that the agency [had] purposefully excluded the documents." 963 F.2d at 396.

Here, by contrast, there is little doubt that the Defendants deliberately attempted to exclude from the record evidence adverse to its position, and even kept it secret for eleven years. That is the kind of circumstance in which the court in this circuit "[has] recognized that supplementing the administrative record might be proper." *Id.* (internal quotation marks omitted); *see* Natural Resources Def. Council v. Train, 519 F.2d 287 292 (D.C.Cir. 1975), (remanding to enable plaintiffs "to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld") 28 U.S.C. 2112(b) ("If there is omitted from the record any portion of the proceedings before the agency... which the court subsequently determines to be proper for it to consider to enable it to review or enforce the order in question[,] the court may direct that such additional portion of the proceedings be filed as a supplement to the record."). This is not optional, it is mandatory, and should be required in this case.

13

There is no mutual agreement of the parties that the parties have fully reviewed the complete un-redacted record, in which case, it is natural to assume that the omitted portions do materially affect the Petitioner's case, and should not be excluded. The record was in fact under seal, the seal was removed after redacting, and the Respondents were freed from responding to the Petitioner's Motions. It would be fundamentally "unfair" to omit the records ommitted, particularly where, as here, the Petitioner has been unfairly accused of bizarre behavior and discriminated against because he is a *pro se* litigant who asked for and was denied appointment of counsel, electronic filing, opening the record, and discovery because his Motions lacked merit. Also, he was secretly removed from the register without notice, a hearing or due process as required under 35 U.S.C. 32, and no adequate safeguards for his rights. Also, the record has been sealed and perhaps partially unsealed with redactions to contain inadmissible evidence objected to and for which an exception was duly made.

According to the legal standard for a Motion for Summary Judgment, it is unfair to one party to present sealed documents, followed by redaction and a Motion to Dismiss, and then by an Order of Protection that protects the Respondents, whereby the motion to dismiss may be treated as one for summary judgment. *See* page 28 of the 11/7/07 Motion to Dismiss, citing Fed. R. Civ. P. 56 and Americable Int'l Inc. v. Dep't of the Navy, 129 F.3d 1271, 1274 n.5 (D.C. Cir. 1997); Marshall County Health Care Auth., 988 F.2d at 127; and Judical Watch, Inc. v. Clinton, 880 F.Supp. 1, 7 (D.C. Cir.1995), aff'd 6 F.3d 1232 (D.C. Cir. 1996).

The burden did not shift to the Petitioner because of the absence of a genuine issue or material fact in dispute. The "Reinstatement claim" repeatedly made by the Respondents is a fact in dispute. It is a phantom claim that does not exist. The most that can be said for it is that the Petitioner seeks reinstatement of the promise to hold an investigation in abeyance only until

14

the Director of OED said the abeyance would be ended. *See* the Director of OED's letters of March 4, 1996 (Exhibit 8), and June 15, 2000 (Exhibit 33).

Also, appropriate, an injunction is requested against refusing to investigate as required by law under 35 U.S.C. 32 or to give Petitioner a closing letter, and against refusing to allow Petitioner to be reinstated to "take" the examination before he gets his license without paying any fees, i.e., before a license can even be entered into the system.

The injunctions requested are consistent with the long well-recognized and long-established policy of the Government represented by the Defendants/Appellees, to refrain from *prior restraint* and censorship of not only the number, extent and the sequencing of patent publications in Continuations and other applications, and also the original copyrightable expressions, thoughts, ideas, text and conventional captions and headings in otherwise allowable patent applications, as well as in pre-patent 18-month required publications, showing an unregistered attorney's name, title, privilege ID and shingle as an "attorney, agent or firm."

