## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CORNELL D.M. JUDGE CORNISH,** | ) | |
| | ) | |
| **Plaintiff *Pro Se*** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case 1:07cv01719 (RWR)** |
| **JON DUDAS, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

### Motion For A Continuance, And In Response To And In Opposition To The Minute Order Of 6/11/08

This is a Motion for a Continuance. This Motion is in Response to, and in Opposition to the Minute Order of 6/11/08 that prevent the Plaintiff from gaining any kind of Preliminary Injunction or Restraining Order Plaintiff's against the irreparable harm caused by Defendants' requirement that Plaintiff "take" the patent registration examination. To this end, Plaintiff requests that the requested Continuance of the subject case last only until Defendants file their appeal brief in 08-5089 so as to give Plaintiff an opportunity to face his opponent and reply thereto for the first time since the Court allowed Defendants the immunity of a response.

The Court found on 2/25/08 that "OED informed Cornish that because it had been over five years since he had been registered, he must <u>take</u> the patent registration examination..." (emphasis added). That requirement is independent of a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary... (Memorandum Order 46, p. 3).

# RECEIVED

JUN 1 8 2008

Clerk, U.S. District and
Bankruptcy Courts

1

The finding by the Court has tainted this trial so much that Plaintiff cannot now receive a fair trial without remand on appeal. And that finding has so irreparably injured Plaintiff that he can never recover from his irreparable damages without remand on appeal for a new trial of the removal of his registration.

A compelling question of law upon which the facts are in dispute is whether this Court or the Court of Appeals can determine the applicable law, or must require a new or complete trial of the Director of OED's disputed, unilateral, secret action on August 28, 1996, based upon the inadequately presented factual basis concerning Plaintiff's lack of knowledge and intent, which are all in active and continual dispute in this case, as illustrated by the Defendants' claim that the facts are all moot and Plaintiff's claim that they are not moot.

This perfect storm came about on March 4, 1996 (Defendants' Exhibit 8) in an unsolicited letter from the Director of OED (Defendants' Exhibit 8) in which she strategically mooted an investigation required by law in order to save time and the expense of a trial. *See* Goldstein v. Moatz, et al, No. 03-1257 (DC CA April 14, 2004). The Director is responsible for investigating allegations of misconduct by members of the patent bar. 37 C.F.R. 10.2 (b) (2), 10.131 (a). When the Director conducts a disciplinary investigation, practitioners are required to report and reveal to him any unprivileged knowledge they possess of PTO disciplinary rule violations. *Id.* 10.24 (a), 10.13 (b). If after investigation, the Director believes that a practitioner has violated a disciplinary rule, he is obliged to convene the PTO's Committee on Discipline (the "Committee"). *Id.* 10.132 (a). The Committee is a body of at least three PTO staff attorneys appointed by the Defendant Commissioner of Patents *Id.* 10.4 (a). After the Committee decides and finds that that there is probable cause to believe that a disciplinary rule has been violated, the

2

Defendant Commissioner initiates a formal disciplinary proceeding by referring the matter to an administrative law judge.

*See* 35 U.S.C. 6, which Plaintiff claims is unconstitutional because in over 2500 BPAI decisions between March 2007 and March 2008, 83% of the panels included at least one panel member that had been illegally appointed as an ALJ, 44% included a majority of illegally appointed judges, and about half of the opinions were authored by illegally appointed judges. 2 or 3 illegally appointed ALJs were unconstitutionally appointed over 40% of the time from March 2007 to March 2008.

The letter of March 4, 1996 (Defendants' Exhibit 8) unilaterally and *sua sponte* initiated an unsolicited continuance, adjournment and abeyance of an investigation in the USPTO of a Continuation-in-part patent application that was not known to exist by the Plaintiff and for which there is no basis in fact (Defendants' November 7, 1995 Exhibit 3). That alleged imaginary CIP is still under investigation, and is still in dispute. The raising of the possibility of such an unorthodox, unauthorized investigation of such a non-existent CIP by the Director of OED, instead of by a patent examiner, as required under 35 U.S.C. 101, 102, 103 and 112, was unilaterally initiated *sua sponte* on March 4, 1996 by the Defendants, who at the time intended secretly without notice to Plaintiff to effectively abolish Plaintiff's registration without the expense and time of a trial as required by law, and involuntarily without his knowledge, consent, acquiescence or intent or any need to take the Patent Office examination at a time when he believed he was qualified to practice patent law in the US and Canadian Patent Offices as an attorney, agent or firm, and to hold himself out as so recognized. That was at a time when he had no reason to qualify to be reinstated to take the examination for his reinstatement because he was already registered and not suspended or excluded, or refused registration.

3

At that time his registration in the USPTO was unilaterally continued, adjourned and held in abeyance for secret disposal on August 28, 1996 without his knowledge, consent, acquiescence or intent. Instead, Plaintiff was continuing to enhance his registration, knowledge, skill and viability to hold himself out as a patent attorney, to allow others to so hold him out, and to prevent his registration from becoming abandoned, restrained, abused, destroyed, taken or reduced in value, as shown by his continual fight to hold himself out as a patent attorney, and to use his registration, preserve it, and to enhance it by holding himself out continually without interruption as a patent attorney from November 5, 1958 until the present time despite the continuing threat of prosecution by the Defendants under 35 U.S.C. 33.

This is a Motion for a Continuance in opposition to the final denial of the stay of this case and the denial or reconsideration of the denial of the stay and for an extension of time to obtain a Continuance in order to supply details to the Court of Appeal that are "collateral" to the Final interlocutory Orders of the District Court and that are likely to be reversed because there was a clear abuse of discretion in conclusively determining important, controlling, non-trivial, disputed questions of fact separate and distinct from the merits of this case, including the question of Defendants' immunity from liability for, and from standing trial for, Bivens damages and attorney's fees, and for depriving Appellant of a right to stand trial on compelling questions of law, including substantial and substantive changes to existing law by Defendants' Final Revised Rules that have been judicially determined to be invalid because they infringe, *inter alia,* Plaintiff's due process rights, and as Plaintiff claims, his First Amendment rights of speech, press, religion and petition, his Article II, Section 2 rights to a hearing on his claim of unconstitutionality of 35 U.S.C. 2 (b) (2) (D), 6 and 32; or alternately **for an interlocutory**

4

Order by this Court certifying, transferring and merging only a portion of this Appeal with the corresponding case now in the CAFC.

To this end, this Motion is for a Continuance to enable Plaintiff to ask the Court of Appeals to Reverse and Remand for a new trial of the District Court's final determination of the facts concerning the irreparable injury to Plaintiff that resulted from the secret removal of Plaintiff's registration on August 28, 1994, and for Reconsideration and Remand of the Appealed District Court's Orders, including the Order of 5/8/08, with a Request that there be a Decision that the Appellees are not immune to liability for equitable and money damages and attorney's fees and, thus, from standing trial for irreparable damages to Plaintiff. The reversal and remand would include the appealed Orders, including the Order of 5/8/08 Denying Petitioner's Motion For Injunctive Relief And Refusing to Give An Opinion Under Section 1292 (b) That Such Order Involves A Controlling Question of Law, And That An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation Below, And In This Appeal No. 08-5089

## REMARKS

Plaintiff's <u>Bivens</u> claim for damages, costs and attorney's fees, which are still pending, includes his collateral claim for an injunction against the Defendants' requirement that Plaintiff "take the patent registration examination." That is a controlling question of law independent of the disputed claim for <u>Bivens</u> damages, costs and attorney's fees upon which the Court of Appeals in the 4th Circuit accepted interlocutory jurisdiction in <u>Goldstein v. Harry I. Moatz, et al</u>, No. 03-1257 (CA 4th 2004). <i>See</i> also <u>Goldstein</u>, 364 F.3d at 211-19; <u>Goldstein,</u> No. 05-1399 (CA 4th Apr. 20, 2006); and much like the interlocutory appeal accepted in <u>Behrens v. Pelltier,</u>

516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

In this case the Defendants have claimed immunity because they have asked the Court to dismiss the Appellant's claims and dismiss Defendants Moatz and Griffin from all liability. 12/20/07 Motion to Dismiss, p. 30 and 34

Defendants claim in their 12/20/07 Motion to Dismiss p. 30, is that "Plaintiff has not shown that the facts warrant his reinstatement," but here is no requirement in law by statute or decision in cases that he has to be reinstated in order to practice before the USPTO, or that he has to take the patent registration examination to practice, despite what the Court said in their 2/25/08 Memorandum Order 46 on page 3, i.e., that "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination…".

35 U.S.C. 2 (b) (2) (D) may govern the "recognition and conduct of attorneys," if the Court holds that it is not unconstitutional, as Plaintiff claims it is because it is constitutionally so broad as to prevent Plaintiff from practicing before the USPTO without punishment under 35 U.S.C. 33, but the plain language of that statute does preclude Plaintiff from being recognized or conducting himself before the USPTO or holding himself out to so conduct himself, or to allow others to so hold him out without <u>taking</u> the patent registration examination, which the Defendants have never refused permission for Plaintiff to take. As the Court has said, "OED informed Cornish that because it had been over five years since he had been registered, he must <u>take</u> the patent registration examination…" (emphasis added) (2/25/08 Memorandum Order 46).

Like 35 U.S.C. 2 (b)(2)(D), 35 U.S.C. 32 is not constitutionally valid because the plain language is so broad as to lack adequate narrow tailoring to allow Plaintiff to practice before the

USPTO under the protection of the broader and more all encompassing and compelling public purpose of the First Amendment, the Due Process Clause, and the Privilege and Immunities Clause, as well as the Constitutional protection from taking his property and privilege without just compensation by secret, involuntary tampering, molestation, stalking, identity theft, interference, harassment, nuisance, invasion of privacy or other tortuous conduct.

Defendants have claimed that Plaintiff "may not legally hold himself, or permit himself to be held out, as being recognized to practice patent law before the USPTO," (p.7 of 1/30/08 Defendants' Response To Plaintiff's December Filings) as an attorney, agent or firm "because it had been over five years since he had been registered," (p. 3 of 2/25/08 <u>Order</u>). But that is clearly erroneous and irrelevant to Plaintiff's claim for *irreparable* injury for *prior restraint* of his holding himself out as an unregistered attorney, agent or firm continuously since he "applied for and passed the patent examination in 1958, and became registered to practice before the USPTO." (p. 2 of 2/25/08 Memorandum Order) (quoting from Defs.' Mem. Of P. & A. in Opp'n to Pl.'s Mot. for Prelim. Inj. (Defs.' Opp'n") at 5, Ex. 1)."

