**RECEIVED**

JUL - 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
                                )
**Plaintiff *Pro Se***          )
                                )
v.                              )          **Case 1:07cv01719 (RWR)**
                                )
JON DUDAS, et al.               )
                                )
**Defendants**                  )
                                )
                                )
_____ )

### Motion For A Initial Conference Pursuant To Local Civil Rule 16.3 In Response To And In Opposition To The Minute Order Of 6/19/08

This is a Motion for a Rule 16.3 Order for a Conference, *inter alia,* to preserve Plaintiff's

rights under the 1st Amendment. Davis v. Blakely, No. 07-2262 (RWR)(DC DC Order 4/14/08).

This Motion is in Response to, and in Opposition to the Minute Order of 6/19/08 that

prevented the Plaintiff from gaining any kind of Preliminary Stay, Order or Preliminary

Injunction against Defendants to preserve the relative positions of the parties until trial on the

merits can be held for the protection of his First Amendment and other constitutional rights, and

for the irreparable harm caused by Defendants. University of Texas v. Camenisch, 451 U.S. 390,

395 (1981); Zhengxing v. The U.S. PTO, Case No. 07-1918 (RWR)(Dist. Ct. DC 4/29/2008

filing by Plaintiff); and Davis v. Blakely, No. 07-2262 (RWR)(Dist. Ct. DC Order 4/14/08).

Also, the Court has immunized the Defendants from responding. The effect has been the

same as if the Court had been somehow effectively established as a wartime Prosecutor of a

1

enemy combatant at Quantanamo Bay and replaced by the Criminal Section in the Civil Rights Division of the U.S. Department of Justice, or the U.S. Attorney for the District of Columbia for the investigation of the Plaintiff, and a cover up of a botched investigation that is being held, and has been held, in abeyance by the Defendants since March 4, 1996 (Defendants' Exhibit 8).

That abeyant investigation has taken on the color of a secret violation of Plaintiff's constitutional rights that has been covered up as an alternate dispute resolution procedure gone wrong and covered up as a strategic mooting of Plaintiff's practice, not only in the Patent and Trademark Offices, but outside of the PTO. And, to add insult to injury, that mooting has made Plaintiff a person of interest as in the case of Steven J. Hatfill, who has settled with the Government for $5.85 million because the defendants' evidence collection, like the evidence collection here, failed to bring to light any evidence of wrong-doing.

As a consequence of the botched evidence collection, Hatfill, like the Plaintiff here, have both satisfied their burden of showing that they were irreparably injured by the loss of their jobs. Plaintiff was coerced to give up all his clients both in and outside the Patent Office independently of whether he was or was not registered as an attorney in the USPTO, and in his practice as a lawyer and a patent attorney both in and outside the Patent Office. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998).

Also, the reputation of both men was tarnished by violations of their constitutional rights, which irreparably harmed them by preventing them from earning a living. This was a significant, particularized, and concrete injury in fact that was casually connected to the agency action initiated by the Defendants *sua sponte*. It is not, and was not, speculative, nor could it be redressed by a settlement of one million dollars in money damages alone. But it could be redressed successfully as a preliminary injunction to preserve the relative positions of the parties

2

until the hearing on the merits. <u>Atlantic Sea Island Group v. Connaughton</u>, Case No. 1:2008cv00259, Document 11 (Dist. Ct. DC 3/17/2008) (RWR).

To this end also, the Court has found that the Defendants have required that Plaintiff "take" the patent registration examination because he is unregistered in preference to the protection of his First Amendment and other constitutional rights. But this is a constitutional violation because there is nothing in law, either statutory or case law or regulation that would require such an agency action.

The Supreme Court has established precedents that justify at least one interlocutory appeal in one "small class" of "collateral" interlocutory district court decisions that are subject to revision, and even if they are "fully consummated decisions [that] are but steps towards final judgment in which they will merge." <u>Cohen v. Benefiicial Industrial Loan Corp.</u>, 337 U.S. 541, 546 (1949). Apr. 20, 2006); and *see* <u>Behrens v. Pelltier</u>, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to immunity and from standing trial.

This "small class" of interlocutory decisions comprises the ordinary absolute or qualified immunity case, such as this one, where the harm is irreparable and permanent, to conclusively or finally determine disputed issues that are effectively unreviewable and completely separate from the merits of the case, i.e., claims that are of right, "separable from," and "collateral" to rights asserted in the action, which are too important (and meritorious) to be denied interlocutory review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* Post-trial review will come too late to avoid the harm, and the legal issue is "separate" enough from the more basic substantive issues of Plaintiff's

Bivens tort and damage claims in this case to avoid significant duplication of appellate court time and effort. *See* 472 U.S., at 527-529.

The object an interlocutory appeal is to prevent the denial of a clearly erroneous decision denying an injunction for lack of irreparable harm in a case with clear merit and chance of success with little harm to the government or the public, and where the denial is part of a sequential and long lasting pattern of obstructing justice, so as to provide Defendants with immunity from equitable relief and damages by standing trial. To that end, the Defendants have sequentially defeated the substantial and merited claims of the Plaintiff based upon disputed material facts relating to the effective "house arrest" of Plaintiff's practice of patent, trademark and copyright law by a strategic mooting of an investigation by Defendants on March 4, 1996 (an investigation that is still pending, and which was perfected by a secret, irreparable, hijacking and identity theft of his practice on August 28, 1996 by violation of hi First Amendment right to be free of *prior restraint* of his speech, press, religion and petition rights), in order to escape the required trial and burden of proof by standard revocation procedures, due process, equitable relief, Bivens damages and attorney's fees by the denial of a Temporary Restraining Order, A Temporary Injunction, or a Preliminary Injunction. The denial of such temporary and revocable relief is but a way of preventing Plaintiff from obtaining his full day in court by a trial of Appellant's claim for one million dollars in Bivens damages. *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

The court in Cohn, *Id.*, said that it applied interlocutory appeals to "that small class" of orders that determine claims of right "too important to be denied [immediate] review." This is one of those small class of interlocutory orders where the Appellant's Motion was denied in summary fashion without notice or opportunity to be heard, which violated his right to

4

procedural due process, and substantive due process for his clearly established <u>Bivens</u> damage and Constitutionally protected First Amendment rights, as well as his property and other liberty rights to a specific employment and to pursue Plaintiff's profession free from undue governmental interference that can and should be reviewed, reversed and remanded without prejudice or referral to the CAFC under 28 U.S.C. 1338. *See* <u>Behrens v. Pelletier</u>, 516 U.S. 299 (1996), in which the government held an investigation over the head of the litigant, despite a statute of limitations defense (albeit, the Defendants in this case have been holding an investigation over the head of the Appellant with a statute of limitations claim for about eleven years on the basis of a reverse RFI on March 4, 1996 (Defendants' Exhibit 8), that narrowed his registration by the coercion of a strategic mooting of an investigation not known by Appellant to be open, and then which was secretly removed and secretly hijacked by identity theft without Constitutionally sufficient notice to the Plaintiff by a secret handwritten note dated August 28, 1996 on the reverse RFI of March 4, 1996 (Defendants' Exhibit 8). Thereafter, the investigation was closed without notice or a closing letter to the Appellant on June 15, 2000. (Defendants' Exhibit 33). *See* <u>United States v. Sheehan</u>, No. 07-3002 (decided January 11, 2008 CA DC Cir.), where the narrowing of a permit was relevant to the assessment of the knowledge and intent of the litigant and the deprival of any opportunity to present a defense.

It is noted that this case differs from <u>Sheehan</u>, *Id.*, in that in this case the holder of a permit did not voluntarily withdraw his existing permit and apply for a new one, and there is every indication in Constitutional law and equity obliging the Government to follow the revocation procedures codified and required by law. In both cases, moreover, there was a Government failure to give any notification that the scope of the permits was narrowed and secretly hijacked by identity theft. In this case, like in the <u>Sheehan</u> case, *Id.* that is relevant to an

5

assessment of Appellant's knowledge and intent during the time from the Maryland Bar Counsel's letter of December 6, 1996 (Defendants Exhibit 6), and February 8, 1996 (Defendants' Exhibit 7), until the reverse RFI of March 4, 1996, or the minimum 30 day period assigned to the Defendants for holding the investigation in abeyance before presenting a "closing letter" or a formal complaint to which Appellant would have been obligated to respond or face discipline or some other Draconian penalty.

