# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CORNELL D.M. JUDGE CORNISH,** | ) | |
| | ) | |
| **Plaintiff *Pro Se*** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case 1:07cv01719 (RWR)** |
| **JON DUDAS, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

---

### Motion To Modify The Court's Protective Order By Opening The Record And Ordering A Response To This Emergency Request For Temporary, Provisional, Equitable Relief And Request To Reconsider The Order Of 7/7/08

---

This is a Motion to Open The Record with supervision by the Court for oral and written communications between the parties concerning recent actions by the Defendants involving the genuine material issue of facts in dispute as to the Controlling Questions of law. Those Questions involve material issues of fact in dispute in an important way, because they relate to the purposes of this Motion, and they relate to the gravamen of Plaintiff's suit vs. the Defendants' theory of the case which are in conflict and dispute.

To avoid making this case a sham, the record must be opened to include critical new evidence and facts concerning the Defendants' misuse of the paper Patent Office examination. To this end, their recent new correspondence and Plaintiff's enclosed copy of his response thereto, is essential evidence of the gravamen of his case, and enhance its understanding.

**RECEIVED**

JUL 1 6 2008

Clerk, U.S. District and
Bankruptcy Courts

1

As revealed by this new evidence, the Defendants require that only the Patent Office examination be used to show possession of the necessary qualifications to render to applicants or other person valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office [both the Trademark and Patent Offices], as provided by 35 U.S.C. 2 (b)(2)(D). And to this end, the Defendants arbitrarily and capriciously use failure of the examination as a *per se* criteria of failure to "show possession of the necessary qualifications."

Moreover, in the case of the Plaintiff, they use that arbitrary and capricious criteria and requirement of their discretion to prevent Plaintiff from practicing and advertising in his currently pending patent application and an unlimited number of claims and Continuations derived there from. They arbitrarily and capriciously use the presumption that failing the examination twice statistically proves that a person in not entitled "to show possession of the necessary qualifications."

The Defendants' theory of the case adumbrates in an irrational way what Plaintiff claims is an entirely different and distinctive gravamen of his case. To this end, their "theory" requires a *per se* dismissal of the stated cause of action, by requiring Plaintiff's reinstatement, which requires his passing the examination, but that is irrational and an impossibility. It raises the specter of Lamarck's giraffes, whose necks were made to grow longer because they stretched their necks higher and higher to reach the fruit on trees. Similarly, their theory is that Plaintiff must but can't show that he continues to possess higher and higher legal qualifications necessary to render valuable services for patent applicants by being forced to take and pass the paper Patent Office examination. Indeed, Defendants insist that Plaintiff can only show the required legal qualifications by being required to take and pass the Director of OED's test.

2

Under such conditions, the Director of OED has the arbitrary and capricious discretion to force Plaintiff repeatedly to take the paper Patent Office examination and to pay the $490 fees for taking the examination until the Director says that Plaintiff satisfies his test. According to that criteria, that is clearly and unequivocally the only way to show the Director what he demands to be shown to him personally. When the Director alone personally allows it, Plaintiff can without *prior restraint* advertise in his currently pending patent application and in the limited number of Continuations and claims thereof. Only the Director of OED, solely and only by his discretion can allow it. Plaintiff's right to advertise in an unlimited number of applications, claims and Continuations is necessarily and unnecessarily foreshortened and limited. Plaintiff 's right to advertise as an attorney, agent or firm, as provided for by the First Amendment, is chilled, defeated, interfered with, controlled and censored unconstitutionally.

But Plaintiff has not applied for reinstatement to pass the examination. The Plaintiff's gravamen is obviously a material issue in dispute because Defendants' theory of the case is incorrect. It involves a phantom theory that has no basis in fact. It ignores the Constitutional rights of the Plaintiff under the First Amendment, the Due Process Clause, and otherwise it ignores limitations imposed by the facial unconstitutionality of the plain words of 35 U.S.C. 2 (b)(2)D), 6 and 32.

The actions of the Defendants like those statutes are both unconstitutional under the First Amendment, the Due Process Clause, Article I, Section 8, paragraph 8, and without authority under Article II, Section 2, paragraphs 1 and 2, or otherwise without jurisdiction or authority, vague and indefinite, an abuse of discretion, ambiguous, indefinite, inconsistent, impossible to administer and otherwise irrational, or otherwise unlawful or facially improper by the plain reading of the statutes.

3

Plaintiff has a Constitutional right and cause of action to make an unlimited number of claims and Continuations of his existing patent application and subsequent patent and trademark applications without limitations by the arbitrary and capricious discretion of the Director of OED as an inventor, applicant or unregistered attorney, agent or firm without reinstatement to the register of attorneys by advertising his name as an unregistered attorney in those applications and holding himself out as an unregistered attorney, or allowing others to hold him out as an unregistered attorney in the PTO or without deception in the jurisdictions where he is admitted as an attorney. He does not need to be registered to make an unlimited number of applications for patents and trademarks as a registered or an unregistered applicant, inventor, attorney, agent or firm by showing that he continues to possess the legal qualifications necessary to render valuable services for himself and others, such as with a power of attorney from one or more co-inventors who are alive, dead, unavailable or hostile in those patent applications, or otherwise in those trademark applications.

Plaintiff does not need to be registered, refused registration, excluded, suspended or removed to make an unlimited number of applications to qualify to take an unlimited number of paper patent examinations an unlimited number of times as an applicant, inventor, or as a registered or unregistered patent attorney or attorney, agent or solo firm member. He has a right to do so without *prior restraint* under the First Amendment or other Constitutional, statutory, case law or Rules.

He has a Constitutional right and cause of action to make an unlimited number of such applications with global equality, as do all other individuals in the world without limitation.

He has a Constitutional right and cause of action to qualify to take and retake an unlimited number of the paper Patent Office examinations for CLE and other purposes, even

4

purely academic reasons, such as to show himself that he continues to possess the legal
qualifications necessary to render valuable services for patent applicants by taking the
examination and by means other than taking and passing the examination, or by other means
alone or by taking and retaking the examination, including taking the examination and retaking
the examination an unlimited number of times. He also has a right and cause of action to
demonstrate irreparable harm and other factors that entitle him to the emergency relief sought.

Defendants have required Plaintiff to complete his application within the 60 days
provided for by 37 C.F.R. 11.7 (e) without an extension of time to be qualified to take the
examination on July 23rd and 24th, 2008, without replying to Plaintiff's objections, including his
request for an extension of time to make his applications, and without a reply to Plaintiff requests
for an extension of time to retake and review the 2005, 2005 and 2007 examinations because of
the Court's Protective Order. The arbitrary and capricious demands and discretion of the
Director of OED prevent Plaintiff from doing what he is legally allowed to do, and what the
Director is sworn to allow. Plaintiff is being prevented without cause and/or authority or under
law from taking those examinations, and he is being irreparably harmed by the Defendants'
actions. There is no way that Plaintiff or anyone else can satisfy the Defendants' arbitrary and
capricious discretionary requirements. Plaintiff is being prevented from taking and retaking the
examination by *prior restraint* in order to satisfy the Director of OED's arbitrary, capricious and
unconstitutional discretional requirements.

This is a Motion to address the irreparable harm by opening the record, by ordering the
Defendants to reply to this filing and the Plaintiff's request for an extension of time to complete
his application, and for a temporary restraining order to prevent the Defendants from limiting

5

Plaintiff's ability to take the examination after those assigned dates because they fall before the 60 days allowed to complete his application to qualify to take the examination.

The Plaintiff will be irreparably harmed because the Defendants have limited Plaintiff's ability to show himself that he continues to possess the legal qualifications necessary to render valuable services for patent applicants by taking means, or other means than taking and passing the examination on those or other dates. The extension of time is an opportunity for Plaintiff to demonstrate irreparable harm and other factors that entitle him to the emergency relief sought.

Plaintiff's completed applications qualify him to be reinstated to retake the 2005, 2006 and 2007 paper Patent Office applications, and to take the 2008 and 2009 paper Patent Office examinations for CLE purposes, and other merely academic reasons that are widely accepted, and long been well established. However, the policy of the Defendants is not to allow him to do so with an extension of time, or to retake the examinations even on the given or specified dates as a unregistered patent attorney, and he will be irreparably injured by the Defendants' (1) *prior restraint* preventing extensions of time to take or retake the examination; (2) *prior restraint* against taking or retaking individual, respective examinations an unlimited number of times and an unlimited number of times repeatedly in accordance with 37 C.F.R. 11.7 (e); (3) threats of prosecution under 35 U.S.C. 33; (4) failure to close an existing investigation with Constitutionally sufficient notice to the Plaintiff since March 4, 1996; (5) prevention of a trial of the underlying complaint; (6) *prior restraint* of Plaintiff's advertisements and practice in his currently pending patent application and in an unlimited number of claims and Continuations derived there from by their Final Rules limiting the number of claims and Continuations that Plaintiff can file as of right (albeit, this has been held to be without authority or jurisdiction in Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria). *See* 72 Fed.

6

Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority.

Still further, Plaintiff will be irreparably injured by the Defendants' (7) *prior restraint* of his practice in the Trademark Office because of the holding in abeyance of an investigation since March 4, 1996, which in effect caused Plaintiff and his practice to become a "protectorate" of the Defendants' arbitrary and capricious discretion; and (8) Defendants have prevented Plaintiff's applications to qualify to take the Patent Office paper examination an unlimited number of times under 35 U.S.C. 2 (b)(2)(D), 6 and 32 because the plain meaning of those statutes and Defendants actions are facially unconstitutional under law, particularly the Administrative Procedures Act, and because of vagueness, inconsistency, violation of the First Amendment and Due Process Clauses, and because they are all in excess of jurisdiction and authority. *See* Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority.

In view of new developments, including, *inter alia,* actions initiated by the Defendants on June 19, 2008 and July 11, 2008, by which this motion is made for incorporation into the records of this case, and which can be made of record therein by opening the record in this case, this is a Motion for an emergency Temporary Restraining Order, *inter alia,* to prevent irreparable harm to the Plaintiff by Defendants' unconstitutional *per se* requirements, comprising, *inter alia,* that the Plaintiff take the paper Patent Office examination only once on July 23rd and 24th without an extension of time or allowing Plaintiff to show that he continues to possess the legal qualifications necessary to render valuable services for patent applicants by either taking the examination or by means other than merely passing the examination on those dates.

