# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORNELL D.M. JUDGE CORNISH,** ) | |
| ) | |
| **Plaintiff *Pro Se*** ) | |
| ) | |
| **v.** ) | **Case 1:07cv01719 (RWR)** |
| ) | |
| **JON DUDAS, et al.** ) | |
| ) | |
| **Defendants** ) | |
| ) | |
| _____ ) | |

---

## Emergency Motion For A Temporary Restraining Order ("TRO") And Order To Open Record And For Defendants To Reply To This Motion To Prevent Irreparable Harm

---

This is a Motion for a Temporary Restraining Order ("TRO"), including an Order to

Open the Record and for Defendants to reply aimed at resolving the genuine issues of fact

relating to Plaintiff's irreparable harm from unauthorized requirement under 35 U.S.C. 2

(b)(2)(D), which like 35 U.S.C. 6 and 32 are unconstitutional.

Defendants under color of federal right under 35 U.S.C. 2(b)(2)(D), or otherwise, have

deprived Plaintiff of access to justice under 35 U.S.C. 32 or otherwise, by a pattern of conduct at

least since the Director of OED's letter of March 4, 1996 (Defendants' Exhibit 8). This situation

has continued unabated by obstructing justice and secret actions of successive Directors of OED

on August 28, 1996 (including a secret handwritten note in Exhibit 8), and a letter of January 15,

**RECEIVED**                    1

JUL 2 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2000 without notice to Plaintiff (Exhibit 33 - closing a complaint but not an investigation held in abeyance since March 4, 1996), and then more recently by Defendants' Final Rules effective November 2007, followed by their Dispositive Motions on 12/20/2007, and request for a Protective Order, all which have been sought to obstruct justice and ban Plaintiff by *prior restraint* from advertising his name as a service mark for legal services in an unlimited number of patent and trademark applications, and Continuations and claims in violation of law and his First Amendment, Due Process, Privileges and Immunities and Taking Clauses, and/or the requirements of statutory, case law and Rule requirements by Defendants' tortuous conduct. Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA., Alexandria).

The Defendants were temporarily and permanently enjoined from enforcing those Rule requirements by the Order in the Alexandria, VA District Court. And now in their brief on their appeal to the CAFC, they argue the genuine material issue in dispute in this case, namely that the Defendants in this case do not know that this case, which is also on appeal in the District of Columbia, is not a "case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal" before the CAFC.

In their brief on appeal the Defendants state in their "**STATEMENT OF RELATED CASES** No other appeal in or from the present civil action has previously been before this or any other appellate court." This case, the facts, and the parties are the same or closely related to those in their civil action. And they further state that, "Counsel knows of no case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal." Obviously, this counsel knows of this case, which is pending in this court, and that it will directly affect or be directly affected by the Court's decision in their pending appeal.

That is a genuine material fact in dispute, and a compelling question of law upon which there can be a difference of opinion. Plaintiff is of the contrary view that Defendant's appeal in the CAFC will directly affect the outcome of this case, although it will not be determinative of all the issues in this case, including the cause of action for <u>Bivens</u> damages for tortuous interference, costs and attorneys fees, and immunity from suit, which is on appeal in the District of Columbia, as it the same action was on appeal in the 4th Circuit. <u>Goldstein v. Moatz</u>, No. 03-1257 (CA 4th April 14, 2004), in which the Court of Appeals in the 4th Circuit said that the appeal in that case, as in this case, did not lie in the CAC pursuant to U.S.C. 1295 (a)(1). But nevertheless, Plaintiff submits that the Defendants' Dispositive Motions should be dismissed because they are frivolous, without authorization from Congress, unconstitutional, and because the Court lacks jurisdiction under Fed. R. Civ. P. 12 (b)(1), 6 and 8 and 56 (b). Therefore, the TRO requested in Plaintiff's Motion herein, is necessary to prevent Defendants immunity from protecting their view of the question of immunity that is before the Court on appeal in the District of Columbia, since it is not substantially related to the issues of patent law that may have to be decided in this case by an appeal to the CAFC.

For purposes of the appeal of this case in the District of Columbia, the Court of Appeals may well accept as true the allegations of Plaintiff's complaint, as they did in elements requires resolution of a substantial question of federal patent law. <u>Goldstein v. Moatz</u>, No. 03-1257 (CA 4th April 14, 2004), in which the Court of Appeals in the 4th Circuit said that the appeal in that Court did not lie in the Federal Circuit pursuant to 28 U.S.C. 1295 (a)(1). The Court said, "In sum, although the circumstances giving rise to Goldstein's complaint concern his ability to practice law before the PTO, his claims, which are like those of the Plaintiff in this case, "are

3

neither created by federal patent law nor require us to resolve a substantially question of patent law. " The Court said, "We, therefore, possess jurisdiction pursuant to 28 U.S.C. 1291.

That is a controlling issue of law that is a matter of law for a decision by this Court in this case because the Defendants are seeking to dismiss this case under Fed. R. Civ. P. 12 (b)(1), 6 and 8 and 56 (b), whereas the Plaintiff is disputing the Defendants allegation of what the facts are, and Plaintiff disputes their allegations, *inter alia*, as being frivolous, without authorization from Congress, unconstitutional, and because the Court lacks jurisdiction under Fed. R. Civ. P. 12 (b)(1), 6 and 8 and 56 (b). Also, a TRO is necessary to prevent Defendants from alleging absolute immunity to protect them from answering Plaintiff's view of the facts and the Court from deciding that and other controlling issues of law.

The portion of the case on appeal in the CAFC and the portion of this case that will directly affect that case, and the portion of that case that will directly affect this case have to do with:

1.  Whether the PTO's new limits on claims and continuations are within the scope of the Office's statutory rulemaking authority;

2.  Whether the new limits conflict with the Patent Act; and

3.  Whether the PTO must provide additional notice and comment for its rule changes.

As in that case and in this case, the facts, issues, questions of law, and the genuine issues of fact that are in dispute are substantially the same. They mirror those in each respective case. There has been a pattern of continuing attempts to ban Plaintiff and other like situated attorneys and inventors from using their names and marks and from acquiring recognition as well as publications in their patents by *prior restraint* in violation of the Due Process and the First Amendment; and also, by obstructing justice, tortuously interfering with their business

4

relationships, and ruining their professional careers after years of faithful and successful service without a proven blemish of misconduct in the PTO.

The Defendants seek to establish their authority under Sections 2 (b)(2) of the Patent Act, which authorizes the Office to issue rules that "govern the conduct of proceedings in the Office," to "facilitate and expedite the processing or patent applications;" and under 2 (b)(2)(D) which authorizes "governing the conduct of agents, attorneys, or other persons representing applicants or other parties before the Office" i.e., before the Patent Office and the Trademark Office. But what the Defendants have done violates the Constitution both because those statues are unconstitutional, but also because the "governing" acts of the Defendants have been arbitrary and capricious under the APA and not according to law.

For example, the governing acts of the Defendants have been ultra vires by a pattern of interference with and tortuous acts irreparably harming the Plaintiff's reputation, professional standing, business relationships, marks of his name for legal services, his liberty and property rights, his Due Process, speech, press, religion and petition rights under the First Amendment, as well as his rights under the Privileges and Immunities and Taking Clauses. They have also discriminated against his age-related, life-function, disabilities, his right to reasonable accommodations, and his right to take, review and retake each and every marked and unmarked paper Patent Office examination repeatedly an unlimited number of times whether the Plaintiff's have been registered or not.

