UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,           )
                                      )
                    Plaintiff *Pro Se*    )
          v.                          )
                                      )      CASE  07-cv-01719 (RWR)
                                      )
JON DUDAS, et al.                     )
                                      )
                    Defendants        )
_____ )


EMERGENCY MOTION FOR INTERLOCUTORY LEAVE TO AMEND OR
CONSOLIDATE THE COMPLAINT WITH A REQUEST TO REVIEW
AND RECONSIDER THE DENIAL OF A TRO

This is an Emergency Interlocutory Motion under the APA for leave to

amend or consolidate my pre-enforcement complaint under the APA against the

Defendants' cited Final Rules, *per se*, or with a request to review and reconsider

the 7/28/08 Order denying my Motion [64] for a Temporary/Restraining Order

(TRO), *inter alia,* to enjoin the Defendants from a variety actions covered by my

pre-enforcement Motions for relief that were <u>not</u> denied and are still open.  Thus,

my causes of action are still pending for pre-enforcement equitable relief under the

APA, including a claim for permanent equitable relief and <u>Bivens</u> damages, costs,

and attorneys fees, and including claims and pre-enforcement Motions for

temporary and permanent injunctions to prevent enforcing the Final Rules 75 (37

C.F.R. 1.75; 78 (C.F.R. 1.78); 114 (C.F.R. 1.114); and 265 (37 C.F.R.1.265).  My

RECEIVED

AUG 1 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

pre-enforcement Complaint and Motions for equitable relief under the APA against the Final Rules are at the heart of my causes of action, and the gravamen of my claims for relief, and Motions, as they were in <u>Tafas v. Dudas</u>, 530 F.Supp.2d 786 (E.D. Va. 2008), which is on appeal to the CAFC with <u>Smithkline Beecham</u>, 1:07-cv-1008 in the same court.  That means that both my Complaint and theirs is based on the same entire record in the PTO based upon the APA vs. the Final Rules.  It is essential to review that *entire* record in connection with my case and theirs.  That entire record has not been made available to this Court as it must be before this case can be decided.   I have requested opening the record to incorporate the entire record in the PTO, but the Court has given the Defendants immunity by a Protective Order.   The Defendants must give up any claim to such immunity before the Court can decide either my Motions for temporary or permanent equitable relief or damages or the Defendants Dispositive Motions.

To this end, my Complaint includes claims and causes of action that are *per se* the same as on appeal in <u>Tafas, et al</u>, *Id.*, in the CAFC in Case No. 2008-1352, but also includes claims and Motions *inter alia,* for equitable relief against censorship of the look and feel of my registered and copyrighted name and common law marks for legal services in advertisements under the Final Rules.  That censorship violates the First Amendment and Due Process Clauses.   It also violates my right of privacy and freedom from requirements to take and pass the

2

Patent Office examination without reasonable accommodations. Those claims and Motions have <u>not</u> been denied.   Still further, my Complaint includes claims, causes of action and Motions based on the APA that have not been denied for equitable and money damages for discrimination against my age-related, life-function disabilities; claims for violation of my rights of Due Process, Equal Protection, Privileges and Immunities; and <u>Bivens</u>, damages, costs and attorney's fees, including those related to the secret tampering and tinkering with my name, marks for legal services, and identity theft of my ID.

Under <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136 (1967), pre-enforcement review of agency actions under the APA, including the cited Final rules is allowable.  The questions presented by me are fit for judicial review and pose a hardship, including irreparable harm.  This is one of the four factors to be balanced in cases against the proceedings, including the governing of procedures for applications and the conduct of attorneys in the PTO under 35 U.S.C. 2 (b) (2006).

The Defendants have employed the Final Rules against me despite injunctions against them in Case No. 1008-1352.  That should entitle me to a TRO and contempt to enforce that TRO, but they are immune from answering by an Order of Protection. That is enough irreparable damage for reconsideration of the Court's denial of a TRO. That allows them to remain silent under the protection of the Protective Order in this case.

3

The Defendants have employed the Final Rules against me by denying in Case No. 2008-1352 that there is any effect of that case on mine, and vice versa. That allows them to remain silent by not directly responding to my Complaint. This is a strategy of procedural warfare against my Complaint for the same relief under the APA, against the same Defendants as in Cases 1:07-cv-846 and 1:07-cv-1008 under the APA, which are on appeal by the Defendants in Case No. 08-1352 in the CAFC.

To keep my Case No. 07-01719 for equitable relief to enjoin the Defendants from enforcing their Final rules under the APA from becoming a sham in which the Defendants refuse to reply in support of the same Final Rules enjoined and on appeal by the Defendants in Case No. 08-1352 in the CAFC, it would seem to be reasonable to Amend or Consolidate Plaintiff's Complaint by this Motion to simplify the issues in this case, and the aspects thereof that are on appeal, or in any appeals that may follow.

