# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH )
                            )
            Plaintiff *Pro Se* )
        v.                  )      CASE 07-01719 (RWR)
                            )
JON DUDAS, et al            )
                            )
            Defendants      )
_____ )


## AMENDED COMPLAINT FOR ATTACHMENT TO APPROVED MOTION FOR LEAVE TO AMEND COMPLAINT UNDER FED. R.C.P RULE 15


This is a timely Amended Complaint under Fed. R.C.P. 15 with the Court's

consent, in accordance with the Minute Order of 8/14/08 approving a First Motion to

Amend Plaintiff's Complaint as of right  and as a matter of course.  This will make this

Amended Complaint effective on the date when the court approves it, which should be

freely given as the justice of the case requires and as the case is not yet on the trial

calendar and no responsive pleading has been made.

The Minute Order was received by snail mail after a one week delay from its date

of 8/14/08.  It is requested that this Amended Complaint be incorporated by reference

as an attachment to an allowed Re-filed Motion  For Leave to Amend the COMPLAINT.

Since the Defendants have not made any response, they would not be prejudiced in any

way by the short delay in attaching it to an approved Re-filed Motion to Amend.

RECEIVED

SEP - 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Such AN ATTACHMENT would in no way prejudice the Defendant because it is timely filed after I returned after the time the Order was received from a distant trip.

This First Motion to Amend the Complaint as of right is not intended as a substitute or replacement for the original Complaint. It is intended to date back to the original Complaint, and to Amend, Consolidate, Expand, Clarify and Extend the Original Complaint filed on 9/26/07 without prejudice by addition to the existing original and existing Complaint and causes of action as originally filed, and/or the several requests for relief, which remain substantially as they were as originally filed on 9/26/07 and thereafter, including challenges to the Constitutionality of 35 U.S.C 2(b)(2)(D),6 and 32. This First Motion to Amend the complaint as of right, is intended, *inter alia,* to clearly and concisely support all of the same causes of action and all of the same requests for relief as requested in Tafas v. Dudas, et al, No. 1:07-cv-846 and GSK v. Dudas, et al, Case No. 1:07-cv-1008, filed in the Eastern District of Virginia. To this end, this First Amended Complete is intended to include a request for the same temporary and permanent equitable relief requested and granted in those cases, namely temporary and permanent injunctions restraining the Defendants' from enforcing their revised Final Rules (hereinafter, the "Final Rules").

That relief is requested although it has not so far been granted in my case without clarifying my original Complaint. it is noted that the injunctions were appealed by the Government Respondents/Appellants to the CAFC in Case No. 2008-1352, i.e., by Defendants Dudas and the Patent and Trademark Office (hereinafter USPTO or PTO),

2

appealed by the Government Respondents/Appellants to the CAFC in Case No. 2008-1352, i.e., by Defendants Dudas and the Patent and Trademark Office (hereinafter USPTO or PTO), the Defendants in this Case No. 07-01719. To this end, my Amended Causes of Action in this First Amended Complaint comprise the following:

MY FIRST AMENDED COMPLAINT AND CAUSES OF ACTION

My First Amended Complaint includes Causes of Action, which AMEND and are abstracted from and REPEAT the existing original Complaint as follows:

(A) FIRST: I Claim substantially the same Claims and Causes of Action as in Tafas, Id., and GSK, Id, against the same Final Rules against the same Defendants challenged in those cases, and including Constitutional and other challenges to the Final Rules proposed to be effective on November 1, 2007, for which I can be expected to gain approval and the success that was obtained in those cases by the Plaintiff-Petitioners, as outlined by the Appellants' brief in Case No. 2008-1352 in the CAFC.

(B) SECOND: My Claim includes a request for temporary and permanent equitable relief under the Administrative Procedures Act (APA) against enforcement of said Final Rules, which will irreparably harm me if they are enforced or the requested equitable relief is denied, and that will in no way injure or prejudice the government, the public or existing rules and law if they are not enforced because the existing rules and law are more than adequate to protect the Defendants and the public. This Second Claim includes a request for a Temporary Order of Restraint (TRO) to enjoin the Defendants from enforcing the radical and catastrophic substantive changes that the Final Rules would make in the existing rules and law governing the procedures for issuing patents and governing the conduct of attorneys, agents and others before the PTO under existing law, including actions by the Defendants in the Patent Office and the

3

Trademark Office under their proposed Final Rules. This Second Claim is for Constitutional violations under the First Amendment and the Due Process Clause. Without the requested TRO I will be irreparably harmed under the proposed Final Rules because they will change the burden of proof under which I can obtain a patent, they will remove my property right to enjoy the dedication of inventions by others without limit, the Final Rules will remove and exclude me from the Constitutionally guaranteed property right of "exclusion" in an unlimited number of Continuations, RCEs, Reexaminations and Claims; and the Final Rules will prevent me from obtaining patents issuing from Continuations, RCEs, Reexaminations and Claims more than a limited number specified in the Final Rules.

(C) THIRD: I Claim a Bivens claim for equitable relief for Constitutional violations, and damages, costs and attorney's fees for the secret tampering with my name, ID and Registration No. 19,240 without my permission, knowledge, consent or request by identity theft on or after about August 28, 1946, without notice to me or the public, without cause, and without due process, based upon facts that are in dispute.

(D) FOURTH: I Claim a Bivens claim for equitable relief and damages, costs and attorney's for holding an investigation in abeyance from on or about March 4, 1996 without a closing letter or a finding of probable cause, as a direct and proximate cause for causing irreparable harm to me, my career and my profession that can never be recovered by money damages alone.

(E) FIFTH: I Claim a Bivens claim for equitable relief and damages, costs and attorney's fees for Discipline, punishment, irreparable harm, and discrimination against me without probable cause because of my age-related,

life-function disabilities by thoughtlessness, indifference, and benign neglect, or
otherwise by invidious animus, by holding an investigation in abeyance since
1946 without a closing letter or a probable cause finding.

(F) SIXTH: I Claim a Bivens claim for equitable relief and damages, costs
and attorney's fees for discrimination against me because of my age-related
disabilities by prior restraint of my Constitutional right to an unabridged freedom
of choice in selecting the phraseology employed in advertising my name and
identity in patent and trademark applications so as to truly point out and define
my status as an unregistered or registered attorney in patents and trademark
applications without interference or *prior restraint* of my registered common law
federal and state registrations, including my U.S. Patent and Trademark Office
Registration No. 3,466,096 for legal services.

(G) SEVENTH: I Claim a Bivens claim for equitable relief and damages,
costs and attorney's fees for discrimination and *prior restraint* that prevents my
equal access to advertise my name for legal services in an unlimited number of
Continuations, RCEs, Reexaminations and Claims, as well as other applications
and business in the PTO, including discrimination by withholding access and
reasonable accommodations for my medically documented, age-related, life-
function, disabilities  for optional testing for Continuing Legal Education (CLE)
purposes, including qualifying for access to be reinstated to take, review and
retake again and again the same examinations taken in 2005, 2006, 2007, and
2008 an unlimited number of times for CLE purposes under 37 C.F.R. 11.7 (e).

5

(H) <u>EIGHTH</u>: I Claim a <u>Bivens</u> claim for equitable relief and damages, costs, attorney's fees that requires proof of two elements: (1) a violation of my constitutional rights, (2) by agents acting under color of federal law. *See* <u>Bivens</u>, 403 U.S. at 389; and the elements of a claim for tortous interference, COMPRISING: (1) existence of a business relationship, (2) defendants' knowledge of the relationship, (3) intentional interference causing a termination of the relationship, and (4) resulting damage. *See* <u>Chaves v. Johnson</u>, 230 Va. 112, 120 (1985); and <u>Goldstein v. Moatz</u>, No. 03-1257 (CA 4th 2004). None of these elements requires resolution of a substantial question of federal patent law. In sum, although the circumstances giving rise to Goldstein's and my complaint and First Amended Complaint concern our ability to practice law before the PTO, our claims are neither created by federal patent law nor require the Court to resolve a substantial question of patent law. Therefore, this Court possesses jurisdiction pursuant to 28 U.S.C. 1291. This <u>Bivens</u> claim is not included in <u>Tafas</u> and <u>GSK</u>, *Id.*

### FIRST AMENDED COMPLAINT INCLUDING ADDITONAL CLAIMS AND CAUSES OF ACTION INCORPORATING AND REPEATING THE ABOVE CLAIMS (A) – (H)

<u>NINTH</u>: I Claim <u>Bivens</u> and other claims  against Defendants Jon Dudas, in his Official Capacity as Under-Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, the United States Patent and Trademark Office, Harry I. Moatz, in his Official Capacity as Director Office of Enrollment and Discipline U.S. Patent and Trademark Office, and

6

William J. Griffin, in his Official Capacity as Staff Attorney Office of Enrollment and Discipline U.S. Patent and Trademark Office.

TENTH: I Claim still other Causes of Action and Claims substantially the same as those in Tafas, *Id.,* and GSK, *Id.* They include other Causes of Action and Claims against enforcement of the said revised Final Rules by the said Jon Dudas and the U.S. Patent and Trademark Office (USPTO), for substantially the same equitable relief as in the several pre-enforcement Causes of Action, Claims and Requests for Relief against the same said Jon Dudas and the USPTO as in the District Court in Tafas, *Id.,* and GSK, *Id.*

My Claims in this case No. 07-01719 comprise Claims under the Administrative Procedures Act (APA) challenging the validity of the same revised Final Rules of the Defendants that were to be effective November 1, 2007. The substantial similarity of Claims, Causes of Action issues, facts, record and Defendants are incorporated by reference herein for easy and accurate identification of the Revised Final Rules ("Final Rules" and "revised Final Rules") for which temporary and permanent injunctions were obtained in Tafas, *Id.*, and GSK, *Id.*, and that are requested in this my First Amended Complaint.

The Causes of Action in my original above-identified District Court Case, hereinafter "my Case," and in this my First Amended Complaint include substantially the same Causes of Action, which are included in the cited Tafas and GSK Cases *Id.*, which were under the Administrative Procedures Act (APA) 5 U.S.C. 701 et seq., based upon the same Administrative Record in the USPTO as

7

in my subject Case No. 07-01719 and vice versa (*See* Appellants Appeal Brief in

Case No. 2008-1352).

