UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
CORNELL D.M. JUDGE CORNISH,    )
                               )
     Plaintiff,                )
                               )
     v.                        )    Civil Action No. 07-1719 (RWR)
                               )
JON DUDAS, et al.,             )
                               )
     Defendants.               )
_____)
```

## MEMORANDUM OPINION

*Pro se* plaintiff Cornell D.M. Judge Cornish brings this
action against the U.S. Patent and Trademark Office ("USPTO") and
its Director and two employees in their official capacities.
Among other things, he alleges a violation of the Rehabilitation
Act, and challenges as arbitrary, capricious and discriminatory
the USPTO's decision to deny his request for reinstatement to the
patent register without an examination nearly nine years after
his voluntary removal, claiming the decision violated his First
Amendment rights by preventing him from advertising as a
registered patent attorney and violated his due process rights by
not providing notice and a hearing regarding his reinstatement.
The defendants move to dismiss for lack of jurisdiction and for
Cornish's failure to state a claim or, in the alternative, for
summary judgment, arguing in part that Cornish has failed to
exhaust his administrative remedies on his reinstatement claim,
establish a violation of the Rehabilitation Act, and state a

claim for which relief can be granted on his other claims.
Because Cornish has failed to show that the decision to deny his
reinstatement request was arbitrary or capricious and failed to
demonstrate that the defendants violated the Rehabilitation Act,
the defendants' motion for summary judgment on his Rehabilitation
Act and reinstatement claims will be granted.  Because Cornish
has failed to state a claim for which relief can be granted on
his other claims, the defendants' motion to dismiss will be
granted in all other respects.  Also, Cornish has moved to amend
his complaint for a second time, but, because he fails to state a
claim for which relief can be granted in his proposed second
amended complaint, his motion to amend his complaint will be
denied on grounds of futility.

BACKGROUND

In 1958, Cornish applied for and passed the patent
examination and became registered to practice law before the
USPTO.  (See Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to
Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mem.") at
7.)  In 1995, one of Cornish's former clients filed a grievance
against him and, as a result, Cornish was removed from Maryland's
attorney register.[1]  (See id. at 7-9.)  In 1996, Cornish wrote

---

[1] Both the District of Columbia and New York State Bars
temporarily suspended Cornish from the practice of law based on
the Maryland action.  He since has been reinstated to all three
bars.  (Id. at 11-12.)

the USPTO stating that he was "ceasing . . . practice before the United States Patent and Trademark Office." (Id. at 9, Ex. 7.) The director of the USPTO's Office of Enrollment Discipline ("OED") informed Cornish that the USPTO was "treating [Cornish's letter] as a request to have [his] name removed from the register[,]" and that Cornish should inform OED if it was not his intent to have his name removed. (Id. at 9-10, Ex. 8.) After giving Cornish over five months to respond, OED removed Cornish's name from the patent register. (Id. at 10 n.7.)

On January 25, 2005, Cornish requested reinstatement to the patent register. (Id. at 12, Ex. 12). That same day, an OED staff member wrote Cornish explaining that because more than five years had passed since Cornish had been registered to practice before the USPTO, Cornish would be required to take the patent registration examination or submit a showing to the satisfaction of the OED Director that Cornish continued to possess the legal qualifications necessary to render valuable services for patent applicants. (Id. at 12-13, Ex. 13.) The following day, Cornish submitted a letter purporting to detail his legal qualifications. (Id. at 13, Ex. 15.) An OED staff attorney reviewed Cornish's submission and concluded that Cornish did not present sufficient objective evidence of his ability to render patent applicants valuable service. (Id. at 13-14, Ex. 17.) OED informed Cornish that the decision was without prejudice and invited Cornish to

submit additional information to support his qualifications.
(Id.)  Before submitting additional information, however, Cornish
sat for, and failed, the July 2005 patent examination (id. at 14-
15, Exs. 18, 20, 32, 33), the July 2006 examination (id. at 19),
and the July 2007 examination.  (Id. at 23, Exs. 30, 33.)  Before
sitting for and taking the July 2006 and 2007 examinations,
Cornish requested various "reasonable accommodations" (see id. at
15, 21, Exs. 22, 29), and by July 2007, OED granted all of his
accommodations requests.[2]  (Id. at 22.)  Cornish brought this
action in September 2007, arguing that under the Administrative
Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), the defendants'
decision to deny his reinstatement request was arbitrary and
capricious, and purporting to raise a number of constitutional
and statutory violations.[3]  In September 2008, Cornish amended
his complaint, adding Bivens[4] claims and challenges to the rules
("Final Rules") implemented by the USPTO in August 2007 that
governed patent applicants' process for protecting inventions.

_____

[2] OED granted some, but not all, of Cornish's accommodations
requests for the July 2006 exam.  (Id. at 16.)

[3] In passing, Cornish mentions the Freedom of Information
Act ("FOIA").  (See Compl. at 31, 35.)  However, he does not
allege that he made any FOIA request of the defendants.