Thus, jurisdiction is sought of this interlocutory appeal under the APA and 28 U.S.C. 1291, which provides for jurisdiction in the Court of Appeals "of all final decisions of the district courts of the United States, including those not requiring resolution of a substantial question of patent law." This appeal is under the provisions of the APA, as in the below-cited case of Tafas, op cit. Both cases involve substantially the same issues as in this case that relate to APA provisions that provide for equitable relief to protect the Plaintiff/Appellant's ability to publish his expressions, thoughts and ideas with the imprimatur of the PTO and to hold himself out as an attorney elsewhere, which claims are neither created by federal patent law nor require resolution of a substantial question of patent law. Indeed, resolution of this case requires resolution of questions under the First, Fourth, Fifth, and Tenth Amendments, including a Bivens action for

15

damages attorneys fees, and violation of constitutional rights to free speech, press, religion, petition for grievances, and due process; and Articles II and IV in the District Court, involving privileges and immunities and unconstitutional authorization of Administrative Law Judges under regulations governing disciplinary procedures, which provide for discovery *only* after the initiation of disciplinary proceedings, and then *only* under the supervision of an ALJ.

Defendants/Appellees concede that, as charges have not been filed, there is no vehicle by which Plaintiff/Appellant could challenge the OED Director's secret interference with his client secrets, which were brought to light in her letter of March 4, 1996 (Defendants' Exhibit 8); her cover-up of constitutional violations of due process in her secret handwritten note thereon dated August 28, 1996, or the secret interference with his client's secrets by the OED Director's letter of June 15, 2000 (Defendants' Exhibit 33). *See* Goldstein v. Moatz, a Defendant in this case, No. 03-1257 (CA 4th April 14, 2004), on appeal from the E.D.Va. CA-02-1734-A.

The First Amendment protection of Plaintiff/Appellants right to petition for redress of his grievances does not arise under Federal Patent Law but, for example, depends substantially on his Bivens claim for attorney's fees under Congress's mandate to provide him with relief as a private attorney general, and for his causes of action for Bivens tortuous interference created by the federal courts and by state common law, respectively, i.e., not by jurisdiction under federal patent, but under 28 U.S.C. 1291 for "violation of his constitutional rights to free speech and due process through issuance of an RFI on March 4, 1996 (Defendants/Appellees Exibit 8).

His claim for damages and attorney's fees by attorney fee shifting statutes require proof of two elements, namely: (1) a violation of constitutional rights; (2) by agents acting under color of federal law without absolute or qualified immunity. *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971). And the elements of the tortious

16

interference claims are: (1) existence of a business relationship (albeit, it was with a co-inventor),
(2) Defendants/Appellants' knowledge of that relationship (albeit, they sent a Request For
Information (RFI) to Plaintiff/Applicant on March 4, 1996 in Defendants' Exhibit 8 without any
foreseeable safeguard for possible self-incrimination or an adequate opportunity to obtain the
advice of a lawyer, and they secretly wrote to his co-inventor on June 15, 2000 in
Defendants/Appellees' Exhibit 33, (3) intentional interference (albeit, they held an investigation
in abeyance from March 4, 1996 until the present and secretly removed his name from the
USPTO register, and caused a termination of the relationship), and (4) resulting damage (albeit,
this includes irreparable damage by permanent loss and *prior restraint* of his livelihood,
reputation and the constitutional safeguards of his constitutional rights, including his right to
freedom from *prior restraint* to hold himself out as an attorney). *See* Goldstein v. Moatz, No.
03-1257 (C.A. 4th April 14, 2004), which like this case for substantially the same cause of action
involved a claim against he USPTO, the Commissioner, the head of OED and his investigator, it
being noted that the investigator in this case has a different name. *See* also Chaves v. Johnson,
230 Va. 112, 120 (1985).