What is relevant to the irreparable harm that Plaintiff has suffered, is suffering and will suffer is the fact that since August 28, 1996 (Defendants' Exhibit 8), without Plaintiff's knowledge, consent, acquiescence or intent, Defendants have deceptively and fraudulently without Plaintiff's knowledge, consent, acquiescence or intent, treated Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7) as a "request to have his name removed from the register" by secretly, deceptively and fraudulently hijacking his name with an informal secret handwritten note on the OED Director's letter of March 4, 1996 (Defendants' Exhibit 8), which is proof of her intent to hijack his name and identity by a secret undisclosed identity theft on August 28, 1996 without Plaintiff's knowledge, consent, acquiescence or intent. *See* pp's 2-3 of

7

the 2/25/08 Order granting Defendants' motion for protective order, granted in part, and denying Plaintiff's motion for stay to allow for an interlocutory appeal.

The Court by a clearly erroneous conclusion, ignores the extraordinary factual scenario presented by Plaintiff to support his version of the facts denied by the Defendants as the basis for the Defendants deceitful and fraudulent cover up of their unconstitutional conspiracy to obstruct justice, which was initiated on March 4, 1996, when they disguised their projected intent to blame Plaintiff without his knowledge, consent, acquiescence or intent for his forthcoming irreparable harm based upon his letter of February 8, 1996 (Defendants' Exhibit 7). That scenario, which attempted to deflect the irreparable harm that they caused to Plaintiff, and to put the blame for his irreparable harm on Plaintiff, was used arbitrarily and capriciously to punish Plaintiff unconstitutionally by unauthorized, overbroad powers without a hearing or trial, according to required procedures adopted under vague, overbroad and unconstitutional statutes (i.e., 35 U.S.C. 2 (b) (2) (d), 6 and 32).

The drastic measures used by Defendants, included using Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7) to cover up of their obstruction of justice, *inter alia,* by a diversionary discrimination against Plaintiff under section 504 of the Rehabilitation Act, 29 U.S.C. 794, solely because of his age-related disabilities (proof of intent not required) in order to cover up the Defendants' deceit and fraud and obstruction of justice without Plaintiff's knowledge, consent, acquiescence or intent. To this end, Defendants embarked on an eleven year mission to irreparably injure Plaintiff and destroy the viability of his profession, practice and constitutionally protected privilege and speech as an attorney, agent or firm, by secretly, deceptively and fraudulently without his knowledge, consent, acquiescence or intent, "treating [Cornish's letter] as a request to have [his] name removed from the register, and describing how

8

he could be reinstated after his name was removed." P.3, line 6 of the Memorandum Order of 2/25/08. Plaintiff made no such "request" and Defendants knew that they lacked authority for arbitrarily, capriciously and secretly removing his name from the register on August 28, 1996 (by a secret, informal, handwritten note on Defendants' Exhibit 8 without notice, knowledge, acquiescence, consent or intent of Plaintiff).

To complete the deceit and intent to defraud Plaintiff and to obstruct justice by a cover-up of their secret hijacking of Plaintiff's registration by identity theft, the present OED Director, Defendant Moatz, secretly claimed that on June 15, 2000, he only recently learned of a complaint against the Plaintiff, a highly unlikely fact that is disputed by Plaintiff in view of his employment in OED starting in 1984, and the fact that he served as Director since 1999. He knowingly continued the deceit, fraud and cover-up started by his predecessor in 1996 with intent to unconstitutionally punish and discriminate against Plaintiff by *prior restraint* of his constitutional rights as an attorney, agent or firm, and by keeping her deceit and fraud, and his, secret from Plaintiff in order to prevent Plaintiff from ever holding himself out as an unregistered attorney, agent or firm by his letter of June 15, 2000 (Defendants' Exhibit 33).

To that end, in his letter referring to the investigation of a complaint held in abeyance since March 4, 1996, Defendant Moatz stated that "OED removed Mr. Cornish's name from the roster of attorneys and agents," and "will consider the complaint if and when Mr. Cornish applies to be reinstated." He thus secretly continued his predecessor's deceit and fraud without Plaintiff's knowledge, consent, acquiescence or intent, by holding in abeyance the investigation she had held in abeyance since March 4, 1996.

Some five years after the Director of OED's letter of June 15, 2000, which was the period secretly selected by him to cover up his and his predecessor's deceit and fraud without Plaintiff's

9

knowledge, acquiescence, consent or intent, and in violation of Plaintiff's Constitutional rights to

hold himself out as a patent attorney, agent or firm, OED informed Plaintiff incorrectly

concerning an alleged lapse in his registration while he was still holding himself out as being

registered. To that end, incorrectly, and as is disputed by Plaintiff, "OED informed Cornish that

because it had been over five years since he had been registered, he must take the patent

registration examination or submit a showing to the satisfaction of OED that he continued to

possess the legal qualifications necessary to render valuable services for patent applicants.

(quoting in the Order of 2/25/08 from Ex. 8 on page 3, id. at 9, Ex. 12)."

 The enclosed Motion for a Continuance will give Plaintiff time to reverse and revise this

incorrect allegation of a five year lapse in his holding himself out as being registered, and the

denial of a stay and denial of reconsideration of the emergency injunctions, which were denied in

this case because of lack of irreparable harm. Appealing those Orders from the District Court is

appropriate because they were narrow and "collateral" but final decisions immunizing and

protecting the Appellees from trial and from preliminary, and interlocutory liability, including

standing for trial for temporary equitable relief in a case involving Bivens damages, costs and

attorneys fees, and also the portion of this case having to do with the Final Revised Rules of the

Appellees without prejudice.

 To this end, it is proposed that this case can be Continued until Defendants file their reply

brief in the appeal of the final interlocutory orders without dismissing this case or affecting the

remaining claim for Bivens damages, costs and attorney's fees.

 Plaintiff denies the immunity of the Defendants while allowing for the certification,

transfer to and merger with the substantially similar case already in the CAFC on the same

subject matter against the Defendants in this case to reserve and preserve both Plaintiff's and

Defendants' Options for a full trial in the District Court on the <u>Bivens</u> damage claims, and claim for attorney's fees, leaving only the part of this case to be decided in the CAFC, *inter alia,* without prejudice, e.g., in connection with Plaintiff's opposition to the Defendants' Final Revised Rules. (*See* substantive Rules 75 and 78 (72 Fed. Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective November 21, 2007) (*See* also 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c)).

"The request seeking an examination in larger print, a separate examination room, a different test date, an extended two-days time to take the test," which was mentioned in note 3 on page 4 of the 2/25/08 Memorandum Order, but listed only some of the disputed facts involved in the discrimination of Plaintiff solely on the basis of his age-related disabilities to cover up the Defendants' deceit, fraud, and obstruction of justice. A full two days of testing that was requested was denied, which made it impossible to satisfy the Defendants' arbitrary and capricious discretionary qualifications for defeating the discrimination that was used to cover-up, the irreparable and drastic harm caused by Defendants' scheme for obstructing justice.

Title II of the ADA or Rehabilitation Act, provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12, 132. Depriving Plaintiff of the reasonable and doable accommodations he requested was the means used to defeat Plaintiff from finding out how he had been irreparably injured by the Defendants' obstruction of justice that deprived Plaintiff of his constitutional rights. He was denied equal access solely because of his age-related disabilities because every other applicant who took the non-July examination for CLE purposes, as Plaintiff did in July for CLE purposes, had access to a TV monitor for providing an

11

enlarged print MPEP. But such a TV monitor for presenting an enlarged print MPEP, was

denied to Plaintiff with prejudice to obtaining such reasonable accommodations in the future. He

has applied to take the examination for CLE purposes, and an emergency injunction is required

because the Defendants have not even acknowledged his request, or his request to take the

examination free, as he did last time, and under the FOIA or otherwise to obtain a copy of the

questions and marked answers of the examinations that he has taken.

    "[I]njunctive relief is an 'extraordinary and drastic remedy,' and Plaintiff has justified the

same by a clear showing and incorporation by reference and judicial notice of the substantially

similar Tafas case, that the record is not "sufficient to demonstrate a lack of right to relief."

Smith v. Harvey, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C. July 17,

2006) (citing Johnson v. Holway, 329 F. Supp. 2d 12, 14 n.1 (D.D.C. 2004); Local Rule 65.1 (d).

And Plaintiff has likewise shown the required four factors and other factors, including

irreparable injury, such as those used in Citizens United v. FEC, Civil Action No. 07-2240

(ARR, RCL, RWR), 2008 WL 134226, at *2 (D.C.C. Jan 16 2008). Like the substantially same

successful case of Tafas v. Dudas, et al., 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr.

Va., which addressed the "controlling questions of law" and the disputed facts involved under 28

U.S.C. 1332. Plaintiff has likewise shown that: (1) there is a substantial likelihood that he will

have success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not

granted, (3) that an injunction would not substantially injure other interested parties, and (4) that

the public interest would be furthered by the injunctions requested. See Defs.' Opp'n to Pls.'

Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

    The secret hijacking of his registration by a secret identity theft without his knowledge,

consent, acquiescence or intent, clearly caused an irreparable loss of Plaintiff's viability and

profession and constitutionally protected privilege to practice as an unregistered attorney, agent

or firm anywhere for more than eleven years from March 4, 1996 to the present. Any and all

actions of restraint, investigation without a closing letter by the USPTO are automatically

repeated by due deference in each of the jurisdictions where the Plaintiff is licensed to practice.

And without the help of this court, the irreparable injury will be perpetuated for ever due to the

Plaintiff's age-related disabilities that make it possible for the Defendants to cover up their

deceit, fraud, and obstruction of justice designed and implemented to deprive and chill Plaintiff's

constitutional rights of speech, press, religion and petition. If the requested injunction is denied,

the Defendants have an obligation to inform the jurisdictions where he is licensed.

By refusing an injunction and a new trial of his removal, the viability of Plaintiff's

practice in both the Patent Office and the Trademark Office are permanently and irreparably

injured without any possibility of corrective action. Failure to obtain an injunction and the

closing of the investigation being held in abeyance by a closing letter will subject him to criminal

penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an

unregistered attorney because he is still subject to investigation without a closing letter. This is

clearly submitted as "competent evidence into the record ... that would permit the Court to

assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is

not issued [,]" and does not provide merely "only broad conclusory statements as to alleged

harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB), 2005 WL 1119797, at *3 (D.D.C.

May 11, 2005).