A Controlling Question of Law for determination in this *interlocutory* appeal, is whether this Court has jurisdiction to determine in this interlocutory appeal if the Defendants lack immunity to stand trial for temporary and preliminary equitable relief, and money damages in connection with Appellant's claim for <u>Bivens</u> damages? *See* <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). In this connection, the Defendants' claim that Defendants Moatz and Griffin are absolutely immune because they have asked the Court to remove them from the litigation without liability. *See* page 34 of Defendants' 12/20/07 Dispositive Motions to Dismiss or for Summary Judgment – "c. <u>Defendants Moatz and Griffin Should Be Dismissed</u> To the extent the Court determines that it has jurisdiction over Plaintiff's *reinstatement claim* under 35 U.S.C. 32 and does grant Defendants' motion to dismiss the reinstatement claim under Fed. R. Civ. P. 12 (b) (1), then it is appropriate for the Court to dismiss the defendants, Harry I. Moatz and William J. Griffin." (Emphasis added).

In their long lasting effort to avoid standing trial for equitable relief, damages and attorney's fees, the Defendants' 12/20/07 filing, like the District Court's Order of 2/25/08 (*See* Pp. 1-2), is a continuing phantasmagoria or sequence of real or imaginary images like that seen in a dream to deprive Appellant of his Constitutional rights. That dream raises the not-so-widely feared phantom spectre imagined by Defendants in the imagination of "<u>Reinstatement Police</u>," or

the Director of OED, Defendant Moatz and his investigator, Defendant Griffin. They feel that

Appellant is a threat to what they consider is their "mission to protect the public from

incompetent practitioners." *See* page 35 of Defendants' 12/20/07 filing, when in fact they are

referring to Invention Promoters under the Inventor's Protection Act of 1999, as if Appellant is

pandering falsely to an imaginary real person rather than a general audience without any specific

knowledge or intent to pander deceitfully. The problem with that clearly erroneous and

manipulated error not in accordance with law, it that the phantom "Reinstatement Claim" does

not exist in this case.

According to page 34 of their 12/20/07 filing, Defendants Moatz and Griffin should be

dismissed with absolute immunity from any temporary injunction denied by the Orders of the

District Court under the plain terms of section 32 of title 35 of the U.S. Code, which they say

"grants the Court [has] jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin."

They cite for comparison, Gager v. Ladd, 212 F.Supp. 671 (D.D.C. 1963) (discussing authority

under 35 U.S.C. 32, to review [of] the action of the Commissioner of Patents) (albeit, they allege

that the Commissioner is immune under the Reinstatement Claim because he has not made a

decision that can be reviewed by this Court).

And deviously, according to page 32 of Defendants' 12/20/07 filing, they can escape

liability and standing trial because "The USPTO Director has not issued a decision regarding

Plaintiff's reinstatement request." They further state that, "Because this Court does not have a

final agency action from the USPTO to review, i.e., a USPTO Director decision, it should

dismiss the claim under Fed. R. Civ. P. 12 (b) (1)." They cite, Natural Resources Defense

Council v. Johnson, 422 F.Supp.2d 105 (D.D.C. 2006). They additionally cite Ticor Title Ins.

Co. v. FTC, 814 F.2d 731m 746 b,2 (D.C. Cir. 1987) for the proposition that the "Court did not

have [*Court does have*] jurisdiction over matter because defendant had not taken final agency decision." (Emphasis and brackets added because statements are inconsistent). They note that: "the finality requirement applies to 'agency action made reviewable by statute,'" for example, under the [Age Discrimination in Employment Act] ADEA. By implication they attempting to avoid liability and from standing trial by applying as a Controlling Question of Law the failure to make decisions in connection with both the FOIA and ADEA claims made by Plaintiff in this case, and Defendants' claims, which are genuine issues of fact in dispute, "for failure to exhaust administrative remedies."

Plaintiff made an interlocutory appeal of such an absurd, clearly erroneous, and imagined defense against a "Reinstatement Claim" without any basis in fact. Appellant's interlocutory appeal is for reversal and remand of the interlocutory Orders denying Appellant's meritorious request for equitable relief, his Bivens tort claim for damages, and for attorneys fees for Constitutional violations by Defendants who are not absolutely immune based upon Supreme Court precedents that justify at least one interlocutory appeal in one "small class" of district court decisions, such as this case, that are subject to revision, even if they are "fully consummated decisions [that] are but steps towards final judgment in which they will merge." Cohen v. Benefiicial Industrial Loan Corp., 337 U.S. 541, 546 (1949).

For example, this "small class" comprises this ordinary absolute or qualified, interlocutory immunity case, where the harm is irreparable and permanent, to conclusively or finally determine the Controlling question of law involved relating to the disputed issue of immunity that is effectively unreviewable and completely separate from patent law and 35 U.S.C. 1, et seq. *See* the cited 4th Circuit case that accepted interlocutory jurisdiction in Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See also* Goldstein, 364 F.3d at

8

211-19; Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006). The cited Goldstein case, Id., which involved an interlocutory appeal by a patent attorney, is much like the interlocutory appeal in this case and the one accepted in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

That Controlling question of law is also completely separate and independent of the merits of the case, i.e., the claims of Appellant as of right, "separable from, and collateral to, rights asserted under the patent laws in the action, which are too important to be denied interlocutory review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. Post-trial review will come too late to avoid the *emergency* of the *irreparable harm* involved (which was denied by the District Court in this case), and the legal issue is "separate" enough from the more basic substantive issues of Appellant's Bivens tort and damage claims in this case to avoid significant duplication of appellate court time and effort. See 472 U.S., at 527-529; and the 4th Circuit case that accepted interlocutory jurisdiction in an appeal without going to the CAFC, in Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). See also Goldstein, 364 F.3d at 211-19; Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006); and much like the interlocutory appeal accepted in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

The Appellees opposition to this Court's jurisdiction is a delaying tactic. Reference is made to the so-called war on constitutional tort lawsuits played out in the field of motion practice rather than in the courtroom. See Defendants' Motions for sealing and unsealing with redaction,

9

for an Order of Protection, and for Summary Judgment or a Motion to Dismiss in this case to avoid responding to the Appellant in a trial or even in discovery. Also, their proposed Order attached to their 5/8/08 filing, seeks and sets forth: "that plaintiff's motion [52] for permission to file an interlocutory appeal be, and hereby is, DENIED." And they additionally seek denial of "Appellant's Motion for Amendment of Appeal" and its "dismissal," and their Dispositive Motions for Summary Judgment and Dismissal are pending in order to frustrate Appellant's request for a trial. Appellant has also asked for mediation and settlement without any response from the Defendants. He is now asking for referral, transfer and merger of Appellant's claims that are limited to an appeal under the patent law with the Appellees' substantially similar case now on appeal in the CAFC.

This Court should determine the Controlling Question of Law as to whether this interlocutory appeal has to be completely transferred to the CAFC under 28 U.S.C. 1338, as arising in whole or part under 35 U.S.C. 1, et seq? Or does proof that this is a meritorious case need to be bifurcated and transferred to the CAFC, whether appropriate or not, or can it be decided under the general appellate jurisdiction statute, 28 U.S.C. 1291? Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). See Goldstein, 364 F.3d at 211-19; and No. 05-1399 (CA 4th Apr. 20, 2006); Behrens v. Pelltier; and Mitchell v. Forsyth, 472 U.S. 511 (1985).

The record is incomplete in this case in connection with the Appellees' Final Revised Rules that were to be effective November 1, 2007. The status of this case in the District Court, which is still pending there, is prior to discovery and a final decision on Appellant's request for a permanent injunction. The District Court has not decided the latter issue, which is still pending, but the issue of whether the Appellees need to stand trial on the Controlling Question of law, which is a "collateral" issue relating to denial of temporary equitable relief, has been finally

settled. Appellant asks this Court to decide that those Controlling Questions of Law and the genuine issues of fact in dispute which are involved in this case be decided and remanded to the District Court without prejudice while the case is still pending in the District Court, and while preserving the parties right of appeal to the CAFC from a final decision after a final trial of the issues in the District Court.