7

Plaintiff needs a TRO or other equitable relief to gain time and an opportunity to demonstrate irreparable harm and other factors that entitle him to the emergency relief sought, including reconsideration of his Opposition to, and time for the reconsideration of the Order of 7/7/08.

This Motion includes a request for an emergency Order requiring the Defendants to reply to this request for equitable relief, comprising, *inter alia,* by this request for an Emergency Temporary Restraining Order to prevent the irreparable harm to the Plaintiff by the Court's Protective Order that blocks response to Plaintiff's objections to the Defendants' *per se* requirement that the Plaintiff, *inter alia,* take the July 2008 Patent Office examination less than 60 days from the date of Defendant Griffin's letter of July 19, 2008 without responding to Plaintiff's objections and requests. See pages 1 of Document 46 of the Court's Order of 2/25/08, which states that, "*Pro se* plaintiff Cornell D.M. Judge Cornish, an attorney who was previously registered to practice before the United States Patent and Trademark Office ("USPTO" or "PTO"), filed a complaint against the defendants alleging among other things, that the defendants engaged in discrimination by requiring him to sit for the patent office examination before being reinstated," i.e., to qualify for reinstatement to take the patent office examination for CLE purposes, or other purely academic purposes (albeit, Plaintiff was officially notified by the Commissioner that he was removed from the register of attorneys only after this case was filed against him, and it is not known precisely when or if he was officially removed until then).

Along with the unconstitutionality of the supposedly authorizing statutes 35 U.S.C. 2 (b)(2)(D), 6 and 32, these are genuine material issues in dispute. The Defendants insist that Plaintiff has no right to make an unlimited number of applications for an unlimited number of claims and Continuations of his currently pending patent application under their Final Revised

8

Rules that were to be effective November 1, 2007; and no right to make an unlimited number of applications to practice in those applications as an unregistered or registered attorney, or advertising in those applications as an attorney, agent or firm, by making an unlimited number of applications to qualify to take the paper Patent Office examination, as provided by 37 C.F.R. 11.7 (e) for either CLE purposes, or other merely academic or personal reasons.

Stated another way, this is a request for a Temporary, Provisional, Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' June 19, 2008 *per se* and unconstitutional requirement that the Plaintiff sit for the patent examination under only the conditions demanded by the Defendants' arbitrary and capricious discretionary demands in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims or Continuations. To this end, equitable relief is requested to open the record and to restrain the Defendants from their *per se* requirements and *prior restraints,* including, *inter alia,* requirements to only take the July 2008 paper Patent Office examination once without retaking it or retaking the 2005, 2006 or 2007 exams as the only way of showing fitness allowed on July 23rd and 24th 2008 or thereafter.

Also, a TRO is required to prevent *prior restraint* of extensions of time for obtaining reasonable accommodations exceeding those listed in Defendant Griffin's letter of July 19, 2008 that arbitrarily and capriciously prevent Plaintiff from advertising in an unlimited number of claims and Continuations by *prior restraint*.

On page 3, Document 46, the Court's Order of 2/25/08, states that, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants."

9

(Citations omitted). Two petitions for review were never answered, and since March 4, 1996, he has been prevented from showing fitness except by passing the examination on designated test days without reasonable accommodations.

The Defendants' *per se prior restraint* requires Plaintiff to take the examination on July 23rd and 24th without an extension of time and with immunity from a TRO, and from replying to Plaintiff's objections or with adequate safeguards, including, *inter alia,* time to ask the Court to order the Defendants to answer Plaintiff's complaint and objections; time to study for the examination for CLE purposes; time to appeal the *per se* requirement to take the examination on July 23rd and 24th only without any opportunity to submit any other showing to the satisfaction of OED that he continues to possess the legal qualifications necessary to render valuable services for patent applicants; time to ask the Court to allow Plaintiff to show that he continues to possess the legal qualifications necessary to render valuable services for patent applicants by taking the examination, or by means other than taking the examination on those dates; and time and an opportunity for Plaintiff to demonstrate irreparable harm and other factors that entitle him to the emergency relief sought.

The Court's Document 46 filed 2/25/08 states on page 2 that, "Cornish also filed a series of miscellaneous motions following his motion for a preliminary injunction, to which the defendants responded by moving for a protective order to temporarily either ban plaintiff from filing more motions or relieve defendants from having to respond to further motions by plaintiff unless the court orders responses." The Court didn't ban Plaintiff from making further motions, including this motion, but it did grant the Defendants immunity from responding. This is to request the court to order a response and emergency equitable relief for irreparable harm and other factors that entitle him to the relief sought and so far denied.

10

The Defendants' have made a *per se* requirement by *prior restraint* that Plaintiff take the July 23rd and 24th paper examination only once on July 23rd and 24th 2008 in less than the 60 days from the Defendants' July 19th RFI without time to complete Plaintiff's application, as provided for by 37 C.F.R. 11.7 (e), or in order to qualify for reinstatement to take the examination. Requiring the July 23rd and 24th dates will prevent Plaintiff from taking the examination with proper preparation, any response to his objections, and time to appeal. After those dates an appeal will be too late. The time between notice that his application was incomplete on June 19, 2008 and the *per se* demand to take the exam only once on July 23rd and 24th is too short for him to study to take the examination on those dates, or for Defendants to respond to his objections without a Court Order lifting the Court's Protective Order, or for a timely appeal.

The notice of June 19th was timely responded to on July 11th with a request for an extension of time to complete the application within the 60 days required by 37 C.F.R. 11.7 (e), and to qualify to take the examination. There was a *per se* requirement to pass it Defendants' way or to take the highway without any other way of demonstrating other factors that entitle Plaintiff to the emergency relief sought, e.g., by taking the examination as an unregistered attorney for CLE purposes in accordance with 37 C.F.R. (a), (a) (2), (i), (i) (a) and (ii) and (e). This is but one way to demonstrate that he "possesses the legal qualifications necessary to render valuable service for patent applicants."

The ability to qualify to be reinstated to take the exams an unlimited number of times as provided in 37 C.F.R. 11.7 (e) is a demonstration of one of the "other factors" that "entitle Plaintiff to gain the emergency relief sought." *See* page 2 of the Court's 2/25/08 Document 46.

11

Without the emergency relief sought, including, *inter alia,* modification of the Court's
Protective Order, and a Temporary Restraining Order, the Defendants may use the Court's
Protective Order of 2/25/08 before or after the Court's decision on the Defendants' Dispositive
Motions to exclude the insertion in the record of critical correspondence and oral
communications between the Defendants and Plaintiff without the Court's supervision. This
includes communications by Defendant Griffin on June 19th, and notice of an oral agreement on
July 11, 2008, which was a personal, oral approval of the OED Director Defendant Moatz, for
the deposit in the Office of OED without objection, of limited, provisional, applications by the
Plaintiff to qualify to be reinstated to retake the Patent Office examinations of 2005, 2006, 2007,
2008 and 2009 for CLE purposes; and also to extend the time to take the July 2008 examination
later than July 23rd and 24th with the reasonable accommodations listed in Defendant Griffin's
letter of June 19th in accordance with the stipulation of Defendant Moatz on October 9, 2007, and
also with the accommodations exceeding those stipulated accommodations and requested by
Plaintiff on July 11, 2008. A request was also made to qualify to take the 2009 examination.

Still further, the Defendants by prior restraint are refusing to allow Plaintiff to practice as
an attorney, agent or firm in his currently pending application or an unlimited number of claims,
Continuations or RCEs without taking the Patent Office examination on July 23th and 24th with
only the accommodations approved and stipulated on October 9, 2007. *See* Tafas v. Dudas, et al,
1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug.
21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess
of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2). *See* also 71 Fed. Reg. 48 (03 January
2006); Federal Register/Vol 71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January
2006) Proposed Changes to Practice for continuing Applications, Requests for Continued

Examination Practice, and Applications Containing Patentably Indistinct Claims, Notice of

proposed rulemaking (03 January 2006); and No. 147/ Wednesday, August 1, 2007/ Rules and

Regulations, pp. 42242 et. seq. (37 CFR Part 2) (Docket No. PTO-T-2005-014 RIN 0651-AB56).

     This is a Motion for an emergency equitable relief, including, *inter alia,* a Temporary

Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' *per se*

requirement that the Plaintiff take the Patent Office examination only on July 23rd and 24th 2008

without the accommodations in excess of the reasonable accommodations listed in Defendant

Griffin's letter of July 19, 2008. Page 3 of Document 46 of the Court's Order of 2/25/08, states

not only that, "OED informed Cornish that because it had been over five years since he had been

registered, he must take the patent registration examination or submit a showing to the

satisfaction of OED that he continued to possess the legal qualifications necessary to render

valuable services for patent applicants," but also that Plaintiff, among other things, included as

part of his complaint, "that the defendants engaged in discrimination by requiring him to sit for

the patent examination" with or without reasonable accommodations for his life-function, age-

related disabilities, before allowing his advertisements, which by their *prior restraint* violated his

First Amendment rights. The Defendants prevented him from advertising as a non-registered

patent attorney.

     That is a legitimate and acceptable cause of action upon which this Court has jurisdiction

to act and to decide as a Controlling Question of law in connection with genuine material issues

of fact that are in dispute. It prevents Plaintiff from advertising as an unregistered patent

attorney by using the truthful designation "attorney, agent or firm."

     The emergency Temporary Restraining Order is necessary to extend the time to at least

August 11, 2008 for qualifying to take the 2008 examination within the sixty day period required

13

by 37 C.F.R. 11.7 (b) (2); and to qualify to be reinstated to retake the 2005, 2006, 2007, 2008

and 2009 examinations as an unregistered attorney only for CLE purposes as a form of loss

mitigation by submitting a showing to the satisfaction of OED that he continues to possess the

legal qualifications necessary to render valuable services for patent applicants.

That is an alternative to the Order of the Court denying Plaintiff's Motion for an Order of

Mediation in which the Plaintiff is allowed to show to the satisfaction of OED that he continues

to possess the legal qualifications necessary to render valuable services for patent applicants for

himself and his co-inventors who are alive, dead, unavailable or hostile, and especially in

unlimited number of claims and "Continuations" of his existing patent application under the

Final Revised Rules of the Defendants. *See* Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order

(April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at

37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and]

authority," 5 U.S.C. 706 (2). *See* also 71 Fed. Reg. 48 (03 January 2006); Federal Register/Vol

71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January 2006) Proposed Changes to

Practice for Continuing Applications, Requests for Continued Examination Practice, and

Applications Containing Patentably Indistinct Claims.