The Defendants have not provided public notice and comment for their rules and actions that are subject to the same under the Administrative Procedures Act ("APA"). They have made no effort, and certainly insufficient effort, to recognize or abide by the applicable requirements of the APA. They have made rules and actions not within the scope of the Office's statutory

5

rulemaking authority, their rules and actions have been implemented or not published as they should be under APA, and their authority is illegal under 35 U.S.C. 2 (b)(2) because that statute and sections 6 and 32 are unconstitutionally vague and indefinite. Also, their actions and lack of action has been discriminatory by intervening or failing to intervene and/or by interference with Plaintiff's age-related, life-function disabilities. They have also failed to meet their obligations under their own rules, and the FOIA and the EEO Acts.

To this end, for example, the Defendants have required the taking and passing of paper PTO examinations in July 2005, 2006, 2007, and now only on July 23rd and 24th 2008 not in accordance with law or their own rules, and not as prescribed by the APA, such as by, failing to provide extensions of time to take it, or without an opportunity to study, review or retake those examinations as provided for by 37 C.F.R.11.7 (e). Defendants require taking the examination only after applying to qualify to be reinstated to take the examination so that they can refuse to let the applicant know that he is qualified until just before scheduling him to take the examination, even only one week later. And without a TRO they will not keep a marked examination for review and retaking despite the clear requirements of 37 C.F.R. 11.7 (e).

Still further, without an emergency TRO they will withhold reasonable accommodations because of Defendants' continued discrimination, and ban of Plaintiff's attempts to convince the Defendants that their requirements were unreasonable in light of Plaintiff's showings that he is of good moral character and reputation and possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office, including both the Trademark and Patent Offices, as provided for by 35 U.S.C. 2 (b)(2)D). Plaintiff has never failed to do so by qualifying to take the exam since 1957 (Exhibit 2), at least six times.

6

Defendants' continuing pattern of actions, like the OED Director's secret letter of March 4, 1996 and closing of a complaint without letting Plaintiff know in order to secretly decertify him illegally in violation of the requirements of 35 U.S.C. 32, like their Definitive Motions and request for a Protective Order, were arbitrary, capricious, frivolous, lacking in jurisdiction and not in accordance with law under the APA because all such *prior restraints* were overt acts of obstruction of justice, cover-up, and outright attempts to ban Plaintiff's constitutional right to practice and use his name and common law and federal marks for legal services as an attorney in an unlimited number of patent and trademark applications, and Continuations and claims derived there from, including his currently pending patent application S.N. 29/273,235, filed 02/26/2007, such as by advertising his name as an attorney, agent of firm whose name and marks for legal services are registered under Registration No. 3,466,096. *See* the Court Order holding their action invalid and illegal <u>Tafas v. Dudas, et al</u>, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA., Alexandria). *See* 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority.

Plaintiff now seeks an emergency Temporary Restraining Order ("TRO") to prevent irreparable harm from banning Plaintiff from holding himself out, and allowing others, including, e.g., co-inventors and others with whom he has a business relationship, to hold his name and marks out for legal services as an attorney, agent or firm by use of his name and state and federal common law and now federal registered marks in the PTO and elsewhere, and for <u>Bivens</u> damages, costs and attorneys fees for interference and violation of his constitutional rights and for state and federal torts for (1) violation of his constitutional rights, (2) by agents without immunity acting under color of federal law. *See* <u>Bivens</u>, 403 U.S. at 389.

The elements of Plaintiff's tortuous interference claims are: (1) existence of a business relationship with a co-inventor, (2) Defendants' knowledge of the relationship, (3) intentional interference causing a termination of the relationship, and (4) resulting irreparable and other damage to the Plaintiff, including *inter alia,* loss of his professional career. None of these elements requires resolution of a substantial question of federal patent law. Goldstein v. Moatz, No. 03-1257 (CA 4th April 14, 2004).

As pointed out in this Court's Document 46 on 2/25/08 the Court has denied Plaintiff's motion for a Preliminary Injunction while the Defendants' Dispositive Motions remain pending. Meanwhile, by a Protective Order the Court has allowed "defendants to defer responding to any future motion filed by plaintiff unless the Court calls for a response."

This is a Motion for an Emergency TRO to prevent irreparable harm to the Plaintiff, which includes irreparable harm from refusal of the Court to Order Defendants to reply and, thus, to remain absolutely immune from defending their Dispositive Motions from objections, *inter alia,* that those motions are frivolous, without authorization from Congress, unconstitutional, and because the Court lacks jurisdiction under Fed. R. Civ. P. 12 (b)(1), 6 and 8 and 56 (b). The TRO is also necessary to prevent Defendants immunity from protecting Plaintiff's Constitutional right to a response against this Motion for an Emergency TRO to redress Plaintiff's irreparable damage because the Court's Protective Order clothes Defendants with absolute immunity against equitable relief, Bivens damages, costs and attorney's fees by holding Defendants' Dispositive Motions in abeyance with absolute immunity against replying to Plaintiff's demands and complaints, *inter alia,* because of their *prior restraints,* bans of his use of his name and marks, and unwarranted requirements to take the paper Patent Office

8

examination under 35 U.S.C. 2 (b)(2)(D) or otherwise not in accordance with law under the APA.

Without a TRO the ban of use of names and marks for legal services is imposed by a one week notice of a requirement for Plaintiff, and possibly other unregistered attorneys, to take and pass the paper Patent Office examination on July 23rd and 24th 2008 without time to study, without enlarging the time to study or to take the examination with reasonable accommodations, and without preserving the corrected examination for review and retaking repeatedly an unlimited number of times without limit after failing to pass the examination, as provided for in 37 C.F.R. 11.7 (e). An emergency TRO is required to restrain the Defendants from destroying or making the examination unavailable for review and retaking in the future, which would irreparably harm Plaintiff's constitutional rights and ability to review and correct the examination, or to retake the corrected examination for CLE or other merely academic or personal reasons under the FOIA or other statutes and Rules, e.g., 37 C.F.R. 11.7 (e).

Also, an emergency TRO is required to restrain and enjoin the irreparable damage that would be inflicted on Plaintiff, if the Defendants are allowed to require Plaintiff to take the examinations only on July 23rd and 24th , or to review and to retake the corrected examination after those dates without notice and opportunity of a hearing under 35 U.S.C. 32; or before or after Plaintiff passes it to the satisfaction of the Director; or showing the Court that Plaintiff is of good moral character and reputation and possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office (albeit, 35 U.S.C. 2 (b)(2)(D does not authorize the Defendants or the Patent or the Trademark Offices to require that Plaintiff

9

or other unregistered attorneys to "meet the requirements of 37 C.F.R. 11.7," including "the requirement to take and pass the registration examination," as stated on page 7 of Defendants' Motion To Dismiss filed 12/20/2007.

This requirement to take the paper Patent Office examination only on July 23rd and 24th without an enlarged period to study and take the examination with reasonable accommodations, illustrates why the Defendants' actions are arbitrary and capricious under the APA, and 35 U.S.C. 2 (b)(2)(D) and 32, which are both unconstitutionally vague and overbroad by the plain meaning of their language. 35 U.S.C. 6 is likewise unconstitutional because authority is lacking under Article II, Section 2, paragraph 2. *See* Petition For Writ of Certiorari in0 Translogic Technology, Inc. v. Jon Dudas, April 2008; and 504 F.3d 1249 (CAFC 2007).

Despite the fact that Plaintiff has an unblemished record in the PTO, free from discipline or any kind, and has never failed to qualify in six applications to qualify to take the examination, Plaintiff has been banned from practicing and using his name as a common law service mark for legal services in both the Patent and Trademark Offices. On 3/4/96 the Director of OED threatened discipline that was never realized. Instead of aborting the investigation by a closing letter or dismissing the complaint, as the Director of OED did on 6/15/00, the Director held the investigation in "abeyance" by a strategic mooting of the investigation to save the cost of the investigation and possible litigation that are required by regulations. Goldstein v. Moatz, No. 03-1257 (CA 4th April 14, 2004).