To this end, the Defendants seem obsessed with the idea that Plaintiff is not seeking to enjoin the Defendants from enforcing the Final Rules, or censorship by limiting the number of Continuations, RCEs and claims allowable under the APA. They say that I am seeking to enjoin their requirement that I be reinstated to the USPTO register after a nearly nine-

4

year hiatus, although neither of those allegations is true. *See* page 1 of their

12/20/07 Memorandum . . . In Support of their Dispositive Motions.

Accordingly, this Motion is necessary to clarify what Plaintiff's

Complaint does and does not claim. To this end, my Complaint is clearly

focused on a mirror image of what is the Appellees' claim in Case No. 2008-

1352 in the CAFC, in which the Defendants appealed a pre-enforcement

Order of temporary and permanent injunction against their Final Rules

limiting, if not practically banning by substantive changes in existing law,

Continuations, RCEs and claims beyond a fixed number in Plaintiff's

Application S.N. 29/273,235, which was filed 02/26/2007 before the

effective date of those Final Rules, but after their publication in the Federal

Register. Reference is made to the substantive rule changes in Rules 75,

78,114 and 265 under the APA, in accordance with 37 C.F.R. 1.78(f)(1) and

(2); Tafas v. Dudas, 530 F.Supp.2d 786 (E.D.Va. 2008). *See* Freedman v.

Maryland, 380 U.S. 51 (1965).

My Complaint in Case No. 07-01719 was filed after Tafas, No. 1:07-

cv-846, and incorporated his same cause of action in my Complaint. That

was before their case was appealed by the Defendants to the CAFC along

with Smithkline Beecham, Case No. 1:07-cv-1008, which was filed after

Case No. 07-01719, but incorporated by reference in my Case No. 07-01719

5

immediately after it was filed in the District Court of the Eastern District of Virginia. Their cases and mine stated the same pre-enforcement causes of action and Motions against the same Final Rules under the APA, and the same Defendants for limitations of my Continuations, RCEs and claims.

The key to understanding why the Defendants have tried to mislead the Court by denying any effect of their appeal in the CAFC on my case or my Motions that led to an Order of Protection against my Motion for a pre-enforcement TRO against the Defendants' Final Rules under the APA, is because I clearly based my Complaint on the same cause of action against those same rules under the APA as Tafas, *Id.*, which was clearly incorporated by reference in my Complaint filed on 09/26/07, and in my next filing incorporated by reference from Smithkline Beecham, *Id.* The latter was clearly incorporated by reference in my Complaint, which was filed before 1:07-cv-1008 was filed. To this end, I clearly incorporated the later cause of action in my Complaint from my lodging material, which I filed shortly after Case No. 1:07-cv-1008 was filed in Virginia.

To show how the Defendants are trying to mislead the Court, the Appellants attorneys in Case No. 2008-1352 falsely asserted on page ix of their brief in the CAFC that, "Counsel knows of no case pending in this or any other court that will directly affect or be directly affected by this Court's

6

[the CAFC's] decision in the pending appeal [No. 2008-1352]." Of course, that is not true, because the decision in this case will affect that Appeal, and the effect of affirming the temporary and permanent injunction granted against the Appellants in that Appeal will directly and substantially affect me in Case No. 07-01719, and the Defendants in all three cases, which are the same based upon the same cause of action for equitable relief against the same Final Rules. Specifically, my Complaint addresses the irreparable damage to my pending patent application and patents by censorship of my speech.

Additionally, my Complaint in Case No. 07-01719, claims irreparable harm from censorship, invasion of privacy and discrimination by requiring me to pass the patent examination, which has the result of the loss of all my jobs, my reputation and all professional job prospects as an attorney, which is not compensated for by money in my claim for costs, attorneys fees and Bivens damages for tortuous interference and Constitutional violations.

As noted on page 1 by the Court's Memorandum Order 46 on 2/25/08, my complaint claims that "requiring me to sit for the examination violates my First Amendment rights." Their Final Rules ban and prevent me from advertising by *prior restraint*. Their requirement bans the phraseology, look and feel of my copyrighted and registered name for legal services as an

attorney before I was registered on November 5, 1958 under No. 19,240, and before or after my name as a common law and federal mark for legal services was registered in the USPTO on July 15, 2008 in Registration No. 3,466,096. The Final Rules thus violate my 1st Amendment rights.