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION
INCLUDING NINE – TEN CITED ABOVE


ELEVENTH:  Plaintiff herein, via a pre-enforcement challenge under the

APA, challenges the cited revised Final Rules as not being consistent with law

governing the conduct of proceedings in the PTO, the conduct of *pro se*

applicants and applicant attorneys like me, and the conduct of their attorneys,

agents and other persons representing  applicants or other parties before the

PTO when so represented, with or without being registered to practice in the

Patent Office, and not within the scope of the U.S. Patent and Trademark Office's

statutory rulemaking authority.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION
INCLUDING CLAIM ELEVEN

TWELFTH:  Plaintiff herein, via a pre-enforcement challenge under the

APA, challenges the cited revised Final Rules as being beyond the scope of

authority of the Defendants.


FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION
INCLUDING THE ABOVE CITED CLAIM TWELVE

8

THIRTEENTH:  Plaintiff herein, via a pre-enforcement challenge

under the APA, challenges the cited revised Final Rules as not being

within the scope of the U.S. Patent Laws.

## FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION INCLUDING CLAIM THIRTEEN

FOURTEENTH: Plaintiff  herein, via a pre-enforcement challenge under

the APA and 35 U.S.C. 2 (b)(2), challenges the cited revised Final Rules as making

arbitrary and capricious *substantive* changes in existing law that would radically

change existing law and rules, including the burden of proof on the Appellants.

As held in Cooper Techs v. Dudas (Fed. Cir. 2008), citing Merk & Co. v.

Kessler, (80 Fed. Cir. 1996),   35 U.S.C. 2 (b) (2) does not authorize the Patent

Office to issue "substantive" rules. "A rule is 'substantive' when it 'effects a

change in existing law or policy' which 'affect[s] individual rights and

obligations." And if the agency's interpretation affects and changes existing law

radically, as the Final Rules do, they clearly do so erroneously, and they are not

entitled to Chevron, deference, particularly, as here, where the broad language

of First Amendment and 35 U.S.C. 101, are so broad that the Final Rules are not

based upon a permissible construction of their broad statutory language.

In fact, Defendants' interpretation of the  language is so broad as to

make 35 U.S.C. 2 (b)(2)(D), 6 and 32 unconstitutionally inconsistent by both

9

encouraging and discouraging Continuations, RCEs, Reexamination, both ex

parte and inter partes, and Claims in unlimited numbers.

FIFTEENTH: The Final Rules are unconstitutional and their interpretation by

the defendants is clearly arbitrary, capricious, erroneous and not in accordance

with law under the APA by changing the burden of proof, and by not giving

applicants wide latitude and by abridging their freedom of choice in stating their

claims in the number and with the phraseology employed and chosen by them

without censorship or editing to truly point out and define their inventions in their

Continuations, RCEs, Reexaminations and claims.

### FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION INCLUDING THE ABOVE-CITED CLAIMS FOURTEEN AND FIFTEEN

SIXTEENTH: Plaintiff herein, via a pre-enforcement challenge under the

APA, challenges the cited revised Final Rules as being ambiguous and capricious,

unconstitutional and without jurisdiction.

### FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION INCLUDING CLAIM SIXTEEN

SEVENTEENTH:  Plaintiff asks for the same equitable relief requested and

granted in Tafas and GSK Id., namely temporary and permanent injunctions

against the same Defendants as the Defendants in this case, i.e., by enjoining Jon

Dudas and the USPTO from enforcing the cited Final Rules, and including a

Temporary Restraining Order against enforcement of the Final Rules so as to

10

enjoin the *prior restraint* and illegal taking, not in accordance with law, and
without due process or a finding of probable cause, by eminent domain or
otherwise, of my right to exclude in an unlimited number of Continuations, RCEs
and Claims without just compensation and/or due process, and by changing
existing law by shifting the burden of proof from the Plaintiffs.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION AND
INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION

EIGHTEENTH: I challenge the Defendants' *prior restraint* and taking of my
right of exclusion in an unlimited number of Continuation patent applications,
RCEs Reexaminations and claims so as to cause me irreparable injury not
compensated by money damages if the equitable relief requested is denied.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING AND REPEATING THE ABOVE CLAIMS AND CAUSES OF ACTION

NINTEENTH: Plaintiff challenges the cited Revised Final Rules challenged
in the cited cases of Tafas and GSK, *Id.*, as being in conflict with the Patent Act,
and the Constitution of the United States, including the First Amendment, the
Due Process Clause, and Article I, Section 8, paragraph 8, in that the Final Rules
both unconstitutionally and inconsistently encourage and discourage the filing of
unlimited numbers of Continuations, RCEs, Reexaminations and Claims.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING AND REPETING THE ABOVE CLAIMS AND CAUSES OF ACTION
ʎ
TWENTIETH: Plaintiff , via a pre-enforcement challenge under the APA,
challenges the cited revised Final Rules as being within the scope of the SHIELD
AND RESTRICTIONS OF THE First Amendment of the U.S. Constitution by

11

establishing the Patent Examiners and the Office of Enrollment and Discipline as

censors of the expression and phraseology of my Continuations, RCEs,

Reexaminations and Claims beyond a certain number, and, thereby, they are

already acting despite the injunctions that they are subject to, and will act if they

are allowed to enforce the Final Rules, by *prior restraint* without Constitutional

safeguards to exclude my expression and phraseology without meeting their

burden of proof to show that my expression and phraseology is unprotected by

the Constitution; who by *prior restraint* without Constitutional safeguards are

excluding my expression and phraseology without meeting their burden of proof

that the *prior restraint* is not limited to the *status quo* and for the shortest

period of time compatible with sound judicial procedure; who by *prior restraint*

without Constitutional safeguards are excluding my expression and phraseology

without meeting their existing burden of proof and without assuring a prompt

final judicial determination of unconstitutionality; who by *prior restraint* without

Constitutional safeguards are excluding the expression and phraseology of my

advertisements without meeting their existing burden of proof  that the Final

Rules are designed to change without providing a procedure of adequate

safeguards against undue inhibition of protected expression that renders the

statutory requirement of prior submission to censorship an invalid previous

restraint; who by *prior restraint* without Constitutional safeguards are excluding

my expression and phraseology without meeting the burden of proof  that the

Final Rules change by changing the heavy presumption against constitutional

validity of prior restraint of expression.  <u>Bantam Books, Inc. v. Sullivan</u>, 373 U.S.

58, 70.P.57 (1963); <u>Freedman v. Maryland</u>, 380 U.S. 51 (1965); and <u>Parker v.</u>

<u>Chakrabarty</u>, 477 U.S. 303 (1980), under which anything under the sun that is

made by man is patentable.

**FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION**

<u>TWENTY-FIRST</u>: I Claim a <u>Bivens</u> claim for equitable relief and damages,

costs and attorney's fees for discrimination against me because of my age-

related disabilities by withholding access to an unlimited number of

Continuations, RCEs, Reexaminations and Claims.  To this end, Congress has

performed its constitutional role in defining patentable subject matter broadly in

35 U.S.C. 101.  The Supreme Court performed its constitutional role in construing

the language Congress has employed.  In so doing, the Court's obligation is to

take statutes as the Court finds them, guided, if ambiguity appears, by the

legislative history and statutory purpose of promoting the Progress of Science

and useful Arts, by securing for limited Times to authors and Inventors the

exclusive Right to their respective Writings and Discoveries.  Article I, Section 8,

paragraph 8.

It is argued by he Defendants that the Court should weigh the "potential

hazards" of editing patent applications to "facilitate and expedite the processing

of patent applications," and governing "the recognition and conduct of agents,

attorneys, or other persons representing applicants or other parties before the

Office."  35 U.S.C. 2 (b) (2) (C)-(D).  But they are only speculative "hazards." And

13

those hazards have already been fully dealt with by Congress in accordance of the intention of the Constitution under Article I, Section 8, Paragraph 8 and the First Amendment, which was passed, *inter alia,* to restrict the PTO's authority to edit the expression and phraseology used by registered and unregistered *pro se* applicants like me, and also by their attorneys, agents and other persons representing them.

Defendants allege that there is "potential" editorial "risk" of "delay." They alleged a need for "greater diligence and care in the preparation of the initial applications" (Fed. Reg. 46719). And allegedly there has been an "increase in the number of claims" which allegedly "has contributed to the Office's backlog of unexamined applications. JA182 (Administrative Record ("AR") 07099, JA57 (72 fed. Reg. 46721), cited e.g., at pages 3,5, 9 of Appellants brief in Case No. 2008-1352 in the CAFC. They claim increased costs.

However, the costs have been overcome by a recent 5% increase in fees by the PTO. And, anyway, the PTO is self-sustaining by the fees it collects.

Also, the PTO has not taken into account the surprising efficacy of existing law that encourages Inter Partes Reexamination. "An Analysis of the Factors Responsible for Its 73% Kill Rate . . ." Andrew S. Baluch and Stephen B. Maebius, Foley and Larnder LLP[i] © 2008, smaebius@foley.com.

### FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

14

TWENTY-SECOND: Plaintiff , via a pre-enforcement challenge under the APA, challenges the same cited revised Final Rules as not being within the scope of authority of the United States Patent and Trademark Office (USPTO or PTO) as those challenged in Tafas and GSK, *Id.*, based upon the same Administrative Record in those cases and in my case, in that the USPTO must, but did not, give or obtain sufficient public notice and/or comment in accordance with the requirements of the Administrative Procedures Act ( "APA" ).