Therefore, any claim he may seek to raise under FOIA fails to
state a cause of action for which relief can be granted, and will
be dismissed.

[4] Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971).

(See Amended Compl. for Att. to Approved Mot. for Leave to Amend
Compl. Under Fed. R. Civ. P. 15 ("Amend. Compl.").)  The
defendants have moved to dismiss under Federal Rules of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction and
12(b)(6) for failure to state a claim for which relief can be
granted or, in the alternative, for summary judgment.[5]  Cornish
moved yet again to amend his complaint in March 2010, which the
defendants oppose under Rule 8(a) and Local Civil Rule 7(m).

## DISCUSSION

"Before a court may address the merits of a complaint, it
must assure that it has jurisdiction to entertain the claims."
Marshall v. Honeywell Tech. Solutions, Inc., 675 F. Supp. 2d 22,
24 (D.D.C. 2009).  Under Rule 12(b)(1), a complaint may be
dismissed for lack of subject matter jurisdiction.  See Fed. R.
Civ. P. 12(b)(1).  "When assessing a motion to dismiss for lack
of subject matter jurisdiction, a court may consider the
complaint and any undisputed facts in the record."  Marshall, 675
F. Supp. 2d at 24.  A plaintiff's factual allegations are subject
to closer scrutiny when resolving a Rule 12(b)(1) motion than
would be required for a Rule 12(b)(6) motion for failure to state
a claim, and "[p]ro se plaintiffs are not free from the

---

[5] The defendants' motion incorporates by reference the
arguments made in their motion to dismiss the original complaint
or, in the alternative, for summary judgment.  (See Defs.' Mem.
of P. & A. in Supp. of Defs.' Renewed Mot. to Dismiss or, in the
Alternative, for Summ. J. at 11 n.5.)

requirement to plead an adequate jurisdictional basis for their claims." Bennett-Bey v. Shulman, Civil Action No. 08-328 (RWR), 2010 WL 320216, at *1 (D.D.C. Jan. 20, 2010).

"In order to survive a motion to dismiss under Rule 12(b)(6), the allegations stated in the . . . plaintiff's complaint 'must be enough to raise a right to relief above the speculative level[.]'" Demery v. Montgomery County, MD, 602 F. Supp. 2d 206, 212 (D.D.C. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original)). While courts "do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint[,]'" courts also do not accept "'inferences drawn by the plaintiffs if such inferences are unsupported by the facts set out in the complaint,' [or] 'legal conclusions cast in the form of factual allegations.'" Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting Kowal v. MCI Communications Corp., 16 F.3d 1271, 1275 (D.C. Cir. 1994)). If a plaintiff fails to allege sufficient facts to support his claim and nudge it across the line from conceivable to plausible, the complaint will be dismissed. Twombly, 550 U.S. at 556, 570.

"When 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b)(6), 'the motion must be treated as one for summary judgment[.]'" Highland Renovation Corp. v. Hanover Ins. Group,

620 F. Supp. 2d 79, 82 (D.D.C. 2009) (quoting Fed. R. Civ. P. 12(d)) (alteration in original). Summary judgment must be granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmovant. Cruz-Packer v. District of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008). The threshold question is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (overruled on other grounds).

I. REINSTATEMENT CLAIM

The USPTO is authorized to establish regulations which

may govern the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties . . . and may require them, before being recognized as representatives of applicants or other persons, to show that they . . . are possessed of the necessary qualifications to render to applicants or other persons valuable service, advice, and assistance[.]

35 U.S.C. § 2(b)(2)(D). Under the applicable regulations, "[a]ny petition from any action or requirement of the staff of OED reporting to the OED Director shall be taken to the OED Director[.]" 37 C.F.R. § 11.2(c). A "petition not filed within sixty days from the mailing date of the action or notice from

which relief is requested will be dismissed as untimely." Id. A petitioner who is dissatisfied with the OED Director's final decision "may seek review of the decision upon petition to the USPTO Director[.]" 37 C.F.R. § 11.2(d). Any petition to the USPTO Director may be dismissed as untimely if not filed within thirty days of the OED Director's final decision. Id. Finally, this court "may review the action of the [USPTO] Director upon the petition of the person so refused recognition[.]" 35 U.S.C. § 32.

Generally, for a court to hear "claims seeking judicial review of an agency action under the APA, it must determine that the action is final." Natural Res. Def. Council v. Johnson, 422 F. Supp. 2d 105, 110 (D.D.C. 2006) (overruled on other grounds) (citing Cobell v. Norton, 240 F.3d 1081, 1095 (D.C. Cir. 2001)). "A final agency action (1) marks the consummation of the agency's decision making process –- it must not be of a merely tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." Id. (internal quotation marks omitted). "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 18 (D.C. Cir. 2006). Failure to satisfy the APA's final agency

action requirement warrants dismissal for failure to state a claim for which relief can be granted. See id. at 18 n.4; Am. Forest Res. Council v. Hall, 533 F. Supp. 2d 84, 94 (D.D.C. 2008).