Specific irreparable harm that resulted included the loss of Constitutional rights by
refusal of limited recognition of his pre-enforcement grievance against the Government's Final
Revised Rules that were to be effective November 21 2007. Those Rules have been held to
arbitrarily and capriciously limit the rights of attorneys and inventors both (albeit,
Plaintiff/Appellant also claims censorship by the permanent ban of *prior restraint* of his
expressions, ideas, title, ID and captions), in an unlimited number of pre-examination patent
publications, an unlimited number of post-publication and non-published Continuations and
claims, and in the post examination patent publications of his currently pending  patent

17

application before and after examination to determine that the Specification and Claims are in condition for allowance. As such, this grievance was timely initiated on September 26, 2007 in a well-pled complaint in the DC District Court as a pre-enforcement challenge of non-friendly attorney and *pro se, substantive* "Final Revised Rules" The legal claim was timely patterned after one suit and after another suit in the Eastern District of Virginia based upon substantially the same issues against substantially the same Defendants.

His grievance substantially tracked the challenge of the same Final Revised Rules challenged in 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va. (*see* also substantive Rules 75 and 78 (72 Fed. Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective November 21, 2007) (*See* also 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c)). Substantially the same challenge was made in this case against substantially same Defendants for substantially the same relief, except for an additional FOIA request with claims for <u>Bivens</u> damages and attorney's fees against the defense of "immunity" under DC and federal tort law in this case by the Defendants Respondents, including Moatz and Griffin. The attorneys for the Respondents, Defendants Moatz and Griffin have asked to be removed because of their immunity. *See* Page 34 of Defendants/Appellees 11/7/07 Motion To Dismiss Listed in the Exhibits.

The Virginia petition for redress was originally made on Aug. 22, 2007 in 1:07cv846 (JCC) in E.Dist. Va.) (Amended Complaint on September 7, 2007). (seeking preliminary and permanent injunctions prohibiting the USPTO from implementing the Final Rules and a declaratory judgment that the Final Rules violate the Constitution, the Patent Act, the APA, and the Regulatory Fexibility Act ("RFA") (and on October 9, 2007 by GSK in 17cv1008 (JCC) in the E.Dist. Va., which moved for a Temporary Restraining Order and preliminary injunction

18

enjoining the implementation of the Final Rules, and which the Court granted on October 31,

2007), and the Final Rules were judicially declared to be invalid on 4/1/08 in a case in Eastern

District of Va. 1:07-cv-00846-JC-TRJ Tafas v. Dudas et al). Plaintiff/Appellant's challenge in

this case challenged the Constitutionality of 35 U.S.C 2, 6 and 32, and both the general and

specific policies of *prior restraint* established arbitrarily and capriciously without authority and

not in accordance with law by the Defendants/Appellees. Exhibit 1, Complaint. The Tafas and

SKB cases *Id.*, were appealed by the Defendants/Appellees in this case to the CAFC on 5/07/08,

without Defendants Moatz and Griffin, in which approximately 31 separately interested parties

have been served. And Plaintiff/Appellant in this case has made a motion to stay the

proceedings in the District Court in this case pending this appeal.

Plaintiff/Appellant's Petition for redress of his grievance, *inter alia,* meets the

requirements of a Freedom of Information Act request under. 5 USC 552 and the copyright act of

35 U.S.C. 271 (a), etc. To this end, any person has the right to give up his right to secrecy in a

bargained for request for access to his own filings, and an imprimatur of the federal agency

patent records and information for publication and reproduction with permission or fair use if not

determined within a pre-set period to be restricted as secret under the Atomic Energy Act or the

Patent Act, and to release it to the Copyright Office for access to the public as an original,

independent creation subject to fair use and ultimate dedication to the public domain by

publication in a patent and trademark publication, both in 18 months from submission, and upon

examination when the claims are in condition for allowance under law. To this end, the

Plaintiff/Appellant is asking the Court for an injunction and Bivens damages to prevent the

Government, including Congress, at the direction of the Constitution, to make no law "abridging

the freedom of speech, or of the press; or the right of the people to petition the government and