Plaintiff has indeed clearly "demonstrated why the material facts presented show the

substantial irreparable injury to him by the Defendants that is grounds for finding that he should

be permitted to practice as an [unregistered] patent attorney" in the jurisdictions where he is

13

admitted by holding himself out as an attorney, agent or firm without *prior restraint* by the

Defendants, and the irreparable harm caused to him by the Defendants' failure to prosecute him

or to give him a closing letter for their pending investigation, and/or otherwise to prevent him

under their Final Revised Rules from filing an unlimited number of Continuations, RCEs and/or

claims for himself, or with a power of attorney for his co-inventors who are alive, dead,

unavailable or hostile, as an executor or administrator, and/or for foreign applicants who want to

file PCT applications in the USPTO. He is admitted to practice as an unregistered attorney, agent

or firm in the CAFC, and he is prepared to prosecute this case there as an attorney if it is decided

that the CAFC is the Court with the exclusive jurisdiction for an appeal of this case under the

patent laws, such as in the cited <u>Tafas</u> case, *Id.* Without an injunction to stop the investigation,

Plaintiff will be prevented from holding himself out as an unregistered attorney to prosecute this

case as an attorney admitted in the CAFC despite his good standing to do so in that court.

Similarly, he is now prosecuting his presently existing patent application and trademark

application in the USPTO, but he is prevented from doing so as an unregistered attorney without

the threat of prosecution under 35 U.S.C. 33. This is a case where there is obvious, substantial

and irreparable harm to the Plaintiff by enforcing the PTO regulations against his use of his name

as an attorney in the PTO, and failing to enforce the PTO regulations found by Congress to be in

the public interest to safeguard his constitutional rights to notice and an adequate trial before an

administrative judge to prevent the secret removal of his registration without constitutionally

approved authority, which the current regulations and statutes fail to do.

   This is not part of "an unrelenting stream of meritless motions raising immaterial issues

and containing" (Memorandum Order **46**) "a nearly undecipherable jumble of requests for relief

[.]" (Defs.' Mem. In Supp. Of Mot. Prot. Order at 2, 4.). As in <u>Tafas</u>, *Id.*, an injunction will

cause no harm to an agencies enforcement authority according to law, and there is no possibility

of finding any public interest that would be served by denying the requested injunctive relief at

this time on an emergency basis. The balance of factors weighs heavily against denying the

requested injunctions and granting the Defendants Motions.

The subject matter of Plaintiff's Appeal, which has already been appealed to the CAFC

by the Defendants without Plaintiff, clearly needs to incorporate the Plaintiff because he has

satisfied his burden of showing that his case has merit and a likelihood of success; it also shows

that he has been irreparably harmed with little or no harm to the Defendants or the public,

contrary to the finding of the District Court Orders appealed in this case.

The Supreme Court has established precedents that justify at least one interlocutory

appeal in one "small class" of "collateral" interlocutory district court decisions that are subject to

revision, and even if they are "fully consummated decisions [that] are but steps towards final

judgment in which they will merge." Cohen v. Benefiicial Industrial Loan Corp., 337 U.S. 541,

546 (1949). Apr. 20, 2006); and *see* Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a

narrow and controversial Controlling Questions of law relating to immunity and from standing

trial.

This "small class" of interlocutory decisions comprises the ordinary absolute or qualified

immunity case, such as this one, where the harm is irreparable and permanent, to conclusively or

finally determine disputed issues that are effectively unreviewable and completely separate from

the merits of the case, i.e., claims that are of right, "separable from," and "collateral" to rights

asserted in the action, which are too important (and meritorious) to be denied interlocutory

review and too independent of the cause itself to require that appellate consideration be deferred

until the whole case is adjudicated." *Id.* Post-trial review will come too late to avoid the harm,

15

and the legal issue is "separate" enough from the more basic substantive issues of Plaintiff's Bivens tort and damage claims in this case to avoid significant duplication of appellate court time and effort. *See* 472 U.S., at 527-529.

The object an interlocutory appeal is to prevent the denial of a clearly erroneous decision denying an injunction for lack of irreparable harm in a case with clear merit and chance of success with little harm to the government or the public, and where the denial is part of a sequential and long lasting pattern of obstructing justice, so as to provide Defendants with immunity from equitable relief and damages by standing trial. To that end, the Defendants have sequentially defeated the substantial and merited claims of the Plaintiff based upon disputed material facts relating to the effective "house arrest" of Plaintiff's practice of patent, trademark and copyright law by a strategic mooting of an investigation by Defendants on March 4, 1996 (an investigation that is still pending, and which was perfected by a secret, irreparable, hijacking and identity theft of his practice on August 28, 1996 by violation of hi First Amendment right to be free of *prior restraint* of his speech, press, religion and petition rights), in order to escape the required trial and burden of proof by standard revocation procedures, due process, equitable relief, Bivens damages and attorney's fees by the denial of a Temporary Restraining Order, A Temporary Injunction, or a Preliminary Injunction. The denial of such temporary and revocable relief is but a way of preventing Plaintiff from obtaining his full day in court by a trial of Appellant's claim for one million dollars in Bivens damages. *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

The court in Cohn, *Id.*, said that it applied interlocutory appeals to "that small class" of orders that determine claims of right "too important to be denied [immediate] review." This is one of those small class of interlocutory orders where the Appellant's Motion was denied in

16

summary fashion without notice or opportunity to be heard, which violated his right to

procedural due process, and substantive due process for his clearly established <u>Bivens</u> damage

and Constitutionally protected First Amendment rights, as well as his property and other liberty

rights to a specific employment and to pursue Plaintiff's profession free from undue

governmental interference that can and should be reviewed, reversed and remanded without

prejudice or referral to the CAFC under 28 U.S.C. 1338. *See* <u>Behrens v. Pelletier</u>, 516 U.S. 299

(1996), in which the government held an investigation over the head of the litigant, despite a

statute of limitations defense (albeit, the Defendants in this case have been holding an

investigation over the head of the Appellant with a statute of limitations claim for about eleven

years on the basis of a reverse RFI on March 4, 1996 (Defendants' Exhibit 8), that narrowed his

registration by the coercion of a strategic mooting of an investigation not known by Appellant to

be open, and then which was secretly removed and secretly hijacked by identity theft without

Constitutionally sufficient notice to the Appellant by a secret handwritten note dated August 28,

1996 on the reverse RFI of March 4, 1996 (Defendants' Exhibit 8). Thereafter, the investigation

was closed without notice or a closing letter to the Appellant on June 15, 2000. (Defendants'

Exhibit 33). *See* <u>United States v. Sheehan</u>, No. 07-3002 (decided January 11, 2008 CA DC Cir.),

where the narrowing of a permit was relevant to the assessment of the knowledge and intent of

the litigant and the deprival of any opportunity to present a defense.

It is noted that this case differs from <u>Sheehan</u>, *Id.*, in that in this case the holder of a

permit did not voluntarily withdraw his existing permit and apply for a new one, and there is

every indication in Constitutional law and equity obliging the Government to follow the

revocation procedures codified and required by law. In both cases, moreover, there was a

Government failure to give any notification that the scope of the permits was narrowed and

17

summary fashion without notice or opportunity to be heard, which violated his right to procedural due process, and substantive due process for his clearly established <u>Bivens</u> damage and Constitutionally protected First Amendment rights, as well as his property and other liberty rights to a specific employment and to pursue Plaintiff's profession free from undue governmental interference that can and should be reviewed, reversed and remanded without prejudice or referral to the CAFC under 28 U.S.C. 1338. *See* <u>Behrens v. Pelletier</u>, 516 U.S. 299 (1996), in which the government held an investigation over the head of the litigant, despite a statute of limitations defense (albeit, the Defendants in this case have been holding an investigation over the head of the Appellant with a statute of limitations claim for about eleven years on the basis of a reverse RFI on March 4, 1996 (Defendants' Exhibit 8), that narrowed his registration by the coercion of a strategic mooting of an investigation not known by Appellant to be open, and then which was secretly removed and secretly hijacked by identity theft without Constitutionally sufficient notice to the Plaintiff by a secret handwritten note dated August 28, 1996 on the reverse RFI of March 4, 1996 (Defendants' Exhibit 8). Thereafter, the investigation was closed without notice or a closing letter to the Appellant on June 15, 2000. (Defendants' Exhibit 33). *See* <u>United States v. Sheehan</u>, No. 07-3002 (decided January 11, 2008 CA DC Cir.), where the narrowing of a permit was relevant to the assessment of the knowledge and intent of the litigant and the deprival of any opportunity to present a defense.

It is noted that this case differs from <u>Sheehan</u>, *Id.*, in that in this case the holder of a permit did not voluntarily withdraw his existing permit and apply for a new one, and there is every indication in Constitutional law and equity obliging the Government to follow the revocation procedures codified and required by law. In both cases, moreover, there was a Government failure to give any notification that the scope of the permits was narrowed and

17

secretly hijacked by identity theft. In this case, like in the Sheehan case, *Id.* that is relevant to an assessment of Appellant's knowledge and intent during the time from the Maryland Bar Counsel's letter of December 6, 1996 (Defendants Exhibit 6), and February 8, 1996 (Defendants' Exhibit 7), until the reverse RFI of March 4, 1996, or the minimum 30 day period assigned to the Defendants for holding the investigation in abeyance before presenting a "closing letter" or a formal complaint to which Appellant would have been obligated to respond or face discipline or some other Draconian penalty.

A Controlling Question of Law for determination in this *interlocutory* appeal, is whether this Court has jurisdiction to determine in this interlocutory appeal if the Defendants lack immunity to stand trial for temporary and preliminary equitable relief, and money damages in connection with Appellant's claim for Bivens damages? *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). In this connection, the Defendants' claim that Defendants Moatz and Griffin are absolutely immune because they have asked the Court to remove them from the litigation without liability. *See* page 34 of Defendants' 12/20/07 Dispositive Motions to Dismiss or for Summary Judgment – "c. Defendants Moatz and Griffin Should Be Dismissed To the extent the Court determines that it has jurisdiction over Plaintiff's *reinstatement claim* under 35 U.S.C. 32 and does grant Defendants' motion to dismiss the reinstatement claim under Fed. R. Civ. P. 12 (b) (1), then it is appropriate for the Court to dismiss the defendants, Harry I. Moatz and William J. Griffin." (Emphasis added).

In their long lasting effort to avoid standing trial for equitable relief, damages and attorney's fees, the Defendants' 12/20/07 filing, like the District Court's Order of 2/25/08 (*See* Pp. 1-2), is a continuing phantasmagoria or sequence of real or imaginary images like that seen in a dream to deprive Appellant of his Constitutional rights. That dream raises the not-so-widely

18

feared phantom spectre imagined by Defendants in the imagination of "Reinstatement Police," or

the Director of OED, Defendant Moatz and his investigator, Defendant Griffin. They feel that

Appellant is a threat to what they consider is their "mission to protect the public from

incompetent practitioners." *See* page 35 of Defendants' 12/20/07 filing, when in fact they are

referring to Invention Promoters under the Inventor's Protection Act of 1999, as if Appellant is

pandering falsely to an imaginary real person rather than a general audience without any specific

knowledge or intent to pander deceitfully. The problem with that clearly erroneous and

manipulated error not in accordance with law, it that the phantom "Reinstatement Claim" does

not exist in this case.