This Court will be unable to review the incomplete record in connection with the Final Revised Rules until the record in more complete in connection with those Rules in this case, so this Court should adjourn this case for a completion of the Record. The same is not the case if the portion of this case relating the Final Revised Rules is certified by this Court for transfer and merger with the case that the Defendants have already appealed to the CAFC. Those are Controlling Questions of law as to whether those Rules will be finally held to be invalid and void on appeal to the CAFC from the District Court of the Eastern District of Virginia and the District Court in this Circuit. The Defendants and the Plaintiff should equally be able to have a trial in this Circuit, and an appeal in this case of a final decision that is appealable to the CAFC on the basis of what is decided in that case, which is substantially similar, with some Constitutional issues added, to the case against substantially the same Defendants, identified as Tafas v. Dudas, et al., 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va., which addressed one of the "controlling question of law" involved under 28 U.S.C. 1332. *See* Defs.' Opp'n to Pls.' Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

As an aid to these proposed solutions, Plaintiff has asked for mediation and settlement talks in this case. Lacking a positive outcome in favor of Plaintiff, this case should be bifurcated without prejudice only as to the added and corresponding claims relating to the invalidity and unconstitutionality of the Final Revised Rules by certifying those issues for transfer to the CAFC

11

and merger with the cited <u>Tafas</u> case <u>Id.</u> that is already in the CAFC. Alternately, that portion of this case could be held in abeyance over the summer recess in the Court's business pending the possible outcome of the cited case in the CAFC.

The <u>Bivens</u> damage claim in this case, which is an independent "collateral" claim not related to the Patent Laws, should be held in abeyance for a Conference in the District Court for further proceedings in connection with the issue of the immunity or lack of immunity from equitable relief, <u>Bivens</u> damages, and attorney's fees of the Defendants in this Court or on appeal.

In this connection, Defendants have avoided a judgment against them as to this Controlling Question of Law relating to "immunity" or the lack thereof. *See* <u>Goldstein v. Harry I. Moatz, et al</u>, No. 03-1257 (CA 4th 2004), where the facts were substantially the same. Goldstein was a patent lawyer, who appealed an award of absolute immunity accorded certain officials of the Patent and Trademark Office for their conduct in an attorney disciplinary investigation. The same officials in this case have been holding an investigation in abeyance since March 4, 1996. *See* his letter of June 15, 2000 from Defendant Moatz in his Exhibit 33. And the District Court's Orders, including their Order of 5/8/08, refusing Plaintiff equitable relief are effectively awards of absolute immunity to that same official on Plaintiff's meritorious request for immediate, emergency relief whose merit has been judicially determined to be valid and recognized by implication in the <u>Tafas</u>, case *Id.*

The request for the removal of Defendant Moatz and Griffin are also effectively consistent with a Court Order for absolute immunity. *See* also <u>Goldstein</u>, 364 F.3d at 211-19s, in which the Court of Appeals in the Fourth Circuit ; and No. 05-1399 (CA 4th Apr. 20, 2006); and <u>Behrens v. Pelltier</u>, 516 U.S. 299 (1996).

12

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and Plaintiff has justified the same by the above and a clear showing and incorporation by reference and judicial notice of the substantially similar <u>Tafas</u> case, that the record is not "sufficient to demonstrate a lack of right to relief." <u>Smith v. Harvey</u>, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006) (citing <u>Johnson v. Holway</u>, 329 F. Supp. 2d 12, 14 n.1 (D.D.C. 2004); Local Rule 65.1 (d). And Plaintiff has likewise shown the required four factors and other factors, including irreparable injury, such as those used in <u>Citizens United v. FEC</u>, Civil Action No. 07-2240 (ARR, RCL, RWR), 2008 WL 134226, at *2 (D.C.C. Jan 16 2008). Like the substantially same successful case of <u>Tafas v. Dudas, et al.</u>, 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va., which addressed the "controlling questions of law" and the disputed facts involved under 28 U.S.C. 1332. Plaintiff has likewise shown that: (1) there is a substantial likelihood that he will have success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunctions requested. *See* Defs.' Opp'n to Pls.' Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

The secret hijacking of his registration by a secret identity theft without his knowledge, consent, acquiescence or intent, clearly caused an irreparable loss of Plaintiff's viability and profession and constitutionally protected privilege to practice as an unregistered attorney, agent or firm anywhere for more than eleven years from March 4, 1996 to the present. Any and all

By refusing an injunction and a new trial of his removal, the viability of Plaintiff's practice in both the Patent Office and the Trademark Office are permanently and irreparably injured without any possibility of corrective action. Failure to obtain an injunction and the

closing of the investigation being held in abeyance by a closing letter will subject him to criminal

penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an

unregistered attorney because he is still subject to investigation without a closing letter. This is

clearly submitted as "competent evidence into the record ... that would permit the Court to

assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is

not issued [,]" and does not provide merely "only broad conclusory statements as to alleged

harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB), 2005 WL 1119797, at *3 (D.D.C.

May 11, 2005).

Plaintiff has indeed clearly demonstrated why the material facts presented show why the

requested Conference should be granted. The substantial irreparable injury to him by the

Defendants is grounds for finding that he should be permitted to practice as an [unregistered]

patent attorney" in the jurisdictions where he is admitted by holding himself out as an attorney,

agent or firm without *prior restraint* by the Defendants.

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and Plaintiff has justified the

same by the above and a clear showing and incorporation by reference and judicial notice of the

substantially similar Tafas case, that the record is not "sufficient to demonstrate a lack of right to

relief." Smith v. Harvey, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C.

July 17, 2006) (citing Johnson v. Holway, 329 F. Supp. 2d 12, 14 n.1 (D.D.C. 2004); Local Rule

65.1 (d). And Plaintiff has likewise shown the required four factors and other factors, including

irreparable injury, such as those used in Citizens United v. FEC, Civil Action No. 07-2240

(ARR, RCL, RWR), 2008 WL 134226, at *2 (D.C.C. Jan 16 2008).

Like the substantially same successful case of Tafas v. Dudas, et al., 1:07cv846 (JCC)

and 1:07cv1008 (JCC) in the E.Distr. Va., which addressed the "controlling questions of law"

14

and the disputed facts involved under 28 U.S.C. 1332. Plaintiff has likewise shown that: (1) there is a substantial likelihood that he will have success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunctions requested. *See* Defs.' Opp'n to Pls.' Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

The secret hijacking of his registration by a secret identity theft without his knowledge, consent, acquiescence or intent, clearly caused an irreparable loss of Plaintiff's viability and profession and constitutionally protected privilege to practice as an unregistered attorney, agent or firm anywhere for more than eleven years from March 4, 1996 to the present. Any and all

By refusing an injunction and a new trial of his removal, the viability of Plaintiff's practice in both the Patent Office and the Trademark Office are permanently and irreparably injured without any possibility of corrective action. Failure to obtain an injunction and the closing of the investigation being held in abeyance by a closing letter will subject him to criminal penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an unregistered attorney because he is still subject to investigation without a closing letter. This is clearly submitted as "competent evidence into the record ... that would permit the Court to assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is not issued [,]" and does not provide merely "only broad conclusory statements as to alleged harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB), 2005 WL 1119797, at *3 (D.D.C. May 11, 2005).

Plaintiff has indeed clearly demonstrated why the material facts presented show why the requested Conference should be granted. The substantial irreparable injury to him by the

15

Defendants is grounds for finding that he should be permitted to practice as an [unregistered] patent attorney" in the jurisdictions where he is admitted by holding himself out as an attorney, agent or firm without *prior restraint* by the Defendants.

CONCLUSION

**In view of the above, this Court is requested to consider carefully and grant this Motion made herein, herewith and hereby for a Conference in light of this Memorandum in support thereof.**

*"Attorney, Agent or Firm –* Cornell D.M. Judge Cornish" or *"Attorney, Agent or Firm –* Cornell D.M. Judge Cornish Down Pat TM SM © 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:   7/2/08

16

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this   second   (2d)     day of July, 2008.

*Cornell D.M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:   7/2/08

17

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,              )
                                         )
        Plaintiff *Pro Se*               )
                                         )
        v.                               )       Case 1:07cv01719 (RWR)
                                         )
JON DUDAS, et al.                        )
                                         )
        Defendants                       )
                                         )
                                         )

**Memorandum In Support Of Motion For A Initial Conference Pursuant To Local Civil Rule 16.3 In Response To And In Opposition To The Minute Order Of 6/19/08**

This is a Memorandum in support of Plaintiff's Motion for a Rule 16.3 Order for a Conference, *inter alia,* to preserve Plaintiff's rights under the First Amendment.