Considering the requirements for this request for an emergency provisional, temporary

restraining Order, which is required by the Court's Order of a partial Protective Order, Document

46 filed 2/25/08, the harm that issuing the injunction would cause to the Defendant agency's

enforcement authority would be exactly zero or less. There would be no measureable harm now

or in the future to the Defendants or the public.

The July 23rd and 24th dates for the examination can remain fixed for all test takers except

the Plaintiff. The dates and conditions would remain the same without any effect on any test

taker except the Plaintiff if the date of the examination was postponed only for the Plaintiff by a

Court Order of restraint and to reply to the request to retake the examination for CLE purposes,

as he is allowed to do "an unlimited number of times" under 37 C.F.R. 11.7 (e). According to

that Rule, Plaintiff can take any and all exams an unlimited number of times, not just once for

each examination. According to 37 C.F.R. 11.7 (e) it is only necessary to fail an individual,

particular examination in order to retake that failed examination an unlimited number of times.

According to 37 C.F.R. 11.7 (e): "An individual who failed the examination has the right

to retake the examination an unlimited number of times upon payment of the fees required by

1.21 (a) (1) (i) and (ii)." There is a *per se* presumption by the Defendants that once the exam is

failed two or more time it is statistically impossible for anyone to pass the examination by

retaking it. That is why the examination is required as the only way of showing that a person can

provide a showing "that he has the necessary qualifications."

And equitable relief is justified to restrain the *per se* requirement to take it only once on

July 23rd and 24th with the reasonable accommodations approved by Director Moatz for the 2007

examination in order to advertise as an unregistered attorney, agent or firm in his currently

pending patent application, and to advertise likewise in an unlimited number of claims and

Continuations. Requiring a *per se* once only taking of the examination only on July 23rd and 24th

interferes by *prior restraint* with Plaintiff's First Amendment rights. *See* Tafas v. Dudas, et al,

1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug.

21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess

of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2); 71 Fed. Reg. 48 (03 January 2006);

Federal Register/Vol 71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January 2006)

Proposed Changes to Practice for continuing Applications, Requests for Continued Examination

Practice, and Applications Containing Patentably Indistinct Claims, Notice of proposed rulemaking (03 January 2006); and No. 147/ Wednesday, August 1, 2007/ Rules and Regulations, pp. 42242 et. seq. (37 CFR Part 2) (Docket No. PTO-T-2005-014 RIN 0651-AB56).

The requested Emergency, Temporary Restraining Order is also necessary as an alternate to an Order under Rule 16.3 for a Conference, *inter alia,* to preserve Plaintiff's rights under the 1st Amendment. Davis v. Blakely, No. 07-2262 (RWR)(DC DC Order 4/14/08), such as agreed by the Court to be considered if necessary after a decision on Defendants' Dispositive Motions.

This is a Motion to reconsider and in Opposition to the Minute Orders of 6/19/08 and 7/7/08 that prevented the Plaintiff from gaining any kind of Preliminary Stay, Conference, Order or Preliminary Injunction against Defendants to preserve the relative positions of the parties until trial on the merits can be held for the protection of his First Amendment, Due Process and other constitutional rights or rights for Bivens damages, costs and attorneys fees, and for the irreparable harm demonstrated by Plaintiff, including the concrete, non-speculative loss of jobs and the viability of his career, as well as the loss of rights to advertise in his currently pending application and an unlimited number of claims and Continuations thereof caused by Defendants *prior restraint.* University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Zhengxing v. The U.S. PTO, Case No. 07-1918. *See* also Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007); and Davis v. Blakely, No. 07-2262 (RWR)(Dist. Ct. DC Order 4/14/08).

Obviously, since the Defendants are already under an injunction by the Court in Virginia, there is no damage to the Defendants by the addition of another injunction or preliminary equitable relief in this case. And the requested relief is required and not redundant to the injunction in Virginia because the injunction in Virginia is not as complete and all inclusive as

16

the one tailored to this case to prevent the requirement for a *per se* taking of the July 23rd and 24th examinations only once on those dates, and only with the accommodations approved for the 2007 examination and stipulated to be available to the Plaintiff for a retaking of the examination if he is held to be qualified to be reinstated to take the examination.

Without ordering a response by the Defendants, the Court has immunized the Defendants from responding by its Order of Protection. The effect is at least similar to a case where Plaintiff's case is being determined by a Court that is somehow effectively established as a wartime Prosecutor of a enemy combatant at Quantanamo Bay and replaced by the Criminal Section in the Civil Rights Division of the U.S. Department of Justice, or the U.S. Attorney for the District of Columbia for the investigation of the Plaintiff, and a cover up of a botched investigation that is being held, and has been held, in abeyance by the Defendants since March 4, 1996 (Defendants' Exhibit 8).

The dividing line between short-term and long term suspensions is designed to identify those attorneys whose misconduct demonstrates a general ethical unfitness which is sufficient to justify imposition of a sanction that requires proof of such fitness in a separate reinstatement proceeding before the attorney is permitted to resume the practice of law. In re Hessler, 549 A2d 700, 715-716 (DC 1954). The botched abeyant investigation in this case, however, has taken on the color of a secret violation of Plaintiff's constitutional rights that has been covered up as an alternate dispute resolution procedure gone wrong and covered up as a strategic mooting of Plaintiff's practice such that he is prevented from being reinstated only to qualify to take the Patent Office examination because of the *per se* requirement to take it only once on July 23rd and 24th without responding to Plaintiff's requests for an extension of time to take the examination at

17

a later time with reasonable accommodations in excess of those already provided and approved

in 2007. A request is also made for an extension of time to retake the 2005-2009 exams.

And, to add insult to injury, that mooting has made Plaintiff a person of interest as in the

case of Steven J. Hatfill, who has settled with the Government for $5.85 million because the

defendants' evidence collection, like the evidence collection here, failed to bring to light any

evidence of wrong-doing.

As a consequence of the botched evidence collection, the Plaintiff here, like Hatfill, has

satisfied their burden of showing that he has been irreparably injured by the loss of all his jobs.

Plaintiff was coerced to give up all his clients both short-term and long-term, both in and outside

the Patent Office independently of whether he was or was not registered as an attorney in the

USPTO and even before he was allegedly removed from the register of attorneys without notice

to the Plaintiff on or after August 28, 1996 (according to an informal, secret, handwritten note on

only one copy of Defendants' Exhibit 8 for use in the PTO only). He has also been irreparably

injured in his short-term and long-term viability and the vitality of his practice as a lawyer and a

patent attorney both in and outside the Patent Office, both as a patent attorney and as an attorney

not registered in the PTO by the secret identity theft and tampering with his name and identity on

the PTO register without notice to him. Steel Co. v. Citizens for a Better Environment, 523 U.S.

83, 103 (1998).

His reputation has been irreparably tarnished because of his age and discrimination

against him that violates his constitutional rights. That irreparably harms him and prevents him

from earning a living. This is a significant, particularized, and concrete injury in fact that is

causally connected to the agency action initiated by the Defendants *sua sponte* and secretly. It is

not, and was not, speculative, nor could it be redressed by a settlement of one million dollars in

18

money damages alone.  It is necessary, therefore, to at least redress it successfully as a
preliminary injunction to preserve the relative positions of the parties until the hearing on the
merits. Atlantic Sea Island Group v. Connaughton, Case No. 1:2008cv00259, Document 11
(Dist. Ct. DC 3/17/2008) (RWR).

To this end also, at least one Virginia District Court has found that the Defendants have
by abuse of discretion not authorized by law, and by exceeding statutory jurisdiction [and]
authority," 5 U.S.C. 706 (2), as published in 71 Fed. Reg. 48 (03 January 2006), taken the law
into their own hands.  They have required that Plaintiff "take" the July 2008 paper patent
registration examination only on July 23 and 24th without an extension of time and without
answering Plaintiff's complaints and objections or alternatives under the Court's Order of
Protection because he is unregistered, and because the Defendants can ignore the protection of
the First Amendment and other constitutional rights, as well as Plaintiff's requests for Bivens
damages, costs and attorneys fees.  But these are all constitutional violations. There is nothing in
law, either statutory or case law or regulation that would require or allow such an agency action
or immunity or protection of the Defendants.

The Supreme Court has established precedents that justify at least one Court case in one
"small class" of "collateral" interlocutory district court decisions that are subject to revision, and
even if they are "fully consummated decisions [that] are but steps towards final judgment in
which they will merge."  Cohen v. Benefiicial Industrial Loan Corp., 337 U.S. 541, 546 (1949).
Apr. 20, 2006); and *see* Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and
controversial Controlling Questions of law relating to immunity and from standing trial.

This "small class" of interlocutory decisions comprises the ordinary absolute or qualified
immunity case, such as this one, where the harm is irreparable and permanent, to conclusively or

19

finally determine disputed issues that are effectively unreviewable and completely separate from the merits of the case, i.e., claims that are of right, "separable from," and "collateral" to rights asserted in the action, which are too important (and meritorious) to be denied interlocutory review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* Post-trial review will come too late to avoid the harm, and the legal issue is "separate" enough from the more basic substantive issues of Plaintiff's <u>Bivens</u> tort and damage claims in this case to avoid significant duplication of appellate court time and effort. *See* 472 U.S., at 527-529.