Defendants' actions were part of a pattern of obstruction of justice and a cover-up because the investigation was mishandled and botched. The investigation was never made, and no closing letter was ever sent to the Plaintiff. Instead, without a TRO the investigation is still

open, and the Plaintiff is being continued to be harassed and hounded until his professional

career and reputation will be even further irreparably ruined and cast into utter darkness. The

District Court of the Eastern District Court of New York dismissed the investigation after a

hearing. The U.S. Tax Court dismissed the investigation after a hearing. The District of

Columbia restored and recognized Plaintiff's practice and use of his marks for legal services on

November 16, 2000 after a hearing without any finding of misconduct or disability. (Defendants'

Exhibit 11). That was just over two years after New York chose to investigate by a temporary

reciprocal order of suspension on August 17, 1998, which has since been reversed by a Order of

reinstatement after a hearing without any finding of fault. (Defendants' Exhibit 10 and note 8 on

page 11 of Defendants. 12/20/07 Motion to Dismiss). That was almost two years after the

investigation was dismissed by the U.S. Tax Court and only two years after the District of

Columbia made their investigation by a reciprocal suspension that was also reversed by

reinstatement after a hearing without any finding of misconduct or disability on November 16,

2000. Note 8 on page 11 of Defendants' Motion to Dismiss.

That was only a little over two years from when he was he was excused from paying his

assessments for his excusable, non-use of his marks for legal services, and his excusable inactive

practice or holding himself out in the District of Columbia, New York and the PTO. It was not

close to five years <u>after</u> the illegal removal of his name, ID and mark by identity theft, when a

remarkable, unexpected, secret, handwritten apparition asking "Pat to remove Mr. Cornish"

appeared on a single copy of a letter in the PTO on or about August 28, 1996. (Defendants'

Exhibit 8). It evidenced tampering and ID theft of Plaintiff's name, but his removal is in dispute.

That tampering is entirely separate from the requirement mentioned by OED when they

informed Plaintiff on January 25, 2005, "That you must take the registration examination **unless**

11

you submit a showing to the satisfaction of the Director of Enrollment and discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. 37 C.F.R. 11.7." Likewise, page 3 of Document 46 of the Court's Order of 2/25/08, was irrelevant. It said "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing..." In fact it had been about forty years "since he had been registered" on November 5, 1958. As stated on page 7 of the Defendants' 12/20/07 Motion to Dismiss "Plaintiff applied for and passed the April 28, 1958, USPTO examination and was subsequently registered to practice before the USPTO. See Exhibit 1."

Importantly, the Defendants' prevent the alternative of any "showing..." apart from qualifying to take and taking and passing the examination, as mentioned by the Court. Page 6 of Defendants' 12/20/07 Motion to Dismiss states in relevant part that:

Requirements for Registration

"37 C.F.R. 11.7 (a) Individuals must take and pass the registration examination to prove they are competent. 37 C.F.R. 11.7 (b)(1)(ii)."

Defendant Moatz' affidavit and page 6 of Defendants' 12/20/07 Motion to Dismiss defeat and eliminate any possibility of submitting a "showing,,," other than to qualify to take the exam. He states, as pointed out by the Defendants on page 6 of their Motion to Dismiss, that:

b. OED will not register any individual to practice before the USPTO unless the individual has applied to the USPTO Director in writing and has established to the satisfaction of the OED Director that he or she: 1) possesses good moral character and reputation; 2) possesses the legal, scientific, and technical qualifications necessary for him or her to render applicants valuable service; and 3) is competent to advise and assist patent applicants in the presentation and prosecution of their applications before the USPTO.

That obviously is meant to eliminate the possibility of any showing of competency other than by qualifying to <u>take</u> and passing the Patent Office examination, as mentioned in the 37 C.F.R. 11.7 Requirements in relevant parts:

> 37 C.F.R. 11.7 (b)(1)(ii). Pass the registration examination, unless the taking and passing of the examination is waived as provided in paragraph (d) of this section. Unless the examination is waived pursuant to paragraph (d) of this section, each individual seeking registration must take and pass the registration examination to enable the OED Director to determine whether the individual possesses the legal and competence qualifications specified in paragraphs (a)(2)(ii) and (a)(2)(iii) of this section.

Thus, the Defendants ban Plaintiff by prior restraint from prosecuting his currently pending patent application under his name and marks for legal services (also, likewise banning him in his recently issued trademark application without a closing letter in the investigation that is still pending since March 4, 1996). The *prior restraint* imposed by that ban is effective against his practicing as an attorney or holding himself out as an attorney anywhere, and/or in an unlimited number of Continuations and claims derived from his pending application before taking and passing the examination in violation of his Constitutional rights to practice in the Trademark Office, and as an unregistered attorney in the Patent Office by filing an unlimited number of patent applications and Continuations and claims for himself as an inventor or with a power of attorney from his co-inventors without being required to take and pass the examination.


It is not an optional choice to take or not take and pass the examination, e.g., "if you would like to sit for this year's USPTO administered registration examination," as stated in OED's letter of June 19, 2008, for which I am told I have 60 days to seek review until August 18, 2008, because it denies the reasonable accommodations requested, "To the extent the accommodations you now seek exceed these previously approved accommodations."

13

Apparently, the petition for review submitted by Plaintiff's letter of July 11, 2008 will not be, and is not being considered, because OED's letter of July 15, 2008 says, "Apart from the application process, your letter accompanying the application raises issues concerning matters that are currently before the U.S. District Court for the District of Columbia in the civil suit you filed against the USPTO." And without a TRO, OED's letter of July 15, 2008, requires Plaintiff to take the examination only once on July 23rd and 24th 3008 without extending the time to take it, without the reasonable accommodations requested, and without any promise or possibility of review and retaking of the corrected examination without a TRO.

## CONCLUSION

Plaintiff's Motion should be granted for an Order requiring Defendants to respond to this filing, and for an emergency TRO to prevent irreparable harm to the Plaintiff by the Defendants' *per se* requirement that the Plaintiff sit for the patent examination in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims and Continuations. An emergency TRO is required to open the record and to prevent the Defendants from destroying the corrected examinations for review and retaking as provided for by 37 C.F.R. 11.7 (e). "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" and "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish Down Pat TM SM © 2008 ®

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    7/22/08

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this twenty-second  day of July, 2008.

*Cornell D. M. Judge Cornish*

    Cornell D.M. Judge Cornish *pro se*
    DC Bar #366240
    1101 New Hampshire Ave., NW, Suite 301
    Washington, DC 20037-1502
    (202) 429-9705
    cornishj@erols.com

Date:   7/22/08

15

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CORNELL D.M. JUDGE CORNISH,** | ) | |
| | ) | |
| **Plaintiff *Pro Se*** | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case 1:07cv01719 (RWR)** |
| **JON DUDAS, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |
| _____ | ) | |

---

**Memorandum In Support Of Emergency Motion For A Temporary Restraining Order
("TRO") And Order To Open Record And To Reply To This Motion To Prevent
Irreparable Harm**

---

This is a Memorandum in support of an Emergency Motion for a Temporary Restraining

Order ("TRO"), including an Order to Open the Record and for Defendants to reply aimed at

resolving the genuine issues of fact relating to Plaintiff's irreparable harm from unauthorized

requirement under 35 U.S.C. 2 (b)(2)(D), which like 35 U.S.C. 6 and 32 are unconstitutional.