The Court has noted that my request for a TRO was denied despite the requirements of the Defendants, including their banning of my phraseology in my currently pending patent application. The Court, thus, denied my complaint for interlocutory equitable relief, including a TRO against requiring me to qualify to be reinstated to take and to retake the examination under 37 C.F.R. 11.7 (a) (2) (b) (ii) and 11.7 (e) an unlimited number of times. This includes my paper Patent Office examinations that I took in 2005, 2006, 2007 and 2008 for CLE purposes without reasonable accommodations for my age-related, life-function and medically documented disabilities as a registered or unregistered attorney.

My complaint additionally claims a cause of action for Constitutional violations and irreparable harm from the same tort  as alleged in <u>Goldstein v. Moatz, et al</u>, No. 03-1257 (CA 4th 2003). In my Complaint, as in Goldsteins, I claim directly and by incorporation by reference, relief under <u>Bivens</u>, 403 U.S. at 389, damages and equitable relief requiring proof of two elements: (1) a violation of my constitutional rights, (2) by agents acting under color of

8

federal law. The elements of my claim, as in Goldstein, are: (1) existence of a business relationship, (2) defendants knowledge of the relationship, (3) intentional interference causing termination of the relationship, and (4) resulting damage to me, which under the APA may be pre-enforcement damage, but which in fact is clearly presented irreparable harm according to the record in this case and in the PTO, which, of course, is now incomplete, and in need of opening according to my Motions that have been denied and held against me in granting an Order of Protection against me.

As also noted on page 1 of the Court's Memorandum Order 46 on 2/25/08, my complaint includes a claim and cause of action for violation of my Due Process rights by not providing me with a hearing and constitutionally sufficient notice regarding the requirement to sit or even be qualified to be reinstated to take  and retake my Paper Patent Office examination an unlimited number of times after they were marked in 2005, 2006, 2007 and 2008 for CLE purposes under 37 C.F.R. 11.7 (e), or after paying the fees required by 1.21 (a)(1)(i).  And my Complaint includes claims and causes of action for one million dollars in costs, attorney's fees and Bivens damages for obstruction of justice; threatening me with criminal prosecution under 35 U.S.C. 33; interference with my clients and business relations; the irreparable harm from loss and marginalization of my jobs,

9

professional reputation, clients and professional standing and potential promise, qualities, capabilities, ability, talent, training, background, experience and capacities as an attorney; also, for holding an investigation in abeyance since March 4, 1996 without a closing letter or a formal complaint; and for secret identity theft of my name and interference with my common law and federal copyrighted service marks for legal services without Due Process or an opportunity for a trial, which interferes with my right for judicial review of my request for equitable relief against the enforcement under the APA of the same Final Rules that are under a temporary and permanent injunction in Case No. 08-1352 in the CAFC.

As noted on page 2 of the Court's Memorandum Order 46 on 2/25/08, I have filed a Motion for a permanent injunction, which is still pending. I have asked for leave to appeal for interlocutory relief in the CAFC against refusal to grant me a TRO against Defendants' claim of absolute immunity against my claims and Motions, including my Motion to enjoin enforcement of the Defendants' Final Rules, and for Bivens damages, costs and attorneys fees ; and my Motions to temporarily and permanently  enjoin the Defendants from requiring me to pass the paper Patent Office examination. It is a Constitutional violation to require me to pass that examination either as a registered or unregistered attorney prior to publishing or patenting my

phraseology, or the look and feel of my copyrighted name and mark for legal services.

Likewise, as pointed out on page 2 of the Court's Memorandum 46 on 2/25/08, it is a Constitutional violation and a tort to interfere with, ban or prevent me by *prior restraint* by enforcement of the Final Rules in Continuations, RCEs and an unlimited number of claims from holding myself out to the public or allowing others to hold me out as an attorney, either as a registered or unregistered attorney or patent attorney without assurance of Constitutional safeguards against undue inhibition of protected expression that renders the prior submission to censorship an invalid previous restraint.  The burden is on the Defendants to prove that my expression and holding out, or permission to be held out in an unlimited number of Continuations, RCEs and claims is unprotected by the Constitution.  The censorship and *prior restraint* of the Defendants is limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure, including a prompt final judicial determination of unconstitutionality.  Freedman v. Maryland, 380 U.S. 51 (1965).

As to Defendants' prior restraint of my claims, according to MPEP 2173.05 (n):

11

If an undue multiplicity rejection under 35 U.S.C. 112, second paragraph, is appropriate, the examiner should contact applicant by telephone explaining that the claims are unduly multiplied and will be rejected under 35 U.S.C., second paragraph. Note MPEP 408. The examiner should also request that applicant select a specified number of claims for purpose of examination. If applicant is willing to select, by telephone, the claims for examination, an undue multiplicity rejection on all the claims based on 35 U.S.C. 112, second paragraph, should be made in the next Office action along with an action on the merits on the <u>selected claims</u>. (Emphasis added). If applicant refuses to comply with the telephone request, an undue multiplicity rejection of all the claims based on 35 U.S.C. 112. Second paragraph should be made in the next Office action. Applicant's reply must include a <u>selection of claims</u> for purpose of examination, the number of which may not be greater than the number specified by the examiner. (Emphasis added). In response to applicant's reply, if the <u>examiner</u> adheres to the undue multiplicity rejection, it should be repeated and the selected claims will be examined on the merits. (Emphasis added). This procedure preserves applicant's <u>right</u> to have the rejection on undue multiplicity <u>reviewed</u> by the Board of Appeals and Interferences.