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

TWENTY-THIRD:  Plaintiff, via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules as not being within the scope of The Administrative Record in the USPTO upon which a Temporary Restraining Order was denied in my Case in the District Court of the District of Columbia, Case No. 07-01719, and on which Plaintiff has made a request for intervention and appeal in Case 2008-1352 in the CAFC.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

TWENTY-FOURTH:  Plaintiff, via a pre-enforcement challenge under the APA, challenges the Order denying me a Temporary Restraining Order in my Case No. 07-01719 for lack of irreparable injury as being clearly erroneous as a matter of law on the facts, the law and the record in the USPTO.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION (A)
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

15

TWENTY-FIFTH:  Plaintiff, via a pre-enforcement challenge under the APA,

challenges the Order denying me a Temporary Restraining Order (TRO) in my

Case No. 07-01719 for lack of irreparable injury because the Order was clearly

erroneous as a matter of law on the facts, the law and the record in the USPTO,

and is subject to a decision *de novo* on appeal and remand to the District Court

in Case No. 08-5089 (CA DC 2008), which has been asked to decide whether the

Defendants are absolutely immune to <u>Bivens</u> damages, costs and attorney's fees.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

TWENTY-SIXTH:  Plaintiff , via a pre-enforcement challenge under the

APA, challenges the cited Order denying my Motion for a TRO under the revised

Final Rules as not being based upon a complete record, and because the Order

was clearly erroneous on the law and the facts, including the record in the

USPTO in that the Order was made on the basis of a finding that there was no

irreparable harm to me by the *prior restraint* of the Final Rules and/or by

unconstitutional censorship and *prior restraint* that cannot be compensated for

by money damages alone.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

TWENTY-SEVENTH:  Plaintiff, via a pre-enforcement challenge under the

APA, challenges the cited revised Four Final Rules (collectively "the Final Rules")

that were appealed to the CAFC in Case No. 2008-1352.

FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION
INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION

16

<u>TWENTY-EIGHTH</u>:  Plaintiff, via a pre-enforcement challenge under the APA, challenges the same four revised Final Rules (collectively "the Final Rules") that were held to be inconsistent with law in the cited <u>Tafas</u> and <u>GSK</u>, *Id.* Cases.

<u>TWENTY-NINTH</u>:  I challenge those Final Rules as being unconstitutional, arbitrary and capricious, and inconsistent with the existing law and the metes and bounds of existing law that relate to the Defendants ability to "govern the conduct of proceedings in the Office," under 35 U.S.C. 101, 102, 103, 112, and 2 (b) (2) (C)-(D), i.e., in both the Trademark and Patent Offices.

The challenged Final Rules in my Case and in <u>Tafas</u> and <u>GSK</u>, *Id.*, were based upon the same Administrative Record (Administrative Record ("AR") 07099).  *See* pages 9 and vii in the Defendants' appeal brief beginning with 70 Fed. Reg. 10488 (March 4, 2005). (*See* pages 10 to 50 of Defendants' Brief on Appeal in Case No. 2008-1352 (CAFC 2008).

The challenged Final Rules were Final Rules 78 and 114, described at pages 4 to 9 of Defendants' Appeal Brief in Case No. 2008-1352, and Final Rules 75 and 265, which were described on pages 9 to 13, et seq of their Appeal Brief.

### FIRST AMENDED COMPLAINT AND ADDITIONAL CAUSES OF ACTION INCORPORATING THE ABOVE CLAIMS AND CAUSES OF ACTION AND THOSE OF THE THIRTIETH – FORTIETH CLAIMS AND CAUSES OF ACTION

<u>THIRTIETH AMENDED CAUSE OF ACTION</u>:

Plaintiff , via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules, including Rule 114(f)(g), which the District Court concluded deprived applicants of rights conferred on them by 35 U.S.C. 132 (b).

THIRTY-FIRST AMENDED CAUSE OF ACTION:

Plaintiff, via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules as not being within the scope of or in accordance with the Administrative Procedures Act (APA), 5 U.S.C. 701 et. seq.

THIRTY-SECOND AMENDED CAUSE OF ACTION:

Plaintiff, via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules as preventing me from practicing as an unregistered, *pro* se attorney-inventor-practitioner within the scope of the U.S. Patent Rules although I am admitted and in good standing to practice intellectual property law *pro se* in the Patent and Trademark Office under the following name and registered state and federal common law trademark for legal services No. 3,466,096:

Cornell D. M. Judge Cornish

Downpat ℝ ©

THIRTY-THIRD AMENDED CAUSE OF ACTION:

Plaintiff, via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules as not allowing me by *prior restraint* of my expression and phraseology from advertising my name and registered state and federal common law service mark No. 3,466,096 for legal services in my Patent Application S.N. 29/273,295, filed 2/26/07 in the U.S Patent and Trademark Office.

18

<u>THIRTY-FOURTH</u> AMENDED CAUSE OF ACTION:

Plaintiff , via a pre-enforcement challenge under the APA, challenges the cited revised Final Rules as irreparably harming me by violating my Constitutional rights, for which I am seeking equitable relief including injunctions to enjoin the enforcement of the "Final Rules," which would illegally restrain me by *prior restraint* and unconstitutional censoring of my expression and phraseology in my above-cited patent application, including the expression and phraseology of my registered name, marks and ID for legal services, in violation of the Administrative Procedures Act , 5 U.S.C. 701 <u>et seq</u>., and my Constitutional rights or otherwise to file unlimited numbers of Continuations, RCEs and claims derived from my above-identified patent application by implementation of the cited "Final Rules,"  which were published in the Federal Register on August 21, 2007 to be effective and enforceable on November  1, 2007, for governing practice in patent cases, and governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the "Office," referred to herein as the Patent and Trademark Office, and including four revised rules (collectively "the Final Rules"), namely Final Rules 78, 114, 75 and 265, as described in Appellants brief filed July 18, 2008.

In this case, we do not confront a complete legislative vacuum.  The sweeping language of the Patent Act of 1790 was restricted by the broad language of the First Amendment in 1791.  The new restricted Patent Act of

19

1793, which incorporated the restriction of the First Amendment, was re-enacted in 1952 to substantively reassert the broad language of the1793 Act and the First Amendment in 35 U.S.C. 101. That broad language has remained undisturbed, except for 42 U.S.C. 2181, which exempted from patent protection inventions "useful solely in the utilization of special nuclear material or atomic energy in an atomic weapon," the purpose being national defense.  And, 35 U.S.C. 183 provides for adequate compensation and Constitutional safeguards for the taking of the invention for the national defense by a secrecy order. Such Constitutional safeguards are lacking in the Final Rules.

THIRTY-FIFTH AMENDED CAUSE OF ACTION:

The Final Rules VIOLATE AND SUBSTANTIVELY CHANGE THE BROAD LANGUAGE OF 35 U.S.C. 101.  They do not involve the other "conditions and requirements" of the patent laws, such as novelty and non-obviousness under 35 U.S.C. 102 and 103.  Such substantive changes in the basic patent rules cannot be imposed by the PTO on their own authority without the endorsement of Congress, as in 35 U.S.C. 181.  To impose such substantive changes unilaterally without authority or jurisdiction is not a procedural adjustment according to law. It restricts the existing patent rights in areas wholly unforeseen and unauthorized by Congress or the Constitution.  Those changes substantively reduce and narrow existing law unconstitutionally.

What is needed is caution to keep the PTO within the bounds of its authority and jurisdiction by requiring it to abide by the existing burden of proof

regarding patentable subject matter, and the presumption against the

constitutional validity of *prior restraints* of expression and phraseology. <u>Bantam</u>

<u>Books, Inc. v. Sullivan</u>, 372 U.S. 58, 70.P.57 (1963); and <u>Freedman v. Maryland</u>,

380 U.S. 51 (1964).

The Court must keep the PTO from unilaterally, arbitrarily, capriciously,

and without authority or jurisdiction, and not in accordance with well-

established, long-standing law, radically reduce the areas and procedures for

patenting that have already been foreseen; while also keeping the PTO, and

especially the OED, from increasing the areas for disciplining applicants without

due process and other Constitutional safeguards, as has already been foreseen

and approved of by Congress in 35 U.S.C. 33. The Final Rules unconstitutionally

overrule the requirements of due process and Constitutional safeguards imposed

by Congress, including those imposed by 35 U.S.C. 33.

This Court must base its decision on the Constitution and the existing law

going back to the broad language of the First Amendment of 1791 and the

Patent Act of 1793. This Court must not allow deference to the PTO to make

substantive changes in the burden of proof by the Final Rules. They greatly and

unconstitutionally increase the authority of OED to discipline me and other

attorneys without due process.

The Final Rules greatly and unnecessarily increase costs without due

process in order to decrease and discourage filing. They require unbearable and

costly submissions for prior review and editing of expressions and phraseology

21

by procedures that lack adequate safeguards against undue inhibition of protected expression and phraseology, and they render the requirement of prior submission to censorship an invalid previous restraint.

They substantively regulate the subject matter of "what" can be supplied in Continuations, RCEs, Reexaminations and Claims by limiting their numbers. This is not a procedural limitation of "when" that subject matter can be submitted. It is substantive limitation of "what" can be submitted. It is not like the procedural limitation of Fed. Rule of P. 15, because it is not limiting "amendments." The Final Rules limit and abridge the freedom to present new and original expressions and phraseology, and especially "new" Constitutionally protected subject matter, which is required in all Continuations, and especially Continuations-in-part and each and every one of an unlimited number of Claims. Applicants cannot patent the same subject matter twice, but they have a constitutionally protected freedom of choice that cannot be abridged in selecting new phraseology that truly points out and defines their inventions and relates back to the date of the original claim. And even under Rule 15, the submission of Supplemental Pleadings is not barred by *prior restraint* because the Court can and should freely give leave when justice requires. That is a Constitutional safeguard that is lacking in the Final Rules. Under the Final Rules, the censor's *prior restraint,* or editor's diktat, is final without Constitutional safeguards.

**THIRTY-SIXTH AMENDED CAUSE OF ACTION:**

Plaintiff , via a pre-enforcement challenge under the APA and otherwise, challenges both the actions of the Defendants and the cited revised Final Rules as not being within the scope of their authority, and not according to law, under 35 U.S.C. 2 (b)(2)(D), 6 and 32 or otherwise, because they are facially vague, overly broad and unconstitutional for inconsistently both encouraging and discouraging repetitive use of continuations, continuations-in-part and Reexamination applications, RCEs and multitudinous claims under the Final Rules or otherwise by changing the burden of proof for patentability, *inter alia* under 35 U.S.C. 101, and/or as cited in the Appellants brief in Case No. 2008-1352 on page 3 et seq.