The bulk of Cornish's grievance lies in the USPTO's refusal to reinstate him to the USPTO register. The defendants move to dismiss Cornish's reinstatement claim, in part, on the grounds that Cornish has failed to exhaust his administrative remedies because he has not secured a final agency decision from the USPTO Director reviewing OED's decision to deny his reinstatement request.[6] (See Defs.' Mem. at 32.)

Cornish has neither pled nor cited to such a final agency decision. While Cornish may have petitioned the USPTO Director in July 2006 seeking in part reversal of the OED staff attorney's decision from over a year earlier (Defs.' Mem. at 18, Ex. 27), it may be no surprise that no final agency decision was forthcoming. There is no evidence that Cornish took the intermediate step in compliance with 37 C.F.R. § 11.2 of petitioning and securing a decision from the OED Director for the USPTO Director to review. Understandably, Cornish does not contend that the OED staff attorney's decision is a final agency decision subject to review,

_____

[6] While defendants cast this failure as one depriving the court of subject matter jurisdiction, a failure to exhaust administrative remedies is properly analyzed under Rule 12(b)(6) as a failure to state a claim. Winston v. Clough, Civil Action No. 07-1411 (RWR), 2010 WL 1875626, at *4 (D.D.C. May 11, 2010); Hairston v. Tapella, 664 F. Supp. 2d 106, 110 (D.D.C. 2009).

particularly given that the staff attorney's letter expressly stated that it was a denial without prejudice. The Patent and Trademark Office Manual of Patent Examining Procedure ("MPEP")[7] provides that "[a] dismissal of a petition, a denial of a petition without prejudice, and other interlocutory orders are not final agency decisions." MPEP § 1002.02. Because Cornish neither pleads nor cites to the determination to deny without prejudice Cornish's reinstatement request as a final agency decision, the defendants' motion to dismiss the reinstatement claim for failure to state a claim for which relief can be granted should prevail.

Even if the actions in this record constituted a final agency decision, the material facts are not in dispute regarding the USPTO denying Cornish reinstatement and the defendants are entitled to judgment as a matter of law on the reinstatement claim. "Under 35 U.S.C. § 32, the sole basis for the Court's review is the record and proceedings before the [USPTO] . . . and

---

[7] MPEP is "commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters." Zhengxing v. U.S. Patent & Trademark Office, 579 F. Supp. 2d 160, 166 n.6 (D.D.C. 2008) (quoting Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995) (internal quotation marks omitted)). "MPEP does not have the force of law, [but] it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith." Id. (internal citations omitted) (alterations in original). "[T]he PTO operates in accordance with detailed rules and regulations, including those set out in the [MPEP] which is made available to the public and which has been held to describe procedures on which the public can rely." Id. (internal citations omitted).

the Court's limited function is to determine whether the
[USPTO's] decision was arbitrary and capricious based on the
record created and considered by the [USPTO]."  Maresca v.
Commn'r of Patents and Trademarks, 871 F. Supp. 504, 507 (D.D.C.
1994).  "The standard of review is highly deferential: 'If [the
USPTO] has considered the relevant evidence of record, drawn
plausible inferences and articulated a rational basis for the
decision, reversible error will be extremely difficult to
demonstrate.'"  Id. (quoting Hines on Behalf of Sevier v. Sec'y
of the Dep't of Health and Human Servs., 940 F.2d 1518, 1528
(Fed. Cir. 1991)).  "[T]his standard does not allow the courts to
undertake their own factfinding, but to review the agency record
to determine whether the agency's decision was supported by a
rational basis."  Holy Land Found. for Relief & Dev. v. Ashcroft,
333 F.3d 156, 162 (D.C. Cir. 2003) (citing Holy Land Found. for
Relief & Dev. v. Ashcroft, 219 F. Supp. 2d 57, 67 (D.D.C. 2002)).
"Further, where a statute is silent or ambiguous on a particular
issue and an agency is authorized to promulgate regulations to
carry out the statute, a court must defer to the agency's
reasonable interpretation of the statute."  Atl. Sea Island Group
LLC v. Connaughton, 592 F. Supp. 2d 1, 13 (D.D.C. 2008) (citing
Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S.
837, 843 (1984)).

After OED informed Cornish in January 2005 that he must
either retake the patent exam or submit a satisfactory showing
that he possessed the legal qualifications necessary to render
valuable service to potential clients (Defs.' Mem. at 13),
Cornish wrote to an OED Enrollment Program Specialist listing his
qualifications.  Cornish claimed to have taken continuing legal
education courses, attended regularly annual meetings of and
maintained membership in intellectual property associations,
subscribed to weekly publications regarding significant changes
in patent laws, and worked for a law firm in the District of
Columbia.  (Id., Ex. 15 ¶¶ 1-5.)  Cornish also claimed to have
filed an amicus brief in the U.S. Supreme Court, provided
valuable service to applicants and litigants in the field of
intellectual property law, and attended important patent law
arguments in the U.S. Court of Appeals for the Federal Circuit.