19

the Courts for a redress of grievances," and not to ban his speech and expressions by censoring

patent applications or arbitrarily and capriciously editing them or secretly removing attorneys'

names from the register of attorneys and refusing to make an investigation illegally held in

abeyance for 11 years without a closing letter by an unwritten policy of identity theft to suppress

and remove his name, IDs, privileges and lawyer's identification from the public domain  as an

attorney, agent or firm without notice, a hearing or due process.  As Professor Sarnoff stated on

page 5 of his *Amicus* Brief in Appeal No. 2007-1130 (Serial No. 08/833,892) on April 7, 2008,

In re Bilski and Warsaw, the "control" of the publication and ultimate dedication of a patent are

unique in both intellectual and real property law." It is the Government's promise of publication

without *prior restraint* for the bargained for release of secrecy and ultimate dedication to the

public that make the shield and sword of the First Amendment so compelling in the field of

intellectual property.   Ideas, thoughts, IDs, names, titles, captions and privileges are too

important to the advancement of knowledge to permit them to be under the arbitrary and

capricious "control" and *prior restraint* of the government. *See* Freedman v. Maryland, 380 U.S.

51 (1065), citing Bantam Books, Inc. v. Sullivan, 373 U.S. 58, 70 P. 57 (1963).

The Defendants/Appellees depend upon deliberately skewed, formally secret, suppressed

and inadmissible evidence that is in dispute and misconstrued.  Plaintiff/Appellant's well-pled

complaint under Fed. R. P. 12 (b) (1) and 12 (b) (6) requires the inclusion of Defendant Moatz

and Griffin and their lack of immunity for Bivens tort damages and attorney's fees, when viewed

most favorably to the claims of the Plaintiff/Appellant, who did not move for Dismissal or

Summary Judgment. The Defendants/Appellees' reacted to this suit with trivia, irrelevance,

immateriality, obstruction of justice, inadmissible evidence, and by tainting the evidence with

20

mistakes of fact, and by Moving to Dismiss, or by Summary Judgment, an Order of Protection and sealing of the procedures, which they were ordered to redact.

They also unjustifiably accused Plaintiff/Appellant of bizarre behavior and complained about his request for access to the appointment of a back-up lawyer, lawyer assistance or Lawyer Counseling under the Local Rules. They have refused to do what they promised to do by giving Plaintiff/Appellant a trial on a investigation that has been pending since March 4, 1996, or to do what is required by law under 35 U.S.C. 32. So Plaintiff/Appellallant has sued for equitable relief, attorney's fees and <u>Bivens</u> damages, *inter alia* for the tort of interference with his registration and business relationship with his co-inventor and *prior restraint* of his holding himself out as an attorney, agent or firm.

To this end, they have interfered with his rights unmercifully by *prior restraint,* threats of criminal prosecution, and by interference with his recognition as an attorney by identity theft, They have interfered with his right to a judicial hearing and a trial of the substantial, *substantive* changes they proposed to make in well-established, and long-lasting procedures for allowing examination of Continuations of Plaintiff's currently pending patent application and claims, and other business in the USPTO, by attempting to enforce Final Revised Rules effective on November 21, 2007, that are invalid and void, and not otherwise in accordance with law. *See* Tafas. *Id.* They have adopted as a defense a creative interpretation and irrational imagination to reverse Freedom of Information procedures protected by the First amendment under the guise of *prior restraint* that essentially limits free speech, press, religion, and petition rights under the First Amendment. The claim of this case, *inter alia,* include claims for equitable relief under the APA, and Due Process rights for non-registered *pro se* and registered attorneys to file unlimited numbers of Continuations, RCEs and other applications and claims even before they are filed. In

21

an audacious, arbitrary and capricious substantive rulemaking exercise without authority of 35 U.S.C. 2 (b) (2) in accordance with law under the APA and the mandate of Congress, they have tried to negate reverse attorney's fees for *pro se* attorneys acting as private attorney generals. *See* Tafas, and Goldstein, *Id.*