According to page 34 of their 12/20/07 filing, Defendants Moatz and Griffin should be

dismissed with absolute immunity from any temporary injunction denied by the Orders of the

District Court under the plain terms of section 32 of title 35 of the U.S. Code, which they say

"grants the Court [has] jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin."

They cite for comparison, Gager v. Ladd, 212 F.Supp. 671 (D.D.C. 1963) (discussing authority

under 35 U.S.C. 32, to review [of] the action of the Commissioner of Patents) (albeit, they allege

that the Commissioner is immune under the Reinstatement Claim because he has not made a

decision that can be reviewed by this Court).

And deviously, according to page 32 of Defendants' 12/20/07 filing, they can escape

liability and standing trial because "The USPTO Director has not issued a decision regarding

Plaintiff's reinstatement request." They further state that, "Because this Court does not have a

final agency action from the USPTO to review, i.e., a USPTO Director decision, it should

dismiss the claim under Fed. R. Civ. P. 12 (b) (1)." They cite, Natural Resources Defense

Council v. Johnson, 422 F.Supp.2d 105 (D.D.C. 2006). They additionally cite Ticor Title Ins.

19

Co. v. FTC, 814 F.2d 731m 746 b,2 (D.C. Cir. 1987) for the proposition that the "Court did not have [*Court does have*] jurisdiction over matter because defendant had not taken final agency decision." (Emphasis and brackets added because statements are inconsistent).  They note that: "the finality requirement applies to 'agency action made reviewable by statute,'" for example, under the [Age Discrimination in Employment Act] ADEA.  By implication they attempting to avoid liability and from standing trial by applying as a Controlling Question of Law the failure to make decisions in connection with both the FOIA and ADEA claims made by Plaintiff in this case, and Defendants' claims, which are genuine issues of fact in dispute, "for failure to exhaust administrative remedies."

Plaintiff made an interlocutory appeal of such an absurd, clearly erroneous, and imagined defense against a "Reinstatement Claim" without any basis in fact.  Appellant's interlocutory appeal is for reversal and remand of the interlocutory Orders denying Appellant's meritorious request for equitable relief, his Bivens tort claim for damages, and for attorneys fees for Constitutional violations by Defendants who are not absolutely immune based upon Supreme Court precedents that justify at least one interlocutory appeal in one "small class" of district court decisions, such as this case, that are subject to revision, even if they are "fully consummated decisions [that] are but steps towards final judgment in which they will merge." Cohen v. Benefiicial Industrial Loan Corp., 337 U.S. 541, 546 (1949).

For example, this "small class" comprises this ordinary absolute or qualified, interlocutory immunity case, where the harm is irreparable and permanent, to conclusively or finally determine the Controlling question of law involved relating to the disputed issue of immunity that is effectively unreviewable and completely separate from patent law and 35 U.S.C. 1, et seq.  *See* the cited 4th Circuit case that accepted interlocutory jurisdiction in

Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See* also Goldstein, 364 F.3d at

211-19; Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006). The cited Goldstein case, *Id.*, which

involved an interlocutory appeal by a patent attorney, is much like the interlocutory appeal in this

case and the one accepted in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow

and controversial Controlling Questions of law relating to the immunity from liability and

standing trial in a meretricious case like this one.

That Controlling question of law is also completely separate and independent of the

merits of the case, i.e., the claims of Appellant as of right, "separable from, and collateral to,

rights asserted under the patent laws in the action, which are too important to be denied

interlocutory review and too independent of the cause itself to require that appellate

consideration be deferred until the whole case is adjudicated." *Id.* Post-trial review will come

too late to avoid the *emergency* of the *irreparable harm* involved (which was denied by the

District Court in this case), and the legal issue is "separate" enough from the more basic

substantive issues of Appellant's Bivens tort and damage claims in this case to avoid significant

duplication of appellate court time and effort. *See* 472 U.S., at 527-529; and the 4th Circuit case

that accepted interlocutory jurisdiction in an appeal without going to the CAFC, in Goldstein v.

Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See* also Goldstein, 364 F.3d at 211-19;

Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006); and much like the interlocutory appeal accepted

in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and controversial

Controlling Questions of law relating to the immunity from liability and standing trial in a

meretricious case like this one.

The Appellees opposition to this Court's jurisdiction is a delaying tactic. Reference is

made to the so-called war on constitutional tort lawsuits played out in the field of motion practice

21

rather than in the courtroom. *See* Defendants' Motions for sealing and unsealing with redaction, for an Order of Protection, and for Summary Judgment or a Motion to Dismiss in this case to avoid responding to the Appellant in a trial or even in discovery. Also, their proposed Order attached to their 5/8/08 filing, seeks and sets forth: "that plaintiff's motion [52] for permission to file an interlocutory appeal be, and hereby is, DENIED." And they additionally seek denial of "Appellant's Motion for Amendment of Appeal" and its "dismissal," and their Dispositive Motions for Summary Judgment and Dismissal are pending in order to frustrate Appellant's request for a trial. Appellant has also asked for mediation and settlement without any response from the Defendants. He is now asking for referral, transfer and merger of Appellant's claims that are limited to an appeal under the patent law with the Appellees' substantially similar case now on appeal in the CAFC.

This Court should determine the Controlling Question of Law as to whether this interlocutory appeal has to be completely transferred to the CAFC under 28 U.S.C. 1338, as arising in whole or part under 35 U.S.C. 1, et seq? Or does proof that this is a meritorious case need to be bifurcated and transferred to the CAFC, whether appropriate or not, or can it be decided under the general appellate jurisdiction statute, 28 U.S.C. 1291? Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See* Goldstein, 364 F.3d at 211-19; and No. 05-1399 (CA 4th Apr. 20, 2006); Behrens v. Pelltier; and Mitchell v. Forsyth, 472 U.S. 511 (1985).

The record is incomplete in this case in connection with the Appellees' Final Revised Rules that were to be effective November 1, 2007. The status of this case in the District Court, which is still pending there, is prior to discovery and a final decision on Appellant's request for a permanent injunction. The District Court has not decided the latter issue, which is still pending, but the issue of whether the Appellees need to stand trial on the Controlling Question of law,

which is a "collateral" issue relating to denial of temporary equitable relief, has been finally

settled.  Appellant asks this Court to decide that those Controlling Questions of Law and the

genuine issues of fact in dispute which are involved in this case be decided and remanded  to the

District Court without prejudice while the case is still pending in the District Court, and while

preserving the parties right of appeal to the CAFC from a final decision after a final trial of the

issues in the District Court.

      This Court will be unable to review the incomplete record in connection with the Final

Revised Rules until the record in more complete in connection with those Rules in this case, so

this Court should adjourn this case for a completion of the Record.  The same is not the case if

the portion of this case relating the Final Revised Rules is certified by this Court for transfer and

merger with the case that the Defendants have already appealed to the CAFC.  Those are

Controlling Questions of law as to whether those Rules will be finally held to be invalid and void

on appeal to the CAFC from the District Court of the Eastern District of Virginia and the District

Court in this Circuit.  The Defendants and the Plaintiff should equally be able to have a trial in

this Circuit, and an appeal in this case of a final decision that is appealable to the CAFC on the

basis of what is decided in that case, which is substantially similar, with some Constitutional

issues added, to the case against substantially the same Defendants, identified as <u>Tafas v. Dudas,</u>

<u>et al.,</u> 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va., which addressed one of the

"controlling question of law" involved under 28 U.S.C. 1332.  *See*  Defs.' Opp'n to Pls.' Mot. at

22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

      As an aid to these proposed solutions, Plaintiff has asked for mediation and settlement

talks in this case.  Lacking a positive outcome in favor of Plaintiff, this case should be bifurcated

without prejudice only as to the added and corresponding claims relating to the invalidity and

23

unconstitutionality of the Final Revised Rules by certifying those issues for transfer to the CAFC

and merger with the cited Tafas case *Id.* that is already in the CAFC. Alternately, that portion of

this case could be held in abeyance over the summer recess in the Court's business pending the

possible outcome of the cited case in the CAFC.

The Bivens damage claim in this case, which is an independent "collateral" claim not

related to the Patent Laws, should be adjourned by a Continuance in the District Court for further

proceedings in connection with the issue of the immunity or lack of immunity from equitable

relief, Bivens damages, and attorney's fees of the Defendants in this Court or on appeal.

In this connection, Defendants have avoided a judgment against them as to this

Controlling Question of Law relating to "immunity" or the lack thereof. *See* Goldstein v. Harry

I. Moatz, et al, No. 03-1257 (CA 4th 2004), where the facts were substantially the same.

Goldstein was a patent lawyer, who appealed an award of absolute immunity accorded certain

officials of the Patent and Trademark Office for their conduct in an attorney disciplinary

investigation. The same officials in this case have been holding an investigation in abeyance

since March 4, 1996. *See* his letter of June 15, 2000 from Defendant Moatz in his Exhibit 33.

And the District Court's Orders, including their Order of 5/8/08, refusing Plaintiff equitable

relief are effectively awards of absolute immunity to that same official on Plaintiff's meritorious

request for immediate, emergency relief whose merit has been judicially determined to be valid

and recognized by implication in the Tafas, case *Id*.

The request for the removal of Defendant Moatz and Griffin are also effectively

consistent with a Court Order for absolute immunity. *See* also Goldstein, 364 F.3d at 211-19s, in

which the Court of Appeals in the Fourth Circuit ; and No. 05-1399 (CA 4th Apr. 20, 2006); and

Behrens v. Pelltier, 516 U.S. 299 (1996).

24

In the cited <u>Goldstein</u> case, <u>Id.</u>, because the defendants Harry Moatz, and his investigator were not absolutely immune from Goldstein's <u>Bivens</u> claim for damages, and because the district court did not separately consider whether the defendants are immune from suit for equitable relief, the lower court's Order was vacated and remanded.