This Memorandum and Motion are in Response to, and in Opposition to the Minute Order of 6/19/08 that prevented the Plaintiff from gaining any kind of Preliminary Order against Defendants to preserve the relative positions of the parties until trial on the merits can be held for the protection of his First Amendment and other constitutional rights, and for the irreparable harm caused by Defendants. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Zhengxing v. The U.S. PTO, Case No. 07-1918 (RWR)(Dist. Ct. DC 4/29/2008 filing by Plaintiff); and Davis v. Blakely, No. 07-2262 (RWR)(Dist. Ct. DC Order 4/14/08).

Also, the Court has immunized the Defendants from responding. The effect has been the same as if the Court had effectively established itself as the Judge, Jury and Prosecutor of the

Criminal Section in the Civil Rights Division of the U.S. Department of Justice, and as the U.S. Attorney for the District of Columbia for the investigation of the Plaintiff, and a cover up of a botched investigation that is being held, and has been held, in abeyance by the Defendants since March 4, 1996 (Defendants' Exhibit 8). That abeyant investigation has taken on the color of a secret violation of Plaintiff's constitutional rights that has been covered up as an alternate dispute resolution procedure gone wrong and covered up as a strategic mooting of Plaintiff's practice, not only in the Patent and Trademark Offices, but outside of the PTO. And, to add insult to injury, that mooting has made Plaintiff a person of interest as in the case of Steven J. Hatfill, who has settled with the Government for $5.85 million because the defendants' evidence collection, like the evidence collection here, failed to bring to light any evidence of wrong-doing.

As a consequence of the botched evidence collection, Hatfill, like the Plaintiff here, have both satisfied their burden of showing that they were irreparably injured by the loss of their jobs. Plaintiff was coerced to give up all his clients both in and outside the Patent Office independently of whether he was or was not registered as an attorney in the USPTO, and in his practice as a lawyer and a patent attorney both in and outside the Patent Office. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998).

Also, the reputation of both men was tarnished by violations of their constitutional rights, which irreparably harmed them by preventing them from earning a living. This was a significant, particularized, and concrete injury in fact that was casually connected to the agency action initiated by the Defendants *sua sponte*. It is not, and was not, speculative, nor could it be redressed by a settlement of one million dollars in money damages alone. But it could be redressed successfully as a preliminary injunction to preserve the relative positions of the parties

2

until the hearing on the merits. <u>Atlantic Sea Island Group v. Connaughton</u>, Case No. 1:2008cv00259, Document 11 (Dist. Ct. DC 3/17/2008) (RWR).

To this end also, the Court has found that the Defendants have required that Plaintiff "take" the patent registration examination because he is unregistered in preference to the protection of his First Amendment and other constitutional rights. But this is a constitutional violation because there is nothing in law, either statutory or case law or regulation that would require such an agency action.

Referring, for example, to 37 C.F.R. 10.14 "Individuals who may practice before the Office in trademark and other non-patent cases,"

Non-lawyers. Individuals who are not attorneys are not recognized to practice before the Office in trademark and other non-patent cases, except that individuals not attorneys who were recognized to practice before the Office in trademark cases under this chapter prior to January 1, 1957, will be recognized as agents to continue practice before the Office in trademark cases.

Plaintiff was recognized as an agent to practice before the Office long before January 1, 1957. To this end, he was admitted on November 9, 1956 to the bar of Maryland, and, thus, became, and always remained as a recognized attorney or agent since that date without interruption.

Still further 35 U.S.C. 2 (b) (2) (D) does not authorize the Defendants to require Plaintiff to pass an examination or to be registered to practice in either the Patent Office or the Trademark Office in order to practice before the PTO because reference is made in the regulations to practice only in the case of registered trademarks and issued patents, not practice in pursuit of publications before registration and issuance under the First Amendment. Plaintiff has a globally equal right by a power of attorney with all other inventors and co-inventors who are alive, dead, absent or hostile, to practice in the PTO, and to practice in connection with foreign PTC

3

applications in order to publish them within 18 months under the First Amendment before they issue as a property right in an issued patent or a registered trademark, whether or not he is registered to practice in the PTO.

Still further, 35 U.S.C. 2 (b) (2) (D), like 37 C.F.R. 10.14 (e) are unconstitutional by a conventional plain language test. The First Amendment takes off the table any restriction by 35 U.S.C. (b) (2 (D), 6, 32 or 33 of practice before the PTO by an unregistered attorney directed to the 18 month or other non- regulated publication of an non-patented invention or non-registered trademark, discovery or writing under Article I, Section 8, Paragraph 8, except after a patent issues or a trademark is registered. Thus, 37 C.F.R. 10.14 (e) must be revised to say that "Any individual may appear in a trademark or other [non-patent, i.e., non-issued] patent case in his or her own behalf."

The Plain Language and Compelling Interest of the First Amendment require that Plaintiff have an unrestricted right with global equality to give up a right of secrecy, and to publish within 18 months, or other suitable interval, any invention under the sun made by man, or any non-registered trademark without restriction until they are examined, unless restricted by statute or judicially imposed prohibition. His right extends to "anything under the sun that is made by man" that he wishes to make public by publication by the PTO in 18 months, or other suitable interval, either in the Trademark Office or the Patent Office (albeit, "Process" in Section 101 Encompasses Any Process, Art, or Method Falling Outside the Judicially Imposed Prohibitions on Patenting Laws of Nature, Physical Phenomena, and Abstract Ideas." Page ii, Amicus Brief DataCorp, Inc., Argument I, In re Bilski and Warsaw, Serial No. 08/833,892, Case 2007-1130 CAFC April 7, 2008; and Diamond v. Chakrabarty, 447 U.S. 303 (1980).

4

To this end, Plaintiff requests that the attached Motion for an Order for a Conference under Local Rule 16.3 be scheduled for the subject case on July 31, 2008, or alternately before the Defendants file their appeal brief in 08-5089, so as to give Plaintiff an opportunity to maintain the status quo until the merits are decided by facing his opponents' deprivation of his First Amendment and other constitutional rights, and to urge the Defendants to reply thereto for the first time since the Court allowed Defendants immunity from a response, as if this case were being prosecuted by the Court for the Justice Department of the District of Columbia rather than the Defendants. *See* Rufus Davis v. Keith Blakely, No. 07-2262 (RWR) (Dist. Ct. DC 4/14/08).

As pointed out in the Plaintiff's April 29, 2008 filing in Faye Zhengxing v. The U.S. Patent and Trademark Office, in Case No: 07-1918 (Dist. Ct. DC) (RWR), the Defendant stated that, "The purpose of a preliminary injunction is to 'preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). And as in that case, as in the settlement of the case against the Government by Steven J. Hatfill for irreparable damage by actions that cost him his job and any chance of employment, the Defendant is posing a fatal threat to Plaintiff because of his age-related disabilities, including visual impediments that require a "reader" of the Patent Office examination, and a closed circuit TV for enlarged print for the reader for purposes of the stipulated purpose of Continuing Legal Education (CLE).

Defendants have caused irreparable injury, and are posing a fatal threat to Plaintiff by their actions that have cost him his job and any chance of employment, comprising their secret removal of his name from the register of attorneys on an undetermined date after August 28, 1996 (Exhibit 8), their cover-up of June 15, 2000 (Exhibit 33), and their continued failure to give Plaintiff a "closing letter" for the investigation they have been holding in abeyance since March

5

To this end, Plaintiff requests that the attached Motion for an Order for a Conference under Local Rule 16.3 be scheduled for the subject case on July 31, 2008, or alternately before the Defendants file their appeal brief in 08-5089, so as to give Plaintiff an opportunity to maintain the status quo until the merits are decided by facing his opponents' deprivation of his First Amendment and other constitutional rights, and to urge the Defendants to reply thereto for the first time since the Court allowed Defendants immunity from a response, as if this case were being prosecuted by the Court for the Justice Department of the District of Columbia rather than the Defendants.

As pointed out in the Plaintiff's April 29, 2008 filing in <u>Faye Zhengxing v. The U.S. Patent and Trademark Office</u>, in Case No: 07-1918 (Dist. Ct. DC) (RWR), the Defendant stated that, "The purpose of a preliminary injunction is to 'preserve the relative positions of the parties until a trial on the merits can be held." <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 395 (1981). And as in that case, as in the settlement of the case against the Government by Steven J. Hatfill for irreparable damage by actions that cost him his job and any chance of employment. Settlement is an alternate dispute resolution procedure for ending litigation by agreement of the parties. It saves the court some of its heavy case load and shortness of time and money. It saves all the parties effort, money and the time it would take for a final determination on the merits.