The object of a decision in this Court is to prevent the denial of a clearly erroneous decision denying an injunction for lack of irreparable harm in a case with clear merit and chance of success with little harm to the government or the public, and where the denial is part of a sequential and long lasting pattern of obstructing justice, so as to immunize Defendants from equitable relief and damages or from standing trial. To that end, the Defendants have sequentially defeated the substantial and merited claims of the Plaintiff based upon disputed material facts relating to the effective "house arrest" of Plaintiff's practice of patent, trademark and copyright law by a strategic mooting of an investigation by Defendants on March 4, 1996 (an investigation that is still pending, and which was perfected by a secret, irreparable, hijacking and identity theft of his practice on August 28, 1996 by violation of his First Amendment right to be free of *prior restraint* of his speech, press, religion and petition rights), in order to escape the required trial and burden of proof by standard revocation procedures, due process, equitable relief, <u>Bivens</u> damages, costs and attorney's fees by the denial of a Temporary Restraining Order, A Temporary Injunction, or a Preliminary Injunction. The denial of such temporary and revocable relief is but a way of preventing Plaintiff from obtaining his full day in court by a trial

of Appellant's claim for one million dollars in <u>Bivens</u> damages. *See* <u>Bivens v. Six Unknown</u> <u>Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

The court in <u>Cohn</u>, *Id.*, said that immunity was to be decided in "that small class" of orders that determine claims of right "too important to be denied [immediate] review." This is one of those small class of interlocutory orders where the Appellant's Motion was denied in summary fashion without notice or opportunity to be heard, which violated his right to procedural due process, and substantive due process for his clearly established <u>Bivens</u> damage and Constitutionally protected First Amendment rights, as well as his property and other liberty rights to a specific employment and to pursue Plaintiff's profession free from undue governmental interference that can and should be reviewed and prevented with prejudice or referral to the CAFC under 28 U.S.C. 1338. *See* <u>Behrens v. Pelletier</u>, 516 U.S. 299 (1996), in which the government held an investigation over the head of the litigant, despite a statute of limitations defense (albeit, the Defendants in this case have been holding an <u>investigation</u> over the head of the Appellant with a statute of limitations claim for about eleven years on the basis of a reverse RFI on March 4, 1996 (Defendants' Exhibit 8). Then there was a secret identity theft that narrowed his registration beyond that of a strategic mooting of the <u>investigation</u> not known by Appellant to be open. His identity was secretly removed and hijacked by identity theft without constitutionally sufficient notice to the Plaintiff by a secret handwritten note dated August 28, 1996 on the reverse RFI of March 4, 1996 (Defendants' Exhibit 8). Thereafter, the <u>complaint</u> was closed without notice or a closing letter to the Appellant on June 15, 2000. (Defendants' Exhibit 33). *See* <u>United States v. Sheehan</u>, No. 07-3002 (decided January 11, 2008 CA DC Cir.), where the narrowing of a permit was relevant to the assessment of the knowledge and intent of the litigant and the deprival of any opportunity to present a defense without notice.

21

It is noted that this case differs from <u>Sheehan</u>, <u>Id.</u>, in that in this case the holder of a permit did not voluntarily withdraw his existing permit and apply for a new one, and there is every indication in Constitutional law and equity obliging the Government to follow the revocation procedures codified and required by law. In both cases, moreover, there was a Government failure to give any notification that the scope of the permit was narrowed and secretly hijacked by identity theft. In this case, like in the <u>Sheehan</u> case, <u>Id.</u> that is relevant to an assessment of Appellant's knowledge and intent during the time from the Maryland Bar Counsel's letter of December 6, 1996 (Defendants Exhibit 6), and February 8, 1996 (Defendants' Exhibit 7), until the reverse RFI of March 4, 1996, or the minimum 30 day period assigned to the Defendants for holding the investigation in abeyance before presenting a "closing letter" or a formal complaint to which Appellant would have been obligated to respond or face discipline or some other Draconian penalty.

A Controlling Question of Law for determination by the District Court is whether this Court has jurisdiction to determine if the Defendants lack immunity to stand trial for temporary and preliminary equitable relief, and money damages in connection with Appellant's claim for <u>Bivens</u> damages? *See* <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). In this connection, the Defendants' claim is that Defendants Moatz and Griffin are absolutely immune. And they asked the Court to remove them from the litigation without liability. *See* page 34 of Defendants' 12/20/07 Dispositive Motions – "c. <u>Defendants Moatz and Griffin Should Be Dismissed</u> To the extent the Court determines that it has jurisdiction over Plaintiff's *reinstatement claim* under 35 U.S.C. 32 and does grant Defendants' motion to dismiss the reinstatement claim under Fed. R. Civ. P. 12 (b) (1), then it is appropriate for the Court to

dismiss the defendants, Harry I. Moatz and William J. Griffin." (Emphasis added). But of course, the Court <u>can't</u> <u>deny</u> the Plaintiff's application to <u>qualify</u> to be reinstated!

In their long lasting effort to avoid standing trial for equitable relief, damages and attorney's fees, the Defendants' 12/20/07 filing, like the District Court's Order of 2/25/08 (*See* Pp. 1-2), is a continuing effort to deprive Appellant of his Constitutional rights. That effort raises the not-so-widely feared phantom spectre imagined by Defendants, including the Director of OED, Defendant Moatz and his investigator, Defendant Griffin. They feel that Appellant is a threat to what they consider is their "mission to protect the public from incompetent practitioners." *See* page 35 of Defendants' 12/20/07 filing, when in fact they are referring to Invention Promoters under the Inventor's Protection Act of 1999, as if Appellant is pandering falsely to an imaginary real person rather than a general audience without any specific knowledge or intent to pander deceitfully. The problem with that clearly erroneous and manipulated error not in accordance with law, is that the Defendants' phantom "<u>Reinstatement</u> <u>Claim</u>" has been deceitfully segued from a reinstatement to qualify to take the Patent Office examination, to a "Reinstatement Claim" to practice or advertise in his current application, in an unlimited number of claims and Continuations as an "attorney, agent or firm" because of an unidentified and undisclosed fault by Plaintiff, or to hold himself out in the PTO or elsewhere as an attorney, or to allow others to hold himself out as an unregistered "attorney, agent or firm."

According to the Court's Order of Protection, and page 34 of their 12/20/07 filing, Defendants Moatz and Griffin are immune from answering Plaintiff, and his request for temporary or preliminary equitable relief should be dismissed with absolute immunity under the plain terms of section 32 of title 35 of the U.S. Code, which they say "grants the Court [has] jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin." They cite for

comparison, <u>Gager v.</u> Ladd, 212 F.Supp. 671 (D.D.C. 1963) (discussing authority under 35

U.S.C. 32, to review [of] the action of the Commissioner of Patents) (albeit, they allege that the

Commissioner is immune under what they claim to be an imagined "<u>Reinstatement Claim</u>"

because he has not made a decision that can be reviewed by this Court).

 And deviously, according to page 32 of Defendants' 12/20/07 filing, they can escape

liability and standing trial because "The USPTO Director has not issued a decision regarding

Plaintiff's reinstatement request." They further state that, "Because this Court does not have a

final agency action from the USPTO to review, i.e., a USPTO Director decision, it should

dismiss the claim under Fed. R. Civ. P. 12 (b) (1)." They cite, <u>Natural Resources Defense</u>

<u>Council v.</u> Johnson, 422 F.Supp.2d 105 (D.D.C. 2006). They additionally cite <u>Ticor Title Ins.</u>

<u>Co. v. FTC</u>, 814 F.2d 731m 746 b,2 (D.C. Cir. 1987) for the proposition that the "Court did not

have [*Court does have*] jurisdiction over matter because defendant had not taken final agency

decision." (Emphasis and brackets added because statements are inconsistent). They note that:

"the finality requirement applies to 'agency action made reviewable by statute,'" for example,

under the [Age Discrimination in Employment Act] ADEA. But they ignore the Commissioners

<u>Final Decision</u> in this action to claim absolute immunity from suit and damages.

 Defendants' claim their immunity is genuine but not a genuine issue of fact in dispute for

which they must answer under the Court's Protective Order. Also, it is a genuine issue of fact in

dispute, when Defendants say, as they have done, that the case should be disposed of "for failure

to exhaust administrative remedies." Plaintiff claims he and others have exhausted their

administrative remedies in seeking equitable relief against Defendants' Final Revised Rules. *See*

<u>Tafis v. Dudas et. al</u>, *Id.*, (Final Revised Rules. February 21, 2007 to be codified at 37 C.F.R. pt.

1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and] authority," 5

U.S.C. 706 (2).

## CONCLUSION

**In view of the above, this Court is requested to grant this Motion made herein,**

**herewith and hereby** for an emergency Order requiring Defendants to respond to this filing, and

for a Temporary, Provisional, Restraining Order to prevent irreparable harm to the Plaintiff by

the Defendants' June 19, 2008 *per se* requirement that the Plaintiff sit for the patent examination

in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims

or Continuations.   To this end, equitable relief is requested to open the record and to restrain the

Defendants from their *per se* requirement to only take the July 2008 paper Patent Office

examination once without retaking it and the 2005, 2006 or 2007 exams; with and without a

showing of fitness on July 23rd and 24th 2008 or thereafter; with and without an extension of

time; with and without  a reply; and with and without additions exceeding those reasonable

accommodations listed in Defendant Griffin's letter of July 19, 2008.   Reconsideration is also

requested of the Court's Order of 7/7/08.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" and "*Attorney, Agent or Firm* –

Cornell D.M. Judge Cornish Down Pat TM SM $^{© 2008 ®}$

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:   7/16/08

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this _____ day of July, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 7/16/08

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CORNELL D.M. JUDGE CORNISH,** | ) | |
| | ) | |
| **Plaintiff *Pro Se*** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case 1:07cv01719 (RWR)** |
| **JON DUDAS, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| | ) | |

**Memorandum In Support of Emergency Motion To Modify The Court's Protective
Order By Opening The Record And Ordering A Response To This Emergency Request For
Temporary, Provisional, Equitable Relief And Request To Reconsider The Order Of 7/7/08**

This is a Memorandum in Support of Plaintiff's Motion to Open The Record with

supervision by the Court for oral and written communications between the parties concerning the

genuine material issue in dispute as to the unconstitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32

because of vagueness, inconsistency, violation of the First Amendment, and in excess of

jurisdiction and authority. *See* Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008,

DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1

(the "Final Rules"), which were declared "in excess of jurisdiction and authority.

To this end, this is a Memorandum in Support of this Motion for an emergency

Temporary Restraining Order to prevent irreparable harm to the Plaintiff by Defendants'

unconstitutional *per se* requirement that the Plaintiff take the Patent Office examination on July

23rd and 24th, and for reconsideration of and Opposition to the Order of 7/7/08.