Defendants under color of federal right under 35 U.S.C. 2(b)(2)(D), or otherwise, have

deprived Plaintiff of access to justice under 35 U.S.C. 32 or otherwise, by a pattern of conduct at

least since the Director of OED's letter of March 4, 1996 (Defendants' Exhibit 8). This situation

has continued unabated by obstructing justice and secret actions of successive Directors of OED

**RECEIVED**

JUL 2 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

on August 28, 1996 (including a secret handwritten note in Exhibit 8), and a letter of January 15, 2000 without notice to Plaintiff (Exhibit 33 - closing a complaint but not an investigation held in abeyance since March 4, 1996), and then more recently by Defendants' Final Rules effective November 2007, followed by their Dispositive Motions on 12/20/2007, and request for a Protective Order, all which have been sought to obstruct justice and ban Plaintiff by *prior restraint* from advertising his name as a service mark for legal services in an unlimited number of patent and trademark applications, and Continuations and claims in violation of law and his First Amendment, Due Process, Privileges and Immunities and Taking Clauses, and/or the requirements of statutory, case law and Rule requirements by Defendants' tortuous conduct. Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA., Alexandria).

There has been a pattern of continuing attempts to ban Plaintiff from using his name and mark by attempts to punish Plaintiff, obstruct justice, tortuously interfere with his business relationships, and ruin his professional career as an attorney after over thirty-five years of faithful and successful service without a proven blemish of misconduct in the PTO by a pattern of discrimination, intervention and interference because of his age-related, life-function disabilities. To this end, Defendants required taking and passing paper PTO examinations in July 2005, 2006, 2007, and now only on July 23rd and 24th 2008 without an extension of time to take it, without an opportunity to study, review or retake those examinations as provided for by 37 C.F.R.11.7 (e). Defendants require him to take the examination only after applying to qualify to be reinstated to take the examination so that they can refuse to let him know that he is qualified until just before scheduling him to take the examination only one week later. And without a TRO they will not keep a marked examination for review and retaking despite the clear requirements of 37 C.F.R. 11.7 (e). Still further, without an emergency TRO they will withhold

2

reasonable accommodations because of Defendants' continued discrimination, and ban of

Plaintiff's attempts to convince the Defendants that their requirements were unreasonable in light

of Plaintiff's showings that he is of good moral character and reputation and possessed of the

necessary qualifications to render to applicants or other persons valuable service, advice, and

assistance in the presentation or prosecution of their applications or other business before the

Office, including both the Trademark and Patent Offices, as provided for by 35 U.S.C. 2

(b)(2)D). He has never failed to do so by qualifying to take the exam since 1957 (Exhibit 2).

Defendants' continuing pattern of actions, like the OED Director's secret letter of March

4, 1996 and closing of a complaint without letting Plaintiff know in order to secretly decertify

him illegally in violation of the requirements of 35 U.S.C. 32, like their Definitive Motions and

request for a Protective Order, were arbitrary, capricious, frivolous, lacking in jurisdiction and

not in accordance with law under the APA because all such *prior restraints* were overt acts of

obstruction of justice, cover-up, and outright attempts to ban Plaintiff's constitutional right to

practice and use his name and common law and federal marks for legal services as an attorney in

an unlimited number of patent and trademark applications, and Continuations and claims derived

there from, including his currently pending patent application S.N. 29/273,235, filed 02/26/2007,

such as by advertising his name as an attorney, agent of firm whose name and marks for legal

services are registered under Registration No. 3,466,096. *See* the Court Order holding their

action invalid and illegal Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC

VA., Alexandria). *See* 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt.

1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority.

Plaintiff now seeks an emergency Temporary Restraining Order ("TRO") to prevent

irreparable harm from banning Plaintiff from holding himself out, and allowing others,

including, e.g., co-inventors and others with whom he has a business relationship, to hold his name and marks out for legal services as an attorney, agent or firm by use of his name and state and federal common law and now federal registered marks in the PTO and elsewhere, and for <u>Bivens</u> damages, costs and attorneys fees for interference and violation of his constitutional rights and for state and federal torts for (1) violation of his constitutional rights, (2) by agents without immunity acting under color of federal law. *See* <u>Bivens</u>, 403 U.S. at 389.

The elements of Plaintiff's tortuous interference claims are: (1) existence of a business relationship with a co-inventor, (2) Defendants' knowledge of the relationship, (3) intentional interference causing a termination of the relationship, and (4) resulting irreparable and other damage to the Plaintiff, including *inter alia,* loss of his professional career. None of these elements requires resolution of a substantial question of federal patent law. <u>Goldstein v. Moatz,</u> No. 03-1257 (CA 4th April 14, 2004).

As pointed out in this Court's Document 46 on 2/25/08 the Court has denied Plaintiff's motion for a Preliminary Injunction while the Defendants' Dispositive Motions remain pending. Meanwhile, by a Protective Order the Court has allowed "defendants to defer responding to any future motion filed by plaintiff unless the Court calls for a response."

This is a Motion for an Emergency TRO to prevent irreparable harm to the Plaintiff, which includes irreparable harm from refusal of the Court to Order Defendants to reply and, thus, to remain absolutely immune from defending their Dispositive Motions from objections, *inter alia*, that those motions are frivolous, without authorization from Congress, unconstitutional, and because the Court lacks jurisdiction under Fed. R. Civ. P. 12 (b)(1), 6 and 8 and 56 (b). The TRO is also necessary to prevent Defendants immunity from protecting Plaintiff's Constitutional right to a response against this Motion for an Emergency TRO to

4

redress Plaintiff's irreparable damage because the Court's Protective Order clothes Defendants with absolute immunity against equitable relief, Bivens damages, costs and attorney's fees by holding Defendants' Dispositive Motions in abeyance with absolute immunity against replying to Plaintiff's demands and complaints, *inter alia,* because of their *prior restraints,* bans of his use of his name and marks, and unwarranted requirements to take the paper Patent Office examination under 35 U.S.C. 2 (b)(2)(D) or otherwise not in accordance with law under the APA.

Without a TRO the ban of use of names and marks for legal services is imposed by a one week notice of a requirement for Plaintiff, and possibly other unregistered attorneys, to take and pass the paper Patent Office examination on July 23rd and 24th 2008 without time to study, without enlarging the time to study or to take the examination with reasonable accommodations, and without preserving the corrected examination for review and retaking repeatedly an unlimited number of times without limit after failing to pass the examination, as provided for in 37 C.F.R. 11.7 (e). An emergency TRO is required to restrain the Defendants from destroying or making the examination unavailable for review and retaking in the future, which would irreparably harm Plaintiff's constitutional rights and ability to review and correct the examination, or to retake the corrected examination for CLE or other merely academic or personal reasons under the FOIA or other statutes and Rules, e.g., 37 C.F.R. 11.7 (e).

Also, an emergency TRO is required to restrain and enjoin the irreparable damage that would be inflicted on Plaintiff, if the Defendants are allowed to require Plaintiff to take the examinations only on July 23rd and 24th , or to review and to retake the corrected examination after those dates without notice and opportunity of a hearing under 35 U.S.C. 32; or before or

5

after Plaintiff passes it to the satisfaction of the Director; or showing the Court that Plaintiff is of good moral character and reputation and possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or prosecution of their applications or other business before the Office (albeit, 35 U.S.C. 2 (b)(2)(D) does not authorize the Defendants or the Patent or the Trademark Offices to require that Plaintiff or other unregistered attorneys to "meet the requirements of 37 C.F.R. 11.7," including "the requirement to take and pass the registration examination," as stated on page 7 of Defendants' Motion To Dismiss filed 12/20/2007.