The Defendants are applying their Final Rules against my claims, rather that rejecting them under 2173.05 (n) as pointed out in my Complaint. This includes a cause of action under the APA involving an incomplete record in this Court. The date of the acknowledged secret and ineffective

removal of my name from the register is still unknown. The date is in dispute and uncertain. And there is a dispute as to whether my name was really removed from the register by an authorized removal. On the contrary, there appears to have been an unauthorized and surreptitious removal of my name and ID by the acknowledged, unauthorized, unofficial, internal tampering and tinkering of the PTO records in an identity theft without my knowledge, authorization, acquiescence, consent or publication.

In any event, any such removal was unconstitutional under statutes that are unconstitutional because they are vague and indefinite. Contrary to page 3 of the Defendants' brief on appeal in 2008-1352, the statutes and rules required by the present system for governing the conduct of attorneys before the Office under 35 U.S.C. 2(b)(2)(C)-(D) are facially unconstitutional along with 35 U.S.C. 6 and 32. They all depend on the selection process for administrative law judges, in which my Complaint and filings provide a cause of action for the facial unconstitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32 as vague and indefinite, and because of the lack of authority under Article II, Section 2, paragraph 2, despite Congress's attempts to fix these defects.

My complaint also includes a pre-enforcement cause of action under the APA and the Final Rules under he APA to enjoin the Defendants'

13

requirement that the sole method of showing to the satisfaction of OED that I continue to possess the legal qualifications necessary to render valuable services for my patent applicants, Continuations, RCEs containing more than several claims. The OED has banned me from filing under the Final Rules even when filing for myself or with a power of attorney from my co-inventors who are alive, dead, hostile or unavailable, or as an executor without passing the Patent Office examination. I am banned and prevented by prior restraint from showing the required competence under the APA or otherwise, except by passing the Patent Office examination, and that is unconstitutional, unauthorized and without jurisdiction under the APA or otherwise.

There is a dispute as to why and whether I sent a letter in 1996 to the USPTO as a result of an Order in my favor in Maryland dated 12/4/95 granting me an excused and limited inactive status without discipline or because of disability, and without any requirement for a showing of fitness for reinstatement. The Court alleges that I sent a letter saying that I was "ceasing the practice before the United States Patent and Trademark Office," but not for how long or with what intent. I was merely allowing time to withdraw from a business relation that the Defendants had caused to end. To this end, my inactivity was temporary and purely technical until the

14

relevant actions or Orders in the PTO ending that business relationship became final or were dissolved by a closing letter or amended to make the "Orders correct." The time of my inactivity was dependent only on what the Director of OED intended to do and told me they intended to do and did while holding an investigation in abeyance starting on March 4, 1996, or thereafter by dismissing the complaint underlying the investigation, as the Director of OED did secretly on June 15, 2000 without telling me.

The Compelling question of law for this Court is what was my intent? It is disputed because the reverse RFI of March 4, 1996 demanded no reply from me as to what my intent was. It gave no hint in any way of any adverse effect by my letter of 2/8/96, which was in no way a consent, acquiescence, request or showing of any intent for my removal from both Patent and Trademark Offices because I had been registered more than 5 years ago.

The Defendants explanation for their failure to notify me of their secret tampering and tinkering with my records is much in dispute. They claim that it was, as mentioned by the Court on page 3 of Memorandum 46 on 2/25/07, that, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable

services for patent applicants." But OED sent no such information to me until January 25, 2005, which was nine years after their reverse RFI, in which they started to hold an investigation in abeyance, and secretly tampered and tinkered with my records, and ID by identity theft. Moreover, they did not tell me of their acknowledged secret tampering, tinkering and identity theft of my registered name and mark as an attorney until after I filed this case on 9/26/07 against the Final Rules of the PTO under the APA.

There is no evidence in the record of what, where and for how long my intent was to cease practice or how long a response due from the Director of OED could be withheld from me by holding an investigation of the Maryland Order in abeyance by a reverse RFI from the Director of OED on March 4, 1996. There is no evidence in the record to show any limitation on my ability to show competence except by passing the Patent Office examination. And Defendants have made it impossible for me to do that by failing to provide me with reasonable accommodations and by discrimination and lack of due process and equal protection for my constitutionally protected privileges and immunities as an attorney whose name and mark for legal services are registered in the USPTO, and as an inventor under the APA and the Final Rules.