THIRTY-SEVENTH AMENDED CAUSE OF ACTION:

Plaintiff , via a pre-enforcement challenge under the APA and otherwise, challenges the cited revised Final Rules and the actions of the Defendants as being without Due Process and/or Constitutional safeguards to prevent excluding my expression and phraseology without meeting the burden of proof that my expressions and phraseology are unprotected by the Constitution.

THIRTY-EIGHTH AMENDED CAUSE OF ACTION:

Plaintiff , via a pre-enforcement under the APA and otherwise, challenges the cited revised Final Rules and the actions of the Defendants as not being within the requirements of the Disability Acts, and I request equitable relief by obtaining an injunction against direct or indirect discrimination by the denial of reasonable accommodations for my medically documented age-related, life-

23

function disabilities, causing irreparable damage to my right to publish, advertise and exclude under the Final Rules or otherwise, based upon my giving up of my secrecy to my inventions, discoveries and copyrightable writings in exchange for publication and a patent on my inventions, discoveries and copyrightable writings.

THIRTY-NINTH AMENDED CAUSE OF ACTION:

Plaintiff , via a pre-enforcement challenge of the Final Rules under the APA and otherwise, including challenges the cited revised Final Rules and actions of the Defendants for censoring, editing and *prior restraint* of my unabridged right to the freedom of choice in my expressions and phraseology in advertising my name for legal services, and in stating my claims without limitation of the number and phraseology employed in Continuation, RCEs, Reexaminations, and/or otherwise in other patent applications, and/or in my holding myself out as an attorney in *pro se* patent applications, and with a power of attorney for co-inventors who are alive, dead, hostile or unavailable, and/or as an administrator or executor, and for others in trademark applications, and in selecting my phraseology that truly points out and defines my inventions, discoveries and legal services truthfully without deception with or without enforcement of the Final Rules, and with or without registration in the PTO, or in violation of the First Amendment, Due Process and Privileges and Immunities Clauses, and/or the Patent Laws.

FOURTIETH AMENDED CAUSE OF ACTION:

24

Plaintiff challenges of the cited revised Final Rules and other actions of the Defendants preventing me from seeking equitable relief under the APA or otherwise, to obtain a decision by this Court restraining the use of the Final Rules and/or other actions of the Defendants to directly or indirectly punish and discipline me illegally under 35 U.SC. 33 or otherwise by holding an investigation in abeyance from on or about March 4, 1996 to the present, and by secret identity theft of my ID and name for legal services on or about august 28, 1996, without notice to me or the public.

## CONCLUSION AND RELIEF REQUESTED AS OF RIGHT

It is concluded on the basis of the above AND THE RECORD in this case, that Plaintiff has a right to amend his complaint as claimed in this First Amended Complaint, and the attached affidavit describing facts and Compelling Questions of law and fact that are in dispute in this case, or as the justice of the case requires.

*"Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or *"Attorney, Agent or   Firm* – Cornell D.M. Judge Cornish TM SM "
Downpat ©) 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*
Cornell D.M. Judge Cornish *pro* se
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 9/2/08

25

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion, Amended Complaint and proposed Order granting said Motion has been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

On this 2nd day of September, 2008.

Cornell D. M. Judge Cornish

Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

Date: 9/2/08

26

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH,

              Plaintiff *Pro Se*

     v.

JON DUDAS, et al.

              Defendants

)
) 2008 AUG 11  P 1: 30
)
)
)   CASE  07-cv-01719 (RWR)
)
)
)
)
)

*RECEIVED*
*AUG 11 2008*
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## EMERGENCY MOTION FOR INTERLOCUTORY LEAVE TO AMEND OR CONSOLIDATE THE COMPLAINT WITH A REQUEST TO REVIEW AND RECONSIDER THE DENIAL OF A TRO

This is an Emergency Interlocutory Motion under the APA for leave to amend or consolidate my pre-enforcement complaint under the APA against the Defendants' cited Final Rules, *per se*, or with a request to review and reconsider the 7/28/08 Order denying my Motion [64] for a Temporary Restraining Order (TRO), *inter alia,* to enjoin the Defendants from a variety actions covered by my pre-enforcement Motions for relief that were not denied and are still open.  Thus, my causes of action are still pending for pre-enforcement equitable relief under the APA, including a claim for permanent equitable relief and Bivens damages, costs, and attorneys fees, and including claims and pre-enforcement Motions for temporary and permanent injunctions to prevent enforcing the Final Rules 75 (37 C.F.R. 1.75; 78 (C.F.R. 1.78); 114 (C.F.R. 1.114); and 265 (37 C.F.R.1.265).  My

1

pre-enforcement Complaint and Motions for equitable relief under the APA against

the Final Rules are at the heart of my causes of action, and the gravamen of my

claims for relief, and Motions, as they were in <u>Tafas v. Dudas</u>, 530 F.Supp.2d 786

(E.D. Va. 2008), which is on appeal to the CAFC with <u>Smithkline Beecham</u>, 1:07-

cv-1008 in the same court.  That means that both my Complaint and theirs is based

on the same entire record in the PTO based upon the APA vs. the Final Rules.  It is

essential to review that *entire* record in connection with my case and theirs.  That

entire record has not been made available to this Court as it must be before this

case can be decided.   I have requested opening the record to incorporate the entire

record in the PTO, but the Court has given the Defendants immunity by a

Protective Order.   The Defendants must give up any claim to such immunity

before the Court can decide either my Motions for temporary or permanent

equitable relief or damages or the Defendants Dispositive Motions.

To this end, my Complaint includes claims and causes of action that are *per*

*se* the same as on appeal in <u>Tafas, et al</u>, *Id.*, in the CAFC in Case No. 2008-1352,

but also includes claims and Motions *inter alia,* for equitable relief against

censorship of the look and feel of my registered and copyrighted name and

common law marks for legal services in advertisements under the Final Rules.

That censorship violates the First Amendment and Due Process Clauses.   It also

violates my right of privacy and freedom from requirements to take and pass the

2

Patent Office examination without reasonable accommodations. Those claims and

Motions have <u>not</u> been denied.    Still further, my Complaint includes claims,

causes of action and Motions based on the APA that have not been denied for

equitable and money damages for discrimination against my age-related, life-

function disabilities; claims for violation of my rights of Due Process, Equal

Protection, Privileges and Immunities; and <u>Bivens</u>, damages, costs and attorney's

fees, including those related to the secret tampering and tinkering with my name,

marks for legal services, and identity theft of my ID.

Under <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136 (1967), pre-enforcement review

of agency actions under the APA, including the cited Final rules is allowable. The

questions presented by me are fit for judicial review and pose a hardship, including

irreparable harm. This is one of the four factors to be balanced in cases against the

proceedings, including the governing of procedures for applications and the

conduct of attorneys in the PTO under 35 U.S.C. 2 (b) (2006).

The Defendants have employed the Final Rules against me despite

injunctions against them in Case No. 1008-1352. That should entitle me to a TRO

and contempt to enforce that TRO, but they are immune from answering by an

Order of Protection. That is enough irreparable damage for reconsideration of the

Court's denial of a TRO. That allows them to remain silent under the protection of

the Protective Order in this case.

3

The Defendants have employed the Final Rules against me by denying in Case No. 2008-1352 that there is any effect of that case on mine, and vice versa. That allows them to remain silent by not directly responding to my Complaint. This is a strategy of procedural warfare against my Complaint for the same relief under the APA, against the same Defendants as in Cases 1:07-cv-846 and 1:07-cv-1008 under the APA, which are on appeal by the Defendants in Case No. 08-1352 in the CAFC.

To keep my Case No. 07-01719 for equitable relief to enjoin the Defendants from enforcing their Final rules under the APA from becoming a sham in which the Defendants refuse to reply in support of the same Final Rules enjoined and on appeal by the Defendants in Case No. 08-1352 in the CAFC, it would seem to be reasonable to Amend or Consolidate Plaintiff's Complaint by this Motion to simplify the issues in this case, and the aspects thereof that are on appeal, or in any appeals that may follow.

To this end, the Defendants seem obsessed with the idea that Plaintiff is not seeking to enjoin the Defendants from enforcing the Final Rules, or censorship by limiting the number of Continuations, RCEs and claims allowable under the APA. They say that I am seeking to enjoin their requirement that I be reinstated to the USPTO register after a nearly nine-

4

year hiatus, although neither of those allegations is true. *See* page 1 of their

12/20/07 Memorandum . . . In Support of their Dispositive Motions.

Accordingly, this Motion is necessary to clarify what Plaintiff's

Complaint does and does not claim. To this end, my Complaint is clearly

focused on a mirror image of what is the Appellees' claim in Case No. 2008-

1352 in the CAFC, in which the Defendants appealed a pre-enforcement

Order of temporary and permanent injunction against their Final Rules

limiting, if not practically banning by substantive changes in existing law,

Continuations, RCEs and claims beyond a fixed number in Plaintiff's

Application S.N. 29/273,235, which was filed 02/26/2007 before the

effective date of those Final Rules, but after their publication in the Federal

Register. Reference is made to the substantive rule changes in Rules 75,

78,114 and 265 under the APA, in accordance with 37 C.F.R. 1.78(f)(1) and

(2); Tafas v. Dudas, 530 F.Supp.2d 786 (E.D.Va. 2008). *See* Freedman v.

Maryland, 380 U.S. 51 (1965).

My Complaint in Case No. 07-01719 was filed after Tafas, No. 1:07-

cv-846, and incorporated his same cause of action in my Complaint. That

was before their case was appealed by the Defendants to the CAFC along

with Smithkline Beecham, Case No. 1:07-cv-1008, which was filed after

Case No. 07-01719, but incorporated by reference in my Case No. 07-01719

immediately after it was filed in the District Court of the Eastern District of Virginia. Their cases and mine stated the same pre-enforcement causes of action and Motions against the same Final Rules under the APA, and the same Defendants for limitations of my Continuations, RCEs and claims.

The key to understanding why the Defendants have tried to mislead the Court by denying any effect of their appeal in the CAFC on my case or my Motions that led to an Order of Protection against my Motion for a pre-enforcement TRO against the Defendants' Final Rules under the APA, is because I clearly based my Complaint on the same cause of action against those same rules under the APA as Tafas, *Id.*, which was clearly incorporated by reference in my Complaint filed on 09/26/07, and in my next filing incorporated by reference from Smithkline Beecham, *Id.* The latter was clearly incorporated by reference in my Complaint, which was filed before 1:07-cv-1008 was filed. To this end, I clearly incorporated the later cause of action in my Complaint from my lodging material, which I filed shortly after Case No. 1:07-cv-1008 was filed in Virginia.