(Id., Ex. 15 ¶¶ 10-12.)  After reviewing Cornish's letter, OED
Staff Attorney William J. Griffin denied Cornish's reinstatement
request, because Cornish "did not present sufficient objective
evidence to show that he continued to possess the legal
qualifications necessary to render patent applicants valuable
service."  (Id. at 14 (emphasis added).)  Griffin justified this
conclusion on the basis that Cornish's letter included only
"conclusory statements made without the support of any objective
evidence" that were "entitled to little weight." (Id., Ex. 17.)

Citing the USPTO regulations, Griffin stated that appropriate legal qualifications would include proof of "knowledge and proficiency in current patent law and Patent and Trademark Office procedure, an ability to draft acceptable patent claims, and familiarity with current patent practice as well as patent statutes and regulations." (Id., Ex. 17.)

The record reflects that OED fairly considered the relevant evidence. Cornish has not shown anything arbitrary or irrational about OED finding as inadequate proof of his qualification his self-serving and undetailed assertion that he has provided valuable services to applicants and litigants in the field of intellectual property and that he has worked for a law firm in the District of Columbia, particularly given the nearly nine years that had passed since he was licensed as a patent attorney. Also, that Cornish has attended meetings and holds subscriptions to intellectual property law publications does not necessarily reveal an ability to practice as a patent attorney. Similarly, it was not unreasonable to consider Cornish's bare assertion that he has taken continuing legal education courses –- without evidence of the nature of the courses, the number of courses taken, and whether Cornish successfully completed any of the courses –- as insufficient to show that Cornish has the requisite knowledge and proficiency to be reinstated as a patent attorney. Furthermore, Cornish made no showing of his actual ability to

draft patent claims or familiarity with current patent statutes and regulations. Given that the standard of review is highly deferential, and OED has demonstrated that it considered the relevant evidence, extracted plausible inferences, and articulated a rational basis for its decision, the defendants' motion for summary judgment will be granted on the reinstatement claim.

## II. EMPLOYMENT DISCRIMINATION CLAIMS

Intermittently throughout his complaint, Cornish purports to bring claims of employment discrimination by mentioning, in passing, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Older Workers Benefit Protection Act, and the Americans with Disabilities Act ("ADA"). (See Compl. at 21-23.)[8] Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

---

[8] Cornish also purports to state a claim for relief under the Individuals with Disabilities Education Act ("IDEA"). (Id. at 23.) The "IDEA 'ensure[s] that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" J.N. v. District of Columbia, 677 F. Supp. 2d 314, 319 (D.D.C. 2010) (first alteration in original) (quoting 20 U.S.C. § 1400(d)(1)(A)). Cornish has failed to state an IDEA claim, however, because he has not alleged that he was discriminated against in the public school setting or that he was denied a FAPE. See 20 U.S.C. §§ 1400-1487 (2000).

conditions, or privileges of employment, because of [his] race, color, religion, [or] sex[.]" <u>Williams v. Tapella</u>, 658 F. Supp. 2d 204, 211 (D.D.C. 2009) (alterations in original) (citing 42 U.S.C. § 2000e-2(a)(1)). Similarly, the ADEA prohibits discrimination based on age in the employment setting, <u>see</u> 29 U.S.C. § 626, and the Older Workers Benefit Protection Act amended the ADEA largely "to clarify the protections given to older individuals in regard to employee benefit plans[.]" <u>See</u> Pub. L. No. 101-433, 104 Stat. 978. Moreover, the ADA, in part, prohibits employment discrimination against an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the position.[9] <u>Dave v. Lanier</u>, 681 F. Supp. 2d 68, 73 (D.D.C. 2010) (citing <u>Breen v. Dep't of Transp.</u>, 282 F.3d 839, 841 (D.C. Cir. 2002)). Cornish's employment discrimination claims will be dismissed because Cornish has failed to allege that he ever was employed by or sought employment with the defendants, or that he suffered any adverse employment action.

III. REHABILITATION ACT CLAIM

Cornish's complaint cites the Rehabilitation Act and asserts that he requested "reasonable accommodations to take, challenge,

---

[9] Other provisions of the ADA prohibiting discrimination on the basis of disability in transportation services, programs, or activities of all State and local governments, <u>see</u> 42 U.S.C. § 12131 <u>et seq.</u>, in public accommodations, <u>see</u> 42 U.S.C. §§ 12181-12189, and telecommunications for hearing and speech-impaired individuals, 47 U.S.C. § 225, do not apply here.

correct, and appeal the marks received on the Patent Office Exam[,]" that the defendants required him "to pass another arbitrary, discriminatory test without reasonable accommodations[,]"[10] and that his "age and physical limitations . . . require reasonable accommodations."  (Compl. at 8, 27, 35.) The defendants argue that Cornish has failed to allege that he is an individual with a disability for purposes of the Rehabilitation Act and that, even if Cornish has made such an allegation, he cannot establish a *prima facie* violation of the Rehabilitation Act.  (Defs.' Mem. at 41-42.)