It appears certain that there is merit and likelihood of success for Plaintiff/Appellant's case, if this Court should reverse its Denials of Plaintiff/Appellant's Motions (albeit, there has been and will be permanent irreparable harm to the Plaintiff/Appellant if this Court does not reverse its Denials of all his Motions that have merit, including, *inter alia,* his Motions not to grant Respondents Dispositive Motions, his Motion for equitable relief, and his requests for refusal to remove Defendants Moatz and Griffin and not to grant them immunity for Bivens damages and attorney's fees. The Court should Grant a Temporary Restraining Order or Preliminary and Permanent Injunction, and/or Grant his Motions to Delay, Defer, Dismiss, Deny or Not to Grant Defendants/Appellees Dispositive Motions. The Court as well should grant his other miscellaneous Motions, such as, for an oral argument, opening the record, objection to the admission of irrelevant, immaterial and inadmissible evidence, and reverse the grant of an Order of Protection that tainted the proceedings. The Court should reverse the denial of permission for electronic filing, appointment of counsel and/or the use of the lawyers counseling service. None of the requested Motions in any way would harm the Defendants/Appellees or the public, or in any way prejudice them.

## ARGUMENT

On September 26, 2007, Plaintiff/Appellant timely filed a complaint in the DC District Court against Final Revised Rules, effective November 21, 2007, referred to hereinafter in detail,

and for redress of his grievances against the government by legal claims, including a claim for

Bivens damages, equitable relief, attorneys fees, and for Constitutional violations of his civil and

other rights, including redress against facially unconstitutional statutes, i.e., 35 U.S.C. 2, 6 and

32 that pre-empt the rights reserved to the states, and his privileges and immunities, and take his

property without due process of law, and without authorization  under Art. II, Section 2, cl. 2,

and Art. IV Sections 1 and 2, and the Tenth amendment by *prior restraint* of his right to hold

himself out as an attorney, agent or firm in the Trademark Office, the Patent Office and in the

states where he is licensed to practice, and by subjecting him to discipline under 35 U.S.C. 2 and

32, and criminal punishment and threats of punishments and qui tam damages and complaints

under 35 U.S.C. 33 and/or 35 U.S.C. 292 for false marking or by so holding himself out as an

attorney, agent or firm in the Trademark Office, or elsewhere or for *pro se* practice for live, dead,

hostile and others co-inventors with a power of attorney, letters of administration, or assignment,

and/or for foreign clients who designate the U.S. for filing of their PCT applications under treaty.

His petition for redress includes a pre-enforcement challenge of non-friendly. attorney

and *pro se*, *substantive prior restraint* under "Final Revised Rules," which was substantially the

same as the challenges made for redress against pre-enforcement of the same Final Revised

Rules in 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va. (*see also substantive* Rules)

These new Final Rules (Final Revised Rules) and policies arbitrarily, capriciously, and

illegally without Due Process under the APA and the First Amendment, as well as other

provisions of the Constitution, or otherwise, egregiously removed, suppressed, barred or

otherwise interfered or limited the well-established and long-lasting statutory and Constitutional

rights of property, privilege, privacy, trade secrets, civil rights, trademarks, copyrights and the

guarantee of publication of pure expressions, thoughts, ideas, marks, IDs, lawyers' shingles,

23

trademarks and copyrights by *prior restraint*. They imposed odious, invidious, noxious,

immoral, inherently wrong, destructive, illegal and unconstitutional results by restraining,

suppressing, barring, limiting, coercing, threatening, censoring and otherwise interfering and by

*prior restraint* of Plaintiff/Appellant's expressions, ideas, thoughts and religion in holding

himself out with his copyrighted trademark, service mark and ID in the USPTO either/or as a

registered or non-registered attorney who can perform marriage ceremonies in New York State,

and practice as an attorney, agent or firm in his patent and trademark applications

S.N.29/273,235, filed 2/26/07, and S.N. 77/247,319, filed 8/4/07, or otherwise  (albeit,

Plaintiff/Appellant has been irreparably injured just as much as <u>Tafas</u>, *Id.*; he has as much

standing to bring this action as <u>Tafas, *Id.*</u>, and he is entitled to as much relief as <u>Tafas,</u> *Id*, as

pointed out in his Memorandum Of Law In Support Of Motion For Preliminary Injunction, pages

20 and 21 of Exhibit).