As in <u>Goldstein</u> <u>Id.</u> and this case, pursuant to PTO regulations, the OED Director Moatz is responsible for investigating allegations of misconduct by members of the patent bar. 37 C.F.R. 10.2 (b) (2), 10.131 (a). When the director conducts disciplinary investigations, practitioners are required to report and reveal to him any unprivileged knowledge they possess of PTO disciplinary rule violations. <u>Id.</u> 10.24 (a), 10.131 (b). No such knowledge of any such violations were present in this case to report to the Director of OED by Appellant, and so none were reported by him, and he didn't know he was under investigation from December 6, 1995 (Appellees Exhibit 6), until March 4, 1996 (Appellees Exhibit 8), so he had no duty to respond to the letter of March 4, 1996, as held in <u>Goldstein</u>, <u>Id.</u>

CONCLUSION

**In view of the above, this Court is requested to consider carefully this Motion made herein, herewith and hereby, for a Continuance. and the Memorandum in support.**

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish Down Pat TM SM (c) 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  6/18/08

25

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    *15th*    day of June, 2008.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:   *6/18/08*

26

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,            )
                                       )
            Plaintiff *Pro Se*         )
        v.                             )
                                       )
                                       )
                                       )    Case 1:07cv01719 (RWR)
                                       )
    JON DUDAS, et al.                  )
                                       )
            Defendants                 )
                                       )
_____)

**Memorandum In Support Of Motion For A Continuance, And In Response To And
In Opposition To The Minute Order Of 6/11/08**

---

        This is a Memorandum in support of the attached Motion for a Continuance in Response

to, and in Opposition to the Minute Order of 6/11/08.  Plaintiff requests that the requested

Continuance of the subject case last only until Defendants file their appeal brief in 08-5089 so as

to give Plaintiff an opportunity to face his opponent and reply thereto for the first time since the

Court allowed Defendants the immunity of a response.

        The Court is requested to consider carefully this Memorandum and Motion to allow for a

Continuance instead of a stay upon reconsideration of the Plaintiff's Motion 55 to "stay" the case

while it is on appeal, and Motion 57 for reconsideration of Order 56 for Miscellaneous Relief.

The purpose of this Motion is to give the Plaintiff an opportunity to face his opponent in order to

untangle the disputed facts, which are actively in controversy, by facing his opponent and forcing

1

him to reply. Now, the Court has made them immune to any need to reply. To the end, the

Court has protected the Defendants unfairly by allowing them to successfully cover-up and to

continue to dodge responsibility for the actions of the Director of OED in 1996, who before

leaving the USPTO acted like a self-centered Jezebel who savored her abuse of power. In this

regard, she illegally exceeded her authority in a power grab of the administrative network for the

involuntary revocation of Plaintiff's registration without his knowledge, consent, acquiescence or

intent. She left him no way to appeal the death of his professional career by her arbitrary and

capricious abuse of discretion. She preempted the requirement of the law and due process with

her involuntary, illegal, unconstitutional, unilateral, provisional and equivocal but illegal,

hijacking of Plaintiff's registration by a scandalous secret identity theft and cover up.

She accomplished the theft and covered it up surreptitiously before she gave up the

Directorship of OED to Defendant Moatz , who was well aware of her deception and illegal

behavior. She and he intended to cover up her illegal, arbitrary and capricious theft and abuse of

power for at least five years without any public, private or other notice to the Plaintiff. That is

how "OED informed Cornish that because it had been over five years since he had been

registered, he must take the patent registration examination..." despite the lack of Constitutional

safeguard under Local Rule CvR 83.7, and no right of appeal until now. 2/25/08 Order 46, p.3.

The Defendants continued the cover up by stating that "Pursuant to 35 U.S.C. 32, anyone

refused recognition to practice before the USPTO by the USPTO Director may have that

decision reviewed by the district court for the District of Columbia." But that was not true

because Plaintiff had no way of knowing about the illegal and involuntary taking of his

registration without his knowledge, consent, acquiescence or intent, and until this case was filed

without Defendants' 12/20 Motion To Dismiss, p. 30.

2

This scheme was extended by preventing Plaintiff from being recognized even as an unregistered attorney because he was arbitrarily and capriciously required to pass an examination that he was prevented from passing by refusing to give him reasonable accommodations solely because of his age-related disabilities and over his strong objections. To this end, the plan was launched provisionally by a strategic mooting disguised only as an "intent" on March 4, 1996 (Defendant's Exhibit 8 from which no appeal was possible), implemented secretly on August 28, 1994 (Defendants' Exhibit 8 from which no appeal was possible), with a secret long-range cover-up scenario on June 15, 2000 (Defendants' Exhibit 33 from which no appeal was possible), and announced as an appealable decision by the Commissioner only when this case was filed in 2007, whereby "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants." (Memorandum Order 2/25/08 46, p. 3) (Citations omitted).

To this end, with a Jezebel-like abuse of power, the Director of OED simply and illegally placed a brief, secret, informal, handwritten note for a low-level clerical employee named "Pat's" eyes only on one internal copy of a letter dated March 4, 1996 (Defendants' Exhibit 8) to Plaintiff on file in her office. The date of her handwritten note, which was illegibly signed in tiny handwritten lettering as "KBovrd" at the top of the copy of her March 4, 1996 letter without any other identification, was August 28, 1996 (Defendants' Exhibit 8). And Defendants' Exhibit 33 illustrates that Defendant Moatz, her successor, with knowledge, consent and intent, thereafter continued the Jezebel-like abuse of power and cover-up for eleven years by his arbitrary, capricious, clearly erroneous, illegal, unconstitutional and secret letter of June 15, 2000

3

(Defendants' Exhibit 33) claiming innocence, but acknowledging his intention to seal the death of Plaintiff's professional career at some indefinite place and time in the future by secretly holding his fate in "abeyance."

The Director of OED's June 15, 2000 (Defendants' Exhibit 33) variation on the illegal plan and cover-up for a minimum of at least five years was to adjourn the investigation put on hold on March 4, 1996 (Defendants' Exhibit 8) so as to put Plaintiff's fate, and the destruction of his professional career, on hold secretly for at least the projected five years with a Continuance of an investigation that had been secretly initiated by OED on November 5, 1995 (Defendants' Exhibit 3) without Plaintiff's knowledge, consent, acquiescence or intent.

The view, which this Court adopted, is that Plaintiff is not entitled to a preliminary injunction for a new trial of the holding, finding, decision and controlling question of law, upon which the facts are strongly disputed by Plaintiff, namely that illegally by a clearly erroneous distortion of the facts, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants." (Memorandum Order 2/25/08 46, p. 3).

The only way to straighten that distortion out is to give Plaintiff a new trial of the illegal secret, provisional and optional removal of his registration on August 28, 1996, by granting him an injunction preventing Defendants from honoring that removal by a secret handwritten note on the Director of OED's letter of March 4, 1996 (Defendant's Exhibit 8), and by giving him a new trial.

The right to a new formal trial and a preliminary injunction for the irreparable injury caused by the lack of a hearing and due process on this compelling question of law is a

4

fundamental civil liberty or civil right in American jurisprudence. Plaintiff has been denied a full

opportunity to face his opponent in a trial or face-to-face to disentangle the facts that are in

dispute. This has been exacerbated especially now that this case is tainted by giving the

Defendants a Protective Order, which gives them immunity from facing a full trial in order to

cover-up their unconstitutional behavior.

The Protective Order given to the Defendants, has allowed them to dodge their

responsibility for the creation of a tangled web of facts, which has resulted in the irreparable

injury to Plaintiff that the Defendants have inflicted on the Plaintiff for eleven years by clearly

erroneous, arbitrary and capricious government abuse of power not according to law under the

APA. This has become apparent particularly in view of their holding of the Plaintiff's practice

hostage to the whims of their "Continuance" of an investigation of a non-existent Continuation-

in-part (CIP) application that Defendants have been holding in abeyance since March 4, 1996

(Defendants' Exhibit 8) (albeit, the alleged CIP may turn out to be a provisional application by

Plaintiff and a hostile co-inventor who instead of accepting an assignment of the provisional

application filed a complaint in the USPTO on November 7, 1995, unbeknownst to Plaintiff

(Defendants' Exhibit 3). The Continuance requested hereby is merely a Continuance of the

Continuance of the investigation granted to Plaintiff on March 4, 1996 (Defendant's Exhibit 8).

The reason that the facts have become so tangled and in such dispute and controversy is

that Defendants intentionally preempted Plaintiff's intent and ability to respond by foreclosing

his right of appeal and by failing to make any appealable decision, all of which was well-known

by them in order to coerce Plaintiff into silence. Furthermore, they misstated their intention as

being "to hold any investigation in abeyance with respect to Mr. Cassidy's complaint, as well as

any change in status action based upon the Maryland Court Order," because they identified the

5

underlying Maryland action as, "granting your Petition for Inactive Status from the practice of law." (Defendants' Exhibit 8). In fact, the underlying rationale of Plaintiff's inactivity in the USPTO on February 8, 1996 (Defendants' Exhibit 7), was to protect Plaintiff's client according to the rules of the PTO.

Defendants never inquired as to the rationale or intent of the Plaintiff, which they admitted was unknown to them. That was a clear indication to them that Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7) was based upon a temporary, provisional, and inconsequential inactivity in Maryland. That temporary inactivity was intended not to be permanent, and not to last for five years or more. It was initiated in order to make a clear withdrawal from his and his co-inventor's provisional patent applications and any subsequent corresponding non-provisional application by his ex-client in the U.S. Trademark Office.

And Defendants' intent, which was to coerce and manipulate the Plaintiff into silence, was enhanced by publishing their letters of March 4, 1996 and June 15, 2000 (Defendants' Exhibit 8 and 33) to blackmail Plaintiff. The initial writing and latter publication of those letters is a transparent attempt to manipulate and coerce Plaintiff into silence, and to cover up the coercion and threats of the Director of OED's strategic mooting of any investigation to avoid the expense and difficulty of a frivolous prosecution without any basis in fact or law. Their plan and intent was to coerce and threaten Plaintiff with the irreparable harm of many open-ended investigations and possible prosecutions under 35 U.S.C. 33 for at least five years, or as long as it took to deter and prevent Plaintiff's from ever being able to save his career from complete destruction solely because of his age-related disability to pass the patent examination.

To this end, they said originally and in their blackmail that it is their intent to escape liability, e.g., because Defendants Moatz and Griffin were immune from suit, whereby they

6

asked to dismiss them and this suit. To this end, they said, "Finally, to the extent that the Court has jurisdiction, Mr. Moatz and Mr. Griffin should be dismissed as a party." Defendant's 12/20/07 Motion to Dismiss pp. 30 and 34. That is Defendants' appealable and final declaration by the Commissioner of Patents to seek the shelter of absolute immunity from Plaintiff's claim for <u>Bivens</u> damages, costs and attorneys fees under the numerous fee shifting statutes, *inter alia*, including 5 U.S.C. 504 (b) (1) (A) the Equal Access To Justice Act (EAJA), as stated by the Commissioner in Defendants'' 12/20/07 Motion To Dismiss, p. 30; 28 U.S.C. 2412 (a)(1), (d)(2)(A), etc.