Defendants have caused irreparable injury, and are posing a fatal threat to Plaintiff by their actions that have cost him his job and any chance of employment, comprising their secret removal of his name from the register of attorneys on an undetermined date after August 28, 1996 (Exhibit 8), their cover-up of June 15, 2000 (Exhibit 33), and their continued failure to give Plaintiff a "closing letter" for the investigation they have been holding in abeyance since March

5

4, 1996. That has identified Plaintiff as a "party of interest," which subjected him to unconstitutional irreparable damage since March 4, 1996.

To this end, the Plaintiff makes this motion for an "Order For Initial Scheduling Conference" by agreement of the parties to be set for July 31, 2008 at 9:15 a.m. at which "Parties are welcome and are encouraged to attend." See the Order of April 14, 2008 in <u>Rufus Davis et al v. Keith Blackely</u>, Civil Action No. 07-2262 (RWR) (Dist. Ct. DC 4/14/08). In this case the Court has given the Defendants immunity from replying or agreeing in writing to this request for an Order requiring the requested Conference unless they choose to deny the same in writing.

To this end, the Plaintiff is now, and has been since this case was filed, open to the suitable forms of alternate dispute resolution to which the parties think the case is most suited, and counsel should consider that among their options under Local Civil Rule 16.3 (c) (5), are those that were described in the Appendix II attached to the Court's 4/14/08 Order in <u>Rufus Davis, et al</u>, <i>Id.</i>, including mediation, arbitration, early neutral evaluation, summary jury trial, and any other form of alternative dispute resolution which can be tailored to the needs of their case. At one point, the Defendants agreed orally with the Plaintiff to the alternate dispute means of agreements for extensions of time to reply, and apparently those agreements are still in effect.

As provided in the Court's above-cited Order in <u>Rufus Davis, et al</u>, <i>Id.</i>, "A request for a continuance of a court date must include alternative dates that have been agreed to by all parties," and, thus, the parties can come to some such agreement or rely upon their agreements that have already been made and attested to by filings in this case.

The Court found on 2/25/08 that "OED informed Cornish that because it had been over five years since he had been registered, he must <u>take</u> the patent registration examination…"

6

(emphasis added). That requirement is independent of a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary… (Memorandum Order 46, p. 3).

The finding by the Court has fatally tainted this trial so much so that Plaintiff cannot now receive a fair trial without a conference under Local Rule 16.3 or remand on appeal or a trial before granting the dispositive motions of the Defendants. That finding has so irreparably injured Plaintiff that he can never recover from his irreparable damages without the requested Conference in accordance with Local Rule 16.3, remand on appeal for a new trial of the removal of his registration, or a trial by the refusal to grant the Defendants' Dispositive Motions, including their Motion to Dismiss or, in the alternative a Motion For Summary Judgment.

A compelling question of law upon which the facts are in dispute is whether this Court or the Court of Appeals can determine the applicable law, or must require a new or complete trial of the Director of OED's disputed, unilateral, secret action on or about August 28, 1996 in Defendants' Exhibit 8, based upon the inadequately presented factual basis concerning Plaintiff's lack of knowledge and intent, which are all in active and continual dispute in this case, as illustrated by the Defendants' claim that the facts are all moot and Plaintiff's claim that they are not moot.

The perfect storm underlying the above and the constitutional violations involved in this case, came about on March 4, 1996 (Defendants' Exhibit 8) in an unsolicited, *sua sponte* letter from the Director of OED (Defendants' Exhibit 8) in which she strategically mooted an investigation required by law in order to save time and the expense of a trial. Then her successor retaliated against the Plaintiff on June 15, 2000 by covering up the secret removal of Plaintiff's name from the register of attorneys for refusing to reply to the RFI on March 4, 1996 as to his

7

intentions. (Defendants' Exhibit 8 and 33). *See* Goldstein v. Moatz, et al, No. 03-1257 (DC CA

April 14, 2004) in which Goldstein, like Plaintiff in this case, challenged the PTO's use of RFIs.

The Director is responsible for investigating allegations of misconduct by members of the

patent bar. 37 C.F.R. 10.2 (b) (2), 10.131 (a). When the Director conducts a disciplinary

investigation, practitioners are required to report and reveal to him any unprivileged knowledge

they possess of PTO disciplinary rule violations. *Id.* 10.24 (a), 10.13 (b). There were none in

this case.

In accordance with 37 C.F.R. 11.2:

Review of OED Director's decision. An individual dissatisfied with a final decision of
the OED Director, except for a decision dismissing a complaint or closing an investigation, may
seek review of the decision upon petition to the USPTO Director accompanied by payment of the
fee set forth in Section 1.21 (a) (5) (ii) of this subchapter. A decision dismissing a complaint or
closing an investigation is not subject to review by petition.

Clearly, Plaintiff had no safeguard or opportunity for any review of any of the actions

taken by the Defendants on either March 4, 1996 or August 28, 1996 (Exhibit 8), June 15, 2000

(Exhibit 33), or subsequently. And he had absolutely no knowledge of any of the secret non-

final actions on August 28, 1996 or June 15, 2000 until after this case was filed. Accordingly,

the Court must grant a new trial of the secret, non-final actions taken on those dates.

Before closing the investigation that has been under investigation since March 4, 1996, if

the Director believes that Plaintiff, like any practitioner, has violated a disciplinary rule, he is

obliged to convene the PTO's Committee on Discipline (the "Committee"). *Id.* 10.132 (a). The

Committee is a body of at least three PTO staff attorneys appointed by the Defendant

Commissioner of Patents *Id.* 10.4 (a). After the Committee decides and finds that that there is

probable cause to believe that a disciplinary rule has been violated, the Defendant Commissioner

initiates a formal disciplinary proceeding to protect and safeguard Plaintiff's First Amendment

8

and other constitutional rights for the first time by referring the matter to an administrative law judge.

*See* 35 U.S.C. 6, which Plaintiff claims is unconstitutional under Article II, Section 2 because of lack of Congressional authority. Translogic Technology, Inc. v. Jon Dudas, Petition before the Supreme Court of the United States, For A Writ of Certiorari to the CAFC, because in over 2500 BPAI decisions between March 2007 and March 2008, 83% of the panels included at least one panel member that had been illegally appointed as an ALJ, 44% included a majority of illegally appointed judges, and about half of the opinions were authored by illegally appointed judges. 2 or 3 illegally appointed ALJs were unconstitutionally appointed over 40% of the time from March 2007 to March 2008.

The letter of March 4, 1996 (Defendants' Exhibit 8), and the letter of June 15, 2000. unilaterally and *sua sponte* initiated a secret cover up of the obstruction of justice by the Defendants' by their unsolicited continuance, adjournment and abeyance of an investigation in the USPTO by Plaintiff's failure to disagree within 30 days.

The investigation held in abeyance as an alternate dispute resolution, was much like the similar provisions for agreement under Local Rule 16.3 and the Order of the Court on 4/14/08 in Davis, *Id.* But the investigation held in abeyance 30 days after March 4, 1996 in this case concerned a Continuation-in-part patent application by Plaintiff and a co-inventor that was not known to exist by the Plaintiff and for which there is no basis in fact (Defendants' November 7, 1995 Exhibit 3). That alternate dispute resolution was completely corrupted therefore. There was no possibility for the consideration of an imaginary CIP, which is still under investigation, and is still in dispute.

9

The raising of the possibility of such an unorthodox, unauthorized investigation of such a non-existent CIP by the Director of OED, instead of by a patent examiner, as required under 35 U.S.C. 101, 102, 103 and 112, was unilaterally initiated *sua sponte* on March 4, 1996 by the Defendants, who at the time intended secretly without notice and without the knowledge, permission, consent, acquiescence or intent of the Plaintiff to effectively and secretly abolish Plaintiff's registration by identity theft without the expense and time of a trial as required by law, and involuntarily without his knowledge, consent, acquiescence or intent or any need to take the Patent Office examination at a time when he believed and actually was well qualified to practice patent law in the US and Canadian Patent Offices as an attorney, agent or firm, and to hold himself out as so recognized (albeit, he was long before January 1, 1957 qualified and recognized to practice before the PTO. *See* 37 C.F.R. 10.14 (b). That was at a time when he had no reason to qualify to be reinstated to take the examination for his reinstatement because he was already registered and not suspended or excluded, or refused registration under Local Rule 83.7.