1

Thus, this is also a request for an Order requiring the Defendants to reply to this request for equitable relief, comprising, *inter alia,* an Emergency Temporary Restraining Order to prevent the irreparable harm to the Plaintiff by the Court's Protective Order that blocks response to Plaintiff's objections to the Defendants' *per se* requirement that the Plaintiff, *inter alia,* take the July 2008 Patent Office examination less than 60 days from the date of Defendant Griffin's letter of July 19, 2008 without responding to Plaintiff's objections and requests. See pages 1 of Document 46 of the Court's Order of 2/25/08, which states that, *"Pro se* plaintiff Cornell D.M. Judge Cornish, an attorney who was previously registered to practice before the United States Patent and Trademark Office ("USPTO" or "PTO"), filed a complaint against the defendants alleging among other things, that the defendants engaged in discrimination by requiring him to sit for the patent office examination before being reinstated," i.e., to qualify for reinstatement to take the patent office examination for CLE purposes, or other purely academic purposes (albeit, Plaintiff was officially notified by the Commissioner that he was removed from the register of attorneys only after this case was filed against him, and it is not known precisely when or if he was officially removed until then).   Along with the unconstitutionality of the supposedly authorizing statutes, these are genuine material issues in dispute.

Stated another way, this is a request for a Temporary, Provisional, Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' June 19, 2008 *per se* and unconstitutional requirement that the Plaintiff sit for the patent examination in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims or Continuations. To this end, equitable relief is requested to open the record and to restrain the Defendants from their *per se* requirement to only take the July 2008 paper Patent Office examination once without retaking it or the 2005, 2006 or 2007 exams as the only showing of fitness allowed on July 23rd

2

and 24th 2008 or thereafter.  Also, preventing extensions of time for obtaining reasonable

accommodations exceeding those listed in Defendant Griffin's letter of July 19, 2008 are

preventing advertising in an unlimited number of claims and Continuations by *prior restraint*.

On page 3, Document 46 of the Court's Order of 2/25/08, states that, "OED informed

Cornish that because it had been over five years since he had been registered, he must take the

patent registration examination or submit a showing to the satisfaction of OED that he continued

to possess the legal qualifications necessary to render valuable services for patent applicants."

(Citations omitted).  Two petitions for review were never answered, and since March 4, 1996, he

has been prevented from showing fitness except by passing the examination on designated test

days without reasonable accommodations.

The Defendants' *per se prior restraint* by the requirement to take the examination on July

23rd and 24th is without an extension of time and immunity from replying to Plaintiff's objections

or with adequate safeguards: including time to ask the Court to order the Defendants to answer

Plaintiff's complaint and objections; time to study for the examination for CLE purposes; time to

appeal the *per se* requirement to take the examination on July 23rd and 24th only without any

opportunity to submit any other showing to the satisfaction of OED that he continued to possess

the legal qualifications necessary to render valuable services for patent applicants; time to ask the

Court to allow Plaintiff to show that he continues to possess the legal qualifications necessary to

render valuable services for patent applicants by means other than taking the examination on

those dates; and time and an opportunity for Plaintiff to demonstrate irreparable harm and other

factors that entitle him to the emergency relief sought.

The Court's Document 46 filed 2/25/08 also states on page 2 that, "Cornish also filed a

series of miscellaneous motions following his motion for a preliminary injunction, to which the

3

defendants responded by moving for a protective order to temporarily either ban plaintiff from filing more motions or relieve defendants from having to respond to further motions by plaintiff unless the court orders responses." The Court didn't ban Plaintiff from making further motions, including this motion, but it did grant the Defendants immunity from responding. This is to request the court to order a response and emergency equitable relief for irreparable harm and other factors that entitle him to the relief sought and so far denied.

The Defendants' have made a *per se* requirement by *prior restraint* that Plaintiff take the examination once only on July 23rd and 24th 2008 in less than the 60 days from the Defendants' July 19th RFI without time to complete Plaintiff's application, as provided for by 37 C.F.R. 11.7 (e) in order to qualify for reinstatement to take the examination. Requiring the July 23rd and 24th dates will prevent Plaintiff from taking the examination with proper preparation, any response to his objections, and time to appeal. After those dates an appeal will be too late. The time between notice that his application was incomplete on June 19, 2008 and the *per se* demand to take the exam only on July 23rd and 24th is too short for him to study to take the examination on those latter dates, or for Defendants to respond to his objections without a Court Order lifting the Court's Protective Order, or for a timely appeal.

The notice of June 19th was timely responded to on July 11th with a request for an extension of time to complete the application within the 60 days required by 37 C.F.R. 11.7 (e), and to qualify to take the examination. That was a *per se* requirement to pass it Defendants' way or to take the highway without any other way of demonstrating other factors that entitle Plaintiff to the emergency relief sought, e.g., by taking the examination as an unregistered attorney for CLE purposes in accordance with 37 C.F.R. (a), (a) (2), (i), (i) (a) and (ii) and (e). This is but

4

one way to demonstrate that he "possesses the legal qualifications necessary to render valuable service for patent applicants."

The ability to qualify to be reinstated to take the exams an unlimited number of times as provided in 37 C.F.R. 11.7 (e) is a demonstration of one of the "other factors" that "entitle him to the emergency relief sought." *See* page 2 of the Court's 2/25/08 Document 46.

Without the emergency relief sought, including, *inter alia,* modification of the Court's Protective Order, and a Temporary Restraining Order, the Defendants may use the Court's Protective Order of 2/25/08 before or after the Court's decision on the Defendants' Dispositive Motions to exclude the insertion in the record of critical correspondence and oral communications between the Defendants and Plaintiff without the Court's supervision. This includes communications by Defendant Griffin on June 19th, and notice of an oral agreement on July 11, 2008, which was a personal, oral approval of the OED Director Defendant Moatz, for the deposit in the Office of OED without objection, of limited, provisional, applications by the Plaintiff to qualify to be reinstated to retake the Patent Office examinations of 2005, 2006, 2007, 2008 and 2009 for CLE purposes; and also to extend the time to take the July 2008 examination later than July 23rd and 24th with the reasonable accommodations listed in Defendant Griffin's letter of June 19th in accordance with the stipulation of Defendant Moatz on October 9, 2007, and also with the accommodations exceeding those stipulated accommodations and requested by Plaintiff on July 11, 2008. A request was also made to qualify to take the 2009 examination.

Still further, the Defendants by prior restraint are refusing to allow Plaintiff to practice as an attorney, agent or firm in his currently pending application or an unlimited number of claims, Continuations or RCEs without taking the Patent Office examination on July 23th and 24th with only the accommodations approved and stipulated on October 9, 2007. *See* Tafas v. Dudas, et al,

5

1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2). *See* also 71 Fed. Reg. 48 (03 January 2006); Federal Register/Vol 71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January 2006) Proposed Changes to Practice for continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims, Notice of proposed rulemaking (03 January 2006); and No. 147/ Wednesday, August 1, 2007/ Rules and Regulations, pp. 42242 et. seq. (37 CFR Part 2) (Docket No. PTO-T-2005-014 RIN 0651-AB56).

This is a Motion for an emergency equitable relief, including, *inter alia,* a Temporary Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' *per se* requirement that the Plaintiff take the Patent Office examination only on July 23rd and 24th 2008 without the accommodations in excess of the reasonable accommodations listed in Defendant Griffin's letter of July 19, 2008. Page 3 of Document 46 of the Court's Order of 2/25/08, states not only that, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants," but also that Plaintiff, among other things, included as part of his complaint, "that the defendants engaged in discrimination by requiring him to sit for the patent examination before being reinstated, violated his First Amendment rights by preventing him from advertising as a registered patent attorney." It also prevented him from advertising as an unregistered patent attorney by using the truthful designation "attorney, agent or firm."

6

The emergency Temporary Restraining Order is necessary to extend the time to at least August 11, 2008 for qualifying to take the 2008 examination within the sixty day period required by 37 C.F.R. 11.7 (b) (2); and to qualify to be reinstated to retake the 2005, 2006, 2007, 2008 and 2009 examinations as an unregistered attorney only for CLE purposes as a form of loss mitigation by submitting a "showing to the satisfaction of OED that he continues to possess the legal qualifications necessary to render valuable services for patent applicants." That is an alternative to the Order of the Court denying Plaintiff's Motion for an Order of Mediation in which the Plaintiff is allowed to show to the satisfaction of OED that he continues to possess the legal qualifications necessary to render valuable services for patent applicants for himself and his co-inventors who are alive, dead, unavailable or hostile, and especially in unlimited number of claims and "Continuations" of his existing patent application under the Final Revised Rules of the Defendants. *See* Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2). *See also* 71 Fed. Reg. 48 (03 January 2006); Federal Register/Vol 71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January 2006) Proposed Changes to Practice for Continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims.

Considering the requirements for this request for an emergency provisional, temporary restraining Order, which is required by the Court's Order of a partial Protective Order, Document 46 filed 2/25/08, the harm that issuing the injunction would cause to the Defendant agency's enforcement authority would be exactly zero or less. There would be no measureable harm now or in the future to the Defendants or the public.

7

The July 23rd and 24th dates for the examination can remain fixed for all test takers except the Plaintiff. The dates and conditions would remain the same without any effect on any test taker except the Plaintiff if the date of the examination was postponed only for the Plaintiff by a Court Order of restraint and to reply to the request to retake the examination for CLE purposes, as he is allowed to do "an unlimited number of times" under 37 C.F.R. 11.7 (e). According to that Rule, Plaintiff can take any and all exams an unlimited number of times, not just once for each examination. According to 37 C.F.R. 11.7 (e) it is only necessary to fail an individual, particular examination in order to retake that failed examination an unlimited number of times.

According to 37 C.F.R. 11.7 (e): "An individual who failed the examination has the right to retake the examination an unlimited number of times upon payment of the fees required by 1.21 (a) (1) (i) and (ii)." And equitable relief is justified to restrain the *per se* requirement to take it only once on July 23rd and 24th with the reasonable accommodations approved by Director Moatz for the 2007 examination in order to advertise as an unregistered attorney, agent or firm in his currently pending patent application, and to advertise likewise in an unlimited number of claims and Continuations. Requiring a *per se* once only taking of the examination only on July 23rd and 24th interferes by *prior restraint* with Plaintiff's First Amendment rights. *See* <u>Tafas v. Dudas, et al</u>, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2); 71 Fed. Reg. 48 (03 January 2006); Federal Register/Vol 71 (13 January 2006), 1302 OG 1329 and 1318 OG (24 January 2006) Proposed Changes to Practice for continuing Applications, Requests for Continued Examination Practice, and Applications Containing Patentably Indistinct Claims, Notice of proposed rulemaking (03 January 2006); and No. 147/ Wednesday, August 1, 2007/

8

Rules and Regulations, pp. 42242 et. seq. (37 CFR Part 2) (Docket No. PTO-T-2005-014 RIN 0651-AB56).