This requirement to take the paper Patent Office examination only on July 23rd and 24th without an enlarged period to study and take the examination with reasonable accommodations, illustrates why the Defendants' actions are arbitrary and capricious under the APA, and 35 U.S.C. 2 (b)(2)(D) and 32, which are both unconstitutionally vague and overbroad by the plain meaning of their language, and 35 U.S.C. 6, which is unconstitutional because authority is lacking under Article II, Section 2, paragraph 2. *See* Petition For Writ of Certiorari in Translogic Technology, Inc. v. Jon Dudas, April 2008; and 504 F/3d 1249 (CAFC 2007).

Despite the fact that Plaintiff has an unblemished record in the PTO, free from discipline or any kind, and has never failed to qualify in six applications to qualify to take the examination, Plaintiff has been banned from practicing and using his name as a common law service mark for legal services in both the Patent and Trademark Offices. On 3/4/96 the Director of OED threatened discipline that was never realized. Instead of aborting the investigation by a closing letter or dismissing the complaint, as the Director of OED did on 6/15/00, the Director held the investigation in "abeyance" by a strategic mooting of the investigation to save the cost of the

6

investigation and possible litigation that are required by regulations. Goldstein v. Moatz, No. 03-1257 (CA 4th April 14, 2004).

Instead, they were part of a pattern of obstruction of justice and a cover-up because the investigation was mishandled and botched. The investigation was never made, and no closing letter was ever sent to the Plaintiff. Instead, without a TRO the investigation is still open, and the Plaintiff is being continued to be harassed and hounded until his professional career and reputation will be even further irreparably ruined and cast into utter darkness. The District Court of the Eastern District Court of New York dismissed the investigation after a hearing. The U.S. Tax Court dismissed the investigation after a hearing. The District of Columbia restored and recognized Plaintiff's practice and use of his marks for legal services on November 16, 2000 after a hearing without any finding of misconduct or disability. (Defendants' Exhibit 11). That was just over two years after New York chose to investigate by a temporary reciprocal order of suspension on August 17, 1998, which has since been reversed by a Order of reinstatement after a hearing without any finding of fault. (Defendants' Exhibit 10 and note 8 on page 11 of Defendants. 12/20/07 Motion to Dismiss). That was almost two years after the investigation was dismissed by the U.S. Tax Court and only two years after the District of Columbia made their investigation by a reciprocal suspension that was also reversed by reinstatement after a hearing without any finding of misconduct or disability on November 16, 2000. Note 8 on page 11 of Defendants' Motion to Dismiss.

That was only a little over two years from when he was he was excused from paying his assessments for his excusable, non-use of his marks for legal services, and his excusable inactive practice or holding himself out in the District of Columbia, New York and the PTO. It was not close to five years after the illegal removal of his name, ID and mark by identity theft, when a

7

remarkable, unexpected, secret, handwritten apparition asking "Pat to remove Mr. Cornish" appeared on a single copy of a letter in the PTO on or about August 28, 1996. (Defendants' Exhibit 8). It evidenced tampering and ID theft of Plaintiff's name, but his removal is in dispute.

That tampering is entirely separate from the requirement mentioned by OED when they informed Plaintiff on January 25, 2005, "That you must take the registration examination **unless** you submit a showing to the satisfaction of the Director of Enrollment and discipline that you continue to possess the legal qualifications necessary to render applicants for patent valuable service. 37 C.F.R. 11.7." Likewise, page 3 of Document 46 of the Court's Order of 2/25/08, was irrelevant. It said "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing..." In fact it had been about forty years "since he had been registered" on November 5, 1958. As stated on page 7 of the Defendants' 12/20/07 Motion to Dismiss "Plaintiff applied for and passed the April 28, 1958, USPTO examination and was subsequently registered to practice before the USPTO. See Exhibit 1."

Importantly, the Defendants' prevent the alternative of any "showing..." apart from qualifying to take and taking and passing the examination, as mentioned by the Court. Page 6 of Defendants' 12/20/07 Motion to Dismiss states in relevant part that:

Requirements for Registration

"37 C.F.R. 11.7 (a) Individuals must take and pass the registration examination to prove they are competent. 37 C.F.R. 11.7 (b)(1)(ii)."

Defendant Moatz' affidavit and page 6 of Defendants' 12/20/07 Motion to Dismiss defeat and eliminate any possibility of submitting a "showing,,," other than to qualify to take the exam. He states, as pointed out by the Defendants on page 6 of their Motion to Dismiss, that:

8

b. OED will not register any individual to practice before the USPTO unless the individual has applied to the USPTO Director in writing and has established to the satisfaction of the OED Director that he or she: 1) possesses good moral character and reputation; 2) possesses the legal, scientific, and technical qualifications necessary for him or her to render applicants valuable service; and 3) is competent to advise and assist patent applicants in the presentation and prosecution of their applications before the USPTO.

That obviously is meant to eliminate the possibility of any showing of competency other than by passing the Patent Office examination, as mentioned in the 37 C.F.R. 11.7 Requirements in relevant parts:

37 C.F.R. 11.7 (b)(1)(ii). Pass the registration examination, unless the taking and passing of the examination is waived as provided in paragraph (d) of this section. Unless the examination is waived pursuant to paragraph (d) of this section, each individual seeking registration must take and pass the registration examination to enable the OED Director to determine whether the individual possesses the legal and competence qualifications specified in paragraphs (a)(2)(ii) and (a)(2)(iii) of this section.

Thus, the Defendants ban Plaintiff by prior restraint from prosecuting his currently pending patent application under his name and marks for legal services (also, likewise banning him in his recently issued trademark application without a closing letter in the investigation that is still pending since March 4, 1996). The *prior restraint* imposed by that ban is effective against his practicing as an attorney or holding himself out as an attorney anywhere, and/or in an unlimited number of Continuations and claims derived from his pending application before taking and passing the examination in violation of his Constitutional rights to practice in the Trademark Office, and as an unregistered attorney in the Patent Office by filing an unlimited number of patent applications and Continuations and claims for himself as an inventor or with a power of attorney from his co-inventors without being required to take and pass the examination.

9

It is not an optional choice to take or not take and pass the examination, e.g., "if you would like to sit for this year's USPTO administered registration examination," as stated in OED's letter of June 19, 2008, for which I am told I have 60 days to seek review until August 18, 2008, because it denies the reasonable accommodations requested, "To the extent the accommodations you now seek exceed these previously approved accommodations" specified in that letter.

Apparently, the petition for review submitted by Plaintiff's letter of July 11, 2008 will not be, and is not being considered, because OED's letter of July 15, 2008 says, "Apart from the application process, your letter accompanying the application raises issues concerning matters that are currently before the U.S. District Court for the District of Columbia in the civil suit you filed against the USPTO." And without a TRO, OED's letter of July 15, 2008, requires Plaintiff to take the examination only once on July 23rd and 24th 3008 without extending the time to take it, without the reasonable accommodations requested, and without any promise or possibility of review and retaking of the corrected examination without a TRO.

The problem seems to be the banning of Plaintiff's use of his name and marks for legal services for either or both his practice as a registered or an unregistered attorney, agent or firm due to the obstruction of justice by the cover up of the botched investigation held in abeyance on March 4, 1996 for thirty days (Defendants' Exhibit 8), due to the limited, temporary, excusable non-use of his name and marks in his Maryland without any requirement for a showing of fitness for reinstatement. This was followed by the remarkable, unexpected, and secret apparition of an informal handwritten note on a single, private, closely-held, internal copy of the Director of OED's letter of March 4, 1996 (Exhibit 8), which was on file only in the PTO until the filing of this case. Of course, Plaintiff was registered to use his name and marks when that letter was

10

written. Therefore, he had no expectation or knowledge that the remarkable, unexpected, August 28, 1996, secret, informal, handwritten note would exist or did exist until this case was filed, which was the first time Plaintiff, and probably any one else except one other employee of the PTO who was asked to secretly tamper with the records of the PTO, was informed that the Commissioner had removed his name from the roster of attorneys by identity theft.