16

The reasonable accommodations requested for qualifying to be reinstated to take and retake my respective individual marked examinations separately, independently, selectively and collectively in 2005, 2006, 2007 and 2008 and thereafter over and over again an unlimited number of times for CLE purposes in accordance with 37C.F.R. 11.7 (e), have not been granted.

The Director of OED has not even allowed me to obtain an extension of time to take the examination within the 60 day time period allowed under 37 C.F.R. 11.2 (d) for review in this Court of the final decisions of the Commissioner of the USPTO by his answer in this case, and by the OED Director in his affidavit of 10/9/07 in the record of this case in Exhibit 33, to grant me in 2008 the reasonable accommodations allowed for taking the 2007 examination, and denying any reasonable accommodations exceeding those granted in 2007.

According to 37 C.F.R. 11.2 (d) "An individual dissatisfied with a final decision of the OED Director, except for a decision dismissing a complaint . . . , may seek review upon petition to the USPTO Director . . ." The type of complaint is not specified, but I am dissatisfied by the final decisions by both the Director of OED and the USPTO, and have included that complaint in this case. I have also done so by petitions that have not

17

been dismissed. The decisions of both Directors in this case, have been recorded in the record herein and in 2008-1352 by the Commissioner's resistance to recognize any effect on that case affecting this case, or vice versa on that case from this case. And the OED Director's decisions have also been recorded in this case, including by a copy of a letter of June 15, 2000 in Defendants' Exhibit 33, which shows that a relevant complaint has been dismissed by a secret letter from the Director of OED on June 15, 2000 without notice to me. However, my complaint against the lack of reasonable accommodations has not been dismissed. Accordingly, a petition to the USPTO Director is not foreclosed to me, and neither is this civil suit for a permanent injunction against the final decisions denying me reasonable accommodations.

Additionally, I am asking for a permanent injunction and a decision by this Court enjoining an open investigation identified as No. C 96-017 (Exhibit 8). It has not been closed despite the closing of the relevant complaint that was allegedly closed. The complaint was closed secretly without publication or notice to me by the Director of OED on June 15, 2000, as shown by Exhibit 33.

I have asked for temporary, preliminary and permanent injunctions and TRO's against refusal to supply the following reasonable

18

accommodations for qualifying to take and retake the 2005, 2006, 2007 and

2008 paper Patent Office examinations exceeding those already agreed to for

the 2007 examination based upon my age-related, life-function disabilities

and the documented medical evidence supplied for the 2007 and 2008

examinations, as follows:

(1) Two full days of extended hour tests in two separate 6 hour 25 minute examination sessions comprising 50 questions on each day in each session with a break on each day in each examination session of 25 minutes.

(2) Enlarged 18 point printed questions and answer sheet (18 point is and doable in view of the 14 point required for briefs in the CAFC).

(3) Enlarged print MPEP, including human and electronic enlarged print readers, including the commercial on-line, closed-circuit TV readers available to all non-July test takers, and the Amazon brand "Kindle," hand held digital reader, which converts novel length or longer documents, such as the MPEP.

(4) A reduction in the separate fees charged to qualify to take and to retake my completed examinations for the same cost or less than that required on the commercially offered examinations.

(5) Increased light, comprising two extra high intensity lights, similar to those provided for part of the 2008 paper examination, and open shades for full daylight illumination on the left side of the test taker rather than the right as provided for the 2008 paper examination.

(6) Access to thermostatic temperature control in a separate room with no other test takers who do not have anemia or age-related, life-activity disabilities making it impossible to satisfy the legitimate needs of more than one test taker alone in the test room at the same time.

(7) Review and re-taking of each examination taken by me with the reasonable accommodations agreed to in the past, and those more recently requested that exceed those agreed to in the past.

(8) More than one magnifier for the test taker and his readers to make the examination questions, answer sheet and MPEP accessible to the test taker and his readers with enlarged print and increased amounts of light compared to the amount, kind and intensity of the light supplied or offered in the past in a room with access to the thermostatically-controlled room temperature by only one test taker.

19

As pointed out in <u>The American Council Of The Blind, et al v. Henry Paulson, Jr.,</u> <u>Secretary Of The Treasury</u>, No. 02ms00864, (CA DC 2008), inexpensive, human and electronic readers must be provided in cases where no meaningful access is available to the visually impaired, including those that are handicapped in taking tests by age-related, life-function disabilities. <u>Brookhardt v. Ill. State Bd.</u> <u>Of Educ.</u>, 697 F.2d 170 (7th Cir. 1983). Such visual and other impairments give those afflicted no choice but to ask for assistance. Plaintiff's Complaint and Motions for relief include a Motion for the described reasonable accommodations so far denied by the Defendants.