To show how the Defendants are trying to mislead the Court, the Appellants attorneys in Case No. 2008-1352 falsely asserted on page ix of their brief in the CAFC that, "Counsel knows of no case pending in this or any other court that will directly affect or be directly affected by this Court's

6

[the CAFC's] decision in the pending appeal [No. 2008-1352]." Of course, that is not true, because the decision in this case will affect that Appeal, and the effect of affirming the temporary and permanent injunction granted against the Appellants in that Appeal will directly and substantially affect me in Case No. 07-01719, and the Defendants in all three cases, which are the same based upon the same cause of action for equitable relief against the same Final Rules. Specifically, my Complaint addresses the irreparable damage to my pending patent application and patents by censorship of my speech.

Additionally, my Complaint in Case No. 07-01719, claims irreparable harm from censorship, invasion of privacy and discrimination by requiring me to pass the patent examination, which has the result of the loss of all my jobs, my reputation and all professional job prospects as an attorney, which is not compensated for by money in my claim for costs, attorneys fees and Bivens damages for tortuous interference and Constitutional violations.

As noted on page 1 by the Court's Memorandum Order 46 on 2/25/08, my complaint claims that "requiring me to sit for the examination violates my First Amendment rights." Their Final Rules ban and prevent me from advertising by *prior restraint.* Their requirement bans the phraseology, look and feel of my copyrighted and registered name for legal services as an

attorney before I was registered on November 5, 1958 under No. 19,240, and before or after my name as a common law and federal mark for legal services was registered in the USPTO on July 15, 2008 in Registration No. 3,466,096. The Final Rules thus violate my 1st Amendment rights.

The Court has noted that my request for a TRO was denied despite the requirements of the Defendants, including their banning of my phraseology in my currently pending patent application. The Court, thus, denied my complaint for interlocutory equitable relief, including a TRO against requiring me to qualify to be reinstated to take and to retake the examination under 37 C.F.R. 11.7 (a) (2) (b) (ii) and 11.7 (e) an unlimited number of times. This includes my paper Patent Office examinations that I took in 2005, 2006, 2007 and 2008 for CLE purposes without reasonable accommodations for my age-related, life-function and medically documented disabilities as a registered or unregistered attorney.

My complaint additionally claims a cause of action for Constitutional violations and irreparable harm from the same tort as alleged in Goldstein v. Moatz, et al, No. 03-1257 (CA 4th 2003). In my Complaint, as in Goldsteins, I claim directly and by incorporation by reference, relief under Bivens, 403 U.S. at 389, damages and equitable relief requiring proof of two elements: (1) a violation of my constitutional rights, (2) by agents acting under color of

8

federal law. The elements of my claim, as in Goldstein, are: (1) existence of

a business relationship, (2) defendants knowledge of the relationship, (3)

intentional interference causing termination of the relationship, and (4)

resulting damage to me, which under the APA may be pre-enforcement

damage, but which in fact is clearly presented irreparable harm according to

the record in this case and in the PTO, which, of course, is now incomplete,

and in need of opening according to my Motions that have been denied and

held against me in granting an Order of Protection against me.

As also noted on page 1 of the Court's Memorandum Order 46 on

2/25/08, my complaint includes a claim and cause of action for violation of

my Due Process rights by not providing me with a hearing and

constitutionally sufficient notice regarding the requirement to sit or even be

qualified to be reinstated to take  and retake my Paper Patent Office

examination an unlimited number of times after they were marked in 2005,

2006, 2007 and 2008 for CLE purposes under 37 C.F.R. 11.7 (e), or after

paying the fees required by 1.21 (a)(1)(i). And my Complaint includes

claims and causes of action for one million dollars in costs, attorney's fees

and Bivens damages for obstruction of justice; threatening me with criminal

prosecution under 35 U.S.C. 33; interference with my clients and business

relations; the irreparable harm from loss and marginalization of my jobs,

9

professional reputation, clients and professional standing and potential promise, qualities, capabilities, ability, talent, training, background, experience and capacities as an attorney; also, for holding an investigation in abeyance since March 4, 1996 without a closing letter or a formal complaint; and for secret identity theft of my name and interference with my common law and federal copyrighted service marks for legal services without Due Process or an opportunity for a trial, which interferes with my right for judicial review of my request for equitable relief against the enforcement under the APA of the same Final Rules that are under a temporary and permanent injunction in Case No. 08-1352 in the CAFC.

As noted on page 2 of the Court's Memorandum Order 46 on 2/25/08, I have filed a Motion for a permanent injunction, which is still pending. I have asked for leave to appeal for interlocutory relief in the CAFC against refusal to grant me a TRO against Defendants' claim of absolute immunity against my claims and Motions, including my Motion to enjoin enforcement of the Defendants' Final Rules, and for Bivens damages, costs and attorneys fees ; and my Motions to temporarily and permanently enjoin the Defendants from requiring me to pass the paper Patent Office examination. It is a Constitutional violation to require me to pass that examination either as a registered or unregistered attorney prior to publishing or patenting my

10

phraseology, or the look and feel of my copyrighted name and mark for legal services.

Likewise, as pointed out on page 2 of the Court's Memorandum 46 on 2/25/08, it is a Constitutional violation and a tort to interfere with, ban or prevent me by *prior restraint* by enforcement of the Final Rules in Continuations, RCEs and an unlimited number of claims from holding myself out to the public or allowing others to hold me out as an attorney, either as a registered or unregistered attorney or patent attorney without assurance of Constitutional safeguards against undue inhibition of protected expression that renders the prior submission to censorship an invalid previous restraint. The burden is on the Defendants to prove that my expression and holding out, or permission to be held out in an unlimited number of Continuations, RCEs and claims is unprotected by the Constitution. The censorship and *prior restraint* of the Defendants is limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure, including a prompt final judicial determination of unconstitutionality. Freedman v. Maryland, 380 U.S. 51 (1965).

As to Defendants' prior restraint of my claims, according to MPEP 2173.05 (n):

11

If an undue multiplicity rejection under 35 U.S.C. 112, second paragraph, is appropriate, the examiner should contact applicant by telephone explaining that the claims are unduly multiplied and will be rejected under 35 U.S.C., second paragraph. Note MPEP 408. The examiner should also request that applicant select a specified number of claims for purpose of examination. If applicant is willing to select, by telephone, the claims for examination, an undue multiplicity rejection on all the claims based on 35 U.S.C. 112, second paragraph, should be made in the next Office action along with an action on the merits on the <u>selected claims</u>. (Emphasis added). If applicant refuses to comply with the telephone request, an undue multiplicity rejection of all the claims based on 35 U.S.C. 112. Second paragraph should be made in the next Office action. Applicant's reply must include a <u>selection of claims</u> for purpose of examination, the number of which may not be greater than the number specified by the examiner. (Emphasis added). In response to applicant's reply, if the <u>examiner</u> adheres to the undue multiplicity rejection, it should be repeated and the selected claims will be examined on the merits. (Emphasis added). This procedure preserves applicant's <u>right</u> to have the rejection on undue multiplicity <u>reviewed</u> by the Board of Appeals and Interferences.

The Defendants are applying their Final Rules against my claims, rather that rejecting them under 2173.05 (n) as pointed out in my Complaint. This includes a cause of action under the APA involving an incomplete record in this Court. The date of the acknowledged secret and ineffective

12

removal of my name from the register is still unknown. The date is in dispute and uncertain. And there is a dispute as to whether my name was really removed from the register by an authorized removal. On the contrary, there appears to have been an unauthorized and surreptitious removal of my name and ID by the acknowledged, unauthorized, unofficial, internal tampering and tinkering of the PTO records in an identity theft without my knowledge, authorization, acquiescence, consent or publication.

In any event, any such removal was unconstitutional under statutes that are unconstitutional because they are vague and indefinite. Contrary to page 3 of the Defendants' brief on appeal in 2008-1352, the statutes and rules required by the present system for governing the conduct of attorneys before the Office under 35 U.S.C. 2(b)(2)(C)-(D) are facially unconstitutional along with 35 U.S.C. 6 and 32. They all depend on the selection process for administrative law judges, in which my Complaint and filings provide a cause of action for the facial unconstitutionality of 35 U.S.C. 2 (b)(2)(D), 6 and 32 as vague and indefinite, and because of the lack of authority under Article II, Section 2, paragraph 2, despite Congress's attempts to fix these defects.

My complaint also includes a pre-enforcement cause of action under the APA and the Final Rules under he APA to enjoin the Defendants'

13

requirement that the sole method of showing to the satisfaction of OED that I continue to possess the legal qualifications necessary to render valuable services for my patent applicants, Continuations, RCEs containing more than several claims. The OED has banned me from filing under the Final Rules even when filing for myself or with a power of attorney from my co-inventors who are alive, dead, hostile or unavailable, or as an executor without passing the Patent Office examination. I am banned and prevented by prior restraint from showing the required competence under the APA or otherwise, except by passing the Patent Office examination, and that is unconstitutional, unauthorized and without jurisdiction under the APA or otherwise.

There is a dispute as to why and whether I sent a letter in 1996 to the USPTO as a result of an Order in my favor in Maryland dated 12/4/95 granting me an excused and limited inactive status without discipline or because of disability, and without any requirement for a showing of fitness for reinstatement. The Court alleges that I sent a letter saying that I was "ceasing the practice before the United States Patent and Trademark Office," but not for how long or with what intent. I was merely allowing time to withdraw from a business relation that the Defendants had caused to end. To this end, my inactivity was temporary and purely technical until the

14

relevant actions or Orders in the PTO ending that business relationship became final or were dissolved by a closing letter or amended to make the ''Orders correct.'' The time of my inactivity was dependent only on what the Director of OED intended to do and told me they intended to do and did while holding an investigation in abeyance starting on March 4, 1996, or thereafter by dismissing the complaint underlying the investigation, as the Director of OED did secretly on June 15, 2000 without telling me.