Section 504 of the Rehabilitation Act prohibits "discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations."  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004); see 29 U.S.C. § 794(a).  To establish a violation under the Rehabilitation Act, the defendant must "demonstrate (1) the [he] is a 'qualified

---

[10] The defendants have demonstrated that this allegation is faulty.  The defendants show -- and Cornish does not refute -- that OED granted all of Cornish's accommodation requests by the time he sat for the 2007 patent examination.  OED gave Cornish the examination and answer sheets printed in 14-point font; magnifiers for reading the Manual of Patent Examining Procedure; additional lighting; a testing room separate from the main testing room; additional time to take the examination; and the opportunity to take the examination over two days instead of one. (Defs.' Mem. at 42, Ex. 29.)  He still did not pass the patent examination.

individual' with a disability; (2) that the defendants are subject to . . . the [Act]; and (3) that [he] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [his] disabilit[y].'" Powell, 364 F.3d at 85 (fourth and sixth alterations in original).

"A person is disabled under the Rehabilitation Act if he 'has a physical or mental impairment which substantially limits one or more of such person's major life activities; has a record of such an impairment; or is regarded as having such an impairment.'" Nurriddin v. Bolden, 674 F. Supp. 2d 64, 82 (D.D.C. 2009) (quoting 29 U.S.C. § 705(20)(B)). However, "[a]s the Supreme Court has emphasized, 'merely having an impairment does not make [an individual] disabled.'" Id. (second alteration in original) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002)). Rather, a plaintiff "must demonstrate that the impairment 'substantially limits' a 'major life activity.'" Id. at 83 (quoting Toyota Motor Mfg., Ky., Inc., 534 U.S. at 195)). "[T]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." Desmond v. Mukasey, 530 F.3d 944, 955 (D.C. Cir. 2008) (internal quotation marks

omitted).  "An individualized assessment of the effect of an
impairment is particularly necessary when the impairment is one
whose symptoms vary widely from person to person."  Id. (internal
quotation marks omitted).  Cornish's burden, therefore, is to
demonstrate that he suffers from an impairment that substantially
limits a major life activity.  See, e.g., Lytes v. D.C. Water and
Sewer Auth., 572 F.3d 936, 942 (D.C. Cir. 2009) (citing 42 U.S.C.
§ 12102(2)(A) (2000)).

To satisfy his burden, Cornish asserts that he has "specific
visual and other medically documented age-related, life-function
impairments and disabilities[.]"  (Pl.'s Mot. to Deny the Defs.'
9/25/08 Renewed Dispositive Mot. to Dismiss or, Alternatively,
for Summ. J. ("Pl.'s Opp'n") at 10.)  Beyond these bare
assertions, however, Cornish makes no showing as to how his
alleged impairment substantially limits any major life
activity.[11]  For example, Cornish has not shown that he suffers
from permanent and severe blindness in one or both eyes of the
type that would cause him to receive poor work evaluations, cf.

---

[11] Cornish submitted spare documentation to the OED to
support his claim of disability and need for accommodations.  For
example, Cornish submitted to the OED a letter from a physician
who had treated him for coronary heart disease, stating merely
that Cornish would like "to be permitted to have additional time
allotted for the completion of the examination in view of his age
and health issues[.]"  (Defs.' Mem., Ex. 28.)  Though OED granted
Cornish's accommodation requests, it found the physician's letter
unpersuasive because it failed to certify the current severity of
Cornish's disability and need for the accommodations requested.
(Id.)

Johnson v. District of Columbia, 572 F. Supp. 2d 94, 106 (D.D.C.
2008) (noting that the plaintiff not only alleged that he was
blind in one eye and had insulin-dependant diabetes, but that the
impairments caused him to work at an extremely slow pace and fall
asleep during work such that he received poor productivity
reviews); rectal pain and fecal urgency that prevent him from
performing his daily tasks, cf. Green v. Am. Univ., 674 F. Supp.
2d 21, 29-31 (D.D.C. 2009) (involving a defendant who lost
voluntary control of his bowels which caused chronic tardiness
and unpredictable urges to use the bathroom between six to eleven
times per day); or such debilitating anxiety that he is
completely unable to communicate.  Cf. McAlindin v. County of San
Diego, 192 F.3d 1226, 1235 (9th Cir. 1999) (holding that
defendant's fear reaction and communicative paralysis raised a
genuine issue of material fact as to his ability to interact with
others).  Because Cornish has failed to show that he is a
qualified individual with a disability, the defendants will be
granted summary judgment on the Rehabilitation Act claim.

IV.  TAFAS CLAIM

In his amended complaint, Cornish challenges the same USPTO
Final Rules challenged in Tafas v. Dudas, 541 F. Supp. 2d 805
(E.D. Va. 2008).[12]  In Tafas, the plaintiffs challenged the

---

[12] Cornish also challenges the same Final Rules that were
challenged in GlaxoSmithKline v. Doll, 1:07-CV-1008 (E.D. Va.).