**Legal Standard For Review**

Referring to the "Legal Standard for the Defendants/Appellees' Dispositive Motions,

including their Motion for Summary Judgment, and for Plaintiff/Appellant's Motion to Deny,

Defer, Not to Grant, and to reconsider.  Plaintiff/Appellant's well pled complaint states a cause

of action. But this Court is not limited to the allegations contained in the complaint. *See* <u>Bell</u>

<u>Atlantic v. Twombly</u>, _____ U.S. _____ (127 S.Ct. 1955 (2007) in which the Supreme Court

recently refocused the analysis of when a plaintiff has alleged facts that can withstand a motion

to dismiss and clarified the standards for evaluating whether a complaint satisfies the general

rules of pleadings pursuant to Fed. R. Civ. P. 8. And *see* Pitney <u>Bowes, Inc.v. United States</u>

<u>Postal Serv.</u>, 27 F.Supp.2d 15, 18 (D.D.C. 1988), (citing <u>Hhri v. United States</u>, 782 F.2d 227,

241 (D.C. Cir. 1986). "In evaluating a motion to dismiss pursuant to Rule 12 (b) (6)," the Court

24

must consider the claims and complaint, which includes facts alleged in the complaint, and "any

documents either attached to or incorporated in the complaint," including his Memorandum in

Support, and "matters of which the court may take judicial notice and matters of public record,"

Page 28 of Defendants/Appellees 11/7/07 Dispositive Motions, Exhibit    . *See* Tafas, *Id.*, Case

1:07-dv-00848-JCC-TRJ District Court, E. Dist. Va., Alexandria Div., via Pacer electronic filing.

   *"Attorney, Agent or Firm* – **Cornell D.M. Judge Cornish"** or *"Attorney, Agent or*

*Firm* – **Cornell D.M. Judge Cornish Down Pat TM SM (c) 2008**

                                        **Respectfully submitted,**

                                        *Cornell D. M. Judge Cornish*
                                        Cornell D.M. Judge Cornish DC Bar #366240
                                        1101 New Hampshire Ave., NW, Suite 301
                                        Washington, DC 20037
                                        (202) 429-9705
Date:    5/12/08                        cornishj@erols.com

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that service of the foregoing Plaintiff/Appellant's Motion and**

**Memorandum in support of his request for reconsideration of the Order of 5/8/08 for**

**purposes of interlocutory appeal have been served by hand by delivering a copy thereof to:**

W. Mark Nebeker and R. Craig Lawrence
[LD NTC GVT ATTY USAO/AUSA]
Assistant United States Attorneys
(USA) Civil and Appellate
555 4TH Street
Washington, DC 20530
(202) 514-7i59 fax (202) 514-8780

on this    *12th*    day of May, 2008.

Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
**Washington, DC 20037-1502**
**(202) 429-9705**
**cornishj@erols.com**

Date:   *5/12/08*

26

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
    )
        Plaintiff *Pro Se*    )    Case 07-cv-01719 (RWR)
    v.    )
    )    Plaintiff's Motion For
    )    Review and Reconsideration
    )    5/8/08 Order [56]
    )    of the District Court
JON DUDAS, et al.    )    of the District of Columbia
    )
    Defendants/Appellees    )
    )
    )

## ORDER

UPON CONSIDERATION of Plaintiff's Motion to Reconsider and Reverse the Order of

5/8/08, and the entire record herein, it is this _____ day of _____, 2008, hereby

ORDERED that Plaintiff's Motion should be and it is hereby Granted.

_____

**UNITED STATES DISTRICT JUDGE**

W. Mark Nebeker, Esq.
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

Cornell D.M. Judge Cornish
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

1