Their coercion, threats and blackmail have continued unabated under the umbrella of their claims of immunity without any means for an appeal until now. "Challenges to OED decisions involve a two-step process" involving "petition to the Commissioner" and "review of the OED Director's decision from the head of the USPTO" *Id.*, p. 30. To this end, they continue to manipulate and force Plaintiff into submission by unconstitutional *prior restraint* of his speech, and by continuing to hold with absolute immunity <u>any</u> of a plurality of investigations in abeyance while depriving Plaintiff of a right of appeal because of the doctrine of Governmental Immunity, and depriving Plaintiff of any safeguards, including a temporary, preliminary or permanent injunction, by publishing their letters – "It is our intention to hold in abeyance any investigation..." (Defendants' letter of March 4, 1996 and June 15, 2000, Defendants' Exhibit 8 and 33).

To prevent the irreparable harm and interference to Plaintiff and his clients that Defendants have caused, are causing, and knowingly intending to cause by continuing to coerce and threaten him with black-mail, it will take a preliminary injunction or a temporary restraining order and a reversal of the appealed Orders to give Plaintiff a new trial for the secret removal of

7

his name from the list of attorneys in the USPTO without his knowledge, consent, acquiescence or intent, and without any means for an appeal until now, which he has been actively seeking since he was able to do so.

Without an ability to appeal for such equitable relief, Plaintiff has been and will be endlessly and irreparably injured. To this end, Plaintiff has supported his burden of showing why he has been and will be irreparably injured, and has shown facts as to why it is necessary to enjoin the Defendants from refusing to grant Plaintiff a new trial of their illegal, involuntary, arrest, interference, obstruction and restraint of his practice for eleven years by unconstitutional *prior restraint*, which so disarranged his life, practice, property, privilege; harassed him; and so interfered with his clients, as effectively to remove his registration without any official action that could be appealed.

To this end, as stated by the Court, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants." (Memorandum Order 46 of 2/25/08, p. 3).

That finding by the Court has tainted this trial so much that Plaintiff cannot now receive a fair trial without remand on appeal. And that finding has so irreparably injured Plaintiff that he can never recover from his irreparable damages without remand on appeal for a new trial of the removal of his registration.

Defendants pretended not to know Plaintiff's intent by his letter of February 8, 1996, but they obviously knew, as he said, that he was working to have the Maryland "Order dissolved," and to reverse the obvious mistake made in Maryland, which was admitted by all parties. That's

8

why Maryland aborted and dissolved "any investigation" without holding it in abeyance. Thus, Defendants obviously knew that Plaintiff was not intending or requesting to be voluntarily removed from the register of attorneys. He was obviously intending to reverse his inactivity both in Maryland and in the USPTO without delay because it was irrational not to do so, or to believe that he intended that his inactivity would last five years or more before he became active again. That is why Plaintiff presented facts showing how he strongly disputed why "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants." (Memorandum Order 2/25/08 46, p. 3).

Defendants knew that Plaintiff intended to remain active in New York and to remain qualified to practice as an agent, else why would they coerce him not to use the thirty day window they gave him on March 4, 1996 (Defendants' Exhibit 8). The short 30 day period without the aid of counsel or any proof, facts or safeguards supporting what Plaintiff intended to do was part of the plan to coerce Plaintiff to rein in his practice in both the Trademark Office and the Patent Office for 30 days, or perhaps longer. They said what their intent was, but never said what they thought about Plaintiff's intent, which was obviously related to his attempt to untangle the facts surrounding the unaccepted assignment of his provisional application by his co-inventor, all as was well known to the Defendants.

Instead, the Defendants intentionally misinterpreted Plaintiff's intent, and the intent and statements of his letter as "indicating that you are ceasing practice before the U.S. Patent and Trademark Office." They knew that his inactivity in Maryland was temporary and provisional while he maintained his ability, desire and intent to seek reinstatement without any requirement

9

of a showing of fitness for his reinstatement in Maryland and the USPTO, and no inactivity was

necessary for his practice as an agent in the USPTO, or as a co-inventor. Then, by another

misinterpretation, Defendants intentionally misstated their intent as a disguised, deceptive,

counterintuitive, and self-serving strategic mooting to avoid the cost and time for a trial, which

was required by their own regulations. They used that as an invitation to entangle the facts.

Then they could secretly use the tangled facts for their own selfish purposes by stating that they

were "treating your statement as a request to have your name removed from the register."

(Defendants' Exhibit 8). One result is that the Court misinterpreted those tangled facts to taint

these proceedings and to make the playing field unequal to the irreparable injury of the Plaintiff

because the Court fails to note how everything the Defendants did was to obstruct justice,

preserve their immunity from trial, and to exploit Plaintiff's lack of any means to appeal his

irreparable injury or any final decision of the Defendants. Reference is made to pages 2 and 3 of

the Courts 2/25/08 Memorandum 46, as follows:

> Cornish applied for and passed the patent examination in 1958, and became registered to
> practice before the USPTO (citations omitted). In 1995, Cornish was removed from the register
> of attorneys in Maryland after a grievance was filed against him [citations omitted, albeit without
> discipline or disability by an Order in the wrong name]. As a result, Cornish sent a letter in 1996
> to the USPTO stating that he was "ceasing the practice before the United States Patent and
> Trademark Office" [citations omitted, albeit by a temporary, provisional inactivity in the Patent
> Office only without discipline or disability]. In response, the director of the USPTO's Office of
> Enrollment Discipline ("OED") sent a letter to Cornish stating that the USPTO was "treating
> [Cornish's letter] as a request to have [his] name removed from the register" [citations omitted,
> albeit involuntarily in both the Trademark Office and the Patent Office with the intent to secretly
> and involuntarily remove his name from the register without any knowledge, consent
> acquiescence or intent on his part]. The director's letter further explained that Cornish should
> inform OED if it was not his intent to have his name removed from the register, and described
> how he could be reinstated after his name was removed [citation omitted, albeit without any right
> of appeal or right to seek Bivens damages, costs or attorneys fees because of absolute immunity].
> After sending the letter and allowing Cornish sufficient time to respond, the OED director
> removed Cornish's name from the USPTO register in 1996) [citation omitted, albeit secretly and
> involuntarily without his knowledge, consent, acquiescence, or intent, and with an intent by the
> Defendants to hold it secret by a cover up lasting at least five years].

10

_____In2005, Cornish submitted a request for reinstatement to the USPTO register (citations omitted - albeit, his request was to qualify to be reinstated to take the patent office examination for Continuing Legal Education purposes). OED informed Cornish that because it had been over five years since he had been registered (albeit, this was unknown to him and had been accomplished secretly and involuntarily without his knowledge, consent, acquiescence, or intent), he *must take the patent registration examination* (emphasis added) or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants (citations omitted – albeit, Plaintiff is being prevented from such a showing solely because of his age-related disabilities under section 504 of the Rehabilitation Act with invidious animus, and also without the same, and rather by thoughtlessness and indifference – benign neglect that excludes his ability to show his legal qualifications because the test that he took in 2005, 2006 and 2007 is unable to disclose the degree of learning Plaintiff actually possesses because of the test format and environment is the object of discrimination solely on the basis of his handicap. The American Council Of The Blind, Et Al., v. Henry M. Paulson, Jr., Secretary Of The Treasury, No. 07-5063 (CA DC May 20, 2008), citing Choate, 469 U.S. at 295; and Se Cmty. Coll. v. Davis, 442 U.S. 397, 412-13 (1979). "The Supreme Court has instructed that section 504 does not require proof of discriminatory intent…" "The Seventh Circuit has held that under section 504 public schools must provide examinations in a format accessible to the visually impaired." Brookhart v. Ill. State Bd. Of Educ., 697 F.2d 179 (7th Cir. 1983).

Congress has empowered a Plaintiff through attorney fee shifting legislation, such as the EAJA, 28 U.S.C. 2412 (d) (1) (A) (2000 ed.) and 42 U.S.C. 1988, to sue the government as a private attorney general, as an important check on government power, and particularly as a guarantee of the separation of powers in which the Plaintiff has been authorized by Congress to start with and to maintain a level playing field with the government, including the court and the Defendants in this case, by giving him access to the courts and to an appeal as a constitutional right.

There is no principle of law found in either statute or in court decisions that requires Plaintiff to pass the patent office examination; precludes Plaintiff from practicing law in both the Patent Office and the Trademark Office as an unregistered attorney; holding himself out to so practice, and allowing others to so hold him out. Thus, Plaintiff's request for an emergency and permanent injunction to prevent the Defendants from prosecuting him under 35 U.S.C. 33; and

11

refusing to allow him to post his name as an attorney, agent or firm on his pending patent application; to practice with a power of attorney from his co-inventors who are alive, dead, unavailable or hostile; as an executor or administrator; and for clients who want to file PCT applications in the USPTO; to file an unlimited number of Continuations and claims without *prior restraint*; and to practice freely in the Trademark Office without prior restraint or threats of prosecution without ending an investigation being held illegally in abeyance since March 1996.

So far, the playing field has been tainted and distorted to Plaintiff's irreparable injury. To this end, Defendants have successfully found support in this Court for their view of the facts, which however, are in dispute in this case and have been distorted by the Court and the Defendants by clearly erroneous findings. Accordingly, the facts have become highly tangled and distorted in the allegations of the Court and the Defendants. The distortions and tainting are so intense that they have been forced into controversy and heated dispute. Accordingly, Plaintiff claims that Defendants have thwarted, tainted and obstructed Plaintiff's access to a level playing field, and a full trial with justice in which the Defendants would have had to face the Plaintiff in a hearing of any kind either in the USPTO or in this Court for the irreparable injury that they have inflicted on the Plaintiff. To this end, most recently, the Court has denied Plaintiff's Motion for a Preliminary Injunction and other miscellaneous relief, including even a Temporary Restraining Order on the basis of lack of irreparable injury even though "*he must take the patent registration examination...*" (emphasis added - 2/25/08 Memorandum Order, page 3).

And Defendants have used every method at their disposal, including what appears to have been a tentative, even provisional, "continuance" of his registration so that they could ultimately claim that their clearly erroneous secret and illegal removal of Plaintiff's registration for over five years could not be remanded for a new trial or enjoined. To this end, they have chosen an

12

unofficial, illegal, and secret involuntary removal and separation of Plaintiff from his property

and privileges on August 28, 1996 (Defendants' Exhibit 8). They did so involuntarily with a

secret, tentative, informal, handwritten note without the knowledge, consent, acquiescence or

intent of Plaintiff by asking a low level clerical employee of the USPTO to involuntarily tamper

with the computer records in the USPTO in such a way as to either be a mistake or an accident

that could be used at some time in the future as a basis for denial, or a claim that it was illegal or

an accident. It was a cover-up for the argument that the Plaintiff's name was removed from the

list of registered attorneys at his request for more than five years. Thus, "OED informed Cornish

that because it had been over five years since he had been registered, he must take the patent

registration examination" involuntarily, albeit, the exact time and place of the removal has never

been determined.