At that time his registration in the USPTO protected his constitutional rights, but there are no safeguards by which those rights can be preserved or guaranteed. Plaintiff had no right to a trial until this case was filed to protect his constitutional rights to maintenance, preservation and use of his practice without any need for registration, reinstatement, the taking or passing of any test, or proof of fitness for reinstatement. The alternate dispute resolution procedure was used to hold an investigation in abeyance not his registration. The abeyant investigation did not affect his registration.

Plaintiff's practice in both the Patent and Trademark Offices was unilaterally continued, adjourned and held in abeyance without any effect on its operability or his recognition by the non-binding, optional, and provisional nature of the alternate dispute resolution procedure

10

involved. However, Defendants coerced Plaintiff into submission by their functional mooting of his practice without any safeguard of his constitutional rights. And that coercion was corrupted and covered up in this case into an unconstitutional and secret taking in a secret star chamber-like proceeding, *inter alia,* in violation of his First Amendment rights. It was adapted and intended to achieve the secret disposal, removal, and identity theft of his registration on or about August 28, 1996, without his knowledge, consent, acquiescence or intent. Furthermore, that removal has since been used to edit and restrain his constitutional rights by *prior restraint,* not just in limiting the number of his Continuations and RCEs, and claims under the Defendants' Final Revised Rules of record in this case and by incorporation by reference herein, but also in preventing him from practicing as an unregistered attorney, agent or firm in his currently existing applications in the Patent and Trademark Offices.

Meanwhile, not knowing about the secret removal and unconstitutional taking by identity theft, Plaintiff was continuing to enhance his registration, knowledge, skill and viability to hold himself out as a patent attorney, to allow others to so hold him out, and to prevent his registration from becoming abandoned, restrained, abused, destroyed, taken or reduced in value, as shown by his continual fight to hold himself out as a patent attorney, and to use his registration, preserve it, and to enhance it by holding himself out continually without interruption as a patent attorney from November 5, 1958 until the present time despite the continuing threat of prosecution by the Defendants under 35 U.S.C. 33.

This is a Motion for a Conference under Rule 16.3 concerning the constitutional violations of the Defendants, *inter alia,* under the First Amendment, and in opposition to the various final denials of the Court, including the stay of this case and the denial or reconsideration of the denial of the stay and for an extension of time to obtain a Continuance in order to supply

details to the Court of Appeal that are "collateral" to the Final interlocutory Orders of the District Court and that are likely to be reversed because there was a clear abuse of discretion in conclusively determining important, controlling, non-trivial, disputed questions of fact separate and distinct from the merits of this case, including the question of Defendants' immunity from liability for, and from standing trial for, Bivens damages and attorney's fees, and for depriving Appellant of a right to stand trial on compelling questions of law, including substantial and substantive changes to existing law by Defendants' Final Revised Rules that have been judicially determined to be invalid. Those Rules are invalid because they infringe, inter alia, Plaintiff's due process rights, and as Plaintiff claims, his First Amendment rights of speech, press, religion and petition, his Article II, Section 2 rights to a hearing on his claim of unconstitutionality of 35 U.S.C. 2 (b) (2) (D), 6 and 32; or alternately **for an interlocutory Order by this Court certifying, transferring and merging only a portion of this Appeal with the corresponding case now in the CAFC.**

**To this end, this Motion and the Motion on appeal are for a Conference to enable Plaintiff to ask the Court of Appeals to Reverse and Remand for a new trial of the District Court's final determination of the facts concerning the irreparable injury to Plaintiff that resulted from the secret removal of Plaintiff's registration on or about August 28, 1994, and for Reconsideration and Remand of the Appealed District Court's Orders, including the Order of 5/8/08, with a Request that there be a Decision that the Appellees are not immune to liability for equitable and money damages and attorney's fees and, thus, from standing trial for irreparable damages to Plaintiff. The reversal and remand would include the appealed Orders, including the Order of 5/8/08 Denying Petitioner's Motion For Injunctive Relief And Refusing to Give An Opinion Under Section 1292 (b) That Such**

12

**Order Involves A Controlling Question of Law, And That An Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation Below, And In This Appeal No. 08-5089**

### REMARKS

Plaintiff's <u>Bivens</u> claim for one million dollars in damages, costs and attorney's fees for constitutional violations, includes recovery for irreparable and other damages for First Amendment violations, which are still pending. These include his collateral claim for an injunction against the Defendants' requirement that Plaintiff "take the patent registration examination" in order to enjoy his First Amendment rights fully without *prior restraint* of his speech, press, religion and petition rights. That is a controlling question of law independent of the disputed claim for <u>Bivens</u> damages, costs and attorney's fees upon which the Court of Appeals in this Circuit and in the 4th Circuit accepted interlocutory jurisdiction. *See* <u>Goldstein v. Harry I. Moatz, et al</u>, No. 03-1257 (CA 4th 2004). *See* also <u>Goldstein</u>, 364 F.3d at 211-19; <u>Goldstein,</u> No. 05-1399 (CA 4th Apr. 20, 2006), which is much like the interlocutory appeal accepted in <u>Behrens v. Pelltier</u>, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

The threshold arguments of dismissal on jurisdictional grounds, lack of standing, failure to state a claim upon which relief can be granted, no final agency action for purposes of APA review, have all been eliminated. *See* <u>Atlantic Sea Island Group v. Connaugton</u>, Case No. 1:2008-cv-00259 (Dist. Ct. DC) (RWR). The argument appealed was the Court's arguments relating to the denial of an injunction because of the lack of irreparable injury as a compelling question of law. And the Court did not expressly rule on Plaintiff's constitutional arguments,

13

including the limitations of his First Amendment and Due Process rights by *prior restraint* of his speech, press, religion and petition rights, First Amendment and Due Process rights to an unlimited number of Continuations and claims, his right to appeal that issue to the CAFC, or the compelling questions of law relating to the Defendants' lack of immunity, preferring to leave those arguments for a decision on an appeal in this Circuit.

In this case the Defendants have claimed immunity, and thus on appeal immunity, because they have asked the Court to dismiss the Appellant's claims and dismiss Defendants Moatz and Griffin from all liability. 12/20/07 Motion to Dismiss, p. 30 and 34

Defendants claim in their 12/20/07 Motion to Dismiss p. 30, is that "Plaintiff has not shown that the facts warrant his reinstatement," but here is no requirement in law by statute or decision in cases that he has to be reinstated in order to practice before the USPTO, or that he has to take the patent registration examination to practice, despite what the Court said in their 2/25/08 Memorandum Order 46 on page 3, i.e., that "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination…".

35 U.S.C. 2 (b) (2) (D) may or may not govern the "recognition and conduct of attorneys." But it certainly is unconstitutional by the plain reading of its language, since it cannot constitutionally require the Plaintiff to take and pass a Patent Office examination without reasonable accommodations, or even with reasonable accommodations. That question is problematical under the First Amendment, and it is off the table under the First Amendment. It is off the table because it would be a prohibition of speech, press, religion and petition under the First Amendment. And on appeal in this circuit or the CAFC, the Court may hold that it is not constitutional. Plaintiff claims it is unconstitutional because it is constitutionally so broad as to

14

prevent Plaintiff from practicing before the USPTO without punishment under 35 U.S.C. 33. The plain language of that statute precludes Plaintiff from being recognized or from conducting himself before the USPTO or holding himself out to so conduct himself, or to allow others to so hold him out without <u>taking</u> the patent registration examination, which the Defendants have never refused permission for Plaintiff to take. As the Court has said, "OED informed Cornish that because it had been over five years since he had been registered, he must <u>take</u> the patent registration examination..." (emphasis added) (2/25/08 Memorandum Order 46). But that is unconstitutional under the First Amendment.

Like 35 U.S.C. 2 (b)(2)(D), 35 U.S.C. 6 and 32 are not constitutionally valid because the plain language is so broad as to lack adequate narrow tailoring to allow Plaintiff to practice before the USPTO under the protection of the broader and more all encompassing and compelling public purpose of the First Amendment, the Due Process Clause, and the Privilege and Immunities Clause, as well as the Constitutional protection from taking his property and privilege without just compensation by secret, involuntary tampering, molestation, stalking, identity theft, interference, harassment, nuisance, invasion of privacy or other tortuous conduct, for which Plaintiff is asking for an injunction and one million dollars in <u>Bivens</u> damages, costs and attorneys fees.