The requested Emergency, Temporary Restraining Order is also necessary as an alternate to an Order under Rule 16.3 for a Conference, *inter alia,* to preserve Plaintiff's rights under the 1st Amendment. Davis v. Blakely, No. 07-2262 (RWR)(DC DC Order 4/14/08), such as agreed by the Court to be considered if necessary after a decision on Defendants' Dispositive Motions.

This is a Motion to reconsider and in Opposition to the Minute Orders of 6/19/08 and 7/7/08 that prevented the Plaintiff from gaining any kind of Preliminary Stay, Conference, Order or Preliminary Injunction against Defendants to preserve the relative positions of the parties until trial on the merits can be held for the protection of his First Amendment, Due Process and other constitutional rights or rights for Bivens damages, costs and attorneys fees, and for the irreparable harm demonstrated by Plaintiff, including the concrete, non-speculative loss of jobs and the viability of his career, as well as the loss of rights to advertise in his currently pending application and an unlimited number of claims and Continuations thereof caused by Defendants *prior restraint.* University of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Zhengxing v. The U.S. PTO, Case No. 07-1918. *See* also Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA Alexandria); 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007); and Davis v. Blakely, No. 07-2262 (RWR)(Dist. Ct. DC Order 4/14/08).

Obviously, since the Defendants are already under an injunction by the Court in Virginia, there is no damage to the Defendants by the addition of another injunction or preliminary equitable relief in this case. And the requested relief is required and not redundant to the injunction in Virginia because the injunction in Virginia is not as complete and all inclusive as the one tailored to this case to prevent the requirement for a *per se* taking of the July 23rd and

9

24th examinations only once on those dates, and only with the accommodations approved for the 2007 examination and stipulated to be available to the Plaintiff for a retaking of the examination if he is held to be qualified to be reinstated to take the examination.

Without ordering a response by the Defendants, the Court has immunized the Defendants from responding by its Order of Protection. The effect is at least similar to a case where Plaintiff's case is being determined by a Court that is somehow effectively established as a wartime Prosecutor of a enemy combatant at Quantanamo Bay and replaced by the Criminal Section in the Civil Rights Division of the U.S. Department of Justice, or the U.S. Attorney for the District of Columbia for the investigation of the Plaintiff, and a cover up of a botched investigation that is being held, and has been held, in abeyance by the Defendants since March 4, 1996 (Defendants' Exhibit 8).

The dividing line between short-term and long term suspensions is designed to identify those attorneys whose misconduct demonstrates a general ethical unfitness which is sufficient to justify imposition of a sanction that requires proof of such fitness in a separate reinstatement proceeding before the attorney is permitted to resume the practice of law. In re Hessler, 549 A2d 700, 715-716 (DC 1954). The botched abeyant investigation in this case, however, has taken on the color of a secret violation of Plaintiff's constitutional rights that has been covered up as an alternate dispute resolution procedure gone wrong and covered up as a strategic mooting of Plaintiff's practice such that he is prevented from being reinstated only to qualify to take the Patent Office examination because of the *per se* requirement to take it only once on July 23rd and 24th without responding to Plaintiff's requests for an extension of time to take the examination at a later time with reasonable accommodations in excess of those already provided and approved in 2007. A request is also made for an extension of time to retake the 2005-2009 exams.

10

And, to add insult to injury, that mooting has made Plaintiff a person of interest as in the case of Steven J. Hatfill, who has settled with the Government for $5.85 million because the defendants' evidence collection, like the evidence collection here, failed to bring to light any evidence of wrong-doing.

As a consequence of the botched evidence collection, the Plaintiff here, like Hatfill, has satisfied their burden of showing that he has been irreparably injured by the loss of all his jobs. Plaintiff was coerced to give up all his clients both short-term and long-term, both in and outside the Patent Office independently of whether he was or was not registered as an attorney in the USPTO and even before he was allegedly removed from the register of attorneys without notice to the Plaintiff on or after August 28, 1996 (according to an informal, secret, handwritten note on only one copy of Defendants' Exhibit 8 for use in the PTO only). He has also been irreparably injured in his short-term and long-term viability and the vitality of his practice as a lawyer and a patent attorney both in and outside the Patent Office, both as a patent attorney and as an attorney not registered in the PTO by the secret identity theft and tampering with his name and identity on the PTO register without notice to him. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998).

His reputation has been irreparably tarnished because of his age and discrimination against him that violates his constitutional rights. That irreparably harms him and prevents him from earning a living. This is a significant, particularized, and concrete injury in fact that is causally connected to the agency action initiated by the Defendants *sua sponte* and secretly. It is not, and was not, speculative, nor could it be redressed by a settlement of one million dollars in money damages alone. It is necessary, therefore, to at least redress it successfully as a preliminary injunction to preserve the relative positions of the parties until the hearing on the

11

merits. <u>Atlantic Sea Island Group v. Connaughton</u>, Case No. 1:2008cv00259, Document 11
(Dist. Ct. DC 3/17/2008) (RWR).

To this end also, at least one Virginia District Court has found that the Defendants have
by abuse of discretion not authorized by law, and by exceeding statutory jurisdiction [and]
authority," 5 U.S.C. 706 (2), as published in 71 Fed. Reg. 48 (03 January 2006), taken the law
into their own hands. They have required that Plaintiff "take" the July 2008 paper patent
registration examination only on July 23 and 24th without an extension of time and without
answering Plaintiff's complaints and objections or alternatives under the Court's Order of
Protection because he is unregistered, and because the Defendants can ignore the protection of
the First Amendment and other constitutional rights, as well as Plaintiff's requests for <u>Bivens</u>
damages, costs and attorneys fees. But these are all constitutional violations. There is nothing in
law, either statutory or case law or regulation that would require or allow such an agency action
or immunity or protection of the Defendants.

The Supreme Court has established precedents that justify at least one Court case in one
"small class" of "collateral" interlocutory district court decisions that are subject to revision, and
even if they are "fully consummated decisions [that] are but steps towards final judgment in
which they will merge." <u>Cohen v. Benefiicial Industrial Loan Corp.</u>, 337 U.S. 541, 546 (1949).
Apr. 20, 2006); and <i>see</i> <u>Behrens v. Pelltier</u>, 516 U.S. 299 (1996), which involved a narrow and
controversial Controlling Questions of law relating to immunity and from standing trial.

This "small class" of interlocutory decisions comprises the ordinary absolute or qualified
immunity case, such as this one, where the harm is irreparable and permanent, to conclusively or
finally determine disputed issues that are effectively unreviewable and completely separate from
the merits of the case, i.e., claims that are of right, "separable from," and "collateral" to rights

12

asserted in the action, which are too important (and meritorious) to be denied interlocutory review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* Post-trial review will come too late to avoid the harm, and the legal issue is "separate" enough from the more basic substantive issues of Plaintiff's Bivens tort and damage claims in this case to avoid significant duplication of appellate court time and effort. *See* 472 U.S., at 527-529.

The object of a decision in this Court is to prevent the denial of a clearly erroneous decision denying an injunction for lack of irreparable harm in a case with clear merit and chance of success with little harm to the government or the public, and where the denial is part of a sequential and long lasting pattern of obstructing justice, so as to immunize Defendants from equitable relief and damages or from standing trial. To that end, the Defendants have sequentially defeated the substantial and merited claims of the Plaintiff based upon disputed material facts relating to the effective "house arrest" of Plaintiff's practice of patent, trademark and copyright law by a strategic mooting of an investigation by Defendants on March 4, 1996 (an investigation that is still pending, and which was perfected by a secret, irreparable, hijacking and identity theft of his practice on August 28, 1996 by violation of his First Amendment right to be free of *prior restraint* of his speech, press, religion and petition rights), in order to escape the required trial and burden of proof by standard revocation procedures, due process, equitable relief, Bivens damages, costs and attorney's fees by the denial of a Temporary Restraining Order, A Temporary Injunction, or a Preliminary Injunction. The denial of such temporary and revocable relief is but a way of preventing Plaintiff from obtaining his full day in court by a trial of Appellant's claim for one million dollars in Bivens damages. *See* Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

13

The court in Cohn, Id., said that immunity was to be decided in "that small class" of orders that determine claims of right "too important to be denied [immediate] review." This is one of those small class of interlocutory orders where the Appellant's Motion was denied in summary fashion without notice or opportunity to be heard, which violated his right to procedural due process, and substantive due process for his clearly established Bivens damage and Constitutionally protected First Amendment rights, as well as his property and other liberty rights to a specific employment and to pursue Plaintiff's profession free from undue governmental interference that can and should be reviewed and prevented with prejudice or referral to the CAFC under 28 U.S.C. 1338. See Behrens v. Pelletier, 516 U.S. 299 (1996), in which the government held an investigation over the head of the litigant, despite a statute of limitations defense (albeit, the Defendants in this case have been holding an investigation over the head of the Appellant with a statute of limitations claim for about eleven years on the basis of a reverse RFI on March 4, 1996 (Defendants' Exhibit 8). Then there was a secret identity theft that narrowed his registration beyond that of a strategic mooting of the investigation not known by Appellant to be open. His identity was secretly removed and hijacked by identity theft without constitutionally sufficient notice to the Plaintiff by a secret handwritten note dated August 28, 1996 on the reverse RFI of March 4, 1996 (Defendants' Exhibit 8). Thereafter, the complaint was closed without notice or a closing letter to the Appellant on June 15, 2000. (Defendants' Exhibit 33). See United States v. Sheehan, No. 07-3002 (decided January 11, 2008 CA DC Cir.), where the narrowing of a permit was relevant to the assessment of the knowledge and intent of the litigant and the deprival of any opportunity to present a defense without notice.