Of course, no one ever used the investigation that has been held in abeyance since Mach4, 1996 to discipline the Plaintiff.  All jurisdictions that made the investigation that was botched in the PTO restored Plaintiff to full active status after completing their investigation and holding the hearing that the PTO refused to grant.  And Maryland fully restored full recognition of his practice without holding a hearing. *See* , for example, note 2 on page 3 of the Court's 2/25/08 Document 46, which found that Plaintiff has been reinstated in Maryland, the District of Columbia and New York, whereby he is recognized to practice and hold himself out under the common law service mark of his name for legal services as an attorney.

He has also been so recognized by the District Court of the Southern District of New York under his common law and federal service mark Registration No. 3,466,096.  That is the only jurisdiction that reciprocally suspended and reinstated Plaintiff without a hearing.  Their suspension was a technical reciprocal action without effect on and independently of Plaintiff's common law federal and state rights to practice under his name and marks for legal services.  However, it was public and with notice to the Plaintiff, whereas the decertification in the PTO has been done secretly without a hearing or notice to the Plaintiff.

The reciprocal suspension and reinstatement in the DC of the SD of NY was without any finding of misconduct or disability or a requirement for a showing of fitness for reinstatement because reinstatement was a technical reinstatement on August 16, 2004, based upon only a

11

requirement for a full re-activation in Maryland, which was on 10/03/03. And, as distinguished

from the DC of the SD of NY, Plaintiff remains under investigation in the PTO without relief

from the irreparable harassment and discrimination that he has been forced to endure since

March 4, 1996 (Defendants' Exhibit 8). He thus needs a TRO to stop the irreparable harm,

interference, discrimination and harassment to his reputation and professional practice and

emotional life with his family, as well as potential clients who terminated their association with

Plaintiff because of the actions of the Defendants.

It had not been over five years since he has held himself out for excusable non-use of his

marks for legal services before the Trademark Office and/or in the Patent Office in an unlimited

number of patent applications, Continuations and claims by holding himself out for legal services

as an attorney, agent or firm, but he has been banned from doing so. He has been banned from

doing so by *prior restraint.* The Defendants have banned his practice, whereby Plaintiff has

been required to take the patent and pass the registration examination under 37 C.F.R. 11.7

without being able to submit a showing other than by being required to be qualified to be

reinstated to take and pass the examination to the satisfaction of OED that he continues to

possess the legal qualifications necessary to render valuable services for patent applicants. Page

3 of Document 46 of the Court's Order of 2/25/08.

Maryland restored full recognition of his practice and use of his name as a mark for legal

services on October 3, 2003 (Defendants' Exhibit 10). The Court of Appeals of Maryland on

December 4, 1995 made Plaintiff's limited, excusable, non-use of his name and marks for legal

services official without a finding of misconduct or disability, and without a requirement for a

showing of fitness for reinstatement. As stated in note 2 on page 3 of the Court's Document 46,

and Order of 2/25/08, this Court found that, "He has since been reinstated to all three bars,"

12

including, DC, MD and NY. His limited, excusable, "inactivity" in Maryland without a requirement for a showing of fitness for reinstatement, or a hearing was reversed by his reinstatement in Maryland without a finding of misconduct or disability on October 3, 2003. (Defendants' Exhibit 6 and Note 6 on page 9 of Defendants' 12/20/07 Motion to Dismiss.

So it was only a little over two years that he was excused from paying his assessments for active practice or for holding himself out to practice in the PTO and in both the District of Columbia and in NY. Maryland restored full recognition of his practice and use of his name as a mark for legal services on October 3, 2003 (Defendants' Exhibit 10). The Court of Appeals of Maryland on December 4, 1995 (Defendants' Exhibit 5), had merely recognized his temporary, now fully restored, <u>excusable</u>, *pro bono* practice, and limited <u>excusable</u> non-use of the common law service-mark of his name and name-mark for legal services on November 4, 1995. (Defendants' Exhibit 6).

Plaintiff's name as a mark for legal services is now recognized and registered by the Defendants under Trademark Registration No. 3,466,096, dated July 15, 2008. This reinforces and is in parallel with their recognition of his registration in the USPTO. *See,* e.g., note 2 on page 3 of the Court's Document 46 on 2/25/08. To that end, "Cornish applied for and passed the patent examination in 1958, and became registered to practice before the USPTO." According to the Court's note 2 on page 3 and page 2 of its Document 46 on 2/25/08 the Plaintiff has been reinstated in Maryland as of October 3, 2003, the District of Columbia and New York, and the USPTO based upon the Maryland actions on December 4, 1995. *See* note 2 on page 3 of the Court's Order of 2/25/08, Document 46, and notes 6, 8 and9 of the Defendants' Dispositive Motions filed on 12/20/07. "Cornish applied for and passed the patent examination in 1958, and became registered to practice before the USPTO." <u>See</u> Defs.' Mem. Of P. & A. in Opp'n to Pl.'s

13

Mot. for Prelim. Inj., Etc. (Citations omitted). And he was never formally charged by the Defendants for misconduct or disability. But he has been without constitutional safeguards until filing this case.

In summary, Plaintiff was illegally, remarkably, and unexpectedly, decertified secretly by identity theft in the PTO without notice to him or the public, or a hearing, and that identity theft was covered up by an obstruction of justice since March 4, 1995 in order to irreparably interfere with his business relationships, to discriminate against him because of his age-related, life-function disabilities, to violate his constitutional and other rights, and to irreparably steal his identity and rob him of his jobs, his right to work as a professional, his reputation and his professional career. It has had an irreparable effect on his health and age-related disabilities as shown by the medical evidence submitted but now excluded from the record by the Court's Protective Order without an Order to open the record along with the requested TRO.

Meanwhile, the Defendants recognized his name as a federal and state mark for legal services in the Patent and Trademark Office, and he has been holding himself and his name out and allowing others to hold him and his name out for legal services in the Patent and Trademark Office under 35 U.S.C. 2 (b)(2)(D) or otherwise because 35 U.S.C. 2(b)(2)(D), 6 and 32 are unconstitutional. He has done so without any prospect for a job because of Defendants violations of his Constitutional rights and ban of his use of his name and mark in the PTO.

November 5, 1958 is when the Defendants started recognizing Plaintiff's name and mark for legal services and the practice of law before the Patent Office and the Trademark Office individually and severally. Plaintiff is still recognized outside the PTO for practice as an unrecognized attorney, agent or firm in the Trademark Office and the Patent Office but he is banned from using his name as a mark for legal services in the PTO as long as the investigation

14

initiated on March 4, 1996 (Defendants' Exhibit 8) remains open, again to the defeat of gaining

any jobs. By Order The Court of Appeals of Maryland, Plaintiff's was granted permission in his

favor for limited practice and excusable non-use of his marks as reported to the Defendants on

December 6, 1995 in Defendants' Exhibit 6.  Accordingly, they changed his status to "inactive"

by granting him an Order in his favor without a requirement for a showing of fitness for

reinstatement because of disability or misconduct, and allowed him to avoid decertification for

nonpayment of the annual assessment by the Clients Security Trust Fund of the Bar of Maryland

(CSTF) until the Court granted him a change of status back to active status, which they did on

October 3, 2003.