## CONCLUSION

This is a Motion for amendment or consolidation of the complaint with a request for review and reconsideration of the denial of a TRO.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish TM SM"
Downpat ©2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro* se
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    8/11/08

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum

in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this //¼ day of ~~February~~ August, 2008.

*Cornell D. M. Judge Cornish*    8/11/08

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW, Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

21

<u>UNITED STATES DISTRICT COURT FOR</u>
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,      )
                                          )
               Plaintiff *Pro Se*      )
        v.                            )
                                          )     CASE  07-cv-01719 (RWR)
                                          )
JON DUDAS, et al.                 )
                                          )
               Defendants        )
_____)

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR INTERLOCUTOARY LEAVE TO AMEND OR CONSOLIDATE THE COMPLAINT WITH A REQUEST TO REVIEWAND RECONSIDER THE DENIAL OF A TRO

This is a Memorandum in support of this Emergency Interlocutory request, AS OF RIGHT, for review and reconsideration of the 7/28/08 Minute Order denying my interlocutory Motion [64] for a TRO against the censorship and invasion of privacy by the Defendants.  This Memorandum is in support also of this is Emergency Motion for leave to amend or consolidate Plaintiff's Complaint and filings, which takes precedence over this request for reconsideration of the denial of Motion [64] for a TRO in view of new information not available heretofore.

Defendants have not answered and will not answer because they are immunized from responding because of an Order of Protection in this case.

1

Granting this Motion will enable Plaintiff to gain enforcement of injunctions by contempt proceedings to prevent harm and irreparable injury because the Defendants continue to enforce their Final Rules against Plaintiff despite an injunction against them in the District Court of the Eastern District of Virginia. That Court enjoined the Defendants by granting the Plaintiff's a temporary and permanent injunction to enjoin Defendants' censorship, discrimination, invasion of privacy, failure to meet the requirements of the law, Due Process and public policy, including the requirements of the APA. Defendants' Final Rules were enjoined because those Rules are without jurisdiction and authority and not according to law under the APA. They make invalid, illegal and unenforceable substantive rule changes in well-established, long standing law in Rules 75, 78,114 and 265 under the APA, in accordance with 37 C.F.R. 1.78(f)(1) and (2); <u>Tafas v. Dudas</u>, 530 F.Supp.2d 786 (E.D.Va. 2008). *See* <u>Freedman v. Maryland</u>, 380 U.S. 51 (1965).

This is a Memorandum in support of a request for leave to Amend or Consolidate the Complaint in preference to an Emergency Interlocutory request, AS OF RIGHT, for review and reconsideration of the 7/28/08 Minute Order denying my interlocutory Motion [64] for a TRO against the irreparable injury to the Plaintiff claimed in his Complaint against the Defendants' Final Rules under the APA.

2

Those Rules are without jurisdiction, authority and not according to law and requirements of the APA. They illegally censor the phraseology and put the burden of proof for patentability on the applicants rather than the Defendants without Due Process. The Final Rules illegally limit the number of Continuations, RCEs and claims derived from my currently pending patent application. They invade my privacy. They interfere with my business relationships. They censor the look, feel and phraseology of my name and copyrighted common law service marks for legal services that are registered in the USPTO. They ban my holding of myself out as an attorney, trademark attorney or patent attorney, or allowing me to hold myself out as such in my Continuations, RCIs and claims. They discriminate against me because of my age-related, life-function disabilities. They violate my First Amendment rights to advertise as an attorney for legal services. They deprive me of Due Process, Equal Protection and my Privileges and Immunities as an attorney under the Constitution.

In order of precedence, this is an Emergency Motion for leave to amend or consolidate Plaintiff's Complaint and filings because of new information not available heretofore. This includes his interlocutory appeals, which the Defendants have not and will not answer because they are immunized from responding because of an Order of Protection in this case. Defendants are under injunctions enjoining them from enforcing their Final Rules, but they are nevertheless

3

effectively enforcing them or their purpose against me, and I cannot proceed to enforce an injunction against them by a Contempt Order without gaining an injunction for myself.

Granting this Motion will prevent this case from being a sham for a pre-enforcement TRO and permanent injunction to enjoin Defendants' Final Rules, by their substantive rule changes in Rules 75, 78,114 and 265 under the APA, in accordance with 37 C.F.R. 1.78(f)(1) and (2); Tafas v. Dudas, 530 F.Supp.2d 786 (E.D.Va. 2008). *See* Freedman v. Maryland, 380 U.S. 51 (1965).