The Compelling question of law for this Court is what was my intent? It is disputed because the reverse RFI of March 4, 1996 demanded no reply from me as to what my intent was. It gave no hint in any way of any adverse effect by my letter of 2/8/96, which was in no way a consent, acquiescence, request or showing of any intent for my removal from both Patent and Trademark Offices because I had been registered more than 5 years ago.

The Defendants explanation for their failure to notify me of their secret tampering and tinkering with my records is much in dispute. They claim that it was, as mentioned by the Court on page 3 of Memorandum 46 on 2/25/07, that, "OED informed Cornish that because it had been over five years since he had been registered, he must take the patent registration examination or submit a showing to the satisfaction of OED that he continued to possess the legal qualifications necessary to render valuable

15

services for patent applicants." But OED sent no such information to me until January 25, 2005, which was nine years after their reverse RFI, in which they started to hold an investigation in abeyance, and secretly tampered and tinkered with my records, and ID by identity theft. Moreover, they did not tell me of their acknowledged secret tampering, tinkering and identity theft of my registered name and mark as an attorney until after I filed this case on 9/26/07 against the Final Rules of the PTO under the APA.

There is no evidence in the record of what, where and for how long my intent was to cease practice or how long a response due from the Director of OED could be withheld from me by holding an investigation of the Maryland Order in abeyance by a reverse RFI from the Director of OED on March 4, 1996. There is no evidence in the record to show any limitation on my ability to show competence except by passing the Patent Office examination. And Defendants have made it impossible for me to do that by failing to provide me with reasonable accommodations and by discrimination and lack of due process and equal protection for my constitutionally protected privileges and immunities as an attorney whose name and mark for legal services are registered in the USPTO, and as an inventor under the APA and the Final Rules.

16

The reasonable accommodations requested for qualifying to be reinstated to take and retake my respective individual marked examinations separately, independently, selectively and collectively in 2005, 2006, 2007 and 2008 and thereafter over and over again an unlimited number of times for CLE purposes in accordance with 37C.F.R. 11.7 (e), have not been granted.

The Director of OED has not even allowed me to obtain an extension of time to take the examination within the 60 day time period allowed under 37 C.F.R. 11.2 (d) for review in this Court of the final decisions of the Commissioner of the USPTO by his answer in this case, and by the OED Director in his affidavit of 10/9/07 in the record of this case in Exhibit 33, to grant me in 2008 the reasonable accommodations allowed for taking the 2007 examination, and denying any reasonable accommodations exceeding those granted in 2007.

According to 37 C.F.R. 11.2 (d) "An individual dissatisfied with a final decision of the OED Director, except for a decision dismissing a complaint . . . , may seek review upon petition to the USPTO Director . . ." The type of complaint is not specified, but I am dissatisfied by the final decisions by both the Director of OED and the USPTO, and have included that complaint in this case.  I have also done so by petitions that have not

17

been dismissed. The decisions of both Directors in this case, have been recorded in the record herein and in 2008-1352 by the Commissioner's resistance to recognize any effect on that case affecting this case, or vice versa on that case from this case. And the OED Director's decisions have also been recorded in this case, including by a copy of a letter of June 15, 2000 in Defendants' Exhibit 33, which shows that a relevant complaint has been dismissed by a secret letter from the Director of OED on June 15, 2000 without notice to me. However, my complaint against the lack of reasonable accommodations has not been dismissed. Accordingly, a petition to the USPTO Director is not foreclosed to me, and neither is this civil suit for a permanent injunction against the final decisions denying me reasonable accommodations.

Additionally, I am asking for a permanent injunction and a decision by this Court enjoining an open investigation identified as No. C 96-017 (Exhibit 8). It has not been closed despite the closing of the relevant complaint that was allegedly closed. The complaint was closed secretly without publication or notice to me by the Director of OED on June 15, 2000, as shown by Exhibit 33.

I have asked for temporary, preliminary and permanent injunctions and TRO's against refusal to supply the following reasonable

18

accommodations for qualifying to take and retake the 2005, 2006, 2007 and 2008 paper Patent Office examinations exceeding those already agreed to for the 2007 examination based upon my age-related, life-function disabilities and the documented medical evidence supplied for the 2007 and 2008 examinations, as follows:

(1) Two full days of extended hour tests in two separate 6 hour 25 minute examination sessions comprising 50 questions on each day in each session with a break on each day in each examination session of 25 minutes.

(2) Enlarged 18 point printed questions and answer sheet (18 point is and doable in view of the 14 point required for briefs in the CAFC).

(3) Enlarged print MPEP, including human and electronic enlarged print readers, including the commercial on-line, closed-circuit TV readers available to all non-July test takers, and the Amazon brand "Kindle," hand held digital reader, which converts novel length or longer documents, such as the MPEP.

(4) A reduction in the separate fees charged to qualify to take and to retake my completed examinations for the same cost or less than that required on the commercially offered examinations.

(5) Increased light, comprising two extra high intensity lights, similar to those provided for part of the 2008 paper examination, and open shades for full daylight illumination on the left side of the test taker rather than the right as provided for the 2008 paper examination.

(6) Access to thermostatic temperature control in a separate room with no other test takers who do not have anemia or age-related, life-activity disabilities making it impossible to satisfy the legitimate needs of more than one test taker alone in the test room at the same time.

(7) Review and re-taking of each examination taken by me with the reasonable accommodations agreed to in the past, and those more recently requested that exceed those agreed to in the past.

(8) More than one magnifier for the test taker and his readers to make the examination questions, answer sheet and MPEP accessible to the test taker and his readers with enlarged print and increased amounts of light compared to the amount, kind and intensity of the light supplied or offered in the past in a room with access to the thermostatically-controlled room temperature by only one test taker.

As pointed out in <u>The American Council Of The Blind, et al v. Henry Paulson, Jr.,</u>

<u>Secretary Of The Treasury</u>, No. 02ms00864, (CA DC 2008), inexpensive, human and

electronic readers must be provided in cases where no meaningful access is

available to the visually impaired, including those that are handicapped in

taking tests by age-related, life-function disabilities. <u>Brookhardt v. Ill. State Bd.</u>

<u>Of Educ.</u>, 697 F.2d 170 (7th Cir. 1983). Such visual and other impairments give

those afflicted no choice but to ask for assistance. Plaintiff's Complaint and

Motions for relief include a Motion for the described reasonable

accommodations so far denied by the Defendants.

## CONCLUSION

This is a Motion for amendment or consolidation of the complaint

with a request for review and reconsideration of the denial of a TRO.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or "*Attorney, Agent or
Firm* – Cornell D.M. Judge Cornish TM SM".
Downpat ©12008

Respectfully submitted,

Cornell D.M. Judge Cornish *pro* se
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date:  8/11/08
       9/2/08

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum

in support have been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

on this 11th day of ~~February~~ August, 2008.

on the 2nd day of September 2008 Cornell D. M. Judge Cornish

Cornell D. M. Judge Cornish 8/11/08

Cornell D.M. Judge Cornish DC Bar
#366240
1101 New Hampshire Ave., NW, Suite 301   9/2/08
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

CORNELL D.M. JUDGE CORNISH

Plaintiff *Pro Se*

v.

CASE 07-cv-01719 (RWR)

JON DUDAS, et al.

Defendants

---

MEMORANDUM IN SUPPORT OF ATTACHED FIRST
AMENDED COMPLAINT AND 8/11/08 MOTION FOR LEAVE TO
AMEND COMPLANT WHICH WAS APPOVED BY MINUTE-ORDER
OF 8/14/08

This is a Memorandum in Support of the attached First Amended

Complaint, and the 8/11/08 Motion [65] for Leave To Amend Complaint,

which was approved by Minute Order of 8/14/08 under Federal Rule of

Procedure No. 15.

The attached Amended Complaint is a timely First Motion to Amend

the Complaint as of right, in accordance with Fed. R.C.P. 15; and also, the

Minute Order of 8/14/08 approving of Plaintiff's Motion to Amend

Complaint as of right.

1

That Order was only received in the mail one week after 8/14/08, there was no responsive pleading in response to Plaintiff's Motion [65] for leave to Amend *nunc pro tunc,* as of the date of Complaint on 9/26/07, and the action is not yet on the trial calendar, such that this Motion will not prejudice the Defendants in any way.

This First Motion to Amend the Complaint as of the date of the filing of the Complaint, therefore, is intended to Amend, Consolidate, Expand or Extend the Complaint filed on 9/26/07 without prejudice to the exiting causes of action as originally filed with several requests for relief, which remain as they were as originally filed on 9/26/07, except for minor editorial changes. In addition, however, this First Motion to Amend the complaint as of right, is intended, *inter alia,* to clearly and concisely support all of the same causes of action and all of the same requests for relief as requested in Tafas v. Dudas, et al, No. 1:07-cv-846 and GSK v. Dudas, et al, Case No. 1:07-cv-1008, filed in the Eastern District of Virginia. The requested relief of temporary and permanent injunctions was granted, and the Government, Defendant Dudas and the PTO have appealed to the CAFC in Case No. 2008-1352. Temporary relief was denied in my case.

2

This case requests temporary and permanent injunctions that have been granted against the Defendants' revised Final Rules (hereinafter, the "Final Rules"). Plaintiff in this case has also asked for a TRO, which has been denied. That denial is being considered in the CAFC for appeal or intervention in Case No. 2008-1352.

The equitable relief now on appeal by the Government in the CAFC in Case No. 2008-1352 was granted against the same Defendants in this my Case No. 07-01719, i.e., Defendants Dudas and the United States Patent and Trademark Office (hereinafter USPTO or PTO). My Amended Causes of Action are presented for filing as the date of my Complaint according to the attached First Amended Complaint to put them in condition for appeal or my intervention in that Case No. 2008-1352, which is now on appeal in the CAFC.

REMARKS CONCERNING MY AMENDED CAUSES OF ACTION

My Amended Causes of Action puts my Complaint in better form for a trial on the merits in my Case No. 07-01719, on appeal, in this case. Also, in Case No. 2008-1352, my appeal to the Court of Appeals in Case No. 08-5089, and in the possible case of a denial of my applications for the filing of

3

Continuations, RCEs, and unlimited numbers of Claims under the Final

Rules should the Court agree with the appellants in Case No. 2008-1352.