USPTO's August 2007 Final Rules.  In 2008, the district court upheld the Final Rules, and, on appeal, the Federal Circuit affirmed in part and vacated in part the district court's decision.  See Tafas v. Doll, 559 F.3d 1345, 1364 (Fed. Cir. 2009).  During the course of the Tafas litigation, however, the USPTO rescinded the Final Rules and the litigation was dismissed as moot.  See Tafas v. Kappos, 586 F.3d 1369, 1371 (Fed. Cir. 2009).

"'Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.'"  Matthews v. District of Columbia, 675 F. Supp. 2d 180, 187 (D.D.C. 2009) (quoting Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008) (internal quotation marks omitted)).  Because the USPTO has rescinded the Final Rules that Cornish seeks to challenge, Cornish's Tafas claims, therefore, will be dismissed as moot.

## V.    CONSTITUTIONAL CLAIMS

Cornish asserts that his inability to practice before the USPTO abridges his "freedom of speech and press to publish and advertise his name as an attorney" authorized to practice before the USPTO, and violates the Fourth and Fourteenth Amendments.[13]

---

Because GlaxoSmithKline was consolidated with Tafas, the cases will be referred to collectively as Tafas.

[13] Cornish also invokes Art. I, § 8, cl. 8 and Art. II, § 2, cl. 2 of the U.S. Constitution.  Art. I, § 8, cl. 8 gives to

(Compl. at 9, 18, 39.)  The First Amendment largely "protects an individual's right to speak on whatever subject he or she chooses[.]"  <u>Martin v. EPA</u>, 271 F. Supp. 2d 38, 48 (D.D.C. 2002). Although Cornish alleges that the defendants' failure to reinstate him to the patent register violates the First Amendment, the fact that Cornish is not registered as a patent attorney does not prohibit him from speaking on any topic of his choosing.  Furthermore, because false, deceptive, or misleading advertising is subject to restraint, <u>In re R. M. J.</u>, 455 U.S. 191, 200 (1982), and Cornish would mislead the public if he were to hold himself out as a registered patent attorney without being registered as such, <u>see</u> <u>Bates v. State Bar of Ariz.</u>, 433 U.S. 350, 383 (1977) (noting that "because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising"), Cornish's First Amendment claim based on his right to advertise as a patent attorney will be dismissed.

"The Fourth Amendment prohibits law enforcement officials from engaging in 'unreasonable searches and seizures' of an

_____

"Authors and Inventors the exclusive Right to their respective Writings and Discoveries[.]"  Const. Art. I., § 8, cl. 8. Meanwhile, Art. II, § 2, cl. 2 is the Appointments Clause of the Constitution.  It is unclear, however, how these provisions are implicated by the facts here, and Cornish fails to state a claim by merely listing the provisions without making a factual showing of how they apply.

individual and his property." Olaniyi v. District of Columbia,
416 F. Supp. 2d 43, 56 (D.D.C. 2006) (quoting U.S. Const. amend.
IV). "The touchstone of Fourth Amendment analysis is whether a
person has a 'constitutionally protected reasonable expectation
of privacy.'" M.K. v. Tenet, 99 F. Supp. 2d 12, 32 (D.D.C. 2000)
(quoting California v. Ciraolo, 476 U.S. 207, 211 (1986)). "A
person has such an expectation if two requirements are satisfied:
'first that a person has exhibited an actual (subjective)
expectation of privacy and, second, that the expectation be one
that society is prepared to recognize as "reasonable."'" Id.
(quoting Katz v. United States, 389 U.S. 347, 361 (1967)).
Cornish has not alleged any facts to suggest that he had a
subjective or reasonable expectation of privacy or that the
defendants have violated any privacy right. Because a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief[,]" Fed. R. Civ. P.
8(a)(2); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949
(2009), and Cornish has failed to make this showing, Cornish's
Fourth Amendment claim will be dismissed.

Cornish also has raised a claim under the Fourteenth
Amendment. However, the Fourteenth Amendment does not apply here
because Cornish is suing federal officials in their official
capacities and "[i]t is the due process clause of the Fifth, not
the Fourteenth, Amendment that applies to actions of the federal

government."  <u>Peavey</u>, 657 F. Supp. 2d at 186 n.6.  Further,

"'[t]he due process clause requires the government to provide

sufficient notice and a meaningful opportunity to be heard on the

deprivation of a protected liberty or property interest.'"