Defendants initially disguised their intent to remove his name by pretending that holding

an investigation in abeyance was only temporary, tentative, provisional by involuntarily holding

Plaintiff's practice hostage for at least 30 days from March 4, 1996 (Defendants' Exhibit 8). But

this obviously was intended to punish Plaintiff, and to cause irreparable injury to the viability

and life of his practice. To this end, it was Defendants' express intent to temporarily, tentatively,

provisionally and involuntarily hold an investigation of a non-existent Continuation-in-part

patent application in abeyance starting on March 4, 1996 despite the well known material facts

and judicial exonerations that clearly absolved Plaintiff from any fault in connection therewith,

and reinstated him in Maryland, New York State, the District of Columbia. The U.S. Tax Court,

and the Eastern District of New York dismissed their investigations. Thus, the USPTO

investigation has been held unnecessarily in abeyance without a closing letter for over eleven

years to prevent Plaintiff from knowing that his registration was defrocked, and to avoid the time

and expense of a trial by strategic or functional mooting of the investigation.

The Defendants have tainted any formal or sufficient trial by unjustified complaints "that

the plaintiff has filed an unrelenting stream of meritless motions raising immaterial issues and

containing 'a nearly undecipherable jumble of requests for relief [ . ]" Defs.' Mem. In Supp. Of

Mot. Prot. Order at 2, 4) (cited on pages 9 and 10 of the Court's 2/25/08 Memorandum Order **46**;

by a Motion for an order prohibiting plaintiff from filing any more motions without leave of

court to do so until the defendants' pending dispositive motion is resolved, *Id.*, p. 10, by Motions

for sealing and unsealing with redactions; and 100% success in defeating a series of seriously

submitted miscellaneous motions, including: (1) a motion "under Public Law 106-185 for return

of plaintiff's property," which was secretly, informally and tentatively hijacked involuntarily by

identity theft that secretly  tampered with his name on the registry of attorneys at an uncertain

date no earlier than September 28, 1996 (Defendants' Exhibit 8) or June 15, 2000 (Defendants'

Exhibit 33) without Plaintiff's knowledge, consent, acquiescence or intent (Defendants' Exhibit

8); (2) a motion for limited admission, including an objection to the admission of evidence,

which is an absolute constitutional right of the Plaintiff; (3) a motion for reconsideration of

various court orders, which is an absolute constitutional right of the Plaintiff; (4) a motion to

appoint counsel, which is also an absolute right of every citizen; (5) several motions for an

extension of time, which has been repeatedly used by both the Plaintiff and the Defendants; (6) a

motion for tolling of Local Rule LCvR 83.7, which again in a right of Plaintiff, particularly since

that motion has apparently caused Defendants to abandon their citation of that rule and their

dependence on that rule for support of their case, particularly their dispositive motions;  (7) a

motion for leave to file, which has been granted by the Court in response to the Defendants'

14

Motion to bar Plaintiff from making Motions without permission of the Court; (9) a motion to amend the complaint, which seems to be de rigueur in many cases (albeit, these are the captions used by the Court to abbreviate the large number of forms of relief requested, including, for example, a Motion to open up the record, a motion to extend discovery, a motion to subpoena Defendant Moatz as a witness; a motion for an oral hearing, a Motion for an injunction against continuing the investigation that has been held in abeyance since March 4, 1996 (Defendant's Exhibit 8)., etc.

Judicial authority to temporarily halt or restrain ongoing proceedings takes several forms. A court may, for example, as a matter of administrative convenience or necessity issue an order adjourning a case to a later time of an action pending before it. The issuance of such an order, known as a "Continuance," is recognized as an inherent power of the court and does not present the difficult issues of judicial discretion and appellate review that, perhaps, a stay may entail. And while the temporary halting by a court of its own proceedings in a case, such as this one, in which the court has discretion to adjourn or stay the proceedings, and the appellate court has the power to grant or refusal such restraint, which may depend upon a clear abuse of discretion, it is well to consider the prompt vindication of the infringement of the constitutional rights alleged by the Petitioner herein; the necessary and unnecessary prolonging of the litigation; the parties' competing interests; the economy of time, effort and costs of the court, counsel and the litigants; the efficient functioning of the courts; the appeal-ability of such orders, the adequacy of the remedies, considerations of federalism and even the antiquated distinction between courts of equity and courts of law.

In this case, a consideration of all these factors in view of the facts presented by the Plaintiff, has shown that the Plaintiff/Petitioner herein was faced with a "perfect storm" of

15

unconstitutional and *irreparable* harm that irreparably destroyed his past, present and future

viability and livelihood as an unregistered attorney in the USPTO and elsewhere by an

unconstitutional, secret, Star Chamber-like "trial" directed arbitrarily and capricious, solely and

secretly and solely by the unsupervised discretion of the Director of OED as judge and jury on

August 28, 1996 without authority of law, in violation of regulations, and without Plaintiff's

knowledge, consent, acquiescence or intent (Defendants' Exhibit 8). That action secretly

removed Plaintiff's registration without his knowledge, consent, acquiescence or intent without

any opportunity to challenge or defend himself. To this end, his registration was secretly

hijacked involuntarily, tentatively, provisionally, informally and unilaterally by identity theft and

tampering with his name on the register of attorneys in the USPTO without Plaintiff's

knowledge, consent, acquiescence or intent at least as late as August 28, 1996 (Defendants'

Exhibit 8). To this end, the OED Director secretly wrote a handwritten note for her eyes and her

private secretary's only one copy of her letter of March 4, 1996 (Defendants' Exhibit 8) without

Plaintiff's knowledge, consent, acquiescence or intent with intent to involuntarily, tentatively,

provisionally tamper with Plaintiff's name on the register of attorneys in the USPTO in

anticipation of the formal ending of his career as a patent attorney at some future date by

bringing him to trial, as required by law.

In Debra Smith v. Francis J. Harvey, No. 06-2227 (RWR) (D.C. D.C March 21, 2008), a

request for an injunction was denied because there was an interest in postponing the agency'

decision making process and judicial review by beginning the involuntary separation

proceedings tentatively and provisionally. This is because the involuntary separation can only be

made after a board has approved and recommended separation. But here the involuntary

separation is still awaiting the appointment of a board authorized by law to approve and

recommend the separation. As distinguished from Smith, *Id.*, Plaintiff was given no notice that he was being considered for involuntary separation, he was given no option to appear before an authorized separation board or to decline to appear where he would have the right to be represented by counsel, challenge members of the board, present evidence, access records, question witnesses, and testify or remain silent. *See* Smith, *Id.,* and Goldstein v. Moatz, No.03-1257 (CA 4th April 14, 2004).

   To this end, Defendants continued their discrimination against Plaintiff because of his age-related disabilities by unfairly using his grades on the 2005, 2006 and 2007 to test his knowledge, and thereby, not only to keep him from being given a new trial, but also to keep him from being reinstated according to the arbitrary and capricious requirements of the Defendants, and also as a means for *prior restraint* of his freedom of speech, press, religion and petition under the First amendment solely on the basis of his age-related disabilities. The Supreme Court has instructed that section 504 of 29 U.S.C. 701 (b) (1) does not require proof of discriminatory intent because "[d]iscrimination against a handicapped person was perceived by Congress to be most the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect." The American Council Of The Blind. Et al, *Id.*, (citations omitted).

   The Seventh Circuit has held that under section 504 that public schools must provide examinations in a format accessible to the visually impaired. Brookhart v. Ill. State Bd. Of Educ., 697 F.2d 179 (7th Cir. 1983). Its rationale was straightforward: A student, such as Plaintiff in this case, "who is unable to disclose the degree of learning he actually possesses because of the test format or environment would be the object of discrimination solely on the basis of his handicap." *Id.* at 1841, *see also* Martin v. Metro. Atlanta Rapid Transmit Auth, 225 F. Supp. 2d 1362, 1377 (N.D. Ga. 2002).

17

Plaintiff, as the non-moving party for a Summary Judgment, has proffered sufficient evidence to create a material issue of disputed fact with regard to all accommodations found facially reasonable, effective, and feasible, and he has done so in this case and in his appeal for a hearing *de novo*. He has proffered the same by showing that he has been deprived of a facially reasonable, effective and feasible alternative of an enlarged print MPEP, by showing that a TV enlargement of the text of the MPEP has been provided to all applicants except Plaintiff, especially on the non-July examinations. Also, Plaintiff has proffered that he has been denied a full day extension and copies of the marked answered questions that Plaintiff has taken solely for Continuing Legal Education purposes, and that have been offered to others and from which Plaintiff was deprived.

In fact, Plaintiff has shown clearly that Defendants have not allowed him to provide other evidence of his knowledge, qualifications, and abilities. Also, he has been prevented from getting an injunction to terminate the investigation that has been held in abeyance as an excuse to prevent his registration. It has also been used to prevent him from presenting independent proof of his knowledge, skill or viability as a patent attorney and inventor to be used if he holds himself out as a registered or unregistered patent attorney anywhere, or even as an "attorney, agent or firm," without taking and passing the patent office examination. They have required him to take the patent office examination because they have secretly, illegally and involuntarily defrocked him from registration and have prevented him from permitting others to hold himself out as a registered or unregistered patent attorney. They have involuntarily forced, manipulated, coerced and harassed Plaintiff to abandon this case and his appeal to practice in both the Trademark and Patent Offices because they have secretly and involuntarily restrained, restricted, abused, destroyed, taken or reduced in value his registration, as shown by his continual fight to

18

use his registration, preserve it, and to enhance it by holding himself out continually without interruption as a patent attorney from November 5, 1958 until the present time despite the continuing threat of prosecution by the Defendants under 35 U.S.C. 33.

One compelling question of law in this case is the immunity of the Defendants to <u>Bivens</u> damages to which there is a dispute of the facts due the declaration of absolute immunity by Defendants Moatz and Griffin, who have requested the Court to remove them as Defendants.

Another compelling question of law upon which the facts are in dispute is the need for an injunction to enjoin the irreparable harm caused by the investigation of Plaintiff that has been in abeyance involuntarily without a trial, consent, acquiescence or intent since March 4, 1996 and June 15, 2000 (Defendants' Exhibits 8 and 33). Plaintiff's burden of showing facts supporting his irreparable harm is shown by the well documented, medically certified, age-related disabilities that have been used against him to further the Defendants' intended conspiratorial purpose of requiring him to take the Patent Office examination without reasonable, effective and feasible accommodations, because of their secret Star Chamber-like proceeding against him to support and cover up their continuing investigation of his good moral character and reputation negligently without authorization of law by the torts of surreptitious surveillance, stalking, harassment, interference with his practice and clients, and invasion of privacy without his knowledge, consent or intent for over eleven years.