Defendants have claimed that Plaintiff "may not legally hold himself, or permit himself to be held out, as being recognized to practice patent law before the USPTO," (p.7 of 1/30/08 Defendants' Response To Plaintiff's December Filings) as an attorney, agent or firm "because it had been over five years since he had been registered," (p. 3 of 2/25/08 <u>Order</u>). They also have refused in their Final Revised Rules to allow him under the First Amendment and the Due Process Clause to file unlimited numbers of Continuations and claims under their Final Revised

15

Rules cited in the record of this case, and by incorporation by reference herein. *See* <u>Tafas v.</u> <u>Dudas</u>, 1:07cv846 (JCC) (Dist. Ct. E. Dist. Va. Order October 31, 2007); and <u>Behrens v.</u> <u>Pelletier</u>, 516 U.S. 299 (1996). But that is clearly erroneous and unconstitutional, and the Defendants are without absolute immunity to Plaintiff's claim for *irreparable* injury and for *prior restraint* of his holding himself out as an unregistered attorney, agent or firm continuously since he "applied for and passed the patent examination in 1958. He became registered to practice before the USPTO then "(p. 2 of 2/25/08 Memorandum Order) (quoting from Defs.' Mem. Of P. & A. in Opp'n to Pl.'s Mot. for Prelim. Inj. (Defs.' Opp'n") at 5, Ex. 1)."

What is relevant to the irreparable harm that Plaintiff has suffered, is suffering and will suffer without money damages adequate to compensate for his damage, is the fact that since at least some undetermined date after August 28, 1996 (Defendants' Exhibit 8), without Plaintiff's knowledge, consent, acquiescence or intent, Defendants have secretly, deceptively and fraudulently without Plaintiff's knowledge, consent, acquiescence or intent, treated Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7) as a "request to have his name removed from the register" by secretly, deceptively and fraudulently hijacking his name with an informal, non-final, secret, handwritten note on the OED Director's letter of March 4, 1996 (Defendants' Exhibit 8), which is proof of her intent to hijack his name and identity by a secret undisclosed identity theft on August 28, 1996 without Plaintiff's knowledge, consent, acquiescence or intent. *See* pp's 2-3 of the 2/25/08 Order granting Defendants' motion for protective order, granted in part, and denying Plaintiff's motion for stay to allow for an interlocutory appeal.

The Court by a clearly erroneous conclusion, ignores the ordinary and reasonable factual scenario presented by Plaintiff to support his version of the facts, which are denied by the Defendants as the basis for the Defendants extraordinary, deceitful and fraudulent cover up of

their unconstitutional conspiracy to obstruct justice, which was initiated on March 4, 1996, when they disguised their projected intent to blame Plaintiff without his knowledge, consent, acquiescence or intent for his forthcoming irreparable harm based upon his letter of February 8, 1996 (Defendants' Exhibit 7). That scenario, which attempted to deflect the irreparable harm that they caused to Plaintiff, and to put the blame for his irreparable harm on Plaintiff, was used arbitrarily and capriciously to punish Plaintiff and retaliate against him unconstitutionally by unauthorized, overbroad powers without a hearing or trial, according to required procedures adopted under vague, overbroad and unconstitutional statutes (i.e., 35 U.S.C. 2 (b) (2) (d), 6 and 32).

The drastic measures used by Defendants, included using Plaintiff's letter of February 8, 1996 (Defendants' Exhibit 7) to cover up of their obstruction of justice, *inter alia,* by a diversionary discrimination against Plaintiff under section 504 of the Rehabilitation Act, 29 U.S.C. 794, solely because of his age-related disabilities (proof of intent not required) in order to cover up the Defendants' deceit and fraud and obstruction of justice without Plaintiff's knowledge, consent, acquiescence or intent. To this end, Defendants embarked on an eleven year mission to irreparably injure Plaintiff and destroy the viability of his reputation, profession, practice and ability to gain employment or a job as an attorney in and outside of the PTO. Likewise, they embarked on ending the Plaintiff's constitutionally protected privilege and speech as an attorney, agent or firm, by secretly, deceptively and fraudulently without his knowledge, consent, acquiescence or intent, "treating [Cornish's letter] as a request to have [his] name removed from the register, and describing how he could be reinstated after his name was removed." P.3, line 6 of the Memorandum Order of 2/25/08. Plaintiff made no such "request" and Defendants knew that they lacked authority for arbitrarily, capriciously and secretly

17

removing his name from the register on August 28, 1996 (by a secret, non-final, informal, handwritten note on Defendants' Exhibit 8 without notice, knowledge, acquiescence, consent or intent of Plaintiff).

To complete the deceit and intent to defraud Plaintiff and to obstruct justice by a cover-up of their secret non-final, hijacking of Plaintiff's registration by identity theft, the present OED Director, Defendant Moatz, secretly claimed that on June 15, 2000, he only recently learned of a complaint against the Plaintiff, a highly unlikely fact that is disputed by Plaintiff in view of his employment in OED starting in 1984, and the fact that he served as Director since 1999. He knowingly continued the deceit, fraud and cover-up started by his predecessor in 1996 with intent to unconstitutionally punish, retaliate and discriminate against Plaintiff without any constitutional safeguards, by *prior restraint* of his constitutional rights as an attorney, agent or firm, and by keeping her deceit and fraud, and his, secret from Plaintiff in order to prevent Plaintiff from ever holding himself out as an unregistered attorney, agent or firm by his letter of June 15, 2000 (Defendants' Exhibit 33), or being able to file suit against the Defendants under any attorney fee transferring statutes protecting his right to <u>Bivens</u> damages, costs and attorneys fees.

To that end, in his letter referring to the investigation of a complaint held in abeyance since March 4, 1996, Defendant Moatz stated that "OED removed Mr. Cornish's name from the roster of attorneys and agents," and "will consider the complaint if and when Mr. Cornish applies to be reinstated." He thus secretly continued his predecessor's deceit and fraud without Plaintiff's knowledge, consent, acquiescence or intent, by holding in abeyance the investigation she had held in abeyance since March 4, 1996.

18

Some five years after the Director of OED's letter of June 15, 2000, which was the period secretly selected by him to cover up his and his predecessor's deceit and fraud without Plaintiff's knowledge, acquiescence, consent or intent, and in violation of Plaintiff's Constitutional rights to hold himself out as a patent attorney, agent or firm, OED informed Plaintiff incorrectly concerning an alleged lapse in his registration while he was still holding himself out as being registered. To that end, incorrectly, and as is disputed by Plaintiff, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants. (quoting in the Order of 2/25/08 from Ex. 8 on page 3, id. at 9, Ex. 12)."

The enclosed Motion for a Conference will give Plaintiff time to reverse and revise this incorrect allegation of a five year lapse in his holding himself out as being registered, and the denial of a stay and denial of reconsideration of the emergency injunctions, which were denied in this case because of lack of irreparable harm. Appealing those Orders from the District Court is appropriate because they were narrow and "collateral" but final decisions immunizing and protecting the Appellees from trial and from preliminary, and interlocutory liability, including standing for trial for temporary equitable relief in a case involving Bivens damages, costs and attorneys fees, and also the portion of this case having to do with the Final Revised Rules of the Appellees without prejudice.

To this end, it is proposed that this case can be Conferenced on July 31, 2008, or before Defendants file their reply brief in the appeal of the final interlocutory orders without dismissing this case or affecting the remaining claim for Bivens damages, costs and attorney's fees.

Plaintiff denies the immunity of the Defendants while allowing for the certification, transfer to and merger with the substantially similar case already in the CAFC on the same subject matter against the Defendants in this case to reserve and preserve both Plaintiff's and Defendants' Options for a full trial in the District Court on the <u>Bivens</u> damage claims, and claim for attorney's fees, leaving only the part of this case to be decided in the CAFC, *inter alia,* without prejudice, e.g., in connection with Plaintiff's opposition to the Defendants' Final Revised Rules. (*See* substantive Rules 75 and 78 (72 Fed. Reg. 46,716-843) (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1) (the "Final Rules" effective November 21, 2007) (*See* also 72 Fed. Reg. at 46836-37; 37 C.F.R. 1.75 (b) (2) & (b) (5) (c)).

"The request seeking an examination in larger print, a separate examination room, a different test date, an extended two-days time to take the test," which was mentioned in note 3 on page 4 of the 2/25/08 Memorandum Order, listed only some of the disputed facts involved in the discrimination of Plaintiff solely on the basis of his age-related disabilities to cover up the Defendants' deceit, fraud, and obstruction of justice.