It is noted that this case differs from Sheehan, Id., in that in this case the holder of a permit did not voluntarily withdraw his existing permit and apply for a new one, and there is

14

every indication in Constitutional law and equity obliging the Government to follow the revocation procedures codified and required by law. In both cases, moreover, there was a Government failure to give any notification that the scope of the permit was narrowed and secretly hijacked by identity theft. In this case, like in the <u>Sheehan</u> case, *Id.* that is relevant to an assessment of Appellant's knowledge and intent during the time from the Maryland Bar Counsel's letter of December 6, 1996 (Defendants Exhibit 6), and February 8, 1996 (Defendants' Exhibit 7), until the reverse RFI of March 4, 1996, or the minimum 30 day period assigned to the Defendants for holding the investigation in abeyance before presenting a "closing letter" or a formal complaint to which Appellant would have been obligated to respond or face discipline or some other Draconian penalty.

A Controlling Question of Law for determination by the District Court is whether this Court has jurisdiction to determine if the Defendants lack immunity to stand trial for temporary and preliminary equitable relief, and money damages in connection with Appellant's claim for <u>Bivens</u> damages? *See* <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). In this connection, the Defendants' claim is that Defendants Moatz and Griffin are absolutely immune. And they asked the Court to remove them from the litigation without liability. *See* page 34 of Defendants' 12/20/07 Dispositive Motions – "c. <u>Defendants Moatz and Griffin Should Be Dismissed</u> To the extent the Court determines that it has jurisdiction over Plaintiff's *reinstatement claim* under 35 U.S.C. 32 and does grant Defendants' motion to dismiss the reinstatement claim under Fed. R. Civ. P. 12 (b) (1), then it is appropriate for the Court to dismiss the defendants, Harry I. Moatz and William J. Griffin." (Emphasis added). But of course, the Court <u>can't</u> <u>deny</u> the Plaintiff's application to <u>qualify</u> to be reinstated!

<div align="center">15</div>

In their long lasting effort to avoid standing trial for equitable relief, damages and attorney's fees, the Defendants' 12/20/07 filing, like the District Court's Order of 2/25/08 (*See* Pp. 1-2), is a continuing effort to deprive Appellant of his Constitutional rights. That effort raises the not-so-widely feared phantom spectre imagined by Defendants, including the Director of OED, Defendant Moatz and his investigator, Defendant Griffin. They feel that Appellant is a threat to what they consider is their "mission to protect the public from incompetent practitioners." *See* page 35 of Defendants' 12/20/07 filing, when in fact they are referring to Invention Promoters under the Inventor's Protection Act of 1999, as if Appellant is pandering falsely to an imaginary real person rather than a general audience without any specific knowledge or intent to pander deceitfully. The problem with that clearly erroneous and manipulated error not in accordance with law, is that the Defendants' phantom "<u>Reinstatement Claim</u>" has been deceitfully segued from a reinstatement to qualify to take the Patent Office examination, to a "Reinstatement Claim" to practice or advertise in his current application, in an unlimited number of claims and Continuations as an "attorney, agent or firm" because of an unidentified and undisclosed fault by Plaintiff, or to hold himself out in the PTO or elsewhere as an attorney, or to allow others to hold himself out as an unregistered "attorney, agent or firm."

According to the Court's Order of Protection, and page 34 of their 12/20/07 filing, Defendants Moatz and Griffin are immune from answering Plaintiff, and his request for temporary or preliminary equitable relief should be dismissed with absolute immunity under the plain terms of section 32 of title 35 of the U.S. Code, which they say "grants the Court [has] jurisdiction over the USPTO Director, not Messrs. Moatz and Griffin." They cite for comparison, <u>Gager v.</u> Ladd, 212 F.Supp. 671 (D.D.C. 1963) (discussing authority under 35 U.S.C. 32, to review [of] the action of the Commissioner of Patents) (albeit, they allege that the

16

Commissioner is immune under what they claim to be an imagined "Reinstatement Claim" because he has not made a decision that can be reviewed by this Court).

And deviously, according to page 32 of Defendants' 12/20/07 filing, they can escape liability and standing trial because "The USPTO Director has not issued a decision regarding Plaintiff's reinstatement request." They further state that, "Because this Court does not have a final agency action from the USPTO to review, i.e., a USPTO Director decision, it should dismiss the claim under Fed. R. Civ. P. 12 (b) (1)." They cite, Natural Resources Defense Council v. Johnson, 422 F.Supp.2d 105 (D.D.C. 2006). They additionally cite Ticor Title Ins. Co. v. FTC, 814 F.2d 731m 746 b,2 (D.C. Cir. 1987) for the proposition that the "Court did not have [*Court does have*] jurisdiction over matter because defendant had not taken final agency decision." (Emphasis and brackets added because statements are inconsistent). They note that: "the finality requirement applies to 'agency action made reviewable by statute,'" for example, under the [Age Discrimination in Employment Act] ADEA. But they ignore the Commissioners Final Decision in this action to claim absolute immunity from suit and damages.

Defendants' claim their immunity is genuine but not a genuine issue of fact in dispute for which they must answer under the Court's Protective Order. Also, it is a genuine issue of fact in dispute, when Defendants say, as they have done, that the case should be disposed of "for failure to exhaust administrative remedies." Plaintiff claims he and others have exhausted their administrative remedies in seeking equitable relief against Defendants' Final Revised Rules. *See* Tafis v. Dudas et. al, *Id.*, (Final Revised Rules. February 21, 2007 to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of statutory jurisdiction [and] authority," 5 U.S.C. 706 (2).

17

Plaintiff alleges as a genuine issue of fact in dispute that his "Reinstatement Claim" is a claim for a need and a right for an extension of time to be reinstated to qualify to take and retake the July 2008 paper Patent Office examination, as well as the 2005, 2006 and 2007 examinations for CLE purposes. It is also a genuine issue of material fact in dispute as to whether Plaintiff has been irreparably harmed by the Defendants' Actions and by their abuse of discretion in secretly removing him from the register of attorneys without telling him, and by prior restraint of his practice in and out of the PTO by interfering for at least 30 days from March 4, 1996, with his and his client's First Amendment and other rights, including their constitutional rights, by the strategic mooting of an investigation on March 4, 1996 (Defendants' Exhibit 8), and keeping it in abeyance at least until now, and possibly indefinitely.

Plaintiff still seeks interlocutory and final relief despite the Court's Orders denying Plaintiff's meritorious request for equitable relief, his Bivens tort claim for damages, and for costs and attorneys fees for Constitutional violations by Defendants who are not absolutely immune based upon Supreme Court precedents that justify at least one interlocutory appeal in one "small class" of district court decisions, such as this case, that are subject to revision, even if they are "fully consummated decisions [that] are but steps towards final judgment in which they will merge." Cohen v. Benefiicial Industrial Loan Corp., 337 U.S. 541, 546 (1949).

For example, this "small class" comprises this ordinary absolute or qualified, interlocutory immunity case, where the harm is irreparable and permanent, to conclusively or finally determine the Controlling question of law involved relating to the disputed issue of immunity that is effectively unreviewable and completely separate from patent law and 35 U.S.C. 1, et seq.  *See* the cited 4th Circuit case that accepted interlocutory jurisdiction in Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See* also  Goldstein, 364 F.3d at

18

211-19; Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006). The cited Goldstein case, Id., which involved an interlocutory appeal by a patent attorney, is much like the interlocutory appeal in this case and the one accepted in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

That Controlling question of law is also completely separate and independent of the merits of the case, i.e., the claims of Plaintiff as of right, "separable from, and collateral to, rights asserted under the patent laws in the action, which are too important to be denied interlocutory review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id. Post-trial review will come too late to avoid the emergency of the irreparable harm involved (which was denied by the District Court in this case), and the legal issue is "separate" enough from the more basic substantive issues of Appellant's Bivens tort and damage claims in this case to avoid significant duplication of appellate court time and effort. See 472 U.S., at 527-529; and the 4th Circuit case that accepted interlocutory jurisdiction in an appeal without going to the CAFC, in Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). See also Goldstein, 364 F.3d at 211-19; Goldstein, No. 05-1399 (CA 4th Apr. 20, 2006); and much like the interlocutory appeal accepted in Behrens v. Pelltier, 516 U.S. 299 (1996), which involved a narrow and controversial Controlling Questions of law relating to the immunity from liability and standing trial in a meretricious case like this one.

The Defendants' opposition to this Court's jurisdiction is a delaying tactic. Reference is made to the so-called war on constitutional tort lawsuits played out in the field of motion practice

rather than in the courtroom. *See* Defendants' Motions for sealing and unsealing with redaction, for an Order of Protection, and for Summary Judgment or a Motion to Dismiss in this case to avoid responding to the Appellant in a trial or even in discovery. Also, their proposed Order attached to their 5/8/08 filing, seeks and sets forth: "that plaintiff's motion [52] for permission to file an interlocutory appeal be, and hereby is, DENIED." And they additionally seek denial of Defendants' "Motion for Amendment of Appeal" and its "dismissal," and their Dispositive Motions for Summary Judgment and Dismissal are pending in order to frustrate Plaintiff's request for a trial. Appellant has also asked for mediation and settlement without any response from the Defendants. He is now asking for referral, transfer and merger of Plaintiff's claims that are limited to an appeal under the patent law with the Appellees' substantially similar case now on appeal in the CAFC from Tafas, *Id.*

This Court should determine the Controlling Question of Law as to whether these genuine issues of material facts in dispute are ripe for decision in this Court or the CAFC under 28 U.S.C. 1338. Do they arise in whole or part under 35 U.S.C. 1, et seq? Does proof that this is a meritorious case need to be decided in the District Court or bifurcated and transferred to the CAFC? Is it appropriate or not to be decided in the District Court or on appeal under the general appellate jurisdiction statute, 28 U.S.C. 1291? Goldstein v. Harry I. Moatz, et al, No. 03-1257 (CA 4th 2004). *See* Goldstein, 364 F.3d at 211-19; and No. 05-1399 (CA 4th Apr. 20, 2006); Behrens v. Pelltier; and Mitchell v. Forsyth, 472 U.S. 511 (1985).

The record is incomplete in this case. Defendants' Final Revised Rules are still pending in the District Court prior to discovery and a final decision on Plaintiff's request for a permanent injunction. Plaintiff asks for the relevant still active record in the PTO to be opened for the addition of critical information on an emergency basis as the failure to do so will cause

irreparable and irrevocable injury to the Plaintiff that cannot be redressed by money damages. Only a Provisional, Temporary Restraining Order will redress the inevitable irreparable harm.

The District Court has not decided the latter issue, which is still, therefore, pending and a Controlling Question of Law. The material issue in dispute is: Refusal to Reinstate Plaintiff? Or "Are his Applications to qualify to be reinstated to take the reinstatement examinations an unlimited number of times in connection with his application and Continuations a right?"