Meanwhile, the Defendants misused Plaintiff's excusable, temporary, *pro bono* practice

and excusable non-use of his name and name mark for legal services in the Patent and

Trademark Office while he kept his common law federal and state marks, registration, practice

and marks active in the PTO, the District of Columbia and New York State, at least from March

4, 1996 to August 28, 1996 and beyond, except for a temporary period of excusable, non-use

from about August 17, 1998 to November 16, 2000 by paying his annual assessments that were

required in DC and NY.

The Defendants misuse did not rely on a failure of Plaintiff to pay an annual assessment,

or a request by Plaintiff to be decertified. It did not rely on decertification of his common law

federal and state marks in the PTO, but rather because of a series of missteps, a botched

investigation, an illegal attempt by the Defendants to decertify him by a secret tampering with

his registration and ID by identity theft, and irrelevant claims, including a claim on January 25,

2005 that "It has been over five years since you were registered to practice before the Patent and

Trademark Office (USPTO)." (*See* Defendants' Exhibit13).  Actually it was 45 years of practice.

15

So it is clear that Plaintiff successfully established and continued to be recognized by his name and marks for practice under his common law federal and state service marks, which included his name for legal services, and actively used his name as a common law mark for legal services as an attorney for many more than five years. He continues to do so, except where he is prevented from doing so by the Defendants' *prior restraint* in violation of his Constitutional and other rights, including his common law state and federal rights for which he is asking for <u>Bivens</u> damages of one million dollars, costs and attorneys fees.

The Defendants' misuse by *prior restraint* is multi-facetted. Defendants' principal theory for their *prior restraint* is their frivolous and transparent attempt to delude the Court into believing that Plaintiff is not irreparably harmed by the Defendants' *prior restraint* and tortuous interference with Plaintiff's state and federal common law, now-registered, service-marks by a series of missteps, a botched investigation, a cover-up, an illegal attempt to decertify him by a secret tampering with his registration and ID by identity theft, and a false claim, including a claim on January 25, 2005 that "It has been over five years since you were registered to practice before the United States Patent and Trademark Offices (USPTO)," including both the Patent Office and the Trademark Office where registration was unnecessary for his 45 years of practice.

This is attempt by Defendants to dispute that and other genuine material facts in dispute, as evidenced by their appeal of the permanent injunction against them by a District Court Order in the Eastern District of Virginia holding that Defendants have attempted to structurally change the law in violation of the APA, which irreparably harms Plaintiff's ability to gain employment of any kind in an unlimited number of applications, Continuations and claims. To this end, it has been authoritatively held by that Court that Defendants' attempts to interfere with well established, long-standing rights entitles applicants, inventors and attorney like Plaintiff to a

16

preliminary and permanent injunction because of the irreparable harm that would be caused to them if the injunction were not granted by the Court.

Obviously, the harm is irreparable because of Defendants' unconstitutional *prior restraint* of Plaintiff's marks for legal services in his currently pending patent application and practice as an attorney, because their attempt is illegal under the Constitution, for example, the Due Process clause (albeit, it is also unconstitutional under the First Amendment, the Taking Clause and the Privileges and Immunities Clause). Their Final Rules effective November 1, 2007 were held to be an unconstitutional abuse of discretion that illegally limited the number of applications, Continuations and claims that an applicant, inventor, or a registered or unregistered attorney like Plaintiff can file. That decision makes plain that Plaintiff's ability to gain employment of any kind under his common law, now-registered, federal and state service-marks of his name as an attorney, agent or firm for legal services, is being interfered with illegally, irreparably and unconstitutionally without jurisdiction or authority, in violation of the Administrative Procedures Act, and is otherwise invalid and illegal. Tafas v. Dudas, et al, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA., Alexandria). *See* 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority.

In order to temporarily extend Plaintiff's temporary, excusable *pro bono* practice and non-use of his common law service marks for legal services to the Patent and Trademark Office, Plaintiff wrote to the PTO on February 8, 1996 (Defendants' Exhibit 7). This was not to show an intent to request decertification. It was not a request for decertification. It was simply notice of a temporary, excusable non-use of his state and federal service marks for legal services in a joint patent application, because he had withdrawn from representing the co-inventor with permission

17

a temporary, excusable non-use of his state and federal service marks for legal services in a joint

patent application, because he had withdrawn from representing the co-inventor with permission

of the examiner involved, as he was required to do because the co-inventor had refused to accept

an assignment in a joint invention of all Plaintiff's right, title and interest in the invention.

Defendants, however, fraudulently and deceptively, remarkably and unexpectedly

misused that letter of February 8, 1996 (Defendants' Exhibit 7) to secretly decertify Plaintiff's

registration and interfere with his common law federal and state service marks for legal services

and his practice thereof in the PTO and in the states, and doing so without following the

requirements of 35 U.S.C. 32, by illegally attempting to retroactively mandate the decertification

of Plaintiff's practice and registration by secretly tampering with his practice, registration, name,

and marks in the PTO by identity theft while he was still registered in the PTO and not

decertified. The basis of their illegal, unconstitutional, misuse, interference and theft was the

false and unjustified position that Defendants' actions could be covered up by obstruction of

justice because of what the Defendants said on January 25, 2005 in Defendants' Exhibit 13.

They irrelevantly said the basis of their actions was because, "It had been over five (5) years

since you were registered to practice before the United States Patent and Trademark Office," i.e.,

both before the Trademark and Patent Offices individually, severally, separately and collectively

together or alone since at least some unidentified date calculated from receipt of what was

incorrectly said to be a "request for Reinstatement."

As pointed out on page 2 of the Court's Document 46, filed 02/25/2008, "Cornish applied

for and passed the patent examination in 1958, and became registered to practice before the

USPTO." The reference by the Court, however, most certainly must have been only to one of six

successful attempts to show competence by qualifying for the paper Patent Office examination

an unlimited number of times for CLE purposes, or some other purely academic or personal

reason unrelated to a "request for Reinstatement" required by the Defendants.

The Defendants are obsessed with the idea that the Plaintiff must take and pass the Patent

Office Examination, even though they are not authorized to make such a requirement under 35

U.S.C. 2 (b)(2)(D). They stated categorically in note 4 on page 7 of their Motion To Dismiss

filed on 12/20/07, that according to 37 C.F.R. 11.7 (b)(1)(iii) "Individuals must take and pass the

registration examination to prove they are competent." Their requirement is an absolute ban

against Plaintiff's legal and well-recognized use of his name and marks for legal services as an

attorney in his currently pending patent applications and an unlimited number of Continuations

and claims derived there from. It is now registered by the Defendants. Their outright categorical

and complete *ban* of his use of his marks and name for legal services as an attorney is not a

reasonable restriction. It is a new structural change in established law. It is a Controlling

Question of Law based upon genuine issues of fact in dispute.

Defendants say his name is not "registered" but that is inconsistent with registration of

his name and marks for legal services under Registration No. 3,466,096. *See* 35 U.S.C. 2

(b)(2)(D), which limits the power to govern the recognition and conduct of agents and attorneys

in the prosecution of their applications or other business before the Office," which includes both

the Trademark Office and the Patent Office.    The ban of Plaintiff's use of his name and mark

under 35 U.S.C. 2 (b)(2)(D) is unconstitutional because of vagueness and over broadness.