Denying me leave to amend or consolidate my Complaint for a pre-enforcement TRO, will ultimately have an irreparable effect on my ability to gain a permanent injunction for irreparable harms and damages. It prevents enforcement of a TRO by contempt of proceedings actions against Defendants who are enforcing the substantive changes in existing law by enforcement of the Final Rules against me under the APA or otherwise despite the injunction against them because I can't enforce a TRO by a contempt of court proceeding. The Defendants deny it applies to my case. Also, they are enforcing the Final Rules against me because they think Tafas, *Id* will be reversed. They ban my advertising outright by foreclosing judicial intervention and Constitutional safeguards by censorship.

The Commissioner and the Director of OED use the Final Rules to ban outright my advertising and my phraseology for my registered name and

4

copyrighted marks for legal services in Continuations, RCEs and an unlimited number of claims, even though my name is registered in the USPTO. They likewise deny me limited recognition in such instances by requiring me to qualify to be reinstated to take and to take and pass the Patent Office registration examination without reasonable accommodations. They likewise use the Final Rules in such instances to deny me any opportunity to show that I am competent except by taking and passing the examination. They use the Final Rules similarly to require me to take and pass the examination to practice in the Trademark and Patent Offices by holding an investigation in abeyance since March 4, 1996, and secretly tampering with my name, registration, and ID by identity theft without letting me know, and without my knowledge, consent, acquiescence, or request. They limit my ability to claim a multiplicity of claims under the Final Rules even though they are under an injunction preventing them from doing so.

The existing law is quite adequate without using the Final Rules. To this end, according to MPEP 2173.05 (n):

> If an undue multiplicity rejection under 35 U.S.C. 112, second paragraph, is appropriate, the examiner should contact applicant by telephone explaining that the claims are unduly multiplied and will be rejected under 35 U.S.C., second paragraph. Note MPEP 408. The examiner should also request that applicant select a specified number of claims for

5

purpose of examination. If applicant is willing to select, by telephone, the claims for examination, an undue multiplicity rejection on all the claims based on 35 U.S.C. 112, second paragraph, should be made in the next Office action along with an action on the merits on the <u>selected</u> claims. (Emphasis added). If applicant refuses to comply with the telephone request, an undue multiplicity rejection of all the claims based on 35 U.S.C. 112. Second paragraph should be made in the next Office action. Applicant's reply must include a <u>selection of claims</u> for purpose of examination, the number of which may not be greater than the number specified by the examiner. (Emphasis added). In response to applicant's reply, if the <u>examiner</u> adheres to the undue multiplicity rejection, it should be repeated and the selected claims will be examined on the merits. (Emphasis added). This procedure preserves applicant's <u>right</u> to have the rejection on undue multiplicity <u>reviewed</u> by the Board of Appeals and Interferences.

Even if Plaintiff presents an undue multiplicity of claims in his Continuations and RCEs, the Final Rules shift the burden of proof from the Examiner to the Applicant illegally. That is an unjustified censorship without Constitutional safeguards under <u>Freedman v. Maryland, Id.</u> It destroys if not chills his freedom of choice and right which cannot be abridged under the First Amendment in selecting his own phraseology. According to MPEP 2173.05 (n):

> Where, in view of the nature and scope of applicant's invention, applicant presents an unreasonable number of claims which are repetitious and multiplied, the net result of which is to confuse rather than to clarify, a rejection on undue multiplicity based on 35

6

US.C. 112, second paragraph, may be appropriate. As noted by the court In re Chandler, 319 F.2d 211, 225, 128 USPQ 138, 148 (CCPA 1963), "applicants should be allowed reasonable latitude in stating their claims in regard to number and phraseology employed. (Emphasis added). The right of applicants to freedom of choice in selecting phraseology which truly points out and defines their inventions should not be abridged. (Emphasis added). Such latitude, however, should not be extended to sanction that degree of repetition and multiplicity which beclouds definition in a maze of confusion. The rule of reason should be practiced and applied on the basis of the relevant facts and circumstances in each individual case." *See* also In re Flint, 411 F.2d 1353, 1357, and 162 USPQ 228. 231 (CCPA 1969). Undue multiplicity rejections based on 35 U.S.C. 112, second paragraph, should be applied judiciously and should be rare. (Emphasis added).

But, of course, the present selection process requires the intervention of administrative law judges that are selected by an unconstitutional procedure not allowed by the APA or Article II, Section 2 of the Constitution, or by Congresses attempt to fix the problem.

This suit is substantially the same as the suit in *Triantyfyllos Tafas vs. John Dudas 07-cv-846* and Case 1008 in the Eastern District of Virginia by SmithKline Beecham against the same Defendants. The "application process" is what is at stake in the Final Rules and the cited cases and mine.