To this end, the validity of the Final Rules relies on a substantive

change, comprising the shifting of the burden of proof to the Applicant from

the judicially recognized exclusions, which are limited to "laws of nature,"

natural phenomena," and abstract ideas," and the single statutory exclusion

under 35 U.S.C. 181 of inventions detrimental to national security." *See*

Ex parte Bilski, (BPAI 2006).

That is a substantive change in existing law.  It is not merely

procedural. The Final Rues are not judicially recognized for substantively

determining patent eligible subject matter or changing the burden of proof

for establishing patent eligible subject matter.  "[T]here is currently no

judicially recognized separate 'technological arts' test to determine patent

eligible subject matter under Section 101."  Ex part Lundgren, 76

U.S.P.Q.2d 1385, 1388 (BPAI 2005).  "Congress intended statutory subject

matter to 'include anything under the sun that is made by man.'"  Diamond v.

Diehr, 450 U.S. 182 (1981), quoting from S. Rep. No. 1979, reprinted in

1952 U.S. Code Cong. & Admin. News at 2399.  Congress did not intend to

authorize the PTO to make Final Rules that could be substantively used to

4

determine patent eligible subject matter, or that could be substantively used to change the burden of proof as to what is patent eligible subject matter. The PTO is not a guarantor or censor of the patent eligible expression or phraseology of what is patentable in Continuations, RCEs, Reexaminations or claims beyond a certain number.

I have a Constitutional right both as a *pro se* inventor and attorney to not only apply for and prosecute patents in Continuations, RCEs, Reexaminations and claims beyond a certain number without *prior restraint* of my expressions, phraseology and number of claims, but I also have a Constitutional right to the dedication of the inventions described in Continuations, RCEs, Reexaminations and claims beyond a certain number without *prior restraint*. I also have a property right to publicity and to emancipation by practicing and advertising my profession free from uncontrolled regulations, *prior restraint*, and content regulation. To this end, I have a common law right of publicity to first disclose and to dedicate my inventions to the public in Continuations, RCEs, Reexaminations, and Claims beyond a certain number, unless barred by law. Likewise, I have a right to the enjoyment and benefit of those dedications by others in their patents without *prior restraint* and content regulation.

5

Publicity of my property, like advertising of my name for legal services, is a constitutionally recognized and protected right and privilege that is suppressed by the Final Rules. *See* <u>Zacchini v. Scripps-Howard</u> <u>Broadcasting Co.</u>, 443 U.S. 562, 577 and n. 13. (1977). They are constitutionally protected to promote the progress of science and useful arts, and the free exercise of my speech, press, assembly petition, religion in patents, trademarks, copyrights and privilege as a lawyer.

Neither the patent statutes nor the Constitution support the doctrine of election of recognition under 35 U.S.C. 101, 171 or 161, etc. <u>In re Yardley</u>, 493 F.2d 1389, 181 USPQ 331 (CCPA 1974); *Patents*, Donald Chisum, Sec. 1.04 (5), 1979, p.1-157. The Patent laws overlap in terms of subject matter, just as the patent and copyright laws do. 1 Nimmer, *Copyrights*, Sec. 38 (1975). Obviously, this overlap is not complete. <u>Mazer v. Stein</u>, 347 U.S. 201; 100 USPQ 325 (1954). That is the reason for having more than one statute for patents and copyrights. The requirements are different. So are their terms.

But the clear statement of the law is to provide substantively broad coverage for property rights during the limited terms specified by statute, and thereafter when the property is ultimately dedicated by statute to the

6

public at the end of patent terms under the First Amendment and Article I, Section 8, paragraph 8, in the form of writings and discoveries, simultaneously, save only as to their terms without regard to the number of Continuations, RCEs, Reexaminations, Claims and copyright deposits submitted. Korzybski v. Underwood & Underwood, Inc., 36 KF.2d 727, 3 USPQ 242 (2d Cir. 1929).

These are property rights of clear statement whether the subject matter is described and expressed in phraseology selected freely by applicants without abridging their rights in Continuations, RCEs, Reexaminations, Claims or simultaneous copyrighted deposits in the Patent and Trademark and Copyright Offices below or above a certain number. The change in the burden of proof encourages Continuations, RCEs, Reexaminations and Claims on the one hand, and is inconsistent on the other hand by discouraging or eliminating the right of exclusion in all patents and copyrights without Constitutional safeguards by the Final Rules. They are illegal, not according to law, arbitrary and capricious, not authorized and substantively unconstitutional and unnecessary.

They cause irreparable damage to the right of exclusion. Our Constitutional rights are designed to support our property in our patented

7

inventions and copyrights, and the public's property in their dedications; money damages alone not supporting enforcement of either one of those respective and separate valuable and irreplaceable property rights. <u>Jacobson v. Katzer, (Fed. Cir. 2008).</u>

There is no compelling reason to do away with those property rights without narrow tailoring and Constitutional safeguards. The burden is on the Defendants to prove that the abridgment of those rights in Continuations, RCEs, Reexaminations, Claims beyond a certain number, and the expression and phraseology used therein above a certain number are not without Constitutional safeguards. It is their burden to show that they are unprotected by the Constitution. <u>Freedman v. Maryland</u>, 380 U.S. 51 (1964). The burden is heavy, compelling and must be narrowly tailored but isn't.

There is a particularly heavy presumption against constitutional validity of unjustified *prior restraints* abridging my content, and freedom of choice in my expressions of speech, press, petition, and religious apparatus and processes in claims each truly pointing out and defining my invention in patents using my selected phraseology. Likewise, there is a heavy constitutional presumption against constitutional validity of *prior restraints* and suppression of my rights of publicity in my expressions in patents

8

to advertise my name and legal services <u>Zaccchini v. Scripps-Howard</u> <u>Broadcasting Co.</u>, 443 U.S.C 562, 577 and n. 13; and <u>Bantam Books, Inc.</u> <u>Sullivan,</u> 372 U.S. 58, 70. P. 57 (1963).

At present, the Final Rules abridge my common law and Constitutional right of clear statement to be free of *prior restraint* and/or content regulations of my thought and inquiry in my Continuations, RCEs, Reexaminations and Claims beyond a certain number. <u>Edwards Case</u>, Mich. 6 Jacobil, 77 Eng. Rep. 1421 (KB 1609). An attempt was made to limit this doctrine of "no *prior restraint*" in the *Patent Act* of 1790. It made a patent a matter of grace. However, the Government attempt to deny a patent, e.g., because of substantive changes in the law, was restricted or eliminated when the *First Amendment* was adopted in 1791. This is supported by the maxim *leges posteriors priores contrarias abrogant.* 1 Bl. Comm. 59-62 (8th ed. 1778). Thus, the prohibition of substantive changes in the right to disclose and dedicate inventions to the public in patents, and later in Continuations, RCEs, Reexaminations, but most particularly from 1791 onward in unlimited numbers of Claims, was guaranteed by the Constitution.

Indeed, the prevention of substantive changes in the right to disclose and dedicate INVENTIONS to the public in patents and copyrights as a

9

property right, and e.g., under statute in 35 U.S.C. 261, was allowed to grow, expand and prosper unhindered by federal legislation. In re Seaborg, 140 U.S.P.Q 662 (CCPA 1964). The Patent Act of 1952, like its forerunner in 1793, adopted this policy of clear statement.

As an inventor I have a statutory right under U.S.C. 101 to simultaneously disclose and disseminate my inventions and copyrightable expressions and writings to the public without substantively abridging my freedom of choice in selecting my phraseology for truly pointing out and define my patentably enabled and disclosed property right in my inventions in patents, and to dedicate them to the public unless barred by law. 42 U.S.C. 2181 is a statute that can abridge my right by a substantive change in the law because it safeguards my right to just compensation for taking my invention according to the requirements of due process under 35 U.S.C. 183. The Supreme Court has been careful not to limit the ways in which the First Amendment can be abridged. Grossjean v. American Press Company, Inc, 297 U.S. 233 (1936); Sai v. The State of New York, 334 U.S. 558 (1948). These are well-established, long-standing, well-recognized and compelling rights of clear statement.

10

The Supreme Court has often expressed concern about the confusion and the retroactivity problems that inevitably would result with a judicial overturning of long lines of precedents. <u>Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs</u>, 259 U.S. 200 (1922); <u>Toolson v. New York Yankees, Inc.</u>, 346 U.S. 356 (1953); <u>Flood v. Kuhn</u>, 407 U.S. 259 (1972). *See* also <u>Dann v. Johnston</u>, 425 U.S. 219, 189 USPQ 257 (1976); and <u>Parker v. Flook</u>, 437 U.S. 584, 595, footnote 18, 198 USPQ 193 (1978). The confusion would extend to International Law and Conventions effective in the United States. To this end, other countries would not bar patents on the inventions barred in this country under the Final Rules, *inter alia*, even if filed as Convention applications in the U.S.P.T.O as a depositing country because of the shifting of the burden of proof to the applicant and his failure to meet his burden under the censor's arbitrary and capricious requirements in the PTO for an explanation of how the claimed invention is patentable under U.S.C. 101, 102 and 103 over the search results. Examination Supporting Document (ESD) under Final Rule 265. *See* JA 178-79 (72 Fed. Reg. 46842-43)(37 C,FD,R, 1,265).

Under the Paris Convention of 1883, and the PCT Convention of 1978, applicants should be allowed to file first here in an unlimited number

11

of Continuations, RCEs, and Claims, and to pursue those claims to issue here and in convention countries without abridging their freedom of choice in selecting their phraseology that truly points out and defines their inventions.