Id. at 191 (quoting Rason v. Nicholson, 562 F. Supp. 2d 153, 155

(D.D.C. 2008) (citing United States v. E-Gold, Ltd., 521 F.3d

411, 415 (D.C. Cir. 2008))).  The USPTO has established

administrative procedures for reviewing challenges to the OED's

decision regarding an applicant's reinstatement claim that

include affording aggrieved persons an opportunity to challenge

an OED staff decision to the OED Director, and the OED Director's

decision to the USPTO Director.  To the extent that Cornish is

raising a claim under the due process clause by asserting that

the OED has deprived him of a right to property or liberty by

interfering with his right to practice as a patent attorney,

Cornish has failed to allege facts showing how his opportunity to

be heard through OED's administrative process was at all

inadequate.  Because Cornish has not alleged facts that, if

proven, would demonstrate that he did not have a meaningful

opportunity to be heard, his due process claim will be dismissed

for failure to state a claim.[14]

_____

[14] Cornish's amended complaint purports to assert several
<u>Bivens</u> claims.  (<u>See</u> Amend. Compl. at 4-6, 13.)  Under <u>Bivens</u>, a
plaintiff may bring "an action against a federal officer seeking
damages for violations of the plaintiff's constitutional rights."
<u>Simpkins v. District of Columbia Gov't</u>, 108 F.3d 366, 368 (D.C.
Cir. 1997).  However, a "<u>Bivens</u> suit must be brought against

## VI.  MOTION TO AMEND

Cornish moves to amend his complaint yet again.  A plaintiff may "amend his complaint after an answer has been filed 'only by leave of court or by written consent of the adverse party[.]'"  <u>Smith v. Cafe Asia</u>, 598 F. Supp. 2d 45, 47 (D.D.C. 2009) (quoting Fed. R. Civ. P. 15(a)(2)).  While leave to amend should be granted freely, a motion to amend may be denied as futile on the grounds that the proposed amendments would not survive a motion to dismiss.  <u>Id.</u> at 47-48.

The defendants oppose on the grounds that Cornish has not provided a short and plain statement of his claim showing that he is entitled to relief, <u>see</u> Fed. R. Civ. P. 8(a)(2), and that Cornish has failed to comply with Local Civil Rule 7(m), which requires a moving party to discuss with opposing counsel an anticipated nondispositive motion before filing such a motion. <u>See</u> LCvR 7(m).

Cornish's reply does not dispute his violation of the local rule which alone is a ground for denying his motion.  That aside, the proposed second amended complaint is 94 pages of text bearing 21 pages of unnumbered paragraphs plus 73 pages of 181 numbered paragraphs of disparate lengths.  Its new and renewed

_____

federal officers in their individual capacity[.]"  <u>Peavey</u>, 657 F. Supp. 2d at 192.  Because Cornish has neither sued nor served a copy of his amended complaint on the defendants in their individual capacities, Cornish's <u>Bivens</u> claims against the defendants will be dismissed.

content is overly prolix and burdened by meandering hyperbole.
Cornish sprinkles throughout it recitations of text from
numerous statutes.  It is unclear whether those passages are
truly intended to assert causes of action under those statutes
as they are accompanied by little to no factual presentation
that would nudge such potential claims for relief across the
line from conceivable to plausible.

A prime example is Cornish's reference to the Privacy Act.
(See, e.g., Second Am. Compl. ¶¶ 69, 80, 89, 99, 112.)  The
Privacy Act forbids federal agencies from disclosing any record
in a system of records to any person or another agency without
the prior written consent of the individual to whom the record
pertains, see 5 U.S.C. § 552a(b), and requires agencies to keep
an accurate accounting of any record disclosure, see
§ 522a(c)(1); maintain personal information about an individual
only if it is relevant and necessary to accomplish a statutory
purpose, see § 522a(e)(1); establish rules of conduct for
persons involved in the maintenance of any records, see
§ 552a(e)(9); and establish safeguards to ensure the
confidentiality of such records.  See § 522a(e)(10).  Any
claims Cornish intends to raise under the Privacy Act would not
survive a Rule 12(b)(6) motion due to Cornish's lack of

sufficient factual presentation on any of these Privacy Act

provisions reflecting his entitlement to any relief.[15]

    Other examples are Cornish's references to the E-Government

Act of 2002, the Federal Information Security Management Act

("FISMA"), the Veterans Affairs Claims Confidentiality statute,

and the Trade Secrets Act.[16]  The E-Government Act of 2002 (see,

e.g., Second Am. Compl. ¶ 128) generally requires federal

agencies to establish "a broad framework of measures that

require using Internet-based information technology to enhance

---

[15] Cornish also makes reference to the Lanham Act and the provision under the Act that allows courts to award attorneys' fees to prevailing parties.  (See, e.g., Second Am. Compl. ¶¶ 163, 166.)  In general, the Lanham Act "prohibits two types of unfair competition: trademark infringement . . . and false designation of origin[.]"  Oceanic Exploration Co. v. ConocoPhillips, Inc., Civil Action No. 04-332 (EGS), 2006 WL 2711527, at *19 (D.D.C. Sept. 21, 2006) (internal citations omitted).  Cornish's proposed second amended complaint does not present any set of facts that would support a claim under this Act.