This continuation of the investigation held in abeyance involuntarily since March 4, 1996, without his knowledge, consent, acquiescence or intent, included investigation, contrary to the intent of the March 4, 1996 letter, as to whether he was in possession of the necessary qualifications to render to applicants valuable service as an unregistered attorney which has irreparably harmed his viability and practice as an attorney anywhere and everywhere. Money

19

damages can never attenuate, repair or compensate for such irreparable damage. Plaintiff is not free to earn a living as an attorney by practicing as an attorney or as an unregistered patent attorney as long as his practice is under surveillance and threat of investigation and prosecution by the Defendants without a closing letter. Only when the pending investigation is ended can he maximize his earnings as he should be able to do in any of the jurisdictions in which he is licensed to practice. Meanwhile, he is prevented from doing so by the discrimination, harassment, interference, and failure to give him copies of his corrected examinations under the FOIA or otherwise, by continuing threats, and refusal of the Defendants to give him reasonable accommodations for his age-related disabilities, including a TV for providing an enlarged print MPEP. Re-registration would not be a sufficient remedy for the lost eleven years of viability and practice, and the years lost thereafter without an injunction against continuation of the investigation of Plaintiff, the threat of investigation, and the threat of prosecution by the Defendants. He has no meaningful access to a viable and productive practice without an injunction against such a debilitating threat of investigation and prosecution and the harassment and interference of Plaintiff and his clients caused thereby.

Additionally, Section 504 of the Rehabilitation Act, 29 U.S.C. 794, is relevant to such an injunction as Plaintiff has been denied meaningful access to a viable and productive practice solely by the denial of reasonable accommodations for his age-related disabilities. Congress expressly intended the Rehabilitation Act to ensure that members of the disabled community could live independently and fully participate in society. 29 U.S.C. 701 (b)(1). *See* The American Council Of The Blind, Et al., *Id.*

Section 504 of the Rehabilitation Act provides that:

20

No otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency...

The Supreme Court has instructed that section 504 does not require proof of discriminatory intent because "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – of benign neglect." Choate, 469 U.S. at 295, *see also* Se. Cmty. Coll. v. Davis, 442 U.S. 397, 412-13 (1979). Further, the Court has acknowledged that where a public entity refuses to accommodate otherwise qualified disabled individuals, its refusal may be "unreasonable and discriminatory." Choate, 469 U.S. at 300 (quoting Davis, 442 U.S. at 413; and The American Council For The Blind, *Id.,* which was an interlocutory appeal from a denial of reasonable accommodations (citations omitted).

Plaintiff has a Bachelor of Arts degree and a Master of Science in Electrical Engineering, and currently is unemployed. He is admitted and in good standing as an attorney in Maryland, DC, New York State, the Eastern and Southern Districts of New York, the U.S. Tax Court, the CAFC and the Supreme Court of the United States. He and others have held him out as a patent attorney since November 5, 1958, when he was granted registration, which Plaintiff claims as a patented property right and constitutionally protected property right and privilege, and Defendants dispute. He has never been disciplined by the USPTO, although he has been threatened with an investigation and prosecution under 35 U.S.C. 33. *See*, e.g., p. 5 of Defendants' 12/2007 Motion To Dismiss.

Plaintiff is one of the 3.7 million Americans who are visually impaired. The American Council For The Blind, *Id.* As part of He has developed a coping mechanism to practice as an

21

unregistered attorney by addressing his medically documented age-related, life-function

disabilities, including impaired vision, blood circulation, breathing, urinary function and

learning. For example, he has repeatedly and successfully been qualified to be reinstated to take

the patent office examination for Continuing Legal Education (CLE) purposes without ever

having been refused recognition to do so, or suspended or excluded from doing so (albeit,

Defendants dispute that he has done so under protest for lack of reasonable accommodations for

an enlarged format MPEP, such as provided to all other examinees on the non-July edition of the

examination.

Defendants dispute that these accommodations can be decided by this Court or on Appeal

by Plaintiff's request herein and here before for an injunction to prevent the Defendants from

refusing to provide the inadequate accommodations provided heretofore according to stipulation

by the Director of OED (Defendants' Exhibit 33).

It is a disputed fact as to whether the Defendants have a burden of showing that a

reasonable accommodation requested by Plaintiff would constitute an unreasonable burden, and

that Plaintiff has shifted the burden to Defendants by showing that "a requested accommodation

would be reasonable on its face" so as to shift the burden to Plaintiff. Am. Council of the Blind,

463 F. Supp. 2d 59 (quoting U.S. Airways, 535 U.S. at 402). Plaintiff has met his burden and

shifted the burden to the Defendants by showing that every person taking the examination given

by a private contractor has been provided an enlarged format MPEP by means of a computer,

which Plaintiff has requested but been refused. It is impossible for the visually impaired to see

the enlarged format MPEP without electronic intervention, such as the closed circuit TV

provided for all PTO tests given by private contractors. The Defendants have categorically

denied any and all access to closed circuit TV for July test takers, including Plaintiff, although

22

they have admitted that such a possibility would provide a reasonable accommodation without an undue burden to them.

The Defendants do not contest three self-evident elements of liability under section 504. First, the visually impaired are disabled within the meaning of the statute. Second, the visually impaired are qualified to engage in commerce using their licenses as lawyers with he approval of the Defendants, but Defendants dispute that licensed attorneys can hold themselves out as unregistered attorneys, agents or firms in the USPTO or elsewhere without registration by the Defendants, Third, the production and design of the patent office tests is a "program or activity" carried out by the Defendants within the meaning of section 504. The failure of the Defendants to challenge the applicability of section 504 is understandable given the expansive meaning of the words "any program or activity." *See* United States v. Gonzales, 520 U.S. 1, 5 (1997); and The American Council for the Blind, *Id.* *(*citations omitted), in which the Council demonstrated, as Plaintiff has done here, that "a requested accommodation would be reasonable on its face." Plaintiff has shifted the burden to the Defendants to demonstrate ultimately that an accommodation he requested and that have been refused would constitute an undue burden.

The accommodations requested but denied to Plaintiff are not new. Plaintiff has not asked for an extension of benefits beyond those previously provided to others. Defendants have through contractors long supplied closed circuit TV with capabilities of providing enlarged format letters for reading by the visually impaired. Also, copies of past examinations have been provided on a limited basis heretofore, just as extended hours of up to two days have been provided to unblock access for disabilities. And proof of intent to discriminate is not required under section 504.

Failure to provide a reasonable accommodation has been shown as an obstacle that impedes access to a government program or benefit, whereby Plaintiff has established that he lacks meaningful access to the program or benefit. The Seventh Circuit has held that under section 504 public schools must provide examinations in a format accessible to the visually impaired. Brookhart v. Ill. State Bd. of Educ, 697 F.2d 179 (7th Cir. 1983). Its rationale was straightforward: A student "who is unable to disclose the degree of learning he actually possesses because of the test format or environment would be the object of discrimination solely on the basis of his handicap." *Id.* at 184; *see also* Martin v. Metro. Atlanta Rapid Transit Auth., 225 F.Supp2d 1362, 1377 (N.D. Ga. 2002).

Plaintiff has met his burden of showing the accommodations refused heretofore inhibit and have prevented the visually impaired from obtaining registration, which is the sine qua non for entry-level employment as a registered patent attorneys and for maximizing the viability and livelihood of the same.

## CONCLUSION

**In view of the above, this Court is requested to consider carefully this Motion made herein, herewith and hereby, and the Remarks in support to allow Plaintiff a Continuance and an adjournment to enable the Defendants time to file their Appeal Brief in Plaintiff's appeal of the Minute Order of 5/30/08 and other formal written Orders so that he can properly ask the Appellant Court to reverse and remand the District Court's denial of temporary and preliminary interlocutory relief, which effectively made the Appellees immune from a trial for emergency and equitable relief for irreparable harm that has been clearly shown to exist but presently denied by this Court. The Appellant can thus ask for reversal and remand without prejudice to Appellant's right to reserve the right of this**

24

Court to certify and transfer or merge his Appeal into the related Appeal in the CAFC;

and also without prejudice to the continuation of the trial in this case by the District Court

in this Circuit by Reversal and Remand for Reconsideration of the Appealed District

Court's Orders, including their Order of 5/8/08 Denying Petitioner's Motion For

Injunctive Relief And Refusing to Give An Opinion Under Section 1292 (b) That Such

Order Involves A Controlling Question of Law, And That An Immediate Appeal Would

Materially Advance The Ultimate Termination Of The Litigation Below, And In This

Appeal No. 08-5089.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* –

Cornell D.M. Judge Cornish Down Pat TM SM (c) 2008

> Respectfully submitted,
>
> *Cornell D. M. Judge Cornish*
> Cornell D.M. Judge Cornish *pro se*
> DC Bar #366240
> 1101 New Hampshire Ave., NW, Suite 301
> Washington, DC 20037
> (202) 429-9705
> cornishj@erols.com

Date:  6/18/08

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Appellant's Motion,

Response and Remarks in support of his interlocutory appeal have been served by hand by

delivering a copy thereof to:

W. Mark Nibeker
[LD NTC GVT ATTY USAO/AUSA]
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    *18 th*    day of June, 2008.

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301

*Date: 6/18/08*

26

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,    )
                                    )
            **Plaintiff *Pro Se***       )
       **v.**                         )
                                      )
                                      )    **Case 1:07cv01719 (RWR)**
                                      )
**JON DUDAS, et al.**               )
                                      )
          **Defendants**       )
                                      )
_____)

## ORDER

UPON CONSIDERATION of Plaintiff's Motion for a Continuance until Defendants file

their brief in the interlocutory appeal 08-8059 of this case, and his Memorandum in support of

his Motion, which is also in Response and in Opposition to the Minute Order of 6/11/08, and the

entire record, it is this fifth day of June, 2008, hereby

ORDERED that Plaintiff's Motion should be and it is hereby Granted.


                              _____
                                 United States District Judge


W. Mark Nebeker                     Cornell D.M. Judge Cornish, *pro se*
Assistant United States Attorney       1101 New Hampshire Ave., NW
Civil Division                         Suite 301
555 4th Street, NW                 Washington, DC 20037
Washington, DC 20530           (202) 429-9705
(202) 514-7230 fax (202) 514-8780

1