As if as a list by an attorney prosecutor for the District of Columbia, that list closely follows the list sent to Plaintiff on June 19, 2008, as follows:

1. Four hours per examination session, with the first session administered on July 23, 2008 and the second session administered on July 24, 2008;

2. Fourteen point font on the examination booklet and answer sheet;

3. Magnifiers provided to assist reading the Manual of Patent Examining Procedure;

4. Additional lighting; and

5. A testing room separate from the main room.

20

A full two days of testing was requested without a fee of $40 for qualifying to be reinstated to take the examination for CLE purposes but was denied although presently documented urinary, visual and other physical disabilities would make the same reasonable, and Plaintiff is in the process of submitting such further documentation before the assigned deadline of July 11, 2008, and the 60 day deadline for seeking review of the Defendants' June 19, 2008 action pursuant to 37 C.F.R. 11.2 (c) and paying the $130 fee for appeal under 37 C.F.R.1.21.

A human reader and a closed circuit TV for reading the MPEP is also requested to cope with the required reading of the MPEP, since it is impossible to read the same without the reasonable accommodations requested. *See* The American Council Of The Blind, et al., v. Henry Paulson, Jr., Secretary of the Treasury, No. 07-5063 (CA DC May 20, 2008), which required the government to provide reasonable accommodations in addition to a human reader and closed circuit TV because they did not provide meaningful access under Section 504 of the Rehabilitation Act, 29 U.S.C. 794, leaving no choice but to ask for help in coping with the visual impairments suffered by 3.7 million Americans.  Disability is a natural part of the human experience and in no way diminishes the right of individuals to:

   (A) Live independently;

   (B) Enjoy self-determination;

   (C) Make choices;

   (D) Contribute to society;

   (E) Pursue meaningful careers; and

   (F) Enjoy full inclusion and integration in the economic, political, social, cultural, and educational mainstream of American society. 29 U.S.C 701 (a)(3).

The Supreme Court has instructed that section 504 does not require proof of discriminatory intent because "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference – benign neglect." Choate, 469 U.S. 295. Plaintiff has satisfied his burden by showing that all other test takers are provided with closed circuit TV, and Plaintiff's request for equal protection shifts the burden to the Defendants. *See* Am. Council of the Blind, *Id.,* and 463 F. Supp.2d at 59 citing U.S. Airways, 535 U.S. AT 402; and Brookhart v. Ill. State Bd. Of Educ., 697 F.2d 179 (7th Cir. 1983). Its rationale was straightforward: A student "who is unable to disclose the degree of learning he actually possesses because of the test format or environment would be the object of discrimination solely on the basis of his handicap." *Id.,* at 184.

It impossible to satisfy the Defendants' arbitrary and capricious discretionary qualifications that was used to cover-up, the irreparable and drastic harm caused by Defendants' scheme for obstructing justice.

Plaintiff's request for a preliminary injunction is an emergency request under the FOIA and Title II of the ADA or Rehabilitation Act. The latter provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12, 132. Depriving Plaintiff of the reasonable and doable accommodations he requested was the means used to defeat Plaintiff from finding out how he had been irreparably injured by the Defendants' obstruction of justice and irreparable harm that deprived Plaintiff of his constitutional rights. He was denied equal access solely and equal protection because of

22

his age-related disabilities. Every other applicant who took the non-July examination for CLE purposes, as Plaintiff did in July for CLE purposes, had access to a TV monitor for providing an enlarged print MPEP. But such a TV monitor for presenting an enlarged print MPEP, was denied to Plaintiff with prejudice to obtaining such reasonable accommodations in the future.

An emergency preliminary injunction is requested because of the new developments provided by the Defendants without fault of the Plaintiff. Plaintiff applied to take the July 2008 examination for CLE purposes almost one year ago. But his requests for reasonable accommodations have only been denied on June 19, 2008, and he must make a new application before July 11, 2008. He will be irreparably injured if the requested reasonable accommodations are denied in a final decision by the Director of OED and the Commissioner of patents.

Obviously, no such final decision can be obtained before the July 11, 2008 deadline for an application to qualify to be reinstated to take the examination and to be approved to take it, or to pay the fees of $40 and $450 required, and/or to study for the exam with a reader before the examination is given on July 23 and 24th 2008.

An emergency injunction is, therefore, required because the Defendants have only on June 19, 2008 acknowledged his request to take the July examination with reasonable accommodations for CLE purposes. Plaintiff's request is to take the examination he has already taken free or paid for taking in 2005, 2006 and 2007. And Plaintiff has requested copies of the questions and his answers and the correct answers under the FOIA and otherwise, but the Defendants have not even acknowledged those requests to obtain a copy of those questions and marked answers of the examinations that he has taken.

"[I]njunctive relief is an 'extraordinary and drastic remedy,' and Plaintiff has justified the same by the above and a clear showing and incorporation by reference and judicial notice of the substantially similar <u>Tafas</u> case, that the record is not "sufficient to demonstrate a lack of right to relief." <u>Smith v. Harvey</u>, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006) (citing <u>Johnson v. Holway</u>, 329 F. Supp. 2d 12, 14 n.1 (D.D.C. 2004); Local Rule 65.1 (d). And Plaintiff has likewise shown the required four factors and other factors, including irreparable injury, such as those used in <u>Citizens United v. FEC</u>, Civil Action No. 07-2240 (ARR, RCL, RWR), 2008 WL 134226, at *2 (D.C.C. Jan 16 2008). Like the substantially same successful case of <u>Tafas v. Dudas, et al.</u>, 1:07cv846 (JCC) and 1:07cv1008 (JCC) in the E.Distr. Va., which addressed the "controlling questions of law" and the disputed facts involved under 28 U.S.C. 1332. Plaintiff has likewise shown that: (1) there is a substantial likelihood that he will have success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunctions requested. *See* Defs.' Opp'n to Pls.' Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

The secret hijacking of his registration by a secret identity theft without his knowledge, consent, acquiescence or intent, clearly caused an irreparable loss of Plaintiff's viability and profession and constitutionally protected privilege to practice as an unregistered attorney, agent or firm anywhere for more than eleven years from March 4, 1996 to the present.

By refusing an injunction and a new trial of his removal, the viability of Plaintiff's practice in both the Patent Office and the Trademark Office are permanently and irreparably injured without any possibility of corrective action. Failure to obtain an injunction and the closing of the investigation being held in abeyance by a closing letter will subject him to criminal

24

penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an unregistered attorney because he is still subject to investigation without a closing letter. This is clearly submitted as "competent evidence into the record ... that would permit the Court to assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is not issued [,]" and does not provide merely "only broad conclusory statements as to alleged harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB), 2005 WL 1119797, at *3 (D.D.C. May 11, 2005).

Plaintiff has indeed clearly demonstrated why the material facts presented show why the requested Conference should be granted. The substantial irreparable injury to him by the Defendants is grounds for finding that he should be permitted to practice as an [unregistered] patent attorney" in the jurisdictions where he is admitted by holding himself out as an attorney, agent or firm without *prior restraint* by the Defendants.

## CONCLUSION

**In view of the above, this Court is requested to consider carefully and grant this Motion made herein, herewith and hereby for a Conference in light of this Memorandum in support thereof.**

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish Down Pat TM SM © 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 7/2/08

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this    second    (2d)      day of July, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date:    7/2/08

26

# UNITED STATES COURT OF DISTRICT COURT
## FOR OF DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,     )
                                        )

       **Plaintiff** *Pro Se*         )
      v.                             )
                                        )
                                        )     **Case 1:07cv01719 (RWR) )**

JON DUDAS, et al.            )
                                        )

       **Defendants**           )
                                        )

## ORDER

UPON CONSIDERATION of Plaintiff's Motion for an Order for a Conference under Local Rule 16.3 on July 31, 2008 at 9:30 a.m., or until Defendants file their brief in the interlocutory appeal 08-8059 of this case, and his Memorandum in support of his Motion, which is also in Response and in Opposition to the Minute Order of 6/11/08, and the entire record, it is this fifth day of June, 2008, hereby

ORDERED that Plaintiff's Motion should be and it is hereby Granted.


                                                                    _____
                                                United States District Judge

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

Cornell D.M. Judge Cornish, *pro se*
1101 New Hampshire Ave., NW
Suite 301
Washington, DC 20037
(202) 429-9705

1