This is a Motion for an emergency Temporary Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' *per se* requirement that the Plaintiff be denied reinstatement to the register by limiting him only to the July 23rd and 24th exams without an extension of time; without any requirement to reply under the Court's Protective Order; without sufficient time to study to take and retake it for CLE purposes; and without prior notice of acceptance by right to an unlimited number of applications and Continuations with or without the reasonable accommodations listed in Defendant Griffin's letter of July 19, 2008. See page 3 of Document 46 as Court's Order of 2/25/08, which states that, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants."

Injunctive relief is an extraordinary and drastic remedy, and Plaintiff has justified the same as an emergency by a clear showing with reference and judicial notice to the substantially similar case of Tafas, *Id.*, that the record is not "sufficient to demonstrate a lack of right to relief." Smith v. Harvey, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006) (citing Johnson v. Holway, 329 F. Supp. 2d 12, 14 n.1 (D.D.C. 2004); Local Rule 65.1 (d). And Plaintiff has likewise shown the required four factors and other factors, including

21

irreparable injury, such as those used in <u>Citizens United v. FEC</u>, Civil Action No. 07-2240

(ARR, RCL, RWR), 2008 WL 134226, at *2 (D.C.C. Jan 16 2008). This case is like the

substantially same successful case of <u>Tafas v. Dudas, et al.</u>, 1:07cv846 (JCC) and 1:07cv1008

(JCC) in the E.Distr. Va., which addressed the "controlling questions of law" and the disputed

facts involved under 28 U.S.C. 1332 as to the right to make an unlimited number of applications.

    Plaintiff has shown and documented by material facts that: (1) there is a substantial

likelihood that he will have success on the merits, (albeit, e.g., because of discrimination,

interference and *prior restraint* of his applications, including applications as an attorney, agent or

firm in his currently pending patent application and an unlimited number of claims and

Continuations thereof as an unregistered attorney, agent or firm for himself and with a power of

attorney. *See* <u>Tafas v. Dudas et. al.</u>, *Id.*), regarding violations of due process rights by not

providing constitutionally sufficient notice and an opportunity for a hearing. Also, for secret

removal from the PTO register of attorneys); (2) that [he] would suffer irreparable injury if the

injunction is not granted (albeit, by Defendants' one time only requirement without an extension

of time policy, have made it impossible for Plaintiff to pass the July 23rd and 24th examination by

not giving him an extension of time to take it and retake it for CLE purposes, by immunity from

replying to his request for an extension of time to take the examination, and to show to the

satisfaction of OED that he continues to possess the legal qualifications necessary to render

valuable services for patent applicants), (3) that an injunction would not substantially injure other

interested parties (*See,* e.g., <u>Tafas v. Dudas, et al</u>, *Id.*), and (4) that the public interest would be

furthered by the injunctions requested. *See* e.g., <u>Tafas v. Dudas, et. al</u>, *Id.*, Defs.' Opp'n to Pls.'

Mot. at 22 cited on page 20 in 1:07cv846 (JCC) (DC Va Order October 31, 2007).

The secret hijacking of Plaintiff's registration by a secret, unofficial tampering, and identity theft by Defendants without his knowledge, consent, acquiescence or intent, clearly caused and was the direct, tangible and proximate cause of the irreparable loss of Plaintiff's viability and his ability and vitality as a professional. It was a constitutionally suspect infringement of his applications. It interfered with his constitutionally protected privilege to qualify in his applications as a registered or as an unregistered attorney, agent or firm anywhere for more than eleven years from March 4, 1996 to the present. And an Emergency, Provisional, Temporary Restraining Order is necessary for preventing the irreparable damage to continue unabated indefinitely into the future, and at least until the July 2009 test can be administered for testing and retesting with an extension of time to take or retake it for CLE purposes, or to show to the satisfaction of OED that Plaintiff continues to possess the legal qualifications necessary to render valuable services for patent applicants.

Refusing emergency equitable relief also unnecessarily delays a new trial of Plaintiff's removal from the PTO registry and the viability of Plaintiff's applications in both the Patent Office and the Trademark Office. His applications are now more profoundly permanently and irreparably injured by impossible and unconstitutional requirements. Failure to obtain an injunction and the closing of the investigation being held in abeyance by a closing letter will subject him to criminal penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an unregistered attorney because he is still subject to investigation without a closing letter. This is clearly submitted as "competent evidence into the record ... that would permit the Court to assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is not issued [,]" and does not provide merely "only broad

23

•

The secret hijacking of Plaintiff's registration by a secret, unofficial tampering, and identity theft by Defendants without his knowledge, consent, acquiescence or intent, clearly caused and was the direct, tangible and proximate cause of the irreparable loss of Plaintiff's viability and his ability and vitality as a professional. It was a constitutionally suspect infringement that interfered with his constitutionally protected privilege to practice as a registered or as an unregistered attorney, agent or firm anywhere for more than eleven years from March 4, 1996 to the present. And an Emergency, Provisional, Temporary Restraining Order is necessary for preventing the irreparable damage to continue unabated indefinitely into the future, and at least until the July 2009 test can be administered for testing and retesting with an extension of time to take the test for CLE purposes, or to show to the satisfaction of OED that Plaintiff continues to possess the legal qualifications necessary to render valuable services for patent applicants.

Refusing the emergency equitable relief also unnecessarily delays a new trial of Plaintiff's removal from the PTO registry and the viability of Plaintiff's practice in both the Patent Office and the Trademark Office. His practice is once again, but now more profoundly permanently and irreparably injured without any possibility of corrective action. Failure to obtain an injunction and the closing of the investigation being held in abeyance by a closing letter will subject him to criminal penalties under 35 U.S.C. 33 of $1000 for each advertisement as an attorney, agent or firm as an unregistered attorney because he is still subject to investigation without a closing letter. This is clearly submitted as "competent evidence into the record ... that would permit the Court to assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is not issued [,]" and does not provide merely "only broad

23

conclusory statements as to alleged harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB),
2005 WL 1119797, at *3 (D.D.C. May 11, 2005).

Plaintiff has indeed clearly demonstrated why the material facts presented show why the
requested equitable relief should be granted. The substantial irreparable injury to Plaintiff by the
refusal to recognize constitutional rights in excess of those approved for the July 2007
examination by Defendants, e.g., applications to qualify to retake the 2005, 2006 and 2007
examinations, is grounds for finding that he should be permitted, and the Defendants restrained
from preventing him, from making those applications in connection with an unlimited numbers
of claims and Continuations without restriction as an unregistered patent attorney in the
jurisdictions where he is admitted by holding himself out as an attorney, agent or firm without
*prior restraint* by the Defendants. An Order is required making Defendants answer this filing
and granting an extension of time to take the July 23rd and 34th examination without
discrimination and with the reasonable accommodations requested for Plaintiff's age-related life
affecting disabilities will allow a showing to the satisfaction of OED that Plaintiff continues to
possess the legal qualifications necessary to render valuable services for patent applicants.

Refusing an injunction irreparably harms the viability of Plaintiff's profession. It
likewise injures his right to file an unlimited number of Claims and applications in both the
Patent Office and the Trademark Office. It likewise injures his applications to qualify to take an
unlimited number of PTO examinations. It likewise leads to failure to close the investigation
being held in abeyance by a closing letter. It is a prior restraint of his advertisements as an
unregistered attorney, agent or firm in his current and other applications and Continuations. This
is clearly submitted as "competent evidence into the record ... that would permit the Court to
assess whether [ ] he, in fact, faces irreparable harm to h[ is ] professional life if an injunction is

24

not issued [,]" and does not provide merely "only broad conclusory statements as to alleged harms." Barton v. Venneri, Civil Action No. 05-0669 (JDB), 2005 WL 1119797, at *3 (D.D.C. May 11, 2005).

<div align="center">CONCLUSION</div>

**In view of the above, this Court is requested to grant this Motion made herein, herewith and hereby** for an emergency Order requiring Defendants to respond to this filing, and for a Temporary, Provisional, Restraining Order to prevent irreparable harm to the Plaintiff by the Defendants' June 19, 2008 *per se* requirement that the Plaintiff sit for the patent examination in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims or Continuations.   To this end, equitable relief is requested to open the record and to restrain the Defendants from their *per se* requirement to only take the July 2008 paper Patent Office examination once without retaking it and the 2005, 2006 or 2007 exams; with and without a showing of fitness on July 23rd and 24th 2008 or thereafter; with and without an extension of time; with and without  a reply; and with and without additions exceeding those reasonable accommodations listed in Defendant Griffin's letter of July 19, 2008.   Reconsideration is also requested of the Court's Order of 7/7/08.

"*Attorney, Agent or Firm –* Cornell D.M. Judge Cornish" and "*Attorney, Agent or Firm –* Cornell D.M. Judge Cornish Down Pat TM SM $^{© 2008 ®}$

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    7/16/08

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this      *16th*      day of July, 2008.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 7/16/08

26

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

**CORNELL D.M. JUDGE CORNISH,**          )
                                         )
      **Plaintiff *Pro Se***          )
                                         )
      **v.**          )
                                         )   **Case 1:07cv01719 (RWR)**
**JON DUDAS, et al.**          )
                                         )
      **Defendants**          )
                                         )
_____)

### ORDER

UPON CONSIDERATION of Plaintiff's Motion and Memorandum in support for an

Order to Open The Record with supervision by the Court involving the genuine material issue of

facts in dispute as to Controlling Questions of law; and for an emergency Order requiring

Defendants to respond to this filing, and for a Temporary, Provisional, Restraining Order to

prevent irreparable harm to the Plaintiff by the Defendants' June 19, 2008 *per se* requirement

that the Plaintiff sit for the patent examination in order to advertise as an attorney, agent or firm

in a filing with an unlimited number of claims or Continuations, and the entire record it is this

16th day of July 2008, hereby

ORDERED that Plaintiff's Motion should be and it is hereby Granted.


                        _____

                        United States District Judge

1

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780.

<div style="text-align: center; margin-left: 50%;">

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

</div>

**Motion To Modify The Court's Protective Order By Opening The Record And
Ordering A Response To This Emergency Request For Temporary, Provisional, Equitable
Relief And Request To Reconsider The Order Of 7/7/08**

2