Independently of that Registration Plaintiff now has, Defendants' complete ban of

Plaintiff's name as an attorney in an unlimited number of applications, or Continuations and

claims, is illegal, unconstitutional and unauthorized by the First Amendment, and the Due

Process, Privileges and Immunities and Taking Clauses whether or not he is regsitered. It is a

new rulemaking not in accordance with 5 U.S.C. 553 because 35 U.S.C. 2 (b) (2) (B) does not empower the USPTO or the Defendants to promulgate substantive rules according to Tafas v. Dudas, 1:07cv1008 (JCC), Order (April 1, 2008, DC VA., Alexandria). *See* 72 Fed. Reg. 46, 716-843 (Aug. 21, 2007) (to be codified at 37 C.F.R. pt. 1 (the "Final Rules"), which were declared "in excess of jurisdiction and authority (albeit, Defendants' outright ban is also not in accordance with 35 U.S.C. 2 (B)(2)(D) either).

The unauthorized ban of this requirement has and now will irreparably harm Plaintiff without the requested TRO. It unconstitutionally restrains Plaintiff by *prior restrain* under the First Amendments and otherwise, and interferes with his practice and common law, and now registered, marks and name for legal services, by requiring him to take and pass the registration examination before allowing him to use his marks or name as an attorney. They illegally maintain that taking and passing the examination is the only way of showing his right to use his marks while he remains under investigation. Said investigation has been held in abeyance since March 4, 1996 (Defendants' Exhibit 8). By being required to take and pass the examination he is banned from prosecuting his currently pending patent application as an attorney, agent or firm, as an unregistered attorney or inventor attorney, or to prosecute his application as an inventor or attorney whose name and marks are registered and approved for use by the Defendant Dudas in Registration No. 3,466,096. It seems as if their right hand does not know what their left hand is doing.

Likewise, Defendants under the overbroad requirements of 37 C.F.R. 11.7 require Plaintiff to be qualified to be reinstated to take and pass the examination to prove that Plaintiff is of good moral character and reputation and possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance in the presentation or

20

prosecution of their applications in the presentation or prosecution of their applications or other business before the Office," both the Trademark Office and the Patent Office individually, separately alone and severally in combination, as specified vaguely and over broadly by 35 U.S.C. 2 (b)(2)(D).

Under 37 C.F.R. 11.7 (e), "An individual who has failed the examination has the right to retake the examination an unlimited number of times upon payment of the fees required by 1.21 (a)(1)(i)." It is strictly voluntary and optional, e.g., for CLE purposes or other merely academic or personal reasons. There is no requirement to take and pass the examination in law according to the authorization of Congress. According to an allegation in note 4 on page 7 of Defendants' Motion To Dismiss filed 12/20/07, "Plaintiff did not initially attain a passing grade on the USPTO examination administered on August 6, 1957. See Exhibit 2."

Plaintiff does not have to take the examination on July 23rd and 24th because he has not failed to pass it. Thus, the requirements of 35 U.S.C. 2 (b)(2)(D), and 37 C.F.R. 11.7 (b)(1)(iii) and (e) are inconsistent, incompatible and unconstitutional. This time the Defendants' left hand does not know what his right hand is doing.

Plaintiff is required to take and pass the Patent Office examination according to 37 C.F.R. 11.7 (b)(1)(iii). "Individuals must take and pass the registration examination to prove they are competent." That requirement is an absolute ban against Plaintiff's practice in his currently pending patent application under his name for legal services whose name as an attorney is registered in the U.S. Patent and Trademark Office under Registration No. 3,466,096. It seems as if their right and left hands do not know what their other hand is doing as shown by this and still further examples of the Defendants' unconstitutional actions.

On March 22, 2005, the Defendants took the tack of illegally and misleadingly misusing Plaintiff's intent and letter of February 8, 1996 (Defendants' Exhibit 7) to blame Plaintiff for his so far unidentified decertification by not giving him "notice and opportunity for a hearing" to "suspend or exclude" him "either generally or in any particular case, from further practice before the Patent and Trademark Office," i.e., the Patent and Trademark Offices singly, separately, individually or collectively under 35 U.S.C. 32. Instead, they chose to hold an investigation in abeyance for 30 days before they gave Plaintiff a "closing letter" or made a formal complaint against him. The investigation related to Plaintiff's temporary, excusable, non-use of his common law marks for legal services, except for his *pro bono* legal services, which he retained for active practice along with the right to use his marks for legal services, which shielded him against a requirement to pay an annual assessment to the Client's Security Trust Fund in Maryland. On March 22nd 2005, in contrast to their position on February 8, 2005, OED took the position on March 22nd that "Pursuant to your request, you were removed from the roster of registered patent attorneys and agents in April 1996, after you were placed on disability inactive status with the Maryland State bar."

This, of course, was false because the Maryland State bar has no such authority. And it did not place Plaintiff on disability inactive status with the Maryland State bar or on the roster of registered patent attorneys in the PTO in April 1996.

At that time Plaintiff was admittedly registered on the roster of attorneys and agents in the PTO, and there was no reason to remove or decertify him because of "disability" or misconduct even by a remarkable, unexpected apparition of divine intervention. There was no showing of disability or misconduct. Neither the Director nor "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent

22

registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable services for patent applicants, as stated by the Court on page 3 of Document 46 Filed 2/25/2008. After they ask for a "showing" they always refuse to allow it, and instead require the qualification to be reinstated to take and pass the examination. There is no evidence of a need to tamper with Plaintiff registration or to remove it on or about April 1996 or August 28 1996. It was concluded on March 22, 2005 that, "based on the current record, you have not presented insufficient evidence to show that you continue to show legal qualifications necessary… (Defendants' Exhibit 17).

## CONCLUSION

Plaintiff's Motion should be granted for an Order requiring Defendants to respond to this filing, and for an emergency TRO to prevent irreparable harm to the Plaintiff by the Defendants' *per se* requirement that the Plaintiff sit for the patent examination in order to advertise as an attorney, agent or firm in a filing with an unlimited number of claims or Continuations. An emergency TRO is required to open the record and to prevent the Defendants from destroying the corrected examinations for review and retaking as provided for by 37 C.F.R. 11.7 (e). *"Attorney, Agent or Firm – Cornell D.M. Judge Cornish"* and *"Attorney, Agent or Firm – Cornell D.M. Judge Cornish* Down Pat TM SM © 2008 ®

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  7/22/08

23

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing and enclosed Motion and

Memorandum in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this twenty-second day of July, 2008.

*Cornell D. M. Judge Cornish*

    Cornell D.M. Judge Cornish *pro se*
    DC Bar #366240
    1101 New Hampshire Ave., NW, Suite 301
    Washington, DC 20037-1502
    (202) 429-9705
    cornishj@erols.com

Date:  7/22/08

24

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

**CORNELL D.M. JUDGE CORNISH,**          )
                                         )
      **Plaintiff *Pro Se***          )
                                         )
      **v.**                         )
                                         )      **Case 1:07cv01719 (RWR)**
**JON DUDAS, et al.**                    )
                                         )
      **Defendants**                 )
                                         )
_____  )

## ORDER

UPON CONSIDERATION of Plaintiff's Motion and Memorandum in support for a

Temporary Restraining Order and Order to Open The Record and Reply To This Motion to

prevent irreparable harm to the Plaintiff by the Defendants' *per se* requirement that the Plaintiff

sit for the patent examination in order to advertise as an attorney, agent or firm in a filing with an

unlimited number of claims or Continuations, and the entire record it is this      day of July

2008, hereby

      ORDERED that Plaintiff's Motion should be and it is hereby Granted.


                                     _____

                                      United States District Judge

1

W. Mark Nebeker
DC Bar #396739
Assistant United States Attorney
(USA) Civil Division
555 4TH Street
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780.

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro se*
DC Bar #366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

2