7

Counsel for the PTO in Case 2008-1352 resists admitting the claim that administration of the "application process," is part of a continuing pattern of efforts to deprive me of a hearing and judicial restraint by the PTO Final Rules.

The Final Rules are but a part of a continuing pattern of efforts to train and discipline applicants by substantive changes in the law, and they are disciplining me under the Final Rules by ignoring the injunctions they are under. Those changes are not authorized by law according to <u>Tafas v. Dudus</u>, <u>Id.</u> and <u>Smithkline Beecham</u>, <u>Id.</u> They are designed to bring publishing of patents under government control by creating a number of powerful, unsupervised, official dogmatic censors in the PTO to whom authors, inventors, applicants and attorneys are being required to submit their works, including their writings, inventions and discoveries, as well as their names and advertisements as attorneys, for arbitrary and capricious approval prior to having them published. Such censorship violates the First Amendment and lacks due process under 35 U.S.C. 101, 102, 103, 112, 32 and 33. <u>Freedman v. Maryland</u>, 380 U.S. 51 (1964); and <u>Parker v. Chakrabarty</u>, 447 U.S. 303 (1980), holding that the subjective and substantive test for patent publications is anything under the sun that can be made by man.

Patent publications in unlimited numbers of Continuations, RCEs and claims is a Controlling subjective question of law that can only be banned by a statute not exceeding Congress' power and authority under the First Amendment, Article I, Section 8, paragraph 8; and Article II, Section 2, paragraph 2. Such a statute is 35 U.S.C. 181, but it guarantees just compensation under 35 U.S.C. 183 and judicial review.

Under the <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136 (1967), pre-enforcement review of agency actions under the APA, such as pre-enforcement

8

action for a TRO by Plaintiff action under the APA against Defendants' Final

Rules, is allowable where the questions presented are fit for judicial review and

would pose a <u>hardship</u> (emphasis added) to the regulated parties. This is one of

the four factors to be balanced in my case against the conduct of proceedings in the

Office. 35 U.S.C. 2(b) (2006).

The Plaintiff's Complaint under the First Amendment is clear. It is against

censorship by the Final Rules and irreparable harm under the APA. His Motions

for pre-enforcement equitable relief to enjoin enforcement of the Final Rules are to

enjoin limitations in the number of Continuations, RCEs and claims Plaintiff can

file. So the Defendants complaint against Plaintiff mislead the Court by attempting

deny that the Final Rules apply to me. That is a clearly erroneous mistake clearly

not supported by the record or this Court's Orders.

Defendants asked for an Order sealing the proceedings and then abandoned

that way of obstructing justice. They then made Dispositive Motions, including a

Motion to Dismiss or for Summary Judgment. They also asked for and received an

Order of Protection and absolute immunity from my request for a TRO, which the

Court granted because of exaggerated claims of overwork by the Defendants, and

the Court's clearly erroneous belief, which is not supported by the record, that I

have not been irreparably harmed.

9

Plaintiff has appealed Defendants' claim of absolute immunity to the Court

of Appeals in the District of Columbia in Case No. 08-5089 and has asked for

leave to intervene in Case No. 2008-1352 in the CAFC, or to appeal in the CAFC

from the refusal to grant a TRO in Case No. 07-01719. The Defendants have

employed the Final Rules against me by denying in Case No. 2008-1352 that there

is any effect of that case on mine, and vice versa. That allows them to remain silent

by not directly responding to my Complaint. This is a strategy of procedural

warfare against my Complaint for the same relief under the APA, against the same

Defendants as in Cases 1:07-cv-846 and 1:07-cv-1008 under the APA, which are

on appeal by the Defendants in Case No. 08-1352 in the CAFC.

Denying me a pre-enforcement TRO and a permanent injunction

irreparably harms and damages me. It prevents enforcement of a TRO by

contempt of proceedings actions against Defendants who are enforcing the

substantive changes in existing law by enforcement of the Final Rules against me

under the APA or otherwise despite the injunction against them because I can't

enforce a TRO by a contempt of court proceeding. The Defendants deny it applies

to my case. Also, they are enforcing the Final Rules against me because they think

Tafas, *Id* will be reversed.

## CONCLUSION

10

This is a Memorandum in Support of my Motion for amendment or consolidation of the complaint with a request for review and reconsideration of the denial of a TRO.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish TM SM "
Downpat ©) 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro* se
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:    8/11/08

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum

in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this _11th_ day of August, 2008.

Cornell D. M. Judge Cornish        8/11/08

        Cornell D.M. Judge Cornish
        DC Bar #366240
        1101 New Hampshire Ave., NW, Suite 301
        Washington, DC 20037-1502
        (202) 429-9705
        cornishj@erols.com

12