The Defendants allege that Final Rules 75 and 265 do not alter the Office's obligation to search the prior art and examine the claims. But they do substantively change the burden of proof as to whether the claims submitted are patentable, or overcome the cited art. An ESD is not a "launch pad" for understanding of an invention and its background as the examination progresses to issue in Continuations, RCS, Reexaminations and multitudinous claims. It is a "launch pad" to sabotage, censor and abridge applicants' freedom of choice to select the phraseology that truly points out and defines his invention in Continuations, RCEs and Claims. It is an invitation to arbitrarily, capriciously and substantively change the law without authority. They exceed the authority governing the conduct of the applicant and his attorney under 35 U.S.C. 32 and 33 by unjustifiably claiming <u>Chevron</u> deference without Constitutional safeguards by by-passing the requirements of due process of law, and by unjustified accusations of deliberate delay not according to law and without a probable

12

cause finding. That is a detriment to the applicant and the public, not an assistance of applicants in prosecuting their applications and obtaining protection for inventions that meet the Patent Act's requirements for patentability, as claimed by the Defendants. The record should be opened to add such testimony if it is lacking in the record so far made in this case. The current record does not support the accusations and allegations of the Defendants in support of their claims, and the Court should require the record to be presented and expanded by the PTO before setting this case for trial.

An inventor has a well-established right of clear statement not to be forced against his consent to surrender his Continuations, RECs and Claims by *prior restraint* without a prompt judicial review limited to the *status quo* and for the shortest period compatible with sound judicial procedure. Freedman v. Maryland, *Id.* Such a Constitutional safeguard is lacking in the Final Review. To this end, they violate established policies of clear statement involving preemption of patents by the Federal Government. Sperry v. State of Florida, 137 USPQ 578 (1963). For the *Tenth Amendment* states the obvious. What is not surrendered is retained. United States v. Darby, 312 U.S. 100, 124 (1941). And what is not given up is possessed by

13

the States. <u>Gibbons v. Ogden</u>, 9 Wheat. 1, 14, 46, 47, 59 (1824). <u>Livingston</u>

<u>v. Van Ingren</u>, 9 Johns (NY) 507 1812); <u>Mclain v. Ortmayer</u>, 141 U.S. 419

(1891). It is thus, essential that the legislative enactment of 35 U.S.C. 101

be interpreted so as not to violate this established public policy of clear

statement. It is consistent with the plain meaning of the statute. To this end,

it is the rule of statutory construction that this legislative enactment be given

its intended general, comprehensive and prospective interpretation by

applying it alike and with global equality to *all* persons and *any* subject

matters and *substantive* changes in the law within its intended general

purview and scope coming into existence subsequent to its passage.

<u>Commonwealth v. Maxwell</u>, 271 Pa. 378, 114 Atl. 825 (1921); 25 Ruling

Case Law 778.

Moreover, this intended prospective interpretation must be provided

so as not to violate the established competitive mandate of the Constitution.

This is also a clear public policy of clear statement. To this end, the

patenting of Continuations, RCEs, and Claims must be open to all with

global equality, whether the subject matter be old or new technology, living

or dead. Analogues abound. One such analogue is the post office.

Common carriers and innkeepers are much the same in their prospective

14

availability and duty to the public. A common carrier owes a duty to the

public whatever the subject matter that comes into existence to carry for all

to the extent of its capacity, at reasonable rates, and with substantial

impartiality. Michigan Public Utilities Commission v. Duke, 266 U.S. 570

(1925). For it has long been pointed out that an unrestricted right of

discretion in the government, as well as in the private sector, would, through

its operation upon the course of trade, tend to build up monopolies and

destroy competition of thought and inquiry, as well as speech, press,

petition, and the establishment of religion. 9 Am. Ju. 557, 1937, citing

Messenger v. Pennsylvania R.R. Co, 37 NJL 531; 18 Am. Rep. 754.

The plain meaning of 35 U.S.C. 101 is clearly consistent with all

prospective inventions coming into existence subsequent to its passage.

That includes all inventions that come into existence constructively only

when they are constructively reduced to practice in Continuations, RCEs and

Claims. The plain and clear meaning is *any* Continuation, RCE or Claim

coming into existence as an expression in writing without limit as to number

and phraseology according to the author, who is an applicant, and who is

recognized as a human being, i.e. in a man-made written expression

presented to the PTO by any man or woman with global equality. Every

15

expression has a right to be disclosed and dedicated to the public in a writing open to the public, i.e., a patent, if it meets the statutory requirements for patentability, without regard to the diligence and care in its preparation.

By the maxims of statutory interpretation, every writing describing a patentable invention, and the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to make and use the same is entitled to be patented and dedicated to the public at the end of the patent term or before. This even includes synergistic inventions that are regenerated by the cooperation of divine grace and human activity. In re Sarkar, 200 U.S.P.Q. 132 (CCPA 1978); Anderson's-Black Rock, Inc, v. Pavement Salvage Co., 396 U.S. 57, 61 (1969); Sakraida v. Ag-Pro, Inc., 425 U.S.273, 282 (1976); and *Webster's New Collegiate Dictionary* "synergism," 1953. This excludes non-statutory and judicially excluded inventions that are not embodied or that are merely ideas. Parker v. Flook, 437 U.S. 584 (1978). *See* the maxims: *expression unius exclusion alterius; noscitur a sociis eisusdem generis;* and *reddendo singular singulis.* "Statutes and Their Interpretation," Dean Albert M. Sachs, Program of Instruction for Lawyers, Harvard University, July 18-21,

16

1979, p. 1412. If this Court approves of the exclusion of thought and inquiry created constructively in Continuations, RCEs and Claims under the Final Rules, they will approve of invidious discrimination against suspect classes without equal protection and due process, and they will approve of exclusion of the thought and inquiry of inventors who are unrepresented, *pro se,* unregistered, poor, black, young and old, well fed and hungry, domestic and foreign, male and female, and those unable to publish elsewhere who desire to be emancipated with global equality by recognition in a patent not barred by law. The care and diligence of the preparation of their applications will not undermine the function of claims to notify the public as to the thought and inquiry disclosed and dedicated to the public, save in those technologies barred legitimately by statute or judicial intervention. A censor is not authorized to make that compelling judgment arbitrarily and capriciously without Constitutional safeguards, as he would be allowed to do under the Final Rules.

It is our right to keep the substantive delegation of authority to the Defendants clearly in view. A.L.A. Schecter Poultry corporation v. United States, 295 U.S. 495 (1935). The Defendants are one of the largest, if not the largest printing houses of technical information in the world. This

17

information is largely available from no other source.  Thus, if new

substantive reasons are adopted for stopping and punishing applicants from

completing the issuance of their patents, they should be articulately and

compelling reasons of public policy, not speculative reasons.  And they

should be supported by the record, but they are not.

The Final Rule are inconsistent with the First Amendment under 35

U.S.C. 2 (b)(2)(D), 6 and 32, which are unconstitutionally vague, indefinite ,

and not in accordance with the requirements of the First Amendment and the

due process Clause, and 35 U.S.C 33.  They both  encourage and discourage

publications in patents, and they encourage the discrimination and

punishment of applicants unfairly.  There is a clear analogy here to the

criminal law.  Delaware v. Prouse, 44 U.S. 648, 99 S.Ct. 1391 (1979)

I have a compelling interest in challenging the Final Rules as an

inventor and as an attorney under the Supreme Court's view of the unified,

general, comprehensive and prospective operative communications policy of

the United States relative to its clear statement in patent and common law

policy.  Zacchini v. Scripps-Howard Broadcasting Co, Id.

In this connection my attached First Amended Complaint includes

Causes of Action both included and not included in Tafas and GSK, Id.

18

The Causes of Action include those that are the same as in those cases, which are pre-enforcement Causes of Action and Requests for Relief as in the District Court in those cases under the Administrative Procedures Act (APA) to challenge the validity of the Revised Final Rules of the Defendants that were to be effective November 1, 2007.   The Causes of Action in my original above-identified District Court Case and in the attached First Amended Complaint, hereinafter "my Case," include the Causes of Action included in the cited <u>Tafas</u> and <u>GSK</u> Cases *Id.*, which were <u>all</u> under the Administrative Procedures Act (APA) 5 U.S.C. 701 <u>et seq.</u> based upon the same Administrative Record in the USPTO as in my subject Case No. 07-01719 (*See* Appellants Appeal Brief in Case No. 2008-1352).

Plaintiff , is an unrepresented, *pro se* litigant.  His challenge is both for equitable and <u>Bivens</u> damages, costs, attorneys fees, and both against and not against the Final Rules, and without regard as to whether he is registered or not registered to practice in either the Patent of Trademark Offices.  His challenge against the Final Rules of a government agency is, *inter alia,* via pre-enforcement challenges of substantive changes in the law under the APA, and as not being consistent with law governing the conduct of proceedings in the PTO, and not consistent with the rules governing the

19

conduct of *pro se* applicants and applicant attorneys like me, or their conduct as attorneys alone or as representing with a power of attorney co-inventors who are alive, dead, hostile or not available, or as executors of administrators of other persons.

The connections between these and other cases involving substantive changes in agency rules and the First Amendment have been extensively discussed in the literature. *Taming Red Lion: The First Amendment and Structural to Media Regulation, Federal Communications Law Journal*, Vol. 31, No. 2, Spring 1979, pp. 215-234; *Cable Television and Content Regulation: The FCC, The First Amendment and the Electronic Newspaper,* New York University Law Review, Vol. 51, No. 1, April 1976, pp. 133, 144; *Human Cannonballs and the First Amendment: Zacchini v. Scripps-Howard Broadcasting Co.*433 U.S. 562 (1977), Stanford Law Review, Vol. 30, No. 6, July 1978, pp. 1185-1209.

## CONCLUSION

This is a Memorandum in Support of my attached proposed Order and approved First Motion for Leave to amend my complaint with a request for review and reconsideration of the denial of a TRO.

"*Attorney, Agent or Firm* – Cornell D.M. Judge Cornish" or

"*Attorney, Agent or   Firm* – Cornell D.M. Judge Cornish ™ SM

Downpat    ®    © Cornish 2008

Respectfully submitted,

*Cornell D. M. Judge Cornish*

Cornell D.M. Judge Cornish *pro* se
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037
(202) 429-9705
cornishj@erols.com

Date: 9/2/08

21

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Motion and Memorandum in support has been served by hand by delivering a copy thereof to:

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7230 fax (202) 514-8780

On this  2nd      day of  September, 2008.

*Cornell D. M. Judge Cornish*

Date: 9/2/08

Cornell D.M. Judge Cornish
DC Bar #366240
1101 New Hampshire Ave., NW,
Suite 301
Washington, DC 20037-1502
(202) 429-9705
cornishj@erols.com

22