[16] Cornish also recites the elements of a tortious interference with a business relationship claim (see Second Am. Compl. at 80 ¶ 171), perhaps implying that the defendants' refusal to reinstate him interferes with his ability to represent patent applicants before the USPTO.  A claim of tortious interference with a business relationship requires a plaintiff to "allege: (1) a valid business relationship or expectancy with a third party; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference by the defendant, causing a breach or termination of the relationship or expectancy; and (4) resultant damage."  Williams v. Fed. Nat'l Mortgage Ass'n, Civil Action No. 05-1483 (JDB), 2006 WL 1774252, at *8 (D.D.C. June 26, 2006).  However, if Cornish is attempting to morph his claim against the defendants for failure to reinstate him to the patent register into a common law tort, his attempt would be futile given that defendants will be granted summary judgment on his reinstatement claim.

citizen access to Government information and services," Pub. L.
No. 107-347, 116 Stat. 2899, and FISMA (see, e.g., Second Am.
Compl. ¶ 154) requires federal agencies to comply with
information "security standards and conduct annual, independent
evaluations of their information security."  Trusted
Integration, Inc. v. United States, 679 F. Supp. 2d 70, 74
(D.D.C. 2010) (citing 44 U.S.C. §§ 3543-3545).  It is not clear,
however, that the E-Government Act of 2002 confers a private
cause of action upon a plaintiff, see In re Haefner, 345 B.R.
588, 590 (N.D. Ohio 2006) (questioning whether the E-Government
Act of 2002 creates a private cause of action); see also Montin
v. Gibson, No. 4:09CV3102, 2009 WL 2486441, at *3 (D. Neb.
Aug. 12, 2009), and Cornish has not cited to any authority to
show that either Act creates such a cause of action.  Even if
the Acts do confer a private cause of action, Cornish has not
shown that he has standing to raise claims under either one.
Standing "requires (1) injury in fact which is (a) concrete and
particularized and (b) actual or imminent, not conjectural or
hypothetical[,] . . . (2) a causal connection between the injury
and the conduct complained of[,] . . . and (3) a likelihood, as
opposed to merely speculation, 'that the injury will be
redressed by a favorable decision.'"  Nat'l Treasury Employees
Union v. Whipple, 636 F. Supp. 2d 63, 72 (D.D.C. 2009) (quoting
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992))

(internal citations omitted) (alterations in original).
Cornish's proposed second amended complaint alleges the same
primary harm alleged in his original and first amended
complaint, namely that he has been harmed by the USPTO's failure
to reinstate him to the patent register.  Cornish, however, does
not plead sufficient facts to support his claim that the USPTO's
refusal to reinstate him was caused by the USPTO's alleged
failure to conduct independent evaluations of its information
security or to use Internet-based information technology to
enhance citizen access to government information.  Because
Cornish has not adequately pled causation between the alleged
injury and the defendants' conduct, he has not shown standing to
raise claims under FISMA and the E-government Act of 2002.

The Veterans Affairs Claims Confidentiality statute (see
Second Am. Compl. ¶ 136) requires the Secretary of Veterans
Affairs to keep confidential veterans' benefits records.  See 38
U.S.C. § 5701.  Cornish's claim under this statute would be
futile because, at bottom, Cornish has not named as a defendant
the Department of Veterans Affairs or its officers.  Further,
Cornish's claim for relief under the Trade Secrets Act (see,
e.g., Second Am. Compl. ¶ 136), would fail because the Trade
Secrets Act criminalizes the disclosure of trade secrets by
federal government employees and does not create a private cause
of action.  See 18 U.S.C. § 1905; Chrysler Corp. v. Brown, 441

U.S. 281, 316-17 (1979) (noting that "there is no indication of legislative intent to create a private right of action" in § 1905).

Cornish has violated LCvR 7(m) and Fed. R. Civ. P. 8(a)(2), and the claims that Cornish seeks to raise in his proposed second amended complaint would not withstand a motion to dismiss brought under Rule 12(b)(6). Thus, his motion to amend his complaint will be denied.

## CONCLUSION

Because Cornish has failed show that the OED's decision to deny his reinstatement request was either arbitrary or irrational and failed to establish a violation of the Rehabilitation Act, the defendants' motion for summary judgment on his reinstatement and Rehabilitation Act claims will be granted. Because Cornish's <u>Tafas</u> claims are moot, and Cornish has failed to state a claim for which relief can be granted on all of his other claims, the defendants' motion to dismiss will be granted in all other respects as well.[17] Finally, because Cornish has violated local and federal rules and his second amended complaint would not survive a Rule 12(b)(6) motion, his motion for leave to amend his complaint will be denied. A separate Order accompanies this Memorandum Opinion.

---

[17] Because of the disposition of these claims, Cornish's request for an oral hearing (<u>see</u> Compl. at 5, 20), a temporary restraining order (<u>see</u> Amend. Compl. at 3), and a preliminary injunction (<u>see</u> Compl. at 39 ¶ 3) are denied as moot.

SIGNED this 4th day of June, 2010.

<pre>
                         _____/s/_____
                         RICHARD W. ROBERTS
                         United States District Judge
</pre>